STEVEN K. LINKON (Bar No. 101056)
Routh Crabtree Olsen, P.S.
3535 Factoria Blvd SE, Suite 200
Bellevue, WA 98006
Telephone: (425) 586-1952
Facsimile: (425) 283-5952
Email: slinkon@rcflegal.com

Attorney for Creditor Chinatrust Bank

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>MERUELO MADDUX PROPERTIES, INC., et al,<br><br>Debtors and Debtors-in-Possession. | Case No.: 1:09-bk-13356-KT<br><br>Chapter 11<br><br>**CHINATRUST BANK'S OPPOSITION TO DEBTORS' MOTION TO USE CASH COLLATERAL**<br><br>Date: May 1, 2009<br>Time: 9:30 a.m.<br>Place: Courtroom 301<br>21041 Burbank Blvd.<br>Woodland Hills, CA |

Chinatrust Bank (U.S.A.) ("Chinatrust" or "Bank"), opposes Debtor's proposed use of its cash collateral, and represents:

I. **SUMMARY OF ARGUMENT**

Debtor Merco Group - 3185 E. Washington Boulevard, LLC ("3185 E. Washington" or "Debtor") is in default on a loan from Chinatrust with a principal outstanding balance of $9,541,564.62. The loan is secured by a deed of trust and assignment of rents encumbering a large building located at 3185 E. Washington Boulevard, LA 90023 (the "Property"). The Property is occupied by a single

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 1

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

commercial tenant, who pays $118,000 in monthly rent, and, in addition, the tenant pays the real property taxes, insurance and required maintenance. [1]

The monthly loan payments are variable, but are roughly $70,000 per month. Presently, the loan is in default, despite the fact that the Property generates $118,000 monthly rent. Because of the default, Bank obtained the appointment of a receiver for the Property on March 10. 2009.[2]

Chinatrust has no objection to the Debtor's use of the net rents from the Property after payment of the current monthly principal and interest payment.

## II. FACTS

### A. Debt Owed By 3185 E. Washington To Chinatrust

About April 13, 2006, Debtor executed a Loan Agreement with Chinatrust for $9,950,000. The loan is evidenced by a Promissory Note ("Note"), and is secured by, among other instruments, a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust") dated April 13, 2006, against encumbering the Property. [3]

The Deed of Trust grants Chinatrust an absolute and irrevocable assignment of the rents, issues, profits, earnings and incomes from the Property.[4]

---

[1] See Declaration of Graciela Burrola ("Burrola Decl."), ¶ 4. A copy of the lease for the Property is attached as Ex. "1."
[2] The Chapter 11 petition was filed before the receiver could collect any of the rents. Burrola Decl., ¶ 5.
[3] The Deed of Trust was duly recorded on April 26, 2006 as Instrument No. 06 0912987 in the Official Records of the Los Angeles County Recorder's Office. Copies of the Note and Deed of Trust are attached as Exhibits "2" and "3." Burrola Decl., ¶ 6.
[4] Deed of Trust, Ex. "3," p.3

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 2

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

Repayment of the Note is also secured by a separate Absolute Assignment of Leases, Lease Guaranties, Rents, Issues and Profits (the "Assignment") dated April 13, 2006.[5] The Assignment is irrevocable and grants, transfers and assigns to Chinatrust all of Debtor's right, title and interest in all leases concerning the Property, and all rents, issues and profits of the Property, including the cash proceeds thereof. (*Id.*).

## B. Debtor's Default Under The Loan

As of April 16, 2009, Debtor failed to timely pay interest, plus applicable late charges, in the approximate amount of $230,989.90 (the payments for February, March and April). As of that same date, there was outstanding due of $9,541,564.62. There are also due collection costs recoverable in accordance with the Note.[6]

According to Ex. 6, ln. 9, of the Meruelo Declaration, there are delinquent property taxes of $78,082.69, and penalties of $7,808.27, despite the fact that in addition to the scheduled rent of $118,000 per month, the tenant advances to the Debtor the full semi annual property tax payment at least 20 days before the due date.[7]

---

[5] The Assignment was duly recorded on April 26, 2006 as Instrument No. 06 0912988 in the Official Records of the Los Angeles County Recorder's Office. A copy of the Assignment is attached as Ex. "4." Burrola Decl., ¶ 7.
[6] Burrola Decl., ¶ 8.
[7] See, Ex. 1 Lease, ¶ 10. Thus, the tenant pays debtor a semi annual payment of roughly $79,000 earmarked for payment of the real property taxes for which the tenant is required under their lease to keep current. It is unfair and inappropriate for the Debtor to specifically collect real property taxes from this tenant and then not use these sums to pay the taxes as the tenant expected.

