ORIGINAL

1  DAVID A. GILL (State Bar No. 032145)
   *DGill@DGDK.com*
2  JOHN J. BINGHAM, JR. (State Bar No. 075842)
   *JBingham@DGDK.com*
3  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  Proposed attorneys for Meruelo Maddux Properties, Inc., and
   affiliated Debtors and Debtors-in-Possession

FILED

APR 21 2009

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

8            **UNITED STATES BANKRUPTCY COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10           **SAN FERNANDO VALLEY DIVISION**

11

12  In re                                    ) Case No. 1:09-bk-13356-KT
                                             )
13  MERUELO MADDUX PROPERTIES, INC., et      ) Chapter 11
    al.¹                                     )
14                                           ) (Jointly Administered)
            Debtors and Debtors-in-Possession. )
15                                           ) **APPLICATION OF DEBTOR AND**
                                             ) **DEBTOR-IN-POSSESSION TO RETAIN**
16  _____ ) **DANNING, GILL, DIAMOND &**
                                             ) **KOLLITZ, LLP AS REORGANIZATION**
17  ☑   Affects all Debtors                  ) **COUNSEL; DECLARATION OF**
                                             ) **DISINTERESTEDNESS OF JOHN J.**
18  ☐   Affects the following Debtor(s):     ) **BINGHAM JR.**
                                             )
19                                           )
                                             ) [No Hearing Required]
20                                           )
                                             )
21                                           )
                                             )
22                                           )
                                             )
23  _____ )

24       ¹ Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by
    affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-
25  KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-
    13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-
26  bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT;
    1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-
    KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-
27  13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-
    bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT;
    1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-
28  KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

336044.02 [XP]     25195

1    Applicants Meruelo Maddux Properties, Inc.("MMPI"), and 53 affiliated entities and each

2    of them, the Debtors and Debtors-in-Possession in this Chapter 11 case, (collectively the "Debtors"

3    or "Applicants"), respectfully represents as follows:

4    **A.    The Chapter 11 Filing**

5         1.    On March 26 and 27, 2009 (the Petition Date"), 54 voluntary petitions under

6    Chapter 11, Title 11 of the United States Bankruptcy Code ("Bankruptcy Code") were filed in the

7    United States Bankruptcy Court for the Central District of California by the Debtors.  Pursuant to

8    the Bankruptcy Court's ruling on March 31, 2009, the 54 cases will be jointly administered under

9    case no. 1:09-bk-13358-KT.  The Debtors are operating their business affairs pursuant to the

10   authority granted under Sections 1107 and 1108 of the Bankruptcy Code.  As of the date of this

11   Application, there has been no Official Committee of Creditors appointed in this case.

12   **B.    Overview of the Debtor' Business**

13        2.    MMPI is publicly traded corporation formed and existing under the laws of the state

14   of Delaware.  MMPI, together with direct and indirect subsidiaries (sometimes collectively referred

15   to herein as the "Company"), is a self-managed, full-service real estate company that develops,

16   redevelops and owns industrial, commercial and multi-unit residential real properties primarily

17   located in downtown Los Angeles and other areas in southern California.  The Company focuses on

18   unique properties that it believes have an alternate, more profitable use achievable through major

19   renovation, redevelopment or development.  The Company's projects are predominantly located in

20   densely populated urban, multi-ethnic areas and involve numerous local entitlement, property

21   assemblage and physical challenges.

22        3.    The Company is committed to responsible property investing that has economic,

23   environmental and social benefits.  Its development activities include major urban infill projects

24   (those in which land in a built-up area is used as part of a community redevelopment or growth

25   management program) that are expected to meet the demands of urban communities and utilize or

26   upgrade existing infrastructure.  The Company is known as a "smart" developer, and many of its

27   ///

28   //

2

projects are designed to locate businesses, customers and employees close to one another and to existing public transit systems. The Company is also known as an "incubator" of new businesses, actively seeking development projects in empowerment zones. The Company is very familiar with the social, cultural, business and political issues of land development in Southern California, and especially the Los Angeles area.

4.      The Company has a construction arm, a property management arm, an architectural arm, and an operating arm, which entities provide accounting, legal, land use, development and other administrative services for all of the Debtors. Overall, the Company currently has approximately 100 employees.

5.      Both before and after MMPI's formation in 2006, the Company's business has been operated on a consolidated basis. Among other things, the Company files consolidated financial statements and other reports with the Securities and Exchange Commission (the "SEC"). The Company also files consolidated tax returns. This consolidated reporting is a manifestation of the synergy and economic efficiencies gained through the Company's corporate structure. Indirect overhead expenses for administrative services provided by certain parts of the Company will be allocated to the other parts of the Company based on an equitable formula. Direct costs of property management, construction, architectural services, or other services are charged directly to the property-level entity that receives the benefit of such services. With a few exceptions, revenues received from the operation of the Debtors' properties are swept daily into a general operating account, and the Debtors' debts are paid from such account.

6.      As of December 31, 2008, the Company owned, leased with rights to purchase and/or held rights to acquire interests in approximately 28 rental projects and 19 development projects (one of which was subject to a lease with an option to purchase, which lease and option were terminated in the first quarter of 2009).

///

///

///

///

3

## C. The Debtors' Chapter 11 Filing

7. The current economic recession and associated disruption in the debt and equity capital markets have been extremely challenging for the Company. Despite the Company's efforts to improve its financial position during 2008, the Company's efforts could not overcome the collapse of credit markets and the American banking system that took place in the fall of 2008. On or about October 1, 2008, the Company suspended development of twelve construction projects. A number of loans secured by real property of the Company recently matured, and the Company was unable to obtain additional financing or agree to terms with its existing lenders. Two lenders commenced actions to foreclose on its collateral properties and sought the appointment of receivers.

8. Due to the Company's inability to obtain additional capital and the unwillingness of current lenders to extend the terms of maturing loans on acceptable terms, the Debtors have filed chapter 11 petitions for relief to reorganize their financial affairs and prevent a piecemeal dismemberment of their business to the detriment of their creditors.

## D. The Proposed Retention of Professionals

9. In order to promote reorganization, it was not only necessary, but was absolutely essential that the Debtors employ the services of a number of professionals at the expense of the estate from the date of the commencement of the Chapter 11 cases. One of those professionals is Danning, Gill, Diamond & Kollitz, LLP (the "Danning Gill Firm"). Additional applications to employ other professionals in this case will be filed in the near term, including an application to employ the law firm of DLA Piper Rudnick Gray Cary US LLP (the "DLA Piper Firm") as special securities and litigation counsel, and an application to employ accountants.

## E. The Proposed Retention of Reorganization Counsel; Danning, Gill, Diamond & Kollitz, LLP

### Scope of Engagement

10. The Debtors propose to retain the Danning Gill Firm as their reorganization counsel on the terms and conditions set forth herein. The Danning Gill Firm provided services to the Debtors prepetition over a number of weeks. A true and correct copy of the retention agreement

4

1 between the Debtors and the Danning Gill Firm is attached hereto and marked as Exhibit "1" (the

2 "Retention Agreement"). A true and correct copy of the addendum to the Retention Agreement

3 and waiver of conflicts is attached as Exhibit "2" hereto.

