1   Donald L. Gaffney (Admitted Pro Hac Vice)
    SNELL & WILMER L.L.P.
2   One Arizona Center
    400 E. Van Buren
3   Phoenix, AZ 85004-2202
    Phone:      (602) 382-6254
4   Facsimile:  (602) 382-6070
    E-Mail:     dgaffney@swlaw.com
5
    Eric S. Pezold (#255657)
6   Jasmin Yang (#255254)
    SNELL & WILMER L.L.P.
7   600 Anton Blvd, Suite 1400
    Costa Mesa, CA 92626
8   Phone:      (714) 427-7000
    Facsimile:  (714) 427-7799
9               epezold@swlaw.com
                jyang@swlaw.com
10
11  Counsel for Bank of America, N.A.

12              UNITED STATES BANKRUPTCY COURT

13  CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

14

15  In Re:                          | Case No.: 1:09-bk-13356-KT
                                     | Jointly Administered
16  MERUELO MADDUX PROPERTIES,       | Chapter 11
    INC., et al.,
17
                                     | **DECLARATION OF MICHAEL ABERGEL**
18            Debtors-in-Possession. | **IN SUPPORT OF BANK OF AMERICA**
                                     | **N.A.'S OPPOSITIONS TO DEBTOR'S**
19                                   | **MOTIONS: (1) TO USE CASH**
                                     | **COLLATERAL; AND (2) TO APPROVE**
20                                   | **CASH MANAGEMENT SYSTEM**

21                                   | Date:  May 1, 2009
    ☒ Affects All Debtors           | Time:  9:30 a.m.
22                                   | Place: Courtroom 301
                                     |        21041 Burbank Blvd.
23                                   |        Woodland Hills, CA
24
                                     | Judge:  Honorable Kathleen Thompson
25
        Michael Abergel hereby makes this Declaration in support of Bank of America N.A.'s

26  ("BofA's") Opposition to Debtors' Motions: (1) To Use Cash Collateral; and (2) To Approve

27  Cash Management Systems and states as follows:

28

37414.0853\YANGJ\SWDMS\9944266

1.       I am the owner of Abergel & Associates, Inc. ("AAI"). I have personal knowledge of the facts set forth herein an am authorized by AAI to make this declaration.

2.       I am certified to conduct real property appraisals in the State of California. A copy of my Qualifications is attached to the 760 Hill St. Appraisal, which is defined and referred to in the subsequent paragraphs of this Declaration.

3.       AAI was retained by BofA to perform an appraisal of certain real property located at 760 S. Hill Street, Los Angeles, California (the "760 S. Hill St. Property").

4.       On September 11, 2008, AAI performed an inspection of the 760 S. Hill St. Property.

5.       On October 8, 2008, AAI submitted an "Appraisal Report" of the 760 S. Hill Street Property (the "760 S. Hill St. Appraisal) to BofA. A true and correct copy of the 760 S. Hill St. Appraisal is attached hereto as Exhibit 1.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this _16_ day of April, 2009.

Michael Abergel

Snell & Wilmer

# APPRAISAL REPORT

## APARTMENT COMPLEX + RETAIL SPACE

325 W. 8th Street
Los Angeles, California

---

### THE UNION LOFTS





*ABERGEL & ASSOCIATES*
*Real Estate Appraisal & Consulting*

# APPRAISAL REPORT

## APARTMENT COMPLEX + RETAIL SPACE

325 W. 8th Street
Los Angeles, California

---

### THE UNION LOFTS

### SUBMITTED TO:

Mr. Bryan Vick, MAI
Vice President, Market Manager
*BANK OF AMERICA, N.A. - REAL ESTATE RISK ASSESSMENT*
333 S. Hope Street, 19th Floor [CA9-193-19-11]
Los Angeles, California 90071
Telephone No. 213-621-7381

### SUBMITTED BY:

*ABERGEL & ASSOCIATES INCORPORATED*
26560 Agoura Road, Suite 203
Calabasas, California 91302
Telephone No. 818-225-6131

