ORIGINAL

1  Michael Gerard Fletcher (State Bar No. 070849)
     mfletcher@frandzel.com
2  Bernard R. Given II (State Bar No. 134718)
     bgiven@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
4  Seventeenth Floor
   Los Angeles, California 90048-4920
5  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
6

7  Attorneys for Secured Creditor Cathay Bank

FILED
APR 20 2009

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             SAN FERNANDO VALLEY DIVISION

11

12  In re                                    CASE NO. 1:09-bk-13356-KT

13  MERUELO MADDUX PROPERTIES, INC.,         Chapter 11
    et al.,[1]
14                                           (Jointly Administered)
         Debtor and Debtor-in-Possession.
15
                                             **MASTER EXHIBIT APPENDIX FOR:**
16    ☒ Affects all Debtors.
                                             **1.  CATHAY BANK'S OPPOSITION TO
17    ☐ Affects the following Debtor(s):     DEBTORS' MOTION FOR AN ORDER
                                             AUTHORIZING THE USE OF CASH
18                                           COLLATERAL AND MOTION
                                             APPROVING LENDING BETWEEN
19                                           DEBTORS ON AN UNSECURED BASIS**

20                                           DATE:   May 1 & May 4, 2009
                                             TIME:   9:30 A.M.
21                                           CTRM:   301

22

23  _____

24    [1] Pursuant to the Court's order this case is being jointly administered with 43 chapter 11 case filed by affiliated entities. The affiliated
    case numbers are as follows: 1:09-bk-13338-KT, 1:09-bk-13356-KT, 1:09-bk-13358-KT, 1:09-bk-13359-KT, 1:09-bk-13360-KT, 1:09-bk-13361-
25  KT, 1:09-bk-13362-KT, 1:09-bk-13363-KT, 1:09-bk-13364-KT, 1:09-bk-13365-KT, 1:09-bk-13366-KT, 1:09-bk-13367-KT, 1:09-bk-13368-KT,
    1:09-bk-13369-KT, 1:09-bk-13370-KT, 1:09-bk-13371-KT, 1:09-bk-13372-KT, 1:09-bk-13373-KT, 1:09-bk-13374-KT, 1:09-bk-13375-KT, 1:09-
26  bk-13376-KT, 1:09-bk-13377-KT, 1:09-bk-13378-KT, 1:09-bk-13379-KT, 1:09-bk-13380-KT, 1:09-bk-13381-KT, 1:09-bk-13382-KT, 1:09-bk-
    13383-KT, 1:09-bk-13384-KT, 1:09-bk-13385-KT, 1:09-bk-13386-KT, 1:09-bk-13387-KT, 1:09-bk-13388-KT, 1:09-bk-13389-KT, 1:09-bk-
27  13390-KT, 1:09-bk-13391-KT, 1:09-bk-13392-KT, 1:09-bk-13393-KT, 1:09-bk-13394-KT, 1:09-bk-13395-KT, 1:09-bk-13396-KT, 1:09-bk-
    13397-KT, 1:09-bk-13398-KT, 1:09-bk-13399-KT, 1:09-bk-13400-KT, 1:09-bk-13401-KT, 1:09-bk-13402-KT, 1:09-bk-13403-KT, 1:09-bk-
27  13404-KT, 1:09-bk-13405-KT, 1:09-bk-13406-KT, 1:09-bk-13407-KT, 1:09-bk-13434-KT, 1:09-bk-13439-KT.

28

**Schedule of Cathay Bank Previously Filed Exhibits**

| Document | Docket No. (Alameda Produce 1:09-bk-13394-KT) | Exhibit No. | Exhibit |
|---|---|---|---|
| Badura Declaration (filed March 30, 2009, in In re Alameda Produce Market, LLC, Central District of California Bankruptcy Case no. 1:09-bk-13394-KT ("Badura 3/30 Decl.")) | [5] | 1 | Alameda Produce Deed of Trust, Assignment of Rents, and Fixture Filing (Recorded in Los Angeles County as Instrument No. 05-2764248) |
| Badura 3/30 Decl. | [5] | 2 | Alameda Produce Deed of Trust, Security Agreement, Assignment of Rents, and Fixture Filing (Recorded in Los Angeles County as Instrument No. 06-2325615) |
| Badura 3/30 Decl. | [5] | 3 | Alameda Produce Absolute Assignment of Rents, Lease Guaranties, Rents, Issues, and Profits (Recorded in Los Angeles County as Instrument No. 06-2325616) |
| Badura 3/30 Decl. | [5] | 4 | Alameda Produce March 6, 2009, Default and Demand Letter |
| Badura 3/30 Decl. | [5] | 5 | Alameda Produce March 26, 2009, Rents Sequestration Demand Letter |

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

**Soo Hom**

| | |
|---|---|
| **From:** | cmecfhelpdesk@cacb.uscourts.gov |
| **Sent:** | Monday, March 30, 2009 12:18 PM |
| **To:** | Courtmail@cacb.uscourts.gov |
| **Subject:** | 1:09-bk-13394-KT Declaration |

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30-page limit do not apply.**

**U.S. Bankruptcy Court**

**Central District Of California**

Notice of Electronic Filing

The following transaction was received from Michael G Fletcher entered on 3/30/2009 at 12:17 PM PDT and filed on 3/30/2009

**Case Name:**     Alameda Produce Market, LLC, a DE LLC
**Case Number:**     1:09-bk-13394-KT
**Document Number:** 5

**Docket Text:**
Declaration re: *Declaration of Gregory Badura in Support of Secured Creditor Cathay Bank's Demand for Adequate Protection and in Opposition to Emergency Motion for Use of Cash Collateral with Exhibit 1 and Proof of Service* Filed by Creditor Cathay Bank (RE: related document(s)[4] Emergency motion *For Order Directing The Joint Administration Of Related Cases with proof of service*). (Attachments: # (1) Exhibit 2-5) (Fletcher, Michael)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**\\frbc-file\home\aromero\efiling\Cathay Bank v. Alameda\Badura dcl part 1.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=3/30/2009] [FileNumber=24711611-
0] [a1aee8c03f834fb639c444837ef5ce45a292c01c708c5cb2120d76b79f8e7f3619
677dab0e911d8627b826fe85e6e4c08ba52668e0be6d65bc0107c6bdae698d]]
**Document description:**Exhibit 2-5
**Original filename:**\\frbc-file\home\aromero\efiling\Cathay Bank v. Alameda\decl of Badura part 2.PDF

**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1106918562 [Date=3/30/2009] [FileNumber=24711611-
1] [8fbbdce4ad0625472c4a3f6789592b2c89b7c29ed4a4bb6e0dcc840ee4ad15b476
1d74017480a9b20a3769d14a84e394a475e7bcaa534d1d6bbeb3cce07305f2]]

**1:09-bk-13394-KT Notice will be electronically mailed to:**

John J Bingham on behalf of Debtor Alameda Produce Market, LLC, a DE LLC
jbingham@dgdk.com

3/30/2009

Michael G Fletcher on behalf of Creditor Cathay Bank
mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com

Bernard R Given on behalf of Interested Party Request for Courtesy NEF
efiling@frandzel.com;bwilson@frandzel.com;bgiven@frandzel.com

John N Tedford on behalf of Debtor Alameda Produce Market, LLC, a DE LLC
jtedford@dgdk.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

**1:09-bk-13394-KT Notice will not be electronically mailed to:**

3/30/2009

1  Michael Gerard Fletcher (State Bar No. 070849)
      mfletcher@frandzel.com
2  Bernard Given (State Bar No. 134718)
      bgiven@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   6500 Wilshire Boulevard
4  Seventeenth Floor
   Los Angeles, California 90048-4920
5  Telephone: (323) 852-1000
   Facsimile: (323) 651-2577
6
7  Attorneys for Secured Creditor Cathay Bank

8

9

10              **UNITED STATES BANKRUPTCY COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12              **SAN FERNANDO VALLEY DIVISION**

13  In re                                    CASE NO. 1:09-bk-13394-KT

14  ALAMEDA PRODUCE MARKET, LLC,
    a Delaware limited liability company,     Chapter 11

15              Debtor.

16                                            **DECLARATION OF GREGORY
                                              BADURA IN SUPPORT OF SECURED**
17                                            **CREDITOR CATHAY BANK'S DEMAND
                                              FOR ADEQUATE PROTECTION AND IN
                                              OPPOSITION TO EMERGENCY**
18                                            **MOTION FOR USE OF CASH
                                              COLLATERAL WITH EXHIBIT 1**
19
                                              Date:    March 30, 2009
20                                            Time:    2:30 p.m.
                                              Place:   Courtroom 301 (Woodland Hills)
21

22

23

24

25       I, Gregory Badura, declare:

26       1.      I am a First Vice President for secured creditor Cathay Bank, a California

27  corporation ("Cathay"), and the manager of the Cathay's special assets department. I have personal

28  knowledge of the matters set forth in this declaration and, if called upon as a witness, I could and

1 would testify competently thereto.

2      2.      I have been employed by Cathay for approximately 2 years and I have been

3 employed as a banker in various capacities for the past 35 years.  Among my other duties, I am

4 responsible for the administration, monitoring, and collection of the obligations due to Cathay

5 from its borrower Alameda Produce Market, LLC, a Delaware limited liability company,

6 successor-in-interest by merger to Alameda Produce Market, Inc., a California corporation

7 ("Alameda" or "Debtor"). I am required to know and, in fact, am familiar with the jobs of various

8 Cathay's employees who are involved in the handling of Cathay's books, records, and documents

9 ("Records") pertaining to the loans and recordation of information about Cathay's loans, and I

10 regularly work on such Records in the course of my job.

11      3.      I am one of the custodians of Cathay's Records as those records pertain to the loans

12 and extensions of credit to Debtor Alameda and, in particular, the loan documentation executed by

13 Alameda in favor of the Cathay.  I have personally worked with and on Cathay's Records and have

14 personal knowledge that the Records were and are kept in the ordinary and usual course of the

15 Cathay's business and that the entries therein were and are made at or about the time of the events

16 recorded by individual employees by Cathay who have had personal knowledge thereof and who

17 have had a continuing business duty to make those entries and record those events at or about the

18 time of the events occurred.

19      4.      Attached hereto as Exhibit 1 is one of the two deeds of trust granted in favor of

20 Cathay securing the debts of Alameda. Exhibit 2 is the other deed of trust. These deeds of trust

21 encumber the real properties commonly known as 1312 East Seventh Street, Los Angeles,

22 California 90021 and 761 Terminal, Los Angeles, California 90021 (collectively, "the Subject

23 Property").  The 1312 East Seventh Street property is known as the Seventh Street Produce Market

24 ("Seventh Street Produce Market").  The 761 Terminal Street property consists of 4 buildings

25 ("Terminal Property").

26      5.      Alameda also executed and delivered in favor or Cathay: an Absolute Assignment

27 of Rents (Exhibit 3).

28      6.      On March 6, 2009, Cathay delivered its default and payment demand letter based

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

1  upon the February 28, 2009, maturity date (Exhibit 4), although Alameda had additionally

2  defaulted by failing to make the January 2009 payment due to the Bank. Last Thursday, March 26,

3  2009, Cathay delivered its demand to Alameda (Exhibit 5) to pay over to Cathay all rents, issues,

4  and profits from the Subject Property.

