| | |
|---|---|
| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number<br><br>Steven K. Linkon, Esq. SBN 101056<br>Routh Crabtree Olsen, P.S.<br>3535 Factoria Boulevard SE, Suite 200<br>Bellevue, WA 98006<br>slinkon@rcolegal.com<br>425-586-1952 phone, 425-285-9193 fax<br><br>☐ Individual appearing without counsel<br>☒ Attorney for: Chinatrust Bank, USA | FOR COURT USE ONLY |
| **UNITED STATES BANKRUPTCY COURT**<br>**CENTRAL DISTRICT OF CALIFORNIA** | |
| In re:<br><br>MERUELO MADDUX PROPERTIES, INC., ET AL.<br><br>X Affects the following Debtor:<br>Merco Group - 3185 E. Washington Blvd., LLC<br><br><div align="right">Debtor(s).</div> | CHAPTER: 11<br><br>CASE NO.: 09-13356-KT<br><br>DATE: 10/15/09<br>TIME: 9:30 am<br>CTRM: 301<br>FLOOR: 3 |

AMENDED    **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**UNDER 11 U.S.C. § 362 (with supporting declarations)**
**(MOVANT:** Chinatrust Bank, USA _____ **)**
**(Real Property)**

1. NOTICE IS HEREBY GIVEN to the Debtor(s) and Trustee (if any)("Responding Parties"), their attorneys (if any), and other interested parties that on the above date and time and in the indicated courtroom, Movant in the above-captioned matter will move this Court for an Order granting relief from the automatic stay as to Debtor(s) and Debtor's(s') bankruptcy estate on the grounds set forth in the attached Motion.

2. **Hearing Location:**    ☐ **255 East Temple Street, Los Angeles**    ☐ **411 West Fourth Street, Santa Ana**
    ☒ **21041 Burbank Boulevard, Woodland Hills**    ☐ **1415 State Street, Santa Barbara**
    ☐ **3420 Twelfth Street, Riverside**

3. a. ☒ This Motion is being heard on REGULAR NOTICE pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Motion, you must file a written response to this Motion with the Bankruptcy Court and serve a copy of it upon the Movant's attorney (or upon Movant, if the Motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the above hearing and appear at the hearing of this Motion.

   b. ☐ This Motion is being heard on SHORTENED NOTICE. If you wish to oppose this Motion, you must appear at the hearing. Any written response or evidence may be filed and served:

      ☐ at the hearing   ☐ at least _____ court days before the hearing.

    (1) ☐ A Motion for Order Shortening Time was not required (according to the calendaring procedures of the assigned judge).

    (2) ☐ A Motion for Order Shortening Time was filed per Local Bankruptcy Rule 9075-1(b) and was granted by the Court and such motion and order have been or are being served upon the debtor and trustee, if any.

    (3) ☐ A Motion for Order Shortening Time has been filed and remains pending. Once the Court has ruled on that Motion, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached Motion and the deadline for filing and serving a written opposition to the Motion.

4. You may contact the Bankruptcy Clerk's Office to obtain a copy of an approved court form for use in preparing your response (Optional Court Form F 4001-1M.RES), or you may prepare your response using the format required by Local Bankruptcy Rule 9004-1 and the Court Manual.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

_January 2009_                  **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 2 of 48*    **F 4001-1M.RP**

| In re                    (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.                    Debtor(s). | CASE NO.: 09-13356-KT |

5.    If you fail to file a written response to the Motion or fail to appear at the hearing, the Court may treat such failure as a waiver of your right to oppose the Motion and may grant the requested relief.


Dated:  9/11/09


Routh Crabtree Olsen, P.S.
_____
*Print Law Firm Name (if applicable)*



Steven K. Linkon
_____
*Print Name of Individual Movant or Attorney for Movant*

_____
*Signature of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                    **F 4001-1M.RP**

| In re                (SHORT TITLE)<br>MERUELO MADDUX PROPERTIES, INC., ET AL.          Debtor(s). | CHAPTER: 11<br>CASE NO.: 09-13356-KT |
|---|---|

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### (MOVANT:  Chinatrust Bank, USA                    )

1. **The Property at Issue:** Movant moves for relief from the automatic stay with respect to following real property (the "Property"):

   *Street Address:* 3185 East Washington Boulevard
   *Apartment/Suite No.:*
   *City, State, Zip Code:* Los Angeles, CA  90023

   Legal description or document recording number (including county of recording):

   ☒  See attached continuation page.

2. **Case History:**
   a. ☒ A voluntary ☐ An involuntary   petition under Chapter   ☐ 7  ☒ 11  ☐ 12  ☐ 13
      was filed on *(specify date):* 3/27/09
   b. ☐ An Order of Conversion to Chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13
      was entered on *(specify date):*
   c. ☐ Plan was confirmed on *(specify date):*
   d. ☐ Other bankruptcy cases affecting this Property have been pending within the past two years.  See attached Declaration.

3. **Grounds for Relief from Stay:**
   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:
      (1) ☒ Movant's interest in the Property is not adequately protected.
         (a) ☒ Movant's interest in the collateral is not protected by an adequate equity cushion.
         (b) ☒ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.
         (c) ☐ No proof of insurance re Movant's collateral has been provided to Movant, despite borrower(s)'s obligation to insure the collateral under the terms of Movant's contract with Debtor(s).
         (d) ☐ Payments have not been made as required by an Adequate Protection Order previously granted in this case.
      (2) ☐ The bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.
         (a) ☐ Movant is the only creditor or one of very few creditors listed on the master mailing matrix.
         (b) ☐ Non-individual entity was created just prior to bankruptcy filing for the sole purpose of filing bankruptcy.
         (c) ☐ The Debtor(s) filed what is commonly referred to as a "face sheet" filing of only a few pages consisting of the Petition and a few other documents.  No other Schedules or Statement of Affairs (or Chapter 13 Plan, if appropriate) have been filed.
         (d) ☐ Other (See attached continuation page).

*(Continued on next page)*

Motion for Relief from Stay (Real Property) - *Page 4 of ~~4/6~~*                **F 4001-1M.RP**

| In re                          (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.        Debtor(s). | CASE NO.:  09-13356-KT |

(3) ☐ *(Chapter 12 or 13 cases only)*

    (a) ☐  Postconfirmation plan payments have not been made to the Standing Trustee.

    (b) ☐  Postconfirmation payments required by the confirmed plan have not been made to Movant.

(4) ☐  For other cause for relief from stay, see attached continuation page.

b.  ☐  Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property; and pursuant to § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

c.  ☐  Pursuant to 11 U.S.C. § 362(d)(3), Debtor(s) has/have failed within the later of 90 days after the petition or 30 days after the court determined that the Property qualifies as single asset real estate to file a reasonable plan of reorganization or to commence monthly payments.

d.  ☐  Pursuant to 11 U.S.C. § 362(d)(4), Debtor's(s) filing of the petition was part of a scheme to delay, hinder, and defraud creditors that involved:

    (1) ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐  Multiple bankruptcy filings affecting the Property.

