1 | Elwood Lui (State Bar No. 45538)
Brian M. Hoffstadt (State Bar No. 187003)
2 | Michaeline H. Correa (State Bar No. 215215)
JONES DAY
3 | 555 California Street, 26th Floor
San Francisco, CA 94104
4 | Telephone: (415) 626-3939
Facsimile: (415) 875-5700
5 | E-mail: mhcorrea@jonesday.com

6 | Attorneys for Interested Party
LOS ANGELES COUNTY METROPOLITAN
7 | TRANSPORTATION AUTHORITY

8

9 | UNITED STATES BANKRUPTCY COURT

10 | CENTRAL DISTRICT OF CALIFORNIA

11 | SAN FERNANDO VALLEY DIVISION

12

13 | In re:                                    Case No.  1:09-bk-13356-KT

14 | MERUELO MADDUX PROPERTIES,                Chapter 11 (Jointly Administered)
INC., *et al.*

15 |                                           **REQUEST FOR JUDICIAL NOTICE IN
SUPPORT OF STATEMENT IN SUPPORT
16 | _____          OF DEBTOR'S MOTION NOT TO
                                              APPRAISE PROPERTY LOCATED AT 1215
17 | Affects the following Debtor:             E. 7th ST.**

18 | ALAMEDA PRODUCE MARKET, LLC,
a California limited liability company
19 | (Case No. 09-13394-KT)                    Date:      December 9, 2009
                                              Time:      9:30 a.m.
20 |                                           Place:     Courtroom 301
                                                         21041 Burbank Blvd.
21 |                                                      Woodland Hills, California

22 |          Pursuant to Federal Rule of Evidence 201, Los Angeles County Metropolitan

23 | Transportation Authority ("Metro"), in support of its Statement in Support of Debtor's Motion

24 | Not to Appraise Property Located at 1215 E. 7th St., hereby requests that this Court take judicial

25 |

26 | notice of the following document:

27 |          Opening Brief filed by Metro on October 26, 2009 in the case captioned *Los Angeles*

28 | *County Metropolitan Transportation Authority v. VCC Alameda, LLC*, California

RJN ISO STMT RE APPRAISAL MOTION

1
2   Court of Appeal No. B212643, a true and correct copy of which is attached hereto as
3   Exhibit A.
4   Dated: November 19, 2009
5
6                                      Jones Day
7                                      By: /s/ Michaeline H. Correa
8                                          Michaeline H. Correa
9                                      Attorneys for Interested Party
                                       LOS ANGELES COUNTY
10  LAI-3076441v1                      METROPOLITAN TRANSPORTATION
                                       AUTHORITY
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RJN ISO STMT RE APPRAISAL MOTION

- 2 -

EXHIBIT A



COPY

# IN THE COURT OF APPEAL
## OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
#### APPEAL NO. B212643

LOS ANGELES COUNTY METROPOLITAN
TRANSPORTATION AUTHORITY,

*Plaintiff and Appellant,*

v.

VCC ALAMEDA, LLC, a California Limited Liability Company, et al.,

*Defendants and Respondents.*

Los Angeles County Superior Court
Case No. BC 313010

Appeal from Judgment of the Superior Court of Los Angeles County
Honorable James R. Dunn, Judge

## APPELLANT'S OPENING BRIEF

Elwood Lui (SBN 45538)
Brian M. Hoffstadt (SBN 187003)
Brian D. Hershman (SBN 168175)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone: (213) 489-3939
Facsimile: (213) 243-2539

Robert E. Kalunian (SBN 57436)
Acting County Counsel
Charles M. Safer (SBN 82771)
Assistant County Counsel
Joyce L. Chang (SBN 136748)
Principal Deputy County Counsel
One Gateway Plaza, 25th Floor
Los Angeles, CA 90012
Telephone:   (213) 922-2511

*Attorneys for Appellant*
LOS ANGELES COUNTY
METROPOLITAN TRANSPORTATION AUTHORITY

# CERTIFICATE OF INTERESTED ENTITIES OR PERSONS

Petitioner Los Angeles County Metropolitan Transportation Authority certifies there are no interested entities or persons that must be listed in this Certificate under rule 8.208(c)(2) of the California Rules of Court.

Dated: October 26, 2009

Respectfully submitted,

JONES DAY

By: _Brian M. Hoffstadt_

*Attorneys for Plaintiff*
LOS ANGELES COUNTY
METROPOLITAN TRANSPORTATION
AUTHORITY

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................ 1

II.  QUESTIONS PRESENTED ........................................................................ 3

III.  STATEMENT OF PPEALABILITY ............................................................ 3

IV.  FACTS AND PROCEDURAL HISTORY ................................................... 4

   A.  METRO ADOPTS A RESOLUTION OF
     NECESSITY DECLARING A NEED FOR THE
     EXPANSION OF ITS DIVISION ONE BUS
     FACILITY AND AUTHORIZING
     CONDEMNATION ................................................................. 4

   B.  TRIAL COURT PROCEEDINGS PRIOR TO ENTRY
     OF CONDITIONAL DISMISSAL .......................................... 4

     1.  Metro Files Eminent Domain Complaint ...................... 6

     2.  APMI's Lenders Withdraw Deposited Funds
       And Use the Money to Pay Off APMI's
       Mortgages on the Subject Property ............................... 6

     3.  Metro Seeks to Take Immediate Possession, But
       American Apparel—As An "Occupant" of the
       Subject Property—Successfully Objects to and
       Delays Metro's Immediate Possession ......................... 6

     4.  Metro Takes Possession of the Subject
       Property, Makes Improvements and Begins
       Using It As An Expansion to Its Division One
       Bus Facility .................................................................... 9

     5.  The Parties Brief Issues, and the Trial Court
       Hears Three Days of Argument .................................... 10

     6.  Metro's Board Adopts A Resolution Directing
       Staff Not to Pursue Further Negotiations on
       Parking ........................................................................... 11

