1 | JOHN J. BINGHAM, JR. (State Bar No. 075842)
*JBingham@DGDK.com*
2 | JOHN N. TEDFORD, IV (State Bar No. 205537)
*JTedford@DGDK.com*
3 | JULIA W. BRAND (State Bar No. 121760)
*JBrand@dgdk.com*
4 | ENID COLSON (State Bar No. 189912)
*EColson@dgdk.com*
5 | DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
6 | Los Angeles, California  90067-2904
Telephone:  (310) 277-0077
7 | Facsimile:  (310) 277-5735

8 | Attorneys for Meruelo Maddux Properties, Inc., and
affiliated Debtors and Debtors-in-Possession

9 | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SAN FERNANDO VALLEY DIVISION**

12 | In re ) Case No. 1:09-bk-13356-KT
    )
13 | MERUELO MADDUX PROPERTIES, INC., et ) Chapter 11 (Jointly Administered)
    al.,[1] )
14 | ) **FIRST AMENDED DISCLOSURE**
    Debtors and Debtors-in-Possession. ) **STATEMENT**
15 | )
    _____ )
16 | ) Date:        March 19, 2010
    ) Time:        9:30 a.m.
17 | ☒    Affects all Debtors ) Place:       Courtroom 301
    )              21041 Burbank Blvd.
18 | ☐    Affects the following Debtor(s): )              Woodland Hills, California
    )
19 | ))
    )
20 | )
    )
21 | _____ )

22 |

23 |

24 |
    _____
25 | [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT;
26 | 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT;
27 | 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.
28 |

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ....................................................................................................3

    A.  OVERVIEW..........................................................................................3

    B.  EXHIBITS AND ADDITIONAL INFORMATION..........................................4

    C.  HOLDERS OF CLAIMS ENTITLED TO VOTE .............................................7

    D.  VOTING PROCEDURES...........................................................................9

    E.  CONFIRMATION HEARING.....................................................................10

    F.  NOTICES .............................................................................................11

II.  DEBTORS' BUSINESS AND OPERATIONS PRIOR TO THE FILING ......................12

DEBTORS' BUSINESS AND OPERATIONS PRIOR TO THE FILING ...........................12

    A.  CORPORATE HISTORY OF THE DEBTORS .............................................12

    B.  NATURE OF THE DEBTORS' BUSINESS. 12

        1.  210 – 212 and 230 West Avenue 26, Los Angeles ...................................14

        2.  306 – 330 North Avenue 21, Los Angeles      ...........................................15

        3.  1000 East Cesar Chavez, Los Angeles       .............................................15

        4.  2415 East Washington Boulevard, Los Angeles....................................16

        5.  1211 East Washington Boulevard, Los Angeles....................................16

        6.  13853, 13822 and 13916  Garvey Avenue, 13904 Corak Street and 3060 Feather Avenue, Baldwin Park.....................................17

        7.  1910 - 1922 Santa Fe Avenue, 2425 East 12th Street and 303 South Hewitt, Los Angeles ...........      ....................................17

        8.  5701 and 5707 - 5715 South Alameda Street and 5016 Alba Street, Los Angeles ....................      ....................................18

        9.  3rd & Omar Street, Los Angeles........      ....................................18

        10.  420 Boyd Street, Los Angeles..............      ....................................19

        11.  760 South Hill Street, and 325 West 8th Street, Los Angeles (The Union Lofts) ..................      ....................................19

        12.  788 South Alameda, Los Angeles .......      ....................................20

-i-

### TABLE OF CONTENTS (cont.)

Page

13. 905 8th Street, Los Angeles ................. ......................................... 20

14. Alameda Produce Market, Los Angeles (Including
Alameda Square and Seventh Street Produce Market) ........................ 21

15. 1500 Griffith Avenue, Los Angeles ..... ......................................... 22

16. 1919 Vineburn Street, Los Angeles .... ......................................... 22

17. 2131 Humboldt Street, Los Angeles ... ......................................... 23

18. 2529 Santa Fe Avenue, Vernon (Santa Fe Plaza).................................... 23

19. 2640 East Washington Boulevard, Los Angeles
(Washington Produce Market)........... ......................................... 24

20. 2951 Lenwood Road, Barstow (Barstow Produce Center) ................... 24

21. 3185 East Washington Boulevard, Los Angeles
(Washington Cold Storage)................. ......................................... 25

22. 620, 643 and 644 South Gladys Avenue, 830 - 838 East 6th
Street and 647 - 649 Ceres Avenue, Los Angeles .................................. 25

23. 2001 - 2021 West Mission Boulevard, Pomona ...................................... 26

24. 1124 South Olive, 1117-1119 South Olive and 218 W. 11th
Street, Los Angeles............................... ......................................... 26

25. 950 and 960 E. 3rd Street, Los Angeles ......................................... 27

26. 815 East Temple Street, 210 Center Street and 729 East
Temple Street, Los Angeles (Center Village) ......................................... 27

27. 833 Wall Street (Wall Street Market), Los Angeles ............................. 28

28. 1875 West Mission Boulevard, Pomona ......................................... 28

29. Santa Fe Commerce Center – 2445, 2460 and 2535 East
12th Street, Los Angeles ...................... ......................................... 29

30. 1009 North Citrus Avenue, Covina (Citrus Gardens)........................... 29

31. 817-825 South Hill Street, Los Angeles (Ullman Tower
Two) ...................................................... ......................................... 29

32. 1060 North Vignes, Los Angeles (Vignes Village).................................. 30

33. 12361 and 12385 San Fernando Road, Sylmar (San
Fernando Court) ................................... ......................................... 30

-ii-

347973.01 [XP]    25195

### TABLE OF CONTENTS (cont.)

<u>Page</u>

| | | |
|---|---|---|
| 34. | 801 East 7th Street, Los Angeles ........ | .........................................30 |
| 35. | 1308 South Orchard, Los Angeles ...... | .........................................31 |
| 36. | 758 Ceres Avenue, Los Angeles (Ceres Street Produce Market) ...................................... | .........................................31 |
| 37. | 336 West 11th Street, Los Angeles (South Park Towers) | .....................31 |
| 38. | 915-949 South Hill Street, Los Angeles (Ullman Tower One) ...................................... | .........................................31 |
| 39. | 900, 910 and 926 East 4th Street and 405 – 411 S. Hewitt Street, Los Angeles............................... | .........................................32 |
| 40. | 425 West 11th Street, Los Angeles (Desmond Building) | .......................32 |
| 41. | West 11th Street and South Grand Avenue, Los Angeles (South Park Towers, TransAmerica Lofts & Olive Street Towers) ...................................... | .........................................32 |
| 42. | Consolidated Operations...................... | .........................................33 |
| C. | THE DEBTORS' CURRENT AND ON-GOING BUSINESS STRATEGIES................................................. | .........................................34 |
| 1. | The Debtors' Investment Strategy ..... | .........................................35 |
| 2. | The Debtors' Value Creation Strategies | .........................................35 |
| 3. | The Company's Operating Strategies | .........................................38 |
| D. | PREPETITION CAPITAL STRUCTURE OF THE COMPANY | .................39 |
| 1. | MMPI.............................................. | .........................................39 |
| 2. | Corporate Structure of the Other Debtors | .........................................41 |
| E. | MATERIAL PROCEEDINGS................................... | .........................................41 |
| 1. | Potential Government Tax Audits ..... | .........................................42 |
| 2. | Indemnification Claims........................ | .........................................42 |
| III. | EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11 CASES................................................. | .........................................42 |
| IV. | CHAPTER 11 EVENTS................................................. | .........................................44 |
| A. | ADMINISTRATIVE ORDERS AND MATTERS | .........................................44 |

347973.01 [XP]    25195

## TABLE OF CONTENTS (cont.)

| | | | Page |
|---|---|---|---|

1. Introduction ................................................... 44
2. The Cash Collateral Motion and Corresponding Orders ................... 45
3. The Debtors' Single Asset Real Estate ("SARE") Motion ................... 46
4. Motions for Relief from Stay ............. ................................ 46
5. The Debtors' Compromises With Various Lenders ............................ 50
6. Unexpired Leases and Executory Contracts ........................... 51
7. Summary of Claims Process, Bar Date and Claims Filed .................... 51
8. Other Administrative Matters ............ ................................ 53

B.   REAL ESTATE SALES AND LISTINGS SINCE
     COMMENCEMENT OF CASE .................. ............................ 54

V.   SUMMARY OF THE PLAN ........................................................ 55

1. Common Class Treatments for Classified Claims ................... 55
2. Summary of Classified Claims and Treatment ........................ 61

B.   Treatment for Unclassified Claims ................ 99

1. Unclassified Claims (Applicable to all of the Debtors) ......................... 99

VI.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
      LEASES ........................................... ................................ 105

