1  RICHARD K. DIAMOND (State Bar No. 070634)
   *RDiamond@DGDK.com*
2  JOHN J. BINGHAM, JR. (State Bar No. 075842)
   *JBingham@DGDK.com*
3  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
6  Facsimile:  (310) 277-5735

7  Attorneys for Meruelo Maddux Properties, Inc., and
   affiliated Debtors and Debtors-in-Possession

8
                    **UNITED STATES BANKRUPTCY COURT**
9
                    **CENTRAL DISTRICT OF CALIFORNIA**
10
                    **SAN FERNANDO VALLEY DIVISION**
11
   In re                                    ) Case No. 1:09-bk-13356-KT
12                                          )
   MERUELO MADDUX PROPERTIES, INC., et      ) Chapter 11 (Jointly Administered)
13 al.[1]                                   )
                                            ) **NOTICE OF MOTION AND DEBTORS'**
14         Debtors and Debtors-in-Possession. ) **MOTION FOR ORDER EXTENDING**
                                            ) **AUTHORITY FOR THE USE OF CASH**
15                                          ) **COLLATERAL AND TO MAINTAIN**
                                            ) **CASH MANAGEMENT SYSTEM**
16 ─────────────────────────────           ) **THROUGH JUNE 30, 2010; AND**
                                            ) **MEMORANDUM OF POINTS AND**
17 ☑  Affects all Debtors                   ) **AUTHORITIES, DECLARATION OF**
                                            ) **FRED SKAGGS, AND REQUEST FOR**
18 ☐  Affects the following Debtor(s):      ) **JUDICIAL NOTICE IN SUPPORT**
                                            ) **THEREOF**
19                                          )
                                            ) Date:    March 29, 2010
20                                          ) Time:    9:30 a.m.
                                            ) Place:   Courtroom 301
21                                          )          21041 Burbank Blvd.
                                            )          Woodland Hills, California
22 ─────────────────────────────

23

24 ─────────────────────────────
      [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
25 entities.  The affiliated case numbers are as follows:  1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-
   KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-
26 bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-
   KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-
27 bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-
   KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-
28 bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-
   KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-
   bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

                                            1

1    **PLEASE TAKE NOTICE** that on March 29, 2010, at 9:30 a.m., or as soon thereafter as

2    the matter may be heard, in Courtroom 301 of the United States Bankruptcy Court located at 21041

3    Burbank Boulevard, Woodland Hills, California, the above-captioned debtors and debtors-in-

4    possession (collectively the "Debtors"), will and do hereby move for an order extending authority

5    for the Debtors' use of cash collateral through June 30, 2010, on the same terms and conditions as

6    the Court authorized such use through March 31, 2010 and authorizing the Debtors' continued use

7    of its integrated cash management system.  In the event that the Court does not grant such relief on

8    a final basis prior to March 31, 2010, the Debtors request that the Court authorize such use on such

9    terms on an interim basis pending a final hearing on this motion.

10    This motion is made on the following grounds:  On March 26 and 27, 2009 (the "Petition

11    Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United

12    States Code (the "Code").  On January 13, 2010, after numerous evidentiary hearings concerning

13    the values of certain of the Debtors' real properties, the Court entered its *Order Authorizing the*

14    *Debtors' Use of Cash Collateral on a Final Basis and Approving the Debtors' Use of Its Cash*

15    *Management System* (the "January Cash Collateral Order") (*docket entry no. 1016*).  Pursuant to

16    the January Cash Collateral Order, each "Cash Collateral Creditor" was afforded a base level of

17    adequate protection consisting of (1) a replacement lien in its postpetition cash collateral, (2) the

18    maintenance and preservation of its real property collateral, and (3) the payment of real property

19    taxes against its real property collateral due and payable on and after November 1, 2009.  Further,

20    as to certain Cash Collateral Creditors, the Court determined that additional adequate protection

21    would be afforded in the form of a lien against one or more of the real properties referred to in this

22    case as "Unencumbered Properties;" the designation of the resulting "Replacement Lien Property

23    Pool" is pending.  As to another Cash Collateral Creditor, the Court determined that additional

24    adequate protection would be afforded in the form of a junior lien against properties in which that

25    Cash Collateral Creditor had an interest.  As to all other Cash Collateral Creditors addressed in the

26    January Cash Collateral Order, the Court determined that the base level of adequate protection was

27    sufficient.  The January Cash Collateral Order also authorized the Debtors to continue to use their

28    cash management system concurrent with the use of cash collateral.

