Victor A. Sahn (CA Bar No. 97299)
    vsahn@sulmeyerlaw.com
Dean G. Rallis Jr. (CA Bar No. 94266)
    drallis@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
    ahami@sulmeyerlaw.com
Tamar Kouyoumjian (CA Bar No. 254148)
    tkouyoumjian@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone:   213.626.2311
Facsimile:   213.629.4520

Bankruptcy Counsel for the Official
Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-13356 KT |
| MERUELO MADDUX PROPERTIES, INC., et al.,[1] | Chapter 11 |
| Debtors. | **OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT [DKT. NO. 1134]** |
| | Date:       March 19, 2010<br>Time:       9:30 a.m.<br>Place:      Courtroom 301<br>    United States Bankruptcy Court<br>    21041 Burbank Boulevard<br>    Woodland Hills, CA 91367 |

[1]    Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows:  1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359- KT; 1:09-bk-13360 -KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk- 3370-KT;  1:09- bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-1378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382- KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk- 13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09- bk-I3394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-I3400-KT; 1 :09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403 -KT. 1:09-bk-13404-KT; 1:09-bk-13405- KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................2

II. THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE
INFORMATION ...................................................................................3

    A.    General Standard ...................................................................3

    B.    The Disclosure Statement Contains No Information Regarding the
Inextricably Intertwined 845 S. Flower and Chinatown Cases.....................6

        1.    The Relationship Between the Cases.................................6

        2.    Significant Flower/Chinatown Proceedings That Must be
Disclosed .........................................................................7

            a.    The Flower Sale Program .......................................7

            b.    Canpartners' Relief From Stay Motion ..................9

            c.    The Chinatown Adversary Proceeding....................9

    C.    The Forecasts and Projections in the Disclosure Statement Are
Flawed.................................................................................10

        1.    Introduction......................................................................10

        2.    The Forecasts and Projections Must be Modified to Account
For the Varying Treatments of the County's Secured Tax
Claims...............................................................................10

    D.    The Disclosure Statement Contains Inadequate Information
Regarding the Means of Implementing the Plan and the Debtors'
Overall Ability to Make the Proposed Plan Payments ......................12

        1.    Introduction......................................................................12

        2.    The Disclosure Statement Lacks Information Regarding NOI .........13

        3.    The Disclosure Statement Lacks Information Regarding Real
Property Sales ..................................................................13

        4.    The Disclosure Statement Lacks Information Regarding the
Proposed New Equity Contribution....................................16

    E.    The Disclosure Statement Provides No Liquidation Analysis ....................17

    F.    The Disclosure Statement Contains Inadequate Information
Regarding Major Risk Factors............................................17

G.    The Disclosure Statement Contains Inadequate Information
Regarding Other Areas ............................................................. 18

1.    Disbursing Agent ............................................................ 18

2.    Insider Compensation ..................................................... 19

3.    Tax Consequences From Disposition of Real Estate ................... 19

4.    Corporate Overhead ........................................................ 19

5.    Potential Variances Between the Monthly Operating Reports
and the Disclosure Statement Projections ........................... 19

H.    Summary .............................................................................. 20

III. CONCLUSION .................................................................................. 21

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# TABLE OF AUTHORITIES

<u>Page</u>

## CASES

<u>Cardinal Congregate,</u>
   121 B.R. at 765 .................................................................................................5

<u>Duff v. United States Trustee (In re California Fidelity, Inc.),</u>
   198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ...........................................................4

<u>In re Cardinal Congregate I,</u>
   121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) ......................................................5

<u>In re County of Orange,</u>
   219 B.R. 543, 560 (Bankr. C.D. Cal. 1997) ......................................................4

<u>In re Dakota Rail, Inc.,</u>
   104 B.R. 138, 149 (Bankr. D. Minn. 1989) .......................................................10

<u>In re Diversified Investors Fund XVII,</u>
   91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) ......................................................17

<u>In re Main St. AC, Inc.,</u>
   234 B.R. 771, 774-75 (Bankr. N.D. Cal. 1999) ...............................................10

<u>In re Radco Properties, Inc.,</u>
   402 B.R. 666, 683 (Bankr. E.D.N.C. 2009) ................................................5, 15

<u>In re Scioto Valley Mortgage Co.,</u>
   88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) ..................................................5

<u>In re Sierra-Cal,</u>
   210 B.R. 168, 176-77 (Bankr. E.D. Cal. 1997) ...............................................17

<u>Official Committee of Unsecured Creditors v. Michelson,</u>
   141 B.R. 715, 718 (Bankr. E.D. Cal. 1992) ...............................................4, 15

<u>Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,</u>
   81 F.3d 355, 362 (3rd Cir. 1996) ......................................................................4

## STATUTES

11 U.S.C. § 1125(a) ...............................................................................................4

11 U.S.C. § 1125(a)(1) ...........................................................................................4

11 U.S.C. § 1125(b) ............................................................................................3, 4

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL.213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    The Official Committee of Unsecured Creditors in the above-captioned jointly-

2  administered cases (the "Committee"), hereby opposes the "First Amended Disclosure

3  Statement" (the "Disclosure Statement"), filed by Meruelo Maddux Properties, Inc., et al.,

4  (collectively, the "Debtors").

5                                          I.

6                                   **INTRODUCTION**

7        This is the Debtors' second attempt at formulating a plan and related disclosure

8  statement.  The Debtors' were required to modify the initial disclosure statement after this

9  Court found it lacking in certain respects.  The current rendition also is defective and

10  cannot be approved.

11        As a preliminary matter, the Committee notes that it is simply premature to

12  approve any disclosure statement at this time.  Although the Committee is not interested

13  in prolonging these proceedings, the fact remains that there are several significant

14  matters pending in these 54 cases and the related 845 S. Flower and Chinatown cases

15  (such as the motion to approve a proposed settlement of the County's tax claims for plan

16  purposes, which motion has yet to be filed, Canpartners' pending relief from stay motion

17  in the 845 S. Flower case, the pendency of the 845 S. Flower debtor's disclosure

18  statement and plan and the adversary proceeding in the 845 S. Flower/Chinatown cases

19  addressing Canpartners' rights and interest in the Chinatown property), the outcome of

20  which will substantially change the landscape of these many cases.[2]  As a result, the

21  Committee believes that, although the upcoming hearing on the Disclosure Statement

22  may allow for resolution of certain disclosure issues, under no circumstances could the

23  Disclosure Statement be approved at this time in light of the various outstanding

24  unresolved matters.

