1    the Debtors' properties, Mr. Meruelo is familiar with the prices for which the properties were

2    purchased, he is familiar with the prices for which similar properties are being sold (particularly

3    since the Company is often the one selling the properties), he is familiar with the structures on the

4    Debtors' properties, and he has a significant amount of experience in the development of properties

5    and therefore can estimate the expense that would be incurred if someone had to rebuild the

6    structures.

7        Another factor he may consider relates to sale comparisons, which generally looks to the

8    prices for which comparable properties, adjusted for differences in location and such, are being

9    sold. Such values are often estimated in terms of price per square foot of land and price per square

10    foot of building. Again, he is familiar with the prices for which similar properties are being sold,

11    both in total and on a square footage basis, especially in the downtown Los Angeles market, often

12    because the Company has sold the comparable properties. In fact, over the years he has observed

13    that lender appraisals, when identifying comparable sales, often are relying on sales of properties

14    sold by the Company.

15        Another factor he may consider looks to the ability of the property to produce income,

16    typically in the form of rents. Present value may be estimated based on an evaluation of the

17    anticipated future income stream from the property, and then a capitalization rate is applied in order

18    to estimate the present value of the property. As noted above, in the performance of his duties as

19    Chairman and Chief Executive Officer of MMPI, Mr. Meruelo regularly speaks with real estate

20    professionals, brokers and others familiar with the downtown Los Angeles real estate market and

21    other markets in which the Company owns real property in order to, among other things, expand

22    his knowledge of the markets, evaluate properties available for sale that the Company may wish to

23    purchase, and keep apprised of trends in values and the capital markets. He incorporates the

24    information obtained by him during the course of these discussions when he estimates the values of

25    the Debtors' properties.

26        Also, MMPI's management team have met periodically during recent years, particularly in

27    2008 and 2009, to discuss, among other things, real estate trends, growth patterns, market

28    conditions, and particular properties and the factors that contribute to their value. These meetings

1 | have been conducted in order to, among other things, evaluate the prices to pay for the purchase of

2 | properties not presently owned by the Company, and prices for which the Company's properties

3 | may be sold. During these meetings, they discuss, among other things, space needs by tenants or

4 | end users, the condition and location of the properties, access to the properties and traffic patterns,

5 | the income stream, if any, generated by the property, growth patterns, community and area trends,

6 | comparable sales, expressions of interest by third parties in purchasing the Company's properties,

7 | and statements or expressions of value by commercial real estate brokers.

8 | **3.**   **Sales and Listings Since the Commencement of the Chapter 11 Cases**

9 | Since becoming a public company the Company has, among other things: successfully

10 | completed approximately nine acquisitions or conversions of development projects to rental

11 | projects; successfully completed, acquired, or placed in service four parcels attached to current

12 | rental projects; and successfully completed the sale of three rental projects and three development

13 | projects. In 2008, the Company sold more property in downtown Los Angeles than any other

14 | landowner. With regard to the six properties that were sold:

15 | a.   on or about March 31, 2008, the Company sold a development project located at

16 | 9901 Alameda in south Los Angeles for approximately $31.2 million;

17 | b.   in a two-step sale culminating in or about August 2008, the Company sold a rental

18 | project located at 2000 San Fernando Road just north of downtown Los Angeles for

19 | approximately $35 million;

20 | c.   on or about September 12, 2008, the Company sold a rental project located at 1800

21 | E. Washington Blvd. in downtown Los Angeles for approximately $14.2 million;

22 | d.   on or about November 7, 2008, the Company sold a development project located at

23 | 816 Stanford in downtown Los Angeles for approximately $1.0 million.

24 | e.   on or about November 14, 2008, the Company sold a rental project referred to as the

25 | "Overland Terminal" in downtown Los Angeles for approximately $19.7 million; and

26 | f.   on or about November 21, 2008, the Company sold a development project located at

27 | 801 E. 7th Street in downtown Los Angeles for approximately $9.5 million.

28 |

62

351389.04 [XP]   25195

1    The Company is believed to have sold more properties in downtown Los Angeles than
2  anybody else during the last two years.  Mr. Meruelo was involved in negotiating each of the above
3  sales and other sales on behalf of the Company.  Further, he is the person who ultimately decided
4  the sale price for each of the properties, largely because he is the person at the Company who is the
5  most knowledgeable as to the value of the Company's real estate.  That fact that the Company has
6  engaged in so many recent sales and ongoing development activities is one of the reasons the
7  Debtors believe that he is one of the most qualified persons in Los Angeles to testify as to the value
8  of properties in downtown Los Angeles.

9    Since the commencement of the cases, the Debtors have formulated and implemented a
10  strategy with respect to the Debtors' real estate assets.  As part of this strategy, the Debtors have
11  considered multiple scenarios in the categorization and use of their real estate assets providing for a
12  balance between creditor payment and the creation of an enterprise with the greatest chance of
13  long-term sustainability and success.  The Debtors determined that certain assets should be sold to
14  reduce the immediate obligations to creditors, to provide capital for the business and to ensure the
15  long-term sustainability of the business.

16    The following properties have been sold, pursuant to orders entered by the
17  Bankruptcy Court, since the Petition Date:

18    •    5500 Flotilla Street, Los Angeles, previously owned by Debtor Meruelo Maddux –
19  5500 Flotilla Street, LLC ("MM 5500 Flotilla Street") to Camfield Partners, LLC for $210,000;

20    •    2040 Camfield Avenue, Commerce, previously owned by Debtor Merco Group –
21  2040 Camfield Avenue, LLC ("MG 2040 Camfield Avenue") to Camfield Partners, LLC for
22  $4,790,000;

23    •    146 East Front Street, Covina, previously owned by Debtor Merco Group – 146 East
24  Front Street, LLC ("MG 146 E. Front Street") to Vartan and Dzovig Koroghlian for $1,114,450;
25  and

26    •    500 Mateo Street, Los Angeles, previously owned by Debtor  Meruelo Maddux –
27  500 Mateo Street, LLC ("MM 500 Mateo Street") to Mydland Enterprises, LLC for $1,900,000.

