1   JOHN J. BINGHAM, JR. (State Bar No. 075842)
    *JBingham@DGDK.com*
2   JOHN N. TEDFORD, IV (State Bar No. 205537)
    *JTedford@DGDK.com*
3   JULIA W. BRAND (State Bar No. 121760)
    *JBrand@dgdk.com*
4   ENID COLSON (State Bar No. 189912)
    *EColson@dgdk.com*
5   DANNING, GILL, DIAMOND & KOLLITZ, LLP
    2029 Century Park East, Third Floor
6   Los Angeles, California 90067-2904
    Telephone: (310) 277-0077
7   Facsimile: (310) 277-5735

8   Attorneys for Meruelo Maddux Properties, Inc., and
    affiliated Debtors and Debtors-in-Possession

9               UNITED STATES BANKRUPTCY COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11              SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| 12  In re | ) Case No. 1:09-bk-13356-KT |
| | ) |
| 13  MERUELO MADDUX PROPERTIES, INC., et al.,[1] | ) Chapter 11 (Jointly Administered) |
| 14 | ) **MODIFIED SECOND AMENDED JOINT** |
|         Debtors and Debtors-in-Possession. | ) **DISCLOSURE STATEMENT** |
| 15 | ) **DESCRIBING SECOND AMENDED** |
| | ) **JOINT PLAN OF REORGANIZATION** |
| 16 | ) **OF MERUELO MADDUX** |
| ☑  Affects all Debtors | ) **PROPERTIES, INC., ET AL.** |
| 17 | ) |
| ☐  Affects the following Debtor(s): | ) Date:      June 21, 2010 |
| 18 | ) Time:     9:30 a.m. |
| | )) Place:    Courtroom 301 |
| 19 | )            21041 Burbank Blvd. |
| | )            Woodland Hills, California |
| 20 | ) |
| | ) |
| 21 | ) |

22

23

24

<hr/>

25  [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT;
26  1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT;
27  1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.
28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................ 3

    A.  OVERVIEW ...................................................................................... 3

    B.  EXHIBITS AND ADDITIONAL INFORMATION............................ 4

    C.  HOLDERS OF CLAIMS ENTITLED TO VOTE ............................... 7

    D.  VOTING PROCEDURES ................................................................. 10

    E.  CONFIRMATION HEARING............................................................ 11

    F.  NOTICES ......................................................................................... 11

II. DEBTORS' BUSINESS AND OPERATIONS PRIOR TO THE FILING ...... 12

    A.  CORPORATE HISTORY OF THE DEBTORS ................................ 12

    B.  NATURE OF THE DEBTORS' BUSINESS ..................................... 12

        1.  210 – 212 and 230 West Avenue 26, Los Angeles .................... 14

        2.  306 – 330 North Avenue 21, Los Angeles ................................. 15

        3.  1000 East Cesar Chavez, Los Angeles .. ................................... 15

        4.  2415 East Washington Boulevard, Los Angeles16 ................... 16

        5.  1211 East Washington Boulevard, Los Angeles16 ................... 16

        6.  13853, 13822 and 13916  Garvey Avenue, 13904 Corak
            Street and 3060 Feather Avenue, Baldwin Park 17 ................... 17

        7.  1910 - 1922 Santa Fe Avenue, 2425 East 12th Street and 303
            South Hewitt, Los Angeles ....................................................... 17

        8.  5701 and 5707 - 5715 South Alameda Street and 5016 Alba
            Street, Los Angeles .................................................................. 18

        9.  3rd & Omar Street, Los Angeles ............................................... 19

        10. 420 Boyd Street, Los Angeles ................................................... 19

        11. 760 South Hill Street, and 325 West 8th Street, Los Angeles
            (The Union Lofts) ..................................................................... 20

        12. 788 South Alameda, Los Angeles ............................................. 20

        13. 905 8th Street, Los Angeles....................................................... 21

353400.2 [XP]    25195

1

## TABLE OF CONTENTS (cont.)

2
**Page**

3
4
14. Alameda Produce Market, Los Angeles (Including Alameda Square and Seventh Street Produce Market) ...................................21

5
15. 1500 Griffith Avenue, Los Angeles............................................................22

6
16. 1919 Vineburn Street, Los Angeles.........................................................23

7
17. 2131 Humboldt Street, Los Angeles........................................................23

8
18. 2529 Santa Fe Avenue, Vernon (Santa Fe Plaza)......................................24

9
19. 2640 East Washington Boulevard, Los Angeles (Washington Produce Market) ...................................................................................24

10
20. 2951 Lenwood Road, Barstow (Barstow Produce Center)......................25

11
21. 3185 East Washington Boulevard, Los Angeles (Washington Cold Storage) ..........................................................................................25

12
13
22. 620, 643 and 644 South Gladys Avenue, 830 - 838 East 6th Street and 647 - 649 Ceres Avenue, Los Angeles .....................................26

14
23. 2001 - 2021 West Mission Boulevard, Pomona  ......................................27

15
24. 1124 South Olive, 1117-1119 South Olive and 218 W. 11th Street, Los Angeles...................................................................................27

16
17
25. 950 and 960 E. 3rd Street, Los Angeles .....................................................28

18
26. 815 East Temple Street, 210 Center Street and 729 East Temple Street, Los Angeles (Center Village) ........................................28

19
27. 833 Wall Street (Wall Street Market), Los Angeles.................................29

20
28. 1875 West Mission Boulevard, Pomona ...................................................29

21
22
29. Santa Fe Commerce Center – 2445, 2460 and 2535 East 12th Street, Los Angeles...................................................................................30

23
30. 1009 North Citrus Avenue, Covina (Citrus Gardens) ...............................31

24
31. 817-825 South Hill Street, Los Angeles (Ullman Tower Two).................31

25
32. 1060 North Vignes, Los Angeles (Vignes Village)....................................31

26
33. 12361 and 12385 San Fernando Road, Sylmar (San Fernando Court)........................................................................................................32

27
34. 801 East 7th Street, Los Angeles..............................................................32

28
35. 1308 South Orchard, Los Angeles............................................................32

**TABLE OF CONTENTS (cont.)**

<u>Page</u>

36.    758 Ceres Avenue, Los Angeles (Ceres Street Produce
Market) ............................................................................32

37.    336 West 11th Street, Los Angeles (South Park Towers) ..........................33

38.    915-949 South Hill Street, Los Angeles (Ullman Tower One) .................33

39.    900, 910 and 926 East 4th Street and 405 – 411 S. Hewitt
Street, Los Angeles.............................................................33

40.    425 West 11th Street, Los Angeles (Desmond Building)..........................34

41.    West 11th Street and South Grand Avenue, Los Angeles
(South Park Towers, TransAmerica Lofts & Olive Street
Towers) ............................................................................34

C.    CONSOLIDATED OPERATIONS................. ........................................35

D.    THE DEBTORS' CURRENT AND ON-GOING BUSINESS
STRATEGIES ................................................... ..............................36

1.    The Debtors' Investment Strategy.............................................37

2.    The Debtors' Value Creation Strategies ....................................37

3.    The Company's Operating Strategies.........................................40

E.    PREPETITION CAPITAL STRUCTURE OF THE COMPANY.........................41

1.    MMPI.........................................................................................41

2.    Corporate Structure of the Other Debtors    ..............................43

F.    MATERIAL PROCEEDINGS ........................................................43

1.    Potential Government Tax Audits .............................................44

2.    Indemnification Claims ............................................................44

III.    EVENTS LEADING TO THE COMMENCEMENT OF THE CHAPTER 11
CASES.................................................................................................44

IV.    CHAPTER 11 EVENTS ........................................................................46

A.    ADMINISTRATIVE ORDERS AND MATTERS ................................46

1.    Introduction...............................................................................46

2.    The Cash Collateral Motion and Corresponding Orders ..........47

3.    The Debtors' Single Asset Real Estate ("SARE") Motion........48

-iii-

## TABLE OF CONTENTS (cont.)

**Page**

4.    Motions for Relief from Stay ...................................................... 48

5.    The Debtors' Compromises With Various Lenders .................................... 53

6.    The Debtor's Settlement with the County of Los Angeles ......................... 54

7.    Unexpired Leases and Executory Contracts       ........................................ 54

8.    Summary of Claims Process, Bar Date and Claims Filed .......................... 54

9.    Other Aministrative Matters ...................................................... 57

B.    REAL PROPERTY VALUATION, SALES AND LISTINGS ................................. 58

1.    Value of Property Level Debtors Real Property Assets ............................ 58

2.    Mr. Meruelo's Expertise in Valuing the Debtors Properties ...................... 60

3.    Sales and Listings Since the Commencement of Chapter 11 Cases ........... 62

C.    EVENTS IN THE RELATED CHAPTER 11 CASES MM 84S. FLOWER AND CHINATOWN ................................................. 64

