1  JEFFER, MANGELS, BUTLER & MARMARO LLP
   JOHN A. GRAHAM (SBN 71017)
2  THOMAS M. GEHER (SBN 130588)
   1900 Avenue of the Stars, Seventh Floor
3  Los Angeles, California  90067-4308
   Telephone:    (310) 203-8080
4  Facsimile:    (310) 203-0567
   Email:        jag@jmbm.com
5                tgeher@jmbm.com

6  Attorneys for Creditor Wells Fargo Bank, N.A. successor by
   consolidation to Wells Fargo Bank Minnesota, National
7  Association as Trustee for the Registered Certificateholders of
   GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-
8  Through Certificates, Series 2002-C1 acting by and through
   Berkadia Commercial Mortgage, Inc., its Special Servicer

9

10                 UNITED STATES BANKRUPTCY COURT

11                 CENTRAL DISTRICT OF CALIFORNIA

12                 SAN FERNANDO VALLEY DIVISION

13

| 14 | In re | CASE NO.      1:09-bk-13356 KT |
|----|-------|-------------------------------|
| 15 | MERUELO MADDUX PROPERTIES, INC., et al., | Chapter 11 (Jointly Administered) |
| 16 | | |
| 17 | Debtors. | **BERKADIA'S RESPONSE TO DEBTORS' SUPPLEMENTAL REPLY RE DEBTORS'** |
| 18 | | **MOTION FOR ORDER EXTENDING AUTHORITY FOR THE USE OF CASH** |
| 19 | | **COLLATERAL AND TO MAINTAIN CASH** |
| 20 | | **MANAGEMENT SYSTEM THROUGH SEPTEMBER 30, 2010** |
| 21 | | |
| 22 | | Date:       July 16, 2010 |
| 23 | | Time:       11:00 a.m. |
| 24 | | Place:      Courtroom 301 21041 Burbank Boulevard Woodland Hills, California |
| 25 | | |

26

27

28

PRINTED ON

RECYCLED PAPER

7141675v1

- 1 -

1   **TO THE ABOVE ENTITLED COURT, ALL INTERESTED PARTIES AND THEIR**

2   **COUNSEL OF RECORD:**

3        Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,

4   National Association as Trustee for the Registered Certificateholders of GMAC Commercial

5   Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2002-C1 acting by and

6   through Berkadia Commercial Mortgage, Inc., its Special Servicer ("Berkadia"), hereby responds to

7   *Debtors' Supplemental Reply Re Debtors' Motion For Order Extending Authority For The Use Of*

8   *Cash Collateral and To Maintain Cash Management System Through September 30, 2010.*

9

10                                          **I**

11                                  **INTRODUCTION**

12       From the inception of this jointly administered bankruptcy proceeding it has been the

13   secured creditors (and their cash collateral) who have financed Debtors' continued money losing

14   business operations, been the source of millions of dollars of payments to the estates' professionals

15   and Debtors' executives, and have borne the entire risk of this chapter 11 reorganization case.

16   During the past sixteen (16) months of this chapter 11 case Debtors have been unable to obtain

17   approval of any disclosure statement and have spent this entire time pursuing reorganization plans

18   which have been for the personal benefit of Richard Meruelo, John Maddux and other insiders,

19   rather than for the benefit of Debtors' creditors.[1]

20       During the sixteen months which Debtors' have languished in this chapter 11 case, it is

21   undisputed that, even giving the Debtors the benefit of the doubt as to certain expenses, no less than

22   $1,300,000 of Berkadia's cash collateral generated by the real property owned by Debtor Santa Fe

23   Commerce Center, Inc. ("Santa Fe") has been (in violation of the specific "SPE" covenants

24   contained in both Santa Fe's Articles of Incorporation and loan documents) commingled, diverted

25   _____

26       [1] Each and every proposed plan of reorganization filed by Debtors sought to (i) insure that
Debtors' majority shareholders and executive officers, Richard Meruelo and John Maddux, remain
27   in control of Debtors and (ii) enjoin all creditors from exercising their rights against nondebtors
Richard Meruelo and John Maddux and their families.

