Case 1:09-bk-13356-KT    Doc 1699    Filed 08/13/10    Entered 08/13/10 23:56:27    Desc
Main Document    Page 1 of 20

JOHN N. TEDFORD, IV (State Bar No. 205537)
*JTedford@DGDK.com*
JULIA W. BRAND (State Bar No. 121760)
*JBrand@DGDK.com*
MICHAEL C. ABEL (State Bar No. 187743)
*MAbel@DGDK.com*
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Meruelo Maddux Properties, Inc., and
affiliated Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>MERUELO MADDUX PROPERTIES, INC., et al.,[1]<br><br>        Debtors and Debtors-in-Possession.<br><br>☑  Affects all Debtors<br><br>☐  Affects the following Debtor(s): | Case No. 1:09-bk-13356-KT<br><br>Chapter 11 (Jointly Administered)<br><br>**NOTICE OF MOTION AND MOTION FOR PROTECTIVE ORDER; AND MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF JOHN N. TEDFORD, IV, IN SUPPORT THEREOF**<br><br>Date:  August 27, 2010<br>Time:  9:30 a.m.<br>Place:  Courtroom 301<br>        21041 Burbank Blvd.<br>        Woodland Hills, California |

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

357634.01 [XP]    25195

**PLEASE TAKE NOTICE** that on August 27, 2010, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 301 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, California, the above-captioned debtors and debtors-in-possession (collectively the "Debtors") will and do hereby move for a protective order with regard to the motion of the Official Committee of Unsecured Creditors (the "OCC") seeking an order requiring the Debtors to provide certain information and produce certain documents to the OCC pursuant to Federal Rule of Bankruptcy Procedure 2004 (the "Rule 2004 Motion").

This motion is made on the following grounds: On March 26 and 27, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Code"). On July 26, 2010, the OCC filed the Rule 2004 Motion requesting that the Court order the Debtors to produce a total of 17 categories of information and documents on or before August 16, 2010. On July 27, 2010, most likely at the request or suggestion of other parties in this case, the OCC filed an amended exhibit to the Rule 2004 Motion expanding its request to 22 categories of information and documents.

Very early on August 4, 2010, the Debtors sent the OCC an e-mail detailing objections the Debtors had to a number of the categories identified by the OCC. The Debtors requested that the OCC "meet and confer" pursuant to the Court's local rules to discuss the OCC's requests without need for further litigation. The OCC did not respond to the e-mail until, on the record at a hearing on August 6, 2010, the OCC's counsel effectively said it would not do so. As a result, the Debtors have been required to file the within motion.

The OCC's requests are objectionable on multiple grounds. Most are overbroad and burdensome, among other things, and the Court has noted that at least some of the requests are onerous, appear to constitute an invasion of employees' privacy, and fail to appropriately define time periods for which documents are sought. In addition, in some requests the OCC is seeking information and demanding that the Debtor create documents for the benefit of the OCC, rather than producing documents for examination. Specific objections to the 22 categories identified in the OCC's amended Exhibit "1" are attached as Exhibit "1" hereto.

357634.01 [XP]    25195

1  The OCC's requests also are objectionable generally because the OCC is not acting in good faith and is seeking to, among other things, needlessly increase the cost of litigation in this matter. Concurrently, the Debtors are filing (a) a separate supplement discussing the Debtors' position in this regard, and (b) a motion authorizing the Debtors to file that supplement under seal.

To the extent that the Court orders the Debtors to produce documents for examination by the OCC, the OCC should be required to enter into a confidentiality agreement. A confidentiality agreement proposed by the Debtors is attached as Exhibit "3" hereto.

The Motion is based upon this notice and motion, the Memorandum of Points and Authorities, the Declaration of John N. Tedford, IV, the Request for Judicial Notice, the papers and pleadings on file in this case, and such other evidence as may be presented to the Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the schedule set by the Court on August 6, 2010, any party opposing the relief sought by the Motion must file a response in writing with the Clerk of the Court and such response must be served upon the following on or before August 20, 2010: (1) the Office of the United States Trustee, ATTN: Jennifer L. Braun, Esq., 21051 Warner Center Lane, Suite 115, Woodland Hills, CA 91367; and (2) counsel for the Debtors, John N. Tedford, IV, Esq., Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067. Any response not timely filed and served may be deemed by the Court to be consent to the granting of the motion. If you do not have any objection to the motion, you do not need to take any further action.

