1  Jeremy V. Richards (CA Bar No. 102300)
   Jeffrey W. Dulberg (CA Bar No. 181200)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 11th Floor
3  Los Angeles, California  90067-4100
   Telephone: 310/277-6910; Facsimile:  310/201-0760
4  E-mail: jrichards@pszjlaw.com
           jdulberg@pszjlaw.com
5
6  Surjit P. Soni (CA Bar No. 127419)
   THE SONI LAW FIRM
7  35 N. Lake Ave., Suite 720
   Pasadena, California  91101
8  Telephone: 626/683-7600; Facsimile:  626/683-1199
   E-mail: surj@sonilaw.com
9
10 Counsel for Co-Proponent, Legendary Investors
   Group No. 1, LLC

Curtis C. Jung, Esq. (CA Bar No. 130657)
Monica H. Lin, Esq. (CA Bar No. 237343)
JUNG & YUEN, LLP
888 South Figueroa Street, Suite 720
Los Angeles, California  90017
Telephone:  213/689-8880
Facsimile:  213/689-8887
E-mail: curtis@jyllp.com

Elmer Dean Martin III, Esq. (CA Bar No. 75517)
22632 Golden Springs Dr., Suite 190
Diamond Bar, California  91765
Telephone:  909/861-6700; Facsimile:  909/860-3801
E-mail: elmer@bankruptcytax.net

Counsel for Co-Proponent, East West Bank

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>MERUELO MADDUX PROPERTIES, INC.,<br><br>et al.,<br><br>              Debtors.<br><br>☒ Affects all Debtors<br>☐ Affects the following Debtor(s): | Case No. 1:09-bk-13356-KT<br><br>Chapter 11<br><br>(Jointly Administered)<br><br>**LEGENDARY INVESTORS GROUP NO. 1, LLC'S AND EAST WEST BANK'S SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION DATED SEPTEMBER 3, 2010**<br><br>[*Definitions for Plan and Disclosure Statement Filed Concurrently Herewith*]<br><br>Plan Confirmation Hearing:<br>Hearing Date:    November 29, 2010<br>Time:          9:30 a.m.<br>Place:         21041 Burbank Blvd.<br>                 Courtroom 301<br>                 Woodland Hills, CA<br>Judge:        Hon. Kathleen Thompson |

**IMPORTANT DATES**

Date by which Ballots must be received: **October 12, 2010, at 5:00 p.m. Pacific Time**
Date by which objections to Confirmation of the Plan must be filed and served: **November 4, 2010, at 5:00 p.m. Pacific Time**
Hearing on Confirmation of the Plan: **November 29, 2010, at 9:30 a.m. Pacific Time.**

Jeremy V. Richards
Jeffrey W. Dulberg
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Telephone: 310/277-6910
Counsel for Co-Proponent, Legendary Investors Group No. 1, LLC

Dated:  September 3, 2010

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# I.

## INTRODUCTION

Legendary Investors Group No. 1, LLC ("Legendary") and East West Bank ("EWB" and collectively with Legendary, the "Proponents") hereby jointly propose the following second amended chapter 11 plan of reorganization dated September 3, 2010 (the "Plan") for Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI"), and its 53 related debtor entities (collectively, the "Debtors").  The Proponents' Disclosure Statement for Legendary Investors Group No. 1, LLC's and East West Bank's First Amended Chapter 11 Plan of Reorganization Dated August 24, 2010 (the "Disclosure Statement") provides a history of the Debtors and its Chapter 11 Cases as well as a summary of the Plan and certain related matters.  The Disclosure Statement sets forth information (a) concerning the Plan and alternatives to the Plan, (b) advising the Holders of Claims and Interests of their rights under the Plan, (c) assisting the Holders of Claims and Interests in making an informed judgment regarding whether they should vote to accept or reject the Plan, and (d) assisting the Bankruptcy Court in determining whether the Plan complies with the provisions of the Bankruptcy Code and should be confirmed.  The Disclosure Statement has been approved by the Bankruptcy Court and is provided to help you understand the Plan.

The Plan's foundation is a $70 million recapitalization via a $5 million cash infusion by Legendary and conversion of $65 million of the Proponents' debt to equity.  (This conversion and cash infusion will result in the Proponents owning 80% of Reorganized MMPI if no Holders of MMPI Existing Common Stock exercise their Subscription Rights, and 70% of the stock of Reorganized MMPI in the event that the Subscription Rights are fully exercised.)  In addition to retaining an aggregate 20% interest in Reorganized MMPI on account of their existing holdings (which percentage interest will not be diluted by exercise of the Subscription Rights or issuance of any of the Subscription Shares), Holders of MMPI Existing Common Stock[1] of record as of the Effective Date will be offered the right to invest up to $10 million to purchase additional shares of Reorganized MMPI, equal to a 10% stake in Reorganized MMPI (which rights, if fully subscribed

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Proponents' concurrently filed *Definitions for Plan and Disclosure Statement.*

to, will reduce the Proponents' interest in Reorganized MMPI from 80% to 70% but will increase the percentage interest of Holders of MMPI Existing Common Stock to 30%). However, confirmation of the Plan is not conditioned upon the Rights Offering, or any level of participation therein. This restructuring will greatly reduce the Reorganized Debtors' debt service load permitting them to meet all of their obligations both in the short term and over the life of the Plan. Legendary's cash contribution combined with the proceeds of the rights offering and the Debtors' cash from operations will provide more than sufficient funds for the payment of all amounts due on or around the Plan's Effective Date.

Holders of General Unsecured Claims will receive a cash payment equal to 100% of the amount of their Allowed Claims on the Effective Date, plus (a) interest for the period from the Petition Date through the Effective Date at the Federal Judgment Rate in effect as of the Petition Date and (b) in the event the Claim is not Allowed as of the Effective Date, interest for the period from the 31st day after the Effective Date through the date the Claim becomes an Allowed Claim at the rate of 4% per annum. Interest shall not accrue during the initial 30 day period following the Effective Date. Holders of General Unsecured Claims could be considered "Impaired" by the Plan; out of an abundance of caution, the Proponents are soliciting votes on the Plan from such Holders. However, the Proponents reserve the right to contend that Holders of General Unsecured Claims are Unimpaired under the Plan and are deemed to have accepted the Plan.

Unless they have agreed to alternative treatment with the Debtors pursuant to a Bankruptcy Court-approved settlement, Holders of Secured Claims will receive 5.5% interest-only payments on a quarterly basis, with repayment of all principal on or before the fourth anniversary of the Effective Date. Unless they have agreed to alternative treatment with the Debtors pursuant to a Bankruptcy Court-approved settlement, Holders of Allowed Unsecured Guaranty Claims will have their Allowed Guaranty Claims reinstated but modified with respect to the restructured underlying secured debt. Holders of Secured Claims that have entered into Bankruptcy Court-approved settlements with the Debtors regarding repayment of their Secured Claims shall have those settlements honored in the form approved by the Bankruptcy Court. The Plan does not place these Secured Claims in classes as

the Holders' rights under their respective settlements will not be modified or altered in any way by the Plan.

The Plan provides for the cancellation of MMPI Existing Common Stock and the issuance of approximately 22,025,000 shares of Reorganized MMPI Common Stock as follows.

In exchange for converting $65 million of their debt, release of their guarantee claims against MMPI and MMPLP relating to this debt,[2] and Legendary's $5 million equity contribution, the Proponents shall receive between 15,417,500 and 17,620,000 shares of Reorganized MMPI Common Stock, equal to a stake of between 70% and 80% of Reorganized MMPI, dependent upon the outcome of the Rights Offering described below.

Holders of MMPI Existing Common Stock, who hold approximately 88.1 million shares in total, shall be issued one share of Reorganized MMPI Common Stock in exchange for every twenty shares of MMPI Existing Common Stock they hold on the Effective Date.  Thus, Holders of MMPI Existing Common Stock shall be diluted to an aggregate 20% stake in Reorganized MMPI via issuance to them of 4,405,000 shares of Reorganized MMPI (which percentage interest will not be further diluted by issuance of the Subscription Shares).  Holders of less than twenty shares of MMPI Existing Common Stock shall be cashed out on a pro-rata basis.

However, for each share of Reorganized MMPI Common Stock received pursuant to the Plan, holders of MMPI Existing Common Stock as of the Effective Date will also receive one Subscription Right.  Subject to all of the terms and conditions of the Subscription Right (as more fully set forth in Section IV.E.2 below), the Holder thereof shall be entitled, during the Subscription Period to subscribe for the purchase of a number of Subscription Shares equal to up to 0.95 times the number of shares of Reorganized MMPI Common Stock distributed to such Holder under the Plan, at a price of $4.54 per share.  However, the number of Subscription Shares available to those exercising Subscription Rights shall be limited to 2,202,500 shares of Reorganized MMPI Common Stock.  In the event that Holders of MMPI Existing Common Stock as of the Effective Date subscribe for more than the number of Subscription Shares, each Holder shall be limited to a share of the Subscription Shares equal to its Subscription Share Pro Rata Allocation.  This offering shall

---

[2] *See* footnote 7 herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

comply with all rules necessary to ensure its exemption, under Section 1145 of the Bankruptcy Code, from federal, state and local security registration requirements; alternatively, it shall be made available only to Holders of MMPI Existing Common Stock who are "accredited investors."

Claims held by the Debtors' estates that may be asserted against Insider Shareholders (defined herein as Insider Causes of Action) shall be controlled by a Litigation Trustee on behalf of present non-Insider MMPI Equity Holders and Reorganized MMPI.  However, Insider Shareholders may vote under the Plan to enter into complete, mutual, general releases with the Reorganized Debtors conditioned upon cancellation and forfeiture of all of their MMPI Existing Common Stock, rights under the Rights Offering and other interests in the Debtors held by such electing Insider Shareholder.  In the event that all Insider Shareholders accept the foregoing Insider Shareholder Settlement Offer, the Litigation Trust will not be formed under the Plan.

Legendary's principals, Surjit Soni and Dilip Bhavnani, bring extensive executive experience to the management of the Reorganized Debtors.  As described at length in the Disclosure Statement, they bring the necessary capabilities, financial acumen and development experience required to execute the Proponents' Plan.

