1   Jeremy V. Richards (CA Bar No. 102300)          Curtis C. Jung, Esq. (CA Bar No. 130657)
    Jeffrey W. Dulberg (CA Bar No. 181200)          Monica H. Lin, Esq. (CA Bar No. 237343)
2   PACHULSKI STANG ZIEHL & JONES LLP               JUNG & YUEN, LLP
    10100 Santa Monica Blvd., 11th Floor            888 South Figueroa Street, Suite 720
3   Los Angeles, California  90067-4100             Los Angeles, California  90017
    Telephone: 310/277-6910; Facsimile:  310/201-0760   Telephone:  213/689-8880; Facsimile:  213/689-
4   E-mail: jrichards@pszjlaw.com                   8887
            jdulberg@pszjlaw.com                    E-mail: curtis@jyllp.com
5
    Surjit P. Soni (CA Bar No. 127419)              Elmer Dean Martin III, Esq. (CA Bar No. 75517)
6   THE SONI LAW FIRM                               22632 Golden Springs Dr., Suite 190
    35 N. Lake Ave., Suite 720                      Diamond Bar, California  91765
7   Pasadena, California  91101                     Telephone:  909/861-6700; Facsimile:  909/860-
    Telephone: 626/683-7600; Facsimile:  626/683-1199   3801
8   E-mail: surj@sonilaw.com                        E-mail: elmer@bankruptcytax.net

9   Counsel for Co-Proponent, Legendary Investors   Counsel for Co-Proponent, East West Bank
    Group No. 1, LLC

10

11              **UNITED STATES BANKRUPTCY COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
12                **SAN FERNANDO VALLEY DIVISION**

13  In re:                                          Case No. 1:09-bk-13356-KT
                                                    Chapter 11 (Jointly Administered)
    **MERUELO MADDUX PROPERTIES,**
14  **INC., et al.,**                               ***EX PARTE* APPLICATION OF
                                                    LEGENDARY INVESTORS GROUP NO. 1,**
                              Debtors.              **LLC AND EAST WEST BANK FOR**
15                                                  **SANCTIONS FOR DEBTORS'**
                                                    **VIOLATIONS OF SECTION 1125 AND**
16  ☒  Affects all Debtors                          **FOR REMEDIAL MEASURES TO**
                                                    **DEBTORS' SEPTEMBER 9, 2010 PRESS**
17  ☐  Affects the following Debtor(s):             **RELEASE**

18                                                  Date:       September 15, 2010
                                                    Time:       1:30 p.m.
19                                                  Place:      Courtroom 301
                                                                21041 Burbank Blvd.
20                                                              Woodland Hills, California

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF CONTENTS

I.    Preliminary Statement .......................................................................................................... 1

II.    The Debtors Have Engaged in Unlawful, Bad Faith Solicitation in Violation of
Section 1125 and Have Otherwise Significantly Interfered With the Disclosure
Statement / Plan Confirmation Process.................................................................................. 5

III.    The Debtors' Disclosure Statement Should Not Be Approved and the Debtors Should Be
Restrained From Any Further Improper Solicitation Activities ....................................... 10

IV.    If the Debtors' Disclosure Statement Is Approved and Allowed to Be Distributed,
Appropriate Measures Should Be Taken to Minimize the Harm Caused By and the Harm
Continuing to Stem From the Debtors' Actions ............................................................... 13

V.    The Court Should Order Expedited Discovery So That Appropriate Sanctions May Be
Fashioned. ......................................................................................................................... 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# TABLE OF AUTHORITIES

## CASES

*In re Aspen Limousine Services, Inc.*, 198 B.R. 334 (Bankr. D. Colo. 1995) ............................ 8

*In re California Fidelity, Inc.*, 198 B.R. 567 (B.A.P. 9th Cir. 1996) ................................ 7, 12, 13

*Century Glove, Inc. v. First American Bank*, 860 F.2d 94 (3d Cir. 1988) ........................... 7

*In re Clamp-All Corp.*, 233 B.R. 198 (Bankr. D. Mass. 1999) .................................... 6, 11

*Colorado Mountain Express, Inc. v. Aspen Limousine Service, Inc. (In re Aspen Limousine Service, Inc.)*, 198 B.R. 341 (D. Colo. 1996) ......................... 9, 10

*In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279 (Bankr. S.D. N.Y. 1990) ...................... 13

*In re Dow Corning Corp.*, 227 B.R. 111 (Bankr. E.D. Mich. 1989) ......................... 3, 6

*In re Ferretti*, 128 B.R. 16 (Bankr. D.N.H. 1991) ........................................ 5

*In re General Homes Corp.*, 134 B.R. 853 (Bankr. S.D. Tex. 1991) ........................ 11

*In re Gilbert*, 104 B.R. 206 (Bankr. W.D. Mo. 1989) ..................................... 6

*In re Gulph Woods Corp.*, 83 B.R. 339 (Bankr. E.D. Pa. 1988) ...................... 6, 10, 12

*In re Mirant Corp.*, 334 B.R. 787 (Bankr. N.D. Tex. 2005) ........................ 3, 7, 12

*In re Trans Max Technologies, Inc.*, 349 B.R. 80 (Bankr. D. Nev. 2006) ................... 11

## STATUTES

11 U.S.C. § 105 ........................................................................ 10, 12

11 U.S.C. § 1125 ...................................................................... passim

11 U.S.C. § 1126(e) ....................................................................... 4

## OTHER AUTHORITIES

S. Rep. No. 95-989, 95th Cong., 2d Sess. 121 (1978) ...................................... 7

7 *Collier on Bankruptcy* ¶ 1125.05[2] (16th ed.) ....................................... 12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Legendary Investors Group No. 1, LLC ("Legendary" or "LIG") and East West Bank

("EWB") hereby submit this *Ex Parte* Application for Sanctions for Debtors' Violations of Section

1125 and For Remedial Measures to Debtors' September 9, 2010 Press Release (discussed further

below).  As indicated by the Court on September 13, 2010, a specific request for relief sought should

be brought before the Court to address the Debtors' Press Release.  This *Ex Parte* Application

identifies the relief sought and demonstrates that Debtors' Press Release was an improper

solicitation in violation of section 1125 and was in bad faith grossly misrepresenting the true state of

affairs before the Court and disparaging EWB and the joint plan proposed by LIG and EWB.[1]

