Victor A. Sahn (CA Bar No. 97299)
  vsahn@sulmeyerlaw.com
Dean G. Rallis Jr. (CA Bar No. 94266)
  drallis@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
  ahami@sulmeyerlaw.com
Tamar Kouyoumjian (CA Bar No. 254148)
  tkouyoumjian@sulmeyerlaw.com
**SulmeyerKupetz**
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone:  213.626.2311
Facsimile:   213.629.4520

Bankruptcy Counsel for the Official
Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>MERUELO MADDUX PROPERTIES, INC., et al.,[1]<br><br>Debtors. | Case No. 1:09-bk-13356 KT<br><br>Chapter 11<br><br>**EMERGENCY MOTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MERUELO MADDUX PROPERTIES, INC. FOR ORDER IN AID OF HEARING ON CONFIRMATION OF ALTERNATIVE PLANS OF REORGANIZATION AND IN RESPONSE TO DEBTORS' SEPTEMBER 9, 2010 PRESS RELEASE; REQUEST FOR SANCTIONS AGAINST THE DEBTORS; AND JOINDER IN PLEADINGS FILED BY LEGENDARY INVESTORS GROUP NO. 1, LLC, AND EAST WEST BANK IN RESPONSE TO SEPTEMBER 9, 2010 PRESS RELEASE**<br><br>Date:    September 15, 2010<br>Time:    1:30 p.m.<br>Place:   Courtroom 301 |

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows:  1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk- 3370-KT;  1:09- bk-13371-KT; 1:09-bk-13372-KT;

## EMERGENCY MOTION

The Official Committee of Unsecured Creditors in the above-captioned jointly-administered cases (the "Committee") hereby moves this Court, on an emergency basis, for an Order in aid of Plan Confirmation of the competing Plan(s) of Reorganization that have been proposed in these Bankruptcy Cases. This Order is brought in connection with the September 9, 2010 press release issued by Meruelo Maddux Properties, Inc., et al., (collectively, the "Debtors") and request for various forms of sanctions against the Debtors (the "Motion"). In addition, except as otherwise set forth herein, the Committee joins in the pleadings filed by Legendary Investors Group No. 1, LLC, and East West Bank in response to the Debtors' press release (the "Press Release").

On September 9, 2010, the Debtors issued a Press Release entitled "East West Bank Hostile Takeover Plan of Meruelo Maddux Properties Rebuffed by Bankruptcy Court".

Approval of the Debtors' Disclosure Statement is set for hearing September 15, 2010 at 1:30 p.m. In addition, solicitation packages of Debtors' plan and disclosure statement are required to be distributed on September 17, 2010. As a result of these circumstances, the Committee files this Motion on an emergency basis and seeks a hearing date by September 15, 2010.

The relief requested by the Committee focuses on requesting relief from this Court on the matters which constitute a current emergency as related to the voting and solicitation process for the Plans due to egregious conduct by the Debtors. The content and timing of the Press Release is an improper solicitation on grounds that (1) the Press Release was issued days before the distribution of solicitation packages so that contents

---

1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-1378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382- KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk- 13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09- bk-I3394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-I3400-KT; 1 :09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403 -KT; 1:09-bk-13404-KT; 1:09-bk-13405- KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

Sulmeyer Kupetz, A Professional Corporation
333 SOUTH HOPE STREET, THIRTY-FIFTH FLOOR
LOS ANGELES, CALIFORNIA 90071-1406
TEL 213.626.2311 • FAX 213.629.4520

1 of the Press Release would be fresh and (2) the Press Release was issued prior to the
2 approval by this Court of Debtors' Disclosure Statement, making it difficult to allow a fair
3 solicitation process for competing plans.

4     This Motion is made and based upon these moving papers, the accompanying
5 Memorandum of Points and Authorities, the record in this case and any other arguments
6 and evidence which may be presented to this Court prior to or at the hearing on the
7 Motion.

