JENNER & BLOCK LLP
Kenneth K. Lee  (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Telephone:  213-239-5100
Facsimile:  213-239-5199
klee@jenner.com

JENNER & BLOCK LLP
Marc B. Hankin  (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
Telephone:  212-891-1600
Facsimile:  212-891-1699
mhankin@jenner.com

RON ORR & PROFESSIONALS, INC.
Ronald S. Orr (Cal. Bar No. 54257)
578 Washington Blvd., #389
Marina Del Rey, CA  90292
Telephone:  310-301-4839
Facsimile:  310-301-6549
ronorresq@aol.com

RODIGER LAW OFFICE
Georgiana G. Rodiger, (Cal. Bar No. 94416)
272 South Los Robles Avenue
Pasadena, California  91101
Telephone:  626-793-7264
Facsimile:  626-793-7592
crodiger@rodigerlaw.com

Attorneys for Equity Committee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**MERUELO MADDUX PROPERTIES, INC., et al.**[1]<br><br>**Debtors and Debtors-in-Possession.**<br><br><br>**AFFECTS ALL DEBTORS**<br><br><br>. | CASE NO. 09-bk-13356-KT<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO GRANT EQUITY COMMITTEE STANDING TO ISSUE NOTICES OF NON-RENEWAL OF CERTAIN EXECUTIVE EMPLOYMENT AGREEMENTS**<br><br>DATE:  November 10, 2010<br>TIME:   9:30 a.m.<br>DEPT:  Courtroom 301<br>        21041 Burbank Blvd.<br>        Woodland Hills, California |

---

[1]    This case is jointly administered with chapter 11 cases filed with the Court by numerous affiliated entities.  The Debtors and debtors-in-possession and their respective tax identification numbers are identified in the *Order Directing The Joint Administration Of Related Cases* entered by the Court on April 7, 2009 (docket entry no. 30).

**TO THE HONORABLE KATHLEEN THOMPSON, UNITED STATES BANKRUPTCY JUDGE; THE DEBTORS; AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

The Official Committee of Equity Holders (the "Equity Committee") submits this motion (this "Motion") seeking entry of an order to grant the Equity Committee standing to issue on behalf of the above-captioned debtors (the "Debtors") notices of non-renewal of the employment agreements of Richard Meruelo, John Maddux and Andrew Murray. In compliance with Local Bankruptcy Rule 9013-1, Jenner & Block hereby provides the following information regarding the Motion:

This Motion seeks entry of an order that would grant the Equity Committee independent standing to issue notices of non-renewal of the employment agreements. The Equity Committee submits that such relief is necessary to prevent the incurrence of certain liabilities to the estates of the Debtors. The Equity Committee has requested that the Debtors issue the notices of non-renewal in the discharge of their fiduciary duties, but the Debtors have failed to do so. This Motion is made pursuant to 11 U.S.C. §§ 105(a), 1103(c)(5) and 1109(b).

**PLEASE TAKE NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the Declaration of Marc B. Hankin, the exhibits attached thereto, the arguments of counsel, and any other admissible evidence properly brought before the Court. In addition, the Equity Committee requests that the Court take judicial notice of all documents filed with the Court in these cases.

**PLEASE TAKE FURTHER NOTICE** that any response and/or request for hearing must be made in the form required by Local Bankruptcy Rule 9013-1, and must be (1) filed with the Clerk of the Court; (2) served on the counsel for the Equity Committee at the address that appears in the upper left-hand corner of this Notice; and (3) served on the Office of the United States Trustee, 21051 Warner Center Lane, Suite 115, Woodland Hills, California 91367, not later than fourteen (14) days from the date of service of this Notice in accordance with Local Bankruptcy Rule 9013-1(f).

Notice Of Motion And Motion To Grant Equity Committee Standing To Issue Notices Of Non-Renewal Of Certain Executive Employment Agreements

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion without further notice.

**WHEREFORE,** the Equity Committee respectfully requests that this Court enter an order (i) granting the Equity Committee standing to issue on MMPI's behalf notices of non-renewal as to the employment agreements of Richard Meruelo, John Maddux and Andrew Murray; and (ii) granting such other relief as is just and appropriate.

