1
JEFFREY S. SHINBROT, ESQ. (SBN 155486)
jeffrey@shinbrotfirm.com

2
JEFFREY S. SHINBROT, APLC
8200 Wilshire Boulevard, Suite 400

3
Beverly Hills, California 90211
Telephone:  (310) 659-5444

4
Fax:  (310) 878-8304

5
Attorneys for Creditor UNION RESTAURANT &
LOUNG LLC

6

7
**UNITED STATES BANKRUPTCY COURT**

8
**CENTRAL DISTRICT OF CALIFORNIA**

9
**WOODLAND HILLS DIVISION**

10
In re

11
MERUELO MADDUX PROPERTIES,

12
INC., et al.[1]

13
    Debtors and Debtors-in
    Possession.

14

15

16

17

18
Affects the following Debtor(s):

19
Meruelo Maddux Properties – 760 S. Hill
Street, LLC, case number 1:09-bk-13363-

20
KT

Case No. 1:09-bk-13356 –VK

Chapter 11

**CLAIMANT'S OPPOSITION TO DEBTOR'S
MOTION FOR ORDER DISALLOWING
CLAIM NO. 3 FILED BY THE UNION
RESTAURANT & LOUNGE, LLC;
MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATION OF JOHN
VALENCIA  AND EXHIBITS IN SUPPORT
THEREOF**

Date:    December 16, 2010
Time:    2:00 p.m.
Place:    Courtroom 301
        21041 Burbank Boulevard,
        Woodland Hills, CA 9136

21
    **COMES NOW,** THE UNION RESTAURANT AND LOUNGE, LLC ("Claimant" or

22
"Union Restaurant"), and submits it opposition to the Objection to Claim filed by the Chapter 11

23
Debtor captioned above.  This opposition is based on the annexed Memorandum of Points and

24
[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The

25
affiliated case numbers are as follows:  1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT;

26
1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT;

27
1:09-bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-

28
KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

1   Authorities, declarations and evidence filed herewith, as well as the proof of claim timely filed by

2   Union Restaurant in this chapter 11 case and argument as may be allowed by the Court at the time

3   of hearing.

4        **WHEREFORE,** Union Restaurant respectfully requests that the Court enter an Order

5   allowing its claim in the amount of $247,606.18 in its entirety.

6        Respectfully submitted,

7   Dated: _____, 2010                              JEFFREY S. SHINBROT, APLC

8

9

10                                                    By: _____

11                                                        Jeffrey S. Shinbrot, Attorney for THE
                                                          UNION RESTAURANT AND
                                                          LOUNGE, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF FACTS ................................................................. 1

II.    LEGAL ARGUMENT ................................................................ 6

    A.    THE SUBJECT CLAIM SUBSTANTIALLY CONFORMS TO THE OFFICIAL BANKRUPTCY COURT FORM FOR PROOFS OF CLAIM, WHICH IS ALL THAT IS REQUIRED UNDER F.B.R.P. 3001 TO BE PRESUMED AS PRIMA FACIE EVIDENCE OF A VALID CLAIM ................. 6

    B.    THE PREPONDERANCE OF THE EVIDENCE IS THAT DEBTOR BREACHED THE LEASE AND WORK LETTER BY:  (1) FAILING TO DELIVER POSSESSION OF THE PREMISES; (2) FAILING TO COMPLETE RENOVATION OF THE PREMISES' CEILING; AND (3) FAILING TO PAY DESIGN CONSULTANTS FOR WORK PERFORMED ................................................................ 10

    C.    DEBTOR COMMITTED THE BUSINESS TORT OF DEFAMATION IN ITS AUGUST 6, 2008 CONFERENCE CALL, WHEN IT PUBLICLY STATED TO THIRD-PARTIES THAT CLAIMANT'S FINANCIAL CREDIBILITY WAS SUSPECT AND IT WAS UNABLE TO FULFILL ITS OBLIGATIONS FOR COMPLETION UNDER THE LEASE AND WORK LETTER ................................................................ 13

III.    CONCLUSION AND PRAYER FOR RELIEF ................................................. 15

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Central Valley General Hosp. v. Smith*
(2008) 162 Cal. App. 4th 501 ............................................................. 13, 14

In re Anderson-Walker Industries, Inc.,
798 F.2d 1285 (9th Cir. 1986)............................................................. 8

In re Campbell,
336 B.R. 430 (9th Cir. B.A.P. 2005) ................................................... 9

In re Chain,
255 B.R. 278 (Bankr. D. Conn. 2000) ................................................. 9

In re Consol. Pioneer Mortgage,
178 B.R. 222 (9th Cir. B.A.P. 1995).................................................... 10

In re Garner,
246 B.R. 617 (9th Cir. B.A.P. 2000)............................................. 8, 9, 10

In re Heath,
331 B.R. 424 (9th Cir. B.A.P. 2005).................................................... 9

In re Holm,
931 F.2d 620 (9th Cir. 1991)............................................................... 9

In re Lundell,
233 F.3d 1035 (9th Cir. 2000) ............................................................ 10

In re Marino,
90 B.R. 25 (Bankr. D. Conn. 1988) .................................................... 9

In re Pugh,
157 B.R. 898 (9th Cir. B.A.P. 1993).................................................... 10

In re Wylie,
349 B.R. 204 (9th Cir. B.A.P. 2006).................................................... 9

Pepper v. Litton,
308 U.S. 295 (1939)........................................................................... 10


**OTHER AUTHORITIES**

Rule of Procedure 3001 ........................................................................ 7

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## STATEMENT OF FACTS

THE UNION RESTAURANT AND LOUNGE, LLC ("Claimant" or "Union Restaurant") is the successor-in-interest to LOS FELIZ, LLC, a Florida Limited Liability Company ("Los Feliz").2  In 2007, Los Feliz entered into negotiations with MERUELO MADDUX PROPERTIES ("MMP") regarding the leasing of restaurant space located in real property owned by MMP at the address of 760 South Hill Street, Los Angeles, California (the "Premises").  As a result of these negotiations, Los Feliz and MMP reached an understanding regarding primary lease terms for the Premises. These primary terms were memorialized in a May 16, 2007, letter of intent from Miguel Echemendia, MMP's Vice-President and Chief Administrative Officer to John Valencia, the Senior Partner of Los Feliz.3   On or about July 6, 2007, Los Feliz and MMP entered into a Standard Industrial/Commercial Multi-Tenant Lease (the "Lease"). 4

Section 3.3 of the Lease provided Los Feliz with an option to cancel the Lease in the event that MMP failed to deliver possession of the Premises:

> Lessee shall not, however, be obligated to pay Rent or perform its
> other obligations, until Lessor delivers possession of the Premises .
> . . If possession is not delivered within 60 days after the
> Commencement Date, Lessee may, at its option, by notice in
> writing within 10 days after the end of such 60 day period, cancel
> this Lease, in which event the Parties shall be discharged from all
> obligations hereunder.

