Victor A. Sahn (CA Bar No. 97299)
  vsahn@sulmeyerlaw.com
Dean G. Rallis Jr. (CA Bar No. 94266)
  drallis@sulmeyerlaw.com
Asa S. Hami (CA Bar No. 210728)
  ahami@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Hope Street, Thirty-Fifth Floor
Los Angeles, California 90071-1406
Telephone:   213.626.2311
Facsimile:    213.629.4520

Bankruptcy Counsel for the Official
Committee of Unsecured Creditors

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-13356 VK |
| MERUELO MADDUX PROPERTIES, INC., et al.,[1] | Chapter 11 |
| Debtors. | **OPPOSITION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO CONFIRMATION OF RESPECTIVE CHAPTER 11 PLANS OF: (1) MERUELO MADDUX PROPERTIES, INC. ET AL.; (2) CHARLESTOWN CAPITAL ADVISORS, LLC, AND HARTLAND ASSET MANAGEMENT CORPORATION; AND (3) LEGENDARY INVESTORS GROUP NO. 1, LLC, AND EAST WEST BANK** |
| | Confirmation Hearing |
| | Date:    January 26, 2011<br>Time:    9:30 a.m.<br>Place:   Courtroom 301<br>             21041 Burbank Blvd.<br>             Woodland Hills, California |

---

[1] This case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK; 1:09-bk-13359-VK; 1:09-bk-13360 -VK; 1:09-bk-13361-VK; 1:09-bk-13362-VK; 1:09-bk-13363-VK; 1:09-bk-13364-VK; 1:09-bk-13365-VK; 1:09-bk-13366-VK; 1:09-bk-13367-VK; 1:09-bk-13368-VK; 1:09-bk-13369-VK; 1:09-bk- 3370-VK;  1:09- bk-13371-VK; 1:09-bk-13372-VK; 1:09-bk-13373-VK; 1:09-bk-13374-VK; 1:09-bk-13375-VK; 1:09-bk-13376-VK; 1:09-bk-13377-VK; 1:09-bk-1378-VK; 1:09-bk-13379-VK; 1:09-bk-13380-VK; 1:09-bk-13381-VK; 1:09-bk-13382- VK; 1:09-bk-13383-

AHAMI\ 698492.3

The Official Committee of Unsecured Creditors in the above-captioned jointly-administered cases (the "Committee") hereby files its opposition to confirmation of the following chapter 11 plans (each a "Plan," and, collectively, the "Plans"): (1) "Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al., Dated September 20, 2010," [Dkt. No. 1953] (the "Debtor Plan"); (2) "Legendary Investors Group No. 1, LLC's and East West Bank's Modified Second Amended Joint Chapter 11 Plan of Reorganization Dated September 3, 2010" [Dkt. No. 1809] (the "Legendary Plan"); and (3) "Charlestown Capital Advisors, LLC's and Hartland Management Corporation's Fourth Amended Chapter 11 Plan of Reorganization Dated October 14, 2010," [Dkt. No. 1951], (the "Charlestown Plan").

## I.

## **INTRODUCTION**

Each of the Plans proposes to pay allowed general unsecured claims in full, with interest, on or shortly after the Plans' respective Effective Date.[2] The ability of each proponent of a Plan (each a "Proponent," and, collectively, the "Proponents") to make those payments (as well as the other required Plan payments) hinges on the Proponent's access to the cash required to fund its Plan. As a result, sufficient evidence of a

---

VK; 1:09-bk-13384-VK; 1:09-bk-13385-VK; 1:09-bk-13386-VK; 1:09-bk-13387-VK; 1:09-bk-13388-VK; 1:09-bk-13389-VK; 1:09-bk-13390-VK; 1:09-bk-13391-VK; 1:09-bk-13392-VK; 1:09-bk-13393-VK; 1:09-bk-I3394-VK; 1:09-bk-13395-VK; 1:09-bk-13396-VK; 1:09-bk-13397-VK; 1:09-bk-13398-VK; 1:09-bk-13399-VK; 1:09-bk-I3400-VK; 1:09-bk-13401-VK; 1:09-bk-13402-VK; 1:09-bk-13403 -VK. 1:09-bk-13404-VK; 1:09-bk-13405- VK; 1:09-bk-13405-VK; 1:09-bk-13406-VK; 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

