1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
2  ENID M. COLSON (State Bar No. 189912)
   *EColson@DGDK.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California  90067-2904
   Telephone:  (310) 277-0077
5  Facsimile:  (310) 277-5735

6  GARY E. KLAUSNER (State Bar No. 69077)
   *GKlausner@Stutman.com*
7  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
8  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA  90067-6013
9  Telephone:  (310) 228-5600
   Facsimile:  (310) 228-5788
10
   Attorneys for Meruelo Maddux Properties, Inc., and
11 affiliated Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

12

## CENTRAL DISTRICT OF CALIFORNIA

13

## SAN FERNANDO VALLEY DIVISION

14

| | |
|---|---|
| 15  In re | ) Case No. 1:09-bk-13356-VK |
| | ) |
| 16  MERUELO MADDUX PROPERTIES, | ) Chapter 11 (Jointly Administered) |
|     INC., et al.,[1] | ) |
| | ) **NOTICE OF MOTION AND MOTION FOR** |
| 17         Debtors and Debtors-in- | ) **(1) APPROVAL OF SETTLEMENT WITH** |
|            Possession. | ) **LEGENDARY INVESTORS GROUP NO. 1,** |
| | ) **LLC, (2) AUTHORITY TO ASSUME AND** |
| 18 | ) **ASSIGN EXECUTORY CONTRACTS AND** |
| | ) **UNEXPIRED LEASES, AND** |
| 19  ☑   Affects all Debtors | ) **(3) AUTHORITY TO AMEND DEBTORS'** |
| | ) **PROPOSED CHAPTER 11 PLAN; AND** |
| 20  ☐   Affects the following Debtors: | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES AND DECLARATION OF** |
| 21 | ) **RICHARD MERUELO IN SUPPORT** |
| | ) **THEREOF** |
| 22 | ) |
| | ) |
| 23 | ) Date:        [To be set] |
| | ) Time:       [To be set] |
| 24 | ) Place:       Courtroom 301 |
| | )                 21041 Burbank Boulevard |
| 25 | )                 Woodland Hills, California |

26

27   [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.
28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................ - 7 -

II. STATEMENT OF FACTS .................................................................. - 9 -

    A.   THE DEBTORS' OVERALL BUSINESS MODEL AND APPROACH ................................................................................ - 9 -

    B.   THE DEBTORS' COLLECTIVE ORGANIZATION AND OPERATIONS .......................................................................... - 10 -

    C.   THE SETTLING DEBTORS' PROPERTIES ............................. - 11 -

        1.   THE REAL PROPERTIES TO BE CONVEYED TO LEGENDARY BY THE CONVEYING DEBTORS UNDER THE PROPOSED SETTLEMENT ..................................... - 11 -

        2.   THE DEBTORS' REAL PROPERTIES WITH RESPECT TO WHICH LEGENDARY'S LIENS WILL BE RELEASED UNDER THE SETTLEMENT ................................. - 14 -

    D.   LEGENDARY'S INTERESTS IN THE SETTLING DEBTORS' PROPERTIES ................................................................................ - 16 -

    E.   CLAIMS ASSERTED BY LEGENDARY AGAINST THE SETTLING DEBTORS ................................................................. - 17 -

    F.   MOTIONS FOR RELIEF FROM STAY FILED BY LEGENDARY ............. - 18 -

    G.   ADEQUATE PROTECTION AFFORDED TO LEGENDARY IN CONNECTION WITH THE DEBTORS' USE OF LEGENDARY'S CASH COLLATERAL ........................................................................ - 19 -

    H.   TREATMENT OF LEGENDARY'S SECURED CLAIMS UNDER THE DEBTORS' PLAN, AND THE SETTLING DEBTORS' PROJECTIONS .......................................................................... - 21 -

        1.   TREATMENT OF LEGENDARY'S SECURED CLAIMS AND PROJECTIONS IN THE CONVEYING DEBTORS' CASES ...................................................................... - 21 -

        2.   TREATMENT OF LEGENDARY'S SECURED CLAIMS AND PROJECTIONS IN THE DEBTORS' CASES WHERE LEGENDARY WILL RELEASE ITS LIEN UNDER THE PROPOSED SETTLEMENT ......................................... - 24 -

    I.   LEGENDARY'S PROPOSED CHAPTER 11 OF REORGANIZATION ......................................................................... - 25 -

    J.   THE SETTLING DEBTORS' PROPOSED SETTLEMENT WITH LEGENDARY ................................................................................ - 25 -

-i-

# TABLE OF CONTENTS (cont.)

**Page**

K.   PREPETITION REAL PROPERTY TAXES AGAINST THE
TRANSFERRED PROPERTIES ....................................................... - 27 -

III.   ARGUMENT............................................................................................ - 28 -

A.   THE COURT IS AUTHORIZED TO APPROVE THE
SETTLEMENT AGREEMENT ....................................................... - 28 -

B.   THE PROPOSED SETTLEMENT IS REASONABLE AND IN THE
BEST INTERESTS OF THE ESTATES ........................................... - 29 -

C.   THE SETTLING DEBTORS SHOULD BE AUTHORIZED TO
ASSUME AND ASSIGN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN ACCORDANCE WITH THE
SETTLEMENT AGREEMENT ....................................................... - 33 -

D.   THE SETTLEMENT WILL RESULT IN ONLY NON-MATERIAL
MODIFICATIONS OF THE DEBTORS' PLAN ............................... - 35 -

1.   THE PROPOSED MODIFICATIONS OF THE DEBTORS'
PLAN COMPLY WITH ALL OF THE MANDATORY
PLAN REQUIREMENTS ....................................................... - 35 -

2.   THE PROPOSED MODIFICATIONS ARE NOT
MATERIAL, AND CREDITORS AND INTEREST
HOLDERS VOTING TO ACCEPT THE PLAN SHOULD
BE DEEMED TO ACCEPT THE MODIFIED PLAN ........................ - 38 -

E.   WAIVER OF THE 14-DAY STAY ................................................. - 40 -

IV.   CONCLUSION......................................................................................... - 41 -

364337.01 [XP]      25195

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Durkin v. Benedor Corp. (*In re G.I. Industries*),
204 F.3d 1276 (9th Cir. 2000) ........................................................ 33

EBG Midtown South Corp. v. McLaren/Hart Environmental Engineering Corp. (*In
re Sanshoe Worldwide Corp.*),
139 B.R. 585 (S.D.N.Y. 1992) *aff'd*,
993 F.2d 300 (2d Cir. 1993) ........................................................ 34

