1  STEVEN K. LINKON (Bar No. 101056)
   Routh Crabtree Olsen, P.S.
2  3535 Factoria Blvd SE, Suite 200
   Bellevue, WA  98006
3  Telephone:  (425) 586-1952
   Facsimile:  (425) 283-5952
4  Email:  slinkon@rcflegal.com

5  Attorney for Creditor Chinatrust Bank

6
                  UNITED STATES BANKRUPTCY COURT
7
                  CENTRAL DISTRICT OF CALIFORNIA
8
                  SAN FERNANDO VALLEY DIVISION
9

10  In re:                              )  Case No.: 1:09-bk-13356-VK
                                        )
11  MERUELO MADDUX PROPERTIES, INC.,    )  Chapter 11
    et al,                              )
12                                      )  **CHINATRUST BANK'S**
           Debtors and Debtors-in-Possession.  )  **OBJECTION RE PLAN**
13                                      )  **CONFIRMATION**
                                        )
14  ────────────────────────────────── )  **Confirmation**
                                        )  Date:  January 26, 2011
15  Affects:  Merco Group - 3185 E. Washington )  Time:  9:30 a.m.
    Blvd, LLC                           )  Place: Courtroom 301
16                                      )          21041 Burbank Blvd.
                                        )          Woodland Hills, CA
17                                      )
                                        )
18                                      )

19  ──────────────────────────────────

20        Chinatrust Bank (U.S.A.) ("Chinatrust" or "Bank"), hereby submits this

21  objection ("Objection") with respect to the three competing plans of reorganization

22  proposed by (i) Charlestown Capital Advisors, LLC and Hartland Asset Management

23  Corporation (the "Charlestown Plan"), (ii) Legendary Investors Group No. 1, LLC and

24  East West Bank (the "Legendary Plan") and (iii) the Plan of Meruelo Maddux

25  Properties, Inc. for Merco Group - 3185 E. Washington Blvd, LLC (the "Debtor Plan")

26

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 1

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   (Sometimes collectively referred to as the "Plans.") [1] In support of its Objection,

2   Chinatrust respectfully represents as follows and submits the Declarations of Don T.

3   Hirose and Graciela Burrola.[2] Chinatrust respectfully requests that the Court deny

4   confirmation of all three plans.[3] [4]

5

6                     **Background of Chinatrust's Secured Claim**

7          Chinatrust holds a loan in the original amount of $9,950,000 from Merco

8   Group - 3185 E. Washington Boulevard, LLC ("3185 E. Washington" or "Debtor").

9   The loan is evidenced by a Promissory Note ("Note"), dated April 13, 2006, and is

10  secured by, among other instruments, a Deed of Trust, Assignment of Rents,

11  Security Agreement and Fixture Filing (the "Deed of Trust") dated April 13, 2006,

12  encumbering a cold storage building located at 3185 E. Washington Boulevard, LA

13  90023 (the "Property").[5]

14

15

---

16  [1] Chinatrust hereby incorporates herein the objections raised by other secured
    creditors of these estates, and the objections raised by the plan proponents.
17  [2] Although a good faith effort has been made to support this Objection with
    competent evidence, the complexity of the case and the changing circumstances
18  may require additional evidence that has not been provided herein. In addition,
    Chinatrust is actively engaged in settlement discussions with the Debtor to resolve
19  its claim. Should a settlement be reached for the treatment of Chinatrust's claim and
    this settlement is approved by the Court, the Legendary and Charlestown plans
20  incorporate the treatment of settling secured creditors and this Objection will be
    moot.
21  [3] Each of the Plans treats Chinatrust's secured claim in a similar fashion so this
    objection applies to each plan, respectively.
22  [4] The Court should also be aware that this Objection is being filed prior to the
    completion of discovery by either party. Accordingly, Chinatrust respectfully requests
23  the opportunity to supplement its Objection to the extent that additional relevant
    evidence is developed prior to the confirmation hearing. Alternatively, Chinatrust
24  could raise any new information as part of post trial submissions.
    [5] The Deed of Trust was duly recorded on April 26, 2006 as Instrument No. 06
25  0912987 in the Official Records of the Los Angeles County Recorder's Office.
    Copies of the Note and Deed of Trust have previously been filed in connection with
26  Chinatrust's motions concerning use of cash collateral and motion for relief from the
    automatic stay, among others. For the Court's convenience, a copy of the Deed of

---

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 2

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Repayment of the Note is also secured by a separate Absolute Assignment of

2    Leases, Lease Guaranties, Rents, Issues and Profits (the "Assignment") dated April

3    13, 2006. [6]  The Assignment is irrevocable and grants, transfers and assigns to

4    Chinatrust all of Debtor's right, title and interest in all leases concerning the Property,

5    and all rents, issues and profits of the Property, including the cash proceeds thereof.

6    
7    (Id.).

8    Repayment of the Note is also promised by a Continuing Guaranty from

9    Richard Meruelo, individually, and as trustee of The Richard Meruelo Living Trust

10   Under Declaration of Trust Dated September 15, 1989 (Collectively, Guarantors"). [7]

11   **Debtor's Default Under The Loan**

12   As of April 16, 2009, Debtor failed to timely pay interest, plus applicable late

13   charges, in the approximate amount of $230,989.90 (the payments for February,

14   March and April of 2009).  As of that same date, there was outstanding principal due

15   
16   of $9,541,564.62. There are also due collection costs recoverable in accordance

17   with the Note.[8]

18   The Debtor's schedules indicate there are delinquent pre petition property

19   taxes of $78,082.69, and penalties of $7,808.27.

20

21

22

23   _____
     Trust is attached as Ex. "1." See Declaration of Graciela Burrola ("Burrola Decl."), ¶
24   4.
     [6] The Assignment was duly recorded on April 26, 2006 as Instrument No. 06
25   0912988 in the Official Records of the Los Angeles County Recorder's Office. A
     copy of the Absolute Assignment is attached as Ex. "2." Burrola Decl., ¶ 5.
26   [7] Burrola Decl., ¶ 6.
     [8] Burrola Decl., ¶ 7.

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 3

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

As of December 31, 2010, the unpaid principal and interest due on the loan is $11,628,052.70.[9]

Since the March 27, 2009 petition date and until August of 2010, Chinatrust received no payments on account of its loan or on account of its cash collateral. Starting in August 2010, the Debtor has made monthly payments of $32,000 as a condition for its use of Chinatrust's cash collateral, representing interest only at 4% per annum.[10]

Meanwhile, since the petition date, Debtor has collected rents from the Property of no less than $2,113,336, per the November Monthly Operating Report.

**Equity in the Property**

The Debtor values the Property at $11,800,000. The Bank's independent appraiser, Mr. Hirose, values the Property at $10,600,000. The principal balance of Chinatrust's loan is $9,541,564.62. Delinquent interest is $2,086,488.08. Senior property taxes (prepetition) are in excess of $85,000.[11]  Accordingly, the Property is fully encumbered.[12] [13]

**Specific Objections to Plans**

---

[9] Plus, collection costs and attorney fees. Burrola Decl. ¶ 8.
[10] Burrola Decl. ¶ 9.
[11] The Debtor is also required to pay all post petition property taxes pursuant to Court Orders authorizing the use of Chinatrust's cash collateral, and, there might be an issue concerning the extent these post petition payments have actually been made.
[12] The cost to liquidate the Property, reasonably estimated at 8%, needs to be factored in as well.
[13] Pursuant to Court Order made in connection with the cash collateral proceedings. Chinatrust also holds a lien against the Replacement Lien Property Pool in the amount of its cash collateral actually used, estimated to be no less than $2,113,336 as of November 30, 2010, less the $128,000 of post petition payments made by the Debtor.

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 4

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    1.    The Plans are not "fair and equitable" because they provide Chinatrust

2  a below market interest rate for its secured claim.

3    2.    The Plans improperly strip Chinatrust of the replacement liens it was

granted by the Bankruptcy Court in lieu of receiving its cash collateral rents.

    3.    The Plans improperly require Chinatrust to enter into an agreement
(described as a loan modification agreement) to modify its loan documents and
materially change its prepetition contract rights and prohibit Chinatrust from pursuing
its contract remedies, including those against non debtor Guarantors provided the
reorganized debtor is in compliance with the Plan.

**A.    The Plans are not "Fair and Equitable" Because They Provide
Chinatrust A Below Market Interest Rate For Its Secured Claim.**

    If not all impair classes consent, as is the case here, the proponent may still
confirm a plan under §1129(b) if, as to the non-consenting class, the plan is "fair and
equitable." "Fair and equitable" in cramdown as against a class of secured claims
can be any of the kinds as described at §1129(b)(2)(A). The channel pertinent here
is found at subsection (A)(i), which in turn has two subparts, i.e. (1) that the secured
class retains its lien and (II) That the holder of a claim of such class receive on
account of such claim deferred cash payments having a present value of at least the
value of the holder's allowed claim as of the effective date of the plan. The secured
creditor must receive at least the "present value" of its claim; "present value" is the
mirror image of "interest rate," and the plan cannot impose uncompensated risk
upon the Bank by paying too low an interest rate under the Plan. *Infra.*

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 5

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1          The determination of an appropriate interest rate involves some kind of

2    formula approach as discussed by the U.S. Supreme Court in *Till v. SCS Credit*

3    *Corp.*, 541 U.S. 456, 479 – 480, 124 S.Ct. 1951, 1961 (2004). In *Till*, the court

4    started with a risk-free or nearly risk free rate, such as U.S Treasuries or the prime

5    rate, and then built up a rate by adding basis points to account for the unique issues

6    of risk present in the subject transaction. *Till* endorsed the formula approach but did

7    not specifically decide the appropriate "scale for the risk adjustment" beyond noting

8    that some courts had adopted a 1-3% over prime adjustment. *Id.*at 480. *Till* held that

9    the court is to attempt to fashion a rate that compensates for the risks both of the

10   cost of money and the risk of default, by noting such issues as nature of the security

11   and duration and feasibility of the plan. *Id.* at 479. The *Till* court did acknowledge

12   that adopting too high a rate might render a plan infeasible, but noted that the

13   remedy in such a case was to simply deny confirmation on the grounds of feasibility.

14   *Id.* at 480-81.

15         The problem with *Till* is that there is a world of difference between the

16   collateral in that case, a truck, and the cold storage warehouse that secures

17   Chinatrust's loan. But still a formula approach is appropriate to "build up" a rate that

18   can be said to approximately compensate for the level of risk proposed under the

19   plan. See, *Reehl and Milner, Chapter 11 Real Estate Cram Down Plans: The Legacy*

20   *of Till*, 30 Cal. Bankr. J. 401 (2010) and *Reehl and Milner, Cramdown Interest Rates:*

21   *The Quest Continues*, 30 Cal. Bankr. J. 15, 22 (2009).

22

23

24

25

26

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 6

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1         There are many "formula" cases,[14] and Legendary's approach to determining

2    the appropriate interest rate relies on a risk/return approach espoused in both

3    *Fowler* and *Camino Real*. Chinatrust suggests that this Court utilize the

4    straightforward "blended rate" approach found in a commercial real estate case like

5    this one in *Pacific First Bank v. Boulders on the River, Inc. (In re Boulders on the

6    River, Inc.)*, 164 B.R. 99, 105 (9th Cir. B.A.P. 1994). In *Boulders*, the court used a

7    blended rate comprised of two tranches, a first level comprised of what could be

8    roughly called "market rate" loans made on then standard terms at 8.25% up to 70%

9    of the collateral value, and then a mezzanine tranche comprised of 12% on the

10   additional balance of the loan which exceeded 70% of the collateral value. The

11   *Boulders* court ultimately arrived at a blended interest rate of 9.3%. *Id.* at 106.

12        Here, the Plans each propose the same interest rate for all non settling

13   secured creditors, without regard to the specific loan-to-value ("LTV") of the

14   particular property, or the duration of the Plan. The Debtor's plan proposes a 5%

15   interest rate for all secured creditors. The Debtor's expert, M. Freddie Reiss, applies

16   the Till analysis, without regard to *Fowler* or *Camino Real*, thus raising the question

17   as to whether it is appropriate to apply a "truck" case to one involving commercial

18   real estate.

19        Mr. Reiss opined that an appropriate interest rate adjustment for a property

20   with an LTV of between 70% and 80% is 650 basis points (over prime). (See, Expert

---

[14] *See, e.g., Till*, 541 U.S. at 479; *In re Fowler*, 903 F.2d 694 (9th Cir. 1990) and *In re Camino Real Landscape Maintenance Contractors, Inc.* 818 F. 2d 1503 (9th Cir. 1987).

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Report of M. Freddie Reiss, pg. 28). For the Chinatrust loan, this calculates to a rate

2    of 9.25%.

3         Later, Mr. Reiss' report summarized his *Till* analysis on a property by property

4    basis, including for the subject Property securing Chinatrust's loan, and determined

5    an interest rate of 6.61%, with -0- adjustment for feasibility. Earlier in his report, Mr.

