JENNER & BLOCK LLP
Kenneth K. Lee  (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Telephone:  213-239-5100
Facsimile:  213-239-5199
klee@jenner.com

JENNER & BLOCK LLP
Marc B. Hankin  (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
Telephone:  212-891-1600
Facsimile:  212-891-1699
mhankin@jenner.com

RON ORR & PROFESSIONALS, INC.
Ronald S. Orr (Cal. Bar No. 54257)
578 Washington Blvd., #389
Marina Del Rey, CA  90292
Telephone:  310-301-4849
Facsimile:  310-301-6549
ronorresq@aol.com

RODIGER LAW OFFICE
Georgiana G. Rodiger, (Cal. Bar No. 94416)
272 South Los Robles Avenue
Pasadena, California  91101
Telephone:  626-793-7264
Facsimile:  626-793-7592
crodiger@rodigerlaw.com

Attorneys for Equity Committee

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| IN RE:<br><br>**MERUELO MADDUX PROPERTIES, INC., et al.**[1]<br><br>**Debtors and Debtors-in-Possession.**<br><br><br>**AFFECTS ALL DEBTORS**<br><br>. | CASE NO. 09-bk-13356-VK<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL TESTIMONY**<br><br>DATE:  TBD<br>TIME:  TBD<br>DEPT:  Courtroom 301<br>        21041 Burbank Blvd.<br>        Woodland Hills, California |

---

[1] This case is jointly administered with chapter 11 cases filed with the Court by numerous affiliated entities.  The Debtors and debtors-in-possession and their respective tax identification numbers are identified in the *Order Directing The Joint Administration Of Related Cases* entered by the Court on April 7, 2009 (docket entry no. 30).

**TO THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY JUDGE; THE DEBTORS; AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

The Official Committee of Equity Holders (the "Equity Committee") submits this Motion To Compel Testimony (the "Motion to Compel") to compel certain testimony of witness Todd Nielsen over an assertion of attorney-client privilege. In compliance with Local Bankruptcy Rule 9013-1, the Equity Committee hereby provides the following information regarding the Motion:

Party witness Todd Nielsen repeatedly asserted the attorney-client privilege throughout his deposition, most of which the Equity Committee believes were ill-founded. The Equity Committee seeks an order compelling Mr. Nielsen to provide testimony concerning the accounting purpose related to the Debtors' payment made to law firm Neufeld, Marks, Gralnek & Maker P.C. for fees incurred in defending Richard Meruelo personally.

**PLEASE TAKE NOTICE** that the Motion is based on the attached Memorandum of Points and Authorities, the attached Declaration of Kenneth K. Lee, the arguments of counsel, and any other admissible evidence properly brought before the Court. In addition, the Equity Committee requests that the Court take judicial notice of all documents filed with the Court in these cases.

**PLEASE TAKE FURTHER NOTICE** that pursuant to the comments of the Court made at open hearing, any opposition to the Motion to Compel must be filed by January 28, 2011.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(h), the failure to timely file and serve written opposition may be deemed by the Court to be consent to the granting of the relief requested in the Motion without further notice.

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion To Compel will take place during the pendency of the confirmation trial on proposed plans of reorganization in these cases on such date that the Court determines in the exercise of its discretion.

**WHEREFORE,** the Equity Committee respectfully requests that this Court enter an order that compels Mr. Nielsen to appear for a deposition and answer questions regarding the purpose of the reallocation of the payment to law firm Neufeld, Marks, Gralnek & Maker P.C. and provide testimony at the confirmation trial regarding the same.

Dated: January 24, 2011                             **JENNER & BLOCK LLP**

                                                    By   */s/ Kenneth K. Lee*
                                                         Kenneth K. Lee  (Cal. Bar No. 264296)
                                                         Marc B. Hankin  (admitted *pro hac vice*)
                                                         Attorneys for Equity Committee

# **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Throughout the confirmation process, the Debtors have repeatedly invoked improper claims of privilege to prevent the Equity Committee from learning all of the facts. Large swaths of documents, including page after page of Board minutes, were redacted on the basis that a lawyer was sitting in the meeting. And in the depositions, witnesses have been instructed literally dozens of time not to answer questions.

