CHRISTOPHER E. PRINCE (SBN 183553)
 cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
 matt@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
 acahill@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA 90405
Telephone: (213) 493-6496
Facsimile: (213) 493-6596

Attorneys for Charlestown Capital Advisors, LLC and
Hartland Asset Management Corporation

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor. | Case No. 1:09-bk-13356-VK<br><br>Chapter 11<br><br>**NOTICE OF MOTION AND MOTION TO MODIFY THE CHARLESTOWN PLAN; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing<br>Date:       To Be Set<br>Time:      To Be Set<br>Place:      Courtroom 301<br>              21041 Burbank Blvd.<br>              Woodland Hills, CA 91367<br><br>Confirmation Hearing<br>Date:       January 27, 2011<br>Time:      9:30 a.m.<br>Place:      Courtroom 301<br>              21041 Burbank Blvd.<br>              Woodland Hills, CA 91367 |

TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE; THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN INTEREST:

PLEASE TAKE NOTICE that, at [____] on [_____], in Courtroom 301 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, California, Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (the "Charlestown Proponents") will and hereby move the Court for an order authorizing the Charlestown Proponents to modify their proposed Chapter 11 plan and finding that the proposed modification of their plan does not require re-solicitation.

This motion is made on the following grounds: 1) the Charlestown Proponents have reached settlement agreements with Bank of America, N.A. ("BofA"), California Bank & Trust ("CBT"), and PNL Pomona ("PNL") and 2) Debtors have entered into a settlement agreement with Legendary Investors Group No. 1, LLC ("Legendary") that is binding on the bankruptcy estate and resolves all disputes arising out of or relating to Legendary's claims against Debtors and Legendary's liens against Debtors' properties. The Charlestown Proponents need to modify the Charlestown Plan to reflect their agreements with BofA, CBT, and PNL, as well as the Debtors' settlement with Legendary. Additionally, the Charlestown Proponents need to modify the Charlestown Plan to comply with the Court's December 6, 2010 Order that deemed the claim of Oliver Sandifer & Murphy to be filed against Alameda Produce Market, LLC in addition to MMPI. Finally, the Charlestown Proponents seek to modify the Charlestown Plan to unimpair the various classes of General Unsecured Claims and provide that such claims will be paid in full at the federal judgment rate.

This Motion is based upon this Notice and Motion, the attached Memorandum of Points and Authorities, the Declaration of Christopher E. Prince, the separately filed Notice of Filing Proposed Amended Plan, the papers and pleadings on file in this case, and such other evidence as may be presented to the Court.

PLEASE TAKE FURTHER NOTICE that the Charlestown Proponents are filing an *ex parte* application for order shortening time in which they are requesting that the Court set a

1 | hearing on this matter on or before February 4, at 9:30 a.m.  If the Charlestown Proponents' *ex*
2 | *parte* application is granted, the Charlestown Proponents will file and serve a notice of the hearing
3 | on this Motion, which notice will identify the date and time of the hearing and the deadlines to file
4 | written oppositions, if any, or to file an optional reply brief.

5 | DATED: January 25, 2011

LESNICK PRINCE LLP


By: /s/ Christopher E. Prince
    Christopher E. Prince
    Attorneys for Charlestown Capital
    Advisors, LLC and Hartland Asset
    Management Corporation

## I. INTRODUCTION

Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (the "Charlestown Proponents"), proponents of a plan of reorganization of Debtors, seek an order authorizing the Charlestown Proponents to file their First Modified Fourth Amended Chapter 11 Plan of Reorganization (the "Modified Charlestown Plan").[1] The Modified Charlestown Plan makes the following necessary changes to the Fourth Amended Chapter 11 Plan filed October 14, 2010 (the "Charlestown Plan"):

First, the Modified Charlestown Plan accounts for agreements with BofA, CBT, and PNL, secured creditors of property level debtors and, in the case of BofA and CBT, holders of unsecured guarantee claims against MMPI. Second, the Modified Charlestown Plan accounts for the pending settlement agreement between Debtors and Legendary (the "Legendary Settlement"), which resolves Legendary's claims in this proceeding in exchange for property level assets. Third, the Modified Charlestown Plan lists the Oliver Sandifer & Murphy ("OSM") claim against Alameda Produce Market, LLC ("Alameda Produce") in compliance with the Court's December 6 Order. Finally, the Modified Charlestown Plan unimpairs general unsecured creditors by paying them in full on the Effective Date with post-petition, preconfirmation interest.

