CHRISTOPHER E. PRINCE (SBN 18353)
 cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
 matt@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
 acahill@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA  90405
Telephone: (213) 493-6496
Facsimile: (213) 493-6596

Attorneys for Charlestown Capital Advisors, LLC and
Hartland Asset Management Corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor. | Case No. 1:09-bk-13356-VK<br><br>Chapter 11<br><br>**REPLY OF CHARLESTOWN CAPITAL ADVISORS, LLC AND HARTLAND ASSET MANAGEMENT CORPORATION IN SUPPORT OF REQUEST FOR SANCTIONS AGAINST DEBTORS FOR SPOLIATION OF EVIDENCE**<br><br><u>Hearing</u><br>Date:     March 7, 2011<br>Time:    9:30 a.m.<br>Place:   Courtroom 301<br>           21041 Burbank Blvd.<br>           Woodland Hills, CA  91367 |

1

## I.    INTRODUCTION

*By now, it should be abundantly clear that the duty to preserve means what it says and that a failure to preserve records - paper or electronic - . . . will inevitably result in the spoliation of evidence.*

*"Zubulake* Revisited: Six Years Later" (*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 462 (S.D. N.Y. 2010))

Debtors intentionally destroyed evidence in the middle of litigation while that evidence was subject to outstanding discovery requests and was the subject of pending discovery motions. In their Opposition, however, Debtors are utterly unrepentant. They admit no wrongdoing and assert that they "acted reasonably and responsibly at all times."

To Debtors, the destruction of Mr. Nielsen's notes was reasonable because it followed a "standard, recommended 'best practice' for all corporations." In making this argument, Debtors' completely ignore the circumstances under which Mr. Nielsen destroyed his notes. He did not convert his notes into board minutes in the ordinary course. He created almost two years of board minutes long after the fact because those minutes were requested by opposing parties in litigation, and then he destroyed the notes he purportedly used to create the minutes. None of the cases or treatises cited in Debtors' Opposition stand for the proposition that a party may destroy evidence under these circumstances.

Put simply:  when litigation begins, or is even anticipated, the rules change. Ordinary course policies and practices regarding document retention no longer apply, and a party is flatly prohibited from destroying any "unique, relevant evidence that might be useful to an adversary." Instead, parties have a duty to preserve evidence potentially relevant to the litigation. Contrary to Debtors' assertion, there is no exception for a party's "normal policy" or for their perceived "best practices." Rather, courts uniformly and unequivocally hold that normal policies and practices do not apply in the context of litigation.

Debtors' alternative argument – that destruction of the notes was appropriate because they were "never the subject of any discovery request or order" – is also entirely unsupported in the law. Debtors' painfully narrow interpretation of the committees' requests for production has no

2

bearing on the issue. Debtors were specifically on notice that the board meetings themselves were relevant and at issue. Because of that, Debtors had a duty to preserve all evidence relating to the meetings. Whether or not a particular request for production specifically requested notes is beside the point. Nielsen's notes constituted the **only** contemporaneous evidence of the deliberations of MMPI's board during 2009 and 2010. As such, they were highly relevant to these proceedings, and MMPI had an affirmative duty to preserve them. MMPI's intentional destruction of those notes constitutes spoliation of evidence and sanctions are both appropriate and necessary.

## II.  ARGUMENT

### A. Nielsen Did Not Destroy His Notes In The Ordinary Course, But Even If He Had, Ordinary Course Gives Way To The Duty To Preserve Once Litigation Is Anticipated.

Debtors do not dispute that a duty to preserve evidence begins when a party has notice that the evidence is relevant to litigation or even when the party should know that the evidence might be relevant to future litigation. [*See* Opposition at 9:18-21.] Debtors nevertheless refuse to acknowledge the obvious: when Nielsen destroyed his notes in August 2010, he was fully aware that those notes contained information relevant to the ongoing litigation surrounding Debtors' various plans of reorganization.

Initially, Debtors do not address this point at all. Rather, they argue that Nielsen was permitted to destroy his notes because he destroyed them in the normal course of business.

As a threshold matter, Debtors are wrong on the facts. MMPI's ordinary course of business was to create board minutes shortly after the board meeting and to present those draft minutes to the board for approval at the next meeting.[1] If Mr. Nielsen followed the advice of the treatises and articles cited in Debtors' Opposition, he would have continued to follow this practice

---

[1] "Q Can you identify for me the time period for which you were preparing minutes between meetings? A Generally between 2007 and 2008. Q When you prepared the board minutes between meetings, did you usually present those minutes to the board for approval at the next meeting? A Yes. Q Is that something that you usually reflected in t eh minutes? A Yes. [Exhibit 1 to Request (Deposition of Nielsen), 17:1-10.]

