Cara J. Hagan, Bar No. 146665
Andrea M. Dumond, Bar No. 258948
HAGAN & ASSOCIATES
110 E. Wilshire Avenue, Suite 405
Fullerton, CA 92832

Telephone:    (714) 526-3377
Facsimile:    (714) 526-3317

Attorneys for Secured Creditor,
PNL POMONA, L.P.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| *In Re* ) | Case No.: 1:09-bk-13356-GM |
| ) | |
| MERUELO MADDUX PROPERTIES, INC. ) | Chapter 11 |
| ) | |
| Debtor. ) | **SUPPLEMENTAL DECLARATION OF ENRIQUE (RICK) RODRIGUEZ IN SUPPORT OF SECURED CREDITOR PNL POMONA, L.P.'S OPPOSITION TO CONFIRMATION OF DEBTORS', AND LEGENDARY/EWB'S PROPOSED PLANS OF REORGANIZATION** |

I, ENRIQUE (RICK) RODRIGUEZ, do hereby state and declare that:

1.  The following matters are within my personal knowledge and, if called to testify, I could and would competently testify to the contents herein.

2.  Counsel for Creditor PNL Pomona, L.P. (PNL) has requested I opine on Mr. Reiss' testimony inclusive of that contained in his Third Supplemental Declaration in Support of Confirmation of Debtors Fourth Amended Plan of Reorganization and the proposed treatment of PNL's debt therein.

3.  In order to discuss the proposed treatment of PNL's debt in appropriate context, I will first address;

1

Direct Testimony of Enrique (Rick) Rodriguez

1. The Loan to Values utilized, which are based on the debtors valuation
2. The proposed reduction in loan to values, based on guarantees, and
3. The proposed interest rate adjustments between five and seven year terms

4. It is a basic and fundamental tenet in the lending industry that when establishing a value on any type of collateral to lend on, the lender procures an independent appraisal or establishes a value itself. Indeed the idea that a borrower determines a value for collateral he or she wishes to hypothecate, and directs the lender to use said value as support for a loan, is simply unheard of. In the instant case, Mr. Reiss continues to use the debtor's valuation, ignoring even the value previously established by the court.

5. It is a common practice in the real estate lending industry to procure guarantees when possible, in an effort to support debt. Said guarantees vary, there are full repayment guarantees, limited repayment guarantees, lien free completion guarantees, environmental guarantees and numerous variations thereof.

6. Prudent and standard practices in the industry dictate that guarantees are viewed as tertiary repayment sources behind the primary source of repayment be it cash flow, refinance or sale of a property and the secondary repayment source; generally the liquidation of foreclosed collateral.

7. It is against prudent and prevailing lending practices to view an uncollateralized guarantee as a "credit enhancement". Indeed lenders only consider hypothecated Letters of Credit, Certificates of Deposit or other negotiable instruments that the lender will have unfettered access to when exercising its remedies, as a form "credit enhancement".

8. In the instant case, Mr. Reiss proposed that the court reduce PNL's loan to value to 80% simply because Belinda Meruelo and the Trust of Homer Meruelo provided PNL a guaranty. Completely ignored is the fact that the guarantors have refused to honor their obligation requiring PNL to file litigation in order to

2

Direct Testimony of Enrique (Rick) Rodriguez

enforce the same. Giving these guarantees the stature of a "credit enhancement" is not fair or equitable.

9. In providing the lenders recompense for an additional two year term, Mr. Reiss applies the same delta used by United States Treasury in issuing notes of different maturities. While there is considerable comfort provided to those investing in Treasury Bills that the full faith and credit of the United States Government will support these obligations irrespective of duration, neither the Debtor in Possession nor any of the proposed Guarantors provide similar support or offer any significant level of comfort that they will be able to service or repay these debts in five or seven years. Therefore, the delta utilized in the duration factor needs an upward adjustment in a manner that differentiates the full faith and credit of United States with that of the Debtor in Possession.

*Third Supplemental Declaration of M. Freddie Reiss*

10. It is unclear whether in his Third Supplemental Declaration, Mr. Reiss and the debtor propose individual changes to the interest rates for the four non-consenting lenders, or if they continue to suggest that all creditors receive the 5.14% rate of interest as originally proposed. For the purpose of this Supplemental Declaration, I will begin by assuming that the rates provided in the Exhibits to his Third Supplemental Declaration may be newly proposed rates.

*Exhibit A*

11. In Exhibit A, it appears that Mr. Reiss is proposing a 5.60% rate of interest for the PNL debt for a five-year term. The only apparent change is an increased risk adjustment for the nature of Security factor from 0.47% in his Expert Report to 0.56% in Exhibit A. It may be explained in footnote number 3 of Mr. Reiss' declaration wherein he states, "…the chart reflects the removal of the personal guarantee cap of 80% LTV from the PNL loan, though the interest rate for the PNL secured claim has not changed", but it is not clear to me.

