John D. Williams & Chris Kappos III, Trustees
Williams & Ribb Employee Profit Sharing Plan
4300 Long Beach Blvd., Suite 350
Long Beach, CA 90807
Telephone:  (562) 423-8777
Facsimile:   (562) 423-6177

In Pro Per

FILED
MAR - 1 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

In re

MERUELO MADDUX PROPERTIES, INC.,
et al.,

Debtors.

) CASE NO.: 1:09-bk-13356-VK
)
)
)
) Chapter 11
)
) **WILLIAMS & RIBB EMPLOYEE**
) **PROFIT SHARING PLAN'S RESPONSE**
) **REGARDING COURT'S TENTATIVE**
) **RULING REGARDING SECTION 1129(C)**
)
)
) Date:  February 28, 2011
) Time:  2:00 p.m.
) Place: Courtroom 301
)         21041 Burbank Blvd.
)         Woodland Hills, CA 91367
)
)
)
)
)
)

1

WILLIAMS & RIBB EMPLOYEE PROFT SHARING PLAN'S RESPONSE REGARDING COURT'S TENTATIVE RULING
REGARDING SECTION 1129(C)

The Williams and Ribb Employee Profit Sharing Plan, an equity holder of Debtor and an independent member of the Official Committee of Equity Holders (the Committee), submits this independent response with respect to the Court's Tentative Ruling on Bankruptcy Code Section 1129(c) and states as follows:

## STATEMENT

We believe the continuing and unnecessary legal expenses being incurred by the debtor poses a grave and serious threat for the plan of reorganization to reach a successful outcome. We believe the burden of incurring millions of dollars per month in legal expenses has been unnecessary and far exceeds any reasonable standard for safeguarding the debtor's assets to allow them to emerge from bankruptcy to execute a successful plan of reorganization. We support the Court's tentative ruling under Section 1129(c).

Williams & Ribb's Employee Profit Sharing Plan also believes it is necessary for the court to be aware of certain circumstances surrounding the Official Committee of Equity Holders, Taylor International Fund, Ltd., Stephen Taylor, the partners and investors of Taylor International Fund, Ltd. namely David Spinney and David Ofman and the employees of Taylor Asset Management, Inc. namely Robert Kirkland, Christopher Kliner, Jeff Maher and Ellis Kitsemble during the course of the bankruptcy process.

It is our understanding that sometime during April or May 2010 Taylor International Fund, Ltd. and Stephen Taylor, as an individual, engaged the legal services of Ron Orr & Professionals, Inc. and the Rodiger Law Office to represent them in connection with an application for appointment of an Official Equity Committee. Mr. Taylor stated during a telephone call with him during August 2010 that his decision to engage the firms was based upon Ron Orr's and Georgiana

2

WILLIAMS & RIBB EMPLOYEE PROFT SHARING PLAN'S RESPONSE REGARDING COURT'S TENTATIVE RULING REGARDING SECTION 1129(C)

"Christy" Rodiger's long connection and relationship with the previous judge presiding over this case, Judge Kathleen Thompson. The connection and relationship with Judge Thompson was initially at the law firm of Gibson, Dunn & Crutcher where Ron Orr was the founding partner of their National Insolvency Practice where he specialized in all facets of debtor-creditor relations, including insolvency issues and reorganizations. It is our understanding that both Christy Rodiger and Judge Thompson were associates with Gibson, Dunn & Crutcher and worked directly under Mr. Orr's supervision and control for nearly a decade.

Shortly after their retention, Ron Orr's office sent a letter dated May 20, 2010 to the U.S. Trustee Jennifer L. Braun requesting the appointment of the Committee. The letter included a statement as follows: "If you are not inclined to appoint an Official Equity Committee of non-insider equity holders, please so inform me at your earliest convenience so that I may expeditiously seek appointment of the Committee from the Judge Thompson." It is our opinion that this was the initial effort by Mr. Orr and Christy Rodiger to use their long relationship and connection with Judge Thompson to achieve favorable results on behalf of Taylor International Fund, Ltd. and Stephen S. Taylor. The U.S. Trustee and the Court shortly thereafter appointed the Committee.

