1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
2  ENID M. COLSON (State Bar No. 189912)
   *EColson@DGDK.com*
3  MICHAEL C. ABEL (State Bar No. 187743)
   *MAbel@DGDK.com*
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone: (310) 277-0077
6  Facsimile: (310) 277-5735

7  GARY E. KLAUSNER (State Bar No. 69077)
   *GKlausner@Stutman.com*
8  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
9  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA  90067-6013
10 Telephone: (310) 228-5600
   Facsimile: (310) 228-5788

11
   Attorneys for Meruelo Maddux Properties, Inc., and
12 affiliated Debtors and Debtors-in-Possession

13               UNITED STATES BANKRUPTCY COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15                 SAN FERNANDO VALLEY DIVISION

16 In re                          ) Case No. 1:09-bk-13356-VK
                                   )
17 MERUELO MADDUX PROPERTIES,      ) Chapter 11 (Jointly Administered)
   INC., et al.[1]                 )
18                                 ) **DEBTOR'S REPLY RE MOTION FOR**
            Debtors and Debtors-in-) **ORDER DISALLOWING CLAIM NO. 3**
19             Possession.         ) **FILED BY THE UNION RESTAURANT &**
                                   ) **LOUNGE, LLC; MEMORANDUM OF**
20                                 ) **POINTS AND AUTHORITIES; AND**
                                   ) **DECLARATION OF TODD NIELSEN IN**
21 _____) **SUPPORT THEREOF**
                                   )
22 ☐    Affects all Debtors        )
                                   ) **Date:  March 17, 2011**
23 ☑    Affects the following Debtor(s): ) **Time:  2:30 p.m.**
                                   ) **Place: Courtroom 301**
24 *Meruelo Maddux Properties – 760  S. Hill* )        **21041 Burbank Blvd.**
   *Street, LLC, case no. 1:09-bk-13363-VK* )        **Woodland Hills, CA**
25                                 )
                                   )
26 _____)

27    [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
   entities. The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-
28 13434-VK; and 1:09-bk-13439-VK.

                                    1

1

# TABLE OF CONTENTS

2
Page

3    1.    SUMMARY OF ARGUMENTS IN REPLY ....................................................... 2

4    2.    THE CLAIM OBJECTION REBUTTED THE *PRIMA FACIE* VALIDITY
           AFFORDED TO UNION RESTAURANT'S CLAIM ...................................... 3
5
6    3.    UNION RESTAURANT'S DEFAULT AND BREACH ................................... 4

7    4.    THE LEASE WAS THE FULLY INTEGRATED AGREEMENT OF THE
           PARTIES ............................................................................................................ 5

8    5.    THERE WAS NO ANTICIPATORY BREACH ............................................. 6

9    6.    THE DEBTOR DID NOT BREACH THE LEASE .......................................... 7

10   7.    FURTHER ISSUES UNDERCUTTING UNION RESTAURANT'S
           ARGUMENTS ................................................................................................... 9
11
12   8.    DEFAMATION ................................................................................................ 11

13   9.    CONCLUSION ................................................................................................ 12
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashford v. Consol. Pioneer Mortgage (In re Consol. Pioneer Mortgage)*
    178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) .............................................................. 3

*Baker v. Los Angeles Herald Examiner,*
    42 Cal. 3d 254, 228 Cal. Rptr. 206 (Cal. 1986) ................................................ 11

*Bank of the West v. Superior Court,*
    2 Cal.4th 1254, 833 P.2d 545 (1992) .................................................................. 5

*Central Valley Hosp. v. Smith,*
    75 Cal. Rptr. 3d 771, 781, 162 Cal. App. 4th 501, (Cal. Ct. App. 2008) *citing*
    *Taylor v. Johnston,* 539 P.2d 425, 15 Cal. 3d 130 (Cal. 1975) ......................... 6

*Gregory v. McDonnell Douglass Corp.*
    17 Cal. 3d 596, 131 Cal. Rptr. 641 (Cal. 1976) ............................................... 11

*In re Allegheny International, Inc.,*
    954 F.2d 167 (3rd Cir. 1992) ............................................................................... 3

*In re Bennett,*
    298 F.3d 1059 (9th Cir. 2002) ............................................................................. 5

*In re Consol. Pioneer Mortgage,*
    178 B.R. at 226 (*citations omitted*) ..................................................................... 3

*Lundell v. Anchor Constr. Specialists*
    223 F.3d 1035 (9th Cir. 2000) ......................................................................... 3, 4

*Spencer v. Pugh (In re Pugh),*
    157 B.R. 898 (B.A.P. 9th Cir. 1993)) .................................................................. 3

*U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.,*
    281 F.3d 929 (9th Cir. 2002) ............................................................................... 5

*Wright v. Holm (In re Holm),*
    931 F.2d 620 (9th Cir. 1991) ............................................................................... 4

## Statutes

Cal. Civ. Code § 1636 ................................................................................................ 5

Cal. Civ. Code § 1638 ................................................................................................ 5

Cal. Civ. Code § 1639 ................................................................................................ 5

Cal. Civ. Code § 44 .................................................................................................. 11

Cal. Civ. Code §46 ................................................................................................... 11

1    Meruelo Maddux Properties – 760 S. Hill Street, LLC (the "Debtor") hereby submits its

2    reply to the opposition of Union Restaurant & Lounge, LLC ("Union Restaurant") to the *Notice of*

