JEFFREY S. SHINBROT, ESQ. (SBN 155486)
jeffrey@shinbrotfirm.com
JEFFREY S. SHINBROT, APLC
8200 Wilshire Boulevard, Suite 400
Beverly Hills, California 90211
Telephone: (310) 659-5444
Fax: (310) 878-8304
Attorneys for Creditor UNION RESTAURANT
& LOUNG LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WOODLAND HILS DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-13356 -KT |
| MERUELO MADDUX PROPERTIES, INC., et al.[1] | Chapter 11 |
| Debtors and Debtors-in Possession. | **CLAIMAINT'S SUR-REPLY(AS PERMITTED BY COURT'S ORDER DATED 1/13/11) TO DEBTOR'S REPLY RE MOTION FOR ORDER DISALLOWING CLAIM NO. 3 FILED BY THE UNION RESTAURANT & LOUNGE LLC; AND DECLARATION OF JOHN VALENCIA  IN SUPPORT THEREOF** |
| Affects the following Debtor(s): Meruelo Maddux Properties – 760 S. Hill Street, LLC, case number 1:09-bk-13363-KT | Date:    March 17, 2011<br>Time:    2:30 p.m.<br>Place:    Courtroom 301<br>         21041 Burbank Boulevard,<br>         Woodland Hills, CA 91367 |

**COMES NOW,** THE UNION RESTAURANT AND LOUNGE, LLC

("Claimant" or "Union Restaurant"), and submits it Sur-Reply (as permitted by the

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-KT; 1:09-bk-13358-KT; 1:09-bk-13359-KT; 1:09-bk-13360-KT; 1:09-bk-13361-KT; 1:09-bk-13362-KT; 1:09-bk-13363-KT; 1:09-bk-13364-KT; 1:09-bk-13365-KT; 1:09-bk-13366-KT; 1:09-bk-13367-KT; 1:09-bk-13368-KT; 1:09-bk-13369-KT; 1:09-bk-13370-KT; 1:09-bk-13371-KT; 1:09-bk-13372-KT; 1:09-bk-13373-KT; 1:09-bk-13374-KT; 1:09-bk-13375-KT; 1:09-bk-13376-KT; 1:09-bk-13377-KT; 1:09-bk-13378-KT; 1:09-bk-13379-KT; 1:09-bk-13380-KT; 1:09-bk-13381-KT; 1:09-bk-13382-KT; 1:09-bk-13383-KT; 1:09-bk-13384-KT; 1:09-bk-13385-KT; 1:09-bk-13386-KT; 1:09-bk-13387-KT; 1:09-bk-13388-KT; 1:09-bk-13389-KT; 1:09-bk-13390-KT; 1:09-bk-13391-KT; 1:09-bk-13392-KT; 1:09-bk-13393-KT; 1:09-bk-13394-KT; 1:09-bk-13395-KT; 1:09-bk-13396-KT; 1:09-bk-13397-KT; 1:09-bk-13398-KT; 1:09-bk-13399-KT; 1:09-bk-13400-KT; 1:09-bk-13401-KT; 1:09-bk-13402-KT; 1:09-bk-13403-KT; 1:09-bk-13404-KT; 1:09-bk-13405-KT; 1:09-bk-13406-KT; 1:09-bk-13407-KT; 1:09-bk-13434-KT; and 1:09-bk-13439-KT.

Court's Order dated 1/13/11) to Debtor's Reply regarding the Motion for Order Disallowing Claim filed by the Chapter 11 Debtor captioned above. This opposition is based on the annexed Memorandum of Points and Authorities, declarations and evidence filed herewith, as well as the proof of claim timely filed by Union Restaurant in this chapter 11 case and argument as may be allowed by the Court at the time of hearing.

**WHEREFORE,** Union Restaurant respectfully requests that the Court enter an Order allowing its claim in the amount of $247,606.18 in its entirety.

Respectfully submitted,

Dated: March 10, 2011                    JEFFREY S. SHINBROT, APLC


By: _____/s/_____

Jeffrey S. Shinbrot, Attorney for
THE UNION RESTAURANT
AND LOUNGE, LLC

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

## MEMORANDUM OF POINTS AND AUTHORITIES[2]

I.    **DEBTOR'S CLAIM OBJECTION FAILS TO EITHER REBUT THE PRIMA FACIE VALIDITY AFFORDED TO UNION RESTAURANT'S PROOF OF CLAIM, WHICH SUBSTANTIALLY CONFORMS TO THE COURT'S OFFICIAL FORM, OR MEET THE BURDEN OF PROOF THAT UNION RESTAURANT'S CLAIM SHOULD BE DISALLOWED BY A PREPONDERANCE OF THE EVIDENCE.**

Debtor's Reply continues to mistake the proper standard of proof for – and process for disputing the form of – a claim submitted by a creditor under Federal Bankruptcy Rule of Procedure 3001:  "A proof of claim shall conform substantially to the appropriate Official Form."  F.R.B.P. 3001(a).

So long as the submitted claim substantially conforms to the Official Form, it is presumed to be prima facie evidence of a valid claim against the debtor in the claimed amount:  "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."  F.R.B.P. 3001(f).

Debtor has not, and cannot, dispute the fact that Union Restaurant's Proof of Claim submitted here was prepared and filed using Official Form 10 (PROOF OF CLAIM) as promulgated by the Clerk's Office of the United States Bankruptcy Court for the Central District of California.  Because the Proof of Claim substantially conforms to the Official Form, it is presumed to be prima facie evidence of a valid claim in the amount stated.

Although Debtor's Reply states the "Claim Objection was not merely an objection to the form of the proof of claim filed by Union Restaurant," Debtor's Reply at p. 3, this

---

[2] This Memorandum of Points and Authorities is factually supported by the annexed Declaration of John Valencia (the "Valencia Declaration") and attached Exhibits.

