JOHN N. TEDFORD, IV (State Bar No. 205537)
*JTedford@DGDK.com*
ENID M. COLSON (State Bar No. 189912)
*EColson@DGDK.com*
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California  90067-2904
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735

GARY E. KLAUSNER (State Bar No. 69077)
*GKlausner@Stutman.com*
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067-6013
Telephone:  (310) 228-5600
Facsimile:  (310) 228-5788

Attorneys for Meruelo Maddux Properties, Inc., and
affiliated Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | ) Case No. 1:09-bk-13356-VK |
| | ) |
| MERUELO MADDUX PROPERTIES, | ) Chapter 11 (Jointly Administered) |
| INC., et al.,[1] | ) |
| | ) **NOTICE OF MOTION AND MOTION FOR** |
| Debtors and Debtors-in- | ) **AUTHORITY TO FURTHER MODIFY THE** |
| Possession. | ) **DEBTORS' PROPOSED CHAPTER 11 PLAN** |
| | ) **AND ORDER AUTHORIZING CALIFORNIA** |
| | ) **BANK & TRUST TO MODIFY ITS VOTES** |
| ☑  Affects all Debtors | ) **TO ACCEPT THE DEBTORS' PLAN; AND** |
| | ) **MEMORANDUM OF POINTS AND** |
| ☐  Affects the following Debtors: | ) **AUTHORITIES IN SUPPORT THEREOF** |
| | ) |
| | ) Date:    [To be set] |
| | ) Time:    [To be set] |
| | ) Place:    Courtroom 301 |
| | )           21041 Burbank Boulevard |
| | )           Woodland Hills, California |
| | ) |
| | ) |
| | ) |

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

# TABLE OF CONTENTS

I.  STATEMENT OF FACTS ........................................................................... 5

II.  PROPOSED MODIFICATIONS TO THE FOURTH AMENDED PLAN ....................... 6

    A.  UNIMPAIRMENT OF THREE CLASSES OF GENERAL
        UNSECURED CLAIMS .................................................................... 7

    B.  MODIFICATIONS REFLECTING RECENT TESTIMONY
        CONCERNING INTEREST RATES CONCERNING
        CHINATRUST'S, PNL'S AND BOFA'S LOANS ................................. 8

    C.  MODIFICATIONS INCORPORATING THE DEBTORS'
        AGREEMENT WITH CB&T WITH RESPECT TO THE
        TREATMENT OF CB&T'S CLAIMS ................................................. 10

    D.  MODIFICATIONS INCORPORATING THE DEBTORS'
        AGREEMENT WITH CATHAY WITH RESPECT TO THE
        TREATMENT OF CATHAY'S CLAIMS ............................................. 13

    E.  MODIFICATIONS PROVIDING FOR A POSSIBLE
        AGREEMENT WITH THE MTA WITH RESPECT TO THE
        TREATMENT OF THE MTA'S CLAIM ............................................. 16

    F.  MODIFICATION PREVIOUSLY REQUESTED BY SAN
        BERNARDINO COUNTY ................................................................. 17

    G.  MODIFICATIONS REGARDING CORPORATE GOVERNANCE ................. 17

    H.  MODIFICATION ADDRESSING THE SBE'S OBJECTION TO
        CONFIRMATION OF THE DEBTORS' PLAN ................................... 18

    I.  MODIFICATION CONCERNING THE REORGANIZED
        DEBTORS' INTERNAL CONTROLS ................................................ 19

    J.  MODIFICATION TO PROCEDURES RELATING TO
        PREPETITION EXECUTORY CONTRACTS AND UNEXPIRED
        LEASES ....................................................................................... 19

    K.  MISCELLANEOUS PROPOSED MODIFICATIONS ............................. 20

III.  ARGUMENT .......................................................................................... 22

    A.  THE DEBTORS ARE AUTHORIZED TO MODIFY THEIR PLAN
        IN ACCORDANCE WITH THE PROPOSED THIRD MODIFIED
        PLAN ......................................................................................... 22

    B.  CREDITORS AND INTEREST HOLDERS VOTING TO ACCEPT
        THE PLAN SHOULD BE DEEMED TO ACCEPT THE
        MODIFIED PLAN ......................................................................... 26

    C.  CB&T SHOULD BE AUTHORIZED TO CHANGE ITS VOTES ................ 30

IV.  CONCLUSION ........................................................................................ 31

- i -

1

# <u>TABLE OF AUTHORITIES</u>

2

3    <u>Cases</u>

4    *Enron Corp. v. New Power Co. (In re New Power Co.)*
       438 F.3d 1113 (11th Cir. 2006) ........................................................................................ 27

5

6    *In re American Solar King Corp.,*
       90 B.R. 808 (Bankr. W.D. Tex. 1988) ............................................................................. 27

7    *In re Azabu Buildings Co. Ltd.*
       2007 WL 1964306 (Bankr. D. Haw. June 28, 2007) ........................................................ 27

8

9    *In re Simplot*
       2007 WL 2479664 (Bankr. D. Idaho Aug. 28, 2007) ....................................................... 27

10   *Mount Vernon Plaza Community Urban Redevelopment Corp. I,*
       79 B.R. 305 (Bankr. S.D. Ohio 1987) ............................................................................. 27

11

<u>Statutes</u>

12

13   11 U.S.C. § 1122 ................................................................................................ 22, 23, 26

14   11 U.S.C. § 1123 .................................................................................................... 22, 26

15   11 U.S.C. § 1123(a)(1) ............................................................................................ 22, 23

16   11 U.S.C. § 1123(a)(2) ............................................................................................ 22, 23

17   11 U.S.C. § 1123(a)(3) ................................................................................................. 23

18   11 U.S.C. § 1123(a)(4) ................................................................................................. 23

19   11 U.S.C. § 1123(a)(5) ............................................................................................ 23, 24

20   11 U.S.C. § 1123(a)(6) ................................................................................................. 24

21   11 U.S.C. § 1123(a)(7) ............................................................................................ 24, 25

22   11 U.S.C. § 1123(b)(1) ................................................................................................. 22

23   11 U.S.C. § 1123(b)(2) ................................................................................................. 25

24   11 U.S.C. § 1123(b)(3) ................................................................................................. 25

25   11 U.S.C. § 1123(b)(4) ................................................................................................. 25

26   11 U.S.C. § 1123(b)(5) ................................................................................................. 26

27   11 U.S.C. § 1127(a) ............................................................................................... 22, 26

28   11 U.S.C. § 503(b)(1)(D) .............................................................................................. 17

11 U.S.C. 1123(a)(8) ................................................................................................ 25

**Rules**

Fed. R. Bankr. P. 3018(a) ...................................................................................... 30

**PLEASE TAKE NOTICE** that, on a date and time to be set by the Court,[2] in Courtroom 301 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, California, the above-captioned debtors and debtors-in-possession (collectively the "Debtors") will and do hereby move for an order authorizing the Debtors to modify their proposed Chapter 11 plan and determining that the proposed modification of their plan does not require resolicitation thereof. The Debtors also request that the Court authorize California Bank & Trust ("CB&T") to modify its votes to accept the Debtors' proposed plan.

This motion is made on the following grounds:  On March 26 and 27, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code.  On or about October 15, 2010, the Court entered its order approving the form of the Debtors' disclosure statement describing the Debtors' fourth amended plan of reorganization.  The current version of the Debtors' proposed plan is the *Second Modified Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al., Dated September 20, 2010* (the "Debtors' Plan").  The hearing on the Debtors' request for confirmation of the Debtors' Plan is ongoing.

By way of this motion the Debtors are requesting authority to further modify the Debtors' Plan.  Most of the Debtors' proposed modifications are non-substantive and are made to ensure that definitions and certain treatment descriptions are consistent throughout the document.  The Debtors also are seeking to modify the Debtors' Plan to, among other things, (a) unimpair the three classes of general unsecured claims that voted to reject the Debtors' Plan, (b) provide that secured claims of Chinatrust Bank ("Chinatrust") and PNL Pomona, L.P. ("PNL") will be guarantied by MMPI and modify interest rates consistent with testimony concerning secured claims of Chinatrust, PNL and Bank of America, (c) incorporate agreements with respect to the treatment of the secured claims and unsecured guaranty claims of CB&T and Cathay Bank, (d) provide for a possible agreement with respect to the treatment of a general unsecured claim of the Los Angeles County

---

[2] An *ex parte* application for order shortening time is being filed concurrently herewith. The Debtors anticipate that written notice of the hearing date and time will be filed and served on appropriate parties promptly upon the setting of the hearing by the Court.

1  Metropolitan Transportation Authority and incorporate an agreement with respect to postpetition

2  real property taxes owed to San Bernardino County, (e) reflect a ruling of the Court with respect to

3  corporate governance matters, (f) resolve an objection filed by the California State Board of

4  Equalization, (g) establish modified procedures for the assumption and rejection of executory

5  contracts and unexpired leases, and (h) provide for the continuation of certain internal controls

6  recently adopted by the Debtors.