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 3

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

### C. Equity in the Property

Ex. 5 of the Meruelo Declaration values the Property at $11,800,000. The principal of Chinatrust's loan is $9,541,564.62. Debtor is delinquent on the loan since February in the approximate amount of $230,989.90, representing three months worth of payments. The cost to liquidate the Property, assuming 8% ($11,800,000 x .08) would be $944,000. Thus, the equity in the Property is, at best, $1,014,436, or 10.31% of the total outstanding debt.

### III. LEGAL ARGUMENT

Absent the secured party's consent, a trustee may not use cash collateral unless "the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." § 363(c)(2)(B). A chapter 11 debtor in possession may exercise the pertinent powers of a trustee. See § 1107(a). Chinatrust has not consented to the use of its cash collateral.

In a typical cash collateral hearing the debtor presents a budget of what it believes are reasonable operating expenses and seeks court approval of that budget. Adequate protection is typically established by the fact that the cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest. Other factors are also considered such as whether or not there is equity in the property, whether the property is declining in value, and whether or not post petition payments due the creditor are current. *In re Atrium Development Co.* 159 B.R. 464, 471 (Bkrtcy.E.D.Va.,1993)

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 4

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

Here, the Debtor does not present a budget that proposes to use the cash collateral for any expense related to the Property, or for debt service of the Property. Post petition payments to Chinatrust are not current, and Debtor seeks to skip the monthly payments until December 2009. Nor does the Debtor propose to pay the real property taxes.[8] Instead, the Debtor proposes to collect all of the rents and collect the property tax reimbursement from the tenant, and transfer the funds to different entities to fund costs that are totally unrelated to the Property.

Thus, the most fundamental factors to consider for use of cash collateral are simply not present here. There is also no basis for this court to find adequate protection, even considering the "equities of the case" pursuant to 11 U.S.C. § 552(b), to authorize the debtor to use Chinatrust's cash collateral, absent a showing that Chinatrust was "demonstrably" oversecured. (*In re Atrium, Id.,* 159 B.R. at 471).

In this case there is an equity cushion over Chinatrust's Deed of Trust balance of approximately 10%. A 10% equity cushion falls far short of establishing that Chinatrust is "demonstrably oversecured." Case law has almost uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection, and case law is at best divided on whether an equity cushion of 12% to 20% constitutes adequate protection. (*In re Atrium, Id.* 159 B.R. at 471, citing *Kost v. First Interstate Bank of Greybull*), 102 B.R. 829 (D.Wyo.1989); *Equitable Life Assurance*

---

[8] Despite collecting these from the tenant, pursuant to the lease.

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 5

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

*Society of the United States v. James River Associates*, 148 B.R. 790, 796 (E.D.Va.1992); 1 David G. Epstein, et. al., Bankruptcy § 3-27(c) (1992).[9]

Further, an equity cushion does not always respond to or answer fully the whole range of risks to the value of the creditor's encumbrance. See 1 David G. Epstein, et al., Bankruptcy § 3-27(c) (1992). Uncertainty can falsely inflate the equity cushion, and time will usually deflate it. See 1 David G. Epstein, et al., Bankruptcy § 3-27(c) (1992). Here, the lease for the tenant occupying 100% of the premises expires in August of 2010. It is not unreasonable to conclude that this Property is declining in value over the ensuing year without the tenant renewing its lease.

Moreover, diverting Chinatrust's cash collateral to pay the expenses of other properties that are owned by other entities produces no benefit to Chinatrust. The debtor does not cite any authority to support such use of cash collateral. Debtor's citation to *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988) illustrates the problem with Debtor's proposed use of cash collateral. In *Triplett*, the debtor wanted to use the cash collateral to pay expenses related to the security property *and* also to pay