4        11.     It is necessary for Applicants to employ reorganization counsel to advise it generally

5 concerning the rights, duties and obligations of a debtor and debtor-in possession under the

6 Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the

7 Central District of California, the orders of this Court, the requirements of the United States

8 Trustee for the Central District of California, and to do all of those things which may, from time to

9 time, be necessary to aid Applicants in the prosecution of this Chapter 11 case., including, *inter*

10 *alia*, to:

11            a.     assist Applicants in the preparation of its schedules and statement of

12 financial affairs;

13            b.     assist Applicants in legal aspects of compliance with the rules of the Office

14 of the United States Trustee;

15            c.     assist Applicants in defense of motions for relief from stay, where

16 appropriate;

17            d.     assist Applicants in post-petition borrowing, if appropriate, and motions

18 concerning the same;

19            e.     assist Applicants in preparing motions and other pleadings concerning the

20 use of cash collateral;

21            f.     assist Applicants in the investigation into the nature and extent of the

22 property of the estate;

23            g.     assist Applicants in the investigation of, and, to the extent appropriate,

24 represent Applicants in litigation to avoid and recover fraudulent transfers, preferences and

25 other avoidable transfers;

26            h.     assist Applicants in matters affecting the property of the estate;

27 ///

28 ///

5

i.     assess prospects for reorganization of Applicants' financial affairs under Chapter 11 of the Bankruptcy Code and, if appropriate, assist in the prompt formulation, proposal, confirmation and implementation of a Chapter 11 Plan to conclude the Bankruptcy Case;

j.     assist Applicants in the prosecution of claim objections to the extent that funds are generated for the estate; and

k.     conduct such other investigations and take such other legal actions that may be necessary and appropriate and as are customary in Chapter 11 cases.

Retainers, Draw Downs and Procedures for Future Payments

12.     Pursuant to its Retention Agreement, the Danning Gill Firm was to receive a retainer of $450,000 prepetition, plus an advance for the Debtors' filing fees. The Danning Gill Firm actually received $457,148.44 pre-petition, which amount consisted of $400,000.00 against fees and costs of the agreed upon $450,000.00 retainer and $57,145.00 in anticipated filing fees. As of the petition date, a total of $255,517.26, including filing fees of $55,067.00, have been paid to the Danning Gill Firm, leaving a balance in its retainer of $201,631.18 (the "Danning Gill Retainer").

13.     Applicants requests at this time it be authorized to pay the Danning Gill Firm the additional sum of $50,000.00 as and for a postpetition retainer to make up the $50,000.00 inadvertently omitted from the prepetition retainer. Applicants have unencumbered funds of approximately $3.3 million available to pay the additional retainer.

14.     The Danning Gill Retainer has been placed in a segregated trust account.

15.     It is contemplated that the Danning Gill Firm will pursuant to the U.S. Trustee Employment Guide draw upon the trust account and serve a face-sheet fee application on a monthly basis pursuant to the U.S. Trustee Employee Guide and Professional Fee Statement (Form UST-6) until such time as the retainer is fully exhausted. In the event the Danning Gill Firm's post-petition fees and expenses exceed the amount of the available retainer funds, the Danning Gill Firm will seek payment of such additional sums from the bankruptcy estate pursuant to a duly noticed fee application, to be set not more frequently than every 120 days.

///

6

16.     After due notice, the Danning Gill Firm will, pursuant to Bankruptcy Code §§ 330 and 331, apply to the Court for allowance of fees not more frequently than every 120 days, which application will be heard upon notice to creditors and interested parties unless the Court approves other procedures for payment of interim fees.  The Danning Gill Firm will accept such fees as may be awarded by the Court.  The Danning Gill Firm expects that its compensation will be based upon a combination of factors, including, without limitation, its normal hourly fees charged to clients which pay the Danning Gill Firm monthly, as those fees are adjusted from time to time, experience and reputation of counsel, time expended, results achieved, novelty and difficulty of matters undertaken, including time limitations imposed, preclusion from other employment, the nature and length of the professional relationship and awards in similar cases.

Potential Conflicts Between the Debtors

17.     To the best of Applicants' knowledge, Applicants does not believe that there are any conflicts between the Debtors.  As discussed above, the Debtors are operated on a consolidated basis filing consolidated financial statements and other reports with the SEC and filing consolidated tax returns.  The Debtors also utilize a consolidate cash management system whereby revenues received from the operation of the Debtors' properties are swept daily into a general operating account, and the Debtors' debts are paid from such account.  Overhead expenses for administrative services provided by certain parts of the Company are allocated to the other parts of the Company based on the benefit provided.  Direct costs of property management, construction, architectural services, or other services are charged directly to the property-level entity that receives the benefit of such services.  There presently is not dispute between the Debtors as to any inter-company accounts.  If a dispute arises between any of the Debtors, the Danning Gill Firm will notify the Court of such dispute and counsel other than the Danning Gill Firm will need to be utilized to resolve such dispute.  The Danning Gill Firm will not represent any of the individual affiliated Debtors against any of the other affiliated Debtors.

///

///

///

7

<u>Disinterestedness of the Danning Gill Firm</u>

18.     To the best of Applicants' knowledge, including consideration of the attached Declaration of John J. Bingham Jr., Applicants believes and alleges that the Danning Gill Firm is a disinterested person as that term is defined in 11 U.S.C. § 101(14), has no interest adverse to Applicants, its creditors, any other party in interest, its respective attorneys and accountants, or to this estate, and has no relation to any bankruptcy judge presiding in this district or any relation to the United States Trustee in this district, or any person employed in the Office of the United States Trustee. It is noted in the attached Declaration of John J. Bingham, Jr., that the Danning Gill Firm currently represents the Department of Water and Power of the City of Los Angeles ("City"), a creditor of the Debtors, with regard to certain bankruptcy matters unrelated to the Debtors, and from time to time has represented other agencies or departments of the City. The representation of the Department of Water and Power, which entity has its own in-house counsel, City Attorney personnel, over the years has generated only a miniscule percentage of the Danning Gill Firm's receipts.   In this regard, Applicants have a signed a written waiver of any potential conflict of interest with respect to the Danning Gill Firm's representation of the City and has waived any claim against the Danning Gill Firm that it might have or obtain by reason of the Danning Gill Firm's representation in other matters of the City.  Applicants have no disputes over the utility charges. The Danning Gill Firm has agreed that it will not of course represent the Debtors against the City or vice versa. If a dispute arises between the Debtors and the City, the Debtors will use counsel other than the Danning Gill Firm.

19.     The Danning Gill Firm also previously represented Richard Meruelo, the Chief Executive Officer of the Debtors, between 1993 and 2000, and his entities, Music Latina, Inc., TechSystems Group, Inc., and M&J Manufacturing,  in matters unrelated to the Debtors.   The Danning Gill Firm's representation of Richard Meruelo and his entities ended in 2000.