File No.: 28492

### DATE OF VALUE:

September 11, 2008 - Date of Inspection (Market Value As Is)

### DATE OF REPORT:

October 8, 2008

# ABERGEL & ASSOCIATES, INC.
*Real Estate Appraisal & Consulting*

October 8, 2008

Mr. Bryan Vick, MAI
Vice President, Market Manager
**BANK OF AMERICA, N.A. - REAL ESTATE RISK ASSESSMENT**
333 S. Hope Street, 19th Floor [CA9-193-19-11]
Los Angeles, California 90071
Telephone No. 213-621-7381

RE:    Appraisal of an Apartment Complex + Retail Space
       The Union Lofts
       325 W. 8th Street
       Los Angeles, California
       Appraisal Services Project ID: 07-003635-01-1

Dear Mr. Vick:

In accordance with your request, we have made an examination of the above-referenced property, for the purpose of estimating the requested market value estimates of the property and the proposed improvements.  Specifically requested, and provided in this report, are:

- As-Is Market Value
- Prospective Value Upon Stabilization
- Insurable Cost

It is noted that Abergel & Associates appraised the subject property as of April 26, 2007.  At that time, the subject project was under construction.

The subject consists of a 12-story + basement apartment building, with retail space on the basement and ground floors.  There are 92 apartment units and 10,508 square feet of retail space.  The apartment unit mix includes studio units ranging from 502-857 square feet; one bedroom units ranging from 628-1,603 square feet; and two bedroom units ranging from 1,243-1,816 square feet. It is noted that the owner/developer of the subject property utilizes the address of 760 S. Hill Street. This appraisal identifies the subject property as 325 W. 8th Street, which was obtained from the Los Angeles County records.

This appraisal is presented in a comprehensive report format.  This report is intended to comply with the reporting requirements set forth under Standards Rule 2-2 of the Uniform Standards of Appraisal Practice (USPAP), and has been prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP), the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), and the appraisal requirements of the client.  As such, it presents a complete discussion

of the data, reasoning and analysis that were used in the appraisal process to develop the appraiser's opinion of value.

As a result of this investigation and an analysis of matters pertinent to the property value, we have concluded to the market values of the subject as follows:

**As-Is Market Value, as of September 11, 2008**
**$25,200,000**

**Prospective Value Upon Stabilization, as of October 11, 2009**
**$27,100,000**

**Insurable Cost**
**$23,980,000**

**Extraordinary Assumptions**

1) It is an extraordinary assumption of this appraisal report that the unit mix information (and unit sizes) as derived from the developer's schedule is accurate.

2) In accordance with our discussions with the developer, it is an extraordinary assumption of this appraisal report that there are no Mello Roos or Community Facility District assessments which encumber the subject site.

3) It is an extraordinary assumption of this report that the value of the property is not impacted by any hazardous soil conditions, and the site is of adequate load bearing capacity for the proposed improvements. We are not experts in this field and we recommend the services of an expert be employed. It is an extraordinary assumption of this appraisal report that the site is of adequate load bearing capacity to support the proposed improvements.

Your attention is invited to the accompanying report, where is set out the assumptions, limiting conditions, descriptions, factual data, computations, photographs, analysis, and discussions, from which the valuation conclusion was derived.

Respectfully submitted,

*ABERGEL & ASSOCIATES INC.*

Michael Abergel, MAI
State Cert. # AG014772
Expiration 1/14/2009

Kevin A. Kindelt, MAI
State Cert. #AG019498
Expiration 2/6/2010

## TABLE OF CONTENTS

Title Page
Letter of Transmittal
Table of Contents
Photographs of the Subject Property

CERTIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SALIENT FACTS AND CONCLUSIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

SCOPE OF THE APPRAISAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

DEFINITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ASSUMPTIONS AND LIMITING CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