5      7.    I am informed that Alameda's biggest tenant at the Subject Property is American

6  Apparel, which is currently a month-to-month tenant.

7      Executed this 30th day of March, 2009, at Rowland Heights, California.

8      I declare under penalty of perjury under the laws of the United States of America that the

9  foregoing is true and correct.

10

11                                    GREGORY BADURA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FRANDZEL ROBINS BLOOM & CSATO, L.C.
6500 WILSHIRE BOULEVARD, 17TH FLOOR
LOS ANGELES, CALIFORNIA 90048-4920
(323) 852-1000

BADURA DECLARATION RE ADEQUATE PROTECTION AND CASH COLLATERAL OPPOSITION

# EXHIBIT 1

This page is part of your document - DO NOT DISCARD

05 2764248

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**11/16/05 AT 08:00am**

## TITLE(S) :



L E A D    S H E E T

**FEE**

| FEE $ | 123. | RR |
|---|---|---|
| DAF $ | 6 | |
| C-20 | 35 | 3T |

D.T.T.

NOTIFICATION SENT $4

**CODE**
**20**

**CODE**
**19**

**CODE**
**9**___

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

EXHIBIT____

**THIS FORM IS NOT TO BE DUPLICATED**

4

111 101 J5

LandAmerica Commercial Services
RECORDING REQUESTED BY, AND
WHEN RECORDED RETURN TO:

05  2764248

Paul Hastings Janofsky & Walker, LLP
515 South Flower Street
25th Floor
Los Angeles, California 90071
Attention: Mark L. Nelson, Esq.

INSTRUCTIONS TO COUNTY RECORDER:

Index this document as
(1) a deed of trust and
(2) a fixture filing

Assessor's Parcel Nos.:    5146-009-003, 5146-009-004, 5146-009-005, 5147-034-015

6153463

# DEED OF TRUST, ASSIGNMENT OF RENTS
## AND FIXTURE FILING

This Deed of Trust, Assignment of Rents and Fixture Filing ("Deed of Trust"), dated as of November 10, 2005, is executed by ALAMEDA PRODUCE MARKET, INC., a California corporation ("Trustor"), whose address is 761 Terminal Street, Los Angeles, California 90021, as trustor, in favor of Commonwealth Land Title Company ("Trustee"), as trustee, for the benefit of Cathay Bank, a California banking corporation ("Beneficiary"), whose address is 777 North Broadway, Los Angeles, California 90012, as beneficiary.

NOTICE:    THE OBLIGATIONS SECURED HEREBY PROVIDE FOR PERIODIC INCREASES AND/OR DECREASES IN THE APPLICABLE INTEREST RATE

ORGANIZATIONAL ID: C2014673

1.    <u>Assignment in Trust with Power of Sale</u>. For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Trustor hereby irrevocably grants, conveys and assigns to Trustee, IN TRUST, WITH POWER OF SALE, AND WITH RIGHT OF ENTRY AND POSSESSION, as security for the obligations described below, all of Trustor's right, title and interest, whether now existing or hereafter acquired, in and to all of the following (collectively, the "Property"):

1.1    That certain real property (the "Land") in the City of Los Angeles County of Los Angeles, State of California, described in Exhibit "A" attached hereto and incorporated herein by this reference.

1.2    All buildings, landscaping and other improvements now or hereafter located on or appurtenant to the Land, including without limitation the Fixtures (as defined below) (collectively, the "Improvements").

1.3    All easements, rights of way, licenses and other rights now or hereafter used in connection with the Property or as a means of access thereto, including without limitation: water and water rights, and shares of stock evidencing the same; trackage agreement rights; rights to use common drive entries; rights relating to land within the right-of-way of adjoining streets; rights in or to sidewalks, alleys and strips and gores of land adjoining or used in connection with the Property; air rights; development rights and credits; and tenements, hereditaments and other appurtenances of and to the Property.

1.4    All fixtures now or hereafter located on, attached to, installed in or used in connection with the Property (collectively, the "Fixtures"), including without limitation all partitions; generators; awnings; boilers; furnaces; pipes; plumbing; elevators and escalators; cleaning, call and sprinkler systems; fire extinguishing machinery and equipment; water tanks; heating, ventilating, air conditioning and air cooling machinery and equipment; storm windows and doors; screens, blinds, shades, curtains and related fixtures; lighting fixtures and equipment; gas and electric machinery and equipment; security and access control equipment; built-in cabinets, paneling and wall and floor coverings; refrigerators, stoves, ovens, dishwashers, garbage disposal and other kitchen appliances; washers and dryers; and other appliances, machinery and equipment and other fixtures of every nature, all of which shall remain real property.

1.5    All oil, gas and other mineral rights relating to the Property, all crops growing or hereafter grown on the Property, and all other commercially valuable substances on, under or produced from any part of the Land, and all royalty, leasehold and other rights pertaining to the foregoing.

1.6    All of Trustor's right, title and interest as landlord or tenant in and to all leases and subleases relating to any portion of the Property, including without limitation all advance rentals and deposits (but not including the Rents, as defined and separately assigned in Article 3).

1.7    All deposits made with and other security given to utility companies by Trustor in connection with the Property, and all claims in law and equity that relate to the Property.

1.8    All greater right, title and interest hereafter acquired by Trustor in or to the Property, and all options relating to such property (whether Trustor is optionor or optionee).

1.9    All rights to proceeds of property, liability, rent abatement and other insurance relating to the ownership or operation of the Property (whether or not Trustor is obligated to maintain any such insurance under the Loan Documents), and all awards made for the taking by eminent domain (or by any proceeding in lieu thereof) of any portion of the Property, including awards relating to changes in grade of streets or for severance damages.

05 2764248

**1.10** All additions and accretions to any of the foregoing.

**2.** _Obligations Secured._ This Deed of Trust secures the performance of each of the following obligations (collectively, the "Secured Obligations"):

**2.1** The indebtedness evidenced by that certain promissory note of even date herewith (the "Note"), in the maximum principal amount of Fifty Three Million and No/100 Dollars ($53,000,000.00), executed by Trustor in favor of Beneficiary.

**2.2** Each of Trustor's obligations under (a) that certain Loan Agreement of even date herewith (the "Loan Agreement"), by and between Trustor and Beneficiary, and (b) all other Loan Documents (as defined in the Loan Agreement) other than the Hazardous Materials Agreement (as defined in the Loan Agreement).

**2.3** Each of Trustor's obligations hereunder.

**2.4** All other existing and future obligations to Beneficiary, but only when any such obligation is described in a document, executed by Trustor at Beneficiary's request, which states that it is so secured.

**2.5** Any and all amendments, renewals, extensions and other modifications of any of the foregoing executed by Trustor, including without limitation modifications that change the rate of interest on any Secured Obligation.

**2.6** Reimbursement of all reasonable amounts advanced by or on behalf of Beneficiary to protect Beneficiary's interests under this Deed of Trust in accordance with the terms of this Deed of Trust (other than amounts advanced pursuant to the Hazardous Materials Agreement).

**3.** _Assignment of Rents and Profits._

**3.1** _Absolute Assignment._ Trustor hereby absolutely and irrevocably assigns to Beneficiary all of its right, title and interest in and to all rents, issues, profits, royalties, income and other proceeds and similar benefits derived from the Property (collectively, the "Rents"), and hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at Beneficiary's option at any time after the occurrence and during the continuance of an Event of Default, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in Trustor's name or in Beneficiary's name, for all Rents.

**3.2** _License to Collect._ Notwithstanding the foregoing assignment of the Rents, so long as no Event of Default (as defined below) remains uncured, Trustor shall have a license to collect all Rents (but no more than one month in advance and, upon execution of any lease, two (2) month's rent constituting the first and last month's rent, or more, with Beneficiary's prior written consent), and to retain and enjoy the same.

**3.3** _Collection and Application of Rents by Beneficiary._ While any Event of Default remains uncured, (a) Trustor's license to collect the Rents shall automatically terminate,

without notice, (b) Beneficiary may at any time, without notice, in person, by agent or by court-appointed receiver, and without regard to the adequacy of any security for the Secured Obligations, enter upon any portion of the Property and/or, with or without taking possession thereof, in its own name sue for or otherwise collect the Rents (including past due amounts), and (c) promptly following demand by Beneficiary therefor, Trustor shall deliver to Beneficiary all prepaid Rents, deposits relating to Rents, and all other Rents then held by or collected by Trustor. All Rents collected by or delivered to Beneficiary may only be applied by Beneficiary against the Secured Obligations, in such order as Beneficiary shall determine in its absolute discretion. No application of Rents against any Secured Obligation or other action taken by Beneficiary under this Article 3 shall be deemed to cure or waive any Event of Default (unless the amount of Rents collected by or on behalf of Beneficiary is sufficient to effect a reinstatement of the Loan, if the Loan may be reinstated), or to invalidate any other action taken in response to such default, or to make Beneficiary a mortgagee-in-possession of the Property.

3.4    Further Assignments.  Upon demand by Beneficiary from time to time, Trustor shall promptly execute and deliver to Beneficiary, in form and substance reasonably satisfactory to Beneficiary, recordable assignments of Trustor's interest in any leases, subleases, contracts, licenses, permits and other documents and agreements to which Rents relate; provided, however, that no such assignment shall be construed to impose upon Beneficiary any obligation with respect thereto.

3.5    Termination.  The assignment of the Rents to Beneficiary hereunder shall terminate and be of no further force and effect following the satisfaction in full of all Secured Obligations.

3.6    Assigned Leases.  Except as otherwise agreed in writing by Beneficiary from time to time, the following shall apply to each lease and sublease (collectively, the "Assigned Leases") with respect to which any portion of the landlord's interest is assigned to Beneficiary under this Deed of Trust:

3.6.1    Trustor shall promptly perform all of its obligations as landlord under each Assigned Lease, and shall immediately notify Beneficiary in writing of any notice of default received by Trustor from the tenant thereunder.

3.6.2    Trustor shall diligently enforce the performance of all of the obligations of the tenant under each Assigned Lease; shall not waive any default or waive, release or discharge any such tenant of or from any such obligation; and shall not modify any Assigned Lease without Beneficiary's prior written consent, which shall not be unreasonably withheld.

3.6.3    Trustor shall not collect the rents (or any other amounts) due under any Assigned Lease more than one month in advance of the date due (except that, upon execution of any Assigned Lease, Trustor may collect two (2) month's rent in advance constituting the first and last month's rent, or more, with Beneficiary's prior written consent).

3.6.4    Trustor hereby irrevocably authorizes and directs the tenants under all Assigned Leases to pay all amounts owing to Trustor thereunder to Beneficiary

11/10/ J3

following receipt of any written notice from Beneficiary which states that an Event of Default remains uncured and that all such amounts are to be paid to Beneficiary.  Trustor further authorizes and directs all such tenants to pay all such amounts to Beneficiary without any right or obligation to inquire as to the validity of Beneficiary's notice and regardless of the fact that Trustor has notified any such tenant(s) that Beneficiary's notice is invalid or has then directed any such tenant(s) not to pay such amounts to Beneficiary.