4.  ☐  Movant also seeks annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

5.  **Evidence in Support of Motion:  *(Important Note:  Declaration(s) in support of the Motion MUST be attached hereto.)***

    a.  ☒  Movant submits the attached Declaration(s) on the Court's approved forms (if applicable) to provide evidence in support of this Motion pursuant to Local Bankruptcy Rules.

    b.  ☐  Other Declaration(s) are also attached in support of this Motion.

    c.  ☐  Movant requests that the Court consider as admissions the statements made by Debtor(s) under penalty of perjury concerning Movant's claims and the Property set forth in Debtor(s)'s Schedules.  Authenticated copies of the relevant portions of the Schedules are attached as Exhibit _____.

    d.  ☐  Other evidence *(specify)*:

6.  ☒  **An optional Memorandum of Points and Authorities is attached to this Motion.**

**WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following *(specify forms of relief requested)*:**

1.  Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.  ☐  Annulment of the stay so that the filing of the bankruptcy petition does not affect postpetition acts, as specified in the attached Declaration(s).

3.  ☐  Additional provisions requested:

    a.  ☒  That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

    b.  ☒  That the 10-day stay described by Bankruptcy Rule 4001(a)(3) be waived.

    c.  ☐  That Extraordinary Relief be granted as set forth in the Attachment *(attach Optional Court Form F 4001-1M.ER).*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 5 of* 48    **F 4001-1M.RP**

| In re                                (SHORT TITLE)<br>MERUELO MADDUX PROPERTIES, INC., ET AL.<br><div align="right">Debtor(s).</div> | CHAPTER: 11<br>CASE NO.: 09-13356-KT |
|---|---|

     d.  ☐  For other relief requested, see attached continuation page.

**4.**  If relief from stay is not granted, Movant respectfully requests the Court to order adequate protection.

Dated: 9/11/09                      Respectfully submitted,

                                     Chinatrust Bank, USA
                                     *Movant Name*

                                     Routh Crabtree Olsen, P.S.
                                     *Firm Name of Attorney for Movant (if applicable)*

                                By:
                                *Signature*

                              Name:   Steven K. Linkon
                              *Typed Name of Individual Movant or Attorney for Movant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                        **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 6 of* 48      **F 4001-1M.RP**

| In re                                (SHORT TITLE)<br>MERUELO MADDUX PROPERTIES, INC., ET AL.<br><br>                                                                Debtor(s). | CHAPTER: 11<br><br>CASE NO.: 09-13356-KT |
|---|---|

X Affects the following Debtor:

# REAL PROPERTY DECLARATION
## (MOVANT: Chinatrust Bank, USA                          )

I, Graciela Burrola _____ , declare as follows:
                    *(Print Name of Declarant)*

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion ("Property") because *(specify)*:

   ☐ I am the Movant and owner of the Property.

   ☐ I manage the Property as the authorized agent for the Movant.

   ☒ I am employed by Movant as *(state title and capacity)*: Vice President of Credit Administration.

   ☐ Other *(specify)*:

2. I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor(s) concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the Court if required.

3. a.  The address of the Property that is the subject of this Motion is:

      *Street Address:* 3185 East Washington Boulevard
      *Apartment/Suite No.:*
      *City, State, Zip Code:* Los Angeles, CA  90023

   b.  The legal description or document recording number (including county of recording) set forth in Movant's Deed of Trust is attached as Exhibit 1 _____ .

      ☐ See attached page.

4. Type of property *(check all applicable boxes)*:
   a. ☐ Debtor's(s') principal residence  b. ☐ Other single family residence
   c. ☐ Multi-unit residential             d. ☐ Commercial
   e. ☒ Industrial                          f. ☐ Vacant land
   g. ☐ Other *(specify)*:

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 7 of* 48       **F 4001-1M.RP**

| In re                          (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.                    Debtor(s). | CASE NO.: 09-13356-KT |

5. Nature of Debtor's(s) interest in the Property:

   a. ☒ Sole owner
   b. ☐ Co-owner(s) *(specify)*:
   c. ☐ Lien holder *(specify)*:
   d. ☐ Other *(specify)*:
   e. ☐ Debtor(s)  ☐ did   ☐ did not  list the Property in the Schedules filed in this case.
   f. ☐ Debtor(s) acquired the interest in the Property by   ☐ grant deed  ☐ quitclaim deed  ☐ trust deed

      The deed was recorded on:

6. Amount of Movant's claim with respect to the Property:

|   |   | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ 9,541,564.62 | $ | $ 9,541,564.62 |
| b. | Accrued Interest: | $ 222,827.28 | $ 485,781.41 | $ 708,608.69 |
| c. | Late Charges | $ | $ | $ |
| d. | Costs (Attorney's Fees, Other Costs): | $ 55,518.12 | $ 44,385.90 | $ 99,904.02 |
| f. | Advances (Property Taxes, Insurance): | $ | $ | $ |
| g. | TOTAL CLAIM as of 8/31/09 : | $ 9,819,910.02 | $ 530,167.31 | $ 10,350,077.33 |

   h. ☐ Loan is all due and payable because it matured on *(specify date):* 1/2/09

7. Movant holds a ☒ deed of trust   ☐ judgment lien  ☒ other *(specify)* Assignment of Rents
   that encumbers the Property.

   a. A true and correct copy of the document as recorded is attached as Exhibit 1 .
   b. A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit 2 .
   c. ☐ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit _____.

8. Status of Movant's claim relating to the Property *(fill in all applicable information requested below)*:

   a. Current interest rate: 11.93%
   b. Contractual maturity date: 4/13/16
   c. Amount of current monthly payment: $ 98,021.07
   d. Number of PREPETITION payments that have come due and were not made:   2   . Total amount: $ 222,827.28
   e. Number of POSTPETITION payments that have come due and were not made:   5   . Total amount: $ 485,781.41
   f. Date of POSTPETITION default:  4/1/09
   g. Last payment received on the following date:  1/8/09
   h. Notice of default recorded on the following date: 3/13/09
   i. Notice of sale recorded on the following date:
   j. Foreclosure sale originally scheduled for the following date:
   k. Foreclosure sale currently scheduled for the following date:
   l. Foreclosure sale already held on the following date:
   m. Trustee's deed on sale already recorded on the following date:
   n. Future payments due by time of anticipated hearing date *(if applicable)*:
      An additional payment of $ 98,021.07 will come due on 9/1/09 , and on the 1st day of each month thereafter. If the payment is not received by the 10th day of the month, a late charge of $_____ will be charged to the loan.