   C.  THE TRIAL COURT ISSUES A CONDITIONAL
     DISMISSAL ......................................................................... 13

   D.  FOLLOWING 16 MONTHS OF NEGOTIATIONS,
     THE TRIAL COURT ENTERS AN ORDER OF
     PERMANENT DISMISSAL .................................................. 15

# TABLE OF CONTENTS
## (continued)

Page

E.   METRO FILES POST-TRIAL MOTIONS SEEKING
A RULING FROM THE TRIAL COURT ON THE
WAIVER AND STANDING ISSUES, BUT THE
TRIAL COURT DENIES ALL RELIEF ........... 17

V.   SUMMARY OF ARGUMENT ........... 20

VI.  ARGUMENT ........... 21

A.   THE TRIAL COURT ERRED IN CONCLUDING
THAT APMI COULD CHALLENGE METRO'S
RIGHT TO CONDEMN THE SUBJECT PROPERTY ...... 21

1.   This Court Reviews the Trial Court's Ruling *De
Novo* ........... 21

2.   Section 1255.260 Is An Absolute Bar to
APMI's Challenge to Metro's Right To Take
The Division One Expansion. ........... 21

3.   The Trial Court's Reasons For Refusing To
Find APMI's Challenge Barred By Section
1255.260's Statutory Waiver Do Not Withstand
Scrutiny. ........... 21

4.   The Arguments APMI Made To The Trial
Court In Support Of Its Position Also Lack
Merit. ........... 26

B.   THE TRIAL COURT ERRED IN CONCLUDING
THAT AMERICAN APPAREL HAD STANDING
TO CHALLENGE METRO'S RIGHT TO
CONDEMN THE SUBJECT PROPERTY ........... 30

C.   THE TRIAL COURT ERRED IN CONCLUDING
THAT METRO'S BOARD ADOPTED A
"CONDITIONAL RESOLUTION OF NECESSITY"
AND IN DISMISSING THE TAKING FOR
FAILURE TO FULFILL THAT CONDITION ........... 34

D.   THE TRIAL COURT ERRED IN PERMANENTLY
DISMISSING THE CASE AND IN ORDERING
METRO TO VACATE THE SUBJECT PROPERTY
WITHOUT FIRST REQUIRING THE
WITHDRAWN DEPOSIT TO BE RETURNED ........... 42

ii

**TABLE OF CONTENTS**
(continued)

Page

VII.   CONCLUSION..................................................................................... 45

iii

# TABLE OF AUTHORITIES

Page

## CASES

*20th Century Ins. Co. v. Superior Court*
(2001) 90 Cal.App.4th 1247.................................................................. 32

*Alfaro v. Community Housing Improvement*
*System & Planning Assn., Inc.*
(2009) 171 Cal.App.4th 1356................................................................. 29

*Anaheim Redevelopment Agency v. Dusek*
(1987) 193 Cal.App.3d 249................................................................ 37, 39

*Bauman v. Ross*
(1897) 167 U.S. 548...................................................................... 44, 45

*Bel Mar Estates v. California Coastal Commission*
(1981) 115 Cal.App.3d 936................................................................... 29

*Belmont County Water Dist. v. State of California*
(1976) 65 Cal.App.3d 13.................................................................... 35

*Bloom v. Bender*
(1957) 48 Cal.2d 793....................................................................... 32

*Cabrera v. Plager*
(1987) 195 Cal.App.3d 606................................................................... 3

*Cadle Co. v. Worldwide Hospitality Furniture, Inc.*
(2006) 144 Cal.App.4th 504................................................................. 26

*Cal Manufacturers Assn. v. Public Utilities Commission*
(1979) 24 Cal.3d 836....................................................................... 40

*California Pacific Ry. Co. v. Armstrong*
(1873) 46 Cal. 85.......................................................................... 44

*California Teachers Assn. v. San Diego Community College Dist.*
(1981) 28 Cal.3d 692....................................................................... 39

*City & County of San Francisco v. Ballard*
(2006) 136 Cal.App.4th 381................................................................. 40

TABLE OF AUTHORITIES
(continued)

Page

*City of Lincoln v. Barringer*
(2002) 102 Cal.App.4th 1211 .................................................. 37, 42, 43

*City of Oakland v. Garrison*
(1924) 194 Cal. 298 ................................................................. 44

*City of Saratoga v. Hinz*
(2004) 115 Cal.App.4th 1202 .................................................. 21, 37

*City of Stockton v. Marina Towers, LLC*
(2009) 171 Cal.App.4th 93 ..................................................... 42, 43

*Clayton v. Superior Court*
(1998) 67 Cal.App.4th 28 ........................................................ 22, 23

*County of San Bernardino v. County of Riverside*
(1902) 135 Cal. 618 ................................................................. 23

*Cypress Semiconductor Corp. v. Superior Court*
(2008) 163 Cal.App.4th 575 .................................................... 33

*DeBerard Properties, Ltd. v. Lim*
(1999) 20 Cal.4th 659 .............................................................. 32

*Dyna-Med, Inc. v. Fair Employment & Housing Commission*
(1987) 43 Cal.3d 1379 ............................................................. 40

*Eastman v. Piper*
(1924) 68 Cal.App. 554 ............................................................ 34, 35

*Escondido Union School Dist. v. Casa Seunos De Oro, Inc.*
(2005) 129 Cal.App.4th 944 ..................................................... 44

*Friends of Westhaven & Trinidad v. County of Humboldt*
(2003) 107 Cal.App.4th 878 ..................................................... 39

*Gravelly Ford Canal Co. v. Pope & Talbot Land Co.*
(1918) 36 Cal.App. 717 ............................................................ 34

*Greve v. Leger, Limited*
(1966) 64 Cal.2d 853 ................................................................ 41

TABLE OF AUTHORITIES
(continued)

Page

*Hubbard v. Brown*
(1990) 50 Cal.3d 189 ........................................................ 34