VII.   MEANS FOR IMPLEMENTATION OF THE PLAN . ................................ 106

MEANS FOR IMPLEMENTATION OF THE PLAN ........ ................................ 106

A.   OVERVIEW OF PLAN IMPLEMENTATION ............................................. 106

B.   VESTING OF ASSETS ................................................... 107

C.   SALE OR REFINANCE OF CERTAIN OF THE ASSETS OF
     CERTAIN DEBTORS ................................................... 107

D.   RIGHTS OFFERING .................................. ................................ 107

E.   Exercise of NE Interest Rights and Additional Subscription
     Rights ................................................. ................................ 109

F.   Certificate of Incorporation and Bylaws; Cancellation Of MMPI
     Securities, LTIP Units and Related Agreements ............................ 114

347973.01 [XP]    25195

# TABLE OF CONTENTS (cont.)

Page

G.   Issuance of New Equity Interests ....................................................... 115

H.   Merger of MMPLP and MMPI ...................................................... 115

I.   Retained Claims And Defenses And Reservation Of Rights .......... 116

J.   OBJECTIONS TO CLAIMS ......................................................... 117

K.   DISBURSING AGENT .................................................................. 118

L.   DISCHARGE OF THE DEBTORS AND INJUNCTION ............. 118

M.   TEMPORARY ENFORCEMENT INJUNCTION ...................... 119

N.   NO LIABILITY FOR SOLICITATION OR PARTICIPATION.... 121

O.   LIMITATION OF LIABILITY ..................................................... 121

P.   CERTIFICATE OF INCORPORATION AND CERTIFICATES OF ORGANIZATION ................................................................. 122

Q.   OTHER DOCUMENTS AND ACTIONS .................................... 122

R.   CORPORATE ACTION ............................................................... 122

S.   RETIREE BENEFITS ................................................................... 123

T.   THE CREDITORS' COMMITTEE ............................................. 123

VIII.   MANAGEMENT OF REORGANIZED DEBTORS ................................ 123

MANAGEMENT OF REORGANIZED DEBTORS ......................................... 123

A.   BOARD OF DIRECTORS AND MANAGEMENT OF THE REORGANIZED DEBTORS .......................................................... 123

    1.   Board of Directors ............................................................ 123

    2.   Officers & Biographies .................................................... 124

B.   COMPENSATION OF MMPI EXECUTIVE OFFICERS ............ 127

IX.   CONFIRMATION AND CONSUMMATION PROCEDURE ................... 127

CONFIRMATION AND CONSUMMATION PROCEDURE ............................ 127

A.   SOLICITATION OF VOTES ........................................................ 127

B.   THE CONFIRMATION HEARING .............................................. 129

C.   CONFIRMATION ......................................................................... 130

-v-

# TABLE OF CONTENTS (cont.)

**Page**

    **1.**     **Acceptance**.......................................... ....................................130

    **2.**     **Unfair Discrimination and the Fair and Equitable Tests** ..................130

    **3.**     **Feasibility**.......................................... ....................................131

    **4.**     **Best Interests Test**............................... ....................................133

  **D.**     **CONSUMMATION**.........................................................................135

**X.**   CONFIRMATION DATE CONDITIONS....................................................136

**CONFIRMATION DATE CONDITIONS**.....................................................136

  **A.**     **CONDITIONS TO CONFIRMATION** .........................................136

  **B.**     **WAIVER OF CONDITIONS** .....................................................136

  **C.**     **EFFECT OF FAILURE OF CONDITIONS.** ...............................136

  **D.**     **VACATUR OF CONFIRMATION ORDER** .............................137

**XI.**   RETENTION OF JURISDICTION...........................................................137

**RETENTION OF JURISDICTION**.............................................................137

**XII.**   PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS......................................139

**PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER**........139

**THE PLAN AND TREATMENT OF DISPUTED, CONTINGENT** ...................139

**AND UNLIQUIDATED CLAIMS AND INTERESTS**....... ..............................139

  **A.**     **VOTING OF CLAIMS AND INTERESTS** .. ..............................139

  **B.**     **METHOD OF DISTRIBUTIONS UNDER THE PLAN** ...............139

    **1.**     **Distributions Under the Plan**.............. ....................................139

    **2.**     **Timing and Methods of Distribution** . ....................................140

  **C.**     **UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS**...........................141

  **D.**     **DISPUTED CLAIMS AND ESTIMATIONS** ...................................142

    **1.**     **Treatment of Disputed Claims** ........... ....................................142

# TABLE OF CONTENTS (cont.)

Page

2.   Distribution on Account of Disputed Claims Once They Are Allowed ........................................... 142

3.   Allowance of Claims Subject to Bankruptcy Code Section 502(d) ........................................ 143

E.   SETOFFS........................................................................... 143

XIII.   CERTAIN RISK FACTORS TO BE CONSIDERED .. .............................. 143

CERTAIN RISK FACTORS TO BE CONSIDERED ........................... 143

A.   CERTAIN BANKRUPTCY LAW CONSIDERATIONS............... 144

1.   Risk of Non-Confirmation of the Plan ............................. 144

2.   Risk of Non-Occurrence of the Effective Date .................. 144

B.   RISKS TO RECOVERY BY HOLDERS OF CLAIMS ................. 144

1.   Ability to Service Debt.................................................. 144

2.   Risks of Asset Disposition Delays ................................... 145

3.   Risks Related to Dependence on Key Personnel................. 145

4.   Projected Financial Information ..................................... 145

XIV.   CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ......... 145

CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ....... 145

A.   CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTORS....................................... 147

1.   Net Operating Losses................................................... 147

2.   Cancellation of Debt.................................................... 147

3.   Limitation on NOL Carryforwards and Other Tax Attributes................................................................... 148

4.   General Section 382 Limitation...................................... 148

5.   Special Bankruptcy Exception........................................ 149

6.   Merger of MMPLP into MMPI......................................... 150

B.   CONSEQUENCES TO HOLDERS OF CERTAIN CLAIMS........... 151

347973.01 [XP]    25195

# TABLE OF CONTENTS (cont.)

**Page**

      1.    **Consequences to Holders of Allowed General Unsecured Claims** ................................................... 151

      2.    **Consequences to Holders of Allowed Secured Claims** ........................ 152

C.    **CONSEQUENCES OF THE SUBSCRIPTION RIGHTS OFFERING** ...................................................... 153

D.    **DISTRIBUTION IN DISCHARGE OF ACCRUED INTEREST** ................. 154

E.    **INFORMATION REPORTING AND BACKUP WITHHOLDING** ........................................................ 154

F.    **IMPORTANCE OF OBTAINING PROFESSIONAL TAX ASSISTANCE** ......................................................... 154

XV.   MISCELLANEOUS PROVISIONS ........................................... 155

**MISCELLANEOUS PROVISIONS** ........................................................ 155

A.    **EXEMPTION FROM TRANSFER TAXES.** ................................... 155

B.    **PAYMENT OF STATUTORY FEES** ........................................... 155

C.    **MODIFICATION OR WITHDRAWAL OF THE PLAN** ............................ 156

D.    **GOVERNING LAW** ........................................................... 156

E.    **FILING OR EXECUTION OF ADDITIONAL DOCUMENTS** ................... 156

F.    **WITHHOLDING AND REPORTING REQUIREMENTS** ........................... 156

G.    **WAIVER OF RULE 7062 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE** ...................................... 156

H.    **HEADINGS** ................................................................. 157

I.    **EXHIBITS AND SCHEDULES** ................................................ 157

J.    **NOTICES** .................................................................. 157

K.    **CONFLICT** ................................................................. 157

L.    **SUCCESSORS AND ASSIGNS** ................................................ 157

M.    **SATURDAY, SUNDAY OR LEGAL HOLIDAY** ................................. 157

N.    **POST-EFFECTIVE DATE EFFECT OF EVIDENCES OF CLAIMS OR INTERESTS** .................................... 158

O.    **SEVERABILITY OF PLAN PROVISIONS.** ................................... 158

-viii-

## TABLE OF CONTENTS (cont.)

|  |  | | **Page** |
|---|---|---|---|
| P. | BALLOTING | .................................................. | 158 |
| Q. | NO ADMISSIONS OR WAIVER OF OBJECTIONS | .................... | 159 |
| R. | SURVIVAL OF SETTLEMENTS | ................................ | 159 |
| XVI. | ALTERNATIVES TO CONFIRMATION AND CONSUMMATION | | |
|  | OF THE PLAN | .................................................. | 159 |
| **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION** | | ................................ | 159 |
| A. | ALTERNATIVE PLANS OF REORGANIZATION | .................... | 159 |
| B. | LIQUIDATION UNDER CHAPTER 7 OR CHAPTER 11 | ........................ | 160 |
| XVII. | CONCLUSION AND RECOMMENDATION | ............................ | 160 |