350356.02 [XP]    25195

1      On February 27, 2010, the Debtors filed their first amended plan and first amended

2  disclosure statement (*docket entry nos. 1133 and 1134*).  A hearing on approval of the disclosure

3  statement is set for March 19, 2010.  The Debtors do not believe that the effective date of the plan

4  will occur any earlier than June 30, 2010.  Accordingly, the Debtors are hereby requesting that the

5  Court extend the authority to use cash collateral through June 30, 2010.

6      With respect to all Cash Collateral Creditors, the Debtors continue to propose the following

7  forms of adequate protection:  (1) each Cash Collateral Creditor will be granted a replacement lien

8  in its respective postpetition cash collateral, with the same force, effect, validity and priority of the

9  liens held by the Cash Collateral Creditors in or against their respective prepetition real property

10  collateral; (2) the Debtors will maintain and preserve the Cash Collateral Properties by payment of

11  the ordinary expenses for maintaining and preserving the real property collateral; and (3) the

12  Debtors will pay real property taxes due and payable on and after November 1, 2009, owing to the

13  County of Los Angeles assessed against the Cash Collateral Properties on or before the date on

14  which such taxes are payable without penalty (collectively the "Base Adequate Protection").  In

15  addition, where the Court previously authorized the use of cash collateral through March 31, 2010,

16  with additional adequate protection afforded to a Cash Collateral Creditor, the Debtors propose the

17  adequate protection for the use of cash collateral through June 30, 2010, in the same form as

18  previously ordered by the Court.  The Cash Collateral Creditors, the Cash Collateral Properties, and

19  the proposed forms of adequate protection are as follows:[2]

---

24     [2] As before, the phrase "actual amount of cash collateral used" means the total amount of

25  cash collateral generated by the Cash Collateral Property, less the direct expenses of maintenance, operation and preservation of the real property collateral, and less any real property taxes paid.  The

26  "Direct Corporate Property Management" fee is included in the amount to be protected rather than treated as a direct expense.

350356.02 [XP]    25195

| Cash Collateral Creditors | Cash Collateral Properties[3] | Proposed Adequate Protection |
|---|---|---|
| 1248 Figueroa Street, LLC (successor in interest to East West Bank) | 2529 S. Santa Fe Avenue, Los Angeles, California, APN 6302-008-010, owned by Merco Group – 2529 Santa Fe Avenue, LLC ("Santa Fe Plaza") | Base Adequate Protection |
| Bank of America | numerous street addresses, including 1150 S. Grand Avenue, Los Angeles, California, APNs 5139-019-040, 5139-020-016, 5139-020-022, 5139-020-024, 5139-024-003, 5139-024-014, 5139-024-015, and 5139-024-016, owned by Merco Group – Southpark, LLC | Base Adequate Protection |
| Bank of America | 760 S. Hill Street and 325 W. 8th Street, Los Angeles, California, APNs 5144-014-046 through 5144-014-139, owned by Meruelo Maddux Properties – 760 S. Hill Street, LLC (aka "Union Lofts") | (1) Base Adequate Protection and (2) a junior replacement line against the Southpark Property in an amount equal to the interest that has and will accrue at the default rate from August 1, 2009, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Berkadia Commercial Mortgage, Inc. (as successor to Capmark Finance, Inc.) | 2445, 2460 and 2535 E. 12th Street, Los Angeles, California, APNs 5168-003-013, 5168-005-021 and 5168-004-001, owned by Santa Fe Commerce Center, Inc. | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of (a) the actual amount of cash collateral used from November 1, 2010, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires, or (b) accrued interest at the default rate beginning on November 1, 2010, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |

[3] Property descriptions have been drawn from the Debtors' proposed Chapter 11 plan.

-4-

| Cash Collateral Creditors | Cash Collateral Properties[3] | Proposed Adequate Protection |
|---|---|---|
| California Bank & Trust | 788 South Alameda Street, Los Angeles, California, APN 5166-031-014, owned by 788 South Alameda, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the amount of cash collateral actually used from March 27, 2009, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Cathay Bank (two loans secured by the same real property). | 1312 E. 7th Street, Los Angeles, California, APN 5146-009-003 (the "7th Street Produce Market"), and 761 Terminal Street, Los Angeles, California, APNs 5146-009-004 and 5146-009-005 ("Alameda Square"), owned by Alameda Produce Market, LLC | Base Adequate Protection |
| Vahan and Anoush Chamlian | 2131 Humboldt Street, Los Angeles, California, APNs 5447-009-018 and 5447-009-019, owned by Meruelo Maddux Properties – 2131 Humboldt Street, LLC | Base Adequate Protection |
| Chinatrust Bank, USA | 3185 E. Washington Boulevard, Los Angeles, California, APN 5169-020-003, owned by Merco Group – 3185 E. Washington Boulevard, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of (a) the cash collateral actually used from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires, or (b) interest that has and will accrue at the default rate from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| City National Bank, as successor to certain assets formerly owned by Imperial Capital Bank | 815 E. Temple Street, 210 & 234 Center Street, and 740 Jackson Street, Los Angeles, California, APNs 5173-022-001, 5173-022-002, 5173-022-004, 5173-022-005 and 5173-015-003, owned by Meruelo Farms, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |

-5-

350356.02 [XP]    25195

| Cash Collateral Creditors | Cash Collateral Properties[3] | Proposed Adequate Protection |
|---|---|---|
| City National Bank, as successor to certain assets formerly owned by Imperial Capital Bank | 915-949 S. Hill Street, Los Angeles, California, APNs 5139-004-004, 5139-004-005, 5139-004-006, 5139-004-007, 5139-004-008, 5139-004-009, 5139-004-020 and 5139-004-024, owned by 915-949 S. Hill Street, LLC (aka "Ullman Tower One") | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank, as successor to certain assets formerly owned by Imperial Capital Bank | 1919 Vineburn, Los Angeles, California, APNs 5215-014-005 and 5215-014-006, Meruelo Maddux Properties – 1919 Vineburn Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| East West Bank (as successor to United Commercial Bank) | 419 E. 9th Street, Los Angeles, California, APN 5145-011-015, owned by Meruelo Wall Street, LLC | Base Adequate Protection |
| East West Bank (successor in interest to United Commercial Bank) | 2640 E. Washington Boulevard, Los Angeles, California, APN 5168-017-012, owned by 2640 Washington Boulevard, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the cash collateral actually used from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 960 E. 3rd Street, Los Angeles, California, APN 5163-016-011, owned by Merco Group, LLC (aka the "SCI-Arc Property") | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 950 E. 3rd Street, Los Angeles, California, APNs 5163-016-012, 5163-016-013, 5163-016-014, owned by Merco Group, LLC (aka the "Sky-Arc Property") | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 1117-1119 S. Olive Street, Los Angeles, California, APNs 5139-020-006 and 5139-020-007, owned by Merco Group – Little J, LLC | Base Adequate Protection |

350356.02 [XP]    25195

| Cash Collateral Creditors | Cash Collateral Properties[3] | Proposed Adequate Protection |
|---|---|---|
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 1467 and 1500 Griffith Avenue and 833 E. 15th Street, Los Angeles, California, APNs 5132-025-018, 5132-026-028 and 5132-026-030, owned by Merco Group – 1500 Griffith Avenue, LLC | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 900, 910 and 926 E. 4th Street and 405-411 S. Hewitt Street, Los Angeles, California, APNs 5163-022-002, 5163-022-003, 5163-022-001, 5163-022-005, 5163-022-022 and 5163-022-023, owned by Merco Group – 4th Street Center, LLC | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | Real property located at 620 S. Gladys Avenue, 830-838 6th Street, and 647-649 Ceres Avenue, Los Angeles, California, APNs 5147-030-005, 5147-030-006, 5147-030-007, 5147-030-008, 5147-030-009, 5147-030-037, 5147-030-050, 5147-030-053, 5147-030-054, 5147-030-055, 5147-030-061 and 5147-030-062, owned by Merco Group – 620 Gladys Avenue, LLC | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 425 W. 11th Street, Los Angeles, California, APNs 5139-008-010 and 5139-008-001, owned by Merco Group – 425 West 11th Street, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of (a) the cash collateral actually used from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires, or (b) interest that has and will accrue at the default rate from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |

-7-

| Cash Collateral Creditors | Cash Collateral Properties[3] | Proposed Adequate Protection |
|---|---|---|
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 470 3rd Street, Los Angeles, California, APNs 5147-004-013, 5147-004-016, 5147-004-017 and 5147-004-019, owned by Meruelo Maddux – 3rd & Omar Street, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to interest that has and will accrue at the default rate from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 420 Boyd Street, Los Angeles, California, APNs 5147-006-001, 5147-006-002, 5147-006-003, and 5147-006-008, owned by Meruelo Maddux – 420 Boyd Street, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the cash collateral actually used from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Yoshiaki Murakami and Fumiko Murakami, as Co-Trustees of the Revocable Trust of Yoshiaki Murakami and Fumiko Murakami U/T/A Dated June 16, 1988, and Yoshiaki Murakami, an individual | 1510 Griffith Avenue, Los Angeles, California, APNs 5132-025-004, 5132-025-006 and 5132-025-017, owned by Merco Group – 1500 Griffith Avenue, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| Pacific Commerce Bank | 729 E. Temple Street, 718-736 Jackson Street, and 223 Center Street, Los Angeles, California, APNs 5173-015-006, 5173-014-001 and 5173-014-002, owned by Meruelo Farms, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| The Stanford Group, L.P. | 905 E. 8th Street, Los Angeles, California, APN 5146-029-039, owned by 905 8th Street, LLC | Base Adequate Protection |

This Motion is based upon this Notice and Motion, the Memorandum of Points and Authorities, the Declaration of Fred Skaggs, the Request for Judicial Notice, the papers and pleadings filed by the Debtors in connection with and relating to the Debtors' cash collateral

1  motion filed on March 27, 2009, the testimony given and evidence admitted at the hearings

2  thereon, and such other evidence as may be presented to the Court.