25        Even assuming approval of a disclosure statement need not await resolution of

26  those multiple proceedings, the current form of Disclosure Statement remains deficient in

27  _____

28  [2] The relevance of those proceedings to the disclosure statement and plan process is discussed below in the context of the Committee's discussion regarding the adequacy of the information in the Disclosure Statement.  See Sections II.B.2 and II.C.2 below.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  several respects and cannot be approved.  More specifically, among other inadequacies,

2  the Disclosure Statement:

3  • fails to provide any discussion regarding the related cases of Meruelo Maddux

4  - 845 S. Flower Street, LLC, (the "Flower Street Debtor"), and Meruelo Chinatown, LLC,

5  (the "Chinatown Debtor," and, together with Flower Street, the "Related Debtors");

6  • fails to account for and disclose the impact of the alternate outcomes of the

7  multiple pending proceedings in these and the Related Debtors' cases;

8  • fails to provide critical information or details regarding the contemplated sales

9  or refinancing of real properties (even though the Debtors are relying on such

10  transactions to fund distributions to creditors) and other factors critical to a proper

11  evaluation of the feasibility of the Debtors' First Amended Joint Chapter 11 Plan (the

12  "Plan") and the means for implementing the Plan;

13  • fails to provide any liquidation analysis or any indication of when the Debtors'

14  intend to provide such an analysis; and

15  • fails to provide any meaningful information regarding major risk factors.[3]

16  For these and other reasons discussed below, this Court should not approve the

17  Disclosure Statement.

18  II.

19  **THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION**

20  A.  **General Standard**

21  Section 1125(b) of the Bankruptcy Code provides, in part:

22      An acceptance or rejection of a plan may not be solicited . . .
        unless, at the time before such solicitation, there is
23      transmitted to such holder the plan or a summary of the plan,

---

24  [3] On March 5, 2010, subject to Court approval, the Committee retained Kibel Green Inc. as its
    financial advisor, among other things, to analyze the Disclosure Statement and Plan and the
25  financial information contained therein.  Given the relatively short period of time between its
    retention and the deadline to file the instant response, Kibel Green continues to evaluate the
26  Disclosure Statement as well as seek additional information from the Debtors and their advisors
    for a full and complete evaluation.  As a result, the instant response is based on the Committee's
27  preliminary evaluation of the Disclosure Statement and Plan, and the Committee reserves the
    right to supplement this response in any manner prior to or at the upcoming (or any continued)
28  hearing on the Disclosure Statement.

and a written disclosure statement approved . . . by the court
as containing adequate information.

11 U.S.C. § 1125(b). Section 1125(a) defines "adequate information" as follows:

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,
> including a discussion of the potential material Federal tax
> consequences of the plan to the debtor, any successor to the
> debtor, and a hypothetical investor typical of the holders of
> claims or interests in the case, that would enable such a
> hypothetical investor of the relevant class to make an
> informed judgment about the plan . . . and in determining
> whether a disclosure statement provides adequate
> information, the court shall consider the complexity of the
> case, the benefit of additional information to creditors and
> other parties in interest, and the cost of providing additional
> information[.]

11 U.S.C. § 1125(a)(1). Compliance with the disclosure requirements is "crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3rd Cir. 1996) (citation omitted).

"[T]he purpose of the disclosure statement is 'to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan.'" In re County of Orange, 219 B.R. 543, 560 (Bankr. C.D. Cal. 1997) (quoting Duff v. United States Trustee (In re California Fidelity, Inc.), 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996)). Although "'adequate information' for making an informed judgment is a flexible concept that permits the degree of disclosure to be tailored to the particular situation, there nevertheless is an irreducible minimum." Official Committee of Unsecured Creditors v. Michelson, 141 B.R. 715, 718 (Bankr. E.D. Cal. 1992).

That minimum generally includes "all pertinent information bearing on the success or failure of the proposals in the plan of reorganization [and] . . . all material information relating to the risks posed to creditors and equity interest holders under the proposed plan of reorganization." In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  1990).  Some courts have outlined the following more specific categories of information

2  as representing the "yardstick against which the adequacy of disclosure may be

3  measured:"

> (1) the circumstances that gave rise to the filing of the bankruptcy petition; (2) a complete description of the available assets and their value; (3) the anticipated future of the debtor; (4) the source of the information provided in the disclosure statement; (5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement; (6) the condition and performance of the debtor while in Chapter 11; (7) information regarding claims against the estate; (8) a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; (9) the accounting and valuation methods used to produce the financial information in the disclosure statement; (10) information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor; (11) a summary of the plan of reorganization; (12) an estimate of all administrative expenses, including attorneys' fees and accountants' fees; (13) the collectibility of any accounts receivable; (14) any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan; (15) information relevant to the risks being taken by the creditors and interest holders; (16) the actual or projected value that can be obtained from avoidable transfers; (17) the existence, likelihood and possible success of non-bankruptcy litigation; (18) the tax consequences of the plan; and (19) the relationship of the debtor with affiliates.

19  Cardinal Congregate, 121 B.R. at 765 (citing In re Scioto Valley Mortgage Co., 88 B.R.

20  168, 170-71 (Bankr. S.D. Ohio 1988)).  Put more simply, "[w]hen providing creditors with

21  information in connection with a disclosure statement, more is better."  In re Radco

22  Properties, Inc., 402 B.R. 666, 683 (Bankr. E.D.N.C. 2009) (emphasis added).

23       As discussed below, the Debtors' Disclosure Statement is deficient in many of the

24  foregoing categories of information essential to a proper disclosure statement.

25  / / /

26  / / /

27  / / /

28  / / /

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

**B.**    **The Disclosure Statement Contains No Information Regarding the**
**Inextricably Intertwined 845 S. Flower and Chinatown Cases**

1.    **The Relationship Between the Cases**

The Debtors' initial disclosure statement was described as a consolidated plan presented jointly by these 54 jointly-administered cases, as well as the two cases of 845 S. Flower and Chinatown (together, the "Flower/Chinatown Cases").  After the hearing on that initial disclosure statement, the Debtors determined to submit separate plans and disclosure statements for these 54 cases and the other two cases.  As a result, the instant Disclosure Statement was filed only by the 54 Debtors and describes a plan relating only to these Debtors.