28    In addition, the Debtors have recently listed the following properties for sale:

351389.04 [XP]    25195

- 2951 Lenwood Road, Barstow, CA

- 905 E. 8th Street, Los Angeles, CA

- 308-310 Omar Street and 452, 464 and 470 E. Third Street, Los Angeles, CA

- 400-428 Boyd Street, Los Angeles, CA

- 1875 West Mission Boulevard, Pomona, CA

- 2001-2021 West Mission Boulevard, Pomona, CA.

Finally, on April 26, 2010, MM 845 Flower closed the sale of its 34 story luxury residential tower for a purchase price of $109,500,000.

**C.    Events in the Related Chapter 11 Cases MM 845 S. Flower and Chinatown.**

On September 3, 2009, MM 845 S. Flower and Chinatown each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  While MM 845 S. Flower and Chinatown are affiliates of the MMPI Debtors, these cases are not jointly administered with the cases of the MMPI Debtors.

MM 845 S. Flower owned a 34-story residential tower located at 705 W. 9th Street in the South Park region of downtown Los Angeles (the "Project").  The building is comprised of 214 luxury residential units totaling approximately 254,300 square feet and an approximately 6,800 square foot commercial unit on the ground floor.  This building is a first class iconic structure in downtown Los Angeles.  Viewed from the street, this curtain wall building is clad with various shades of green glass and has numerous distinctive and attractive architectural features which include external balconies on all four corners of the building, a seventh floor amenity deck with a landscaped garden area and a premium extended balcony and viewing deck located on the ninth floor.

Chinatown owns approximately 5.5 acres of unimproved land at 129 West College Street in downtown Los Angeles ("Chinatown Property").  The Chinatown Property has significant development potential and the current development plan for the property is for a mixed residential and retail use.  The Chinatown Property is now unencumbered.  The Chinatown Property was appraised at $17,600,000 as of March 2008 based upon about $80 per land square foot.

351389.04 [XP]    25195

1        Prior to September 3, 2009 (the "Flower Petition Date"), and on or about July 31, 2008,

2 MM 845 Flower executed a promissory note (the "Note") in the original principal amount of

3 $84,000,000 in favor of Canpartners Realty Holding Company IV, LLC ("Canyon") in connection

4 with a Loan Agreement dated as of July 31, 2008 (the "Loan Agreement") pursuant to which

5 Canyon made a construction loan of $84,000,000 to MM 845 Flower (the "Loan").  MM 845

6 Flower's obligations under the Note were secured by a construction deed of trust (the "845 Flower

7 Deed of Trust") in favor of Canyon against the Project.  MM 845 Flower also granted Canyon a

8 security interest in various deposit accounts of 845 Flower (the "Accounts Pledge").  In addition,

9 Chinatown granted Canyon a deed of trust (the "Chinatown Deed of Trust") against Chinatown's

10 real property located at 129 West College Street, Los Angeles, California (the "Chinatown

11 Property").  Meruelo Maddux Properties, Inc., ("MMPI") executed both completion and repayment

12 guaranties in favor of Canyon (the "MMPI Guaranties") and MMP Ventures pledged its

13 membership interests in 845 Flower and Chinatown to Canyon (the "Pledge Agreements[5]") .

14       **1.     Important Events in MM 845 S. Flower and Chinatown cases**

15        At the time the cases were filed, the construction of MM 845 S. Flower Project was close to

16 completion.  After commencement of the 845 S. Flower case, MM 845 S. Flower completed

17 construction of the Project, completed the process of entitling the Project as condominiums and

18 developed a program for selling individual condominium units (the "Sale Program").  MM 845 S.

19 Flower filed a motion for authority to engage in the Sale Program.  Canyon opposed the motion on

20 among other grounds that the Debtor could not sell units free and clear of its loan.  After extensive

21 briefing and several hearings, the Court denied the motion without prejudice to the Debtor pursuing

22 the Sale program as part of its Chapter 11 Plan.

23        On November 12, 2009, Canyon filed a Motion for Relief from the Automatic Stay (the

24 "RFS Motion") in the MM 845 S. Flower case seeking relief from the automatic stay to permit it to

25

26 [5] The Loan Agreement, the Note, the Deed of Trust, the Accounts Pledge, the MMPI Guaranties, the Chinatown Deed
of Trust, the Pledge Agreements and all other documents and instruments evidencing or securing the Loan, are referred
27 to collectively herein as the "Loan Documents"

28

351389.04 [XP]    25195

1  foreclose on its Deed of Trust against the Project.  Canyon asserted that it was entitled to relief

2  from the stay because the Debtor does not have any equity in the Project and according to Canyon,

3  the Debtor cannot cram down a plan on Canyon over its objection.  MM 845 S. Flower vigorously

4  disputed each of Canyon's contentions.  The initial hearing on the RFS Motion was held on

5  January 8, 2010.  After additional briefing and a further hearing on February 5, 2010, the Court

6  continued the RFS Motion to March 12, 2010 for an evidentiary hearing regarding the value of the

7  Project and testimony by the appraisers retained by Canyon and MM 845 S. Flower.  That

8  evidentiary hearing has been continued to June 7, 2010 but will be taken off calendar due to the

9  settlement discussed below.

10      In addition, on October 19, 2009, Canyon filed an adversary proceeding against MM 845 S.

11  Flower and Chinatown in their respective cases, asserting and seeking a declaration, among other

12  things, that Canyon was not required to release its lien on the Chinatown Property or its security

13  interest in MMP Ventures' membership interests in Chinatown (the "Chinatown Adversary

14  Proceeding") MM 845 Flower and Chinatown answered and counterclaimed, contending, among

15  other things, that Canyon is required to release its liens on the Chinatown Property and its security

16  interest in the MMP Ventures membership interests in Chinatown.  On November 19, 2009, the

17  Bankruptcy Court entered its Order approving the parties' stipulation to consolidate the two

18  adversary proceedings, deeming the complaint filed in 845 Flower's case (1:09-ap-01435-KT) as

19  the sole operative complaint.

20      On February 16, 2010 the parties filed cross-motions for summary judgment (Chinatown

21  Adversary Proceeding docket nos. 13 – 19) which were initially set for hearing on March 12, 2010.

22  Those hearings have been continued several times and are currently set for hearing on June 7, 2010

23  but will be taken off calendar due to the settlement discussed below.