1.    Important Events in MM 845 S. Flower and Chinatown Cases ................. 65

2.    Sale of the Project and Settlement with Canyon  ....................... 66

V.    SUMMARY OF THE PLAN ................................................. 68

1.    Common Class Treatments for Classified Claims ...................... 69

2.    Summary of Classified Claims and Treatment       ........................ 74

B.    Treatment for Unclassified Claims ........................................ 110

1.    Unclassified Claims (Applicable to all of the Debtors) ...................... 110

VI.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................. 117

VII.    MEANS FOR IMPLEMENTATION OF THE PLAN ................................. 118

A.    OVERVIEW OF PLAN IMPLEMENTATION 118

B.    VESTING OF ASSETS ................................................. 119

C.    SALE OR REFINANCE OF CERTAIN OF THE ASSETS OF CERTAIN DEBTORS ................................................. 119

-iv-

## **TABLE OF CONTENTS (cont.)**

**Page**

D.   PERFORMANCE BENCH MARKS ................................................................. 119

E.   EQUITY STRUCTURE FOR REORGANIZED MMPI ..................................... 120

F.   PRIVATE PLACEMENT ............................................................................. 121

G.   SUBSCRIPTION OF NEW EQUITY .............................................................. 122

H.   CERTIFICATE OF INCORPORATION AND BYLAWS;
     CANCELLATION OF MMPI SECURITIES, LTIP UNITS AND
     RELATED AGREEMENTS ........................................................................... 129

I.   ISSUANCE OF NEW EQUITY INTERESTS.................................................... 130

J.   MERGER OF MMPLP AND MMPI .............................................................. 130

K.   Retained Claims And Defenses And Reservation Of Rights.............................. 131

L.   NON-BANKRUPTCY LITIGATION  ............................................................. 133

M.   OBJECTIONS TO CLAIMS ......................................................................... 134

     1.   MMPI ............................................................................................ 135

     2.   MMPLP .......................................................................................... 136

     3.   MM Management ............................................................................. 137

     4.   MG - Overland Terminal .................................................................... 137

     5.   National Cold Storage......................................................................... 137

     6.   MMP 306-330 N. Avenue 21 .............................................................. 137

     7.   MMP 1060 N. Vignes......................................................................... 138

     8.   MMP 12385 San Fernando Road .......................................................... 138

     9.   MG 1211 E. Washington Boulevard ...................................................... 138

     10.   MG Ceres Street Produce ................................................................... 139

     11.   MM 3RD & Omar Street .................................................................... 139

     12.   MM 336 W. 11th Street ...................................................................... 139

     13.   MM 420 Boyd .................................................................................. 139

     14.   MMP 760 S. Hill Street  ..................................................................... 140

     15.   788 S. Alameda ................................................................................ 141

–v–

## **TABLE OF CONTENTS (cont.)**

**Page**

**16.**   Alameda Produce Market ................................................................................141

**17.**   MG 1500 Griffith Avenue ...............................................................................141

**18.**   MMP 2131 Humboldt Street ...........................................................................142

**19.**   2640 Washington Boulevard ...........................................................................142

**20.**   MG 3185 E. Washington Boulevard ................................................................142

**21.**   MG 4th Street Center ......................................................................................142

**22.**   MG 425 W. 11th Street....................................................................................142

**23.**   MG 620 Gladys Avenue ..................................................................................143

**24.**   MG 2001-2021 W. Mission Boulevard ...........................................................143

**25.**   MG Little J.......................................................................................................143

**26.**   MG Southpark ..................................................................................................144

**27.**   Merco Group....................................................................................................144

**28.**   Meruelo Farms.................................................................................................145

**29.**   Meruelo Wall Street.........................................................................................145

**30.**   MM Mission Boulevard....................................................................................145

**31.**   Santa Fe Commerce Center .............................................................................145

N.   DISBURSING AGENT......................................................................................146

**O.**   DISCHARGE OF THE DEBTORS AND INJUNCTION ..................................146

   1.  Discharge ..................................................................................................146

   2.  Injunction ..................................................................................................146

P.   TEMPORARY ENFORCEMENT INJUNCTION .............................................147

Q.   NO LIABILITY FOR SOLICITATION OR PARTICIPATION ........................149

R.   LIMITATION OF LIABILITY ..........................................................................149

S.   CERTIFICATE OF INCORPORATION AND CERTIFICATES OF
     ORGANIZATION..............................................................................................150

T.   OTHER DOCUMENTS AND ACTIONS .........................................................150

353400.2 [XP]      25195

# TABLE OF CONTENTS (cont.)

**Page**

U.    CORPORATE ACTION ............................................................. 150

V.    RETIREE BENEFITS ............................................................ 151

W.    THE CREDITORS' COMMITTEE.................................................. 151

VIII.  MANAGEMENT OF REORGANIZED DEBTORS....151

A.    BOARD OF DIRECTORS AND MANAGEMENT OF THE
      REORGANIZED DEBTORS.................................................... 151

      1.    Board of Directors .................................................. 151

      2.    Officers & Biographies............................................. 152

B.    COMPENSATION OF MMPI EXECUTIVE OFFICERS ................................ 155

IX.    CONFIRMATION AND CONSUMMATION PROCEDURE ....................................... 156

A.    SOLICITATION OF VOTES................................................... 156

B.    THE CONFIRMATION HEARING ............................................... 158

C.    CONFIRMATION............................................................ 158

      1.    Acceptance....................................................... 159

      2.    Unfair Discrimination and the Fair and Equitable Tests .......... 159

      3.    Feasibility ..................................................... 160

      4.    Best Interests Test.............................................. 162

D.    CONSUMMATION ........................................................... 164

X.     CONFIRMATION DATE CONDITIONS.............................................. 164

A.    CONDITIONS TO CONFIRMATION ............................................. 164

B.    WAIVER OF CONDITIONS ................................................... 165

C.    EFFECT OF FAILURE OF CONDITIONS ..... .................................. 165

D.    VACATUR OF CONFIRMATION ORDER.......................................... 165

XI.    RETENTION OF JURISDICTION................................................ 166

XII.   PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER
       THE PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND
       UNLIQUIDATED CLAIMS AND INTERESTS ...................................... 168

353400.2 [XP]     25195

## TABLE OF CONTENTS (cont.)

**Page**

A.    VOTING OF CLAIMS AND INTERESTS .................................................. 168

B.    METHOD OF DISTRIBUTIONS UNDER THE PLAN ................................... 168

     1.    Distributions Under the Plan .................................................. 168

     2.    Timing and Methods of Distribution ...................................... 169

C.    UNDELIVERABLE OR UNCLAIMED DISTRIBUTIONS ............................ 170

D.    DISPUTED CLAIMS AND ESTIMATIONS...170

     1.    Treatment of Disputed Claims................................................ 170

     2.    Distribution on Account of Disputed Claims Once They Are Allowed.......................................................................... 171

     3.    Allowance of Claims Subject to Bankruptcy Code Section **502(d)** .......................................................................... **171**

E.    SETOFFS.......................................................................... 172

XIII.    CERTAIN RISK FACTORS TO BE CONSIDERED ..................................... 172

A.    CERTAIN BANKRUPTCY LAW CONSIDERATIONS ................................. 172

     1.    Risk of Non-Confirmation of the Plan.................................... 172

     2.    Risk of Non-Occurrence of the Effective Date   173

B.    RISKS TO RECOVERY BY HOLDERS OF CLAIMS ................................. 173

     1.    Ability to Service Debt ........................................................ 173

     2.    Risks of Asset Disposition Delays.......................................... 173

     3.    Risks Related to Dependence on Key Personnel ...................... 173

     4.    Projected Financial Information ............................................ 174

     5.    Failure to Obtain Equity Investment of $10 Million ................ 174

     6.    Failure to Confirm One or More of the Debtors' Chapter 11 Plans......................................................................... 174

XIV.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ................ 176

A.    CERTAIN UNITED STATES FEDERAL INCOME TAX CONSEQUENCES TO THE DEBTORS ........................................................... 177

353400.2 [XP]   25195

## TABLE OF CONTENTS (cont.)

**Page**

1. Net Operating Losses............................................................................177

2. Cancellation of Debt...........................................................................178

3. Limitation on NOL Carryforwards and Other Tax Attributes.................178

4. General Section 382 Limitation............................................................179

5. Special Bankruptcy Exception.............................................................179

6. Merger of MMPLP into MMPI ............................................................179

7. Consequences of the Sale and/or Refinance of Assets of the
   Debtors.............................................................................................181

B. CONSEQUENCES TO HOLDERS OF CERTAIN CLAIMS ...........................183

   1. Consequences to Holders of Allowed General Unsecured
       Claims..............................................................................................183

   2. Consequences to Holders of Allowed Secured Claims ...........................184

C. CONSEQUENCES OF THE SUBSCRIPTION RIGHTS
OFFERING....................................................................................................185

D. DISTRIBUTION IN DISCHARGE OF ACCRUED INTEREST .......................186

E. INFORMATION REPORTING AND BACKUP WITHHOLDING ..................186

F. IMPORTANCE OF OBTAINING PROFESSIONAL TAX
ASSISTANCE ................................................................................................186