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1    and used for the benefit of (i) Debtors other than Santa Fe, (ii) other secured creditors who have

2    settled with Debtors (this Court authorized the use of all cash collateral to fund such settlements-

3    thus, the cash collateral of Berkadia has been used to pay other secured creditors)[2], (iii) the payment

4    of millions of dollars in salaries and perks to Debtors' insiders and executives, and (iv) the payment

5    of millions of dollars in fees and costs to the professionals employed at the benefit of the estate.  As

6    Debtors' "enterprise" has not shown any financial or business improvement, no approvable

7    disclosure statement is on the horizon and Debtors' continue to persist in filing unconfirmable plans

8    of reorganization, it is now time for Debtors' to begin making monthly adequate protection

9    payments to Berkadia.  The monthly adequate protection payment to Berkadia should be in an

10    amount equal to the default interest (12.48%) which is presently accruing on the $10,170,904.52

11    principal balance owed by Santa Fe to Berkadia, i.e., $107,246.73.[3]

12

13                                                              **II**

14                          **THIS COURT'S PRIOR CASH COLLATERAL DECISION**

15        On November 5, 2009, this Court issued and entered that *Notice of Rulings on Certain*

16    *Objections to Debtors' Motion for Final Order(s) Authorizing Use of Cash Collateral and Use of*

17    *Debtors' Cash Management System and on Related Relief from Stay Motions* (the "November 2009

18    Ruling") whereby this Court made various rulings on Debtors' original motion to use the cash

19    collateral of Berkadia and other secured creditors.  The November 2009 Ruling is attached hereto as

20

21        [2] This is the proverbial "insult to injury."  If a secured creditor wants to obtain the money
comprising its cash collateral it must agree to settle on Debtors' terms, otherwise the secured
22    creditor's cash collateral is dissipated and used to pay other settling secured creditors, including
secured creditors like FNBN–CMLCON I, LLC, whose property did not generate any rents/cash
23    collateral.

24        [3] Attached hereto as Exhibit "A" and incorporated herein by this reference is that
*Declaration of Jackie Brome Re Accounting of Secured Debt (As of October 31, 2009) Owed By*
25    *Santa Fe Commerce Center, Inc.*, which is on file in this matter as Docket No. 730 ("Brome Decl.").
Per the Brome Decl., (i) the nondefault rate of interest is 7.48% or 2,113.29 per day and (ii) the
26    default rate of interest is 12.48% (5% over the nondefault rate) or an additional $1,412.63 per day.
Thus, (i) the daily total default interest is $3,525.92 ($2,113.29 + $1,412.63), (ii) the annual total
27    default interest is $1,286,960.80 ($3,525.92 x 365) and (iii) the monthly total default interest is
$107,246.73 ($1,286,960.80 divided by 12).

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1    Exhibit "B." As to Berkadia, this Court determined that, in addition to the "baseline" adequate

2    protection afforded all secured creditors whose cash collateral was to be used, Berkadia was entitled

3    to an additional adequate protection lien on all of Debtors' unencumbered real property for the lesser

4    of (i) "the actual amount of [Berkadia's] cash collateral used from November 1, 2009" (which,

5    through December, 2010, Debtors estimate will be in the sum of $1,163,673)[4] and (ii) "the post-

6    petition accruing interest at the default rate beginning on November, 2009" (which, through

7    December, 2010, Debtors estimate will be in the sum of $1,502,039).[5]

8        In reaching the determinations contained in the November, 2009 Ruling, this Court, as to

9    Berkadia and its real property collateral, Crown Commerce Center, made the following findings and

10   conclusions:

11        1.    Concerning the continued commingling of Berkadia's cash collateral during

12   the chapter 11 case in violation of the "SPE" covenants, this Court found that "the harm to

13   [Berkadia] is that its lien on cash is impaired or destroyed by commingling." See, November 2009

14   Ruling, page 5, lines 11-12;

15        2.    Based upon the Brome Decl. (which was then before the Court), as of

16   October 31, 2009, for cash collateral purposes, the amount of the debt owed by Santa Fe to

17   Berkadia, including default interest at the annual rate of 12.48%, was $11,574,653. See, November

18   2009 Ruling, page 5, line 27 through page 6, line 5. (Thus, when adding thereto (i) the full amount

19   of daily interest at the default rate ($3,525.92) from November 1, 2009 through the July 16, 2010

20   hearing date (258 days) for an additional $909,687.36, plus (ii) the additional monthly late charge of

21   $3,843.73 for nine additional months (November, 2009 through July, 2010) for an additional

22   $34,593.57, and plus (iii) additional attorney's fees, costs and expert fees, through July 16, 2009, of

23

24        [4] See, *Second Supplemental Declaration of John H. Tedford, IV, in Support of Debtors'
Motion for Order Designating Properties Owned by Merco Group - 5707 S. Alameda and Meruelo
25    Maddux - 1000 E. Cesar Chavez, LLC, as the Cash Collateral Adequate Protection Replacement
Lien Pool, and Related Relief, Including Release of Claims to or Against Other Property of the
26    Estate* ("Tedford Second Supplement"), page 14, which is on file herein as docket no. 1210 and
attached hereto as Exhibit "C."

27        [5] See, Tedford Second Supplement (Exhibit "C"), page 14.