Dated: August 13, 2010

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: /s/ John N. Tedford, IV
John N. Tedford, IV
Attorneys for Meruelo Maddux Properties, Inc., and affiliated Debtors and Debtors-in-Possession

3

357634.01 [XP]    25195

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## I.

## STATEMENT OF FACTS

A.  BANKRUPTCY BACKGROUND

On March 26 and 27, 2009,[2] Meruelo Maddux Properties, Inc. ("MMPI"), and 53 of its direct and indirect subsidiaries (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Code"). Pursuant to the Court's ruling on March 30, 2009, the Debtors' cases are being jointly administered under case no. 1:09-bk-13356-KT. The Debtors continue to operate their business affairs as debtors-in-possession pursuant to the authority granted under §§ 1107 and 1108 of the Code.

B.  THE REQUEST BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR INFORMATION AND DOCUMENTS

On or about April 12, 2010, counsel for the Official Committee of Unsecured Creditors (the "OCC") sent the Debtors a letter seeking a large amount of information that its financial advisor, Kibel Green, Inc. ("KGI"), wanted to review. A copy of that letter is attached as Exhibit "2" to the OCC's motion filed pursuant to Federal Rules of Bankruptcy Procedure 2004 on July 26, 2010 (the "Rule 2004 Motion"). Many of the things listed in the letter are now sought by the OCC by way of the Rule 2004 Motion. Some information (such as loan documents) already was attached to proofs of claim and other documents filed with the Court, yet KGI wanted the Debtors to provide, for example, "amounts of debt service principal, interest and impounds relating to each Property, as well as current mortgage balance and key loan terms for each Property, including monthly payment amount, contract interest rate, remaining term of each loan, extension provisions, lien priority and guaranty obligations," or copies of all loan documents. KGI wanted summaries of the terms of

---

[2] For purposes of this opposition, March 27, 2009, is referred to as the "Petition Date."

4

357634.01 [XP]    25195

every lease agreement for every property, or in lieu of summaries copies of every agreement. KGI wanted the Debtors to fill out an extensive "Project Feasibility and Risk Profile" for every one of the Debtors' development properties. KGI wanted the Debtors to provide information regarding properties that were "candidates" for sale during the first two years of the Debtors' plan. If the Debtors owned only a few properties these requests might have been reasonable, but given the number of properties owned by the Debtors, KGI's request was substantially overbroad.

On April 21, 2010, the Debtors, the OCC, their counsel, and the OCC's financial advisors met at the offices of the OCC's counsel. At the conclusion of the meeting, the Debtors indicated that they would provide a reasonable amount of the information requested by KGI, the scope of which would be discussed by the Debtors and KGI, after execution of a written confidentiality agreement. On May 4, 2010, a draft confidentiality agreement was sent by the Debtors to the OCC's counsel.

On May 12, 2010, the OCC's counsel stated in an email that the OCC was unwilling to enter into a confidentiality agreement "without knowing exactly what information the debtors will provide and whether such proposed production [was] acceptable to the [OCC]." Counsel stated that the proposed agreement was "not acceptable in its present form and content," and that he would "await the debtors' response to the document/information request before [he] engage[d] in redrafting a confidentiality agreement." Counsel did not offer any reason for refusing to provide comments to the confidentiality agreement before the parties settled on a scope of production. The Debtors, however, wanted the agreement in place before the Debtors discussed with KGI the nature and extent of information and documents available that would provide KGI sufficient information to analyze the Debtors' disclosure statement and proposed plan.

On July 2, 2010, the Debtors finally received comments from the OCC to the confidentiality agreement, which had for the most part been rewritten by the OCC's counsel. A meeting between the parties took place on July 7, 2010. Among other things, the parties agreed that the Debtors would provide certain information promptly upon execution of a confidentiality agreement. That same day, KGI and the Debtors agreed upon the scope of information to be provided to KGI. The next morning, the Debtors sent the OCC's counsel a revised confidentiality agreement starting from