The Proponents will seek confirmation of the Plan in the MMPI case immediately prior to seeking confirmation of the Plan in the remaining Debtors' cases.  Confirmation of the Plan in the MMPI case is an express condition to confirmation of the Plan in each of the other Debtors' cases. In the event the Proponents are unable to confirm the Plan in the MMPI case, the Proponents will not seek to confirm the Plan with respect to the remaining Debtors.  The Plan does not substantively consolidate the Debtors' estates.  Each of the Debtors will remain a separate entity if the Plan is confirmed in whole or in part, and the debts and liabilities of each Debtor will remain attributable to that Debtor alone.  Accordingly, the Plan classifies the Debtors' Claims and Interests on a Debtor-by-Debtor basis, votes will be tabulated on a Debtor-by-Debtor basis, and the Plan will be confirmed on a Debtor-by-Debtor basis.

All Holders of Impaired Claims and Interests entitled to vote on the Plan are encouraged to read this Plan and the Disclosure Statement in their entireties before voting to accept or reject the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plan. No materials, other than the Disclosure Statement, have been approved by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

**OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTORS, THEIR FINANCIAL CONDITION, OR ANY ASPECT OF THE PLAN ARE AUTHORIZED BY ANY PARTY IN THESE CASES. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN, WHICH ARE OTHER THAN AS CONTAINED IN, OR INCLUDED WITH, THIS PLAN OR THE DISCLOSURE STATEMENT, SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

**THE FINANCIAL INFORMATION CONTAINED HEREIN, UNLESS OTHERWISE INDICATED, IS UNAUDITED. THE PROPONENTS DID NOT PREPARE THE DEBTORS' FINANCIAL INFORMATION. THE PROPONENTS ARE UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN CONCERNING THE DEBTORS IS WITHOUT ANY INACCURACIES. GREAT EFFORT, HOWEVER, HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS PRESENTED FAIRLY.**

**THE PROPONENTS BELIEVE THAT THE PLAN REPRESENTS THE BEST POSSIBLE RETURN TO HOLDERS OF CLAIMS AND INTERESTS. THE PROPONENTS STRONGLY URGE YOU TO READ THE DISCLOSURE STATEMENT AND VOTE IN FAVOR OF THE PLAN.**

## II.

### DEFINITION OF TERMS AND RULES OF INTERPRETATION

#### A.    Definition of Terms

The definitions for capitalized terms used in the Plan and Disclosure Statement may be found in the Proponents' concurrently filed *Definitions for Plan and Disclosure Statement* and shall have the respective meanings set forth therein. Any capitalized term used in the Plan or Disclosure Statement that is not defined in the *Definitions for Plan and Disclosure Statement* or elsewhere, but

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

that is used in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, as the case may be.

**B.    Interpretation of Terms And Computation Of Time**

    **1.    Rules of Interpretation**

For purposes of the Plan: (a) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any contract, instrument, release or other agreement or document entered into by a Reorganized Debtor in connection with the Plan which refers to "being in a particular form" or "on particular terms and conditions" means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms, or conditions which is material to a party to such document shall not be made without such party's consent or an order of the Bankruptcy Court: (c) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or (to the extent otherwise permitted, hereafter) may be amended, modified or supplemented from time to time; (d) unless otherwise specified in a particular reference, all references in the Plan to paragraphs, Articles and Exhibits are references to paragraphs, Articles and Exhibits of or to the Plan; (e) the words "herein", "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles and paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of the Plan; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) all exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, provided that they are Filed no later than the commencement of the Confirmation Hearing.

    **2.    Time Periods**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following is a schedule designating the Classes of Claims and Interests under the Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. The below schedule includes Claims that are or may be disputed.[3] No Distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or an Allowed Interest and then only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

**A.    Summary of Plan Treatment for Claims and Interests Against Each Debtor**

The categories of Claims and Interests listed in the chart below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests in each of the Estates[4] for all purposes, including voting, Confirmation and Distribution pursuant to this Plan.

| CLASS | DESCRIPTION OF CLASS | IMPAIRED? VOTING? | TREATMENT |
|---|---|---|---|
| **Class A-1** in the following cases: 21, 54 | RoofCorp of CA, Inc. Secured Claim | Unimpaired Not Voting | On the Effective Date, the claim shall be reinstated and the Holder shall retain its lien, if any. |
| **Class A-2** in the following case: 42 | Secured Tax Claims (Other than Los Angeles County) | Unimpaired Not Voting | Common Secured Tax Claim Treatment |
| **Class A-2** in the following cases: 1-9, 17, 19, 23, 31 and 42 | Los Angeles County Secured Tax Claims | Impaired Voting | The treatment of Los Angeles County's Secured Tax Claims shall be consistent in all regards with its Bankruptcy Court-approved settlement. |
| **Class A-3** in the following cases: 16, 26, 32, 33, 39, 40, 43, 49, 50, 53, 54 | Non-Settled Secured Lender Claims (Includes Legendary Secured Claims in Merco Group secured by Sci-Arc Real Property and Sky-Arc Real Property in Case 50) | Impaired Voting | Common Non-Settled Secured Lender Claim Treatment |

---

[3] The schedule was adopted from a similar schedule in the Debtors' disclosure statement. The Proponents make no representations regarding the accuracy or completeness of the Debtors' information.

[4] See Exhibit "2" to Disclosure Statement – Key to Debtors' Estates and Secured Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS | DESCRIPTION OF CLASS | IMPAIRED? VOTING? | TREATMENT |
|---|---|---|---|
| **Class A-3** in the following case: 29 | Grand Avenue Lofts, LLC / CIM Urban RE Fund GP II, LLC Secured Claim | Impaired Voting | Grand Avenue Lofts' ("GAL") Position.  GAL asserts that it does not have a claim that is subject to modification or discharge.  Rather, GAL asserts a current right in the real property that cannot be extinguished through bankruptcy, that when it conveyed property to MM 336 W. 11th Street, it reserved a power of termination, as reflected in the grant deed.  GAL asserts that MM 336 W. 11th Street never had title free and clear of GAL's property right.  GAL asserts that an attempted discharge of Grand Avenue's power of termination would, in effect, be a forced conveyance of a property interest, beyond the scope of a discharge that would ultimately give the estate a property interest it did not have before filing bankruptcy.<br><br>Proponents' Position.  The Plan Proponents believe GAL holds a disputed, unliquidated, and contingent Secured Claim.  If it is found that GAL holds a valid covenant running with the underlying land it will "ride through" confirmation of the Plan or GAL shall receive its indubitable equivalent under section 1129(b)(2)(A)(iii) of the Bankruptcy Code; to the extent not, it will be extinguished.  Any related breach of contract claim is disputed, unliquidated, and contingent; accordingly, it shall not receive a Distribution under the Plan. |
| **Class A-4** in the following case: 48 | Secured Lender Claims (Legendary Secured Claims – MM Little J) | Unimpaired Not Voting | On the Effective Date, the claim shall be reinstated and the Holder shall retain its lien, if any. |
| **Class A-4** in the following cases: 28, 29, 30, 37, 44, 45, and 46 | Secured Lender Claims (All other Legendary Secured Claims) | Impaired Voting | In exchange for its approximately $33 million in Secured Claims, its release of guaranties against MMPI and MMPLP relating to these Secured Claims, and its $5 million equity contribution, Legendary shall receive between 8,369,500 and 9,565,458 shares of Reorganized MMPI, equal to a stake of between 38% and 43% of Reorganized MMPI, dependent upon the outcome of the Reorganized MMPI rights offering described in the treatment for Class E in case 1 (MMPI). |
| **Class A-4** in the following cases: 41 and 52 | Lender Secured Claims (EWB) | Impaired Voting | In exchange for its approximately $32 million in Secured Claims and its release of guaranties against MMPI relating to these Secured Claims, EWB shall receive between 7,048,000 and 8,054,543 shares of Reorganized MMPI, equal to a stake of between 32% and 37% of Reorganized MMPI, dependent upon the outcome of the Reorganized MMPI rights |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS | DESCRIPTION OF CLASS | IMPAIRED? VOTING? | TREATMENT |
|---|---|---|---|
| | | | offering described in the treatment for Class E in case 1 (MMPI). |
| **Class B** in the following cases: 1, 5, 32, 33, 36, 52 | Other Priority Claims (Non-Tax) | Unimpaired Not Voting | Common Other Priority Claims Treatment |
| **Class C-1** in all cases | Unsecured Claims – General | Impaired[5] Voting | Common General Unsecured Claim Treatment |
| **Class C-2** in the following cases: 1, 2 | Unsecured Claims – Guaranty Claims against MMPI or MMPLP *except for* Legendary and EWB Guaranty Claims where underlying secured claim will be converted to equity. These Classes include Legendary's Guaranty Claims relating to Merco Group | Impaired Voting | Common Unsecured Guaranty Claim Treatment |
| **Class C-2** in the following cases: 1, 2 | Unsecured Claims – Legendary and EWB Guaranty Claims against MMPI or MMPLP (but excluding Legendary's Guarantees relating to Legendary Secured Claims in Merco Group secured by Sci-Arc Real Property and Sky-Arc Real Property in Case 50). | Impaired Voting | Converted to equity of Reorganized MMPI as part of Plan treatment of Legendary Secured Claims in Cases 28, 29, 30, 37, 44, 45, and 46 and EWB Secured Claims in Cases 41 and 52. |
| **Class C-3** in the following cases: 11, 12, 14, 15, 21, 25-28, 30, 32-41, 43, 44, 46, 48, 49 52, 54 | Unsecured Claims – Tenant Security Deposits | Unimpaired Not Voting | Common Tenant Security Deposits Treatment |
| **Class D** in the following cases: 2-7, 9-35, and 37-53 | Intercompany Claims | Unimpaired Not Voting | Common Intercompany Claim Treatment |
| **Class E** in all cases *except* 1 and 2 | Equity Interests in all Cases *except* MMPI and MMPLP | Unimpaired Not Voting | Common Equity Interest Treatment |

---

[5] The Proponents reserve their right to assert at the Confirmation Hearing that Class C-1 is Unimpaired. The Proponents are soliciting Class C-1 in all cases in the event the Court determines that this class is Impaired under the Plan.