## I.    Preliminary Statement

On September 9, 2010, the day after the Debtors, Legendary and EWB were before this

Court and the Court stressed the need to ensure that false and misleading information about any of

the proposed reorganization plans is not circulated, the Debtors issued a press release entitled *East

West Bank Hostile Takeover Plan of Meruelo Maddux Properties Rebuffed by Bankruptcy Court* (the

"Press Release") (a copy of which was attached to the Legendary/EWB Objection).[2]  The Press

---

[1] All capitalized terms not defined herein have the meaning ascribed to them in the *Response of
Legendary Investors Group No. 1, LLC and East West Bank to:  (A) Debtors' Third Amended Joint
Disclosure Statement Describing Third Amended Joint Plan of Reorganization of Meruelo Maddux
Properties, Inc., Et Al. Dated September 1, 2010; and (B) Charlestown Capital Advisors, LLC's and
Hartland Asset Management Corporation's Disclosure Statement Describing First Amended Joint Plan
of Reorganization of Meruelo Maddux Properties, Inc., Et Al. Dated September 2, 2010* (the
"Legendary/EWB Objection").

[2] The Press Release can be found at, at least, the following internet links:
http://www.digitaljournal.com/pr/109943;
http://www.istockanalyst.com/article/viewiStockNews/articleid/4484639;
http://www.earthtimes.org/articles/press/properties-rebuffed-bankruptcy-court,1453667.html;
http://siftangeles.com/business/east-west-bancorp-meruelo-maddux-offer-competing-plans;
http://www.quote.com/news/story.action?id=RTT009091340001089;
http://finance.comcast.net/indices/news_body.html?ID_NOTATION=324981&ID_NEWS=158396884;
http://www.poten.com/NewsDetails.aspx?id=10639100;
http://finance.comcast.net/indices/news_body.html?ID_NOTATION=8354115&ID_NEWS=158396884;
http://www.sbsun.com/business/ci_16052493; http://www.smartbrief.com/news/cba/industryPR-
detail.jsp?id=71EF2CC8-B928-40D6-9730-33C516F1A7B2;
http://www.whittierdailynews.com/ci_16036378; http://www.dailyfinance.com/rtn/pr/east-west-bank-hostile-
takeover-plan-of-meruelo-maddux-properties-rebuffed-by-bankruptcy-court/rfid365617153/?channel=pf;
http://www.topix.com/forum/business/banking/T9RLL7ITRBLHGM8LQ;
http://regator.com/p/244594614/its_a_downtown_turf_war_sonny_astani_isnt/;
http://sf.curbed.com/archives/2010/09/10/open_houses_the_view_edition.php;
http://www.finwin.com/demo/index.cfm?tab=News&story_id=14189097&distributor=DTN,RTT,PRN,BW&
showLatest=false; http://www.prnewswire.com/news-releases/east-west-bank-hostile-takeover-plan-of-
meruelo-maddux-properties-rebuffed-by-bankruptcy-court-

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Release, prepared by the Debtors, is full of inaccuracies and materially misleading statements and

2  has raised a litany of serious concerns and issues, some of which are discussed herein.  As the

3  estates, Legendary and EWB will continue to suffer significant harm and prejudice as long as the

4  falsehoods in the Press Release are not corrected, it is imperative that the Court address all

5  disclosure and solicitation related matters set forth herein as part of the disclosure statement approval

6  process.

7      These matters are squarely before the Court for adjudication under section 1125, which is a

8  clear restraint on vote solicitation prior to disclosure statement approval.  The Court has broad

9  discretionary authority to "issue any order, process, or judgment that is necessary or appropriate to

10  *carry out the other provisions of this title*" pursuant to section 105(a).

11      First, the Court should find that the Press Release was, at its core, a "solicitation" of creditor

12  and equity acceptances of the Debtors' proposed plan and of creditor and equity rejections of the

13  plan proposed by Legendary and EWB (the "Legendary/EWB Plan"), in violation of section

14  1125(b).  While the Debtors tried to skirt around the solicitation prohibitions set forth in section

15  1125 by not making obvious statements like "vote for the Debtors' plan" and "vote against the

16  Legendary/EWB Plan," these were the messages patently intended to be widely conveyed by the

17  Debtors to creditors and interest holders by the Press Release.[3]

18      By spreading falsehoods about the two plans and making numerous, spurious allegations

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

20  102549049.html?utm_source=twitterfeed&utm_medium=twitter;
http://www.thestreet.com/story/10856662/1/east-west-bank-hostile-takeover-plan-of-meruelo-maddux-

21  properties-rebuffed-by-bankruptcy-court.html; http://www.wave3.com/Global/story.asp?S=13126238;
http://www.tradingmarkets.com/print/news/press-release/mmpqe_east-west-bank-hostile-takeover-plan-of-

22  meruelo-maddux-properties-rebuffed-by-bankruptcy-court-1159493.html;
http://ewebglobal.com/thefirstnews/east-west-bank-hostile-takeover-plan-of-meruelo-maddux-properties-

23  rebuffed-by-bankruptcy-court/1547/; http://www.pasadenastarnews.com/news/ci_16036378;
http://www.rttnews.com/Content/QuickFacts.aspx?Id=1414117&SM=1;

24  http://www.tradingmarkets.com/news/press-release/mmpqe_east-west-bank-hostile-takeover-plan-of-
meruelo-maddux-properties-rebuffed-by-bankruptcy-court-1159493.html; and

25  http://newsblaze.com/story/2010009091110200002.pnw/topstory.html.