8     **WHEREFORE** the Debtor respectfully requests that the Court enter an order:
9     (1) prohibiting the distribution of Debtors' Disclosure Statement and solicitation for
10 acceptances or rejections of its Plan; (2) directing the retraction of the Press Release and
11 the release of a correction or rebuttal that corrects the misstatements and inaccuracies
12 stated in the Press Release, (3) enjoining the Debtors and their principals and agents
13 from issuing similar press releases and having similar communications with creditors and
14 shareholders, without prior Court approval; and (4) imposing other sanctions that the
15 Court may deem just and appropriate.

17 Dated: September 14, 2010        **Sulmeyer**Kupetz
    A Professional Corporation

19     By:  /s/ Tamar Kouyoumjian
20         Victor A. Sahn
        Tamar Kouyoumjian
21         Bankruptcy Counsel for the Official
        Committee of Unsecured Creditors

VSAHN\ 681651.1    3

## MEMORANDUM OF POINTS AND AUTHORITIES

I.

### INTRODUCTION

The Press Release is another example of highly questionable or illegal conduct by the Chapter 11 Debtors and their management in these cases. In connection with the Disclosure Statement and Plan Confirmation process alone, the Debtors have attempted to manipulate and control its creditors and shareholders. The Debtors' now have attempted to use the press as a means of soliciting its creditors and shareholders days prior to approval of its disclosure statement and prior to the solicitation process. The inaccurate and materially misleading statements in the Press Release consists of an improper solicitation. *In re Combs*, 2008 Bankr. LEXIS 845 (Bankr. D. Ariz. Mar. 17, 2008)(stating that "the use of certain press releases might border on improper solicitation of creditors concerning a plan of reorganization"). Based on the Debtors' egregious behavior, the Committee requests that this Court find that the acts of the Debtors' by issuing a Press Release prior to distribution of any Disclosure Statement and Plan of Reorganization is a solicitation in a vicious attempt to discredit Legendary's plan and disclosure statement, and to issue appropriate sanctions against the Debtors' for such actions.

In this case, the improper or inaccurate solicitation includes the following from the Press Release (attached hereto as Exhibit "1"):

- "East West Bank Hostile Takeover Plan of Meruelo Maddux Properties Rebuffed by Bankruptcy Court"

  Comment: This is the headline of the Press Release. This is inaccurate in more ways than one. First, East West Bank is not engaged in a "hostile takeover plan." Second, nothing has been "rebuffed" by the Bankruptcy Court. This must be considered as an

intention misrepresentation of the facts by MMPI made for the express purpose of misleading creditors and shareholders who shall be voting on the alternative Plans.

- EWBC's filing is another in a string of delays caused by the community bank. "Despite yet another delay caused by East West Bank, Meruelo Maddux Properties will continue on its path to complete its bankruptcy reorganization as expeditiously as possible," said Chairman and Chief Executive Officer Richard Meruelo." "The reorganization plan submitted by MMPI has already been approved so there is no need to proceed with a half-baked plan that attempts to take MMPI over.

Comment: East West Bank is not engaging in delay. That is just a misstatement. Perhaps one of the clearest lies in the Press Release is Mr. Meruelo's statement above that MMPI's Plan (presumably the one submitted by Mr. Meruelo and his cohort, Mr. Maddux) has been "approved." How would the Court herein propose to even address the actual negative impact of this statement on voting by creditors and shareholders? How can the affect of this statement be reversed?

- "The reorganization plan submitted by MMPI has already been approved so there is no need to proceed with a half-baked plan that attempts to take MMPI over."

Comment: This is a misrepresentation of the facts. The Creditors Committee, who represents the unsecured creditors in this bankruptcy case, are recommending against the Debtor's Plan and the Debtor knows it. The 100% payment of which the Debtor speaks

will be over five years and the Debtor knows that the Plans proposed by Charlestown and East-West Bank/Legendary pay unsecured creditors in cash, in full, on the Plan's Effective Date or very shortly thereafter.

- "Through its Disclosure Statement, EWBC is attempting to convert its real estate loans into approximately 70 to 80 percent of the reorganized MMPI, in lieu of receiving 100% of its loans repaid, including interest. Taking such a predatory action - converting real estate debt of one of its customers into a controlling interest of that company - is a move lawyers involved in the case have never seen a community bank like East West Bancorp take.