Dated: October 6, 2010

**JENNER & BLOCK LLP**

By      _/s/ Marc B. Hankin_
        Kenneth K. Lee  (Cal. Bar No. 264296)
        Marc B. Hankin  (admitted *pro hac vice*)
        Attorneys for Equity Committee

Notice Of Motion And Motion To Grant Equity Committee Standing To Issue Notices Of Non-Renewal Of
Certain Executive Employment Agreements

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

This Motion addresses a fundamental question:  For whose benefit is a chapter 11 debtor's case run?  Is it for the benefit of entrenched management, or it is for the benefit of the debtors' creditors and interest holders?  The answer, of course, is the latter.  The Debtors, however, appear to not to agree.  This is the only conclusion that can be reached in light of the Debtors' decision not to take any action to address the risk that, in the event a competing plan is confirmed, certain members of their senior management would seek to saddle the reorganized debtors with substantial administrative expense claims arising from the operation of the "golden parachutes" embedded in the executives' pre-petition employment agreements.  This Motion seeks to address the potential harm that could befall the Debtors' estates as a result of the Debtors' intentional failure to act in the interests of all of their creditors and interest holders with respect to such executives' employment agreements.

### JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

Meruelo Maddux Properties, Inc. ("MMPI") is party to pre-petition employment agreements with certain of its senior executives:  Richard Meruelo, Chief Executive Officer; John Maddux, President and Chief Operating Officer; and Andrew Murray, Chief Financial Officer. Messrs. Meruelo and Maddux are not only MMPI's senior-most officers and members of its board of directors, but also collectively hold a majority of MMPI's common stock.[2]   The respective

---

[2]     The Debtors' Plan defines Messrs. Meruelo and Maddux, and the shareholder entities controlled by them, collectively as the "Founding Shareholders."

employment agreements with Richard Meruelo and John Maddux were each made effective as of January 30, 2007 (*see* Exhibits A and B) and the agreement with Andrew Murray was made effective as of May 23, 2008 (*see* Exhibit C, collectively with the agreements of Messrs. Meruelo and Maddux, the "Executive Employment Agreements").

The Executive Employment Agreements' "golden parachutes" provide uncommonly generous compensation and benefits packages that each executive would no doubt assert would become operative in the event the applicable executive's employment were terminated "without Cause."  Executive Employment Agreements § 7.1.  For example, in the event Mr. Meruelo's employment is terminated "without Cause," his Executive Employment Agreement provides that he would be entitled to a "Severance Package" that includes, but is not limited to, a lump-sum "Severance Payment" equal to *three times* the sum of (i) Mr. Meruelo's base salary, and (ii) the *greater* of (a) the bonus actually paid to Mr. Meruelo for the most recent completed fiscal year and (b) the minimum bonus that would have been paid to Mr. Meruelo during the fiscal year in which his employment was terminated.  Meruelo Executive Employment Agreement § 7.1.

As this Court is well aware, three plans of reoganization have been proposed and only one can be confirmed.  The Equity Committee understands that the services of Messrs. Meruelo, Maddux and Murray will only be required in the event that the Debtors' Plan is confirmed, and not in the event that either the Charlestown or Legendary Plans are confirmed.  The Debtors have expressly noted, in the event Messrs. Meruelo and Maddux are no longer employed by reorganized MMPI due to operation of the Charlestown Plan, that those executives would hold substantial claims as a result of the termination of their employment.  *See* MMPI Objection to Charlestown Disclosure Statement, dated August 13, 2010 at 26.[3]  (It is important to note that this statement was not formally submitted

---

[3]     For the avoidance of doubt, the Equity Committee reserves all rights with respect to the Executive Employment Agreements, including but not limited to the right to object to any claims that may be asserted under such agreements, and the right to argue that the agreements do not automatically renew during MMPI's chapter 11 case.

by the applicable executives, but was made by the Debtors, who have a fiduciary duty to act in the best interests of the Debtors' creditors and interest holders.)[4]

While the Equity Committee has stated its position with respect to the merits of each of the competing plans, it cannot be disputed that there is some risk that the Debtors' Plan will not be confirmed.  Such risk is further highlighted by the fact that, at present, the Official Committee of Unsecured Creditors is not supporting the Debtors' Plan, and the Equity Committee has expressed considerable reservations with respect to, among other things, the Debtors' reluctance to provide information, requiring the Equity Committee to continue to conduct formal discovery with respect to the acts and conduct of certain of the Debtors' senior executives.  While it is understandable that the Debtors believe that their plan will be confirmed, the Debtors have a fiduciary obligation to proceed in light of the risk that their plan will not be confirmed, and that the services of Messrs. Meruelo, Maddux and Murray will no longer be required by reorganized MMPI.