*See Exhibit B at Section 3.3.*

Shortly thereafter, Los Feliz and MMP executed an Addendum to the Lease that granted early possession of the Premises to Los Feliz.5  As set forth in Exhibit C, under Section 51 of the Addendum, Los Feliz was entitled to delivery of possession of the Premises as of the earlier of: (A) March 4, 2008; or (B) the date that Los Feliz obtained a certificate of occupancy and health

---

2 This Statement of Facts is based on the annexed Declaration of John Valencia (the "Valencia Declaration") and attached Exhibits.
3 A true and accurate copy of the letter of intent is annexed to the Valencia Declaration as Exhibit "A."
4 A true and accurate copy of the Lease is annexed to the Valencia Declaration as Exhibit "B."
5 A true and accurate copy of the Addendum to the Lease is annexed to the Valencia Declaration as Exhibit "C."

department permit necessary for the operation of its restaurant on the Premises. On or about December 5, 2007, Los Feliz and MMP executed a First Amendment to Lease, transferring all rights and obligations under the Lease from Los Feliz to Union Restaurant.[6] At the time of the execution of the Lease, Los Feliz paid $30,000 of the $60,000 security deposit to MMP. In several discussions, the parties agreed that the second half of the security deposit would not be due until a work letter, allocating the parties' duties and obligations for the build-out of the Premises into a restaurant space, was executed. These discussions took place among John and David Valencia for Los Feliz and Miguel Echemendia and Todd Neilsen for MMP; this payment schedule for the full security deposit amount was always the mutual understanding of both parties.

Subsequently, in late December 2007 or early January 2008, Union Restaurant and MMP did execute a Work Letter as Exhibit B to the Lease, detailing the scope of renovation and construction to be performed by the parties during the tenant build-out of the Premises. The Work Letter also set forth the parties' respective obligations regarding payment of vendors, suppliers, and contractors for the renovation and build-out construction.[7] In the Work Letter, MMP agreed to pay for certain renovation and build-out work, along with the fees for particular designers and contractors of MMP's own choosing. Under Section 1.B., of the Work Letter MMP agreed "to pay for and has already begun to restore the restaurant ceiling. Lessor will install insulation, correct sprinkler heads and install dry wall drop ceiling to the ceiling areas in the ground floor Bar Lounge and Dining Room corner below units." *See Exhibit E at Section 1.B.* In that same section, MMP further agreed to "split the cost of restoration of the vaults doors, gates and safe deposit boxes, as quoted by United Field Remodeling for the total sum of $38,700." *Id.*

Union Restaurant proceeded to then have the vault restored and paid the restoration contractor a total of $30,750.00, but MMP never paid its share of the renovation cost (and MMP kept possession of the completely restored vault). MMP's position that it should be unjustly enriched by the $30,750.00 renovation is patently bad faith.

---

[6] A true and accurate copy of the First Amendment to the Lease is annexed to the Valencia Declaration as Exhibit "D."
[7] A true and accurate copy of the Work Letter is annexed to the Valencia Declaration as Exhibit "E."

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

Additionally, under Section 2.A. of the Work Letter, Union Restaurant agreed to retain Killefer Flammang Architects ("Design Consultant") as design consultant on the build-out project. MMP agreed to "pay for the Design Consultant . . . for work through construction document stage . . . ." *See Exhibit E at Section 2.A.*

Despite the prior understanding that Union Restaurant would pay the second $30,000 portion of the security deposit upon execution of the Work Letter, certain practices of MMP known to Union Restaurant at that time did not instill sufficient confidence that MMP would be able or willing to meet its own obligations under the Lease and Work Letter. Even before execution of the Work Letter, MMP had delayed delivering possession of the Premises. Union Restaurant's agents had no keys to the building and access to the restaurant space only when MMP's agents were present.

Union Restaurant had also been informed by third-parties that MMP was habitually failing to pay its other vendors and suppliers. As a result, Union Restaurant performed a title search and discovered numerous existing mechanic's liens already recorded against the Premises. The amount of recorded liens against the Premises totaled nearly $300,000 dollars.[8] Because Union Restaurant did not feel adequately secure in MMP's ability to fully perform its duties under the Work Letter, Union Restaurant reserved its right to pay the remainder of the Security Deposit until such time as it was given sufficient assurances by MMP. As Union Restaurant feared, however, its ability to satisfy its own obligations under the Lease and Work Letter was severely curtailed from the outset by MMP's immediate and ongoing material breach of those agreements.

In a March 19, 2008 letter from John Valencia to Miguel Echemendia, Union Restaurant detailed the failures of MMP to timely complete restoration work on the Premises' ceiling, as required by Section 1.B. of the Work Letter. In the three months following the January 2008 commencement of work, only a portion of one ceiling section had even been partially restored. Union Restaurant was unable to begin other necessary work, such as floor demolition for the

---

[8] A true and accurate copy of the several recorded mechanic's liens against the Premises is annexed to the Valencia Declaration as Exhibit "F."

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

3

kitchen and bar build-out until the ceiling restoration was completed (which it never was).[9]

Furthermore, the Design Consultant had not been paid by MMP (as required under Section 2.A.

of the Work Letter) since 2007.[10]  The result of this non-payment was that Design Consultant

would not release its plans to the city of Los Angeles for approval until MMP paid them all

monies owed. With the approval process halted, Union Restaurant was unable to move forward

with its own performance of Work Letter tasks to complete the build-out of the premises.