[2] See Debtor Plan at § III.B.2.f., p. 51 ("The Holders of Allowed General Unsecured Claims shall receive deferred cash payments equal to 100% of the Allowed amount of the Claim plus interest at the rate of 0.64% per annum from the Petition Date, payable 30 days after [the] Effective Date . . . ."); Legendary Plan at § III.B.2(e), pp. 20-21 ("Except the extent [the claimant] accepts . . . less favorable treatment, the Holder of an Allowed General Unsecured Claim will receive . . . a cash payment equal to 100% of the amount of its Allowed Claim on the Effective Date, plus simple interest at 5% per annum for the period from the Petition date through the date each Allowed Claim is paid; [or] . . . a cash payment equal to 100% of the amount of its Allowed Claim on the Effective date, plus (x) simple interest . . . at the Federal Judgment Rate . . . ."); Charlestown Plan at § III.B.2.f., p. 49 ("The Holders of Allowed General Unsecured Claims shall, on the Effective Date, receive a cash payment equal to the full amount of their Allowed Claim plus interest [at a certain rate] from the Petition date to the Effective Date.")

AHAMI\ 698492.3

- 2 -

Proponent's capability to fund its Plan -- in terms of both access to sufficient cash and its source's willingness to fund -- is critical.

The evidence submitted to this Court to date by each Proponent on this significant confirmation issue, however, falls short. Until a Proponent presents adequate evidence of the ability to fund its Plan in the manner it proposes, the Committee objects to confirmation of that Plan.[3]

In addition to the foregoing, as discussed below, the conduct of the Debtors -- including certain of the individuals proposed to serve as management for the reorganized entity under the Debtor Plan -- during these bankruptcy cases and the ongoing confirmation proceedings exhibit a lack of good faith. The Committee is mindful that the parties selected to serve as post-confirmation management of the reorganized debtor perhaps is an issue more critical for other constituencies (such as the Official Committee of Equity Holders (the "Equity Committee")). The integrity of these proceedings and the concern of the Committee that the Debtors' Plan could easily be defeated because of its failure to meet the good faith requirement and related requirements for confirmation of its Plan, however, mandate that such matters be raised by the Committee.

## II.

## THE PROPONENTS HAVE NOT SUBMITTED THE "AMPLE EVIDENCE" REQUIRED TO ESTABLISH THE ABILITY TO FUND THEIR RESPECTIVE PLAN

**A.    The Capacity to Fund a Plan is a Perquisite to Confirmation**

Section 1129(a) sets forth the requirements for confirmation of a chapter 11 plan. See 11 U.S.C. § 1129(a). Those requirements include the following:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan,

---

[3] The Committee reserves the right to withdraw, modify or supplement this opposition, including, but not limited to, by way of joinder in any opposition filed by any other party. Given the ongoing status of discovery, the Committee also reserves the right to supplement this opposition based on any additional facts or information obtained through further discovery.

AHAMI\ 698492.3                                - 3 -

unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). This subsection "is the heart of every Chapter 11 reorganization case [and] the most important element of § 1129(a)." <u>In re Linda Vista Cinemas, L.L.C.</u>, 2010 Bankr. LEXIS 4259, *21 (Bankr. D. Ariz. Nov. 24, 2010). It requires a proponent to establish that it will be able to make the payments proposed under its plan. <u>See</u> <u>id.</u> at *8 ("Critical to the Debtor's feasibility is its ability to comply with its Plan, and make the payments called for therein.").

"[A]mple evidence" is required to satisfy this feasibility requirement. <u>In re Acequia, Inc.</u>, 787 F.2d 1352, 1364 (9th Cir. 1986). <u>See</u> also, <u>In re Maluahia Eight, LLC</u>, 2010 WL 4259832 (Bankr. N.D. Tex. 2010) ("At confirmation, the Debtors must show by a preponderance of the evidence that they can fund the plan, not obtain an opportunity to do so.").