In re A & C Properties,
784 F.2d 1377 (9th Cir. 1986), *cert. denied*,
479 U.S. 854, 107 S. Ct. 189 (1986) ................................................ 28

In re American Solar King Corp.,
90 B.R. 808 (Bankr. W.D. Tex. 1988) ............................................ 38, 39

In re Bygaph, Inc.,
56 B.R. 596 (Bankr. S.D.N.Y. 1986) ............................................... 34

In re Carla Leather, Inc.,
44 B.R. 457 (Bankr. S.D.N.Y. 1984) ............................................... 29

In re W. T. Grant & Co.,
699 F.2d 599 (2d Cir. 1983) *cert. denied*,
464 U.S. 822, 104 S. Ct. 89 (1983), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985) ........... 29

Mt. Vernon Plaza Community Urban Redevelopment Corp.,
79 B.R. 305 (Bankr. S.D. Ohio 1987) ............................................. 39

Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v.
Anderson,
390 U.S. 414 (1968) ................................................................ 28

United States v. Alaska National Bank (*In re Walsh Construction, Inc.*),
669 F.2d 1325 (9th Cir. 1982) ..................................................... 29

## Statutes

11 U.S.C. § 1122 ................................................................. 35, 38

11 U.S.C. § 1123 ................................................................. 35, 38

11 U.S.C. § 1123(a)(1) ............................................................... 35

11 U.S.C. § 1123(a)(2) ............................................................... 35

11 U.S.C. § 1123(a)(3) ............................................................. 35, 36

11 U.S.C. § 1123(a)(4) ............................................................. 35, 36

364337.01 [XP]    25195

1

## TABLE OF AUTHORITIES (cont.)

2

                                                                              Page(s)

3   11 U.S.C. § 1123(a)(5) ................................................................... 36, 37

4   11 U.S.C. § 1123(a)(6) ........................................................................ 37

5   11 U.S.C. § 1123(a)(7) ........................................................................ 37

6   11 U.S.C. § 1123(a)(8) ........................................................................ 37

7   11 U.S.C. § 1123(b)(1) ........................................................................ 35

8   11 U.S.C. § 1123(b)(2) ........................................................................ 37

9   11 U.S.C. § 1123(b)(3) ........................................................................ 37

10  11 U.S.C. § 1123(b)(4) ........................................................................ 37

11  11 U.S.C. § 1123(b)(5) ........................................................................ 37

12  11 U.S.C. § 1125 ................................................................................. 38

13  11 U.S.C. § 1127(a) ........................................................................ 35, 38

14  11 U.S.C. § 1127(c) ............................................................................. 38

15  11 U.S.C. § 1127(d) ............................................................................ 38

16  11 U.S.C. § 365 ................................................................................. 8, 34

17  11 U.S.C. § 365(a) ............................................................................... 33

18  11 U.S.C. § 365(b)(1) .......................................................................... 35

19  11 U.S.C. § 365(b)(1) .......................................................................... 33

20  11 U.S.C. § 365(d)(2) .......................................................................... 33

21  11 U.S.C. § 365(f) .......................................................................... 34, 40

22  11 U.S.C. § 365(f)(2) ........................................................................... 33

23  28 U.S.C. § 1334 ................................................................................. 28

24  28 U.S.C. § 157 ................................................................................... 28

25  **Rules**

26  Fed. R. Bankr. P. 3019 ......................................................................... 38

27  Fed. R. Bankr. P. 3019(a) ..................................................................... 39

28  Fed. R. Bankr. P. 6006(d) ..................................................................... 40

-iv-

1

## TABLE OF AUTHORITIES (cont.)

2

Page(s)

3  Fed. R. Bankr. P. 9019 ................................................................................................ 28

4  Fed. R. Bankr. P. 9019(a) ........................................................................................... 28

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

364337.01 [XP]    25195

1     **PLEASE TAKE NOTICE** that, on a date and time to be set by the Court,[2] in Courtroom

2   301 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills,

3   California, the above-captioned debtors and debtors-in-possession (collectively the "Debtors") will

4   and do hereby move for an order approving the proposed settlement (the "Settlement") between

5   Meruelo Maddux Properties, Inc. ("MMPI"), Meruelo Maddux Properties, L.P. ("MMPLP"),

6   Meruelo Maddux – 3rd & Omar Street, LLC ("MM 3rd & Omar"), Meruelo Maddux – 420 Boyd

7   Street, LLC ("MM 420 Boyd"), Merco Group – 1500 Griffith Avenue, LLC ("MG 1500 Griffith"),

8   Merco Group – 4th Street Center, LLC ("MG 4th Street"), Merco Group – 425 West 11th Street,

9   LLC ("MG 425 W. 11th"), Merco Group – 620 Gladys Avenue, LLC ("MG 620 Gladys"), Meruelo

10  Maddux – 336 W. 11th Street, LLC ("MM 336 W. 11th"), Merco Group – Little J, LLC ("MG

11  Little J"), and Merco Group, LLC ("Merco Group") (collectively the "Settling Debtors"), on the

12  one hand, and Legendary Investors Group No. 1, LLC ("Legendary"), on the other hand.  Also, in

13  accordance with the proposed settlement, MM 3rd & Omar, MM 420 Boyd, MG 1500 Griffith, MG

14  4th Street, MG 620 Gladys and Merco Group request authority to assume and assign to Legendary

15  all executory contracts and unexpired leases relating to their respective real properties.  Further, the

16  Debtors request that the Court authorize the Debtors to modify their proposed Chapter 11 plan and

17  determine that the proposed modification of their plan does not require resolicitation thereof.

18      This motion is made on the following grounds:  Prior to March 27, 2009 (the "Petition

19  Date"), certain of the Settling Debtors obtained loans from East West Bank ("EWB").  Each loan

20  was secured by real property owned by the Settling Debtor that was the borrower under the loan.

21  With regard to two of the loans, a Settling Debtor who was not a borrower subsequently pledged

22  certain real property it owns as additional collateral.  As of the Petition Date, each of the loans was

23  guarantied by MMPI or MMPLP, or both.  In mid-2009, EWB's interests in the loans and security

24  interests in the Settling Debtors' properties were assigned to Legendary.  As a result of these

---

26      [2] An *ex parte* application for order shortening time is being filed concurrently herewith.
27  The Debtors anticipate that written notice of the hearing date and time will be filed and served on
    appropriate parties promptly upon the setting of the hearing by the Court.

- 2 -

1  transactions, Legendary has, among other things, liens or claims of liens against real properties

2  owned by the Settling Debtors and unsecured guaranty claims against MMPI's and MMPLP's

3  estates.