6    Reiss opines that a risk factor adjustment of 0% - .50% for feasibility is appropriate.

7    (See, Expert Report of M. Freddie Reiss, pg. 28). Certainly, for a 100% LTV loan like

8    Chinatrust's, one would expect the risk factor adjustment to fall on the higher end of

9    the range (i.e. .50%), which places Mr. Reiss' interest rate for Chinatrust's loan at

10   7.11%.  Missing from Mr. Reiss's analysis is any explanation how, given that he

11   believes that an appropriate interest rate adjustment for a property with an LTV of

12   between 70% and 80% (or greater) is 650 basis points (over prime), the appropriate

13   rate for Chinatrust is not at least 9.75% (3.23 + 6.50), because the Chinatrust's loan

14   LTV is at least 100%. .

15        Neither of the experts for the Charlestown or Legendary Plans attempted to

16   specifically address the appropriate interest rate for Chinatrust's loan; instead they

17   offer a blanket interest rate for all non settling unsecured creditors of 5.25% and

18   5.5%, respectively, without regard to collateral or to the respective LTV's.

19        Charlestown's expert. Mr. Pollack, comments about the current market for

20   commercial real estate loans and observed that average loan-to-values on

21   properties are in the 60% to 70% range for senior loans. But Mr. Pollack does not

22   address the appropriate interest rate where the LTV is greater than the 60 to 70%

23   range (as did Mr. Reiss).

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 8

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1   Legendary, in its confirmation brief, states that the determination of the

2   appropriate interest rate relies on a risk/return approach espoused by *Till*, but also

3   used in prior Ninth Circuit decisions, *Fowler* and *Camino Real*, *supra.* But,

4   Legendary's expert, Mr. Jennings, does not address the blended rate approach, and

5   instead arrives at a single rate of 5.5% for all non settling creditors without regard to

6   their collateral or LTV. Mr. Jennings offers no information about the effect of a high

7   LTV on the appropriate interest rate.

8

9   Chinatrust reserves the right to submit its own expert testimony on this issue.

10  **B.      The Plans Improperly Strip Chinatrust of the Replacement Liens it**

11  **Was Granted by the Bankruptcy Court for the Use of Its Cash Collateral.**

12  The Plans provide that any lien or interest granted to Chinatrust by the

13  Bankruptcy Court as adequate protection shall be released and extinguished upon

14  confirmation. Chinatrust assumes that these provisions refer to the replacement

15  liens ordered herein. This treatment violates §1129(b)(2)(A)(i)(I) which mandates

16  that a secured creditor retain the liens securing its claim.  This treatment also

17  violates earlier Court orders that awarded Chinatrust a replacement lien on certain of

18  Debtors' properties in exchange for the Debtor's use of Chinatrust's cash collateral

19  rents. Thus, this treatment violates §1129(a)(3) as the Plans do not comply with the

20  Court's previous orders regarding Debtor's use of cash collateral and the granting of

21  replacement liens as described below.

22  As mention above, since the petition date, through November 30, 2010,

23  Debtor has collected rents from the Property of no less than $2,113,336.00 per the

24  November Monthly Operating Report. The Property is occupied by a single

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 9

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    commercial tenant, who is scheduled to pay $118,000 in monthly rent,[15] and, in

2    addition, the tenant pays the real property taxes, insurance and required

3    maintenance as part of its lease obligation (i.e., a typical "triple net" lease).[16]

4          It is important to remind the Court what has happened here: virtually all of the

5    cash collateral collected is transferred to different entities to fund costs that are

6

7    totally unrelated to the Property. This diversion of Chinatrust's cash collateral to pay

8    the expenses of other properties that are owned by other entities produced no

9    benefit to Chinatrust. The Debtor offered, and the Court approved, a replacement

10   lien, against other unencumbered property, as a substitute for the cash collateral

11   used that belonged to Chinatrust.

12         Pursuant to the Order Authorizing the Debtor's Use of Cash Collateral on a

13   Final Basis (docket no. 1016), the Court authorized the Debtors to use Chinatrust's

14

15   cash collateral and required Debtors' to provide "Base Adequate Protection,"[17] and,

16   in the case of Chinatrust, the Court found that its interest in the cash collateral

17   generated from the Property was found not to be adequately protected by the Base

18   Adequate Protection alone. (*Id.* At pg. 7). Thus, Chinatrust was granted a

19   replacement lien in certain unencumbered properties of the Debtors.[18]

20

21   _____

[15] Debtor's monthly operating reports show the rent collection at just $100,000 per
22   month.
[16] See Declaration of Graciela Burrola filed in connection with Chinatrust's original
23   objection to Debtor's use of its cash collateral (Docket #68), ¶ 4. A copy of the lease
for the Property was attached as Ex. "1" to the original objection.
24   [17] As defined in the order, and generally, required Debtors' to pay the post petition
taxes and maintain and preserve the Cash Collateral Properties.
25   [18] *Id.* at pg.7-8. The unencumbered Properties were later identified as the real
properties owned by Debtor Merco Group – 5707 S. Alameda, LLC, and properties
26   owned by Debtor Meruelo Maddux – 1000 E. Cesar Chavez, LLC, pursuant to an
Order entered December 29, 2010, docket no. 2478, wherein the properties are

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 10

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    It is unfortunate that these issues, which have been litigated extensively since

2    the petition date, must be relitigated anew in connection with plan confirmation.

3    Chinatrust has a perfected security interest in the rents generated by the

4    Property. According to Sec. 552:

5    "Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of

6    this title, and notwithstanding section 546(b) of this title, if the debtor and an entity
     entered into a security agreement before the commencement of the case and if the

7    security interest created by such security agreement extends to property of the

8    debtor acquired before the commencement of the case and to amounts paid as rents
     of such property . . . then such security interest extends to such rents . . . acquired

9    by the estate after the commencement of the case to the extent provided in the

10   security agreement, except to any extent that the court, . . . orders otherwise. "

11   State law governs the ownership of rents. *Butner v. United States*, 440 U.S.

12   48, 56-57(!979). Chinatrust's Deed of Trust absolutely assigned the rents from the

13   Property to the lender.[19]  The Absolute Assignment plainly encumbered the rents

14   from the Property.[20] Under California law a written assignment of rents constitutes  a

15   present security interest in existing and future rents effective on execution and

16   delivery of assignment and these rights are not cut off by the borrower's bankruptcy

17   filing. (Civil Code 2938; *MDFC Loan Corp. v. Greenbrier Plaza Partners* (App. 4 Dist.

18   1994).

19   At no time has the bankruptcy court ruled that Chinatrust's security

20   agreement did not extend to the Property rents. Just the opposite occurred, the

21

22

23

24

25   specifically identified and are collectively referred to as the "Replacement Lien
     Property Pool."
26   [19] See, Ex. "1" Deed of Trust, par. 11.
     [20] See, Ex. "2."

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 11

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1  Court allowed the Debtors' to use the rents, but required them to give Chinatrust a

2  replacement lien against other, unencumbered property.

3      The obvious purpose of the "Final" cash collateral order was to provide

4  Chinatrust with a replacement lien on other collateral, as the law requires under

5  §363(e).

6

7      The bankruptcy Court also found that the provision to Chinatrust of the

8  replacement lien justified denying Chinatrust's motion to lift the automatic stay. (see

9  Order (docket no. 852). In the order denying stay relief, the Court referenced its

10 Final Cash Collateral Order, and stated that "the Court intends to require the Debtors

11 to provide Chinatrust additional adequate protection for the use of cash collateral

12 generated by the Property. . . (c) a lien on certain real property with the amount

13 secured by such lien to be based on the monthly accrual of interest at the default

14

15 rate starting from the petition date. Chinatrust shall be deemed adequately protected

16 for purposes of 11 U.S.C. sec. 362(d)(1) by the Debtors' provision of the adequate

17 protection to be set forth in the Final Cash Collateral Order." (See, Order docket

18 #852).

19
        Accordingly, the rents generated by the Property are every bit as much
20
   collateral for repayment of the Chinatrust loan as is the Property itself. There is no
21
22 legal basis, either in the code, or case authority, to strip Chinatrust of its replacement

23 liens. Thus, the Plans cannot be confirmed with this provision.

24 C.    The Plans Substantially Alter Chinatrust's Contract Rights By Requiring Entry

25 Into A Loan Modification Agreement That Materially Changes Its Prepetition Contract

26 Rights

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1    Section 1129(b)(2)(A)(i)(I) requires that Chinatrust retain its lien to the extent

2    of the allowed amount of its claim. While the Plans generally provide that the

3    secured creditors will retain their respective deeds of trust, the Plans further require

4    a complete re-writing of the secured creditors' loan documents by requiring each

5    secured creditor, including Chinatrust, to enter to a new, written, loan modification

6    agreement, that omits or materially alters many of the contractual protections that

7    Chinatrust and the other secured creditors have under the original loan documents.

8

9    The question of whether modification of loan documents is appropriate, or  a

10   violates §1129(b)(2)(A)(i)(I) due to the drastic alteration of the creditor's lien,

11   requires consideration of the following factors: (1) whether the proposed terms and

12   covenants unduly harm the secured creditor with respect to its collateral position;

13   and (2) whether the inclusion of terms and conditions from the pre-bankruptcy loan

14   documents would unduly impair the debtor's ability to reorganize. *In re Am. Trailer &*

15   *Storage, Inc.*, 419 B.R. 412, 441 (Bankr. W.D. Mo. 2009)

16

17   This inquiry is necessarily very fact intensive and requires a sentence by

18   sentence analysis of the differences between the original loan documents and the

19   proposed loan modification agreements mandated by each Plan (and each Plan

20   appears to have a different form of loan modification agreement). It will also require

21   several hours of court time, for each secured creditor, to argue the merits as to how

22   each modification to the loan documents imposes harm on the secured creditor and

23   the effect of the inclusion or omission of such provision(s) on the ability to

24   reorganize.

25

26

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 13

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

1       Given the enormity of this inquiry, and the fact that at this point we do not

2  know which of the three proposed loan modification agreements will potentially be

3  operative, if any, Chinatrust believes it appropriate for the Court to defer ruling on

4  the propriety of the loan modification agreements until a decision has been made as

5  to which plan will be confirmed; then the parties will know which loan modification

6

7  agreement will be operative and the parties can specifically brief the issues raised by

8  the proposed loan modifications to the secured creditors' pre petition loan

9  documents.

10  DATED: December 30, 2010.

11

12                          ROUTH CRABTREE OLSEN, P.S.

13

14                      By: */s/ Steven K. Linkon*

15                        Steven K. Linkon,
                             Counsel for Chinatrust Bank

16

17

18

19

20

21

22

23

24

25

26

CHINATRUST BANK'S OBJECTION
TO CONFIRMATION - 14

ROUTH
CRABTREE
OLSEN, P.S.

13555 SE 36th St., Ste 300
Bellevue, WA 98006
Telephone: 425.458.2121
Facsimile: 425.458.2131

# EXHIBIT 1

#31282+

MERCO GROUP 5185 E. WASHINGTON

**This page is part of your document - DO NOT DISCARD**

06 0912987

**RECORDED/FILED IN OFFICIAL RECORDS**
**RECORDER'S OFFICE**
**LOS ANGELES COUNTY**
**CALIFORNIA**
**04/26/06 AT 08:00am**

## TITLE(S) :



L E A D    S H E E T

| FEE | | D.T.T. |
|---|---|---|
| FEE $ 93 HH  DAF $ 6.-  C-20    25    3T | | |

NOTIFICATION SENT $4

| CODE 20 | | |
|---|---|---|
| CODE 19 | | |
| CODE 9____ | | |

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**          **Number of AIN's Shown**

[ ][ ][ ] - [ ][ ][ ] - [ ][ ][ ]                    [ ][ ][ ]

**THIS FORM IS NOT TO BE DUPLICATED**

Exhibit ___1___
PAGE ___1___ OF __20__

LandAmerica Commercial Services

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

06 0912987    2

CHINATRUST BANK (U.S.A.)
22939 Hawthorne Boulevard
Torrance, California 90505
Attention: Edwin Duterte

Assessor's Parcel No. 5169-020-003

## DEED OF TRUST, ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust") is made to be effective as of April 13, 2006, between MERCO GROUP – 3185 E. WASHINGTON BOULEVARD, LLC, a Delaware limited liability company ("Trustor"), whose address is 761 Terminal Street, Building 1, Second Floor, Los Angeles, California 90021, and CHICAGO TITLE COMPANY, as Trustee ("Trustee"), for the benefit of CHINATRUST BANK (U.S.A.), a California banking corporation, as Beneficiary ("Lender").

THIS DEED OF TRUST ALSO CONSTITUTES A FIXTURE FILING UNDER DIVISION 9 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE AND COVERS GOODS WHICH ARE OR ARE TO BECOME FIXTURES ON THE REAL PROPERTY DESCRIBED ON EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF. TRUSTOR IS A RECORD OWNER OF AN INTEREST IN SAID REAL PROPERTY.