The Equity Committee submits that most of these assertions would not withstand scrutiny. But in the interests of conserving the Court's resources and in light of the compressed schedule, the Equity Committee does not seek to challenge each of the Debtors' unmeritorious privilege assertions. Rather, the Equity Committee only asks this Court to order Todd Nielsen – the Debtors' general counsel and corporate secretary – to answer a specific accounting-related question that he refused based on an invalid privilege assertion: What, if any, accounting purpose justified the Debtors' reallocation of certain payments made to cover Richard Meruelo's personal legal bills?

This is a crucial question because it is directly relevant to the core issue of whether the Debtors' management is fit to govern the reorganized entities. At the direction of Mr. Meruelo, the Debtors paid $100,000 in legal fees to Neufeld, Marks, Gralnek & Maker P.C. (the "Neufeld Firm"), a law firm that represents both the company and Mr. Meruelo personally. Nearly $43,000 of that payment was used to pay for fees incurred in a lawsuit against Mr. Meruelo personally and as to which none of the Debtors were a party. The Equity Committee believes that the Debtors, including Mr. Nielsen and Mr. Meruelo, knew this payment was improper but nonetheless authorized it.

Just under five months after that payment was made, the Debtors sought the Court's approval to settle that lawsuit against Mr. Meruelo in conjunction with a settlement between the Debtors and Wells Fargo Bank, N.A. ("Wells Fargo"). A part of the settlement agreement was that Mr. Meruelo's personal legal fees in that matter would be paid by the Debtors. The Debtors then tried to "undo" the improper payment of Mr. Meruelo's personal legal fees by supposedly "reallocating" the $43,000 payment to cover another matter that the Debtors believed was a legitimate matter involving the company. The Debtors also misrepresented to the Court that Mr. Meruelo's personal legal fees had

4

Notice Of Motion And Motion To Compel Testimony

not "yet been paid by any source" when in fact it had been paid but then later "reallocated." When asked at his deposition the accounting justification for this reallocation, Mr. Nielsen invoked the attorney-client privilege and refused to answer. We seek the Court to compel Mr. Nielsen to answer this question.

## BACKGROUND

The Equity Committee believes that the Debtors' reorganization plan should not be confirmed because Richard Meruelo has run Meruelo Maddux Properties, Inc. ("MMPI") for his benefit at the expense of the shareholders. Indeed, Mr. Fred Skaggs, the Chief Accounting Officer-turned-whistleblower, testified that Mr. Meruelo often "acted in his own self-interest at the expense of the shareholders." Lee Decl. Ex. 1 (transcript of deposition of Fred Skaggs on January 7, 2010) at Tr. 146-47. A key example of this self-dealing is the use of company money to pay for Mr. Meruelo's personal legal bills. Mr. Nielsen's improper privilege assertion shields information that goes to the heart of this crucial matter.

The Debtors have engaged the Neufeld Firm to provide services in several commercial litigation disputes. *See* docket entry no. 180 (declaration of disinterest of the Neufeld Firm describing generally the scope of its services to the Debtors). During the time the Neufeld Firm represented the Debtors, Neufeld Firm also represented Mr. Meruelo personally in a lawsuit called *Wells Fargo v. Richard Meruelo* (the "District Action"). *See* Lee Decl. Ex. 2 (answer filed by the Neufeld Firm on behalf of Mr. Meruelo in the District Action). This matter has sometimes been informally called the "Berkadia matter" because Berkadia served as Wells Fargo's loan servicer on the defaulted loan underlying the District Action.

Mr. Meruelo himself admitted at his deposition that the Neufeld Firm represented him personally in the *Wells Fargo v. Richard Meruelo* action:

> **Q:** In the Berkadia matter, does Mr. Neufeld represent you, personally, or MMPI?
> **A:** Personally.

Lee Decl. Ex. 3 (transcript of deposition of Richard Meruelo on January 11 and 12, 2010) at 173-74. And notably, Mr. Meruelo — who is the subject of multiple personal judgments exceeding $10 million and has his wages garnished (Meruelo Tr. 191) — admitted at deposition that he is behind in

his payments to Neufeld for his personal legal fees: He testified that he has paid approximately $100,000 in personal legal fees to the Neufeld Firm, but that he still owes another $100,000. *See* Meruelo Tr. 177-78.