With these modifications, the Court may confirm the plan of reorganization proposed by the Charlestown Proponents. As these modifications do not materially change the Charlestown Plan, they may be authorized without the need for re-solicitation.

## II. THE MODIFICATIONS AT ISSUE

On June 11, 2011, after Debtors had filed four plans of reorganization, the Court ruled that the Charlestown Proponents would be permitted to file a competing plan. [Dkt. # 1513.] The Charlestown Plan was filed on October 14, 2010. [Dkt. # 1951.] The Court approved the corresponding disclosure statement for solicitation on October 19, 2010, [Dkt. # 1978] and votes cast in favor of the Charlestown Plan evidenced that it has the overwhelming support of outside

---

[1] Exhibit 1 to this Motion is the Modified Charlestown Plan. Exhibit 2 to this Motion is a compilation of the redlined pages showing the modifications.

shareholders. [Dkt. # 2321 (Hartie Affidavit).] Subsequent events required that the Charlestown Proponents modify the Charlestown Plan.

The Modified Charlestown Plan makes the following changes:

- <u>Agreement With Secured Creditors</u>: the Modified Charlestown Plan accounts for recent agreements between the Charlestown Proponents and secured creditors that govern their respective treatment if the Modified Charlestown Plan is confirmed. Specifically, the Charlestown Proponents entered into agreements with BofA, CBT, and PNL.
- <u>Debtors' Settlement With Legendary</u>: the Modified Charlestown Plan accounts for the recent settlement agreement between Debtors and Legendary (the "Legendary Settlement"). [*See* Dkt. # 2578-2.] The Legendary Settlement requires the transfer of the following property level assets to Legendary to resolve any and all claims and objections of Legendary in this proceeding: 1) the MG 620 real property; 2) the MG 4th Street Center real property; 3) the MG 1500 Griffith Avenue Property; 4) the Sci-Arc real property; 5) MM 3rd and Omar Street real property; and 6) the MM 420 Boyd Street real property (the "Transferred Properties").[2] The Legendary Settlement requires Legendary to take title to the Transferred Properties free of liens. The terms of the Legendary Settlement are binding on the estate and require modification to the Charlestown Plan.
- <u>Court Order Regarding the OSM Claim</u>: On December 6, 2010, the Court ordered that OSM's claim be "deemed filed against Alameda Produce in addition to MMPI." [Dkt. # 2338.] The Court also ruled that "Notwithstanding that OSM's proof of claim is deemed filed against MMPI's

---

[2] Debtors set forth details surrounding these transfers in their Motion to Modify the Debtors' Plan to conform to the Legendary Settlement. [*See* Dkt. # 2578 (Debtors' Motion to Authorize Settlement and Modify Plan), pp. 22-24.]

4

and Alameda Produce's estates, OSM shall not be entitled to a double recovery on account of its claim." [*Id.*]  The Court's December 6 Order post-dates the filing of the Charlestown Plan.  Accordingly, the Modified Charlestown Plan lists OSM's proof of claim as filed against Alameda Produce in compliance with the Court's December 6 Order.

- <u>Unsecured Creditor Treatment</u>: the Modified Charlestown Plan unimpairs the various classes of General Unsecured Creditors by paying them in full on the Effective Date with post-petition, preconfirmation interest.[3]  This modification resolves any possible objection that the Charlestown Proponents did not obtain the consent of general unsecured creditor classes as well as the Debtors' objection that the Charlestown Plan provided for disparate treatment within a class.

### III. ARGUMENT

#### A. The Modifications to the Charlestown Plan Are Not Material

Section 1127(a) permits modifications to a plan of reorganization as follows:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

In compliance with Section 1127(a), the Charlestown Proponents' proposed modifications to the Charlestown Plan comply with Sections 1122 and 1123 of the Code.