3

after MMPI filed for bankruptcy protection.[2]

Nielsen's abject failure to follow appropriate procedures aside, MMPI's ordinary course of conduct is irrelevant to the issue at hand. Even if Nielsen was following an appropriate document retention policy, he was not entitled to destroy evidence. A party's normal policies and practices toward document retention and destruction become obsolete once they are on notice of actual or potential litigation. At that point, a party is flatly prohibited from destroying any "unique, relevant evidence that might be useful to an adversary." *See, e.g., Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217 (S.D.N.Y. 2003); *UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Contrary to Debtors' assertion, there is no exception for a party's "normal policy" or for their perceived "best practices" in the context of litigation. In fact, the law is unequivocal that, once litigation is commenced or even just anticipated, normal policies and practices do not apply.

In their Opposition, Debtors cite a treatise, the *Corporate Secretary's Answer Book*, for the proposition that corporate "best practices" include discarding draft minutes and notes after approval of board minutes. Even this treatise, though, makes clear that these "best practices" do not apply when on notice of litigation: "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents." *Corporate Secretary's Answer Book*, 8-28 (Cynthia M. Krus, 5th ed. 2011); *see also* Jones et al, *California Practice Guide: Federal Civil Trials and Evidence*,

---

[2] Debtors cite various treatises for the proposition that, in the ordinary course (i.e., not during litigation), earlier drafts of minutes or notes should be discarded. Debtors omit that these same treatises, often within the same paragraph, make clear that minutes should be prepared <u>promptly</u> after each board meeting. *See Corporate Secretary's Answer Book*, 8-14 (Cynthia M. Krus, 5th ed. 2011) ("Drafts of minutes should be prepared promptly after the meeting and circulated as soon as practicable to the directors and other persons involved in the meeting so that necessary corrections can be made before the official draft is circulated with the distribution of materials for the next meeting."); *The Tensions, Stresses, And Professional Responsibilities Of The Lawyer For the Corporation*, 62 Business Lawyer 1 (Nov. 2006) ("A draft of the minutes should be sent to each director promptly after the meeting"); *Up-to-the-Minutes: Best Practices for Memorializing Board and Committee Meetings*, § 7 (Dorsey & Whitney LL, June 2005) ("Minutes should be drafted and circulated to directors as soon as possible after the meeting itself. Prompt consideration of the minutes by directors and other participants will ensure that the meeting remains fresh in everyone's mind and will minimize potential uncertainty over what occurred").

4

8:404.1-.2 (2011) ("An obligation to preserve evidence may arise when the party in control has notice that the evidence is relevant to pending or future litigation … Notice may be express or implied. A party may have express notice, for example, when suit is filed. Notice may be implied if a party reasonably should know that evidence may be relevant to future litigation.").

Additionally, this is the rule set forth in the cases cited in Debtors' own Opposition: *United States v. $40,955.00 in United States Currency*, 554 F.3d 752, 758 (2nd Cir. 2009) and *United States v. KitsapPhysician Servs.*, 314 F.3d 995, 1001 (9th Cir. 2002). Both cases were decided on the issue of notice. Neither case supports Debtors' position.

In *United States v. $40,955.00 in United States Currency*, the evidence in question was the serial numbers on currency believed to have been acquired through drug sales that was seized from a safe at a home. 247 F.3d 423. The alleged spoliation occurred when the government deposited the currency in the bank, thereby making identification of the specific bills seized impossible. The non-spoliating party argued that the serial numbers would show the age of the currency and that it was earned long ago and, therefore, that it could not have been a result of recent drug sales. The court rejected the argument of spoliation reasoning that the government could not reasonably be found to have been put on notice that the serial numbers were potentially relevant by the single statement at the time the police searched the house that the bills were earned "long ago." *Id.* at 758.

Similarly, in *United States v. KitsapPhysician Servs.*, the court rejected the spoliation argument because the alleged spoliator destroyed the evidence *two years before the initiation of the action* and the lawsuit "could not have provided the notice required to establish a valid claim of spoliation." 314 F.3d at 1001.