3

Direct Testimony of Enrique (Rick) Rodriguez

12. For a seven-year term, Mr. Reiss appears to propose a 6.30% interest rate for the PNL debt. He justifies the seventy basis point upward adjustment to the Duration factor by adding the difference between a five-year U.S. Treasury Note and a seven-year U.S. Treasury Note, proposing that this delta represents what is a fair compensation for an additional two-year term on the PNL debt.

*Exhibit B*

13. Exhibit B to Mr. Reiss' Third Supplemental Declaration is not applicable to the PNL analysis, unless the debtor is proposing to provide an MMPI guarantee to PNL.

*Exhibit C*

14. Exhibit C may also be inapplicable to PNL, however, since the rates shown on the charts are different from those proposed in the plan, and the narrative is limited to a footnote, it is difficult to comprehend what, if anything the declaration proposes for the PNL debt. Moreover, acknowledging an LTV in excess of 80% on this land loan and extending the same for seven years without upwardly adjusting the rate of interest would not be fair. Therefore, it is important to comment on this exhibi**t**.

15. Notwithstanding Integra Realty's appraised value of $8,550,000 or the court's determined value of $10,737,000, Mr. Reiss continues to rely on a subjective value determined by the Debtor in Possession of $15,000,000.

16. It appears that MMPI's net equity is to cover the Debtors projected PNL deficiency of $2.3 Million. However,
    1. MMPI does not guarantee the PNL debt, and
    2. There is an old adage in the lending industry that says; *"You will never be repaid from net worth,"* yet that is precisely what it appears this chart proposes.

17. There is no evidence or analysis as to the composition of the net equity. Given the debtor is suggesting this net worth could somehow cover the projected

4

Direct Testimony of Enrique (Rick) Rodriguez

deficiencies of PNL and the other non-consenting lenders, I would expect an analysis that would disclose how the debtor will convert this net worth into a reliable source of cash to meet these obligations as they become due. Towards that end, it would be important to know at minimum, if the values used in calculating this equity are the debtor's subjective values and if there has been a provision made for the costs of selling the debtors real estate assets inclusive of taxes due upon such sales.

18. In summary, it is unclear if the debtor thru the Third Supplemental Declaration of Mr. Reiss proposes to increase PNL's rate of interest to 6.30% or if there is no change to the originally proposed 5.14% rate. However, it is clear to me that neither rate would provide a fair and equitable rate of interest to PNL given the risks presented by this credit. It is also clear, that there are inadequate adjustments in pricing the large and significant risk profiles of the non-consenting creditor's debts in Mr. Reiss' schedules.

*Conclusion*

19. Lenders do not accept values provided by their borrowers. Likewise, PNL's debt should not be priced based on a value unsupported by an independent third party appraisal.

20. The personal guarantees of Belinda Meruelo and the Trust of Homer Meruelo do not provide any type of "credit enhancement", nor would the guarantee of the parent company MMPI, that is currently undergoing Chapter 11 proceedings.

21. The proposed seventy basis point upward adjustment to compensate PNL for the additional two-year term is inadequate.

22. The fact remains, this loan was extended to the Debtor in Possession who failed to maintain, much less develop the subject property. The property is highly leveraged, is in a tertiary industrial market that continues to deteriorate in value and there are no plans, but to offer it for sale. There is no source of income to service the debt and the guarantors have reneged on their obligations. Moreover,

5

Direct Testimony of Enrique (Rick) Rodriguez

to my knowledge, the debtor has not received an offer that is close to the $15 million value it has used to calculate and propose a fair rate of interest for the PNL debt.

23. Therefore, I continue to opine that in order to provide PNL a fair and equitable rate of interest, the minimum rate should be 12% as I initially concluded in my Declaration dated December 28, 2010. Said rate is supported by the following adjustments to the prime rate of **3.25%**, which I believe are reasonably and metrically commensurate with my proposed rate for the China Trust debt as well as the rates proposed by experts of other non-consenting creditors;

- + **1.75%** for the "*Circumstances of the Estate*" factor
- + **4.75%** for the "*Nature of Security*" factor
- + **1%** for the "*Feasibility*" factor
- + **1.25%** for the "*Duration*" factor

Finally, it is noteworthy that the resulting **12%** rate remains significantly below a rate any lender would be willing to provide financing on the Property for, particularly over the proposed seven-year term.

**I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct to the best of my knowledge.**

**Executed this 28th of February 2011.**

_____
            **ENRIQUE (RICK) RODRIGUEZ**