The initial three members of the Committee were Taylor International Fund, Ltd., represented by Stephen Taylor, David Spinney who, according to Stephen Taylor's sworn testimony, is a partner and investor in Taylor International Fund, Ltd. and Doug McCaslin. Clearly from the very formation of the Committee, Taylor International Fund, Ltd., its partners and investors were in full control of the Committee. The Committee with only the three initial members moved quickly on July 19, 2010 to approve the appointment of Mr. Orr and Ms. Rodiger, even though Stephen Taylor had strong reservations about their abilities to serve as legal counsel to the Committee. The Committee engaged their services with the knowledge, according to Mr. Taylor, that Mr. Orr was

3

WILLIAMS & RIBB EMPLOYEE PROFIT SHARING PLAN'S RESPONSE REGARDING COURT'S TENTATIVE RULING
REGARDING SECTION 1129(C)

subject to public discipline and reproval before the State Bar of California due to his conviction for violating Penal Code Section 417(a)(1) for brandishing a lethal weapon in public. According to Mr. Taylor's personal statements to us during the August telephone call, he had significant reservations regarding Mr. Orr's ability to properly represent the committee but nonetheless decided to engage the legal services of the two firms based primarily upon their connections with Judge Thompson. The connections and relationships with Judge Thompson were later confirmed during Committee meetings by both Ron Orr and Christy Rodiger acknowledging their relationships with Judge Thompson were favorable during several court hearings. The reservations held by Mr. Taylor regarding the ability of Ron Orr and Christy Rodiger to properly represent the Committee were affirmed by the Committee deciding to submit an additional application to the Court to employ a third firm of legal advisors in Jenner & Block LLP *nunc pro tunc* to August 4, 2010. In our opinion, although the retention of Ron Orr & Professionals Inc and The Rodiger Law Office, based upon their relationship with Judge Thompson, may have served the initial purpose of Taylor International Fund, Ltd. and Stephen Taylor to establish the Committee, the end result of employing three separate law firms by the Committee has resulted in an unreasonable amount of legal expenses to the debtors' estate.

Subsequent to the initial appointment of three members to the Committee, the U.S. Trustee then appointed four more members; David Ofman, an additional partner and investor in Taylor International Fund, Ltd., Kapil Tayil, David Pourbaba and the Williams & Ribb LLP Profit Sharing Plan. As far as we know, David Pourbaba never attended a Committee meeting and resigned from the Committee within approximately one month of his appointment. Taylor International Fund, Ltd., when you include its partners and investors, was represented by at least three of the remaining six members of the Committee and, therefore, essentially had veto power and effective control of

4

WILLIAMS & RIBB EMPLOYEE PROFT SHARING PLAN'S RESPONSE REGARDING COURT'S TENTATIVE RULING REGARDING SECTION 1129(C)

the Committee. It is our opinion, Taylor International Fund, Ltd. and its partners and investors intentionally and willfully master mined taking control of the Committee from the beginning by not fully disclosing their connections and relationships when submitting their applications to the U.S. Trustee to serve on the Committee.