3    *Motion and Motion for Order Disallowing Claim No. 3 Filed by the Union Restaurant & Lounge,*

4    *LLC, etc.* (the "Claim Objection") (*docket no. 2076*) as follows:

5

6    **1.    SUMMARY OF ARGUMENTS IN REPLY**

7    Union Restaurant was in default and breached the agreements with the Debtor by, among

8    other things, its continuing failure to pay the required $30,000 security deposit. It is undisputed

9    that Union Restaurant did not pay $30,000 of the $60,000 security deposit. This default constitutes

10   a breach of the lease. Union Restaurant instead argues that there was either an unwritten

11   understanding between the parties that the security deposit was not due until a later date or,

12   alternatively, that the failure to pay the deposit was justified by purported breaches by the Debtor.

13   Both of these arguments fail.

14   Under the express terms of the agreements, separate understandings or side agreements can

15   not alter the obligations under the documents unless reduced to writing and incorporated therein.

16   The security deposit was due upon execution of the lease pursuant to the terms of the lease and

17   Union Restaurant was in continuing default by virtue of its failure to pay it. There was no

18   anticipatory breach because the Debtor's alleged subsequent breach does not negate Union

19   Restaurant's earlier and continuing breach of its obligation to pay the security deposit. More

20   important is that the Debtor did not breach the lease.

21   Possession of the premises was first delivered to Union Restaurant under the terms of the

22   lease when Union Restaurant commenced Lessee's Work (as defined in the Lease) on the premises.

23   Union Restaurant claims to not have keys but fails to disclose that the Debtor delivered keys but

24   Union Restaurant refused to accept delivery. Moreover, even if the Court were to somehow

25   conclude that possession was not delivered, such non-delivery would either have been excused or

26   result in no liability under the terms of the lease.

27   The Debtor believes that Union Restaurant's claims of breach based on the Debtor's alleged

28   failure to deliver the premises or make certain payments to third parties are little more than a

2

1   pretext by Union Restaurant to avoid its obligations under the lease to permit the same

2   management group responsible for the operations of Union Restaurant to pursue a different

3   downtown location for a restaurant.  If Union Restaurant's claims are not disallowed entirely,

4   which they should be based on the language of the lease, the Debtor will seek permission to

5   conduct discovery regarding the facts and circumstances affecting the claims of Union Restaurant

6   as well as any claims or right to setoff that the Debtor has against Union Restaurant.[2]

7           Union Restaurant's defamation claim is also baseless.  To the extent that there were any

8   statements of fact (as opposed to statements of opinion), such statements were true.  Moreover, the

9   damage claim appears simply to have been plucked out of the air.  Union Restaurant utterly fails to

10  offer any evidence that it actually suffered any cognizable damages let alone attempt to justify the

11  claimed amount of $100,000.  To the extent the defamation claim is not dismissed out of hand,

12  discovery should be permitted to allow the Debtor to explore its defenses and the extent of

13  purported damages.

14

15          2.      **THE CLAIM OBJECTION REBUTTED THE *PRIMA FACIE* VALIDITY**

16                  **AFFORDED TO UNION RESTAURANT'S CLAIM**

17          The Claim Objection was not merely an objection to the form of the proof of claim filed by

18  Union Restaurant.  Unlike the *Garner* case where no evidence was submitted, the Debtor provided

19  declarations sufficient to rebut the presumption in favor of the proof of claim.  *See  Lundell v.*

20  *Anchor Constr. Specialists (In re Lundell)*, 223 F.3d 1035, 1039 (9th Cir. 2000) and *Ashford v.*

21  *Consol. Pioneer Mortgage (In re Consol. Pioneer Mortgage)*, 178 B.R. 222, 226 (B.A.P. 9th Cir.

22  1995) (*citing In re Allegheny International, Inc.*, 954 F.2d 167, 173 (3rd Cir. 1992) and *Spencer v.*

23  *Pugh (In re Pugh)*, 157 B.R. 898, 901 (B.A.P. 9th Cir. 1993)).  Once accomplished, the burden

24  then shifts back to Union Restaurant to prove the validity of its claim by a preponderance of the

25  evidence.  *In re Consol. Pioneer Mortgage*, 178 B.R. at 226 (*citations omitted*).  "The ultimate

26  _____

27          [2] The Debtor reserves its right to file a complaint and commence a separate adversary
    proceeding in order to recover amounts in excess of the amount of Union Restaurant's claim.

28

#366313 v1 - MMPI: Debtor's Reply re Objection to Union Restaurant Claim

1  burden of persuasion remains at all times upon on the claimant." *In re Lundell*, 223 F.3d at 1039.

2  *See also Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991).

3

4  ### 3.      UNION RESTAURANT'S DEFAULT AND BREACH

5      The Declaration of Todd Nielsen, the secretary of the Debtor attached to the Claim

6  Objection clearly states that Union Restaurant paid only $30,000 of the required $60,000 security

7  deposit.[3]   This fact is sufficient to demonstrate Union Restaurant's default and breach under the

8  terms of the applicable agreements.