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

assertion is belied by the substantive content of Debtor's original Objection. Consisting

only of two short paragraphs, Debtor's Objection relied primarily on formal grounds:

> In the case at bar, the Subject Claim does not set forth the
> facts necessary to support a claim against the Debtor. While
> the Subject Claim alleges a breach of the Lease and Work
> Letter and damages for "business torts" and defamation, it
> does not state how the Lease and Work Letter were breached
> by the Debtor or state any facts underlying the alleged
> business tort/defamation claim. Furthermore, the Subject
> Claim does not contain any allegations setting forth how
> Claimant calculated the $247,606.18 claim. Claimant simply
> does not meet its burden and the Subject Claim should be
> disallowed.

Debtor's Motion for Order Disallowing Claim No. 3 Filed by The Union Restaurant &

Lounge, LLC at p. 8, lines 7 to 13.

This is an objection to the form, not the substance, of the Proof of Claim. As noted

above, Union Restaurant's Proof of Claim was prepared, submitted, and substantially

conforms with, the Official Form. Any formal objection to the claim, such as those made

by the Debtor in its original Opposition, must fail.

The only substantive contentions made by Debtor in its original Objection is that

Union Restaurant breached the Lease and Work Letter "by failing to pay the entire

$60,000 security deposit required by the Lease and, separately, by failing to complete its

portion of the build-out required by the Lease and Work Letter." Id., lines 15 to 16. In

support of these bare-bone allegations, Debtor attached the Declaration of Todd Nielsen

and copies of the Lease and Work Letter as attachments thereto.

Under the cases cited by Debtor in its own Reply, this cursory evidence is

insufficient to either rebut the presumption of prima facie validity for Union Restaurant's

4

conforming Proof of Claim, or prove by a preponderance of the evidence that the claim

should be disallowed. <u>See</u> <u>In re Lundell</u>, 233 F.3d 1035 (9th Cir. 2000) (denying Debtor's

motion to disallow claim even after receiving the Debtor's in-person testimony at trial);

<u>In re Pugh</u>, 157 B.R. 898 (9th Cir. B.A.P. 1993) (prima facie validity of proof of claim

impeached by Debtor only upon a genuine factual showing that amount of interest

claimed was calculated incorrectly, remanded back to bankruptcy court for further factual

findings on that narrow issue). <u>Cf.</u> <u>In re Consol. Pioneer Mortgage</u>, 178 B.R. 222 (9th

Cir. B.A.P. 1995) (proof of claim denied only because claimant failed to attach the writing

that formed the basis for the claim, as required by F.R.B.P. 3001(c)).

Even if the burden of production could be said to have shifted back to Union

Restaurant, it has met that burden.  The preponderance of the evidence presented by

Union Restaurant in support of its Proof of Claim shows that Debtor breached both the

Lease and Work Letter in numerous, documented respects.  In addition to the Declaration

of John Valencia, detailing the chronology of Debtor's several acts of breach and default

under the parties' agreements at different points in the construction, Union Restaurant has

proffered the separate pieces of correspondence to Debtor that documents those events.

This is not simply a case of competing declarations presented by debtor and claimant;

Union Restaurant has proven its claim by the preponderance of the evidence now before

this Court.

## II. THE LEASE AND ITS FIRST AMENDMENT DID NOT CONSTITUTE THE FULLY INTEGRATED AGREEMENT OF THE PARTIES REGARDING THE PREMISES OR PAYMENT OF THE SECURITY DEPOSIT BY UNION RESTAURANT

Debtor argues that evidence outside of the four corners of the Lease and its

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

Amendment regarding Union Restaurant's payment of should not be considered. This argument ignores the undisputed fact that the Lease and its Amendment did not constitute the fully integrated agreement of the parties regarding the property located at 760 South Hill Street, Los Angeles, California (the "Premises"). It was always the understanding and contemplation of the parties that the terms of the Lease would be further defined, and the rights and obligations of the parties regarding construction of Union Restaurant's business at the Premises would be set forth, in a subsequent Work Letter.

That the Lease and Amendment documents alone did not constitute the fully integrated agreement of Union Restaurant and MMP regarding the Premises is evidenced by the confirming email sent to Union Restaurant's Senior Partner, John Valencia, on July 18, 2007 by Joaquin Medrano of MMP. In the email (written only a few days after the Lease itself was executed), Mr. Medrano thanked Mr. Valencia for *"coming by and dropping [off] the check. **I am pushing to have the work letter completed so that we can finalize the lease soon.**"*[3] The Work Letter was not executed and delivered by MMP until several months later, which is when the parties contemplated that the entire Lease would be deemed to be finalized.

In making the determination of whether the parties here intended the Lease and Amendment to be the full and final integration of its agreement regarding the Premises, the parties' prior course of dealing may be considered:

> the court must examine the surrounding circumstances, i.e., "must attempt to place itself in the same situation as that in which the parties found themselves at the time of contracting. To do this, the court must receive provisionally all evidence offered to prove the intention of the parties, including

---

[3] A true and accurate copy of Mr. Medrano's 7/18/07 email is annexed to the Valencia Declaration as Exhibit "A."

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

<u>evidence concerning any proffered prior or contemporaneous collateral agreement itself.</u>"

<u>Wedeck v. Unocal Corp.</u> (1997) 59 Cal.App.4th 848, 862-63.  Accordingly, this Court may properly consider whether the Work Letter to be executed subsequent to both the Lease and the Amendment – which MMP and Union Restaurant clearly contemplated – also intended for the security deposit to be paid in part at the time of the Lease's execution and later at the time of the execution of the Work Letter.

### III.    DEBTOR FIRST BREACHED THE LEASE AND WORK LETTER THROUGH ITS OWN WRONGFUL ACTS, EXCUSING THE SECOND PART OF PERFORMANCE BY UNION RESTAURANT IN PAYING THE REMAINDER OF THE SECURITY DEPOSIT AMOUNT.

Debtor's argument that there could have been no anticipatory breach on its part because Union Restaurant had not paid the full security deposit amount is flawed.  First, the partial performance of making half of the security deposit payment to Debtor was not a breach of the Lease, such that Debtor was entitled to excuse all further performance of its own obligations.  The split payment of the security deposit amount was always contemplated by the parties, as was the execution of both a Lease and subsequent Work Letter as exhibit thereto.