7          Concurrently herewith, the Debtors are filing a clean and a redlined version of the *Third*

8  *Modified Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al.,*

9  *Dated September 20, 2010* (the "Third Modified Plan").  The Debtors are requesting that the Court

10 authorize the Debtors to modify their plan accordingly and determine that the modification of the

11 Debtors' Plan does not require resolicitation thereof.

12         As noted above, the Debtors are seeking authority to incorporate an agreement with respect

13 to the treatment of CB&T's claims against the Debtors' estates.  CB&T has agreed to vote to accept

14 the Debtors' Plan if the Debtors' Plan is modified to provide for the treatment of CB&T's claims

15 consistent with a certain Loan Modification Agreement (the "LMA").  Accordingly, provided that

16 the Court grants the Debtors' request for authority to modify the treatment of CB&T's claims, the

17 Debtors request that the Court authorize CB&T to change its vote.

18         This Motion is based upon this Notice and Motion, the Memorandum of Points and

19 Authorities, the notice of filing of the Third Modified Plan filed concurrently herewith, the papers

20 and pleadings on file in this case, and such other evidence as may be presented to the Court.

21         **PLEASE TAKE FURTHER NOTICE** that the Debtors will file an *ex parte* application

22 for order shortening time in which they will request that the Court set a hearing on this matter on

23 less than regular 21-day notice and that such order further provide that oppositions, if any, may be

24 presented to the Court at the hearing.  If the Debtors' *ex parte* application is granted, the Debtors

25 will file and serve a notice of the hearing on this Motion, which notice will identify the date and

26 time of the hearing and the deadline, if any, to file written oppositions.  Oppositions not presented

27 ///

28 ///

1  as set forth in the notice may be deemed waived.  If you do not have any objection to this motion,

2  you need not take any further action.

3

4  Dated:  March 24, 2011                            DANNING, GILL, DIAMOND & KOLLITZ, LLP

5

6                                                    By:        /s/ *John N. Tedford, IV*
                                                              John N Tedford, IV
7                                                             Attorneys for Meruelo Maddux Properties,
                                                              Inc., and affiliated Debtors and Debtors-in-
8                                                             Possession

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

I.

4

## STATEMENT OF FACTS

5          On or about October 15, 2010, the Court entered its *Amended Order Approving Debtors'*

6   *Fourth Amended Disclosure Statement Describing Fourth Amended Joint Plan of Reorganization*

7   *of Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010* (*docket entry no. 1963*).  On

8   or before October 22, 2010, the Disclosure Statement,[3] the Debtors' proposed *Fourth Amended*

9   *Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010*

10  (the "Fourth Amended Plan"), and other documents were mailed by the voting and solicitation

11  agent, Kurtzman Carson Consultants LLC ("KCC"), to qualified creditors and shareholders.  The

12  deadline for the creditors and interest holders entitled to vote to submit their ballots to KCC was

13  4:00 p.m. Pacific time on November 22, 2010 (the "Voting Deadline").

14          On or about January 14, 2011, the Debtors filed their motion for approval of a proposed

15  settlement with Legendary Investors Group No. 1, LLC ("Legendary") and for authority to modify

16  the Fourth Amended Plan to incorporate the terms of the settlement (*docket entry no. 2579*).  On or

17  about January 24, 2011, the Court entered its order granting the motion (*docket entry no. 2652*).

18  Pursuant to the order the Debtors were authorized to modify the Fourth Amended Plan as set forth

19  in the Debtors' *First Modified Fourth Amended Joint Plan of Reorganization of Meruelo Maddux*

20  *Properties, Inc., et al. Dated September 20, 2010* filed with the Court on January 14, 2011 (*docket*

21  *entry no. 2583*).

22          On or about January 24, 2011, the Debtors filed their motion for approval of a proposed

23  settlement with East West Bank ("EWB") and for authority to further modify the Fourth Amended

24  Plan to incorporate the terms of the Debtors' settlement with EWB and to make a modification to

25

26          [3] Terms not specifically defined in this Memorandum of Points and Authorities have the
    meanings ascribed to them in the *Third Modified Fourth Amended Joint Plan of Reorganization of*
27  *Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010* filed concurrently herewith.

28

366801.05 [XP]      25195

the interest rate called for under the Fourth Amended Plan with respect to secured claims of Bank

of America, N.A. ("BofA") (*docket entry no. 2660*).  On or about February 8, 2011, the Court

entered its order granting the motion (*docket entry no. 2766*).  On or about March 11, 2011, the

Debtors filed their *Second Modified Fourth Amended Joint Plan of Reorganization of Meruelo*

*Maddux Properties, Inc., et al. Dated September 20, 2010* (*docket entry no. 2869*).

The trial on confirmation of the Fourth Amended Plan (as modified, the "Debtors' Plan")

commenced with opening statements and testimony on January 27, 2011.  Argument or testimony

also was presented on January 28, February 4, 9, 10, 11, and 28, and March 7, 10, 17, 21, 23 and

24, 2011.  Trial on confirmation of the Debtors' Plan and Charlestown's proposed plan is ongoing.

II.

PROPOSED MODIFICATIONS TO THE FOURTH AMENDED PLAN

The Debtors have determined that it is appropriate to further modify the Debtors' Plan to,

among other things, (a) unimpair three classes of general unsecured claims that voted to reject the

Debtors' Plan, (b) provide that secured claims of Chinatrust Bank ("Chinatrust") and PNL Pomona,

L.P. ("PNL") will be guarantied by MMPI and modify interest rates consistent with testimony

concerning secured claims of Chinatrust, PNL and BofA, (c) incorporate agreements with respect

to the treatment of the secured claims and unsecured guaranty claims of California Bank & Trust

("CB&T") and Cathay Bank ("Cathay"), (d) provide for a possible agreement with respect to the

treatment of a general unsecured claim of the Los Angeles County Metropolitan Transportation

Authority (the "MTA") and incorporate an agreement with respect to postpetition real property

taxes owed to San Bernardino County, (e) reflect a ruling of the Court with respect to corporate

governance matters, (f) address an objection filed by the State Board of Equalization (the "SBE"),

(g) establish modified procedures for the assumption and rejection of executory contracts and

unexpired leases, (h) provide for the continuation of certain internal controls recently adopted by

the Debtors, and (i) make other modifications in an effort to ensure that defined terms and

treatment descriptions are used consistently throughout the document.  Concurrently, the Debtors

are filing their proposed *Third Modified Fourth Amended Joint Plan of Reorganization of Meruelo*

1  *Maddux Properties, Inc., et al. Dated September 20, 2010* (the "Third Modified Plan") in "clean"

2  and "redline" formats. **PARTIES WHO WISH TO REVIEW ALL OF THE PROPOSED**

3  **FURTHER MODIFICATIONS TO THE FOURTH AMENDED PLAN SHOULD REVIEW**

4  **THE REDLINE VERSION OF THE THIRD MODIFIED PLAN, WHICH IS BEING FILED**

5  **WITH THE COURT CONCURRENTLY HEREWITH**.

6      A summary of the proposed modifications to the Debtors' Plan is contained in the sections

7  below.  To assist the Court and parties, a substantial amount of detail is provided below even where

8  the modifications themselves are not substantial.

9

10  A.     UNIMPAIRMENT OF THREE CLASSES OF GENERAL UNSECURED CLAIMS

11      Fifty-one of fifty-four classes of general unsecured claims voted in favor of the Debtors'

12  Plan.[4]  The Debtors are seeking to unimpair the three non-consenting classes of general unsecured

13  creditors:  Class 35C-2 (MM 915-949 S. Hill Street); Class 49C-2 (MG Southpark); and Class 50C-

14  2 (Merco Group).  The Debtors are therefore requesting authority to modify the treatment of these

15  classes to provide as follows:

16          This Class is Unimpaired and the Holders are not entitled to
vote on the Plan.  The Holders shall receive payment in full, plus
17  interest at the rate of 0.64% per annum from the Petition Date, on the
Effective Date on account of their Allowed Claims.  In the event a
18  Disputed Claim becomes an Allowed Claim after the Effective Date,
the payment will be due and payable as of the date an Order allowing
19  such Claim becomes a Final Order.

20  ///

21  ///

22  ///

23  ///

24  ───────────────

25      [4] *See Declaration of John N. Tedford, IV, Updating (A) Chart Originally Submitted by
Richard B. Jennings Re: Debtors' Settlements with Secured Lenders, and (B) Voting Results
26  Originally Submitted by Robert Q. Klamser, Reflecting the Debtors' Recent Settlements with
Legendary Investors Group No. 1, LLC, and East West Bank* filed on or about January 31, 2011
27  (*docket entry no. 2711*).

28

- 7 -

366801.05 [XP]    25195

1  B.    MODIFICATIONS REFLECTING RECENT TESTIMONY CONCERNING INTEREST

2       RATES CONCERNING CHINATRUST'S, PNL'S AND BOFA'S LOANS

3           As discussed during the confirmation trial on the Debtors' Plan, the Debtors are seeking to

4  modify the treatment of BofA's, Chinatrust's and PNL's secured claims in order to correspond with

5  the interest rates identified in the *Third Supplemental Declaration of M. Freddie Reiss in Support*

6  *of Confirmation of Debtors' Fourth Amended Plan of Reorganization* filed on or about February

7  15, 2011 (*docket entry no. 2779*).  The Debtors are also seeking the ability to shorten the term of

8  each of these loans from seven to five years in the event that the Court determines that the interest

9  rate applicable to a seven-year plan term is different than the rate proposed by the Debtors.