---

[9] Case law has almost uniformly held that an equity cushion of 20% or more constitutes adequate protection. *In re San Clemente Estates*, 5 B.R. 605 (Bankr.S.D.Ca.1980) (65% is adequate); *In re Nashua Trust Co.*, 73 B.R. 423 (Bankr.D.N.J.1987) (50% is adequate); *In re Ritz Theatres*, [68 B.R. 256 (Bankr.M.D.Fla.1987) ] (38% is adequate); *In re Dunes Casino Hotel*, 69 B.R. 784 (Bankr.D.N.J.1986) (30% is adequate); *In re Helionetics*, 70 B.R. 433 (Bankr.C.D.Ca.1987) (20.4% is adequate); and, *In re Mellor*, [734 F.2d 1396 (9th Cir.1984) ] (20% is adequate)
Case law has almost as uniformly held that an equity cushion under 11% is insufficient to constitute adequate protection. *Ukrainian Savings and Loan Assoc. v. The Trident Corp.*, 22 B.R. 491 (E.D.Pa.1982) (10% is inadequate); *In re McGowan*, 6 B.R. 241 (Bankr.E.D.Pa.1980) (10% is inadequate); *In re Liona Corp., N.V.*, 68 B.R. 761 (Bankr.E.D.Pa.1987) (8.9% inadequate); *In re Jug End in the Berkshires, Inc.*, 46 B.R. 892 (Bankr.D.Mass.1985) (8.6% insufficient); *In re Castle Ranch of Ramona*, Inc. 3 B.R. 45 (Bankr.S.D.Ca.1980); (8.6% is insufficient); and, *In re LeMay*, 18 B.R. 659 (Bankr.D.Mass.1982) (7% is inadequate).

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 6

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

general expenses of the case. (*Id*, 87 B.R at 26). The difference between *Triplett* and this case is that the Debtor does not propose to use any of the cash collateral for any expense of the Property, or for any amount of debt service. *Triplett* did not allow this result. [10]

The proposed use of cash collateral in this case is similar to that in *In Matter of Plaza Family Partnership*,[11] where the debtor partnership wanted to use the cash collateral to pay income tax liabilities owed by the partners of the debtor.[12] The secured creditor argued that the proposed use of the cash collateral amounted to a distribution of estate property to nondebtors ahead of secured creditors.(*Id.* at 172). The debtor, relying *Triplett,* argued that the specific use of the cash collateral was irrelevant; what mattered was whether there was adequate protection for the secured creditor.

*Plaza Family* held that cash collateral can only be used to the extent it benefits the debtor. The tax obligations were the separate liability of the partners, and that cash collateral can only be used to pay the debtor's own expenses, not those of another. (*Id.* at 172). Even in situations where adequate protections are available cash collateral can not be used for a nonbusiness purpose. The individual partners of the debtor are not entitled to a distribution before a secured creditor. The effect of such a use would be to subordinate secured claims to the claims of the

---

[10] 87 B.R. at 27.
[11] *Matter of Plaza Family Partnership*, 95 B.R. 166, 172 (E.D.Cal.,1989).
[12] Here, MMPI seeks to use cash collateral from this debtor to pay the liabilities of other debtors and debts that are personally guaranteed by Richard Meruelo.

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 7

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

debtor and others. Such a result is inconsistent with the intent and purpose of the bankruptcy code. (*Id.* at 172 - 173).

The BAP in *In re Walter*, 83 B.R. 14 (9th Cir. BAP 1988) ruled that 11 U.S.C. § 363 does not allow a debtor to use estate property for personal purposes. The court cited with approval to the Fifth Circuit case, *In re Continental Air Lines, Inc.*, 780 F.2d 1223 (5th Cir.1986) which articulated the criteria a bankruptcy court is to consider in deciding the use of estate property under 11 U.S.C. § 363(b):

> We also agree implicit within section 363(b) is the requirement of justifying the proposed transaction. *In re Lionel Corp*, 722 F.2d 1063, 1071 (2nd Cir.1983). That is, for the debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business.... Whether the proffered business justification depends on case. As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interest of the debtor, creditors and equity holders alike.

83 B.R. at 19-20.

Section 363 has been invoked in a variety of situations where cash collateral is necessary to keep the business going. See *In re Smith*, 24 B.R. 5 (Bkrtcy.S.D.Fla.1982); *In re Prime*, 15 B.R. 216 (Bkrtcy.W.D.Mo.1981); I*n re Arriens*, 25 B.R. 79 (Bkrtcy.D.Ore.1982). However, it is evident that cash collateral can be used by the debtor under section 363 only for a business purpose, for the debtor.

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 8

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

The implicit limitation on the use of cash collateral prevents a debtor from using the funds for personal use; such as in this case paying the separate debts of other entities controlled by a common principal.

The Debtor's offer of some kind of a replacement lien in unencumbered assets is a chimera, as these assets are of dubious value, in a declining real estate market. The Debtor's estimate of the value of these assets is based on a normalized market that does not presently exist and may not return until some far off date in the future. If these assets had any immediate value, the Debtor could borrow against them, in lieu of having to "borrow" Chinatrust's cash collateral. Further, this replacement lien is also supposed to be shared with other secured lenders, who hold varying amounts of secured and likely partially secured debt against different properties of wildly different values. There is no workable mechanism to allocate the so-called equity in the unencumbered assets among this disparate group and ensure that Chinatrust receives appropriate value in exchange for it's diverted cash collateral.