///

///

///

///

8

1   **WHEREFORE**, Applicants prays for an order of this Court authorizing it to employ the

2   Danning Gill Firm as an expense of this estate, as of March 26, 2008, to authorize the procedures

3   for payment of fees and reimbursement of costs as provided herein, and for such other and further

4   relief as is just and proper.

5

6   DATED: April ___, 2009                    MERUELO MADDUX PROPERTIES, INC.
                                              and 53 Related Debtor
7

8

9                                            By: _____
                                                 JOHN CHARLES MADDUX
10                                               President of Meruelo Maddux Properties,
                                                 Inc. and designated officer of 53 related
11                                               Debtors

12  Presented by:

13  DATED: April 15, 2009                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

14

15                                           By: _____
16                                               JOHN J. BINGHAM, JR.
                                                 Proposed Attorneys for Meruelo Maddux
17                                               Properties, Inc., and affiliated Debtors and
                                                 Debtors-in-Possession
18

19

20

21

22

23

24

25

26

27

28

9

1     **WHEREFORE**, Applicants prays for an order of this Court authorizing it to employ the

2     Danning Gill Firm as an expense of this estate, as of March 26, 2008, to authorize the procedures

3     for payment of fees and reimbursement of costs as provided herein, and for such other and further

4     relief as is just and proper.

5

6     DATED:  April 15, 2009                    MERUELO MADDUX PROPERTIES, INC.
                                                and 53 Related Debtor
7

8

9                                       By: _____
                                            JOHN CHARLES MADDUX
10                                          President of Meruelo Maddux Properties,
                                            Inc. and designated officer of 53 related
11                                          Debtors

12    Presented by:

13    DATED:  April 15, 2009                   DANNING, GILL, DIAMOND & KOLLITZ, LLP

14

15                                      By: _____
16                                          JOHN J. BINGHAM, JR.
                                            Proposed Attorneys for Meruelo Maddux
17                                          Properties, Inc., and affiliated Debtors and
                                            Debtors-in-Possession
18

19

20

21

22

23

24

25

26

27

28

                                             9

DECLARATION

# DECLARATION OF JOHN J. BINGHAM JR.

I, John J. Bingham Jr., declare:

1.    I am a principal of a professional corporation that is a partner of the law firm of Danning, Gill, Diamond & Kollitz, LLP (the "Danning Gill Firm"). Declarant and all of the other lawyers affiliated with the Danning Gill Firm are duly admitted to practice law the State of California and before the above entitled Court. All of the lawyers affiliated with the Danning Gill Firm are familiar with, *inter alia*, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the requirements of the United States Trustee for the Central District of California and the Local Bankruptcy Rules for the Central District of California. I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

2.    This Declaration is being presented in support of the Application of Debtors, Meruelo Maddux Properties, Inc.("MMPI"), and 53 affiliated entities (collectively referred to as the "Debtors" or "Applicants") to retain professionals (the "Application"). The Danning Gill Firm was retained on or about February 10, 2009 to represent the Debtors as their debtor-creditor and insolvency counsel. The Debtors now desire that the Danning Gill Firm represent them as his general bankruptcy counsel in his Bankruptcy Case No. 1:09-bk-13356-KT and affiliated entities[2] (the "Bankruptcy Case") which case were filed on or about March 26 and March 27, 2009 (the "Petition Dates"). A true and complete copy of the retention agreement between the Debtors and the Danning Gill Firm are attached hereto as Exhibit "1" (the "Retention Agreement"). A true and correct copy of the addendum to the Retention Agreement and waiver of conflicts is attached as Exhibit "2" hereto. As set forth in the Application and in the Retention Agreement, the Danning Gill Firm will advise and counsel the Debtors generally and specifically concerning the rights,

---

[2] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

10

duties and obligations of a debtor under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Central District of California, the orders of this Court, the requirements of the United States Trustee for the Central District of California, and do all of those things which may, from time to time, aid the Debtors in the prosecution of this Chapter 11 case. A more detailed description of the types of services is set forth in the Application to which this declaration is attached. The Danning Gill Firm is experienced in bankruptcy proceedings and is willing to accept as compensation such amount as may hereinafter be allowed by this Court.

3.     Pursuant to its Retention Agreement, the Danning Gill Firm was to receive a retainer of $450,000 prepetition, plus an advance for the Debtors' filing fees. The Danning Gill Firm actually received $457,148.44 pre-petition, which amount consisted of $400,000.00 against fees and costs of the agreed upon $450,000.00 retainer and $57,145.00 in anticipated filing fees. As of the petition date, a total of $255,517.26, including filing fees of $55,067.00, have been paid to the Danning Gill Firm, leaving a balance in its retainer of $201,631.18 (the "Danning Gill Retainer"). I am informed that all such payments were from funds of the Debtors.

4.     The Danning Gill Retainer has been placed in a segregated trust account.

5.     It is contemplated that the Danning Gill Firm will pursuant to the U.S. Trustee Employment Guide draw upon the trust account and serve a face-sheet fee application on a monthly basis pursuant to the U.S. Trustee Employee Guide and Professional Fee Statement (Form UST-6) until such time as the retainer is fully exhausted.

6.     In the event the Danning Gill Firm's post-petition fees and expenses exceed the amount of the available retainer funds, the Danning Gill Firm will seek payment of such additional sums from the bankruptcy estate pursuant to a duly noticed fee application(s).

7.     After due notice, the Danning Gill Firm will, pursuant to Bankruptcy Code §§ 330 and 331, apply to the Court for allowance of fees not more frequently than every 120 days, which application will be heard upon notice to creditors and interested parties unless the Court approves other procedures for payment of interim fees. The Danning Gill Firm will accept such fees as may be awarded by the Court. The Danning Gill Firm expects that its compensation will be based upon

11

a combination of factors, including, without limitation, its normal hourly fees charged to clients which pay the Danning Gill Firm monthly, as those fees are adjusted from time to time, experience and reputation of counsel, time expended, results achieved, novelty and difficulty of matters undertaken, including time limitations imposed, preclusion from other employment, the nature and length of the professional relationship and awards in similar cases.

8. The Danning Gill Firm did not receive any other payments from or on account of Applicants within the one year period prior to the Chapter 11 filing, except as described herein.

9. The Danning Gill Firm does not hold or assert a prepetition monetary claim against the Debtors.

10. The Danning Gill Firm has neither shared nor agreed to share any compensation for this engagement with any other person except as among the members of the Danning Gill Firm.

11. A schedule of the current guideline hourly rates and reimbursable expenses, normally charged by the Danning Gill Firm to its regularly paying clients, is attached to the Retention Agreement. These rates may change from time to time. Notice of any such increases will be provided to the Debtor and the Untied States Trustee.