REGIONAL ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

AREA ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

MARKET CONDITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

MARKETING TIME. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 95

SITE DESCRIPTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

IMPROVEMENT DESCRIPTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 103

ASSESSED VALUATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

HIGHEST AND BEST USE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 109

VALUATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118

COST APPROACH - PMV UPON STABILIZATION. . . . . . . . . . . . . . . . . . . . . . . . . . 119

INSURABLE VALUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

INCOME CAPITALIZATION APPROACH - PMV UPON STABILIZATION. . . . . . . . . . . 126

SALES COMPARISON APPROACH - PMV UPON STABILIZATION. . . . . . . . . . . . . . . 171

RECONCILIATION AND FINAL VALUE CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 185

AS-IS MARKET VALUE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 187

## CONTENTS OF THE ADDENDA

| | |
|---|---|
| **EXHIBIT A:** | Qualifications of the Appraiser |
| **EXHIBIT B:** | Engagement Letter |
| **EXHIBIT C:** | Rent Roll |
| **EXHIBIT D:** | Proforma Income & Expenses |
| **EXHIBIT E:** | Floor Plans & Storage Unit Plans |
| **EXHIBIT F:** | Unit Plans |

**CERTIFICATION**

We certify that, to the best of our knowledge and belief:

1) The statements of fact contained in this report are true and correct.

2) The reported analysis, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, unbiased professional analysis, opinions, and conclusions.

3) We have no present or prospective interest in the property that is the subject of this report, and we have no personal interest or bias with respect to the parties involved.

4) We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5) Our engagement in this assignment was not contingent upon developing or reporting predetermined results. Nor was this appraisal assignment based on a requested minimum valuation, a specific valuation, or the approval of a loan.

6) Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value estimate, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7) Our analyses, opinions, and conclusions were developed were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Practice of the Appraisal Institute, the Uniform Standards of Professional Appraisal Practice (USPAP) and all current federal regulations.

8) We have made a personal inspection of the property that is the subject of this report.

9) No one other than Joe Rizzo (AT042567 - exp May 17, 2009) provided professional assistance to the persons signing this report. Mr. Rizzo conducted market and sales research.

10) The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

11) We have the knowledge and experience to complete this assignment competently and have appraised this property type before.

12) The appraisers did not base, either partially or completely, the analysis, or estimate of value on the race, color, religion, sex, handicap, familial status, health or national origin of either the present or prospective owners, occupants, or users of the subject property or of the present or prospective owners, occupants or users of the properties in the vicinity of the subject property.

13) As of the date of this report, Michael Abergel and Kevin A. Kindelt have completed the requirements of the continuing education program of the Appraisal Institute, and Michael Abergel (AG014772 - exp 1/14/2009) and Kevin A. Kindelt (AG019498 - exp 2/6/2010) are California State Certified General Real Estate Appraisers.

Respectfully Submitted,
*ABERGEL & ASSOCIATES INCORPORATED*


Michael Abergel, MAI
State Cert. # AG014772
Expiration 1/14/2009

Kevin A. Kindelt, MAI
State Cert. #AG019498
Expiration 2/6/2010

1

SUBJECT PHOTOGRAPHS



Street scene facing north on Hill Street.



Street scene facing south on Hill Street.



Street scene facing east on 8th Street.



Street scene facing west on 8th Street.



View of subject.



View of valet parking area.

SUBJECT PHOTOGRAPHS



Additional view of valet parking area.



View of lobby area.



Additional view of lobby area.



View of rooftop lounge area.



Additional view of rooftop lounge area.



Additional view of rooftop lounge area.

SUBJECT PHOTOGRAPHS



View of sink and refrigerator at the rooftop lounge area.



View of barbeque at the rooftop lounge area.



View of ceiling in restaurant space.



View of proposed private dining room.



View of ground floor retail space.



Additional view of ground floor retail space.

SUBJECT PHOTOGRAPHS



Additional view of ground floor retail space.



View of entry way to valet parking.



View of entry gate to valet parking.



View of elevator area.



View of entry way to lounge area.



View of entry way to private dining room.

SUBJECT PHOTOGRAPHS



View of lounge area behind vault.



Additional view of lounge area behind vault.



View of vault door within lounge area.



View of vault door in basement.



View of resident storage space on 2nd level.



View of resident storage areas.