       3.6.5    Upon the foreclosure of this Deed of Trust, no Assigned Lease shall be destroyed or terminated by application of the doctrine of merger or as a matter of law unless Beneficiary or any purchaser at such foreclosure sale so elects.  No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any Assigned Lease unless Beneficiary or such purchaser gives written notice thereof to the applicable tenant or subtenant.

       3.6.6    Trustor hereby represents and warrants to Beneficiary, with respect to each Assigned Lease that is presently in effect (collectively, the "Current Assigned Leases"), (a) that Trustor has delivered to Beneficiary a true and complete copy of each Current Assigned Lease, together with all modifications; (b) that Trustor has not accepted any payment of rent (or other charge) under any Current Assigned Lease that is not due until on or after the thirtieth (30th) day following the execution hereof (other than the last month's rent and a security deposit); and (c) that, to the best of Trustor's knowledge, no material default by Trustor or any other person under any Current Assigned Lease remains uncured.

       3.6.7    Beneficiary may elect in its absolute discretion, at any time and from time to time, by written notice to Trustor, to unilaterally subordinate the lien of this Deed of Trust to any Assigned Lease which is then junior in priority to the lien hereof.  Trustor shall provide written notice of any such subordination to the applicable tenant within five (5) business days following Trustor's receipt of any such written notice from Beneficiary, but Trustor's failure to so notify any such tenant shall not impair the effectiveness of Beneficiary's subordination.

       4.    **Maintenance, Operation, Preservation and Repair of Property.**  Trustor shall maintain the Property (and all abutting grounds, sidewalks, roads, parking and landscape areas) in good condition and repair reasonable wear and tear excepted, shall operate the Property in a businesslike manner, shall prudently preserve and protect both its own and Beneficiary's interests in connection with the Property, shall not commit or permit any waste or deterioration of the Property reasonable wear and tear excepted, shall not abandon any portion of the Property or leave the Property unprotected, and shall not otherwise act, or fail to act, in such a way as to unreasonably increase the risk of any damage to the Property or of any other impairment of Beneficiary's interests hereunder. Without limiting the generality of the foregoing, and except as otherwise agreed by Beneficiary in writing from time to time, Trustor shall promptly and faithfully perform and observe each of the following provisions:

       4.1    **Alterations and Repair.**  Trustor shall not remove, demolish or materially alter any Improvement (as that term is defined in the Loan Agreement), except to make non-structural repairs and/or Improvements which preserve or increase the Property's value. Trustor shall promptly restore, in a good and workmanlike manner, any Improvement (or other aspect of the Property) that is damaged or destroyed in connection with such alterations or repairs, and

05 2764248

9

shall diligently complete, in a good and workmanlike manner, any Improvement constructed by Trustor from time to time.

4.2    **Compliance with Laws.**    Trustor shall comply with all federal, state and local laws, rules, regulations, codes and administrative and judicial decisions applicable to the Property now and in the future, shall not permit any act on or with respect to the Property in violation of any of the foregoing, and shall obtain and maintain in effect all licenses, permits, exemptions, approvals and other authorizations required by law in connection with the ownership and operation of the Property. Trustor shall not be required to perform any such act so long as (a) its validity is being actively contested in good faith and by appropriate proceedings and (b) Trustor has demonstrated to Beneficiary's reasonable satisfaction that leaving such act unaddressed pending the outcome of such proceedings could not result in the impairment of Beneficiary's interests hereunder.

4.3    **Compliance with Rights of Third Parties.**    Trustor shall comply with all covenants, conditions, restrictions, easements and rights of way, and all other contract and other rights of third parties relating to the Property, including without limitation all leases and subleases under which Trustor is a landlord or tenant.

4.4    **Changes in Property Restrictions.**    Trustor shall not initiate, join in or consent to any parcel map or other subdivision (or change thereto), any change in any applicable zoning ordinance, general plan or similar law, or any change to any private restrictive covenant or any similar public or private restriction or obligation with respect to the Property without Beneficiary's prior written consent, which consent shall not be unreasonably withheld or delayed.

4.5    **Taxes and Impositions.**    Trustor shall pay, prior to delinquency, all of the following (collectively, the "Impositions"):    all general and special real property taxes and assessments imposed on the Property; all other taxes and assessments of every kind that are assessed upon the Property (or upon the owner and/or operator of the Property) and that create or may create a lien upon the Property (or upon any personal property or fixture used in connection with the Property), including without limitation non-governmental levies and assessments imposed in connection with covenants, conditions or restrictions; all taxes and assessments imposed on the Property following Trustor's execution hereof in lieu of or in addition to any of the foregoing Impositions; and all license fees, taxes and assessments imposed on Beneficiary (other than income and franchise taxes) and measured by or based upon (in whole or in part) the Secured Obligations. If permitted by law, Trustor may pay any Imposition in installments.

4.5.1    **Right to Contest.**    Trustor shall not be required to pay any Imposition so long as (a) its validity is being actively contested in good faith and by appropriate proceedings and (b) Trustor has demonstrated to Beneficiary's reasonable satisfaction that leaving such Imposition unpaid pending the outcome of such proceedings could not result in the sale of the Property to satisfy such Imposition or otherwise impair Beneficiary's interests hereunder; provided, however, that, if reasonable under the circumstances, Beneficiary may require Trustor to furnish Beneficiary with a bond or other security reasonably satisfactory to Beneficiary in an amount not less than one hundred fifty percent (150%) of the applicable claim.

05  2764248

11/10/ JS

**4.5.2**   <u>Evidence of Payment; Tax Reporting Service.</u>  Upon demand by Beneficiary from time to time, Trustor shall (a) deliver to Beneficiary, within thirty (30) days following the due date of any Imposition, evidence of payment reasonably satisfactory to Beneficiary and (b) furnish to Beneficiary a tax reporting service for the Property of a type and duration, and with a company, satisfactory to Beneficiary.

**4.6**   <u>Utility Charges.</u>  Trustor shall promptly pay all utility charges incurred for the benefit of the Property or which may become a lien upon the Property, and all assessments and other charges of a similar nature, public or private, relating to the Property, regardless of whether any such charge is or may become a lien thereon.

**4.7**   <u>Liens.</u>  Trustor shall perform, on or before the date due, all obligations secured by any lien or encumbrance upon any portion of the Property.

**4.7.1**   <u>Right to Contest.</u>  Notwithstanding the foregoing, Trustor shall not be required to perform any such secured obligation so long as (a) its validity is being actively contested in good faith and by appropriate proceedings and (b) Trustor has demonstrated to Beneficiary's reasonable satisfaction that leaving such obligation unpaid or unperformed pending the outcome of such proceedings could not result in the sale of the Property to satisfy such obligation or otherwise impair Beneficiary's interests hereunder; provided, however, that, if reasonable under the circumstances, Beneficiary may require Trustor to furnish Beneficiary with a bond or other security reasonably satisfactory to Beneficiary in an amount not less than one hundred fifty percent (150%) of the applicable claim.

**4.7.2**   <u>Discharge by Beneficiary.</u>  If Trustor fails to fulfill its obligations under this Section with respect to any lien or encumbrance, Beneficiary may discharge the same by paying the amount due or by providing a bond or other security therefor, without inquiring into the validity of such lien or encumbrance and without regard for any claimed defense or offset, and Trustor shall, within 3 Banking Days (as defined in the Loan Agreement) following receipt of written demand together with evidence of payment, reimburse Beneficiary for all costs incurred by Beneficiary in connection therewith, including interest thereon at the rate or rates of interest provided in the Note.

**4.8**   <u>Books and Records.</u>  Trustor shall maintain complete books of account and other records relating to the ownership and operation of the Property, including contributions of equity investment capital, in accordance with accounting principles acceptable to Beneficiary and applied on a consistent basis.

**4.9**   <u>Hazardous Materials.</u>

**4.9.1**   Without limiting the generality of Section 4.2, Trustor shall not cause or permit the violation of any law relating to industrial hygiene or environmental conditions in connection with the Property, including soil and ground water conditions, or use, generate, manufacture, store or dispose of on, under or about the Property, or transport to or from the Property, any flammable explosives, radioactive materials, hazardous wastes, toxic substances and similar substances and materials, including all substances and materials defined as hazardous or toxic wastes, substances or materials under any applicable law (collectively,

05 2764248

*11*

TT/ TOT JƆ

*9*

"Hazardous Materials"). Trustor shall promptly take or cause to be taken all remedial actions required by law from time to time with respect to any Hazardous Materials on, under or about the Property. Trustor shall not enter into any settlement agreement, consent decree or other compromise or agreement relating to any such Hazardous Materials without Beneficiary's prior written consent which consent shall not be unreasonably withheld or delayed.

4.9.2    Except as previously disclosed to Beneficiary in writing in an environmental questionnaire (collectively, the "Environmental Disclosure Documents"), Trustor has no actual knowledge of the presence on, under or about the Property, now or in the past, of any Hazardous Materials, or of the transportation to or from the Property of any Hazardous Materials, and except as referenced above and as set forth on Exhibit A to the Hazardous Materials Agreement, Trustor has made no disclosures to Beneficiary with respect to any of the foregoing, written or oral, other than those set forth in the Environmental Disclosure Documents. Trustor acknowledges that the delivery to Trustor by Beneficiary of the environmental questionnaire constitutes a "written request for information" by Beneficiary pursuant to California Code of Civil Procedure Section 726.5(d)(2). Beneficiary and its representatives may from time to time, at reasonable times and following reasonable notice, perform such non-intrusive tests as Beneficiary reasonably deems appropriate to protect its interests with respect to the Property.

5.    Insurance. Trustor shall fulfill all of the insurance requirements set forth in the Loan Agreement with respect to the Property, and all proceeds of any such insurance (and any other insurance maintained by Trustor from time to time with respect to the Property) shall be distributed and applied as set forth in the Loan Agreement.

5.1    Claims. Trustor shall give Beneficiary immediate notice of any material casualty to any portion of the Property, whether or not covered by insurance. If covered (and regardless of whether the applicable insurance policy was required under the terms hereof), Trustor hereby authorizes Beneficiary, if Beneficiary so elects, to make proof of loss, to appear in and prosecute any action arising from any applicable policy and, while any Event of Default remains uncured, to settle, adjust or compromise any claim under any such policy, and Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact for all such purposes. Trustor shall not settle, adjust or compromise any such claim without the reasonable prior written approval of Beneficiary which approval shall not be unreasonably withheld or delayed.

5.2    Delivery of Proceeds to Beneficiary. In the event that, notwithstanding the "lender's loss payable endorsement" requirement set forth above, the proceeds of any casualty insurance policy relating to the Property are paid to Trustor, Trustor shall deliver such proceeds to Beneficiary immediately upon receipt.

5.3    Application of Casualty Insurance Proceeds. Any proceeds collected (the "Proceeds") under any casualty insurance policy described in this Deed of Trust or relating to the Property shall be disbursed to Trustor as provided below, but only upon fulfillment of each of the following conditions (the "Restoration Conditions") within 180 days following the occurrence of the damage for which the Proceeds are collected:

05 2764248

*12*

11/16/05

10

(a)    Trustor shall demonstrate to Beneficiary's reasonable satisfaction that the Proceeds (together with amounts deposited by Trustor pursuant to subparagraph (b)) will be adequate to repair the Improvements and to restore the fair market value of the Property, within a time period reasonably determined by Beneficiary, to at least the value it had immediately prior to sustaining the damage.  Such demonstration shall include delivery to Beneficiary of (i) plans and specifications reasonably satisfactory to Beneficiary and (ii) a construction contract in form and content, and with a contractor, reasonably satisfactory to Beneficiary.