9. Attached hereto as Exhibit 3 is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor(s) since the petition date.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Motion for Relief from Stay (Real Property) - *Page 8 of* ~~16~~ 48          **F 4001-1M.RP**

| In re                              (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.                    Debtor(s). | CASE NO.: 09-13356-KT |

10. ☒ *(Chapter 7 and 11 cases only):* The fair market value of the entire Property is $ 11,800,000.00_____, established by:

    a. ☐ Appraiser's declaration with appraisal attached herewith as Exhibit 5_____.

    b. ☐ A real estate broker or other expert's declaration regarding value attached as Exhibit _____.

    c. ☐ A true and correct copy of relevant portion(s) of Debtor's(s') Schedules attached as Exhibit 6_____.

    d. ☒ Other *(specify):* Declaration of Richard Meruredo

11. ☒ The fair market value of the Property is declining based on/due to: economic conditions and credit market conditions _____

12. ☒ **Calculation of equity in Property:**

    a. Based upon ☐ preliminary title report ☒ Debtor's(s') admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | **Name of Holder** | **Amount as Scheduled by Debtor(s) (if any)** | **Amount Known to Declarant and Source** |
|---|---|---|---|
| 1st Deed of Trust: | Chinatrust Bank | | $10,350,077.33 |
| 2nd Deed of Trust: | | | |
| 3rd Deed of Trust: | | | |
| Judgment Liens: | | | |
| Taxes: | | | $175,608.81 |
| Other: | | | |
| **TOTAL DEBT:  $ 10,525,686.14** | | | |

    b. Evidence establishing the existence of the above deed(s) of trust and lien(s) is attached as Exhibit 1_____, and consists of:

        ☐ Preliminary title report

        ☐ Relevant portions of Debtor's(s') Schedules as filed in this case

        ☒ Other *(specify):* Recorded Deed of Trust.

    c. Subtracting the deed(s) of trust and other lien(s) set forth above from the value of the Property as set forth in Paragraph 10 above, the Debtor's(s') equity in the Property is $ 1,274,313.86_____ (§ 362(d)(2)(A)).

    d. The value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant is $1,274,313.86_____ (§ 362(d)(1)).

    e. Estimated costs of sale: $ 531,000.00_____ (Estimate based upon 4.5____ % of estimated gross sales price)

13. ☐ *(Chapter 12 and 13 cases only)* Chapter 12 or 13 case status information:

    a. 341(a) Meeting currently scheduled for (or concluded on) the following date:
       Confirmation hearing currently scheduled for (or concluded on) the following date:
       Plan confirmed on the following date *(if applicable):*

    b. Postpetition/preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| | | | | | |
|---|---|---|---|---|---|
| *(Number of)* _____ | payment(s) due at $_____ | each | = | $_____ |
| *(Number of)* _____ | payment(s) due at $_____ | each | = | $_____ |
| *(Number of)* _____ | late charge(s) at $_____ | each | = | $_____ |
| *(Number of)* _____ | late charge(s) at $_____ | each | = | $_____ |

*(Continued on next page)*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 9 of* ___48___          **F 4001-1M.RP**

| In re                           (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.                              Debtor(s). | CASE NO.: 09-13356-KT |

c.  Postpetition/preconfirmation advances or other charges due but unpaid:          $_____
    (See attachment for details of type and amount.)

            **TOTAL POSTPETITION/PRECONFIRMATION DELINQUENCY:**  $_____

d.  Postconfirmation payments due BUT REMAINING UNPAID since plan confirmation *(if applicable)*:

    *(Number of)* _____ payment(s) due at $_____ each  =  $_____
    *(Number of)* _____ payment(s) due at $_____ each  =  $_____
    *(Number of)* _____ late charge(s) at  $_____ each  =  $_____
    *(Number of)* _____ late charge(s) at  $_____ each  =  $_____

e.  Postconfirmation advances or other charges due but unpaid:          $_____
    (See attachment for details of type and amount.)

            **TOTAL POSTCONFIRMATION DELINQUENCY:**          $_____

f.  ☐  The claim is provided for in the Chapter 12 or 13 Plan.  Plan payment history is attached as Exhibit _____.

g.  ☐  See attached Declaration(s) of Chapter 12 or 13 Trustee regarding receipt of payments under the plan *(attach Court Form F 4001-1M.13).*

14. ☐  Movant has not been provided with evidence that the Property is currently insured, as required under the terms of the loan.

15. ☐  The court determined that the Property qualifies as single asset real estate on _____. More than 90 days have passed since the filing of the petition, more than 30 days have passed since the court determined that the Property qualifies as single asset real estate, the Debtor(s) has/have not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time  or the Debtor(s) has/have not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

16. ☐  See attached continuation page for facts establishing that the bankruptcy case was filed in bad faith to delay, hinder or defraud Movant.

17. ☐  The filing of the petition was part of a scheme to delay, hinder and defraud creditors that involved:

    a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval.  See attached continuation page for facts establishing the scheme.

    b.  ☐  Multiple bankruptcy filings affecting the Property.  The multiple bankruptcy filings include the following cases:
        1.  Case Name:
                Case Number:                          Chapter:
                Date Filed:                              Date Dismissed:                        Date Discharged:
                Relief from stay re this property        ☐  was    ☐  was not  granted.
        2.  Case Name:
                Case Number:                          Chapter:
                Date Filed:                              Date Dismissed:                        Date Discharged:
                Relief from stay re this property        ☐  was    ☐  was not  granted.
        3.  ☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

    ☐  See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

*January 2009*                                                                        **F 4001-1M.RP**

Motion for Relief from Stay (Real Property) - *Page 10 of* 48      **F 4001-1M.RP**

| In re                                (SHORT TITLE)<br>MERUELO MADDUX PROPERTIES, INC., ET AL.<br><div align=right>Debtor(s).</div> | CHAPTER: 11<br>CASE NO.: 09-13356-KT |
|---|---|

18. ☐ Movant seeks annulment of the automatic stay so that the filing of the bankruptcy petition does not affect any and all of the enforcement actions set forth in paragraph 8 above that were taken after the filing of the bankruptcy petition in this case.

   a. ☐ These actions were taken by Movant without knowledge of the bankruptcy filing, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Although Movant knew about the bankruptcy filing, Movant had previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting this Property as set forth in paragraph 17(b) above.

   c. ☐ For other facts justifying annulment, see attached continuation page.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed on** September 10, , 2009 , at Torrance, California _____ *(city, state)*.

Graciela Burrola
*Print Declarant's Name*

*Signature of Declarant*

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                     **F 4001-1M.RP**

| In re                                      (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.                 Debtor(s). | CASE NO.: 09-13356-KT |

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

3535 Factoria Boulevard SE, Suite 200
Bellevue, WA  98006

A true and correct copy of the foregoing document described as <u>NOTICE OF MOTION AND MOTION FOR RELIEF</u> <u>FROM THE AUTOMATIC STAY UNDER 11 U.S.C. SECTION 362</u>          will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On <u>9/11/09</u>          I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

John J. Bingham        jbinham@dgdk.com
Jennifer L Braun       jennifer.l.braun@usdoj.gov
Martin J Brill         mjb@lnbrb.com
Howard Camhi           hcamhi@ecjlaw.com

☑ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL (indicate method for each person or entity served):**
On <u>9/11/09</u>          I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

United States Bankruptcy Court - Central District of California
chambers of Honorable Kathleen Thompson
21041 Burbank Boulevard, Suite 305
Woodland Hills, CA  91367

☑ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____          I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 9/11/09 | Annalisa Provence | *Annalisa Provence* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