*J-Marion Co. v. County of Sacramento*
(1977) 76 Cal.App.3d 517 ................................................ 29

*Johnson v. Zerbst*
(1938) 304 U.S. 458 .......................................................... 29

*Jordan v. California Dept. of Motor Vehicles*
(2002) 100 Cal.App.4th 431 ............................................. 44

*Keener v. Jeld-Wen, Inc.*
(2009) 46 Cal.4th 247 ...................................................... 28

*Kopping v. Workers' Comp. Appeals Bd.*
(2006) 142 Cal.App.4th 1099 .......................................... 41

*Los Angeles County Metropolitan
Transportation Authority v. Continental Development Corp.*
(1997) 16 Cal.4th 694 ...................................................... 44

*Los Angeles County v. Jessup*
(1938) 11 Cal.2d 273 ....................................................... 45

*Louis Gardens of Encino Homeowners
Assn., Inc. v. Trade Ins. Exchange*
(2000) 82 Cal.App.4th 648 ......................................... 23, 29

*Lungren v. Deukmejian*
(1988) 45 Cal.3d 727 ....................................................... 40

*Mallon v. City of Long Beach*
(1955) 44 Cal.2d 199 ....................................................... 44

*Mt. San Jacinto Community College Dist. v. Superior Court*
(2007) 40 Cal.4th 648 ........................................ 21, 22, 26, 32

*Napa Valley Wine Train, Inc. v. Public Utilities Commission*
(1990) 50 Cal.3d 370 ....................................................... 39

# TABLE OF AUTHORITIES
## (continued)

Page

*Oak Grove School Dist. of Santa Clara County v. City Title Ins. Co.*
(1963) 217 Cal.App.2d 678 .......... 29

*Pacific Gas & Electric Co. v. County of Stanislaus*
(1997) 16 Cal.4th 1143 .......... 40

*Pacific Gas & Electric Co. v. Superior Court*
(1973) 33 Cal.App.3d 321 .......... 32

*People ex rel. Dept. of Public Workers v. Lundy*
(1965) 238 Cal.App.2d 354 .......... 35

*People ex rel. Dept. of Public Works v. Gutierrez*
(1962) 207 Cal.App.2d 759 .......... 23

*People ex rel. Dept. of Public Works v. Loop*
(1958) 161 Cal.App.2d 466 .......... 23

*People ex rel. Dept. of Public Works v. Neider*
(1961) 55 Cal.2d 832 .......... 23

*People ex rel. Lockyer v. Shamrock Foods Co.*
(2000) 24 Cal.4th 415 .......... 21

*People v. Ansell*
(2001) 25 Cal.4th 868 .......... 27

*People v. Gulbrandsen*
(1989) 209 Cal.App.3d 1547 .......... 40

*People v. King*
(1865) 28 Cal. 265 .......... 40

*People v. Simon*
(2001) 25 Cal.4th 1082 .......... 29

*Qualls v. Lake Berryessa Enterprises, Inc.*
(1999) 76 Cal.App.4th 1277 .......... 34

*Redevelopment Agency of City of Burbank v. Gilmore*
(1985) 38 Cal.3d 790 .......... 44

# TABLE OF AUTHORITIES
(continued)

Page

*Redevelopment Agency of City of Huntington Park v. Norm's Slauson*
(1985) 173 Cal.App.3d 1121 ....................................................................................... 37

*Redevelopment Agency of City of San Diego v. Mesdaq*
(2007) 154 Cal.App.4th 1111 .............................................................................. passim

*Redevelopment Agency of the City of San Diego v. Attisha*
(2005) 128 Cal.App.4th 357 ........................................................................................ 32

*Regents of Univ. of Cal. v. Morris*
(1968) 266 Cal.App.2d 616 .......................................................................................

*Re-Open Rambla, Inc. v. Board of Supervisors*
(1995) 39 Cal.App.4th 1499 .................................................................................. 28, 33

*San Bernardino County Flood Control Dist. v. Grabowski*
(1988) 205 Cal.App.3d 885 ......................................................................................... 39

*San Diego Gas & Electric Co. v. 3250 Corp.*
(1988) 205 Cal.App.3d 1075 ....................................................................................... 37

*San Jose Parking, Inc. v. Superior Court*
(2003) 110 Cal.App.4th 1321 ...................................................................................... 28

*Schubert v. Reich*
(1950) 36 Cal.2d 298 .................................................................................................. 35

*Shopoff & Cavallo, LLP v. Hyon*
(2008) 167 Cal.App.4th 1489 ...................................................................................... 23

*State of California ex rel. Dept. of Water Resources v. Texaco, Inc.*
(1972) 25 Cal.App.3d 514 ..................................................................................... 23, 29

*Steinhart v. Superior Court*
(1902) 137 Cal. 575 .................................................................................................... 35

*Torres v. Bd. of Comrs.*
(1979) 89 Cal.App.3d 545 ........................................................................................... 32

*Trollope v. Jeffries*
(1976) 55 Cal.App.3d 816 ........................................................................................... 40
........................................................................................... 23

# TABLE OF AUTHORITIES
## (continued)

Page

*Trust One Mortgage Corp. v. Invest America Mortgage Corp.*
(2007) 134 Cal.App.4th 1302 .................................................................. 32

## STATUTES

Civ. Code, § 3521 .................................................................. 26

Code Civ. Proc., § 904.1, subd. (a)(1) .................................................................. 3

Code Civ. Proc., § 904.1, subd. (a)(2) .................................................................. 3

Code Civ. Proc., § 1235.125 .................................................................. 34, 35

Code Civ. Proc., § 1240.040 .................................................................. 37

Code Civ. Proc., § 1245.220 .................................................................. 37

Code Civ. Proc., § 1245.230, subd. (c)(1) .................................................................. 37

Code Civ. Proc., § 1245.230, subd. (c)(2) .................................................................. 37

Code Civ. Proc., § 1245.240 .................................................................. 37

Code Civ. Proc., § 1245.250, subd. (a) .................................................................. 2, 37