347973.01 [XP]     25195

1    THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE

2  AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE

3  DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN

4  IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED

5  SINCE THE DATE HEREOF.  HOLDERS OF CLAIMS SHOULD CAREFULLY READ THIS

6  DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE PLAN, PRIOR TO

7  VOTING ON THE PLAN.

8    FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THIS

9  DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  IF ANY

10  INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT,

11  THE TERMS OF THE PLAN ARE CONTROLLING.  THIS DISCLOSURE STATEMENT MAY

12  NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO

13  VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL

14  CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE

15  ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER

16  PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL

17  EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS.

18  CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY

19  NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.

20  THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF

21  ACTUAL OUTCOMES.  ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND

22  CONSIDER FULLY THE RISK FACTORS SET FORTH IN ARTICLE XIII OF THIS

23  DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

24    WHERE THERE ARE SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS

25  REFERRED TO IN THIS DISCLOSURE STATEMENT, SUCH SUMMARIES DO NOT

26  PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR

27  ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT,

28  INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

347973.01 [XP]    25195

1     THE DEBTORS BELIEVE THE PLAN WILL ENABLE THEM TO SUCCESSFULLY

2 REORGANIZE AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT

3 ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND

4 THEIR CREDITORS.

5     THE DEBTORS URGE ALLOWED CLAIM HOLDERS IN CLASSES OF CLAIMS

6 THAT ARE IMPAIRED AND THAT ARE NOT DEEMED TO HAVE REJECTED THE PLAN

7 TO VOTE TO ACCEPT THE PLAN.

8 **I.**

9 **INTRODUCTION**

10     **A.     OVERVIEW**

11     Meruelo Maddux Properties, Inc., ("MMPI"), and its 53 related debtor entities that filed

12 voluntary bankruptcy petitions at the same time as MMPI (each a "Debtor" and, collectively, the

13 "Debtors" or the "Company") submit this First Amended Disclosure Statement ("Disclosure

14 Statement') pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy

15 Code"). The purpose of this Disclosure Statement is to provide Holders of Claims against the

16 Debtors with adequate information to enable them to make informed judgments about the Debtors'

17 Joint First Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated

18 February 26, 2010, (as the same may be amended, the "Plan"), filed with the United States

19 Bankruptcy Court for the Central District of California – San Fernando Valley Division (the

20 "Bankruptcy Court") before exercising their right to vote for acceptance or rejection of the Plan. [2]

21     This Disclosure Statement describes the business background and operating history of the

22 Debtors before the filing of their Chapter 11 Cases. It also summarizes certain significant events

23 _____

24     [2]Unless otherwise defined herein, all capitalized terms contained herein have the meanings
ascribed to them in the Plan, a copy of which is attached hereto as Exhibit "A." A term used, but

25 not defined herein or in the Plan, but defined in the Bankruptcy Code, has the meaning given to that
term in the Bankruptcy Code unless the context of this Disclosure Statement clearly requires

26 otherwise. References to code sections are references to the Bankruptcy Code, except as otherwise

.27 stated.

28

1 that have taken place during the Chapter 11 Cases and describes the terms of the Plan, which

2 divides creditor Claims and the interests of shareholders into Classes and provides for the

3 satisfaction of allowed Claims and interests.

4    The Plan is a joint Plan and not a consolidated Plan. The Debtors are not seeking

5 substantive consolidation in the Plan.  As a result, the Claims and Interests in each of the Debtors

6 have been classified on a Debtor by Debtor basis.  Votes will be tabulated and acceptances will be

7 determined on a Debtor by Debtor basis.  The Debtors will seek confirmation of the Plan as to each

8 Debtor on an individual basis notwithstanding that the Plan is a joint Plan.

9    The Plan provides for the payment in full of all Claims over time with interest.  The

10 Secured Claims will be paid interest only over the term of the Plan and the principal balance will be

11 paid either through the sale of the property securing the claim or the refinance of the secured debt.

12 The Plan calls for the cancellation of existing equity in MMPI.  MMPLP will be merged into

13 MMPI and MMPLP's equity interests will also be cancelled.   Payments under the Plan will be

14 funded from the Debtors' operations, an infusion of capital at the Effective Date and the sale and

15 refinance of the certain of the Debtors' assets. A detailed description of the Plan is set forth in

16 Article V of this Disclosure Statement.

17    Upon Bankruptcy Court approval ("Confirmation") of the Plan, the Plan will be binding

18 upon all creditors and shareholders regardless of whether an individual creditor or shareholder has

19 voted in favor of the Plan. THE DEBTORS THEREFORE URGE YOU TO READ THIS

20 DISCLOSURE STATEMENT AND THE PLAN CAREFULLY.

21    **B.  EXHIBITS AND ADDITIONAL INFORMATION**

22    Attached as Exhibits to this Disclosure Statement are copies of the following documents:

23    •  The Plan (Exhibit A);

24    •  Order of the Bankruptcy Court dated [ ], 2010 (the "Disclosure Statement Order"),

25 among other things, approving this Disclosure Statement and establishing certain procedures with

26 respect to the solicitation and tabulation of votes to accept or reject the Plan (Exhibit B);

27    •  Chart of the Debtors' Corporate Structure: Prepetition List of the Debtors  (Exhibit

28 C);

-4-

347973.01 [XP]    25195

1    •    Loan Modification Agreements (Exhibit D);

2    •    The Debtors' Projected Financial Information (Exhibit E);

3    •    The Debtors' Unexpired Leases and Executory Contracts to Be Assumed for Which

4    Cure Amounts are Owing (Exhibit F)

5    •    The Debtors' Liquidation Analysis (Exhibit G);

6    •    The Claims and Interests of the Debtors (Exhibit H);

7         •    List of Administrative Expense Claims (Exhibit H.1)

8         •    List of Class "B" Priority Unsecured Claims (Exhibit H.2);

9         •    List of Class "C" General Unsecured Claims – Tenant Security Deposit

10        Claims (Exhibit H.3);

11        •    List of Class "C" General Unsecured Claims -- Convenience Class (Exhibit

12        H.4);

13        •    List of Class "C" General Unsecured Claims (Exhibit H.5);

14        •    List of Class "C" Unsecured Guaranty Claims (Exhibit H.6);

15        •    List of Class "D" Intercompany Claims (Exhibit H.7);

16        •    List of Class "E" Interests (Exhibit H.8);

17   •    List of Debtors' Transfers During the 90-Day and One-Year Avoidance Periods

18   (Exhibit I).

19        MMPI has filed public reports with the Securities and Exchange Commission ("SEC")

20   which contain additional information about the Company and its historic financial performance.

21   The most recent filings are:  10-K for the year ended December 31, 2008 (filed on March 16,

22   2009), Amended 10-K for the year ended December 31, 2008 (filed on April 30, 2009), 10-Q for

23   the quarter ended March 31, 2009 (filed on September 9, 2009), 10-Q for the quarter ended June

24   30, 2009 (filed on September 17, 2009) and 10-Q for the quarter ended September 30, 2009 (filed

25   on November 9, 2009).  On January 19, 2010, MMPI filed its Certification and Notice of

26   Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or

27   Suspension of Duty to File Reports under Section 13 and 15(d) of the Securities Exchange Act of

28   1934 and accordingly, the Debtor is no longer required to file public reports with the SEC.

347973.01 [XP]    25195

1    You may obtain copies of these documents from:

2    •    The SEC's website at: *http://www.sec.gov/edgar/searchedgar/companysearch.html;*

3    •    The Company's website (under "Investor Relations") at:

4    *http://www.meruelomaddux.com/noflash/index.php* or

5    •    By requesting them in writing from:

6    Meruelo Maddux Properties, Inc.
     761 Terminal Street
7    Building 1, 2nd Floor
     Los Angeles, CA 90021
8    Attn:  Mr. Todd Nielsen

9    A Ballot for the acceptance or rejection of the Plan is also enclosed with this Disclosure

10   Statement submitted to the Holders of Claims and Interests that are entitled to vote to accept or

11   reject the Plan.

12   On [_____], 2010, after notice and a hearing, the Bankruptcy Court

13   entered the Disclosure Statement Order, approving this Disclosure Statement as containing

14   adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors

15   typical of the Debtors' creditors to make an informed judgment whether to accept or reject the Plan.

16   APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE

17   A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS

18   OF THE PLAN.  THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN

19   DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF

20   THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY

21   COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE

22   DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THESE CHAPTER 11

23   CASES.

24   The Disclosure Statement Order, a copy of which is annexed hereto as Exhibit B, sets forth

25   in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and for

26   filing objections to confirmation of the Plan, and the applicable standards for tabulating Ballots.  In

27   addition, detailed voting instructions accompany each Ballot.  Each holder of a Claim entitled to

28   vote on the Plan should read this Disclosure Statement, the Plan, the Disclosure Statement Order

-6-

1    and the instructions accompanying the Ballot in their entirety before voting on the Plan.  These

2    documents contain important information concerning the classification of Claims for voting

3    purposes and the tabulation of votes.  No solicitation of votes to accept the Plan may be made

4    except pursuant to Section 1125 of the Bankruptcy Code.