3      **PLEASE TAKE NOTICE** that pursuant to Local Bankruptcy Rule 4001-2(b), the Debtors

4  state as follows with regard to whether their proposed order contains any provision that:

| Provision | Present? |
|---|---|
| (1) Grants cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (*i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue or its prepetition security agreement or applicable law). | No |
| (2) Binds the estate or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor. | No |
| (3) Waives or limits the estate's rights under 11 U.S.C. § 506(c). | No |
| (4) Grants to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549. | No |
| (5) Deems prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b). | No |
| (6) Provides disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out. | No |
| (7) Primes any secured lien. | No |

20      **PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f),

21  any party opposing the relief sought by the Motion must file a response in writing with the Clerk of

22  the Court and such response must be served upon the following not less than 14 days prior to the

23  hearing on the motion: (1) the Office of the United States Trustee, ATTN: Jennifer L. Braun, Esq.,

24  21051 Warner Center Lane, Suite 115, Woodland Hills, CA 91367; (2) counsel for the Debtors,

25  John N. Tedford, IV, Esq., Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third

26  Floor, Los Angeles, CA 90067; and (3) counsel for the Official Committee of Unsecured

27  Creditors, Dean G. Rallis Jr., Esq., SulmeyerKupetz, 333 S. Hope St., 35th Floor, Los Angeles, CA

28  90071. Any response not timely filed and served may be deemed by the Court to be consent to the

350356.02 [XP]      25195

1   granting of the motion.  If you do not have any objection to the motion, you do not need to take any

2   further action.

3

4   Dated: March 8, 2010            DANNING, GILL, DIAMOND & KOLLITZ, LLP

5

6                         By: _____

7                             John N. Tedford, IV

8                             Attorneys for Meruelo Maddux Properties,
                            Inc., and affiliated Debtors and Debtors-in-

9                             Possession

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

350356.02 [XP]      25195

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

I.

3

## INTRODUCTION

4       On March 26 and 27, 2009,[4] Meruelo Maddux Properties, Inc. ("MMPI"), and 53 of its

5   direct and indirect subsidiaries (collectively the "Debtors") filed voluntary petitions for relief under

6   Chapter 11 of Title 11 of the United States Code (the "Code"). Pursuant to the Court's ruling on

7   March 30, 2009, the Debtors' bankruptcy cases are being jointly administered under case no. 1:09-

8   bk-13356-KT. The Debtors continue to operate their business affairs as debtors-in-possession

9   pursuant to the authority granted under §§ 1107 and 1108 of the Code.

10       On the Petition Date, numerous Debtors owned real property subject to consensual liens in

11   favor of lenders. Most of those properties generated rents and other income. On March 27, 2009,

12   the Debtors filed a motion for authority to use such cash collateral through December 31, 2009. On

13   or about October 6, 2009, the Debtors moved to modify the request to, among other things, request

14   that the use of cash collateral be authorized through March 31, 2010. On January 13, 2010, the

15   Court entered its order authorizing the Debtors' use of cash collateral through March 31, 2010 (the

16   "January Cash Collateral Order").

17       The Debtors do not anticipate that the effective date of their Chapter 11 plan will occur any

18   earlier than June 30, 2010, and may be later depending on the outcome of the hearing on the

19   Debtors' disclosure statement on March 19, 2010. Therefore, the Debtors are requesting that the

20   Court extend the authority to use cash collateral and continue using the cash management system

21   beyond March 31, 2010. Cognizant of the procedural status of this case and the fact that extensive

22   litigation over the use of cash collateral previously took place, and recognizing that the January

23   Cash Collateral Order was the result of extensive review and consideration by the Court, at this

24   time the Debtors are requesting that their authority to use cash collateral be extended only to June

25

26

-------------------

27       [4] For purposes of this motion, March 27, 2009, is referred to as the "Petition Date."

28

-11-

1  30, 2010, and on the same terms and conditions as the authority granted through March 31, 2010,

2  and further requesting authority to continue to use the Debtors' cash management system.[5]

3

4                                              II.

5                              STATEMENT OF FACTS

6  A.    THE DEBTORS' OVERALL BUSINESS MODEL AND APPROACH[6]

7        MMPI, together with Meruelo Maddux Properties, LP ("MMPLP") and its affiliates and

8  related entities (sometimes collectively referred to herein as the "Company") develops, redevelops

9  and owns industrial, commercial and multi-unit residential properties in downtown Los Angeles

10  and other urban markets in southern California.  MMPI was formed in 2006, and one of the reasons

11  for forming MMPI was to hold an initial public offering of stock in order to generate cash to pay

12  off the then-existing debt to the California Public Employees' Retirement System (aka "CalPERS")

13  and raise funds the Company could use to continue growing through the development of real

14  properties.  When MMPI was formed, the Company owned, leased with rights to purchase, and had

15  rights to buy approximately 52 development, redevelopment and stabilized projects.

16        MMPI's focus is on non-stabilized properties and commercial and industrial land which

17  have alternate, more profitable uses that are achievable through redevelopment or major renovation

18  and ground-up development.  The Company's properties are used for diverse purposes, and include

19  food industry, wholesale markets, small tenant industrial, residential high rise and mixed-use

20  _____

21        [5] The Debtors reserve the right to request a further extension of the authority to use cash
     collateral beyond June 30, 2010.