Irrespective of the Debtors' decision to bifurcate the Flower/Chinatown Cases and the present 54 cases (which may have been a procedural necessity), the Debtors must concede that the 56 cases are inextricably intertwined.  Yet, the instant Disclosure Statement contains scant, if any, information (much less "adequate" information) concerning those two cases.  See "Submission of Redline of Debtors' First Amended Disclosure Statement," Dkt. No. 1138, at pp. 60, 73-75.  The Disclosure Statement is defective in this respect.[4]

The inseparable nature of these 54 cases and the Flower/Chinatown Cases -- at least on the present record -- is indisputable.  First, throughout these cases the Debtors consistently have emphasized the interrelated nature of the various affiliated entities and have insisted that they be viewed on a strict consolidated basis.  This alone mandates including information regarding the Flower/Chinatown Cases in the Disclosure Statement.

Further and more significantly, the Debtors have structured the current plan such that an enormous chunk of the revenues which the Debtors have earmarked to fund the

---

[4] To the extent the Debtors intend to deliver the Related Debtors' Disclosure Statement to creditors in these cases as a means to transmit information regarding the Flower/Chinatown Cases (rather than amend the Disclosure Statement), this would not be proper in that: (1) it would be confusing to the unsophisticated creditor as to which disclosure statement pertains to its particular claim; and (2) it would impose an unnecessary burden on creditors to review two, instead of one, disclosure statement.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  plan payments is expected to come from the sale of individual condominium units in the

2  Flower Street property (the "Flower Sale Program").  In particular, during the first year

3  after the effective date, the Debtors expect to generate over $26.4 million in net sale

4  proceeds from the Flower Sale Program to be used towards plan payments.  See

5  "Summary of Cash Flow Forecast" (Exhibit E to Disclosure Statement) at p. 12.  Put

6  another way, based on the Debtors' own cash flow forecast, almost 45% of the net

7  proceeds generated from real properties during that first year to be used to make plan

8  payments is attributable to the Flower Sale Program.  Without substantial information on

9  those two cases, the Disclosure Statement cannot be approved.

10      **2.    Significant Flower/Chinatown Proceedings That Must be Disclosed**

11      Given the relationship between the cases discussed above, several significant

12  matters involving the Flower/Chinatown Cases, the outcome of which will affect these 54

13  cases dramatically, must be disclosed in the Disclosure Statement.[5]

14      **a.    The Flower Sale Program**

15      The Flower Sale Program was developed by the Flower Street Debtor to sell

16  individual condominium units in a 34-story luxury condominium tower in downtown Los

17  Angeles (the "Flower Property").  The program consisted of an initial auction sale event,

18  followed by a conventional sale program.[6]  Exclusive of mechanics' liens, the Flower

19  Property is encumbered by a lien in favor of Canpartners Realty Holding Company, IV

20  LLC, ("Canpartners").  The Flower Debtor's chapter 11 plan lists Canpartners' secured

21  claim at $88,618,670.00.

22      As one court explained, a disclosure statement "must clearly and succinctly inform

23  the average unsecured creditor what it is going to get, when it is going to get it, and what

24  _____

25  [5] As stated above, although it may be helpful to the disclosure statement process to address (and perhaps resolve) certain disclosure issues at the upcoming hearing, the Committee believes that final approval of any disclosure statement in these cases should await the resolution of the
26  various outstanding proceedings in the Flower/Chinatown Cases identified below, as well as other significant matters pending in these 54 cases (such as the Tax Claim Motion discussed below).

27  [6] The Flower Debtor initially sought approval of the Sale Program by way of motion.  The Court
28  denied that motion, but did not preclude the Flower Debtor from incorporating the Sale Program into its plan of reorganization.

1  contingencies there are to getting its distributions." In re Ferretti, 128 B.R. 16, 19 (Bankr.

2  D.N.H. 1991) (emphasis added).  The success of the Flower Sale Program represents a

3  significant contingency relevant to these 54 cases.  As noted above, the Plan relies on

4  the Flower Sale Program to provide a large portion of the proceeds necessary to make

5  the Plan payments during the first year.  Therefore, the Disclosure Statement must

6  contain details and disclosures regarding:

7  •   The completion status of the physical condition of the Flower Property,

8  amenities and units;

9  •   The unit mix of all 214 condominiums with associated pricing and direct costs

10  on a unit and per square foot basis;

11  •   The conditions and requirements necessary to sell and close condominium

12  units, including but not limited to, final certificates of occupancy, public agency approvals

13  for improvements, units, documents and inspections;

14  •   Current appraisals of the Flower Property obtained by each of the Flower

15  Street Debtor and Canpartners;

16  •   Supporting detail and methodology for cash flow projections including

17  absorption, pricing, costs and overhead;

18  •   The sensitivity of sales-plan timing to seasonality cycle of market demand;

19  •   The status of Department of Real Estate approvals on the project, sales

20  documents, homeowner associations requirements and final white report;

21  •   The process used to select a sales auction company and the basis for

22  selecting Kennedy Wilson;

23  •   Supporting market study and analysis for unit pricing and projected absorption

24  of condominiums for the auction and thereafter;

25  •   Risk exposure to potential delays that may be caused by litigation with

26  Canpartners (discussed below), Department of Real Estate and other public agency

27  approvals;

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    • Supporting analysis on the estimated fair market value of the Flower Property

2    and use of a 30% discount to arrive at its liquidation value (see Exhibit E to the Related

3    Debtors' Plan and Disclosure Statement);

4    • Comparisons and analysis of the following alternative dispositions of the

5    Flower Property on a present value basis: (i) the Flower Sale Program, (ii) immediate

6    bulk sale, and (iii) an orderly liquidation; and

7    • Exposure to market risks and the potential impact on the Plan.

8    **b.    Canpartners' Relief From Stay Motion**

9    Another critical contingency is the pending motion for relief from stay of

10   Canpartners in the Flower Debtor's case.  On November 11, 2009, Canpartners moved

11   for relief from stay regarding its lien on the Flower Property.  After several rounds of

12   briefing and multiple hearings, an evidentiary hearing regarding valuation of the Flower

13   Property is set for April 2, 2010.  To the extent Canpartners is successful on its motion,

14   the Debtors will lose a major source of potential revenue to fund distributions to creditors.