24              **2.    Sale of the Project and Settlement with Canyon**

25      On April 13, 2010, MM 845 S. Flower filed a motion for authority to sell the Project to

26  Watermarke Properties, Inc., a California corporation, or its assignee (the "Buyer") for a purchase

27  price of $110,000,000 cash pursuant to the Purchase Agreement, subject to a $500,000 purchase

28

351389.04 [XP]    25195

1  price credit to the Buyer as described below. The hearing on the Motion was held on April 19,

2  2010. The Court approved the sale by its order entered on April 19, 2010.

3          On April 12, 2010, MM 845 S. Flower, Chinatown, MMPI and MMP Ventures entered into

4  a settlement with Canyon (the "Canyon Settlement Agreement"). Pursuant to the settlement,

5  Canyon agreed to accept $86,521,389 from escrow at closing in satisfaction of its Lien and has

6  agreed to the release of its Lien on the Project, on MM 845 S. Flower's bank accounts and other

7  personal property and on the real property owned by the related debtor Meruelo Chinatown, LLC.

8  The sale closed on April 26, 2010 and Canyon received payment of the settlement amount on that

9  date.

10         The Canyon Settlement Agreement resolves all disputes arising out of or relating to

11  Canyon's claims against the Debtors or arising out of or related to the Loan Documents, the RFS

12  Motion, and the Chinatown Adversary Proceeding.

13         In addition, certain creditors have asserted, or may assert, mechanics liens against the

14  Project (the "Mechanics Lien Creditors"). The sale of the Project combined with the funds in MM

15  845 S. Flower's construction reserve accounts (which was $7,139,319 as of April 9, 2010) provides

16  more than enough proceeds for payment of all amounts determined to be owing to the Mechanics

17  Lien Creditors. MM 845 S. Flower has objections to certain of these claims and reserves all rights

18  and defenses thereto. As of the date hereof, the aggregate amount owing to the Mechanics' Lien

19  Creditors was between $4,179,157 and $8,733,944. As such claims are resolved, the Mechanics'

20  Lien Claims will be paid from the Remaining Claims Fund as provided below.

21         At closing, MM 845 S. Flower established the Remaining Claims Fund as a segregated

22  account at City National Bank to hold funds for payment of the unpaid or disputed Mechanics' Lien

23  Claims and unsecured claims against the Debtor's estate (the "Remaining Claims") as provided in

24  the Canyon Settlement Agreement. The Remaining Claims Fund was funded in an amount not to

25  exceed $10,636,268, comprised of the maximum amount of all unpaid or disputed Mechanics Lien

26  Claims, $100,000 for payment of unsecured claims, and $1,500,000 as provided in the Canyon

27  Settlement Agreement. The Remaining Claims Fund was funded with the remaining funds from

28  the Debtor's construction reserve accounts plus proceeds of the Sale sufficient to fully fund the

1 | account.  The Liens of all creditors of MM 845 S. Flower asserting Liens against the Project,

2 | including but not limited to Canyon (pursuant to the Canyon Settlement Agreement) and the

3 | Mechanics Lien Creditors, attached to the Remaining Claims Fund.  The Canyon Settlement

4 | Agreement also provided for the payment of Canyon's third party fees and expenses arising out of

5 | the Remaining Claims from the Remaining Claims Fund.  As a result of receipt of the Settlement

6 | Amount, all of Canyon's liens, rights and interest in and to any of the Debtors' assets have been

7 | fully released, reconveyed, terminated and discharged, including, without limitation, full

8 | reconveyances of the Flower Deed of Trust, the Chinatown Deed of Trust, terminations of any

9 | UCC financing statements and account control agreements, releases of any guaranties, assignments

10 | and pledges, including MMP Ventures' membership interests in 845 Flower and Chinatown, the

11 | MMPI Guaranties and the Accounts Pledge and Pledge Agreements.

12 | As a result of the settlement, the Chinatown Adversary Proceeding will be dismissed and

13 | Canyon will withdraw its RFS Motion.  The sale will provide approximately $20 million in sale

14 | proceeds to the estate and, after payment of administrative expenses, such funds will be available to

15 | pay intercompany claims.  The impact of successful resolution of these cases is that the remaining

16 | proceeds from the sale of this Project will be available to the MMPI Debtors at the Effective Date

17 | rather than one or more years later.  Further, the Chinatown Property is no longer encumbered and

18 | will be available to the Company as an unencumbered property.

19 | **V.**

20 | **SUMMARY OF THE PLAN**

21 | The Plan provides for the treatment and payment of Claims against the bankruptcy estates

22 | of each of the Debtors.  It also provides for the payment of unclassified claims, such as

23 | administrative expense claims and priority tax claims against each Debtor.  Claims or Interests are

24 | classified in a particular Class only to the extent that the Claim or Interest qualifies within the

25 | description of that Class, and are classified in another Class or Classes to the extent that any

26 | remainder of the Claim or Interest qualifies within the description of such other Class or Classes.

27 |

28 |

351389.04 [XP]     25195

1        **1.    Common Class Treatments for Classified Claims**

2        The following are Common Class Treatments for the following classes of Claims and

3   Interests: (i) Secured Tax Claims, (ii) Secured Lender Claims, (iii) Other Priority Claims, (iv)

4   Unsecured Tenant Security Deposit Claims, (v) Convenience Class Claims, (vi) General Unsecured

5   Claims, (vii) Intercompany Claims, and (viii) Equity Interests. The Classes of Claims and Interests

6   for each Debtor will either receive the Common Treatment or a treatment specific to a particular

7   Class. For each Class and for each Debtor, the Plan will specify whether such class will receive the

8   common treatment set forth herein or another treatment.

9        In addition to the specific treatment detailed below, the Debtors expressly reserve the right

10  to abandon any of their real properties pursuant to Section 554 of the Bankruptcy Code prior to the

11  Confirmation Date. The Debtors also expressly reserve the right, at any time during the term of the

12  Plan, to refinance the obligations secured by any of their real properties and satisfy the full amount

13  of the Allowed Secured Claims against such real property(ies) from the proceeds of such

14  refinancing. The Debtors also reserve the right subject to Court Approval to sell any of their

15  properties prior to the Effective Date and Reinstate the obligations with respect thereto and pay any

16  such Claims in full under the Plan at the Effective Date. The Debtors also reserve the right to make

17  full or partial payment of the Debt at any time on or following the Effective Date.