XV. MISCELLANEOUS PROVISIONS ...........................................................................187

A. EXEMPTION FROM TRANSFER TAXES..... ...............................................187

B. PAYMENT OF STATUTORY FEES.................................................................187

C. MODIFICATION OR WITHDRAWAL OF THE PLAN ...................................187

D. GOVERNING LAW ........................................................................................188

E. FILING OR EXECUTION OF ADDITIONAL DOCUMENTS.........................188

F. WITHHOLDING AND REPORTING REQUIREMENTS.................................188

G. WAIVER OF RULE 7062 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE ......................................................................188

H. HEADINGS......................................................................................................188

-ix-

## TABLE OF CONTENTS (cont.)

**Page**

I.     EXHIBITS AND SCHEDULES ........................................................... 188

J.     NOTICES ........................................................................................... 188

K.     CONFLICT ........................................................................................ 189

L.     SUCCESSORS AND ASSIGNS ....................................................... 189

M.     SATURDAY, SUNDAY OR LEGAL HOLIDAY .............................. 189

N.     POST-EFFECTIVE DATE EFFECT OF EVIDENCES OF CLAIMS
       OR INTERESTS.................................................................................. 189

O.     SEVERABILITY OF PLAN PROVISIONS........................................ 190

P.     BALLOTING ...................................................................................... 190

Q.     NO ADMISSIONS OR WAIVER OF OBJECTIONS .......................... 191

R.     SURVIVAL OF SETTLEMENTS ...................................................... 191

XVI.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION........................... 191

A.     ALTERNATIVE PLANS OF REORGANIZATION .......................... 191

B.     LIQUIDATION UNDER CHAPTER 7 OR CHAPTER 11 ................ 192

XVII.  CONCLUSION AND RECOMMENDATION ............................................. 192

-x-

1    THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE

2  AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND THE

3  DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN

4  IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED

5  SINCE THE DATE HEREOF.  HOLDERS OF CLAIMS SHOULD CAREFULLY READ THIS

6  DISCLOSURE STATEMENT IN ITS ENTIRETY, INCLUDING THE PLAN, PRIOR TO

7  VOTING ON THE PLAN.

8    FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, THIS

9  DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN.  IF ANY

10 INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT,

11 THE TERMS OF THE PLAN ARE CONTROLLING.  THIS DISCLOSURE STATEMENT MAY

12 NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO

13 VOTE TO ACCEPT OR REJECT THE PLAN, AND NOTHING STATED HEREIN SHALL

14 CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE

15 ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTORS OR ANY OTHER

16 PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL

17 EFFECTS OF THE PLAN ON THE DEBTORS OR HOLDERS OF CLAIMS OR INTERESTS.

18 CERTAIN OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT, BY

19 NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS.

20 THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL BE REFLECTIVE OF

21 ACTUAL OUTCOMES.  ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND

22 CONSIDER FULLY THE RISK FACTORS SET FORTH IN ARTICLE XIII OF THIS

23 DISCLOSURE STATEMENT BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

24    WHERE THERE ARE SUMMARIES OF CERTAIN PROVISIONS OF AGREEMENTS

25 REFERRED TO IN THIS DISCLOSURE STATEMENT, SUCH SUMMARIES DO NOT

26 PURPORT TO BE COMPLETE AND ARE SUBJECT TO, AND ARE QUALIFIED IN THEIR

27 ENTIRETY BY REFERENCE TO, THE FULL TEXT OF THE APPLICABLE AGREEMENT,

28 INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH AGREEMENT.

1    THE DEBTORS BELIEVE THE PLAN WILL ENABLE THEM TO SUCCESSFULLY

2    REORGANIZE AND ACCOMPLISH THE OBJECTIVES OF CHAPTER 11 AND THAT

3    ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTORS AND

4    THEIR CREDITORS.

5    THE DEBTORS URGE ALLOWED CLAIM HOLDERS IN CLASSES OF CLAIMS

6    THAT ARE IMPAIRED AND THAT ARE NOT DEEMED TO HAVE REJECTED THE PLAN

7    TO VOTE TO ACCEPT THE PLAN.

8

### I.

### **INTRODUCTION**

10    **A.    OVERVIEW**

11    Meruelo Maddux Properties, Inc., ("MMPI"), and its 53 related debtor entities that filed

12    voluntary bankruptcy petitions at the same time as MMPI (each a "Debtor" and, collectively, the

13    "Debtors" or the "Company") submit this First Amended Disclosure Statement ("Disclosure

14    Statement') pursuant to Section 1125 of Title 11 of the United States Code (the "Bankruptcy

15    Code"). The purpose of this Disclosure Statement is to provide Holders of Claims against and

16    Interests in the Debtors with adequate information to enable them to make informed judgments

17    about the Debtors' Joint Second Amended Plan of Reorganization under Chapter 11 of the

18    Bankruptcy Code, dated June 10, 2010, (as the same may be amended, the "Plan"), filed with the

19    United States Bankruptcy Court for the Central District of California – San Fernando Valley

20    Division (the "Bankruptcy Court") before exercising their right to vote to accept or reject the Plan.

21    [2]

22

23

---

24    [2]Unless otherwise defined herein, all capitalized terms contained herein have the meanings
ascribed to them in the Plan, a copy of which is attached hereto as Exhibit "A." A term used, but
25    not defined herein or in the Plan, but defined in the Bankruptcy Code, has the meaning given to that
term in the Bankruptcy Code unless the context of this Disclosure Statement clearly requires
26    otherwise. References to code sections are references to the Bankruptcy Code, except as otherwise
stated.

27

28

3

1    This Disclosure Statement describes the business background and operating history of the

2 Debtors before the filing of their Chapter 11 Cases.  It also summarizes certain significant events

3 that have taken place during the Chapter 11 Cases and describes the terms of the Plan, which

4 divides creditor Claims and the interests of shareholders into Classes and provides for the

5 satisfaction of allowed Claims and interests.

6    The Plan is a joint Plan and not a consolidated Plan. The Debtors are not seeking

7 substantive consolidation in the Plan.  As a result, the Claims and Interests in each of the Debtors

8 have been classified on a Debtor by Debtor basis.  Votes will be tabulated and acceptances will be

9 determined on a Debtor by Debtor basis.  The Debtors will seek confirmation of the Plan as to each

10 Debtor on an individual basis notwithstanding that the Plan is a joint Plan.   The votes of creditors

11 of one Debtor will not affect or be counted toward acceptance of rejection of a plan for any other

12 Debtor.

13    The Plan provides for the payment in full of all Claims over time with interest.  The

14 Secured Claims will be paid interest only over the term of the Plan and the principal balance will be

15 paid either through the sale of the property securing the claim or the refinance of the secured debt.

16 MMPI shareholders will have the option of electing to receive payment in exchange for their shares

17 or in exchange for their existing shares and to receive stock in Reorganized MMPI.  MMPLP will

18 be merged into MMPI and MMPLP's equity interests will be cancelled.   Payments under the Plan

19 will be funded from the Debtors' operations, an infusion of capital at the Effective Date and the sale

20 and refinance of certain of the Debtors' assets. A detailed description of the Plan is set forth in

21 Article V of this Disclosure Statement.

22    Upon Bankruptcy Court approval ("Confirmation") of the Plan, the Plan will be binding

23 upon all creditors and shareholders regardless of whether an individual creditor or shareholder has

24 voted in favor of the Plan. THE DEBTORS THEREFORE URGE YOU TO READ THIS

25 DISCLOSURE STATEMENT AND THE PLAN CAREFULLY.

26    **B.    EXHIBITS AND ADDITIONAL INFORMATION**

27    Attached as Exhibits to this Disclosure Statement are copies of the following documents:

28    •    The Plan (Exhibit A);

4

353400.03 [XP]    25195

1      •     Order of the Bankruptcy Court dated [ ], 2010 (the "Disclosure Statement Order"),

2 among other things, approving this Disclosure Statement and establishing certain procedures with

3 respect to the solicitation and tabulation of votes to accept or reject the Plan (Exhibit B);

4      •     Chart of the Debtors' Corporate Structure:  Prepetition List of the Debtors  (Exhibit

5 C);

6      •     Loan Modification Agreements (Exhibit D);

7      •     The Debtors' Projected Financial Information (Exhibit E);

8      •     The Debtors' Unexpired Leases and Executory Contracts (Exhibit F);

9      •     The Debtors' Liquidation Analysis (Exhibit G);

10     •     The Claims and Interests of the Debtors (Exhibit H);

11        •     List of Administrative Expense Claims (Exhibit H.1)

12        •     List of Class "B" Priority Unsecured Claims (Exhibit H.2);

13        •     List of Class "C" General Unsecured Claims – Tenant Security Deposit

14             Claims (Exhibit H.3);

15        •     List of Class "C" General Unsecured Claims -- Convenience Class (Exhibit

16             H.4);

17        •     List of Class "C" General Unsecured Claims (Exhibit H.5);

18        •     List of Class "C" Unsecured Guaranty Claims (Exhibit H.6);

19        •     List of Class "D" Intercompany Claims (Exhibit H.7);

20        •     List of Class "E" Interests (Exhibit H.8);

21      •     List of Debtors' Transfers During the 90-Day and One-Year Avoidance Periods

22 (Exhibit I);

23      •     Debtors' Property Valuations (Exhibit J);

24      •     Amended and Restated Certificate of Incorporation (Exhibit K);

25      •     Bylaws of Reorganized MMPI (Exhibit L);

26      •     Agreement and Plan of Merger (Exhibit M); and

27      •     Addendum of historical financial information.