28

JMBM | Jeffer Mangels
Butler & Marmaro LLP

1   no less than $300,000, the present (as of July 16, 2010) amount of the debt, for cash collateral

2   purposes, owed by Santa Fe to Berkadia is $12,818,933.93.  Of course, every day after July 16,

3   2010, the amount of such debt grows by continuing accruing interest, late fees, attorney's fees and

4   other costs.);

5           3.      With respect to whether the value of Santa Fe Commerce Center, the real

6   property collateral of Berkadia, is either $14,750,000, as testified to by Brad Lofgren, MAI,

7   Berkadia's valuation expert, or $23,250,000, as testified to by Richard Meruelo, this Court found (a)

8   Mr. Lofgren's "valuation to be the more persuasive" (see, November 2009 Ruling, page 6, lines 9-

9   10) and (b) the value of Crown Commerce Center "to be at least $15,500,000."  See, November

10  2009 Ruling, page 6, lines 23-24.  Thus, when determining what adequate protection to provide

11  Berkadia back in November, 2009, this Court used $15,500,000 as the value of Santa Fe Commerce

12  Center.  See, November 2009 Ruling, page 6, lines 26-28.

13  Based on the foregoing, (i) Crown Commerce Center has a value of $15,500,000, (ii) as of

14  July 16, 2010, the amount of Santa Fe's debt to Berkadia is $12,818,933.93 and (iii) Berkadia's

15  equity cushion, as of July 16, 2010, is the sum of $2,681,066.07 or 17%.  As Berkadia's 17% equity

16  cushion will continue to erode every day after July 16, 2010, and does not constitute adequate

17  protection, it is imperative that Santa Fe be ordered to make monthly adequate protection payments

18  to Berkadia in the amount of the full monthly default interest accruing on the undisputed

19  $10,170,904.52 principal balance owing to Berkadia.

20

21  **III**

22  **CAUSE EXISTS TO COMPEL SANTA FE TO MAKE MONTHLY**

23  **ADEQUATE PROTECTION PAYMENTS TO BERKADIA**

24  The chapter 11 cases of Santa Fe and its affiliated debtors have now languished for sixteen

25  months and no end is in sight.  Debtors' have not yet obtained approval of any disclosure statement

26  and have filed plans of reorganization which are unconfirmable as a matter of law due to, among

27  other things, the inclusion of an unlawful injunction seeking to protect nondebtors Mr. Meruelo and

28  Mr. Maddux and their families and the issuance of new equity interests in violation of applicable

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels Butler & Marmaro LLP

7141675v1

1    securities law.  Further, Debtors have continued on with their "business as usual" approach,

2    notwithstanding that Debtors' continue to hemorrhage money and have not operated on a profitable

3    basis for many years.

4          Rather than seriously attempt to negotiate a consensual plan of reorganization with its

5    secured creditors, Debtors' have held fast to the unsupportable proposition that a one size fits all

6    post-confirmation interest rate of 4% per annum is appropriate for all secured creditors, regardless

7    of the type of real property collateral is held or the amount or absence of any equity.  A 4% interest

8    rate, which is a mere .75% over the prime rate, certainly does not compensate the secured creditors

9    and Berkadia for the risks imposed by the Debtors' continued money losing "enterprise" which will

10   continue to commingle the rents of Santa Fe, i.e., the cash collateral of Berkadia, with others' rents

11   and use any positive cash flow from Berkadia's cash collateral for the benefit of money losing

12   debtors.

13         It is clear that throughout this chapter 11 case Debtors' strategy is to bleed the properties dry,

14   stop paying secured creditors until they "cave" to Debtors' settlement demands, and continue to use

15   the rents to maintain a money losing business operation but continue to pay (i) the salaries and perks

16   of insiders (it does not appear that Debtors have, during this chapter 11 case, ever reduced the size

17   and scope of its overhead), and (ii) millions of dollars to those professionals employed by the estate.

18   Thus, the entire risk of failure and this reorganization has been placed squarely on the backs of

19   secured creditors.  This simply is not equitable.

20         Finally, due to Berkadia's daily decreasing equity cushion, Debtors' continued money losing

21   operations and the related increasing risk to Berkadia, it is now appropriate that Berkadia's equity

22   cushion not be allowed to continue to deteriorate.  As this Court has already decided that secured

23   creditors are entitled to default interest and all versions of Debtors' plan do not cure and reinstate

24   Berkadia's debt, Santa Fe will be obligated to pay Berkadia, at least through plan confirmation,

25   interest at the default rate.  Thus, to prevent further deterioration of Berkadia's equity cushion, this

26   Court should order Santa Fe to commence monthly payments to Berkadia, beginning on August 1,

27

28

PRINTED ON
RECYCLED PAPER

7141675v1

- 6 -

1    2010, in the amount of the default interest accruing each month, i.e., $107,246.73.[6]

2        The requested monthly payment should be applied to accruing default interest, not principal

3    as requested by Debtor.  Debtors' request that any monthly payment be applied to principal has no

4    support in the law or Berkadia's loan documents[7].  The only authority cited by Debtors to support

5    their request that adequate protection payments be applied to principal is the decision of one

6    Georgia bankruptcy court in *In re Club Associates*, however, that case dealt with adequate

7    protection payments to an undersecured creditor.  Of course, pursuant to Bankruptcy Code § 506, an

8    undersecured creditor is no longer entitled to accrue interest and attorney's fees on it secured claim.