1  the one sent by the OCC's counsel the previous week. The OCC's counsel did not provide any
2  additional comments to the revised confidentiality agreement or make any effort to finalize the
3  document.
4      On Friday, July 23, 2010, at 5:32 p.m., the OCC's counsel sent a revised confidentiality
5  agreement to the Debtors' counsel and requested that the Debtors commit by the close of business
6  on the following Monday, July 26, 2010, to sign that confidentiality agreement and produce *all* of
7  the information and documents that had been requested in the April 12, 2010, letter. According to
8  the OCC's counsel, if the Debtors did not do so the OCC would file the Rule 2004 Motion. Of
9  course, since the Debtors would be in Court all day on July 26, 2010, and the OCC knew that the
10 Debtors would not agree to produce all of the information and documents requested in that letter
11 (and in fact had agreed with KGI to a reduced scope of documents to be provided), the email was
12 merely a self-serving exhibit to the Rule 2004 Motion.
13
14 C.     THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION FILED
15         PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004
16      On July 26, 2010, the OCC filed the Rule 2004 Motion requesting that the Court order the
17 Debtors to produce a total of 17 categories of information and documents on or before August 16,
18 2010. On July 27, 2010, the OCC filed an amended exhibit to the Rule 2004 Motion expanding its
19 request to 22 categories of information and documents (the "Document Requests").
20      At least with regard to the categories that were added on July 27, 2010, the amendment
21 appears to have been filed at the request or suggestion of other parties litigating against the Debtors
22 in this case, for their own use. For example, on July 27, 2010, plan proponent Legendary Investors
23 Group No. 1, LLC ("Legendary"), asked the Debtors for a detailed list of the Debtors' employees.
24 Later that same day, the OCC filed its amended Exhibit "1" containing new category number 19:
25              A schedule containing the identification of the name, position,
             job description, and compensation for every individual currently
26              employed by the DEBTORS.
27 Also added were categories requesting all minutes and resolutions of MMPI's board of directors
28 from the date of MMPI's initial public offering to the present, as well as everything ever given to

members of the board and everything relating to all such documents. When the Court recently inquired at a hearing about the scope of such request, it was counsel for the Official Committee of Equity Security Holders, not the OCC's counsel, who responded. Accordingly, it is clear that the OCC's request goes beyond documents that the OCC needs, or likely even wants, to perform the investigation and analysis that the OCC claims it wants to perform.

D. THE DEBTORS' EFFORT TO MEET AND CONFER REGARDING THE REQUESTS SOUGHT BY THE OCC IN THE RULE 2004 MOTION

Pursuant to the Court's local rules, on August 4, 2010, at 1:59 a.m., the Debtors counsel sent a detailed e-mail to the OCC's counsel requesting that counsel meet and confer to discuss the clearly overbroad and burdensome requests made in the Rule 2004 Motion. A copy of the e-mail is attached as Exhibit "2" to the Declaration of John N. Tedford, IV. The OCC's counsel did not respond prior to the hearing held before the Court on August 6, 2010, at which time the OCC's counsel effectively said he would not meet. This motion for a protective order is therefore filed without the benefit of a discovery stipulation as contemplated by the Court's local rules.

II.

ARGUMENT

Federal Rule of Bankruptcy Procedure 2004 provides, "On motion of any party in interest, the court may order the examination of any entity." The scope of an examination under Rule 2004 is broad, *see* Fed. R. Bankr. P. 2004(b), but not unlimited.

Under Local Bankruptcy Rule 2004-1(a), a moving party must meet and confer in person or telephonically with the entity to be examined or its counsel. As reflected in Exhibit "3" to the Rule 2004 Motion, the OCC did not seek to meet and confer prior to filing the Rule 2004 Motion. The OCC simply insisted that the Debtors confirm by the close of the next business day that they would sign the confidentiality agreement in the form attached to the e-mail, produce certain documents immediately, and the produce all other documents identified in the April 12 letter. There also was no effort to arrange for a mutually agreeable date, time, place and scope of examination.

Under Local Bankruptcy Rule 2004-1(f), a party whose examination is requested may file a motion for protective order if grounds exist under Federal Rule of Bankruptcy Procedure ("FRBP") 7026 and Federal Rule of Civil Procedure 26(c). Parties are to seek to resolve any dispute arising under Rule 2004 in accordance with Local Bankruptcy Rule 7026-1(c).

FRCP 26(c) empowers the Court to issue a protective order upon a showing of "good cause" in order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c)(1). FRCP 26(c) was enacted as a safeguard for the protection of parties and witnesses in view of the broad discovery rights authorized in FRCP 26(b). *United States v. Columbia Broadcasting Sys., Inc.*, 666 F.2d 364, 368-69 (9th Cir. 1982). "The use of the liberal discovery provisions of the Federal Rules of Civil Procedure to harass opponents is common, and requires the vigilance of the district judges to prevent." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 706 F.2d 1488, 1495 (7th Cir. 1983). The Court must balance the harm of permitting the discovery against the harm to the party seeking the information if the discovery is not permitted. *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1066 (9th Cir. 2004).