| CLASS | DESCRIPTION OF CLASS | IMPAIRED? VOTING? | TREATMENT |
|---|---|---|---|
| **Class E-1** in case 1 | Equity Interests in MMPI held by Insider Shareholders | Impaired<br><br>Voting | On the Effective Date, all MMPI Existing Common Stock shall be cancelled.  Holders of record as of the Effective Date shall receive one share of Reorganized MMPI Common Stock and one Subscription Right for every 20 shares of MMPI Existing Common Stock they held on the Effective Date.  Holders of less than twenty shares of MMPI Existing Common Stock shall be cashed out on a pro-rata basis.  Such shares of Reorganized MMPI Common Stock shall in the aggregate total 4,405,000 in number and shall constitute in the aggregate a 20% interest in Reorganized MMPI.  The Rights Offering shall comply with all rules necessary to ensure its exemption under Section 1145 of the Bankruptcy Code, from federal, state and local security regulation requirements; alternatively, it shall be made available only to Holders of Existing MMPI Common Stock who are "accredited investors."<br><br>As provided in the Ballot, each Insider Shareholder may elect to enter into complete, mutual, general releases with the Reorganized Debtors, including the complete release of the Insider Causes of Action, conditioned upon cancellation and forfeiture of all MMPI Existing Common Stock, LTIP Units, rights under the Rights Offering and other interests in the Debtors held by such electing Insider Shareholder. |
| **Class E-2** in case 1 | Non-Insider Equity Interests in MMPI | Impaired<br><br>Voting | On the Effective Date, all MMPI Existing Common Stock shall be cancelled.  Holders of record as of the Effective Date shall receive one share of Reorganized MMPI Common Stock and one Subscription Right for every 20 shares of MMPI Existing Common Stock they held on the Effective Date.  Holders of less than twenty shares of MMPI Existing Common Stock shall be cashed out on a pro-rata basis.  Such shares of Reorganized MMPI Common Stock shall in the aggregate, total 4,405,000 in number and shall constitute in the aggregate a 20% interest in Reorganized MMPI.  The Rights Offering shall comply with all rules necessary to ensure its exemption under Section 1145 of the Bankruptcy Code, from federal, state and local security regulation requirements; alternatively, it shall be made available only to Holders of Existing MMPI Common Stock who are "accredited investors."  In the event that one or |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS | DESCRIPTION OF CLASS | IMPAIRED? VOTING? | TREATMENT |
|---|---|---|---|
| | | | more members of Class E-1 in Case 1 accept the Insider Shareholder Settlement Offer, the Reorganized MMPI Common Stock and Subscription Rights that would otherwise be distributed to such settling Insider Shareholder shall be distributed, on a Pro Rata basis, to the Holders of MMPI Existing Common Stock as of the Effective Date who are members of Class E-2 in Case 1.

On the Effective Date, each of the Debtors will transfer all of its Insider Causes of Action to a Litigation Trust controlled by a Litigation Trustee on behalf of the members of Class E-2 in Case 1 of record as of the Effective Date. However, such Insider Causes of Action may be released pursuant to the treatment for Class E-1. In the event that all members of Class E-1 in Case 1 elect to accept the Insider Shareholder Settlement Offer, the Litigation Trust shall not be formed. |
| **Class E-1** in case 2 | Equity Interests in MMPLP held by MMPI | Unimpaired Not Voting | On the Effective Date, the Equity Interests in MMPLP held by MMPI shall be extinguished by the merger of MMPLP with or into MMPI. The rights of the Holders of such Equity Interests shall be Unimpaired. |
| **Class E-2** in case 2 | LTIP Units in MMPLP | Impaired Voting | On the Effective Date, the Holders of the LTIP Units shall be entitled to receive, at the election of MMPI, either cash or shares of Reorganized MMPI Common Stock with a value equal to the value of the LTIP Units (vested as of the Petition Date) as of the Effective Date. Such value shall be determined either by agreement by and between MMPI and the Holders of the LTIP Units or by the Bankruptcy Court.

As provided in the Ballot, each Insider Shareholder may elect to enter into complete, mutual, general releases with the Reorganized Debtors as of the Effective Date conditioned upon cancellation and forfeiture of all MMPI Existing Common Stock, LTIP Units, rights under the Rights Offering and other interests in the Debtors held by such electing Insider Shareholder. |

**B.    General Provisions For Treatment Of Claims And Interests**

**1.    Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified.  They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to a specific treatment provided for them in the Bankruptcy Code.  As such, the Debtors have not placed the following claims in a class.  The treatment of these claims is provided below.

(a)    Administrative Claims

Administrative Claims are claims for costs or expenses of administering the Debtors' Chapter 11 Cases which are allowed under Section 507(a)(2) of the Bankruptcy Code.  The Bankruptcy Code requires that all Administrative Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

**(1)    General**

Subject to the bar date provisions herein and additional requirements for professionals and certain other entities set forth below, the surviving Reorganized Debtor shall pay to each Holder of an Allowed Administrative Claim, on account of its Administrative Claim and in full satisfaction thereof, Cash equal to the Allowed amount of such Administrative Claim on the Effective Date or as soon as practicable thereafter, unless the Holder agrees or shall have agreed to other treatment of such Claim.  Payment on and Administrative Claim which arose in the ordinary course of each Debtor's business, including Ordinary Course Professionals, will be made when such payment would have become due in the ordinary course of each Debtor's business or under the terms of the Claim in the absence of the Chapter 11 Cases.

(b)    Claims The Treatment Of Which Has Already Been Settled And Approved Pursuant To Order Of The Bankruptcy Court.

The Claims of Creditors the treatment of which has already been settled and resolved by Order entered by the Bankruptcy Court (including the settled Claims of Cathay, FNBN, Imperial, PCB and Stanford) are not classified, or separately classified under the Plan.  The terms and conditions of such Bankruptcy Court-approved settlements are assumed by the relevant Reorganized

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtors and shall be unaltered and unmodified by the terms and conditions of the Plan. The Holders of such Claims are not entitled to vote under the Plan.

### (1)   Payment of Statutory Fees

On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on Confirmation, shall be paid in Cash equal to the amount of such Administrative Claim.

### (2)   Bar Date for Administrative Claims

#### (a)   General Provisions

Except as provided below for (i) non-tax liabilities incurred in the ordinary course of business by each Debtor and (ii) Postpetition Tax Claims, requests for payment of Administrative Claims must be Filed and served on counsel for the Reorganized Debtors no later than forty-five (45) days after the Effective Date, or such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period. Holders of Administrative Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the Holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against any of the Debtors or the Reorganized Debtors or any of their respective properties.

#### (b)   Professionals

All professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, inter alia, any compensation requested by any professional or any other Person for making a "substantial contribution" in the Reorganization Case)[6] shall File and serve on the Proponents, the Reorganized Debtors, the Equity Holders Committee and the Creditors Committee an application for final allowance of compensation and reimbursement of expenses no later than (i) forty-five (45) days after the Effective Date, or (ii) such

---

[6] The Proponents reserve their right to assert a "substantial contribution" claim pursuant to Section 503(b)(3) of the Bankruptcy Code against the Estates for fees and expenses incurred in connection with proposing and obtaining approval of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period. Objections to applications of professionals for compensation or reimbursement of expenses must be Filed and served on the Proponents, the Reorganized Debtors, the Equity Holders Committee, the Creditors Committee and the professionals to whose application the objections are addressed on or before (i) fourteen days after such application is Filed and served or (ii) such later date as the Bankruptcy Court shall order or upon agreement between the Reorganized Debtors and the affected professional.

Any professional fees and reimbursements of expenses incurred by the Reorganized Debtors subsequent to the Effective Date may be paid by the Reorganized Debtors without application to or Order of the Bankruptcy Court.

### (c)    *Ordinary Course Liabilities*

Holders of Administrative Claims based on liabilities incurred post-petition in the ordinary course of the Debtors' businesses, including Ordinary Course Professionals, (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes) shall not be required to File any request for payment of such Claims.  Such Administrative Claims shall be assumed and paid by such Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the Holders of such Claims.

### (d)    *Tax Claims*

All requests for payment of Post petition Tax Claims, for which no bar date has otherwise been previously established, must be Filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit.  Any Holder of any Postpetition Tax Claim that is required to File a request for payment of such taxes and that does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Postpetition Tax Claim against any of the Debtors or Reorganized Debtor, or any of their respective properties, whether any such Postpetition Tax Claim is deemed to arise prior to, on, or subsequent to, the Effective Date.  The Debtors are paying all Postpetition Tax Claims as they come due; however, certain taxing authorities conduct audits which may result in a postpetition tax liability of which the Debtors are currently

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

unaware.  The County of Los Angeles has filed administrative priority claims against MMPI and MMP 12385 San Fernando Road for $229,193 and $6,864 respectively.  The Debtors have asserted that these taxes have been paid and, in any event, are resolved pursuant to the terms of the settlement between the Debtors and the County of Los Angeles.

Allowed Secured Tax Claims will be paid timely in the ordinary course of business with all costs, fees, charges and interest as required by sections 506(b) and 511 of the Bankruptcy Code, if applicable.

### (3)    Inter-Debtor Administrative Claims

The Debtors' cash management system provides for funds to flow to and from a cash concentration account maintained by MMPLP.  The concentration account is linked to the operating bank accounts of each of the Debtors, which bank accounts are maintained as zero balance accounts. When needed to fund payment on checks issued by a particular affiliate, funds are transferred from the concentration account to the operating account of that affiliate. Excess funds, if any, are invested in interest bearing accounts pending their utilization.  The cash management system produces inter-Debtor account receivables and account payables.  Transactions occurring after the Petition Date and prior to the Effective Date produce inter-Debtor Administrative Claims owed to MMPLP.  MMPLP shall retain such Administrative Claims and all rights, interests, and obligations related thereto, which, post-Effective Date, shall be paid and settled in accordance with the Debtors' ordinary course of business with respect to the settlement and payment of intercompany obligations.