[3] To demonstrate the significant extent and speed of the dissemination of the misinformation in the Press
26  Release, one only has to search on Google the terms "East West Bank hostile Meruelo" and there are

27  more than 1,000 hits already!  Legendary and EWB understand that when a party distributes a press
release to any domestic newsline, there are services available that inform the party how extensive the

28  distribution of the release is.  Legendary and EWB have asked Debtors' counsel for information it may
have as to how many and which online services have carried the Press Release, and at yesterday's
hearing, the Court instructed the Debtors to provide such information.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    about EWB in particular during this critical disclosure statement approval process,[4] the Debtors'

2    plain purpose behind the Press Release was to taint the voter pool in favor of the Debtors' plan and

3    against the Legendary/EWB Plan.  If not for that improper purpose, the question must be asked, then

4    for what purpose was the false and misleading Press Release disseminated?  *See, e.g., In re Dow*

5    *Corning Corp.*, 227 B.R. 111, 125 (Bankr. E.D. Mich. 1989) (there is a "spectrum" of

6    communication in chapter 11 cases ranging from neutral, factual statements to crystal-clear requests

7    to accept or reject a plan; "Somewhere on that spectrum, a communication crosses the line to

8    become a solicitation…. [A] determination of where that line is requires  consideration of not only

9    the content, but the timing of the communication.").  Patently, the Press Release was not intended to

10    be informational, to be just an expression of the Debtors' opinion, or to facilitate creditor

11    negotiations about the formulation of a plan; indeed, as discussed herein and in the Legendary/EWB

12    Objection, the Press Release is filled with inaccuracies and misleading statements that attempt to tilt

13    the balance in favor of the Debtors' plan.  Among other falsehoods, the Debtors state that "[t]he

14    reorganization plan submitted by MMPI has already been approved so there is no need to proceed

15    with a half-baked plan that attempts to take MMPI over."  Of course, the Debtors' proposed plan has

16    not been "approved" by the Court.  Even Debtors' counsel now admit this statement was and is false.

17    The Debtors made this misrepresentation to persuade voters to support a plan that purportedly

18    already has the blessing of the Court, and clearly, the Debtors' reference to a "half-baked [takeover]

19    plan" is to the Legendary/EWB Plan (given, among other things, in the next sentence, the Debtors

20    state that EWB's efforts are supposedly not in the best interest of the estates), which, for the reasons

21    set forth in the Press Release, should not be supported by voters.[5]  The purpose and import of the

22

---

23    [4]  The Debtors' egregious allegations about EWB are demonstrably false and clearly evidence the bad
faith and utter recklessness of the Debtors and their principals.  EWB reserves all of its rights and
24    remedies in respect to this matter.  *See* note 11 for further discussion.

25    [5]  In the Legendary/EWB Objection, Legendary and EWB provided a detailed refutation of the "points"
made by the Debtors in the Press Release.  Of particular note are the claims and accusations that (i) EWB
has caused "a string of delays" in the process; (ii) the Court had on or before September 9, 2010
26    expressly found the LIG/EWB Disclosure Statement to be "insufficient"; (iii) "East West's efforts are not
in the best interest of our company nor in the best interest of MMPI's creditors"; (iv) "MMPI's reorganization
27    plan includes a 100% payment to all creditors of the company" when in fact the Debtors' Disclosure
Statement approved by the Court did not provide for "100% payment to all creditors of the company"; (v)
28    "[EWB] is attempting to convert its real estate loans into approximately 70 to 80 percent of the reorganized
MMPI, in lieu of receiving 100% of its loans repaid, including interest" when in fact payment of EWB's loans

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Press Release are manifest.

2         Second, in light of the improper Press Release and its continuing, ever expanding distribution

3    and harmful effect on the estates, Legendary and EWB, the Court must consider appropriate,

4    immediate remedial measures that should be implemented in connection with the Debtors' disclosure

5    statement.  Specifically, the Court should deny approval of the Debtors' disclosure statement

6    because, by the widely disseminated Press Release, the Debtors have irreparably poisoned the well

7    such that no amount of additional disclosure can completely and assuredly undo the significant harm

8    and prejudice caused by the Press Release.  In short, it is impossible to unring the bell rung by the

9    Debtors; the Press Release has rendered meaningless the process of approving and distributing the

10   Debtors' disclosure statement.

11        Furthermore, (i) the Debtors should be expressly and clearly restrained from any further

12   solicitation related activities using false or misleading information and (ii) the Debtors' principal,

13   Richard Meruelo, should be precluded from participating in the solicitation process outright.  The

14   Debtors' bad faith actions and Mr. Meruelo's patently false statements set forth in the Press Release

15   demonstrate that they cannot be entrusted to abide by a fair solicitation and disclosure process,

16   without judicial intervention.  The risk is simply too great that the Debtors and/or their principals

17   will further taint the voter pool, and thus, such relief is necessary.

18        Finally, if the Court determines to approve the Debtors' disclosure statement, in order to

19   mitigate to some extent the harm caused by the Debtors to the estates and interest holders, the Court

20   should also, at a minimum, direct the Debtors to (i) issue online a retraction of the Press Release

21   approved by the Court, Legendary and EWB and a Court-approved rebuttal to the Press Release

22   prepared by Legendary and EWB (regardless of whether the Debtors' disclosure statement is

23   approved, a retraction should be ordered in all events), and (ii) include in the solicitation packages

24   mailed to plan voters a copy of the approved retraction and rebuttal (together with any letter(s) from

25

26   was to be over 7 years at 4% which is below market rates; (vi) "[EWB] also appears to be proposing it use

27   TARP money obtained by the federal government as a part of its effort to complete its hostile takeover of
     MMPI," despite the fact that nowhere in the Disclosure Statement or anywhere else did EWB make such a
     proposal and the fact that no TARP money was sought from the federal government for this Plan and no

28   TARP money is being used for that purpose.

the creditors' and equity committees that the Court may find appropriate).[6]  The foregoing minimum measures, part and parcel of consideration of the Debtors' disclosure statement, are urgently needed to ameliorate the damage stemming from the Debtors' recent actions.[7]

Additionally, the Court should order expedited discovery to allow the parties to determine the genesis of the Press Release and who wrote, revised and approved it.  The numerous false and misleading statements contained in the Press Release give rise to a presumption of bad faith and the discovery will allow the Court to fashion appropriate sanctions upon the responsible parties.