EWBC also appears to be proposing it use TARP money obtained by the federal government as a part of its effort to complete its hostile takeover of MMPI, despite being unable to repay more than $306 million in bailout money back to the federal government. EWBC also received nearly $300 million in additional bailout money of United Commercial Bank, which it acquired as part of an FDIC subsidized bank bailout. "

Comment: Calling East-West Bank's Plan (which is itself a misstatement-the Debtor intentionally attacks East-West Bank because they can add on the misstatements concerning the fact that they are a regulated bank.  They intentionally do not attack Legendary because Legendary is not subject to such regulation) a "predatory action" or referencing the TARP money because this has been such a hot political issue, even though TARP money has nothing to do with East-West's sponsorship of the Plan is an action that is beyond words to adequately describe them.  It can only be

addressed by the most severe and appropriate sanction given the intentionally misleading nature of the Debtor's Press Release. These actions should be, at minimum:

(a) prohibit the Debtors from soliciting acceptances or rejections of their Plan(s) of Reorganization; without limitation, the Debtors have attempted to disenfranchise the Creditors Committee in this case by orchestrating the Committee's attack on its own counsel, and has now exceeded the bounds of an propriety with the Press Release. There is no telling what further damage they will do during the solicitation and acceptance process for the Plan(s). However, the only way for the Debtors to be kept from their "scorched earth" policy is to prohibit management consisting of Mssrs. Meruelo, Maddux and their henchmen from soliciting acceptances or rejections of their Plan. They have shown that they are unrestrained by the Rules that govern the conduct of Plan Proponents and Debtors in Possession in these cases. They should be stopped now before they do further harm,

(b) prohibiting and enjoining the Debtors and their management from commenting publicly about the Plan(s) of Reorganization in this case. In turn, and in fairness, other than filings with this Court, and correspondence among the parties and clients in the normal course of business, there should not be any comment by any party in this case regarding the Plan(s) of Reorganization that are being proposed,

(c) Distribution of correspondence from this Court regarding the improper information contained in the Press Release and a

1  corrective correspondence setting forth the true facts.

3  (d) if the Court has any inclination to permit the management-sponsored Plan of the Debtors to continue forward through the solicitation process, it should not permit the Debtors and these Bankruptcy Estate to incur any attorneys' fees or costs from this date forward in soliciting acceptances for their Plan and litigating the confirmation issues with respect to their Plan. They should not be permitted to hold the Bankruptcy Estate hostage while they use it to further their fiefdom through whatever inappropriate, illegal and intentionally misleading means that they wish to take.

13  Enough is enough. The Debtors have eliminated whatever credibility they had remaining. Their ability, through the management-sponsored Plan of Reorganization to propose and confirm their Plan is not a right, but is rather a privilege. The Committee respectfully requests that Mr. Meruelo and Mr. Maddux and management be precluded from further engaging in the Plan confirmation process or that if they are permitted to do so, that this be conditioned upon compliance with the provisions of subparagraphs b-d, above.

II.

## THE DEBTORS' THE PRESS RELEASE VIOLATES SECTION 1125

Bankruptcy Code section 1125(b) bars certain solicitation activities. Put differently, section 1125(b) allows, after the filing of a bankruptcy, the solicitation of an acceptance or a rejection of a plan only after an approved disclosure statement has been provided to the creditor. 11 U.S.C 1125(b). Although the Debtors' disclosure statement has been approved by the Court, the Debtors' plan and disclosure statement have not been distributed. This is a clear violation of section 1125(b).

The purpose of the requirements of Section 1125(b) is to ensure that creditors and parties in interest receive adequate information and discouraging solicitation of acceptance or rejection at a time when creditors and stockholders are too ill-informed. *In re Clamp-All Corp.*, 233 B.R. 198, 208 (Bankr. D. Mass. 1999) see also, *In re Dow Corning Corp.*, 227 B.R. 111, 119 (Bankr. E.D. Mich. 1998) (providing even neutral information through press releases and the like can be considered "solicitation").