A review of the Executive Employment Agreements reveals the most appropriate manner to address this risk.  The Executive Employment Agreements have the same structure with respect to the executive's term of employment and the same automatic renewal feature with respect to such term.  Each agreement provides that the "Initial Term" of employment will be three years from execution of each agreement.  In the event that MMPI does not issue a notice of non-renewal at least 60 days before the end of the agreement's then-current term, the executive's employment continues for an additional year pursuant to the agreement.  Executive Employment Agreements § 3.   With respect to Messrs. Meruelo and Maddux, the deadline for issuing the notice of non-renewal in accordance with the terms of their Executive Employment Agreements is November 29, 2010.[5]  With respect to Mr. Murray, such deadline is March 22, 2011.

---

[4]     The Equity Committee reserves the right to conduct discovery to determine whether, in making this statement, MMPI was guided by the non-officer members of its board of directors, as would be required with respect to matters in which Messrs. Meruelo and Maddux, who also serve as directors, have an interest in their capacity as officers.

[5]     The Executive Employment Agreements are not entirely clear as to how the specified 60-day period is to be

Given the confirmation schedule for the competing plans, the Equity Committee concluded that the most prudent course of conduct would be for MMPI to issue a notice of non-renewal in accordance with the terms of each of the Executive Employment Agreements.  In this manner, in the event that the MMPI Plan is confirmed, reorganized MMPI can always enter into a new employment agreement with each executive.  Equally important, in the event either the Charlestown Plan or the Legendary Plan is confirmed, the notices of non-renewal will avoid the risk that these executives will assert massive "golden parachute" claims as a result of the termination of their employment upon the effective date of the confirmed plan.  This risk is avoided because the executive's employment would not be terminated during the employment term under the applicable Executive Employment Agreement.

In light of the foregoing, the Equity Committee made a formal written demand upon MMPI to timely issue the notices of non-renewal in accordance with the terms of each Executive Employment Agreement.  (*See* Letter from Marc B. Hankin, Esq. to John N. Tedford, IV, Esq., dated September 21, 2010, and attached as Exhibit D.)  MMPI has declined to issue the notices and has not provided any written explanation as to the basis for its decision.  Accordingly, the Equity Committee, in order to discharge its fiduciary duty, requests that this Court grant it the authority and standing to timely issue notices of non-renewal under each Executive Employment Agreement on MMPI's behalf.  The issuance of such notices will best preserve the value of the Debtors' estates for the benefit of all of the Debtors' creditors and interest holders.  To permit the applicable notice date to pass by without appropriate action would not only impose the risk of an unnecessary potential liability upon reorganized MMPI, it would also demonstrate that the chapter 11 process does not fairly operate for the benefit of a debtor's creditors and shareholders when the action involves a debtor's senior-most officers.

---

calculated, and the November 29, 2010 deadline referenced above is intended to be a conservative interpretation of the earliest date upon which one could argue the notice deadline expires.

Notice Of Motion And Motion To Grant Equity Committee Standing To Issue Notices Of Non-Renewal Of Certain Executive Employment Agreements

## RELIEF REQUESTED

This court should grant the Equity Committee standing to issue notices of non-renewal on behalf of the Debtors pursuant to sections 105(a), 1103(c)(5) and 1109(b) of the Bankruptcy Code. Section 1103(c)(5) empowers the Equity Committee to "perform such services as are in the interest of" its constituent shareholders, and section 1109(b) provides that the Equity Committee "may raise and may appear and be heard on any issues in a case under" the Bankruptcy Code.  11 U.S.C. §§ 1103(c)(5) and 1109(b).  Additionally, section 105(a) grants this court the power to "issue any order ... that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a).  Moreover, each bankruptcy court is "a court of equity and should invoke equitable principles and doctrines" when doing so would be consistent with the Bankruptcy Code. *In re Beaty*, 306 F.3d 914, 922 (9th Cir. 2002).  As an order granting the Equity Committee standing to issue the notices on the Debtors' behalf would advance the goals of Bankruptcy Code sections 1103(c)(5) and 1109(b), such an order would be an appropriate exercise of this Court's equitable powers.