Despite being given notice of the existence of these conditions of breach, and despite

being given ample opportunity to cure the conditions, MMP continued to fail to fulfill its

obligations under the Lease and Work Letter.  In a letter dated April 7, 2008, Union Restaurant

provided MMP with formal notice of its material breach.[11]   The first condition of material breach

noticed by Union Restaurant in its letter was the failure of MMP to deliver possession of the

Premises. Section 3.3 of the Lease required that possession of the Premises be delivered by the

Commencement Date, which pursuant to section 51 of the Addendum to the Lease was March 4,

2008.  Union Restaurant was not delivered possession by that date, and still did not have legal

possession as of the date of the April 7, 2008 notice letter.

The second condition of material breach related to the continued non-payment of Design

Consultant by MMP.  Section 2.A. of the Work Letter required MMP to pay the Design

Consultant for work performed through the construction document stage, but Design Consultant

had not been paid for any work related to the Premises since 2007. As a result of this ongoing

material breach, Design Consultant refused to release copies of its plans to the city of Los

Angeles for the approval process. Without approval from the city for Design Consultant's plans,

substantial necessary work by Union Restaurant to complete the Premises build-out could not be

commenced, let alone completed.

MMP's material breaches of the Lease and Work Letter resulted in enormous delays in

Union Restaurant's commencing or completing any of the build-out of the Premises and related

---

[9] A true and accurate copy of the March 19, 2008, letter is annexed to the Valencia Declaration as Exhibit "G."
[10] A true and accurate copy of Design Consultant's March 17, 2008 invoice for services rendered relating to the Premises and
accompanying emails is annexed to the Valencia Declaration as Exhibit "H."
[11] A true and accurate copy of the draft of the April 7, 2008, letter is annexed to the Valencia Declaration as Exhibit "I."

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

functions necessary to open the restaurant. As a consequence, Union Restaurant was compelled to begin canceling events scheduled to take place at the Premises toward the end of the 2008, with damages of lost revenue in excess of $50,000.

Because MMP failed to cure the conditions of its breach of the Lease and Work Letter, on May 5, 2008, John Valencia delivered a letter to Todd Neilson, General Counsel and Corporate Secretary for MMP, canceling the Lease and seeking prompt refund of the security deposit and all monies expended toward finalizing the restaurant project.[12] Pursuant to Section 3.3 of the Lease, Union Restaurant invoked its right of cancelation due to the fact that possession of the Premises had not been delivered within 60 days of the commencement date.

In the cancelation letter, Union Restaurant offered MMP the opportunity to settle any and all existing and future claims for breach of the Lease in exchange for the security deposit refund and repayment of Union Restaurant's "out of pocket" expenses to that date.

MMP failed to respond to Union Restaurant's initial offer of settlement. John Valencia then followed up with a second letter to Mr. Neilson, on May 19, 2008,[13] again offering him the opportunity to dispose of Union Restaurant's claim by way of compromise. In this follow-up letter, Valencia reduced the settlement demand to only a refund of the security deposit and cost of the vault/safe restoration. MMP failed to respond to this second offer of compromise as well.

On August 6, 2008, during MMP's second quarter earnings conference call, Andrew Murray told call participants that Union Restaurant had been replaced as tenant of the Premises because "we determined that their financial credibility was suspect and we didn't necessarily want – they weren't able to fulfill their TI requirements. And so, we could have given them some more time to come up with their capital to build out the space, but we decided we didn't want to take that risk. And we went to a much higher quality user." *MMP Q2 2008 Earnings Call Transcript* at pp. 9 to 10.[14]

---

[12] A true and accurate copy of the May 5, 2008, letter is annexed to the Valencia Declaration as Exhibit "J."
[13] A true and accurate copy of the May 19, 2008, letter is annexed to the Valencia Declaration as Exhibit "K."
[14] A true and accurate copy of the conference call transcript is annexed to the Valencia Declaration as Exhibit "L."

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

On March 27, 2009, MMP filed its Chapter 11 bankruptcy petition. On September 4, 2009, Union Restaurant filed its Proof of Claim for $247,606.18, seeking compensation for damages resulting from MMP's breach of the Lease and business torts, including defamation. The total amount of the Proof of Claim consists of the following costs and expenses:

| | |
|---|---|
| Security Deposit | $30,000.00 |
| United Field Remodeling (vault restoration) | $28,750.00 |
| United Field Remodeling (SDB restoration deposit) | $2,000.00 |
| United Field Remodeling (SDB restoration final) | $3,000.00 |
| Smith & Green Equipment (kitchen/bar deposit) | $30,000.00 |
| Hospitality Wood Products (furniture deposit) | $25,000.00 |
| Ron Ramirez (hardwood flooring deposit) | $4,500.00 |
| Peter Marx, Esq. (legal services) | $5,200.00 |
| Dinner menus/costing | $10,000.00 |
| T-Shirts | $660.33 |
| Bar menu | $2,000.00 |
| Defamation claim | $100,000.00[15] |

## II.

## LEGAL ARGUMENT

**A.    THE SUBJECT CLAIM SUBSTANTIALLY CONFORMS TO THE OFFICIAL BANKRUPTCY COURT FORM FOR PROOFS OF CLAIM, WHICH IS ALL THAT IS REQUIRED UNDER F.B.R.P. 3001 TO BE PRESUMED AS PRIMA FACIE EVIDENCE OF A VALID CLAIM.**

Federal Bankruptcy Rule of Procedure 3001 sets forth the requirements for a valid proof of claim by a creditor. Under F.B.R.P. 3001(a), the only formal requirement for a proof of claim to be presumptive prima facie evidence of a valid claim is that it substantially conforms to the applicable Official Form:

> (a) Form and content
>
> A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

F.R.B.P. 3001(a) (emphasis added).