As detailed below, the Committee believes that no Proponent has satisfied this requirement for confirmation yet.

**B.    The Mounting Administrative Expenses Raise Possible Feasibility Issues as to All Plans**

During the month of November, 2010, between the Debtors' professionals, the Committee professionals and the Equity Committee professionals, over $1.2 Million in fees and costs were incurred. As litigation over the three plans continues, these monthly fees promise to increase in the months immediately ahead, and not decrease. This fact, if true, presents a significant question to the Committee regarding whether any Proponent who is still standing when its particular Plan is confirmed will have the financial wherewithal -- or the willingness -- to pay unsecured creditors in full, with interest, or otherwise be in a position to meet its particular Effective Date obligations.

Accordingly, while unsecured creditors are similarly treated in all three Plans, the concern raised above is real and very substantial. The Committee believes that the time has come to put each of the Proponents to the test regarding feasibility, and urges the

AHAMI\ 698492.3                                    - 4 -

Court to work toward narrowing both the confirmation issues to be litigated and the issues on discovery.

### C. Insufficient Evidence Has Been Presented to Establish That the Debtor Plan Can, and Will, be Funded at Confirmation

Feasibility of the Debtor Plan is premised upon (among other things) a $15.0 million advance from Watermarke Properties, Inc., ("Watermarke").  The Debtor Plan provides:

> [A]ll Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan will be obtained from [among other sources] a $15 million loan to be made to the Debtors on the Effective Date . . . .
>
> * * * *
>
> The Debtors have obtained a commitment from Watermarke Properties, Inc. (or its designated affiliate) for a $15 million secured loan . . . for the Debtors['] use in funding operations and payments under the Plan.

Debtor Plan at § IV.A., p. 137; § IV.E., p. 139.  Whereas the Debtor Plan says that "the Debtors have obtained a commitment from Watermarke" for such funding, no evidence of this commitment or Watermarke's funding capabilities has been submitted to the Court.

Meruelo Maddux Properties, Inc., et al., (the "Debtors"), has submitted three declarations in support of confirmation of the Debtor Plan.  Those declarations merely assume the availability of the $15.0 loan.  At most, the Declaration of M. Freddie Reiss -- the Debtors' expert -- lists a "Commitment letter for Watermarke $15 million convertible note" as one of the documents he reviewed and considered in preparing his report.  This is not enough.

The Debtors did not (but should) submit to the Court before confirmation, for example: (1) a copy of the "commitment letter;" (2) a declaration from Watermarke confirming its alleged commitment to advance the $15.0 million upon confirmation; (3) a declaration from Watermarke that it has the $15.0 million; (4) a declaration as to whether or not any contingencies (other than confirmation) exist to funding and, if so, the number

AHAMI\ 698492.3                                                                - 5 -

and nature of such contingencies and whether they have been satisfied;[4] and/or (5) other competent evidence to support the conclusion that the money is, or will be, available.[5] Until then, the Debtor Plan cannot be confirmed.

**D.   Insufficient Evidence Has Been Presented to Establish That the Legendary Plan Can, and Will, be Funded at Confirmation**

Feasibility of the Legendary Plan is premised upon (among other things) a $5.0 million cash infusion from its proponents. The Legendary Plan provides:

> The Plan's foundation is a $70 million recapitalization via a $5 million cash infusion by Legendary and conversion of $65 million of the Proponents' debt to equity.

* * * *

> [A]ll Cash necessary for the Reorganized Debtors to make payments pursuant to the Plan will be obtained from [among other sources] the Proponents' infusions of $5 million in cash .

Legendary Plan at § I., p. 2; § IV.A., p. 22. In addition, the Legendary Plan commits Legendary Investors Group No. 1, LLC, ("Legendary Investors"), to fund up to an additional $10 million as a backstop to a "Rights Offering." See Legendary Plan at § I., p. 3 ("Legendary will backstop the Rights Offering for up to $10 million.").