4       Subject to Court approval, the Settling Debtors have agreed to a settlement of all disputes

5  arising out of or relating to Legendary's claims against all of the Settling Debtors and Legendary's

6  liens against the Settling Debtors' properties.  The Settlement has been approved unanimously by

7  MMPI's Board of Directors and is memorialized in the settlement agreement (the "Settlement

8  Agreement") attached as Exhibit "1" to the Declaration of Richard Meruelo (the "Meruelo

9  Declaration").  Generally, and without limiting the detail set forth in the Settlement Agreement,

10 MM 3rd & Omar, MM 420 Boyd, MG 1500 Griffith, MG 4th Street, MG 620 Gladys and Merco

11 Group (collectively the "Conveying Debtors") will convey to Legendary all of their right, title and

12 interest in their real properties subject to Legendary's liens (collectively the "Transferred

13 Properties").  Executory contracts and unexpired leases relating to the Transferred Properties will

14 be assumed by the Conveying Debtors and assigned to Legendary.  All current (on a prorated basis)

15 and past due real property taxes against the Transferred Properties will be paid by the Conveying

16 Debtors.  Legendary will release its claims against all of the Settling Debtors and Legendary's liens

17 against real properties owned by MG 425 W. 11th, MM 336 W. 11th, and MG Little J (collectively

18 the "Retained Properties").  Legendary also will release any and all interests in personal property of

19 the Settling Debtors.

20       In furtherance of this transaction, the Conveying Debtors are requesting authority to assume

21 and assign to Legendary all executory contracts and unexpired leases relating to the Transferred

22 Properties.  The executory contracts and unexpired leases known to the Conveying Debtors, and

23 which all are being assumed and assigned to Legendary, are as follows:

| Lessor | Lessee | Premises |
|---|---|---|
| MM 3rd & Omar | Motorini, Inc. | 470 E. 3rd Street, Unit A |
| MM 3rd & Omar | Zavin Krikorian, dba Zavin's Uniforms | 470 E. 3rd Street, Unit D |
| MM 3rd & Omar | S.C. Prestige Parking, Inc. | License Agreement for two parking lots |

- 3 -

| Lessor | Lessee | Premises |
|---|---|---|
| MM 420 Boyd | 410 Boyd Restaurant & Bar LLC | 410 Boyd Street |
| MM 420 Boyd | Kritzinger + Rao | 414 Boyd Street, Unit B |
| MM 420 Boyd | Hi-Q Toys, Inc. | 416 Boyd Street |
| MM 420 Boyd | David G. Gianfagna | 420 Boyd Street, Unit 304 |
| MM 420 Boyd | Gere Kavanaugh dba Gere Kavanaugh Designs | 420 Boyd Street, Unit 305 |
| MM 420 Boyd | Apcon International, Inc. | 420 Boyd Street, Unit 307 |
| MM 420 Boyd | Chaney M. Sheffield, John F. Butcher and Koichi Yanagizawa | 420 Boyd Street, Unit 400 and Storage Space B-9 |
| MM 420 Boyd | Tara Durkan dba Gallery 209 | 420 Boyd Street, Unit 503 |
| MM 420 Boyd | S.C. Prestige Parking, Inc. | Surface parking lot |

| Lessor | Lessee | Premises |
|---|---|---|
| MG 1500 Griffith | 26 International, Inc. | 1500 Griffith Avenue |

| Lessor | Lessee | Premises |
|---|---|---|
| MG 4th Street | LA Modern Living, Inc. and Plush Impressions, Inc. | 900 E. 4th Street |

| Lessor | Lessee | Premises |
|---|---|---|
| MG 620 Gladys | Veg Express, LLC | 620 Gladys Avenue |
| MG 620 Gladys | Divine Pasta Company | 620 Gladys Avenue |
| MG 620 Gladys | R & P Seafood Corp. | 649 Ceres Avenue |
| MG 620 Gladys | Para Los Ninos | 838 E. Sixth Street |
| MG 620 Gladys | Ernest Rabotte | 620 Gladys Avenue |

///

///

364337.01 [XP]    25195

| Lessor | Lessee | Premises |
|---|---|---|
| Merco Group | Southern California Institute of Architecture | 960 East Third Street (Parcel A of Map No. 2000-1711-A) |
| Merco Group | Southern California Institute of Architecture | Vacant land at 4th & Merrick Streets (Parcel D of Map No. 2000-1711-A) |

| Debtor Party | Non-Debtor Party | Description of Contract |
|---|---|---|
| Merco Group | Southern California Institute of Architecture | Purchase and sale agreement re: parcel located at 960 East Third Street |
| Merco Group | Southern California Institute of Architecture | Purchase and sale agreement re: parcel located at the northeast corner of 4th and Merrick Streets |

The Conveying Debtors are current with respect to all of their obligations under these executory contracts and unexpired leases. In the event that a non-Debtor party to a contract or lease files an objection to the assumption and assignment of its contract or lease on the grounds that the Debtor has defaulted and such default must be cured prior to assumption and assignment, the Conveying Debtors request that the Court make a determination of such cure amount.

Consummation of the proposed settlement with Legendary will require modifications to the Debtors' proposed Chapter 11 plan. Concurrently herewith, the Debtors are filing a *First Modified Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al.*, and a redlined version of the plan. The Debtors are requesting that the Court authorize the Debtors to amend their proposed plan and determine that the modification of the Debtors' plan does not require resolicitation thereof.

This Motion is based upon this Notice and Motion, the Memorandum of Points and Authorities, and the Declaration of Richard Meruelo appended hereto, the separate declaration of Dilip Bhavnani, the separate notice of filing of the Debtors' proposed amended plan, the separate Request for Judicial Notice filed concurrently herewith, the papers and pleadings on file in this case, and such other evidence as may be presented to the Court.

///

- 5 -

1    **PLEASE TAKE FURTHER NOTICE** that the Debtors are filing an *ex parte* application

2    for order shortening time in which they are requesting that the Court set a hearing on this matter on

3    or before January 21, 2011, at 2:30 p.m., and that such order further provide that oppositions, if

4    any, must be in writing and filed with the Court and served on the Debtors' counsel on or before

5    noon on January 20, 2011.  If the Debtors' *ex parte* application is granted, the Debtors will file and

6    serve a notice of the hearing on this Motion, which notice will identify the date and time of the

7    hearing and the deadline, if any, to file written oppositions.  Oppositions not presented as set forth

8    in the notice may be deemed waived.  If you do not have any objection to this motion, you need not

9    take any further action.

10

11   Dated: January 14, 2011                          DANNING, GILL, DIAMOND & KOLLITZ, LLP

12

13                                                    By: _____

14                                                    John N Tedford, IV
                                                      Attorneys for Meruelo Maddux Properties,
15                                                    Inc., and affiliated Debtors and Debtors-in-
                                                      Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    - 6 -

364337.01 [XP]    25195

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.