GRANT IN TRUST:

Trustor irrevocably grants, transfers and assigns to Trustee, in trust, for the benefit of Lender, with power of sale, all of Trustor's interest in that certain real property commonly known as: 3185 East Washington Boulevard, located in the City of Los Angeles, County of Los Angeles, State of California, described as:

SEE EXHIBIT A ATTACHED HERETO AND .
INCORPORATED HEREIN BY THIS REFERENCE.

TOGETHER WITH: All right, title and interest which Trustor now has or may later acquire in such real property and all appurtenances, easements, covenants, rights of way, tenements, hereditaments and appurtenances thereunto belonging or in any way appertaining thereto now or hereafter, and all of the estate, right, title, interest, claim, demand, reversion or remainder whatsoever of Trustor therein or thereto, at law or in equity, now or hereafter in possession or expectancy, including, without limitation, all mineral, oil, and gas rights and royalties and profits therefrom, all water and water rights and shares of stock pertaining to water and water rights, and all sewers, pipes, conduits, wires and other facilities furnishing utility or services to the real property (collectively, the "Land");

BN 814711v1

1

9500059-70

xhibit    1
JE    2    OF    25

*3*

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to all buildings, structures and improvements now or hereafter erected on the Land, including, without limitation, all plant equipment, apparatus, machinery and fixtures of every kind and nature whatsoever now or hereafter located on or forming part of said buildings, structures and improvements (collectively, the "Improvements"; the Land and Improvements being hereinafter sometimes collectively referred to as the "Premises");

TOGETHER WITH:  All right, title and interest which Trustor now has or may later acquire in and to the land lying in the bed of any street, road, highway or avenue now or hereafter in front of or adjoining the Premises;

TOGETHER WITH:  Any and all awards heretofore or hereafter made by any governmental authorities (federal, state, local or otherwise) to Trustor and all subsequent owners of the Premises which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street or any other injury to or decrease of value of the Premises, which said award or awards are hereby assigned to Lender;

TOGETHER WITH:  Any claims under and proceeds of any insurance policies by reason of or related to a loss of any kind sustained to the Premises, now or hereafter, whether or not such policies name Lender as an insured and whether or not such policies are required by Lender, and whether or not such claims thereunder are characterized as personal claims;

TOGETHER WITH:  Any and all unearned premiums accrued, accruing or to accrue, and the proceeds of insurance now or hereafter in effect with respect to all or any portion of the Premises;

TOGETHER WITH:  Any and all claims or demands which Trustor now has or may hereafter acquire against anyone with respect to any damage to all or any portion of the Premises;

TOGETHER WITH:  All goods, equipment, machinery, furniture, furnishings, trade fixtures, appliances, inventory, building materials, apparatus, utensils, vehicles, wiring, pipes, conduits, elevators, escalators, heating and air conditioning equipment, chattels and articles of personal property, including, without limitation, any interest therein now or at any time hereafter affixed to, attached to or used in any way in connection with or to be incorporated at any time into the Premises or placed on any part thereof wheresoever located, whether or not attached to or incorporated in the Premises, together with any and all accessions, accessories, attachments, and replacements thereof, appertaining and adapted to the complete and compatible use, enjoyment, occupancy, operation or improvement of the Premises;

TOGETHER WITH: All instruments, investment property, deposit accounts, accounts, contract rights, general intangibles, and other intangible property and rights now or hereafter relating to the foregoing property, or the operation thereof or used in connection therewith, including, without limitation, all options, letters of intent, and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any modifications thereof, and deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights, density bonus rights, and transferable development rights; all of Trustor's right, title, and interest in and to any awards, remunerations,

BN 814711v1

2

**06 0912987**

4

settlements, or compensation heretofore made or hereafter made by any and all courts, boards, agencies, commissions, offices, or authorities, of any nature whatsoever for any governmental unit (federal, state, local or otherwise) to the present or any subsequent owner of the foregoing property, including those for any vacation of, or change of grade in, any streets affecting the foregoing property and any and all licenses and privileges obtained by Trustor from non-governmental sources;

TOGETHER WITH:  All leases of the Premises, Personalty, Fixtures, or any part thereof, now or hereafter entered into and all right, title and interest of Trustor thereunder, including, without limitation, cash or securities deposited thereunder to secure performance by the lessees of their obligations thereunder (whether such cash or securities are to be held until the expiration of the terms of such leases or applied to one or more of the installments of rent coming due immediately prior to the expiration of such terms); all other rights and easements of Trustor now or hereafter existing pertaining to the use and enjoyment of the Premises; and all right, title and interest of Trustor in and to all declarations of covenants, conditions and restrictions as may affect or otherwise relate to the Premises;

TOGETHER WITH:  All permits, plans, licenses, specifications, subdivision rights, security interests, contracts, contract rights, public utility deposits, prepaid sewer and water hook-up charges, or other rights as may affect or otherwise relate to the Property (as hereinafter defined);

TOGETHER WITH:  All rents, income, issues and profits (subject, however, to the rights given in this Deed of Trust to Lender to collect and apply same), including, without limitation, the accounts, revenues, and proceeds of any business operation conducted by or on behalf of Trustor on or through the use of the Premises, prepaid municipal and utility fees, bonds, revenues, income, and other benefits to which Trustor may now or hereafter be entitled to, or which are derived from, the Property (as hereinafter defined) or any portion thereof or interest therein.

The foregoing listing is intended only to be descriptive of the property encumbered hereby, and not exclusive or all inclusive.  It is the intent of Trustor to encumber hereby all of its property located or to be located upon the above-described real property. Said real property (or the leasehold estate if this Deed of Trust encumbers a leasehold estate), buildings, improvements, appurtenances, Fixtures, Personalty, additions, accretions, and other property are herein referred to as the "Property."  As used herein, the term "Fixtures" shall include all articles of personal property hereinabove described, now or hereafter attached to, placed upon for a definite term, or otherwise used in connection with the Property, and shall include trade fixtures and goods which are or are to become fixtures. As used herein, the term "Personalty" shall include all furniture, furnishings, equipment, machinery, goods, contract rights, general intangibles, money, deposit accounts, instruments, accounts, leases, chattel paper and other personal property described in this Deed of Trust (other than Fixtures) of any kind or character now existing or hereafter arising or acquired, now or hereafter located upon, within or about the Property, or which otherwise pertains to the use, ownership, management, operation, construction, leasing and sale of the Property, and all products and proceeds thereof, and all of Trustor's right, title, and interest in and to all such property.

04/26/06

BN 814711v1                                    3                      06 0912987

Exhibit ____1____
PAGE____4____ OF ____26____

Trustor makes the foregoing grant to Trustee, and to Lender, as applicable, to hold the Property in trust for the benefit of Lender and for the purposes and upon the terms and conditions hereinafter set forth.

## FOR THE PURPOSE OF SECURING:

(1)    Payment of the sum of Nine Million Nine Hundred Fifty Thousand and No/100 Dollars ($9,950,000.00) together with interest thereon and certain additional costs and expenses related to or incurred in connection with or as provided in that certain Promissory Note ("Note") of even date herewith, in the original principal amount of Nine Million Nine Hundred Fifty Thousand and No/100 Dollars ($9,950,000.00), executed by Trustor, payable to Lender, or order, and all extensions, modifications or renewals thereof (including, without limitation, any extension, modification, or renewal of Note at a different rate of interest or on different terms);

(3)    Performance of each and every term, covenant and condition of that certain Loan Agreement of even date herewith by and between Trustor and Lender, and all modifications, renewals or extensions thereof ("Agreement");

(4)    Payment of all other sums, with interest, advanced, paid, or incurred by Lender or Trustee under the terms of this Deed of Trust to protect the Property or Lender's security interest therein;

(5)    Payment of such additional sums, with interest, as the then record owner of the Property may later borrow from Lender, in those instances in which the later obligations are evidenced by a promissory note or notes reciting that it or they are so secured (which additional obligations shall be referred to as "future advances" in this Deed of Trust); and

(6)    Trustor's performance of each agreement in this Deed of Trust.

## TRUSTOR AND LENDER AGREE AS FOLLOWS:

## RIGHTS AND DUTIES OF THE PARTIES.

1.    **Payment And Performance By Trustor**.  Trustor represents and warrants to and for the benefit of Lender and Trustee that Trustor holds good and marketable title of record to the Property in fee simple.  Trustor shall promptly: (a) pay when due all sums payable under the Note and all future advances; and (b) perform each and every term, covenant and condition of this Deed of Trust and any other obligation secured by this Deed of Trust.

2.    **Payment By Trustor Of Taxes And Other Impositions**.  The term "Taxes" shall mean all taxes, bonds and assessments, both general and special, affecting or levied upon the Property or any part thereof, assessments on water company stock, if any, all taxes or excises levied or assessed against Trustor, the Property, or any part thereof, in addition to or as a substitution in whole or in part for any real estate taxes or assessments, all taxes or excises measured by or based in whole or in part upon the rents, operating income, or any other factor relating to the Property, or any part thereof, and all license fees, taxes and excises imposed upon Lender (but not any federal or state income taxes imposed upon Lender) and measured by or

BN 81471lvl                              4                        **06 0912987**

Exhibit _____
PAGE _____ OF 2 6

based in whole or in part upon the obligations secured hereby. The term "Other Impositions" shall mean any fine, fee, charge, or other imposition in connection with the Property or Trustor, payment of which Lender shall deem to be necessary to protect, preserve, and defend Lender's interests hereunder. Trustor shall pay all Taxes, insurance premiums, and Other Impositions attributable to the Property, at least fifteen (15) days before delinquency directly to the payee thereof, or in such other manner as Lender may designate in writing. Trustor shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Trustor shall make payment directly, Trustor shall furnish to Lender receipts evidencing payments of Taxes at least ten (10) days before delinquency and shall promptly deliver to Lender receipts evidencing all other payments above required.

At the request of Lender after the occurrence of an Event of Default, or otherwise upon written agreement between Trustor and Lender, or as required by applicable law, Trustor shall pay to Lender, on each day on which monthly installments of principal and/or interest are payable under the Note, until the Note is paid in full, an amount equal to one-twelfth (1/12) of the sum of annual Taxes and Other Impositions, together with annual insurance premiums on all policies of insurance required by this Deed of Trust, plus additional amounts reasonably estimated by Lender for the purpose of paying future installments of Taxes, Other Impositions, and insurance premiums. In such event, Trustor further agrees to cause all bills, statements, or other documents relating to Taxes, Other Impositions, and insurance premiums to be sent or mailed directly to Lender. Upon receipt of such bills, statements, or other documents, and provided Trustor has deposited sufficient funds with Lender pursuant to this paragraph 2 and the Agreement, Lender shall pay such amounts as may be due thereunder out of the funds so deposited with Lender for that purpose, subject to Lender's rights to seize and apply said funds to satisfy, in whole or in part, any default by Trustor. If at any time and for any reason the funds deposited with Lender are or will be insufficient to pay such amounts as may then or subsequently be due, Lender shall notify Trustor and Trustor shall immediately deposit an amount equal to such deficiency with Lender. Notwithstanding the foregoing, nothing contained herein shall cause Lender to be deemed a trustee of said funds or to be obligated to pay any amounts in excess of the amount of funds deposited with Lender pursuant to this paragraph 2 and the Agreement. Lender shall not be obligated to pay or allow any interest on any sums held by Lender pending disbursement or application hereunder, and Lender may impound or reserve for future payment of Taxes, Other Impositions, and insurance such portion of such payments as Lender may in its absolute discretion deem proper, applying the balance on the principal of or interest on the obligations secured hereby. Should Trustor fail to deposit with Lender (exclusive of that portion of said payments which has been applied by Lender on principal of or interest on the indebtedness secured hereby) sums sufficient to fully pay such Taxes, Other Impositions, or insurance premiums, at least thirty (30) days before delinquency thereof, Lender may, at Lender's election, but without any obligation so to do, advance any amounts required to make up the deficiency, which advances, if any, shall be secured hereby and shall be repayable to Lender as herein elsewhere provided, or at the option of Lender, the latter may, without making any advance whatsoever, apply any sums held by it upon any obligation of Trustor secured hereby. Shall any default occur or exist on the part of Trustor in the payment or performance of any of Trustor's and/or any guarantor's obligation in connection with the Note, Lender may, at Lender's option, apply any sums or amounts in its possession or under its control, received pursuant hereto or as rents or income of the Property or otherwise, upon any indebtedness or obligation of the Trustor secured hereby in such manner and order as Lender may elect. The receipt, use or

BN 81471lv1                                        5                          06 0912987

Exhibit _____1_____
PAGE ____9____ OF ___2___



application of any such sums paid by Trustor to Lender hereunder shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust or any of the rights or powers of Lender or said Trustee under this Deed of Trust or any other obligation secured hereby.