On June 17, 2010, Mr. Meruelo ordered the Debtors' accounting department to pay $100,000 to the Neufeld Firm from the account of 845 S. Flower Street, LLC ("Flower Street") on June 15, 2010. Flower Street's chapter 11 case has not been administratively consolidated with the Debtors' cases, though Flower Street is a subsidiary of MMPI. That check was issued to the Neufeld Firm for $100,000. Critically, $42,966.47 of the June 17 $100,000 payment was used to pay for Mr. Meruelo's <u>personal</u> legal fees in *Wells Fargo v. Richard Meruelo*. *See* Lee Decl. Ex. 4 at EY-MERU-EPT-000183-185 (Neufeld Firm invoice showing payment on District Action). Consistent with this, the Debtors internally allocated $42,966.47 of the June 17 check to the "Berkadia" matter. *See* Lee Decl. Ex. 5 (transcript of 1/12/11 rough deposition of Todd Nielsen) at 141:2-23. In other words, Debtors used estate funds to pay for Mr. Meruelo's personal legal bills.

Once the Berkadia matter settled, the Debtors filed a motion on November 5, 2010, seeking the Court's authorization to pay Mr. Meruelo's personal legal fees. *See* Lee Decl. Ex. 6 (the "Settlement Motion") at 18-19. Before filing the Settlement Motion, the Debtors sought to cover their steps by going back and reallocating the payment of Mr. Meruelo's personal legal fees to another matter, effective as of August 19, 2010. *See* Nielsen Rough Tr. at 141:16-142:4; 142:21-143:5; Lee Decl. Ex. 7 (Neufeld Firm invoice showing reallocation). The Debtors obscured Mr. Meruelo's personal use of estate assets by stating in the Settlement Motion that of fees incurred by the Neufeld Firm in representing Mr. Meruelo in *Wells Fargo v. Richard Meruelo*, "none of which has yet been paid by any source." Settlement Motion at 11. Mr. Meruleo echoed this misrepresentation in his declaration in support of the Settlement Motion. *Id*. at 26. Ultimately, the Court did *not* approve the Debtor's request for authorization to pay Mr. Meruelo's personal legal fees, denying that relief in a bench ruling on December 6, 2010. The Debtors acknowledged this result in the proposed order on the Settlement Motion that they lodged with this Court. Lee Decl. Ex. 8 at ¶ 2(a) (stating that the Court withheld its approval of a settlement agreement clause that

obligated the Debtors to "pay all attorneys' fees and costs, litigation expenses, consultant fees, and other costs incurred by [Richard Meruelo] in connection with [the District Action]").[1]

At the deposition of Mr. Nielsen on January 12, 2010, the counsel for plan proponent Charlestown asked Mr. Nielsen questions about the Debtors' use of estate property to pay off Mr. Meruelo's personal legal debts and the subsequent effort to cover-up that transaction. After eliciting testimony in which Mr. Nielsen admitted that he approved the after-the-fact reallocation of the payment of the "Berkadia" legal fees (Nielsen Rough Tr. at 141:16-142:2), Charlestown's counsel asked Mr. Nielsen what "accounting reason" – if any – supported the reallocation. *Id*. at 144:11-12. After admitting that he did not reallocate the payment "to correct any inaccuracy on the company's books" (*id*. at 145:7-10), Mr. Nielsen invoked attorney-client privilege when asked:

> Q. Why did you reallocate the approximately 43,000 from the Berkadia matter to the PNL Pomona matter?
>
> MR. KLAUSNER: I'm going to obstruct [sic] the witness to, not to answer if answering the question would require him to divulge any attorney-client communication.
>
> BY MR. PRINCE: Q. Can you answer it?
>
> A. No.

*Id*. at 146:22-147:5. Counsel for Charlestown asked Mr. Nielsen's counsel to reconsider his instruction to not answer the question regarding the purpose of the relocation. *Id*. at 147:6-17. Mr. Nielsen and his counsel went off the record to confer and then refused to reconsider. *Id*. at 151:7-23.

The Equity Committee submits that Mr. Nielsen's invocation of attorney-client privilege when asked to reveal the purpose of the reallocation of the Berkadia payment is not valid and asks the Court to compel Mr. Nielsen to provide testimony on this matter.