##### 1. Section 1122 and 1123(a)(1)

The proposed modifications do not affect the designation or composition of classes.  The

---

[3] In *Onink v. Cardelucci (In re Cardelucci)*, 285 F.3d 1231, 1234 (9th Cir. 2002), the Ninth Circuit held that post-petition interest should accrue at the federal judgment rate.  In connection with confirmation of the Charlestown Plan, the Charlestown Proponents request that this Court decide the appropriate interest rate.

5

composition of classes are modified only to omit Legendary, which will withdraw or dismiss its claims and objections at issue in this proceeding pursuant to the terms of the Legendary Settlement. With respect to OSM, a new class of claim has been created for OSM's claim against Alameda Produce in accordance with the Court's Order.

### 2. Section 1123(a)(2)

With respect to this requirement, the only modification to the Charlestown Plan is to specify that unsecured creditors will be unimpaired under the plan.

### 3. Section 1123(a)(3) and (a)(4)

The Modified Charlestown Plan specifies the treatment accorded to BofA, CBT, and PNL pursuant to their agreements with the Charlestown Proponents. Accordingly, BofA is no longer treated according to the Common Secured Creditor treatment for its claim against MG Southpark or its claim against MMP 760 S. Hill Street, and CBT is no longer treated according to the Common Secured Creditor treatment for its claim against 788 S. Alameda, and PNL is no longer treated according to the Common Secured Creditor treatment for its claim against Merco Group – 2001-2021 W. Mission Boulevard LLC. Because BofA, CBT, and PNL are the only members of their respective classes, the proposed modification will not affect the treatment of any other creditors in the same class.

Additionally the Modified Charlestown Plan omits the classes consisting of Legendary's secured claims asserted against Debtors because those secured claims will be fully satisfied and withdrawn prior to confirmation. Each of those secured classes consists of a single member (Legendary) and thus the proposed modification will not affect the classification or treatment of any other creditor or interest holder. The same applies to the new class of claims created for OSM's claim against Alameda Produce.

Finally, with respect to unsecured creditors, the Modified Charlestown Plan provides that all such creditors will be unimpaired and therefore receive the same treatment.

### 4. Section 1123(a)(5)

As to Section 1123(a)(5), the proposed modifications will have little or no effect on the

means for implementing the Charlestown Plan and its feasibility.

### 5. Section 1123(a)(6), (a)(7), (a)(8)

The proposed modifications will have no effect on the existing provisions of the Charlestown Plan that provide for amendments to the companies' charters or the Reorganized MMPI's selection of officers and directors. Section 1123(a)(8) is inapplicable.

For the foregoing reasons, the Modified Charlestown Plan complies with Section 1127(a) and should be approved.

### B. **The Proposed Modifications Are Not Material, and Creditors and Interest Holders Voting to Accept the Charlestown Plan Should Be Deemed to Accept the Modified Charlestown Plan**

Section 1127(d) of the Bankruptcy Code provides in relevant part as follows:

> Any holder of a claim or interest that has accepted or rejected a plan is deemed to have accepted or rejected, as the case may be, such plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

Rule 3019(a) of the Federal Rules of Bankruptcy Procedure provides as follows:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

In this circuit, material plan modifications "require a formal disclosure statement and court approval." *Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59, 65 (B.A.P. 9th Cir.

1988).  A modification to a plan of reorganization is considered material and triggers a re-solicitation requirement if it "so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance." *In re Simplot*, 2007 WL 2479664, at *11 (Bankr. D. Idaho Aug. 28, 2007) (quoting *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)).  A creditor or interest holder that accepted the plan would be likely to reconsider its acceptance only if the plan modification materially and adversely changes the way that claim or interest holder is treated.  *Id*. (quoting *Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1117-18 (11th Cir. 2006)); *In re Azabu Buildings Co. Ltd.*, 2007 WL 1964306, at *15 (Bankr. D. Haw. June 28, 2007) (noting that plan modifications that "do not adversely affect or change the treatment of any other Claims or Interests . . . do not require additional disclosure . . . or re-solicitation of votes . . . nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan").  In *Mt. Vernon Plaza Community Urban Redevelopment Corp.*, 79 B.R. 305 (Bankr. S.D. Oho 1987), the plan proponents modified their plan to add a new co-proponent, increased the amount of administrative expenses to be paid upon the sale of certain properties, changed provisions regarding the repayment of notes held by the debtors and change provisions regarding the assumption and rejection of certain agreements.  The court determined as follows:

> None of the changes negatively affects the repayment of creditors, the length of the Plan, or the protected property interests of parties in interest. Taken as a whole, the Court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor under the Plan. Accordingly, such modifications do not require circulation of a further modified disclosure statement. All creditors previously accepting the plan are, therefore, deemed to have accepted the plan as now modified.