The facts here are hardly comparable to the facts of *United States Currency* or *KitsapPhysician Servs.* Nielsen's notes were the only contemporaneously-created evidence of MMPI's board meetings, and when he destroyed the notes, MMPI was in the midst of litigation in which MMPI's board deliberations were a central issue.

Debtors' argue at length that the notes were "never the subject of any discovery request or order." Legally, this is a non sequitur. Even if the Debtors' tortured analysis of the

1 Committees' discovery requests were correct, it would make no difference. A party is under a duty
2 to preserve "what it knows, or reasonably should know, is relevant in the action, is reasonably
3 calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested
4 during discovery, and/or is the subject of a pending discovery request." *Wm. T. Thompson Co. v.*
5 *General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984). Whether the notes were
6 specifically requested or not, Debtors had a duty to preserve them because Debtors knew they were
7 potentially relevant to the issues in the case.

**B. Nielsen Knowingly Destroyed The Only Contemporaneous Evidence Of MMPI's Board Deliberations.**

**1. MMPI Engaged In Spoliation of Evidence**

Initially, Debtors argue that no spoliation occurred because Nielsen's notes were not "one of a kind." As a factual matter, Debtors are incorrect. Nielsen's notes were the only contemporaneous records of MMPI's board deliberations. As such, they were unique pieces of evidence. The minutes that Nielsen created long after the fact in the face of discovery requests and active litigation are no substitute. Throughout their Opposition, Debtors imply that the board minutes are merely a re-typing of Nielsen's notes. Unfortunately, because Nielsen destroyed his notes, the parties and the Court have no ability to test Debtors' assertion.

Even if Nielsen's notes were not the only contemporaneous record of MMPI's board deliberations, Debtors' underlying legal premise is flawed. There is absolutely no authority for the proposition that a litigant may knowingly destroy evidence so long as some other, different evidence exists. If Debtors had contemporaneous board minutes, for example, they could not destroy them simply because the parties can take testimony from board members.

**2. MMPI Acted With The Requisite Culpable State Of Mind**

In the Ninth Circuit, the law is clear that sanctions for spoliation do not require bad faith destruction of evidence: "a finding of bad faith is not a prerequisite to this corrective procedure." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *see also UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc. Copyright Litig.)*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006) ("A party's destruction of evidence need not be in "bad faith" to

6

warrant a court's imposition of sanctions").

Rather, in this Circuit, an adverse inference is proper when the party destroying the evidence had "simple notice of [its] potential relevance to the litigation." *See Glover*, 6 F.3d at 1329 (quotations omitted); *see also In re Napster*, 462 F. Supp. 2d at 1066 ("District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation").

Debtors do not acknowledge the applicable standard under the Ninth Circuit. Instead, they contend that Nielsen's destruction of evidence acted "without any culpability whatsoever" because he destroyed his notes as part of "the standard practice of the company" and not as "part of some nefarious plot to destroy secret evidence of wrongdoing at the Board level." [Opposition, 15:8-11.] Debtors have confused the issue in several ways.

As an initial matter, Debtors place the cart before the horse: they demand that the Charlestown Proponents prove the contents of the evidence Debtors' destroyed. The adverse inference sanction is remedial. Because Debtors' destroyed relevant evidence, the Charlestown Proponents are entitled to an adverse inference that the evidence contained information helpful to the Charlestown Proponents and harmful to Debtors. In any event, the Charlestown Proponents do not have to prove a plot of wrongdoing by the board to obtain a finding of spoliation.

Moreover, Debtors' argument ignores the relevant standard in the Ninth Circuit, which does not require a "nefarious plot to destroy secret evidence" but only destruction in the face of a duty to preserve. *See, e.g., Glover*, 6 F.3d at 1329; *In re Napster*, 462 F. Supp. 2d at 1066.

Finally, and as set forth above, Debtors' position directly contravenes the bright line rule that parties have a duty to preserve evidence relevant to litigation either existing or anticipated. In this context, a company's normal document retention policies are displaced by the duty to preserve.

Debtors next claim that Nielsen acted without a culpable state of mind because: 1) he had no notice that his notes were relevant or could be the subject of discovery; 2) he made no attempt to hide facts; and 3) his delay in creating the minutes was "reasonable" because he simply fell behind. [Opposition, 14:12-15:5.] Again, each of Debtors' factual assertions is false.

First, Nielsen obviously knew that documents concerning board deliberations could be relevant or the subject of discovery: he was creating the board minutes in response to discovery requests. This alone supports a finding of spoliation.