We believe it's also important for the court to be aware that certain employees of Taylor Asset Management Inc., the manager of Taylor International Fund, Ltd., namely Robert Kirkland, Christopher Kliner, Jeff Maher and Ellis Kitsemble, who are not official Committee members, have participated in official telephonic Committee meetings where confidential information regarding the bankruptcy process and the debtors estates were discussed. The extent of their participation can be easily ascertained by the Court by requesting Taylor International Fund, Ltd. to submit the committee's telephone conference records indentifying each participant by telephone number on the numerous Committee conference calls. Additionally, the same employees of Taylor Asset Management, Inc. have been included on virtually all email correspondence by the legal advisors and professionals serving the Committee. This was not unintentional or inadvertent as the legal advisors carefully monitored the Committee's email distribution list and on several occasions had to tell Committee members and Committee advisors to remove David Pourbaba from the email distribution list after his resignation. Taylor Asset Management Inc. and its employees are not official committee members yet have been provided substantial confidential information regarding the bankruptcy proceedings through email correspondence and participation in Committee conference calls with the full knowledge of the Committee's legal counsel and professional advisors. It is also our understanding that Taylor Asset Management Inc may not even have proper legal standing as we believe the corporation was involuntarily dissolved by the State of Illinois during November 2009.

5

We also understand the debtors estates may have also been improperly billed legal fees for telephonic and email correspondence conducted solely between Taylor Asset Management Inc.'s employee Jeff Maher and legal counsel representing the Committee. Please refer to the first bill submitted by Ron Orr & Professionals, Inc.

We believe it's also important for this court to be informed that during the telephone call in August 2010, Stephen Taylor told Chris Kappos, as a representative of the Williams & Ribb Employee Profit Sharing Plan, that Taylor International Fund, Ltd. and he, as an individual, had held discussions and were continuing to discuss with certain members of the Charlestown group how Taylor International Fund, Ltd. and himself would participate as financial backers of the Charlestown plan of reorganization. He said Taylor International Fund, Ltd. and he would be willing and could backstop any funding requirements of the Charlestown plan. From that time forward, it is our opinion the Committee decisions were engineered and structured into endorsing the Charlestown plan of reorganization. This in light of the fact the Committee members had been provided information that demonstrated that the debtor plan provided a superior long term economic value to the non insider equity members. The Charlestown plan of reorganization contains a mandatory redemption of up to 55% of shares owned by equity holders at 35 cents per share which is well below any reasonable estimate of the remaining per share fair value of the debtors equity. The Committee members were fully apprised of this during several committee meetings.

We believe it may be interesting for this court to take notice that during the voting process, given the opportunity to elect the 35 cent cash out option provided by the Charlestown plan, not a single member of the Committee elected to sell their shares for 35 cents even though all of the Taylor Committee members voted to endorse the Charlestown plan. The only conclusion that can be inferred is each Committee member was fully aware and knowledgeable that the true economic value of their

equity interest far exceeded the 35 cents per share included as part of the Charlestown plan and they voted with their pocket book in mind and effectively rejected that option.

The circumstances stated above should raise a question before the court as to which Committee members could potentially benefit if the Committee were to officially endorse the Charlestown plan. To the extent Taylor International Fund, Ltd. and Stephen Taylor, by his own admission, were in discussions to participate alongside the Charlestown group in acquiring 55% of the outstanding shares at 35 cents per share they would potentially be the primary benefactors as no other independent Committee member was provided any opportunity to hold discussions to financially participate with the Charlestown plan proponents. In essence, the Taylor Fund and its partners and investors are better to be the buyers at 35 cents per share and not the sellers at 35 cents per share and it appears Taylor International Fund, Ltd., its partners and investors were uniquely positioning themselves to take advantage of this opportunity to the detriment of all other equity holders. We believe Taylor International Fund, Ltd., its partners, investors and employees effectively were negotiating with the Charlestown plan proponents to become the ultimate "insiders" of the debtor under the cover of the Official Committee of Equity Holders

The control of the Committee by Taylor International Fund, Ltd., its partners and investors, should be of significant concern to the Court given the substantial legal expenses incurred by the debtor's estates to defend litigation brought by the Committee. In our opinion, the Committee is not a true representation of non insider equity holders and has effectively become a free legal vehicle to seize control of the debtor by the second largest shareholder, the Taylor International Fund, Ltd. We believe Taylor International Fund, Ltd., its partners and investors are engaged in an attempt to "get Richard Meruelo" and wrest control of the debtors estates from Mr. Meruelo. We believe Taylor

7

WILLIAMS & RIBB EMPLOYEE PROFT SHARING PLAN'S RESPONSE REGARDING COURT'S TENTATIVE RULING
REGARDING SECTION 1129(C)

International Fund, Ltd.'s attempt for control of the debtor has caused significant legal expenses to be incurred by the debtors estate to the detriment of the true non insider shareholders.