9      Section 1.7(c) of the July 6, 2007 Lease (the "Lease")[4] provides that the amount of the

10  security deposit is $60,000.   Section 5 of the Lease provides that that the lessee shall deposit the

11  security deposit with the lessor "upon execution hereof." As set forth in the Nielsen Declaration,

12  Los Feliz, LLC, the original party to the Lease, deposited only $30,000 of the $60,000 security

13  deposit.[5] The December 5, 2007 "First Amendment to Lease" ("Amendment" and together with

14  the Lease and all exhibits and addenda therto, the "Agreements") assigned all of Los Feliz's

15  "rights, obligations and interests" in the Lease to Union Restaurant.[6]

16      The Opposition does not deny that Union Restaurant failed to pay the remaining $30,000

17  owed as part of the security deposit.   Instead, Union Restaurant attempts to argue alternatively

18  either that there was an oral agreement that permitted the withholding of the payment or that it was

19

20

21

22      [3] *See* paragraph 7 of the *Declaration of Todd Nielsen* (the "Nielsen Declaration"), appended
23  to the Claim Objection.

24      [4] A true and correct copy of the Lease is attached as Exhibit "A" to the Nielsen Declaration.
   A copy of the lease was also attached to Union Restaurant's proof of claim but is blurred due to
25  multiple reproductions.

26      [5] *See* paragraph 5 of the Nielsen Declaration.

27      [6] *See* Section 1 of the Amendment, a true and correct copy of which is attached to the
   Nielsen Declaration as Exhibit "B".

28

4

1  excused from the required performance due to its belief that the Debtor was unable or unwilling to

2  perform its obligations.[7]

3

4  **4.    THE LEASE WAS THE FULLY INTEGRATED AGREEMENT OF THE**

5  **PARTIES**

6       The plain language of the Lease and the Amendment require payment of the full amount of

7  the security deposit upon execution of the Lease.  Any purported side-agreement or understanding

8  was of no effect.  The Lease "may be modified only in writing signed by the parties in interest at

9  the time of the modification."[8]  The Amendment provides, "[t]he Lease, as amended by this

10  Amendment, contains the entire agreement of the parties with regard to the transactions

11  contemplated thereby, and supersedes all prior agreements, understandings and negotiations,

12  whether written or oral.  Except as amended by this Amendment, the Lease remains unchanged and

13  in full force and effect."[9]

14       Under California law, a contract must be interpreted to give effect to the parties' intention

15  as it existed at the time the parties entered into the contract.  Cal. Civ. Code § 1636.  Interpretation

16  of the contract starts with the language of the contract itself; if the language is clear, the language

17  will control.  Cal. Civ. Code §§ 1638-1639; *Renwick v. Bennett (In re Bennett)*, 298 F.3d 1059,

18  1064 (9th Cir. 2002) ("The fundamental goal of contract[] interpretation is to give effect to the

19  mutual intention of the parties.  If contractual language is clear and explicit, it governs." *quoting*

20  *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264, 833 P.2d 545, 552, (Cal. 1992)); and

21  *U.S. Cellular Inv. Co. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (when a contract is

22  reduced to writing, intent to be ascertained from the writing alone, if possible).  The plain language

23

24

_____

25       [7] *See* pp. 2, 3, 11 and 13 of the Opposition.

26       [8] *See* Section 46 of the Lease.

27       [9] *See* Section 2 of the Amendment.

28

5

1 of the Lease and Amendment render any side-agreements a nullity unless memorialized and

2 incorporated into the Agreements.

3

4      **5.      THERE WAS NO ANTICIPATORY BREACH**

5           Union Restaurant's obligations to pay the security deposit preceded any of the Debtor's

6 obligations that Union Restaurant alleges were breached.[10]  Union Restaurant's argument that it

7 was excused from paying the security deposit because the Debtor breached the Agreements[11] turns

8 the concept of anticipatory breach on its head.  In essence, Union Restaurant claims that the

9 Debtor's alleged breach, which could only have occurred <u>after</u> Union Restaurant's failure to pay

10 the required security deposit, excuses Union Restaurant's <u>earlier</u> breach.  The exact opposite is true.

11 It is Union Restaurant's breach which thereafter excused the Debtor from any further performance

12 under the Lease.  "As a matter of definition, an anticipatory breach of contract occurs when the

13 contract is repudiated by the promisor before the promisor's performance under the contract is

14 due." *Central Valley Hosp. v. Smith*, 75 Cal. Rptr. 3d 771, 781, 162 Cal. App. 4th 501, 514 (Cal.

15 Ct. App. 2008) *citing Taylor v. Johnston*, 539 P.2d 425, 430, 15 Cal. 3d 130, 137 (Cal. 1975).[12]

16 Union Restaurant simply cannot overcome the timing issue created by arguing that the Debtor's

17 alleged subsequent breach excused Union Restaurant's previous breach.

18           Union Restaurant's other purported justifications for the failure to pay the security deposit

19 are similarly without merit.  The presence of mechanic's liens is not an excuse for non payment of

20 the security deposit under the Lease.  Neither is it evidence of an inability of the Debtor to perform

21 under the Lease.  The Debtor was completing construction on the residential portion of the project

22 and it is common for mechanic's liens to be recorded at that time (especially if there are disputes

23 regarding final amounts).  In fact, all such mechanic's liens have been paid.

24

25      [10] Even if one accepts Union Restaurant's argument that it did not owe the security deposit
until execution of the Work Letter (which the Debtor does not concede), this argument still applies.

26      [11] *See* pp. 10-12 of the Opposition.

27      [12] Quoted in the Opposition at p. 12-13.