As noted above, Joaquin Medrano of MMP confirmed by email its receipt of the first half of the security deposit amount when personally delivered by John Valencia.  No mention is made in the email that payment of only $30,000 of the deposit amount was a breach of the Lease.  Indeed, Mr. Medrano states in the same paragraph that he is pushing to have the Work Letter completed so that the Lease can be finalized soon.  Clearly, MMP had the same understanding as Union Restaurant:  the Lease and Work Letter were to be executed in stages.  Union Restaurant was not in breach when it performed the first stage

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

of payment of the security deposit upon execution of the Lease; its performance of the

second payment stage was not expected to occur until the Work Letter was executed.

Second, between the execution of the Lease in July 2007 and the completion of the

Work Letter in December 2007/ January 2008, Union Restaurant became aware of facts

that caused it to doubt MMP's willingness or ability to fulfill its obligations under either

agreement.

Although mechanic's liens may be commonplace in the construction industry, it

was the amount of the recorded liens against the Premises – nearly $300,000 – that

caused Union Restaurant to be seriously concerned for MMP's ability to fulfill its

obligations.  This concern was further amplified when Union Restaurant learned that

MMP also had not paid its retained design consultant, Killefer Flammang Architects,

("KFA") for design and construction work performed up to that point on the Premises.

KFA's outstanding invoice totaled $65,688.06.  By the time the Work Letter was actually

executed, Union Restaurant had grave doubts about whether it should pay the second half

of the security deposit given what it had learned of MMP's habitual failure to pay other

vendors.[4]

These doubts were then followed by numerous conditions of outright breach of the

Lease and Work Letter provisions by MMP.  Actual possession of the Premises was not

timely delivered to Union Restaurant by the agreed upon Commencement Date of March

4, 2008.  MMP's own employees failed to finish renovations to the ceilings and floors

---

[4]  Debtor's reliance upon Section 3.4 of the Lease as further justification for its failure to timely deliver possession of the Premises is misplaced. Debtor's Reply at p. 8, lines 10 through 15.  Union Restaurant was not required to obtain insurance prior to actually starting work on the Premises build-out, which could not occur until it had been delivered actual possession.  Nonetheless, John Valencia personally delivered evidence of United Field Remodeling's insurance for the vault restoration, in the form of a general liability policy binder, to Miguel Echemendia at the offices of MMP in or about December 2007.

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

necessary for Union Restaurant to begin its own build-out work (even assuming it had been delivered possession of the Premises by the Commencement Date).  Failure of MMP to pay KFA meant that not only was the Premises not in a permit-ready state but also a Bid Set to Union Restaurant's subcontractors could not be released, both of which prevented Union Restaurant from proceeding with the build out.[5]

It was the totality of these circumstances that constituted MMP's anticipatory breach of the Lease and Work Letter.  Union Restaurant was then justified in withholding the second half of the security deposit payment because MMP had already failed to perform its several obligations under the parties' agreements.  It is not turning the doctrine of anticipatory breach on its head because MMP was the first party to breach their duty.  Union Restaurant had already performed, in part, its payment of the security deposit, and was willing and able to perform the remaining part of performance.  The intervening, superseding wrongful acts of MMP, however, excused Union Restaurant's payment of the second portion of the security deposit.

## IV.    DEBTOR, NOT CLAIMANT, BREACHED THE TERMS OF THE LEASE AND WORK LETTER.

The fact remains that it was MMP, not Union Restaurant, that actually breached the terms of the Lease and Work Letter by failing to deliver actual possession of the Premises by the agreed-upon Commencement Date.  Under the terms of the Lease, MMP was obligated to deliver possession of the Premises for commencement of build-out work by Union Restaurant no later than March 4, 2008.  It failed to meet this threshold obligation, among others, which totally precluded Union Restaurant from proceeding with any work on the

---

[5] Section 3.3 of the Lease, even if applicable upon Union Restaurant's cancelation as of May 5, 2008, would not have operated retroactively to relieve Debtor of its obligation to deliver actual possession of the Premises, and pay KFA for design and construction work performed on the Premises to that point in time.

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

Premises at all.

Contrary to MMP's false assertion in its Reply, Union Restaurant did not perform any build-out work at the Premises before (or after) the Commencement Date. United Field Remodeling, a subcontractor retained to restore a bank vault located on the Premises, did commence work prior to the Commencement Date but they were not Union Restaurant's employee. The subcontractor was retained jointly by MMP and Union Restaurant, both of which agreed to share the costs of the vault restoration equally.

Rather, it was MMP's own contractors who failed to complete restoration of the Premises' ceiling and floors, which precluded Union Restaurant from performing any build-out work. No build-out work could begin until that restoration work was completed, which was still ongoing as of March 4, 2008. Actual delivery of possession of the Premises was never made to Union Restaurant by MMP prior to the Commencement Date.

Moreover, none of the required permits were obtained by MMP, as it was obligated to do under the Work Letter. Accordingly, Union Restaurant was unable to take possession of, or perform any build-out work at, the Premises before March 4, 2008 despite MMP's assertions to the contrary.

Additionally, MMP had not paid the design consultant, KFA, for its preliminary design and construction work on the Premises. Union Restaurant was not obligated to pay KFA for those services. The Work Letter clearly states:

> Lessee shall sue Killefer Flammang Architects ("Design Consultants") . . . to design and prepare plans for and perform Lessee's Work. **Lessor will pay for the Design Consultant . . . for work through construction document stage included within the current scope of work.** Lessee shall pay any further amounts due to the Design Consultant . . . including for any change orders and construction administration, and

CLAIMANT'S SUR-REPLY TO DEBTOR'S REPLY

shall pay any other design professionals and contractors in a timely fashion.

There had been no change to the scope of work or any other orders to KFA by Union Restaurant. The obligation to pay KFA for the Premises design and construction to that point was MMP's alone.