10          The Debtors therefore are seeking to modify the treatment of Class 32A-2 (BofA's secured

11  claim against MMP 760 S. Hill Street) to provide, in relevant part, as follows:

12              The Class 32A-2 Claim is Impaired and the Holder is entitled
            to vote on the Plan.  The Holder shall receive one of the following
13          treatments:
                Treatment A:  The Holder shall receive the Common Secured
14          Lender Claim Treatment except that the interest rate shall be 5.83%
            per annum or as otherwise established by the Court.
15              Treatment B:  In the event that the Court determines that the
            interest rate under Treatment A is other than 5.83% per annum, at the
16          election of MMP 760 S. Hill Street, the Holder shall receive the
            Common Secured Lender Claim Treatment except that [1] the
17          Maturity Date shall be five years from the Effective Date, and [2] the
            interest rate shall be 5.13% per annum or as otherwise established by
18          the Court.  This election shall be made by MMP 760 S. Hill Street
            prior to entry of the Confirmation Order and shall be reflected in the
19          Confirmation Order.

20          The Debtors also are seeking to modify the treatment of Class 43A-2 (Chinatrust's secured

21  claim against MG 3185 E. Washington Boulevard) to provide, in relevant part, as follows:

22              The Class 43A-2 Claim is Impaired and the Holder is entitled
            to vote on the Plan.  The Holder shall receive one of the following
23          treatments:
                Treatment A:  The Holder shall receive the Common Secured
24          Lender Claim Treatment except that the interest rate shall be 5.94%
            per annum or as otherwise established by the Court.
25              Treatment B:  In the event that the Court determines that the
            interest rate under Treatment A is other than 5.94% per annum, at the
26          election of MG 3185 E. Washington Boulevard, the Holder shall
            receive the Common Secured Lender Claim Treatment except that
27          [1] the Maturity Date shall be five years from the Effective Date, and
            [2] the interest rate shall be 5.24% per annum or as otherwise
28          established by the Court.  This election shall be made by MG 3185 E.

- 8 -

366801.05 [XP]    25195

1    Washington Boulevard prior to entry of the Confirmation Order and
     shall be reflected in the Confirmation Order.

2                              * * * *

             In addition to the foregoing, regardless of which alternative is
3    elected, as of the Effective Date MG 3185 E. Washington
     Boulevard's payment obligations under the Plan shall be guaranteed

4    by MMPI.  The terms and conditions of the guaranty shall be the
     terms and conditions of the Common Unsecured Guaranty Claim

5    Treatment.

6            The Debtors also are seeking to modify the treatment of Class 47A-2 (PNL's secured claim

7    against MG 2001-2021 W. Mission Boulevard) to provide, in relevant part, as follows:

8            The Class 47A-2 Claim is Impaired and the Holder is entitled
     to vote on the Plan.  The Holder shall receive one of the following

9    treatments:
             _Treatment A_:  The Holder shall receive the Common Secured

10   Lender Claim Treatment except that the interest rate shall be 6.30%
     per annum or as otherwise established by the Court.

11           _Treatment B_:  In the event that the Court determines that the
     interest rate under Treatment A is other than 6.30% per annum, at the

12   election of MG 2001-2021 W. Mission Boulevard, the Holder shall
     receive the Common Secured Lender Claim Treatment except that

13   [1] the Maturity Date shall be five years from the Effective Date, and
     [2] the interest rate shall be 5.60% per annum or as otherwise

14   established by the Court.  This election shall be made by MG 2001-
     2021 W. Mission Boulevard prior to entry of the Confirmation Order

15   and shall be reflected in the Confirmation Order.
                               * * * *

16           In addition to the foregoing, regardless of which alternative is
     elected, as of the Effective Date MG 2001-2021 W. Mission

17   Boulevard's payment obligations under the Plan shall be guarantied
     by MMPI.  The terms and conditions of the guaranty shall be the

18   terms and conditions of the Common Unsecured Guaranty Claim
     Treatment.

19

20           Finally, the Debtors are seeking to modify the treatment of Class 49A-2 (BofA's secured

21   claim against MG Southpark) to provide, in relevant part, as follows:

22           The Class 49A-2 Claim is Impaired and the Holder is entitled
     to vote on the Plan.  The Holder shall receive one of the following

23   treatments:
             _Treatment A_:  The Holder shall receive the Common Secured

24   Lender Claim Treatment except that the interest rate shall be 5.24%
     per annum or as otherwise established by the Court.

25           _Treatment B_:  In the event that the Court determines that the
     interest rate under Treatment A is other than 5.24% per annum, at the

26   election of MG Southpark, the Holder shall receive the Common
     Secured Lender Claim Treatment except that [1] the Maturity Date

27   shall be five years from the Effective Date, and [2] the interest rate
     shall be 5.00% per annum or as otherwise established by the Court.

28   This election shall be made by MG Southpark prior to entry of the

                                    - 9 -

366801.05 [XP]    25195

1   Confirmation Order and shall be reflected in the Confirmation
Order.[5]

2

3   C.      MODIFICATIONS INCORPORATING THE DEBTORS' AGREEMENT WITH CB&T

4           WITH RESPECT TO THE TREATMENT OF CB&T'S CLAIMS

5           CB&T is the holder of a secured claim against 788 S. Alameda, which is Class 33A-2 under

6   the Debtors' Plan, and the holder of an unsecured guaranty claim against MMPI which is in Class

7   1C-2A under the Debtors' Plan.  CB&T filed an objection to confirmation of the Debtors' Plan and

8   the other two proposed plans (*docket entry no. 2495*).

9           The Debtors and CB&T have agreed upon the treatment of CB&T's claims under the

10  Debtors' Plan and resolved CB&T's objection to the Debtors' Plan.  The terms of the agreement

11  are set forth in a Loan Modification Agreement which will become Exhibit "N" to the Debtors'

12  Plan (the "LMA").  Without limiting or altering the terms and detail in the LMA, and without any

13  representation that the following identifies each and every term thereof,[6] the terms of the Loan

14  Modification Agreement are summarized as follows:

15          1.      On the Effective Date of the Debtors' Plan the loan will be reinstated at the "Loan

16  Balance," as defined in footnote 1 of the LMA.  CB&T will waive any and all principal, interest,

17  late charges or other amounts in excess of the Loan Balance payable prior to the Effective Date of

18  the Debtors' Plan.  The Loan Balance reflects a waiver by CB&T of more than $835,000 in accrued

19  default interest charges.

20          2.      The maturity date, currently April 1, 2013, will be extended to June 30, 2015.

21          3.      788 S. Alameda will make monthly interest-only payments in arrears.  Under the

22  existing loan documents, the payments consist of interest plus principal amortized over a 35-year

23  period.  The LMA eliminates the need for the Debtors to make principal payments each month.

24  _____

25      [5] The five-year rate supported by Mr. Reiss' testimony is less than 5.0% per annum.

26      **[6] PARTIES WHO WISH TO REVIEW ALL TERMS OF THE PROPOSED LMA
    WITH CB&T ARE DIRECTED TO REVIEW EXHIBIT "N" TO THE THIRD MODIFIED**

27  **PLAN.**

28

366801.05 [XP]      25195

4.      The non-default interest rate will be a fixed rate of 5.5% per annum.  The non-default interest rate currently is the California Bank & Trust Prime Rate plus 0.5% per annum, but in no event less than 5.5%.  As a result, the LMA provides for a fixed non-default interest rate equal to the current minimum contract rate.

5.      The default interest rate will be a fixed rate of 9.5% per annum.  The default interest rate currently is the non-default rate plus 5.0% per annum.  As a result, the LMA provides for a reduction in the default interest rate.

6.      If an interest payment is not timely made, there will be a late fee charged equal to 4.0% of the interest installment, or portion thereof, not timely paid.  The loan documents currently provide for a late fee of 5.0% of the unpaid amount.  As a result, the LMA provides for a reduction in the late fee.

7.      Paragraph 9 of the existing promissory note provides, in relevant part, as follows:

> Borrower acknowledges that (i) the financial stability and managerial and operational ability of Borrower were and are a substantial and material consideration to Bank, and in reliance thereon, Bank agreed to make the Loan to Borrower evidenced by this Note and the Loan Agreement, and (ii) the transfer of possession of the Property or any portion thereof or interest therein, or a change in the person or entity operating and managing either the Property or Borrower, may significantly and materially alter or reduce Bank's security for this Note.  Accordingly, as a material inducement to Bank to enter into the transaction contemplated by the Loan Agreement, Borrower agrees that it shall not transfer the Property or any portion thereof or interest therein without the prior written consent of Bank, except as provided under the Loan Agreement. . . . In the event of any such transfer, Bank shall have the right to declare the entire principal balance, plus interest and other charges due hereunder or under the Loan Agreement, immediately due and payable in full.

Under the LMA, CB&T's prior written consent will not be required, and CB&T will not be permitted to declare a default or accelerate the debt, where there is a transfer of CB&T's collateral or a transfer of equity interests in a "Borrower Party" (*i.e.*, 788 S. Alameda or MMPI) so long as following any such transfer Richard Meruelo and/or John Maddux (a) maintain a significant direct or indirect ownership interest in the collateral or Borrower Party, and (b) remain in a senior management position within 788 S. Alameda or other Borrower Party.