The debtor has the burden of proof on the issue of adequate protection.[13] To meet this burden, the Debtor must prove that Chinatrust, as the secured creditor, will realize the value of its bargain in light of all of the facts and circumstances of the case. Whether the burden must be met by clear and convincing evidence,[14] or by the preponderance of the evidence,[15] the Debtor has failed to meet that burden.

///

---

[13] 11 USC § 363(p).
[14] *Northern Trust Co. v. Leavell*, 56 B.R. 11, 13 (Bankr. S.D.Ill. 1985)
[15] *In re McCombs Properties VI, Ltd.* 88 B.R. 261, 267-68 (Bankr.C.D.Cal. 1988).

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 9

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

## IV. CONCLUSION

Based on the foregoing, the Debtor's motion to use cash collateral should be denied.

DATED this ___ day of April, 2009.

          ROUTH CRABTREE OLSEN, P.S.

          By: /s/ Steven K. Linkon
               Steven K. Linkon,
               Attorney for Chinatrust Bank

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 10

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

# DECLARATION OF GRACIELA BURROLA

I, Graciela Burrola, declare:

1. I am a Vice President of Credit Administration of Chinatrust Bank (U.S.A.) ("Chinatrust" or "Bank"). I personally know the following facts and if called as a witness, I could testify thereto.

2. I am familiar with the loan made by the Bank to Merco Group - 3185 E. Washington Boulevard, LLC. I am one of the managers in charge of the supervision and monitoring of this account.

3. I have reviewed the records that pertain to the loan and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Chinatrust, which records were made at or about the time of the events recorded, and are maintained in the ordinary course of Chinatrust's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Chinatrust by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. To the extent Chinatrust's business records contain documents created by third parties, Chinatrust relies on the accuracy of such records in conducting its business.

4. A copy of the lease for the Property is attached as Ex. "1."

5. The monthly loan payments are variable, but are roughly $70,000 per month. Presently, the loan is in default, despite the fact that the Property generates $118,000 monthly rent. Because of the default, Bank obtained the appointment of a receiver for the Property on March 10. 2009.

6. The Deed of Trust was duly recorded on April 26, 2006 as Instrument No. 06 0912987 in the Official Records of the Los Angeles County Recorder's Office.

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 11

ROUTH CRABTREE OLSEN, P.S.
A Law Firm and Professional Services Corporation
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

1  Copies of the Note and Deed of Trust are attached as Exhibits "2" and "3.

2     7.   The Assignment was duly recorded on April 26, 2006 as Instrument

3  No. 06 0912988 in the Official Records of the Los Angeles County Recorder's Office.

4  A copy of the Assignment is attached as Ex. "4.

5     8.   As of April 16, 2009, Debtor failed to timely pay interest, plus

6  applicable late charges, in the approximate amount of $230,989.90 (the payments

7  for February, March and April). As of that same date, there was outstanding due of

8  $9,541,564.62. There are also due collection costs recoverable in accordance with

9  the Note.

10  I declare under penalty of perjury under the laws of the State of California that

11  the foregoing is true and correct.

12  Executed on April __, 2009 at Torrance, California.

13

14                           GRACIELA BURROLA

15

16

17

18

19

20

21

22

23

24

25

26

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 12

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131

1  Copies of the Note and Deed of Trust are attached as Exhibits "2" and "3."

2      7.    The Assignment was duly recorded on April 26, 2006 as Instrument No. 06 0912988 in the Official Records of the Los Angeles County Recorder's Office. A copy of the Assignment is attached as Ex. "4."

    8.    As of March 8, 2009, Debtor failed to timely pay interest, plus applicable late charges, in the approximate amount of $154,000. As of that same date, there was due, owing and payable to Bank under the terms of the Loan Documents, principal of $9,541,564.62, plus accrued interest, deferred interest, and default interest, late charges and other amounts set forth in the Note.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 16, 2009 at Torrance, California.

_____
GRACIELA BURROLA

CHINATRUST BANK'S OPPOSITION TO
DEBTORS' USE OF CASH COLLATERAL - 12

ROUTH CRABTREE OLSEN, P.S.
*A Law Firm and Professional Services Corporation*
3535 Factoria Boulevard SE, Suite 200
Bellevue, Washington 98006
Telephone (425) 458-2121
Facsimile (425) 458-2131