12. As of the date of this declaration, to the best of my knowledge, the Danning Gill Firm and all of its partners and associates are disinterested persons as that term is defined in 11 U.S.C. § 101(14), and pursuant to FRBP 2014(a), neither the Danning Gill Firm nor any partners or associates of the Danning Gill Firm are connected with the Debtors, the creditors, any other party in interest, their respective attorneys and accountants, or to this estate, and has no relation to any bankruptcy judge presiding in this district or any relation to the United States Trustee in this district, or any person employed in the Office of the United States Trustee, except as disclosed herein.

13. At this time, I am not aware of any conflicts between the Debtors. I am informed and believe that the Debtors are operated on a consolidated basis, filing consolidated financial statements and other reports with the SEC and filing consolidated tax returns. The Debtors also utilize a consolidate cash management system whereby revenues received from the operation of the Debtors' properties are swept daily into a general operating account, and the Debtors' debts are

12

paid from such account. Overhead expenses for administrative services provided by certain parts of the Company are allocated to the other parts of the Company based on the benefit provided. Direct costs of property management, construction, architectural services, or other services are charged directly to the property-level entity that receives the benefit of such services. There presently is no dispute between the Debtors as to any of the intercompany accounts. If a dispute arises between any of the Debtors, the Danning Gill Firm will notify the Court of such dispute and counsel other than the Danning Gill Firm will need to be utilized to resolve such dispute. The Danning Gill Firm will not represent any of the individual affiliated Debtors against any of the other affiliated Debtors.

14. To the best of my knowledge, neither the Danning Gill Firm, nor any professional employed by this Danning Gill Firm:

      a. is or was a creditor, an equity security holder or an insider of the Debtors;

      b. is or was within two years before the date of filing of the petition, a director, officer or employee of the Debtors; or

      c. holds an interest materially adverse to the to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors, or for any other reason.

15. In the normal course of its business, the Danning Gill Firm maintains a list of all parties it currently represents, all parties it has represented in the past, and all parties which have been directly adverse to a client of the Danning Gill Firm. Such information is maintained in a computer database, which database can be searched to determine if the Danning Gill Firm has or may have a conflict with any potential new client or adversary.

16. After a search of such database, it does not appear that the Danning Gill Firm has any actual or potential conflict of interest with any party-in-interest in this Chapter 11 case, except to the extent that the Danning Gill Firm currently represents the Department of Water and Power of the City of Los Angeles ("City"), a creditor of the Debtors, with regard to certain bankruptcy matters unrelated to the Debtors, and from time to time has represented other agencies or departments of the City. The representation of the Department of Water and Power, which entity

13

1 has its own in-house counsel, City attorney personnel, over the years has generated only a

2 miniscule percentage of the Danning Gill Firm's receipts. In this regard, Applicants have a signed

3 a written waiver of any potential conflict of interest with respect to the Danning Gill Firm's

4 representation of the City and has waived any claim against the Danning Gill Firm that it might

5 have or obtain by reason of the Danning Gill Firm's representation in other matters of the City. In

6 addition, the Danning Gill Firm has agreed that it will not of course represent the Debtors against

7 the City or vice versa. If a dispute arises between the Debtors and the City, the Debtors will use

8 counsel other than the Danning Gill Firm.

9      17.     The Danning Gill Firm also previously represented Richard Meruelo, the Chief

10 Executive Officer of the Debtors, between 1993 and 2000, and his entities, Music Latina, Inc.,

11 TechSystems Group, Inc., and M&J Manufacturing, in matters unrelated to the Debtors. The

12 Danning Gill Firm's representation of Richard Meruelo and his entities ended in 2000.

13      18.     Upon discovery of any actual or potential conflict or any material fact that may

14 create an actual or potential conflict or that bears upon the Danning Gill Firm's continued

15 disinterestedness, the Danning Gill Firm will provide notice to those parties entitled to notice

16 thereof. The notice will outline the facts giving rise to the Danning Gill Firm's potential conflict of

17 interest.

18

19      I declare under penalty of perjury under the laws of the United States of America that the

20 foregoing is true and correct.

21      Executed this 15th day of April at Los Angeles, California.

22

23

24                               JOHN J. BINGHAM, JR.

25

26

27

28

14

EXHIBIT "1"

LAW OFFICES

JAVID A. GILL*
RICHARD K. DIAMOND*
HOWARD KOLLITZ*
JOHN J. BINGHAM, JR.*
ERIC P. ISRAEL*
KATHY BAZOIAN PHELPS*
GEORGE E. SCHULMAN*
NANCY KNUPFER*
ROBERT A. HESSLING*
WALTER K. OETZELL

# DANNING, GILL, DIAMOND & KOLLITZ, LLP

A LIMITED LIABILITY PARTNERSHIP COMPOSED OF PROFESSIONAL CORPORATIONS

2029 CENTURY PARK EAST, THIRD FLOOR

LOS ANGELES, CALIFORNIA 90067-2904

(310) 277-0077

FACSIMILE: (310) 277-5735

WRITER'S E-MAIL ADDRESS: JBINGHAM@DGDK.COM

UZZI O. RAANAN
STEVEN J. SCHWARTZ
MATTHEW F. KENNEDY
JOHN N. TEDFORD, IV
AARON E. DE LEEST

OF COUNSEL
JAMES J. JOSEPH*

RETIRED
CURTIS B. DANNING

REFER TO:

*A PROFESSIONAL CORPORATION

February 10, 2009

**PERSONAL AND CONFIDENTIAL**

**Via Email**

Mr. John Maddux, President
Meruelo Maddux Properties, Inc.
761 Terminal Street, Building 1, Second Floor
Los Angeles, CA 90021

Re:     Retention of Danning, Gill, Diamond & Kollitz, LLP (the "Firm") by
        Meruelo Maddux Properties, Inc., and its Affiliates

Dear Mr. Maddux:

1.      This letter confirms our agreement concerning the terms upon which Meruelo Maddux Properties, Inc. ("Client") will retain the Firm to provide its bankruptcy expertise and counsel in the planning for the possibility of a Chapter 11 filing on behalf of Client and certain affiliates. It is contemplated that these services will be phased. Initially, we will work with your personnel to acquire the information necessary to provide sound advice as to Client's eligibility, rights and responsibilities. If so requested, we will prepare petitions and other customary first day pleadings and papers for Chapter 11 ("pre-filing services"). Thereafter, if so instructed, we will file and prosecute a chapter 11 petition on behalf of Client and its affiliates or related entities to be identified ("Affiliates") either in the United States Bankruptcy Court for the District of Delaware or the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court"), as Client shall determine. This letter, when reviewed and executed by Client, shall constitute conclusive evidence of the agreement between Client and the Firm concerning our representation of Client and Affiliates, subject to execution by each Affiliate of a writing agreeing to be bound by the terms of this agreement. This agreement will not take effect, and the Firm will have no obligation to provide its counsel and services until Client returns a signed copy of this agreement, the agreed retainer and payments, as provided below, and written conflict waivers, if requested and necessary to permit representation of

Client and the Affiliates which Client requests that we represent. If we are asked to represent any Affiliates, such Affiliates shall also sign this retainer agreement or an addendum hereto. Hereinafter, Client and Affiliates are collectively referred to as "Client."