SUBJECT PHOTOGRAPHS



Additional view of resident storage areas.



View of resident storage spaces on 3rd level.



View of marble bar on basement level.



View of marble staircase leading to basement level.



View of conference room.



View of fitness room.



View of patio within model.



View of patio within penthouse. (Unit 1110)



View of living area within model.



View of living area within unit 308.



View of living area within Unit 905.



View of living area within Unit 910.

SUBJECT PHOTOGRAPHS



View of living area within a unit on 4th floor.



View of kitchen within model.



View of kitchen within penthouse. (Unit 1110)



View of kitchen within Unit 308.



View of kitchen within Unit 902.



View of kitchen within Unit 905.

SUBJECT PHOTOGRAPHS



View of kitchen within Unit 907.



View of kitchen within Unit 910.



View of kitchen within a unit on 4th floor.



View of bedroom within Unit 308.



View of bedroom area within Unit 907.



View of bedroom within model.

SUBJECT PHOTOGRAPHS



View of bedroom within penthouse. (Unit 1110)



View of bedroom within Unit 902.



View of second bedroom within penthouse. (Unit 1110)



View of bedroom partition within Unit 902.



View of closet within model.



View of closet within penthouse. (Unit 1110)

SUBJECT PHOTOGRAPHS



View of closets within Unit 308.



View of bathroom within leasing office.



View of bathroom within model.



View of bathroom within penthouse. (Unit 1110)



View of bathroom in Unit 308.



View of bathroom in Unit 907.

## PREMISES OF THE APPRAISAL

## SALIENT FACTS AND CONCLUSIONS

| | |
|---|---|
| Property Type: | 92 Unit Apartment Complex + Retail Space (Under Construction) |
| Location: | 325 W. 8th Street, Los Angeles, California |

Assessor's
Parcel Number:     5144-014-045. The subject owner had a condominium map recorded on the subject property. The Los Angeles County Assessor is currently in the process of creating new parcel numbers for the condominium units. According to the assessor's web site, the new parcel numbers will be 5144-014-046 through 139. For the purpose of our analysis, we have utilized parcel number 5144-014-045.

Site:     A 14,035 square foot (0.322 acre) site that is fully improved.

Improvements:     The subject consists of a 12-story + basement apartment building, with retail space on the basement and ground floors. There are 92 apartment units and 10,508 square feet of retail space. The apartment unit mix includes studio units ranging from 502-857 square feet; one bedroom units ranging from 628-1,603 square feet; and two bedroom units ranging from 1,243-1,816 square feet.

Zoning:     C5-4D (Commercial), the City of Los Angeles.

Apparent Owner:     The current owner is identified as Meruelo Maddux Properties.

Census Tract:     2073.00

Thomas Guide:     634-E5 (Los Angeles County)

Property History:     According to public records, title to the subject property changed from Meruelo Maddux properties - 760 South Hill Street to the current ownership on October 4, 2007 for an undisclosed sum. It appears these two entities are related and this was an inter-party transfer, therefore, the transfer of title was a non-arms length transaction.

Meruelo Maddux properties - 760 South Hill Street acquired the subject property on June 13, 2005 for $12,000,000, from 760 Hill Partners LLC. 760 Hill Partners had acquired the property on December 17, 2003 from Thunderbird Productions, Inc. for $4,850,000. The appraisers are aware of no arm's-length transfers that have occurred in the past three years.

SALIENT FACT AND CONCLUSIONS (CONTINUED)

| | |
|---|---|
| Dates of Value Estimates: | Market Value As Is - September 11, 2008<br>Prospective Value Upon Stabilization - October 11, 2009 |
| Date of Report: | October 8, 2008 |
| Rights Appraised: | Leased Fee Estate |

| Highest and Best Use: | | |
|---|---|---|
| | As If Vacant: | Use site for parking on an interim basis until market conditions warranted developing a mixed-use project. |
| | As Improved: | Existing apartments and ground floor retail space. |

## VALUE CONCLUSIONS

### As-Is Market Value, as of September 11, 2008

**Value Conclusion:**                 **$25,200,000**

### Prospective Value Upon Stabilization, as of October 11, 2009

| | |
|---|---|
| Cost Approach | $34,000,000 |
| Income Capitalization Approach: | $27,100,000 |
| Sales Comparison Approach: | $30,000,000 |

**Value Conclusion:**                 **$27,100,000**

**Insurable Cost:**                     **$20,920,000**

### Intended User/Use of the Appraisal

The function of this appraisal is for use by the client, Bank of America, as an aid in proper underwriting, loan classification and/or disposition of the asset.