(b)    To the extent that the Proceeds are insufficient to accomplish the restoration required above, Trustor shall deliver to Beneficiary evidence reasonably satisfactory to Beneficiary that Trustor will be able to provide funds (the "Shortfall Funds") in the amount of such shortfall.

(c)    Trustor shall execute such documents as Beneficiary requires to evidence and secure Trustor's obligation to use all amounts disbursed for the diligent restoration of the Property.

(d)    No monetary Event of Default or failure to comply with financial reporting requirements shall remain uncured.

5.3.2    Any Proceeds to be disbursed to Trustor shall be held by Beneficiary and disbursed in accordance with Beneficiary's customary construction lending practices.  In addition, Beneficiary shall not be obligated to disburse any Proceeds unless and until Beneficiary has received satisfactory evidence that all of the Shortfall Funds have been disbursed for payment of construction costs directly relating to such restoration.  Any amounts remaining undisbursed following completion of such restoration shall be disbursed to Trustor up to the amount of any Shortfall Funds, and any other amounts remaining shall either be paid to Trustor or applied by Beneficiary against the Secured Obligations, as Beneficiary elects in its absolute discretion.

5.3.3    In the event that Trustor fails to fulfill the Restoration Conditions within one hundred eighty (180) days following the date on which the damage occurs, the Proceeds shall (if Beneficiary so elects in its absolute discretion) be applied by Beneficiary against the Secured Obligations, and in such event the selection of which Secured Obligations to apply the Proceeds against shall be made by Beneficiary in its absolute discretion.

5.4    Restoration.  Nothing in this Article 5 shall be construed to excuse Trustor from repairing and restoring all damage to the Property in accordance with other Loan Document provisions, regardless of whether insurance proceeds are available or sufficient, except that Trustor shall not be obligated to restore the Property in the event that Beneficiary applies the applicable insurance proceeds against Trustor's obligations to Beneficiary as provided above.

5.5    Assignment of Policies Upon Foreclosure.  In the event of foreclosure of this Deed of Trust, all policies of insurance required hereunder (and all other policies encumbered by this Deed of Trust or any other Loan Document) and any related unearned premiums shall, without further action, be assigned to the successor-in-interest to Trustor with

05 2764248

13

respect to the Property, and Trustor hereby irrevocably appoints Beneficiary as its true and lawful attorney-in-fact to execute all documents necessary to effect any such transfer.

5.6    Waiver of Subrogation.  Trustor hereby waives all right to recover against Beneficiary (or any officer, employee, agent or representative of Beneficiary) for any loss incurred by Trustor from any cause insured against or required by any Loan Document to be insured against; provided, however, that this waiver of subrogation shall not be effective with respect to any insurance policy if the coverage thereunder would be materially reduced or impaired as a result.  Trustor shall use its best efforts to obtain only policies which permit the foregoing waiver of subrogation.  Beneficiary hereby waives all right to recover against Trustor (or any officer, employee, agent or representative of Trustor) for any loss incurred by Beneficiary from any cause insured against by Beneficiary; provided, however, that this waiver of subrogation shall not be effective with respect to any insurance policy if the coverage thereunder would be materially reduced or impaired as a result.  Nothing contained herein shall be deemed to imply or require that Beneficiary is in any way obligated to maintain any policies of insurance with respect to the Property.

6.    Condemnation.  Trustor shall perform and observe all provisions of the Loan Agreement relating to proceedings for the condemnation or other taking for public or quasi-public use of any portion of the Property, and all compensation, awards and other amounts payable to Trustor in connection with any such proceeding, and all proceeds of any related settlement, shall be distributed and applied as set forth in the Loan Agreement.

7.    Additional Duties and Powers.

7.1    Actions by Beneficiary to Protect Its Interests.  If Trustor fails to perform any Secured Obligation, either Beneficiary or Trustee or both may, without releasing Trustor from such obligation, perform such obligation to the extent reasonably necessary to protect its interests hereunder.  Without limiting the generality of the foregoing, Beneficiary and Trustee are each hereby specifically authorized to do any or all of the following during the continuance of an Event of Default:

7.1.1    Enter upon and/or take possession of the Property.

7.1.2    Make alterations, repairs and other improvements reasonably necessary to maintain the Property in good condition and repair.

7.1.3    Participate and appear in any action or proceeding which may affect Beneficiary's interests hereunder.

7.1.4    Pay, purchase, contest and/or compromise any encumbrance, lien or other claim which may affect Beneficiary's interests hereunder.

7.1.5    Pay all expenses reasonably incurred in protecting Beneficiary's interests hereunder, including fees and costs of attorneys and other consultants.

05 2764248

1 1 1 1 0 1 J J

*IV*

7.2  <u>Inspections.</u>  Beneficiary and its representatives may from time to time, at reasonable times and following forty-eight (48) hours written notice (except in emergencies), conduct inspections of the Property, and inspect and/or copy any and all books and records relating thereto, for the purpose of monitoring Trustor's compliance with its obligations under this Deed of Trust and any other document secured hereby.

7.3  <u>Defense of Actions.</u>  Trustor shall, at its sole expense, appear in and defend any action or proceeding which may affect Beneficiary's interests hereunder or under any other Loan Document.

7.4  <u>Indemnity of Beneficiary and Trustee.</u>  So long as Beneficiary acts in accordance with the terms of the Loan Documents, Trustor shall defend, indemnify and hold Beneficiary and Trustee and the directors, officers, agents and employees of each (collectively, the "indemnitees") harmless from and against:

(a)  all claims, demands and causes of action relating to the period of time prior to the completion of any foreclosure of this Deed of Trust asserted against any indemnitee by any person which directly or indirectly relate to (i) any lease or other contract assigned to Beneficiary hereunder, (ii) acts or omissions of Trustor, or other rights of third parties, relating to the Property, or (iii) the ownership, occupancy or use of the Property; and

(b)  all liabilities, losses and other costs (including court costs and attorneys' fees) reasonably incurred by any indemnitee as the result of any claim, demand or cause of action described in subparagraph (a).

Trustor's obligations under this Section shall not be construed to include any obligation of Trustor set forth in the Hazardous Materials Agreement.  Each indemnitee's indemnity rights shall not be limited, prejudiced or impaired in any way by any finding or allegation that such indemnitee's conduct was active, passive or subject to any other classification or that such indemnitee was directly or indirectly responsible under any theory for any act or omission by Trustor or any other person.  Notwithstanding the foregoing, Trustor shall not be obligated to indemnify any indemnitee with respect to the consequences of any act of gross negligence or willful misconduct which such indemnitee has committed.  Trustor's indemnity obligations hereunder shall survive the foreclosure (or transfer by deed in lieu thereof) or reconveyance of this Deed of Trust.

7.5  <u>Reimbursement of Beneficiary.</u>  Trustor shall reimburse Beneficiary immediately upon written demand for all reasonable costs reasonably incurred by Beneficiary (including fees and expenses of attorneys and other consultants) in the exercise of Beneficiary's rights hereunder and the enforcement of Trustor's obligations hereunder, including without limitation the following:

7.5.1  Costs incurred under Section <u>7.1</u> to reasonably protect Beneficiary's interests hereunder.

05  2764248

*15*

11/16/ J5

7.5.2    Costs reasonably incurred in connection with claims, demands, causes of action, liabilities, losses and other costs against which Beneficiary is indemnified hereunder.

7.5.3    All costs of a Trustee's Sale Guarantee, Trustee's fees and expenses, and receiver's fees and expenses.

Trustor's reimbursement obligations under this Deed of Trust shall be Secured Obligations, shall bear interest beginning fifteen (15) days after Trustees receipt of a written demand therefor together with copies of related invoices and supporting documents in accordance with the Note.

7.6    Notice of Certain Matters. Trustor shall give notice to Beneficiary, within seven (7) days after Trustor's learning thereof, of each of the following:

(a)    any litigation or claim affecting or relating to the Property that could materially and adversely affect the Property or Trustor's interest therein and involving an amount in excess of Five Hundred Thousand and No/100 Dollars ($500,000);

(b)    any dispute between Trustor and any Governmental Agency relating to the Property, the adverse determination of which might materially and adversely affect the Property or Trustor's interest therein; and

(c)    the presence of any Hazardous Materials on, under or about the Property in violation of applicable law; and enforcement, clean-up, removal or other action or requirement of any Governmental Agency relating to any such Hazardous Materials; and the existence of any occurrence or condition on any property in the vicinity of the Property that could cause any portion of the Property to be classified as "borderzone property" under the provisions of the California Health and Safety Code or any related regulations, or that could cause the Property to be otherwise subject to any restrictions relating to Hazardous Materials.

7.7    Further Assurances. Trustor shall execute and deliver to Beneficiary all documents, and take all actions, reasonably required by Beneficiary from time to time to confirm the rights created or now or hereafter intended to be created hereunder, to protect and further the validity, priority and enforceability hereof, to subject to the lien hereof any property intended to be encumbered hereby, or otherwise to carry out the purposes hereof. Without limiting the generality of the foregoing, Trustor shall, upon request of Beneficiary, promptly correct any defect, error or omission which may be discovered in the contents hereof or in the execution or acknowledgment hereof.

7.8    Impounds.

7.8.1    Impositions. While any Event of Default remains uncured, if requested by Beneficiary, Trustor shall deposit with Beneficiary, in monthly installments, an amount equal to one-twelfth of the estimated aggregate annual Impositions (as defined in the Loan Agreement). In such event, Trustor shall cause all bills and other documents relating to

LEGAL_US_W # 52951966.2

-12-

05 2764248

16

11110113

14

Impositions to be sent directly to Beneficiary and, upon receipt of the same, and provided Trustor has deposited sufficient funds with Beneficiary, Beneficiary shall pay the amounts due out of the funds so deposited. If at any time and for any reason the funds so deposited are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Beneficiary. Notwithstanding the foregoing, nothing contained herein shall cause Beneficiary to be deemed a trustee of such funds or obligate Beneficiary to pay any amounts in excess of the deposited funds. Beneficiary may commingle such funds with its own funds and Trustor shall not be entitled to interest thereon.

       7.8.2    <u>Premiums</u>. While any Event of Default remains uncured, if requested by Beneficiary, Trustor shall deposit with Beneficiary, in monthly installments, an amount equal to one-twelfth of the estimated aggregate annual premiums on all policies of insurance required by this Deed of Trust. In such event, Trustor shall cause all bills and other documents relating to such insurance premiums to be sent directly to Beneficiary and, upon receipt of the same, and provided Trustor has deposited sufficient funds with Beneficiary, Beneficiary shall pay the amounts due out of the funds so deposited. If at any time and for any reason the funds so deposited are or will be insufficient to pay such amounts as may then or subsequently be due, Beneficiary shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Beneficiary. Notwithstanding the foregoing, nothing contained herein shall cause Beneficiary to be deemed a trustee of such funds or obligate Beneficiary to pay any amounts in excess of the deposited funds, nor shall anything contained herein modify the obligation of Trustor to maintain such insurance in force at all times. Beneficiary may commingle such funds with its own funds and Trustor shall not be entitled to interest thereon.