**F 4001-1M.RP**

**F 4001-1M.RP**

| In re                              (SHORT TITLE) | CHAPTER: 11 |
|---|---|
| MERUELO MADDUX PROPERTIES, INC., ET AL.  Debtor(s). | CASE NO.: 09-13356-KT |

**ADDITIONAL SERVICE INFORMATION** (if needed):

Service via ECF

| | |
|---|---|
| Ronald R Cohn | rcohn@horganrosen.com |
| Michaeline H Correa | mcorrea@jonesday.com |
| Brian L Davidoff | bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com; jreinglass@rutterhobbs.com |
| Aaron De Leest | aed@dgdk.com |
| Michael G Fletcher | mfletcher@frandzel.com, efiling@frandzel.com; shom@frandzel.com |
| Barry V Freeman | bvf@jmbm.com, bvf@jmbm.com |
| Donald L Gaffney | dgaffney@swlaw.com |
| Thomas M Geher | tmg@jmbm.com |
| Bernard R Given | bgiven@frandzel.com,efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com |
| Barry S Glaser | bglaser@swjlaw.com |
| John A Graham | jag@jmbm.com |
| Ofer M. Grossman | omglaw@gmail.com |
| Asa S Hami | ahami@sulmeyerlaw.com |
| Brian T Harvey | bharvey@buchalter.com, IFS_filing@buchalter.com |
| Andrew F Kim | kim-a@blankrome.com |
| Michael S Kogan | mkogan@ecjlaw.com |
| Tamar Kouyoumjian | tkouyoumjian@sulmeyerlaw.com |
| Duane Kumagai | dkumagai@rutterhobbs.com, calendar@rutterhobbs.com |
| David E Leta | dleta@swlaw.com, wsmart@swlaw.com |
| Richard Malatt | rmalatt@gmail.com |
| Elmer D Martin | elmermartin@msn.com |
| Elissa Miller | emiller@sulmeyerlaw.com |
| Iain A W Nasatir | inasatir@pszjlaw.com, jwashington@pszjlaw.com |
| Lawrence Peitzman | lpeitzman@pwkllp.com |
| Eric S Pezold | epezold@swlaw.com, dwlewis@swlaw.com |
| Dean G Rallis Jr | drallis@sulmeyerlaw.com |
| Craig M Rankin | cmr@lnbrb.com |
| Michael B Reynolds | mreynolds@swlaw.com, kcollins@swlaw.com |
| Martha E Romero | Romero@mromerolawfirm.com |
| Victor A Sahn | vsahn@sulmeyerlaw.com |
| Jeffrey S Shinbrot | shinbrot@earthlink.net |
| Stephen Shiu | sshiu@swlaw.com |
| Daniel H. Slate | dslate@buchalter.com, salarcon@buchalter.com; ifs_filing@buchalter.com |
| Surjit P Soni | surj@sonilaw.com |
| Tracie L Spies | tracie@haganlaw.org |
| James Stang | jstang@pszjlaw.com |
| John N Tedford | jtedford@dgdk.com |
| Alan G Tippee | atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com |
| United States Trustee (SV) | ustpregion16.wh.ecf@usdoj.gov |
| Jason L Weisberg | jason@gdclawyers.com |
| Jasmin Yang | jyang@swlaw.com |

Service Via U.S. Mail

Janis G. Abrams, The Gersh Law Firm Inc., 15821 Ventura Blvd., Ste. 515, Encino, CA 91436
David P. Beitchman, 16130 Ventura Blvd., Suite 570, Encino, CA 91436

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

# EXHIBIT 1

13 of 48

*#31282 +*
*MERCO GROUP 5185 E. WASHINGTON*

**This page is part of your document - DO NOT DISCARD**

**06 0912987**

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
04/26/06 AT 08:00am**

## TITLE(S) :



L E A D   S H E E T

| FEE | | | D.T.T. |
|---|---|---|---|
| FEE $ 93 ᵀHH | | | |
| DAF $ 6.— | 3T | | |
| C-20 | 25 | | |
| CODE 20 | | | |
| CODE 19 | | | |
| CODE 9___ | | | |

**NOTIFICATION SENT $4**

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

14 of 48

LandAmerica Commercial Services

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

**06 0912987**

CHINATRUST BANK (U.S.A.)
22939 Hawthorne Boulevard
Torrance, California 90505
Attention: Edwin Duterte

Assessor's Parcel No. 5169-020-003

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective as of April 13, 2006, between MERCO GROUP – 3185 E. WASHINGTON BOULEVARD, LLC, a Delaware limited liability company ("Trustor"), whose address is 761 Terminal Street, Building 1, Second Floor, Los Angeles, California 90021, and CHICAGO TITLE COMPANY, as Trustee ("Trustee"), for the benefit of CHINATRUST BANK (U.S.A.), a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

<u>GRANT IN TRUST</u>:

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property commonly known as: 3185 East Washington Boulevard, located in the City of Los Angeles, County of Los Angeles, State of California, described as:

SEE EXHIBIT A ATTACHED HERETO AND
INCORPORATED HEREIN BY THIS REFERENCE.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

BN 814711v1                                       1

*9500059-70*

*3*

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH:  All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations,

**06 0912987**

16 of 48

settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH: All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH: All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined);

TOGETHER WITH: All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property (as hereinafter defined) or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive. It is the intent of Trustor to encumber hereby all of its property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property." As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

BN 814711v1                                3                    06 0912987

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

FOR THE PURPOSE OF SECURING:

(1)    Payment of the sum of Nine Million Nine Hundred Fifty Thousand and No/100 Dollars ($9,950,000.00) together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note ("Note") of even date herewith, in the original principal amount of Nine Million Nine Hundred Fifty Thousand and No/100 Dollars ($9,950,000.00), executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of Note at a different rate of interest or on different terms);

(3)    Performance of each and every term, covenant and condition of that certain Loan Agreement of even date herewith by and between Trustor and Lender, and all modifications, renewals or extensions thereof ("Agreement");

(4)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(5)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(6)    Trustor's performance of each agreement in this Deed of Trust.

**TRUSTOR AND LENDER AGREE AS FOLLOWS:**

**RIGHTS AND DUTIES OF THE PARTIES.**

1.    **Payment And Performance By Trustor**. Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple. Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

2.    **Payment By Trustor Of Taxes And Other Impositions**. The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or

BN 81471lvl                          4                    **06 0912987**

based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least fifteen (15) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

At the request of Lender after the occurrence of an Event of Default, or otherwise upon written agreement between Trustor and Lender, or as required by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums. In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph 2 and the Agreement, Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph 2 and the Agreement. Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender, the latter may, without making any advance whatsoever, apply any sums held by it upon any obligation of Trustor secured hereby. Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or

06 0912987

application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as renders the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

3.    **Trustor To Pay Ground Rents And Obligations That Could Result In Liens On The Property.**  Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded, and to which this Deed of Trust may be subordinate.  Trustor shall pay at or prior to maturity all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

4.    **Trustor To Maintain Insurance.**  (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks as shall from time to time be required by Lender pursuant to the Agreement to Furnish Insurance executed by Trustor in favor of Lender of even date herewith.  Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the

06 0912987

collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

5.    **Insurance Proceeds, Condemnation Proceeds And Other Recoveries**. (a) All settlements, awards, damages and proceeds received by Trustor or in which Trustor has an interest under any fire or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 5. (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 5. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph 5, at the option of Lender, may be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine. The Award may be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender. The Award may be released to Trustor, or any such amount may be divided in any manner among any such application, use or release. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

6.    **Maintenance And Preservation Of The Property**.