Code Civ. Proc., § 1245.255, subd. (a) .................................................................. 2, 34, 35

Code Civ. Proc., § 1245.255, subd. (b) .................................................................. 2, 37

Code Civ. Proc., § 1250.230 .................................................................. 2, 34, 35

Code Civ. Proc., § 1250.325 .................................................................. 9

Code Civ. Proc., § 1250.350 .................................................................. 34, 35

Code Civ. Proc., § 1255.010 .................................................................. 7, 21, 22

Code Civ. Proc., § 1255.210 .................................................................. 21, 22

Code Civ. Proc., § 1255.240 .................................................................. 22, 33

Code Civ. Proc., § 1255.260 ..........................passim

# TABLE OF AUTHORITIES
## (continued)

Page

Code Civ. Proc., § 1255.280, subd. (a) .................................................................... 43

Code Civ. Proc., § 1255.410 ....................................................................... 7, 10, 36

Code Civ. Proc., § 1255.450 ..................................................................................... 36

Code Civ. Proc., § 1255.450, subd. (b) (2004) ........................................................ 9

Code Civ. Proc., § 1260.120, subd. (c) .................................................................. 42

Code Civ. Proc., § 1260.120, subd. (c)(2) ............................................................. 42

Code Civ. Proc., § 1263.010 ...................................................................................... 7

Code Civ. Proc., § 1263.020 ............................................................................... 12, 36

Code Civ. Proc., § 1263.110 ....................................................................................... 7

Code Civ. Proc., §§ 1255.010-1255.470 ................................................................ 21

Lab. Code, § 4664, subd. (b) .................................................................................... 41

Pub. Util. Code, § 130051.11 ................................................................................... 21

Pub. Util. Code, § 130051.12, subd. (a)(1) .............................................................. 4

## RULES

Cal. Rule Court, rule 8.104(a)(1) ............................................................................... 4

Cal. Rule Court, rule 8.104(c)(1)(A) .......................................................................... 4

## CONSTITUTIONAL PROVISIONS

Cal. Const., art. I, § 19 ............................................................................................. 21

Cal. Const., art. XVI, § 6 .......................................................................................... 44

U.S. Const., 5th Amend. ........................................................................................... 21

# I.  INTRODUCTION

The trial court's order in this case is unprecedented: Its order dismissing Appellant Los Angeles County Metropolitan Transportation Authority's ("Metro") eminent domain action not only let the owner keep its property, it inexplicably authorized the owner also to keep the $6.1 million Metro had deposited with the court clerk when Metro took prejudgment possession of the property. Although the owner's lenders, with the owner's knowledge and assistance, had long ago withdrawn the money and applied the funds to pay off the owner's mortgages on the property, the trial court held that the property owner was entitled "have its cake and eat it too" by retaining the property and by keeping millions in taxpayer dollars used to make that property debt-free. Moreover, the order divests Metro of property it has been actively using for nearly four years to provide essential bus services to the taxpayers of Los Angeles County, and on which Metro had made substantial improvements. This windfall to the property owner and the resulting disruption of Metro's services is inequitable, arguably unconstitutional and—as one would expect—wholly inconsistent with the fundamental principles of condemnation law.

More specifically, the trial court's order suffers from the following three errors that necessitate reversal:

• *First and most fundamentally*, the trial court issued its dismissal order even though no defendant had the ability to challenge Metro's right to "take" the property. By the time of dismissal, only two defendants remained: Alameda Produce Market, Inc. ("APMI")[1] and American Apparel. But APMI, the property owner, had statutorily waived

---

[1] Alameda Produce Market, LLC ("APM, LLC") is now the entity that has assumed APMI's obligations in this matter, as provided in the Notice of Bankruptcy filed with this Court on May 7, 2009. This Court initially stayed this appeal, but the Bankruptcy Court exempted this litigation from operation of the stay pursuant to stipulation of the parties.

its right to challenge the taking when it received more than $6 million in equity in its property as a result of its lenders using Metro's deposit to pay down APMI's debts on the property. (Code Civ. Proc., § 1255.260; *Redevelopment Agency of City of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111.) And American Apparel never had standing to participate in the first place, for its sole tie to the property was that its employees occasionally parked their cars there, which is a legally insufficient "interest." (Code Civ. Proc., §§ 1250.230, 1245.255, subd. (a).)

- *Second*, the trial court erred in dismissing Metro's condemnation action on the grounds that its Resolution of Necessity authorizing the taking was somehow "conditional" and that Metro failed to satisfy the condition. The amendment to Metro's Resolution, which instructed staff "[t]o negotiate with appropriate property owners for the development of adequate, mutually agreeable parking" was merely a directive to staff to *try* to accommodate the owner; it in no way altered the Board's conclusive and unassailable finding that Metro *needed* the property. For purposes of eminent domain proceedings, the Board's finding that the property was "necessary" is conclusive and cannot be challenged except on narrow grounds not present here. (Code Civ. Proc., §§ 1245.250, subd. (a), 1245.255, subd. (b).) The trial court's decision to construe the amendment as creating a hybrid "Conditional Resolution of Necessity" is inconsistent with Metro's intent and basic canons of statutory construction.

- *Third*, the trial court further erred in ordering Metro to vacate the property without first requiring APMI to repay the funds withdrawn from the deposit. The trial court had other options open to it—such as issuing a conditional dismissal that would have allowed Metro to continue using the property while it adopted a new Resolution, or requiring APMI to repay the money taken from deposit. The ready availability of these other

2

options only highlights how unnecessary and draconian the trial court's order really is: It deprives Metro (and the taxpayers) of both the property *and* the deposit.

## II.    QUESTIONS PRESENTED

(1)    Whether the trial court erred in concluding that APMI had not statutorily waived, under Code of Civil Procedure section 1255.260, its challenge to Metro's right to condemn the property after its lenders withdrew Metro's deposit and applied the withdrawn funds to reduce and/or eliminate APMI's mortgages on the property.