5          **C.**    **HOLDERS OF CLAIMS ENTITLED TO VOTE**

6          Pursuant to the provisions of the Bankruptcy Code, only Holders of Allowed Claims or

7    Interests in Classes of Claims or Interests that are impaired and that are not deemed to have rejected

8    the Plan are entitled to vote to accept or reject a proposed Plan.  Classes of Claims or Interests in

9    which the Holders of Claims or Interests are unimpaired under a Chapter 11 Plan are deemed to

10    have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Classes of Claims

11    or Interests in which the Holders of Claims or Interests will receive no recovery under a Chapter 11

12    Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

13    For a detailed description of the treatment of Claims and Interests under the Plan, see Article V of

14    this Disclosure Statement.

15          The following Classes are impaired and, to the extent Claims in such Classes are Allowed

16    Claims, the Holders of such Claims will receive distributions under the Plan.  As a result, Holders

17    of Claims in those Classes are entitled to vote to accept or reject the Plan:

18       •    Classes 10A, 11A, 12A, 13A, 14A, 15A, 16A, 18A, 20A, 21A-1, 22A, 24A, 25A,

19    26A, 27A-1,  28A-1, 29A-1, 30A-1, 32A-1, 33A-1, 34A-1, 35A-1, 36A-1, 37A-1, 38A-1, 39A-1,

20    40A-1, 41A-1, 42A-1, 43A-1, 44A-1, 45A-1, 46A-1, 47A-1, 48A-1, 49A-1, 50A-1, 51A-1, 52A-1,

21    53A-1, and 54A-1 (consisting of secured tax Claims against the Debtors);

22       •    Classes 21A-2, 28A-2, 29A-2, 29A-3, 30A-2, 32A-2, 33A-2, 34A-2, 35A-2, 36A-2,

23    36A-3, 37A-2, 37A-3, 38A-2, 39A-2, 40A-2, 41A-2, 42A-2, 43A-2, 44A-2, 45A-2, 46A-2, 47A-2,

24    48A-2, 49A-2, 50A-2, 50A-3, 51A-2, 51A-3, 52A-2, 53A-2, 54A-2, and 54A-3 (consisting of the

25    Secured Claims of lenders and other secured creditors against each relevant Debtor);

26       •    Classes 1B, 5B, 32B, 33B, 36B and 52B, (consisting of the Priority Unsecured

27    Wage Claims of present and former employees of each relevant Debtor);

28

347973.01 [XP]    25195

1    • Classes 1C-3, 2C-3, 3C, 4C-2, 5C-2, 6C, 7C, 8C-2, 9C-2, 10C-2, 11C-3, 12C-3,

2  13C-2, 14C-3, 15C-2, 16C-2, 17C, 18C-2, 19C-2, 20C, 21C-3, 22C, 23C, 24C-2, 25C-3, 26C-3,

3  27C-3, 28C-3, 29C-2, 30C-3, 31C-2, 32C, 33C-3, 34C-3, 35C-2, 36C-3, 37C-2, 38C-3, 39C-3,

4  40C-3, 41C-3, 42C-2, 43C-2, 44C-2, 45C-2, 46C-2, 47C-2, 48C-2, 49C-2, 50C-2, 51C-2, 52C-3,

5  53C,  and 54C-3 (consisting of the general unsecured Claims against each relevant Debtor); and

6    Class 1E, the Class of Interests of MMPI, are being cancelled and extinguished, and the

7  Holders of such Interests will not receive distributions under the Plan.  As a result, Holders of

8  Interests in Class 1E are deemed to reject the Plan, and are not entitled to vote.

9    The Plan provides for the merger of MMPLP into MMPI.  The interests of the holders of

10  LTIP units in Class 2E will be cancelled and extinguished at the Effective Date and the remaining

11  interests will be extinguished as a result of the merger of MMPLP and MMPI.  As a result Class 2E

12  is deemed to reject the Plan and is not entitled to vote on the Plan.

13    The following Classes of the Plan are unimpaired.  As a result, Holders of Claims and

14  Interests in those Classes are conclusively presumed to have accepted the Plan:

15    • Classes 11C-1, 12C-1, 15C-1, 21C-1, 25C-1, 26C-1, 28C-1, 30C-1, 33C-1, 34C-1,

16  36C-1, 37C-1, 38C-1, 39C-1, 40C-1, 41C-1, 46C-1, and 52C-1 (consisting of the unsecured Claims

17  for security deposits of the Debtors' tenants);

18    • Classes 2D through 7D, 9D-35D, and 37D-53D (consisting of the Intercompany

19  Claims);

20    • Classes  3E through 54E (consisting of the Interests of MMPLP, MMP Ventures,

21  LLC ("MMP Ventures"), Meruelo Maddux Construction, Inc. ("MM Construction") and Meruelo

22  Maddux Management, LLC ("MM Management")).

23    As a condition to confirmation, the Bankruptcy Code requires that each Class of Impaired

24  Claims and Interests vote to accept the Plan, except under certain circumstances.  Section 1126(c)

25  of the Bankruptcy Code defines acceptance of a Plan by a Class of Impaired Claims as acceptance

26  by holders of at least two-thirds in dollar amount and more than one-half in number of Claims in

27  that Class, but for that purpose counts only those who actually vote to accept or to reject the Plan.

28  Thus, a Class of Claims will have voted to accept the Plan only if two-thirds in amount and a

-8-

1   majority in number actually voting cast their Ballots in favor of acceptance.  Under Section 1126(d)

2   of the Bankruptcy Code, a Class of Interests has accepted the Plan if Holders of such Interests

3   holding at least two-thirds in amount actually voting have voted to accept the Plan.  Holders of

4   Claims or Interests who fail to vote are not counted as either accepting or rejecting the Plan.  Thus,

5   acceptance of the Plan by the Impaired Classes of Claims listed above  will occur only if at least

6   two-thirds in dollar amount and a majority in number of the Holders of such Claims in each Class

7   that cast their Ballots vote in favor of acceptance.

8        A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing,

9   that such acceptance or rejection was not solicited or procured in good faith or in accordance with

10  the provisions of the Bankruptcy Code.  For a more detailed description of the requirements for

11  confirmation of the Plan, see Article IX of this Disclosure Statement.

12       If a Class of Claims entitled to vote on the Plan rejects the Plan, the Debtors reserve the

13  right to amend the Plan or request confirmation of the Plan pursuant to Section 1129(b) of the

14  Bankruptcy Code or both.  Section 1129(b) permits the confirmation of a Plan of reorganization

15  notwithstanding the non-acceptance of the Plan by one or more impaired Classes of Claims or

16  Interests.  Under that Section, a Plan may be confirmed by a Bankruptcy Court if it does not

17  "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting Class.  For a

18  more detailed description of the requirements for confirmation of a nonconsensual Plan, see Article

19  IX of this Disclosure Statement.

20       For each Debtor, in the event at least one Impaired Class of Claims votes to accept the Plan

21  (and at least one Impaired Class either votes to reject the Plan or is deemed to have rejected the

22  Plan), the Debtors shall request the Bankruptcy Court to confirm the Plan under the cramdown

23  provisions of Section 1129(b) of the Bankruptcy Code.

24       **D.    VOTING PROCEDURES**

25       If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of

26  voting on the Plan.  If you hold Claims in more than one Class and you are entitled to vote Claims

27  in more than one Class, you will receive separate Ballots, which must be used for each separate

28  Class of Claims.  Please vote and return your Ballot(s) to:

-9-

DANNING GILL DIAMOND & KOLLITZ LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067
Attention: Jessica Ramos

DO NOT RETURN ANY NOTES OR SECURITIES WITH YOUR BALLOT.  TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY NO LATER THAN [_____] P.M., LOS ANGELES TIME, ON [_____ ___], 2010.  ANY EXECUTED BALLOT RECEIVED THAT DOES NOT INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.

Any Claim in an impaired Class as to which an objection or request for estimation is pending or which is scheduled by the Debtors as unliquidated, disputed or contingent and for which no proof of Claim has been filed is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing such Claim for the purpose of voting on the Plan.

If you are a holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning this Disclosure Statement, the Plan or the procedures for voting on the Plan, please call the Debtors' counsel at:

DANNING GILL DIAMOND & KOLLITZ LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
Attention: Jessica Ramos

**E.    CONFIRMATION HEARING**

Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on [_____], 2010 commencing at [_____] Los Angeles Time, before the Bankruptcy

-10-

347973.01 [XP]    25195

1 | Court, the Honorable Kathleen Thompson, Presiding. Courtroom 301, 21041 Burbank Blvd.,

2 | Woodland Hills, California 91367. The Bankruptcy Court may adjourn the Confirmation Hearing

3 | from time to time without further notice except for the announcement of the adjournment date

4 | made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

5 |      Any objection to confirmation must be made in writing and specify in detail the name and

6 | address of the objector, all grounds for the objection and the amount of the Claim or number of

7 | shares of stock held by the objector. Any such objection must be filed with the Bankruptcy Court

8 | and served so that it is received by the Bankruptcy Court, the Official Committee of Unsecured

9 | Creditors Appointed (the "Creditors Committee") and the Debtors on or before _____, 2010

10 | at __:__ _.m. Los Angeles Time. Objections to confirmation of the Plan are governed by

11 | Bankruptcy Rule 9014.