22        [6] In addition to the declaration appended hereto, this motion is supported by, among other
     things, the Declaration of Richard Meruelo filed with the Court on March 27, 2009 (*docket entry
23  no. 10*), and the Supplemental Declaration of Richard Meruelo and the Declaration of Fred Skaggs
     filed with the Court on April 21, 2009 (*docket entry no. 95*).  The declarations were sizeable,
24  particularly with the exhibits.  In connection with a prior matter before the Court, it was suggested
     by a non-Debtor party that, to conserve the environment, the Debtors should not be required to re-
25  file and serve the declarations in connection with each matter where the Debtors rely upon the
     declarations in support of their description of the Debtors' background and operations.  The
26  Debtors therefore request that the Court take judicial notice of the filing of those declarations and
     treat the declarations as if they were filed anew in support of this motion.  The Debtors will make
27  copies of the declarations available on request by electronic mail or regular mail, as appropriate.

28

350356.02 [XP]      25195

1  "urban village" properties.  The vast majority of the properties are situated in downtown Los

2  Angeles.  The Company is believed to be the largest non-governmental land owner in downtown

3  Los Angeles, owning or controlling approximately 80 acres of land in downtown Los Angeles at

4  the time that MMPI was formed.

5       The Company focuses on urban in-fill development and on finding different, more

6  profitable uses for existing urban properties.  The Company looks for properties that have value

7  intrinsic to the property itself, such as the property's location, whether there is an end user of the

8  property on the horizon who might want to purchase the property, how well the property will fit in

9  with the growth patterns of the area and community in which it is situated, and other factors.

10      The Company's business model anticipates the need for time to develop properties and

11  requires the infusion of funds to pay the costs of such development, including the carrying costs.

12  To help defray costs during development, properties may be utilized as parking lots or other uses,

13  not because such use generates substantial income but because the land itself is extremely valuable

14  since it can be developed at an appropriate time in the future, and the parking lot revenue provides

15  some interim revenue.  Many of the Company's properties have been developed to the point where

16  entitlements have been obtained thus increasing the value substantially, but development has been

17  deferred pending an improvement in the credit markets.  In summary, the Company's business

18  model contemplates and is based upon the purchase, development and resale of properties, pursuant

19  to which, the Company turns over such properties in a relatively short period of time, such as a few

20  years instead of decades, and uses the profit from such properties to fund operations of MMPI and

21  all of its other affiliates and the purchase and development of other properties.

22

23  B.     THE DEBTORS' COLLECTIVE ORGANIZATION AND OPERATIONS

24      Although the Debtors and their non-Debtor affiliates consist of a parent company and

25  various levels of subsidiaries, including limited liability companies and other entities which hold

26  title to properties, the Company has been, before and after its formation as a public company, and

27  presently continues to be, effectively operated as a single enterprise.  With limited exceptions,

28  revenues for each of the entities are commingled, and the funds are used to pay the expenses of

1  MMPI and the subsidiaries. Some entities generate revenues in excess of operational expenses and

2  debt service, but some do not. The reason that the Company purchases, and then keeps, properties

3  that are cash flow negative is because the Company believes that those properties will, in time,

4  generate a positive return and the enterprise will be significantly more valuable as a result.

5          Before and after the IPO, the Debtors commingled funds. The cash management system

6  implemented before the IPO provides for funds to flow to and from a cash concentration account

7  ("Concentration Account") maintained by MMPLP. The Concentration Account is linked to the

8  operating bank accounts of each of the Debtors and non-Debtor affiliates, which bank accounts are

9  maintained as zero balance accounts.[7] When needed to fund payment on checks issued by a

10  particular affiliate, funds are transferred from the Concentration Account to the operating account

11  of that affiliate. Excess funds, if any, are invested in interest bearing accounts. By order entered

12  on or about January 13, 2010, the Court authorized the Debtors' continued use of their cash

13  management system.

14          MMPI has been required to file various reports with the Securities and Exchange

15  Commission ("SEC"), including among others, quarterly reports as well as an annual audited

16  report. These reports have been prepared on a consolidated basis. Although the Debtors' SEC

17  filings do provide information relating to individual subsidiaries, the filings generally discuss the

18  business as a consolidated enterprise.

19

20  C.      THE DEBTORS' PRIOR REQUEST FOR AUTHORITY TO USE CASH COLLATERAL

21          On the Petition Date, the Debtors filed, among other things, a motion for authority to use

22  cash collateral through December 31, 2009 (the "First Cash Collateral Motion") (*docket entry no.*

23  *11*), a motion for authority to maintain their cash management system (the "Cash Management

24  Motion") (*docket entry no. 4*), and a declaration of Richard Meruelo in support of the Debtors'

25  first-day motions (*docket entry no. 10*). A hearing on the First Cash Collateral Motion and the

26  _____

27          [7] Since the filing of Debtors' Chapter 11 petitions, the Concentration Account has been un-linked from the accounts of non-Debtor entities.