15   This should be -- but is not -- disclosed in the Disclosure Statement.

16   **c.    The Chinatown Adversary Proceeding**

17   The Chinatown Debtor owns real property "appraised at $17,600,000.00 as of

18   March 2008 for the benefit of Canpartners" (the "Chinatown Property").  Flower Debtor's

19   Disclosure Statement, at 24:12-14.  The Chinatown Property is encumbered by a lien in

20   favor of Canpartners.  The Chinatown Debtor contends, however, that Canpartners is

21   required to release its lien on the Chinatown Property.  Canpartners disputes this

22   contention.  As a result, Canpartners initiated an adversary proceeding in each of the

23   Flower/Chinatown Cases to adjudicate this dispute (the "Chinatown Adversary

24   Proceeding").

25   The Chinatown Property could provide another source of recovery to unsecured

26   creditors in the Debtors' cases.  The outcome of the Chinatown Adversary Proceeding,

27   therefore, will impact these cases.  The Disclosure Statement provides no information

28   regarding the Chinatown Adversary Proceeding, the parties' respective contentions, the

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  status or the consequences of the various alternate outcomes of the proceeding.  Such

2  information must be disclosed in the Disclosure Statement.

3  **C.**    **The Forecasts and Projections in the Disclosure Statement Are Flawed**

4        **1.    Introduction**

5        As indicated above, additional forms of information that ought to be included in a

6  disclosure statement are "financial information, valuations or *pro forma* projections that

7  would be relevant to creditors' determinations of whether to accept or reject the plan."

8  Cardinal Congregate, 121 B.R. at 765 (citation omitted).  The adequacy of the financial

9  information is critical to a proper disclosure statement.  See, e.g., In re Main St. AC, Inc.,

10  234 B.R. 771, 774-75 (Bankr. N.D. Cal. 1999) (finding disclosure statement "inherently

11  flawed" for failing to provide adequate financial and valuation information) (citation

12  omitted).  "A disclosure statement is misleading where it contains glowing opinions or

13  projections, having little or no basis in fact and/or contradicted by known fact."  In re

14  Dakota Rail, Inc., 104 B.R. 138, 149 (Bankr. D. Minn. 1989).

15        For the reasons discussed below, the current projections in the Disclosure

16  Statement are inadequate.

17        **2.    The Forecasts and Projections Must be Modified to Account For the**

18             **Varying Treatments of the County's Secured Tax Claims**

19        The Disclosure Statement describes the treatment of the County's secured tax

20  claims as follows:

21             The Holder shall receive deferred cash payments equal to the
             Allowed amount of the Claims with interest at the rate of 3.25
22             percent per annum, or at a rate otherwise established by the
             Court, accruing on the total prepetition amount owing.
23             Holders of Allowed Secured Tax Claims shall receive deferred
             cash payments, payable in fifteen (15) equal quarterly
24             installments commencing on the first Quarterly Distribution
             Date and thereafter on each succeeding Quarterly Distribution
25             Date, with the last payment payable by no later than March
             26, 2014.

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

AHAMI\ 621699.7

1    Disclosure Statement at 56:4-9.[7]

2        The Disclosure Statement's cash flow forecasts and projections necessarily are

3    premised upon payment of the County's claims at the 3.25% rate.[8]  However, the Debtors

4    are well-aware that the County disputes this rate and has been insisting on much higher

5    rates of 10% (for a non-payment penalty) and 18% (for a redemption penalty) fixed by the

6    California Revenue and Taxation Code.  In fact, as a result of the dispute, the Debtors

7    sought to fix the County's tax claims for voting and plan purposes at this same 3.75%

8    rate by way of motion.  See generally "Debtors' Motion for Determination of Claims of the

9    County of Los Angeles Tax Collectors for Voting and Plan Purposes" (the "Tax Claim

10   Motion"), Dkt. No. 1073.  Seeking the full amounts authorized by the California statutes,

11   the County opposed the Tax Claim Motion.  See Dkt. No. 1106.

12        Although the Tax Claim Motion remains pending, at the most recent hearing on

13   March 10, 2010, the Debtors informed the Court that they have consensually resolved the

14   Tax Claim Motion with the County such that, with respect to the 10% non-payment

15   penalty, the County will accept a slightly lower 8% rate.  The Committee understands that

16   the redemption penalty remains at 1.5% per month.  The Debtors announced that they

17   intend to file a motion to approve this settlement, which will be set for hearing for April 7,

18   2010.

19        As the foregoing reflects, wide discrepancies exist between the possible

20   alternative amount of interest to be paid on account of the County tax claims  (ranging

21   from 3.75% to approximately 28%[9]).  Basing projections in the Disclosure Statement

22   strictly on a 3.75% -- the extreme low end of the scale -- at best, fails to capture the true

23   state of affairs and, at worst, is simply misleading.  Either way, the Disclosure Statement

24

---

25   [7] The Disclosure Statement also describes the manner of payment on account of disputed claims
     which subsequently become allowed claims, and also reserves "the right to pay the Allowed

26   Secured Tax Claim, or any remaining balance of such Claim, or any portion of such Claim, at any
     time or after the Effective Date, without premium or penalty of any kind."  Disclosure Statement at

27   56:9-17.

28   [8] With no rate currently established by the Court, the forecasts certainly cannot be premised upon
     "a rate otherwise established by the Court."

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    is inadequate.  Indeed, the Disclosure Statement does not even disclose the extent of the

2    differences between the Debtors' and the County's respective proposed rates.  Rather,

3    the Disclosure Statement states the following regarding the dispute and nothing more:

4              The Debtors filed a motion to determining [sic] the amounts
                owed to the County of Los Angeles on account of real
5              property taxes.  The dispute involves the proper amount of
                taxes owed to the County and the appropriate rates of interest
6              as well as whether certain claimed amounts are properly
                included in the claim.  The hearing on the motion is set for
7              February 24, 2010 and the matter is still pending.