18        a.    **Common Secured Tax Claim Treatment**

19        Pursuant to, and subject to Court approval of the Debtors' settlement with the County, the

20  Holder shall receive deferred cash payments equal to the Allowed Secured Tax Claims with interest

21  at the rate of 18.00 percent per annum, on the Allowed Secured Tax Claim until paid in full.

22  Holders of Allowed Secured Tax Claims shall receive deferred cash payments, payable in [eleven

23  (11)] equal quarterly installments commencing on the first Quarterly Distribution Date and

24  thereafter on each succeeding Quarterly Distribution Date, with the last payment payable by no

25  later than March 26, 2013.

26        The Reorganized Debtor shall have the right to pay the Allowed Secured Tax Claim, or any

27  remaining balance of such Claim, or any portion of such Claim, at any time on or after the

28  Effective Date.

351389.04 [XP]    25195

b.    **Common Secured Lender Claim Treatment**

The Holder shall receive deferred Cash payments over a period of either (i) five years from the Effective Date if the Holder votes to accept the Plan or (ii) seven years from the Effective Date if the Holder votes to reject the Plan (the "Maturity Date"), in an aggregate amount equal to the amount of the Allowed Secured Claim, plus interest from the Effective Date on the unpaid portion of the Allowed Secured Claim, at the rate prescribed below.  Payments shall be made in the amount of the monthly accruing interest, with the principal balance and any unpaid interest due and payable at the Maturity Date.  The monthly installments of interest shall be payable on or before the fifteenth (15th) day of each month, with the first installment due on or before the fifteenth (15th) day of the first month following the month the Effective Date occurs.  Each installment shall be in the amount equal to interest on the Allowed Claim at the rate of 4.0% per annum or as otherwise established by the Court, provided, however, that in the event such Claim is not an allowed Claim at the Effective Date then interest shall be payable on the undisputed portion of such Claim until the Claim is allowed pursuant to a Final Order of the Bankruptcy Court.  Once the Claim is an Allowed Claim pursuant to a Final Order, then on the next interest payment date, the Holder shall receive a payment equal to the unpaid interest due and owing on the disputed portion of the Claim from the Effective Date.

The terms and conditions of the agreements or instruments between the Holder and the Debtor shall be restructured and amended as of the Effective Date pursuant to a Loan Modification Agreement the form of which is attached hereto as Exhibit D.  The Holder and Debtor shall, within a reasonable period of time after the Effective Date (or after a Final Order of the Bankruptcy Court allowing the Claim) complete the Loan Modification Agreement consistent with the terms of this Plan, and execute and deliver the same to be effective as of the Effective Date.  If there shall be found any error in the Loan Modification Agreement such that it was not completed consistent with the terms of this Plan, the Holder and the Debtor shall correct and re-execute the Loan Modification Agreement to be consistent with the Plan.  Except as provided in this section and the Loan Modification Agreement, and notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all valid, enforceable and perfected prepetition liens of the Holder in its

70

1  Collateral shall survive the Effective Date and continue in accordance with the contractual terms of

2  the underlying agreements with such Holder and/or applicable law until the Holder's Allowed

3  Secured Claim is satisfied pursuant to this Plan; provided however, that the Holder shall be

4  prohibited from exercising rights or remedies pursuant to such underlying agreements so long as

5  the Reorganized Debtor is in compliance with this Plan.  Any lien or interest granted to the Holder

6  by the Court as adequate protection shall be released and extinguished upon confirmation.

7           c.      **Common Other Priority Claim Treatment**

8          This Class includes Other Priority Claims for an amount entitled to priority under Sections

9  507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, and does not include any

10 Administrative Claim or Tax Claim.  These unsecured Other Priority Claims are for unsecured

11 Claims for accrued employee compensation earned within 180 days prior to the Petition Date, to

12 the extent of $10,950 per employee

13         The Bankruptcy Code requires that each Holder of a Priority Claim receive Cash on the

14 Effective Date equal to the amount of the Holder's Allowed Claim.  However, a Class of Priority

15 Claims may vote to accept deferred Cash payments of a value, as of the Effective Date, equal to the

16 allowed amount of such Claims.

17         Unless otherwise agreed to by the parties, each Holder of an Allowed Other Priority Claim

18 will receive an initial payment equal to 50% of the Holder's Allowed Claim and a second payment

19 for the balance of the Holder's Allowed Claim one year after the Effective Date with interest at the

20 rate of 1.0% per annum.  To the extent such claim includes accrued vacation or sick pay such

21 vacation or sick pay shall not be disbursed in cash but the vacation or sick time shall be reinstated

22 and the holder shall be authorized to use such vacation or sick time following the Effective Date.

23 The initial payment shall occur on or before the later of (i) the Effective Date or (ii) 30 days after

24 the end of the calendar quarter in which the Disputed Claim becomes an Allowed Claim and (iii)

25 the date that such Claim would be paid in accordance with any terms and conditions of any

26 agreements or understandings relating thereto between the applicable Debtor and the Holder of

27 such Claim.

28

351389.04 [XP]     25195

1          d.    **Common Tenant Security Deposits Treatment**

2          The Allowed Claims of the Holders shall be reinstated as of the Effective Date of the Plan.

3          e.    **Common Convenience Class Claim Treatment**

4          Convenience Classes of General Unsecured Claims against each Debtor includes those

5    Claims the amount of which are equal to or less than $500. The Holders of such Claims shall

6    receive a single Cash payment equal to the full Allowed amount of the Claim, payable on the later

7    of (i) the Effective Date or as soon as practicable thereafter or (ii) 30 days after the end of the

8    calendar quarter in which the Disputed Claim becomes an Allowed Claim or (iii) 30 days after the

9    contingent claim becomes non-contingent. No payments shall be made to Holders of contingent

10   Claims until such Claims become non-contingent.

11         The Holder of any Claim in any Impaired "C" Class may elect to reduce the Allowed

12   amount of its Claim to $500 and be treated as a member of the Convenience Class.