28

353400.03 [XP]      25195

1    MMPI has filed public reports with the Securities and Exchange Commission ("SEC")

2  which contain additional information about the Company and its historic financial performance.

3  The most recent filings are: 10-K for the year ended December 31, 2008 (filed on March 16,

4  2009), Amended 10-K for the year ended December 31, 2008 (filed on April 30, 2009), 10-Q for

5  the quarter ended March 31, 2009 (filed on September 9, 2009), 10-Q for the quarter ended June

6  30, 2009 (filed on September 17, 2009) and 10-Q for the quarter ended September 30, 2009 (filed

7  on November 9, 2009). On January 19, 2010, MMPI filed its Certification and Notice of

8  Termination of Registration under Section 12(g) of the Securities Exchange Act of 1934 or

9  Suspension of Duty to File Reports under Section 13 and 15(d) of the Securities Exchange Act of

10  1934 and accordingly, the Debtor is no longer required to file public reports with the SEC.

11    You may obtain copies of these documents from:

12    •    The SEC's website at: *http://www.sec.gov/edgar/searchedgar/companysearch.html;*

13    •    The Company's website (under "Investor Relations") at:

14  *http://www.meruelomaddux.com/noflash/index.php* or

15    •    By requesting them in writing from:

Meruelo Maddux Properties, Inc.
761 Terminal Street
Building 1, 2nd Floor
Los Angeles, CA 90021
Attn: Mr. Todd Nielsen

19    A Ballot for the acceptance or rejection of the Plan is also enclosed with this Disclosure

20  Statement submitted to the Holders of Claims and Interests that are entitled to vote to accept or

21  reject the Plan.

22    On [_____], 2010, after notice and a hearing, the Bankruptcy Court

23  entered the Disclosure Statement Order, approving this Disclosure Statement as containing

24  adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors

25  typical of the Debtors' creditors to make an informed judgment whether to accept or reject the Plan.

26  APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE

27  A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS

28  OF THE PLAN. THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN

353400.03 [XP]    25195

1   DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF

2   THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE BANKRUPTCY

3   COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE

4   DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THESE CHAPTER 11

5   CASES.

6          The Disclosure Statement Order, a copy of which is annexed hereto as Exhibit B, sets forth

7   in detail the deadlines, procedures and instructions for voting to accept or reject the Plan and for

8   filing objections to confirmation of the Plan, and the applicable standards for tabulating Ballots.  In

9   addition, detailed voting instructions accompany each Ballot.  Each holder of a Claim or Interest

10  entitled to vote on the Plan should read this Disclosure Statement, the Plan, the Disclosure

11  Statement Order and the instructions accompanying the Ballot in their entirety before voting on the

12  Plan.  These documents contain important information concerning the classification of Claims for

13  voting purposes and the tabulation of votes.  No solicitation of votes to accept the Plan may be

14  made except pursuant to Section 1125 of the Bankruptcy Code.

15         **C.      HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE**

16         Pursuant to the provisions of the Bankruptcy Code, only Holders of Allowed Claims or

17  Interests in Classes of Claims or Interests that are impaired and that are not deemed to have rejected

18  the Plan are entitled to vote to accept or reject a proposed Plan.  Classes of Claims or Interests in

19  which the Holders of Claims or Interests are unimpaired under a Chapter 11 Plan are deemed to

20  have accepted the Plan and are not entitled to vote to accept or reject the Plan.  Classes of Claims

21  or Interests in which the Holders of Claims or Interests will receive no recovery under a Chapter 11

22  Plan are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

23  For a detailed description of the treatment of Claims and Interests under the Plan, see Article V of

24  this Disclosure Statement.

25         The following Classes are impaired and, to the extent Claims or Interests in such Classes

26  are Allowed Claims or Interests, the Holders of such Claims will receive distributions under the

27  Plan.  As a result, Holders of Claims or Interests in those Classes are entitled to vote to accept or

28  reject the Plan:

7

353400.03 [XP]    25195

1        •        Classes 10A, 11A, 12A, 13A, 14A, 15A, 16A, 18A, 20A, 21A-1, 22A, 24A, 25A,

2   26A, 27A-1, 28A-1, 29A-1, 30A-1, 32A-1, 33A-1, 34A-1, 35A-1, 36A-1, 37A-1, 38A-1, 39A-1,

3   40A-1, 41A-1, 42A-1, 43A-1, 44A-1, 45A-1, 46A-1, 47A-1, 48A-1, 49A-1, 50A-1, 51A-1, 52A-1,

4   53A-1, and 54A-1 (consisting of secured tax Claims against the Debtors);

5        •        Classes 21A-2, 28A-2, 29A-2, 29A-3, 30A-2, 32A-2, 33A-2, 34A-2, 35A-2, 36A-2,

6   36A-3, 37A-2, 37A-3, 38A-2, 39A-2, 40A-2, 41A-2, 42A-2, 43A-2, 44A-2, 45A-2, 46A-2, 47A-2,

7   48A-2, 49A-2, 50A-2, 50A-3, 51A-2, 51A-3, 52A-2, 53A-2, 54A-2, and 54A-3 (consisting of the

8   Secured Claims of lenders and other secured creditors against each relevant Debtor);

9        •        Classes 1C-3, 2C-3, 3C, 4C-2, 5C-2, 6C, 7C, 8C-2, 9C-2, 10C-2, 11C-3, 12C-3,

10  13C-2, 14C-3, 15C-2, 16C-2, 17C, 18C-2, 19C-2, 20C, 21C-3, 22C, 23C, 24C-2, 25C-3, 26C-3,

11  27C-3, 28C-3, 29C-2, 30C-3, 31C-2, 32C, 33C-3, 34C-3, 35C-2, 36C-3, 37C-2, 38C-3, 39C-3,

12  40C-3, 41C-3, 42C-2, 43C-2, 44C-2, 45C-2, 46C-2, 47C-2, 48C-2, 49C-2, 50C-2, 51C-2, 52C-3,

13  53C, and 54C-3 (consisting of the general unsecured Claims against each relevant Debtor); and

14        •   Class 1E, consisting of the Class of Interests of MMPI.

15        The Plan provides for the merger of MMPLP into MMPI.  The interests of the holders of

16  LTIP units in Class 2E will be cancelled and extinguished at the Effective Date and the remaining

17  interests will be extinguished as a result of the merger of MMPLP and MMPI.  As a result Class 2E

18  is deemed to reject the Plan and is not entitled to vote on the Plan.

19        The following Classes of the Plan are Unimpaired.  As a result, Holders of Claims and

20  Interests in those Classes are conclusively presumed to have accepted the Plan:

21        •        Classes 1B, 5B, 32B, 33B, 36B and 52B, (consisting of the Priority Unsecured

22  Benefits Claims of present and former employees of each relevant Debtor);

23        •        Classes 11C-1, 12C-1, 14C-1, 15C-1, 21C-1, 25C-1, 26C-1, 27C-1, 28C-1, 30C-1,

24  32C-1, 33C-1, 34C-1, 35C-3, 36C-1, 37C-1, 38C-1, 39C-1, 40C-1, 41C-1, 43C-3, 44C-3, 46C-1,

25  48C-3, 49C-3, 52C-1 and 54C-1 (consisting of the unsecured Claims for security deposits of the

26  Debtors' tenants);

27        •        Classes 1C-1, 2C-1, 4C-1, 8C-1, 9C-1, 10C-1, 11C-2, 12C-2, 13C-1, 14C-2, 15C-1,

28  16C-1, 18C-1, 19C-1, 21C-2, 24C-1, 25C-2, 26C-2, 27C-2, 28C-2, 29C-1, 30C-2, 31C-1, 32C-2,

1    33C-2, 34C-2, 35C-1, 36C-2, 38C-2, 39C-2, 40C-2, 41C-2, 42C-1, 43C-1, 44C-1, 45C-1, 47C-1,

2    49C-1, 50C-1, 51C-1, 52C-2, and 54C-2 (consisting of the Convenience Claims of each relevant

3    Debtor);

4        •    Classes 2D through 7D, 9D-35D, and 37D-53D (consisting of the Intercompany

5    Claims);

6        •    Classes  3E through 54E (consisting of the Interests in the Debtors other than MMPI

7    and MMPLP).