9    Here, as Berkadia is not an undersecured creditor, Berkadia is entitled to continue to accrue and add

10   to its secured claim accruing default interest, late charges, attorney's fees, and other costs.  In order

11   to prevent the further erosion of Berkadia's position, and now keep the "equity cushion" stable, all

12   payments of adequate protection should be applied to accrued monthly default interest.

13

14

15

16

17        [6] On July 28, 2010, this Court, in the chapter 11 case of Meruelo Maddux - 845 S. Flower
Street, LLC, will rule on a motion seeking to allow Meruelo Maddux - 845 S. Flower Street, LLC to
18   make a distribution of up to $12,000,000 to Meruelo Maddux Properties, L.P. ("MMPLP"), one of
the debtors in this jointly administered bankruptcy case.  At a July 12, 2010 hearing in this case, Mr.
19   Tedford (Debtors' counsel)  informed this Court that he did not anticipate objections to that motion.
Thus, by August 1, 2010, these jointly administered debtors, who commingle their funds, will
20   receive up to $12,000,000, which is sufficient for Santa Fe to make the requested monthly adequate
protection payments.

21        Additionally, MMPLP is "entitled" to this $12,000,000 distribution because MMPLP is the
22   entity into which all rents are commingled.  Due to this commingling, MMPLP "loaned" and
diverted the rents of Santa Fe, i.e., the cash collateral of Berkadia, and others to Meruelo Maddux -
23   845 S. Flower Street, LLC to allow Meruelo Maddux - 845 S. Flower Street, LLC to construct its
money losing residential tower, which was sold (at a loss exceeding $30,000,000) with the approval
24   of this Court.  As this $12,000,000 distribution to MMPLP is really the return of Berkadia's and
other secured creditors' cash collateral, it is equitable for these funds to be used to make adequate
25   protection payments to Berkadia.  By doing so, the risk of this chapter 11 case will rightfully return
to Debtors and Debtors' insiders/controlling shareholders, Mr. Meruelo and Mr. Maddux, where it
26   belongs.

27        [7] See, Promissory Note, paragraph 2.04, attached to the Brome Decl. (Exhibit "A") as
Exhibit "A."

28

PRINTED ON
RECYCLED PAPER

JMBM | Jeffer Mangels
Butler & Marmaro LLP

7141675v1

- 7 -

1

**IV**

2

**CONCLUSION**

3          For sixteen months Debtors have continued to use Berkadia's cash collateral to fund Debtors'

4    money losing operations, pay Debtors' settlements with other secured creditors, pay salaries and

5    perks to Debtors' insiders, and fund the payment of millions of dollars to those professionals

6    employed by the estate.  Presently, no disclosure statement has been approved and Debtors have,

7    and continue to, unsuccessfully persist in filing plans of reorganization which are unconfirmable as

8    a matter of law and are for the benefit of Debtors' insiders rather than creditors.  Due to the

9    foregoing, Berkadia (with other secured creditors whose collateral generate rents) has borne the

10   entire risk of this reorganization.  The equity cushion in Berkadia's collateral no longer adequately

11   protects Berkadia.  To prevent further deterioration to Berkadia's equity cushion and minimize the

12   harsh and undue risks which have been thrust upon Berkadia, it is now appropriate that this Court

13   order Santa Fe to pay Berkadia monthly, commencing August 1, 2010, the sum of $107,246.73,

14   representing the amount of interest accruing each month, at the default rate, under the relevant

15   promissory note.

16

17   DATED:  July 14, 2010                    JEFFER, MANGELS, BUTLER & MARMARO LLP
                                              JOHN A. GRAHAM
18                                            THOMAS M. GEHER

19
                                             By:   /s/ Thomas M. Geher
20                                                 THOMAS M. GEHER, Attorneys for Creditor
                                                   Wells Fargo Bank, N.A. Successor By
21                                                 Consolidation To Wells Fargo Bank Minnesota,
                                                   National Association As Trustee For The
22                                                 Registered Certificateholders Of GMAC
                                                   Commercial Mortgage Securities, Inc., Mortgage
23                                                 Pass-Through Certificates, Series 2002-C1 Acting
                                                   By And Through Berkadia Commercial Mortgage
24                                                 Inc., Its Special Servicer

25

26

27

28

PRINTED ON

RECYCLED PAPER

7141675v1

JMBM | Jeffer Mangels
Butler & Marmaro LLP