Exhibit "1" hereto contains the Debtors' objections to each of the OCC's specific requests for information and documents. Most are overbroad and burdensome, among other things, and the Court has noted that at least some of the requests are onerous, appear to constitute an invasion of employees' privacy, and fail to appropriately define time periods for which documents are sought. In some cases, the OCC is improperly requesting information rather than documents, and seeks to have the Debtors develop lists and schedules that may not already exist. In some cases, documents sought are already available to the OCC in papers filed with the Court. In some cases, information sought would be more appropriately sought from third parties, such as the amounts alleged by the third parties to be owed on account of their claims. In one case, the OCC is requesting documents that the Debtors' counsel forwarded to the OCC's counsel, at the OCC's counsel's request, a few hours *before* the Rule 2004 Motion was filed. In some cases, it appears that the OCC actually is asking for documents sought by third parties, and thus improperly allowing itself to be a conduit through which other parties can seek discovery prior to the commencement of discovery relating to confirmation of the Debtors' plan.

8

1   The Rule 2004 Motion is also not brought in good faith. The OCC is seeking to, among
2 other things, needlessly increase the cost of litigation in this matter. Concurrently, the Debtors are
3 filing (a) a separate supplement discussing the Debtors' position in this regard, and (b) a motion
4 authorizing the Debtors to file that supplement under seal. Facts relating to this issue are contained
5 therein.
6   Finally, with regard to the OCC's allegation that "the Debtors have refused to voluntarily
7 produce requested information and documents to the Committee," the OCC is wrong. The Debtors
8 have, for months, been willing to provide KGI information reasonably necessary to KGI to conduct
9 its review of the Debtors' plan. The reason KGI has not received documents primarily is due to the
10 fact that the OCC has not signed an acceptable confidentiality agreement. If the OCC were really
11 interested in obtaining the documents requested, it should have diligently sought to work with the
12 Debtors to finalize a confidentiality agreement. However, as evident from the time line above, the
13 OCC did not do so.
14   In any event, the Debtors believe that any production of information and documents must
15 be subject to a confidentiality agreement. Starting with the version of the draft agreement most
16 recently forwarded by the OCC's counsel, a further revised proposed confidentiality agreement
17 revised by the Debtors is attached as Exhibit "3" hereto.

## III.

## CONCLUSION

21   For the foregoing reasons, if the Court is inclined to grant the Rule 2004 Motion at all, the
22 Court should exercise what the Supreme Court has characterized as its "wide discretion" under
23 FRCP 26(c) and issue a protective order. *See Seattle Times v. Rhinehart*, 467 U.S. 20, 36, 104
24 S.Ct. 2199, 2209 (1984) (considering state law provision modeled on Federal Rule of Civil
25 Procedure 26). The Court should significantly reduce the scope of documents requested by the
26 OCC, require the OCC to execute an appropriate confidentiality agreement, and then the Debtors

9

357634.01 [XP]    25195

1  propose to make those documents required by the Court to be produced available for examination
2  by the OCC and the OCC's financial advisor at the Debtors' offices within a reasonable time.

Dated: August 13, 2010                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

                                          By: _____
                                          John N. Tedford, IV
                                          Attorneys for Meruelo Maddux Properties,
                                          Inc., and affiliated Debtors and Debtors-in-
                                          Possession

357634.01 [XP]    25195

# DECLARATION OF JOHN N. TEDFORD, IV

I, John N. Tedford, IV, declare and state as follows:

1. I am an attorney, duly licensed and entitled to practice before courts of the State of California, and I am a member in good standing of the Bar of this Court. I am a principal of a professional corporation that is a partner of the law firm of Danning, Gill, Diamond & Kollitz, LLP, counsel for Meruelo Maddux Properties, Inc. ("MMPI"), and fifty-three of its affiliated debtors and debtors-in-possession (collectively with MMPI, the "Debtors") in connection with bankruptcy cases filed by them on March 26 and 27, 2009, under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. I have personal knowledge of the facts in this declaration. If called as a witness, I could testify competently to these facts.

3. This declaration is submitted in support of the Debtors' Motion for Protective Order to which this declaration is attached. I have read the motion and all facts stated therein are true and correct to the best of my knowledge, including all facts relating to the request made by the Official Committee of Unsecured Creditors (the "OCC") for production of information and documents by the Debtors, and communications between the Debtors and the OCC regarding the confidentiality agreement. With regard to all written communications referenced in the motion, I received copies of such communications at the time they were sent to or received by the Debtors, and I am familiar with the content of such communications.