(c)    Priority Tax Claims

Priority Tax Claims are certain unsecured income, employment and other taxes described by Section 507(a)(8) of the Bankruptcy Code.  The Bankruptcy Code requires that each holder of such a 507(a)(8) Priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years after the Petition Date.  The chart attached as Exhibit 8 to the Disclosure Statement is the Debtors' Section 507(a)(8) priority Tax Claims (as represented to the Bankruptcy Court by the Debtors in their Disclosure Statement).  Holders of Priority Tax Claims shall receive a cash payment equal to 100% of the amount of their Allowed Claims on the Effective Date (or after a Final Order of the Bankruptcy Court allowing such Claims).

**2.    Common Class Treatments for Classified Claims**

The following are Common Class Treatments for the following classes of Claims and Interests: (i) Secured Tax Claims, (ii) Secured Lender Claims, (iii) Other Priority Claims, (iv) Unsecured Tenant Security Deposit Claims, (v) General Unsecured Claims, (vi) Unsecured Guaranty Claims (vii) Intercompany Claims, and (vii) Equity Interests.  The Classes of Claims and Interests for each Debtor will either receive the Common Treatment or a treatment specific to a particular Class and Debtor.  For each Class and for each Debtor, the chart in Section III.A. will specify whether such class will receive the common treatment set forth herein or another treatment.

The Proponents expressly reserve the right, at any time during the term of the Plan, to refinance the obligations secured by any of their real properties or to sell such any or all of such real properties and satisfy the full amount of the Allowed Secured Claims against such real properties from the proceeds of such refinancing.

(a)    Common Secured Tax Claim Treatment

Except to the extent that the Holder of an Allowed Secured Tax Claim accepts, or has accepted, less favorable treatment, the Holder of an Allowed Secured Tax Claim shall receive a cash payment equal to 100% of the amount of its Allowed Claim on the Effective Date, plus (a) interest at the Federal Judgment Rate in effect as of the Petition Date for the period from the Petition Date through the Effective Date and (b) in the event the Claim is not Allowed as of the Effective Date but becomes Allowed thereafter, simple interest at 4% per annum for the period from the 31st day after the Effective Date through the date the Claim is paid.  Interest shall not accrue during the initial 30-day period following the Effective Date.  *Provided, however,* the foregoing treatment shall not supersede treatment specified in Bankruptcy Court-approved agreements where the Secured Tax Claims have been conditionally resolved pending plan confirmation (e.g., Los Angeles County).  The treatment of those Holders' Secured Tax Claims shall be consistent in all regards with their Bankruptcy Court-approved settlements.

(b)    Common Non-Settled Secured Lender Claim Treatment

The Holders shall receive quarterly Cash payments over a period of four years from the Effective Date in an aggregate amount equal to the amount of their Allowed Secured Claims, plus

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

interest from the Effective Date on the unpaid portion of the Allowed Secured Claim, at the rate prescribed below.

Payments shall be made in the amount of the accruing interest, with the principal balance and any unpaid interest due and payable at the Maturity Date. The first installment shall be payable on the thirty-first (31st) day after the Effective Date, or in the event such day is not a Business Day than it shall be payable on the next Business Day. Each installment shall be payable quarterly thereafter in the amount equal to interest on the Allowed Claim at the rate of 5.5% per annum or as otherwise established by the Bankruptcy Court, provided, however, that in the event such Claim is not an allowed Claim at the Effective Date then interest shall be payable on the undisputed portion of such Claim until the Claim is allowed pursuant to a Final Order of the Bankruptcy Court. Once a Claim is an Allowed Claim pursuant to a Final Order, then on the next interest payment date, the Holder shall receive a payment equal to the unpaid interest due and owing on the disputed portion of the Claim from the Effective Date.

The terms and conditions of the agreements or instruments between the Holder and the Debtor shall be restructured and amended as of the Effective Date pursuant to Loan Modification Provisions, the form of which are attached to the Disclosure Statement as Exhibit 6. Except as provided in this section, and notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all valid, enforceable and perfected prepetition liens of the Holder in its Collateral shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Holder and/or applicable law until the Holder's Allowed Secured Claim is satisfied pursuant to this Plan; provided however, that the Holder shall be prohibited from exercising rights or remedies pursuant to such underlying agreements so long as the Reorganized Debtor is in compliance with this Plan. Any lien or interest granted to the Holder by the Bankruptcy Court as adequate protection shall be released and extinguished upon confirmation.

Holders of settled Secured Claims shall not be entitled to vote on the Plan on account of such claims as they will ride through Confirmation of the Plan.

(c)     Common Other Priority Claim Treatment

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

This Class includes Other Priority Claims for an amount entitled to priority under Sections 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, and does not include any Administrative Claim or Tax Claim. These Other Priority Claims are for accrued wages, salary or commissions, including vacation, severance, and sick leave pay earned by an employee within 180 days prior to the Petition Date, to the extent of $10,950 per employee.

Except to the extent that (x) the Holder of an Other Priority Claim accepts, or has accepted, less favorable treatment, or (y) the Other Priority Claim includes accrued vacation or sick pay and the Holder remains employed with the Reorganized Debtors after the Effective Date, the Holder of an Other Priority Claim shall receive a cash payment equal to 100% of the amount of his or her Allowed Claim on the Effective Date, plus (a) interest at the Federal Judgment Rate in effect as of the Petition Date for the period from the Petition Date through the Effective Date and (b) in the event the Claim is not Allowed as of the Effective Date but becomes Allowed thereafter, simple interest at 4% per annum for the period from the 31st day after the Effective Date through the date the Claim is paid. Interest shall not accrue during the initial 30 day period following the Effective Date. In the event an Other Priority Claim includes accrued vacation or sick pay and the Holder remains employed with the Reorganized Debtors after the Effective Date, the vacation or sick pay shall be reinstated and the Holder shall be authorized to use such amounts for vacation or sick time following the Effective Date.

(d)    Common Tenant Security Deposits Treatment

Unsecured Tenant Security Deposit Claims are those unsecured claims asserted by tenants of the Debtors relating to security deposits made to their respective landlord Debtor. The Allowed Claims of the Holders of such claims shall be Reinstated as of the Effective Date (i.e. such claims shall be unaffected by confirmation of the Plan).

(e)    Common General Unsecured Claim Treatment

Except to the extent that the Holder of an Allowed General Unsecured Claim accepts, or has accepted, less favorable treatment, the Holder of an Allowed General Unsecured Claim shall receive a cash payment equal to 100% of the amount of its Allowed Claim on the Effective Date, plus (a) interest at the Federal Judgment Rate in effect as of the Petition Date for the period from the Petition

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Date through the Effective Date and (b) in the event the Claim is not Allowed as of the Effective Date but becomes Allowed thereafter, simple interest at 4% per annum for the period from the 31st day after the Effective Date through the date the Claim is paid.  Interest shall not accrue during the initial 30 day period following the Effective Date.

Holders who have agreed to other treatments in court-approved settlements (including, but not limited to, FNBN) shall receive the treatments provided in those settlements notwithstanding the Allowance of some or all of their Claims as General Unsecured Claims.

(f)    Common Unsecured Guaranty Claim Treatment

Claims in this Class consist of Guaranty Claims on obligations for which another one of the Debtors is the principal obligor and for which the principal obligation is provided for under this Plan or under the plan filed by MM 845 S. Flower and Chinatown.

Such claims shall be cured and reinstated, provided, however, they shall be amended to conform to the restructuring of the underlying obligation owed to such Holder under the Common Non-Settled Secured Lender Claim Treatment in Section III.B.2.(b) of this Plan.

The foregoing treatment shall not supersede treatment specified in Bankruptcy Court-approved settlements where the Guaranty Claims have been resolved.  The treatment of those Holders' Guaranty Claims shall be consistent in all regards with their Bankruptcy Court-approved settlements.

(g)    Common Intercompany Claim Treatment

The Allowed Claims of the Holders of such claims shall be Unimpaired.

(h)    Common Equity Interest Treatment

The Holders of the Interests in these Classes shall retain their Interests in the Debtor.

## IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Overview of Plan Implementation**

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan will be obtained from the Proponents' infusion of $5 million in cash, the proceeds received from the Rights Offering, the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Reorganized Debtors' cash balances existing on the Effective Date and, thereafter, from the operations of the Reorganized Debtors' business, the sale or refinancing of assets of the Reorganized Debtors, as deemed necessary and appropriate by the Reorganized Debtors, and from any other lawful source.  The Reorganized Debtors' restructured balance sheet on account of the Proponents' debt conversion will significantly reduce the Debtors' secured debt load.

**B.      Vesting of Assets**

Except as otherwise provided in any provision of the Plan, on the Effective Date, all legal and equitable interests of the Debtors in property of their respective estates shall be vested in such Reorganized Debtors, free and clear of all Claims, Liens, encumbrances and Interests except to the extent and only as is expressly provided for otherwise in the Plan.  On the Effective Date of the Plan, each of the Debtors will transfer all of its Insider Causes of Action to a Litigation Trust controlled by a Litigation Trustee and the Equity Holders Committee for the benefit of present non-Insider MMPI Equity Holders and Reorganized MMPI.  All settlements reached with Holders of Secured Lender Claims and other Claims shall be enforced by and against the Reorganized Debtors in the form approved by the Bankruptcy Court.

**C.      Reorganized Debtors' Business Operations**

From and after the Effective Date, the Reorganized Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests arising post-Confirmation without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.

**D.      Sale and/or Refinance of Certain of Assets**

As of the Effective Date, the Reorganized Debtors will continue to operate their businesses. In order to meet their operational needs and payment obligations under the Plan, the Reorganized Debtors will sell some of their assets and refinance other of their assets as necessary during the term of the Plan.  After the payment of the costs of sale and the satisfaction of any Liens fixed by the Plan against the asset, the remaining proceeds will be available for the payment of the costs of operating the business and funding the Reorganized Debtors' obligations under this Plan.

**E.    Issuance of New Equity and Rights Offering**

The Plan provides for the cancellation of MMPI Existing Common Stock and the issuance of approximately 22,205,000 shares of Reorganized MMPI Common Stock to stakeholders.  All shares of Reorganized MMPI issued pursuant to the Plan shall be duly authorized, validly issued, fully paid and non-assessable.