## II.   The Debtors Have Engaged in Unlawful, Bad Faith Solicitation in Violation of Section 1125 and Have Otherwise Significantly Interfered With the Disclosure Statement / Plan Confirmation Process

The Press Release constituted an improper "solicitation" of the acceptance of the Debtors' proposed plan and rejection of the Legendary/EWB Plan in violation of section 1125.  Section 1125 governs postpetition disclosure and solicitation of the acceptance *or* rejection of a chapter 11 plan of reorganization.  This statute requires that (other than in certain inapplicable cases), a written disclosure statement approved by the Court after notice and hearing be transmitted to holders of claims and interests together with the plan or a summary of the plan; generally, postpetition solicitation of acceptances or rejections of a plan may be made only at the time of, or after transmission of, the disclosure statement.  11 U.S.C. § 1125(b).  The basic purpose of requiring an approved disclosure statement is to ensure that all claim and interest holders are provided with *adequate information* to enable them to make *an informed judgment* regarding whether to vote for or against a proposed plan.  *In re Ferretti*, 128 B.R. 16, 18 (Bankr. D.N.H. 1991).  Section 1125's

---

[6]  Legendary and EWB also believe that the Debtors should be held in contempt for violation of section 1125 and otherwise interfering with the disclosure statement / plan process and be subjected to monetary sanctions in the form of fines to be paid to the Court and attorneys' fees and costs incurred in response to the Press Release to be reimbursed to Legendary and EWB.  Legendary and EWB do not seek compensatory damages by this motion; that will be the subject of appropriate actions which will be filed. Legendary and EWB also reserve the right to seek from the Court additional, appropriate relief, including, without limitation, motions under section 1126(e) to designate the votes of creditors and interest holders on either or both the Debtors' proposed plan and the Legendary/EWB Plan.

[7]  As noted above, the Press Release can be found on numerous websites.  With the advent of the internet, unfortunately in cases such as this, information (or more accurately, misinformation) posted on a single or few websites can easily proliferate and be widely circulated to many readers, increasing the damage to the estates and prejudice to Legendary and EWB.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    significance and importance to the chapter 11 process cannot be overstated; section 1125 has been

2    characterized as "the heart of the consolidation of the various reorganization chapters [in the former

3    Bankruptcy Act]." H. Rep. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), pp.

4    408-410. Prohibiting solicitations of votes for or against a plan *before* court approval of a disclosure

5    statement protects "end-runs" around the mandated disclosure requirements under section 1125. *In*

6    *re Clamp-All Corp.*, 233 B.R. 198, 208 (Bankr. D. Mass. 1999).

7            The terms "solicit" and "solicitation" are not defined in the Bankruptcy Code or in its

8    legislative history; thus, what constitutes a "solicitation" under section 1125(b) is a matter left for

9    determination by case law. *Clamp-All Corp.*, 233 B.R. at 204. While some courts have disagreed on

10   how broad the definition of "solicitation" should be, at its core, a solicitation implies that the

11   solicitor is requesting the creditor to take some sort of action. *Dow Corning Corp.*, 227 B.R. at 118

12   (Bankr. E.D. Mich. 1989) ("Solicitation, then, is the process of seeking votes for or against a plan.").

13   To determine the parameters of what constitutes an improper solicitation, the Court should apply a

14   practical, holistic approach because section 1125 prohibits more than just clearly explicit

15   communications to creditors to vote for or against a plan. *See id.*, 227 B.R. at 125 (court should

16   recognize that there is a "spectrum" of communication ranging from neutral, factual statements to

17   outright requests to accept or reject a plan; "Somewhere on that spectrum, a communication crosses

18   the line to become a solicitation."). Importantly, a definition of "solicitation" that is too narrow

19   would frustrate the Court's ability to ensure that claim and interest holders receive adequate

20   information before deciding how to vote on a plan. *Clamp-All Corp.*, 233 B.R. at 205. *See also In*

21   *re Gulph Woods Corp.*, 83 B.R. 339, 342 (Bankr. E.D. Pa. 1988) (recognizing that there must be

22   some limitation on communications, or else the entire process of requiring court approval of

23   disclosure statements would be undermined).

24           Although some courts have noted that the term "solicitation" should be narrowly construed to

25   mean specific requests for a vote for or against a plan, courts have further explained that the

26   underlying concern for that view is that "free and honest negotiations" among debtors and creditors

27   over a tentative plan should not be impeded. *See In re Gilbert*, 104 B.R. 206, 214 (Bankr. W.D. Mo.

28   1989) ("The term should not encompass *free and honest negotiations among creditors* over a

tentative plan because such a broad definition would inhibit their meaningful participation in the debtor's reorganization." (emphasis added)); *Century Glove, Inc. v. First American Bank*, 860 F.2d 94, 101-02 (3d Cir. 1988) (overly broad interpretation of section 1125 "can seriously inhibit *free creditor negotiations*... . The purpose of negotiations between creditors is to reach a compromise over the terms of a tentative plan. The purpose of compromise is to win acceptance for the plan. We find no principled, predictable difference between negotiation and solicitation of future acceptances. We therefore reject any definition of solicitation which might cause creditors to limit their *negotiations*." (emphases added)). *See also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 121 (1978) (legislative history of section 1125: "Solicitations with respect to a plan do not involve just *mere requests for opinions*." (emphasis added)). By no reasonable reading of the Debtors' Press Release can any such legitimate motivation of facilitating debtor-creditor negotiations about a plan be imparted to the Press Release. The Court should see the Press Release for what it is. The Debtors' transparent goal was to taint the pool of creditor voters at this important juncture during the disclosure statement approval process. Any other reading would be to ignore the plain purpose and meaning of the Press Release and the circumstances and timing of this case.[8]

The 9th Circuit Bankruptcy Appellate Panel's decision in *In re California Fidelity, Inc*., 198 B.R. 567 (B.A.P. 9th Cir. 1996), is informative. There, the Panel found that the debtor's principal violated section 1125 by sending a letter to 300 unsecured creditors that (i) implicitly urged creditors to support the debtor's plan and reject the joint plan proposed by the creditors' committee and chapter 11 trustee, (ii) contained false and misleading statements, and (iii) was sent thirteen days before the hearing on the debtor's disclosure statement and the disclosure statement for the joint plan. The Panel rejected the principal's contention that he was simply "express[ing] his views," and imposed monetary sanctions on the principal for violating section 1125(b):

> Relying on a narrow definition of the term "solicitation", Duff contends that no solicitation occurred because his letter did not specifically request an official vote….

---

[8] Certainly, the gross factual misrepresentations and inaccuracies in the Press Release greatly exacerbate the severity of the situation. *See generally In re Mirant Corp.*, 334 B.R. 787 (Bankr. N.D. Tex. 2005) (solicitation of rejection of proposed plan through use of misleading or inaccurate information does not constitute "good faith solicitation" within meaning of section 1125).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Duff's letter informed the unsecured creditors that his original plan which proposed to pay back 100% to investors was rejected by the committee and that his second plan which proposed an 85% pay back was likewise rejected…. Duff described the proposed joint plan and disclosure statement [filed by the creditors' committee and chapter 11 trustee] as follows:

> The Disclosure Statement [and joint Plan] allows for $ 250,000.00 of our money to be disbursed to the appointees of the court upon confirmation, and then to continue to make further disbursements as per hourly rate schedules. You still receive nothing. [Discussion of hourly rates and large fees.] This is the main reason, in my opinion, that the conclusion of the Trustee, in their Disclosure Statement, calls for a payback to investors of as little as 50%. And that's if their plan works.