The dissemination of the Press Release was beyond an improper solicitation intended to taint the voter pool in favor of the Debtors' plan and shifting blame to EWBC for delays in the Debtors' chapter 11 plan of reorganization. The statement "the reorganization plan submitted by MMPI has already been approved so there is no need to proceed with a half-baked plan that attempts to take MMPI over. East West's efforts are not in the best interest of our company nor in the best interest of MMPI's creditors" coupled with the statement that " A Bankruptcy Disclosure Statement presented by East West Bancorp…was not approved by presiding Judge Kathleen Thompson determining the EWBC Disclosure Statement to be insufficient." These statements are false. These statements among others in the Press Release portrays a subjective presentation of EWBC's competing plan and dresses it up as if it comes from the company rather than from the twisted imagination of the company's management who seek to feather their nest and do not care at all about creditors and shareholders. .

In addition, the statements are materially false and misleading. "Last month MMPI's Disclosure Statement was approved in court, paving the way to repay all of its creditors. Of particular note, MMPI's reorganization includes a 100% payment to all creditors of the company." This statement is clearly misleading as there is much more to consider such as interest and timing of payment. The Debtors' including its principals are very well aware that the Committee and the Debtors' are continuing to negotiate. If the Committee was satisfied with the proposed terms of Debtors' plan and disclosure statement, the Committee would not be considering supporting other competing plans.

The degree of damages caused by the Press Release is inconceivable. A

creditor or shareholder who reviews the status of its shares, the Press Release is the first thing they would see. To illustrate to the Court, <u>Exhibit "2"</u> is the Debtors' publicly traded company's status of shares via scottrade.com. As is indicated under the publicly traded company's daily status, there is immediate access for link to the Press Release and a summary of the Press Release. Attached as <u>Exhibit "1"</u> is the Press Release after accessing the link.

In addition, due to the Press Release, the Debtors' received high activity in the trading of its shares. By way of example, below is a table reflecting the price of the shares and the volume of trade on the day prior to the Press Release, the day of the Press Release and the day after the Press Release:

|  | Price (Opening and Closing) | Volume of Trade |
|---|---|---|
| September 8, 2010 | opened at .16 and closed .16 | 29,000 shares |
| September 9, 2010 | opened at .16 and closed at .17 | 103,600 shares |
| September 10, 2010 | opened at .17 and closed at .18 | 111,500 shares |

This evidences a favorable response to the Debtors' Press Release and that it was likely viewed by the public at large. This further evidences that the Debtors' improper solicitation had consequences that exacerbates the violation of section 1125(b).

III.

## IMPROPER SOLICITATION WARRANTS SANCTIONS AGAINST THE DEBTORS' AND ITS ATTORNEYS

The Committee believes that the Debtors should be sanctioned for their actions and enjoined from soliciting acceptances or rejections of their Plan. The Courts have held that parties may be in contempt for violating 1125(b) and imposed sanctions. *In re Aspen Limousine Serv.*, 198 B.R. 341, 349 (D. Colo. 1996)("An inherent element of a court's contempt power is to punish the doing of a forbidden act or the refusal to do that which is required. Section 105(a) of the Bankruptcy Code authorizes bankruptcy judges

to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title . . . . [or] to prevent an abuse of process." *Id*.

This Court is well aware of the exceedingly aggressive posture of the Debtors' Bankruptcy case. In particular the competing plans of Charlestown and EWBC/Legendary has led to the Debtors' effort to derail the entire reorganization process. Only this Court can deter the Debtors' from its vexatious tactics.