Courts have granted creditors or official committees standing to act on the debtor's behalf to protect estate interests where a debtor refused to act.  The Third Circuit in *Official Comm. of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 579 (3d Cir. 2003) concluded that the Bankruptcy Code authorized granting of derivative standing to allow a creditors' committee to pursue avoidance actions for the benefit of the estate where the debtor refused to do so.  In *Cybergenics*, after observing that no portion of the Bankruptcy Code prohibited a grant of derivative standing and that sections 1103(c) and 1109(b) demonstrate the central role Congress intended equity and creditors' committees to occupy in chapter 11 cases, the Third Circuit concluded that conferring "derivative standing upon creditors' committees is a straightforward application of bankruptcy courts' equitable powers."  *Id.* at 559-568.  Indeed, the remedy of derivative standing is necessary to safe guard against the fact that a chapter 11 debtor in possession "often acts under the influence of

8

conflicts of interest." *Id.* at 573.   Likewise, in *In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir. 1985), the court held that section 1103(c)(5) and 1109(b) "imply a qualified right for creditors' committees to initiate suit" on the debtor's behalf where the debtor has "unjustifiably failed" to initiate suit itself.

The present situation is analogous to those addressed by the courts in *Cybergenics* and *STN Enterprises*.  The Debtors are faced with a situation where there is but one course that will preserve maximum value for their estates: issuing the notice of non-renewal to prevent the Executive Employment Agreements from automatically renewing.   The Equity Committee has made the Debtors aware of this and has made a written demand that the Debtors so act.   The Debtors have declined to act.   The Debtors' refusal, no doubt, is informed by the fact that the subjects of the non-renewal notice -- Messrs. Meruelo, Maddux and Murray -- are the most senior officers of the Debtors, and Messrs. Meruelo and Maddux, in addition to serving on the board of directors, are MMPI's "Founding Shareholders."   Therefore, the Debtors' refusal to issue the notices is the prototypical refusal to act by a conflicted debtor in possession that was addressed *Cybergenics*.   As in *Cybergenics*, the remedy is clear: this court must employ its equity powers -- codified in Section 105(a) of the Bankruptcy Code -- to grant the Equity Committee standing to issue the notices on the Debtors' behalf so as to preserve value for the estates.   Such result will benefit all of the Debtors' creditors and interest holders, as opposed to the result obviously intended by the Debtors that would benefit the few individuals who control and manage the Debtors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the reasons set forth herein, the Equity Committee requests that this court enter an order (i) granting the Equity Committee standing to issue on MMPI's behalf notices of non-renewal under the Executive Employment Agreements of Richard Meruelo, John Maddux and Andrew Murray; and (ii) granting such other relief as is just and appropriate.

Dated: October 6, 2010                    **JENNER & BLOCK LLP**

By        */s/ Marc B. Hankin*
          Kenneth K. Lee  (Cal. Bar No. 264296)
          Marc B. Hankin  (admitted *pro hac vice*)
          Attorneys for Equity Committee

Notice Of Motion And Motion To Grant Equity Committee Standing To Issue Notices Of Non-Renewal Of
Certain Executive Employment Agreements

## DECLARATION OF MARC B. HANKIN

STATE OF NEW YORK        )
                                          )        SS:
COUNTY OF NEW YORK   )

      Marc B. Hankin, being duly sworn, deposes and says:

      1.      I am a partner of the firm of Jenner & Block LLP.  I am an attorney duly licensed in and am a member in good standing of the bars for the States of New York and Connecticut and am admitted to practice before the United States District Court for the Southern District of New York and am admitted *pro hac vice* to practice before this Court.  I submit this Declaration in support of the Equity Committee's Motion To Grant Equity Committee Standing To Issue Notices Of Non-Renewal Of Certain Executive Employment Agreements.

      2.      Attached hereto as Exhibits A, B and C are true and correct copies of the Executive Employment Agreements of, respectively, Richard Meruelo, John Maddux and Andrew Murray that were attached as exhibits to the Debtors' Reply To: (1) The Objections Of Bank Of America And Official Committee Of Unsecured Creditors To Debtors' Notices Of Setting/Increasing Insider Compensation; And (2) The Joinders Of United Commercial Bank And Imperial Bank In The Objection Of Bank Of America (docket entry no. 280).

      3.      Attached hereto as Exhibit D is a true and correct copy of a letter dated September 21, 2010, that I caused to be delivered to the Debtors' counsel via electronic mail.

1      I declare under penalty of perjury under the laws of California and the United States that the

2  foregoing is true and correct.

3      Executed on October 6, 2010, in New York, New York.

4                                     Marc B. Hankin

5

6  SUBSCRIBED AND SWORN to before
  me this 6th day of October, 2010.

7

8  Notary Public

9          MARK R. SCHOLL.
     NOTARY PUBLIC, State of New York

10         No. 01SC6063204
     Qualified in New York County

11    Commission Expires August 27, 2012

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28