---

[15] A true and accurate copy of all canceled checks for the claimed expenses currently in Claimant's possession is annexed to the Valencia Declaration as Exhibit "M."

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1   Claimant here filed its written Proof of Claim against Debtor using Official Form 10

2   (PROOF OF CLAIM) as promulgated by the Clerk's Office of the United States Bankruptcy

3   Court for the Central District of California.  The Proof of Claim filed by the Claimant against

4   Debtor is docketed as claim number 3 in the claims register of case number 1:09-bk-13363-KT, a

5   copy of which is annexed hereto as Exhibit "K" for the Court's convenience.

6   So long as a proof of claim substantially conforms to the appropriate Official Form, it is

7   presumed to be prima facie evidence of a valid claim against the debtor in the claimed amount:

8

9   (f) Evidentiary effect

10  A proof of claim executed and filed in accordance with these rules
    shall constitute prima facie evidence of the validity and amount of
11  the claim.

12  F.R.B.P. 3001(f).

13

14  "Substantial conformance" is achieved where a proof of claim evidences:  "an explicit

15  demand showing the nature and amount of the claim against the estate, and evidence an intent to

16  hold the debtor liable."  In re Anderson-Walker Industries, Inc., 798 F.2d 1285, 1287 (9th Cir.

17  1986) (holding that even "informal claims" could be recognized by the court so long as they

18  contained required elements).

19  Here, it is clear from the face of the Proof of Claim form filed by Claimant that it

20  substantially conforms and contains all the required elements for a presumption of prima facie

21  evidence.  First, the form is in writing.  Second, it lists the specific amount demanded by

22  Claimant from Debtor:  $247,606.18.  Third, it states the nature of the claim against Debtor's

23  estate:  "Breach of lease/workletter, business torts . . . including defamation."  See Exhibit A at

24  Paragraphs 1, 2, and attached Damages Calculation sheet.  The filing of the Proof of Claim form

25  itself with the Court evidences Claimant's intent to hold Debtor liable for the claim amount.

26  Because Claimant's claim is based, in part, on breach of contract, under F.R.B.P. 3001(c)

27  the writing that formed the basis for the claim must be attached to the Proof of Claim:

28  (c) Claim Based on a Writing.  When a claim, or an interest in

7

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

property of the debtor securing the claim, is based on a writing, the
original or a duplicate shall be filed with the proof of claim. If the
writing has been lost or destroyed, a statement of the circumstances
of the loss or destruction shall be filed with the claim.

F.R.B.P. 3001(c). Claimant has complied with this subsection of the rule as well by attaching to

its Proof of Claim a copy of the Lease and Work Letter it claims Debtor to have breached.

No further factual allegations are required to be included with Claimant's Proof of Claim

because, as the Ninth Circuit B.A.P. has held in such cases: "Except for evidence of proof of

perfection of a security interest, Fed.R.Bankr.P. 3001(d), **the rules do not require that evidence**

**be attached to the proof of claim**." In re Garner, 246 B.R. 617, 621 (9th Cir. B.A.P. 2000)

(emphasis added).

Debtor's objection to the proof of claim attempts to obscure the clear and simply standard

of proof required by F.R.B.P. 3001 with non-binding case law authority[16], binding case law

authority that is contrary to Debtor's actual position[17], and shifting burdens of proof that do not

come into play here. Debtor's objection is insufficient to either rebut the evidentiary presumption

of prima facie validity or shift the burden of proof back to Claimant because **Claimant has**

**already met the factual burden of proof required by F.R.B.P. 3001** in filing a Proof of Claim

that substantially conforms to Official Form 10 and Debtor's objection fails to negate any of the

facts asserted by Claimant in its Proof of claim.

Indeed, as Garner (first cited by Debtor in its own objection) held in denying the objection

to a proof of claim there, the presumption of prima facie validity can only be rebutted by the

presentation of **actual evidence** by the objecting party:

The mechanics of what it takes to rebut the presumption are driven

---

[16]In re Chain, 255 B.R. 278 (Bankr. D. Conn. 2000) and In re Marino, 90 B.R. 25 (Bankr. D. Conn. 1988), cited for the proposition that filing a proof of claim "in accordance with" the Rules means that the proof of claim must "set forth the facts necessary to support the claim" are cases from the Connecticut bankruptcy court and not binding on this Court; In re All-American Auxillary Ass'n, 95. B.R. 540 (Bankr. S.D. Ohio 1989) is an Ohio bankruptcy case and not binding on this Court.

[17]In re Holm, 931 F.2d 620 (9th Cir. 1991) (deeming claimant's filed disclosure statement to meet the substantial conformance test for an informal proof of claim); In re Wylie, 349 B.R. 204 (9th Cir. B.A.P. 2006) (upholding objection to proof of claim only when claimant failed to attend evidentiary hearing and present supporting evidence); In re Garner, 246 B.R. 617 (9th Cir. B.A.P. 2000) (denying objection to proof of claim on grounds that it met the minimal requirements under F.R.B.P. 3001); In re Heath, 331 B.R. 424 (9th Cir. B.A.P. 2005) (affirming bankruptcy court's allowance of proof of claim over debtor's objection for claimant's failure to attach sufficient documentation of claim); In re Campbell, 336 B.R. 430 (9th Cir. B.A.P. 2005) (affirming bankruptcy court's denial of debtor's objections to proof of claim on grounds of lack of sufficient documentation).

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1   by the nature of the presumption as "prima facie" *evidence* of the claim's validity and amount. The proof of claim is more than "some"

2   evidence; it is, unless rebutted, "prima facie" evidence. One rebuts evidence with counter-evidence.

3

4   The difficulty in this instance is that appellant proffered no evidence whatsoever, choosing instead to stand on a mere formal objection

5   that the proofs of claim were not good enough.

6   The consequence of the status of the proof of claim as constituting prima facie evidence of validity and amount is that the evidence of

7   the proof of claim is strong enough to prevail over a mere formal objection without more. <u>Wright v. Holm (In re Holm)</u>, 931 F.2d 620,

8   623 (9th Cir.1991). In effect, one who chooses to make a mere formal objection is electing to narrow the issue to whether the proof

9   of claim is executed and filed in accordance with the rules.