Legendary Investors and East West Bank (together, "Legendary") has submitted three declarations in support of confirmation of their Plan: (1) the Declaration of Surjit P. Soni (the "Soni Declaration"); (2) the Declaration of Dilip Bhavani (the "Bhavani Declaration"); and (3) the Declaration of Richard B. Jennings. None provides the evidence necessary to confirm Legendary Investors's ability or willingness to infuse the $5.0 to $15.0 million required under the Legendary Plan.

The following is the only evidence submitted on this issue:

---

[4] See, e.g., In re Made in Detroit, Inc., 299 B.R. 170, 180 (Bankr. E.D. Mich. 2003) (denying plan confirmation for lack of feasibility under section 1129(a)(11) because "the Debtor failed to show at confirmation that it had exit financing to fund its plan [in that t]he proposed financing had so many contingencies").

[5] The Debtors have asserted that the Watermarke commitment letter is confidential. As a result, without conceding its claimed confidentiality, the Committee has not discussed the specifics of that letter in this opposition. The Committee is prepared to do so if and when the Debtors "remove" any such confidentiality designations.

AHAMI\ 698492.3                                  - 6 -

> [T]he first aspect [of feasibility] considers whether the Reorganized Debtors will have enough Cash on hand on the Effective Date of the Plan to pay all the Claims and expenses which are entitled to be paid on such date. This aspect of feasibility is satisfied. As set forth in Exhibit 3 to the Disclosure Statement . . . on an aggregate basis, I anticipate the following amounts of Cash on hand and uses for such Cash on the Effective Date:
>
> | Sources of Cash | Estim. Amount of Cash |
> |---|---|
> | Effective Date beginning cash balance (as reported by Debtors and including cash held by subsidiaries). | $23,052,000 |
> | Proceeds from Rights Offering under Plan | $10,000,000 |
> | Cash infusion (equity contribution) from Legendary under Plan | $5,000,000 |
> | . . . . | . . . . |
>
> * * * *
>
> With regard to the $10 million in Rights Offering proceeds listed above, as set forth in the Plan, in the event that the Rights Offering is not fully subscribed, Legendary will backstop the Rights Offering for up to $10 million . . . . With respect to this $10 million backstop, as well as the $5 million cash infusion listed above, Legendary has sufficient cash and other liquid assets to provide such $15 million in total potential funding; a copy of correspondence regarding the bank account assets of Legendary members who will be providing the capital infusion is attached hereto as Exhibit 5.

Soni Declaration at ¶¶ 15, 17. The correspondence attached as Exhibit 5 purports to be a letter from a Morgan Stanley Smith Barney representative addressed to Dilip and Kumar Bhavani (not Mr. Soni), dated August 27, 2010, (the "<u>Morgan Stanley Letter</u>"), that states the following and nothing else:

> Please consider this confirmation that the Morgan Stanley Smith Barney account assets of Kumar & Dilip Bhavani are currently valued at over $15,000,000.

Exhibit 5 to Soni Declaration. This alone is not sufficient to satisfy the feasibility test.

AHAMI\ 698492.3                                            - 7 -

It is true that Mr. Soni affirmatively declares that "Legendary will backstop the Rights Offering for up to $10 million." But that is it: (1) Mr. Soni does not affirmatively declare that Legendary will make the $5 million cash infusion; (2) Mr. Soni is neither the addressee, nor the subject, of the Morgan Stanley Letter; (3) Mr. Soni is not one of the "Legendary members who will be providing the capital infusion," rather Dilip and Kumar Bhavani are; (4) Mr. Dilip Bhavani does not testify in his declaration that he has the necessary funds available or, even if so, that he will make the $5 million cash infusion or the $10 million backstop; (5) strangely, the Morgan Stanley Letter is not authenticated through the Bhavani Declaration and, even if it was, it already was four months old by the time submitted to this Court; (6) no declaration at all from Mr. Kumar Bhavani was submitted; and (7) no declaration from any Morgan Stanely representative was submitted.

Legendary should be required to provide this type of evidence prior to confirmation.