INTRODUCTION

On March 26 and 27, 2009,[3] Meruelo Maddux Properties, Inc. ("MMPI"), and 53 of its direct and indirect subsidiaries (collectively the "Debtors"), including Meruelo Maddux Properties, L.P. ("MMPLP"), Meruelo Maddux – 3rd & Omar Street, LLC ("MM 3rd & Omar"), Meruelo Maddux – 420 Boyd Street, LLC ("MM 420 Boyd"), Merco Group – 1500 Griffith Avenue, LLC ("MG 1500 Griffith"), Merco Group – 4th Street Center, LLC ("MG 4th Street"), Merco Group – 425 West 11th Street, LLC ("MG 425 W. 11th"), Merco Group – 620 Gladys Avenue, LLC ("MG 620 Gladys"), Meruelo Maddux – 336 W. 11th Street, LLC ("MM 336 W. 11th"), Merco Group – Little J, LLC ("MG Little J"), and Merco Group, LLC ("Merco Group") (collectively, with MMPI, the "Settling Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Code"). As of the Petition Date, seven of the Settling Debtors were indebted to East West Bank ("EWB") pursuant to loan agreements between such Settling Debtors and EWB. Two Settling Debtors had pledged real property as additional collateral with regard to two of the loans. All seven of the loans are guarantied by MMPI, MMPLP, or both. After the Petition Date, the seven loans and interests relating thereto were assigned to Legendary Investors Group No. 1, LLC ("Legendary").

The Debtors and Legendary have agreed to the terms of a global settlement resolving all of Legendary's claims against the Debtors' estates. Under the settlement, which has been approved unanimously by MMPI's Board of Directors, Debtors MM 3rd & Omar, MM 420 Boyd, MG 1500 Griffith, MG 4th Street, MG 620 Gladys and Merco Group (collectively the "Conveying Debtors") will convey to Legendary all of the Conveying Debtors' real properties subject to Legendary's liens (collectively the "Transferred Properties"). Executory contracts and unexpired leases relating to

---

[3] For purposes of this opposition, March 27, 2009, is referred to as the "Petition Date." That date is the date on which all of the Settling Debtors filed their voluntary petitions.

- 7 -

1 the Transferred Properties will be assumed and assigned to Legendary. The Conveying Debtors

2 will pay all past due real property taxes against the Transferred Properties. Legendary will release

3 its claims against the Settling Debtors and its liens against real properties owned by MG 425 W.

4 11th, MM 336 W. 11th, and MG Little J (collectively the "Retained Properties"). A copy of the

5 Settlement Agreement is attached as Exhibit "1" to the Declaration of Richard Meruelo (the

6 "Meruelo Declaration"). The proposed settlement is in the best interests of the Debtors, creditors

7 and interest holders, and should be approved.

8         In connection with the settlement, the Conveying Debtors will assume and assign to

9 Legendary the executory contracts and unexpired leases relating to the Transferred Properties. A

10 schedule of all known executory contracts and unexpired leases is attached as Exhibit "2" to the

11 Meruelo Declaration. The Conveying Debtors believe that they are current with respect to all of

12 their obligations under the executory contracts and unexpired leases. The Debtors are seeking

13 authority to assume and assign such contracts and leases pursuant to § 365 of the Code.

14         The terms of the settlement with Legendary are not included in the *Fourth Amended Joint*

15 *Plan of Reorganization of Meruelo Maddux Properties, Inc., et al., Dated September 30, 2010* (the

16 "Debtors' Plan"), currently pending before the Court. Approval of the proposed settlement with

17 Legendary will require modifications to the Debtors' Plan. The Debtors have prepared a proposed

18 *First Modified Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc.,*

19 *et al., Dated January 10, 2011*, and a redlined version of the Debtors' Plan, and they are filed

20 concurrently herewith. The Debtors are requesting that the Court authorize them to modify their

21 plan and determine that the proposed modification of the Debtors' plan does not require

22 resolicitation thereof.

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

364337.01 [XP]    25195

## II.

## STATEMENT OF FACTS

A.    THE DEBTORS' OVERALL BUSINESS MODEL AND APPROACH[4]

MMPI, together with MMPLP and its affiliates and related entities (sometimes collectively referred to herein as the "Company") develops, redevelops and owns industrial, commercial and multi-unit residential properties in downtown Los Angeles and other urban markets in southern California.  MMPI was formed in 2006, and one of the reasons for forming MMPI was to hold an initial public offering of stock in order to generate cash to pay off certain then-existing debt and raise funds the Company could use to continue growing through the development of real properties. When MMPI was formed, the Company owned, leased with rights to purchase, and had rights to buy approximately 52 development, redevelopment and stabilized projects.

Like its predecessor business, MMPI's focus is on non-stabilized properties and commercial and industrial land which have alternate, more profitable uses achievable through redevelopment or major renovation and ground-up development.  The Company's properties are used for diverse purposes, and include food industry, wholesale markets, small tenant industrial, residential high rise and mixed-use "urban village" properties.  The vast majority of the properties are situated in downtown Los Angeles.  The Company is believed to be the largest non-governmental land owner in downtown Los Angeles, owning or controlling approximately 80 acres of land in downtown Los Angeles at the time that MMPI went public.

---

[4] In addition to the declaration appended hereto, this Motion is supported by the Declaration of Richard Meruelo filed with the Court on March 27, 2009 (*docket entry no. 10*), and the Supplemental Declaration of Richard Meruelo and the Declaration of Fred Skaggs filed with the Court on April 21, 2009 (*docket entry no. 95*).  The declarations were sizeable, particularly with the exhibits.  In connection with a prior matter before the Court, it was suggested by a non-Debtor party that, to conserve the environment, the Debtors should not be required to re-file and serve the declarations in connection with each matter where the Debtors rely upon the declarations in support of their description of the Debtors' background and operations.  The Settling Debtors request that the Court take judicial notice of the filing of those declarations and treat the declarations as if they were filed anew in support of this opposition.  Similarly, the Settling Debtors request that the Court take judicial notice of the filing of Richard Meruelo's declaration in support of confirmation of the Debtors' Plan (*docket entry no. 2327*).  The Settling Debtors will make copies of the declarations available on request by electronic mail or regular mail, as appropriate.

364337.01 [XP]    25195

1    The Company focuses on urban in-fill development and on finding different, more

2  profitable uses for existing urban properties. The Company looks for properties that have value

3  intrinsic to the property itself, such as the property's location, whether there is an end user of the

4  property on the horizon who might want to purchase the property, how well the property will fit in

5  with the growth patterns of the area and community in which it is situated, and other factors.