In the event of the passage, after the date of this Deed of Trust, of any law or judicial decision deducting from the value of the Property for the purposes of taxation any lien thereon, or changing in any way the laws now in force for the taxation of deeds of trust or obligations secured by deeds of trust, or the manner of operation of any such Taxes so as to adversely affect the interest of Lender, or imposing payment of the whole or any portion of any Taxes upon Lender, then and in such event, Trustor shall bear and pay the full amount of such Taxes; provided that if for any reason payment by Trustor of any such new or additional Taxes would be unlawful or if the payment thereof would constitute usury or render the Note, or other indebtedness secured hereby, wholly or partially usurious under any of the terms or provisions of the Note, or this Deed of Trust, or otherwise, Lender may, at its option, upon thirty (30) days' written notice to Trustor, (i) declare the whole indebtedness secured by this Deed of Trust, together with accrued interest thereon, to be immediately due and payable, or (ii) pay that amount or portion of such Taxes as renders the Note, or other indebtedness secured hereby, unlawful or usurious, in which event Trustor shall concurrently therewith pay the remaining lawful nonusurious portion or balance of such Taxes.

   3.    **Trustor To Pay Ground Rents And Obligations That Could Result In Liens On The Property.**  Trustor shall fully and faithfully pay and perform each and every obligation, and otherwise satisfy all conditions and covenants, which are or may be secured by any deed of trust upon the Property, or any portion thereof, existing of record as of the date this Deed of Trust is recorded, and to which this Deed of Trust may be subordinate. Trustor shall pay at or prior to maturity all ground rents and any liens, charges and encumbrances that are, later become, claim to be or appear to Lender to be prior or superior to the lien of this Deed of Trust, including, without limiting the generality of the foregoing, any and all claims for (a) work or labor performed, (b) materials and services supplied in connection with any work of demolition, alteration, improvement of or construction upon the Property, and (c) fees, charges and liens for utilities provided to the Property.

   4.    **Trustor To Maintain Insurance.**  (a) Trustor shall maintain insurance covering the Property against loss or damage by fire and other risks as shall from time to time be required by Lender pursuant to the Agreement to Furnish Insurance executed by Trustor in favor of Lender of even date herewith. Lender shall be named as the primary loss payee under all of the insurance policies, and Trustor shall assure that Lender receive a certificate from each insurance company that acknowledges Lender's position as loss payee and that states that the insurance policy cannot be terminated as to Lender except upon thirty (30) days' prior written notice to Lender. (b) If such insurance, together with written evidence of the premium having been paid, are not delivered to Lender at least five (5) days prior to the expiration of such insurance, Lender shall have the right, but without obligation to do so, without notice to or demand upon Trustor and without releasing the Trustor from any obligation under this Deed of Trust, to obtain such insurance or like insurance through or from any insurance agency or company acceptable to it, pay the premium for such insurance, and add the amount of the premium to the loan secured by this Deed of Trust, and this amount shall bear interest at the applicable rate of interest set forth in the Note. Neither the Trustee nor Lender shall be responsible for such insurance or for the

BN 814711v1

6

06 0912987

Exhibit ____
PAGE ____ OF ____

collection of any insurance monies, or for any insolvency of any insurer or insurance underwriter. (c) In the event that the Property is sold to Lender at any trustee's sale under this Deed of Trust (see paragraph 17, below), Trustor hereby assigns to Lender all unearned premiums on all policies of insurance covering the Property and agrees that any and all unexpired insurance covering the Property shall inure to the benefit of and pass to Lender at the time of such Trustee's sale.

5.    **Insurance Proceeds, Condemnation Proceeds And Other Recoveries**.  (a) All settlements, awards, damages and proceeds received by Trustor or in which Trustor has an interest under any fire or other hazard insurance policy, for losses existing as of or occurring after the effective date of this Deed of Trust, or in connection with any condemnation for public use of or injury to the Property (or any part of or interest in the Property) are assigned to Lender and may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 5. (b) All causes of action, whether accrued before or after the date of this Deed of Trust, of any type for any damage or injury to the Property (or any portion of or interest in the Property), or in connection with the sale or other transaction being financed by the funds that are secured by this Deed of Trust, or in connection with or affecting the Property (or any portion of or interest in the Property), including causes of action arising in tort or contract and causes of action in fraud or concealment of a material fact, are assigned to Lender, and the proceeds of any such causes of action may, at the option of Lender, be applied by Lender as provided in section (c) of this paragraph 5. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of any such action or proceeding. Trustor agrees to execute such further assignments of any settlements, awards, damages and causes of action as Lender from time to time may request. (c) Settlements, awards, proceeds and damages (collectively, "Awards") received by Lender under the provisions of section (a) and section (b) of this paragraph 5, at the option of Lender, may be applied by Lender to the outstanding balance due on the Note, or any other obligation secured by this Deed of Trust, in such order as Lender may determine. The Award may be used by Lender, without reducing the principal balance of the Note or any other obligation secured by this Deed of Trust, to replace, restore or reconstruct the Property to a condition satisfactory to Lender. The Award may be released to Trustor, or any such amount may be divided in any manner among any such application, use or release. No such application, use or release of the Award shall cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to such notice.

6.    **Maintenance And Preservation Of The Property**.

(a)    Trustor shall: (i) keep the Property, and every portion thereof, in good condition and repair and replace from time to time, or at any time, any Fixtures, Personalty or other items comprising the Property which may become obsolete or worn out, with Fixtures, Personalty or other items of at least the same utility, quality and value, each such replacement to be free of any liens or security interests of any kind or character other than the lien of this Deed of Trust, or any other document or instrument securing the indebtedness hereunder; (ii) not remove or demolish the Property, or any part thereof; (iii) complete or restore promptly and in good and workmanlike manner the Property, or any part thereof, which may be damaged or destroyed; (iv) comply with and not suffer violations of (A) any and all laws, ordinances, rules, regulations, standards and orders, including, without limitation, making any alterations or

BN 814711v1

7

**06  0912987**

additions required to be made to, or safety appliances and devices required to be installed or
maintained in or about, the Property, or any portion thereof, under any such laws, ordinances,
rules, regulations, standards or orders now or hereafter adopted, enacted or made applicable to
the Property, or any portion thereof, and payment of any fees, charges or assessments arising out
of or in any way related to treatment of the Property, or any portion thereof, as a source of air
pollution, traffic, storm water runoff, or other adverse environmental impacts or effects, and (B)
any and all covenants, conditions, restrictions, equitable servitudes and easements, whether
public or private, of every kind and character, and (C) any and all requirements of insurance
companies and any bureau or agency which establishes standards of insurability, which laws,
covenants or requirements affect the Property and/or pertain to acts committed or conditions
existing thereon, or the use, management, operation or occupancy thereof by Trustor and anyone
holding under Trustor, including (but without limitation) such work of alteration, improvement
or demolition as such laws, covenants or requirements mandate; (v) not commit or permit waste
of the Property, or any portion thereof; (vi) do all other acts which from the character or use of
the Property may be reasonably necessary to maintain and preserve its value, including, without
limitation, keeping all plants, lawns and other landscaping in a good condition, and otherwise
performing such commercially reasonable upkeep and maintenance to the Property to insure that
the Property, and each part thereof, is maintained in a first-class manner and retains at all times a
first-class appearance and condition, such upkeep to include, without limitation, appropriate
measures to protect wood, stucco and concrete surfaces from weathering, deterioration and
aging, and to protect from and immediately remove graffiti or other defacement from such
surfaces; (vii) perform all obligations required to be performed in leases or conditional sales or
like agreements affecting the Property or the operation, occupation or use thereof (and, if not
previously assigned, in the event of default, all right, title and interest of Trustor under any such
leases, conditional sales or like agreements shall be automatically assigned to Lender hereunder,
together with any deposits made in connection therewith); (viii) make payment of any and all
charges, assessments or fees imposed in connection with the delivery, installation or maintenance
of any utility services or installations on, to or for the Property, or any portion thereof; (ix) not
create any deed of trust, liens or encumbrances upon the Property subsequent hereto, the parties
hereby having specifically bargained in contemplation of the fact that any subsequent
encumbrance upon the Property would adversely affect Lender's security interests hereunder; (x)
make no further assignment of rents of the Property; and (xi) execute and, where appropriate,
acknowledge and deliver such further documents or instruments as Lender or Trustee deem
reasonable to preserve, continue, perfect and enjoy the security provided for herein, including
(but without limitation) assignments of Trustor's interest in leases of the Property.

> (b)    Except as otherwise permitted under the Agreement, Trustor shall not
undertake or suffer to be made pursuant to section (a) of this paragraph 6, any material
alterations, additions, repairs, expansions, relocations, remodeling or demolition of, or structural
or other material changes in, any buildings, improvements, Fixtures or Personality comprising
the Property, without the prior written consent of Lender, which shall not be unreasonably
withheld. No material changes are to be made in any plans and/or specifications as approved by
Lender without Lender's prior written consent, which consent shall not be unreasonably
withheld. All such work shall be performed promptly and in good and workmanlike manner,
using first quality materials in conformity with plans and specifications approved in advance by
Lender, and shall be diligently prosecuted to completion free of liens and encumbrances, other



than this Deed of Trust and any other document or instrument evidencing or securing the indebtedness secured hereby.

(c)      Without limiting the generality of this paragraph (6), Trustor hereby warrants and represents to Lender and covenants with Lender that Trustor and the Property presently comply with, and will in the future comply fully with, all applicable federal, state and local laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, affecting Trustor's qualification to do business, the construction of any improvements to be located upon the Property, the sale, operation, leasing or financing of the Property and the intended occupancy, use and enjoyment thereof, including, but not limited to, all applicable subdivision laws, licenses and permits, building codes, zoning ordinances, environmental protection laws, flood disaster laws, and all laws pertaining to industrial hygiene and the environmental conditions on, under or about the Property, including, but not limited to, soil and groundwater condition. Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not in the future, use, store, manufacture, generate, transport to or from, or dispose of any toxic substances, hazardous wastes, radioactive materials, flammable explosives or related material on or in connection with the Property or the business of Trustor on the Property; except as are described in Exhibit B attached hereto and incorporated herein, and which are used, stored or maintained in full and complete compliance with all such laws ("Permitted Toxic Materials"). Trustor further warrants and represents to Lender and covenants with Lender that Trustor does not presently, and will not, permit any lessee or other user of the Property to use, store, manufacture, generate, transport to or from, release or dispose of any toxic substances, hazardous materials, hazardous wastes, radioactive materials, flammable explosives or related materials on or in connection with the Property or the business of said lessee or other user of the Property. Trustor further warrants and represents to Lender and covenants with Lender that as to the Permitted Toxic Materials, Trustor shall obtain and continue to maintain all necessary permits and approvals for the Permitted Toxic Materials, and comply with all laws, ordinances, rules and regulations, and all permits and approvals issued thereunder, pertaining thereto. ("Toxic substances," "hazardous materials" and "hazardous wastes" shall include, but not be limited to, such substances, materials and wastes which are or become regulated under applicable federal, state or local laws, ordinances, rules or regulations.) Without the prior written consent of Lender, Trustor shall not seek, make or consent to any change in the zoning, conditions of use, or any other applicable land use permits, approvals or regulations pertaining to the Property, or any portion thereof, which would constitute a violation of the warranties, representations and covenants herein contained, or would otherwise impair the ability of Trustor to complete construction of any improvements now underway or to be constructed, constituting the Property, or would change the nature of the use or occupancy of the Property. Within five (5) days of (i) any contact from any federal, state, or local governmental agency concerning any environmental protection laws, including, but not limited to, any notice of any proceeding or inquiry with respect to the presence of any hazardous wastes, toxic substances or hazardous materials on the Property or the migration thereof from or to other property, (ii) any and all claims made or threatened by any third party against or relating to the Property concerning any loss or injury resulting from toxic substances, hazardous wastes, or hazardous materials, or (iii) Trustor's discovery of any occurrence or condition on any property adjoining or in the vicinity of the Property that could cause the Property, or any part thereof, to be subject to any restrictions on the ownership, occupancy, transferability, or loss of the Property under any federal, state, or local laws, ordinances, rules, or regulations, Trustor shall deliver to

06 0912987


Exhibit ___1___
PAGE ___10___ OF ___26___

Lender a report regarding such contact and setting forth in detail and describing any action which Trustor proposes to take with respect thereto, signed by Trustor.

(d)    If Trustor has executed any unsecured agreement regarding hazardous materials containing any warranties and/or indemnities by Trustor in favor of Lender pertaining to the presence or release of hazardous and/or toxic materials or other similar substances upon, within or from the Property (hereinafter "Environmental Indemnity"), then the covenants, duties, and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous and/or toxic materials, shall be governed by the provisions of the Environmental Indemnity in addition to the provisions of this Deed of Trust; provided, however, that the provisions of the Environmental Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Environmental Indemnity shall not be secured by this Deed of Trust but shall be and remain unsecured obligations of the Trustor, unless expressly otherwise therein provided.