## DISCUSSION

The Court should order Mr. Nielsen, MMPI's in-house counsel, to testify regarding the purpose of reallocating the payment to the Neufeld Firm over his privilege assertion because

---

[1] As of this writing, the Court has not yet entered the Debtors' lodged order.

communications between MMPI and its in-house attorney regarding MMPI's accounting decisions are not attorney-client privileged. The attorney-client privilege protects only those "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *Fisher v. U.S.*, 425 U.S. 391, 403 (1976). However, "communications to an attorney in the course of seeking business rather than legal advice are not privileged." *Olender v. U.S.*, 210 F.2d 795, 806 (9th Cir. 1954). In this regard, communications involving in-house counsel are of particular concern. "Unlike outside counsel, in-house attorneys can serve multiple functions with the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters." *U.S. v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002). Therefore, "with respect to internal communications involving in-house counsel … the proponent of the privilege must demonstrate that the 'primary purpose' of the communication was securing legal advice." *Id.*

MMPI has not met its burden here. The Equity Committee merely seeks information from Mr. Nielsen regarding the accounting purpose of reallocating Mr. Mereulo's personal legal expenses to another matter in the Debtors' books. This is not a legal issue, but rather a business issue. MMPI has not shown, nor has it attempted to show, that the primary purpose of any communications with Mr. Nielsen regarding its accounting decisions was to secure legal advice. As such, no privilege exists. *See U.S. v. Gurtner*, 474 F.2d 297, 298-99 (9th Cir. 1973) ("If what is sought is not legal advice but only accounting service … no privilege exists.").

# CONCLUSION

For the reasons set forth herein, the Equity Committee requests that this Court enter an order that compels Mr. Nielsen to appear for a deposition and answer questions regarding the purpose of the reallocation of the payment to the Neufeld Firm from the Berkadia matter to another matter and provide testimony at the confirmation trial regarding the same.

Dated: January 24, 2011                           **JENNER & BLOCK LLP**

                                                  By      */s/ Kenneth K. Lee*
                                                          Kenneth K. Lee  (Cal. Bar No. 264296)
                                                          Marc B. Hankin  (admitted *pro hac vice*)
                                                          Attorneys for Equity Committee

# DECLARATION OF KENNETH K. LEE

STATE OF CALIFORNIA      )
                         ) SS:
COUNTY OF LOS ANGELES    )

Kenneth K. Lee, being duly sworn, deposes and says:

1.  I am a partner of the firm of Jenner & Block LLP. I am an attorney duly licensed in and am a member in good standing of the bars for the State of California and am admitted to practice before the United States District Court for the Central District of California. I submit this Declaration in support of the Equity Committee's Motion To Compel Testimony.

2.  Attached hereto as Exhibit 1 is a true and accurate copy of excerpts from the transcript of the deposition of Fred Skaggs on January 7, 2010.

3.  Attached hereto as Exhibit 2 is a true and accurate copy of the answer filed by the Neufeld Firm on Mr. Meruelo's behalf in the lawsuit commenced by Wells Fargo Bank, N.A. in the United States District Court for the Central District of California assigned case number CV-10-315-CAS.

4.  Attached hereto as Exhibit 3 is a true and accurate copy of excerpts from the transcript of the deposition of Richard Meruelo on January 11 and 12, 2010.

5.  Attached hereto as Exhibit 4 is a true and accurate copy of documents produced by Ernst & Young to the Equity Committee and assigned Bates numbers EY-MERU-EPT-000183-185, annotated with highlighting on certain information.

6.  Attached hereto as Exhibit 5 is a true and accurate copy of excerpts from the rough transcript of the deposition of Todd Nielsen that took place on January 12, 2011.

7.  Attached hereto as Exhibit 6 is a true and accurate copy of the Debtors' Motion For Approval Of Settlement With Wells Fargo Bank, N.A., And Related Agreement With Richard Meruelo, And Authorizing Debtors To Perform Thereunder and documents attached thereto (docket entry no. 2155).

8.  Attached hereto as Exhibit 7 is a true and accurate copy of documents produced by Ernst & Young to the Equity Committee and assigned Bates numbers EY-MERU-EPT-000176,

1  annotated with highlighting on certain information.

2      9.    Attached hereto as Exhibit 8 is a true and accurate copy of the Debtors' proposed

3  Order Re: Motion For Approval Of Indemnity Agreement With Richard Meruelo Relating To

4  Settlement With Wells Fargo Bank, N.A. lodged with the Court on January 11, 2011.

5      I declare under penalty of perjury under the laws of California and the United States that the

6  foregoing is true and correct.

7      Executed on January 24, 2011, in Los Angeles, California.

                                        */s/ Kenneth K. Lee*
                                        Kenneth K. Lee