*Id*. at 306.

Here, the proposed modifications are not material – they would not cause any person or entity that voted in favor of the Charlestown Plan to now reject it.  Legendary has executed the

1  Legendary Settlement and thus has consented to the treatment it receives as a result of the
2  Legendary Settlement.  The proposed modifications would not impact the votes of equity holders.
3  As a preliminary matter, the modifications will not affect the Charlestown Plan's cash out price of
4  $.35 a share.  According to Debtors' Motion to Authorize the Legendary Settlement and Modify
5  the Debtors' Plan, the modifications result in the release of substantial liens against real properties
6  retained by MM 425 W. 11th Street, MM 336 W. 11th Street and MG Little J, decrease the overall
7  debt and increase cash flow of the Company.  [*See* Dkt. # 2479-1.]  There is no reason to suggest
8  that the effect of the Legendary Settlement would be worse for the Charlestown Plan.

9      As compared to the massive property transfers contemplated under the Legendary
10 Settlement already approved by this Court as a non-material modification, the impact of the BofA,
11 CBT, and PNL agreements are minor.  Of the three agreements, only the PNL agreement involves
12 a transfer of property to the secured lender.  PNL's collateral is vacant land that generates no
13 income. [Dkt. # 1693 (PNL Objection to Charlestown Plan).]  On the petition date, the principal
14 balance owing to PNL was more than $8.4 million.  [*Id.*]  Because interest continues to accrue, the
15 loan balance will exceed $10 million on the Effective Date.  If the Reorganized Debtor does not
16 turnover the collateral to PNL, the cash drain on the estate could easily exceed $1 million annually,
17 particularly when property taxes and other costs are included.  As far as impact on the Charlestown
18 Proponents business plan, the Charlestown Proponents projected a sale of the PNL collateral in
19 year 2.

20     The BofA and CBT agreements do not involve a transfer of property at all and simply
21 reflect an agreement regarding modification of the existing loans, both for loan term and for
22 applicable interest rates.  In each case, the agreed upon interest rate is within the general range of
23 interest rates being provided to secured lenders in the case and is only slightly higher than the
24 originally proposed 5.25% interest rate.  In addition, the Charlestown Plan contemplated the
25 possibility that the Court would require a higher interest rate.

26     Collectively, the effect of the PNL, BofA and CBT agreements is insignificant in the
27 context of this overall plan.  In short, no MMPI shareholder would reconsider its vote for or against
28

9

the Charlestown Plan because of the slightly altered treatment of a handful of secured creditors.

Similarly, the modifications to the OSM claim and the common unsecured creditor treatment will have no effect on voting results. Adding that OSM's claim is filed against Alameda Produce has no economic impact on the case because the amount of OSM's claim is the same at both debtors, and the Court has ruled that OSM cannot obtain a double recovery. The modification of unsecured creditor treatment is a minor adjustment to the post-petition, pre-confirmation interest rate and does not impact the economics of the Charlestown Plan. And, of course, the unsecured creditors classes did not vote to accept the Charlestown Plan in any event.

Based on the foregoing, the proposed modifications should be deemed to be non-material and the Court should authorize the Modified Charlestown Plan without requiring re-solicitation of votes.

## IV. CONCLUSION

For the foregoing reasons, the Charlestown Proponents request that the Court authorize the Charlestown Proponents to modify their plan of reorganization and determine that the Modified Charlestown Plan does not require re-solicitation.

DATED: January 25, 2011

LESNICK PRINCE LLP

By: /s/ Christopher E. Prince
Christopher E. Prince
Attorneys for Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation

10