Debtors' second and third arguments are not relevant to whether Nielsen destroyed evidence in the face of a preservation duty; nevertheless, they are equally unavailing to Debtors.

With respect to the second argument, Nielsen did conceal what he was doing: Debtors filed a motion for a protective order to prevent disclosure of the board minutes even though no such minutes existed; Nielsen used the vague phrase "various minutes" to describe nearly two years' worth of board minutes; and Nielsen gave evasive responses to direct questions in his deposition. Nielsen's admission that he destroyed his notes is hardly a sign of candor. Nielsen could not claim to have retained the notes because then he would then have been required to produce them. His only other option would have been to admit that he created nearly two years' worth of board minutes **without** relying on notes, making the accuracy of the minutes even more suspect.

Finally, Nielsen's "I was busy" excuse does **not** explain why Nielsen did not disclose what he was doing. It was not reasonable for Nielsen and MMPI to mislead the parties and the Court about the existence (or, rather, non-existence) of minutes. Nielsen's sole and obvious purpose was to mislead. He wanted the parties and the Court to believe that the board minutes were created contemporaneously in the ordinary course when, in fact, they were created long after the fact when active litigation had already commenced.

Rather than apply the Ninth Circuit standard that governs this proceeding, Debtors seek support from the Eastern District of Pennsylvania with *Estate of Costobile-Fulginiti v. City of Phila.*, 719 F. Supp. 2d 521 (E.D. Pa. 2010). As a threshold matter, Debtors ignore a critical point: the Third Circuit is recognized to take a different approach than the Ninth Circuit with respect to spoliation of evidence. See *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 614-615 (S.D. Tex. 2010).

Debtors contend that *Costobile-Fulginiti* is relevant because it supposedly has "facts almost identical to those here." [Opposition, 15:12.] The facts, however, are anything but identical.

8

*Costobile-Fulginiti* involved "the tragic death of a two-month old infant" and the infant's estate's subsequent lawsuit against the City of Philadelphia "for releasing the infant to the mother's home despite" accusations that the mother had drug problems. *Id*. at 523. Before the infant was released to the mother, a social worker conducted a "home evaluation" and found a safe environment. *Id*. After the infant was released, the social worker conducted several additional investigatory trips to the mother's house, each time finding a safe environment. *Id.* The court found that the City owed no general duty to protect the infant and granted summary judgment against the estate. *Id*. The court also denied the estate's request to find that the City engaged in spoliation of evidence. The estate claimed that City committed spoliation because the social worker destroyed her original investigation notes. The court, however, found that the social worker simply typed her notes into computer form after her investigation concluded, and that the typed notes contained all of the information from the handwritten notes. *Id*. at 529. Moreover, the social worker discarded her notes well before any complaint was filed against the City. *Id*.

Even if no relevant Ninth Circuit authority existed, Debtors cannot seriously compare Nielsen's conduct to that of the social worker in *Costobile-Fulginiti*. Nielsen is not a social worker; he is the general counsel of a public company engaged in litigation in Chapter 11 bankruptcy proceedings. He did not transcribe handwritten notes into typewritten notes; he purported to create official board meeting minutes from his notes many months after those meetings took place and after those minutes were requested in discovery.[3]

**C. Nielsen's Notes Are Highly Relevant.**

MMPI's board deliberations are a central issue in this case. The conduct and oversight of the board has been placed at issue by both parties. Debtors have presented evidence to

---

[3] The August 23, 2010 meeting minutes cast doubt on the reliability of Nielsen's minutes. First, the meeting lasted 75 minutes. In addition to the normal full agenda, the Board purportedly reviewed almost two years worth of minutes, suggested changes and then approved them. Setting aside the fading memories of the board members, it would appear the board devoted little time to reviewing each page of minutes. Second, the meetings actually do note, ambiguously, that "Mssrs. Beckemyer and Maddux provided some revisions" (Exhibit 2 to Request (August 23, 2010), p.4), which suggests that Nielsen's notes were found to be inaccurate in some unknown respect.

9

the effect that active board oversight will protect shareholders from Richard Meruelo's questionable leadership. The Charlestown Proponents and others have argued, among other things, that the Debtors' plans have been proposed in bad faith because the board members did not properly discharge their duties. Although Nielsen's notes were the only contemporaneous evidence of the board's deliberations, Debtors' still contend that those notes are not relevant.