Lastly, the Williams & Ribb Employee Profit Sharing Plan is still a member of the Official Committee of Equity Holders, however, based upon our conclusion that the Committee had been seized by Taylor International Fund, Ltd., its partners, investors, employees of Taylor Asset Management Inc., we made a decision to stop attending all Committee meetings about the end of November 2010. We believed our efforts to carry out our fiduciary obligations and duties to all non insider shareholders were without merit and did not want to be associated in any way with an attempt at a potentially destructive and expensive hostile takeover of the debtor to the financial detriment of all other equity holders.

We have submitted our response in pro per as we believe incurring additional expenses for independent legal counsel is not necessary at this stage as the Court can easily verify the statements provided above through inquiry and review of documents filed with the U.S. Trustee's office, the Court and maintained by Taylor International Fund, Ltd. and its legal and professional advisors. We reserve our right to apply for independent legal representation if necessary.

We believe the circumstances as stated above require a determination of this court as follows:

Did Taylor International Fund, Ltd., Stephen Taylor, David Spinney and David Ofman, properly and adequately disclose their true connections and decades long relationships in their applications to participate as members of the Official Committee of Equity Holders? If the Court determines they did not properly and adequately disclose their connections and relationships, should Taylor International Fund, Ltd., its partners and investors, be subject to sanctions as the Court may deem as just and proper under the circumstances?

Did the U.S. Trustee's office have knowledge of the connections and relationships between Taylor International Fund, Ltd., Stephen Taylor, David Spinney and David Ofman, prior to their appointment to the Committee?

Did Ron Orr & Professionals, Inc and The Rodiger Law Office, in their application of employment by the Official Committee of Equity Holders, fully and adequately disclose their close relationships and connections with Judge Kathleen Thompson. The relationships and connections with Judge Thompson could in appearance or in fact be adverse to parties-in-interest in these cases, which includes the Williams & Ribb LLP Profit Sharing Plan. If the Court determines that adequate and proper disclosures were not made with their applications, should the law firms be subject to sanctions as the Court may deem as just and proper under the circumstances?

## CONCLUSION

Due to the unending burden of responding to unnecessary litigation brought by the Official Committee of Equity Holders, which has effectively been controlled since its formation by Taylor International Fund, Ltd., represented by Stephen Taylor, and Committee members David Spinney and David Ofman, the debtors estate has suffered unreasonable legal and professional expenses. It is our opinion, Taylor International Fund, Ltd., along with Stephen Taylor, has used the continuing cover of the Committee for the primary benefit of Taylor International Fund, Ltd. and Taylor Asset Management, Inc. to the detriment of other non insider equity holders.

If the court does not find any conclusive adverse findings with the formation or conduct of the Committee, its members and professional advisors we submit that this Court should nonetheless confirm the debtor plan of reorganization and spare the debtors estates from any further unnecessary litigation expenditures.

1   The reorganization process needs to reach a conclusion without any additional financial
2   burden to the debtors estate to ensure the success of its plan of reorganization and protect any
3   remaining equity that rightfully belongs to all shareholders of the debtor and, therefore, Williams &
4   Ribb's Employee Profit Sharing Plan supports the Court's tentative ruling under bankruptcy code
5   section 1129(c).

Dated: February 25, 2011

Williams & Ribb Employee Profit Sharing Plan

*/s/ John Williams*

John D. Williams, Trustee

*/s/ Chris Kappos*

Chris Kappos III, Trustee