28

6

1    **6.    THE DEBTOR DID NOT BREACH THE LEASE**

2    Union Restaurant primarily argues that the Debtor breached the Lease due to its failure to

3    make payments to third parties, deliver possession and complete the work required.  None of these

4    allegations amount to a breach by the Debtor.

5    Union Restaurant's claim that delivery of the premises was not made or was untimely is

6    false.  Under the terms of the Lease, possession was delivered when Union Restaurant commenced

7    work (well before March 4, 2008).[13]  The addendum to the Lease defines "Early Possession Date"

8    as the "date Lessor delivers the Premises to Lessee to commence the 'Lessee Work' as set forth in

9    the Work Letter...."[14]  Union Restaurant commenced work prior to March 4, 2008 and therefore

10    had possession prior to the Commencement Date.  This fact was pointed out in an April 16, 2008,

11    letter sent by Mr. Nielsen to Union Restaurant.[15]  Additionally, the evidence attached to the

12    Opposition shows that Union Restaurant was aware that this was an issue.[16]

13    Even if one were to ignore the plain language regarding the "Early Possession Date," the

14    Debtor complied with the requirements relating to delivery under Section 3.3 of the Lease, which

15    provides in part:

16    Lessor agrees to use its best commercially reasonable efforts to
deliver possession of the Premises to Lessee by the Commencement
17    Date.  If, despite said efforts, Lessor is unable to deliver possession
as agreed, Lessor shall not be subject to any liability therefore . . . If
18    possession is not delivered within 60 days after the Commencement
Date, Lessee may, at its option, by notice in writing within 10 days
19    after the end of such period, cancel this Lease, in which event the
Parties shall be discharged from all obligations hereunder.[17]

20

21

---

22    [13] March 4, 2008 was the last date for delivery of possession of the premises before the right
to cancel arises (discussed *infra*).
23

24    [14] *See* Section 51 of the Addendum to the Lease, attached as part of Exhibit "A" to the
Nielsen Declaration.

25    [15] A true and correct copy of the April 16, 2008 letter is attached hereto as Exhibit "1".

26    [16] *See* p. 84 of the exhibits attached to the Opposition.

27    [17] *See* Section 3.3 of the Lease.

28

7

1    March 4, 2008 was the Commencement Date[18] and the 60-day period expired on May 3,

2    2008.  Union Restaurant took possession of the premises when it commenced Lessee's Work

3    pursuant to the Work Letter.  The Debtor delivered keys to Union Restaurant no later than April 17,

4    2008 but Union Restaurant refused the delivery.  Union Restaurant's refusal to accept delivery of

5    the keys does not negate the fact that the premises were tendered.  Union Restaurant should not be

6    permitted to argue that its own refusal to accept delivery of possession of the premises serves as the

7    basis for its claim that possession was never delivered.  Further, as discussed below, the Debtor

8    suspects that Union Restaurant's refusal of the keys was part of a deliberate effort to get out of the

9    Lease.

10    Additionally, Section 3.4 of the Lease provides that the Debtor was not required to tender

11    possession of the premises until Union Restaurant complied with its obligation to provide evidence

12    of insurance.  Such evidence of insurance had not been provided and in the April 16, 2008 letter,

13    the Debtor made clear that notwithstanding that possession had been delivered, the Debtor was still

14    requiring that Union Restaurant provide evidence of insurance.  The Debtor does not believe that

15    such evidence was ever provided.

16    Section 3.3 further provides that the Debtor is not subject to any liability for delayed

17    delivery of the premises.  More importantly, the section specifically discharges all obligations

18    under the Lease in the event of cancellation.  Union Restaurant purported to cancel the Lease

19    pursuant to Section 3.3 of the Lease by its May 5, 2008 letter.  Either the purported cancellation of

20    the Lease was unjustified and amounts to abandonment (because possession was delivered) or all

21    obligations under the Lease were discharged.  In either case, Union Restaurant's claims based

22    thereon are unwarranted.

23    It is impossible to conclude, based on the evidence currently available, that the Debtor was

24    in default under the Lease by virtue of alleged non-payment or non-performance.  Union Restaurant

25    claims that the failure to pay the design consultant halted the approval process.  Union Restaurant

26

27    [18] *See* Section 51 of Addendum to the Lease.

28

#366313 v1 - MMPI: Debtor's Reply re Objection to Union Restaurant Claim

1  also is required to pay the design consultant for many things, including changes to the scope of

2  work. The Debtor believes that many of the amounts Union Restaurant claims that the Debtor

3  failed to pay were Union Restaurant's responsibility.[19]

4

5    **7.    FURTHER ISSUES UNDERCUTTING UNION RESTAURANT'S**

6       **ARGUMENTS**

7       On May 5, 2008, which was the first business day after expiration of the 60-day period

8  under Section 3.3 of the Lease, Union Restaurant purported to cancel the lease.[20]  This step was

9  taken despite possession having been delivered on the Early Possession Date and besides delivery

10  of the keys (which were refused by Union Restaurant).

11      In fact, the Debtor believes that the refusal to accept the proffered keys was part of a pretext

12  employed by Union Restaurant in an effort to cancel the Lease because Union Restaurant was

13  interested in another location and wanted to avoid its obligations under the Lease with the Debtor.

14  This suspicion is confirmed by the evidence attached to the Opposition, wherein the intention to

15  cancel the Lease is noted in an April 7, 2008 email (sent nearly a month prior to the last date for the

16  Debtor to deliver possession).[21]  Further confirmation comes from an April 30, 2008 press release

17  by the Valencia Group indicating that they were evaluating restaurant locations near Staples Center

18  and Nokia theater to locate a new Trader Vic's in downtown LA.[22]  John Valencia is identified as

19  the "Senior Partner" of the Valencia Group and is also the president of Union Restaurant.  The

20  Trader Vic's restaurant referenced in the press release ultimately opened in L.A. Live.

21      The Debtor believes that, if required, discovery will uncover additional evidence that will

22  show that Union Restaurant sought to back out of the Lease with the Debtor because the

23  _____

24  [19] Even if performance under the Work Letter was an issue, Union Restaurant's assertions
do not establish all of the relevant facts and circumstances and discovery would be necessary.

25  [20] *See* Exhibit "J" to the Opposition.

26  [21] *See* p. 82 of the exhibits attached to the Opposition.

27  [22] Attached hereto as Exhibit "2" is a true and correct copy of the press release.

28

#366313 v1 - MMPI: Debtor's Reply re Objection to Union Restaurant Claim

1   management group and individuals responsible for Union Restaurant's operations wanted to back

2   out of the Lease to be able to find a different location for a new restaurant.  The Debtor further

3   believes that the evidence will show that the management group did not have the financial ability to

4   build out two restaurants and were using the Debtor's alleged breach under Section 3.3 of the Lease

5   as an excuse to get out of the Lease so they could pursue the LA Live site.

6          To the extent that Union Restaurant's claim is not denied entirely, there are serious

7   questions regarding the evidence in support of the claimed amount.  Among other issues, many of

8   the canceled checks attached to the Opposition appear to relate to expenses that do not appear to

9   have been incurred prior to the date that Union Restaurant purported to cancel the Lease.  More

10  than $30,000 worth of the canceled checks are dated after May 5, 2008.[23]  Some of the checks were

11  not issued for nearly a year after the claimed cancellation.  It is far from clear that all of the checks

12  relate to costs or expenses incurred prior to May 5, 2008, which was the date on which Union

13  Restaurant purportedly canceled the Lease.

14         Further, some of the notations on the checks suggest that the expenses claimed to be owed

15  by the Debtor relate to the Trader Vic's restaurant, opened by the same management group at the

16  LA Live location.  For example, check no. 2025, issued to William Baker, dated June 25, 2008, and

17  in the amount of $1,703.00 includes a notation for "Trader Vics" at the bottom.[24]  Check no. 2027

18  issued to RRCC, dated July 8, 2008, and in the amount of $23.00 notes that it was for "Trader

19  Vic's Recording Fee."[25]  These checks are further evidence of what appears to be a concerted effort

20  by Union Restaurant and its management to get out of the Lease with the Debtor and focus instead

21  on a different location at LA Live.  The Debtor believes that many of the expenses and costs

22  claimed to arise in relation to the Debtor's location were in fact related to the Trader Vic's

23  restaurant at LA Live.

24  _____

25  [23] Copies of canceled checks purporting to evidence amounts owed as part of Union
    Restaurant's claim are attached as Exhibit "M" to the Opposition.

26  [24] *See* p. 125 of the exhibits attached to the Opposition.

27  [25] *See* p. 127 of the exhibits attached to the Opposition.

28

                                                10

#366313 v1 - MMPI: Debtor's Reply re Objection to Union Restaurant Claim

1   **8.   DEFAMATION**

2   California Civil Code §§ 44 and 46 define defamation to include publication by slander, *i.e.,*

3   oral publication. The statutory definition refers to a false publication and falsity is an essential

4   element of a defamation claim. However, the false statement must be one of fact and not one of

5   opinion. *Baker v. Los Angeles Herald Examiner*, 42 Cal. 3d 254, 260, 228 Cal. Rptr. 206, 209

6   (Cal. 1986) and *Gregory v. McDonnell Douglass Corp.*, 17 Cal. 3d 596, 601, 131 Cal. Rptr. 641,

7   643-44 (Cal. 1976).

8   Union Restaurant's claims relating to defamation are baseless and entirely lacking in

9   support. First, Union Restaurant was never identified by name in the earnings call that purportedly

10  gives rise to its claim. Next, it appears that the allegedly defamatory statements were expressions

11  of opinion. Moreover, the simple fact is that the Debtor had some serious and legitimate concerns

12  regarding Union Restaurant's ability to satisfy its obligations under the Lease. Accordingly, the

13  well worn adage that "truth is a defense" applies here. Union Restaurant failed to perform certain

14  financial obligations required under the lease and any statements must be considered in light of

15  those facts. Finally, Union Restaurant has yet to offer a shred of evidence that it suffered any

16  damages, let alone $100,000 worth. The defamation claim should be dismissed out of hand.

17  Alternatively, discovery will be required to permit the Debtor to adequately set out its defense.

18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

11

1    **9.    <u>CONCLUSION</u>**

2        Based upon the foregoing, the Debtor respectfully requests that the Court enter an order

3    disallowing the Union Restaurant's claim in its entirety.  Alternatively, the Court should establish a

4    discovery schedule and set an evidentiary hearing on the Claim Objection.  The Debtor further

5    prays for all other appropriate relief.

6

7    Dated:  March 3, 2011                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

8

9                            By:   _____

10                               Michael C. Abel
                                 Attorneys for Meruelo Maddux Properties,
                                 Inc., and affiliated Debtors and Debtors-in-

11                               Possession

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF TODD NIELSEN

I, Todd Nielsen, declare and state as follows:

1.    I am the Secretary of Meruelo Maddux Properties – 760 S. Hill Street, LLC (the "Debtor").

2.    I am filing this Declaration in support of the Debtor's reply regarding its *Motion for Order Disallowing Claim No. 3 Filed by the Union Restaurant & Lounge, LLC, etc.* (the "Claim Objection").

3.    I have personal knowledge of the facts in this declaration, except as to those matters that are based upon information and belief, which matters I believe to be true.  If called as a witness, I could testify competently to these facts.

4.    It is common for mechanic's liens to be recorded at the time of completion of construction (especially if there are disputes regarding final amounts).  In fact, all such mechanic's liens filed against the Debtor have been paid.

5.    Attached hereto as Exhibit "1" is a true and correct copy of a letter I sent to John Valencia on behalf of Union Restaurant.

6.    Union Restaurant took possession of the premises when it commenced Lessee's Work pursuant to the Work Letter.  The Debtor delivered keys to Union Restaurant no later than April 17, 2008 but Union Restaurant refused the delivery.

7.    Under the terms of the Agreements, Union Restaurant is required to pay the design consultant for many things, including changes to the scope of work.  I believe that many of the amounts Union Restaurant claims that the Debtor failed to pay were Union Restaurant's responsibility.

8.    I have spoken with others in management of the Debtor and we believe that the refusal to accept the proffered keys was part of a pretext employed by Union Restaurant in an effort to cancel the Lease because Union Restaurant was interested in another location and wanted to avoid its obligations under the Lease with the Debtor.

13

9.      Attached hereto as Exhibit "2" is an April 30, 2008 press release by the Valencia Group indicating that they were evaluating restaurant locations near Staples Center and Nokia theater to locate a new Trader Vic's in downtown LA.

10.     I and others of Debtor's management believe that discovery would uncover additional evidence that will show that the Union Restaurant sought to back out of the Lease with the Debtor because the management group and individuals responsible for Union Restaurant's operations wanted to back of the Lease to be able to find a different location for a new restaurant and further that the management group did not have the financial ability to build out two restaurants.

11.     I and others of Debtor's management believe that many of the expenses and costs claimed to arise in relation to the Debtor's location were in fact related to the Trader Vic's restaurant at LA Live.

12.     I and others of Debtor's management had some serious and legitimate concerns regarding Union Restaurant's ability to satisfy its obligations under the Lease

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March __, 2011, at Los Angeles, California.

[Signature to follow]

_____

TODD NIELSEN

14

# EXHIBIT 1

15



**MERUELOMADDUX**
PROPERTIES

April 16, 2008

<u>VIA E-MAIL</u>

The Union Restaurant & Lounge, LLC
Attn: John Valencia
3410 Lowry Rd.
Los Angeles, CA  90027

Dear John:

Thank you for meeting with us on Friday.  As we discussed, although we disagree on the issues raised in your email and letter, we do agree the parties must work cooperatively to accomplish the work to allow for your opening of the restaurant.  As you requested, this letter sets forth the status of Lessor's Work that can be accomplished prior to Lessee's Plans being finalized.  With regard to Lessee's Plans, there are several matters that require your attention for the Plans to be finalized.  Attached is correspondence related to some of those matters.  There may be other matters of which we are not aware.  We understand that you will be addressing these.

With respect to work that can be completed prior to finalizing Lessee's Plans, our demolition contractor has been on site this entire week and has indicated he will complete all remaining demolition work by the end of this month.  As part of that work, we need to know whether you want the metal plate drop-down ceiling in the vault lounge to be removed.  Please advise us as soon as possible.

Regarding ceiling restoration, Carlos is spending his full time on this work and has two additional workers to help move the work forward.  Carlos is extremely meticulous, and his restoration work far exceeds expectations.  He estimates that the ceiling will be completed by the middle of next month.  His work will not unduly interfere with Lessee's Work which should proceed simultaneously.  As the Work Letter contemplates, both Lessor and Lessee should continue to coordinate with one another in advancing their respective work.

The columns in the ground floor restaurant area have been covered in available marble and are completed.  With respect to marble on the walls in the basement, we should discuss with you the locations you would like to use the remaining marble which is limited in quantity.

761 Terminal Street, Building 1, 2nd Floor . Los Angeles, California 90021   tel. 213. 291. 2800   fax 213. 627. 5979   www.meruelomaddux.com

16

John Valencia
April 16, 2008
Page Two

Regarding bathrooms and clarifier areas, our plumbing contractor laid out the locations for trenching for the basement bathrooms (trenching is not required for the upstairs bathrooms) and our concrete cutting company was saw cutting today and will complete the trenching work in approximately one week. The cutting of additional openings in walls or floors as necessary for plumbing, sewer and other facilities to the space will commence next week, to the extent possible without Lessee's Plans being finalized. Again, none of this work will interfere with Lessee's Work.

We understand that your contractor has completed restoration of the vault doors, gates and safe deposit boxes. Although we gave you possession of the Premises to commence your work without obtaining evidence of your or your contractor's insurance coverage, we have not waived those requirements and request that you provide such evidence. In this regard, we request that your contractor return the floor plates in front of the vault doors to a level position so as to not create a tripping hazard. Also, as a reminder, we have not received your full Security Deposit.

We know that the Union restaurant and lounge will be a great addition to the building. We have spent tens of millions of dollars and will continue to spend the amounts required of us with respect to the restaurant. If you would like to meet to further discuss matters, we would be pleased to do so.

Sincerely,

Meruelo Maddux – 760 S. Hill Street, LLC

Todd W. Nielsen
General Counsel and Corporate Secretary

cc: David Valencia
Enclosures

17

# EXHIBIT 2

SOURCE: The Valencia Group



Apr 30, 2008 08:00 ET

## The Valencia Group to Open Trader Vic's in Downtown LA

LOS ANGELES, CA--(Marketwire - April 30, 2008) - The Valencia Group, a Los Angeles-based restaurant management group, announced plans for the 2009 opening of legendary Trader Vic's in Downtown Los Angeles. The group is currently evaluating several locations for the restaurant near the Nokia Theatre and the Staples Center.

"We're trying to find just the right location so we can bring the full Trader Vic's experience back to Los Angeles," said John Valencia, a native Angeleno and Senior Partner of The Valencia Group. "Trader Vic's devotees who have missed the signature food, tiki bar drinks and top-notch service will definitely be able to get it all at the new Trader Vic's LA.

Trader Vic's LA will feature the classic tiki decor and atmosphere that helped establish the Trader Vic's brand in Beverly Hills. Most nights of the week, Trader Vic's LA will host live entertainment, including Polynesian dancers and singers.



Pictured is Trader Vic's Dallas, which is representative of the style of decor that Trader Vic's LA will have. For more information, visit www.tradervicsla.com or contact John Valencia at john@tradervicsla.com.

"As Los Angeles natives, we're proud to be part of the Downtown renaissance," said Valencia. "There's a rich history of great fine dining restaurants here and, with the increase in residents and businesses relocating Downtown, we think Trader Vic's will be bustling."

**Highlighted Links**

Trader Vic's

Restaurant industry sales are expected to increase by 4.4 percent in 2008, with most people spending 48 percent of their food budget on restaurant dining, according to the National Restaurant Association's 2008 Restaurant Industry Forecast. This report also states that hot food and drink trends include ethnic cuisines and flavors and specialty alcohol.

"We are very excited to see Trader Vic's return to Los Angeles," said Sven Koch, Senior Vice President for Business Development and Global Operations for Trader Vics. "The Valencia Group's vision for their restaurant honors our storied past and we are confident that not only will our long time customers be pleased, but that Trader Vic's Los Angeles will attract a whole new generation of fans."

Trader Vic's is known for bringing Polynesian dining and entertainment to the U.S. The company's founder, Victor J. "Trader Vic" Bergeron, invented the Mai Tai in 1944, a drink that has continued to enjoy popularity around the world. Founded in 1934, Trader Vic's Inc. is a group of company-owned and franchised restaurants. Based in the San Francisco Bay Area, Trader Vic's has locations stretching from the United States to Europe, the Middle East and Asia.

For more information about The Valencia Group or Trader Vic's LA, contact John Valencia via e-mail at John@tradervicsla.com. Visit www.tradervicsla.com to purchase your Trader Vic's LA limited edition mug.

Back

Contact:
Lisa Ella
Phone: 310-479-0216

| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described **DEBTOR'S REPLY RE MOTION FOR ORDER DISALLOWING CLAIM NO. 3 FILED BY THE UNION RESTAURANT & LOUNGE, LLC; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF TODD NIELSEN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On March 3, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Michael C Abel, mca@dgdk.com (counsel for Debtors)
Robert Abiri    rabiri@abiriszeto.com
Allison R Axenrod    allison@claimsrecoveryllc.com
William C Bollard    eal@jbblaw.com, kmg@jbblaw.com;dritchie@jbblaw.com;william@jbblaw.com
Peter Bonfante, peterbonfante@bsalawfirm.com
Jennifer L Braun, jennifer.l.braun@usdoj.gov (Office of the U.S. Trustee)
Martin J Brill, mjb@lnbrb.com (counsel for interested party)
Howard Camhi, hcamhi@ecjlaw.com (counsel for Kennedy Funding Inc.)
James E Carlberg    jcarlberg@boselaw.com
Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
Sara Chenetz    chenetz@blankrome.com
Jacquelyn H Choi    jchoi@swjlaw.com
Carol Chow    CChow@Stutman.com
Ronald R Cohn, rcohn@horganrosen.com (counsel for Pacific Commerce Bank)
Enid M. Colson, ecm@dgdk.com (counsel for Debtors)
Michaeline H Correa, mcorrea@jonesday.com (counsel for MTA)
Ana Damonte    ana.damonte@pillsburylaw.com
Susan S Davis    sdavis@coxcastle.com
Daniel Denny    ddenny@gibsondunn.com
Jeffrey W Dulberg    jdulberg@pszjlaw.com
Aaron De Leest, aed@dgdk.com (counsel for Debtors)
Marina Fineman    mfineman@stutman.com
Michael G Fletcher, mfletcher@frandzel.com (counsel for Cathay Bank)
Donald L Gaffney, dgaffney@swlaw.com (counsel for Bank of America)
Thomas M Geher, tmg@jmbm.com (counsel for Capmark Finance Inc.)

☒    Service information continued on attached page

| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

Bernard R Given, bgiven@frandzel.com (counsel for Cathay Bank)
Barry S Glaser, bglaser@swjlaw.com (counsel for L.A. County)
Matthew A Gold    courts@argopartners.net
Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
Michael I. Gottfried    mgottfried@lblawllp.com, eborman@lgbfirm.com
John A Graham, jag@jmbm.com (counsel for Capmark Finance Inc.)
Ofer M Grossman, omglaw@gmail.com (counsel for Justman Packaging & Display)
Peter J Gurfein    pgurfein@lgbfirm.com
Jodie M Grotins    jgrotins@mcguirewoods.com
Cara Hagan, carahagan@haganlaw.org
Asa S Hami, ahami@sulmeyerlaw.com (counsel for OCC)
Brian T Harvey, bharvey@buchalter.com (counsel for California Bank & Trust)
Robert A Hessling    rhessling@dgdk.com
William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
Lance M. Jurich, ljurich@loeb.com (counsel for Canpartners)
William H. Kiekhofer    wkiekhofer@mcguirewoods.com (counsel for Esmark)
Andrew F Kim, kim-a@blankrome.com (counsel for Imperial Bank)
Michael S Kogan, mkogan@ecjlaw.com (counsel for Kennedy Funding Inc.)
Lewis R Landau    lew@landaunet.com (Conflicts Counsel to Creditors Committee)
Matthew A Lesnick    matt@lesnicklaw.com
David E Leta, dleta@swlaw.com (counsel for FNBN-CMLCON I LLC)
R. Michael Llewellyn, michael.llewellyn@boe.ca.gov (counsel for California State Bar of Equalization)
Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
Steven K Linkon, slinkon@rcolegal.com (counsel for Chinatrust Bank)
Richard Malatt, rmalatt@gmail.com (counsel for interested party)
Elmer D Martin, elmermartin@msn.com (counsel for United Commercial Bank)
Elissa Miller, emiller@sulmeyerlaw.com (counsel for Committee)
Avi Muhtar    amuhtar@sulmeyerlaw.com
Iain A W Nasatir, inasatir@pszjlaw.com (counsel for East West Bank and Legendary)
Jeffrey P Nolan    jnolan@pszjlaw.com
Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
Ron Orr & Professionals, Inc: ronorresq@aol.com (Attorneys for Equity Committee)
Lawrence Peitzman, lpeitzman@pwkllp.com (counsel for interested party)
Eric S Pezold, epezold@swlaw.com (counsel for Bank of America)
Christopher E Prince    cprince@lesnickprince.com
Dean G Rallis Jr, drallis@sulmeyerlaw.com (counsel for Committee)
Michael H Raichelson,  mhr@cabkattorney.com (counsel for Stanford Group)
Kurt Ramlo, kurt.ramlo@dlapiper.com
Michael B Reynolds, mreynolds@swlaw.com (counsel for FNBN-CMLCON I LLC)
Jeremy V Richards    jrichards@pszjlaw.com
Daniel H Reiss    dhr@lnbrb.com
James S Riley    tgarza@sierrafunds.com
Martha E Romero, Romero@mromerolawfirm.com (counsel for San Bernardino County)
Victor A Sahn, vsahn@sulmeyerlaw.com (counsel for Committee)
Steven J Schwartz    sschwartz@dgdk.com
Kenneth J Shaffer    jshaffer@stutman.com

⊠    Service information continued on attached page

358938.02 [XP]    25195

| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
| --- | --- |
| Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

Zev Shechtman, zshechtman@dgdk.com (counsel for Debtors)
David B. Shemano, dshemano@pwkllp.com (counsel for John Maddux)
Jeffrey S Shinbrot, shinbrot@earthlink.net (counsel for Rodriguez, et al.)
Stephen Shiu    sshiu@swlaw.com
Daniel H Slate, dslate@buchalter.com (counsel for California Bank & Trust)
Surjit P Soni, surj@sonilaw.com (counsel for Legendary)
Bennett L Spiegel    blspiegel@jonesday.com
James Stang, jstang@pszjlaw.com (counsel for East West Bank and Legendary)
Catherine Steege    csteege@jenner.com (counsel for OEC)
Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
John N Tedford, jtedford@dgdk.com (counsel for Debtors)
Damon Thayer    dthayer@jenner.com
James A Timko    jtimko@allenmatkins.com
Alan G Tippie, atippie@sulmeyerlaw.com (counsel for Committee)
United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov
Jason L Weisberg, jason@gdclawyers.com (counsel for Roofcorp)
William E Winfield    wwinfield@nchc.com
Jasmin Yang, jyang@swlaw.com (counsel for Bank of America)

II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL(indicate method for each person or entity served):
On March 3, 2011, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on March 3, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Via Personal Delivery
Honorable Victoria S. Kaufman, U.S. Bankruptcy Court, 21041 Burbank Boulevard, Room 301, Woodland Hills, CA 91367

Via EMail
Ron Orr & Professionals, Inc: ronorresq@aol.com (Attorneys for Equity Committee)
Georgiana G. Rodiger: crodiger@rodigerlaw.com (Attorneys for Equity Committee)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| March 3, 2011 | Michael C. Abel | |
| --- | --- | --- |
| Date | Type Name | Signature |