This failure by MMP to timely compensate KFA not only prevented the obtaining of permits necessary for Union Restaurant to begin its build out but also did not allow the solicitation of bids for any subcontracted work to be performed on the Premises. By way of a March 20, 2008 email, Karin Lijegren of KFA informed John Valencia that MMP's failure to pay would have serious consequences on Union Restaurant's ability to complete the build out. Not only would complete payment of KFA's outstanding invoice (totaling $65,688.06) need to be paid to obtain a permit-ready status for the Premises, KFA would not release its Bid Set for any subcontracted build-out work to us.[6] Without KFA's Bid Set, Union Restaurant could not retain subcontractors or fabricators to perform other necessary work on the Premises build out.

Because actual possession of the Premises was not made prior to the Commencement Date, Union Restaurant notified MMP of its failure to complete the Premises' restoration work by way of a March 19, 2008 letter. Despite this notification, MMP did not complete the restoration work necessary for Union Restaurant to take delivery of the Premises. In a second letter, dated April 7, 2008, John Valencia formally notified MMP of its material breach of the terms of the Lease and Work Letter. Only after receipt of notice of its material breach did MMP then attempt to deliver keys to the

---

[6] A true and accurate copy of Karin Lijegren's email is annexed to the Valencia Declaration as Exhibit "B."

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

Premises to Union Restaurant.  It did not accept the keys for several reasons.

First, until MMP completed its restoration work and actual delivery of the Premises to Union Restaurant for its own build-out work, it did not want there to be any mistake or confusion as to its position that MMP continued to be in breach of its own obligations.  Second, it was useless to have keys to the Premises when Union Restaurant could not start its own work until MMP completed the floor and ceiling renovations.  Third, it was useless to have keys to the Premises when the designer could not solicit bids for build-out work to be performed because MMP had not fulfilled its obligation under the Work Letter to pay for design work already completed.

## V.   UNION RESTAURANT AND ITS PRINCIPALS DID COULD NOT HAVE USED DEBTOR'S PREMISES AS A PRETEXT TO SECURE A BETTER DEAL FOR A SECOND RESTAURANT LOCATION SINCE DEBTOR FIRST OFFERED ITS OWN PROPERTY FOR THE SECOND LOCATION TO THEM

Cancelation of the Lease for MMP's failure to cure its several conditions of material breach was not a pretext for obtaining a different location for Union Restaurant.  MMP, in fact, knows this to be true because it was fully aware of the company's intention to operate a second restaurant location as "Trader Vic's" even while the Union Restaurant development was underway.  John Valencia personally discussed his plans in this regard directly with Miguel Echemendia of MMP.

Indeed, not only did MMP know of the Trader Vic's plans at the same time that Union Restaurant was attempting to develop the Premises, MMP offered a second location to Union Restaurant for development as the Trader Vic's business itself.  On February 14, 2008, MMP's General Counsel Todd Neilsen sent a Letter of Intent,

CLAIMANT'S SUR-REPLY TO DEBTOR'S REPLY

memorializing draft terms for the lease of 717 Ninth Street, Los Angeles as a Trader

Vic's restaurant to John Valencia.[7]

As MMP was well aware at the time, and well knows even now as it falsely

contends that Union Restaurant canceled the Lease as a pretext to finding a better

location, there was never an intent to open Union Restaurant at any location other than

the original Premises.  Moreover, until MMP filed for bankruptcy protection, it was

Union Restaurant's strong preference that Trader Vic's open in the 717 Ninth Street

location that was first offered to it by MMP.

If MMP now believes, as it claims, that Union Restaurant did not have the

financial ability to develop two restaurants at the same time, it is more than surprising

that MMP would have then offered 717 Ninth Street to Union Restaurant for Trader Vic's

at the very same time that it was in the process of developing Union Restaurant at the

Premises.  Financially, Trader Vic's has successfully operated at the LA Live location for

nearly two years after construction began in August 2009.[8]

## VI.    DEBTOR'S AGENT IDENTIFIED AN ENTITY THAT COULD ONLY BE INTERPRETED AS UNION RESTAURANT WHEN HE MADE FALSE STATEMENTS ABOUT ITS FINANCIAL CONDITION DURING THE EARNINGS CONFERENCE CALL

Although Union Restaurant was never identified by name in the earnings call, the

questioner asked MMP's agent "And what about a replacement for the restaurant

operator?" and "What happened to the original one."  There could be no doubt, since

---

[7] A true and accurate copy of Todd Neilsen's email and attached Letter of Intent is annexed to the Valencia Declaration as Exhibit "C."

[8] The canceled checks, Number 2025 and 2027, that reference Trader Vic's in their notations were inadvertently produced to MMP and none of the amounts of those two checks are included in Union Restaurant's Proof of Claim in any event.  They are only evidence that Union Restaurant's principals intended to open a second restaurant under the name of Trader Vic's, of which MMP was both aware and willing to extend the location to them.

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

Union Restaurant was the only prospective tenant for the Premises prior to cancelation of the Lease, to whom the questioner was referring during the conference call.

Debtor's "well worn adage that 'truth is a defense'" might apply here if the defamatory statements made by MMP's Andrew Murray to the earnings call participants were, in fact, true. They were not. "I think we determined that their financial credibility was suspect and . . . they weren't able to fulfill their TI requirements" is not an opinion. Union Restaurant's financial ability was sound (as evidenced by the fact that they have successfully operated a restaurant for nearly two years since losing the Premises as a location); they were at all times able and willing to fulfill all obligations and requirements under the Lease and Work Letter.

**WHEREFORE,** Union Restaurant respectfully requests that the Court enter an Order allowing its claim in the amount of $247,606.18 in its entirety.

Respectfully submitted,

Dated: March 10, 2011                    JEFFREY S. SHINBROT, APLC


By: _____/s/_____
Jeffrey S. Shinbrot, Attorney for
THE UNION RESTAURANT
AND LOUNGE, LLC

CLAIMANT'S SUR-REPLY TO DEBTOR'S
REPLY

## DECLARATION OF JOHN VALENCIA

I, John Valencia, do hereby declare and state as follows:

1.     I am over the age of eighteen and I am a managing member of THE UNION
RESTAURANT AND LOUNGE, LLC ("Claimant" or "Union Restaurant") and LOS
FELIZ, LLC, a Florida Limited Liability Company ("Los Feliz").  As to the following facts,
I know them of my own personal knowledge, except where stated on information and
belief, and if called as a witness, I could and would testify as set forth herein.  I am the
custodian of the books and records of Union Restaurant and Los Feliz and I have
knowledge of such records, which were made at or about the time of the events recorded,
and which were maintained in the ordinary course of Union Restaurant's and Los Feliz's
businesses.

2.     In 2007, Los Feliz entered into Standard Industrial/Commercial Multi-Tenant
Lease (the "Lease") with MERUELO MADDUX PROPERTIES ("MMP") regarding the
leasing of restaurant space located in real property owned by MMP at the address of 760
South Hill Street, Los Angeles, California (the "Premises").

3.     Los Feliz (and, subsequently, Union Restaurant) planned to build out the
Premises as a restaurant and then operate that business upon completion of construction.

4.     The Lease document alone did not constitute the fully integrated agreement of
Los Feliz and MMP regarding the Premises.  It was always the mutual understanding of the
parties that additional terms of the Lease would be further defined in a Work Letter exhibit,
specifically defining their respective rights and obligations regarding the build out of the
Premises.  This is evidenced by the confirming email sent to me on July 18, 2007 by
Joaquin Medrano of MMP.  In the email (written only a few days after the Lease was

executed), he thanked me for *"coming by and dropping [off] the check. **I am pushing to have the work letter completed so that we can finalize the lease soon."*** A copy of Mr. Medrano's email is attached to this Declaration as *Exhibit A*. The Work Letter was not executed and delivered by MMP until several months later, which is when the parties contemplated that the entire Lease would be deemed to be finalized.

5.    It was the parties additional, mutual understanding that one-half of the $60,000 security deposit would be paid upon execution of the Lease and the second half of the security deposit would not be due and owing until execution of the Work Letter. As the Medrano email confirms, I delivered the first half of the security deposit amount at the time of execution of the Lease. Between July 2007 and when the later Work Letter was to be executed, however, numerous facts came to light regarding MMP's financial difficulties and lack of either willingness or ability to deliver the Premises on time and in a condition that would permit Union Restaurant to complete the restaurant build-out work. When these insecurities became known to me, and were not subsequently addressed or cured by MMP, I withheld the second half of the security deposit amount in an abundance of prudence and caution.

6.    Under the Terms of the Lease, MMP was obligated to deliver possession of the Premises for commencement of build-out work by Union Restaurant no later than March 4, 2008 (the "Commencement Date"). Union Restaurant did not perform any build-out work at the Premises before or after the Commencement Date. United Field Remodeling, a subcontractor retained to restore a bank vault located on the Premises, did commence work prior to the Commencement Date but they were not employed by Union Restaurant. That company, however, was retained jointly by MMP and Union Restaurant, both of which

agreed to share the costs of the vault restoration equally.

7.      Actual delivery of possession of the Premises was never made to Union

Restaurant by MMP prior to the Commencement Date.  MMP failed to complete restoration

of the Premises' ceiling and floors, which precluded Union Restaurant from taking

possession or performing any build-out work.  Moreover, none of the required permits were

obtained by MMP, as it was obligated to do under the Work Letter.  Accordingly, Union

Restaurant was unable to take possession of, or perform any build-out work at, the Premises

before March 4, 2008 despite MMP's assertions to the contrary.

8.      Additionally, MMP had not paid the design consultant, Killefer Flammang

Architects ("KFA"), for its preliminary design and construction work on the Premises.

Union Restaurant was not obligated to pay KFA for those services.  The parties' Work Letter

clearly states:

> Lessee shall sue Killefer Flammang Architects ("Design
> Consultants") . . . to design and prepare plans for and perform
> Lessee's Work.  **Lessor will pay for the Design Consultant . . . for
> work through construction document stage included within the
> current scope of work.**  Lessee shall pay any further amounts due
> to the Design Consultant . . . including for any change orders and
> construction administration, and shall pay any other design
> professionals and contractors in a timely fashion.

There had been no change to the scope of work or any other orders to KFA by Union

Restaurant.  The obligation to pay KFA for the Premises design and construction to that

point was MMP's alone.

9.      This failure by MMP to timely compensate KFA not only prevented the obtaining

of permits necessary for Union Restaurant to begin its build out but also did not allow the

solicitation of bids for any subcontracted work to be performed on the Premises.  By way of

a March 20, 2008 email, Karin Lijegren of KFA informed me that MMP's failure to pay

would have serious consequences on Union Restaurant's ability to complete the build out.

Not only would complete payment of KFA's outstanding invoice (totaling $65,688.06) need

to be paid to obtain a permit-ready status for the Premises, KFA would not release its Bid

Set for any subcontracted build-out work to us.  Without KFA's Bid Set, Union Restaurant

could not retain subcontractors or fabricators to perform other necessary work on the

Premises build out.  A copy of Karin Lijegren's email is attached to this Declaration as

*Exhibit B.*

10.    Because actual possession of the Premises was not made prior to the

Commencement Date, Union Restaurant notified MMP of its failure to complete the

Premises' restoration work by way of a March 19, 2008 letter.  Despite this notification,

MMP did not complete the restoration work necessary for Union Restaurant to take delivery

of the Premises.  In a second letter, dated April 7, 2008, I formally notified MMP of its

material breach of the terms of the Lease and Work Letter.

11.    Only after receipt of notice of its material breach did MMP then attempt to deliver

keys to the Premises to me.  I did not accept the keys for several reasons.  First, until MMP

completed its restoration work and actual delivery of the Premises to Union Restaurant for

its own build-out work, I did not want there to be any mistake or confusion as to my

position that MMP continued to be in breach of its obligations.  Second, it was useless to

have keys to the Premises when Union Restaurant could not start its own work until MMP

completed the floor and ceiling renovations.  Third, it was useless to have keys to the

Premises when the designer could not solicit bids for build-out work to be performed

because MMP had not fulfilled its obligation under the Work Letter to pay for design work

already completed.

12.    Although Union Restaurant was not required to obtain insurance prior to actually starting work on the Premises build-out, I personally delivered evidence of United Field Remodeling's insurance for the vault restoration, in the form of a general liability policy binder, to Miguel Echemendia at the offices of MMP in or about December 2007.

13.    Cancelation of the Lease for MMP's failure to cure its several conditions of material breach was not a pretext for obtaining a different location for Union Restaurant. MMP, in fact, knows this to be true because it was aware of my company's intention to operate a second restaurant location as Trader Vic's even while the Union Restaurant development was underway.  I personally discussed my plans in this regard directly with Miguel Echemendia.

14.    Not only did MMP know of the Trader Vic's plans at the same time that Union Restaurant was attempting to develop the Premises, MMP offered a second location to me for development as the Trader Vic's business itself.  On February 14, 2008, MMP's General Counsel Todd Neilsen sent a Letter of Intent, memorializing draft terms for the lease of 717 Ninth Street, Los Angeles as a Trader Vic's restaurant.  A copy of Todd Neilsen's email and attached Letter of Intent is attached to this Declaration as *Exhibit C*.

15.    As MMP was well aware at the time, and well knows even now as it falsely contends that Union Restaurant canceled the Lease as a pretext to finding a better location, there was never an intent to open Union Restaurant at any location other than the original Premises.  Moreover, until MMP filed for bankruptcy protection, it was my strong preference that Trader Vic's open in the 717 Ninth Street location that was first offered to me by MMP.

16.     If MMP now believes, as it claims, that Union Restaurant did not have the financial ability to develop two restaurants at the same time, I find it more than surprising that MMP would have then offered 717 Ninth Street to me for Trader Vic's at the very same time that I was in the process of developing Union Restaurant at the Premises.  Financially, I have successfully operated Trader Vic's at the LA Live location for nearly two years after construction began in August 2009.

17.     Canceled Checks Number 2025 and 2027, which reference Trader Vic's in their notations, were inadvertently produced to MMP and none of the amounts of those two checks are included in Union Restaurant's Proof of Claim in any event.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 9, 2011                     [SIGNATURE PAGE TO FOLLOW]
                                          John Valencia

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:   March 9, 2011

John Valencia

EXHIBIT "A"

--- On **Wed, 7/18/07, Joaquin Medrano <_jmedrano@meruelomaddux.com_>** wrote:

From: Joaquin Medrano <jmedrano@meruelomaddux.com>
Subject: Deposit Check
To: "John Valencia" <cubancigar@sbcglobal.net>
Date: Wednesday, July 18, 2007, 2:51 PM

John,



Thanks again for coming by and dropping of the check.  I am pushing to have the work letter completed
so that we can finalize the lease soon.


Attached is the retail report I mentioned to you that provides great information on what's happening in the
downtown market.



Joaquín Medrano

Associate

 MerueloMaddux Properties

761 Terminal St. Bldg. 1, 2nd Floor

Los Angeles, CA 90021

(t) 213.291.2800 (f) 213.627.5979

EXHIBIT "B"

--- On **Thu, 3/20/08, Karin Liljegren <_karin@kfarchitects.com_>** wrote:

From: Karin Liljegren <karin@kfarchitects.com>
Subject: Restaurant Payment
To: "John Valencia" <cubancigar@sbcglobal.net>
Cc: "Barbara Flammang" <bflam@kfarchitects.com>, "Wade Killefer" <Killefer@kfarchitects.com>
Date: Thursday, March 20, 2008, 1:41 PM

John,
Per your request, Barbara and I have analyzed what we are owed and how we could proceed with a
partial payment.
We have not had any contact with anyone at MMP since I sent the email on 3/12.

Here is the last invoice to MMP.  It includes all scope that is agreed to and will close out our agreement
with them (**minus any plotting and printing still to occur**).

Currently it is $65,688.06.

So, if you would like to make an agreement with MMP, we would be open to a partial payment from
someone for  $28,448.07 in order to release the Bid Set.  This payment would be for work completed up
through December 2007 (Invoice #5680 and #5720) and the current reimbursables.

They also owe us $15,671.12 for work on the lofts.

The complete payments would need to be made for us to obtain a permit ready status .

The Bid Set is about a week away from being complete.  (we pulled off after last week's issues)  The Bid
Set is important for you as you are pricing a complete package and tying your subs and fabricators to a
scope and design.  It is also important that Sam does not contract with subs on the drawings we gave
him a month ago, these are not entirely accurate and will generate  lots of change orders.  You and Sam
should be working off the same set.  The permit set should not have many revisions from our Bid Set, but
will require time to finish the mods, legwork etc.  Sam will be the one to actually pull the permit, we get it
permit ready.

Please let us know if you reach an agreement with MMP.
Thanks.
Karin


Karin Liljegren, AIA
**Killefer Flammang Architects**
1625 Olympic Boulevard
Santa Monica CA  90404
310.399.7975 x221
Karin@KFarchitects.com
www.KFarchitects.com

EXHIBIT "C"

--- On **Thu, 2/14/08, Todd Nielsen** *<tnielsen@meruelomaddux.com>* wrote:

From: Todd Nielsen <tnielsen@meruelomaddux.com>
Subject: 717 Ninth Term Sheet
To: "John Valencia" <cubancigar@sbcglobal.net>
Cc: "Miguel Echemendia" <mechemendia@meruelomaddux.com>
Date: Thursday, February 14, 2008, 7:34 PM

John, attached is a draft term sheet.


Todd W. Nielsen

General Counsel/Corporate Secretary

Meruelo Maddux Properties, Inc.

761 Terminal Street

Building 1, 2nd Floor

Los Angeles, California 90021

Phone: (213) 291-2800

Fax: (213) 291-2830

tnielsen@meruelomaddux.com

February 13, 2008


John Valencia
Valencia Group, LLC
1125 E. Broadway, Suite 133
Glendale, CA 91205

      RE:  Restaurant Lease at 717 Ninth Street, Los Angeles, California


Dear John:

      We are pleased to present to you this letter which sets forth a summary of the primary terms upon which we may be willing to enter into a new lease with you for a restaurant location at 717 Ninth Street, Los Angeles, California, as follows:

| | |
|---|---|
| Lessor: | Meruelo Maddux – 845 S. Flower Street, LLC, a Delaware limited liability company |
| Lessee: | An entity to be formed and wholly owned by Valencia Group, LLC |
| Premises: | Approximately 6,800 square feet of floor area on the ground floor and between 500 to 2,000 square feet of floor area in the basement of the building at 717 Ninth Street.  A preliminary site plan is attached as Exhibit A.  The configuration and square footage of the premises may be adjusted from that shown on Exhibit A, in which case the base rent would be adjusted accordingly. |
| Lease Term: | Ten (10) year initial term, with one option to extend for an additional five (5) years. The initial term would commence on the earlier of (a) the estimated completion date as set forth on a schedule to be attached to the lease, or (b) the date Lessee obtains a temporary or permanent certificate of occupancy and health department permits necessary for operation of the restaurant. |
| Permitted Use: | Trader Vic's restaurant |

| | |
|---|---|
| Guarantee/Defaults: | John Valencia and Valencia Group, LLC shall guarantee Lessee's obligations under the lease. Also, a default under the lease agreement for the restaurant space at 760 S. Hill Street, Los Angeles, shall constitute a default under this Lease, and vice versa. |
| Security Deposit: | An amount equal to two (2) months of base rent payable upon execution of the lease. |
| Base Rent: | Monthly base rent would be $4.50 per square foot of floor area, triple net, with five percent (5%) annual increases. During the first year of the option term, if any, monthly base rent would be the greater of the fair market rental value of the premises or 105% of the base rent payable in the last year of the initial term, with five percent (5%) annual increases. |
| Insurance: | Lessee shall maintain commercial general liability insurance in an amount of not less than $2,000,000 per occurrence and $3,000,000 aggregate, including host liquor liability; worker's compensation and employer liability insurance as required by law; all risk insurance covering full replacement cost of all Tenant Improvements and all of Lessee's personal property; and such other insurance as may be required by Lessor. Lessor may adjust coverage types, amounts and terms from time to time. |
| Parking: | No parking will be provided under the lease; however, the parties may negotiate a separate parking license agreement for parking spaces within the building parking structure. |
| Triple Net: | The lease would be an absolute triple net lease. To the extent certain expenses are not separately billed or metered to the premises, Lessor may allocate expenses in a manner deemed appropriate by Lessor (or as set forth in condominium project documents), and may require Lessee to make estimated payments on a monthly basis with respect to such expenses. |
| Lease Form: | Modified AIR Standard Industrial/Commercial Single-Tenant Lease – Net, with addendum and work letter. |
| Condominium: | The premises may constitute a commercial condominium unit or part of such unit within a condominium project, and the lease may be subject to other requirements set forth in an agreement among such commercial condominium unit and the residential units and homeowners' association ("HOA"). For instance, the HOA may be responsible for obtaining building insurance and maintaining common areas, and Lessee may be responsible for certain expenses and costs chargeable to the commercial unit. |

Lessor Work:          Lessor would deliver the premises as a completed core and shell.

Tenant
Improvements:         Lessee would, at its cost, complete all other improvements
                      necessary to build out the space, pursuant to plans approved by
                      Lessor ("Lessee's Work").  The lease shall provide that, upon
                      expiration or termination of lease, Lessee's interest in all tenant
                      improvements and fixtures shall be transferred to Lessor.

Covenant to
Operate:              Lessee shall open for business by a date to be determined by the
                      parties, and shall continually operate during the lease term at least
                      6 days per week (excluding holidays) during reasonable business
                      hours for at least lunch and dinner. If Lessee breaches such
                      covenant, in addition to other remedies of Lessor, Lessor, may at
                      its sole option, terminate the Lease and recapture the premises.

Time Frames:          The parties will establish a schedule for progress and completion
                      of the Lessee's Work. Among other things, Lessor may require
                      Lessee to meet certain dates with respect to Lessee loan funding,
                      design phase, ordering and other matters, to be determined.

        This letter of intent, even when fully executed, is not intended to constitute an
offer or an acceptance of an offer, or a binding agreement or an agreement to agree, but it
is rather intended only for discussion purposes between the parties.  If the terms set forth
in this letter of intent meet with your approval, please sign this letter of intent below.  The
parties will be legally bound only when a complete lease agreement has been executed
and delivered by both parties.

        If you have any questions, please feel free to call us at any time.  We look forward
to meeting with you again.

                                    Sincerely,


                                    Miguel Echemendia,
                                    Chief Administrative Officer
                                    Meruelo Maddux Properties, Inc.


Valencia Group, LLC,
a California limited liability company

By:     _____
Name:   _____
Title:  _____

# **EXHIBIT A**

<u>Site Plan</u>

(See attached)

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 8200 Wilshire Boulevard, Suite 400, Beverly Hills, California 90211

A true and correct copy of the foregoing document described as **CLAIMANT'S SUR-REPLY (AS PERMITTED BY COURT'S ORDER DATED 1/13/11) TO DEBTOR'S REPLY RE MOTION FOR ORDER DISALLOWING CLAIM NO. 3 FILED BY THE UNION RESTAURANT & LOUNGE LLC; AND DECLARATION OF JOHN VALENCIA IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**X** I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **MARCH 10, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On ***Fill in Date Document is Filed***, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**X** III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **MARCH 10, 2011** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.
(via attorney service)    Hon. Kathleen Thompson
SFV Division, U.S. Bankruptcy Ct.
21041 Burbank Blvd.
Woodland Hills, CA 91367-6606
Bin on 1st Floor outside entry to Clerk's Office

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

March 10, 2011        Christopher Bosley

---
This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

August 2010                                                                    **F 9013-3.1.PROOF.SERVICE**

SERVICE BY NOTICE OF ELECTRONIC FILING ("NEF")

| Date | Type Name | Signature |
|------|-----------|-----------|

- Michael C Abel    mca@dgdk.com
- Robert Abiri    rabiri@abiriszeto.com
- Allison R Axenrod    allison@claimsrecoveryllc.com
- Christopher J Bagnaschi    cb@cjblaw.com
- John J Bingham    jbingham@dgdk.com
- William C Bollard    eal@jbblaw.com, kmg@jbblaw.com;william@jbblaw.com
- Peter Bonfante    peterbonfante@bsalawfirm.com
- Julia W Brand    JBrand@bhfs.com
- Jennifer L Braun    jennifer.l.braun@usdoj.gov
- Martin J Brill    mjb@lnbrb.com
- Andrew W Caine    acaine@pszyjw.com
- Howard Camhi    hcamhi@ecjlaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- James E Carlberg    jcarlberg@boselaw.com
- Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com
- Jacquelyn H Choi    jchoi@swjlaw.com
- Carol Chow    CChow@Stutman.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Ronald R Cohn    rcohn@horganrosen.com
- Enid M Colson    emc@dgdk.com, ecolson@dgdk.com
- Michaeline H Correa    mcorrea@jonesday.com
- Emily R Culler    eculler@stutman.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Susan S Davis    sdavis@coxcastle.com
- Aaron De Leest    aed@dgdk.com
- Daniel Denny    ddenny@gibsondunn.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Marina Fineman    mfineman@stutman.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
- Donald L Gaffney    dgaffney@swlaw.com
- Thomas M Geher    tmg@jmbm.com
- Bernard R Given    bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Barry S Glaser    bglaser@swjlaw.com
- Gabriel I Glazer    gglazer@stutman.com
- Matthew A Gold    courts@argopartners.net
- Eric D Goldberg    egoldberg@stutman.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com
- John A Graham    jag@jmbm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

### SERVICE BY NOTICE OF ELECTRONIC FILING ("NEF")

- Ofer M Grossman   omglaw@gmail.com
- Jodie M Grotins   jgrotins@mcguirewoods.com
- Peter J Gurfein   pgurfein@lgbfirm.com
- Cara J Hagan   carahagan@haganlaw.org
- Asa S Hami   ahami@sulmeyerlaw.com
- Brian T Harvey   bharvey@buchalter.com, IFS_filing@buchalter.com
- Robert A Hessling   rhessling@dgdk.com
- William W Huckins   whuckins@allenmatkins.com, clynch@allenmatkins.com
- Lance N Jurich   ljurich@loeb.com, kpresson@loeb.com
- William H. Kiekhofer   wkiekhofer@mcguirewoods.com
- Andrew F Kim   kim-a@blankrome.com
- Michael S Kogan   mkogan@ecjlaw.com
- Tamar Kouyoumjian   tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- Lewis R Landau   lew@landaunet.com
- Leib M Lerner   leib.lerner@alston.com
- Matthew A Lesnick   matt@lesnicklaw.com
- David E Leta   dleta@swlaw.com, wsmart@swlaw.com
- Katherine Lien   katie.lien@sbcglobal.net, katielien@gmail.com
- Steven K Linkon   slinkon@rcolegal.com
- Robert M Llewellyn   michael.llewellyn@boe.ca.gov
- Richard Malatt   rmalatt@gmail.com
- Elmer D Martin   elmermartin@gmail.com
- Elissa Miller   emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Avi Muhtar   amuhtar@sulmeyerlaw.com
- Iain A W Nasatir   inasatir@pszjlaw.com, jwashington@pszjlaw.com
- Jeffrey P Nolan   jnolan@pszjlaw.com
- Henry H Oh   henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Lawrence Peitzman   lpeitzman@pwkllp.com
- Eric S Pezold   epezold@swlaw.com, dwlewis@swlaw.com
- Christopher E Prince   cprince@lesnickprince.com
- Michael H Raichelson   mhr@cabkattorney.com
- Dean G Rallis Jr   drallis@sulmeyerlaw.com
- Kurt Ramlo   kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin - DECEASED -   cmr@lnbrb.com
- Daniel H Reiss   dhr@lnbrb.com
- Michael B Reynolds   mreynolds@swlaw.com, kcollins@swlaw.com
- Jeremy V Richards   jrichards@pszjlaw.com, bdassa@pszjlaw.com
- James S Riley   tgarza@sierrafunds.com
- Martha E Romero   Romero@mromerolawfirm.com
- Victor A Sahn   vsahn@sulmeyerlaw.com
- Steven J Schwartz   sschwartz@dgdk.com
- Kenneth J Shaffer   jshaffer@stutman.com
- Zev Shechtman   zshechtman@dgdk.com, danninggill@gmail.com
- David B Shemano   dshemano@pwkllp.com
- Jeffrey S Shinbrot   jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- Stephen Shiu   sshiu@swlaw.com
- Lori Sinanyan   lsinanyan@jonesday.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                 **F 9013-3.1.PROOF.SERVICE**

SERVICE BY NOTICE OF ELECTRONIC FILING ("NEF")

- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Surjit P Soni    surjit@sonilaw.com, teresa@sonilaw.com
- Bennett L Spiegel    blspiegel@jonesday.com
- Tracie L Spies    tracie@haganlaw.org
- James Stang    jstang@pszjlaw.com
- Catherine Steege    csteege@jenner.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- John N Tedford    jtedford@dgdk.com, DanningGill@Gmail.com
- Damon Thayer    dthayer@jenner.com
- James A Timko    jtimko@allenmatkins.com
- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Rouben Varozian    rvarozian@bzlegal.com
- Jason L Weisberg    jason@gdclawyers.com
- William E Winfield    wwinfield@nchc.com
- Jasmin Yang    jyang@swlaw.com
- Aleksandra Zimonjic    azimonjic@lgbfirm.com, kmoss@lgbfirm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                                    **F 9013-3.1.PROOF.SERVICE**