///

- 11 -

366801.05 [XP]      25195

8.    Provisions that require the Borrower Parties to satisfy financial covenants and criteria, including debt service coverage ratio requirements, loan to value ratio requirements, and remarging payment requirements, will be deleted.  The loan documents currently provide for a maximum loan to value ratio of 53% and requires a remarging payment if an appraisal of the real property collateral reflects a loan to value ratio in excess of 53%, with the amount of such payment to be sufficient to reduce the loan to value ratio to no more than 53%.  The loan documents also currently provide for a partial prepayment of principal in the event that the debt coverage ratio for the real property collateral is less than 1.25:1.  The LMA eliminates these and similar provisions.

9.    Provisions that require a Borrower Party to maintain or make payments into or on account of any reserve, impound or holdback, including tax reserves, insurance reserves, interest reserves, and the like, will be deleted.  Any existing reserve funds will be used and disbursed for the purposes for which the existing reserve was established under the loan documents.

10.    Notwithstanding provisions that require the payment of real property taxes, 788 S. Alameda will be permitted to pay prepetition real property taxes over a period of time pursuant to the Debtors' Plan.

11.    MMPI, as guarantor, will consent to the terms and conditions of the LMA and agree that the existing guaranty will continue to guaranty obligations of 788 S. Alameda under the loan documents as modified by the LMA.

To incorporate the terms of the LMA, the Debtors are seeking to modify the treatment of Class 33A-2 to provide as follows:

> The Class 33A-2 Claim is Impaired and the Holder is entitled to vote on the Plan. The terms and conditions of the agreements or instruments between 788 S. Alameda and the Holder shall be restructured and amended as of the Effective Date pursuant to the Loan Modification Agreement between 788 S. Alameda and CBT attached as Exhibit "N" to this Plan. 788 S. Alameda and the Holder shall, within a reasonable time after the Effective Date, complete the Loan Modification Agreement and execute and deliver the same to be effective as of the Effective Date.  Treatment of the Holder's Claim shall in all respects be consistent with and in accordance with the terms of the "Revised Loan Documents" (as defined in the Loan Modification Agreement).  Any lien in favor of the Holder encumbering any other real property of the Debtors as adequate protection pursuant to any order of the Court shall be released and of no further force or effect as of the Effective Date.

- 12 -

1   In addition, the Debtors are seeking to modify the treatment of Class 1C-2A to provide, in relevant

2   part, as follows:

3              *CBT*.   The treatment of CBT's Unsecured Guaranty Claim
              shall be consistent with and in accordance with the terms of the Loan
4              Modification Agreement and Confirmation of Guaranty attached as
              Exhibit "N" to this Plan.  788 S. Alameda and CBT shall, within a
5              reasonable time after the Effective Date, complete the Loan
              Modification Agreement and execute and deliver the Loan
6              Modification Agreement and the Confirmation of Guaranty to be
              effective as of the Effective Date.  The treatment of CBT's Claim
7              shall in all respects be consistent with and in accordance with the
              terms of the "Revised Loan Documents" (as defined in the Loan
8              Modification Agreement).  CBT has consented to such treatment on
              account of its Allowed Unsecured Guaranty Claim in lieu of the
9              Common Unsecured Guaranty Claim Treatment.

10

11   D.        MODIFICATIONS INCORPORATING THE DEBTORS' AGREEMENT WITH

12             CATHAY WITH RESPECT TO THE TREATMENT OF CATHAY'S CLAIMS

13         The Fourth Amended Plan provided that the treatment of Cathay's two secured claims

14   against Alameda Produce Market and its unsecured guaranty claim against MMPI would be

15   consistent in all respects with settlements approved by the Court in its *Order on Debtors' Motion*

16   *for Approval of Settlements with Cathay Bank and Authorizing Debtors to Perform Thereunder*

17   entered on or about June 17, 2010 (the "Cathay Settlement Order") (*docket entry no. 1527*).  On

18   February 9, 2011, the Court held a hearing on the OEC's motion for reconsideration of the Cathay

19   Settlement Order.  The Court granted the motion.  Entry of a written order granting the OEC's

20   motion is pending.  As a result of the Court's ruling, the Debtors and Charlestown must modify

21   their respective plans to account for, among other things, the increase in the amount of Cathay's

22   secured claims by more than $10.2 million,[7] the elimination of other benefits provided under the

23   Debtors' settlements with Cathay, and the fact that Cathay's unsecured guaranty claim must be

24   classified within Class 1C-2A instead of Class 1C-2B.

25   _____

26        [7] This amount is a preliminary estimate calculated by the Debtors, reflecting a retroactive
     increase in the interest that has accrued under the loans since December 31, 2008, and addition of
27   $150,000 in fees and costs that was waived by Cathay in the settlement.

28

- 13 -

366801.05 [XP]    25195

1    The Debtors and Cathay have agreed that the treatment of Cathay's claims under the

2    Debtors' Plan will be identical to the relevant terms of the two settlement agreements, which will

3    become Exhibits "L" and "M" to the Plan.[8]  The Debtors are requesting authority to modify the

4    treatment of Class 36A-2 (Cathay's senior loan) to provide as follows:

5    The Class 36A-2 Claim is Impaired and the Holder is entitled
     to vote on the Plan.  Alameda Produce Market and Cathay have
6    agreed to the following treatment:  Automatically effective as of the
     Effective Date, without need for Alameda Produce Market and the
7    Holder to enter into any further agreement, the following shall be
     ratified by Alameda Produce Market and MMPI in full and the
8    treatment of the Holder's Claim shall be consistent with and in
     accordance with the terms of the following documents collectively
9    attached as Exhibit "L" to this Plan:  (a) the Settlement Agreement
     dated April 29, 2010, between Alameda Produce Market, MMPI and
10   Cathay concerning a loan evidenced by, among other things, the
     Promissory Note dated November 10, 2005, executed by Alameda
11   Produce Market in favor of Cathay in the original principal amount
     of $53,000,000 (the "Senior Cathay Loan"), (b) the Third
12   Modification and Extension Agreement dated April 29, 2010,
     between Alameda Produce Market, MMPI and Cathay concerning
13   the Senior Cathay Loan, and (c) the Memorandum of Third
     Modification and Extension Agreement dated April 29, 2010,
14   between Alameda Produce Market, MMPI and Cathay concerning
     the Senior Cathay Loan.  The payment obligations with respect to
15   this Claim shall be secured by Alameda Produce Market Encumbered
     Real Property.  The Holder has consented to the foregoing treatment
16   on account of its Claim.

17   The Debtors also are requesting authority to modify the treatment of Class 36A-3 (Cathay's junior

18   loan) to provide as follows:

19   The Class 36A-3 Claim is Impaired and the Holder is entitled
     to vote on the Plan.  Alameda Produce Market and Cathay have
20   agreed to the following treatment:  Automatically effective as of the
     Effective Date, without need for Alameda Produce Market and the
21   Holder to enter into any further agreement, the following shall be
     ratified by Alameda Produce Market and MMPI in full and the
22   treatment of the Holder's Claim shall be consistent with and in
     accordance with the terms of the following documents collectively
23   attached as Exhibit "M" to this Plan:  (a) the Settlement Agreement
     dated April 29, 2010, between Alameda Produce Market, MMPI and
24   Cathay concerning a loan evidenced by, among other things, the
     Promissory Note dated October 17, 2006, executed by Alameda

25

26   **[8] PARTIES WHO WISH TO REVIEW ALL TERMS OF THE SETTLEMENT
     AGREEMENTS WITH CATHAY ARE DIRECTED TO REVIEW EXHIBITS "L" AND
27   "M" TO THE THIRD MODIFIED PLAN.**

28

- 14 -

Produce Market in favor of Cathay in the original principal amount
of $10,000,000 (the "Junior Cathay Loan"), (b) the Sixth
Modification and Extension Agreement dated April 29, 2010,
between Alameda Produce Market, MMPI and Cathay concerning
the Junior Cathay Loan, and (c) the Memorandum of Sixth
Modification and Extension Agreement dated April 29, 2010,
between Alameda Produce Market, MMPI and Cathay concerning
the Junior Cathay Loan.  The payment obligations with respect to this
Claim shall be secured by Alameda Produce Market Encumbered
Real Property.  The Holder has consented to the foregoing treatment
on account of its Claim.

In addition, the Debtors are seeking to modify the treatment of Class 1C-2A (Cathay's unsecured

guaranty claim against MMPI) to provide, in relevant part, as follows:

*Cathay*.  Automatically effective as of the Effective Date,
without need for the Reorganized MMPI and Cathay to enter into any
further agreement, the following shall be ratified by Alameda
Produce Market and MMPI in full and the treatment of Cathay's
Unsecured Guaranty Claims shall be consistent with and in
accordance with the terms of the following agreements, the first three
of which are attached as Exhibit "L" to this Plan and the second three
of which are attached as Exhibit "M" to this Plan:  (a) the Settlement
Agreement dated April 29, 2010, between Alameda Produce Market,
MMPI and Cathay concerning a loan evidenced by, among other
things, the Promissory Note dated November 10, 2005, executed by
Alameda Produce Market in favor of Cathay in the original principal
amount of $53,000,000 (the "Senior Cathay Loan"), (b) the Third
Modification and Extension Agreement dated April 29, 2010,
between Alameda Produce Market, MMPI and Cathay concerning
the Senior Cathay Loan, (c) the Memorandum of Third Modification
and Extension Agreement dated April 29, 2010, between Alameda
Produce Market, MMPI and Cathay concerning the Senior Cathay
Loan, (d) the Settlement Agreement dated April 29, 2010, between
Alameda Produce Market, MMPI and Cathay concerning a loan
evidenced by, among other things, the Promissory Note dated
October 17, 2006, executed by Alameda Produce Market in favor of
Cathay in the original principal amount of $10,000,000 (the "Junior
Cathay Loan"), (e) the Sixth Modification and Extension Agreement
dated April 29, 2010, between Alameda Produce Market, MMPI and
Cathay concerning the Junior Cathay Loan, and (f) the Memorandum
of Sixth Modification and Extension Agreement dated April 29,
2010, between Alameda Produce Market, MMPI and Cathay
concerning the Junior Cathay Loan.  Cathay has consented to such
treatment on account of its Allowed Unsecured Guaranty Claims in
lieu of the Common Unsecured Guaranty Claim Treatment.

///

///

///

///

- 15 -

E.    MODIFICATIONS PROVIDING FOR A POSSIBLE AGREEMENT WITH THE MTA
      WITH RESPECT TO THE TREATMENT OF THE MTA'S CLAIM

In April 2004 the MTA filed a Superior Court complaint against, among others, the predecessor-in-interest to Alameda Produce Market seeking to acquire through condemnation five parcels located at the northwest corner of the intersection of 7th and Alameda Streets in Los Angeles, California (the "1339 E. 7th Street Real Property"). The MTA deposited $8.5 million with the Superior Court as probable compensation. Approximately $6.3 million was subsequently withdrawn by third parties. The Superior Court subsequently dismissed the MTA Litigation and the Superior Court decision was appealed to the California Court of Appeal. In October 2010, after the parties agreed to relief from stay in this Court, the Court of Appeal ruled in favor of the MTA. Alameda Produce Market petitioned the California Supreme Court for review of the Court of Appeal's decision, and the petition was granted. The California Supreme Court case remains pending.

The MTA has asserted a contingent claim against Alameda Produce Market's estate in the amount of approximately $6.3 million. The Debtors strenuously dispute the MTA's alleged claim on multiple grounds and assert that the MTA has no valid claims against Alameda Produce Market whatsoever. The Debtors assert that Alameda Produce Market has substantial claims against the MTA for, among other things, the value of Alameda Produce Market's lost use of the 1339 E. 7th Street Real Property during the time that the 1339 E. 7th Street Real Property has been possessed by MTA. If needed, the validity of the MTA's alleged claim against Alameda Produce Market, as well as claims that Alameda Produce Market has against the MTA relating to, among other things, the MTA's use of the 1339 E. 7th Street Real Property, will be litigated before the Superior Court or other state court(s).

The MTA has filed a conditional objection to the Debtors' Plan. The Debtors and the MTA are discussing a potential resolution of the MTA's objection which will provide for an alternative treatment for the MTA's disputed general unsecured claim against Alameda Produce Market. The Debtors anticipate that terms of the agreement with the MTA will be memorialized in a writing to be filed with the Court prior to the hearing on this motion, which will in turn be attached as Exhibit

366801.05 [XP]      25195

1   "O" to the Debtors' Plan.  Very generally, the Debtors anticipate that the modified treatment will

2   provide that in the event there is a final money judgment in favor of the MTA against Alameda

3   Produce Market, Alameda Produce Market will either pay such claim within thirty days after the

4   judgment becomes a final judgment, and/or will execute a deed of trust on the 1339 E. 7th Street

5   Real Property which may be enforced by the MTA if payment is not made within a certain period

6   of time.  Provided that Alameda Produce Market and the MTA finalize such an agreement, this

7   treatment will be less favorable to the MTA's claim than other general unsecured claims against

8   Alameda Produce Market's estate.

9

10  F.      MODIFICATION PREVIOUSLY REQUESTED BY SAN BERNARDINO COUNTY

11          San Bernardino County has requested that, with respect to the payment of postpetition real

12  property taxes, the Debtors' Plan be modified to track § 503(b)(1)(D).  The Debtors seek to modify

13  the Debtors' Plan to provide, in relevant part, as follows:

14          In accordance with Section 503(b)(1)(D) of the Bankruptcy
            Code, notwithstanding the requirements of Section § 503(a) of the
15          Bankruptcy Code, a governmental unit shall not be required to File a
            request for the payment of an expense described in Sections
16          503(b)(1)(B) or (C) of the Bankruptcy Code as a condition of its
            being an Allowed administrative expense.   With respect to
17          Postpetition Tax Claims for which requests for payment must be
            filed, all requests for payment of Postpetition Tax Claims for which
18          no bar date has otherwise been previously established must be Filed
            on or before the later of . . ..

19

20  G.      MODIFICATIONS REGARDING CORPORATE GOVERNANCE

21          Section IV.J. of the Fourth Amended Plan provided, among other things, that the initial

22  board of directors of Reorganized MMPI would consist of seven directors.  Four of the directors

23  would be appointed by the "Founding Shareholder Directors."[9]  If a majority of the members of the

24  OEC (both in number and amount of shares held by the members) voted to accept the Debtors'

25  Plan and, if applicable, expressed a preference in favor of the Debtors' Plan, the OEC would be

26  _____

27      [9] "Founding Shareholder Directors" was defined to mean Richard Meruelo, John Maddux,
    or the shareholder entities controlled by them.

28

- 17 -

1  granted the right to appoint the other three directors.  If a majority of the members of the OEC did

2  not so vote, all seven directors would be appointed by the Founding Shareholder Directors.

3          On or about October 20, 2010, two days before solicitation packages were served by KCC,

4  the OEC filed a motion for reconsideration of the order approving the Disclosure Statement based

5  on the OEC's objection to the above-described language in Section IV.J. of the Fourth Amended

6  Plan.  The Court ultimately declined to strike any language from the Fourth Amended Plan but did

7  determine that two sentences of section IV.J. are unenforceable (*docket entry nos. 2212 and 2217*).

8          The Debtors are seeking to modify section IV.J. to provide that the Founding Shareholder

9  Directors will appoint all seven directors.  This does not change the implementation of the Debtors'

10  Plan because a majority of the OEC's members did not vote to accept the Debtors' Plan.

11

12  H.      MODIFICATION ADDRESSING THE SBE'S OBJECTION TO CONFIRMATION OF

13          THE DEBTORS' PLAN

14          Section III.B.1.b. of the current Debtors' Plan identifies prepetition priority tax claims and

15  the treatment thereof.  On or about November 18, 2010, the SBE filed an objection to the Debtors'

16  Plan contending that it is entitled to payment of interest on account of its claim at a rate higher than

17  the rate identified in the Fourth Amended Plan.[10]  Rather than incur the cost of litigating the SBE's

18  objection, the Debtors seek to modify that section of the Debtors' Plan to provide, in relevant part,

19  as follows:

20                  With respect to the claim of the State Board of Equalization
                asserted against the estate of MMP 1060 N. Vignes, the Reorganized
21              Debtor shall pay the Allowed amount of such Priority Tax Claim in
                full, with interest on the principal amount of such Claim at the rate of
22              8.0% per annum for the period from the Petition Date to December
                31, 2009, 7.0% per annum for the period from January 1, 2010, to
23              June 30, 2011, 6.0% per annum for the period from July 1, 2011, to
                December 31, 2011, and such other rate thereafter as required by
24              California Revenue and Taxation Code Section 6482 as published by
                the Board of Equalization at www.boe.ca.gov/sutax/interates.htm.
25              As to all other Priority Tax Claims . . ..

26  _____

27      [10] The SBE also objected to another provision of the Debtors' Plan but the Debtors believe
    that the SBE has misinterpreted the other provision to which the SBE's objection relates.

28

- 18 -

1   The Debtors believe that this modification resolves the SBE's objection to confirmation of the

2   Debtors' Plan.

3

4   I.      MODIFICATION CONCERNING THE REORGANIZED DEBTORS' INTERNAL

5           CONTROLS

6           On March 21, 2011, the Debtors advised the Court that their plan would be modified to

7   provide that certain internal controls recently adopted by the Debtors would be incorporated into

8   the Debtors' Plan.  The following language has been added to Section VI.C. of the Debtors' Plan:

9                   On or about January 26, 2011, the board of directors of
                    MMPI approved internal controls and procedures set forth in a
10                  memorandum from the Debtors' Chief Financial Officer, Andrew
                    Murray, to the board of directors entitled "Internal Controls and
11                  Procedures" (the "Internal Control Procedures").  The Reorganized
                    Debtors will continue to operate in accordance with the Internal
12                  Control Procedures unless and until such time that the Internal
                    Control Procedures are modified by vote of at least four members of
13                  the board of directors of Reorganized MMPI.

14

15  J.      MODIFICATION TO PROCEDURES RELATING TO PREPETITION EXECUTORY

16          CONTRACTS AND UNEXPIRED LEASES

17          Both the Debtors' Plan and Charlestown's plan contain procedures regarding the

18  assumption and rejection of executory contracts and unexpired leases whereby the plan proponent

19  would, among other things, file prior to the hearing on the disclosure statement a schedule of those

20  executory contracts and unexpired leases to be assumed, and file prior to the confirmation hearing a

21  schedule of such contracts and leases to be rejected.[11]  Neither plan proponent filed such schedules,

22  and therefore both plans need to be modified to provide for alternative procedures for identification

23  of executory contracts and unexpired leases to be assumed and rejected, and for non-Debtor parties

24  ///

25

26          [11] *See* Debtors Plan, Article V, and Charlestown's plan, Article V.  Charlestown's Plan
        inadvertently provides that the Debtors will file the list of leases and contracts to be rejected under
27      Charlestown's plan.

28

366801.05 [XP]      25195

1    to file rejection damage claims or cure claims.  The Debtors' proposed modifications are reflected

2    in Article V of the Third Modified Plan.

3

4    K.    MISCELLANEOUS PROPOSED MODIFICATIONS

5           In addition to the foregoing, the Debtors are proposing various miscellaneous modifications

6    to the Plan.  Without limitation, the miscellaneous modifications are summarized as follows:[12]

7    •    The Debtors have modified the treatment sections of the Debtors' Plan to simply
          state that the treatment of claims subject to Court-approved settlements will be in
8         accordance with the Court-approved settlements.[13]  These modifications affect the
          descriptions of the Common Secured Tax Claim Treatment and the treatment of
9         Classes 34A-2 (Stanford), 35A-2 (Imperial), 37A-3 (Murakami), 38A-2 (Imperial),
          42A-1 (FNBN), 51A-2 (Imperial), 51A-3 (PCB), and 54A-2 (Berkadia).  There is no
10        modification to the treatment of these classes.

11   •    Except with respect to the few secured claimants who have not settled or agreed to
          treatment under the Debtors' Plan, the Debtors have deleted charts that contained
12        figures that now are obsolete and estimates that were not binding on the Debtors or
          the creditors.  There is no modification to the treatment of these classes.

13

14   •    On or about October 28, 2010, the Court approved a settlement between the Debtors
          and Vahan and Anoush Chamlian (collectively "Chamlian") under which Chamlian
15        agreed to accept a certain amount in satisfaction of their secured claim against one
          of the Debtors.  The Court also approved a sale of the collateral securing Chamlian's
16        claim.  The sale closed, and Chamlian was paid.  On or about November 18, 2010,
          Chamlian withdrew its proof of claim (*1:09-bk-13371-VK, docket entry no. 18*).  As
17        a result, Class 39A-2 (Chamlian's secured claim) has been deleted.  There is no
          modification to the treatment of any holder of an outstanding claim against one or
18        more of the Debtors.

     •    Kennedy Funding, Inc.'s claims have been conveyed or otherwise assigned to BNP
19        Paribas VPG Brookline, CRE, LLC ("BNP").  The Debtors' Plan has been modified
          to reflect such conveyance or assignment.  There is no modification to the treatment
20        of the classes affected by this modification.

21   •    Legendary's claims against the Debtors' estates have been released and withdrawn.
          As a result, Classes 2C-2, 28A-2, 29A-2, 30A-2, 37A-2, 44A-2, 45A-2, 46A-2,
22        48A-2, 50A-2 and 50A-3 have been deleted.  There is no modification to the
          treatment of any holder of an outstanding claim against one or more of the Debtors.

23   _____

24   **[12] THE LIST OF MISCELLANEOUS MODIFICATIONS IS NOT INTENDED TO
     IDENTIFY EVERY MODIFICATION TO THE DEBTORS' PLAN.  PARTIES WHO
25   WISH TO REVIEW EVERY MODIFICATION ARE DIRECTED TO THE REDLINED
     VERSION OF THE THIRD MODIFIED PLAN.**

26

27   [13] Charlestown similarly has sought to simplify the treatment of classes containing secured
     lenders' claims.

28

366801.05 [XP]    25195

- The estimated amount of claims in each class has been adjusted to reflect rulings of the Court and other recent events.  These modifications are to estimated amounts of allowed claims in each class and are not binding on any party, and simply reflect the results of the Court's rulings.

- In connection with the Debtors' sale of real property owned by MMP 306-330 N. Avenue 21 and MMP 2131 Humboldt Street, and in connection with the Debtors' settlement with Legendary, the Debtors satisfied outstanding real property taxes against certain parcels.  The relevant sections describing the treatment of Los Angeles County's claims indicate that the Debtors believe such claims have been satisfied.  There is no modification to the treatment of any holder of an outstanding claim against one or more of the Debtors.

- The current Debtors' Plan provides that the Disbursing Agent will be the Chief Accounting Officer, currently Fred Skaggs.  The Debtors have modified the plan to provide that the Chief Financial Officer, currently Andrew Murray, or the Chief Accounting Officer will be the Disbursing Agent.  There is no modification to the treatment of any holder of an outstanding claim against one or more of the Debtors.

- The definition of "Voting Agent" has been revised to reflect that KCC is the Court-appointed voting agent in this case.  There is no modification to the treatment of any holder of an outstanding claim against one or more of the Debtors.

- The Fourth Amended Plan contained typographical errors with regard to the type of treatment to be afforded to certain classes, and these errors have been fixed to reflect the intended treatment.  The Fourth Amended Plan inadvertently stated that Class 9C-1 (convenience claims against Wall Street Market) will receive the Common Unsecured Claim Treatment, even though the class was identified as unimpaired.  The Fourth Amended Plan inadvertently stated that Class 15C-2 (general unsecured claims against MMP 1060 N. Vignes) will receive the Common Convenience Class Claim Treatment, even though the class was identified as impaired and entitled to vote.  There is no substantive modification to the treatment of any holder of an outstanding claim against one or more of the Debtors.

- The Debtors have modified the Fourth Amended Plan to clarify that with respect to unimpaired classes of general unsecured claims, the amount to be paid to claimants includes interest at the Federal Judgment Rate from the Petition Date to the date on which payment is made.  To the extent that this modification results in a change to the treatment of the affected claims, the modification is beneficial to the claimants.

- Class 36E was inadvertently omitted from the treatment section of the Debtors' Plan.  The class is unimpaired, consists of MMP Ventures' membership interest in Alameda Produce Market, and already was identified in the summary of claims and interests against each Debtor.  Accordingly, the Debtors have added Class 36E to the treatment section of the Debtors' Plan.  There is no modification to the treatment of any holder of an outstanding claim against one or more of the Debtors.

- Class 44C-3 was inadvertently omitted from the treatment section of the Debtors' Plan.  The class is unimpaired, consists of tenant security deposit claims formerly against MG 4th Street Center, and already was identified in the summary of claims and interests against each Debtor.  Accordingly, the Debtors have added Class 44C-3 to the treatment section of the Debtors' Plan.  There is no modification to the treatment of any holder of an outstanding claim against one or more of the Debtors.

366801.05 [XP]      25195

1    • Class 52B was inadvertently omitted from the treatment section of the Debtors'
2    Plan. The class is unimpaired, consists of unsecured priority claims against Meruelo
     Wall Street, and already was identified in the summary of claims and interests
     against each Debtor. Accordingly, the Debtors have added Class 52B to the
3    treatment section of the Debtors' Plan. <u>There is no modification to the treatment of
     any holder of an outstanding claim against one or more of the Debtors.</u>

4

5

6                                          III.

7                                       <u>ARGUMENT</u>

8    A.    <u>THE DEBTORS ARE AUTHORIZED TO MODIFY THEIR PLAN IN ACCORDANCE</u>

9          <u>WITH THE PROPOSED THIRD MODIFIED PLAN</u>

10         Section 1127(a) of the Code provides as follows:

11                 The proponent of a plan may modify such plan at any time
                   before confirmation, but may not modify such plan so that such plan
12                 as modified fails to meet the requirements of sections 1122 and 1123
                   of this title. After the proponent of a plan files a modification of such
13                 plan with the court, the plan as modified becomes the plan.

14   11 U.S.C. § 1127(a). Concurrently, the Debtors are filing their Third Modified Plan with the Court.

15   To assist the Court and parties in reviewing the proposed modifications, the Debtors have provided

16   in Section II(A) through II(K) above a detailed description of the proposed modifications. Further,

17   the Debtors are filing a redlined version of the Third Modified Plan with the clean version thereof.

18   The proposed modifications comply with all of the requirements of §§ 1122 and 1123 of the Code.

19         <u>Sections 1122, 1123(a)(1), (a)(2) & (b)(1):</u> Section 1122(a) requires that claims be placed

20   in a particular class only if the claim is substantially similar to the other claims of such class. In the

21   current Debtors' Plan, Cathay's unsecured guaranty claim is part of Class 1C-2B, which consists of

22   guaranty claims of creditors whose claims are the subject of Court-approved settlements. Since the

23   Court granted the motion for reconsideration of the order approving the Debtors' settlements with

24   Cathay, Cathay's claims against MMPI now are a part of Class 1C-2A. To comply with the ruling

25   ///

26   ///

27   ///

28   ///

                                        - 22 -

of the Court, Cathay's guaranty claims are now classified accordingly.[14]  Other than to shift claims

of Cathay in accordance with the Court's ruling, and to unimpair three classes of general unsecured

creditors, the proposed modifications will not have any effect on the designation of classes under

the Debtors' Plan or designation of which classes are impaired or unimpaired and therefore satisfies

§§ 1122 and 1123(a)(1), (2).

Sections 1123(a)(3) and (a)(4):  The proposed modifications do not affect the treatment of

impaired classes of claims or interests except for classes consisting of Cathay's, CB&T's, BofA's,

PNL's and Chinatrust's secured claims, and three classes of general unsecured claims which will

be unimpaired.  The Third Amended Plan complies with the Code by describing the treatment of

each of those classes.  Each secured class contains a single claim, and the proposed modifications

do not affect the classification or treatment of any other creditor or any interest holder.  With

respect to the three general unsecured classes to be unimpaired, the modifications do not affect the

classification or treatment of any other creditors or interest holders, and all claims within those

classes will be treated identically.  All other modifications to the treatment of classes of claims

make the Debtors' Plan less cumbersome or more uniform, but there is no change to the actual

treatment afforded to each class.  With respect to unsecured guaranty claims of CB&T and Cathay

against MMPI, those claimants have agreed to accept less favorable treatment of those claims by

agreeing to accept less than the full amount of their claims.  As such, the proposed modifications

satisfy §§ 1123(a)(3) and (a)(4).[15]

Section 1123(a)(5):  Section 1123(a)(5) requires a plan to provide adequate means for the

plan's implementation.  With respect to modification of the treatment of CB&T's claim, the Third

Modified Plan provides that the parties will complete and execute the LMA containing the agreed-

---

[14] Charlestown must also modify its plan to account for the Court's ruling, but has not yet done so.  Once Charlestown modifies its plan to provide for a new treatment of Cathay's claims, Cathay will be entitled to vote on Charlestown's modified plan, engage in discovery, file briefs in opposition to Charlestown's plan, and participate in the trial.  The fact that Charlestown has made no effort to modify its plan means that this process may be severely delayed.

[15] Provided an agreement is finalized, the treatment of the MTA's claim against Alameda Produce Market also will be less favorable than the Common General Unsecured Claim Treatment.

upon treatment of CB&T's claim, which will be attached as Exhibit "N" to the Debtors' Plan. The Third Modified Plan also specifically provides that the Debtors' prior settlements with Cathay will be ratified by the relevant Debtors without need for the parties to enter into any further agreement. The means for implementing these and any other modified treatments are adequately set forth and consistent with, among other things, § 1123(a)(5)(E), (F), (G) and (H).

The unimpairment of the three classes of general unsecured claims simply moves forward by thirty days the date on which allowed claims in such classes must be paid. The treatment of Cathay's claims is the same as the treatment under the current Debtors' Plan. The treatment of CB&T's secured claim effectively provides for an increase in the interest rate by 0.5% per annum and a reduction of the maturity date by one year,[16] but the increase in the interest rate is offset by the reduction in CB&T's claim by more than $835,000. The increase in interest to be paid to the SBE on account of its $61,950 alleged claim is negligible. None of the other modifications affect the amounts of claims or payments to be made. Accordingly, the proposed modifications will not jeopardize either the feasibility of the Debtors' Plan or the means for implementing the Debtors' Plan and therefore the proposed modifications satisfy § 1123(a)(5).[17]

Section 1123(a)(6). The proposed modifications will not have any effect on the existing provisions of the Debtors' Plan which provide for amendments to the Debtors' charters.

Section 1123(a)(7). The proposed modification to the corporate governance provisions in the Debtors' Plan is consistent with the prior ruling of the Court regarding the unenforceability of language which could have led to the appointment of three directors by the OEC. Even if the Court had not so ruled, since a majority of the OEC members did not vote to accept the Debtors' Plan the

---

[16] CB&T is seeking authority to change its vote to one in favor of the Debtors' Plan. The maturity date applicable to secured creditors who voted to accept the Debtors' Plan is five years.

[17] Addressing § 1123(a)(5) in its motion for authority to modify its plan, Charlestown simply stated, "As to Section 1123(a)(5), the proposed modifications will have little or no effect on the means for implementing the Charlestown Plan and its feasibility." In its motion, Charlestown sought authority to modify its plan to provide treatments of BofA's, CB&T's and PNL's claims that would have a much greater adverse impact on implementation and feasibility of Charlestown's plan than the proposed modified treatment of claims under the Debtors' Plan. Charlestown's motion was supported by numerous parties in this case, including both official committees.

- 24 -

1   OEC would not have been granted the right to choose three board members even if that provision

2   was enforceable.  Accordingly, the proposed modification relating to the selection of directors

3   flows from the Court's prior ruling and does not change any rights under the Debtors' Plan.  The

4   Third Modified Plan contains only provisions consistent with the interests of creditors and equity

5   security holders and with public policy with respect to the manner of selection of officers and

6   directors and as such satisfies § 1123(a)(7).

7        Section 1123(a)(8).  Section 1123(a)(8) is not applicable because that section relates solely

8   to cases in which the debtor is an individual.

9        Section 1123(b)(2):  The Debtors' Plan already provides for the assumption and rejection of

10  executory contracts and unexpired leases, as permitted by § 1123(b)(2).  The Debtors' proposed

11  modifications simply revise the language in the Debtors' Plan to set forth a new procedure for the

12  Debtors to identify executory contracts and unexpired leases to be assumed and rejected, and for

13  the non-Debtor parties to those contracts and leases to assert cure claims or rejection damage

14  claims.  The payment of such claims will be made in accordance with the revised procedures and,

15  in the case of allowed rejection damage claims, the treatment afforded to the relevant class(es) of

16  claims under the Debtors' Plan.

17       Section 1123(b)(3):  The only proposed modification relating to the retention of claims and

18  causes of action belonging to the Debtors relate to claims released under the Debtors' settlement to

19  be ratified with Cathay.  The Third Amended Plan, by providing for the ratification of settlements

20  with Cathay previously approved by the Court, adequately provides for the settlement of any such

21  claims and therefore satisfies § 1123(b)(3).

22       Section 1123(b)(4):  The proposed modifications to the Debtors' Plan do not provide for the

23  sale of estate property, and therefore the proposed revisions do not implicate § 1123(b)(4).

24  ///

25  ///

26  ///

27  ///

28  ///

1    Section 1123(b)(5):  The proposed modifications to the Debtors' Plan alter the rights of

2  CB&T, Cathay and potentially the MTA with respect to their rights to payment under the Debtors'

3  Plan.  All of these creditors have consented to the proposed modified treatment.[18]  The proposed

4  modifications to the Debtors' Plan also alters the rights of Chinatrust, PNL and BofA in that the

5  interest rates have been revised and, in the case of Chinatrust and PNL, corporate guaranties by

6  MMPI will be afforded.  None of these has an interest in a principal residence of the Debtors, and

7  therefore the proposed revisions are consistent with § 1123(b)(5).

8    For the foregoing reasons, the proposed modifications comply with §§ 1122 and 1123 and

9  do nothing to change the Debtors' Plan's compliance with those provisions.  As such, the proposed

10  modifications satisfy the requirements outlined in § 1127(a) and should be approved.

11

12  B.    CREDITORS AND INTEREST HOLDERS VOTING TO ACCEPT THE PLAN SHOULD

13      BE DEEMED TO ACCEPT THE MODIFIED PLAN

14    Section 1127(d) of the Code provides as follows:

15        Any holder of a claim or interest that has accepted or rejected
      a plan is deemed to have accepted or rejected, as the case may be,
16      such plan as modified, unless, within the time fixed by the court,
      such holder changes such holder's previous acceptance or rejection.
17

18  11 U.S.C. § 1127(d).  This section is implemented by the Federal Rule of Bankruptcy Procedure

19  3019, which provides as follows:

20        In a . . . chapter 11 case, after a plan has been accepted and
      before its confirmation, the proponent may file a modification of the
21      plan.  If the court finds after hearing on notice to the trustee, any
      committee appointed under the Code, and any other entity designated
22      by the court that the proposed modification does not adversely
      change the treatment of the claim of any creditor or the interest of
23      any equity security holder who has not accepted in writing the
      modification, it shall be deemed accepted by all creditors and equity
24      security holders who have previously accepted the plan.

25  Fed. R. Bankr. P. 3019.

26  _____

27    [18] If the Debtors and the MTA are unable to reach an agreement, the Debtors will not seek
   to modify the Debtors' Plan as to the MTA's claim against Alameda Produce Market's estate.

28

366801.05 [XP]    25195

1    Modifications to a plan do "not necessarily mandate the preparation of a new disclosure

2    statement and resolicitation of the plan." *In re American Solar King Corp.*, 90 B.R. 808, 823

3    (Bankr. W.D. Tex. 1988). "Further disclosure occurs only when and to the extent that the debtor

4    intends to solicit votes from previously dissenting creditors or when the modification materially

5    and adversely impacts parties who previously voted for the plan." *Id.* A modification to a plan of

6    reorganization is considered material and triggers a resolicitation requirement if it "so affects a

7    creditor or interest holder who accepted the plan that such entity, if it knew of the modification,

8    would be likely to reconsider its acceptance." *In re Simplot*, 2007 WL 2479664 at *11 (Bankr. D.

9    Idaho Aug. 28, 2007) (quoting *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex.

10    1988)). A creditor or interest holder that accepted the plan would be likely to reconsider its

11    acceptance only if the plan modification materially and adversely changes the way that claim or

12    interest holder is treated. *Id.* (quoting *Enron Corp. v. New Power Co. (In re New Power Co.)*, 438

13    F.3d 1113, 1117-18 (11th Cir. 2006)); *In re Azabu Buildings Co. Ltd.*, 2007 WL 1964306, at *15

14    (Bankr. D. Haw. June 28, 2007) (noting that plan modifications that "do not adversely affect or

15    change the treatment of any other Claims or Interests . . . do not require additional disclosure . . . or

16    re-solicitation of votes . . . nor do they require that holders of Claims or Interests be afforded an

17    opportunity to change previously cast acceptances or rejections of the Plan"). For example, in *In re

18    Mount Vernon Plaza Community Urban Redevelopment Corp. I,* 79 B.R. 305 (Bankr. S.D. Ohio

19    1987), plan proponents modified their plan to add a new co-proponent, increased the amount of

20    administrative expenses to be paid upon the sale of certain properties, changed provisions regarding

21    the repayment of notes held by the debtors and changed provisions regarding the assumption and

22    rejection of certain agreements. The court determined that

23            [n]one of the changes negatively affects the repayment of creditors,
                the length of the Plan, or the protected property interests of parties in
24            interest. Taken as a whole, the Court finds that the proposed
                modifications do not adversely change the treatment of the claim of
25            any creditor under the Plan. Accordingly, such modifications do not
                require circulation of a further modified disclosure statement. All
26            creditors previously accepting the plan are, therefore, deemed to have
                accepted the plan as now modified.

27

28    *Mount Vernon*, 79 B.R. at 306.

1    None of the proposed modifications to the Debtors' Plan would cause a creditor or equity

2    security holder to reconsider its acceptance of the Debtors' Plan.  Unimpairment of Classes 35C-2,

3    49C-2 and 50C-2 will not have any adverse impact on creditors or equity security holders.  In the

4    case of Classes 35C-2 and 49C-2, the Debtors' Plan can be crammed down on those classes.  By

5    unimpairing those classes, the Debtors can more simply confirm plans in those cases.  As to Class

6    50C-2, the Debtors' proposed modifications will permit the confirmation of Merco Group's plan,

7    whereas otherwise that case could conclude in conversion or dismissal without full payment being

8    made to creditors.  Rather than impose the risk of that result, the Debtors are modifying their plan

9    to provide for payment of allowed claims in the Merco Group case.

10    The proposed modifications to Classes 32A-2 (BofA), 43A-2 (Chinatrust), 47A-2 (PNL),

11    and 49A-2 (BofA) conform to the testimony presented to the Court during trial concerning interest

12    rates applicable to the treatment of claims within those classes.  The Court already has determined

13    that, with respect to at least some of these classes, the Debtors' proposed interest rate of 5.0% will

14    not be adopted by the Court, so the modified rates will not necessarily differ from what the Court

15    ultimately would conclude are appropriate.  To conform to the Court's ruling and testimony at trial,

16    the Debtors are seeking to modify the Debtors' Plan to provide for slightly higher rates as set forth

17    above, or such other rates established by the Court.  In addition, having the ability to choose a 5-

18    year term with a lower interest rate will benefit the estates by giving the Reorganized Debtors the

19    flexibility to choose a shorter maturity date in exchange for a lower interest rate.  Similarly, a

20    guaranty by MMPI of Chinatrust's secured claim against MG 3185 E. Washington Boulevard will

21    benefit the Company as a whole because, as reflected by trial testimony, the modification will

22    justify a rate enhancement of approximately 0.7%.  Evidence presented to the Court demonstrates

23    that the property owned by MG 3185 E. Washington Boulevard provides positive cash flow for the

24    benefit of the Debtors, so the provision of a guaranty in order to secure a lower rate is beneficial to

25    the Company, and therefore to the Debtors' creditors and equity security holders.  In addition, a

26    guaranty by MMPI of PNL's secured claim against MG 2001-2021 W. Mission Boulevard will

27    benefit the Company because it will be more likely that MG 2001-2021 W. Mission Boulevard's

28    plan will be confirmed.

1    The modification to the treatment of CB&T's claims also benefits creditors and equity

2  security holders.  In light of the Court's rulings concerning the interest rates applicable to

3  Chinatrust's and PNL's claims, there is no assurance that the Court would conclude that 5.0% is

4  applicable as to CB&T's secured claim.  The Debtors' agreement with CB&T provides for a 5.5%

5  interest rate, but also for a reduction in the amount of CB&T's claim by at least $835,000.  Due to

6  the reduction in the amount of CB&T's claim, the monthly payments to CB&T are expected to be

7  approximately the same under the Third Modified Plan as under the current Debtors' Plan.  In light

8  of the benefits to the Company of the agreed-upon treatment of CB&T's claims and the resolution

9  of CB&T's objection to confirmation of the Debtors' Plan, the fact that the maturity date will be

10  four years from the Effective Date instead of five would not lead any creditor or equity security

11  holder who voted in favor of the Debtors' Plan to seek to modify its vote.

12    The modification to the treatment of Cathay's claims benefits creditors and equity security

13  holders.  In effect, the modified treatment is the same as the treatment under the current Debtors'

14  Plan, which provides very substantial benefits to the Company.

15    The potential modification to the treatment of the MTA's claim against Alameda Produce

16  Market also would benefit creditors and equity security holders.  Under the current Debtors' Plan,

17  Alameda Produce Market essentially would be required to pay, within 30 days, the full amount of

18  any final judgment entered in favor of the MTA against Alameda Produce Market.[19]  If the parties

19  are able to reach an agreement which modifies the treatment of the MTA's alleged claim such that

20  Alameda Produce Market would have additional time to pay the judgment, this would significantly

21  benefit the Company by, among other things, providing the Company additional time to generate

22  cash necessary to pay any such judgment.

23  ///

24  ///

25

26    [19] The Debtors strongly believe that no judgment ever will be entered against Alameda
    Produce Market because, among other things, Alameda Produce Market's claims against the MTA
27  are far in excess of the MTA's alleged claim against Alameda Produce Market.

28

366801.05 [XP]    25195

1    Inclusion of language providing that certain internal controls recently adopted by the board

2    of directors will be utilized post-Effective Date benefits shareholders and addresses concerns that

3    have been voiced by the OEC in this case.

4    Other proposed modifications also would not cause creditors or equity security holders to

5    reconsider their acceptances of the Debtors' Plan.  Modifications (a) addressing concerns raised by

6    San Bernardino County, (b) resulting from the Court's ruling regarding the unenforceability of

7    certain corporate governance provisions, (c) resolving the SBE's objection to the Debtors' Plan,

8    and (d) establishing revised procedures for the assumption and rejection of executory contracts and

9    unexpired leases, will not affect the treatment of creditors' and equity security holders' claims, and

10    resolve various objections to confirmation of the Debtors' Plan without need for further litigation.

11    In addition, modifications described in Section II(K) above simply (a) reflect prior rulings of the

12    Court, (b) reflect the transfer, withdrawal or satisfaction of various claims against the Debtors'

13    estates since the Debtors' Plan initially was prepared, (c) add the Reorganized MMPI's Chief

14    Financial Officer as a Disbursing Agent, (d) clarify that the treatment of unimpaired classes of

15    general unsecured claims includes interest at the Federal Judgment Rate from the Petition Date,

16    (e) insert certain unimpaired classes identified in Section III.A. of the current Debtors' Plan but not

17    Section III.C. of the current Debtors' Plan, and (f) correct typographical errors.  None are material

18    or otherwise result in a modification to the treatment of classes of creditors or equity security

19    holders.

20    Based on the foregoing, the proposed modifications should be deemed to be non-material

21    and the Court should deem the proposed modifications to be accepted by all creditors who voted to

22    accept the Debtors' Plan.

23

24    C.    CB&T SHOULD BE AUTHORIZED TO CHANGE ITS VOTES

25    Federal Rule of Bankruptcy Procedure 3018(a) provides, in relevant part, "For cause

26    shown, the court after notice and hearing may permit a creditor or equity security holder to change

27    or withdraw an acceptance or rejection."  In November 2010, CB&T submitted votes rejecting the

28    Debtors' Plan.  However, pursuant to the Debtors' agreement with CB&T pursuant to which the

- 30 -

1   Debtors are seeking authority to modify the treatment of CB&T's claims under the Debtors' Plan,

2   CB&T has agreed to vote to accept the Debtors' Plan.  Accordingly, in furtherance of the parties'

3   agreement, the Debtors request that the Court authorize CB&T to change its votes to accept the

4   Debtors' Plan.

5

6                                              IV.

7                                          CONCLUSION

8        For the foregoing reasons the Debtors request that the Court authorize them to modify the

9   Debtors' Plan and determine that the proposed modification does not require resolicitation thereof.

10  The Debtors also request that the Court authorize CB&T to modify its votes to accept the Debtors'

11  proposed plan.  The Debtors also request such further relief as the Court deems just and proper.

12

13  Dated:  March 24, 2011                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

14

15                                      By:      /s/ John N. Tedford, IV
                                             John N Tedford, IV
16                                           Attorneys for Meruelo Maddux Properties,
                                             Inc., and affiliated Debtors and Debtors-in-
17                                           Possession

18

19

20

21

22

23

24

25

26

27

28

                                              - 31 -

366801.05 [XP]      25195