2.      Client has asked that we provide the services and take those actions as set forth in paragraph 1 above. We have requested that Client provide the Firm with an initial cash retainer of $50,000 to be applied against the pre-filing services. In the event that said initial retainer is exhausted or is certain in our opinion to become exhausted before completion of our initial, pre-filing services, we may cease our services and terminate this agreement unless Client delivers additional funds to us on demand such that our fees and cost will never exceed the amount of the retainer we are holding. As a condition of filing the Chapter 11 for the Client and acting as reorganization counsel for Client in a Chapter 11 case, Client will deliver prior to the filing of a petition or petitions in Chapter 11, additional funds in an amount equal to the difference between $450,000 and sums theretofore paid to us by Client. We will also require as a condition of filing a Chapter 11 case or cases, a cost deposit to cover bankruptcy court filing fees in the amount of $1,039 for the Client and a like amount for each Affiliate filing for Chapter 11 protection.

3.      We have advised that client will need to retain other para-professional personnel to prepare for compliance with relevant court-imposed operational requirements and provide us with the services of existing securities counsel, and accounting support. We have also advised you that, if Client determines to file in Delaware, Client will need local counsel in Delaware. We estimate that the local counsel we have identified to you will request a retainer of $150,000 to $200,000, and its retention will be pursuant to a separate written agreement with Client. The retention of local counsel in Delaware is an additional condition for our filing the Chapter 11 for the Client in Delaware and acting as reorganization counsel for Client in that Chapter 11 case.

4.      The amount of the retainer which has not been earned as of the date of the Chapter 11 case filing will be maintained by us in trust, to be paid to us only if and when we comply with the Bankruptcy Court rules and regulations in connection therewith or orders and rules of the Bankruptcy Court. Client agrees to support such request for payment of fees from our retainer and the monthly

payment of fees thereafter, however specifically reserving the right to object to the reasonableness of any item specified therein. Fees and expenses will be billed at our customary rates subject to Bankruptcy Court approval of such rates and the payment of fees. The retainer is not and should not be considered a fixed or minimum fee of any kind and we contemplate, subject to Court approval, that we will receive monthly payments against our fees after the retainer is exhausted.

5.      In accordance with applicable state law, the Firm shall have a lien on Client's retainer funds in its possession to secure payment of so much of the Firm's fees and costs, and in the event a Chapter 11 case is filed for Client, subject to allowance of such fees by the Bankruptcy Court. As Client is aware, the Firm limits its practice generally to bankruptcy and reorganization matters. Without limiting the description of the pre-filing services described in paragraph 1, above, the Firm will act as Client's reorganization counsel, and, in such connection, will render such ordinary and necessary legal services as may be required in connection with the to be filed Chapter 11 case. The Firm's services shall include assisting Client in preparation of documents that may have to be filed with the Bankruptcy Court and/or the Office of the United States Trustee; advising Client with respect to, among other things, matters concerning executory contracts and leases, relief from the automatic stay, cash collateral, resolution of creditors' claims, the negotiation, preparation and confirmation of a plan of reorganization, assisting Client in the preparation of a disclosure statement, appearing at meetings of creditors, representing Client in litigation in the Bankruptcy Court limited to bankruptcy law issues, and otherwise advising Client regarding its legal rights and responsibilities under the Bankruptcy Code and Bankruptcy Rules.

6.      Our employment as Client's reorganization counsel does not include appearances before any court or agency other than the Bankruptcy Court and the Office of the United States Trustee, which exclusion encompasses litigation in any court, including the Bankruptcy Court, with respect to matters that are, in the main, disputes involving issues of non-bankruptcy law or the provision of advice outside the insolvency area, such as intellectual property, corporations, lender liability, taxation, securities, torts, environmental, labor, criminal, insurance or real estate law and the provision of accounting services.

7.    You have advised us that Client has other counsel and professionals to represent it, as set forth in paragraphs 3 and 7 hereof as to all matters outside the scope of our employment, including general real estate litigation counsel, in house counsel, corporate counsel, and accountants. We are relying on the availability of such professionals to handle all matters outside the scope of our employment. Failure to provide such professionals to perform such other services is grounds for the immediate termination of our representation.

8.    At the conclusion of the case, any unused portion of the retainer, if any, will be returned to Client within sixty days of said date, unless a dispute exists between Client and the Firm, in which event the Firm will be allowed to retain any unused portion of the retainer pending resolution of the dispute. "Conclusion of the case" shall be deemed the date we receive written termination of our employment, the effective date of any plan of reorganization confirmed in the bankruptcy case, the entry of an order dismissing the bankruptcy case. If the case is converted to a Chapter 7 liquidation, our engagement will be concluded after representing Client at the first meeting of creditors. Thereafter, separate arrangements will have to be made concerning any continuing employment of the Firm by Client. Notwithstanding the conclusion of the case, the Firm is entitled to retain any unused portion of the retainer until such time as its fees and costs are fixed by an order of the Bankruptcy Court, if such an order is required.

9.    It is the Firm's practice to charge professional fees for each attorney and paraprofessional. The billing rates vary according to the experience level of each professional, and may be changed by the Firm from time to time. Currently, the Firm's hourly rates for attorneys range from $325.00 to $625.00. Some rates may increase in the future, but please be advised that we will provide Client with a schedule of any rate increases prior to their taking effect. A schedule of current rates is attached hereto. We will, where possible, utilize the services of attorneys and paraprofessionals with lower billing rates for services suited to their skills and expertise.

10.    Also, Client will be charged and agrees to pay out-of-pocket costs incurred by this Firm for items such as photocopying, long-distance telephone charges, messenger charges, parking charges

and similar office expenses. A rate schedule is attached hereto. In addition, Client will be charged and agrees to pay travel expenses of the Firm, including airfare, lodging, meals and so forth.

11.     Whenever possible, we will seek to have only one attorney present at meetings and Court hearings, unless otherwise requested by you or it is deemed necessary to provide effective representation of you, e.g., requirements for appearance by local counsel. However, in light of the magnitude and complexity of your case as we understand it, it is likely there will be more than one attorney at most hearings and meetings. We will also endeavor to discuss with you, in advance, any matter that we believe will require significant amounts of attorney time and expense.

12.     You should also feel free to ask us at any time for estimates of the fees and charges for the work we will perform for you. We will be happy to provide you with such estimates, but they will be just estimates. We cannot guarantee estimated amounts because business transactions can often involve unexpected difficulties that take unforeseen time and effort to resolve. Likewise, litigation often involves unexpected difficulties beyond the Firm's control. We cannot anticipate the actual number, length or complexity of negotiations, conferences, motions, discovery matters or length of trial. These and other similar matters make the cost and outcome of any legal matter inherently unpredictable.

13.     Our ultimate compensation will be fixed by the Bankruptcy Court after notice of the request has been given to Client, all creditors and other parties entitled thereto. The Bankruptcy Court awards compensation from Chapter 11 estates based upon a combination of factors, including time expended, customary hourly rates of counsel, degree of difficulty, contingency of compensation, benefit to the estate and other similar factors.

14.     While the Firm will use its best efforts on Client's behalf, we do not and cannot guarantee the outcome or disposition of any matter with respect to which we are representing Client, and Client agrees to pay our fees and other charges regardless of any outcome. Client expressly acknowledges that the Firm does not guarantee, warrant, or otherwise provide assurance that Client

will be able to restructure its current obligations or emerge successfully from its Chapter 11 proceeding.

15.     During the administration of any bankruptcy proceeding, we may be required to submit detailed monthly reports to the Office of the United States Trustee until the time which we have expended, expressed in terms of our hourly billing rates and any costs incurred, equals the amount of any retainer. Thereafter, we may be required to submit monthly billing statements to the court and creditors as a condition of receiving monthly payments against fees. We will provide you with copies thereof. Client will likely be asked by the U.S. Trustee to review our fees on a monthly basis and to take a position as to the fairness and propriety thereof. Whether or not so requested, it should do so in the exercise of its duties as the Debtor-in-Possession. Client also retains the right to object to our fees and expenses at any time.

16.     The Firm is being engaged by Client only. The Firm's employment does not include the representation of any other person or legal entity. The Firm encourages each to consult independent counsel.

17.     Client has agreed to make itself and necessary personnel and professionals available to us to assist in factual inquiries and determinations with regard to our representation of Client. During the course of our engagement, we will provide specific information requests directly to Client to obtain required information. Client recognizes and acknowledges that in rendering services hereunder, the Firm will be using and relying on and assuming the accuracy of, without independent verification, data, material and other information (including, without limitation, financial information and testimony with respect to Client), furnished to us by or on behalf of Client and its agents, employees, representatives and professionals (the "Information"). The Firm does not assume responsibility for the accuracy and completeness of the Information and shall not be obligated to conduct any independent study or investigation as to the accuracy or completeness of the Information. Client represents and warrants that the Information will not contain any untrue statement of a material fact necessary to

make the statements therein, in light of the circumstances in which they were made, will not be false or misleading, and that the Information will be true, complete and correct in all material respects.

18.     Any time a lawyer represents two or more clients there is the possibility of conflicting interests. Client is requesting that we represent Client, which, including all affiliates known to us, consists of about 35 related entities. We are not aware of any conflicts at this time. Client understands that by retaining the Firm to represent Client and its affiliates, we may face conflicting demands or interests. Client and each affiliate waives any conflict between them now existing or reasonably foreseeable so that we may represent two or more or all of them with respect to the same matter. However, if it later appears that two or more of the related entities have irreconcilable and non-waivable conflicts of interest, or that conflicts have not been waived, we may be required to withdraw from some or all of our representation of Client or one or more affiliates, the Client so consents.

19.     Client may discharge the Firm as its counsel at any time. The Firm may withdraw at any time with Client's consent or for good cause shown without Client's consent. Good cause includes, but is not limited to, (a) Client's breach of this agreement, (b) Client's refusal or failure to cooperate with the Firm or any fact or circumstance that would render the Firm's continuing representation of Client unlawful or unethical, (c) Client's failure to promptly pay the Firm's fees and costs allowed by order of the Bankruptcy Court, and (d) Client's unjustified refusal to follow the Firm's advice regarding any material matter. During the course of the Chapter 11 case, if the Firm seeks to withdraw as counsel and Client does not consent, the Firm will only withdraw upon obtaining an order of the Bankruptcy Court, which order will only be sought by the Firm after providing Client with appropriate notice. Upon withdrawal, Client will have to obtain substitute counsel. Nothing contained herein shall limit or prevent the Firm from making any appropriate motion to withdraw as counsel should the Firm in its legal or business judgment determine that to be necessary or appropriate. Notwithstanding the Firm's withdrawal or Client's discharge of the Firm, Client shall remain obligated to pay the Firm's billed and allowed fees and costs incurred in this matter.

20.     Upon discharge or withdrawal of the Firm as counsel to Client, Client agrees that it shall promptly execute and deliver to the Firm a substitution of attorney form.

21.     In the event Client requests that the Firm transfer possession of Client's file to Client or to a third party, such request shall be made in writing and Client or the third party shall acknowledge receipt of the file in writing. The Firm is authorized to retain a copy of Client's file for the Firm's use.

22.     Upon conclusion of our engagement, if Client does not request the return of Client's file, the Firm will maintain Client's file for a period of three years, after which time the Firm may destroy the file after giving notice to Client. If Client desires to have the file maintained for a period of longer than three years, separate arrangements with the Firm must be made or Client must retrieve and maintain the file.

23.     As required by California law, Client is hereby advised that the Firm maintains errors and omissions insurance coverage applicable to the services to be rendered.

24.     This Agreement is made in the State of California and the laws of the State of California shall govern the validity, construction, enforcement and interpretation of this Agreement. Any dispute arising under this Agreement must be filed before an appropriate court or arbitration organization located within Los Angeles County, California.

25.     We trust that Client will find our professional relationship to be satisfactory and beneficial. Please never hesitate to contact us immediately with any questions or problems.

26.     This letter evidences and constitutes the entire understanding between Client and the Firm regarding the Firm's employment. By executing this agreement, you acknowledge that you have read carefully and understand all of its terms. The agreement cannot be modified except by further written agreement signed by each party.

27.     If you have any questions about the foregoing, please contact the undersigned. However, we do not represent you with respect to this Agreement. Please feel free to obtain independent legal advice concerning this Agreement.

28.     If Client is in agreement with the foregoing, and it accurately represents its understanding of the retainer agreement with the Firm, please execute the enclosed copy of this letter and return it to the undersigned.

Sincerely,


DANNING, GILL, DIAMOND & KOLLITZ, LLP
 a limited liability partnership
 composed of professional corporations


By: _____
     David A. Gill


THE FOREGOING TERMS AND CONDITIONS
ARE UNDERSTOOD AND AGREED TO

MERUELO MADDUX PROPERTIES, INC.


By: _____
     John Charles Maddux, President

Enclosures:     Fee schedule
                Expense schedule
                Privacy Policy Notice

# DANNING, GILL, DIAMOND & KOLLITZ, LLP
## YEAR 2009 SCHEDULE OF
## RATES FOR PROFESSIONALS

| INITIALS | ATTORNEY NAME | HOURLY RATE |
|----------|---------------|-------------|
| DAG | David A. Gill | $625.00 |
| RKD | Richard K. Diamond | 580.00 |
| HK | Howard Kollitz | 580.00 |
| JJB | John J. Bingham, Jr. | 580.00 |
| EPI | Eric P. Israel | 525.00 |
| KBP | Kathy Bazoian Phelps | 525.00 |
| GES | George E. Schulman | 580.00 |
| NK | Nancy Knupfer | 495.00 |
| RAH | Robert A. Hessling | 525.00 |
| WKO | Walter K. Oetzell | 525.00 |
| JJJ | James J. Joseph (Of Counsel) | 580.00 |
| UOR | Uzzi O. Raanan | 450.00 |
| SJS | Steven J. Schwartz | 395.00 |
| MFK | Matthew F. Kennedy | 370.00 |
| JNT | John N. Tedford, IV | 425.00 |
| AED | Aaron E. de Leest | 325.00 |

## PARALEGALS/LEGAL ASSISTANTS/LAW CLERKS

| | | |
|----------|---------------|-------------|
| DK | Diana Kealer | 185.00 |
| VGR | Valerie G. Radocay | 185.00 |
| CAB | Cheryl Blair | 185.00 |
| SP | Aracelli Panta | 185.00 |
| JR | Jessica Ramos | 185.00 |
| ZS | Zev Shechtman | 185.00 |

317676.1   0705

## 2009 RATES FOR REIMBURSEMENT OF EXPENSES

Reprographic Expense (Photocopy, Scan, Print)..............................................$ .20 per page

Facsimile - Incoming ......................................................................................$ .20 per page

Facsimile - Outgoing.......................................................................................$1.00 per page

Mileage .......................................................IRS Rate for Business Use (currently $ .585 per mile)

Telephone.................................................................................................................Actual Cost

Postage ....................................................................................................................Actual Cost

Messengers...............................................................................................................Actual Cost

Overnight Mail.........................................................................................................Actual Cost

On-line Computer Research......................................................................................Actual Cost

Filing Fees................................................................................................................Actual Cost

Deposition or Witness Fees ......................................................................................Actual Cost

Parking .....................................................................................................................Actual Cost

319394.1

**Privacy Policy Notice**

Attorneys who provide legal services involving financial matters of clients may now be required by federal law to inform their clients of their policies regarding the privacy of client information. The purpose of this notice is to explain what the Firm will be doing with the financial information that Client provides to Firm, and the ways that the Firm will protect Client's privacy.

- **Types of Nonpublic Personal Information The Firm Collect**

The Firm collects nonpublic personal information about you that is provided to us by you or obtained by us in the course of providing you with legal services that you have requested. This information, in some cases, includes information about Client's personal finances and property.

- **Disclosure of Information**

The Firm discloses nonpublic personal information about you only to individuals or entities necessary in order to provide you with the legal services that you have requested. For instance, Firm's staff may have access to Client's nonpublic personal information in order for us to efficiently provide you with the legal services you have requested. In some situations the Firm may provide information to another organization (such as your accountant, your realtor, or insurance company) in order to obtain information or assist in providing the legal services you have requested.

The Firm does not disclose any nonpublic personal information about you to anyone, except as is necessary in order to provide you with the legal services that you have requested.

- **You Have The Right to Prohibit Disclosure**

If for any reason you do not want us to provide nonpublic personal information about you to other parties in the course of providing you with legal services, you may direct us not to make those disclosures. If you wish to direct us not to disclose information, please call Jackie Dahlstrum at 310-277-0077.

- **Your Privacy Is Important to Us**

The Firm retains records and files relating to the professional services you have asked us to provide. In order to guard Client's nonpublic personal information, the Firm maintains physical, electronic, and procedural safeguards that comply with the Code of Professional Responsibility that governs Firm's profession. Please call us with any questions that you have about protecting your privacy.

EXHIBIT "2"

## ADDENDUM TO ATTORNEY RETAINER LETTER
## AND WAIVER OF CONFLICTS

This agreement is by and between the undersigned ("Affiliate Client") on the one hand and Danning, Gill, Diamond and Kollitz, LLP ("Firm") on the other and is made with and is made with regard to the following facts.

## AGREED FACTS

On or about February 10, 2009, the Firm and Meruelo Maddux Properties, Inc. ("MMPI") entered into a legal representation agreement ("Retainer Agreement") concerning the provision of legal services involving the possible filing for relief under Chapter 11 of the Bankruptcy Code of MMPI and one or more of its many affiliates (MMPI and all of its affiliates, including Affiliate Client are sometimes herein described in the aggregate as "Affiliated Entities").

A.  Affiliate Client has read the Retainer Agreement and has consulted with counsel of its choice if it desired to do so.

B.  Affiliated Entities including Affiliate Client have been advised that the Firm currently represents the Department of Water and Power of the City of Los Angeles ("City") with regard to certain bankruptcy matters, and from time to time has represented other agencies or departments of the City.

C.  The Firm has been advised that some or all the Affiliated Entities may have claims against one or more of the other Affiliated Entities including but not necessarily limited to claims for monies advanced between or among them in the course of their business operations. The Firm has been advised that to Company's current knowledge there is no dispute as to the amount and nature of such claims for moneys so advanced.

D.   Affiliate Client desires that the Firm represent it for the purposes described in
paragraphs 1 and 2 of the Retainer Agreement.

Accordingly, for valuable consideration, including the agreement of the parties and other
Affiliated Entities, the undersigned agree as follows:

## AGREEMENT

1.   Recitals A through D above are incorporated herein by this reference as though set forth
in full.

2.   Affiliate Client agrees to be bound jointly and severally and is bound by the terms and
conditions of the Retainer Agreement.

3.   Affiliate Client  and MMPI   acknowledge that the Rules of Professional Conduct of the
State Bar of California require  that an attorney shall not, without the informed written consent of
the clients after disclosure: (a) accept representation of more than one client in a matter in which
the interests of the clients potentially conflict; (b) accept or continue representation of more than
one client in a matter in which the interests of the clients actually conflict; or, (c) represent a
client in a matter and at the same time in a separate matter accept as a client a person or entity
whose interest in the first matter is adverse to the clients in the first matter.  The Signatories to
this Agreement acknowledge that the Rules of Professional Conduct of the State Bar of
California require that an attorney shall not, without the informed written consent of a client,
accept employment adverse to a client where, by reason of the representation of the client, the
member has obtained confidential information which is material to the employment.  To the
extent that they may lawfully waive the protections of the foregoing, the Affiliate Client and
MMPI hereby do so.  To the extent that any provision of the waiver is inconsistent with the terms
of this letter, the provisions of the waiver will control.

4.   MMPI and Affiliate Client, recognizing that their respective interests may differ as to
certain matters, waive any conflict of interest arising out of any representation consistent with

2

00028

the Retainer Agreement as modified by this document, over those matters in the belief that the Firm's joint representation of the Affiliate Clients and MMPI in this matter is in their overall best interest. Without limitation Affiliate Client and MMPI waive any claim against the Firm that Firm has any conflict of interest in representing MMPI or any Affiliated Client or Clients Provided, however, Firm may not represent MMPI or any Affiliated Entity t against any other Affiliated Entity or MMPI.

5. Affiliate Client waives any claim against the Firm that it might have or obtain by reason of the Firm's representation in other matters of the City. Firm may not represent any of one or more of the Affiliated Entities against the City or vice versa.

Executed this ____ day of March, 2009

Read, understood and agreed:

Meruelo Maddux Properties, Inc.

By: _____
    John Charles Maddux,
    President

Meruelo Maddux Properties, L.P.

By: _____

Meruelo Maddux Construction, Inc.

By: _____

Meruelo Maddux Management, LLC

By: _____

Read, understood and agreed:

Alameda North Parking, LLC
Alameda Produce Market, LLC
Santa Fe & Washington Market, LLC
788 South Alameda, LLC
905 8th Street, LLC
1828 Oak Street, LLC
2640 Washington Boulevard, LLC
9901 Alameda, LLC
Merco Group – 4th Street Center, LLC
Merco Group – 146 E. Front Street, LLC
Merco Group – 425 West 11th Street, LLC
Merco Group – 620 Gladys Avenue, LLC
Merco Group – 801 E. 7th Street, LLC
Merco Group – 1211 E. Washington Boulevard, LLC
Merco Group – 1225 E. Washington Boulevard, LLC
Merco Group – 1308 So. Orchard, LLC
Merco Group – 1500 Griffith Avenue, LLC
Merco Group – 2001-2021 West Mission Boulevard, LLC
Merco Group – 2529 Santa Fe Avenue, LLC
Merco Group – 3185 E. Washington Boulevard, LLC
Merco Group – 5707 S. Alameda, LLC
Merco Group – 2035 Camfield Avenue, LLC
Merco Group – 2040 Camfield Avenue, LLC
Merco Group – Ceres Street Produce, LLC
Merco Group – Little J, LLC
Merco Group, LLC

3

MMP Ventures, LLC

By: _____

Merco Group – Overland Terminal, LLC
Merco Group – Southpark, LLC
Meruelo Baldwin Park, LLC
Meruelo Chinatown, LLC
Meruelo Farms, LLC
Meruelo Maddux – 3rd & Omar Street, LLC
Meruelo Maddux – 230 W. Avenue 26, LLC
Meruelo Maddux – 336 W. 11th Street, LLC
Meruelo Maddux – 420 Boyd Street, LLC
Meruelo Maddux – 500 Mateo Street, LLC
Meruelo Maddux – 555 Central Avenue, LLC
Meruelo Maddux – 817-825 S. Hill Street, LLC
Meruelo Maddux – 845 S. Flower Street, LLC
Meruelo Maddux – 915-949 S. Hill Street, LLC
Meruelo Maddux – 1000 E. Cesar Chavez, LLC
Meruelo Maddux – 2000 San Fernando Road, LLC
Meruelo Maddux – 2415 E. Washington Blvd., LLC
Meruelo Maddux – 3000 E. Washington Blvd., LLC
Meruelo Maddux – 5500 Flotilla Street, LLC
Meruelo Maddux – Lugo Washington, LLC
Meruelo Maddux – California Future Fund, LLC
Meruelo Maddux – De La Rosa Partners, LLC
Meruelo Maddux - Mission Boulevard, LLC
Meruelo Maddux Properties – 306-330 N. Avenue 21, LLC
Meruelo Maddux Properties – 760 So. Hill Street, LLC
Meruelo Maddux Properties – 1009 N. Citrus Ave., Covina, LLC
Meruelo Maddux Properties – 1060 N. Vignes, LLC
Meruelo Maddux Properties - 600-612 Wall Street, LLC
Meruelo Maddux Properties – 1800 E. Washington Blvd., LLC
Meruelo Maddux Properties – 1919 Vineburn Street, LLC
Meruelo Maddux Properties – 2131 Humboldt Street, LLC
Meruelo Maddux Properties – 2951 Lenwood Road, LLC
Meruelo Maddux Properties – 12385 San Fernando Road, LLC
Meruelo Wall Street, LLC
MMPI Fund I, LLC
National Cold Storage, LLC
Funes Architectural, LLC
Santa Fe Commerce Center, Inc.
Wall Street Market, LLC

MMP VENTURES, LLC, sole member of each of the above
limited liability companies

By: _____
    Richard Meruelo
    Chief Executive Officer

334494.01 [XP] 25162

| | |
|---|---|
| In re: MERUELO MADDUX PROPERTIES, INC., Debtor(s). | CHAPTER: 11 CASE NUMBER: 1:09-bk-13356-KT |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067. A true and correct copy of the documents described as follows: **APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION TO RETAIN DANNING, GILL, DIAMOND & KOLLITZ, LLP AS REORGANIZATION COUNSEL; DECLARATION OF DISINTERESTEDNESS OF JOHN J. BINGHAM JR.**will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On April 20, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served)**:** On April 20, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Kathleen Thompson, U.S. Bankruptcy Court, 21041 Burbank Blvd., Suite 305, Woodland Hills, CA 91367

☒Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served)**:** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 20, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 20, 2009 | Cindy Cripe | *[signature]* |
|---|---|---|
| Date | Type Name | Signature |

15

1 | **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

2 | Office of the United States Trustee: Jennifer L. Braun, Jennifer.L.Braun@usdoj.gov
Counsel for Bank of America:  Donald L. Gaffney, dgaffney@swlaw.com; Eric S. Pezold,
3 |   epezold@swlaw.com; Jasmin Yang, jyang@swlaw.com; kcollins@swlaw.com
Counsel for California Bank and Trust:  Brian T. Harvey, bharvey@buchalter.com,
4 |   IFS_filing@buchalter.com
Counsel for Capmark Finance Inc.:  John A Graham, jag@jmbm.com
5 | Counsel for Cathay Bank:  Michael Fletcher, MFletcher@Frandzel.com, efiling@frandzel.com,
   shom@frandzel.com; Bernard R Given, efiling@frandzel.com, bwilson@frandzel.com,
6 |   bgiven@frandzel.com
Counsel for Chinatrust Bank:  Steven K Linkon, slinkon@rcolegal.com
7 | Counsel for East West Bank:  Iain A W Nasatir, jwashington@pszjlaw.com,
   hrafatjoo@pszjlaw.com
8 | Counsel for Richard Meruelo: Martin J Brill, mjb@lnbrb.com; Craig M Rankin, cmr@lnbrb.com
Counsel for United Commercial Bank:  Elmer D Martin, elmermartin@msn.com
9 | Counsel for Yoshiaki & Fumiko Murakami:  Brian L Davidoff, bdavidoff@rutterhobbs.com,
   calendar@rutterhobbs.com; jreinglass@rutterhobbs.com; Duane Kumagai,
10 |   dkumagai@rutterhobbs.com, calendar@rutterhobbs.com
Michael S Kogan, mkogan@ecjlaw.com
11 | Lawrence Peitzman, lpeitzman@pwkllp.com

12 |

13 | **II. SERVED BY U.S. MAIL**

14 | Debtors: Meruelo Maddux Properties, Inc., Attn: Todd W. Nielsen, 761 Terminal Street, Building 1, 2nd Floor, Los Angeles, CA  90021

15 | U.S. Trustee, Atttn: Jennifer L. Braun, 21051 Warner Center Lane, Suite 115, Woodland Hills, CA 91367

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

336044.02 [XP]    25195