## Introduction

The 2008 USPAP Scope of Work Rule[1] states:

For each appraisal, appraisal review, and appraisal consulting assignment, an appraiser must:

1) identify the problem to be solved;
2) determine and perform the scope of work necessary to develop credible assignment results; and
3) disclose the scope of work in the report.

An appraiser must properly identify the problem to be solved in order to determine the appropriate scope of work. The appraiser must be prepared to demonstrate that the scope of work is sufficient to produce credible assignment results. An appraiser must gather and analyze information about those assignment elements that are necessary to properly identify the appraisal, appraisal review or appraisal consulting problem to be solved.

## Scope of Work Acceptability

The scope of work must include the research and analyses that are necessary to develop credible assignment results. The Scope of Work Rule establishes two benchmarks for measuring the acceptability of the scope of work, both of which need to be met. The scope of work is acceptable when it meets or exceeds both (1) the expectations of parties who are regularly intended users for similar assignments; and (2) what an appraiser's peers' actions would be in performing the same or a similar assignment. An acceptable scope of work must satisfy both benchmarks.

An appraiser must not allow assignment conditions to limit the scope of work to such a degree that the assignment results are not credible in the context of the intended use.

An appraiser must not allow the intended use of an assignment or a client's objectives to cause the assignment results to be biased.

This appraisal is presented in a comprehensive format which has been prepared in accordance with the Uniform Standards of Professional Appraisal Practice (USPAP), the Office of Thrift Supervision (OTS), the Office of the Comptroller of the Currency (OCC), the Federal Deposit Insurance Corporation (FDIC), the Financial Institutions Reform, Recovery, & Enforcement Act (FIRREA), and the appraisal requirements of the client. The appraisal report is intended to be an "appraisal assignment," as defined by the "USPAP" of the Appraisal Foundation; i.e., the intention was that the appraisal service was performed in such a manner that the results of the analysis, opinions, or conclusions are that of a disinterested third party. The depth of analysis is intended to reflect the complexity of the real estate and nature of the assignment.

---

[1]      USPAP 2008, Page 12.

To the best of the appraiser's ability, the analysis, opinion, and conclusions were developed and the report was prepared in accordance with current Federal Regulatory Appraisal Regulations and the USPAP. In order to conform to the requirement stated above, the appraiser has undertaken the following appraisal procedures:

**Data Collection**

General Data:  The social economic and governmental and environmental data in relation to the region, city and neighborhood were obtained from the City of Los Angeles, County of Los Angeles, and sources as compiled by the Planning Department and the Chamber of Commerce.

In order to support the marketing time and the discount and capitalization rates, information from numerous sources and surveys was collected.  In addition, numerous investors in the market have been interviewed.

**Specific Data**

Subject Property:  The client/property owner provided the following information with regard to the subject property:

1) Proforma Income & Expenses
2) Rent Roll
3) Residential Traffic Report
4) Actual Income & Expenses for March-August 2008
5) Brochure with Unit Plans
6) Copy of Parking License Agreement
7) Copy of Residential Lease Agreement
8) Copy of Certificate of Occupancy
9) Floor Plans & Storage Unit Plans
10) Draft Lease for Retail Space

Comparables:  Land sales, improved sales and rental comparables were obtained from the following sources:

1) The appraiser's own files
2) Costar Group
3) First American Fast Web / Metroscan
4) Broker interviews
5) Marketing time discussed with parties to sales or leases.
6) Discount and Capitalization rates: confirmed with parties of sales.

Governmental Agencies:  Planning, zoning, and building department information was considered.