      8.    <u>Sale or Lease of Property</u>. Trustor shall faithfully comply with all of the restrictions in the Loan Agreement with respect to the sale, lease, encumbrance and other transfers of the Property and of interests in Trustor.

      8.1    <u>Continuing Liability of Trustor</u>. No sale, lease, encumbrance or other transfer shall relieve Trustor from primary liability for any Secured Obligation or relieve any guarantor of any such obligation from any liability under its guaranty, and Trustor shall deliver to Beneficiary all documents reasonably required by Beneficiary to evidence its continuing liability.

      9.    <u>Other Waivers, Rights and Obligations</u>.

      9.1    <u>Authority to Modify Obligations</u>. Beneficiary may from time to time, without notice, and without affecting the lien of this Deed of Trust or the liability of any other person or entity for any Secured Obligation, (a) release any person from any Secured Obligation, (b) extend the maturity or otherwise alter the terms of any Secured Obligation, (c) grant other indulgences, (d) release or reconvey any portion of the Property, (e) take or release any other security for any Secured Obligation, and/or (f) make compositions and other arrangements with debtors relating to any Secured Obligation.

LEGAL_US_W # 529519662       -13-

05 2764248

9.2    Additional Security.  No other collateral held as security for any Secured Obligation shall be affected by the execution of this Deed of Trust, and all such collateral shall be cumulative.  Neither the taking of additional security nor the release or partial release of any security for any Secured Obligation shall affect the lien hereof or the liability of any obligor, endorser, guarantor or other surety in connection therewith.  Beneficiary may, in its absolute discretion, enforce the sale of (or otherwise realize on) any other security for any Secured Obligation before, after, or concurrently with, any exercise of its remedies hereunder.

9.3    Survival of Warranties.  Any representations and warranties set forth herein or otherwise made by Trustor in connection herewith shall survive the delivery and recording hereof and continue so long as any Secured Obligation remains outstanding.

9.4    Other Waivers By Trustor.  Trustor waives, to the extent permitted by law and except as otherwise provided in the Loan Documents, (a) the benefit of all present and future laws providing for any appraisement before sale of any portion of the Property, (b) whether now existing or hereafter created, all rights of redemption, valuation, appraisement, stay of execution, and marshaling, in the event of any foreclosure hereunder, (c) the right to plead or assert any statute of limitations as a defense to the enforcement of (i) any Secured Obligation or (ii) this Deed of Trust, and (d) all rights which Trustor may now or hereafter have by reason of laws of the State of California pertaining to sureties.

9.5    Subrogation to Lienholder Rights.  To the extent that proceeds of the Note are used to pay any outstanding lien, charge or encumbrance against the Property, Beneficiary shall be subrogated to all rights and liens held by the owner or holder of such lien, charge or encumbrance, regardless of whether such lien, charge or encumbrance is released.

9.6    Nonliability of Beneficiary.  Except as otherwise expressly provided herein, no assignment to Beneficiary hereunder of any lease, sublease or other document shall be construed to impose any obligation or liability upon Beneficiary in connection therewith.

9.7    Partial Invalidity of Lien.  If the lien of this Deed of Trust is invalid or unenforceable as to any part of the Secured Obligations or any part of the Property, the unsecured or partially secured portion of such obligations shall be completely paid prior to the payment of the remaining and secured or partially secured portion of such obligations, and all payments made on the Secured Obligations, whether voluntary or under foreclosure or other enforcement action or procedure, shall be first applied against that portion of such obligations which is not secured or fully secured by the lien of this Deed of Trust.

9.8    Performance of Secured Obligations.  Trustor shall pay and perform each of the Secured Obligations when due.

10.    Events of Default.  The occurrence of any of the following, whatever the reason therefor, shall constitute an "Event of Default" hereunder:

10.1    The occurrence of any "Event of Default" under the Loan Agreement.

05 2764248

10.2   A default by Trustor in any obligation contained herein that remains uncured following receipt of written notice from Beneficiary for more than (a) 10 calendar days, in the case of a default which consists of a failure to pay money to Beneficiary or any third party, or (b) thirty (30) calendar days, in the case of any other default (or such longer period as is reasonably necessary to diligently effect cure, if not curable within such thirty (30)-day period, as determined by Beneficiary in its sole discretion).

11.    Foreclosure and Other Remedies.

11.1   Acceleration Upon Default; Additional Remedies.  Upon the occurrence of any Event of Default, Beneficiary may declare all Secured Obligations immediately due and payable and, whether or not Beneficiary exercises such option, Beneficiary may do any or all of the following:

11.1.1   In person or by agent or court-appointed receiver, and without regard to the adequacy of its security: enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee; take any action which it reasonably deems necessary to preserve the value, marketability or rentability of the Property, increase the income therefrom or protect the security hereof; and, with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs of operation and collection, against any Secured Obligation, all in such order as Beneficiary determines in its absolute discretion.

11.1.2   Commence an action to foreclose this Deed of Trust, appoint a receiver, or specifically enforce any of the covenants hereof.

11.1.3   Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice the Trustee or Beneficiary shall cause to be duly filed for record in the Official Records of the County in which the Property is located.

11.1.4   Exercise all other rights and remedies provided herein, in any Loan Document or other document secured hereby, or in any document that secures all or any portion of the Secured Obligations, or provided by law (including all rights under applicable law to conduct separate and/or combined sales of real property and personal property related thereto).

11.2   Foreclosure By Power of Sale.

11.2.1   Should Beneficiary elect to foreclose by exercise of the power of sale contained herein, Beneficiary shall notify Trustee and deposit with Trustee this Deed of Trust and the Note and such evidence of expenditures made and secured hereby as Trustee may reasonably require.

11.2.2   Upon receipt of any such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor and all other entitled parties such Notice of Default and Election to Sell as is then required by law and by this Deed of Trust.  Trustee shall, without demand on Trustor, after lapse of such time as is then required by law after

11/16/ J5

recordation of such Notice of Default and after Notice of Sale has been given as required by law, sell the Property at the time and place of sale fixed in such Notice of Sale, either as a whole or in separate lots, parcels or items and in such order as Beneficiary elects, at public auction to the highest bidder for cash or cashier's checks in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser(s) good and sufficient deed(s) conveying the property so sold, but without any warranty, express or implied. Any person, including Trustor, Trustee or Beneficiary, may purchase at any such sale.

11.2.3    After deducting all fees and costs of Beneficiary and Trustee, including costs of evidence of title in connection with any such sale, Beneficiary shall apply the proceeds of sale to payment of (i) first, all amounts expended under the terms hereof and not then repaid, with accrued interest; (ii) second, all other amounts then secured hereby; and (iii) the remainder, if any, to the person(s) legally entitled thereto.

11.2.4    To the extent permitted by applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may again postpone such sale by public announcement or subsequently noticed sale.

11.2.5    A sale of less than all of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein, and subsequent sales may be made hereunder until all Secured Obligations have been satisfied or the entire Property has been sold without defect or irregularity.

11.3    Appointment of Receiver.    While any Event of Default remains uncured, Beneficiary may, without regard to the value of the Property, apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver shall have the usual powers and duties of receivers in similar cases, and all the powers and duties of Beneficiary in case of entry as provided herein, until the date of confirmation of sale of the Property (unless such receivership is sooner terminated).

11.4    Application of Funds.    Except as otherwise provided herein, while any Event of Default remains uncured, Beneficiary may, at any time without notice, apply any amounts received by Beneficiary from or on account of Trustor or the Property (including amounts received as Rents, as insurance or condemnation proceeds, and/or as impounds with respect to insurance premiums or Impositions) against any Secured Obligation, in such order as Beneficiary elects, regardless of whether any such obligation is yet due. The receipt, use or application of any such amount shall not be construed to affect the maturity of any Secured Obligation, any rights of Beneficiary or Trustee under the Loan Documents, or any obligations of Trustor or any guarantor under the Loan Documents; or to cure or waive any default under any Loan Document; or to invalidate any act of Trustee or Beneficiary.

11.5    Cumulative Remedies; No Waiver.    Trustee and Beneficiary shall each be entitled to enforce the performance of any Secured Obligation and to exercise all rights under this Deed of Trust or any Loan Document or other agreement or any law now or hereafter in force, regardless of whether some or all of the Secured Obligations are otherwise secured,

05 2764248

20

11/16/ J5

whether by guaranty, deed of trust, lien, assignment or otherwise. Neither the acceptance or enforcement of this Deed of Trust, whether by court action or pursuant to the power of sale or other powers contained herein, shall prejudice Trustee's or Beneficiary's right to realize upon any other security held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary shall each be entitled to enforce this Deed of Trust and any such other security in such order as they determine in their absolute discretion. Trustee's and Beneficiary's rights and remedies hereunder and under all other Loan Documents are cumulative and in addition to all rights and remedies provided by law or otherwise from time to time. Every right or remedy given by any Loan Document to Trustee or Beneficiary or to which either of them is otherwise entitled may be exercised, concurrently or independently, from time to time and as often as is deemed expedient by Trustee or Beneficiary, and either of them may pursue inconsistent remedies. No waiver of any default shall be implied from any omission by Beneficiary to take action on account of such default if such default persists or is repeated. No waiver of any default shall affect any default other than the default expressly waived, and any such waiver shall be operative only for the time and to the extent stated. No waiver of any provision of any Loan Document shall be construed as a waiver of any subsequent breach of the same provision. Beneficiary's consent to or approval of any act by Trustor requiring further consent or approval shall not be deemed to waive or render unnecessary Beneficiary's consent to or approval of any subsequent act. Beneficiary's acceptance of the late performance of any Secured Obligation shall not constitute a waiver by Beneficiary of the right to require prompt performance of all further Secured Obligations; Beneficiary's acceptance of any performance following the filing of a notice of default hereunder shall not constitute a waiver of Beneficiary's right to proceed with the exercise of its remedies for any unfulfilled obligations; and Beneficiary's acceptance of any partial performance shall not constitute a waiver of any rights relating to the unfulfilled portion of the applicable obligation.

   11.6   Request for Notice.   Trustor hereby requests that a copy of any notice of default and a copy of any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

   12.   Miscellaneous Provisions.

      12.1   Execution of Reconveyances and Other Instruments by Trustee.   Upon written request of Beneficiary from time to time and upon payment of Trustee's fees and costs in connection therewith and, if reasonably required by Trustee, upon presentation of this Deed of Trust and the Note for endorsement, Trustee shall, without affecting the personal liability of any person with respect to any Secured Obligation or the lien of this Deed of Trust upon the remainder of the Property, (i) reconvey to "the person(s) legally entitled thereto," without warranty, any portion of the Property then held hereunder, (ii) consent in writing to the making of any map or plat thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement, agreement subordinating the lien or charge hereof, or other agreement or document relating hereto or to the Property.

      12.2   Appointment of Successor Trustee.   Trustee or any successor acting hereunder may resign and thereupon be discharged of the trusts hereunder upon thirty (30) days' prior written notice to Beneficiary. Regardless of whether such resignation occurs, Beneficiary may from time to time substitute a successor or successors to any Trustee. If permitted by law,

LEGAL_US_W # 52951966.2                    -17-                    05 2764248

21

11/10/ J0

19

Beneficiary may substitute such successor or successors by recording a document executed by Beneficiary and containing the name of the original Trustor and Beneficiary hereunder, the book and page where this Deed of Trust is recorded (and/or instrument number, as applicable) and the name of the new Trustee, in which event such successor Trustee or Trustees shall, without conveyance from the predecessor Trustee, succeed to all its estate, rights and duties hereunder.

12.3    Trust Irrevocable; Acceptance by Trustee.   The trust created hereby is irrevocable by Trustor.  Trustee accepts this trust when this Deed of Trust is made a public record as provided by law.

12.4    Statements by Trustor.   Trustor shall, within ten (10) days following Beneficiary's demand from time to time, deliver to Beneficiary a written statement setting forth all outstanding amounts secured by this Deed of Trust and stating whether any offset or defense exists against such amounts.

12.5    Beneficiary Statements.   For any statement or accounting requested by Trustor or any other entitled person pursuant to Section 2943 or Section 2954 of the California Civil Code or any other provision of applicable law, or for any other document furnished to Trustor by Beneficiary, Beneficiary may charge the maximum amount then permitted by law or, if there is no such maximum, then in accordance with Beneficiary's reasonable and customary charges therefor or the actual cost reasonably incurred by Beneficiary, whichever is greater.

12.6    Notices.   All notices, demands, approvals and other communications provided for herein shall be in writing and be sent or delivered to the appropriate party at the address set forth in the first paragraph of this Deed of Trust.  Addresses for notice may be changed from time to time by written notice to all other parties.  All communications shall be effective when actually received; provided, however, that nonreceipt of any communication as the result of a change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

12.7    Amendments.   This Deed of Trust cannot be modified except by an instrument in writing signed by the party against whom enforcement of any waiver or other modification is sought.  A copy of any such document shall be sent by such party to all other parties.

12.8    Headings.   Article and section headings are included in this Deed of Trust for convenience of reference only and shall not be used in construing this Deed of Trust.

12.9    Severability of Provisions.   Every provision of this Deed of Trust is intended to be severable.  In the event that any provision hereof is declared to be invalid or unenforceable for any reason by a court of competent jurisdiction, such invalidity or unenforceability shall not affect the remaining provisions hereof.

12.10    Governing Law.   This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California without giving effect to the conflict of law principles of said state.

LEGAL_US_W # 529519662                  -18-                  05 2764248

22

**12.11** <u>Joint and Several Obligations</u>.  Should this Deed of Trust be signed by more than one party, all obligations contained herein shall be deemed to be the joint and several obligations of each such party.  Any married person signing this Deed of Trust agrees that recourse may be had against community assets and against his or her separate property for the satisfaction of all obligations contained herein.

**12.12** <u>Interpretation</u>.  In this Deed of Trust the singular shall include the plural and the masculine shall include the feminine and neuter and vice versa, if the context so requires.  Any reference to any Loan Document or other document shall include such document both as originally executed and as it may from time to time be modified.  References herein to Articles, Sections and Exhibits shall be construed as references to this Deed of Trust unless a different document is named, and references to subparagraphs shall be construed as references to the same Section in which the reference appears.  The term "document" is used in its broadest sense and encompasses agreements, certificates, opinions, consents, instruments and other written material of every kind.  The terms "including" and "include" mean "including (include) without limitation."  The term "any," as a modifier to any noun, shall be construed to mean "any and/or all" preceding the same noun in the plural.  The term "agreement" includes both written and oral agreements.  The terms "modify" and "modification," when used with reference to any document or obligation, include amendments, supplements, renewals, extensions, waivers, terminations and other modifications of every kind.  The terms "law" and "laws," unless otherwise modified, mean, collectively, all federal, state and local laws, rules, regulations, codes and administrative and judicial precedents.  The word "person" includes corporations, partnerships and other forms of association.  The terms "herein," "hereunder" and other similar compounds of the word "here" refer to this entire Deed of Trust and not to any particular provision or Section hereof.  In the event of any conflict between the provisions of this Deed of Trust and those of the Loan Agreement, the Loan Agreement shall prevail; provided however that, with respect to any matter addressed in both such documents, the fact that one document provides for greater, lesser or different rights or obligations than the other shall not be deemed a conflict unless the applicable provisions are inconsistent and could not be simultaneously enforced or performed.  Capitalized terms used and not otherwise defined herein shall have the meanings set forth for them in the Loan Agreement.

**12.13** <u>Counterparts</u>.  This Deed of Trust may be executed in counterparts and any party may execute any counterpart, each of which shall be deemed to be an original and all of which, taken together, shall be deemed to be one and the same document.

**12.14** <u>Successors and Assigns</u>.  This Deed of Trust shall bind, and shall inure to the benefit of, Trustor, Trustee, Beneficiary and their heirs, legatees, devisees, administrators, executors and other successors and assigns.

**12.15** <u>Fixture Filing</u>.  This Deed of Trust is being recorded in the real estate records as a fixture filing and covers goods which are, and goods which become, fixtures on the Property.

**12.16** <u>California Civil Code Section 3097(j)</u>.  The following information is set forth in accordance with California Civil Code Section 3097(j):

05 2764248

23

11/10/ J5

_Lender's name and address:_

    Cathay Bank
    777 North Broadway
    Los Angeles, California 90012
    Attention:   Jay Cheng
              Vice President & Loan Officer
              Corporate Commercial Loan

_Owner's name and address:_

    Alameda Produce Market, Inc.
    761 Terminal Street
    Los Angeles, California 90021
    Telecopy:   (213) 833-5949

_Street addresses of real property initially encumbered hereby:_

    1215 East Seventh Street
    1312 East Seventh Street
    761 Terminal Street
    Los Angeles, California _____

    13.   _Suretyship Provisions._ The following provisions shall apply to the extent that all or any portion of the Secured Obligations now or hereafter constitute obligations of person(s) (collectively, "Borrowers") other than, or in addition to, Trustor:

    13.1   _Conditions to Exercise of Rights._ Trustor hereby waives any right it may now or hereafter have to require Beneficiary, as a condition to the exercise of any remedy or other right against Trustor hereunder or under any other document executed by Trustor in connection with any Secured Obligation, (a) to proceed against any Borrower or other person, or against any other collateral assigned to Beneficiary by Trustor or any Borrower or other person, (b) to pursue any other right or remedy in Beneficiary's power, (c) to give notice of the time, place or terms of any public or private sale of real or personal property collateral assigned to Beneficiary by any Borrower or other person (other than Trustor), or otherwise to comply with Section 9504 of the California Commercial Code (as modified or recodified from time to time) with respect to any such personal property collateral, or (d) to make or give (except as otherwise expressly provided in the Loan Documents) any presentment, demand, protest, notice of dishonor, notice of protest or other demand or notice of any kind in connection with any Secured Obligation or any collateral (other than the Property) for any Secured Obligation.

    13.2   _Defenses._ Trustor hereby waives any defense it may now or hereafter have that relates to: (a) any disability or other defense of any Borrower or other person; (b) the cessation, from any cause other than full performance, of the obligations of any Borrower or other person; (c) the application of the proceeds of any Secured Obligation, by any Borrower or other person, for purposes other than the purposes represented to Trustor by any Borrower or otherwise intended or understood by Trustor or any Borrower; (d) any act or omission by

05 2764248

24

Beneficiary which directly or indirectly results in or contributes to the release of any Borrower or other person or any collateral for any Secured Obligation; (e) the unenforceability or invalidity of any collateral assignment (other than this Deed of Trust) or guaranty with respect to any Secured Obligation, or the lack of perfection or continuing perfection or lack of priority of any lien (other than the lien hereof) which secures any Secured Obligation; (f) any failure of Beneficiary to marshal assets in favor of Trustor or any other person; (g) any modification of any Secured Obligation, including any renewal, extension, acceleration or increase in interest rate; (h) any election of remedies by Beneficiary that impairs any subrogation or other right of Trustor to proceed against any Borrower or other person, including any loss of rights resulting from anti-deficiency laws relating to nonjudicial foreclosures of real property or other laws limiting, qualifying or discharging obligations or remedies (including Sections 580a, 580b, 580d and 726 of the California Code of Civil Procedure, as modified or recodified from time to time); (i) any law which provides that the obligation of a surety or guarantor must neither be larger in amount nor in other respects more burdensome than that of the principal or which reduces a surety's or guarantor's obligation in proportion to the principal obligation; (j) any failure of Beneficiary to file or enforce a claim in any bankruptcy or other proceeding with respect to any person; (k) the election by Beneficiary, in any bankruptcy proceeding of any person, of the application or non-application of Section 1111(b)(2) of the United States Bankruptcy Code; (l) any extension of credit or the grant of any lien under Section 364 of the United States Bankruptcy Code; (m) any use of cash collateral under Section 363 of the United States Bankruptcy Code; or (n) any agreement or stipulation with respect to the provision of adequate protection in any bankruptcy proceeding of any person. Pursuant to Section 580a of the California Code of Civil Procedure, Trustor, after a nonjudicial foreclosure under any other deed of trust that secures any Secured Obligations, may have the right to limit Beneficiary's recovery against the Property (with respect to Secured Obligations which were secured by such other deed of trust) to the lesser of: (i) the difference between any such Secured Obligations which were due at the time of such foreclosure sale and the fair market value of the real property sold at the foreclosure sale, with interest thereon from the date of the sale, or (ii) the difference between such Secured Obligations and the sale price of such real property at such sale, exclusive of interest after the date of the sale. Trustor hereby waives such right and the comparable right under Section 726b of the California Code of Civil Procedure and agrees that, in the event of a foreclosure sale under any such other deed of trust, whether judicial or nonjudicial, the Secured Obligations shall be reduced only by the amount credit bid by Beneficiary or actually received by Beneficiary through a third party bid at such sale, whether or not such sale is deemed to be commercially reasonable, and not by the fair value (as referred to in Section 726b) or the fair market value (as referred to in Section 580a) of the property sold at that sale or any other amounts that Beneficiary may be deemed under law to have received.

Without limiting the generality of the foregoing:

13.2.1    Trustor waives all rights and defenses that Trustor may have (a) because any Secured Obligation is secured by any real property other than the Property ("Other Real Property") or (b) because any Secured Obligation which is an obligation of a person or persons other than Trustor is secured by the Property. This means, among other things:

(1)    Beneficiary may foreclose hereunder or exercise any other remedy or right against Trustor hereunder (or under any other document executed by

05 2764248

11/16/ )5

Trustor in connection with any Secured Obligation) without first foreclosing on any Other Real Property or personal property collateral pledged by Borrower (or by any other person) with respect to any Secured Obligation.

(2)    If Beneficiary forecloses on the Property or on any Other Real Property pledged by Borrower (or by any other person) with respect to any Secured Obligation:

(A)    The amount of such Secured Obligation may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(B)    Beneficiary may foreclose hereunder or exercise any other remedy or right against Trustor hereunder (or under any other document executed by Trustor in connection with any Secured Obligation) even if Beneficiary, by foreclosing on any such real property, has destroyed any right Trustor may have to collect from Borrower (or from any other person who pledged any such collateral and/or was liable for such Secured Obligation).

This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because any obligation secured hereby is also secured by Other Real Property and/or because any Secured Obligation which is an obligation of a person or persons other than Trustor is secured by the Property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

13.2.2    Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a Secured Obligation, has destroyed Trustor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the California Code of Civil Procedure or otherwise.

13.3    Subrogation.    Trustor hereby waives, until such time as all of the Secured Obligations have been paid and all applicable time periods have passed during which Beneficiary may be required to pay, return or restore to any Borrower or other person any amounts previously paid on any Secured Obligation, whether because of any bankruptcy proceeding of any Borrower or otherwise, (a) any right of subrogation which Trustor may now or hereafter have against any Borrower that relates to any Secured Obligation, (b) any right to enforce any remedy Trustor may now or hereafter have (in its own right, or by reason of succession to rights of Beneficiary) against any Borrower that relates to any Secured Obligation (including without limitation any right of reimbursement, indemnity or contribution), and (c) any right to participate in any collateral now or hereafter assigned to Beneficiary with respect to any Secured Obligation. Trustor further agrees that, if and to the extent that any waiver set forth in this paragraph is ever held to be unenforceable, all such rights of subrogation, enforcement and participation shall be junior and subordinate to the right of Beneficiary to obtain payment and performance of the Secured Obligations and to all rights of Beneficiary in and to any property which now or hereafter serves as collateral security for any Secured Obligation.

05  2764248

26

13.4  Borrower Information.  Trustor warrants and agrees:  (a) that Trustor has not relied, and will not rely, on any representations or warranties by Beneficiary to Trustor with respect to the creditworthiness of any Borrower or the prospects of repayment of any Secured Obligation from sources other than the Property; (b) that Trustor has established and/or will establish adequate means of obtaining from each Borrower on a continuing basis financial and other information pertaining to the business operations, if any, and financial condition of each Borrower; (c) that Trustor assumes full responsibility for keeping informed with respect to each Borrower's business operations, if any, and financial condition; and (d) that Beneficiary shall have no duty to disclose or report to Trustor any information now or hereafter known to Beneficiary with respect to any Borrower, including without limitation information relating to any Borrower's business operations or financial condition.

13.5  Other Rights of Sureties.  Trustor hereby waives all other rights it may now or hereafter have, whether or not similar to any of the foregoing, by reason of laws of the State of California pertaining to sureties.

13.6  Duration and Reinstatement of Lien.  The lien of this Deed of Trust shall continue until the expiration of all periods within which any amount at any time paid on account of the Secured Obligations may be required to be restored or returned by Beneficiary upon the bankruptcy, insolvency or reorganization of any Borrower, any guarantor or any other person; and Beneficiary's rights hereunder shall be reinstated and revived, and the enforceability of this Deed of Trust shall continue, with respect to any such amount which Beneficiary is required to restore or return in connection with any such bankruptcy, insolvency or reorganization.

13.7  Subordination.  Until all of the Secured Obligations have been fully paid and performed, (a) Trustor hereby agrees that all existing and future indebtedness and other obligations of each Borrower to Trustor (collectively, the "Subordinated Debt") shall be and are hereby subordinated to all Secured Obligations which constitute obligations of the applicable Borrower, and the payment thereof is hereby deferred in right of payment to the prior payment and performance of all such Secured Obligations; (b) Trustor shall not collect or receive any cash or non-cash payments on any Subordinated Debt or transfer all or any portion of the Subordinated Debt; and (c) in the event that, notwithstanding the foregoing, any payment by, or distribution of assets of, any Borrower with respect to any Subordinated Debt is received by Trustor, such payment or distribution shall be held in trust and immediately paid over to Beneficiary, is hereby assigned to Beneficiary as security for the Secured Obligations, and shall be held by Beneficiary in an interest bearing account until all Secured Obligations have been fully paid and performed.

05 2764248

27

13.8    Applicability of Certain Environmental Statutes.    Trustor hereby acknowledges and agrees that, to the extent that any of the statutory provisions (the "Incorporated Provisions") described below (each of which is applicable to the trustor under a deed of trust which secures obligations of such trustor) would otherwise be inapplicable to this Deed of Trust as a result of the fact that this Deed of Trust from time to time secures obligations of persons or entities other than Trustor, each such Incorporated Provision shall be deemed incorporated herein by this reference, and each such Incorporated Provision shall therefore apply to Trustor and this Deed of Trust:

13.8.1    All rights of a secured lender under Section 2929.5 of the California Civil Code and under Sections 564(c) and 564(d) of the California Code of Civil Procedure.

13.8.2    All rights and remedies of a secured lender under Section 726.5 of the California Code of Civil Procedure.

13.8.3    All rights and remedies of a secured lender under Section 736 of the California Code of Civil Procedure with respect to any "environmental provisions" (as defined in that Section) made by Trustor or any other person or entity in this Deed of Trust or any other Loan Document. Subparagraph (a) of such Section 736 provides, among other things, that an action by a secured lender for the breach of such an "environmental provision" in accordance with such Section 736 shall not constitute an "action" for purposes of Section 726(a) of the California Code of Civil Procedure, and shall also not constitute a money judgment for a deficiency or a deficiency judgment within the meaning of Section 580a, 580b, 580d or 726(b) of the California Code of Civil Procedure, and, without limiting the generality of the first sentence of this paragraph, Trustor specifically agrees that the foregoing limitations with respect to the applicability of such Sections 726(a), 580a, 580b, 580d and 726(b) shall apply to this Deed of Trust (pursuant to the Incorporated Provisions) in connection with the enforcement by Beneficiary of such an "environmental provision" made by Trustor or any other person in connection with the Secured Obligations, to the same extent that such limitations would apply in connection with (i) the enforcement of an "environmental provision" made by the applicable Borrower and (ii) a deed of trust executed by such Borrower rather than by Trustor.

Beneficiary acknowledges that the intent of this Section 13.8 is to make any otherwise inapplicable Incorporated Provision applicable to Trustor, but only to the extent that the reason that such provision would otherwise be inapplicable is solely (A) that Trustor is not the "Borrower" with respect to one or more of the Secured Obligations, and/or (B) that the "environmental provision" being enforced by Beneficiary in accordance with Section 736 of the California Code of Civil Procedure, although made in connection with the Secured Obligations, either (1) was not made by the "Borrower" with respect to one or more of the Secured Obligations or (2) was not made by Trustor.

13.9    Lawfulness and Reasonableness.    Trustor warrants that all of the waivers in this Deed of Trust are made with full knowledge of their significance, and of the fact that events giving rise to any defense or other benefit waived by Trustor may destroy or impair rights which Trustor would otherwise have against Beneficiary, Borrowers and other persons, or against collateral. Trustor agrees that all such waivers are reasonable under the circumstances

05  2764248

28

and further agrees that, if any such waiver is determined (by a court of competent jurisdiction) to be contrary to any law or public policy, such waiver shall be effective to the fullest extent permitted by law.

05 2764248

29

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be duly executed as of the date first written above.

"Trustor"

ALAMEDA PRODUCE MARKET, INC.,
a California corporation

By: _____
Richard Meruelo,
President

11/16/05

State of *California*
)
County of *Los Angeles*

On __11-10-05__ before me, Vivian M. Martin Notary Public, personally
appeared __Richard Meruelo__ _____,
__✓__ personally known to me or ____ proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Vivian M. Martin*

```
VIVIAN M. MARTIN
COMM. #1592746
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires JUN. 23, 2009
```

11/16/J5

89

**EXHIBIT "A"**

Legal Description

05 2764248

Exhibit "A-3"

LEGAL_US_W # 52951966.2

11/101 J5

# EXHIBIT "A"

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Area A:

Parcel 1:

Parcels "B" and "C" of Parcel Map L.A. No. 6524, in the City of Los Angeles, County of Los Angeles, State of California, as shown on map filed in Book 242, Page(s) 62 to 64 inclusive of Parcel Maps, in the Office of the County Recorder of said County.

Parcel 2:

A non-exclusive easement for vehicular right-of-way, queuing, parking , staging, loading and unloading over that certain parcel of land, described as follows:

That portion of Parcel "A" of Parcel Map L.A. No. 6524, in the City of Los Angeles, County of Los Angeles, State of California, as per map filed in Book 242, Page(s) 62 to 64 inclusive of Parcel Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at the most Westerly corner of Parcel "B" of said Parcel Map; thence Northwesterly 1.05 feet along the Northwesterly prolongation of the Southwesterly line of said Parcel "B"; thence Northeasterly in a direct line to the most Northerly corner of said Parcel "B"; thence Southeasterly 1154.37 feet along the Northwesterly line of said Parcel "B" to the point of beginning.

Parcel 3:

A non-exclusive easement (the "Eighth Street Easement") for pedestrian and vehicular ingress to and egress from "SP's Property" over "Agency's portion of the Eighth Street Access Area", as each is described and defined in that certain Reciprocal Easement Agreement, recorded in the Official Records on May 10, 1983, as Instrument No. 83-520480, Official Records, as amended by that certain Settlement, Mutual Access and Easement Modification Agreement, recorded December 23, 1993, as Instrument No. 93-2504040, Official Records.

Parcel 4:

A non-exclusive easement (The "Truck Easement") for vehicular and truck ingress and egress over a strip of land at least 20 feet in width, extending Northeasterly from the Northeasterly line of the Eighth Street Easement to the Southwesterly line of Parcel "B" above described, within the following described land:

05 2764248

11/10/ J5

*31*

That portion of Parcel 1, in the City of Los Angeles, County of Los Angeles, State of California, as shown on Official Map No. 1, filed in Book 5, Page(s) 35 to 37 inclusive of Official Maps, in the office of the County Recorder, together with that portion of Parcel "A" in said City of Los Angeles as shown on Parcel Map L.A. No. 6524 filed in Book 242, of Parcel Maps, Pages 62 to 64 inclusive, in the Office of the County Recorder of said County, described as whole as follows:

Beginning at the Southerly terminus of that certain course in the Westerly line of said Parcel 1 shown as having a bearing of North 28° 26' 54" East and a distance of 88.14 feet; thence along a line parallel with and distant 30 feet, measured at right angles Northeasterly from the Southwesterly line of said Parcel 1 Southeasterly 219.60 feet; thence North 0° 05' 11" West 21.21 feet to an intersection with a line which is perpendicular to said parallel line; thence along said perpendicular line North 44° 54' 49" East 188.57 feet to a point in the Southwesterly line of Parcel "B" of said Parcel Map having a bearing of South 61° 24' 30" East and distance of 270.05 feet as shown on said Parcel Map L.A. No. 6524; thence along last said Southwesterly line North 61° 24' 30" West 20.84 feet to an intersection with a line parallel with and 20 feet Northwesterly, measured at right angles, from said perpendicular line; thence along said parallel line South 44° 54' 49" West 182.71 feet; thence South 89° 54' 49" West 21.21 feet to a point in said line which is parallel with the Southwesterly line of said Parcel 1; thence Southeasterly along last said parallel line 50.00 feet to the point of beginning, (but with grantor reserving the right, at any time and from time to time, to alter, at grantor's sole cost and expense, such location with the parking area, provided that any such relocation of the easement does not reduce the width or impair grantee's permitted uses thereof, including truck ingress to and egress from Parcel "B" above described).

Parcel 5:

A non-exclusive easement (The "Track Street West Easement") for vehicular right-of-way over the following land:

A Ten-Foot wide strip of land, extending Southwesterly from the Southwesterly boundary of Parcel "B" above described to the Northerly line of the Eighth Street Easement, the Northwesterly line of which is the Southwesterly prolongation of a line which passes through said Southwesterly boundary of said Parcel "B" above described at a point distant five free Southeasterly along said Southwesterly boundary, from the most Westerly corner of said Parcel "B" and which passes through the Northeasterly boundary of said Parcel "B" at a point distant six feet Southeasterly along said Northeasterly boundary from the most Northerly corner of said Parcel "B".

Parcel 6:

A non-exclusive easement (The "Rail Easement") for rail service and right-of-way over that certain land described as follows:

05 2764248

34

11/10/ J5

37

That portion of Parcels 1 and 3 of Official Map No. 1, in the City of Los Angeles, County of Los Angeles, State of California, as per map filed in Book 5, Page(s) 35 to 37 inclusive of Official Maps, in the Office of the County Recorder of said County, within six strips of land, the centerlines of which are described as follows:

Strip No. 1:

A strip of land 20 feet wide lying 10 feet on each side of the following described centerline:

Commencing at a point in that certain Southerly line of said Parcel 3, shown on said map as having a bearing and distance of "North 89° 07' 34" East 200.00 feet", said point being distant thereon North 89° 07' 25" East 28.52 feet from the Westerly terminus of said certain line; thence North 61° 24' 30" West 270.25 feet to Point "A" for purposes of this description; thence South 14° 35' 53" East 319.35 feet to a point in that certain Southwesterly line of said Parcel 1, showing as having a bearing and distance of "North 45° 04' 57" West 998.05 feet" on said map, said last mentioned point being distant South 45° 05' 11" East 235.53 feet along said Southwesterly line from the Northwesterly terminus thereof; thence at right angles to said Southwesterly line North 44° 54' 49" East 55.00 feet to the true point of beginning, being the beginning of a non-tangent curve, concave Easterly and having a radius of 327.50 feet, a radial of said curve to said true point of beginning having a bearing of South 44° 54' 49" West; thence Northwesterly, Northerly and Northeasterly along said curve, through a central angle of 81° 56' 44", an arc distance of 468.40 feet to the beginning of a tangent curve, concave Northwesterly and having a radius of 647.00 feet; thence Northeasterly along said last mentioned curve, through a central angle of 08° 26' 07", an arc distance of 95.25 feet to a point of tangency in a line parallel with and distant 9.5 feet Southeasterly, measured at right angles, from a line bearing North 28° 25' 26" East from said Point "A" as hereinabove described.

Except therefrom any portion of said strip of land lying Easterly of the following described line:

Beginning at a point in that certain Southerly line of said Parcel 3, shown on said map as having a bearing and distance of "North 89° 07' 34" East 200.00 feet", said point being distant thereon North 89° 07' 25" East 28.52 feet from the Westerly terminus of said center line; thence North 61° 24' 30" West 270.25 feet; thence North 28° 25' 26" East 1154.37 feet to the Southwesterly line of Seventh Street, 80 feet wide, as shown on said map.

Strip No. 2:

A strip of land 20 feet wide lying 10 feet on each side of the following described centerline:

11/16/ J5

33

Beginning at the true point of beginning in Strip No. 1 hereinabove described, being the beginning of a curve concave Northeasterly and having a radius of 433.70 feet, said curve being tangent to a line parallel with and distant 55 feet Northeasterly measured at right angles, from that certain course in the Southwesterly line of said Parcel 1 shown as having a bearing and distance of "North 45° 04' 57" West 998.05 feet" on said Official Map No. 1; thence Southeasterly along said curve, through a central angle of 10° 04' 12", an arc distance of 76.22 feet to the beginning of a tangent curve, concave Southwesterly and having a radius 540 feet; thence Southeasterly along said last mentioned curve, through a central angle of 10° 04' 12", an arc distance of 94.91 feet to a point of tangency in a line parallel with and distant 70 feet Northeasterly, measured at right angles, from said certain Southwesterly line of Parcel 1, said point of tangency being hereinafter referred to as Point "B".

Strip No. 3:

A strip of land 15 feet wide, lying 7.50 feet on each side of the following described centerline:

Beginning at Point "B" referred to in said hereinabove described Strip No. 2; thence along a line parallel with and distant 70 feet Northeasterly, measured at right angles, from that certain course in the Southwesterly line of said Parcel 1 shown as having a bearing and distance of "North 45° 04' 57" West 998.05 feet" on said Official Map No. 1, Southeasterly 768.48 feet to Point "C" for purposes of this description.

Strip No. 4:

A strip of land 20 feet wide, lying 10 feet on each side of the following described centerline:

Beginning at a Point "C" referred to in said hereinabove described Strip No. 3, being the beginning of a curve concave Southwesterly and having a radius of 556.00 feet; said curve being tangent at its beginning to a line parallel with and distant 70 feet Northeasterly, measured at right angles, from that certain course in the Southwesterly line of said Parcel 1 shown as having a bearing and distant of "North 45° 04' 57" West 998.05 feet" on said Official Map No. 1; thence Southeasterly along said curve, through a central angle of 19° 30' 47", an arc distance of 189.36 feet to an intersection with that certain course in the Southeasterly line of said Parcel 1 shown as having a bearing and distance of "North 68° 44' 22" East 12.34 feet" on said map.

The sidelines of said Strip No. 4 shall be prolonged or shortened so as to terminate Southeasterly in said Southeasterly line.

Strip No. 5:

05 2764248

11/16/05

A strip of land 15 feet wide lying 7.5 feet on each side of the following described centerline:

Beginning at the true point of beginning in Strip No. 1 hereinabove described; thence along a line parallel with and distant 55 feet Northeasterly, measured at right angles, from that certain course in the Southwesterly line of said Parcel 1 shown as having a bearing and distance of "North 45° 04′ 57″ West 998.05 feet" on said Official Map No. 1, Southeasterly 1039.50 feet to Point "D" for purposes of this description.

Except therefrom that portion of said Strip No. 5 within said Strip No. 2.

Also except therefrom that portion of said Strip No. 5 within said Strip No. 4.

Strip No. 6:

A strip of land 20 feet wide, lying 10 feet on each side of the following described centerline:

Beginning at a Point "D" referred to in said hereinabove described Strip No. 5, being the beginning of a curve, concave Southwesterly and having a radius of 210.00 feet; said curve being tangent at its beginning of a line parallel with and distant 55 feet Northeasterly, measured at right angles, from that certain course in the Southwesterly line of said Parcel 1 shown as having a bearing and distance of "North 45° 04′ 57″ West 998.05 feet" on said Official Map No. 1; thence Southeasterly along said curve; through a central angle of 16° 55′ 58″ an arc distance of 62.06 feet to a point of tangency with that certain curve described in said Strip No. 4, hereinabove as concave Southwesterly and having a radius of 556.00 feet.

Except therefrom that portion of said Strip No. 6 within said Strip No. 4.

Parcel 7:

Parcel "A", in the City of Los Angeles, County of Los Angeles, State of California, as shown on Parcel Map No. 6524, filed in Book 242, Page(s) 62 to 64 inclusive of Parcel Maps, in the Office of the County Recorder of said County.

Parcel 8:

A non-exclusive easement (the "OPM" Vehicular Easement") for vehicular right-of-way which shall be one-way from its Southwesterly line to Seventh Street (but such traffic direction may be reversed in accordance with Section 1.8 of the Easement Agreement recorded May 9, 1991, as Instrument No. 91-675094, Official Records, over the following land:

A ten-foot wide strip of land within the Northwesterly 16 feet of Grantee Parcel "B", the Northwesterly boundary of which strip is a line (x) beginning at a point

05  2764948

111 101 J3

35

in the Southwesterly boundary of Grantee Parcel "B", which is five feet distant Southeasterly along said Southwesterly boundary from the Westernmost corner of Grantee Parcel "B" and (y) ending at a point in the Northeasterly boundary of Grantee Parcel "B" which is six feet distant Southeasterly along said Northeasterly boundary from the Northernmost corner of Grantee Parcel "B".

Parcel 9:

A non-exclusive easement (The OPM Parking Easement") for vehicular right-of-way, queuing, parking , staging, loading and unloading over all that portion of Grantee Parcel "B" lying Northwesterly of a line (x) beginning at a point in the Southwesterly boundary of Grantee Parcel "B" which is five free distant Southeasterly along said Southwesterly boundary from the Westernmost corner of Parcel "B" of Parcel Map 6524 and (y) ending at a point in the Northeasterly boundary of said Parcel "B" which is six feet distant Southeasterly along said Northeasterly boundary from the Northernmost corner of said Parcel "B".

Parcel 10:

A non-exclusive easement for pedestrian and vehicular ingress and egress, as reserved in that certain Grant Deed recorded October 10, 1991, as Instrument No. 91-1601071, Official Records, over that certain land described as follows:

That portion of Parcel 1, in the City of Los Angeles, County of Los Angeles, State of California, as shown on Official Map No. 1 filed in Book 5, Pages 35 to 37, inclusive of Official Maps, in the Office of the County Recorder of said County, described as follows:

Beginning at the Southerly terminus of that certain course in the Westerly line of said Parcel 1 shown as having a bearing of North 28° 26' 54" East and a distance of 88.14 feet; thence along a line parallel with and distant 30 feet, measured at right angles Northeasterly from the Southwesterly line of said Parcel 1, South 45° 04' 57" East 219.60 feet; thence perpendicular to said Southwesterly line North 44° 55' 03" East 207.89 feet to the Northerly line of said Parcel 1; thence along said Northerly line South 89° 07' 34" West 28.36 feet to the Westerly terminus of that certain course in the Northerly line of said Parcel 1 shown as having a bearing of North 89° 07' 34" East and a distance of 200.00 feet; thence continuing along the Northerly and Westerly lines of said Parcel 1 the following courses and distances:  South 61° 33' 33" West 59.85 feet; South 89° 06' 04" West 40.00 feet; North 67° 32' 41" West 45.00 feet; North 44° 59' 58" West 138.24 feet; South 28° 26' 54" West 88.14 feet to the Point of Beginning.

As modified by that certain Settlement, Mutual Access and Easement Modification Agreement recorded December 23, 1993, as Instrument No. 93-2504040, Official Records.

Area B:

05 2764248

11/10/ J5

36

Parcel 11:

Lots 1 to 6 inclusive of W. J. Fisher's Addition No. 1 of the Kohler and Frohling
Tract, in the City of Los Angeles, County of Los Angeles, State of California, as
per map recorded in Book 37, Page 91 of Miscellaneous Records, in the Office of
the County Recorder of said County.

Parcel 12:

Lots 18 to 23 inclusive, in Block 2 of F.B. Wilde's Subdivision of a Part of Coronel
Tract, in the City of Los Angeles, County of Los Angeles, State of California, as
per map recorded in Book 55, Page 81 of Miscellaneous Records, in the Office of
the County Recorder of said County.

Assessor's Parcel Number:      5146-009-003;  5146-009-004;
                               5146-009-005;  5147-034-015

05 2764248