(a)    Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or

BN 814711v1                                      7                          **06 0912987**

additions required to be made to, or safety appliances and devices required to be installed or maintained in or about, the Property, or any portion thereof, under any such laws, ordinances, rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to the Property, or any portion thereof, and payment of any fees, charges or assessments arising out of or in any way related to treatment of the Property, or any portion thereof, as a source of air pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B) any and all covenants, conditions, restrictions, equitable servitudes and easements, whether public or private, of every kind and character, and (C) any and all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Property and/or pertain to acts committed or conditions existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone holding under Trustor, including (but without limitation) such work of alteration, improvement or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste of the Property, or any portion thereof; (vi) do all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value, including, without limitation, keeping all plants, lawns and other landscaping in a good condition, and otherwise performing such commercially reasonable upkeep and maintenance to the Property to insure that the Property, and each part thereof, is maintained in a first-class manner and retains at all times a first-class appearance and condition, such upkeep to include, without limitation, appropriate measures to protect wood, stucco and concrete surfaces from weathering, deterioration and aging, and to protect from and immediately remove graffiti or other defacement from such surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or like agreements affecting the Property or the operation, occupation or use thereof (and, if not previously assigned, in the event of default, all right, title and interest of Trustor under any such leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder, together with any deposits made in connection therewith); (viii) make payment of any and all charges, assessments or fees imposed in connection with the delivery, installation or maintenance of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties hereby having specifically bargained in contemplation of the fact that any subsequent encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x) make no further assignment of rents of the Property; and (xi) execute and, where appropriate, acknowledge and deliver such further documents or instruments as Lender or Trustee deem reasonable to preserve, continue, perfect and enjoy the security provided for herein, including (but without limitation) assignments of Trustor's interest in leases of the Property.

(b)     Except as otherwise permitted under the Agreement, Trustor shall not undertake or suffer to be made pursuant to section (a) of this paragraph 6, any material alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural or other material changes in, any buildings, improvements, Fixtures or Personality comprising the Property, without the prior written consent of Lender, which shall not be unreasonably withheld. No material changes are to be made in any plans and/or specifications as approved by Lender without Lender's prior written consent, which consent shall not be unreasonably withheld. All such work shall be performed promptly and in good and workmanlike manner, using first quality materials in conformity with plans and specifications approved in advance by Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other

than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

      (c)    Without limiting the generality of this paragraph (6), Trustor hereby warrants and represents to Lender and covenants with Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in Exhibit B attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants and represents to Lender and covenants with Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to

06 0912987

Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)      If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Environmental Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Environmental Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Environmental Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Environmental Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e)      Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph 6.  Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct.  Lender may rely thereon without any investigation or inquiry.  By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph 6, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.      **Legal Actions And Payment Of Related Costs**.  Trustor shall appear in and defend any action or proceeding that may, in the Lender's judgment, adversely affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust.  Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention.  Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding.  Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust.  Trustor will, upon written demand by Lender, commence any action or proceeding reasonably required to protect or facilitate Lender's recovery of Awards under paragraph 5 of this Deed of Trust.  If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by

Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, reasonable attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor, which approval shall not be unreasonably withheld. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

**8.    Lender's Rights To Inspect The Property.**  Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph 6.

**9.    Substitution Of Trustee.**  From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph 9 shall be conclusive proof of the proper substitution of such new Trustee.

**10.    Miscellaneous Powers Of Lender And Trustee.**  In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

**11.    Assignment And Collection Of Rents.**  (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph 14 of this Deed of Trust, being

BN 814711v1                                11                    06 0912987

retained by Trustor.  (b) Upon any default by Trustor under paragraph 14 of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor.  If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents.  All rents collected by Lender or the receiver shall be applied first to payment of the reasonable costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Note (in such order as Lender may determine) and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.  (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property.  These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made.  In the event of any conflict between the provisions of this paragraph 11 and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.  (d) Trustor shall not enter into any lease of the Property, or any portion thereof, without the prior written consent of Lender.

12.    **Reconveyance Of The Property**.  Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust.  The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents. Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.  NOTWITHSTANDING ANY PROVISION TO THE CONTRARY CONTAINED IN THIS DEED OF TRUST, TRUSTOR SHALL HAVE THE RIGHT TO REQUEST, AND BENEFICIARY SHALL CAUSE THE TRUSTEE TO ISSUE, PARTIAL RECONVEYANCE OF THE LIEN OF THIS DEED OF TRUST, UPON AND SUBJECT TO SATISFACTION OF THE PROVISIONS OF SECTION 3.12 OF THE AGREEMENT.

06 0912987

14

**13.    Change Of Lender's Records.** In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

## ACCELERATION AND DEFAULT.

**14.    Conditions Under Which Lender May Declare A Default By Trustor.** A default under this Deed of Trust shall occur in the event that: (a) any sum payable under the Note are not made when due; (b) any sum the payment of which is required or secured by this Deed of Trust is not made when due; (c) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (d) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (e) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed from such application by Trustor; or (f) an Event of Default under the Agreement occurs.

**15.    Lender's Right To Require Immediate Payment In Full.** In the event: (a) of a default under this Deed of Trust, or (b) except as permitted by the Agreement, Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable. Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument. No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

**16.    Lender's Right To Perform Acts Trustor Fails To Perform And Indemnification.**

(a)    If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust. Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust. In exercising the above powers, Lender or Trustee may pay necessary costs and

BN 814711v1                              13                  **06  0912987**

27 of 48

expenses, employ counsel, consultants, any other agents or independent contractors that Lender believes is necessary, in Lender's sole judgment, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all reasonable amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph 16, together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust. 

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against:  (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action.  The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

17.    **Trustee's Rights And Duties To Sell The Property**.  (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust.  Such notice shall be recorded in the office of the Recorder of the County where the Property is located.  (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust.  The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale.  The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to

28 of 48

Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

18.    **Other Remedies If Trustor Defaults.** (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note (in such order as Lender may determine) and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

19.    **Trustor's Obligations And Lender's Rights Not Waived.**    By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

BN 814711v1                                      15

**06  0912987**

**20.** **Successors In Interest**. The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

**21.** **Statements Concerning The Status Of The Loan**. From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust. Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

**22.** **Trustee's Obligations**. The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee. The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is indemnified against loss, costs, liability and expense.

**23.** **Obligations Of Trustor Are Joint And Several; Gender And Number**. If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**24.** **No Offsets**. No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust. Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

**25.** **Governing Law**. The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder. The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

**26.** **Agreement Changed Only By Writing**. This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

**27.** **Time**. Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

**28.** **Notice**. Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth below, or to such other address as Trustor may

06 0912987

designate by notice to Lender pursuant to the terms of paragraph 28(c), and (b) any notice to Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

Lender:

CHINATRUST BANK (U.S.A.)
22939 Hawthorne Boulevard
Torrance, California 90505
Attention: Edwin Duterte

Trustor:

MERCO GROUP – 3185 E. WASHINGTON BOULEVARD, LLC
761 Terminal Street
Building 1, Second Floor
Los Angeles, California 90021
Attn: Mr. Richard Meruelo

and to such other address as Lender may designate by notice to Trustor, pursuant to the terms of paragraph 28(c).

(c)     Except as otherwise provided by law, all notices, requests, demands, directions, and other communications provided for in this Deed of Trust must be in writing and sent by facsimile and mail or certified mail to the appropriate party at its respective address. Any notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via regular mail to the appropriate party at its respective address. If any notice is given by certified mail, it will be effective when deposited in the mails with first-class or airmail postage prepaid; or if given by facsimile and mail, when the facsimile is sent.

29.     <u>Titles, Captions, And Headings</u>. The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

30.     <u>Severability Of Provisions</u>. If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

31.     <u>Acknowledgment Of Trustor's Understanding Of Deed Of Trust</u>.   The foregoing terms, provisions and conditions of this Deed of Trust have been read and are understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

32.     <u>Lender's Reliance</u>.  The financial accommodations made or to be made by Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at the request and urging of Trustor and this Deed of Trust is being given in consideration of such financial accommodations, and Lender may rely upon the validity and enforceability of this Deed of Trust in making such financial accommodations.

BN 814711v1                                   17              06 0912987

33.    **Security Agreement**.

(a)    Security Interest and Fixture Filing. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements.    Trustor shall deliver to Lender, in form and substance satisfactory to Lender in its sole judgment, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default. Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines.    All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph 28 above, subject to change as therein provided.

34.    **Sale Of Interest**. Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

35.    **Separate Property**. Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

BN 814711v1                              18                    06 0912987

36.    **Books And Records**.  Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein.  Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time.

37.    **Financial Statements**.  Trustor, and any other person or entity liable for any of the obligations of Trustor hereunder, or to which the Deed of Trust refers, shall, upon Lender's request, or as provided in the Agreement, provide to Lender complete and accurate financial statements presenting the financial condition of Trustor and each such obligor as of the date of such financial statements are prepared and delivered to Lender, including but limited to all audited financial statements and accompanying opinions, qualifications, and footnotes of the auditor preparing them, or in the absence of such audited financial statements, their respective consolidated and consolidated balance sheets, income statements, sources and uses of funds, and such other supplemental reports and schedules as Lender shall require. All such financial statements shall be prepared in accordance with generally accepted accounting principles consistently applied, or in such other form and content as Lender may permit, in its sole opinion and judgment. All such financial statements shall contain a certification signed by one or more authorized representative of Trustor and such other obligors certifying the completeness and accuracy of all information therein, without exception.

38.    **Inspection, Appraisal, And Assessments**.  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto.  All reasonable costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.  All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof.  Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property. Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

BN 814711v1                                   19                        06 0912987

21

39.    **Definitions**.  All terms not defined herein shall be defined as set forth in the Agreement.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S ADDRESS SET FORTH ABOVE.

[SIGNATURE PAGE FOLLOWS]

BN 814711v1

20

06 0912987

34 of 48

IN WITNESS WHEREOF, Trustor has executed this Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the day and year set forth above.

**TRUSTOR:**

MERCO GROUP – 3185 E. WASHINGTON
BOULEVARD, LLC,
a Delaware limited liability company

By: _____

Name:  Richard Meruelo, as trustee of
         the Richard Meruelo Living Trust
         Under Declaration of Trust dated
         September 15, 1989
Title:   Sole Member

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

BN 814711v1                                 21                   **06  0912987**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

State of  California

*23*

County of  Los Angeles

On April 5, 2006 _____ before me, Adela Barrenos    Notary Public
<div style="text-align:right">Name and Title of Officer (e.g., "Jane Doe, Notary Public")</div>

personally appeared  Richard Meruelo
<div style="text-align:right">Name(s) of Signer(s)</div>

[X] personally known to me -OR- [ ] proved to me on the basis of satisfactory evidence to be the  person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> ADELA BARRENOS
> COMM. #1410000
> Notary Public-California
> LOS ANGELES COUNTY
> My Comm. Exp. April 8, 2007

WITNESS my hand and official seal.

*Adela Barrenos*
<div style="text-align:right">Signature of Notary Public</div>

------------------------------OPTIONAL------------------------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____          Signer's Name: _____

[ ] Individual                           [ ] Individual
[ ] Corporate Officer                    [ ] Corporate Officer
[ ] Titles(s): _____           [ ] Title(s): _____
[ ] Partner - [ ] Limited [ ] General    [ ] Partner - [ ] Limited [ ] General
[ ] Attorney-in-Fact                     [ ] Attorney-in-Fact
[ ] Trustee                              [ ] Trustee
[ ] Guardian or Conservator              [ ] Guardian or Conservator
[ ] Other:                               [ ] Other:

RIGHT THUMBPRINT OF SIGNER
Top of Thumb here

RIGHT THUMBPRINT OF SIGNER
Top of Thumb here

Signer Is Representing: _____   Signer Is Representing: _____

04/26/06

06 0912987

36 of 48

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Parcel 1:

All that portion of Lot 3 of Subdivision of the Martinez Tract, partly within the City of Los Angeles, and partly within the City of Vernon, County of Los Angeles, State of California, as per map recorded in Book 55, Page 24 of Miscellaneous Records, in the office of the County Recorder of said County, lying southwesterly of a line which is parallel within and 71.84 feet Southwesterly of the Southwesterly line of the right of way of the Los Angeles and Salt Lake Railway, formerly Los Angeles Terminal Railway.

Said land is shown on a Licensed Surveyors Map recorded in Book 147 Page 11 of Record of Survey.

Parcel 2:

An easement 25 feet in width for railway spur tract purposes but not including the right to store cars, upon and across the Northeasterly 71.84 feet of that portion of said Lot 3, lying Southwesterly of the Southwesterly line of said right of way of the Los Angeles and Salt Lake Railway Company.

06 0912987

legal rev. (010698)

**EXHIBIT A**
LEGAL DESCRIPTION

06 0912987

38 of 48

**EXHIBIT B**

26

PERMITTED TOXIC MATERIALS

There shall not be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph 6(c) of said Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic substances and/or hazardous materials.

Notwithstanding any provisions to the contrary contained in this Exhibit B and paragraph 6(c) of the Deed of Trust, in the event Trustor has executed any unsecured Environmental Indemnity in favor of Lender pertaining to the presence or release of hazardous materials and/or toxic substances or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous materials and/or toxic substances, shall be governed by the provisions of the Environmental Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Environmental Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Environmental Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

06 0912987

39  0748

# EXHIBIT 2

40 of 48



*4*

# PROMISSORY NOTE

$9,950,000.00                 Torrance, California                 April 13, 2006

FOR VALUE RECEIVED, MERCO GROUP – 3185 E. WASHINGTON BOULEVARD, LLC, a Delaware limited liability company ("Borrower"), promises to pay to CHINATRUST BANK (U.S.A.), a California banking corporation ("Lender"), or its order, at its office located at 22939 Hawthorne Boulevard, Torrance, California 90505, or at such other place as the holder hereof may designate, in lawful money of the United States of America, the principal sum of Nine Million Nine Hundred Fifty Thousand and No/100 Dollars ($9,950,000.00), or so much thereof as shall have been advanced and is outstanding together with interest, on the outstanding principal balance, until paid in full in accordance with the terms, conditions and provisions as hereinafter set forth in this Promissory Note (this "Note").

LOAN AGREEMENT. This Note is the "Note" as defined in that certain Loan Agreement (the "Loan Agreement") of even date herewith, entered into by and between Borrower and Lender, as it may be amended from time to time, and is subject to all of the terms and conditions thereof. All terms not defined herein shall have the same meaning as in the Loan Agreement. In the event of a conflict between the terms of this Note and the Loan Agreement, the terms of this Note shall prevail.

INTEREST RATE. From the Closing Date through April 13, 2011 ("Interest Rate Termination Date"), interest on the outstanding principal balance of this Note shall be computed and calculated based on a fixed rate equal to two percent (2.0%) over the 5-year United States Treasury Bill Index as in effect on the Closing Date as determined by Lender ("Initial Fixed Rate").

Beginning on the day after the Interest Rate Termination Date, the interest rate on the outstanding principal balance on this Note shall be one of the following two options as chosen by Borrower: (i) a fixed rate equal to two percent (2.0%) over the 5-year United States Treasury Bill Index as in effect on the Interest Rate Termination Date as determined by Lender ("Fixed Rate Option"), or (ii) a floating rate equal to one-quarter of one percent (0.25%) over "The Wall Street Journal Prime Rate," as the rate may change from time to time ("Floating Rate Option"). Borrower shall notify Lender of its election of the rate of interest applicable after the Interest Rate Termination Date within 10 days prior to the Interest Rate Termination Date.

The Wall Street Journal Prime Rate is and shall mean the variable rate of interest, on a per annum basis, which is announced and/or published in the Money Rates section of The Wall Street Journal, from time to time as its prime rate. The Note Rate shall change whenever The Wall Street Journal Prime Rate changes. If The Wall Street Journal Prime Rate becomes unavailable during the term of this Note, Lender may designate a substitute index after notice to Borrower.

Interest hereunder shall be calculated on the 365/360 method.

Borrower understands and acknowledges that The Wall Street Journal Prime Rate and the 5-year United States Treasury Bill Index are two of Lender's base rates and only serve as a basis upon

BN 814717v3

1

RECEIVED APR 25 2006

which effective rates of interest are calculated for loans making reference thereto and may not be the lowest of Lender's base rates.

PREPAYMENT FEE.  If Borrower prepays the Loan in whole or in part at any time the Initial Fixed Rate or Fixed Rate Option is in effect, it shall pay to Lender a prepayment fee equal to a percentage of the prepaid amount as follows: (i) five percent (5%), if the prepayment occurs after the Closing Date but on or before the first anniversary of the Closing Date or after the Interest Termination Date but on or before the first anniversary of the Interest Termination Date, (ii) four percent (4%), if the prepayment occurs after the first anniversary Closing Date but on or before the second anniversary of the Closing Date or after the first anniversary of the Interest Termination Date but on or before the second anniversary of the Interest Termination Date, (iii) three percent (3%), if the prepayment occurs after the second Closing Date but on or before the third anniversary of the Closing Date or after the second Interest Termination Date but on or before the third anniversary of the Interest Termination Date, (iv) two percent (2%), if the prepayment occurs after the third anniversary of the Closing Date but on or before the fourth anniversary of the Closing Date or after the third anniversary of the Interest Termination Date but on or before the fourth anniversary of the Interest Termination Date, and (v) one percent (1%), if the prepayment occurs after the fourth anniversary of the Closing Date but on or before the Interest Termination Date or after the fourth anniversary of the Interest Termination Date but before the Maturity Date.

PRINCIPAL AND INTEREST PAYMENTS.

Interest shall be due and payable monthly, in arrears, based upon the actual number of days elapsed for that monthly period, commencing on June 1, 2006, and shall continue to be due and payable, in arrears, on the same day of each and every calendar month thereafter until the Maturity Date (as hereinafter defined).

Principal shall be due and payable monthly in the amount of $12,704.82, commencing on June 1, 2006 and shall continue to be due and payable on the same day of each and every calendar month thereafter until April 31, 2011. Commencing on May 1, 2011, principal shall be due and payable monthly and shall continue to be due and payable on the same day of each and every calendar month thereafter until the Maturity Date based on a 20-year amortization schedule.

Upon the Maturity Date, the entire unpaid obligation outstanding under this Note, and to the extent they relate to this Note, the Deed of Trust, the Loan Agreement and any other Loan Documents shall become due and payable in full.

All payments due hereunder, including payments of principal and/or interest, shall be made to Lender in United States Dollars and shall be in the form of immediately available funds acceptable to the holder of this Note.

The Borrower may prepay in whole or in part any outstanding amounts under this Note at any time.

APPLICATION OF PAYMENTS.  All payments received by Lender from, or for the account of Borrower, due hereunder shall be applied by Lender, in its sole and absolute discretion, in the

BN 814717v3                                                2



following manner, or in any other order or manner as Lender chooses:

    a.    First. To pay any and all interest due, owing and accrued;

    b.    Second. To pay any and all costs, advances, expenses or fees due, owing and, payable to Lender, or paid or incurred by Lender, arising from or out of this Note, the Deed of Trust, the Loan Agreement, and any Loan Documents;

    c.    Third. To pay the outstanding principal balance of this Note.

All records of payments received by Lender shall be maintained at Lender's office, and the records of Lender shall, absent manifest error, constitute prima facie evidence of the matters reflected therein. The failure of Lender to record any payment or expense shall not limit or otherwise affect the obligations of Borrower under this Note.

MATURITY DATE. On April 13, 2016 ("Maturity Date"), the entire unpaid principal balance, and all unpaid accrued interest thereon, shall be due and payable without demand or notice. In the event that Borrower does not pay this Note in full on the Maturity Date then, as of the Maturity Date and thereafter until paid in full, the interest accruing on the outstanding principal balance hereunder shall be computed, calculated and accrued on a daily basis at the Default Rate (as hereinafter defined).

UNPAID INTEREST, CHARGES AND COSTS. Interest, late charges, costs or expenses that are not received by Lender within ten (10) calendar days from the date such interest, late charges, costs, or expenses become due, shall, at the sole discretion of Lender, be added to the principal balance and shall from the date due bear interest at the Default Rate.

HOLIDAY. Whenever any payment to be made under this Note shall be due on a day other than a Business Day, including Saturdays, Sundays and legal holidays generally recognized by banks doing business in California, then the due date for such payment shall be automatically extended to the next succeeding Business Day, and such extension of time shall in such cases be included in the computation of the interest portion of any payment due hereunder.

NO OFFSETS OR DEDUCTIONS. All payments under this Note shall be made by Borrower without any offset, decrease, reduction or deduction of any kind or nature whatsoever, including, but not limited to, any decrease, reduction or deduction for, or on account of, any offset, present or future taxes, present or future reserves, imposts or duties of any kind or nature, that are imposed or levied by or on behalf of any government or taxing agency, body or authority by or for any municipality, state or country. If at any time, present or future, Lender shall be compelled by any law, rule, regulation or any other such requirement which on its face or by its application requires or establishes reserves, or payment, deduction or withholding of taxes, imposts or duties to act such that it causes or results in a decrease, reduction or deduction (as described above) in payment received by Lender, then Borrower shall pay to Lender such additional amounts, as Lender shall deem necessary and appropriate, such that every payment received under this Note, after such decrease, reserve, reduction, deduction, payment or required withholding, shall not be reduced in any manner whatsoever.

DEFAULT. An Event of Default under the Loan Agreement shall constitute a default under this

BN 814717v3                                        3

43 of 48

Note (hereinafter "Default").

Upon the occurrence of a Default hereunder, Lender may, in its sole and absolute discretion, declare the entire unpaid principal balance, together with all accrued and unpaid interest thereon, and all other amounts and payments due hereunder, immediately due and payable, without notice or demand.

DEFAULT RATE. From and after the occurrence of any Default in this Note whether by non-payment, maturity, acceleration, non-performance or otherwise, and until such Default has been cured, all outstanding amounts under this Note (including, but not limited to, interest, costs and late charges) shall bear interest at a per annum rate ("Default Rate") equal to five percent (5%) over the Note Rate.

LATE CHARGES. Time is of the essence for all payments and other obligations due under this Note. Borrower acknowledges that if any payment required under this Note is not received by Lender within ten (10) calendar days after the same becomes due and payable, Lender will incur extra administrative expenses (i.e., in addition to expenses incident to receipt of timely payment) and the loss of the use of funds in connection with the delinquency in payment. Because, from the nature of the case, the actual damages suffered by Lender by reason of such administrative expenses and loss of the use of funds would be impracticable or extremely difficult to ascertain, Borrower agrees that five percent (5%) of the amount of the delinquent payment shall be the amount of damages which Lender is entitled to receive upon Borrower's failure to make a payment of principal or interest when due, in compensation therefor. Therefore, Borrower shall, in such event, without further demand or notice, pay to Lender, as Lender's monetary recovery for such extra administrative expenses and loss of use of funds, liquidated damages in the amount of five percent (5%) of the amount of the delinquent payment. The provisions of this paragraph are intended to govern only the determination of damages in the event of a breach in the performance of Borrower to make timely payments hereunder. Nothing in this Note shall be construed as in any way giving Borrower the right, express or implied, to fail to make timely payments hereunder, whether upon payment of such damages or otherwise. The right of Lender to receive payment of such liquidated and actual damages, and receipt thereof, are without prejudice to the right of Lender to collect such delinquent payments and any other amounts provided to be paid hereunder or under any of the Loan Documents, or to declare a default hereunder or under any of the Loan Documents.

SECURITY AND ACCELERATION. This Note is secured by, among other things, the Deed of Trust. The Deed of Trust contains, among other provisions, a provision for the immediate acceleration of this Note upon the occurrence of any Default hereunder, any event of default under the Deed of Trust, or upon any sale, transfer, conveyance, encumbrance and/or alienation of Borrower's right, title or interest (or any portion thereof) in the real or personal property described in the Deed of Trust. Reference is made to the Deed of Trust for the specific provisions thereof.

COST AND EXPENSES. Borrower hereby agrees to pay any and all costs or expenses paid or incurred by Lender by reason of, as a result of, or in connection with this Note, the Deed of Trust or the other Loan Documents, including, but not limited to, any and all reasonable attorneys' fees and related costs whether such costs or expenses are paid or incurred in connection with the

44 of 48

enforcement of this Note, the Deed of Trust and the Loan Documents, or any of them, the protection or preservation of the collateral or security for this Note or any other rights, remedies or interests of Lender, whether or not suit is filed. Borrower's agreement to pay any and all such costs and expenses includes, but is not limited to, reasonable costs and expenses incurred in or in connection with any bankruptcy proceeding, in enforcing any judgment obtained by Lender and in connection with any and all appeals therefrom, and in connection with the monitoring of any bankruptcy proceeding and its effect on Lender's rights and claims for recovery of the amounts due hereunder, any proceeding concerning relief from the automatic stay, use of cash collateral, approval of a disclosure statement or confirmation of, or objections to confirmation of, any plan of reorganization. All such reasonable costs and expenses are immediately due and payable to Lender by Borrower whether or not demand therefor is made by Lender.

WAIVERS. Borrower hereby waives grace, diligence, presentment, demand, notice of demand, dishonor, notice of dishonor, protest, notice of protest, any and all exemption rights against the indebtedness evidenced by this Note and the right to plead any statute of limitations as a defense to the repayment of all or any portion of this Note, and interest thereon, to the fullest extent allowed by law, and all compensation of cross-demands pursuant to California Code of Civil Procedure Section 431.70. No delay, omission or failure on the part of Lender in exercising any right or remedy hereunder shall operate as a waiver of such right or remedy or any other right or remedy of Lender.

MAXIMUM LEGAL RATE. This Note is subject to the express condition that at no time shall Borrower be obligated, or required, to pay interest on the principal balance at a rate which could subject Lender to either civil or criminal liability as a result of such rate being in excess of the maximum rate which Lender is permitted to charge. If, by the terms of this Note, Borrower is, at any time, required or obligated to pay interest on the principal balance at a rate in excess of such maximum rate, then the rate of interest under this Note shall be deemed to be immediately reduced to such maximum rate and interest payable hereunder shall be computed at such maximum rate and any portion of all prior interest payments in excess of such maximum rate shall be applied, or shall retroactively be deemed to have been payments made, in reduction of the principal balance, as the case may be.

AMENDMENT; GOVERNING LAW. This Note may be amended, changed, modified, terminated or canceled only by a written agreement signed by the party against whom enforcement is sought for any such action. This Note shall be governed by, and construed under, the laws of the State of California.

AUTHORITY. Borrower, and each person executing this Note on Borrower's behalf, hereby represents and warrants to Lender that, by its execution below, Borrower has the full power, authority and legal right to execute and deliver this Note and that the indebtedness evidenced hereby constitutes a valid and binding obligation of Borrower without exception or limitation. In the event that this Note is executed by more than one person or entity, the liability hereunder shall be joint and several. Any married person who is obligated on this Note, directly or indirectly, agrees that recourse may be had to such person's separate property in addition to any and all community property of such person.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

BN 814717v3                                    5

45 of 48