(2)    Whether the trial court erred in concluding that American Apparel had an "interest" in the property sufficient to confer standing to contest Metro's right to condemn the property.

(3)    Whether the trial court erred in construing Metro's amendment to the Resolution of Necessity as anything other than a directive to staff to try to accommodate parking considerations in its subsequent design and use of the condemned property.

(4)    Whether, in any event, the court's permanent dismissal of Metro's eminent domain action and order of surrender of the property without first requiring the repayment of Metro's deposit is permissible under statutory or constitutional law.

## III.    STATEMENT OF APPEALABILITY

This appeal is taken from the trial court's Order of Permanent Dismissal and from its Order Denying Metro's Motion to Set Aside the Dismissal. (Code Civ. Proc., §§ 904.1, subd. (a)(1) (authorizing appeal of "final and conclusive" "judgment"), 904.1, subd. (a)(2) (authorizing appeal "[f]rom an order made after a judgment . . ."); *Cabrera v. Plager* (1987) 195 Cal.App.3d 606, 609-610.) The Order of Permanent Dismissal was

3

entered on September 5, 2008. [7 JA 2018-2023.][2] Metro filed its Motion for New Trial and Motion to Set Aside the Dismissal on September 26, 2008 [8 JA 2063-2083], and the trial court's order denying these motions was entered on November 4, 2008 [11 JA 3197]. Metro filed its Notice of Appeal on November 25, 2008. [11 JA 3230-3234.] Thus, Metro's appeal of both orders is timely. (Cal. Rule Court, rule 8.104(a)(1), (c)(1)(A).)

## IV.   FACTS AND PROCEDURAL HISTORY

A.   **METRO ADOPTS A RESOLUTION OF NECESSITY DECLARING A NEED FOR THE EXPANSION OF ITS DIVISION ONE BUS FACILITY AND AUTHORIZING CONDEMNATION**

Metro is the public agency statutorily charged with providing mass transit services, including bus services, to Los Angeles County residents. (Pub. Util. Code, §§ 130051.11, 130051.12, subd. (a)(1).) Finding itself with inadequate space for parking and servicing buses within one of its service areas in downtown Los Angeles (Division One), Metro staff recommended that the Metro Board of Directors ("Board") expand the existing Division One facility by condemning an immediately adjacent "vacant" and "unimproved" property of "irregular shape" at the intersection of 7th and Alameda Streets in Los Angeles. [4 JA 1080-1081 at ¶ 5, 1 JA 003 at ¶ 4.]

On March 25, 2004, the Board convened a public hearing to consider whether to exercise its power of eminent domain over this property (hereinafter, "the Subject Property"). [4 JA 0917-0921.] At that hearing, Thelma Marshall, on behalf of Metro staff, urged the Board to adopt a

---

[2] Citations to "___ JA ___" are to the volume and page number of the accompanying Appendix in Support of Appellant's Opening Brief. Citations to "RT ___" are to the page number of the Reporters' Transcript on Appeal, which are followed by the applicable page. Citations to "AR ___," and "TR ___" are to the page number of the Administrative Record and Trial Exhibits, respectively, which are followed by the applicable page.

proposed Resolution of Necessity authorizing the condemnation. [4 JA 0917.] Two people, Richard Meruelo and Martin Bailey, spoke against the Resolution and asserted that the condemnation would deprive tenants in nearby buildings, including a company called American Apparel, from using the Subject Property for employee parking. [4 JA 0917-0918.] Meruelo urged the Board not to condemn the property or, "[a]t the very least," to "direct staff to investigate . . . a joint use proposal." [4 JA 0917.]

In response, Board member Zev Yaroslavsky explored the feasibility of Meruelo's second suggestion—that is, having MTA proceed with the eminent domain proceeding while "negotiating with Mr. Meruelo and his folks for parking as part of whatever we are going to use the property for." [4 JA 0918.] The following colloquy occurred:

[Yaroslavsky:]    And if the board gave you direction to work with [Mr. Meruelo] towards negotiating a mutually acceptable joint parking development concept, you could do that simultaneously with as the [eminent domain] process proceeds, could you not?

Marshall:    Yes sir, once the complaint is filed we could continue to work with the company.

[4 JA 0918.] Board member Yaroslavsky summed up his recommendation:

I was going to recommend that . . . we proceed to approve the staff recommendation [to adopt the Resolution of Necessity] with an amendment that would direct the staff to negotiate with *Mr. Meruelo [sic] or whoever the appropriate property owner is,* for the development of adequate parking, mutually agreeable adequate parking, for expansion of their facility . . .

[4 JA 0919, emphasis added.] Board member John Fasana agreed with the proposal, but noted that—because Metro "need[s] to be in the site"—any

joint use proposal of the condemned land would "have to make sense financially for [Metro]" and insisted that the staff report back on any proposals; the sentiment was echoed by other Board members. [4 JA 0919-0920.]

The Board then adopted a Resolution of Necessity that described the property to be condemned and included, among other things, the following conclusive findings:

    (a)    The public interest and necessity required the [Division 1 Expansion] Project;

    (b)    The Project is planned or located in the manner which will be most compatible with the greatest public good and the least private injury;

    (c)    The property sought to be acquired . . . is necessary for the Project.

[1 JA 0022.] The Resolution also provided that "[l]egal counsel is hereby authorized and directed to take all steps necessary to commence legal proceedings . . . to acquire the property described above, by eminent domain" and, moreover, "to seek and obtain an Order of Immediate Possession of said property . . ." [1 JA 0022.]

The Official Minutes summarizing the meeting transcribed the oral amendment as a directive "[t]hat staff negotiate with appropriate property owners for the development of adequate, mutually agreeable parking." [AR 555.] The certification of the Board's actions recounted the exchange as an amendment "[t]o negotiate with appropriate property owners for the development of adequate, mutually agreeable, parking." [1 JA 0023.]

**B.**    **TRIAL COURT PROCEEDINGS PRIOR TO ENTRY OF CONDITIONAL DISMISSAL.**

    **1.**    *Metro Files Eminent Domain Complaint*

On April 1, 2004, Metro filed a complaint in eminent domain with the Los Angeles Superior Court. [1 JA 0001-0014.] Metro initially named

Alameda North Parking, Inc. as a tenant on the property, but filed an Amended Answer on May 21, 2004, asserting that APMI (rather than Alameda North Parking, Inc.) should have been served because APMI had become the owner of the property on March 31, 2004 (after a transfer from VCC Alameda). [1 JA 0144-0151.]

2.   **APMI's Lenders Withdraw Deposited Funds And Use the Money to Pay Off APMI's Mortgages on the Subject Property**

On the same day Metro filed its Complaint, Metro also invoked California's "quick take" procedures that authorize immediate possession of property as long as the agency deposits with the Clerk of Court a check for the appraised value of the property as of the date the Complaint was filed. (Code Civ. Proc., §§ 1255.010, 1255.410, 1263.010.)   Metro deposited $6.3 million with the Clerk. [1 JA 0034-0035.]

Over the next several weeks, three of APMI's lenders—VCC Alameda, LCC ("VCC Alameda"); NAMCO Capital Group ("NAMCO"); and California National Bank—applied to the court to withdraw a portion of Metro's deposit corresponding with the outstanding balances of the mortgages each held on the Subject Property.   [1 JA 0043-0047, 0048-0052, 0074-0139 (Apps).]   One of APMI's employees, Miguel Echemendia, verified the applications filed by VCC Alameda and NAMCO. [1 JA 0046, 0051; 8 JA 2278-2279, 2261-2262; 5 RT 3604.] California National Bank did not file a verified application, but attached a copy of its deed of trust, which conferred upon the bank "entitle[ment] to all insurance proceeds, compensation, awards and other payments of relief," including the right to "apply the proceeds . . . to any and all indebtedness."   [1 JA 0090; *see also id.* at 0085 (entitling bank to "judgments, awards of damages and settlements hereafter made as a result of in lieu of any taking of the property.").]

7

Metro initially objected to the applications, concerned that they would collectively exceed the amount of the $6.3 million deposit and leave no reserve for taxes. [1 JA 0056-0061, 0141-0143.] Once that concern was allayed, Metro withdrew its opposition and agreed to stipulate to the withdrawal. On June 10, 2004, VCC Alameda filed a stipulation with the following recitals, among others:

(i) Metro deposited $6,300,000;

(ii) VCC Alameda, NAMCO and California National Bank each held deeds of trust on the Subject Property in the amounts of $1,495,205.03; $2,140,000; and $2,554,794.97, respectively, and had filed applications to withdraw these sums;

(iii) "Alameda Product Market, Inc. . . . is not objecting to instant withdrawal of funds"; and

(iv) The remaining $110,000 of the deposit would be used for three different tax assessments.

[1 JA 0172-0177, TR Ex. 62 at p. 2.] The stipulation was signed by VCC Alameda, NAMCO, California National Bank, Metro, the Los Angeles County Tax Collector, and the City of Los Angeles. [TR Ex. 62 at pp. 4-7.] It was served on Connie Sandifer, counsel for APMI. [TR Ex. 62 at p. 10.] APMI did not object to the withdrawal. [5 RT 3632; 1 JA 0152-0153 at ¶ 8, 0173.]

On June 15, 2004, the Clerk of the Court dispersed nearly all of Metro's deposit—issuing one check for $2,559,716.67 to California National Bank and two checks for $2,140,000 and $1,490,283.33 to the Driscoll & Fox Client Trust. [TR Ex. 70; 5 RT 3604.] Driscoll & Fox cut a $2,125,000 check to NAMCO the very same day [TR Ex. 66], which NAMCO used to pay off APMI's mortgage [TR Ex. 69]. All three lenders—VCC Alameda, NAMCO, and California National Bank—ultimately filed Disclaimers of Interest in the Subject Property [2 JA 0485-

8

0488, 0489-0492, 1 JA 0274-0277], and served them on APMI, thereby indicating that any compensable interest they had in the property by virtue of their mortgages had been extinguished and effectively increasing APMI's equity in the property by $6.1 million. [5 RT 3604]; (Code Civ. Proc., § 1250.325.)

3.  **Metro Seeks to Take Immediate Possession, But American Apparel—As An "Occupant" of the Subject Property—Successfully Objects to and Delays Metro's Immediate Possession**

Along with its Complaint, Metro filed an Application for an Order for Immediate Possession, which was granted and entitled it to possession 90 days after service of the Order. (Code Civ. Proc., § 1255.450, subd. (b) (2004).) Metro voluntarily extended that time period to August 10, 2004 to accommodate APMI. [1 JA 0194.]

On August 6, 2004, Metro applied *ex parte* for a writ of assistance to enforce the Order for Immediate Possession. [1 JA 0192-0228, 0229-0234.] APMI filed an opposition on August 12, 2004, contending that Metro's Order was defective because, under then-existing Code of Civil Procedure section 1255.450, subdivision (b), Metro had failed to serve alleged "occupants" of the Subject Property who used it for parking, including American Apparel, although American Apparel was the only "occupant" to object. [1 JA 0235-0240, 0241-0246 at ¶ 2.]

On August 13, 2004, the parties appeared before Commissioner Bruce Mitchell, where both APMI and the Commissioner recognized that the *sole* issue was whether American Apparel was a "lawful occupant" of the Subject Property [RT D-9, D-11]—irrespective of whether American Apparel had an a "interest" in that property [1 RT D-9]. The Commissioner ultimately concluded that American Apparel was an "occupant" and thus should have been served with Metro's initial Order for Immediate Possession. [1 RT D-22.]

Metro immediately served American Apparel with the Order for Immediate Possession and simultaneously filed an *ex parte* Application for Order Allowing Possession on Shortened Time pursuant to then-existing Code of Civil Procedure section 1255.410, which entitled a public agency with an "urgent need for possession" to obtain possession in fewer than 90 days unless that "possession" would "displace or unreasonably affect any person in actual and lawful *possession* of the property to be taken." [2 JA 0334-0342, 0343-0351, 0377-0386.] On August 17, 2004, the parties appeared again before Commissioner Mitchell, who ruled, on the basis of the evidence then before him, that Metro's possession would co-opt American Apparel's parking on the property and thereby "displace" and "unreasonably affect" its operations.[3] [1 RT E-8:14-17.] Metro accordingly had to wait an additional 90 days,[4] and ultimately took possession on or after November 24, 2004. [2 JA 0472-0473, 0474-0478.]

4. **Metro Takes Possession of the Subject Property, Makes Improvements and Begins Using It As An Expansion to Its Division One Bus Facility**

After taking possession, Metro began paving, fencing and drainage improvements on the lot, and constructed a new fuel and vacuum island. [4 JA 1081 at ¶ 8.] Metro also obtained permission from the City of Los Angeles to vacate and secure a block-long portion of Industrial Street that separated the Division One facility from the Subject Property. [*Ibid.*] With

_____

[3] Commissioner Mitchell did not have the benefit of evidence obtained in discovery in the eminent domain action which, as noted below, indicates that American Apparel's use of the Subject Property was non-exclusive, rare, and arguably illegal. (*See infra* Part IV.B.5.)

[4] During this period, and upon motion, the court on October 28, 2004 ordered the deposit increased to $8.5 million, and Metro thereafter deposited an additional $2.2 million with the clerk. [2 JA 0429, 4 JA 0939-0944.]

these improvements completed, Metro began using the Subject Property as the Expansion to the Division One facility on June 26, 2005. [*Ibid.*]

5.    **The Parties Brief Issues, and the Trial Court Hears Three Days of Argument**

Two defendants, APMI and American Apparel, continued to challenge Metro's right to take the property.[5] In its pre-trial briefs, Metro argued, among other things, that neither of these defendants could maintain such a challenge. [2 JA 0569-0576, 3 JA 0820-0825, 0828-0834.] With respect to APMI, Metro argued that APMI had waived its right to challenge the taking because, pursuant to Code of Civil Procedure section 1255.260, it had "received" Metro's deposit when its lenders withdrew the deposited funds and used them to pay down APMI's mortgages. [2 JA 0569-0573, 3 JA 0820-0825.]

Based on discovery developed since taking possession of the property, Metro also argued that American Apparel had no "interest" in the Subject Property sufficient to confer standing.    [3 JA 0573-0576, 3 JA 0828-0834.] Specifically, Metro argued that:

• It was undisputed that American Apparel had a leasehold interest in the "industrial center" *across the street* from the Subject Property, where it rented commercial space under a September 17, 1999 lease between its predecessor-in-interest and APMI.[6]    [2 JA 0574; 8 JA 2293-2325.]

---

[5]    By this time, all other defendants originally named in Metro's eminent domain complaint had either filed Disclaimers of Interest or had settled with Metro.  [1 JA 0053-0055, 0164-0167, 0160-0163, 0168-0171, 4 JA 0939-0944.]

[6]    APMI and American Apparel entered into a second, written lease that purported to be executed on January 1, 2004, [TR Ex. 77 & 78], but American Apparel later admitted that the lease had been signed over a month after the condemnation action was filed (sometime after May 12, 2004) and backdated [8 JA 2270-2271]. Because the pertinent date for

11

- That lease granted American Apparel a "non-exclusive" and unilaterally revocable right to use the "common areas" *within its "industrial center"* for employee parking, [8 JA 2294, 2310 at ¶ 4(a)], but the "industrial center" did not include the Subject Property: That lease *could not* have included the Subject Property prior to March 31, 2004 (because APMI did not own the Subject Property until that date) and it *did not* do so—as American Apparel's own principals testified. [8 JA 2341 (testifying that it was "not [his] understanding" that "the subject property was part of the common area of the lease between American Apparel and Alameda Produce Market").]

- Instead, American Apparel employees parked on the Subject Property either illegally as "trespas[sers]" and "squatters" [9 JA 2389-2390] or, at best, "under a gentleman's agreement that the lot [on the Subject Property] was available for us" [8 JA 2341].

- American Apparel paid no money to use the Subject Property for parking. [8 JA 2344-2345.]

- American Apparel's use was was not exclusive, as APMI would on a regular basis shut down the lot to American Apparel's employees. [8 JA 2344-2345; 9 JA 2378-2379; 1 JA 0293 at ¶3.]

- Indeed, at least one American Apparel principal noted that its employees used the lot only five times prior to August 2004 [8 JA 2340], which is consistent with what other witnesses observed prior to August 2004 [2 JA 0297-0314; 0292-0296; 1 JA 0278-0291; 2 JA 0315-0332].

---

(continued...)

standing is whether a party possesses the requisite interest on the date the eminent domain complaint is filed (Code Civ. Proc., § 1263.020), this second lease is irrelevant.

12

The trial court (the Hon. James Dunn) held a three-day bench trial starting on December 12, 2005. [3 RT 901-1200, 1201-1264, RT 1501-1651.] In addition to the waiver and standing issues, the argument and discussion at trial focused on the effect of the Board's amendment to the Resolution. At the trial, both Metro and APMI agreed that amendment should or could *not* be construed as a "Conditional Resolution of Necessity." [4 RT 1524 (Metro argued that a "conditional resolution . . . militates against the findings that were made"), 4 RT 1560 (APMI "agree[ing] that there is absolutely no authority for [a] conditional resolution [of] necessity").] Instead, Metro took the position that the amendment should be construed as a directive to staff in order to give effect to both the Resolution and the amendment, while APMI argued that the amendment rendered the Resolution "invalid." [4 RT 1516:19-24, 1520:9-11.][7] The court concurred that a "conditional resolution" would be "without precedent." [3 RT 1224.] The trial court took the case under submission.

6. **Metro's Board Adopts A Resolution Directing Staff *Not to* Pursue Further Negotiations on Parking**

Following months of unsuccessful negotiations between Metro and APMI [4 JA 1114],[8] Metro's Board adopted a Resolution on January 30, 2006, which "directed [Metro's] staff to not further pursue any joint development of the property which is the subject of this action." [4 JA 1052-1056.]

---

[7] It is its pre-trial briefs, APMI argued in the alternative that the Resolution was conditional. [*E.g.,* 2 JA 0494-0495, 0499-0501.]

[8] Metro, APMI and American Apparel stipulated that "AA has no right to participate in the negotiations." [4 JA 0945-0950.]

C.    THE TRIAL COURT ISSUES A CONDITIONAL DISMISSAL

Following hearings on February 1, 2006, and May 9, 2006, the trial court on July 12, 2006, issued its Ruling on Right to Take Trial. [4 JA 1114-1117.] In this ruling, the court addressed the taking challenge itself and nowhere ruled on the precursor issues whether APMI had waived its right to contest the taking by allowing its lenders to withdraw $6.1 million of the deposit or whether American Apparel had standing to participate at all. Rather, the court found that Metro's Board "had not . . . contractually committed itself to taking the property" when it agreed to amend the Resolution of Necessity and that the Resolution accordingly "contained a condition in the form of an amendment . . . (rather than merely a directive to staff) which committed [Metro] to negotiate further with the appropriate defendants for a plan of 'mutually agreeable parking.'" [Id. at 1115-1116.] "The result," the court concluded, "was a 'Conditional Resolution of Necessity.'" [Id. at 1116.] The court cautioned that "it is neither the role nor the intention of this Court to substitute its judgment for the legislative judgment of Board in determining whether any parking proposal should be accepted or not," [id. at 1116-1117], but nowhere acknowledged (or even mentioned) the Metro Board's January 30, 2006 Resolution eschewing further negotiation.

The trial court concurrently issued an Order of Conditional Dismissal. Under its Order and Ruling, the court specified that Metro's condemnation action would be permanently dismissed unless Metro engaged in "fully informed, good faith negotiations" "with APMI and [American Apparel]" regarding "the development of adequate, mutually agreeable, parking" under the supervision of a "mediator/referee" who would report back to the court as to whether Metro complied with the "good faith negotiation" condition. [4 JA 1117, 1118-1121 at ¶¶ 1, 4, 5.] The Order further stated that, although Metro could remain in possession

14

pending these negotiations, "[i]f at any time [Metro] fails to comply with the conditions of this dismissal . . ., [Metro] shall be required to return possession of the property to APMI within ninety (90) days." [*Id.* at 1121 ¶ 8.]

**D.    FOLLOWING 16 MONTHS OF NEGOTIATIONS, THE TRIAL COURT ENTERS AN ORDER OF PERMANENT DISMISSAL**

For the 16 months between February 2007 and June 2008, the parties negotiated under former Court of Appeal Justice John Zebrowski, with American Apparel not participating except through APMI. [5 JA 1204 at ¶ 2.] On August 7, 2008, Mediator Zebrowski filed a Report of Referee Pursuant to Paragraph 5 of Conditional Dismissal, in which he concluded the Metro's staff had not negotiated in good faith based on his view that Metro staff had not carried out the intent of the Metro Board as of March 25, 2004—and had therefore not acted in "good faith"—because staff insisted upon a facility with at least 100 bus parking spaces (rather than 87 or 88 spaces). [5 JA 1214-1217, 1222.]

On August 14, 2008, the trial court held a status conference and expressed its inclination to adopt the mediator's finding and to permanently dismiss Metro's eminent domain action.    [5 RT 2407-2408.]    On August 25, 2008, Metro filed a Supplemental Brief Re: Open Issues Before The Court in which it renewed its as-yet-unruled-upon argument that APMI had waived its right to challenge the taking by acquiescing in its lenders' withdrawal of Metro's deposit. [7 JA 1959-1961.]  In this filing, Metro called the court's attention to a recent Court of Appeal decision, *Redevelopment Agency of City of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111, which found a waiver on strikingly similar facts involving withdraw and use of a deposit by an owner's lender. [*Ibid.*]

15

At an August 26, 2008 hearing, the trial court refused to hear the waiver argument and struck Metro's filings. [5 RT 2719, 2721.] The court reaffirmed that it would sign the order of permanent dismissal that required Metro to vacate the property within 90 days. [*Id.* at 2720.] When Metro asked the court whether APMI was "required to pay back the $6.3 million [from the withdrawn deposit]" prior to Metro's surrender of the property, the court replied that it was not. [*Id.* at 2721.]

On September 5, 2008, Metro filed an *ex parte* application with the court urging it to consider *Mesdaq* and rule upon its argument that APMI had waived its right to challenge the taking. [7 JA 1994-2011.] At the September 5, 2008, hearing, the court stated that "there's no procedural device before this court that supports raising this issue at this point." [5 RT 3015; *accord* 7 JA 2012-2014.] Taking APMI's suggestion to leave the issue to the Court of Appeal [5 RT 3010], the court ruled that "[w]hether or not *Mesdaq* will cause this case to come back or not, [the court is] not going to address [it] at this point" [*id.* at 3015].

On September 5, 2008, the trial court issued its Order Re: Permanent Dismissal. The court found that Metro "did not comply to the satisfaction of the court with the requirement to negotiate in good faith" with APMI and American Apparel "as more fully set forth in the Conditional Dismissal entered in this case on July 12, 2006." [7 JA 2015.] Consequently, the court declared "that the Conditional Dismissal entered on July 12, 2006 shall be deemed a Permanent Dismissal" [*Id.* at 2016], and ordered Metro "to return possession of the property which is the subject of this action to APMI within ninety (90) days from the entry of this order." [*Ibid.*]

16