12 |     **F.**    **NOTICES**

13 |      All notices, requests and demands hereunder to be effective must be in writing and unless

14 | otherwise expressly provided herein, shall be deemed to have been duly given or made when

15 | actually delivered by U.S. Mail or email addressed as follows:

16 | **DEBTORS AND REORGANIZED DEBTOR**      **COUNSEL TO THE DEBTORS AND REORGANIZED DEBTORS**

17 | Todd Nielsen, Esq.      John J. Bingham, Jr., Esq.
   | General Counsel      John N. Tedford, IV, Esq.

18 | MERUELO MADDUX PROPERTIES, INC.      Julia W. Brand, Esq.
   |      DANNING, GILL, DIAMOND &

19 | 761 Terminal Street      KOLLITZ, LLP
   | Building 1, 2nd Floor      2029 Century Park East, Third Floor

20 | Los Angeles, California 90021      Los Angeles, California 90067-2904
   | TNeilsen@meruelomaddux.com      Telephone: (310) 277-0077

21 |      Facsimile: (310) 277-5735
   |      E-Mail:

22 |      JBingham@DGDK.com
   |      JTedford@DGDK.com

23 |      JBrand@dgdk.com

24 |

25 |

26 |

27 |

28 |

347973.01 [XP]    25195

## II.

### DEBTORS' BUSINESS AND OPERATIONS PRIOR TO THE FILING

### A.    CORPORATE HISTORY OF THE DEBTORS

MMPI is the parent company of the fifty-three related Debtor entities that, along with MMPI, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  A list of each of the Debtors is attached as part of Exhibit "C."  MMPI was incorporated in 2006 under the laws of the State of Delaware, and is registered with the California Secretary of State to do business in the State of California.  Each of the other Debtors was formed under either the laws of the State of Delaware or the laws of the State of California.  The Delaware Debtors are registered with the California Secretary of State to do business in the State of California.

### B.    NATURE OF THE DEBTORS' BUSINESS

MMPI, together with its subsidiary operating partnership, MMPLP, and its affiliates and related entities, is a self-managed, full-service real estate company that develops, redevelops and owns industrial, commercial and multi-unit residential real properties primarily located in downtown Los Angeles and other areas in southern California.  The Company focuses on unique properties that it believes have an alternate, more profitable use achievable through major renovation, redevelopment or development.  The Company's projects are predominantly located in a densely populated urban, multi-ethnic environment and involve numerous local entitlement, property assemblage and physical challenges.

The Company is committed to responsible property investing that has economic, environmental and social benefits.  Its development activities include urban infill projects that are expected to meet the demands of urban communities and that utilize or upgrade existing infrastructure instead of creating new infrastructure.  The Company is known as a "smart growth" developer, and many of the Company's projects are designed to locate businesses, customers and employees close to each other and close to existing public transit systems.  The Company is also known as an "incubator" of new businesses, actively seeking development projects in empowerment zones.  The Company is very familiar with the social, cultural, business and political issues of land development in Southern California, and especially the Los Angeles area.

347973.01 [XP]    25195

1    The Debtors were formed to succeed to certain operations of a predecessor group, whose

2 owners were Richard Meruelo, Maria Meruelo and John Charles Maddux.  Through their

3 predecessor business, the Company's principals have been investing in urban real estate since

4 1972.

5    The Debtors' current management team is led by Richard Meruelo, who serves as MMPI's

6 Chief Executive Officer and Chairman of MMPI's Board of Directors,  and John Charles Maddux,

7 who serves as MMPI's President and Chief Operating Officer and a member of MMPI's Board of

8 Directors.  Messrs. Meruelo and Maddux both have more than 20 years experience in identifying,

9 acquiring, entitling, financing, developing and redeveloping urban real estate.  They have worked

10 together since 1987.

11    The Company does not utilize the same business model as typical real estate investment

12 companies, many of which utilize real estate investment trusts ("REITs"), and the Company's

13 business Plan is distinctive among publicly traded companies.  Many public real estate companies

14 focus on properties with stable occupancies at market rents or properties with stable occupancies at

15 below-market rents that may benefit from more efficient management or minor renovations.  In

16 contrast, the Company focuses on urban in-fill development and on finding different, more

17 profitable uses for existing urban properties.  The Company looks for properties that have value

18 intrinsic to the property itself, such as the property's location, whether there is an end user of the

19 property on the horizon who might want to purchase the property, how well the property will fit in

20 with the growth patterns of the area and community in which it is situated, and other factors.  Such

21 properties may have substantial vacancies, unstable occupancies, or require major renovations for a

22 new use.  The Company's business requires local and other special knowledge to identify viable

23 alternative uses for urban property, and presents higher potential returns than the returns that the

24 property owner might otherwise derive.

25    The Company's business model anticipates the need for time to develop properties and

26 requires the infusion of funds to pay the costs of such development, including the carrying costs.

27 To help defray costs during development, properties may be utilized as parking lots or other uses,

28 not because such use generates substantial income but because the land itself is extremely valuable

-13-

1  since it can be developed at an appropriate time in the future, and the parking lot revenue provides

2  some interim revenue.  Many of the Company's properties have gone through the land use process

3  to the point where entitlements have been obtained thus increasing the value substantially, but

4  development has been deferred pending an improvement in the credit markets.  In summary, the

5  Company's business model contemplates and is based upon the purchase, development and resale

6  of properties, pursuant to which the Company turns over such properties in a relatively short period

7  of time, such as a few years instead of decades, and uses the profit from such properties to fund

8  operations of MMPI and all of its other affiliates and the purchase and development of other

9  properties.

10        Currently, the Company owns in excess of forty discrete properties consisting in some cases

11  of a number of parcels, some of its parcels generate income and others are in various stages of

12  development.  With approximately 80 acres of land, the Company is believed to be the largest non-

13  government land owner in downtown Los Angeles.

14        Properties the Debtors currently own  include the following:

15        **1.    210 – 212 and 230 West Avenue 26, Los Angeles**

16        The subject property is owned by Meruelo Maddux-230 W. Avenue 26, LLC ("MM 230 W.

17  Avenue 26") and is unencumbered .  The property is located at the corner of Humboldt Street and

18  West Avenue 26 near the Northeast boundary of downtown Los Angeles.  It is comprised of one

19  property totaling approximately 1.8 acres of land which has been improved with a group of multi-

20  tenant industrial buildings consisting of approximately 67,671 net rentable square feet.  As of

21  September 30, 2009, the improvements were leased to five tenants occupying approximately 30%

22  of the total rentable area.  The largest tenant occupies 6.8% of the total area.  The property is

23  currently being utilized as an industrial and distribution space facility.

24        This property is an example of how MMPI services the multitude of business owners and

25  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

26  sectors of the garment industry in downtown Los Angeles.

27

28

-14-

347973.01 [XP]    25195

1    ## 2.    306 – 330 North Avenue 21, Los Angeles

2    The subject property is owned by Meruelo Maddux Properties-306-330 N. Avenue 21, LLC

3    ("MMP 306-330 N. Avenue 21") and is unencumbered.  The property is located near the corner of

4    Humboldt Street and North Avenue 21 near the Northeast boundary of downtown Los Angeles.  It

5    is comprised of approximately 1.1 acres which have been improved with industrial buildings

6    consisting of approximately 80,712 net rentable square feet. As of September 30, 2009, the

7    improvements were leased to five tenants occupying approximately 35.4% of the total rentable

8    area.  The largest tenant occupies 13.4% of the total area.  The property is currently being utilized

9    as an industrial and distribution space facility.

10    This property is an example of how MMPI services the multitude of business owners and

11    their numerous employees who are involved in the (a) design, (b) production and (c) distribution

12    sectors of the garment industry in downtown Los Angeles.

13    ## 3.    1000 East Cesar Chavez, Los Angeles

14    The subject property is owned by Meruelo Maddux-1000 E. Cesar Chavez, LLC ("MM

15    1000 E. Cesar Chavez") and is unencumbered. The property is comprised of four separate

16    properties located near the Northeast boundary of downtown Los Angeles. Specifically, property

17    one and two are located at the corner of East Cesar Chavez Avenue and North Mission Road and

18    property three and four are located east of the parking lot on East Cesar Chavez Avenue.  The

19    subject property is improved with an industrial building, parking lot, and two single-family

20    residences and totals approximately 1.6 acres consisting of approximately 50,373 net rentable

21    square feet.  As of September 30, 2009, the improvements were leased to seven tenants occupying

22    approximately 16.8% of the total rentable area.  The largest tenant occupies 6.6% of the total area.

23    The non-residential portion of the property is currently being utilized as an industrial and

24    distribution space facility.

25    This property is home to an assortment of small business owners prevalent in downtown

26    Los Angeles whereby the Company looks to support and incubate their businesses.

27

28

347973.01 [XP]    25195

1

      **4.**    **2415 East Washington Boulevard, Los Angeles**

2          The subject property is owned by Meruelo Maddux-2415 E. Washington Blvd., LLC ("MM

3  2415 E. Washington Boulevard"). Subject to entering into, and Bankruptcy Court approval of, a

4  settlement with Imperial Capital Bank ("Imperial"), the property will be encumbered by a lien in

5  favor of Imperial. The property is located near the corner of South Santa Fe Avenue and East

6  Washington Boulevard, adjacent to Santa Fe Commerce Center, near the Southeast Industrial part

7  of downtown Los Angeles. It is comprised of one property totaling approximately 0.5 acres which

8  has been improved with an industrial building consisting of approximately 18,500 net rentable

9  square feet. As of September 30, 2009, the improvements were not leased. The property is

10  currently a multi-tenant industrial space facility.

11          This property is intended to be used by an assortment of small business owners prevalent in

12  downtown Los Angeles whereby the Company looks to support and incubate their businesses.

13

      **5.**    **1211 East Washington Boulevard, Los Angeles**

14          The subject property is owned by Merco Group-1211 E. Washington Boulevard, LLC

15  ("MG 1211 East Washington Boulevard") and is unencumbered. The property is located at the

16  corner of Washington Boulevard and South Central Avenue just south of the Interstate 10 Freeway

17  in downtown Los Angeles. It is comprised of three properties totaling approximately 2.0 acres

18  which have been improved with a multi-tenant industrial building and a retail plaza consisting of

19  approximately 114,479 net rentable square feet. The third property is a parking lot. As of

20  September 30, 2009, the improvements were leased to four tenants occupying approximately

21  73.2% of the total rentable area. The largest tenant occupies 31.6% of the total area. The property

22  is currently being utilized primarily as a garment manufacturing space.

23          This property is an example of how MMPI services the multitude of business owners and

24  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

25  sectors of the garment industry in downtown Los Angeles.

26

27

28

-16-

1        **6.**    **13853, 13822 and 13916  Garvey Avenue, 13904 Corak Street and 3060**

2              **Feather Avenue, Baldwin Park**

3        The subject property is owned by Meruelo Baldwin Park, LLC and is unencumbered.  The

4  property is located at the intersection of Francisquito Avenue and the Interstate 10 Freeway in

5  Baldwin Park, California.  It is comprised of approximately 6.3 acres of land and improvements

6  containing approximately 3,878 net rentable square feet which include two single-family

7  residences.  As of September 30, 2009, the improvements were leased to two tenants occupying

8  approximately 61.5% of the total rentable area.  The largest tenant occupies 40.3 % of the total

9  building area.  The largest component of this property is unimproved land immediately adjacent to

10  the Interstate 10 Freeway.

11        This property is intended to be a retail development as a compliment to the garment,

12  produce, multi-tenant and residential activities of MMPI.

13        **7.**    **1910 - 1922 Santa Fe Avenue, 2425 East 12th Street and 303 South**

14              **Hewitt, Los Angeles**

15        The subject property is owned by Santa Fe & Washington Market, LLC ("Santa Fe &

16  Washington Market").  The subject property includes three separate properties of which one is

17  located in the Arts District of downtown Los Angeles at 303 South Hewitt Street and two of which

18  are located adjacent to the Santa Fe Commerce Center at 1910-1922 Santa Fe Avenue and 2425

19  East 12th Street  in downtown Los Angeles.  The property located at 303 South Hewitt Street has

20  been improved with a fifty-four unit apartment building.  The two industrial buildings located at

21  1910-1922 Santa Fe Avenue and at 2425 East 12th Street contain approximately 52,040 net

22  rentable square feet in the aggregate.  As of November 30, 2009, the improvements were leased to

23  forty-two tenants occupying approximately 95.5% of the total rentable area.  The largest tenant

24  occupies 27.2% of the total area.

25        Subject to entering into and Bankruptcy Court approval of, a settlement with Imperial, the

26  properties located at 1910-1922 Santa Fe Avenue will be encumbered by a lien in favor of

27  Imperial.

28

-17-

The property at 1910-1922 Santa Fe Avenue is an example of how MMPI services the multitude of business owners and their numerous employees who are involved in the (a) design, (b) production and (c) distribution sectors of the garment industry in downtown Los Angeles. The property at 2425 East 12th Street is tenanted by small business owners prevalent in downtown Los Angeles whereby the Company looks to support and be a helping hand in incubating their businesses. The property at 303 S Hewitt is an example of how the Company focuses its expertise and downtown knowledge base on supplying residential units to individuals. This effort is geared towards (a) high density urban in-fill, (b) transit oriented and/or (c) affordable development of residences.

**8.    5701 and 5707 - 5715 South Alameda Street and 5016 Alba Street, Los Angeles**

The subject property is owned by Merco Group - 5707 S. Alameda, LLC ("MG 5707 S. Alameda") and is unencumbered. The property is located in a major trucking thoroughfare immediately south of downtown Los Angeles. It is comprised of two separate properties totaling approximately 1.9 acres of which one property has been improved with a multi-tenant industrial building consisting of approximately 55,729 net rentable square feet. The second property includes an additional non-contiguous land parcel one block away that can be utilized as pallet storage. As of September 30, 2009, the improvements were leased to six tenants occupying approximately 43.0% of the total rentable area. The largest tenant occupies 19.9% of the total area. The property is currently being utilized as a multi-tenant industrial space facility.

This property is an example of how MMPI services the multitude of business owners and their numerous employees who are involved in the (a) design, (b) production and (c) distribution sectors of the garment industry in downtown Los Angeles.

**9.    3rd & Omar Street, Los Angeles**

The subject property is owned by Meruelo Maddux - 3rd & Omar Street, LLC ("MM 3rd & Omar Street") and is encumbered by a lien in favor of Legendary Investors Group No. 1, LLC, as successor to East West Bank ("Legendary"). The property is located at 3rd & Omar Streets near the Little Tokyo area of downtown Los Angeles. It is comprised of two properties totaling

-18-

1  approximately 0.5 acres of which one has been improved with a multi-tenant building consisting of

2  approximately 23,298 net rentable square feet and the other is being utilized as a parking lot. As of

3  September 30, 2009, the improvements were leased to three tenants occupying approximately

4  21.0% of the total rentable area.  The largest tenant occupies 9.7% of the total area.  The ground

5  floor of this property, where all of the current tenants are located, is currently being utilized as

6  retail/wholesale storefront facility.

7      This property is intended to be used by an assortment of small business owners prevalent in

8  downtown Los Angeles whereby the Company looks to support and incubate their businesses.

9          **10.**    **420 Boyd Street, Los Angeles**

10      The subject property is owned by Meruelo Maddux - 420 Boyd Street, LLC ("MM 420

11  Boyd Street") and is encumbered by a lien in favor of Legendary.  The property is located at 420

12  Boyd Street near the Little Tokyo area of downtown Los Angeles.  It is comprised of two

13  properties totaling approximately 0.6 acres which have been improved with a multi-tenant building

14  consisting of approximately 47,806 net rentable square feet and a parking lot.  As of September 30,

15  2009, the improvements were leased to twelve tenants occupying approximately 61.8 % of the total

16  rentable area.  The largest tenant occupies 12.6% of the total area.  The property is currently being

17  utilized as multi-tenant office space, a restaurant facility and a parking lot.

18      This property is intended to be used by an assortment of small business owners prevalent in

19  downtown Los Angeles whereby the Company looks to support and incubate their businesses.

20          **11.**    **760 South Hill Street, and 325 West 8th Street, Los Angeles (The Union**

21                    **Lofts)**

22      The subject property is owned by Meruelo Maddux Properties - 760 South Hill Street, LLC

23  ("MMP 760 S. Hill Street") and is encumbered by a lien in favor of Bank of America, N.A.

24  ("BofA").  The property is located at the corner of West 8th Street and South Hill Street in

25  downtown Los Angeles.  It is comprised of one property totaling approximately 0.3 acres which

26  has been improved with a ninety-two unit condominium building currently in lease-up.  The

27  building is newly restored and converted former bank headquarters originally built in the 1920s

28  consisting of approximately 92,400 net rentable square feet.  Space located on the ground floor is

-19-

1 intended for a restaurant tenant.  The improvements are currently leased to fifty-four tenants

2 occupying approximately 58.7% of the total rentable area.

3      This property is an example of how the Company focuses its expertise and downtown

4 knowledge base on supplying residential units to individuals.  This effort is geared towards (a) high

5 density urban in-fill, (b) transit oriented and/or (c) affordable development of residences.

6           **12.    788 South Alameda, Los Angeles**

7      The subject property is owned by 788 South Alameda, LLC ("788 South Alameda") and is

8 encumbered by a lien in favor of California Bank & Trust.  The property is located at 788 South

9 Alameda Street across the street from Alameda Square in downtown Los Angeles.  It is comprised

10 of one property totaling approximately 2.3 acres which has been improved with a newly

11 constructed modern produce market that is home to numerous small produce tenants consisting of

12 approximately 33,984 net rentable square feet.  As of September 30, 2009, the improvements were

13 leased to eighteen tenants occupying approximately 81.3% of the total rentable area.  The property

14 is currently being utilized as a small-tenant produce industry space with coolers.

15      This property is an example of the Company's (a) significant expertise and presence and (b)

16 focus on providing tailored solutions for a variety of space needs of the many small businesses in

17 the food and produce distribution industry in downtown Los Angeles.

18           **13.    905 8th Street, Los Angeles**

19      The subject property is owned by 905 8th Street, LLC ("905 8th Street") and is encumbered

20 by a lien in favor of The Stanford Group, L.P. ("Stanford").  The property is located at 905 8th

21 Street in downtown Los Angeles.  It is comprised of one property totaling approximately 0.9 acres

22 which has been improved with a multi-tenant industrial building consisting of approximately

23 28,200 net rentable square feet.  As of September 30, 2009, the improvements were leased to six

24 tenants occupying approximately 27.0 % of the total rentable area.

25      This property is an example of the Company's (a) significant expertise and presence and (b)

26 focus on providing tailored solutions for a variety of space needs of the many small businesses in

27 the food and produce distribution industry in downtown Los Angeles.

28

347973.01 [XP]      25195

1    **14.    Alameda Produce Market, Los Angeles (Including Alameda Square and**

2    **Seventh Street Produce Market)**

3    The subject property is owned by Alameda Produce Market, LLC ("Alameda Produce

4    Market") and includes (a) four industrial buildings totaling 1,417,523 square feet of net rentable

5    area on approximately 20.2 acres that is home to American Apparel ("Alameda Square"), (b) a

6    multi-tenant produce market known as the Seventh Street Produce Market with 122,120 square feet

7    of net rentable area, (c) an unencumbered parking structure located at 1215 East 7th Street whose

8    use has been donated to the Center City East Association to provide aid to homeless people and (d)

9    an unencumbered parking lot located at 1339 East 7th Street that is subject to an eminent domain

10    proceeding with the MTA. The Alameda Square and Seventh Street Produce Market properties are

11    subject to a lien in favor of Cathay Bank ("Cathay").

12    In regards to Alameda Square it is 59.3% occupied with ten tenants and the largest tenant is

13    American Apparel who leases more than 55% of the area.

14    In regards to the Seventh Street Produce Market it is 63.7% leased. A significant portion of

15    the vacant space is unusable currently and is in the process of being approved to be improved so

16    that it can be leased.

17    Alameda Square has been an example of two characteristics of MMPI's overall operations.

18    First, it serves as an example of how MMPI incubates small business owners in the case of

19    American Apparel that now occupies more than 10 times more space than it initially did and

20    employs approximately 5,000 workers daily at Alameda Square. Second, it is an example of how

21    the Company services business owners and their numerous employees who are involved in the (a)

22    design, (b) production and (c) distribution sectors of the garment industry in downtown Los

23    Angeles. Seventh Street Produce Market is an example of the Company's (a) significant expertise

24    and presence and (b) focus on providing tailored solutions for a variety of space needs of the many

25    small businesses in the food and produce distribution industry in downtown Los Angeles.

26    The portion of the property located at 1339 East 7th Street is currently the subject of

27    litigation between Alameda Produce Market and the Metropolitan Transit Authority ("MTA")

28    which initiated eminent domain proceedings. The Company asserted that the MTA did not

-21-

347973.01 [XP]    25195

1   properly pursue such proceedings and the MTA's case was dismissed. The case has been appealed

2   by the MTA and Alameda Produce Market believes it has claims against the MTA for, among other

3   things, the value of the Company's lost use of the property during the numerous years that the

4   property has been possessed by the MTA. In the event the MTA is successful in taking the

5   property, the Company will have a Claim against the MTA for the fair value thereof, among other

6   things less amounts previously paid to lenders.

7   **15.   1500 Griffith Avenue, Los Angeles**

8   The subject property is owned by Merco Group - 1500 Griffith Avenue, LLC ("MG 1500

9   Griffith Avenue"). The property is located at the corner of Griffith Avenue and East 16th Street in

10  downtown Los Angeles. It is comprised of two separate properties totaling approximately 2.0 acres

11  which have been improved with two buildings consisting of approximately 56,000 net rentable

12  square feet. One property is encumbered by a lien in favor of Yoshiaki & Fumiko Murakami and

13  the other property is encumbered by a lien in favor of Legendary. As of September 30, 2009, the

14  improvements were leased to three tenants occupying approximately 100% of the total rentable

15  area. The largest tenant occupies 60% of the total area. The property is currently being utilized as a

16  distribution facility.

17  This property is an example of how MMPI services the multitude of business owners and

18  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

19  sectors of the garment industry in downtown Los Angeles.

20  **16.   1919 Vineburn Street, Los Angeles**

21  The subject property is owned by Meruelo Maddux Properties - 1919 Vineburn Street, LLC

22  ("MMP 1919 Vineburn Street") and is encumbered by a lien in favor of Imperial. The property is

23  located at 1919 Vineburn Street just north of downtown Los Angeles. It is comprised of one

24  property totaling approximately 5.8 acres which has been improved with a single-tenant

25  distribution building consisting of approximately 122,345 net rentable square feet. As of

26  September 30, 2009, the improvements were 100% leased. The property is currently being utilized

27  as a single-tenant distribution space facility.

28

-22-

1    This property is an example of how MMPI services the multitude of business owners and

2  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

3  sectors of the garment industry in downtown Los Angeles.

4         **17.    2131 Humboldt Street, Los Angeles**

5    The subject property is owned by Meruelo Maddux Properties - 2131 Humboldt Street,

6  LLC ("MMP 2131 Humboldt Street") and is partially encumbered by a lien in favor of Vahan &

7  Anoush Chamlian ("Chamlian").  The subject property is located at the corner of Interstate 5

8  Freeway and Humboldt Street near the Northern boundary of downtown Los Angeles.

9    It is comprised of approximately 6.0 acres which has been partially improved with

10  industrial buildings consisting of approximately 31,319 net rentable square feet.

11    The largest component of this property is unimproved land, which is encumbered and

12  located at 2131 Humboldt Streets and contains approximately 214,000 square feet of land with no

13  improvements.  This portion of the property is used from time to time for film shoots and

14  associated parking.

15    The unencumbered portion is located at 336-346 and 350-354 North Avenue 21.  It contains

16  approximately 17,415 square feet of land and improvements containing approximately 14, 668

17  square feet of space.  As of September 30, 2009, the improvements were leased to three tenants

18  occupying approximately 50.3% of the total rentable area.  The largest tenant occupies 21.5% of

19  the total area.  The improved portion of the property is currently being utilized as an industrial and

20  distribution space facility.

21    This property represents a large scale redevelopment site that could be redeveloped in a

22  variety of ways to satisfy the developing needs of downtown Los Angeles space users.

23         **18.    2529 Santa Fe Avenue, Vernon (Santa Fe Plaza)**

24    The subject property is owned by Merco Group – 2529 Santa Fe Avenue, LLC ("MG 2529

25  Santa Fe Avenue") and is encumbered by a lien in favor of 1248 Figueroa Street, LLC ("1248

26  Figueroa").  The property is located in Vernon, California totaling approximately 1.3 acres which

27  has been improved with a newly constructed retail plaza that opened in 2009 consisting of

28  approximately 16,000 net rentable square feet.   As of September 30, 2009, a portion of the

-23-

1  improvements were leased to a restaurant occupying approximately 29.4% of the total rentable area

2  with the lease expiring on April 30, 2013. The property is currently in lease up.

3       This property is an example of the development of urban in-fill property to satisfy the

4  sometimes non-institutional needs of small businesses in downtown Los Angeles.

5         **19.**   **2640 East Washington Boulevard, Los Angeles (Washington Produce**

6             **Market)**

7       The subject property is owned by 2640 Washington Boulevard, LLC ("2640 Washington

8  Boulevard") and is encumbered by a lien in favor of East West Bank (as successor to United

9  Commercial Bank ("UCB"). The property is located at 2640 East Washington Boulevard just

10  south of downtown Los Angeles. It is comprised of one property totaling approximately 2.8 acres

11  which has been improved with a newly constructed modern produce center consisting of

12  approximately 31,876 net rentable square feet. As of September 30, 2009, the improvements were

13  leased to nineteen tenants occupying approximately 97.0% of the total rentable area. The largest

14  tenant, occupies 17.8% of the total area. The property is currently being utilized as a small-tenant

15  produce industry space with coolers.

16       This property is an example of the Company's (a) significant expertise and presence and (b)

17  focus on providing tailored solutions for a variety of space needs of the many small businesses in

18  the food and produce distribution industry in downtown Los Angeles.

19         **20.**   **2951 Lenwood Road, Barstow (Barstow Produce Center)**

20       The subject property is owned by Meruelo Maddux Properties - 2951 Lenwood Road, LLC

21  ("MMP 2951 Lenwood Road") and is encumbered by a secured lien in favor of FNBN-CMLCOM

22  I, LLC ("FNBN"). The property is located at the intersection of Lenwood Road and the Interstate

23  15 Freeway in Barstow, CA. It is comprised of several properties totaling 75.0 acres which has

24  been partially improved with three buildings consisting of approximately 261,650 net rentable

25  square feet. The three buildings are comprised of a single-tenant cross dock building, a truck

26  maintenance building, and a newly constructed multi-tenant cold storage building for produce

27  tenants. As of September 30, 2009, the improvements were not leased.

28

-24-

1    This property is an example of the Company's (a) significant expertise and presence and (b)

2  focus on providing tailored solutions for a variety of space needs of the many small businesses in

3  the food and produce distribution industry.

4    **21.    3185 East Washington Boulevard, Los Angeles (Washington Cold**

5      **Storage)**

6    The subject property is owned by Merco Group - 3185 E. Washington Boulevard, LLC

7  ("MG 3185 E. Washington Boulevard") and is encumbered by a lien in favor of Chinatrust Bank

8  (U.S.A.) ("Chinatrust").  The property is located at 3185 East Washington Boulevard in downtown

9  Los Angeles.  It is comprised of one property totaling approximately 2.7 acres which has been

10  improved with a cold storage facility consisting of approximately 59,000 net rentable square feet.

11  As of September 30, 2009, the improvements were leased to a tenant occupying 100% of the total

12  rentable area.  The property is currently being utilized as a single-tenant cold storage facility.

13    This property is an example of the Company's (a) significant expertise and presence and (b)

14  focus on providing tailored solutions for a variety of space needs of the many small businesses in

15  the food and produce distribution industry in downtown Los Angeles.

16    **22.    620, 643 and 644 South Gladys Avenue, 830 - 838 East 6th Street and**

17      **647 - 649 Ceres Avenue, Los Angeles**

18    The subject property is owned by Merco Group-620 Gladys Avenue, LLC ("MG 620

19  Gladys Avenue") and is partially encumbered by a lien in favor of Legendary.  The property

20  generally is located at the corner of South Gladys Avenue and East 6th Street in the Seafood

21  District of downtown Los Angeles.  The property has been improved with several buildings

22  housing numerous small businesses and an educational/daycare facility. The encumbered portion of

23  the property is located at 620 S. Gladys Avenue, 830 - 838 East 6th Street and 647 - 649 Ceres

24  Avenue. It contains approximately 110,917 square feet of land and improvements totaling

25  approximately 77,725 square feet of space. It is being primarily used as a multi-tenant

26  seafood/produce distribution facility. The unencumbered portion of the property is located at 643

27  and 644 S. Gladys Avenue and contains approximately 17,415 square feet of land and

28  improvements containing approximately 14,688 square feet of space. It is being used as a multi-

-25-

1 tenant distribution space facility. As of September 30, 2009, the improvements on the subject

2 property were leased to six tenants occupying approximately 78.0% of the total rentable area. The

3 largest tenant occupies 15.7% of the total area.

4        This property is an example of the Company's (a) significant expertise and presence and (b)

5 focus on providing tailored solutions for a variety of space needs of the many small businesses in

6 the food and produce distribution industry in downtown Los Angeles.

7               **23.    2001 - 2021West Mission Boulevard, Pomona**

8        The subject property is owned by Meruelo Maddux - Mission Boulevard, LLC ("MM

9 Mission Boulevard") and is encumbered by a lien in favor of Kennedy Funding, Inc. ("Kennedy").

10 The property is located adjacent to 1875 West Mission Boulevard in Pomona, California.  It is

11 comprised of one property totaling approximately 14.7 acres which has been improved with a

12 three-story, single-tenant, office building consisting of approximately 242,042 net rentable square

13 feet.   As of September 30, 2009, the improvements were not leased.

14        This property represents a large scale redevelopment site that could be redeveloped in a

15 variety of ways to satisfy the developing needs of Los Angeles space users

16               **24.    1124 South Olive, 1117-1119 South Olive and 218 W. 11th Street, Los**

17                        **Angeles**

18        The subject property is owned by Merco Group-Little J, LLC ("MG Little J").  It is

19 comprised of three separate properties, located on both sides of the 1100 block of South Olive

20 Street in the South Park area of downtown Los Angeles.  The western portion, which is

21 encumbered by a lien in favor of Legendary, is improved with a building occupied by a restaurant

22 tenant consisting of approximately 11,829 net rentable square feet.   The remaining two properties,

23 which are unimproved and unencumbered, are currently being utilized as parking lots.  As of

24 September 30, 2009, the improvements were leased to a restaurant occupying 100% of the total

25 rentable area.

26        As a compliment to the commercial real estate activities of MMPI, the Company also

27 focuses its expertise and downtown knowledge base on supplying residential units to individuals.

28 This effort is geared towards (a) high density urban in-fill, (b) transit oriented and/or (c) affordable

-26-

1  development of for rent or for sale product.  This property is intended to be redeveloped for such

2  uses.

3              **25.      950 and 960 E. 3rd Street, Los Angeles**

4              The subject property is owned by Merco Group, LLC ("MG") and is encumbered by two

5  liens in favor of Legendary, each on separate parcels.  The two properties are located at the corner

6  of East 3rd Street and South Santa Fe Avenue in the Arts District of downtown Los Angeles.  It is

7  comprised of two separate properties totaling approximately 10.5 acres of which one has been

8  improved with a building occupied by the Southern California Institute of Architecture ("Sci-Arc")

9  consisting of approximately 81,741 net rentable square feet.  The second property consists of

10  unimproved land which is entitled for 635 residential units and a portion of which is currently

11  being partially utilized as parking lot for Sci-Arc student parking.  As of September 30, 2009, the

12  building was leased to Sci-Arc occupying approximately 100% of the total rentable area.

13              As a compliment to the commercial real estate activities of MMPI, the Company also

14  focuses its expertise and downtown knowledge base on supplying residential units to individuals.

15  This effort is geared towards (a) high density urban in-fill, (b) transit oriented and/or (c) affordable

16  development of for rent or for sale product.  This land portion of this property is intended to be

17  redeveloped for such uses.

18              **26.      815 East Temple Street, 210 Center Street and 729 East Temple Street,**

19                         **Los Angeles (Center Village)**

20              The subject property is owned by Meruelo Farms, LLC ("Meruelo Farms") and is

21  encumbered by  liens in favor of Imperial (on 815 East Temple Street) and Pacific Commerce

22  Bank, ("PCB"), on 729 East Temple Street.  The property is comprised of multiple properties

23  totaling approximately 5.3 acres of which 815 East Temple Street has been improved by a cold

24  storage and processing facility and 729 East Temple Street has been improved by industrial

25  buildings.  The subject properties consist of approximately 176,628 net rentable square feet.  The

26  unimproved portions of the properties are currently being held as parking lots.  As of September

27  30, 2009, the improvements at 815 East Temple Street were partly leased to a food processing

28  tenant occupying approximately 14% of the total rentable area.

                                                     -27-

1    815 East Temple is an example of the Company's (a) significant expertise and presence and

2  (b) focus on providing tailored solutions for a variety of space needs of the many small businesses

3  in the food and produce distribution industry in downtown Los Angeles. 729 East Temple is

4  intended to be a home to a large assortment of small business owners prevalent in downtown Los

5  Angeles whereby the Company looks to support and incubate their businesses.

6         **27.    833 Wall Street (Wall Street Market), Los Angeles**

7         The subject property is owned by Meruelo Wall Street, LLC ("Meruelo Wall Street") and is

8  encumbered by a lien in favor of East West as successor to UCB.  The property is located at the

9  intersection of East 9th Street and Wall Street in the Garment District of downtown Los Angeles.

10  It is comprised of one property totaling approximately 2.1 acres which has been improved with a

11  multi-tenant building consisting of approximately 98,245 net rentable square feet and rooftop

12  parking.  As of September 30, 2009, the improvements were leased to forty-two tenants occupying

13  approximately 90.2% of the total rentable area.  The property is currently being utilized as a

14  garment wholesale and retail and office space facility.

15        This property is an example of how MMPI services the multitude of business owners and

16  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

17  sectors of the garment industry in downtown Los Angeles.

18        **28.    1875 West Mission Boulevard, Pomona**

19        The subject property is owned by Merco Group – 2001 – 2021 West Mission Boulevard,

20  LLC ("MG 2001 – 2021 West Mission Boulevard") a part of which is encumbered by a lien in

21  favor of PNL Pomona.  The property is located at 1875 West Mission Boulevard in Pomona, CA.

22  It is comprised of two properties totaling approximately 27.7 acres on which is presently located an

23  industrial building consisting of approximately 424,309 net rentable square feet.  As of September

24  30, 2009, the improvements were not leased.

25        This property represents a large scale redevelopment site that could be redeveloped in a

26  variety of ways to satisfy the developing needs of Pomona space users.

27

28

-28-

347973.01 [XP]     25195