28

-14-

350356.02 [XP]    25195

1 Cash Management Motion took place on March 30, 2009. Pursuant to its rulings at the hearing on

2 March 30, 2009, the Court entered its first orders authorizing the Debtors' use of cash collateral

3 and the cash management system on an interim basis on or about April 7, 2009. Pursuant to its

4 ruling at a status conference held on April 6, 2009, the Court entered its second orders authorizing

5 the Debtors' use of cash collateral and the cash management system on an interim basis on or about

6 April 24, 2009 (*docket entry nos. 105 and 106*).

7 　　In connection with the Debtors' cash collateral and cash management motions, Richard

8 Meruelo testified at a deposition on or about April 16, 2009. The Debtors' Chief Accounting

9 Officer, Fred Skaggs, testified at a deposition on or about April 17, 2009.

10 　　Numerous secured creditors filed oppositions to the First Cash Collateral Motion and the

11 Cash Management Motion. On April 21, 2009, the Debtors filed a supplemental declaration of

12 Richard Meruelo and a declaration of Fred Skaggs in support of the motions (the "Supplemental

13 Declaration") (*docket entry no. 95*). Among the exhibits to Mr. Skaggs' declaration were financial

14 projections for each Debtor which included, among other things, a line item for "Direct Corporate

15 Property Management," reflecting an allocation of overhead expenses incurred by MMPI, MMPLP

16 and other service-level Debtors.

17 　　Hearings on the First Cash Collateral Motion and the Cash Management Motion were held

18 on May 1, May 4, May 6, and May 8, 2009. On May 12, 2009, the Court entered its third orders

19 authorizing the Debtors' use of cash collateral and the cash management system on an interim basis

20 (*docket entry nos. 223 and 224*). Thereafter, numerous hearings and evidentiary hearings were held

21 on the two motions. Hearings were also held on certain motions for relief from the automatic stay

22 where the parties agreed that argument and evidence presented to the Court in connection with the

23 relief from stay motions could be considered by the Court with regard to the First Cash Collateral

24 Motion as well. With certain exceptions, final argument regarding the First Cash Collateral Motion

25 and the Cash Management Motion was presented to the Court on October 19 and 26, 2009.

26 　　As noted above, the First Cash Collateral Motion requested authority to use cash collateral

27 through December 31, 2009. On October 6, 2009, the Debtors filed a notice of modification to the

28 First Cash Collateral Motion whereby the Debtors modified the First Cash Collateral Motion so as

-15-

1 to, among other things, request authority to use cash collateral through March 31, 2010. That issue

2 was heard by the Court on October 28, 2009.

3      On January 13, 2010, the Court entered its Order Authorizing the Debtors' Use of Cash

4 Collateral on a Final Basis and Approving the Debtors' Use of Its Cash Management System (the

5 "January Cash Collateral Order"). The Court granted the Debtors' request for authority to use cash

6 collateral through March 31, 2010, and identified adequate protection to be afforded to each of the

7 Cash Collateral Creditors identified therein.[8] Each Cash Collateral Creditor was afforded a base

8 level of adequate protection consisting of (1) a replacement lien in its postpetition cash collateral,

9 (2) the maintenance and preservation of its real property collateral, and (3) the payment of real

10 property taxes against its real property collateral due and payable on and after November 1, 2009.

11 As to certain Cash Collateral Creditors, the Court determined that additional adequate protection

12 would be afforded in the form of a lien against one or more of the real properties referred to in this

13 case as "Unencumbered Properties," referred to as the "Replacement Lien Property Pool." As to

14 one Cash Collateral Creditor, the Court determined that additional adequate protection would be

15 afforded in the form of a junior lien against properties in which that Cash Collateral Creditor had

16 an interest. As to all other Cash Collateral Creditors, the Court determined that the base level of

17 adequate protection was sufficient. The Court also granted the Cash Management Motion and

18 authorized the Debtors to continue to use their integrated cash management system concurrent with

19 the use of cash collateral.

20      On December 22, 2009, the Debtors filed a motion requesting that the Court designate

21 certain real properties as the Replacement Lien Property Pool, and related relief. With respect to

22 the Debtor's request for designation of the real properties, that motion is pending. That matter is

23 set to be heard next on March 15, 2010.

24

25

---

26     [8] As set forth in the January Cash Collateral Order, the order did not address the Debtors'
request for authority to use cash collateral generated by real properties on which Imperial Capital
27 Bank had a lien.

28

1  D.    THE DEBTORS' CHAPTER 11 PLAN

2          On November 30, 2009, the Debtors filed a joint Chapter 11 plan of reorganization.  On

3  December 4, 2009, the Debtors filed their disclosure statement describing the plan.  A hearing on

4  the disclosure statement was held on January 20, 2010.  Based on comments from the Court and

5  objecting parties, on February 27, 2010, the Debtors filed their first amended plan and their first

6  amended disclosure statement.  A hearing on the first amended disclosure statement is scheduled

7  for March 19, 2010.

8          Both the original and first amended plan identified June 30, 2010, as the effective date of

9  the plan.  Whether that ultimately is the effective date will depend on a number of things, including

10  whether the Court approves the Debtors' first amended disclosure statement on March 19, 2010.  In

11  any event, the Debtors do not believe that the effective date will be any earlier than June 30, 2010.

12

13                                     III.

14  THE DEBTORS' REQUEST FOR AUTHORITY TO USE CASH COLLATERAL

15            AND CONTINUE USING THE CASH MANAGEMENT SYSTEM

16          The Debtors require the use of cash collateral in order to maintain their real properties and

17  continue operations and further require authority to continue to use the integrated cash management

18  system.  Since the previously granted authority to use cash collateral expires on March 31, 2010,

19  the Debtors are requesting a modest extension of such authority, through June 30, 2010, for the

20  purpose of (a) paying the Cash Collateral Debtors' expenses of preserving, maintaining and

21  operating their properties, as set forth in the monthly budget summaries attached to Mr. Skaggs'

22  declaration, subject to a variance of up to 20% in the aggregate of all line item expenses projected

23  for each Cash Collateral Debtor, except that Direct Corporate Property Management expenses will

24  be limited to the amount set forth in the projections for each Cash Collateral Debtor, and (b) after

25  the payment of the foregoing, paying all other expenses incurred by the Debtors, including those of

26  Debtors that do not generate revenue or sufficient income to pay for their costs of operation in full,

27  including Court-awarded fees and expenses of professionals.  The direct operating expenses to be

28  paid as part of category (a) include property management fees, if any, incurred by a Debtor with

1   regard to its specific real property, utilities, insurance, repairs and maintenance, reimbursement of

2   the direct and indirect costs provided by other Debtors, and similar charges and expenses.  The

3   Debtors' budget summaries *do* include real property taxes, including taxes owed against non-Cash

4   Collateral Properties.[9]  The Debtors' budget summaries also include monthly payments owed to

5   those lenders who have settled with the Debtor, with respect to which payments the Court

6   previously authorized the use of cash collateral.[10]

7          With respect to all Cash Collateral Creditors, the Debtors continue to propose the following

8   forms of adequate protection:  (1) each Cash Collateral Creditor will be granted a replacement lien

9   in its respective postpetition cash collateral, with the same force, effect, validity and priority of the

10  liens held by the Cash Collateral Creditors in or against their respective prepetition real property

11  collateral; (2) the Debtors will maintain and preserve the Cash Collateral Properties by payment of

12  the ordinary expenses for maintaining and preserving the real property collateral; and (3) the

13  Debtors will pay real property taxes due and payable on and after November 1, 2009, owing to the

14  County of Los Angeles assessed against the Cash Collateral Properties on or before the date on

15  which such taxes are payable without penalty (collectively the "Base Adequate Protection").  In

16  addition, where the Court previously authorized the use of cash collateral through March 31, 2010,

17  with additional adequate protection afforded to a Cash Collateral Creditor, the Debtors propose the

18  adequate protection for the use of cash collateral through June 30, 2010, in the same form as

---

[9] Currently pending before the Court is a motion in which the Debtors request that the Court find that the second installment of real property taxes for the County of Los Angeles' 2009-2010 fiscal year constitute a part of the County's prepetition claim.  Regardless of the Court's ruling, the Debtors intend to pay that installment with regard to the Cash Collateral Properties.  The taxes are included in the rest of the budgets out of an abundance of caution, in order that cash collateral may be available to pay all of the real property taxes in the event that the Court's ruling is contrary to the Debtors' requested relief.

[10] Similarly, with respect to future settlements, the Debtors expect to request authority to use cash collateral to pay monthly payments called for under the revised loan agreements.

350356.02 [XP]     25195

1  previously ordered by the Court. The Cash Collateral Creditors, the Cash Collateral Properties, and

2  the proposed forms of adequate protection are as follows:[11]

| Cash Collateral Creditors | Cash Collateral Properties[12] | Proposed Adequate Protection |
|---|---|---|
| 1248 Figueroa Street, LLC (successor in interest to East West Bank) | 2529 S. Santa Fe Avenue, Los Angeles, California, APN 6302-008-010, owned by Merco Group – 2529 Santa Fe Avenue, LLC ("Santa Fe Plaza") | Base Adequate Protection |
| Bank of America | numerous street addresses, including 1150 S. Grand Avenue, Los Angeles, California, APNs 5139-019-040, 5139-020-016, 5139-020-022, 5139-020-024, 5139-024-003, 5139-024-014, 5139-024-015, and 5139-024-016, owned by Merco Group – Southpark, LLC | Base Adequate Protection |
| Bank of America | 760 S. Hill Street and 325 W. 8th Street, Los Angeles, California, APNs 5144-014-046 through 5144-014-139, owned by Meruelo Maddux Properties – 760 S. Hill Street, LLC (aka "Union Lofts") | (1) Base Adequate Protection and (2) a junior replacement line against the Southpark Property in an amount equal to the interest that has and will accrue at the default rate from August 1, 2009, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |

---

[11] As before, the phrase "actual amount of cash collateral used" means the total amount of cash collateral generated by the Cash Collateral Property, less the direct expenses of maintenance, operation and preservation of the real property collateral, and less any real property taxes paid. The "Direct Corporate Property Management" fee is included in the amount to be protected rather than treated as a direct expense.

[12] Property descriptions have been drawn from the Debtors' proposed Chapter 11 plan.

| Cash Collateral Creditors | Cash Collateral Properties[12] | Proposed Adequate Protection |
|---|---|---|
| Berkadia Commercial Mortgage, Inc. (as successor to Capmark Finance, Inc.) | 2445, 2460 and 2535 E. 12th Street, Los Angeles, California, APNs 5168-003-013, 5168-005-021 and 5168-004-001, owned by Santa Fe Commerce Center, Inc. | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of (a) the actual amount of cash collateral used from November 1, 2010, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires, or (b) accrued interest at the default rate beginning on November 1, 2010, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| California Bank & Trust | 788 South Alameda Street, Los Angeles, California, APN 5166-031-014, owned by 788 South Alameda, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the amount of cash collateral actually used from March 27, 2009, through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Cathay Bank (two loans secured by the same real property). | 1312 E. 7th Street, Los Angeles, California, APN 5146-009-003 (the "7th Street Produce Market"), and 761 Terminal Street, Los Angeles, California,  APNs 5146-009-004 and 5146-009-005 ("Alameda Square"), owned by Alameda Produce Market, LLC | Base Adequate Protection |
| Vahan and Anoush Chamlian | 2131 Humboldt Street, Los Angeles, California, APNs 5447-009-018 and 5447-009-019, owned by Meruelo Maddux Properties – 2131 Humboldt Street, LLC | Base Adequate Protection |

-20-

| Cash Collateral Creditors | Cash Collateral Properties[12] | Proposed Adequate Protection |
|---|---|---|
| Chinatrust Bank, USA | 3185 E. Washington Boulevard, Los Angeles, California, APN 5169-020-003, owned by Merco Group – 3185 E. Washington Boulevard, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of (a) the cash collateral actually used from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires, or (b) interest that has and will accrue at the default rate from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| City National Bank, as successor to certain assets formerly owned by Imperial Capital Bank | 815 E. Temple Street, 210 & 234 Center Street, and 740 Jackson Street, Los Angeles, California, APNs 5173-022-001, 5173-022-002, 5173-022-004, 5173-022-005 and 5173-015-003, owned by Meruelo Farms, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank, as successor to certain assets formerly owned by Imperial Capital Bank | 915-949 S. Hill Street, Los Angeles, California, APNs 5139-004-004, 5139-004-005, 5139-004-006, 5139-004-007, 5139-004-008, 5139-004-009, 5139-004-020 and 5139-004-024, owned by 915-949 S. Hill Street, LLC (aka "Ullman Tower One") | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank, as successor to certain assets formerly owned by Imperial Capital Bank | 1919 Vineburn, Los Angeles, California, APNs 5215-014-005 and 5215-014-006, Meruelo Maddux Properties – 1919 Vineburn Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| East West Bank (as successor to United Commercial Bank) | 419 E. 9th Street, Los Angeles, California, APN 5145-011-015, owned by Meruelo Wall Street, LLC | Base Adequate Protection |

350356.02 [XP]   25195

| Cash Collateral Creditors | Cash Collateral Properties[12] | Proposed Adequate Protection |
|---|---|---|
| East West Bank (successor in interest to United Commercial Bank) | 2640 E. Washington Boulevard, Los Angeles, California, APN 5168-017-012, owned by 2640 Washington Boulevard, LLC | (1) Base Adequate Protection and (2) a lien on the Replacement Lien Property Pool in an amount equal to the cash collateral actually used from March 27, 2009 through June 30, 2010, or such shorter period if the use of cash collateral is terminated before such period expires |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 960 E. 3rd Street, Los Angeles, California, APN 5163-016-011, owned by Merco Group, LLC (aka the "SCI-Arc Property") | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 950 E. 3rd Street, Los Angeles, California, APNs 5163-016-012, 5163-016-013, 5163-016-014, owned by Merco Group, LLC (aka the "Sky-Arc Property") | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 1117-1119 S. Olive Street, Los Angeles, California, APNs 5139-020-006 and 5139-020-007, owned by Merco Group – Little J, LLC | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 1467 and 1500 Griffith Avenue and 833 E. 15th Street, Los Angeles, California, APNs 5132-025-018, 5132-026-028 and 5132-026-030, owned by Merco Group – 1500 Griffith Avenue, LLC | Base Adequate Protection |
| Legendary Investors Group No. 1, L.L.C. (successor in interest to East West Bank) | 900, 910 and 926 E. 4th Street and 405-411 S. Hewitt Street, Los Angeles, California, APNs 5163-022-002, 5163-022-003, 5163-022-001, 5163-022-005, 5163-022-022 and 5163-022-023, owned by Merco Group – 4th Street Center, LLC | Base Adequate Protection |

350356.02 [XP]    25195