8    Disclosure Statement at 52:13-17.  This is inadequate.

9              As the foregoing establishes, the Debtors should amend the Disclosure Statement

10    such that:

11              (1) the cash forecasts and projections are modified to account for the varying

12    interest rates the Debtors may be required to pay on the County claims (or, at least,

13    should be based on the high-end of the scale, not the low-end of the scale); and/or

14              (2) at a minimum, provide a detailed description of the dispute between the

15    Debtors and the County, including the various positions espoused by the parties in

16    connection with the Tax Claim Motion, that a proposed settlement has been reached but

17    remains subject to Court approval, the terms of such settlement and the potential

18    consequences of the Court's disapproval of the proposed settlement.

19    **D.    The Disclosure Statement Contains Inadequate Information Regarding the**

20    **Means of Implementing the Plan and the Debtors' Overall Ability to Make the**

21    **Proposed Plan Payments**

22    **1.    Introduction**

23              The Disclosure Statement describes a plan which seems to rely on three key

24    sources of cash flow to survive: (1) net operating income from the real properties ("NOI");

25    (2) real property sales; and (3) a $10 million new equity contribution.  The Disclosure

26    Statement fails to supply important information regarding each of the foregoing sources

27    of revenue.

28    

[9] This 28% figure combines the 10% and 18% penalties.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

2.     **The Disclosure Statement Lacks Information Regarding NOI**

The Disclosure Statement provides inadequate information regarding the Debtors' rental income and NOI in three primary respects.  First, the projections submitted with the Disclosure Statement indicate that rental income and property NOI are expected to rise moderately over the five year forecast period even though approximately $109 million worth of assets are sold during this period.  See "Summary of Cash Flow Forecast" (Exhibit E to Disclosure Statement).  The Disclosure Statement should explain why rental income and NOI would not decline under such circumstances.

Second, no information is provided in the underlying assumptions behind the individual property spreadsheets with respect to rents, occupancy, vacancy allowance, other income sources, lease extensions/renewals, rent growth (or shrinkage), downtime upon lease rollover, operating expenses, tenant improvements, or capital expenditures. Such data is fundamental to assessing whether the Debtors' have the ability to implement the Plan.

Finally, in the cash flow forecast summary (Exhibit E), interest expense is projected to remain flat at approximately $11 million per year despite approximately $51 million of principal pay-downs over the five year projection period.  The Disclosure Statement should explain why interest expense would not decline under such circumstances.

3.     **The Disclosure Statement Lacks Information Regarding Real Property Sales**

As mentioned above, a large portion of the revenues necessary to fund the Plan is expected to flow from real property sales, including: (1) the anticipated sale or sales related to the Flower Property, expected to net approximately $26.4 million in the first year after the Effective Date; and (2) the sale of other properties expected to net approximately $13.7 million prior to the Effective Date and approximately $26.4 million in

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  the first post-Effective Date year.  See "Summary of Cash Flow Forecast" (Exhibit E to

2  Disclosure Statement), p. 12.[10]

3      Despite the heavy reliance on such sales, the Disclosure Statement provides only

4  the following information regarding these transactions:

> As of the Effective Date, the Reorganized Debtors will continue to operate their business.  In order to meet their operational needs and payment obligations under the Plan, the Reorganized Debtors will sell some of their assets and refinance other of their assets as necessary during the term of the Plan.  The Debtors will determine which assets will be sold or refinanced based on the then existing needs and business plan of the Debtors and the condition of the real estate and credit markets.  The Debtors have in the past shown a willingness and ability to sell properties to meet their cashflow needs and they will continue to make such strategic sales as and when they deem it necessary in order to meet their obligations in the future.  After payment of the costs of sale and the satisfaction of any Liens fixed by this Plan against the asset, the remaining proceeds will be available for the payment of the costs of operating its business and funding the Reorganized Debtors' obligations under this Plan.

14  Disclosure Statement at 107:6-18.  Although the Debtors also provides brief descriptions

15  of its real properties on a property by property basis, none of the following information is

16  provided (all of which are required to ascertain the reasonableness of the forecasts):

17  • real property values;

18  • valuation methods;

19  • sales assumptions;

20  • the specific properties to be sold (other than the Flower Property);

21  • whether or not any sales are in progress and, if so, the status of negotiations;

22  • the strategy or rationale for such sales,

23  • comparable sales studies;

24  • the anticipated costs of the sales for each property;

25  • marketing efforts that will be employed;

26  • a timetable for the sale of any of the properties; or

27  _____

28  [10] The Disclosure Statement also discloses the refinancing of assets as a means of implementation of the Plan, but the cash flow forecasts appear to be based on "sale proceeds." Cash Flow Forecast Summary (Exhibit E); Disclosure Statement at 107:6-18.

1    • tax implications arising from such sales.

2        This type of information is essential to a disclosure statement, without which

3    creditors are unable to determine whether the Debtors' forecasts, or the overall means for

4    implementing the Plan, are reasonable or implausible. See Official Committee of

5    Unsecured Creditors v. Michelson, 141 B.R. 715, 718-19 (Bankr. E.D. Cal. 1992) ("An

6    informed judgment cannot be made without information about the plan and about how the

7    provisions of the plan will be put into effect [and t]hus, . . . every disclosure statement

8    needs an explanation of why the proposed means of implementation will be adequate to

9    the task.") (emphasis added).

10        In re Radco Properties, Inc., 402 B.R. 666 (Bankr. E.D.N.C. 2009), is instructive.

11    In that case, the debtor's primary assets consisted of various residential and commercial

12    real properties.  Similar to the Debtors' Plan, the Radco debtor filed a plan that provided

13    alternative methods of reorganization:  (1) locate a capital investor or refinancing option;

14    or (2) liquidate the properties.  See id. at 671.  In assessing the related disclosure

15    statement, the court determined it lacked adequate information because it failed to

16    provide the same type of information the instant Disclosure Statement lacks:

17        Beyond a liquidation analysis, the Disclosure Statement, failed
        to provide any additional information that a hypothetical
18        investor would need in order to make an informed judgment
        about the Amended Plan. There is no way for a hypothetical
19        investor to determine the value of the property beyond the
        Debtor's best guess.  The only values provided by the Debtor
20        are the liquidation analysis values, which are significantly
        lower than the amounts shown on the Debtor's schedules.
21        The Debtor failed to provide any appraisals for either the
        commercial or the residential properties.
22
        The Second Disclosure Statement failed to provide any
23        discussion of the Debtor's plan to market and sell the
        commercial properties beyond listing them with the agent; any
24        comparable sales studies or  market analysis within Wilson
        County during the past year; or any population density studies
25        for the areas surrounding the stores and stations. Of great
        concern to the Court is the Debtor's failure to address the
26        impact of the commercial lease rejection.

27        In addition, although the Debtor filed its monthly operating
        reports, it failed to provide any revenue projections for the
28        residential properties or any prior performance history for
        either the commercial stores or the residential property. The

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

Debtor has even failed to provide a list of occupancy rates and again, the Debtor has failed to address the impact, if any, the rejection of the residential leases will have on the Debtor's ongoing business. Without this information, the Court is left questioning whether a hypothetical investor could reasonably be expected to evaluate the Second Disclosure Statement.

Mr. Denton stated that he thought there may be an investor interested in the commercial properties. Even though remote, if the principal of the Debtor believes that the possibility exists, the creditors are entitled to know the specifics regarding the status of the negotiations, the amounts being considered, and the likelihood that the transaction will come to fruition prior to voting on a plan. Though some of this information  was provided at the hearing, creditors are entitled to the information before they cast their ballots, not after.

. . . . Neither the Disclosure Statement nor the Amended Plan provide any specifics as to the anticipated costs of the auction(s) which would impact whether or not equity may exist for distribution to unsecured creditors.  The Debtor requests a ten percent (10%) holdback for administrative costs and expenses yet fails to substantiate the basis of the holdback amount.  . . . Based on the Amended Plan and Second Disclosure Statement, an unsecured creditor is not even able to project an estimate of the cost of the sale  of the commercial properties.  Such information is necessary for creditors to make an informed judgment regarding the Amended Plan.

Id. at 682-83 (emphasis added).

As discussed above, the Debtors' Disclosure Statement suffers from similar inadequacies as the one presented in Radco.  As a result, the Disclosure Statement should not be approved.

4.    **The Disclosure Statement Lacks Information Regarding the Proposed New Equity Contribution**

The final source of revenue stems from a potential $10 million new equity contribution.  However, very limited or no information is provided in the Disclosure Statement to substantiate the planned source or sources of such equity contribution via the "rights offering."  This type of information should be included in the Disclosure Statement.

1  **E.    The Disclosure Statement Provides No Liquidation Analysis**

2           Another vital component of a disclosure statement is a liquidation analysis.  See

3  In re Sierra-Cal, 210 B.R. 168, 176-77 (Bankr. E.D. Cal. 1997) (holding that plan

4  proponent "must include a liquidation analysis in the disclosure statement"); In re

5  Diversified Investors Fund XVII, 91 B.R. 559, 561 (Bankr. C.D. Cal. 1988) ("in order to

6  provide adequate information, the disclosure statement must contain a liquidation

7  analysis which compares the proposed plan of reorganization with a Chapter 7

8  liquidation.").

9           The Disclosure Statement contains no liquidation analysis at all.  Whereas the

10 Disclosure Statement states that a liquidation analysis is "[t]o be provided," it fails to

11 specify when.  However, as of March 11, 2010 -- one day before responses to the

12 Disclosure Statement are due and eight days before the hearing on the Disclosure

13 Statement -- the liquidation analysis remains outstanding.  At this point, even if the

14 Debtors plan on submitting a liquidation analysis before the upcoming hearing, there

15 simply is not enough time for the Committee to properly evaluate the information.[11]

16          Although the Debtors failed to submit a liquidation analysis with the current

17 Disclosure Statement, the Committee notes that the liquidation analysis submitted in

18 connection with the Debtors' prior disclosure statement was inadequate.  For example,

19 the prior analysis did not provide any data to support either the current estimated fair

20 market values of the assets or the basis for employing a 30% discount for liquidation

21 values.  The Debtors should ensure that the anticipated liquidation analysis contains such

22 information.

23 **F.    The Disclosure Statement Contains Inadequate Information Regarding Major**

24      **Risk Factors**

25          "Creditors not only rely on the disclosure statement to form their ideas about what

26 sort of distribution or other assets they will receive but also what risks they will face."

27

---

28 [11] The Committee reserves the right to supplement this response to the Disclosure Statement
after it has had a sufficient opportunity to properly evaluate the Debtors' liquidation analysis.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   <u>Radco</u>, 402 B.R. at 682 (emphasis added).  The Disclosure Statement's discussion

2   regarding risk factors is scanty.  <u>See</u> Disclosure Statement at pp. 144-145.

3       For example, the Disclosure Statement's section addressing risk should be

4   expanded to provide detail regarding: (1) the cash flow impact of either the sale of the

5   Flower Property or other real properties not occurring at all or not generating the

6   projected sales prices, including, but not limited to, the downside risk and financial impact

7   if Canpartners is successful on its relief from stay motion; (2) the impact on cash flow and

8   feasibility in the event the Debtors fail to raise the proposed new equity contributions; (3)

9   a sensitivity analysis on the proposed 4% cram-down interest rate on secured creditors to

10   account, for example, for a 6% interest rate; (4) the potential negative impact of

11   deficiency claims that may be asserted by the secured lenders, or, if not a potential

12   concern, the reasons why; and (5) the potential negative income tax consequences of the

13   Plan, or, if not a potential concern, the reasons why.

14   **G.**    <u>**The Disclosure Statement Contains Inadequate Information Regarding Other**</u>

15       <u>**Areas**</u>

16       The Disclosure Statement also lacks adequate information regarding various other

17   topics discussed below.

18       **1.**    <u>**Disbursing Agent**</u>

19       The Disclosure Statement designates Fred Skaggs as the Disbursing Agent.  <u>See</u>

20   Disclosure Statement, p. 139:24.  With respect to compensation, the Disclosure

21   Statement provides that the

22       Disbursing Agent, other than the Reorganized Debtor, will
         receive, without further Bankruptcy Court approval,

23       <u>reasonable</u> compensation for distribution services rendered
         pursuant to the Plan . . . .

24

25   <u>Id.</u> at 139:28-140:1 (emphasis added).  This is not sufficient.  The Debtors should be

26   required to provide the <u>specific</u> amount of compensation they propose to pay the

27   Disbursing Agent (<u>e.g.</u>, a percentage of disbursements), especially given that the

28   proposed "reasonable" amount will not be subject to Court approval.

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1  **2.    Insider Compensation**

2  The Disclosure Statement provides the following with respect to insider

3  compensation:

4  The following table sets forth the compensation paid by MMPI
to each of their current executive officers, for services

5  rendered in their respective capacities 2009 [sic].

6  Disclosure Statement at 127:5-6.  This statement is unclear for several reasons.  First, in

7  light of what may be a typographical error, it is unclear whether the amounts that follow

8  reflect compensation for 2009 or for the current year.  Second, it is unclear as to whether

9  the amounts listed are those the Debtors intend to pay their insiders post-confirmation

10  and, if so, whether the amounts will remain stagnant during the entire Plan term.

11  Moreover, to the extent the compensation amounts will be modified at any time during the

12  Plan term, the Debtors should disclose the rate of increase.

13  **3.    Tax Consequences From Disposition of Real Estate**

14  The Disclosure Statement's section regarding potential tax consequences spans

15  over 10 pages.  However, nothing in those pages addresses tax consequences of the

16  real property sales.  Given that real estate sales is expected to provide the largest source

17  of revenue to fund the Plan, the Disclosure Statement should address the potential tax

18  impact of such sales.

19  **4.    Corporate Overhead**

20  The Disclosure Statement contains insufficient information regarding the projected

21  corporate overhead and operating costs.  Indeed, the Disclosure Statement only provides

22  the salaries of key officers.  Much more information regarding projected corporate

23  overhead and operating costs is required.

24  **5.    Potential Variances Between the Monthly Operating Reports and the**

25  **Disclosure Statement Projections**

26  A comparison of the Debtors' monthly operating reports ("MORs") with the

27  projections provided with the Disclosure Statement reflects that operating and "general

28  and administrative" costs are treated differently in the two types of financial reports.  This

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

...

1 | variant treatment makes it difficult (if not impossible) to ascertain whether these costs in

2 | the projections are in line with the amounts in the MORs or are otherwise reasonable

3 | without some additional explanation to tie out historical data in the MORs to the Plan

4 | forecast.

5 |       The Committee's proposed financial advisor -- Kibel Green -- has requested to

6 | meet with the Debtors' financial advisor in an effort to obtain additional information (such

7 | as the information discussed above) to better understand the financial information

8 | contained in the Disclosure Statement.  As of the date of this response, the Debtors have

9 | not yet agreed to such a meeting or otherwise provided any meaningful response to Kibel

10 | Green's request to meet.

11 | **H.**    <u>**Summary**</u>

12 |       The Committee believes there are too many substantial contingencies outstanding

13 | to approve any disclosure statement at this time.  In any event, as reflected above, the

14 | Disclosure Statement is riddled with areas that lack adequate information.  As a result,

15 | the present Disclosure Statement should not be approved.

16 |       Furthermore, as noted above, the Committee only recently retained a financial

17 | advisor (subject to Court approval).  The Committee's advisor continues to evaluate the

18 | information contained in the Disclosure Statement and will continue in its efforts to obtain

19 | additional information from the Debtors' and/or their financial advisor.  As a result, the

20 | Committee reserves the right to supplement or amend this response to the Disclosure

21 | Statement as is appropriate and necessary as its continues its evaluation.

22

23

24

25

26

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1

III.

2

**CONCLUSION**

3        For the reasons discussed above, the Disclosure Statement fails to provide

4    adequate information.  As a result, this Court should not approve the Disclosure

5    Statement in its current form.

6    Dated: March 12, 2010                **Sulmeyer**Kupetz
                                          A Professional Corporation

7

8

9                                    By:  */s/ Asa S. Hami*
                                         _____

10                                        Asa S. Hami
                                          Bankruptcy Counsel for the Official
                                          Committee of Unsecured Creditors

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

AHAMI\ 621699.7

| In re: MERUELO MADDUX PROPERTIES, INC., et al | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356 KT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California 90071-1406

A true and correct copy of the foregoing document described as  <u>OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE DEBTORS' FIRST AMENDED DISCLOSURE STATEMENT [DKT. NO. 1134]</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>March 12, 2010</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

Michael C Abel on behalf of Debtor Meruelo Maddux Properties, Inc., a DE Corp
mca@dgdk.com

John J Bingham on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
jbingham@dgdk.com

Peter Bonfante on behalf of Interested Party Courtesy NEF
peterbonfante@bsalawfirm.com

Julia W Brand on behalf of Debtor Meruelo Maddux Properties, Inc., a DE Corp
jwb@dgdk.com

Jennifer L Braun on behalf of U.S. Trustee United States Trustee (SV)
jennifer.l.braun@usdoj.gov

Martin J Brill on behalf of Interested Party Courtesy NEF
mjb@lnbrb.com

Howard Camhi on behalf of Creditor Kennedy Funding, Inc.
hcamhi@ecjlaw.com

James E Carlberg on behalf of Creditor Woodland Farms, Inc.
jcarlberg@boselaw.com

Sara Chenetz on behalf of Creditor Imperial Capital Bank
chenetz@blankrome.com

Ronald R Cohn on behalf of Creditor Pacific Commerce Bank
rcohn@horganrosen.com

Enid M Colson on behalf of Debtor Meruelo Maddux Properties, Inc., a DE Corp
emc@dgdk.com, ecolson@dgdk.com

Michaeline H Correa on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
mcorrea@jonesday.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: MERUELO MADDUX PROPERTIES, INC., et al | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356 KT |

Brian L Davidoff on behalf of Creditor Yoshiake Murakami
bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com

Aaron De Leest on behalf of Debtor Merco Group - 2040 Camfield Avenue, LLC, a DE LLC
aed@dgdk.com

Michael G Fletcher on behalf of Creditor Cathay Bank
mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com

Barry V Freeman on behalf of Interested Party Courtesy NEF
bvf@jmbm.com, bvf@jmbm.com

Donald L Gaffney on behalf of Creditor BANK OF AMERICA
dgaffney@swlaw.com

Thomas M Geher on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,
National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., etc
tmg@jmbm.com

Bernard R Given on behalf of Creditor Cathay Bank
bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com

Barry S Glaser on behalf of Creditor County of Los Angeles Tax Collector
bglaser@swjlaw.com

Michael I. Gottfried on behalf of Interested Party Courtesy NEF
mgottfried@lblawllp.com, aerskine@lgbfirm.com

John A Graham on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,
National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., etc
jag@jmbm.com

Ofer M Grossman on behalf of Interested Party Courtesy NEF
omglaw@gmail.com

Peter J Gurfein on behalf of Interested Party Courtesy NEF
pgurfein@akingump.com

Cara J Hagan on behalf of Creditor PNL Pomona, L.P.
carahagan@haganlaw.org

Asa S Hami on behalf of Creditor Committee Creditors Committee
ahami@sulmeyerlaw.com

Brian T Harvey on behalf of Creditor California Bank & Trust
bharvey@buchalter.com, IFS_filing@buchalter.com

David W Hercher on behalf of Interested Party Courtesy NEF
dave.hercher@millernash.com

William W Huckins on behalf of Interested Party Courtesy NEF
whuckins@allenmatkins.com, clynch@allenmatkins.com

Natasha L Johnson on behalf of Debtor Meruelo Maddux Properties, Inc., a DE Corp
natasha.johnson@dlapiper.com

Lance N Jurich on behalf of Creditor CanPartners Realty Holding Company IV, LLC
ljurich@loeb.com, kpresson@loeb.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

| In re: MERUELO MADDUX PROPERTIES, INC., et al | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356 KT |

Alexandra Kazhokin on behalf of Creditor California Bank & Trust
akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com

William H. Kiekhofer on behalf of Creditor Esmark, Inc.
wkiekhofer@mcguirewoods.com

Andrew F Kim on behalf of Creditor Imperial Capital Bank
kim-a@blankrome.com

Michael S Kogan on behalf of Creditor Kennedy Funding, Inc.
mkogan@ecjlaw.com

Tamar Kouyoumjian on behalf of Creditor Committee Creditors Committee
tkouyoumjian@sulmeyerlaw.com

Duane Kumagai on behalf of Creditor Yoshiake Murakami
dkumagai@rutterhobbs.com, calendar@rutterhobbs.com

Lewis R Landau on behalf of Creditor Committee Creditors Committee
lew@landaunet.com

David E Leta on behalf of Creditor FNBN-CMLCON I LLC
dleta@swlaw.com, wsmart@swlaw.com

Katherine Lien on behalf of Interested Party Courtesy NEF
katie.lien@sbcglobal.net, katielien@gmail.com

Steven K Linkon on behalf of Creditor Chinatrust Bank (USA)
slinkon@rcolegal.com

Richard Malatt on behalf of Interested Party Courtesy NEF
rmalatt@gmail.com

Elmer D Martin on behalf of Creditor East West Bank
elmermartin@msn.com

Elissa Miller on behalf of Interested Party Courtesy NEF
emiller@sulmeyerlaw.com

Iain A W Nasatir on behalf of Attorney Pachulski Stang Ziehl & Jones LLP
inasatir@pszjlaw.com, jwashington@pszjlaw.com

Jennifer L Nassiri on behalf of Debtor Meruelo Maddux Properties, Inc., a DE Corp
jennifer.nassiri@dlapiper.com, bambi.clark@dlapiper.com

Lawrence Peitzman on behalf of Interested Party Courtesy NEF
lpeitzman@pwkllp.com

Eric S Pezold on behalf of Creditor BANK OF AMERICA
epezold@swlaw.com, dwlewis@swlaw.com

Christopher E Prince on behalf of Stockholder Charlestown Capital Advisors, LLC
cprince@lesnickprince.com

Michael H Raichelson on behalf of Creditor Stanford Group LP
mhr@cabkattorney.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: MERUELO MADDUX PROPERTIES, INC., et al | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356 KT |

Dean G Rallis Jr on behalf of Creditor Committee Creditors Committee
drallis@sulmeyerlaw.com

Craig M Rankin on behalf of Interested Party Courtesy NEF
cmr@lnbrb.com

Michael B Reynolds on behalf of Creditor FNBN-CMLCON I LLC
mreynolds@swlaw.com, kcollins@swlaw.com

Kirsten A Roe on behalf of Creditor Calex Engineering Company
kroe@wthf.com, dfunsch@wthf.com

Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com

Victor A Sahn on behalf of Creditor Committee Creditors Committee
vsahn@sulmeyerlaw.com

Zev Shechtman on behalf of Debtor Meruelo Maddux Properties, Inc., a DE Corp
zshechtman@dgdk.com

Jeffrey S Shinbrot on behalf of Creditor Natividad Gonzales
shinbrot@earthlink.net

Stephen Shiu on behalf of Creditor FNBN-CMLCOM I LLC
sshiu@swlaw.com

Daniel H Slate on behalf of Creditor California Bank & Trust
dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com

Surjit P Soni on behalf of Creditor Legendary Investors Group No. 1, LLC
surjit@sonilaw.com, laura.gonzales@sonilaw.com

Tracie L Spies on behalf of Creditor PNL Pomona, L.P.
tracie@haganlaw.org

James Stang on behalf of Creditor East West Bank
jstang@pszjlaw.com

John N Tedford on behalf of Attorney Danning Gill Diamond & Kollitz LLP
jtedford@dgdk.com

James A Timko on behalf of Interested Party Courtesy NEF
jtimko@allenmatkins.com

Alan G Tippie on behalf of Interested Party Courtesy NEF
atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Jason L Weisberg on behalf of Creditor Roofcorp of CA Inc
jason@gdclawyers.com

Jasmin Yang on behalf of Creditor BANK OF AMERICA
jyang@swlaw.com

☐ Service Information continued on attached page.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          **F 9013-3.1**

| In re: MERUELO MADDUX PROPERTIES, INC., et al | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356 KT |

**II.   SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served): On _March 12, 2010_ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Janis G Abrams on behalf of Creditor Stanford Group LP
The Gersh Law Firm Inc
15821 Ventura Blvd Ste 515
Encino, CA 91436

David P Beitchman on behalf of Creditor Vahan and Anoush Chamlian
16130 Ventura Blvd Ste 570
Encino, CA 91436

Arthur J Hazarabedian on behalf of Creditor City Of Pomona
California Eminent Domain Law Group
3429 Ocean View Blvd Ste L
Glendale, CA 91208

☒ Service Information continued on attached page.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on _March 12, 2010_ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Kathleen Thompson
U.S. Bankruptcy Court
Bin outside of Elevators on 3rd Floor
21041 Burbank Blvd.
Woodland Hills, CA 91367-6606

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 12, 2010 | Maria R. Viramontes | /s/ Maria R. Viramontes |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1