13         f.    **Common Unsecured Claim Treatment**

14         The Holders of Allowed General Unsecured Claims shall receive deferred cash payments

15   equal to 100% of the Allowed amount of the Claim plus interest at the rate of 1.0% per annum,

16   payable in twenty (20) equal quarterly installments commencing on the first Quarterly Distribution

17   Date and thereafter on each succeeding Quarterly Distribution Date. Any Holder shall have the

18   right to elect an alternate treatment for such claim which election must be made at the time such

19   Holder votes on the Plan. Under the alternate treatment, the Holder shall receive payment of 50%

20   of its Allowed Claim within 30 days after the Effective Date in full satisfaction of its Claim.

21         In the event a Disputed Claim becomes an Allowed Claim after the Effective Date, the first

22   quarterly payment will be due and payable on the later of the next Quarterly Distribution Date or

23   30 days after date the Disputed Claim becomes an Allowed Claim, and the first payment shall

24   include payment for any quarter for which payment had not been made before the Disputed Claim

25   became an Allowed Claim.

26         g.    **Common Unsecured Guaranty Claim Treatment**

27         Claims in this Class consist of Guaranty Claims on obligations for which another one of the

28   Debtors is the principal obligor (referred to generally in this section as the "Principal Obligor") and

351389.04 [XP]    25195

1  for which the principal obligation is provided for under this Plan or under the plan filed by MM

2  845 S. Flower and Chinatown.

3        As of the Effective Date, all provisions of all guaranties giving rise to such Guaranty

4  Claims shall be canceled and extinguished, including any and all waivers of suretyship rights and

5  defenses under California Civil Code § 2856, and all Claims arising under such guaranties shall be

6  released except as provided in this Plan.  Guaranty Claims shall be deemed contingent as of the

7  Effective Date and shall be deemed to be guarantees of the amended obligations of the respective

8  Principal Obligors under the Plan.  The Holder of a Guaranty Claim in this Class shall not receive

9  any distribution on account of its Guaranty Claim; unless and until the Principal Obligor defaults

10  under the terms of this Plan (e.g., by failing to make a payment of interest and failing to timely cure

11  such default under the surviving terms of the applicable promissory note).  In that event, the Holder

12  of a Guaranty Claim shall be required to proceed, whether by judicial or non-judicial foreclosure,

13  against all real property securing the debt owed by the Principal Obligor to the Holder before

14  seeking payment on account of its Guaranty Claim.  If the Holder forecloses on such real property

15  collateral, the amount of the Holder's Guaranty Claim shall be equal to (1) the amount owed by the

16  Principal Obligor at the time of default, less the price for which the real property collateral was sold

17  at the foreclosure sale (including by credit bid) or the fair market value of such property at the time

18  of the foreclosure sale, whichever is greater.  If the price for which the real property collateral was

19  sold at the foreclosure sale is greater than the amount owed by the Principal Obligor as of the date

20  of default, the amount of the Holder's Guaranty Claim shall be zero and any excess amounts will

21  be distributed to the relevant principal obligor in accordance with applicable law.

22        If the price for which the real property collateral was sold at the foreclosure sale is less than

23  the amount owed by the Principal Obligor as of the date of default, the Holder's resulting Guaranty

24  Claim shall be deemed non-contingent.  Within thirty (30) days after the foreclosure sale, the

25  Holder shall file a motion with the Bankruptcy Court on regular notice to the Debtors seeking entry

26  of an order determining the amount of the Holder's Guaranty Claim as provided herein.  Upon the

27  entry of that order, the Holder's Guaranty Claim shall receive the same treatment as afforded to

28  Claims (i.e., the Holder shall receive deferred cash payments equal to 100% of the Allowed amount

1    of the Claim with interest, payable in equal quarterly installments commencing on the first

2    Quarterly Distribution Date and thereafter on each succeeding Quarterly Distribution Date). In the

3    event that the order is entered after the first Quarterly Distribution Date, the initial payment shall be

4    due and payable on the later of the next Quarterly Distribution Date or thirty (30) days after the

5    date on which the order is entered.

6                       h.      **Common Treatment for Guaranty Claims held by Settling**

7                                 **Guaranty Creditors**

8           The foregoing treatment shall not apply with regard to guaranties executed by MMPI or

9    other Debtors for the benefit of Cathay, FNBN, Imperial, PCB, or other Holders of Guaranty

10    Claims where, pursuant to settlements approved by the Bankruptcy Court, the guaranties have been

11    confirmed or otherwise continued. With respect to those guaranties, the treatment of the Holder's

12    Guaranty Claim shall be consistent in all regards with the Bankruptcy Court-approved settlement.

13                       i.      **Common Intercompany Claim Treatment**

14           The Holders shall retain such Claims and all rights, interests, and obligations related thereto

15    but, notwithstanding, the Holders consent to the treatment afforded and distributions to be made

16    under this Plan to Holders in each class of Allowed Claims.

17                       j.      **Common Equity Interest Treatment**

18           The Holders of the Equity Interests in the Debtors Equity Interests in this Class shall retain

19    their Equity Interests in the Debtor.

20                     2.      **Summary of Classified Claims and Treatment**

21           The following are Common Class Treatments for the following classes of Claims and

22           The categories of Claims and Interests listed in the chart below classify Claims (except for

23    Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting,

24    confirmation and distribution pursuant to this Plan. The amounts listed for each Class in the chart

25    below represent the Debtors' estimate of the amount of the Allowable Claims asserted in each

26    Class and contain a brief summary description of the treatment of each class. This is a summary

27    for information only and does not specify the full terms of the treatment for each class. Such full

28    description is set forth in Article III of the Plan. The terms of the Plan control over the summary

descriptions set forth herein.  In addition, the Debtors expressly reserve all of their rights to object to the amount, character and enforceability of any Claim, whether or not listed in the chart below.

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| **1.    Meruelo Maddux Properties, Inc.[6]** | | | |
| 1A | Secured Claim of Oliver, Sandifer - $436,901 | Impaired. | Paid in full. Interest accrues on unpaid amount at 3.50%.  10% of claim paid on Effective Date. 10% paid on each subsequent anniversary of Effective Date until litigation that is basis for attorney lien is resolved, with remaining amounts paid from litigation recoveries. |
| 1B | Priority Benefits Claims - $46,362 | Unimpaired. | Paid in full.  50% of claim paid on Effective Date and 50% of claim plus interest at 1.0% per annum paid on 1st anniversary of Effective Date. To the extent such claim includes accrued vacation or sick pay such vacation or sick pay shall not be disbursed in cash but the vacation or sick time shall be reinstated and the holder shall be authorized to use such vacation or sick time following the Effective Date. |
| 1C-1 | General Unsecured Claims – Convenience Class - $1,274 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date,  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 1C-2A | Unsecured Guaranty Claims - $102,245,154 | Impaired. | Guaranties deemed contingent as of Effective Date and deemed to guaranty amended obligation of Principal Obligor under Plan. Guarantor enjoined from enforcement until default by Principal Obligor on payment obligations under Plan are uncured for 15 days.  Guarantor must  proceed against real property collateral first. Guaranty claim reduced by |

[6] The Debtors are listed in the order of the Service Level Debtors and then the Property Level Debtors.

75

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | payments received on principal obligation and the purchase price received at foreclosure sale for collateral or fair market value, whichever is greater. See Common Unsecured Guaranty Claim Treatment and Plan for full description of treatment. |
| 1C-2B | Unsecured Guaranty Claims – Settling Guaranty Creditors - $92,453,017 | Impaired. | The treatment of the Holder's Guaranty Claim shall be consistent in all regards with the Bankruptcy Court-approved settlement. |
| 1C-3 | General Unsecured Claims - $7,668,891 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 1E | Equity Interests | Impaired. | Cancelled. No Recovery on Equity Interests. |
| **2.** | **Meruelo Maddux Properties L.P.** | | |
| 2C-1 | General Unsecured Claims – Convenience Class - $2,737 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 2C-2 | Unsecured Guaranty Claims - $41,001,926 | Impaired. | Guaranties deemed contingent as of Effective Date and deemed to guaranty amended obligation of Principal Obligor under Plan. Guarantor enjoined from enforcement until default by Principal Obligor on payment obligations under Plan are uncured for 15 days. Guarantor must proceed against real property collateral first. Guaranty claim reduced by payments received on principal obligation and the purchase price received at foreclosure sale for collateral or fair market value, whichever is greater. See Common Unsecured Guaranty Claim Treatment and Plan for full description of treatment. |
| 2C-3 | General Unsecured Claims - $1,869,638 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have |

76

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 2D | Intercompany Claims - $452,881,601 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 2E | Equity Interests of MMPI (99.6%) and Holders of LTIP Units (0.4%) | Impaired. | LTIP units cancelled. MMPLP merged into MMPI |
| **3.** | **MMP Ventures LLC** | | |
| 3C | General Unsecured Claims - $652 | Unimpaired. | Paid in full at Effective Date. |
| 3D | Intercompany Claims - $2,509 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 3E | Equity Interests of MMPLP (100%) | Unimpaired. | Holders retain their interests. |
| **4.** | **Meruelo Maddux Construction, Inc.** | | |
| 4C-1 | General Unsecured Claims – Convenience Class - $672 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 4C-2 | General Unsecured Claims - $652 | Unimpaired. | Paid in full at Effective Date. |
| 4D | Intercompany Claims - $10,588 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 4E | Equity Interests of MMPLP (100%) | Unimpaired. | Holders retain their interests. |
| **5.** | **Meruelo Maddux Management LLC** | | |
| 5B | Priority Benefits Claims - $151,247 | Unimpaired. | Paid in full. 50% paid on Effective date and 50% plus interest at 1.0% paid on 1st Anniversary of Effective Date. To the extent such claim includes accrued vacation or sick pay such vacation or sick pay shall not be disbursed in cash but the vacation or sick time shall be reinstated and the holder shall be authorized to use such vacation or sick time following the Effective Date. |
| 5C – 1 | General Unsecured Claims – Convenience Class - $24 | Unimpaired. | Claims of $500 or Less Paid in Full on Effective Date. See |

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 5C - 2 | General Unsecured Claims - $652 | Unimpaired. | Paid in full at Effective Date. |
| 5D | Intercompany Claims - $4,296,137 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 5E | Equity Interests of MMPLP (99%) and MMCI (1%) | Unimpaired. | Holders retain their interests. |
| **6.** | **Meruelo Maddux – 555 Central Avenue LLC** | | |
| 6C | General Unsecured Claims - $10,102 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 6D | Intercompany Claims - $1,999,388 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 6E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **7.** | **Merco Group – Overland Terminal LLC** | | |
| 7C | General Unsecured Claims - $132,750 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 7D | Intercompany Claims - $1,093,202 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 7E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **8.** | **National Cold Storage LLC** | | |
| 8C-1 | General Unsecured Claims – Convenience Class - $212 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 8C-2 | General Unsecured Claims – $4,545 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
|  |  |  | of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 8E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **9.** | **Wall Street Market LLC** |  |  |
| 9C-1 | General Unsecured Claims – Convenience Class - $1,118 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 9C-2 | General Unsecured Claims - $2,092 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 9D | Intercompany Claims - $3,536,086 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 9E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests |
| **10.** | **Meruelo Maddux Properties – 1009 N. Citrus Avenue, Covina, LLC** |  |  |
| 10A | Los Angeles County Secured Tax Claim - $118,420 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 10C-1 | General Unsecured Claims – Convenience Class - $525 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 10C-2 | General Unsecured Claims - $15,357 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 10D | Intercompany Claims - $6,630,774 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| 10E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **11.** | **Meruelo Maddux – 230 W. Avenue 26 LLC** | | |
| 11A | Los Angeles County Secured Tax Claim - $163,484 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 11C-1 | Unsecured Claims – Tenant Security Deposits - $24,610 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 11C-2 | General Unsecured Claims – Convenience Class - $999 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 11C-3 | General Unsecured Claims - $3,952 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 11D | Intercompany Claims - $6,414,500 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 11E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **12.** | **Meruelo Maddux Properties – 306-330 N. Avenue 21 LLC** | | |
| 12A | Los Angeles County Secured Tax Claim - $111,937 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 12C-1 | Unsecured Claims – Tenant Security Deposits - $8,025 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 12C-2 | General Unsecured Claims – Convenience class - $597 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 12C-3 | General Unsecured Claims - $14,882 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 12D | Intercompany Claims - $3,569,603 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 12E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **13.    Meruelo Maddux – 817-825 S. Hill Street LLC** | | | |
| 13A | Los Angeles County Secured Tax Claim – $350,917 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 13C-1 | General Unsecured Claims – Convenience Class - $350 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 13C-2 | General Unsecured Claims - $1,583 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 13D | Intercompany Claims - $16,377,573 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 13E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **14.    Meruelo Maddux – 1000 E. Cesar Chavez LLC** | | | |
| 14A | Los Angeles County Secured Tax Claim - $167,582 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 14C-1 | Unsecured Claims – Tenant Security Deposits - $3,100 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 14C-2 | General Unsecured Claims – Convenience Class - $705 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date.  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 14C-3 | General Unsecured Claims - $10,930 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 14D | Intercompany Claims - $6,804,902 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 14E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **15.**  **Meruelo Maddux Properties – 1060 N. Vignes LLC** | | | |
| 15A | Los Angeles County Secured Tax Claim - $115,121 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 15C-1 | General Unsecured Claims – Convenience Class - $597 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date.  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 15C-2 | General Unsecured Claims - $71,044 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 15D | Intercompany Claims - $6,549,824 | Unimpaired | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 15E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **16.**  **Meruelo Maddux – 2415 E. Washington Boulevard LLC** | | | |
| 16A | Los Angeles County Secured Tax Claim - $50,897 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 16C-1 | General Unsecured Claims – Convenience Class - $175 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date.  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 16C-2 | General Unsecured Claims - $4,780 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days |

82

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 16D | Intercompany Claims - $2,220,879 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 16E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **17.** | **Meruelo Maddux – 5500 Flotilla Street LLC** | | |
| 17C | General Unsecured Claims - $652 | Unimpaired. | Paid in full at Effective Date. |
| 17D | Intercompany Claims - $611,663 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 17E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **18.** | **Meruelo Maddux Properties – 12385 San Fernando Road LLC** | | |
| 18A | Los Angeles County Secured Tax Claim - $211,338 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 18C-1 | General Unsecured Claims – Convenience Class - $350 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 18C-2 | General Unsecured Claims - $2,652 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 18D | Intercompany Claims - $8,997,401 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 18E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **19.** | **Merco Group – 146 E. Front Street LLC** | | |
| 19C-1 | General Unsecured Claims – Convenience Class - $350 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 19C-2 | General Unsecured Claims - $652 | Unimpaired. | Paid in full on the Effective Date |

83

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| 19D | Intercompany Claims - $2,243,787 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 19E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **20.** | **Merco Group – 801 E. 7th Street LLC** | | |
| 20A | Los Angeles County Secured Tax Claim - $14,177 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 20C | General Unsecured Claims - $2,652 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 20D | Intercompany Claims - $1,346,512 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 20E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **21.** | **Merco Group – 1211 E. Washington Boulevard LLC** | | |
| 21A-1 | Los Angeles County Secured Tax Claim - $245,814 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 21A-2 | RoofCorp of CA, Inc. - $37,500 | Impaired. | Paid in full with 50% of claim paid on Effective Date and 50% of Claim, plus interest from the Effective Date at 3.5% on the 1st anniversary of the Effective Date. |
| 21C-1 | Unsecured Claims – Tenant Security Deposits - $42,357 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 21C-2 | General Unsecured Claims – Convenience Class - $260 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 21C-3 | General Unsecured Claims - $31,231 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 21D | Intercompany Claims - $9,122,302 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 21E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| 22. | Merco Group – 1308 S. Orchard LLC | | |
| 22A | Los Angeles County Secured Tax Claim - $36,714 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 22C | General Unsecured Claims - $4,322 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 22D | Intercompany Claims - $1,346,512 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 22E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| 23. | Merco Group – 2040 Camfield Avenue LLC | | |
| 23C | General Unsecured Claims - $652 | Unimpaired. | Paid in full on the Effective Date. |
| 23D | Intercompany Claims - $5,163,790 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 23E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| 24. | Merco Group – Ceres Street Produce LLC | | |
| 24A | Los Angeles County Secured Tax Claim - $65,342 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 24C-1 | General Unsecured Claims – Convenience Class - $121 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date.  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 24C-2 | General Unsecured Claims - $2,059 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 24D | Intercompany Claims - $2,772,264 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 24E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **25.** | **Meruelo Baldwin Park LLC** | | |
| 25A | Los Angeles County Secured Tax Claim - $201,681 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 25C-1 | Unsecured Claims – Tenant Security Deposits - $3,000 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 25C-2 | General Unsecured Claims – Convenience Class - $213 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 25C-3 | General Unsecured Claims - $4,082 | Impaired. | Paid in full over 5 years with interest at 1%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 25D | Intercompany Claims - $8,847,699 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 25E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **26.** | **Santa Fe & Washington Market LLC** | | |
| 26A | Los Angeles County Secured Tax Claim - $45,481 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 26C-1 | Unsecured Claims – Tenant Security Deposits - $27,900 | Unimpaired. | Creditors legal, equitable and contractual rights are Reinstated. |
| 26C-2 | General Unsecured Claims – Convenience Class - $251 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | Claim Treatment and Plan for full description of Treatment. |
| 26C-3 | General Unsecured Claims - $4,591 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 26D | Intercompany Claims - $4,879,642 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 26E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **27.      Merco Group – 5707 S. Alameda LLC** | | | |
| 27A | Los Angeles County Secured Tax Claim - $112,423 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 27C-1 | Unsecured Claims – Tenant Security Deposits - $5,794 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 27C-2 | General Unsecured Claims – Convenience Class - $718 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 27C-3 | General Unsecured Claims - $16,673 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 27D | Intercompany Claims - $4,859,886 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 27E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **28.      Meruelo Maddux – 3rd and Omar Street LLC** | | | |
| 28A-1 | Los Angeles County Secured Tax Claim - $125,813 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |

87

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| 28A-2 | Legendary Secured Claim - $2,559,658 | Impaired. | Creditor receives monthly payments of interest at 4% per annum on Allowed Amount of Claim for 5 years if Creditor accepts Plan or 7 years if Creditor rejects Plan with payment of principal by the end of the 5 or 7 year term.  Loan documents are modified as provided in the Plan. Creditor retains its Lien on its collateral. See Common Secured Lender Treatment and Plan for full description of treatment. |
| 28C-1 | Unsecured Claims – Tenant Security Deposits - $2,600 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 28C-2 | General Unsecured Claims – Convenience Class - $954 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date.  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 28C-3 | General Unsecured Claims - $2,772 | Impaired. | Paid in full over 5 years with interest at 1.0%.  Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 28D | Intercompany Claims - $3,416,741 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 28E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **29.        Meruelo Maddux – 336 W. 11th Street LLC** | | | |
| 29A-1 | Los Angeles County Secured Tax Claim - $199,416 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 29A-2 | Legendary Secured Claim - a pledge of the Debtor's Real Property to secure the obligations of 620 Gladys Avenue, LLC  (see Class 46A-2 below). | Impaired. | Creditor receives monthly payments of interest at 4% per annum on Allowed Amount of Claim for 5 years if Creditor accepts Plan or 7 years if Creditor rejects Plan with payment of principal by the end of the 5 or 7 year term.  Loan documents are modified as provided in the Plan.  Creditor |

| Class | Description of Class | Impaired / Unimpaired | Treatment |
|-------|----------------------|------------------------|-----------|
| | | | retains its lien on its collateral. See Common Secured Lender Treatment and Plan for full description of treatment. |
| 29A-3 | Grand Avenue Lofts, HOA Secured Claim - $270,000 | Impaired | Claim is disputed.  To the extent allowed, Creditor receives monthly payments of interest at 4% per annum on Allowed Amount of Claim for 5 years if Creditor accepts Plan or 7 years if Creditor rejects Plan with payment of principal by the end of the 5 or 7 year term.  Loan documents are modified as provided in the Plan   See Common Secured Lender Treatment and Plan for full description of treatment. |
| 29A-4 | Grand Avenue Lofts, LLC / CIM Urban RE Fund GP II, LLC Secured Claim – 0 | Impaired. | Same as 29A-3 immediately above. |
| 29C-1 | General Unsecured Claims - Convenience Class  $400 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date.  See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 29C-2 | General Unsecured Claims - $43,857 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 29D | Intercompany Claims - $10,554,921 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 29E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **30.  Meruelo Maddux – 420 Boyd Street LLC** | | | |
| 30A-1 | Los Angeles County Secured Tax Claim - $272,651 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County. See Plan for full description of treatment. |
| 30A-2 | Legendary Secured Claim - $5,950,000 | Impaired. | Creditor receives monthly payments of interest at 4% per annum on Allowed Amount of Claim for 5 years if Creditor accepts Plan or 7 years if |

351389.04 [XP]      25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| | | | Creditor rejects Plan with payment of principal by the end of the 5 or 7 year term. Loan documents are modified as provided in the Plan. Creditor retains its lien on its collateral. See Common Secured Lender Treatment and Plan for full description of treatment. |
| 30C-1 | Unsecured Claims – Tenant Security Deposits - $21,463 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 30C-2 | General Unsecured Claims – Convenience Class - $1,465 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 30C-3 | General Unsecured Claims - $31,296 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 30D | Intercompany Claims - $2,607,940 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 30E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |
| **31.    Meruelo Maddux – 500 Mateo Street LLC** | | | |
| 31C-1 | General Unsecured Claims - Convenience Class $255 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 31C-2 | General Unsecured Claims - $1,657 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date. See Common Unsecured Claim Treatment and Plan for full description of treatment. |
| 31D | Intercompany Claims - $1,968,955 | Unimpaired. | Creditors retain their claims and all rights, interests and obligations related thereto. |
| 31E | Equity Interests of MMP Ventures (100%) | Unimpaired. | Holders retain their interests. |

351389.04 [XP]    25195

| CLASS | DESCRIPTION OF CLASS | IMPAIRED / UNIMPAIRED | TREATMENT |
|---|---|---|---|
| 32. | Meruelo Maddux Properties – 760 S. Hill Street LLC | | |
| 32A-1 | Los Angeles County Secured Tax Claim - $256,063 | Impaired. | Creditor receives Common Secured Tax Claim Treatment pursuant to agreement with County.  See Plan for full description of treatment. |
| 32A-2 | Bank of America Secured Claim - $28,108,094 | Impaired. | Creditor receives monthly payments of interest at 4% per annum on Allowed Amount of Claim for 5 years if Creditor accepts Plan or 7 years if Creditor rejects Plan with payment of principal by the end of the 5 or 7 year term.  Loan documents are modified as provided in the Plan Creditor retains its lien on its collateral.  See Common Secured Lender Treatment and Plan for full description of treatment. |
| 32B | Priority Benefits Claims - $14,223 | Unimpaired. | Paid in full.  50% of claim paid on Effective Date and 50% of claim plus interest at 4.0% per annum paid on 1st anniversary of Effective Date.  To the extent such claim includes accrued vacation or sick pay such vacation or sick pay shall not be disbursed in cash but the vacation or sick time shall be reinstated and the holder shall be authorized to use such vacation or sick time following the Effective Date. |
| 32C-1 | Unsecured Claims – Tenant Security Deposits $39,061 | Unimpaired. | Creditors' legal, equitable and contractual rights are Reinstated. |
| 32C-2 | General Unsecured Claims – Convenience Class - $2,436 | Unimpaired. | Claims of $500 or Less Paid in Full at Effective Date. See Common Convenience Class Claim Treatment and Plan for full description of Treatment. |
| 32C-3 | General Unsecured Claims - $460,061 | Impaired. | Paid in full over 5 years with interest at 1.0%. Creditors have right to elect to reduce claim by 50% and receive payment in full of reduced amount 30 Days after Effective Date.  See Common Unsecured Claim Treatment and Plan for full description of treatment. |

351389.04 [XP]   25195