8        As a condition to confirmation for each Debtor's Chapter 11 Case, the Bankruptcy Code

9    requires that each Class of Impaired Claims and Interests vote to accept the Plan, except under

10   certain circumstances.  Section 1126(c) of the Bankruptcy Code defines acceptance of a Plan by a

11   Class of Impaired Claims as acceptance by holders of at least two-thirds in dollar amount and more

12   than one-half in number of Claims in that Class, but for that purpose counts only those who

13   actually vote to accept or to reject the Plan.  Thus, a Class of Claims will have voted to accept its

14   Debtor's Plan only if two-thirds in amount and a majority in number actually voting cast their

15   Ballots in favor of acceptance.  For each Debtor's Chapter 11 Case, under Section 1126(d) of the

16   Bankruptcy Code, a Class of Interests has accepted the Plan if Holders of such Interests holding at

17   least two-thirds in amount actually voting have voted to accept the Plan.  Holders of Claims or

18   Interests who fail to vote are not counted as either accepting or rejecting the Plan.  Thus,

19   acceptance of a Plan by the Impaired Classes of Claims listed above for each Debtor will occur

20   only if at least two-thirds in dollar amount and a majority in number of the Holders of such Claims

21   in each Class that cast their Ballots vote in favor of acceptance.

22       A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing,

23   that such acceptance or rejection was not solicited or procured in good faith or in accordance with

24   the provisions of the Bankruptcy Code.  For a more detailed description of the requirements for

25   confirmation of the Plan, see Article IX of this Disclosure Statement.

26       With respect to each Debtor's Chapter 11 Case, if a Class of Claims or Interests entitled to

27   vote on the Plan rejects the Plan, the relevant Debtor reserves the right to amend the Plan or request

28   confirmation of the Plan pursuant to Section 1129(b) of the Bankruptcy Code or both.  Section

9

353400.03 [XP]    25195

1   1129(b) permits the confirmation of a plan of reorganization notwithstanding the non-acceptance of

2   the Plan by one or more impaired Classes of Claims or Interests.  Under that Section, a Plan may be

3   confirmed by a Bankruptcy Court if it does not "discriminate unfairly" and is "fair and equitable"

4   with respect to each non-accepting Class.  For a more detailed description of the requirements for

5   confirmation of a nonconsensual Plan, see Article IX of this Disclosure Statement.

6        For each Debtor, in the event at least one Impaired Class of Claims votes to accept the Plan

7   (and at least one Impaired Class either votes to reject the Plan or is deemed to have rejected the

8   Plan), such Debtor shall request the Bankruptcy Court to confirm the Plan under the cramdown

9   provisions of Section 1129(b) of the Bankruptcy Code.

10       **D.      VOTING PROCEDURES**

11       If you are entitled to vote to accept or reject the Plan, in the Chapter 11 Case in which you

12   have an Allowed Claim or Allowed Interest, a Ballot is enclosed for the purpose of voting on the

13   Plan.  If you hold Claims in more than one Class or against more than one Debtor and you are

14   entitled to vote each of such claims or interests, you will receive separate Ballots for each case in

15   which you are entitled to vote and for each separate Class of Claims or Interests for which you are

16   entitled to vote.  Please vote and return your Ballot(s) to:

17

18       DANNING GILL DIAMOND & KOLLITZ LLP
         2029 Century Park East, Third Floor
19       Los Angeles, CA 90067
         Attention: Yves Pierre Derac
20

21       DO NOT RETURN ANY NOTES OR SECURITIES WITH YOUR BALLOT.  TO BE

22   COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN

23   MUST BE RECEIVED BY NO LATER THAN [_____] P.M., LOS ANGELES TIME, ON

24   [_____], 2010.  ANY EXECUTED BALLOT RECEIVED THAT DOES NOT

25   INDICATE EITHER AN ACCEPTANCE OR REJECTION OF THE PLAN SHALL BE

26   DEEMED TO CONSTITUTE AN ACCEPTANCE OF THE PLAN.

27       Any Claim in an impaired Class as to which an objection or request for estimation is

28   pending or which is scheduled by the relevant Debtor as unliquidated, disputed or contingent and

                                                    10

353400.03 [XP]    25195

1  for which no proof of Claim has been filed is not entitled to vote unless the holder of such Claim

2  has obtained an order of the Bankruptcy Court temporarily allowing such Claim for the purpose of

3  voting on the Plan.

4          If you are a holder of a Claim entitled to vote on the Plan and did not receive a Ballot,

5  received a damaged Ballot or lost your Ballot, or if you have any questions concerning this

6  Disclosure Statement, the Plan or the procedures for voting on the Plan, please email the Debtors'

7  counsel at: mmpi@dgdk.com.

8          **E.      CONFIRMATION HEARING**

9          Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be held on

10  [_____], 2010 commencing at [_____] Los Angeles Time, before the Bankruptcy

11  Court, the Honorable Kathleen Thompson, Presiding. Courtroom 301, 21041 Burbank Blvd.,

12  Woodland Hills, California 91367. The Bankruptcy Court may adjourn the Confirmation Hearing

13  from time to time without further notice except for the announcement of the adjournment date

14  made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

15          Any objection to confirmation must be made in writing and specify in detail the name and

16  address of the objector, all grounds for the objection and the amount of the Claim or number of

17  shares of stock held by the objector.  Any such objection must be filed with the Bankruptcy Court

18  and served so that it is received by the Bankruptcy Court, the Official Committee of Unsecured

19  Creditors (the "Creditors Committee") and the Debtors on or before _____ __, 2010.  Objections

20  to confirmation of the Plan are governed by Bankruptcy Rule 9014.

21          **F.      NOTICES**

22          All notices, requests and demands hereunder to be effective must be in writing and unless

23  otherwise expressly provided herein, shall be deemed to have been duly given or made when

24  actually delivered by U.S. Mail or email addressed as follows:

25

26

27

28          **DEBTORS AND REORGANIZED DEBTOR:        COUNSEL TO THE DEBTORS AND**

11

Todd Nielsen, Esq.
General Counsel
MERUELO MADDUX PROPERTIES,
INC.
761 Terminal Street
Building 1, 2nd Floor
Los Angeles, California 90021
TNielsen@meruelomaddux.com

**REORGANIZED DEBTORS**
John J. Bingham, Jr., Esq.
John N. Tedford, IV, Esq.
Julia W. Brand, Esq.
DANNING, GILL, DIAMOND &
KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735
E-Mail:
JBingham@dgdk.com
JTedford@dgdk.com
JBrand@dgdk.com

## II.

### DEBTORS' BUSINESS AND OPERATIONS PRIOR TO THE FILING

### A.    CORPORATE HISTORY OF THE DEBTORS

MMPI is the parent company of the fifty-three related Debtor entities that, along with

MMPI, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on March 26

and 27, 2009.  A list of each of the Debtors is attached as part of Exhibit "C."  MMPI was

incorporated in 2006 under the laws of the State of Delaware, and is registered with the California

Secretary of State to do business in the State of California.  Each of the other Debtors was formed

under either the laws of the State of Delaware or the laws of the State of California.  The Delaware

Debtors are registered with the California Secretary of State to do business in the State of

California.

### B.    NATURE OF THE DEBTORS' BUSINESS

MMPI, together with its subsidiary operating partnership, MMPLP, and its affiliates and

related entities, is a self-managed, full-service real estate company that develops, redevelops and

owns industrial, commercial and multi-unit residential real properties primarily located in

downtown Los Angeles and other areas in southern California.  The Company focuses on unique

properties that it believes have an alternate, more profitable use achievable through major

renovation, redevelopment or development.  The Company's projects are predominantly located in

12

353400.03 [XP]    25195

1  a densely populated urban, multi-ethnic environment and involve numerous local entitlement,

2  property assemblage and physical challenges.

3      The Company is committed to responsible property investing that has economic,

4  environmental and social benefits.  Its development activities include urban infill projects that are

5  expected to meet the demands of urban communities and that utilize or upgrade existing

6  infrastructure instead of creating new infrastructure.  The Company is known as a "smart growth"

7  developer, and many of the Company's projects are designed to locate businesses, customers and

8  employees close to each other and close to existing public transit systems.  The Company is also

9  known as an "incubator" of new businesses, actively seeking development projects in

10  empowerment zones.  The Company is very familiar with the social, cultural, business and political

11  issues of land development in Southern California, and especially the Los Angeles area.

12      The Debtors were formed to succeed to certain operations of a predecessor group, whose

13  owners were Richard Meruelo, Maria Meruelo and John Charles Maddux.  Through their

14  predecessor business, the Company's principals have been investing in urban real estate since

15  1972.

16      The Debtors' current management team is led by Richard Meruelo, who serves as MMPI's

17  Chief Executive Officer and Chairman of MMPI's Board of Directors,  and John Charles Maddux,

18  who serves as MMPI's President and Chief Operating Officer and a member of MMPI's Board of

19  Directors.  Messrs. Meruelo and Maddux both have more than 20 years experience in identifying,

20  acquiring, entitling, financing, developing and redeveloping urban real estate.  They have worked

21  together since 1987.

22      The Company does not utilize the same business model as typical real estate investment

23  companies, many of which utilize real estate investment trusts ("REITs"), and the Company's

24  business Plan is distinctive among publicly traded companies.  Many public real estate companies

25  focus on properties with stable occupancies at market rents or properties with stable occupancies at

26  below-market rents that may benefit from more efficient management or minor renovations.  In

27  contrast, the Company focuses on urban in-fill development and on finding different, more

28  profitable uses for existing urban properties.  The Company looks for properties that have value

13

1   intrinsic to the property itself, such as the property's location, whether there is an end user of the

2   property on the horizon who might want to purchase the property, how well the property will fit in

3   with the growth patterns of the area and community in which it is situated, and other factors.  Such

4   properties may have substantial vacancies, unstable occupancies, or require major renovations for a

5   new use.  The Company's business requires local and other special knowledge to identify viable

6   alternative uses for urban property, and presents higher potential returns than the returns that the

7   property owner might otherwise derive.

8          The Company's business model anticipates the need for time to develop properties and

9   requires the infusion of funds to pay the costs of such development, including the carrying costs.

10  To help defray costs during development, properties may be utilized as parking lots or other uses,

11  not because such use generates substantial income but because the land itself is extremely valuable

12  since it can be developed at an appropriate time in the future, and the parking lot revenue provides

13  some interim revenue.  Many of the Company's properties have gone through the land use process

14  to the point where entitlements have been obtained thus increasing the value substantially, but

15  development has been deferred pending an improvement in the credit markets.  In summary, the

16  Company's business model contemplates and is based upon the purchase, development and resale

17  of properties, pursuant to which the Company turns over such properties in a relatively short period

18  of time, such as a few years instead of decades, and uses the profit from such properties to fund

19  operations of MMPI and all of its other affiliates and the purchase and development of other

20  properties.

21         Currently, the Company owns in excess of forty discrete properties consisting in some cases

22  of a number of parcels, some of which generate income and others of which are in various stages of

23  development.  With approximately 80 acres of land, the Company is believed to be the largest non-

24  government land owner in downtown Los Angeles.

25         Properties the Debtors currently own include the following:

26         **1.      210 – 212 and 230 West Avenue 26, Los Angeles**

27         The subject property is owned by Meruelo Maddux-230 W. Avenue 26, LLC ("MM 230 W.

28  Avenue 26") and is unencumbered.  The property is located at the corner of Humboldt Street and

14

West Avenue 26 near the Northeast boundary of downtown Los Angeles. It is comprised of one property totaling approximately 1.8 acres of land which has been improved with a group of multi-tenant industrial buildings consisting of approximately 67,671 net rentable square feet. As of March 31, 2010, the improvements were leased to five tenants occupying approximately 30% of the total rentable area. Two of the tenants, occupying 33% of the rented space are on month to month tenancies. The average occupancy for month to month tenants is 47 months. The largest tenant occupies 6.9% of the total area. The property is currently being utilized as an industrial and distribution space facility.

This property is an example of how MMPI services the multitude of business owners and their numerous employees who are involved in the (a) design, (b) production and (c) distribution sectors of the garment industry in downtown Los Angeles.

### 2.    306 – 330 North Avenue 21, Los Angeles

The subject property is owned by Meruelo Maddux Properties-306-330 N. Avenue 21, LLC ("MMP 306-330 N. Avenue 21") and is unencumbered. The property is located near the corner of Humboldt Street and North Avenue 21 near the Northeast boundary of downtown Los Angeles. It is comprised of approximately 1.1 acres which have been improved with industrial buildings consisting of approximately 80,712 net rentable square feet. As of March 31, 2010, the improvements were leased to five tenants occupying approximately 30% of the total rentable area. All of the tenants are on month to month tenancies. The average occupancy for month to month tenants is 34 months. The largest tenant occupies 13.4% of the total area. The property is currently being utilized as an industrial and distribution space facility.

This property is an example of how MMPI services the multitude of business owners and their numerous employees who are involved in the (a) design, (b) production and (c) distribution sectors of the garment industry in downtown Los Angeles.

### 3.    1000 East Cesar Chavez, Los Angeles

The subject property is owned by Meruelo Maddux-1000 E. Cesar Chavez, LLC ("MM 1000 E. Cesar Chavez") and is unencumbered. The property is comprised of four separate properties located near the Northeast boundary of downtown Los Angeles. Specifically, properties

15

1   one and two are located at the corner of East Cesar Chavez Avenue and North Mission Road and

2   properties three and four are located east of the parking lot on East Cesar Chavez Avenue. The

3   subject property is improved with an industrial building, parking lot, and two single-family

4   residences and totals approximately 1.6 acres consisting of approximately 50,373 net rentable

5   square feet. As of March 31, 2010, the improvements were leased to seven tenants occupying

6   approximately 17% of the total rentable area. All of the tenants are on month to month tenancies.

7   The average occupancy for month to month tenants is 39 months. The largest tenant occupies 6.6%

8   of the total area.   The non-residential portion of the property is currently being utilized as an

9   industrial and distribution space facility.

10        This property is home to an assortment of small business owners prevalent in downtown

11  Los Angeles whereby the Company looks to support and incubate their businesses.

### 4.       2415 East Washington Boulevard, Los Angeles

13        The subject property is owned by Meruelo Maddux-2415 E. Washington Blvd., LLC ("MM

14  2415 E. Washington Boulevard"). As a result of the Debtors' settlement with Imperial Capital

15  Bank, a division of City National Bank, a national banking association ("Imperial") and

16  Bankruptcy Court approval thereof, the property is encumbered by a lien in favor of Imperial. The

17  property is located near the corner of South Santa Fe Avenue and East Washington Boulevard,

18  adjacent to Santa Fe Commerce Center, near the Southeast Industrial part of downtown Los

19  Angeles. It is comprised of one property totaling approximately 0.5 acres which has been

20  improved with an industrial building consisting of approximately 18,500 net rentable square feet.

21  As of March 31, 2010, the improvements were not leased. The property is currently a multi-tenant

22  industrial space facility.

23        This property is intended to be used by an assortment of small business owners prevalent in

24  downtown Los Angeles whereby the Company looks to support and incubate their businesses.

### 5.       1211 East Washington Boulevard, Los Angeles

26        The subject property is owned by Merco Group-1211 E. Washington Boulevard, LLC

27  ("MG 1211 East Washington Boulevard") and is unencumbered.  The property is located at the

28  corner of Washington Boulevard and South Central Avenue just south of the Interstate 10 Freeway

353400.03 [XP]     25195

in downtown Los Angeles.  It is comprised of three properties totaling approximately 2.0 acres which have been improved with a multi-tenant industrial building and a retail plaza consisting of approximately 113,479 net rentable square feet.  The third property is a parking lot.  As of March 31, 2010, the improvements were leased to seven tenants occupying approximately 73.2% of the total rentable area.  Two of the tenants, occupying 46% of the rented space are on month to month tenancies.  The average occupancy for month to month tenants is 35 months.  The largest tenant occupies 31.6% of the total area.  The property is currently being utilized primarily as a garment manufacturing space.

This property is an example of how MMPI services the multitude of business owners and their numerous employees who are involved in the (a) design, (b) production and (c) distribution sectors of the garment industry in downtown Los Angeles.

### 6. 13853, 13822 and 13916  Garvey Avenue, 13904 Corak Street and 3060 Feather Avenue, Baldwin Park

The subject property is owned by Meruelo Baldwin Park, LLC and is unencumbered.  The property is located at the intersection of Francisquito Avenue and the Interstate 10 Freeway in Baldwin Park, California.  It is comprised of approximately 6.3 acres of land and improvements containing approximately 3,878 net rentable square feet which include two single-family residences.  As of March 31, 2010, the improvements were leased to three tenants occupying approximately 100% of the total rentable area. All of the tenants are on month to month tenancies.  The average occupancy for month to month tenants is 43 months.  The largest tenant occupies 40.3 % of the total building area.  The largest component of this property is unimproved land immediately adjacent to the Interstate 10 Freeway.

This property is intended to be a retail development as a compliment to the garment, produce, multi-tenant and residential activities of MMPI.

### 7. 1910 - 1922 Santa Fe Avenue, 2425 East 12th Street and 303 South Hewitt, Los Angeles

The subject property is owned by Santa Fe & Washington Market, LLC ("Santa Fe & Washington Market").  The subject property includes three separate properties of which one is

17

1  located in the Arts District of downtown Los Angeles at 303 South Hewitt Street and two of which

2  are located adjacent to the Santa Fe Commerce Center at 1910-1922 Santa Fe Avenue and 2425

3  East 12th Street  in downtown Los Angeles.  The property located at 303 South Hewitt Street has

4  been improved with a fifty-four unit apartment building.  The two industrial buildings located at

5  1910-1922 Santa Fe Avenue and at 2425 East 12th Street contain approximately 52,040 net

6  rentable square feet in the aggregate.  As of March 31, 2010,  the improvements were leased to

7  forty-six tenants occupying approximately 80% of the total rentable area.  Forty-two of the tenants,

8  occupying 27% of the rented space are on month to month tenancies.  The average occupancy for

9  month to month tenants is 47 months.  The largest tenant occupies 27.2% of the total area.

10         Pursuant to a settlement with Imperial, the properties located at 1910-1922 Santa Fe

11  Avenue are encumbered by a lien in favor of Imperial.

12         The property at 1910-1922 Santa Fe Avenue is an example of how MMPI services the

13  multitude of business owners and their numerous employees who are involved in the (a) design, (b)

14  production and (c) distribution sectors of the garment industry in downtown Los Angeles.  The

15  property at 2425 East 12th Street is tenanted by small business owners prevalent in downtown Los

16  Angeles whereby the Company looks to support and be a helping hand in incubating their

17  businesses.  The property at 303 S Hewitt is an example of how the Company focuses its expertise

18  and downtown knowledge base on supplying residential units to individuals.  This effort is geared

19  towards (a) high density urban in-fill, (b) transit oriented and/or (c) affordable development of

20  residences.

21              **8.     5701 and 5707 - 5715 South Alameda Street and 5016 Alba Street, Los**

22                      **Angeles**

23         The subject property is owned by Merco Group - 5707 S. Alameda, LLC ("MG 5707 S.

24  Alameda") and is unencumbered.  The property is located in a major trucking thoroughfare

25  immediately south of downtown Los Angeles. It is comprised of two separate properties totaling

26  approximately 1.9 acres of which one property has been improved with a multi-tenant industrial

27  building consisting of approximately 55,729 net rentable square feet.   The second property

28  includes an additional non-contiguous land parcel one block away that can be utilized as pallet

18

1   storage. As of March 31, 2010, the improvements were leased to five tenants occupying

2   approximately 51.0% of the total rentable area. A sixth tenant leases the pallet storage area. Four

3   of the tenants, occupying 96% of the rented space are on month to month tenancies. The average

4   occupancy for month to month tenants is 35 months. The largest tenant occupies 19.9% of the total

5   area. The property is currently being utilized as a multi-tenant industrial space facility.

6         This property is an example of how MMPI services the multitude of business owners and

7   their numerous employees who are involved in the (a) design, (b) production and (c) distribution

8   sectors of the garment industry in downtown Los Angeles.

9              **9.      3rd & Omar Street, Los Angeles**

10        The subject property is owned by Meruelo Maddux - 3rd & Omar Street, LLC ("MM 3rd &

11  Omar Street") and is encumbered by a lien in favor of Legendary Investors Group No. 1, LLC, as

12  successor to East West Bank ("Legendary"). The property is located at 3rd & Omar Streets near

13  the Little Tokyo area of downtown Los Angeles. It is comprised of two properties totaling

14  approximately 0.5 acres of which one has been improved with a multi-tenant building consisting of

15  approximately 23,298 net rentable square feet and the other is being utilized as a parking lot. As of

16  March 31, 2010, the improvements were leased to one tenant occupying approximately 10.0% of

17  the total rentable area. The tenant is on a month to month tenancy. The average occupancy for

18  month to month tenants is 34 months. The ground floor of this property, where the current tenant is

19  located, is currently being utilized as retail/wholesale storefront facility.

20        This property is intended to be used by an assortment of small business owners prevalent in

21  downtown Los Angeles whereby the Company looks to support and incubate their businesses.

22             **10.    420 Boyd Street, Los Angeles**

23        The subject property is owned by Meruelo Maddux - 420 Boyd Street, LLC ("MM 420

24  Boyd Street") and is encumbered by a lien in favor of Legendary. The property is located at 420

25  Boyd Street near the Little Tokyo area of downtown Los Angeles. It is comprised of two

26  properties totaling approximately 0.6 acres which have been improved with a multi-tenant building

27  consisting of approximately 47,806 net rentable square feet and a parking lot. As of March 31,

28  2010, the improvements were leased to eleven tenants occupying approximately 57 % of the total

19

353400.03 [XP]    25195

1  rentable area. Six of the tenants, occupying 67% of the rented space are on month to month

2  tenancies. The average occupancy for month to month tenants is 94 months. The largest tenant

3  occupies 12.6% of the total area. The property is currently being utilized as multi-tenant office

4  space, a restaurant facility and a parking lot.

5      This property is intended to be used by an assortment of small business owners prevalent in

6  downtown Los Angeles whereby the Company looks to support and incubate their businesses.

7      **11.    760 South Hill Street, and 325 West 8th Street, Los Angeles (The Union**

8              **Lofts)**

9      The subject property is owned by Meruelo Maddux Properties - 760 South Hill Street, LLC

10  ("MMP 760 S. Hill Street") and is encumbered by a lien in favor of Bank of America, N.A.

11  ("BofA"). The property is located at the corner of West 8th Street and South Hill Street in

12  downtown Los Angeles. It is comprised of one property totaling approximately 0.3 acres which

13  has been improved with a ninety-two unit condominium building currently in lease-up. The

14  building is newly restored and converted former bank headquarters originally built in the 1920s

15  consisting of approximately 94,270 net rentable square feet. Space located on the ground floor is

16  intended for a restaurant tenant. As of March 31, 2010, the improvements are  leased to sixty-nine

17  tenants occupying approximately 5.77% of the total rentable area.

18      This property is an example of how the Company focuses its expertise and downtown

19  knowledge base on supplying residential units to individuals. This effort is geared towards (a) high

20  density urban in-fill, (b) transit oriented and/or (c) affordable development of residences.

21      **12.    788 South Alameda, Los Angeles**

22      The subject property is owned by 788 South Alameda, LLC ("788 South Alameda") and is

23  encumbered by a lien in favor of California Bank & Trust. The property is located at 788 South

24  Alameda Street across the street from Alameda Square in downtown Los Angeles. It is comprised

25  of one property totaling approximately 2.3 acres which has been improved with a newly

26  constructed modern produce market that is home to numerous small produce tenants consisting of

27  approximately 33,984 net rentable square feet. As of March 31, 2010, the improvements were

28  leased to twenty-four tenants occupying approximately 75% of the total rentable area. All of the

1 | tenants are on month to month tenancies. The average occupancy for month to month tenants is 17

2 | months. The property is currently being utilized as a small-tenant produce industry space with

3 | coolers.

4 | This property is an example of the Company's (a) significant expertise and presence and (b)

5 | focus on providing tailored solutions for a variety of space needs of the many small businesses in

6 | the food and produce distribution industry in downtown Los Angeles.

7 | ### 13.    905 8th Street, Los Angeles

8 | The subject property is owned by 905 8th Street, LLC ("905 8th Street") and is encumbered

9 | by a lien in favor of The Stanford Group, L.P. ("Stanford"). The property is located at 905 8th

10 | Street in downtown Los Angeles. It is comprised of one property totaling approximately 0.9 acres

11 | which has been improved with a multi-tenant industrial building consisting of approximately

12 | 28,200 net rentable square feet. As of March 31, 2010, the improvements were leased to seven

13 | tenants occupying approximately 23.6 % of the total rentable area. All of the tenants are on month

14 | to month tenancies. The average occupancy for month to month tenants is 23 months.

15 | This property is an example of the Company's (a) significant expertise and presence and (b)

16 | focus on providing tailored solutions for a variety of space needs of the many small businesses in

17 | the food and produce distribution industry in downtown Los Angeles.

18 | ### 14.    Alameda Produce Market, Los Angeles (Including Alameda Square and

19 | Seventh Street Produce Market)

20 | The subject property is owned by Alameda Produce Market, LLC ("Alameda Produce

21 | Market") and includes (a) four industrial buildings totaling 1,585,816 square feet of net rentable

22 | area on approximately 20.2 acres that is home to American Apparel ("Alameda Square"), (b) a

23 | multi-tenant produce market known as the Seventh Street Produce Market with 122,120 square feet

24 | of net rentable area, (c) an unencumbered parking structure located at 1215 East 7th Street whose

25 | use has been donated to the Center City East Association to provide aid to homeless people and (d)

26 | an unencumbered parking lot located at 1339 East 7th Street that is subject to an eminent domain

27 | proceeding with the MTA. The Alameda Square and Seventh Street Produce Market properties are

28 | subject to a lien in favor of Cathay Bank ("Cathay").

21

1       In regards to Alameda Square it is 59.3% occupied with eleven tenants and the largest

2 tenant is American Apparel who leases more than 55% of the area.

3       In regards to the Seventh Street Produce Market it is 65.3% leased.  A significant portion of

4 the vacant space is unusable currently and is in the process of being approved to be improved so

5 that it can be leased.

6       Alameda Square has been an example of two characteristics of MMPI's overall operations.

7 First, it serves as an example of how MMPI incubates small business owners in the case of

8 American Apparel that now occupies more than 10 times more space than it initially did and

9 employs approximately 5,000 workers daily at Alameda Square.  Second, it is an example of how

10 the Company services business owners and their numerous employees who are involved in the (a)

11 design, (b) production and (c) distribution sectors of the garment industry in downtown Los

12 Angeles.  Seventh Street Produce Market is an example of the Company's (a) significant expertise

13 and presence and (b) focus on providing tailored solutions for a variety of space needs of the many

14 small businesses in the food and produce distribution industry in downtown Los Angeles.  The

15 portion of the property located at 1339 East 7th Street is currently the subject of litigation between

16 Alameda Produce Market and the Metropolitan Transit Authority ("MTA") which initiated eminent

17 domain proceedings.  The Company asserted that the MTA did not properly pursue such

18 proceedings and the MTA's case was dismissed.  The case has been appealed by the MTA and

19 Alameda Produce Market believes it has claims against the MTA for, among other things, the value

20 of the Company's lost use of the property during the numerous years that the property has been

21 possessed by the MTA.  In the event the MTA is successful in taking the property, the Company

22 will have a Claim against the MTA for the fair value thereof, among other things less amounts

23 previously paid to lenders.

24       **15.    1500 Griffith Avenue, Los Angeles**

25       The subject property is owned by Merco Group - 1500 Griffith Avenue, LLC ("MG 1500

26 Griffith Avenue").  The property is located at the corner of Griffith Avenue and East 16th Street in

27 downtown Los Angeles.  It is comprised of two separate properties totaling approximately 2.0 acres

28 which have been improved with two buildings consisting of approximately 50,058 net rentable

353400.03 [XP]    25195

1  square feet. One property is encumbered by a lien in favor of Yoshiaki & Fumiko Murakami and

2  the other property is encumbered by a lien in favor of Legendary. As of March 31, 2010, the

3  improvements were leased to three tenants occupying approximately 100% of the total rentable

4  area. One of the tenants, occupying 12% of the rented space is on a month to month tenancy. The

5  average occupancy for month to month tenants is 39 months. One lease is subject to renewal in

6  2011. The largest tenant occupies 60% of the total area. The property is currently being utilized as

7  a distribution facility.

8         This property is an example of how MMPI services the multitude of business owners and

9  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

10  sectors of the garment industry in downtown Los Angeles.

11         **16.    1919 Vineburn Street, Los Angeles**

12         The subject property is owned by Meruelo Maddux Properties - 1919 Vineburn Street, LLC

13  ("MMP 1919 Vineburn Street") and is encumbered by a lien in favor of Imperial. The property is

14  located at 1919 Vineburn Street just north of downtown Los Angeles. It is comprised of one

15  property totaling approximately 5.8 acres which has been improved with a single-tenant

16  distribution building consisting of approximately 122,345 net rentable square feet. As of March

17  31, 2010, the improvements were 100% leased to one tenant. The property is currently being

18  utilized as a single-tenant distribution space facility.

19         This property is an example of how MMPI services the multitude of business owners and

20  their numerous employees who are involved in the (a) design, (b) production and (c) distribution

21  sectors of the garment industry in downtown Los Angeles.

22         **17.    2131 Humboldt Street, Los Angeles**

23         The subject property is owned by Meruelo Maddux Properties - 2131 Humboldt Street,

24  LLC ("MMP 2131 Humboldt Street") and is partially encumbered by a lien in favor of Vahan &

25  Anoush Chamlian ("Chamlian"). The subject property is located at the corner of Interstate 5

26  Freeway and Humboldt Street near the Northern boundary of downtown Los Angeles. It is

27  comprised of approximately 6.0 acres which has been partially improved with industrial buildings

28  consisting of approximately 31,319 net rentable square feet. The largest component of this

353400.03 [XP]     25195

1  property is unimproved land, which is encumbered and located at 2131 Humboldt Street and

2  contains approximately 214,000 square feet of land with no improvements. This portion of the

3  property is used from time to time for film shoots and associated parking.

4        The unencumbered portion is located at 336-346 and 350-354 North Avenue 21. It contains

5  approximately 17,415 square feet of land and improvements containing approximately 14,668

6  square feet of space. As of March 31, 2010, the improvements were leased to one tenant occupying

7  approximately 17% of the total rentable area. The tenant is on a month to month tenancy. The

8  average occupancy for month to month tenants is 44 months. The improved portion of the property

9  is currently being utilized as an industrial and distribution space facility.

10        This property represents a large scale redevelopment site that could be redeveloped in a

11  variety of ways to satisfy the developing needs of downtown Los Angeles space users both by itself

12  or with other properties located in the same area and owned by other Debtors.

13          **18.    2529 Santa Fe Avenue, Vernon (Santa Fe Plaza)**

14        The subject property is owned by Merco Group – 2529 Santa Fe Avenue, LLC ("MG 2529

15  Santa Fe Avenue") and is encumbered by a lien in favor of 1248 Figueroa Street, LLC ("1248

16  Figueroa"). The property is located in Vernon, California totaling approximately 1.3 acres which

17  has been improved with a newly constructed retail plaza that opened in 2009 consisting of

18  approximately 16,000 net rentable square feet. As of March 31, 2010, a portion of the

19  improvements were leased to a restaurant occupying approximately 29.4% of the total rentable area

20  with the lease expiring on April 30, 2013. The property is currently in lease up.

21        This property is an example of the development of urban in-fill property to satisfy the

22  sometimes non-institutional needs of small businesses in downtown Los Angeles.

23          **19.    2640 East Washington Boulevard, Los Angeles (Washington Produce**

24                  **Market)**

25        The subject property is owned by 2640 Washington Boulevard, LLC ("2640 Washington

26  Boulevard") and is encumbered by a lien in favor of East West Bank as successor to United

27  Commercial Bank ("UCB"). The property is located at 2640 East Washington Boulevard just

28  south of downtown Los Angeles. It is comprised of one property totaling approximately 2.8 acres

24

1  which has been improved with a newly constructed modern produce center consisting of

2  approximately 31,876 net rentable square feet. As of March 31, 2010, the improvements were

3  leased to twenty-eight tenants occupying approximately 88.0% of the total rentable area. Twenty-

4  seven of the tenants, occupying 97% of the rented space, are on month to month tenancies. The

5  average occupancy for month to month tenants is 15 months. The largest tenant occupies 17.8%

6  of the total area. The property is currently being utilized as a small-tenant produce industry space

7  with coolers.

8      This property is an example of the Company's (a) significant expertise and presence and (b)

9  focus on providing tailored solutions for a variety of space needs of the many small businesses in

10  the food and produce distribution industry in downtown Los Angeles.

11      **20.    2951 Lenwood Road, Barstow (Barstow Produce Center)**

12      The subject property is owned by Meruelo Maddux Properties - 2951 Lenwood Road, LLC

13  ("MMP 2951 Lenwood Road") and is encumbered by a secured lien in favor of FNBN-CMLCOM

14  I, LLC ("FNBN"). The property is located at the intersection of Lenwood Road and the Interstate

15  15 Freeway in Barstow, California. It is comprised of several properties totaling 75.0 acres which

16  has been partially improved with three buildings consisting of approximately 261,650 net rentable

17  square feet. The three buildings are comprised of a single-tenant cross dock building, a truck

18  maintenance building, and a newly constructed multi-tenant cold storage building for produce

19  tenants. As of March 31, 2010, the improvements were not leased.

20      This property is an example of the Company's (a) significant expertise and presence and (b)

21  focus on providing tailored solutions for a variety of space needs of the many small businesses in

22  the food and produce distribution industry.

23      **21.    3185 East Washington Boulevard, Los Angeles (Washington Cold**

24          **Storage)**

25      The subject property is owned by Merco Group -- 3185 E. Washington Boulevard, LLC

26  ("MG 3185 E. Washington Boulevard"). The property is commonly known as 3185 East

27  Washington Boulevard in downtown Los Angeles. It is comprised of two parcels. The main,

28  largest parcel is encumbered by a lien in favor of Chinatrust Bank (U.S.A.) ("Chinatrust"), and

1    totals approximately 2.7 acres which has been improved with a cold storage facility consisting of

2    approximately 59,000 net rentable square feet.  As of March 31, 2010, the improvements were

3    leased to a tenant occupying 100% of the total rentable area.  The property is currently being

4    utilized as a single-tenant cold storage facility.  MG 3185 E. Washington Boulevard also owns a

5    small parcel across Washington Boulevard which is unencumbered.

6          This property is an example of the Company's (a) significant expertise and presence and (b)

7    focus on providing tailored solutions for a variety of space needs of the many small businesses in

8    the food and produce distribution industry in downtown Los Angeles.

9          **22.      620, 643 and 644 South Gladys Avenue, 830 - 838 East 6th Street and**

10                **647 - 649 Ceres Avenue, Los Angeles**

11         The subject property is owned by Merco Group-620 Gladys Avenue, LLC ("MG 620

12   Gladys Avenue") and is partially encumbered by a lien in favor of Legendary.  The property

13   generally is located at the corner of South Gladys Avenue and East 6th Street in the Seafood

14   District of downtown Los Angeles.  The property has been improved with several buildings

15   housing numerous small businesses and an educational/daycare facility. The encumbered portion of

16   the property is located at 620 S. Gladys Avenue, 830 - 838 East 6th Street and 647 - 649 Ceres

17   Avenue. It contains approximately 107,795 square feet of land and improvements totaling

18   approximately 73,253 square feet of space. It is being primarily used as a multi-tenant

19   seafood/produce distribution facility. The unencumbered portion of the property is located at 643

20   and 644 S. Gladys Avenue and contains approximately 17,400 square feet of land and

21   improvements containing approximately 16,535 square feet of space. It is being used as a multi-

22   tenant distribution space facility. As of March 31, 2010, the improvements on the subject property

23   were leased to six tenants occupying approximately 78.0% of the total rentable area.  Two of the

24   tenants, occupying 46% of the rented space are on month to month tenancies.  The average

25   occupancy for month to month tenants is 24 months. The largest tenant occupies 15.7% of the total

26   area.

27

28

26

353400.03 [XP]     25195