///
///
///
///
///
///
///
///

357634.01 [XP]    25195

4. Attached as Exhibit "2" hereto is a true and correct copy of my e-mail sent to Mr. Dean Rallis on August 4, 2010, at approximately 1:59 a.m. I did not receive any response to my e-mail until comments were made by Mr. Rallis on the record at the hearing on August 6, 2010.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 13, 2010, at Los Angeles, California.

_____
JOHN N. TEDFORD, IV

357634.01 [XP]    25195

# EXHIBIT 1

| | CATEGORY NUMBER 1 |
|---|---|
| **REQUEST** | With respect to each PROPERTY and on a consolidated basis, all DOCUMENTS consisting of, relating to and/or evidence current operating statements and budgets for each year of the PLAN projection period (currently set forth in Exhibit E to the PLAN) and monthly for the first two years of such PLAN projection period, in Excel format. |
| **DEBTORS' RESPONSE** | This request is, among other things, overbroad, burdensome and harassing of the Debtors. The request is also vague as to "current operating statements" for future periods. As the OCC is fully aware, monthly operating reports have been submitted to the U.S. Trustee's office every month since the Petition Date and served on counsel, and copies have been filed with the Court since the Court's local rules were revised to require such filings.<br><br>The Debtors already have filed their projections with the Court, and therefore the request for all documents "consisting of" such projections is nonsensical.<br><br>There are no grounds for the OCC to broadly request all documents relating to and/or evidencing the Debtors' projections. Further, it is clear that the OCC has not adequately thought out this request in that the OCC requests all documents relating to and/or evidencing the Debtors' projects *in Excel format*, even though such documents clearly would not all be susceptible to being produced in that format.<br><br>The Debtors believe that what the OCC really wants is copies of the Debtors' Exhibit E in Excel format. There is no requirement that the Debtors provide such information in such format. |
| **COURT'S RULING** | |

| | CATEGORY NUMBER 2 |
|---|---|
| **REQUEST** | With respect to each PROPERTY and on a consolidated basis, for each year of the PLAN projection period (currently set forth in <u>Exhibit E</u> to the PLAN) and monthly for the first two years of such PLAN projection period, a break-out and/or detail of the following line items in such projections: (a) "Operating Expenses;" (b) "Net Impact of Asset Sales"; (c) "corporate costs" and (d) "professional fees". |
| **DEBTORS' RESPONSE** | This request is no longer relevant as to the "Net Impact of Asset Sales" line item because the Debtors' revised projections do not include that line item.<br><br>Subject to the execution of a confidentiality agreement, the Debtors propose to provide for the OCC's examination a more detailed version of Exhibit E to the Debtors' plan containing the subcategories requested by the OCC (where such subcategories exist) for those Debtors that own real property. |
| **COURT'S RULING** | |

| CATEGORY NUMBER 3 | |
|---|---|
| **REQUEST** | With respect to each PROPERTY, all DOCUMENTS consisting of, relating to, evidencing and/or identifying "property-level" assumptions in the PLAN forecast for rent per square foot, market rent per square foot, tenant cost reimbursements (CAM), and expense line items, annual rent and cost inflation, vacancy, lease rollover, re-tenanting downtime, tenant improvements and leasing commissions. |
| **DEBTORS' RESPONSE** | This request is, among other things, vague, overbroad, burdensome and harassing of the Debtors. With regard to the OCC's request for documents "consisting of" the property level assumptions, the request is nonsensical. With regard to the OCC's request for documents "identifying" and/or "evidencing" property level assumptions, those assumptions already are identified in exhibits to the Debtors' disclosure statement. As to the OCC's request for documents "relating to" assumptions identified in the projections, in connection with confirmation proceedings, the parties will have an opportunity to depose the Debtors' representative(s) and/or expert(s) regarding the basis for the assumptions underlying the projections. If it becomes apparent during that process that production of documents relating to such assumptions is required, a request for such documents can be dealt with at such time. |
| **COURT'S RULING** | |

357667.02 [XP] 25195

| | CATEGORY NUMBER 4 |
|---|---|
| **REQUEST** | With respect to each PROPERTY, all DOCUMENTS consisting of, relating to and/or evidencing current rent rolls for any lease agreements. |
| **DEBTORS' RESPONSE** | This request is, among other things, overbroad, burdensome and harassing of the Debtors. The Debtors own over fifty properties, and the vast majority of the properties are leased to one or more tenants. Among the Debtors' properties are two residential apartment buildings with numerous tenants. There is no reason whatsoever for the Debtors to spend the time and effort of gathering and providing to the OCC copies of every single lease to which a Debtor is a party, much less all documents "relating to and/or evidencing" the Debtors' current rent rolls.<br><br>Subject to the execution of a confidentiality agreement, the Debtors propose to provide for the OCC's examination a current rent roll providing information customarily appearing in such documents (*e.g.*, identification of the premises, name of tenant, lease term, and monthly rent). The Debtors do not believe that the OCC should be entitled to examine individual leases, though the Debtors do propose to provide for the OCC's examination (but not for copying) copies of the leases between the Debtors and the top ten tenants in their portfolio, which already are identified on page 29 of the Debtors' most recent 10-K. |
| **COURT'S RULING** | |

357667.02 [XP] 25195

| CATEGORY NUMBER 5 ||
|---|---|
| **REQUEST** | With respect to each PROPERTY, all DOCUMENTS consisting of, relating to and/or evidencing any lease agreements that YOU have entered into with a term of two years or longer. |
| **DEBTORS' RESPONSE** | This request is, among other things, vague, overbroad and burdensome in that, among other things, it requests all lease agreements (and of course documents relating to and/or evidencing such agreements) that the Debtors have ever entered into with a term of two years or longer. The Debtors presume that the OCC means to request *current* leases with a term of two years or longer. Regardless of whether the OCC is entitled to an examination of actual leases, the Debtors should not be required to provide all documents relating to and/or evidencing such leases.<br><br>As noted in response to category number 4, the Debtors are proposing to provide for the OCC's examination a current rent roll. That information should be sufficient. |
| **COURT'S RULING** | |

357667.02 [XP] 25195

| | **CATEGORY NUMBER 6** |
|---|---|
| **REQUEST** | With respect to each PROPERTY, all DOCUMENTS consisting of, relating to and/or evidencing all loan documents relating to any loan secured by any of the PROPERTIES, and, for each such loan, all DOCUMENTS consisting of, relating to, evidencing and/or identifying the amounts of debt service principal, interest and impounds relating to each PROPERTY, as well as current mortgage balance and key loan terms for each PROPERTY, including, but not limited to, the monthly payment amount, contract interest rate, remaining terms of each loan, extension provisions, lien priority and guaranty obligations (i.e., completion guaranties and repayment guaranties, whether direct or contingent). |
| **DEBTORS' RESPONSE** | This request is, among other things, vague, overbroad, burdensome and harassing of the Debtors. Every secured creditor in this case has filed a proof of claim in at least one Debtor's case. Many have filed motions for relief from stay and submitted copies of their loan documents in connection therewith. Some also filed copies of their loan documents in connection with the Debtors' motion for authority to use cash collateral. The Debtors also have filed loan documents in support of certain motions for approval of settlements with secured lenders. The OCC's request suggests that the OCC has made no effort to gather any such documents from the public record.<br><br>Even if the OCC is entitled to an examination of the Debtors' loan documents, the demand for all documents "relating to and/or evidencing" such documents is clearly overbroad.<br><br>The OCC's request also fails to limit its request to loans that currently are in place. There is no basis for the OCC to examine any loan documents relating to loans that are not currently owed.<br><br>The Debtors propose to provide for the OCC's examination copies of loan documents (*e.g.*, loan agreements, promissory notes, deeds of trust, ancillary agreements that may be defined in the loan agreements as loan documents, and guaranties) for the Debtors' presently existing loans. |
| **COURT'S RULING** | |

357667.02 [XP] 25195

| CATEGORY NUMBER 7 ||
|---|---|
| **REQUEST** | With respect to each PROPERTY, all DOCUMENTS consisting of, relating to, evidencing and/or identifying capital expenditures and budgeted capital expenditures for each year in the PLAN projection period (currently set forth in <u>Exhibit E</u> to the PLAN) and monthly for the first two years of such PLAN projection period. |
| **DEBTORS' RESPONSE** | This request is, among other things, vague, overbroad, burdensome, and harassing of the Debtors. In connection with confirmation proceedings, parties will have an opportunity to depose the Debtors' representative(s) regarding the basis for projected capital expenditures. If it becomes apparent during that process that production of documents relating to such projections is required, a request for such documents can be dealt with at such time. Also, projected expenditures beyond the period of time in which general unsecured creditors will be paid under the Debtors' plan would be irrelevant to the OCC in any event. |
| **COURT'S RULING** | |

357667.02 [XP] 25195