Holders of MMPI Existing Common Stock, whom hold approximately 88.1 million shares in total, shall be issued one share of Reorganized MMPI Common Stock in exchange for every twenty shares of MMPI Existing Common Stock they hold on the Effective Date.

Holders of MMPI Existing Common Stock shall be diluted to a combined 20% stake in Reorganized MMPI.  In exchange for converting $65 million of their debt, releasing their guarantee claims against MMPI and MMPLP relating to this debt and Legendary's $5 million equity contribution, the Proponents shall receive between 15,417,500 and 17,620,000 shares of Reorganized MMPI Common Stock, equal to a stake of between 70% and 80% of Reorganized MMPI, dependent upon the outcome of the Rights Offering described below which will vest up to 10% of the equity of Reorganized MMPI in those who subscribe.

**1.    Issuance of Equity for Proponents' Converted Debt**

On the Effective Date, between approximately 15,417,500 and 17,620,000 shares of Reorganized MMPI Common Stock shall be issued to the Proponents on account of their secured claims (and Legendary's equity contribution) in each of the Debtors' cases *except* Merco Group.[7] The details of the New Equity distribution on account of the debt-to-equity conversion and Legendary's cash infusion are as follows:

(a)    Legendary Investors

In exchange for its approximately $33 million in Secured Claims, its release of its guarantee claims against MMPI and MMPLP as noted in footnote 7 and its $5 million equity contribution,

---

[7] Legendary's Secured Claim in the Merco Group case shall receive the Common Secured Lender Treatment. Legendary is converting its debt and/or releasing MMPI and MMPLP for its guarantee with respect to the following Debtors:  (a) MM 3rd and Omar Street, (b) MM 336 W. 11th Street, (c) MM – 420 Boyd Street, (d) MG – 1500 Griffith, (e) MG – 4th Street Center, (f) MG – 425 W. 11th Street, and (g) MG – 620 Gladys Avenue.  EWB is converting its debt and/or releasing MMPI for its guarantee with respect to the following Debtors: (a) 2640 Washington Boulevard and (b) Meruelo Wall Street.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Legendary shall receive between 8,369,500 and 9,565,458 shares of Reorganized MMPI Common Stock, equal to a stake of between 38% and 43% of Reorganized MMPI dependent upon the outcome of the Rights Offering described in Section IV.E.2 herein.

        (b)       East West Bank

In exchange for its approximately $32 million in Secured Claims and its release of its guarantee claims against MMPI as noted in footnote 7, EWB shall receive between 7,048,000 and 8,054,543 shares of Reorganized MMPI Common Stock, equal to a stake of between 32% and 37% of Reorganized MMPI, dependent upon the outcome of the Rights Offering described in Section IV.E.2 herein.

## 2.    <u>Rights Offering to Holders of MMPI Existing Common Stock</u>

Holders of MMPI Existing Common Stock of record as of the Effective Date shall each receive one (1) share of Reorganized MMPI Common Stock and one Subscription Right for each twenty (20) shares of MMPI Existing Common Stock held by such Holder of record as of the Effective Date.  The Subscription Right shall entitle the Holder thereof to subscribe for the purchase of a number of Subscription Shares equal to up to 0.95 times the number of shares of Reorganized MMPI Common Stock distributed to such Holder under the Plan, at a purchase price of $4.54 per share, provided such Holder makes a written election to exercise such Subscription Right and timely delivers such written election, together with the purchase price of the Reorganized MMPI Common Stock to be purchased pursuant to the exercise of the Subscription Right, to the Transfer Agent on or before the end of the Subscription Period.  The number of Subscription Shares available to be purchased pursuant to the exercise of the Subscription Rights shall be limited to 2,202,500 shares (i.e. shares with an aggregate purchase price of $10 million).  In the event that the Rights Offering is oversubscribed, each holder of a Subscription Right that has been properly and timely exercised shall receive a number of Subscription Shares equal to 2,202,500 (the total number of Subscription Shares available) multiplied by its Subscription Share Pro Rata Allocation.  In the event of such oversubscription, excess subscription funds shall promptly be reimbursed to subscribing parties.

The foregoing transaction pursuant to which Holders of MMPI Existing Common Stock may acquire additional MMPI Common Stock is referred to in this Plan as the "Rights Offering."  The

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Rights Offering is subject to and conditioned upon the confirmation of the Plan for MMPI.  The

Rights Offering shall comply with all rules necessary to ensure its exemption, under Section 1145 of

the Bankruptcy Code, from federal, state and local security registration requirements or shall be

made available only to current equity owners who are "accredited investors."

**F.    Cancellation Of LTIP Units and Related Agreements; Certificate of Incorporation and Bylaws**

      **1.**      <u>**LTIP Units and Related Agreements**</u>

On the Effective Date, (a) the LTIP Units; all warrants, options or other rights for the

purchase or other acquisition from any Debtor of any MMPI Existing Common Stock or LTIP Units;

all securities convertible into or redeemable or exchangeable for any MMPI Existing Common Stock

or LTIP Units; and all warrants, rights or options for the purchase or other acquisition from any

Debtor of any MMPI Existing Common Stock or LTIP Units or any such warrants, options, other

rights or securities, and any interest or participation in any of the foregoing and any other ownership

or profit interest or participation in MMPI or MMPLP (to the extent not held directly or indirectly by

MMPI) will be cancelled and extinguished, and (ii) the obligations of, Claims against, and/or

Interests in MMPI under, relating or pertaining to any agreements (including without limitation,

registration rights agreements, merger, contribution and similar agreements and voting, shareholders

and similar agreements), indentures, certificates of designation, bylaws, or certificates or articles of

incorporation or similar documents governing the MMPI Existing Common Stock and any other

instrument or document evidencing or creating ownership interest in MMPI (including without

limitation, provisions of the agreement of limited partnership of MMPLP and award agreements

relating to the LTIP Units) will be released and discharged.

The LTIP Units shall be extinguished by the merger of MMPLP with or into MMPI and the

Holders of Interests in the LTIP Units shall receive the treatment provided for Holders of Interests in

Class E-2 in Case 2.  Insider Shareholders may elect to enter into complete, mutual, general releases

with the Reorganized Debtors conditioned upon cancellation and forfeiture of all MMPI Existing

Common Stock, LTIP Units, rights under the Rights Offering and other interests in the Debtors held

by such electing Insider Shareholder.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2. **Amended and Restated Certificate of Incorporation and Bylaws**

On and after the Effective Date, pursuant to and by virtue of this Plan, the certificate of incorporation of Reorganized MMPI will be amended and restated until thereafter changed or amended as provided therein or by applicable law, and the bylaws will be amended and restated for Reorganized MMPI until thereafter changed or amended as provided therein or by applicable law.

**G.    Issuance of New Equity**

Subject at all times to Section VIII.E. herein, on the Effective Date, the shares of New Equity shall be issued to the Holders of Existing Common Stock, the Proponents and those Holders of MMPI Existing Common Stock whom subscribe to purchase additional shares of Reorganized MMPI in accordance with the Rights Offering, which issuance will then represent all of the issued and outstanding equity interests in MMPI.

Nothing herein shall prevent Reorganized MMPI from adopting a new name. All shares of Reorganized MMPI issued pursuant to the Shareholder Plan shall be duly authorized, validly issued, fully paid and non-assessable.

**H.    Merger of MMPLP and MMPI**

Upon the terms and subject to the conditions set forth in the agreement and plan of merger, the form of which is attached hereto as Exhibit M, MMPLP shall be merged with and into MMPI one day after the Effective Date if not earlier accomplished (the "Merger"). Following the Merger, the separate corporate existence of MMPLP shall cease, and MMPI shall continue as the surviving company and shall succeed to and assume all the rights and obligations of MMPLP.

If not earlier accomplished, as promptly as practicable but at least one day after the Effective Date, the parties shall file with the Secretary of State of the State of Delaware a certificate of merger (the "Certificate of Merger") executed and acknowledged by the parties in accordance with the relevant provisions of the DGCL and the RULPA and, as promptly as practicable on or after the Effective Date, the parties to the Merger shall make all other filings or recordings required by the Bankruptcy Court and under the DGCL and the RULPA. If not earlier accomplished, the Merger shall become effective one day after the Effective Date and the filing of the Certificate of Merger

with the Secretary of State of the State of Delaware, or at such later date and time as MMPI and

MMPLP shall agree and shall specify in the Certificate of Merger.

Once the Merger becomes effective, all the property, rights, privileges, powers and franchises

of MMPLP shall vest in MMPI, and all debts, liabilities and duties of MMPLP shall become the

debts, liabilities and duties of MMPI.

## I.    Retained Claims and Defenses and Reservation of Rights

### 1.    No Waiver and Retention of Claims and Defenses

Unless otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to

Section 1123(b)(3)(B), all Retained Claims and Defenses of any kind or nature whatsoever against

third parties arising before the Effective Date and belonging to the Debtors or their Estates shall

become property of the Reorganized Debtors.  Notwithstanding any otherwise applicable principle

of law or equity, including, without limitation, any principles of judicial estoppel, *res judicata*,

collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe,

identify, analyze or refer to any such Retained Claims and Defenses in this Plan, the Disclosure

Statement, or any other document filed with the Bankruptcy Court will in no manner waive,

eliminate, modify, release, or alter the Reorganized Debtors' right to commence, prosecute, defend

against, settle, and realize upon any Retained Claims and Defenses that the Debtors or the Estates

have or may have as of the Effective Date.  Retained Claims and Defenses shall include, without

limitation:

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 524 and 553 of the Bankruptcy Code against any Creditor regarding the amount of such Holder's Allowed Claim (whether prepetition or postpetition), to enforce the discharge of any Secured Creditors' Claims;

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 510, 524, 542 and 553 of the Bankruptcy Code including, without limitation, claims and defenses based on any Creditors' assertion of unreasonable professionals' fees, costs, charges and penalties (whether disguised as interest, or otherwise);

- All avoidance causes of action and objections to Claims under Sections 105, 502, 506, 510, 542 through 551 and 553 of the Bankruptcy Code that belong to the Debtors or to the Estates.

- All claims and defenses related to the recovery of professionals' fees and expenses by the Debtor or Reorganized Debtor from Creditors;

- All Insider Causes of Action, including, but not limited to, claims against the Debtors' Insiders, employees, and/or agents relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breach of fiduciary duty or negligence; and

- All claims and defenses attributable to the filing of personal Chapter 7 or Chapter 11 bankruptcy petitions by an Insider who is a natural person, including without limitation, claims or defenses related to the diminution of security for the Company's debts if an Insider obtains a discharge of their personal guaranty obligations.

From and after the Effective Date, the Reorganized Debtors are authorized to assert the Retained Claims and Defenses including, but not limited to, for purposes of objection to the allowance of any Claim.  Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any of the Debtors' rights with respect to the Retained Claims and Defenses and Reorganized Debtors shall be entitled to assert the Retained Rights and Defenses as fully as if the Chapter 11 Cases had not been commenced.

## 2.    Unknown Retained Claims and Defenses / No Preclusion

Unless otherwise expressly set forth in the Plan or the Confirmation Order, the reservation of rights and Retained Claims and Defenses set forth above shall include, without limitation, any Retained Claims and Defenses of which the Debtors may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist including, without limitation, claims based on theories of construction defect, breach of warranty, negligence, indemnification and contribution.  Therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, waiver, estoppel (judicial, equitable or otherwise),

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

or laches will apply to the Reorganized Debtors with respect to the Retained Claims and Defenses upon or after the Confirmation of the Plan based on the Plan, the Disclosure Statement or the Confirmation Order.

**J.      Insider Litigation Trust**

Unless the Insider Shareholder Settlement Offer is accepted by all members of Class E-1 in Case 1, as of the Effective Date, the a Litigation Trustee will retain all rights on behalf of a Litigation Trust to commence, pursue and settle, as appropriate, any and all Insider Causes of Action assigned to the Litigation Trust in any court or other tribunal, including, without limitation, an adversary proceeding filed in the Chapter 11 Cases.  The failure to explicitly list any Insider Causes of Action is not intended to limit the rights of the Litigation Trust, through the Litigation Trustee, to pursue any and all Insider Causes of Action, including Insider Causes of Action not so identified herein.  Notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, *res judicata*, collateral estoppel, issue preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, analyze or refer to any Insider Cause of Action in this Plan, the Disclosure Statement, or any other document filed with the Bankruptcy Court will in no manner waive, eliminate, modify, release, or alter the Reorganized Debtors' or the Litigation Trustee's right to commence, prosecute, defend against, settle, and realize upon any Insider Cause of Action that the Debtors or the Estates have or may have as of the Effective Date.  The Litigation Trustee may commence Insider Litigation, prosecute Insider Litigation, recover on account of Insider Causes of Action, and settle Insider Causes of Action assigned to the Litigation Trust in accordance with the best interests, and for the benefit of, the Litigation Trust, subject to the terms of any applicable Litigation Trust Agreement.

Unless a Cause of Action against a Person is expressly waived, relinquished, released, compromised in writing, or settled in the Plan or any Final Order, the Debtors and their Estates, for the benefit of beneficiaries of the Litigation Trust in which such Insider Causes of Action shall vest, expressly reserve such Insider Causes of Action for later adjudication (including, without limitation, Insider Causes of Action of which the Debtors, the Equity Holders Committee, the Creditors Committee or any party in interest may presently be unaware, or which may arise or exist by reason

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

of additional facts or circumstances unknown to the Debtors, the Equity Holders Committee, the Creditors Committee or any party in interest at this time, or facts or circumstances which may change or be different from those which the Debtors, the Equity Holders Committee, the Creditors Committee or any party in interest now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to Insider Causes of Action upon, or after, the Confirmation or consummation of the Plan based on their description or lack of identification or description in the Disclosure Statement, the Plan, or the Confirmation Order, except where such Insider Causes of Action have been expressly released by virtue of the Plan or other Final Order.

As of the Effective Date, subject to any Litigation Trust Agreement, the Litigation Trustee, on behalf of the Litigation Trust, will be authorized to exercise and perform the rights, powers and duties held by the Debtors' Estates under the Insider Causes of Action, including, without limitation, the authority under Section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment, retention and enforcement of claims and interests of the estate, without the consent or approval of any third party, and without any further order of the Bankruptcy Court, except as otherwise provided in the Plan.

Subject to the Litigation Trust Agreement, the Litigation Trustee will make the decision of whether or not to pursue Insider Litigation or otherwise prosecute Insider Causes of Action.  The Litigation Trust shall be initially funded in accordance with the terms of an agreement to be negotiated between Reorganized MMPI and the Equity Holders Committee at such time as is appropriate.

Any and all Net Proceeds derived by the Litigation Trust from the prosecution of the Insider Causes of Action shall be distributed on a Pro Rata basis to the Holders of record of MMPI Existing Common Stock as of the Effective Date.

**K.    Objections to Claims**

Except as otherwise provided in the Plan, objections to Claims, including without limitation Administrative Claims (other than objections to Administrative Claims of Professionals), shall be

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Filed and served upon the Holder of such Claim or Administrative Claim no later than the later of: (a) one hundred eighty (180) days after the Effective Date, (b) one hundred eighty (180) days after a proof of Claim or request for payment of such Claim is Filed, and (c) a deadline set by the Bankruptcy Court after the extension of the one hundred eighty (180)-day deadline; such extension may be granted on an ex parte basis without notice or hearing.  After the Confirmation Date, only the Reorganized Debtors or the Litigation Trustee, as the case may be, will have the authority to File objections, settle, compromise, withdraw or litigate to judgment objections to Claims and Interests. From and after the Confirmation Date, the Reorganized Debtors or the Litigation Trustee, as the case may be, may settle or compromise any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

**L.**    **Management of the Reorganized Debtors**

    **1.**    **Board of Directors**

The Board will be comprised of seven directors, as follows: two directors will be designated by Legendary, one will be designated by EWB, one will be designated by the Equity Holders Committee and three shall be independently named by the board based upon the Proponents' recommendations.

    **2.**    **Officer Biographies**

The Reorganized Debtors will be managed by a team assembled by Legendary Developments, LLC, an affiliate of Legendary.  Surjit P. Soni and Dilip Bhavnani will serve as co-CEOs.  Soni and Bhavnani have worked together for over 15 years on a variety of projects and businesses.  They share the position of Managing Member for Legendary Development, LLC and its several subsidiaries, as well as for Legendary.  Soni will also assume the function of general counsel for the Reorganized Debtors.  A CFO with public company and real estate experience will be recruited through a search if management cannot secure an agreement to retain the Debtors' current CFO.  The Proponents expect to retain select current employees with company history, asset and systems knowledge.  However, the Proponents do not believe the size of the corporate staffing maintained by the Debtors is justified and staffing will be appropriately down-sized.

    (a)    Surjit P. Soni

Mr. Soni is licensed to practice law in the State of California and is the principal of The Soni Law Firm. Prior to formation of his law firm, Mr. Soni was a Senior Partner and head of the Litigation Group at the law firm of Sheldon & Mak. He obtained his Juris Doctor cum laude from the University of Miami School of Law. He earned his Bachelor's of Science degree from the University of Toronto. Mr. Soni is a nationally-recognized, well-respected business and intellectual property attorney. He serves clients in their transactional and litigation needs locally, nationally and internationally. Mr. Soni also has over a decade of business management and marketing experience, including extensive experience in finance, manufacturing, international trade, marketing in the transportation, fashion and other industries, real estate construction, and development. As a result of his activities as a real estate investor and advisor over the last 10 years, the Bankruptcy Court permitted him to offer expert testimony concerning trends in Greater Los Angeles area real estate values. Mr. Soni also is highly skilled at corporate finance, reorganizations, work-outs and strategic business growth planning having assisted his clients for over 20 years in these endeavors.

(b)     Dilip K. Bhavnani

Mr. Bhavnani earned his bachelor's degree in economics from UCLA. Aside from a variety of real estate investment and development projects, Mr. Bhavnani and his family own several businesses involved in promotional products, telecommunications, travel, food products distribution, leather goods and plastic products manufacture and supply. Mr. Bhavnani holds the position of Chief Operating Officer for Affinity Business Accessories LLC, Premium Shapes USA, Values4Less.com, Inc, Geo Group Communications Inc, and Salus Creative Inc, and SunMost LLC. Mr. Bhavnani is also the Chief Operating Officer of Sun Coast Merchandise Corp. which was formed in 1943. The Company's annual revenues were just $2.7 million when Mr. Bhavnani joined and were $24.8 million when he assumed his position as COO. Under Mr. Bhavnani's management, revenues grew to over $162 million in the U.S. and over $312 million worldwide. Mr. Bhavnani's sophistication with purchasing, logistics and fulfillment ensure that projects stay on time and on budget.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.     **Asset Management and Property Management**

The Proponents have secured the services of Voit Real Estate Services ("VRES") to provide asset management and property management services for the Debtors' property portfolio.  VRES is a full service commercial real estate services firm that provides strategic property solutions scaled to clients' needs.  VRES combines its nearly four decades of experience in real estate operations, ownership, investment advisory services, financial analysis, market research, asset management, development, tenant advisory and brokerage services to provide clients with forward looking strategies that create value for their assets.

VRES is privately held, debt-free and has owned, developed and managed over 26 million square feet of commercial real estate, participated in $1.3 billion of construction projects and completed over $32 billion in brokerage transaction volume.   VRES offers asset management, project management, property and association management, financial analysis, asset valuation, receivership, brokerage, asset, business plan strategies, market research, environmental assessment and development and construction management services.  In unrelated engagements, VRES is currently advising Wells Fargo, GE Finance, Chase Commercial Bank, California Bank & Trust, Lehman Brothers, TriMont, Midland/Trigild, US Bank (including Cal National Bank assets), Zions & Wachovia Bank.

**M.     Discharge Of The Debtors And Injunction**

1.     **Discharge**

Except as otherwise provided in the Plan, the Confirmation Order or Section 1141(d)(6) of the Bankruptcy Code: (i) on the Effective Date, each Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from all Claims and Interests, including, but not limited to, demands, liabilities, Claims and Interests that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (A) a proof of Claim or proof of Interest based on such debt or Interest is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code, (B) a Claim or Interest based on such debt or Interest is allowed pursuant to Section 502 of the Bankruptcy Code or (C) the Holder of a Claim or Interest based on such debt or Interest has accepted the Plan; and (ii) all

Persons shall be precluded from asserting against each Reorganized Debtor, its successors, or its assets or properties any other or further Claims or Interests based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. Except as otherwise provided in the Plan or the Confirmation Order, the Confirmation Order shall act as a discharge of any and all Claims against and all debts and liabilities of the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against each Debtor at any time obtained to the extent that it relates to a Claim discharged.

### 2. **Injunction**

All Persons that have held, currently hold or may hold a Claim or other debt or liability or an Interest or other right of an Equity Holder, are permanently enjoined from taking any of the following actions on account of any such Claims, debts or liabilities or terminated Interests or rights discharged pursuant to Section N.1. immediately above: (a) commencing or continuing in any manner any action or other proceeding against any of the Debtors; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against any of the Debtors; (c) creating, perfecting or enforcing any lien or encumbrance against any of the Debtors; (d) asserting a setoff, right of subrogation or recoupment of any kind against any obligation due to any of the Debtors; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. The injunction described herein does not apply to and shall not enjoin or otherwise prevent the Reorganized Debtors or its representatives from commencing or continuing any action against the Debtors' current or former officers, directors, or employees for claims arising before or after the commencement of the Debtors' bankruptcy cases.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

### N. **No Liability For Solicitation Or Participation**

As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

**O.    Limitation of Liability**

Neither (a) the Proponents or any of their employees, officers, directors, agents, representatives, affiliates, attorneys or any other professional persons employed by any of them, nor (b) Legendary Developments, LLC or any of its employees, officers, directors, agents, representatives, affiliates, attorneys or any other professional persons employed by it, nor (c) the Equity Holders Committee or any of their respective postpetition members, agents, employees, directors, officers representatives, attorneys or other professional advisors, nor (d) the Creditors Committee or any of their respective postpetition members, agents, employees, directors, officers representatives, attorneys or other professional advisors, in each case, shall have any responsibility, or have or incur any liability, to any Person whatsoever, under any theory of liability (except for any Claim based upon willful misconduct or gross negligence), for any act taken or omission made in good faith directly related to formulating, implementing, confirming, or consummating the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Plan, provided that nothing in this paragraph shall limit the liability of any Person for breach of any express obligation it has under the terms of this Plan or under any post-petition agreement or other postpetition document entered into by such Person or in accordance with the terms of this Plan or for any breach of a duty of care owed to any other Person occurring after the Effective Date.

**P.    Certificate of Incorporation and Certificates of Organization**

On the Effective Date, the Reorganized Debtors shall adopt amended certificates pursuant to applicable non-bankruptcy law and Section 1123(a)(5)(I) of the Bankruptcy Code.  Each amended certificate will, among other provisions prohibit the issuance of nonvoting equity securities to the extent required by Section 1123(a)(6) of the Bankruptcy Code and will become effective upon the occurrence of the Effective Date.

**Q.    Other Documents And Actions**

The Debtors and the Reorganized Debtors may, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Plan.

**R.    Corporate Action**

The adoption of the amended certificates of incorporation, certificates of organization, or certificate of limited partnership, as the case may be, and all other matters under the Plan involving the corporate structure of the Reorganized Debtors, shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the stockholders, directors, managers, members, or limited partners, as the case may be, of each Debtor. Without limiting the foregoing, upon entry of the Confirmation Order by the Clerk, the filing by any of the Reorganized Debtors of the amended certificates shall be authorized and approved in all respects, including amendments to eliminate any special purpose entity provisions.

On the Effective Date or as soon thereafter as is practicable, pursuant to applicable law, the bylaws, operating agreements, or partnership agreement, as the case may be, of each Debtor shall be the bylaws, operating agreements or partnership agreement of such Reorganized Debtor.

**S.    Retiree Benefits**

The Debtors do not have any present obligations to pay retiree benefits within the meaning of Section 1129(a)(13).

**T.    The Creditors Committee**

The Creditors Committee shall be dissolved 30 days after the Effective Date and its members shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases.  The professionals retained by such committee and the members thereof shall not be entitled to compensation or reimbursement of expenses incurred for services rendered after the dissolution of the Creditors Committee.

**U.    The Equity Holders Committee**

The Equity Holders Committee shall be dissolved upon the wind down of its activities on behalf of the Litigation Trust.  The Litigation Trustee and the professionals retained by such

1    committee and the Litigation Trustee shall not be entitled to compensation or reimbursement of

2    expenses incurred for services rendered after the dissolution of the Equity Holders Committee.

3

4                                                   **V.**

5            **TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

6            The Plan constitutes a motion to assume or reject all executory contracts and nonresidential

7    real property leases, except for those executory contracts and nonresidential real property leases that

8    have already been assumed or rejected pursuant to an earlier Order of the Bankruptcy Court or that

9    are the subject of a motion for such an Order pending as of the Confirmation Hearing.  Prior to the

10   Confirmation Hearing, the Proponents will file a schedule of all real property leases and executory

11   contracts to be rejected; any contract or lease not on that schedule shall be deemed assumed by the

12   applicable Debtor as of the Effective Date.  Prior to the date of hearing on the Disclosure Statement,

13   the Proponents will file a schedule of all real property leases and executory contracts to be assumed

14   listing the cure amount, if any, under such unexpired lease or executory contract.  Unless the non-

15   Debtor party to any such executory contract or unexpired lease to be assumed files and serves on

16   counsel for the Proponents an objection to the cure amount specified on that schedule on or before

17   the last date established by the Bankruptcy Court to file and serve objections to confirmation of the

18   Plan, such cure amount shall be forever binding on such non-debtor party to said executory contract

19   or unexpired lease.

20           Except as otherwise agreed by the parties to an executory contract or unexpired lease, each

21   Reorganized Debtor will cure any and all undisputed defaults within thirty days of the Effective Date

22   under any executory contract or unexpired lease assumed pursuant to the Plan and to which it is a

23   party, in accordance with Section 365 of the Bankruptcy Code.  All disputed defaults that are

24   required to be cured shall be cured either within thirty days of the entry of a Final Order determining

25   the amount, if any, of such Debtor's or Reorganized Debtor's liability with respect thereto, or as may

26   be agreed otherwise by the parties.  The Confirmation Order shall state that all pre-petition contracts

27   and unexpired leases that are listed on the schedule described herein are deemed assumed under the

28   Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be Filed and served on counsel for the Proponents within thirty (30) days after the order of the Bankruptcy Court approving such rejection becomes a Final Order or be (i) forever barred and unenforceable against any Debtor, its Estate, the Reorganized Debtor and their respective property, and (ii) barred from receiving any Distribution under the Plan. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as a Class "C-1" General Unsecured Claim against the respective Debtor who is a party to such executory contract or unexpired lease.

Any election of rights by a lessee under Section 365(h)(1) of the Bankruptcy Code must be Filed and served on counsel for the Proponents within thirty (30) days after the order of the Bankruptcy Court approving such rejection becomes a Final Order or lessee shall be deemed to have waived any and all of its rights under Section 365(h)(1).

## VI.

## CONFIRMATION DATE AND EFFECTIVE DATE CONDITIONS

### A.    Conditions to Confirmation

The Confirmation of the Plan in the MMPI case is subject to the following conditions precedent:

(1)    the Clerk of the Bankruptcy Court shall have entered an order granting approval of the Disclosure Statement and finding that it contains adequate information pursuant to section 1125 of the Bankruptcy Code and that order shall have become a Final Order; and

(2)    the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for the Case by the Clerk of the Bankruptcy Court.

The Confirmation of the Plan in all cases *except* the MMPI case is subject to the foregoing conditions as well as the entry of a Confirmation Order in the MMPI case.

**B.    The Effective Date**

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  Provided that the conditions to the Effective Date, as set forth below, have been fulfilled, the Effective Date will be the later of:

(1)    the first (1st) business day after the fourteenth (14th) day following the Confirmation Date; and

(2)    the first business day after such date under clause (a) on which there is not in force any stay or injunction against the enforcement of the Plan or the Confirmation Order.

**C.    Conditions to the Effective Date**

The Effective Date shall be subject to the following conditions precedent:

(1)    the conditions to Confirmation have been met; and

(2)    the New Equity issuance shall have been completed.

**D.    Waiver of Conditions**

The Proponents may waive any or all of the other conditions set forth in the Plan without leave of or order of the Bankruptcy Court and without any formal action.  The Proponents reserve the right to amend or revoke the Plan.  Although this Plan is styled as a joint plan, the Proponents reserve the right to proceed with Confirmation under this Plan for one Debtor, or a combination of Debtors, and not the others.

**E.    Effect of Failure of Conditions**

In the event that the Effective Date does not occur, upon notification submitted by the Proponents to the Bankruptcy Court: (a) the Confirmation Order shall be vacated, (b) no Distributions under the Plan shall be made, (c) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F.      Vacatur of Confirmation Order**

If an order denying confirmation of the Plan is entered, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Holder of any Claim against, or Interest in, the Debtors; (c) prejudice in any manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by the Debtors.

**VII.**

**CONFIRMABILITY OF PLAN AND CRAM DOWN**

In the event at least one Impaired Class of Claims votes to accept the Plan (and at least one Impaired Class either votes to reject the Plan or is deemed to have rejected the Plan), the Proponents shall request the Bankruptcy Court to confirm the Plan under the cram down provisions of the Bankruptcy Code.

**VIII.**

**VOTING AND DISTRIBUTIONS UNDER THE PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS**

**A.      Voting of Claims and Interests**

Each Holder of an Allowed Claim or an Allowed Interest in an Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan as provided in such order as may be entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**B.      Method of Distributions Under the Plan**

**1.      Distributions Under the Plan**

The Disbursing Agent will make all distributions of cash and securities required to be distributed under the applicable provisions of the Plan.  The Disbursing Agent may employ or contract with other entities to assist in or make the distributions required by the Plan.  The Disbursing Agent will serve without bond, and the Disbursing Agent will not receive additional compensation for distribution services rendered pursuant to the Plan.

## 2.    **Timing and Methods of Distribution**

(a)    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Disbursing Agent must comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to the Plan will be subject to such withholding and reporting requirements. The Disbursing Agent will be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of the Plan: (i) each Holder of an Allowed Claim or Interest that is to receive a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution; and (ii) no distribution will be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements satisfactory to the Disbursing Agent for the payment and satisfaction of such tax obligations. Any Cash to be distributed pursuant to the Plan will, pending the implementation of such arrangements, be treated as an undeliverable Distribution pursuant to the Plan.

(b)    Distribution Discharge Allocation

All Distributions in respect of an Allowed Claim will be allocated first to any portion of such Claim for principal, with any excess allocated to the accrued interest amount of such Claim to the extent thereof, and then to all other amounts.  However, there is no assurance that the IRS will respect such allocation for federal income tax purposes.

(c)    Distribution Recipients

Distributions under the Plan shall be made by the Reorganized Debtors or their designee to the Holders of Allowed Administrative Claims and Allowed Claims at the addresses set forth on the Schedules, unless such addresses are superseded by addresses listed on proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001, or at the last known address of such Holders if the Debtors or Reorganized Debtors have been notified in writing of a change of address.

**C.      Undeliverable or Unclaimed Distributions**

Any Person that is entitled to receive a cash distribution under the Plan but that fails to cash a check within 90 days of its issuance shall be entitled to receive a reissued check from the Reorganized Debtors for the amount of the original check, without any interest, if such person requests the Disbursing Agent to reissue such check and provides the Disbursing Agent with such documentation as the Disbursing Agent requests to verify that such Person is entitled to such check, prior to the first anniversary of the Effective Date.  If a Person fails to cash a check within 90 days of its issuance and fails to request reissuance of such check prior to the first anniversary of the date the check was issued, such Person shall not be entitled to receive any further distribution under this Plan. If the distribution to any Holder of an Allowed Claim or Allowed Interest is returned to a Disbursing Agent as undeliverable, no further distributions will be made to such Holder unless and until the applicable Disbursing Agent is notified in writing of such Holder's then-current address. Undeliverable distributions will remain in the possession of the Disbursing Agent pursuant to the Plan until such time as a distribution becomes deliverable.  Undeliverable cash will be held in trust in segregated bank accounts in the name of the Disbursing Agent for the benefit of the potential claimants of such funds, and will be accounted for separately.  The Disbursing Agent holding undeliverable cash shall invest such cash in a manner consistent with the Reorganized Debtors' investment and deposit guidelines. Any distribution which is not claimed within six months of the Effective Date shall be deemed property of the Reorganized Debtors.

**D.      Disputed Claims/Interests and Estimations**

      **1.      <u>Treatment of Disputed Claims and Interests</u>**

Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of any Claim or Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest.  The Proponents may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court will retain jurisdiction to estimate any contingent or unliquidated Claim at any time during litigation concerning any objection to the Claim,

including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Proponents and/or the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Claim.  All of these Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  In addition to seeking estimation of Claims as provided in the Plan, the Proponents and/or the Reorganized Debtors may resolve or adjudicate certain Disputed Claims of Holders in Unimpaired Classes in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Reorganization Cases had not been commenced, subject to any applicable discharge and limitations on amounts of claims and remedies available under bankruptcy law.  Claims may be subsequently compromised, settled, withdrawn or resolved by the Proponents and/or the Reorganized Debtors.

### 2.    Distributions on Account of Disputed Claims Once They Are Allowed

Within 30 days after the date a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will commence making distributions on account of any Disputed Claim or Disputed Interest that has become an Allowed Claim or Allowed Interest during the preceding calendar quarter.  Such distributions will be made pursuant to the provisions of the Plan governing the applicable Class. Holders of Disputed Claims or Disputed Interests that are ultimately allowed will also be entitled to receive, on the basis of the amount ultimately allowed, matured and payable interest, if any, at the rate provided for the Class to which such Claim belongs.

### 3.    Allowance of Claims Subject to Bankruptcy Code Section 502(d)

Allowance of Claims shall be in all respects subject to the provisions of Section 502(d) of the Bankruptcy Code.

### E.    Setoffs

Except with respect to claims of the Debtors and Reorganized Debtors released pursuant to the Plan or any contract, instrument, release, indenture or other agreement or document created in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

connection with the Plan, the Reorganized Debtors may, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to the Plan on account of such Claim or Interest (before any Distribution is made on account of such Claim or Interest), the claims, rights and causes of action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim or Interest; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest hereunder will constitute a waiver or release by Reorganized Debtors of any such claims, rights and causes of action that the Debtors and the Reorganized Debtor may possess against such Holder.

## IX.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective Date to the full extent permitted by law, including, without limitation, jurisdiction to:

(a)     *Allow, disallow, determine, liquidate, classify, subordinate, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan*

(b)     *Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending before the Effective Date;*

(c)     *Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which the any Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;*

(d)     *Ensure that distributions to Holders of Allowed Claims or Allowed Interests are accomplished pursuant to the provisions of the Plan;*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(e)  *Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors, the Reorganized Debtors, the Litigation Trustee, or the Chapter 11 Cases that may be pending on the Effective Date;*

(f)  *Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;*

(g)  *Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan and the Confirmation Order, or any entity's rights arising under or obligations incurred in connection with the Plan or the Confirmation Order;*

(h)  *Subject to any restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, modify the Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court Order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;*

(i)  *Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(j)     *Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;*

(k)     *Determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan; and*

(l)     *Enter an Order concluding the Chapter 11 Cases.*

The foregoing list is illustrative only and not intended to limit in any way the Bankruptcy Court's exercise of jurisdiction.  If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including without limitation the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## X.

## <u>MISCELLANEOUS PROVISIONS</u>

### A.     **Exemption from Transfer Taxes**

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment or any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording, license transfer or other similar tax.  For the avoidance of doubt, the transactions contemplated under the Plan include, among other things, the transactions and transfers contemplated in Section III of the Plan under, in furtherance of, or in

connection with the Plan including, without limitation, the transfer of the Debtors' right, title and interest in property of the Estates to the Reorganized Debtors.

**B.      Payment of Statutory Fees**

All fees payable on or before the Effective Date pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

**C.      Modification or the Plan**

In accordance with Section 1127 of the Bankruptcy Code, the Proponents and reserve the right to alter, amend or modify the Plan or any Plan exhibit or schedule, prior to Confirmation including amending or modifying it to satisfy the requirements of the Bankruptcy Code.  The Proponents or the Reorganized Debtors may modify the Plan at any time after confirmation and before substantial consummation of the Plan, but only if circumstances warrant such modification and after notice and hearing.

**D.      Revocation of the Plan**

The Proponents reserve the right to withdraw or revoke the Plan at any time before the entry of the Confirmation Order.

At the option of the Proponents, the Plan shall be deemed null and void if any of the following events occur:  (i) the Plan is revoked or withdrawn; (ii) the Confirmation Order is not entered; (iii) the Effective Date does not occur; (iv) consummation of the Plan is not substantially achieved; or (v) the Confirmation Order is reversed or revoked.

**E.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F.      Filing or Execution of Additional Documents**

On or before the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**G.      Withholding and Reporting Requirements**

In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions there under shall be subject to any such withholding and reporting requirements.

**H.      Waiver of Rule 7062 of the Federal Rules of Bankruptcy Procedure**

The Debtors may request that the Confirmation Order include (a) a finding the Rule 62(a) of the Federal Rules of Civil Procedure, made applicable by Rule 7062 of the Federal Rules of Bankruptcy Procedure, shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Plan immediately after the entry of the Confirmation Order.

**I.      Headings**

Headings used in the Plan are for convenience and reference only and shall not constitute a Part of the Plan for any purpose.

**J.      Exhibits and Schedules**

All Exhibits and Schedules to the Plan and Disclosure Statement are incorporated into and constitute a part of the Plan as if set forth herein.

**K.      Notices**

All notices, requests and demand hereunder to be effective shall be in writing and unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by U.S. mail or email, addressed as follows:

[TO FOLLOW]

**L.      Conflict**

The terms of this Plan shall govern in the event of any inconsistency with the summaries of the Plan set forth in the Disclosure Statement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**M.      Successors and Assigns**

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, trustee, administrator, successor or assign of such Person.

**N.      Saturday, Sunday or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**O.      Post-Effective Date Effect of Evidences of Claims or Interests**

Notes, bonds, stock certificates and other evidences of Claims against or Interests in the Debtors, and all Instruments of the Debtors (in either case, other than those executed and delivered as contemplated hereby in connection with the consummation of the Plan), shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Plan.

**P.      Severability of Plan Provisions**

If, prior to Confirmation, any term or provision of the Plan that does not govern the treatment of Claims or Interests provided for herein or the conditions to the Effective Date is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**Q.     Balloting**

Balloting shall be conducted in accordance with the Solicitation Procedures Order.

**R.     No Admissions or Waiver of Objections**

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed as an admission by any Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification. Neither the Proponents nor the Debtors are bound by any statements herein or in the Disclosure Statement as judicial admissions.

**S.     Survival of Settlements**

All Bankruptcy Court-approved settlements shall survive consummation of the Plan, except to the extent that any provision of any such settlement is inconsistent with the Plan, in which case the provisions of the Plan shall supersede such inconsistent provision of such settlement.

**T.     Post-Confirmation Status Report**

Within 180 days of the entry of the Confirmation Order, the Reorganized Debtors shall file a status report explaining what progress has been made toward consummation of the Plan. The initial report shall be served on the United States Trustee and those parties who have requested special notice. Further reports shall be filed every 180 days thereafter and served on the same entities, unless otherwise ordered by the Bankruptcy Court.

**U.     Final Decree**

Once the Estates have been fully administered within the meaning of Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtors shall file a motion with the Bankruptcy Court to obtain a final decree to close the Chapter 11 Cases.

PACHULSKI STANG ZIEHL & JONES LLP

By:     _*Jeffrey W. Dulberg*_
                Jeremy V. Richards
                Jeffrey W. Dulberg
        Counsel for Co-Proponent
        Legendary Investors Group No. 1, LLC