> I have included with this letter, a letter I received from Leo Larson [chairman for the creditors committee] …. *I agree with him entirely, and I can only hope you follow his recommendations.*

(Emphasis added).

Larson's recommendation to the creditor's committee provided as follow:

> [description comparing plans and potential payouts to creditors] **In summary,** *my wife and I strongly object to the current Disclosure Statement and Joint Plan of Reorganization (Sims/Hoffman Plan). We support adoption of the Amended CFI Plan [Duff's plan]. . . .*

(Italics in original; emphasis added).

> …. [I]t is obvious that the "views" Duff expressed pertained to the virtues of his plan and the alleged weaknesses of the joint plan. Read in conjunction with Larson's letter, Duff's message to the unsecured creditors is abundantly clear: reject the joint plan. Thus, applying even the narrowest definition of "solicitation", we conclude that Duff violated § 1125(b).

198 B.R. at 572-73. In short, the Panel applied a practical reading to the letter – the thrust and

import of the principal's communication to creditors were clear.[9] *See also Colorado Mountain*

---

[9] The Debtors have attempted to distinguish the *California Fidelity* case by arguing that, by the debtor's principal expressly agreeing with the committee chair's objection to the joint plan and support for adoption of the principal's plan, this communication by the principal was tantamount to a direct solicitation by the principal. Although arguably the principal's letter, with the chair's letter attached, in *California Fidelity* was somewhat closer to the polar end of the spectrum of a party expressly telling a creditor to vote for or against a plan, the fact of the matter is that it was not a direct, straightforward solicitation by the principal (*i.e.*, the principal's own language was not at that extreme end); thus, the principal "contend[ed] that no solicitation occurred because his letter did not specifically request an official vote." 198 B.R. at 572. The key to the *California Fidelity* court's review was examining the entire picture to discern what the principal's "message" behind the letter was. *Id.* at 573. When, as discussed herein, the entire picture of the Press Release is examined (including the numerous falsehoods therein and the timing thereof), the Debtors' "message" in the instant matter is similarly clear – support the allegedly better and already blessed Debtors' plan and reject the "half-baked" Legendary/EWB Plan. *See also In re Aspen Limousine Services, Inc.*, 198 B.R. 334, 337 n.2 (Bankr. D. Colo. 1995) (although creditor in written communication to other creditors expressly disclaimed that it was asking them to vote

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  *Express, Inc. v. Aspen Limousine Service, Inc. (In re Aspen Limousine Service, Inc.)*, 198 B.R. 341,

2  346, 349 (D. Colo. 1996) (where creditor with competing plan sent letter to debtor's creditors

3  informing them of its alternative plan, court found that letter violated section 1125(b) by implicitly

4  soliciting acceptance of creditor's plan, even though, *inter alia*, the letter expressly disclaimed it was

5  "asking for [a] vote in favor of the [creditor's] Plan at this time"; "It cannot reasonably be asserted

6  … that the CME Letter was transmitted to creditors for their comments…; as a request for opinions

7  …; or as part of honest[] negotiations with other creditors about [creditor's] unfiled plan." (internal

8  quotation marks and citations omitted)).

9          As in the *California Fidelity* and *Aspen Limousine* cases, a practical, holistic reading of the

10  Press Release leads to the conclusion that patently the Debtors desired to solicit acceptances of their

11  proposed plan and solicit rejections of the Legendary/EWB Plan, in contravention of section

12  1125(b).  The Debtors sought to do this by, among other things,

13          (i)        misrepresenting the status and terms of the Debtors' plan (stating that, supposedly the

14  Debtors' plan fully pays off creditors (without acknowledging such payment would be made over

15  five years) and misrepresenting that the proposed plan was "approved" by the Court and thus, by

16  implication, creditors should support the plan that purportedly already has a seal of approval);

17          (ii)        with no mention of Legendary, inaccurately portraying EWB as having taken

18  questionable actions (by, for example, allegedly using TARP funds for "real estate speculation" and

19  delaying the progress of the chapter 11 case)[10]; and

20

21

22  _____

23  in favor of the creditor's competing plan at this time, the bankruptcy court "finds that, on balance, such a
statement does not fully and satisfactorily negate the overall message and tone of [creditor]'s Written
Solicitation.  It is construed to be more in the nature of 'cover,' or an effort to soften an outright

24  solicitation in favor of [creditor]'s plan."), *aff'd*, 198 B.R. 341 (D. Colo. 1996).

25  [10] In particular, the egregiousness and extent of the Debtors' baseless allegations and insinuations about
EWB are absolutely striking, demonstrating the Debtors' bad faith in this process.  The Debtors attempt

26  to demonize EWB by, among other things, making false statements about EWB's supposed use of TARP
funds in connection with the Legendary/EWB Plan (EWB is not) and using emotionally/politically

27  charged and inflammatory language such as patently false allegations of "predatory action," the
contemplated Legendary/EWB Plan transactions supposedly amounting to a "hostile takeover," and

28  EWB's alleged improper use of "bailout" money.  EWB reserves all its rights against the Debtors and
their principals and agents with respect to this matter.

(iii)    misrepresenting the Legendary/EWB Plan as tantamount to a "hostile takeover" and a "half-baked plan" that, according to the Debtors, is not in the company's and creditors' best interest and, thus, by implication, should be rejected by creditors.[11]

At the very least, the Press Release is a flagrant, improper interference with the disclosure statement, voting and plan confirmation process.  *See Gulph Woods Corp.*, 83 B.R. at 343 (although debtor's president's letter mailed to all of debtor's creditors was not an improper solicitation *per se*, president's related actions of sending to creditors pre-marked ballot already rejecting competing plan of creditor and directing such ballot be sent to him, not the creditor plan proponent, constituted improper interference with plan voting process); *Aspen Limousine Service*, 198 B.R. at 348 (in addition to violating section 1125(b), creditor with competing plan, by sending letter to other creditors, "was a deliberate and unabashed attempt to circumvent the confirmation and solicitation procedures" and improperly interfered with the court's related actions; court authorized under section 105 to impose fines and award fees and costs to other side).  Such interference should not be tolerated by the Court and appropriate remedies (discussed below) should be provided to ameliorate the effects of such interference.

### III.    The Debtors' Disclosure Statement Should Not Be Approved and the Debtors Should Be Restrained From Any Further Improper Solicitation Activities

Section 1125 cannot be clearer that solicitation of votes prior to disclosure statement approval is improper.  While section 1125 does not itself provide a specific penalty for an improper solicitation, clearly the Court has wide discretion and authority to determine the appropriate relief in this case.  *See generally* 11 U.S.C. § 105(a) (court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title"); *Gulph Woods Corp.*, 83 B.R. at 344 (section 105(a) "vests in us the power to take any action necessary to enforce Code requirements *sua sponte*").

As discussed herein, the Debtors' recent actions have irreparably tainted the disclosure statement process, especially given how widely the Press Release has been circulated.  The Court

---

[11] As noted, a full line-by-line analysis of the Debtors' misrepresentations is set forth in the Legendary/EWB Objection.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    and parties cannot turn back the clock and completely undo the damage and prejudice stemming

2    from the Press Release.  Accordingly, the Court should deny approval of the Debtors' disclosure

3    statement under these circumstances.[12]  *See generally Clamp-All Corp.*, 233 B.R. at 210 ("In the end,

4    one truth remains.  The secured and other unsecured creditors in this case have been told by Foresta

5    and Caliber [creditors who circulated a draft plan and disclosure statement prior to expiration of

6    Debtor's exclusivity period] that rejection of the Debtor's plan will be followed by Foresta's and

7    Caliber's plan offering prompt payment in full of their claims. Unsecured creditors are unlikely to

8    forget the unapproved plan and disclosure statement mailed to them by Foresta and Caliber, albeit in

9    purportedly draft form. *The appropriate remedy therefore ought be designed to undo that harm,*

10   *above all.  It must be designed to make Foresta's and Caliber's offer to creditors no longer*

11   *material.*" (emphases added); court equitably subordinated Foresta's and Caliber's claims, among

12   other penalties).  *See also In re Trans Max Technologies, Inc.*, 349 B.R. 80, 85-86 (Bankr. D. Nev.

13   2006) ("it is beyond doubt" that a proposed plan cannot be confirmed if the proponent solicits votes

14   prior to approval and distribution of a disclosure statement because proponent will not be able to

15   satisfy section 1129(a)(2)'s requirement that the plan proponent comply with all applicable

16   provisions of title 11); *cf. In re General Homes Corp.*, 134 B.R. 853, 861 (Bankr. S.D. Tex. 1991)

17   (court did not deny confirmation of plan because debtor's president's letter sent to creditors, urging

18   them to vote for plan, did not misinform creditors and was not a sufficiently egregious act to deny

19   plan confirmation).

20           Furthermore, in light of the egregious impropriety of the Press Release, the continuing,

21   prejudicial effect of the Press Release, and the significant risk of the Debtors and/or their

22   representatives taking similar bad faith actions in the future, (i) the Debtors and their principals,

23   agents, employees and/or other representatives (collectively, the "Debtors/Agents") should be

24   expressly enjoined from soliciting acceptances or rejections of any plans by use of false, inaccurate

25   and/or misleading information,[13] and (ii) Richard Meruelo, in particular, should be enjoined outright

---

26   [12]  Even if the Debtors' disclosure statement is not approved, the Court should order the Debtors to issue
27   a retraction to limit to some degree the continuing harm caused by the Press Release.

28   [13]  Legendary and EWB do not believe that the requested relief implicates the First Amendment since
     section 1125 expressly prohibits certain communications (solicitations of votes) prior to disclosure
     statement approval, and moreover, "[s]olicitation of rejections [or acceptances] of a plan of

from soliciting on behalf of the Debtors acceptances or rejections of any plan (including, without

limitation, indirectly through the issuance of press releases or speaking with members of the press).[14]

*See Gulph Woods Corp.*, 83 B.R. at 344 (debtor's principal was enjoined from dispatching further

communications to creditors regarding voting process on two competing plans; section 105(a) vests

in court the power to take any action necessary to enforce Bankruptcy Code requirements); *Mirant*

*Corp.*, 334 B.R. at 799 (enjoining counsel for *ad hoc* group of shareholders from posting misleading

material regarding debtors' plan on a website and circulating other inaccurate information; "Were

the court to permit Wilson [law firm representing certain shareholders] to solicit rejections based on

such materials, and if the Plan were rejected by shareholders, the entire voting process would be

fatally flawed. Thus, the court concludes that there is ample evidence that enjoining Wilson is

necessary to avert irreparable harm."). *See also California Fidelity*, 198 B.R. at 574 ("In hindsight,

it appears that [debtor's principal's] letter [mailed to all creditors] did not taint the voting process.

However, we agree with the bankruptcy court that *it was only through the efforts of the various*

*parties involved and their expeditious response that this did not happen*." (emphasis added)).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

reorganization through the use of misleading or counterfactual materials is commercial speech not entitled to First Amendment protection and does not constitute good faith solicitation within the meaning of Code § 1125(e)." *Mirant Corp.*, 334 B.R. at 793. *See also* 7 *Collier on Bankruptcy* ¶ 1125.05[2] (16th ed.) (similar). Absent the requested relief, the estates will be harmed by any continued distribution of inaccurate and misleading information about the Debtors' proposed plan and the Legendary/EWB Plan; the Debtors' recent bad faith actions raise a significant risk that the Debtors/Agents would otherwise continue to propagate misinformation. Indeed, such action by the Debtors/Agents, if not prohibited, will thwart the purpose of section 1125 – to facilitate the informed judgment of a debtor's creditors and other stakeholders on a proposed plan. Relatedly, Legendary and EWB stand to be irreparably harmed by the continued dissemination of inaccurate and misleading information. Indeed, the Debtors in the Press Release specifically attack the propriety of EWB's actions, suggesting unethical if not illegal conduct, and moreover, the Press Release, by spreading inaccuracies, unfairly and improperly tilts the balance in favor of the Debtors' proposed plan over the Legendary/EWB Plan or any other competing plan which may be more beneficial to the estates' creditors and stakeholders. Further, as discussed in the proposed Legendary/EWB disclosure statement, the Legendary/EWB Plan is the most viable and only confirmable reorganization plan currently proposed, offering the best outcome for creditors and interest holders. A section 105 injunctive relief is appropriate to preserve the *status quo*, prevent any further harm to the estates and Legendary/EWB (which such harm would greatly outweigh any interim effect on the Debtors if an injunction were granted), facilitate the confirmation of the most viable and confirmable plan option (the Legendary/EWB Plan), and uphold the integrity of the Court and the disclosure process and serve the function of section 1125.

[14] Mr. Meruelo's potential future actions are of particular concern to Legendary and EWB based on the false and grossly misleading statements attributed to him in the Press Release.

**IV.    If the Debtors' Disclosure Statement Is Approved and Allowed to Be Distributed, Appropriate Measures Should Be Taken to Minimize the Harm Caused By and the Harm Continuing to Stem From the Debtors' Actions**

If the Court determines to approve the Debtors' disclosure statement, the Court should also direct the Debtors to (a) promptly issue online a retraction of the Press Release, which is approved by the Court, Legendary and EWB,[15] and a Court-approved rebuttal to the Press Release prepared by Legendary and EWB, which corrects the inaccuracies and misleading statements in the Press Release; and (b) include in the solicitation packages mailed to plan voters a copy of the approved retraction and rebuttal (along with any letter(s) from the creditors' and equity committees that the Court may find appropriate), to minimize to some extent the harm caused to the estates, in addition to the injunctive relief described above.[16] *Cf. California Fidelity,* 198 B.R. at 570 (explaining that bankruptcy court ordered the mailing of its decision regarding the improper solicitation by debtor's principal to the 300 creditors who had been mailed principal's improper letter); *In re Crowthers McCall Pattern, Inc.,* 120 B.R. 279, 301 (Bankr. S.D. N.Y. 1990) (court ordered plan proponents who had circulated an inaccurate liquidation analysis, attached to previously approved disclosure statement, to serve corrected liquidation analysis and explanatory notice).

**V.    The Court Should Order Expedited Discovery So That Appropriate Sanctions May Be Fashioned.**

The Court should order expedited discovery to allow the parties to determine the genesis of the Press Release and who wrote, revised and approved it.  The numerous false and misleading statements contained in the Press Release give rise to a presumption of bad faith and the discovery will allow the Court to fashion appropriate sanctions upon the responsible parties.  The Press Release is attributed to Meruelo Maddux Properties, Inc. and it quotes Richard Meruelo extensively.  However, it is unclear who wrote the Press Release and who authorized it.  The Press Release refers

---

[15]  Irrespective, of whether the Debtors' disclosure statement is approved, a retraction should be ordered in all events.

[16]  Because of the online nature of the Press Release, without additional confirmation, it will be impossible to determine which creditors and shareholders have already seen or will have seen the Press Release online prior to the distribution of the solicitation packages; thus, the retraction and rebuttal should be included in the Court-approved solicitation mailings to ensure all creditors and shareholders who have viewed the Press Release will also review the retraction and other documents.  As noted above, Legendary and EWB will promptly seek additional relief in order to mitigate the harm caused, and that will otherwise continue to be caused, by the Debtors.  *See* note 7.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

to lawyers having opinions as to the propriety of EWB's plan; who are these lawyers and what was their involvement.  If lawyers approved the publication of this grossly false and misleading Press Release it would be especially egregious and violative of the rules.  Whether Directors, especially independent Directors, were consulted and approved of the publication will also inform the Court of the extent of measures necessary to control the Debtors and require that they conform to the rules. The willful disregard of the many cautionary admonitions by this Court that only accurate and non-misleading statements be presented in the Disclosure Statement should have alerted Debtors to the duty of honesty in their communications.  Expedited discovery will allow this matter to be put to rest at the earliest possible opportunity.  Expedited discovery ordered by the Court should include document production encompassing all communications regarding and drafts of the Press Release, as well as, depositions of all persons involved in or consulted regarding the Press Release.

WHEREFORE, for the reasons set forth herein, Legendary and EWB request that the Court: (i) deny approval of the Debtors' Disclosure Statement; (ii) grant the remedies and sanctions proposed herein; and (iii) grant such other and further relief as is just and proper.

Dated:  September 14, 2010

PACHULSKI STANG ZIEHL & JONES LLP

By _____ */s/ Jeremy V. Richards*_____
Jeremy V. Richards
Jeffrey W. Dulberg
Counsel for Legendary Investors Group No. 1, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| In re: Meruelo Maddux Properties, Inc., | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 09-13356-KT |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**PACHULSKI STANG ZIEHL & JONES LLP, 10100 Santa Monica Boulevard, Suite 1100, Los Angeles, CA  90067**

A true and correct copy of the foregoing document described as *EX PARTE* **APPLICATION OF LEGENDARY INVESTORS GROUP NO. 1, LLC AND EAST WEST BANK FOR SANCTIONS FOR DEBTORS' VIOLATIONS OF SECTION 1125 AND FOR REMEDIAL MEASURES TO DEBTORS' SEPTEMBER 9, 2010 PRESS RELEASE** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF") –** Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 14, 2010**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On **September 14, 2010**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE'S COURTESY COPY SERVED VIA FEDERAL EXPRESS**
The Honorable Kathleen Thompson
U.S. Bankruptcy Court
21041 Burbank Boulevard – Courtroom 301
Woodland Hills, CA  91367

☒  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, 2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 14, 2010 | Paige C. Wilson | *Paige C. Wilson* |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                          **F 9013-3.1**

| In re: Meruelo Maddux Properties, Inc., | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 09-13356-KT |

*Service List re Notice of Electronic Filing*

- Michael C Abel    mca@dgdk.com
- Robert Abiri    rabiri@abiriszeto.com
- John J Bingham    jbingham@dgdk.com
- Peter Bonfante    peterbonfante@bsalawfirm.com
- Julia W Brand    jwb@dgdk.com
- Jennifer L Braun    jennifer.l.braun@usdoj.gov
- Martin J Brill    mjb@lnbrb.com
- George T Busu    george.busu@limruger.com
- Andrew W Caine    acaine@pszyjw.com
- Howard Camhi    hcamhi@ecjlaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- James E Carlberg    jcarlberg@boselaw.com
- Sara Chenetz    chenetz@blankrome.com
- Jacquelyn H Choi    jchoi@swjlaw.com
- Ronald R Cohn    rcohn@horganrosen.com
- Enid M Colson    emc@dgdk.com, ecolson@dgdk.com
- Michaeline H Correa    mcorrea@jonesday.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Aaron De Leest    aed@dgdk.com
- Daniel Denny    ddenny@gibsondunn.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Lisa Hill Fenning    Lisa.Fenning@aporter.com, Jean.Kellett@aporter.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
- Donald L Gaffney    dgaffney@swlaw.com
- Thomas M Geher    tmg@jmbm.com
- Bernard R Given    bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Barry S Glaser    bglaser@swjlaw.com
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- John A Graham    jag@jmbm.com
- Ofer M Grossman    omglaw@gmail.com
- Jodie M Grotins    jgrotins@mcguirewoods.com
- Peter J Gurfein    pgurfein@lgbfirm.com
- Cara J Hagan    carahagan@haganlaw.org
- Asa S Hami    ahami@sulmeyerlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- David W Hercher    dave.hercher@millernash.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Natasha L Johnson    natasha.johnson@dlapiper.com
- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 9013-3.1**

| | |
|---|---|
| In re: Meruelo Maddux Properties, Inc., | CHAPTER 11 |
| Debtor(s). | CASE NUMBER 09-13356-KT |

- Alexandra Kazhokin    akazhokin@buchalter.com, salarcon@buchalter.com;ifs_filing@buchalter.com
- William H. Kiekhofer    wkiekhofer@mcguirewoods.com
- Andrew F Kim    kim-a@blankrome.com
- Michael S Kogan    mkogan@ecjlaw.com
- Tamar Kouyoumjian    tkouyoumjian@sulmeyerlaw.com
- Duane Kumagai    dkumagai@rutterhobbs.com, calendar@rutterhobbs.com
- Lewis R Landau    lew@landaunet.com
- David E Leta    dleta@swlaw.com, wsmart@swlaw.com
- Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
- Steven K Linkon    slinkon@rcolegal.com
- Robert M Llewellyn    michael.llewellyn@boe.ca.gov
- Richard Malatt    rmalatt@gmail.com
- Elmer D Martin    elmermartin@gmail.com
- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Iain A W Nasatir    inasatir@pszjlaw.com, jwashington@pszjlaw.com
- Jennifer L Nassiri    jnassiri@venable.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Christopher E Prince    cprince@lesnickprince.com
- Michael H Raichelson    mhr@cabkattorney.com
- Dean G Rallis Jr    drallis@sulmeyerlaw.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin    cmr@lnbrb.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Kirsten A Roe    kroe@wthf.com, dfunsch@wthf.com
- Martha E Romero    Romero@mromerolawfirm.com
- Victor A Sahn    vsahn@sulmeyerlaw.com
- Zev Shechtman    zshechtman@dgdk.com
- Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- Stephen Shiu    sshiu@swlaw.com
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Surjit P Soni    surjit@sonilaw.com, teresa@sonilaw.com
- Tracie L Spies    tracie@haganlaw.org
- James Stang    jstang@pszjlaw.com
- Catherine Steege    csteege@jenner.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- John N Tedford    jtedford@dgdk.com
- James A Timko    jtimko@allenmatkins.com
- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Rouben Varozian    rvarozian@bzlegal.com
- Jason L Weisberg    jason@gdclawyers.com
- William E Winfield    wwinfield@nchc.com
- Jasmin Yang    jyang@swlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re: Meruelo Maddux Properties, Inc., | CHAPTER 11 |
|---|---|
| Debtor(s). | CASE NUMBER 09-13356-KT |

## II. SERVED BY U.S. MAIL
Securities Exchange Commission
Los Angeles Regional Office
Attn: Sandra W. Lavigna, Esq.
5670 Wilshire Blvd., 11th Fl.
Los Angeles, CA 90036

## REQUEST FOR SPECIAL NOTICE
David P Beitchman
16130 Ventura Blvd Ste 570
Encino, CA 91436

Arthur J Hazarabedian
California Eminent Domain Law Group
3429 Ocean View Blvd Ste L
Glendale, CA 91208

SCS Flooring Systems
C/O Raymond Myer Esq
1220 1/2 State St
Santa Barbara, CA 93101

## APPOINTMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS AMENDED AS OF JULY 7, 2010
EDI Architecture, Inc.
2800 Post Oak Blvd., #3800
Houston, TX 77056
Attn: Darcy Garneau

GeoDesign, Inc.
2121 Town Center Place, Suite 130
Anaheim, CA 92806
Attn: Chris Zadoorian

Kirman Plumbing Company
794 Merchant Street
Los Angeles, CA 90021
Attn: Sam J. DeFelice

Complete Terminal Services, Inc.
11105 Knott Ave., Suite E
Cypress, CA 90630
Attn: William L. Clements

Magnusson Klemencic Associates, Inc.
1301 Fifth Avenue, Suite 3200
Seattle, WA 98101
Attn: Bill Christopher

D.B. Electric Co.
20952 Hemmingway Street
Canoga Park, CA 91304

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**

| In re: Meruelo Maddux Properties, Inc., | CHAPTER  11 |
|---|---|
| Debtor(s). | CASE NUMBER  09-13356-KT |

Attn: Dominic Borra

Fast Taco #3, Inc.
12800 Riverside Drive, Third Floor
Studio City, CA 91607
Attn: Larry E. Wasserman

**AMENDED APPOINTMENT OF OFFICIAL COMMITTEE OF EQUITY HOLDERS AS OF AUGUST 2, 2010**

Taylor International Fund, Ltd.
714 South Dearborn Street, 2nd Floor
Chicago, IL 60605
Attn: Stephen S. Taylor

David A. Spinney
280 Sheridan Road
Winnetka, IL 60093

Douglas J. McCaslin
01600 S.W. Greenwood Road
Portland, OR 97219

Williams & Ribb LLP Profit Sharing Plan
4300 Long Beach Boulevard, Suite 350
Long Beach, CA 90807
Attn: John D. Williams

David Ofman
718 W. Melrose Street, 3W
Chicago, IL 60657

Kapil Tayal
10400 Swift Stream Place, #107
Columbia, MD 21044

David Pourbaba
8271 Melrose Avenue, Suite 200
Los Angeles, CA  90046

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                     **F 9013-3.1**