The Court within its discretion can adopt one or more of these sanctions described below. The Committee requests that at this time, the Court issue an order (1) prohibiting the distribution of Debtors' Disclosure Statement and solicitation for acceptance or rejections of its Plan; (2) directing the retraction of the Press Release and the release of a correction or rebuttal that corrects the misstatements and inaccuracies stated in the Press Release, (3) enjoining the Debtors and their principals and agents from issuing similar press releases and having similar communications with creditors and shareholders, without prior Court approval, (4) requiring, in the alternative, that the management/insider sponsored Plan from Mr. Meruelo and Mr. Maddux be underwritten or paid for with assets other than the Debtors' assets. This includes preparation and dissemination of the solicitation materials, payment of the pro rata costs for work which will be done by Kurtzman-Carlson Company, and legal fees to counsel for advocating the confirmation of the Plan of Reorganization of the management group lead by Mr. Meruelo and Mr. Maddux. The Committee believes that these sanctions must be imposed immediately to remedy the harm caused by the Press Release. For the convenience of the Court we discuss the following forms of sanctions:

A.  **Cessation of Debtors' Disclosure Statement and the Solicitation Process**

The Court should not approve the Debtors' disclosure statement and suspend distribution of Debtors' solicitation packages on grounds that the voting process has been tainted. Debtors' make the statement that "the reorganization plan submitted by MMPI has already been approved so there is no need to proceed with a half-baked plan that

attempts to take MMPI over." This is an intentionally false and misleading statement. The Committee is concerned that if creditors and shareholders' believe that the Debtors' plan has been approved by the Court then creditors and shareholders' need not consider any other plan presented by other creditors.

### B. Distribution of a Court Letter

In the event, the Court allows the solicitation process of Debtors' plan and disclosure statement to move forward, the Committee proposes that this Court issue a letter to be included in the solicitation materials. Attached as <u>Exhibit "C"</u> is a sample of the letter encouraging creditors and/or shareholders to cast ballots on each plan without regard to the Debtors' false and misleading Press Release.

### C. Removal of Management of the Debtors' and Allowing Appointment of New Management

The misleading Press Release is much more egregious here since the largest shareholder and CEO, Richard Meruelo was quoted and approved it in full. The Court should consider removal of current management and allow the appointment of new management.

### D. Monetary Sanctions

The Committee does not support monetary sanctions unless such sanctions are against the individuals to be held accountable for the issuance of the Press Release and the false statements made. If the sanction is to be monetary, the Court should assess the sanction necessary to achieve deterrence. *Rex Montis Silver Co.*, 87 F.3d at 440, citing *White v. General Motors Corp.*, 908 F.2d 675, 678 (10th Cir. 1990), *cert. denied* 498 U.S. 1069, 111 S. Ct. 788, 112 L. Ed. 2d 850 (1991). However, the Court at this time does not need to access punitive damages or personal liability. As mentioned above, the focus of the Court should be an immediate remedy for the harm caused by the Press Release.

### E. Formal Retractions of the Press Release

The Committee believes that the Debtors' should be requires to immediately issue retraction. Such retraction should be distributed as part of Debtors' solicitation package. Although this does not repair the damages caused by the Press Release, the Committee further believes that a letter from the Court would result in a greater impact than a formal retraction of the Press Release or a Press Release by any other third party.

### F. Injunction Against Debtors' and Its Principals

Due to the continuing, prejudicial effect of the Press Release, the Debtors and their principals should be enjoined from making any further communications to the Debtors' creditors and shareholders. There can be no doubt that, the Debtors' have willfully engaged in improper solicitation tactics and abuse of the bankruptcy process. This bad faith conduct has imposed substantial and inappropriate fees and expenses on the estate, to the prejudice not only of Legendary, but all unsecured creditors who are patiently waiting for the Debtors to reorganize its financial affairs. The Committee believes that the Debtors' should be reprimanded for their actions in issuing the Press Release.

### G. In the Alternative, Requiring Debtors' Management to Pay for Cost of Solicitation of Acceptances or Rejections of their Plan and to Pay for Legal and Financial Advisory Costs Incident to Confirmation of the Meruelo-Maddux Management Plan

The Press Release by Mr. Meruelo and his management team is beyond propriety, their fiduciary duties or anything that bears any resemblance to a Debtor in Possession acting as a fiduciary to creditors and shareholders in these Bankruptcy Cases. The Court has wide discretion in connection with the universe of remedies available to it, in order to redress the Debtors' actions. To the extent that the Court permits Meruelo and Maddux to solicit acceptances or rejections of their management-lead Plan of Reorganization,

they should be required to pay their own solicitation costs, and their own legal and financial advisory/expert witness fees in connection with their efforts.

Only a remedy like this, though less severe than prohibiting them from soliciting at all, is one which will inform them of the severity of their offenses and dissuade Mssrs. Meruelo, Maddux, Debtors' management and Debtors' bankruptcy counsel from continuing with the acts that have lead to the instant Motion.

## IV

### Production of Documents and Depositions

The Committee requests further investigation into the Press Release and the authorization for issuance of the Press Release. The Court should issue an order compelling production of all documents in connection with the Press Release, (e.g., drafts of the press release, emails concerning same, minutes of the Board of the Debtors addressing and/or authorizing the press release, etc.). Discovery on the Press Release should occur prior to the distribution of Debtors' disclosure statement and solicitation packages. In addition, the Court should compel Richard Meruelo, John Maddux and the Person Most Knowledgeable to appear for a deposition in connection with the Press Release. This is necessary for the Committee to access if the members of the Board received the Press Release and approved it before it was sent and to fully understand how this egregious act came to pass and who should be held responsible therefor.

## V.

### JOINDER

To the extent that the statements in Legendary's response to the Press Release are consistent with the foregoing, the Committee joins in the pleadings filed by Legendary.

# VI.

## CONCLUSION

Based on the foregoing, the Court should grant this Motion in its entirety. At this time, the Court issue an order (1) prohibiting distribution of Debtors' Disclosure Statement and solicitation for acceptances or rejections of its Plan; (2) directing the retraction of the Press Release and the release of a correction or rebuttal that corrects the misstatements and inaccuracies stated in the Press Release, (3) enjoining the Debtors and their principals and agents from issuing similar press releases and having similar communications with creditors and shareholders, without prior Court approval. (4) requiring the management of the Debtor, including Mssrs. Meruelo, Maddux and other management personnel who are sponsoring the "Debtor" Plan to pay for their own solicitation costs, their own attorneys' fees and their own financial and other expert fees and costs incident to proceeding forward with confirmation of their Plan if they are permitted to do so notwithstanding relief requested in this Motion that provides to the contrary.

Further, the Committee requests such other and further relief as is just and appropriate in the circumstances.

Dated: September 14, 2010          **Sulmeyer**Kupetz
                                   A Professional Corporation


                                   By: /s/ Tamar Kouyoumjian
                                       Victor A. Sahn
                                       Tamar Kouyoumjian
                                       Bankruptcy Counsel for the Official
                                       Committee of Unsecured Creditors

# EXHIBIT 1

> Please note, the symbol you have entered, **MMPI**, has now changed to **MMPIQ**.

> Meruelo Maddux Properties Inc is in bankruptcy. Investors should be cautious when buying common stock of companies in bankruptcy. It is extremely risky and is likely to lead to financial loss.

# Meruelo Maddux Properties Inc MMPIQ:OTC

Education help is **ON**

Sector: Capital Goods  Industry: Construction Services

| 0.18 | ↑0.0050   2.86% | 93,857 | | |
|------|-----------------|--------|---|---|
| Last | Change / % Change | Volume | S&P Ranking | Last Trade as of 3:12 PM ET 9/14/10 |

## East West Bank Hostile Takeover Plan of Meruelo Maddux Properties Rebuffed by Bankruptcy Court

Thursday 09/09/2010 1:10 PM ET - Pr Newswire

**Related Companies**

| Symbol | Last | %Chg |
|--------|------|------|
| MMPIQ  | 0.18 | 2.86% |

As of 3:12 PM ET 9/14/10

A Bankruptcy Disclosure Statement presented by East West Bancorp (**EWBC**) in bankruptcy court today, effectively amounting to a hostile takeover of Meruelo Maddux Properties (**MMPI**), was not approved by presiding Judge Kathleen Thompson, determining the EWBC Disclosure Statement to be insufficient. EWBC's filing is another in a string of delays caused by the community bank.

"Despite yet another delay caused by East West Bank, Meruelo Maddux Properties will continue on its path to complete its bankruptcy reorganization as expeditiously as possible," said Chairman and Chief Executive Officer Richard Meruelo. "The reorganization plan submitted by MMPI has already been approved so there is no need to proceed with a half-baked plan that attempts to take MMPI over. East West's efforts are not in the best interest of our company nor in the best interest of MMPI's creditors."

Last month MMPI's Disclosure Statement was approved in court, paving the way to repay all of its creditors. Of particular note, MMPI's reorganization plan includes a 100% payment to all creditors of the company.

Through its Disclosure Statement, EWBC is attempting to convert its real estate loans into approximately 70 to 80 percent of the reorganized MMPI, in lieu of receiving 100% of its loans repaid, including interest. Taking such a predatory action - converting real estate debt of one of its customers into a controlling interest of that company - is a move lawyers involved in the case have never seen a community bank like East West Bancorp take.

EWBC also appears to be proposing it use TARP money obtained by the federal government as a part of its effort to complete its hostile takeover of MMPI, despite being unable to repay more than $306 million in bailout money back to the federal government. EWBC also received nearly $300 million in additional bailout money of United Commercial Bank, which it acquired as part of an FDIC subsidized bank bailout.

"As a taxpayer, I am offended that East West would try to use federal TARP money, which is supposed to be used to help consumers, to help finance its hostile takeover attempt of Meruelo Maddux Properties. Rather than use taxpayer money in real estate speculation, East West ought to repay its debt to taxpayers and use the balance to help small business owners flourish instead of try to take them over," concluded Meruelo.

SOURCE Meruelo Maddux Properties, Inc.

**Recent Headlines**

East West Bank Hostile Takeover Plan Of Meruelo Maddux Properties Rebuffed By Bankruptcy Court
Thursday 09/09/2010 1:12 PM ET - Dow Jones News

East West Bank Hostile Takeover Plan of Meruelo Maddux Properties Rebuffed by Bankruptcy Court
Thursday 09/09/2010 1:10 PM ET - Pr Newswire

Security Center | Forms Center | Agreements & Disclosures | Contact Us | Site Map

As your agreement for the receipt and use of market data provides, the securities markets (1) reserve all rights to the market data that they make available; (2) do not guarantee that data; and (3) shall not be liable for any loss due to their negligence or to any cause beyond their reasonable control.

© Copyright 2010 Scottrade. All Rights Reserved.

Research materials are provided by the third party sources listed in the About our data providers page. As further explained in Sections 48 and 49 of Scottrade's Brokerage Account Agreement, such material is designed to be informative and does not constitute investment advice by Scottrade to purchase or sell any security.

Brokerage Products and Services offered by Scottrade, Inc. - Member FINRA and SIPC

Online market and limit stock trades are just $7 for stocks priced $1 and above.

Any specific securities, or types of securities, used as examples are for demonstration purposes only. No information on this Web site should be considered a recommendation or None of the information provided should be considered a recommendation or solicitation to invest in, or liquidate, a particular security or type of security.

Investors should consider the investment objectives, risks, and charges and expenses of a mutual fund carefully before investing. A mutual fund's prospectus contains this and other information about the mutual fund. Prospectuses are available through our trading site or through a Scottrade branch office. The prospectus should be read carefully before investing. No transaction fee (NTF) funds are subject to the terms and conditions of the NTF funds program. Scottrade is compensated by the funds participating in the NTF program through recordkeeping, shareholder, or SEC 12b-1 fees.

Investors should consider the investment objectives, charges, expense, and unique risk profile of an Exchange Traded Fund (ETF) carefully before investing. Leveraged and Inverse ETFs may not be suitable for long-term investors and may increase exposure to volatility through the use of leverage, short sales of securities, derivatives and other complex investment strategies. A prospectus contains this and other information about the ETF and should be obtained from the issuer. The prospectus should be read carefully before investing.

Margin trading involves interest charges and risks, including the potential to lose more than deposited, or the need to deposit additional collateral in a falling market. Margin Disclosure Statement (PDF) is available for download, or it is available at one of our branch offices. It contains information on our lending policies, interest charges, and the risks associated with margin accounts.

Options involve risk and are not suitable for all investors. Detailed information on our policies and the risks associated with options can be found in the Scottrade Options Application and Agreement, Brokerage Account Agreement, and by downloading the Characteristics and Risks of Standardized Options and Supplements (PDF) from The Options Clearing Corporation, or by requesting a copy from your local branch office. Supporting documentation for any claims will be supplied upon request.

Market volatility, volume, and system availability may impact account access and trade execution.

Testimonials may not be representative of the experience of other clients and are no guarantee of future performance or success.

**EXHIBIT 2**

Your last login was: 9/14/2010 1:38:46 PM ET                                              Log Off

71547800    Home | Trade | My Account | Quotes & Research | Knowledge Center    Detailed Quote:    Go

Hello, VICTOR SAHN                                                        ?Help ● Tutorial ☒Webcast

> Please note, the symbol you have entered, **MMPI**, has now changed to **MMPIQ**.

> Meruelo Maddux Properties Inc is in bankruptcy. Investors should be cautious when buying common stock of companies in bankruptcy. It is extremely risky and is likely to lead to financial loss.

## Meruelo Maddux Properties Inc MMPIQ:OTC

Education help is **ON**
Sector: Capital Goods  Industry: Construction Services

| 0.18 | ↑0.0050  2.86% | 93,857 | | |
|---|---|---|---|---|
| Last | Change / % Change | Volume | S&P Ranking | Last Trade as of 3:12 PM ET 9/14/10 |

[Chart showing intraday prices 0.176-0.179, Volume thousands 50K-100K, 9:30am to 4pm]

Advanced Charts                                             1day | 5day | 6mo | 1yr | 5yr

**Shares Outstanding / Volatility Average**

| Compare Peer | Shares Outstanding | Compare Peer | Volatility Avg |
|---|---|---|---|
| SPG | | SPG | |
| VNO | | VNO | |

The total number of shares held by the public plus any restricted shares held by officers and insiders at a company. If a company repurchases a portion of its shares, these are not considered outstanding. | The annualized standard deviation of stocks closing price over the previous year. A higher value indicates larger changes in the stocks price, where a lower value indicates smaller changes in the stocks price.

**Learn More:** Knowledge Center Full Definition    **Learn More:** Knowledge Center Full Definition

### Latest News Headlines for Meruelo Maddux Properties Inc

**East West Bank Hostile Takeover Plan Of Meruelo Maddux Properties Rebuffed By Bankruptcy Court**
Thursday 09/09/2010 1:12 PM ET - T

**East West Bank Hostile Takeover Plan of Meruelo Maddux Properties Rebuffed by Bankruptcy Court**
Thursday 09/09/2010 1:10 PM ET - PR Newswire

A Bankruptcy Disclosure Statement presented by East West Bancorp (EWBC) in bankruptcy court today, effectively amounting to a hostile takeover of Meruelo Maddux Properties (MMPI), was not approved by presiding Judge Kathleen Thompson, determining the EWBC Disclosure Statement to be insufficient. EWBC's filing is another in a string of delays caused by the community bank.

Earlier Headlines - view recent headlines

| 0.166/5000 | 0.18/5000 | 0.175 |
|---|---|---|
| Bid/Size (PQ) | Ask/Size (PQ) | Price Open |
| 0.175 | 0.18 | 0.175 |
| Previous Close | Day High | Day Low |
| -- | 0.58/10/16/09 | 0.025/12/30/09 |
| Beta (5yr) | 52wk High/Date | 52wk Low/Date |
| 15.8 Million | 88.1 Million | 237.75 |
| Market Capitalization | Shares Outstanding | Volatility Avg (1 Year) |
| 72.7 Thousand | NM | -2.11 |
| Avg Vol (10 day) | P/E Ratio | EPS (TTM) |

Meruelo Maddux Properties Inc does not pay dividends.

### PDF Reports for Meruelo Maddux Properties Inc

Reuters Research Report