10

11   Here, appellant's mere formal objection, which placed in question the narrow issue of whether the proofs of claim were executed and

12   filed in accordance with the rules, was not adequate to rebut the Rule 3001(f) evidentiary presumption that followed from the trial court's

13   affirmative answer to that question.

14   <u>In re Garner</u>, 246 B.R. at 622 to 623.

15       Like the debtor in <u>Garner</u>, Debtor here has proffered no evidence to rebut the presumption

16   that Claimant's Proof of Claim is prima facie valid.  Rather, Debtor's objection is merely formal,

17   alleging only that Claimant has failed to execute and file its claim in accordance with the

18   Bankruptcy Rules.  As in <u>Garner</u>, such an objection is not adequate to rebut the evidentiary

19   presumption of F.R.B.P. 3001(f) that a proof of claim in substantial conformance with the

20   Official Form is prima facie valid.  Debtor's objection to Claimant's Proof of Claim should be

21   similarly rejected here.[18]

22       As the case law makes clear, F.R.B.P. 3001's standard of "substantial conformance" for

23   acceptance of proofs of claim is intended to preclude the triumph of form over substance:

24   Bankruptcy courts are courts of equity, and must assure "that substance will not give way to form,

---

25   [18] Debtor should not be surprised or disappointed in such an outcome since few other debtors in the cases cited in its objection

26   successfully rebutted the prima facie evidentiary presumption (or succeeded in denying the proof of claim) either:  <u>In re Lundell</u>, 233 F.3d 1035 (9th Cir. 2000) (affirming bankruptcy court's ruling that no evidence sufficient to rebut the 3001(f)

27   presumption had been presented, denying debtor's objection to proof of claim); <u>In re Pugh</u>, 157 B.R. 898 (9th Cir. B.A.P. 1993) (remanding case back to bankruptcy court for further factual findings regarding the correct amount of claimant's claim against

28   debtor, not rejecting proof of claim as formally deficient).  Only in <u>In re Consol. Pioneer Mortgage</u>, 178 B.R. 222 (9th Cir. B.A.P. 1995) was the proof of claim denied, and there only because claimant failed to attach the writing that formed the basis for the claim, as required by F.R.B.P. 3001(c).  That is obviously not the case here.

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1  [and] that technical considerations will not prevent substantial justice from being done." <u>Pepper</u>

2  <u>v. Litton</u>, 308 U.S. 295, 305 (1939). The "liberal" rule reflects the bankruptcy courts' preference

3  for resolution on the merits, versus strict adherence to formalities. Debtor's objection here must

4  be denied because Claimant's Proof of Claim: (1) substantially conforms to the applicable

5  Official Form; (2) attaches the writing that is the grounds for Claimant's breach of contract claim;

6  and (3) is presumptive prima facie evidence of a valid claim that Debtor has presented no

7  substantive facts to rebut.

8

9  **B.    THE PREPONDERANCE OF THE EVIDENCE IS THAT DEBTOR BREACHED**
   **THE LEASE AND WORK LETTER BY: (1) FAILING TO DELIVER**
10 **POSSESSION OF THE PREMISES; (2) FAILING TO COMPLETE**
   **RENOVATION OF THE PREMISES' CEILING; AND (3) FAILING TO PAY**
11 **DESIGN CONSULTANTS FOR WORK PERFORMED**

12      Despite the fact that Debtor has failed to shift the burden of production to Claimant by

13 presenting any substantive evidence that the Proof of Claim is not valid, Claimant nonetheless can

14 meet its burden of persuasion. The preponderance of the evidence is that Debtor breached the

15 Lease and Work Letter by its own wrongful acts.

16      Under the Section 3.3 of the Lease, Debtor was obligated to deliver possession of the

17 Premises to Claimant by the Commencement Date – March 4, 2008 by the terms of Section 51 of

18 the addendum to the Lease. Debtor failed to deliver possession to Claimant by the

19 Commencement Date, and indeed had still not delivered possession as late as April 7, 2008 when

20 Claimant's attorney notified Debtor by letter of the breach of the Lease. This was a material

21 breach of the terms of the Lease.

22      Section 1.B. of the Work Letter further obligated Debtor to renovate the ceiling of the

23 Premises, including installation of insulation, sprinkler heads, and dry wall drop ceiling in the Bar

24 Lounge and Dining Room. Of all the ceiling renovation that Debtor agreed to complete, by

25 March 2008 (three months after commencement of work) only a portion of one section of the

26 ceiling had been completed. This was a material breach of the terms of the Work Letter. Debtor's

27 inexcusable delay prevented Claimant from going forward with its own work, such as demolition

28

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1    of floors for the kitchen and bar build-out. Thus, Claimant was unable to fully perform its duties

2    under the Work Letter as a result of Debtor's continuing material breach.

3        Section 2.A. of the Work Letter obligated Debtor to pay a Design Consultant, among other

4    vendors and suppliers, for work performed related to the Premises through the construction

5    document stage. Debtor failed to pay the Design Consultant for more than several months after

6    services were rendered, among others costs for which Debtor was obligated under the Work

7    Letter. This was also a material breach of the terms of the Work Letter. Because Debtor failed to

8    pay as required, Design Consultant withheld the delivery of its plans for the Premises' build-out to

9    the city of Los Angeles for approval. Without the city's approval of the plans, Claimant was

10   unable to proceed with its own tasks as set forth in the Work Letter.

11       As a result of Debtor's several material breaches of the Lease and Work Letter, essential

12   portions of the renovation and build-out of the Premises could not be commenced by Claimant,

13   let alone completed. These facts utterly contradict Debtor's allegation that Claimant "breached

14   the Lease and Work Letter by failing to complete its portion of the build-out and, ultimately,

15   abandoning the Premises," Debtor's Motion for Order Disallowing Claim No. 3 Filed by the

16   Union Restaurant & Lounge, LLC at p. 5, lines 25 to 26. Claimant did not abandon the Premises.

17   Claimant could not complete its portion of the build-out because Debtor failed to fulfill its own

18   obligations under the Lease and Work Letter in the first instance.

19       Similarly, contrary to Debtor's false assertion that "Claimant failed to pay the remaining

20   $30,000 due to the Debtor for the security deposit on the Lease" Id. at lines 17 to 18, Claimant

21   opted not to exercise its right to tender the second portion of the security deposit because Debtor

22   failed to meet the conditions precedent to Claimant's payment of the remainder. [At the time of

23   the execution of the Lease on July 6, 2007, the parties had agreed that Claimant would not pay the

24   second half of the security deposit until the Work Letter was executed. By late December 2007

25   or early January 2008, however, when the Work Letter was actually executed, facts and situations

26   became known to Claimant that caused it to become uncertain that MMP was either willing or

27   able to fully perform its duties and obligations under the Lease and Work Letter.

28

                                                                        OPPOSITION TO MMP OBJECTION TO
                                                11                      PROOF OF CLAIM

1     In addition to Debtor's continued delays in delivering possession of the Premises to

2    Claimant, it became known to Claimant that Debtor was also failing to pay vendors and suppliers

3    for other work, unrelated to the build-out of the Premises.  The combination of this knowledge

4    and the ongoing delays of Debtor in delivering possession of the Premises caused Claimant to

5    withhold payment of the second half of the security deposit for lack of adequate security or

6    assurances that Debtor would be able to fully satisfy all of its obligations under the Lease and

7    Work Letter.  When Debtor subsequently, in fact, did fail to perform numerous required tasks

8    necessary for Claimant to complete its own work on the build-out and deliver possession of the

9    Premises, Claimant exercised its right of cancelation, under Section 3.3 of the Lease, and seek

10    compensation for the portion of the security deposit already paid and out-of-pocket expenses

11    incurred for build-out work already performed that MMP agreed to pay under the Work Letter.

12     To the extent that Union Restaurant's failure to pay the remaining $30,000 of the security

13    deposit could be termed nonperformance under original Lease, that action was justified in light of

14    MMP's own failure to completely fulfill its obligations under the Lease and Work Letter.

15    Anticipatory breach is a valid excuse of nonperformance where the other party has evidenced an

16    intent not to perform on its own duties under an existing contract.

17     California law recognizes that a contract may be breached by nonperformance, by

18    repudiation, or a combination of the two.  *Central Valley General Hosp. v. Smith* (2008) 162 Cal.

19    App. 4th 501, 514 (citing 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 849, pp.

20    936-937).  A repudiation may be express or implied.  *Id.*

21    When a repudiation occurs before any breach by nonperformance, there are three main

22    consequences.  First, the repudiation may give rise to a claim for damages for total breach.

23    Second, it may discharge the other party's duties to render performance.  Third, it may excuse the

24    nonoccurrence of a condition to a duty of the repudiating party.  *Id.* (internal citations omitted).

25    Breach by repudiation is referred to in the case law as an anticipatory breach.  As a matter of

26    definition, an anticipatory breach of contract occurs when the contract is repudiated by the

27

28

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1   promisor before the promisor's performance under the contract is due. *Id.* (citing *Taylor v.*

2   *Johnston* (1975) 15 Cal.3d 130, 137).

3          Here, MMP impliedly repudiated the Lease and Work Letter by failing to timely deliver

4   possession of the Premises to Union Restaurant, failing to pay Design Consultants for work

5   performed related to the Premises build-out, and by failing to renovate the Premises' ceiling as it

6   was obligated to do under the terms of the Work Letter.  Additionally, Union Restaurant's

7   discovery of hundreds of thousands of dollars in recorded mechanic's liens against the Premises

8   by other vendors who MMP did not pay raised serious doubts about MMP's willingness or ability

9   to perform any of its obligations under the Lease and Work Letter.  Union Restaurant's

10  withholding of the second half of the security deposit payment was excusable nonperformance

11  based on MMP's anticipatory breach of the parties' several agreements.

12

13  **C.    DEBTOR COMMITTED THE BUSINESS TORT OF DEFAMATION IN ITS
        AUGUST 6, 2008 CONFERENCE CALL, WHEN IT PUBLICLY STATED TO**

14  **THIRD-PARTIES THAT CLAIMANT'S FINANCIAL CREDIBILITY WAS
        SUPSECT AND IT WAS UNABLE TO FULFILL ITS OBLIGATIONS FOR**

15  **COMPLETION UNDER THE LEASE AND WORK LETTER**

16         Notwithstanding the fact that Debtor's several material breaches of the Lease and Work

17  Letter had caused Claimant to be unable to satisfy its own obligations regarding the build-out of

18  the Premises, Debtor continued to falsely state that it was Claimant who had abandoned the

19  project.

20         On August 6, 2008, Debtor conducted a second-quarter earnings conference call between

21  executives of MMP and several financial analysts.  See Exhibit I.  In this conference call, Andrew

22  Murray, Chief Financial Officer of MMP, stated publicly to the third-party call participants that

23  Claimant had failed to perform its duties:

24         **Alex Goldfarb – UBS**

25         And what about a replacement for the [Union] restaurant operator?

26         **Andrew Murray**

27         We're in negotiations with the tenant right now.  And we're just

28

                                           OPPOSITION TO MMP OBJECTION TO
                                           PROOF OF CLAIM

talking about how they want to configure the space. So that is an ongoing leasing effort.

**Alex Goldfarb – UBS**

What happened to the original one?

**Andrew Murray**

I think we determined their financial credibility was suspect and we didn't necessarily want – they weren't able to fulfill their TI requirements. And so, we could have given them some more time to come up with their capital to build out the space, but we decided we didn't want to take that risk. And we went to a much higher quality user.

Exhibit L at pp. 9 to 10.

This public statement by Debtor's CFO contained several injurious falsehoods. First, there was nothing suspect about Claimant's financial credibility whatsoever. Claimant at all relevant times possessed sufficient financial wherewithal to fulfill all of its obligations under the Lease and Work Letter. Second, at no time was Claimant ever unable to fulfill any of the requirements of the Lease and Work Letter. Any inability of Claimant to perform necessary and required build-out work to the premises was the sole result of Debtor's own material breach of the terms of the Lease and Work Letter. Third, no additional capital was required by Claimant to complete the build-out of the premises and the implication that Claimant was not a "much higher quality user" is defamatory to the reputation of Claimant within the industry.

///
///
///
///
///
///
///
///
///

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

## III.

## CONCLUSION AND PRAYER FOR RELIEF

Union Restaurant's timely filed claim is prima facie evidence that it is owed $247,606.28, based on MMP's pre-Petition Date breach of contract and defamation. The Debtor has failed its burden to rebut that claim.

**WHEREFORE,** Union Restaurant respectfully requests that the Court enter an Order allowing its claim in the amount of $247,606.18 in its entirety.

Respectfully submitted,

Dated: _____, 2010

JEFFREY S. SHINBROT, APLC

By: _____

Jeffrey S. Shinbrot, Attorney for
Claimant UNION RESTAURANT
& LOUNG LLC

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

1

## DECLARATION OF JOHN VALENCIA

2      I, John Valencia, do hereby declare and state as follows:

3          1.      I am over the age of eighteen and I am a managing member of THE UNION

4    RESTAURANT AND LOUNGE, LLC ("Claimant" or "Union Restaurant") and LOS FELIZ,

5    LLC, a Florida Limited Liability Company ("Los Feliz").  As to the following facts, I know them

6    of my own personal knowledge, except where stated on information and belief, and if called as a

7    witness, I could and would testify as set forth herein.  I am the custodian of the books and records

8    of Union Restaurant and Los Feliz and I have knowledge of such records, which were made at or

9    about the time of the events recorded, and which were maintained in the ordinary course of Union

10   Restaurant's and Los Feliz's businesses.

11         2.      In 2007, Los Feliz entered into negotiations with MERUELO MADDUX

12   PROPERTIES ("MMP") regarding the leasing of restaurant space located in real property owned

13   by MMP at the address of 760 South Hill Street, Los Angeles, California (the "Premises").  As a

14   result of these negotiations, Los Feliz and MMP reached an understanding regarding primary

15   lease terms for the Premises. These primary terms were memorialized in a May 16, 2007 letter of

16   intent from Miguel Echemendia, MMP's Vice-President and Chief Administrative Officer to me,

17   as the Senior Partner of Los Feliz.  A true and accurate copy of the letter is annexed to this

18   Declaration as *Exhibit "A."*  On or about July 6, 2007, Los Feliz and MMP entered into a

19   Standard Industrial/Commercial Multi-Tenant Lease (the "Lease").  A true and accurate copy of

20   the Lease is annexed to this Declaration as *Exhibit "B."*

21         3.      Section 3.3 of the Lease provided Los Feliz with an option to cancel the Lease in

22   the event that MMP failed to deliver possession of the Premises:

23              Lessee shall not, however, be obligated to pay Rent or perform its
               other obligations, until Lessor delivers possession of the Premises .
24              . . If possession is not delivered within 60 days after the
               Commencement Date, Lessee may, at its option, by notice in
25              writing within 10 days after the end of such 60 day period, cancel
               this Lease, in which event the Parties shall be discharged from all
26              obligations hereunder.

27   *See Exhibit B at Section 3.3.*

28

16

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

4.      Shortly thereafter, Los Feliz and MMP executed an Addendum to the Lease that granted early possession of the Premises to Los Feliz. A true and accurate copy of the Addendum to the Lease is annexed to this Declaration as *Exhibit "C."* As set forth in Exhibit C, under Section 51 of the Addendum, Los Feliz was entitled to delivery of possession of the Premises as of the earlier of: (A) March 4, 2008; or (B) the date that Los Feliz obtained a certificate of occupancy and health department permit necessary for the operation of its restaurant on the Premises.

5.      On or about December 5, 2007, Los Feliz and MMP executed a First Amendment to Lease, transferring all rights and obligations under the Lease from Los Feliz to Union Restaurant. A true and accurate copy of the First Amendment to the Lease is annexed to this Declaration as *Exhibit "D."* At the time of the execution of the Lease, Los Feliz paid $30,000 of the $60,000 security deposit to MMP. In several discussions, the parties agreed that the second half of the security deposit would not be due until a work letter, allocating the parties' duties and obligations for the build-out of the Premises into a restaurant space, was executed. These discussions took place among me and David Valencia for Los Feliz and Miguel Echemendia and Todd Neilsen for MMP; this payment schedule for the full security deposit amount was always the mutual understanding of both parties.

6.      Subsequently, in late December 2007 or early January 2008, Union Restaurant and MMP executed a Work Letter as Exhibit B to the Lease, detailing the scope of renovation and construction to be performed by the parties during the tenant build-out of the Premises. The Work Letter also set forth the parties' respective obligations regarding payment of vendors, suppliers, and contractors for the renovation and build-out construction. A true and accurate copy of the Work Letter is annexed to this Declaration as *Exhibit "E."*

7.      In the Work Letter, MMP agreed to pay for certain renovation and build-out work, along with the fees for particular designers and contractors of MMP's own choosing. Under Section 1.B., of the Work Letter MMP agreed "to pay for and has already begun to restore the restaurant ceiling. Lessor will install insulation, correct sprinkler heads and install dry wall drop

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

ceiling to the ceiling areas in the ground floor Bar Lounge and Dining Room corner below units."
*See Exhibit E at Section 1.B* In that same section, MMP further agreed to "split the cost of
restoration of the vaults doors, gates and safe deposit boxes, as quoted by United Field
Remodeling for the total sum of $38,700." *Id.* Union Restaurant proceeded to then have the
vault restored at the quoted price, but MMP never paid its $19,350 share of the renovation cost.

8.    Additionally, under Section 2.A. of the Work Letter, Union Restaurant agreed to
retain Killefer Flammang Architects ("Design Consultant") as design consultant on the build-out
project. MMP agreed to "pay for the Design Consultant . . . for work through construction
document stage . . . ." *See Exhibit E at Section 2.A.*

9.    Despite the prior understanding that Union Restaurant would pay the second
$30,000 portion of the security deposit upon execution of the Work Letter, certain practices of
MMP known personally to me at that time did not instill sufficient confidence that MMP would
be able or willing to meet its own obligations under the Lease and Work Letter. Even before
execution of the Work Letter, MMP had delayed delivering possession of the Premises. Union
Restaurant's agents had no keys to the building and access to the restaurant space only when
MMP's agents were present.

10.    I had also been informed by third-parties that MMP was habitually failing to pay
its other vendors and suppliers. As a result, I caused to be performed a title search and discovered
numerous existing mechanic's liens already recorded against the Premises. The amount of
recorded liens against the Premises totaled nearly $300,000 dollars. A true and accurate copy of
the several recorded mechanic's liens against the Premises is annexed to this Declaration as
*Exhibit "F."* Because I did not feel adequately secure in MMP's ability to fully perform its duties
under the Work Letter, Union Restaurant reserved its right to pay the remainder of the Security
Deposit until such time as it was given sufficient assurances by MMP.

11.    As I feared, however, Union Restaurant's ability to satisfy its own obligations
under the Lease and Work Letter was severely curtailed from the outset by MMP's immediate and
ongoing material breach of those agreements.

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

12.     In my March 19, 2008 letter to Miguel Echemendia, I detailed the failures of MMP to timely complete restoration work on the Premises' ceiling, as required by Section 1.B. of the Work Letter.  In the three months following the January 2008 commencement of work, only a portion of one ceiling section had even been partially restored.  Union Restaurant was unable to begin other necessary work, such as floor demolition for the kitchen and bar build-out until the ceiling restoration was completed (which it never was).  A true and accurate copy of the March 19, 2008, letter is annexed to this Declaration as *Exhibit "G."*

13.     Furthermore, the Design Consultant had not been paid by MMP (as required under Section 2.A. of the Work Letter) since 2007.  A true and accurate copy of Design Consultant's March 17, 2008 invoice for services rendered relating to the Premises and accompanying emails is annexed to this Declaration as *Exhibit "H."*  The result of this non-payment was that Design Consultant would not release its plans to the city of Los Angeles for approval until MMP paid them all monies owed.  With the approval process halted, Union Restaurant was unable to move forward with its own performance of Work Letter tasks to complete the build-out of the premises.

14.     Despite being given notice of the existence of these conditions of breach, and despite being given ample opportunity to cure the conditions, MMP continued to fail to fulfill its obligations under the Lease and Work Letter.  In a letter dated April 7, 2008, I provided MMP with formal notice of its material breach.  A true and accurate copy of the draft of the April 7, 2008, letter is annexed to this Declaration as *Exhibit "I."*  The first condition of material breach noticed in the letter was the failure of MMP to deliver possession of the Premises. Section 3.3 of the Lease required that possession of the Premises be delivered by the Commencement Date, which pursuant to section 51 of the Addendum to the Lease was March 4, 2008.  Union Restaurant was not delivered possession by that date, and still did not have legal possession as of the date of the April 7, 2008 notice letter.

15.     The second condition of material breach related to the continued non-payment of Design Consultant by MMP.  Section 2.A. of the Work Letter required MMP to pay the Design Consultant for work performed through the construction document stage, but Design Consultant

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

had not been paid for any work related to the Premises since 2007. As a result of this ongoing material breach, Design Consultant refused to release copies of its plans to the city of Los Angeles for the approval process. Without approval from the city for Design Consultant's plans, substantial necessary work by Union Restaurant to complete the Premises build-out could not be commenced, let alone completed.

16.     MMP's material breaches of the Lease and Work Letter resulted in enormous delays in Union Restaurant's commencing or completing any of the build-out of the Premises and related functions necessary to open the restaurant. As a consequence, I was compelled to begin canceling events scheduled to take place at the Premises toward the end of the 2008, with damages of lost revenue in excess of $50,000.

17.     Because MMP failed to cure the conditions of its breach of the Lease and Work Letter, on May 5, 2008, I delivered a letter to Todd E. Neilson, General Counsel and Corporate Secretary for MMP, canceling the Lease and seeking prompt refund of the security deposit and all monies expended toward finalizing the restaurant project. A true and accurate copy of the May 5, 2008, letter is annexed to this Declaration as *Exhibit "J."* In the letter, I offered MMP the opportunity to settle any and all existing and future claims for breach of the Lease in exchange for the security deposit refund and repayment of Union Restaurant's "out of pocket" expenses to that date.

18.     MMP failed to respond to my initial offer of settlement. I then followed up with a second letter to Mr. Neilson, on May 19, 2008, again offering him the opportunity to dispose of Union Restaurant's claim by way of compromise. A true and accurate copy of the May 19, 2008, letter is annexed to this Declaration as *Exhibit "K."* In this follow-up letter, I reduced the settlement demand to only a refund of the security deposit and cost of the vault/safe restoration. MMP failed to respond to this second offer of compromise as well.

19.     On August 6, 2008, during MMP's second quarter earnings conference call, my understanding and belief is that MMP's CFO, Andrew Murray, told call participants that Union Restaurant had been replaced as tenant of the Premises because "we determined that their

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM

financial credibility was suspect and we didn't necessarily want – they weren't able to fulfill their TI requirements.  And so, we could have given them some more time to come up with their capital to build out the space, but we decided we didn't want to take that risk.  And we went to a much higher quality user." MMP Q2 2008 Earnings Call Transcript at pp. 9 to 10.  A true and accurate copy of the conference call transcript is annexed to this Declaration as *Exhibit "L."*

20.     On March 27, 2009, MMP filed its Chapter 11 bankruptcy petition. On September 4, 2009, Union Restaurant filed its Proof of Claim for $247,606.18, seeking compensation for damages resulting from MMP's breach of the Lease and business torts, including defamation.  A true and accurate copy of all canceled checks for the claimed expenses currently in Claimant's possession is annexed to this Declaration as *Exhibit "M."*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  *12-1-10*

John Valencia

OPPOSITION TO MMP OBJECTION TO
PROOF OF CLAIM