## E. Insufficient Evidence Has Been Presented to Establish That the Charlestown Plan Can, and Will, be Funded at Confirmation

Feasibility of the Charlestown Plan is premised upon (among other things) a $23.0 million cash infusion and $15 million secured loan. The Charlestown Plan provides:

> On the Effective Date, MMPI acquisition will contribute $23.0 million in cash . . . .
>
> * * * *
>
> MMPI Acquisition has obtained a commitment for a secured loan in the amount of $15 million . . . for MMPI Acquisition to use in funding operations and payments under the Charlestown Plan.

Charlestown Plan at § IV.E.a., pp. 126-127; § IV.E.b., p. 127. The evidence the Proponents of the Charlestown Plan ("Charlestown") submitted to date to support the availability of this funding is lacking for confirmation purposes.

Charlestown has submitted a total of five declarations in support of confirmation of its Plan -- three with its confirmation brief (collectively, the "Initial Declarations") and two

more with its opposition to the Debtors' motion to deny confirmation of the Charlestown Plan (together, the "<u>Supplemental Declarations</u>"). The Supplemental Declarations specifically served to combat the Debtors' claims that Charlestown's earlier feasibility evidence was deficient. Although the Committee believes the Supplemental Declarations are sufficient to overcome the Debtors' motion to deny confirmation of the Charlestown Plan, more is needed prior to confirmation.

The primary evidence submitted by Charlestown on this issue is a declaration from Raj Maheshwari attaching a "Letter of Intent" from Global Asset Capital ("<u>GAC</u>") regarding the total $38 million infusion and a declaration from Riaz Valani ("<u>Valani Declaration</u>"), a principal of GAC, attaching letters purporting to "confirm[ ] the existence of liquid assets" to make the infusion. Valani Declaration at ¶ 2.

However: (1) the Letter of Intent ("<u>LOI</u>") reveals that many contingencies to funding exist; (2) none of the Charlestown declarations states whether these LOI contingencies have been satisfied; (3) the LOI expressly confirms that it does <u>not</u> obligate GAC to provide the funds and that "neither the LOI nor the acceptance hereof is intended to, and it shall not, create, constitute or otherwise give rise to a binding legal obligation on the part of either [Charlestown] or [GAC];" and (4) the letters attached to the Valani Declaration contain substantial redactions, such that it remains unknown as to: (i) who owns, controls or possesses the "assets" referred to in the letters, (ii) who authored the letters, (iii) the position or qualifications of the author(s), or (iv) whether or not the letters even were signed by anyone; and (5) no declaration from any of the authors of those letters were submitted.

In addition to the foregoing, the Committee notes that, to date, Charlestown has not presented sufficient evidence regarding feasibility during the ongoing discovery process. When this Court considered the Debtors' motion to deny confirmation of the Charlestown Plan based on claimed confirmation deficiencies, the Court observed that the confirmation process is "fluid." For example, further negotiations could take place after balloting that might cure the asserted shortcomings of the Charlestown Plan.

AHAMI\ 698492.3                                                                                                                                                                                                                       - 9 -

The Committee is appreciative of that perspective.  Nevertheless, at this point, still more is required of Charlestown on feasibility (and other issues).  While the parties are at the beginning of the discovery process, the deposition of Raj Maheshwari of Charlestown (who is described in his declaration in support of confirmation of the Charlestown Plan as the "principal" of Charlestown) was short of the mark.  Charlestown must present much more in the way of, for example, available financing, ability to show the existence of a impaired consenting class of creditors and post-confirmation management.   Committee counsel has communicated these sentiments to Charlestown's counsel and counsel for the Equity Committee.

### III.

### THE DEBTORS' CONDUCT LACKS GOOD FAITH

In addition to the feasibility issues discussed above, the Debtors' conduct during this discovery process to date has been particularly egregious. Without getting into specifics, from the Committee's perspective, there has been stonewalling and other inappropriate tactics engaged in by the Debtors.  Two examples are of note.

First, although Richard Meruelo and Andrew Murray announced themselves as unavailable for deposition until the end of the first or second week in January,[6] both individuals were present for the entirety of the two-day deposition of Mr. Maheshwari (Charlestown's Principal) in mid-December.  How could Messrs. Meruelo and Murray be available for two full days in mid-December to attend Mr. Maheshwari's deposition, yet have no time until the first or second week of January, 2011 for their own deposition? Such conduct and sharp tactics defy explanation.

Second, the deposition of Fred Skaggs was scheduled for December 30, 2010. One day before his deposition, the Debtors announced that he was not available and that they were unable to contact him.   The Court will recall that it was Mr. Skaggs who blew

---

[6] John Maddux also announced that he was not available for deposition until the first or second week in January 2011.

AHAMI\ 698492.3                                  - 10 -

the whistle on various irregular transactions of the Debtors authorized by Mr. Meruelo, some seemingly for his exclusive benefit, which lead to the Ernst & Young report (the "E&Y Report") that has recently been produced.  The questions of Mr. Skaggs, naturally, were to relate directly to this matter and other matters relative to the Debtors' operations that bear upon their business and Plan.[7]

In addition to causing damage to the integrity of this process, the result of the Debtors' antics is that discovery is not proceeding in a timely fashion.  This will lead to the commencement date of the confirmation hearing being delayed because to allow otherwise would reward the party who had engaged in the most effective tactics of refusing to cooperate in discovery.  This is of great concern because even if the Court were to limit or eliminate consideration of one of the Plans for any number of potential reasons, one or two Plans will remain for consideration and the remaining parties are still going to want to conduct discovery with respect to those remaining Plan(s).

As a result, the Committee renews its request for the appointment of a discovery expert who can consider and rule on all discovery-related disputes and do so in a manner that will not unduly burden this Court.  Otherwise, the Committee is confident that this type of conduct will continue unabated.

## IV.

## **CONCLUSION**

Based on the foregoing, none of the Proponents has submitted enough evidence to this Court to satisfy the requirement that the Proponent can and will fund its Plan.  As a result, this Court should not confirm any Plan until such additional evidence is offered.  In

---

[7] Without disclosing the specific content of the E&Y Report, in the Committee's view, it discusses conduct and transactions that should be disclosed to the United States Trustee.  The Committee inquires as to whether the Debtors have provided a copy of the report to the United States Trustee.

addition, as discussed above, the Committee believes the Debtors' conduct to date in connection with discovery is lacking in good faith.

Dated:  December 30, 2010

**Sulmeyer**Kupetz
A Professional Corporation

By: */s/ Victor A. Sahn*
    Victor A. Sahn
    Bankruptcy Counsel for the Official
    Committee of Unsecured Creditors

AHAMI\ 698492.3

- 12 -

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 South Hope Street, Thirty-Fifth Floor, Los Angeles, California  90071-1406

A true and correct copy of the foregoing document described as  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On  December 30, 2010  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the e-mail address indicated below:

- Michael C Abel     mca@dgdk.com
- Robert Abiri     rabiri@abiriszeto.com
- Allison R Axenrod     allison@claimsrecoveryllc.com
- Christopher J Bagnaschi     cb@cjblaw.com
- John J Bingham     jbingham@dgdk.com
- William C Bollard     eal@jbblaw.com, kmg@jbblaw.com;dritchie@jbblaw.com;william@jbblaw.com
- Peter Bonfante     peterbonfante@bsalawfirm.com
- Julia W Brand     JBrand@bhfs.com
- Jennifer L Braun     jennifer.l.braun@usdoj.gov
- Martin J Brill     mjb@lnbrb.com
- George T Busu     george.busu@limruger.com
- Andrew W Caine     acaine@pszyjw.com
- Howard Camhi     hcamhi@ecjlaw.com
- Gary O Caris     gcaris@mckennalong.com, pcoates@mckennalong.com
- James E Carlberg     jcarlberg@boselaw.com
- Sara Chenetz     chenetz@blankrome.com
- Jacquelyn H Choi     jchoi@swjlaw.com
- Carol Chow     CChow@Stutman.com
- Ronald R Cohn     rcohn@horganrosen.com
- Enid M Colson     emc@dgdk.com, ecolson@dgdk.com
- Michaeline H Correa     mcorrea@jonesday.com
- Emily R Culler     eculler@stutman.com
- Ana Damonte     ana.damonte@pillsburylaw.com
- Brian L Davidoff     bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com

- Susan S Davis    sdavis@coxcastle.com
- Aaron De Leest    aed@dgdk.com
- Daniel Denny    ddenny@gibsondunn.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Marina Fineman    mfineman@stutman.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
- Donald L Gaffney    dgaffney@swlaw.com
- Thomas M Geher    tmg@jmbm.com
- Bernard R Given    bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Barry S Glaser    bglaser@swjlaw.com
- Gabriel I Glazer    gglazer@stutman.com
- Matthew A Gold    courts@argopartners.net
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- John A Graham    jag@jmbm.com
- Ofer M Grossman    omglaw@gmail.com
- Jodie M Grotins    jgrotins@mcguirewoods.com
- Peter J Gurfein    pgurfein@lgbfirm.com
- Cara J Hagan    carahagan@haganlaw.org
- Asa S Hami    ahami@sulmeyerlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Robert A Hessling    rhessling@dgdk.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
- William H. Kiekhofer    wkiekhofer@mcguirewoods.com
- Andrew F Kim    kim-a@blankrome.com
- Michael S Kogan    mkogan@ecjlaw.com
- Tamar Kouyoumjian    tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- 
- Lewis R Landau    lew@landaunet.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

- Leib M Lerner    leib.lerner@alston.com
- Matthew A Lesnick    matt@lesnicklaw.com
- David E Leta    dleta@swlaw.com, wsmart@swlaw.com
- Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
- Steven K Linkon    slinkon@rcolegal.com
- Robert M Llewellyn    michael.llewellyn@boe.ca.gov
- Richard Malatt    rmalatt@gmail.com
- Elmer D Martin    elmermartin@gmail.com
- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Avi Muhtar    amuhtar@sulmeyerlaw.com
- Iain A W Nasatir    inasatir@pszjlaw.com, jwashington@pszjlaw.com
- Jeffrey P Nolan    jnolan@pszjlaw.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Christopher E Prince    cprince@lesnickprince.com
- Michael H Raichelson    mhr@cabkattorney.com
- Dean G Rallis Jr    drallis@sulmeyerlaw.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Daniel H Reiss    dhr@lnbrb.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com
- James S Riley    tgarza@sierrafunds.com
- Martha E Romero    Romero@mromerolawfirm.com
- Victor A Sahn    vsahn@sulmeyerlaw.com
- Steven J Schwartz    sschwartz@dgdk.com
- Kenneth J Shaffer    jshaffer@stutman.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com
- David B Shemano    dshemano@pwkllp.com
- 
- Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**

- Stephen Shiu    sshiu@swlaw.com

- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com

- Surjit P Soni    surjit@sonilaw.com, teresa@sonilaw.com

- Bennett L Spiegel    blspiegel@jonesday.com

- Tracie L Spies    tracie@haganlaw.org

- James Stang    jstang@pszjlaw.com

- Catherine Steege    csteege@jenner.com

- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

- John N Tedford    jtedford@dgdk.com

- Damon Thayer    dthayer@jenner.com

- James A Timko    jtimko@allenmatkins.com

- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com

- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov

- Rouben Varozian    rvarozian@bzlegal.com

- Jason L Weisberg    jason@gdclawyers.com

- William E Winfield    wwinfield@nchc.com

- Jasmin Yang    jyang@swlaw.com

**II.    SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On _ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P.5 and/or controlling LBR, on January 3, 2011, I will personally serve the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method ) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY**
The Honorable Victoria S. Kaufman
U.S. Bankruptcy Court
21041 Burbank Boulevard
Suite 305
Woodland Hills, CA 91367

☐ Service Information continued on attached page.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 30, 2010 | Sharyn A. Waldrop | /s/ *Sharyn A. Waldrop* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1**