6    The Company's business model anticipates the need for time to develop properties and

7  requires the infusion of funds to pay the costs of such development, including the carrying costs.

8  To help defray costs during development, properties may be utilized as parking lots or other uses,

9  not because such use generates substantial income but because the land itself is extremely valuable

10  since it can be developed at an appropriate time in the future, and the parking lot revenue provides

11  some interim revenue. Some of the Company's properties have been developed to the point where

12  entitlements have been obtained thus increasing the value substantially, but development has been

13  deferred pending an improvement in the credit markets. In summary, the Company's business

14  model contemplates and is based upon the purchase, development and resale of properties, pursuant

15  to which the Company turns over such properties in a relatively short period of time, such as a few

16  years instead of decades, and uses the profit from such properties to fund operations of MMPI and

17  all of its other affiliates and the purchase and development of other properties.

18

19  B.    THE DEBTORS' COLLECTIVE ORGANIZATION AND OPERATIONS

20    Although the Debtors and their non-Debtor affiliates consist of a parent company and

21  various levels of subsidiaries, including limited liability companies and other entities which hold

22  title to properties, the Company has been, before and after its formation as a public company, and

23  presently continues to be, effectively operated as a single enterprise. Revenues of the entities are

24  commingled, and the funds are used to pay the expenses of MMPI and the subsidiaries. Some

25  entities generate revenues in excess of operational expenses and debt service, but some do not. The

26  reason that the Company purchases and keeps properties that are cash flow negative is because the

27  Company believes that those properties will, in time, generate a positive return and the enterprise

28  will be significantly more valuable as a result.

364337.01 [XP]    25195

1    C.    THE SETTLING DEBTORS' PROPERTIES

2    　　　　Descriptions of the Settling Debtors' businesses and properties were included in the *Fourth*

3    *Amended Joint Disclosure Statement Describing Fourth Amended Joint Plan of Reorganization of*

4    *Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010* (the "Disclosure Statement"),

5    approved by the Court on or about October 15, 2010 (*docket entry no. 1963*), and the *Declaration*

6    *of Richard Meruelo in Support of "Fourth Amended Joint Plan of Reorganization of Meruelo*

7    *Maddux Properties, Inc., et al. Dated September 20, 2010"* (the "Meruelo Confirmation

8    Declaration") (*docket entry no. 2327*).[5]    Descriptions also may be found in the Settling Debtors'

9    oppositions to Legendary's motions for relief from stay that were filed on September 1, 2010, and

10    September 4, 2010.[6]    A brief description of each of the Settling Debtors' Properties follows.

11

12    　　1.    THE REAL PROPERTIES TO BE CONVEYED TO LEGENDARY BY THE

13    　　　　　CONVEYING DEBTORS UNDER THE PROPOSED SETTLEMENT

14    　　　　MM 3rd & Omar.[7]    MM 3rd & Omar owns 0.5 acres of real property located in downtown

15    Los Angeles, consisting of two large and nearby, but non-contiguous, properties.    The properties

16    are located in the Little Tokyo area of downtown Los Angeles.    One is improved with a multi-

17    tenant building with 23,298 net rentable building square feet.    The other is a surface parking lot.    In

18    support of confirmation of the Debtors' Plan, the Debtors provided evidence that MM 3rd &

19    Omar's properties collectively have a value of not less than $3,750,000.    No contrary appraisals

20    have been submitted to the Court during this case.    However, according to the *Amended Disclosure*

21    *Statement for Legendary Investors Group No. 1, LLC's and East West Bank's Modified Second*

22    *Amended Joint Chapter 11 Plan of Reorganization Dated September 3, 2010* (the "Legendary

23    _____

24    　　　[5] For ease of reference, a copy of the Meruelo Confirmation Declaration is attached to the
25    Request for Judicial Notice filed concurrently herewith.

26    　　　[6] The docket numbers for the oppositions are 592, 593, 596, 597, 627, 628 and 629.

27    　　　[7] *See* Meruelo Confirmation Declaration, ¶ 89; Debtors' Disclosure Statement § II(B)(9);
Legendary Disclosure Statement p. 205.

28

1  Disclosure Statement") (*docket entry no. 1945*), Legendary believes that the value of MM 3rd &

2  Omar's property is $2,664,375.

3      MM 420 Boyd.[8]  MM 420 Boyd owns 0.6 acres of land that comprises the majority of a city

4  block in the Toy District/Little Tokyo area of downtown Los Angeles.  The property is improved

5  with a building consisting of approximately 44,907 net rentable square feet being used as multi-

6  tenant office space, a restaurant facility and a parking lot.  In support of confirmation of the

7  Debtors' Plan, the Debtors provided evidence that MM 420 Boyd's property has a value of not less

8  than $6,950,000.  No contrary appraisals have been submitted to the Court during this case.

9  Nevertheless, according to the Legendary Disclosure Statement, Legendary believes that the value

10  of MM 420 Boyd's property is $4,937,975.

11      MG 1500 Griffith.[9]  MG 1500 Griffith owns real properties consisting of approximately 2.0

12  acres of land near the corner of Griffith Avenue and East 16th Street in downtown Los Angeles'

13  Garment District.  The properties have approximately 50,058 square feet of net rentable space

14  located in two buildings located at 1500 and 1510 Griffith Avenue.  Only the former, 1500 Griffith

15  Avenue, is subject to a lien in favor of Legendary.  That property is improved with a single story

16  industrial building with 30,058 square feet of net rentable square feet located in one building being

17  utilized as a distribution and industrial facility, with an additional 6,000 square foot parking lot

18  across the street.  In support of confirmation of the Debtors' Plan, the Debtors provided evidence

19  that the property subject to Legendary's lien has a value of not less than $6,900,000.  No contrary

20  appraisals have been submitted to the Court during this case.  Nevertheless, according to the

21  Legendary Disclosure Statement, Legendary appears to believe that the value of MG 1500

22  Griffith's property subject to Legendary's lien is $4,902,450.

23  ///

24

_____

25      [8] *See* Meruelo Confirmation Declaration, ¶ 96; Debtors' Disclosure Statement § II(B)(10);
26  Legendary Disclosure Statement p. 206.

27      [9] *See* Meruelo Confirmation Declaration, ¶ 77 and 95; Debtors' Disclosure Statement
§ II(B)(15); Legendary Disclosure Statement p. 211.

28

364337.01 [XP]    25195

1    <u>MG 4th Street</u>.[10]  MG 4th Street owns approximately 1.3 acres of land at the corner of

2   South Hewitt Street and East 4th Street in downtown Los Angeles' Arts District.  The property is

3   improved with a multi-tenant industrial and distribution space facility with approximately 13,430

4   square feet of net rentable space located in two buildings, and parking areas.  In support of

5   confirmation of the Debtors' Plan, the Debtors provided evidence that MG 4th Street's property has

6   a value of not less than $3,962,000.  No contrary appraisals have been submitted to the Court

7   during this case.  Nevertheless, according to the Legendary Disclosure Statement, Legendary

8   believes that the value of MG 4th Street's property is $2,815,001.

9    <u>MG 620 Gladys</u>.[11]  MG 620 Gladys owns approximately 125,000 square feet of land at the

10   corner of Gladys Avenue and East 6th Street in the seafood and arts districts of downtown Los

11   Angeles.  MG 620 Gladys' property includes a large assemblage of parcels which occupies nearly

12   an entire block, improved with numerous industrial warehouse, cooler and seafood processing

13   buildings.  In support of confirmation of the Debtors' Plan, the Debtors provided evidence that the

14   property subject to Legendary's lien has a value of not less than $8,077,695.  According to the

15   Legendary Disclosure Statement, Legendary believes that the value of MG 620 Gladys' property

16   subject to Legendary's lien has a value of $5,739,202.

17    <u>Merco Group (SCI-Arc)</u>.[12]  Merco Group owns approximately 10.5 acres of land located at

18   the corner of East 3rd Street and South Santa Fe Avenue in downtown Los Angeles.  Presently,

19   Merco Group's land consists of two different properties.  The first part (the "SCI-Arc Property")

20   consists of approximately 2.6 acres improved with a 81,741 net rentable square foot educational

21   building which is home to the Southern California Institute of Architecture ("SCI-Arc").  Merco

22   Group and SCI-Arc have entered into an agreement for the purchase of the SCI-Arc Property.  In

23

24    [10] *See* Meruelo Confirmation Declaration, ¶ 83; Debtors' Disclosure Statement § II(B)(39);
Legendary Disclosure Statement p. 235.

25    [11] *See* Meruelo Confirmation Declaration, ¶ 84; Debtors' Disclosure Statement § II(B)(22);
26   Legendary Disclosure Statement p. 218.

27    [12] *See* Meruelo Confirmation Declaration, ¶ 86; Debtors' Disclosure Statement § II(B)(25);
Legendary Disclosure Statement p. 221.

28

- 13 -

1    support of confirmation of the Debtors' Plan, the Debtors provided evidence that the SCI-Arc

2    Property has a value of not less than $15,700,000.  No contrary appraisals have been submitted to

3    the Court during this case.  Based on the Legendary Disclosure Statement, Legendary appears to

4    agree with the Debtors' valuation.

5        <u>Merco Group (Sky-Arc)</u>.[13]  Merco Group's second property consists of approximately 7.9

6    acres adjacent to the SCI-Arc Property.  That property is entitled for 635 residential units and is

7    referred to by the Company as the "Sky-Arc Property."  The Sky-Arc Property consists of three

8    parcels generally referred to as parcels B, C and D.  Merco Group and SCI-Arc have entered into

9    an agreement for the purchase by SCI-Arc of one of the three parcels.  In support of confirmation

10   of the Debtors' Plan, the Debtors provided evidence that the Sky-Arc Property has a value of not

11   less than $29,000,000.  Based on the Legendary Disclosure Statement, Legendary appears to

12   believe that the Sky-Arc Property has a value of $28,204,500.

13

14        2.        <u>THE DEBTORS' REAL PROPERTIES WITH RESPECT TO WHICH</u>

15                  <u>LEGENDARY'S LIENS WILL BE RELEASED UNDER THE SETTLEMENT</u>

16        <u>MG 425 W. 11th</u>.[14]  MG 425 W. 11th owns two properties located on 11th Street between

17   Hope Street and Grand Avenue in the South Park neighborhood of downtown Los Angeles, a few

18   blocks east of the Staples Center and L.A. Live.  One of the properties is currently utilized as a

19   13,678 square foot parking lot and is leased out to a parking lot operator.  The second property is

20   improved with a mostly vacant 78,500 square foot, five-story industrial building situated on 15,682

21   square feet of land.  The South Park area is an established and desirable residential area that has

22   benefited greatly from both the Staples Center and L.A. Live.  These properties have significant

23   development potential and may be redeveloped for a variety of uses, including office, hotel or

24   _____

25        [13] *See* Meruelo Confirmation Declaration, ¶ 86; Debtors' Disclosure Statement § II(B)(25);
     Legendary Disclosure Statement p. 221.
26

27        [14] *See* Meruelo Confirmation Declaration, ¶ 80; Debtors' Disclosure Statement § II(B)(40);
     Legendary Disclosure Statement p. 236.
28

- 14 -

1    residential units. Among other things, the unimproved property is entitled for a new 20+ story,

2    80,000 square foot residential project that will complement existing nearby residential projects.

3    The City of Los Angeles has issued initial permits for the project, which will allow the Company to

4    proceed with development of the property an appropriate time in the future. The property

5    improved with a building can be redeveloped as, among other things, a boutique hotel or an office

6    building. In support of confirmation of the Debtors' Plan, the Debtors provided evidence that MG

7    425 W. 11th's properties have an aggregate value of not less than $12,810,000.

8         <u>MM 336 W. 11th</u>.[15]  MM 336 W. 11th owns approximately 0.7 acres of land in the South

9    Park area of Los Angeles at the corner of West 11th Street and South Olive Street, a few blocks

10   east of the Staples Center and L.A. Live. The property is presently utilized as a parking lot, but can

11   support the development of a 120,000 square foot residential building. In support of confirmation

12   of the Debtors' Plan, the Debtors provided evidence that the property has an value of not less than

13   $5,386,150.

14        <u>MG Little J</u>.[16]  MG Little J owns a total of approximately 0.7 acres of land situated on both

15   sides of the 1100 block of South Olive Street in the South Park area of downtown Los Angeles.

16   The western portion of the 0.7 acres (which is subject to a lien in favor of Legendary) is improved

17   with an 11,829 net rentable square foot building. The eastern portion, which is unencumbered,

18   currently is being utilized as a parking lot. In support of confirmation of the Debtors' Plan, the

19   Debtors provided evidence that MG Little J's properties have an aggregate value of not less than

20   $8,528,300, and that the property subject to Legendary's lien has a value of not less than

21   $4,548,225.

22   ///

23   ///

24

25       [15] *See* Meruelo Confirmation Declaration, ¶ 92; Debtors' Disclosure Statement § II(B)(37);
26   Legendary Disclosure Statement p. 233.

27       [16] *See* Meruelo Confirmation Declaration, ¶¶ 60 and 88; Debtors' Disclosure Statement
     § II(B)(24); Legendary Disclosure Statement p. 220.

28

364337.01 [XP]    25195

D.    LEGENDARY'S INTERESTS IN THE SETTLING DEBTORS' PROPERTIES

Legendary currently owns seven loans with respect to which, prior to the Petition Date, a Settling Debtor either (a) borrowed money from EWB, (b) pledged all or part of its real property as additional collateral for another Settling Debtor's loan, or (c) guarantied another Settling Debtor's loan.  Documents relating to these loans, pledges and guaranties are publicly available because they were attached to Legendary's motions for relief from stay filed on September 1 and 4, 2009, and to Legendary's multiple proofs of claims filed in MMPI's case.  In lieu of an exhaustive description of the publicly available loan documents, the following chart summarizes Legendary's seven loans as evidenced by, among other things, the loan documents attached to Legendary's proofs of claims:

| Borrower(s) | Date of Loan | Original Principal Amt | Guarantor(s) |
|---|---|---|---|
| MM 3rd & Omar | 8/4/05 | $3,325,000 | MMPLP[17] |
| MM 420 Boyd | 6/18/07 | $5,950,000 | MMPLP |
| MG 1500 Griffith MG 4th Street | 9/16/08 | $6,396,500 | MMPI |
| MG 620 Gladys | 3/20/07 | $5,390,000 | MMPI MMPLP |
| MG 425 W. 11th | 5/5/08 | $5,340,000 | MMPI |
| Merco Group (SCI-Arc Property) | 7/24/06 | $10,300,000 | MMPLP[18] |

///

///

---

[17] The loan was obtained prior to MMPI and MMPLP's formation and the IPO.  The loan was initially guarantied by Richard Meruelo and his living trust.  In March 2008, as a result of the IPO and the modification of the Company's ownership structure, MM 3rd & Omar and EWB entered into a Change in Terms Agreement pursuant to which Mr. Meruelo and his trust were replaced by MMPLP as the guarantor.

[18] The loan was obtained prior to MMPI and MMPLP's formation and the IPO.  The loan was initially guarantied by Richard Meruelo and his living trust.  In March 2008, Merco Group and EWB entered into a Change in Terms Agreement pursuant to which Mr. Meruelo and his trust were replaced by MMPLP as the guarantor.

| Borrower(s) | Date of Loan | Original Principal Amt | Guarantor(s) |
|---|---|---|---|
| Merco Group (Sky-Arc Property) | 6/24/04 | $12,000,000[19] | MMPLP MMPI[20] |

The borrower Debtors' obligations under each of these loans is secured by, among other things, a lien in favor of Legendary against all or part of the borrower Debtor's real property.[21] Two of the loans also are secured by liens against real property pledged as an accommodation to EWB. In April 2008, Merco Group and EWB entered into a Change in Terms Agreement which provided that Merco Group's debt to EWB secured by the Sky-Arc Property would also be secured by a portion of the real property owned by MG Little J. MG Little J is not a borrower and did not guaranty Merco Group's debt. Similarly, in September 2008, MG 620 Gladys and EWB entered into a Change in Terms Agreement which provided that MG 620 Gladys' debt to EWB would also be secured by real property owned by MM 336 W. 11th. MM 336 W. 11th is not a borrower and did not guaranty MG 620 Gladys' debt.

E.   CLAIMS ASSERTED BY LEGENDARY AGAINST THE SETTLING DEBTORS

Legendary filed multiple claims against the Settling Debtors' estates, including unsecured guaranty claims against MMPI and MMPLP. Legendary's claims have not been liquidated, and it has been contemplated by the Debtors that the allowed amount of Legendary's claims would need to be determined in connection with or after confirmation proceedings. On October 22, 2010, the

---

[19] In April 2006, the principal amount of the loan was increased to $19 million.

[20] The loan was obtained prior to MMPI and MMPLP's formation and the IPO. The loan was initially guarantied by Richard Meruelo and his living trust. In October 2007, Merco Group and EWB entered into a Change in Terms Agreement pursuant to which Mr. Meruelo and his trust were replaced by MMPLP as the guarantor. Subsequently, MMPI was also added as a guarantor.

[21] There is a dispute regarding the validity of Legendary's interest in the Sky-Arc Property. Nothing in this Motion should be deemed an admission by Merco Group regarding the validity of Legendary's interest and in the event the Settlement is not approved all of Merco Group's rights and defenses are reserved.

-17-

1  Debtors filed objections to the proofs of claims Legendary filed in MMPI's and MMPLP's cases,

2  including the unsecured guaranty claims which the Debtors sought to liquidate for voting and plan

3  confirmation purposes only.  A hearing on the Debtors' objection is set for January 20, 2011.

4      On pages 14-15 of the Legendary Disclosure Statement, Legendary identified the amounts

5  allegedly owed to Legendary by the Settling Debtors, estimated as of December 31, 2010.  In total,

6  Legendary asserted that, as of December 31, 2010, it would be owed approximately $67,774,623

7  for all seven loans.[22]  Utilizing Legendary's alleged values for the Settling Debtors' properties, the

8  aggregate value of real property securing Legendary's claims is approximately $64.9 million for

9  the Transferred Properties and approximately $12.4 million for the Retained Properties.  The

10  Debtors' aggregate value for the same properties is approximately $74 million for the Transferred

11  Properties and approximately $22.7 million for the Retained Properties.

12

13  F.    MOTIONS FOR RELIEF FROM STAY FILED BY LEGENDARY

14      On September 1 and 4, 2009, a few months after it acquired the seven loans from EWB,

15  Legendary filed seven motions for relief from the automatic stay in an effort to foreclose on all of

16  the real properties in which it held security interests.  Each relevant Debtor opposed the motions.

17  After months of litigation, four of the seven motions were denied in their entirety.  With respect to

18  Legendary's motions in MM 3rd & Omar's case and MM 420 Boyd's case, the Court modified the

19  stay to permit Legendary to record notices of default and elections to sell, but not to take any other

20  steps to foreclose.  With respect to Legendary's motions in MM 3rd & Omar's case, MM 420

21  Boyd's case and MG 425 W. 11th's case, Legendary was afforded adequate protection consistent

22  with the additional adequate protection to be afforded to Legendary in connection with the Debtors'

23  motion for authority to use cash collateral (discussed below).

24  ///

25  ///

26  _____

27      [22] This amount includes sums disputed by the Debtors.

28

- 18 -

364337.01 [XP]    25195

1    On February 26, 2010, Legendary filed more motions for relief from stay in MM 3rd &

2  Omar's case and MM 420 Boyd's case. Again, the Debtors opposed the motions. Legendary's

3  motions were both denied.

4

5  G.    ADEQUATE PROTECTION AFFORDED TO LEGENDARY IN CONNECTION WITH

6        THE DEBTORS' USE OF LEGENDARY'S CASH COLLATERAL

7    On the Petition Date the Debtors filed various so-called "first day motions," including a

8  motion for authority to use cash collateral generated by the Debtors' properties. EWB and later

9  Legendary objected to the Debtors' use of its cash collateral, demanding the provision of adequate

10  protection beyond that which was being proposed by the Debtors. On January 13, 2010, the Court

11  entered an order authorizing the Debtors' use of cash collateral on a final basis through March 31,

12  2010. Each "Cash Collateral Creditor" was afforded the "Base Adequate Protection" offered by the

13  Debtors, including the payment of postpetition real property taxes on an ongoing basis. With

14  regard to the Debtors' use of Legendary's cash collateral generated by properties owned by MG

15  1500 Griffith, MG 4th Street, MG 620 Gladys, MM 336 W. 11th, Merco Group (both the SCI-Arc

16  Property and the Sky-Arc Property), and MG Little J, the Court determined that Legendary was not

17  entitled to additional adequate protection beyond that offered by the Debtors. The Court ruled that

18  Legendary was entitled to additional adequate protection with regard to the following three loans:

19    1.    MM 3rd & Omar. With regard to the Debtors' use of cash collateral generated by

20  MM 3rd & Omar's property, the Court determined that Legendary was entitled to additional

21  adequate protection in the form of an adequate protection lien against properties to be designated

22  by the Court as the "Replacement Lien Property Pool,"[23] with the amount of such lien equal to the

23  amount of interest accruing at the applicable default rate from the Petition Date through March 31,

24  2010, or the date on which MM 3rd & Omar was no longer authorized to use cash collateral.

25  ///

26

27    [23] On December 29, 2010, the Court entered an order designating the properties owned by
certain of the Debtors as the Replacement Lien Property Pool (*docket entry no.2478*).

28

- 19 -

1        2.     <u>MM 420 Boyd</u>. With regard to the Debtors' use of cash collateral generated by MM

2 420 Boyd's property, the Court determined that Legendary was entitled to additional adequate

3 protection in the form of an adequate protection lien against the Replacement Lien Property Pool,

4 with the amount of such lien equal to the amount of cash collateral actually used (as that phrase

5 was defined in the order) from the Petition Date through March 31, 2010, or the date on which MM

6 420 Boyd was no longer authorized to use cash collateral. Pursuant to a subsequent order of the

7 Court, commencing on August 2, 2010, in addition to the adequate protection described above,

8 Legendary is entitled to additional adequate protection in the form of cash payments in the amount

9 of $3,000 per month. Such payments reduce the amount of Legendary's adequate protection lien

10 against the Replacement Lien Property Pool.

11        3.     <u>MG 425 W. 11th</u>. With regard to the Debtors' use of cash collateral generated by

12 MG 425 W. 11th's properties, the Court determined that Legendary was entitled to additional

13 adequate protection in the form of an adequate protection lien against the Replacement Lien

14 Property Pool, with the amount of such lien equal to the lesser of (a) the amount of cash collateral

15 actually used (as that phrase was defined in the order) from the Petition Date through March 31,

16 2010, or the date on which MG 425 W. 11th was no longer authorized to use cash collateral, and

17 (b) the amount of interest accruing at the applicable default rate from the Petition Date through

18 March 31, 2010, or the date on which MG 425 W. 11th was no longer authorized to use cash

19 collateral.

20        The Debtors' authority to use cash collateral has been extended from time to time by the

21 Court, most recently by an order entered on or about September 30, 2010. Pursuant to that order,

22 the Debtors are authorized to use cash collateral generated by MM 3rd & Omar's property through

23 January 31, 2011. The Debtors have filed a motion requesting a further extension of authority to

24 use cash collateral through June 30, 2011.[24]

25 ///

26

27        [24] A hearing on the Debtors' motion has been set for January 20, 2011.

28

364337.01 [XP]    25195

1  H.    TREATMENT OF LEGENDARY'S SECURED CLAIMS UNDER THE DEBTORS'

2      PLAN, AND THE SETTLING DEBTORS' PROJECTIONS

3          Under the Debtors' Plan, each of Legendary's secured claims is separately classified and

4  Legendary will receive the "Common Secured Lender Claim Treatment" for each loan.[25]

5  Generally, since Legendary voted against the Debtors' Plan, this means that Legendary will receive

6  deferred cash payments over a period of seven years commencing on the effective date of the

7  Debtors' Plan (the "Effective Date").[26]  During such period Legendary will receive monthly

8  interest-only payments on the principal balance of the restructured debt (*i.e.*, the allowed amount of

9  Legendary's secured claim), with interest accruing at a rate of 5.0% per annum or such other rate as

10  is established by the Court.  With one exception, Legendary will retain its liens against its real

11  property collateral.  The loan documents will be modified pursuant to the Loan Modification

12  Agreement attached as Exhibit "D" to the Debtors' Disclosure Statement.  The treatment of

13  Legendary's secured claims against each of the Settling Debtors' estates is as follows.

14

15      1.    TREATMENT OF LEGENDARY'S SECURED CLAIMS AND PROJECTIONS

16          IN THE CONVEYING DEBTORS' CASES

17      MM 3rd & Omar.  Class 28A-2 consists of Legendary's secured claim against MM 3rd &

18  Omar's estate.  The plan provides that Legendary will receive the Common Secured Lender Claim

19  Treatment on account of the allowed amount of its claim, which the Debtors' Plan treats as being

20  fully secured.  The projections attached as Exhibit "1" to the Declaration of Andrew Murray filed

21  in support of confirmation of the Debtors' Plan (the "Projections") project that MM 3rd & Omar

22  will retain its property during the entirety of the seven-year period.[27]  The Debtors project that the

23
_____

24      [25] The classes consisting of Legendary's secured claims are classes 28A-2, 29A-2, 30A-2,
    37A-2, 44A-2, 45A-2, 46A-2, 48A-2, 50A-2 and 50A-3.
25

26      [26] Debtors' Plan, § III(B)(2)(b).

27      [27] For ease of reference, a copy of Mr. Murray's declaration is attached to the Request for
    Judicial Notice filed concurrently herewith.

28

364337.01 [XP]    25195