(e)    Trustor shall deliver to Lender such affidavits, reports, certificates or other written instruments as may be requested by Lender, in Lender's sole and absolute opinion and judgment, pertaining to Trustor's compliance with this paragraph 6. Lender may conclusively assume that the statements, facts, information and representations contained herein and/or in any affidavits, orders, receipts or other written instruments that are filed with Lender or exhibited to it, are true and correct. Lender may rely thereon without any investigation or inquiry. By accepting or approving anything required to be observed, performed, fulfilled, or given to Lender pursuant to this paragraph 6, Lender shall not be deemed to have warranted or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any term, provision or condition thereof, or of Trustor's compliance with the terms of this Deed of Trust, and such acceptance or approval thereof shall not be or constitute any warranty or representation to anyone with respect thereto by Lender.

7.    **Legal Actions And Payment Of Related Costs**. Trustor shall appear in and defend any action or proceeding that may, in the Lender's judgment, adversely affect the Lender's security interest under this Deed of Trust or any of the rights or powers of Lender or Trustee under this Deed of Trust. Whether or not Trustor so appears or defends, Trustor shall pay all costs and expenses, including, without limitation, cost of evidence of title and attorneys' fees, that are incurred by Trustor, Lender or Trustee in any such action or proceeding in which Lender or Trustee may appear, by virtue of being made a party defendant or otherwise, and irrespective of whether the interest of Lender or Trustee in the Property is directly questioned by such action or proceeding or whether Lender's rights or interests are otherwise adversely affected thereby, or whether Lender is or shall become a party, including by way of intervention. Trustor promises and agrees to give Lender notice in writing of the pendency of any such action or proceeding promptly, but in any event no later than five (5) days, after Trustor first obtains knowledge of the pendency of such action or proceeding. Trustor shall cooperate with Lender in any action that is brought by Lender to protect its security interest under this Deed of Trust. Trustor will, upon written demand by Lender, commence any action or proceeding reasonably required to protect or facilitate Lender's recovery of Awards under paragraph 5 of this Deed of Trust. If Trustor fails to bring any such action or proceeding, then Lender may, but need not, do so, and Trustor shall pay to Lender all costs, expenses and attorneys' fees that are incurred by


Exhibit _____
PAGE _____ 11 _____ OF _____ 2(

Lender in doing so. Whenever, under this Deed of Trust, or any other document or instrument evidencing or securing the indebtedness secured hereby, Trustor is obligated to appear in and defend Lender or defend or prosecute any action or proceeding, Lender shall have the right of full participation in any such action or proceeding, with counsel of Lender's choice, and all costs and expenses incurred by Lender in connection with such participation (including, without limitation, reasonable attorneys' fees) shall be reimbursed by Trustor to Lender immediately upon demand. In addition, Lender shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor, which approval shall not be unreasonably withheld. All costs or expenses required to be reimbursed by Trustor to Lender hereunder shall, if not paid upon demand by Lender, thereafter bear interest at the applicable rate of interest set forth in the Note. As used herein, "proceeding" shall include litigation (whether by way of complaint, answer, cross-complaint, counter claim or third party claim), arbitration and administrative hearings or proceedings, and shall include commencement of any case or the filing of any petition for relief or other action under any Chapter of the U.S. Bankruptcy Code.

8. **Lender's Rights To Inspect The Property.** Lender and its agents, employees and contractors, may enter upon the Property at any reasonable time to inspect the Property for any purpose relating to Lender's rights and interests under the terms of this Deed of Trust, including, but not limited to, Trustor's compliance with the terms of paragraph 6.

9. **Substitution Of Trustee.** From time to time, by an instrument signed and acknowledged by Lender, and recorded in the Office of the Recorder of the County in which the Property is located, Lender may appoint a substitute trustee or trustees in place of the Trustee. Such instrument shall refer to this Deed of Trust and shall set forth the date and instrument number or book and page of its recordation. Upon recordation of such instrument, the Trustee shall be discharged and the new trustee so appointed shall be substituted as Trustee under this Deed of Trust with the same effect as if originally named Trustee in this Deed of Trust. An instrument recorded pursuant to the provisions of this paragraph 9 shall be conclusive proof of the proper substitution of such new Trustee.

10. **Miscellaneous Powers Of Lender And Trustee.** In addition to any other powers granted in this Deed of Trust to the Trustee, from time to time, upon the written request of Lender and upon the presentation of this Deed of Trust and any obligation secured by this Deed of Trust for endorsement, and without affecting any obligation secured by this Deed of Trust or the performance of the obligations set forth in this Deed of Trust, the Trustee may, without liability and without notice to any person: reconvey all or any part of the Property to Trustor, consent to the making of any map or plat of the Property, join in granting any easement on the Property, join in any agreement subordinating the lien of this Deed of Trust, release any obligation secured by this Deed of Trust, in whole or in part, with regard to any Trustor, extend or renew the Note or any other obligation secured by this Deed of Trust, accept or release any additional security under this Deed of Trust, or accept and release the guaranty of any additional person or any obligation secured by this Deed of Trust.

11. **Assignment And Collection Of Rents.** (a) Trustor hereby assigns absolutely to Lender the rents of the Property, with a revocable license to collect such rents as they become due and payable, prior to any default by Trustor under paragraph 14 of this Deed of Trust, being

BN 814711v1                                11                     **06 0912987**

Exhibit ____
PAGE ____ OF ____

retained by Trustor.  (b) Upon any default by Trustor under paragraph 14 of this Deed of Trust, such license will, automatically, be deemed revoked without the necessity for any act or notice by Lender, and Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and may collect the rents of the Property, and, after so taking possession, shall be entitled to collect any rents that are past due. Lender has, however, no duty to produce rents from the Property nor any responsibility for pursuing or collecting claims or rights of Trustor.  If Trustor, at or immediately prior to such taking of possession by or on behalf of Lender, has operated a business upon the Property other than the rental thereof, the authority granted herein to so take possession of the Property shall also include the authority and power to take possession of the receipts of such business and, if appropriate, to operate such business, and the receipts thereof shall be deemed herein to be a form of rents.  All rents collected by Lender or the receiver shall be applied first to payment of the reasonable costs of management of the Property and of collection of rents, including, but not limited to, costs and expenses of any receivership and attorneys' fees incurred by Lender in connection with the receivership, and then to the Note (in such order as Lender may determine) and any other obligations secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.  (c) At any time, whether or not an event of default exists under this Deed of Trust, or any other agreement or obligation secured by this Deed of Trust, Trustor shall, on demand, deliver to Lender from time to time all security deposits made by lessees to Trustor under the terms of any lease of all or part of the Property.  These funds shall be held by Lender without interest payable to Trustor and as a part of and commingled with Lender's general funds. These funds, however, will be repayable to lessees pursuant to the provisions of the leases under which security deposits are made.  In the event of any conflict between the provisions of this paragraph 11 and the provisions of a specific separate assignment of rents and/or assignment of lease(s), the provisions of the specific assignment(s) shall be deemed to govern over the provisions of this paragraph.  (d)  Trustor shall not enter into any lease of the Property, or any portion thereof, without the prior written consent of Lender.

12.    **Reconveyance Of The Property**.  Upon the written request of Lender stating that the Note and all other obligations secured by this Deed of Trust have been discharged, and upon surrender of this Deed of Trust, the Note or any other notes or instruments evidencing such other obligations to the Trustee, and upon payment of the Trustee's fees, the Trustee shall reconvey, without warranty, the Property or that portion of the Property then held by the Trustee under this Deed of Trust. The recitals in any such reconveyance of any matters or facts shall be conclusive proof of the truthfulness of such matters or facts.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto." When the Property has been fully reconveyed, the last such reconveyance shall operate as a reassignment of all of the rents of the Property to the person or persons legally entitled to such rents.  Five (5) years after issuance of such full reconveyance, the Trustee may destroy this Deed of Trust and any such notes, unless directed in such request to retain them.  NOTWITHSTANDING ANY PROVISION TO THE CONTRARY CONTAINED IN THIS DEED OF TRUST, TRUSTOR SHALL HAVE THE RIGHT TO REQUEST, AND BENEFICIARY SHALL CAUSE THE TRUSTEE TO ISSUE, PARTIAL RECONVEYANCE OF THE LIEN OF THIS DEED OF TRUST, UPON AND SUBJECT TO SATISFACTION OF THE PROVISIONS OF SECTION 3.12 OF THE AGREEMENT.

BN 8147l1v1                                         12                      **06 0912987**



Exhibit_____
PAGE_____ OF_____

13.    <u>**Change Of Lender's Records**</u>.  In the event Trustor requests Lender to change any of its records relating to the Property, the Note or this Deed of Trust (including, but not limited to, changes in mailing address or ownership of the Property), Trustor shall pay a fee prescribed by the Lender to so change its records.

## ACCELERATION AND DEFAULT.

14.    <u>**Conditions Under Which Lender May Declare A Default By Trustor**</u>.  A default under this Deed of Trust shall occur in the event that:  (a) any sum payable under the Note are not made when due; (b) any sum the payment of which is required or secured by this Deed of Trust is not made when due; (c) Trustor fails to perform any other obligation required to be performed by Trustor under this Deed of Trust or secured by this Deed of Trust; (d) the Property is or becomes subject to any proceedings for abatement of a public nuisance; (e) any material information given to Lender by Trustor, intended to or which does, in fact, induce the granting of any loan secured by this Deed of Trust, was not true in any respect when given, or any material information requested or required by Lender is withheld or concealed from such application by Trustor; or (f) an Event of Default under the Agreement occurs.

15.    <u>**Lender's Right To Require Immediate Payment In Full**</u>.  In the event: (a) of a default under this Deed of Trust, or (b) except as permitted by the Agreement, Trustor sells, transfers, grants, hypothecates, conveys, encumbers, alienates, or assigns (voluntarily, involuntarily, or by operation of law), enters into a contract of sale of, or leases, the Property, or any portion of the Property or any interest therein, or any interest in Trustor, Lender may, at its option and without further notice to any person, declare the entire principal balance and any other obligations under the Note and/or any other obligations secured by this Deed of Trust, together with accrued interest thereon and any prepayment penalties, immediately due and payable.  Trustor shall provide to Lender a complete and exact duplicate copy of any contract providing for the transfer of any interest in the Property, or any deed of trust or similar instrument creating a lien or encumbrance on the Property, immediately upon the execution of any such contract, deed of trust, or other instrument.  No waiver of the Lender's right to accelerate shall be effective unless it is in writing.

16.    <u>**Lender's Right To Perform Acts Trustor Fails To Perform And Indemnification**</u>.

(a)    If Trustor fails to make any payment when due or to do any act required to be made or performed under this Deed of Trust, then Lender or Trustee, without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, but are not required to, make or do the same in such manner and to such extent as either may deem necessary or desirable to protect the security of this Deed of Trust.  Lender and Trustee are authorized to (i) enter upon the Property for such purposes; (ii) appear in and defend any action or proceeding purporting to affect the security of this Deed of Trust or the rights or powers of Lender or Trustee; and (iii) pay, purchase, contest or compromise any encumbrance, charge, lien or claim of lien, in whole, in part and/or in installments, which in the judgment of either Lender or Trustee appears to be prior or superior to the lien of this Deed of Trust, the judgment of Lender or Trustee being conclusive of the matter as among the parties to this Deed of Trust.  In exercising the above powers, Lender or Trustee may pay necessary costs and

BN 814711v1

13

06 0912987

expenses, employ counsel, consultants, any other agents or independent contractors that Lender believes is necessary, in Lender's sole judgment, and pay fees, compensation, and costs thereof. Trustor promises and agrees to pay immediately upon demand all reasonable amounts so expended by Lender or Trustee (including all such costs, expenses and attorneys' fees) under this paragraph 16, together with any fees charged by Lender in regard to such activity by Lender and interest from the date of expenditure at the applicable rate of interest set forth in the Note, with payment of such amounts being secured by this Deed of Trust.

(b)    Trustor hereby indemnifies and agrees to hold harmless Lender and Trustee and their directors, officers, shareholders, agents and employees (individually and collectively the "Indemnitees") from and against:  (i) any and all claims, demands, actions, liabilities, or causes of action that are asserted against any Indemnitee by any person or entity if the claim, demand, action, liability, or cause of action, directly or indirectly, relates to a claim, demand, action, liability, or cause of action that the person or entity has or asserts based upon, arising out of, or in connection with, the Property, the conduct of Trustor, any action or non-action by Trustor in connection with the Property, or this Deed of Trust; and (ii) any and all claims, liabilities, losses, costs, or expenses (including court costs and attorneys' fees) that any Indemnitee suffers or incurs as a result of the assertion of any such claim, demand, action, liability or cause of action.  The foregoing indemnity shall survive the release of this Deed of Trust, whether such release is as a result of payment of the indebtedness secured hereby, foreclosure, acceptance of a deed in lieu of foreclosure, other action, or otherwise.

17.    **Trustee's Rights And Duties To Sell The Property**.  (a) In the event of a default under this Deed of Trust by Trustor, Lender may then or thereafter execute or cause the Trustee to execute a written notice of such default and of its election to have the Property sold to satisfy the obligations secured by this Deed of Trust.  Such notice shall be recorded in the office of the Recorder of the County where the Property is located.  (b) When the minimum period of time required by law following recordation of such notice of default has elapsed, and notice of sale having been given as then required by law, the Trustee, without demand upon Trustor, shall sell the Property at the time and place of sale fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as Lender may determine, at public auction to the highest bidder for cash or a cash equivalent acceptable to Trustee, in lawful money of the United States, payable at time of sale. Lender shall have the right, at its option, to offset Lender's bid(s) to the extent of the total amount due Lender, including but not limited to all Trustee's fees, costs, expenses (including, without limitation, premiums for guarantees or other evidence of title), and other amounts secured by this Deed of Trust.  The Trustee may postpone the sale of all or any portion of the Property by public notice at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Additionally, Lender, from time to time before any Trustee's sale, may rescind or cause to be rescinded any notice of default and election to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale.  The exercise by Lender of such right of rescission shall not constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Lender to execute and deliver to Trustee, as above provided, other declarations or notices of default and demand for sale of the Property to satisfy the obligations hereof, nor otherwise affect any provision, covenant or condition of the Note or the Agreement or any of the rights, obligations or remedies of Trustee to

Exhibit_____
PAGE_____15____OF___20__

Lender. (c) The Trustee shall deliver to the purchaser at such sale its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. (d) Any person, including Trustor, Lender or Trustee may purchase at such sale. After deducting all costs, fees and expenses of the Trustee and of this Deed of Trust, including, without limitation, cost of evidence of title and attorneys' fees in connection with the sale, the Trustee shall apply the proceeds of the sale to the payment of: first, all sums expended under the terms of this Deed of Trust not then repaid, with interest at the applicable rate of interest set forth in the Note; second, the payment of all other sums then secured by this Deed of Trust; and third, the remainder, if any, to the person or persons legally entitled to such proceeds.

18.    **Other Remedies If Trustor Defaults**. (a) All of the remedies of Lender and Trustee set forth in this Deed of Trust are intended to be in addition to and not in substitution for any other remedies available to Lender or Trustee at law or in equity. It is expressly understood and agreed that Lender or Trustee, or both, may bring suit in any court of competent jurisdiction to foreclose this Deed of Trust by judicial action or to obtain specific performance of the assignment of rents contained in this Deed of Trust. In connection with any such action, Lender or Trustee may apply to the court for the appointment of a receiver to take possession of the Property, operate the business of Trustor being conducted on the Property, utilize and enforce all agreements of Trustor in respect of the operation of such business, the utilization of any such agreement being at the election of Lender or the receiver, to be exercised at any time after declaration of a default hereunder, receive the rents of the Property and apply the same to the obligations of Trustor under this Deed of Trust and under the Note (in such order as Lender may determine) and any other obligations secured by this Deed of Trust. (b) Neither the acceptance of this Deed of Trust nor its enforcement in any manner shall prejudice the right of Lender or Trustee to realize upon or enforce any other security now or later held by Lender or Trustee. Trustor promises and agrees that the rights of Lender and Trustee under this Deed of Trust, and with respect to any other security now or later held by Lender, may be enforced in such order and manner as Lender and Trustee, or either of them, may determine in their sole and absolute discretion.

19.    **Trustor's Obligations And Lender's Rights Not Waived**. By accepting payment of any sum secured by this Deed of Trust after its due date, or by accepting late performance of any obligation secured by this Deed of Trust, or by making any payment or performing any act on behalf of Trustor that Trustor was obligated to make or perform under this Deed of Trust but failed to make or perform, or by adding any payment so made by Lender to the Note secured by this Deed of Trust, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare default for failure to make any such prompt payment or to perform any such act. No failure or delay on the part of Lender, Trustee, or any holder of the Note or this Deed of Trust in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any such power, right or privilege shall preclude other or further exercise thereof or of any other right, power or privilege. No exercise of any right or remedy of Lender or Trustee under this Deed of Trust shall constitute a waiver of any other right or remedy contained in this Deed of Trust or provided by law. All rights and remedies existing under this Deed of Trust are cumulative to, and not exclusive of, any rights or remedies otherwise available.

06 0912987

Exhibit _____
PAGE _____ OF _____

20.  **Successors In Interest**.  The terms, agreements, and conditions contained in this Deed of Trust shall apply to, be binding upon and inure to the benefit of, all of the parties to this Deed of Trust, their heirs, personal representatives, successors and assigns.

21.  **Statements Concerning The Status Of The Loan**.  From time to time as required by law, Lender shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust.  Trustor promises and agrees to pay upon demand for such statements the maximum amount permitted by law.

22.  **Trustee's Obligations**.  The Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The Trustee is not obligated to notify any party to this Deed of Trust of pending sale under any other deed of trust or of any action or proceeding in which Trustor, Lender or Trustee is a party unless such action is brought by the Trustee.  The Trustee shall not be obligated to perform any act required of it under this Deed of Trust unless the performance of such act is requested in writing and the Trustee is indemnified against loss, costs, liability and expense.

23.  **Obligations Of Trustor Are Joint And Several; Gender And Number**.  If more than one person has executed this Deed of Trust as "Trustor," the obligations of all such persons under this Deed of Trust shall be joint and several.  In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

24.  **No Offsets**.  No offset or claims which Trustor now or in the future may have against Lender shall relieve Trustor from making payments or performing any other obligations contained in or secured by this Deed of Trust.  Despite any right or option that may be granted to Lender or Trustee by this Deed of Trust or in the evidence of any obligations secured by this Deed of Trust or document ancillary to this Deed of Trust to receive, collect, accept deposit of, use, apply or in any other manner obtain or dispose of any funds or property, the same shall not be deemed to constitute any credit against or to satisfy any obligation secured by this Deed of Trust, in whole or in part, unless and until such funds or property shall be both so obtained and expressly so applied by Lender or Trustee to such satisfaction of such obligation and then only in the manner and to the extent of such application.

25.  **Governing Law**.  The loan secured by this Deed of Trust is made pursuant to the laws of the State of California, and the rules and regulations promulgated thereunder.  The loan contracts between the parties, including this Deed of Trust, shall be construed and governed by such laws, rules, and regulations.

26.  **Agreement Changed Only By Writing**.  This Deed of Trust cannot be changed except by agreement in writing signed by Trustor and Lender.

27.  **Time**.  Time is of the essence in connection with all of Trustor's obligations under this Deed of Trust.

28.  **Notice**.  Except for any notice required under applicable law to be given in another manner: (a) any notice to Trustor provided for in this Deed of Trust shall be addressed to Trustor at the address of Trustor set forth below, or to such other address as Trustor may

BN 814711v1                                    16            **06  0912987**

Exhibit _____
PAGE ____17____ OF ____2__

designate by notice to Lender pursuant to the terms of paragraph 28(c), and (b) any notice to
Lender provided for in this Deed of Trust shall be addressed to Lender as follows:

Lender:

> CHINATRUST BANK (U.S.A.)
> 22939 Hawthorne Boulevard
> Torrance, California 90505
> Attention: Edwin Duterte

Trustor:

> MERCO GROUP – 3185 E. WASHINGTON BOULEVARD, LLC
> 761 Terminal Street
> Building 1, Second Floor
> Los Angeles, California 90021
> Attn: Mr. Richard Meruelo

and to such other address as Lender may designate by notice to Trustor, pursuant to the
terms of paragraph 28(c).

(c)    Except as otherwise provided by law, all notices, requests, demands,
directions, and other communications provided for in this Deed of Trust must be in writing and
sent by facsimile and mail or certified mail to the appropriate party at its respective address. Any
notice given by facsimile must be confirmed within forty-eight (48) hours by letter mailed via
regular mail to the appropriate party at its respective address. If any notice is given by certified
mail, it will be effective when deposited in the mails with first-class or airmail postage prepaid;
or if given by facsimile and mail, when the facsimile is sent.

29.    **Titles, Captions, And Headings.** The titles, captions, and headings to paragraphs
contained in this Deed of Trust are for assistance in identification only and are not to be
considered part of the substance of the provisions of this Deed of Trust.

30.    **Severability Of Provisions.** If any paragraph, clause or provision of this Deed of
Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or
unenforceable, such decision shall affect only those paragraphs, clauses or provisions so
construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of
this Deed of Trust.

31.    **Acknowledgment Of Trustor's Understanding Of Deed Of Trust.**    The
foregoing terms, provisions and conditions of this Deed of Trust have been read and are
understood by Trustor. Trustor hereby acknowledges receipt of a copy of this Deed of Trust.

32.    **Lender's Reliance.**    The financial accommodations made or to be made by
Lender to Trustor are being made, renewed or extended, as applicable, by Lender to Trustor at
the request and urging of Trustor and this Deed of Trust is being given in consideration of such
financial accommodations, and Lender may rely upon the validity and enforceability of this Deed
of Trust in making such financial accommodations.

BN 814711v1                                    17                  06 0912987

33.    **Security Agreement**.

(a)    Security Interest and Fixture Filing. This Deed of Trust shall also constitute and serve as a security agreement and financing statement for Personalty, Fixtures, and any of the Property in which a security interest can be perfected under and within the meaning of Division 9 of the California Uniform Commercial Code, and shall grant to Lender, until the obligations secured hereby shall be satisfied, a first priority security interest, including but not limited to a fixture filing, pursuant to Division 9 of the California Uniform Commercial Code with respect to the Personalty and Fixtures. To this end, Trustor shall and hereby does grant to Lender, a first priority security interest in, under and to the Personalty, Fixtures, and any of the Property in which a security interest can be perfected under Division 9 of the California Uniform Commercial Code.

(b)    Financing Statements. Trustor shall deliver to Lender, in form and substance satisfactory to Lender in its sole judgment, such financing statements and further assurances as Lender may, from time to time, require to create, perfect, and preserve Lender's security interest herein granted, and Lender may cause such financing statements and assurances to be recorded and filed at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

(c)    Remedies on Default. Upon default, Lender may, at its option: (i) exercise any remedy permitted by law or in equity, including without limitation, all the rights and remedies of a secured party under the California Uniform Commercial Code in any jurisdiction where enforcement is sought, whether in California or elsewhere; (ii) notify any parties obligated on any of the Personalty or Fixtures to make payment to Lender and enforce collection thereof; (iii) apply any sums received or collected from or on account of any Personalty or Fixtures, including the proceeds of any sales thereof, to the payment of any indebtedness of Trustor to Lender in any order, including the costs and expenses incurred in preserving and enforcing the rights of Lender and attorneys' fees, in such order and manner as Lender in Lender's sole discretion determines. All of Lender's rights and remedies shall be cumulative and not exclusive.

(d)    Fixture Filing. This Deed of Trust shall constitute a fixture filing under the California Uniform Commercial Code. Lender's address from which information concerning Lender's security interest can be obtained is set forth in paragraph 28 above, subject to change as therein provided.

34.    **Sale Of Interest**. Trustor acknowledges and accepts that Lender may, at any time, in Lender's sole discretion sell all or any portion of Lender's interest in the Note and this Deed of Trust to one or more third parties. The sale of all or any part of Lender's interest in the Note or Deed of Trust shall not relieve Trustor of any of Trustor's obligations hereunder.

35.    **Separate Property**. Any married person executing this Deed of Trust in an individual capacity agrees that recourse may be had to his or her separate property for satisfaction of all sums secured under this Deed of Trust.

06  0912987

Exhibit____
PAGE____ OF____

*20*

36.   **Books And Records**.  Trustor shall keep and maintain at all times at Trustor's address stated above, or at such other place as Lender may approve in writing from time to time, complete and accurate books or accounts and records adequate to reflect correctly the results of the operation of the Property and copies of all written contracts, leases, rental agreements, concessions, licenses, and other documents and instruments which affect the Property, or any portion thereof or interest therein.  Such books, records, contracts, leases, documents, and other instruments shall be subject to examination and inspection by Lender, or Lender's agents or designated auditors, at any reasonable time.

37.   **Financial Statements**.  Trustor, and any other person or entity liable for any of the obligations of Trustor hereunder, or to which the Deed of Trust refers, shall, upon Lender's request, or as provided in the Agreement, provide to Lender complete and accurate financial statements presenting the financial condition of Trustor and each such obligor as of the date of such financial statements are prepared and delivered to Lender, including but limited to all audited financial statements and accompanying opinions, qualifications, and footnotes of the auditor preparing them, or in the absence of such audited financial statements, their respective consolidated and consolidated balance sheets, income statements, sources and uses of funds, and such other supplemental reports and schedules as Lender shall require.  All such financial statements shall be prepared in accordance with generally accepted accounting principles consistently applied, or in such other form and content as Lender may permit, in its sole opinion and judgment.  All such financial statements shall contain a certification signed by one or more authorized representative of Trustor and such other obligors certifying the completeness and accuracy of all information therein, without exception.

38.   **Inspection, Appraisal, And Assessments**.  Lender may, at any time and from time to time and as and when Lender deems it to be appropriate, whether or not Trustor is then in default, (a) enter upon the Premises, directly or through one or more agents or independent contractors, to inspect any and all Property which is security for the obligations herein described, and (b) cause to be performed and prepared one or more appraisals and/or preliminary or other environmental assessments of the Property, or any portion thereof, in form and content satisfactory to Lender and meeting all requirements or standards of applicable laws, regulations, ordinances, orders, and generally recognized industry standards relating thereto.  All reasonable costs and expenses incurred by Lender or Trustee in connection with any such inspection, appraisal, or assessment, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.  All reports and other evidence and work papers relating to such inspections, appraisals, and assessments, shall be and remain the sole property of Lender, and Trustor hereby waives any right which Trustor may have by agreement or by operation of law to receive an original or duplicate thereof.  Any appraisal or assessment may, at Lender's sole election, be relied upon by Lender in taking any action Lender deems to be necessary or appropriate in connection with the enforcement of its rights and exercise of remedies under or by virtue of this Deed of Trust, or under any obligation secured hereby, or under any separate obligation pertaining to the Property, or in connection with the protection, maintenance, preservation, remediation, restoration, or repair of the Property.  Unless Lender otherwise expressly declares in writing, neither said appraisal nor assessment shall constitute conclusive evidence of the value or condition of the Property or as a representation or warranty by Lender as to the value or condition of the Property, and may not be used or relied upon by Trustor for any purpose.

BN 814711v1                                  **19**                    **06  0912987**

Exhibit _____ 1 _____
PAGE _____ 7 ___ OF ___ 26 ___

39.   **Definitions**.  All terms not defined herein shall be defined as set forth in the
Agreement.

THE UNDERSIGNED TRUSTOR REQUESTS THAT A COPY OF ANY NOTICE OF
DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT
TRUSTOR'S ADDRESS SET FORTH ABOVE.

[SIGNATURE PAGE FOLLOWS]

06 0912987

Exhibit ___i___
PAGE ___21___ OF ___

IN WITNESS WHEREOF, Trustor has executed this Construction Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing as of the day and year set forth above.

**TRUSTOR:**

MERCO GROUP – 3185 E. WASHINGTON
BOULEVARD, LLC,
a Delaware limited liability company

By: _____
Name: Richard Meruelo, as trustee of
        the Richard Meruelo Living Trust
        Under Declaration of Trust dated
        September 15, 1989
Title: Sole Member

(ALL SIGNATURES MUST BE ACKNOWLEDGED)

BN 814711v1                           21                    06 0912987

Exhibit _____
PAGE _____ OF _____

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

*23*

State of __California__

County of __Los Angeles__

On __April 5, 2006__ before me, __Adela Barrenos__ Notary Public
                                            Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared __Richard Meruelo__
                                            Name(s) of Signer(s)

[X] personally known to me -OR- [ ] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

> ADELA BARRENOS
> COMM. #1410000
> Notary Public-California
> LOS ANGELES COUNTY
> My Comm. Exp. April 8, 2007

WITNESS my hand and official seal.

_Adela Barrenos_
Signature of Notary Public

------------------------------OPTIONAL------------------------------
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: _____

Document Date: _____    Number of Pages: _____

Signer(s) Other Than Named Above: _____

### Capacity(ies) Claimed by Signer(s)

Signer's Name: _____        Signer's Name: _____

- [ ] Individual
- [ ] Corporate Officer
- [ ] Title(s): _____
- [ ] Partner - [ ] Limited  [ ] General
- [ ] Attorney-In-Fact
- [ ] Trustee
- [ ] Guardian or Conservator
- [ ] Other:

RIGHT THUMBPRINT OF SIGNER
Top of Thumb here

- [ ] Individual
- [ ] Corporate Officer
- [ ] Title(s): _____
- [ ] Partner - [ ] Limited  [ ] General
- [ ] Attorney-In-Fact
- [ ] Trustee
- [ ] Guardian or Conservator
- [ ] Other:

RIGHT THUMBPRINT OF SIGNER
Top of Thumb here

Signer Is Representing: _____        Signer Is Representing: _____

04/26/06

06 0912987

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Parcel 1:

All that portion of Lot 3 of Subdivision of the Martinez Tract, partly within the City of Los Angeles, and partly within the City of Vernon, County of Los Angeles, State of California, as per map recorded in Book 55, Page 24 of Miscellaneous Records, in the office of the County Recorder of said County, lying southwesterly of a line which is parallel within and 71.84 feet Southwesterly of the Southwesterly line of the right of way of the Los Angeles and Salt Lake Railway, formerly Los Angeles Terminal Railway.

Said land is shown on a Licensed Surveyors Map recorded in Book 147 Page 11 of Record of Survey.

Parcel 2:

An easement 25 feet in width for railway spur tract purposes but not including the right to store cars, upon and across the Northeasterly 71.84 feet of that portion of said Lot 3, lying Southwesterly of the Southwesterly line of said right of way of the Los Angeles and Salt Lake Railway Company.

06  0912987

legal rev. (010698)

**EXHIBIT A**
LEGAL DESCRIPTION

06 0912987

## EXHIBIT B

*2 6*

### PERMITTED TOXIC MATERIALS

There shall not be any hazardous and/or toxic materials at, on, in, around and/or under the Property and improvements, other than those as used in the regular course of business and for which Trustor has licenses from the proper authority, such as a government agency or regulatory body, and further, notwithstanding the foregoing, Trustor hereby expressly covenants, represents and warrants to Lender that all such materials shall be used or stored in strict compliance with the provisions as set forth in paragraph 6(c) of said Deed of Trust for compliance with all state and federal laws, rules, regulations, relating to or governing the use, storage and/or presence of toxic substances and/or hazardous materials.

Notwithstanding any provisions to the contrary contained in this Exhibit B and paragraph 6(c) of the Deed of Trust, in the event Trustor has executed any unsecured Environmental Indemnity in favor of Lender pertaining to the presence or release of hazardous materials and/or toxic substances or other similar substances upon, within or from the Property, then the covenants, duties and liabilities of Trustor, and the rights and remedies of Lender with respect to the subject of hazardous materials and/or toxic substances, shall be governed by the provisions of the Environmental Indemnity in addition to the provisions of the Deed of Trust; provided, however, that the provisions of said Environmental Indemnity shall prevail and exclusively govern the subject matter to the extent of any duplication, conflict or inconsistency between such provisions and the provisions of this Deed of Trust, and payment or performance of Trustor's obligations under said Environmental Indemnity shall not be secured by this Deed of Trust, but shall be and remain unsecured obligations of the Trustor.

04/26/06

**06 0912987**

Exhibit___1___
PAGE___2 6___ OF___2 6___

# EXHIBIT 2

**This page is part of your document - DO NOT DISCARD**

06 0912988

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
04/26/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

| FEE | FEE $ 3 2 HH<br>DAF $  4 —<br>C-20 | | D.T.T. |
|---|---|---|---|
| CODE<br>20 | | | |
| CODE<br>19 | | | |
| CODE<br>9 | | | |

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**        **Number of AIN's Shown**

☐ ☐ ☐ - ☐ ☐ ☐ - ☐ ☐ ☐        ☐ ☐ ☐

**THIS FORM IS NOT TO BE DUPLICATED**

EXHIBIT NO. 2
OF 8

LandAmerica Commercial Services
RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

CHINATRUST BANK (U.S.A.)
22939 Hawthorne Boulevard
Torrance, California 90505
Attention: Edwin Duterte

06 0912988

Assessor's Parcel No. 5169-020-003

## ABSOLUTE ASSIGNMENT OF LEASES, LEASE GUARANTIES, RENTS, ISSUES AND PROFITS.

FOR VALUE RECEIVED, the undersigned, MERCO GROUP – 3185 E. WASHINGTON BOULEVARD, LLC, a Delaware limited liability company ("Assignor"), whose address is 721 Terminal Street, Los Angeles, California 90021, grants, transfers and assigns to CHINATRUST BANK (U.S.A.), a California banking corporation ("Assignee"), all of Assignor's right, title and interest in all leases executed by Assignor, or Assignor's predecessors in interest, or Assignor's successors in interest in regard to the real property described below, as lessor (individually and collectively the "Leases") concerning real property located in Los Angeles County, California, and legally described as set forth in Exhibit A attached hereto, which Exhibit A is incorporated herein by reference ("Property") and all lease guaranties in regard to the Leases (individually and collectively, the "Lease Guaranties"), and all rents, issues and profits of the Property, including the cash proceeds thereof, to the fullest extent permitted by California Civil Code Section 2938. Assignor's interests in the Property are the subject of that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust"), by Assignor, as Trustor, to CHICAGO TITLE COMPANY, as Trustee, for Assignee, as Beneficiary, which Deed of Trust secures an obligation in the original principal amount of Nine Million Nine Hundred Fifty Thousand and No/100 Dollars ($9,950,000.00), plus permitted accrued interest pursuant to a Loan Agreement between Assignor and Assignee dated as of April 13, 2006 ("Agreement"), in regard to which this assignment is given. This assignment includes assignment of Assignor's interest in all extensions and renewals of the Leases, and all extensions or renewals of the Lease Guaranties.

    1.     Assignor warrants that title to all of such property interests is in Assignor; that Assignor has the right to make this assignment; that full title and right to receive all rents, issues and profits under the Leases and all amounts accruing under the Lease Guaranties are vested absolutely in Assignee by this assignment; and that the rental property and rental payments and other sums are, to the best of Assignor's knowledge, free from liens, encumbrances, claims and setoffs of every kind whatsoever, other than the liens and rights of Assignee.

    2.     Assignor, to the extent made necessary hereby, appoints Assignee its true, lawful and irrevocable attorney (which appointment is deemed coupled with an interest, and, therefore, is irrevocable) to demand, receive and enforce payment, to give receipts, releases and

9500059-70



satisfactions, and to sue, either in the name of Assignor or in the name of Assignee, for all rents and other sums payable in regard to the Leases and Lease Guaranties.

3.      Until the occurrence of an act or omission on the part of Assignor that constitutes an Event of Default (as defined in the Agreement), Assignor shall have a license to collect and enjoy said rents or other sums, but according to the terms and conditions hereinafter specified. Upon the occurrence of an Event of Default, Assignor's license to collect such rents and other sums shall be automatically revoked and terminated, without the need for any notice or other act by Assignee.

4.      Assignor consents that, without further notice and without releasing the liability of Assignor, Assignee may, at Assignee's discretion, give grace or indulgence in the collection of all rents and other sums due or to become due under the Leases and Lease Guaranties and grant extensions of time for the payment of the same before, at, or after maturity.

5.      Nothing herein contained shall be construed as imposing upon Assignee the duty to collect any rent or any other sum. Further, nothing herein contained shall be construed as imposing upon Assignee any duty in regard to causing the Property to be rented, in whole or in part, or to be utilized in any other way.

6.      Nothing herein contained shall be construed as requiring Assignee to give credit to Assignor or any successor in interest of Assignor in regard to Assignor's obligation or obligations to Assignee which are related to this Assignment, or as creating any setoff against or reduction of said obligation or obligations for any sum or sums except to the extent of any sum or sums actually received and so applied by Assignee.

7.      Assignee does not assume any of the landlord's obligations under the Leases or the Lease Guaranties, or any of them, and Assignor agrees, prior to Assignee revoking the license granted by Assignee in Section 3, above and, and enforcing this assignment in accordance with its terms, (a) to keep and perform all express and implied obligations of the landlord under the Leases and the Lease Guaranties, and under any construction or commission agreements arising therefrom, and to save Assignee harmless from the consequences of any failure to do so; and (b) to preserve the Property subject to the Leases free and clear of liens and encumbrances, except to or with the written consent of Assignee.

8.      Assignor agrees that Assignor will not assign any other interest in the Leases or the Lease Guaranties, or any of them, or in the rents, issues or profits of the Property; that notice of this assignment may be given to any tenant or any lease guarantor at any time at Assignee's option; and that, in the event any payment of rent or any other sum is made to Assignor, Assignor will hold the same as trustee for Assignee to the extent that the same equals any installment or installments then due and payable under the related obligation or obligations, any installment or installments on any lien which may be superior to the Deed of Trust in terms of priority, and any taxes or assessments then due and payable in regard to the Property.

9.      Assignor further agrees, at its sole cost and expense, to enforce or secure the performance of each obligation of the Leases and the Lease Guaranties by the respective tenants and lease guarantors; not to anticipate the rents thereunder, nor to waive or release any party

BN 814704v1                                2                    06  0912988

EXHIBIT NO.  7
3  OF  8

thereunder of or from his, her or its obligations; not to modify the Leases, or the Lease Guaranties, or any of them, nor accept surrender under any of the Leases, except with the prior written consent of the Assignee, not to be unreasonably withheld.

10. This assignment is in addition to the Deed of Trust and is not to be construed as being a waiver of any of the terms thereof or of the obligations which the Deed of Trust secures.

11. If, as and when Assignee commences collecting rents or other sums payable in regard to the Property, Assignee shall be entitled to attorneys' fees for so doing, fees and commissions for management of the Property and reimbursement for expenses for maintaining the Property, all added to the obligation hereinabove described as though advances under the Deed of Trust.

12. This assignment is irrevocable and shall remain in full force and effect until and unless the earlier of a payment in full of all obligations related to it or it is released in writing by Assignee.

13. A breach or default under any of the terms, provisions, conditions, or covenants of this Assignment shall constitute a default under the Agreement and upon occurrence of any such breach or default, at the option of Assignee, without notice to Assignor, all unpaid indebtedness secured by said instruments shall become immediately due and payable.

14. Nothing contained in this assignment or in any action or undertaking by Assignee pursuant to this Assignment shall be deemed or be construed to constitute Assignee as a mortgagee in possession of the Property or to obligate Assignee to take any action hereunder, to incur expenses or discharge any obligation, duty or liability hereunder or under the Leases or the Lease Guaranties. Until the loans as evidenced by the Notes and all indebtedness secured hereby shall have been paid in full, Assignor will from time to time execute and deliver to Assignee upon demand any and all writings which Assignee may deem necessary or desirable to carry out the purposes and intent hereof, and which will enable Assignee to enforce any right or remedy hereunder.

15. Except to the extent of Assignee's gross negligence or willful misconduct, Assignor hereby indemnifies and holds Assignee harmless from and against any and all liability, loss, or damage which Assignee may incur under the Leases and the Lease Guaranties or by reason of this assignment, and of and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligation or undertaking to be performed or discharged by Assignee as a mortgagee or holder of a trust deed or under this assignment, in respect of any Lease or Lease Guaranty. Nothing contained in the Deed of Trust, the Notes, the Agreement or in this assignment shall be construed to bind Assignee to the performance of any of the terms or provisions contained in any of the Leases or Lease Guaranties, or otherwise to impose any obligation on Assignee, including, but not limited to, any liability under any covenant of quiet enjoyment contained in the Leases in the event that any tenant shall have been joined as a party defendant in any action to foreclose the Deed of Trust and shall have been barred and foreclosed thereby of all right, title, and interest, and equity of redemption, in said premises. Prior to actual entry and taking possession of the Property, or any portion thereof, by Assignee, even though Assignee may be receiving rental income, this

06 0912988

EXHIBIT NO. 2
4 OF 8

*5*

assignment shall not operate to place responsibility for control, care, management, or repair of said Property upon Assignee, nor for the carrying out of any terms and provisions of the Leases or Lease Guaranties. Except to the extent of Assignee's gross negligence or willful misconduct, should Assignee incur any liability with respect to this assignment, the Property, or any tenant, or loss, damage or liability under the Leases or Lease Guaranties or under or by reason of this Assignment, or in defense of any such claims or demands, Assignor shall immediately upon demand reimburse Assignee for the amount thereof, including costs, expenses and reasonable attorney's fees incurred in connection therewith, and Assignee may retain possession and collection of any and all rents, monies and other income derived from the Leases, the Lease Guaranties and/or the Property, and, from time to time, apply them in or towards satisfaction of or reimbursement for any such loss, damage, cost or expense.

<p align="center">[SIGNATURE PAGE FOLLOWS]</p>

BN 814704v1                              4

**06 0912988**

EXHIBIT NO. **2**
**5** OF **8**

IN WITNESS WHEREOF, Assignor has executed this Absolute Assignment Of Leases, Lease Guaranties, Rents, Issues and Profits as of the *13th* day of ~~March~~ 2006. *April*

**ASSIGNOR:**

MERCO GROUP – 3185 E. WASHINGTON
BOULEVARD, LLC,
a Delaware limited liability company


By: _Richard Meruelo_ _____
Name:  Richard Meruelo, as trustee of
       the Richard Meruelo Living Trust
       Under Declaration of Trust dated
       September 15, 1989
Title:  Sole Member


(ALL SIGNATURES MUST BE ACKNOWLEDGED)

06 0912988

*1*

STATE OF CALIFORNIA        )
                              ) ss
COUNTY OF LOS ANGELES      )

       On ~~September~~ *April* 8, 2006 ~~2003~~, before me, *Adela Barrenos*, a Notary Public in and for said County and State, personally appeared *Richard Mervelo*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity/ies, and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

       WITNESS my hand and official seal.

*Adela Barrenos*
Notary Public

ADELA BARRENOS
COMM. #1410000
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. April 8, 2007

BN 814704v1

06 0912988

All that certain real property situated in the County of Los Angeles, State of California, described as follows:

Parcel 1:

All that portion of Lot 3 of Subdivision of the Martinez Tract, partly within the City of Los Angeles, and partly within the City of Vernon, County of Los Angeles, State of California, as per map recorded in Book 55, Page 24 of Miscellaneous Records, in the office of the County Recorder of said County, lying southwesterly of a line which is parallel within and 71.84 feet Southwesterly of the Southwesterly line of the right of way of the Los Angeles and Salt Lake Railway, formerly Los Angeles Terminal Railway.

Said land is shown on a Licensed Surveyors Map recorded in Book 147 Page 11 of Record of Survey.

Parcel 2:

An easement 25 feet in width for railway spur tract purposes but not including the right to store cars, upon and across the Northeasterly 71.84 feet of that portion of said Lot 3, lying Southwesterly of the Southwesterly line of said right of way of the Los Angeles and Salt Lake Railway Company.

06 0912988

legal rev. (010698)

EXHIBIT NO. 2

8 OF 8

| In re:<br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br><div align="right">Debtor(s).</div> | CHAPTER  11<br><br>CASE NUMBER 1:09-bk-13356-KT |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Routh Crabtree Olsen, P.S., 13555 SE 36th Street. Suite 300, Bellevue, WA  98006

A true and correct copy of the foregoing document described as Chinatrust Bank's Objection re Plan Confirmation will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On January 17, 2011 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

*See Attached Service List re Notice of Electronic Filing*

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On January 17, 2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

By U.S. Mail
Hon. Kathleen Thompson, U.S. Bankruptcy Court, 21041 Burbank Blvd., Suite 305, Woodland Hills, CA  91367

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 17, 2011 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

*See Attached Service List re Notice of Manual Filing*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| January 17, 2011 | Tawn Siriya | /s/ |
| --- | --- | --- |
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

| In re:<br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 1:09-bk-13356-KT |
|---|---|

### *Service List re Notice of Electronic Filing*

#### Service via ECF

- Michael C Abel    mca@dgdk.com
- Robert Abiri    rabiri@abiriszeto.com
- Allison R Axenrod    allison@claimsrecoveryllc.com
- Christopher J Bagnaschi    cb@cjblaw.com
- John J Bingham    jbingham@dgdk.com
- William C Bollard    eal@jbblaw.com, kmg@jbblaw.com;dritchie@jbblaw.com;william@jbblaw.com
- Peter Bonfante    peterbonfante@bsalawfirm.com
- Julia W Brand    JBrand@bhfs.com
- Jennifer L Braun    jennifer.l.braun@usdoj.gov
- Martin J Brill    mjb@lnbrb.com
- Andrew W Caine    acaine@pszyjw.com
- Howard Camhi    hcamhi@ecjlaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- James E Carlberg    jcarlberg@boselaw.com
- Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com
- Jacquelyn H Choi    jchoi@swjlaw.com
- Carol Chow    CChow@Stutman.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Ronald R Cohn    rcohn@horganrosen.com
- Enid M Colson    emc@dgdk.com, ecolson@dgdk.com
- Michaeline H Correa    mcorrea@jonesday.com
- Emily R Culler    eculler@stutman.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com,
  calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Susan S Davis    sdavis@coxcastle.com
- Aaron De Leest    aed@dgdk.com
- Daniel Denny    ddenny@gibsondunn.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Marina Fineman    mfineman@stutman.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
- Donald L Gaffney    dgaffney@swlaw.com
- Thomas M Geher    tmg@jmbm.com
- Bernard R Given    bgiven@frandzel.com,
  efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Barry S Glaser    bglaser@swjlaw.com
- Gabriel I Glazer    gglazer@stutman.com
- Matthew A Gold    courts@argopartners.net
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                  **F 9013-3.1**

| In re:<br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor(s). | CHAPTER  11<br><br>CASE NUMBER  1:09-bk-13356-KT |
|---|---|

- John A Graham    jag@jmbm.com
- Ofer M Grossman    omglaw@gmail.com
- Jodie M Grotins    jgrotins@mcguirewoods.com
- Peter J Gurfein    pgurfein@lgbfirm.com
- Cara J Hagan    carahagan@haganlaw.org
- Asa S Hami    ahami@sulmeyerlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Robert A Hessling    rhessling@dgdk.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
- William H. Kiekhofer    wkiekhofer@mcguirewoods.com
- Andrew F Kim    kim-a@blankrome.com
- Michael S Kogan    mkogan@ecjlaw.com
- Tamar Kouyoumjian    tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- Lewis R Landau    lew@landaunet.com
- Leib M Lerner    leib.lerner@alston.com
- Matthew A Lesnick    matt@lesnicklaw.com
- David E Leta    dleta@swlaw.com, wsmart@swlaw.com
- Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
- Steven K Linkon    slinkon@rcolegal.com
- Robert M Llewellyn    michael.llewellyn@boe.ca.gov
- Richard Malatt    rmalatt@gmail.com
- Elmer D Martin    elmermartin@gmail.com
- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Avi Muhtar    amuhtar@sulmeyerlaw.com
- Iain A W Nasatir    inasatir@pszjlaw.com, jwashington@pszjlaw.com
- Jeffrey P Nolan    jnolan@pszjlaw.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Christopher E Prince    cprince@lesnickprince.com
- Michael H Raichelson    mhr@cabkattorney.com
- Dean G Rallis Jr    drallis@sulmeyerlaw.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin - DECEASED -    cmr@lnbrb.com
- Daniel H Reiss    dhr@lnbrb.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com
- James S Riley    tgarza@sierrafunds.com
- Martha E Romero    Romero@mromerolawfirm.com
- Victor A Sahn    vsahn@sulmeyerlaw.com
- Steven J Schwartz    sschwartz@dgdk.com
- Kenneth J Shaffer    jshaffer@stutman.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com
- David B Shemano    dshemano@pwkllp.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re:<br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor(s). | CHAPTER  11<br><br>CASE NUMBER 1:09-bk-13356-KT |
| --- | --- |

- Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- Stephen Shiu    sshiu@swlaw.com
- Lori Sinanyan    lsinanyan@jonesday.com
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Surjit P Soni    surjit@sonilaw.com, teresa@sonilaw.com
- Bennett L Spiegel    blspiegel@jonesday.com
- Tracie L Spies    tracie@haganlaw.org
- James Stang    jstang@pszjlaw.com
- Catherine Steege    csteege@jenner.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- John N Tedford    jtedford@dgdk.com, DanningGill@Gmail.com
- Damon Thayer    dthayer@jenner.com
- James A Timko    jtimko@allenmatkins.com
- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Rouben Varozian    rvarozian@bzlegal.com
- Jason L Weisberg    jason@gdclawyers.com
- William E Winfield    wwinfield@nchc.com
- Jasmin Yang    jyang@swlaw.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive e-mail notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

David P Beitchman
16130 Ventura Blvd Ste 570
Encino, CA 91436

Debt Acquisition Company of America V, LLC
1565 Hotel Circle South
Suite 310
San Diego, CA 92108

Arthur J Hazarabedian
California Eminent Domain Law Group
3429 Ocean View Blvd Ste L
Glendale, CA 91208

Jenner & Block LLP
Jenner & Block LLP
633 West 5th Street
Suite 3500
Los Angeles, CA 90071

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                          F 9013-3.1

| In re:<br>MERUELO MADDUX PROPERTIES, INC., et al.<br>Debtor(s). | CHAPTER  11<br>CASE NUMBER 1:09-bk-13356-KT |
|---|---|

- Kibel Green Inc
2001 Wilshire Blvd Suite 420
Santa Monica, CA 90403

Michael L Marx
Jenkins Goodman Neuman & Hamilton
417 Montgomery St 10th Fl
San Francisco, CA 94104

Ronald Orr
Ronald Orr & Professionals, Inc.
578 Washington Blvd., #389
Marina Del Rey, CA 90292

Michael Portner
Portner Law Offices
900 Wilshire Blvd Ste 1115
Los Angeles, CA 90017

Riverside Claims LLC
PO Box 626
Planetarium Station
New York, NY 10024

Georgiana G. Rodiger
Rodiger Law Office
272 South Los Robles Avenue
Pasadena, CA 91101

SCS Flooring Systems
C/O Raymond Myer Esq
1220 1/2 State St
Santa Barbara, CA 93101

Patrick J Stark
Ford Walker Haggerty & Behar
1 World Trade Ctr 27th Fl
Long Beach, CA 90831

Larry E Wasserman
Law Offices of Larry E Wasserman
12925 Riverside Dr
2nd fl
Sherman Oaks, CA 91423

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                    **F 9013-3.1**