To make this argument, Debtors imply – but only imply – that Nielsen simply transcribed his notes and that the board minutes are essentially just electronic versions of his handwritten notes. In support of this argument by implication, Debtors cite *In re Take-Two Interactive Software, Inc.*, 2009 U.S. Dist. LEXIS 39140 (S.D.N.Y. Apr. 21, 2009). In *Take-Two*, defendants sought sanctions for spoliation of evidence by a special litigation committee formed by Take-Two's board of directors. *Id.* The committee chairman's secretary took handwritten notes of the meetings, converted the handwritten notes into typewritten drafts and destroyed the handwritten notes. *Id* at 12-13. The court found the destruction of the handwritten did not warrant an adverse inference. *Id* at 15.

*Take-two* is easily distinguishable on its facts. First, the evidence showed that the secretary was merely taking handwritten notes and converting them into typewritten notes without making substantive changes (her supervisor testified that he required her to create typewritten notes because he could not read her handwriting). *Id* at 13. Second, the typewritten notes were created at or around the time that the handwritten notes were created. And, finally, these typewritten notes were preserved and the parties could compare them to the final approved minutes. *Id.*

Here, Nielsen is not a secretary transcribing handwritten notes because he has bad handwriting. He is the General Counsel of a public company preparing board minutes for presentation to the Board. Moreover, Nielsen did not transfer handwritten notes into typewritten notes at or about the time the handwritten notes were created. He created final board minutes long after the meetings took place in the shadow of contentious litigation. Under the circumstances, Debtors are simply not entitled to a presumption of irrelevance.

### D. The Spoliation Motion Is Timely.

Debtors' renew their argument that the Spoliation Motion is untimely. The

1  argument has no greater merit now than it did before.

2  Because Nielsen concealed what he was doing, neither the parties nor the Court
3  knew that he was creating the board minutes after they were already requested in discovery. For
4  obvious reasons, Nielsen's notes are far more significant when the board minutes are created during
5  the litigation rather than contemporaneously. It is not reasonable for Debtors to conceal their
6  improper conduct and then complain that the parties did not uncover it fast enough.

7  This is particularly true when the discovery schedule was highly-compressed and the
8  parties ability to conduct document discovery was significantly restricted. Although Debtors
9  produced the board minutes in October 2010, the Debtors' first full document production took place
10 on December 7, 2010. At that time, Debtors' produced thousands of pages of documents in
11 individual .tiff files. Depositions commenced a few days later and continued nearly every business
12 day thereafter until mid-January.

13 Nielsen was deposed on January 12, 2011, and Plan Proponents' reply briefs were
14 due two days later on January 14, 2001. With only a newly-acquired rough transcript and virtually
15 no time to prepare substantive argument, the Charlestown Proponents included the basic facts of
16 Nielsen's destruction of evidence in their Ominubus Reply. [Dkt. #2586 (Omnibus Reply).] The
17 Charlestown Proponents specifically apprised the parties and the Court that they believed Nielsen's
18 conduct amounted to spoliation of evidence and that they would bring a motion for sanctions. [*Id.* at
19 8:23-26.]

20 On February 3, 2011, less than three weeks after filing the Omnibus Reply, the
21 Charlestown Proponents filed the Spoliation Motion. During that period, in addition to a few final
22 depositions, the parties were dealing with the Legendary and East West settlement motions (filed on
23 shortened time), motions *in limine*, and the actual commencement of trial. Under the circumstances,
24 Debtors' arguments regarding the Charlestown Proponents supposed delay are not persuasive.

25 In a related argument, Debtors contend that the Spoliation Motion should have been
26 filed before the deadline for *in limine* motions. Debtors improperly equate the Spoliation Motion
27 with a motion to compel production of evidence or a motion *in limine* to exclude evidence. The
28 Spoliation Motion is distinct from those motions, however, because evidence that has been

destroyed cannot be compelled or excluded.  At bottom, Debtors' arguments regarding delay must fail because no matter how quickly the Charlestown Proponents brought this matter to the Court's attention, the result would be the same.  Nielsen destroyed his notes in August 2010, and a meet and confer letter in September 2010 would not have given Debtors' counsel the ability to un-destroy them.

### III.    CONCLUSION

For the foregoing reasons, the Charlestown Proponents request that the Court draw an adverse inference from Debtors' spoliation of evidence.

DATED:  February 23, 2011

                                         LESNICK PRINCE LLP


                              By:  /s/ Christopher E. Prince
                                Christopher E. Prince
                                Attorneys for Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation