1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
2  ENID M. COLSON (State Bar No. 189912)
   *EColson@DGDK.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California 90067-2904
   Telephone: (310) 277-0077
5  Facsimile: (310) 277-5735

6  GARY E. KLAUSNER (State Bar No. 69077)
   *GKlausner@Stutman.com*
7  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
8  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA 90067-6013
9  Telephone: (310) 228-5600
   Facsimile: (310) 228-5788
10
   Attorneys for Meruelo Maddux Properties, Inc., and
11 affiliated Debtors and Debtors-in-Possession

12                     **UNITED STATES BANKRUPTCY COURT**

13                      **CENTRAL DISTRICT OF CALIFORNIA**

14                     **SAN FERNANDO VALLEY DIVISION**

15 In re                              ) Case No. 1:09-bk-13356-VK
                                      )
16 MERUELO MADDUX PROPERTIES,         )
   INC., et al.,[1]                   ) Chapter 11 (Jointly Administered)
17                                    )
                                      ) **DEBTORS' REPLY IN SUPPORT OF**
18         Debtors and Debtors-in-    ) **MOTION FOR AUTHORITY TO FURTHER**
           Possession.               ) **MODIFY THE DEBTORS' PROPOSED**
19 _____  ) **CHAPTER 11 PLAN AND ORDER**
                                      ) **AUTHORIZING CALIFORNIA BANK &**
20 ☑  Affects all Debtors             ) **TRUST TO MODIFY ITS VOTES TO**
                                      ) **ACCEPT THE DEBTORS' PLAN; AND**
21 ☐  Affects the following Debtors:  ) **DECLARATIONS OF JOHN N. TEDFORD,**
                                      ) **IV, AND REQUEST FOR JUDICIAL NOTICE**
22                                    ) **IN SUPPORT THEREOF**
                                      )
23                                    ) Date:     April 8, 2011
                                      ) Time:     10:30 a.m.
24                                    ) Place:    Courtroom 301
                                      )           21041 Burbank Boulevard
25 _____  )           Woodland Hills, California

26

27 _____
      [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
28 entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

1    The above-captioned debtors and debtors-in-possession (collectively the "Debtors") hereby

2 submit their reply in support of the Debtors' *Motion for Authority to Further Modify the Debtors'*

3 *Proposed Chapter 11 Plan and Order Authorizing California Bank & Trust to Modify Its Votes to*

4 *Accept the Debtors' Plan* (the "Modification Motion") (*docket entry no. 2897*), and in response to

5 the limited objection of the Official Committee of Equity Security Holders (the "OEC") (*docket*

6 *entry no. 2920*), the objections of BNP Paribas VPG Brookline, CRE, LLC ("BNP") and Bank of

7 America ("BofA") (*docket entry nos. 2922 and 2930*), and the response of Charlestown Capital

8 Advisors, LLC, and Hartland Asset Management Corporation (collectively "Charlestown") (*docket*

9 *entry no. 2916*).

10

11                                    I.

12            SUMMARY OF THE DEBTORS' REPLY TO OPPOSITIONS

13            AND RESPONSES TO THE MODIFICATION MOTION

14    The Debtors propose to modify their plan to, among other things, resolve various objections

15 to confirmation of the Debtors' Plan, address comments and rulings of the Court at trial and prior

16 hearings, and reflect agreements with creditors California Bank & Trust ("CB&T"), Cathay Bank

17 ("Cathay"), and the County of San Bernardino ("SB County").[2]  CB&T and SB County have filed

18 statements confirming their support for the Debtors' proposed modifications, the California State

19 Board of Equalization (the "SBE") has withdrawn its objection to the Debtors' Plan based upon the

20 proposed modified treatment of the SBE's priority claims, and the County of Los Angeles ("LA

21 County") has filed a statement reflecting its support of the Modification Motion.

22    The OEC's limited objection to the Modification Motion relates solely to Section IV.J. of

23 the Debtors' Plan.  There is no dispute that Section IV.J. should be modified, and the Debtors are

---

24

25    [2] The Debtors intended to supplement the Modification Motion with a stipulation with the
Los Angeles County Metropolitan Transportation Authority (the "MTA") regarding treatment of
the MTA's alleged claim under the Debtors' plan.  The parties have not reached an agreement.

26 Absent an agreement being reached before the hearing, the Debtors anticipate that the MTA, the
Debtors and potentially Charlestown will briefly address the Court on April 8, 2011, with respect to

27 the MTA's objections to confirmation of the Debtors' and Charlestown's proposed plans.

28

367677.04 [XP]    25195

1  seeking to modify the plan to be consistent with a ruling made by the Court on November 10, 2010.

2  The issue today is not what to do with any so-called "voting condition" or whether the OEC should

3  now be granted a right to select board members to which it is not entitled under the Debtors' Plan.

4  The question is simply what the Court intended on November 10, 2010.  The record shows that the

5  Court's principal concern was to protect OEC members from any potential claim that they were

6  obliged to vote for the Debtors' Plan.  However, the record also shows that the Court expressly

7  declined to rewrite the Debtors' Plan to give the OEC an unconditional right to appoint three board

8  members.

9        Since November 2010, the Debtors have acted consistently with their interpretation of the

10  Court's ruling.  Also, the OEC has implicitly acknowledged that it does not have the right to select

11  three board members.  For example, although the Debtors strongly dispute the OEC's position, the

12  OEC has consistently alleged during trial that the Debtors' Plan provides no protections for "non-

13  insider shareholders," a position that the OEC could not legitimately advance if it believed that it

14  had the right under the Debtors' Plan to select three directors.  Charlestown has also claimed that

15  while its proposed plan allows the OEC to select three board members the Debtors' Plan does not,

16  and the OEC has never disputed Charlestown's claim.  The Debtors believe that their proposed plan

17  modification is consistent with the Court's ruling on November 10, 2010, and should be approved.

18        BNP's opposition to the Modification Motion disregards the evidence in this case and

19  reflects BNP's misreading of relevant documents, including the Debtors' Plan and its treatment of

20  claims relating to BNP's loan.  Simply stated, BNP acquired the note after Kennedy Funding, Inc.

21  ("Kennedy Funding"), voted in favor of the Debtors' Plan, and as BNP advised the Debtors in

22  January it wants to "take a different approach" than Kennedy Funding has taken.  BNP's assertion

23  that the Debtors' proposed modifications are materially adverse to BNP's claims is mere pretext

24  and should be rejected.

25        BofA's opposition is frivolous, and is simply a continuation of the improper, senseless

26  litigation advanced by BofA in this Court, the District Court and the Ninth Circuit to harass the

27  Debtors, cause unnecessary delay in the resolution of these bankruptcy cases, and needlessly

28  increase the Debtors' cost of litigation.  BofA's cursory arguments lack legal authority and are

367677.04 [XP]      25195

1    remarkably disingenuous.  In addition, having no legitimate reason to object to the Modification

2    Motion, and unwilling to accept the fact that this case may be coming to an end, BofA is trying to

3    create brand new issues to litigate about by filing two utterly frivolous motions for reconsideration

4    relating to LA County's secured tax claims, including a motion for reconsideration of the order

5    approving the settlement between LA County and the two Debtors that have loans with BofA.

6    BofA's objection should be summarily overruled and this estate should be relieved of any further

7    obligation to respond to it.

8         The response by Charlestown to the Modification Motion consists only of comments to

9    certain of the Debtors' proposed modifications regarding board oversight and the composition of

10   the board under the Debtors' Plan.  Charlestown contends that "the Court has no basis to conclude

11   that the board will include even a single independent director post-bankruptcy."  This contention

12   has been resolved.  On April 4, 2011, the Debtors filed a supplement to the Modification Motion

13   confirming that MMPI's current board members, which include four independent members, will

14   continue to serve as MMPI's directors following the Effective Date of the Debtors' Plan.[3]

15

16                                          II.

17              DEBTORS' REPLY TO THE OEC'S LIMITED OBJECTION

18   A.    BRIEF BACKGROUND

19         Prior to September 20, 2010, the Debtors' Plan provided that the existing members of

20   MMPI's Board of Directors would continue to serve in such capacity after the Effective Date.[4]  On

21   September 21, 2010, the Debtors filed their fourth amended plan and disclosure statement (*docket*

22

23        [3] Charlestown takes no position as to whether the Court should grant the Modification
     Motion.  Since Charlestown's comment regarding whether there will be independent members on
24   the Reorganized MMPI's board has been resolved, Charlestown's response is not further addressed
     in this reply.
25

26        [4] Before September 20, 2010, the Debtors' Plan provided, in relevant part, as follows: "The
     directors and officers, managers and general partners, as the case may be, of each of the Debtors
27   shall serve in such capacities in each of the Reorganized Debtors, respectively, on and after the
     Effective Date."  *See, e.g., docket entry no. 1845*, page 145 of 166.
28

                                          - 4 -

1   *entry nos. 1845-1847*).  In these amendments, the Debtors added a provision to their plan whereby

2   Richard Meruelo and John Maddux and/or the shareholder entities controlled by them (collectively

3   the "Founding Shareholders") would have the right to appoint four of the initial seven directors of

4   the reorganized MMPI.  The other three would be appointed by the OEC, with one of the three to

5   be approved by the Founding Shareholders.

6          Based on discussions with the OEC, the Debtors believed this modification would lead to

7   the OEC supporting the Debtors' Plan and recommending that MMPI's shareholders vote to accept

8   the Debtors' Plan, and the cessation of the OEC's litigation with the Debtors.  Whether the Debtors

9   misunderstood the OEC's intentions, the OEC misled the Debtors, or the OEC changed its mind is

10  irrelevant.  In any event, the Debtors soon thereafter learned that the OEC was not supporting their

11  plan.

12         On October 1, 2010, the OEC filed a proposed letter to be included with the disclosure

13  statements, plans, ballots and other materials in the solicitation packages to be sent to all claimants,

14  including creditors and equity security holders (*docket entry no. 1905*).[5]  The OEC has made many

15  representations in the last few months regarding the OEC's expression of support in this letter for

16  the Debtors' Plan: (a) in its objection to the Debtors' Plan, the OEC claimed that in this letter the

17  OEC "endorsed the Debtors' Plan" (*docket entry no. 2514*, page 12, footnote 8); (b) multiple times

18  during trial, the OEC's counsel stated that in this letter the OEC stated that it was "supporting the

19  Debtors' plan;" and (c) in its § 1129(c) reply brief, the OEC claimed that in this letter "the Equity

20  Committee recommended that non-insider shareholders wishing to retain their shares *vote* in favor

21  of" the Debtors' Plan (*docket entry no. 2813*, page 2, lines 20-22 (emphasis added)).  However, on

22  the first page of the letter, in bold capitalized letters, the OEC stated that it was *not* endorsing the

23  Debtors' Plan at that time even though the Debtors' Plan was the best economic alternative for the

24  shareholders who elected to retain their interests.  The Debtors did not believe that the Reorganized

25  MMPI should emerge from bankruptcy with an immediately splintered board with irreconcilable

26

27         [5] For ease of reference, a copy of the OEC's proposed letter is attached as Exhibit "1" to the
    Request for Judicial Notice.

28

1  views as to the Company's future. Thus, the Debtors intended to modify their plan to provide that

2  the OEC would be entitled to appoint the three directors only if a majority of the OEC's members

3  voted in favor of the Debtors' Plan.

4         Any question as to whether the OEC was supporting the Debtors' Plan was answered on

5  October 5, 2010. Early that morning the Debtors circulated their proposed solicitation letter which

6  referred to the Debtors' Plan as being supported by the OEC.[6]  Late that afternoon, the OEC filed a

7  scathing objection to the Debtors' letter (*docket entry no. 1921*).[7]  The OEC argued that, by stating

8  that the OEC "supported" the Debtors' Plan (as the OEC itself has repeatedly represented to the

9  Court over the last few months), the Debtors' letter "materially misstate[d]" the OEC's position.

10  The OEC argued that the statements were "materially misleading," inaccurate, and that the Debtors

11  could not "simply state that their plan 'is supported by the Equity Committee'" since such

12  statements were a "gross distortion" of the OEC's position. The OEC's filing confirmed the

13  Debtors' concerns that the OEC had reneged on its support of the Debtors' Plan or had not been

14  fully supporting the Debtors' Plan to begin with.

15        That evening, the Debtors filed redlined pages with additional revisions to their proposed

16  plan (*docket entry no. 1922 and 1923*). Since the OEC had done nothing to alleviate the Debtors'

17  concerns, the revisions included the provision that the OEC would have the right to select three

18  board members only if a majority of the OEC voted in favor of the Debtors' Plan and expressed a

19  preference for the Debtors' Plan. As revised, Section VIII(A)(1) of the Disclosure Statement

20  provided, in relevant part, as follows:

21             The initial board of directors of Reorganized MMPI will
             consist of seven directors. Richard Meruelo and John Maddux, or the
22             shareholder entities controlled by them (collectively, the "Founding
             Shareholders"), will have the right to appoint four of the initial seven

23

24        [6] Particularly, the letter stated, "The Plan is supported by the Equity Committee and a
25  majority of the secured lenders (excluding Legendary and East West)." The letter also stated, "The
     Equity Committee has expressed support for the Company Plan." A copy of the Debtors' proposed
26  letter is attached as Exhibit "2" to the Request for Judicial Notice.

27        [7] A copy of the OEC's objection to the Debtors' proposed letter is attached as Exhibit "3" to
     the Request for Judicial Notice.

28
                                        - 6 -

directors ("Founding Shareholder Directors"). If a majority (both in number of members and in number of shares held by such members) of the members of the Equity Committee vote to accept the Debtors' Plan and vote their preference among the proposed plans in favor of the Debtors' Plan, then the Equity Committee will have the right to appoint three of the initial seven directors (collectively, the "Equity Committee Directors"), subject to the requirement that the Founding Shareholders approve one of the Equity Committee Directors. If a majority of the members of the Equity Committee do not so vote, then the remaining three directors will be appointed by the Founding Shareholder Directors.

B.    THE EQUITY COMMITTEE'S OBJECTION TO APPROVAL OF THE DEBTORS'
DISCLOSURE STATEMENT

On October 6, 2010, the Court held a continued hearing on approval of the Debtors' disclosure statement. The OEC's counsel objected to the above-quoted provision and argued that it could force the OEC's members to vote in favor of a plan that they might not otherwise vote in favor of. The OEC's counsel also stated that because of that one aspect of the corporate governance provisions, the OEC would need to revise its proposed solicitation letter. The Court heard and considered the arguments made by the OEC's counsel and overruled them, finding that the Disclosure Statement accurately described the Plan. *See In re California Fidelity, Inc.*, 198 B.R. 567, 571 (B.A.P. 9th Cir. 1996) ("The purpose of a disclosure statement is to give all creditors a source of information which allows them to make an informed choice regarding the approval or rejection of a plan.").

On October 15, 2010, the Court entered its order approving the Debtors' Disclosure Statement (*docket entry no. 1963*). On October 19, 2010, the Court entered its order approving the form of the OEC's revised letter in which the OEC recommended that shareholders vote against the Debtors' Plan (*docket entry no. 1985*). On or about October 22, 2010, the Disclosure Statement and the OEC's solicitation letter, among other things, were mailed to parties entitled to vote on the Debtors' Plan.[8]

---

[8] *See* Declaration of Robert Q. Klamser (*docket entry no. 2320*), paragraph 5.

367677.04 [XP]    25195

C.    THE EQUITY COMMITTEE'S MOTION FOR RECONSIDERATION

On October 20, 2010, the OEC filed a motion for reconsideration of the Court's order approving the Debtors' Disclosure Statement (the "Motion for Reconsideration") (*docket entry no. 1999*). Though styled as a motion for reconsideration, the OEC really wanted the Court to strike from the Debtors' Plan the language the OEC refers to as the "Voting Condition" and revise the Debtors' Plan so that it would read the same way as the plan filed on September 21, 2010, thereby giving the OEC the unconditional right to appoint three directors. The OEC contended that this was necessary because its members otherwise were "saddled with the burden of not having the ability to vote in accordance with their individual investment criteria, but instead having to consider how their votes will affect the rights and powers of the Equity Committee under the Debtors' Plan."[9] The Debtors opposed the Motion for Reconsideration and were clear that "OEC members are free to vote as they wish," there was no dispute "that committee members are free to cast their votes as individuals, not committee members," and the "Debtors do not believe it is appropriate for the OEC to appoint the initial members of the board if the OEC's members are not supportive of the Plan as specified."[10]

A hearing on the Motion for Reconsideration was held on November 10, 2010. Prior to the hearing the Court issued a tentative ruling (later filed for the record as *docket entry no. 2212*) which was refined by the Court at the hearing. Despite the Debtors' counsel's request that the OEC's counsel listen to the hearing prior to filing any opposition to the Modification Motion, the OEC's limited opposition is noticeably silent as to what was or what was not said at the hearing.

For the Court's reference, an unofficial transcription of the hearing that has been prepared by the Debtors' counsel is attached as Exhibit "4" to the Declaration of John N. Tedford, IV.[11] At

---

[9] OEC's Motion for Reconsideration, page 10, lines 10-12.

[10] *Docket entry no. 2117*, page 5, lines 10-12, and page 7, lines 9-11.

[11] The Debtors' counsel had suggested that the OEC's counsel prepare a transcription and forward it to the Debtors' counsel to be reviewed, with a joint transcript to be filed with the Court. If the OEC's counsel believes that revisions should be made to Exhibit "4" the Debtors' counsel will review the OEC's proposed revisions, if any, and file a revised unofficial transcript.

367677.04 [XP]    25195

1  the start of the hearing the Debtors' counsel raised the point that all of the language concerning the

2  OEC's ability to select directors was one integrated concept, and that the Court could not strike bits

3  and pieces of the Debtors' Plan as requested by the OEC. The Court, noting that it already had

4  observed in its tentative that its ruling "potentially may result in a loss of a benefit for the equity

5  under the Debtors' plan," asked what language the Debtors thought would need to be stricken. The

6  Debtors' counsel answered that the Court would need to strike all of the language from the word

7  "If" to the end of the paragraph.[12]

8       Specifically referencing the OEC's request for a "surgical" striking of language from the

9  two sentences at issue, which if granted would have given the OEC the unconditional right to select

10  three directors, the Court stated that doing so would "eviscerate[] what [the Debtors] wanted and so

11  that's the problem we're having to deal with today." Contrary to the OEC's position that the Court

12  ultimately ruled that only parts of the two sentences are unenforceable, the Court's ruling at the

13  hearing was that "because of how it's written, you simply have to strike everything from 'If' to the

14  end and then – it's not stricken – it's simply that's not going to be an enforceable provision. What

15  happens to the other three directors, I don't know, we'll see." Consistent with this ruling, the Court

16  later reiterated that "this disclosure statement is not certain on the issue of who gets to appoint the

17  other three directors." In making such comments, the Court was simply observing that as a result

18  of its ruling the language in the Debtors' Plan relating to the appointment of three of the seven

19  directors would be unenforceable, but the record is clear that the Court's ruling would not

20  "eviscerate[] what [the Debtors] wanted" by giving the OEC an unconditional right to appoint the

21  three directors. The record also is clear that the Court was not issuing a ruling that would require

22  resolicitation of the Debtors' Plan.

23  ///

24  ///

25  ///

26  _____

27     [12] Predictably, the OEC's counsel argued that doing so would require that the Debtors
resolicit their plan, an idea soundly rejected by the Court.

28

367677.04 [XP]    25195

1  D.      THE COURT'S NOVEMBER 17, 2010, ORDER

2          At the conclusion of the hearing the Court indicated that it would draft the order, and that

3  "all it's going to say is that – I will isolate that entire last part, that the condition expressed in this

4  language is not enforceable."  The Court said this seconds after stating that "everything from 'If' to

5  the end" would be unenforceable.  On November 17, 2010, the Court entered its order quoting the

6  two sentences identified by the Debtors' counsel and stating, "The condition expressed in the

7  foregoing language is held to be unenforceable for the reasons set forth on the record."

8          Based upon the record, including the Court's findings and conclusions at the hearing, the

9  Debtors believe that the Court viewed the *entirety* of the two quoted sentences to constitute "[t]he

10  condition" and the Court determined that the entirety of the two sentences are unenforceable.  This

11  determination was consistent with the Court's clearly expressed view that it could not simply strike

12  (or find unenforceable) part of the integrated provision without materially altering what was being

13  offered by the Debtors under their Plan.  The OEC, however, interprets the Court's order as

14  providing that specific words are unenforceable, and argues that "[i]if the Court had determined

15  that the entirety of the two sentences setting forth the Board selection process was unenforceable, it

16  would have said so."  The Debtors submit that the Court *did* say so at the hearing attended by two

17  of the OEC's attorneys, which the Debtors urged the OEC's counsel to review prior to filing any

18  objection to the Modification Motion.

19

20  E.      THE PARTIES' RESPONSE TO THE COURT'S RULING

21          The Debtors' interpretation of the Court's ruling and order is supported not only by the

22  Court's findings and conclusions at the hearing, but also all of the parties' subsequent actions.  On

23  December 3, 2010, the Debtors filed their opening confirmation brief (*docket entry no. 2326*).  On

24  page 12, lines 4-7, the Debtors stated the following:

25                  As set forth in Article IV.J. of the Plan, the initial board of
                directors of Reorganized MMPI will consist of seven directors. As
26              founders and majority shareholders of MMPI, Richard Meruelo and
                John Maddux, or entities controlled by them, will have the right to
27              appoint these directors.

28  ///

- 10 -

367677.04 [XP]      25195

The Debtors included a footnote stating that the Debtors' Plan contained a condition pursuant to which the Equity Committee would be permitted to appoint three of the seven initial directors, but the Court had determined that the condition was unenforceable.  On December 30, 2010, the OEC filed its objection to confirmation of the Debtors' Plan (*docket entry no. 2514*), but did not address or otherwise contradict the Debtors' clear statement that Messrs. Meruelo and Maddux, or entities controlled by them, would appoint all of the directors.

On January 14, 2011, Charlestown filed its reply brief (*docket entry no. 2586*).  In its reply Charlestown sought to differentiate its plan from the Debtors' Plan, and a difference identified by Charlestown was that under its plan the OEC would appoint three directors.  Charlestown argued that its plan provided "for an entirely different structure than the Debtors' Plan" because, among other things, "its corporate governance appropriately protects the economic interests of the minority shareholders."[13]  Charlestown's counsel most clearly took this position on March 21, 2011, when its counsel stated that "the Equity Committee will get seats on our Board, even though they won't get them on the Debtors' Board."[14]  The OEC has never sought to correct the Debtors' or Charlestown's position that while the OEC may select three directors under Charlestown's plan, it may not under the Debtors' Plan.

On February 4, 2011, the OEC presented its opening statement in opposition to the Debtors' Plan.  The OEC claimed that it was critical to the OEC to have the ability to choose three directors, but never once tempered its anti-Debtor rhetoric with a caveat that under the Debtors' Plan the OEC would have the right to appoint three directors, or at least believed that it had such a right. Indeed, the OEC has spent months attacking Mr. Meruelo and arguing that if the Debtors' Plan is confirmed there will not be any independent persons overseeing him, yet now claims that the OEC has been entitled all along to appoint three directors who would serve for at least three years.  As best the Debtors have determined, the closest the OEC has come to asserting a right to appoint

---

[13] *Docket entry no. 2586*, page 31, lines 12-23.

[14] Copies of the relevant pages of the unofficial transcript of the hearing on March 21, 2011, are attached as Exhibit "5" to the Declaration of John N. Tedford, IV.

- 11 -

1   three directors was in its opening § 1129(c) brief when it criticized the Debtors for not amending

2   their plan so "non-insider shareholders would have three representatives on the board of

3   directors,"[15] a statement contrary to the OEC's current position that it is entitled to appoint

4   directors merely by virtue of the Court's ruling on November 10, 2010.

5       Further contradicting the OEC's position that it is entitled to appoint three directors under

6   the Debtors' Plan is the fact that the OEC has never identified three directors it would appoint if the

7   Debtors' Plan is confirmed. Under the OEC's interpretation of the Court's order, one of the OEC's

8   directors must be approved by the Debtors. However, the OEC has never made any request that the

9   Debtors approve any potential board members.

10      Finally, if the OEC truly believed that as a result of the Court's ruling it would be granted

11  the right to appoint three directors under the Debtors' Plan, the OEC had a duty to shareholders in

12  November 2010 to at least try to advise them of the Court's ruling and the OEC's belief that they

13  had an unconditional right to appoint three directors. Indeed, if the OEC's ability to choose three

14  directors was so key that the OEC would go from "supporting" the Debtors' economically superior

15  plan to urging shareholders to reject the Debtors' Plan, shareholders should have been advised that

16  the basis for the OEC's change in position had been reversed. The OEC took no such action.

17

18  F.    THE DEBTORS' PROPOSED MODIFICATION

19      In light of the foregoing, the Debtors are seeking to modify Section IV.J. to provide that the

20  Founding Shareholder Directors will appoint all seven directors. The relevant portion of the Third

21  Modified Plan, as supplemented by the Debtors on April 4, 2001, will read as follows:

22          The initial board of directors of Reorganized MMPI will
            consist of seven directors. Richard Meruelo and John Maddux, or the
23          shareholder entities controlled by them, will appoint the seven initial
            directors as identified herein.
24
            Reorganized MMPI's board of directors, as of the Effective
25          Date, shall consist of the same individuals who have served as

26

27  [15] *Docket entry no. 2794, page 9, line 27 through page 10, line 2.*

28

- 12 -

directors since the inception of the Debtors' chapter 11 cases. These individuals are as follows:

- Richard Meruelo
- John Charles Maddux
- Lynn Beckemeyer
- John B. Hansen
- Philip F. Payne
- Richard Garcia Polanco
- Anthony A. Williams.

The terms of the initial directors shall be staggered in accordance with the following provisions, which provisions shall be reflected in Reorganized MMPI's certificate of incorporation: two of the directors shall be up for re-election at the first annual shareholder meeting (occurring at least one year after the Effective Date), two of the directors shall be up for re-election at the second annual shareholder meeting (occurring at least two years after the Effective Date), and the three remaining directors shall be up for re-election at the third annual shareholder meeting (occurring at least three years after the Effective Date). The board of Reorganized MMPI must approve any related-party transactions, and if the related party is a board member such board member shall recuse himself or herself. Reorganized MMPI will disseminate to shareholders annual financial statements audited by an outside auditor. In 2013, Reorganized MMPI will make commercially-reasonable efforts to become a publicly reporting company if the board determines such to be in the best interests of the company.

The Debtors' proposed modification is consistent with the Court's ruling on November 10, 2010, in which the Court rejected the OEC's request that Section IV.J. be rewritten to grant to the OEC the right to select three directors. It is consistent with all of the parties' positions during trial in this case. It also is also consistent with the expectations of shareholders who voted to accept the Fourth Amended Plan because they believed either that (a) the provision granting the OEC a right to select three board members was unenforceable, or (b) the OEC would be granted such a right only if a majority of the OEC members voted in favor of the Debtors' Plan.[16] The OEC's claim that the Court should now rewrite the Debtors' Plan to grant the OEC the ability to select three

///

---

[16] As noted in the Modification Motion, the result of the proposed modification is the same as if the original language in the Fourth Amended Plan was enforceable against the Debtors, since a majority of the OEC members did not vote in favor of the Debtors' Plan.

367677.04 [XP]    25195

1  directors is not consistent with the Court's ruling, parties' positions during trial, or the expectations

2  of equity holders who voted in favor of the Debtors' Plan.

3

4  G.    CONCLUSION IN RESPONSE TO THE EQUITY COMMITTEE'S OBJECTION

5        The Debtors are seeking to modify the Debtors' Plan to be consistent with the Court's

6  ruling on November 10, 2010.  The Court was clear at the hearing that it was not going to rewrite

7  the Debtors' Plan as requested by the OEC in November, and as requested again by the OEC in its

8  opposition to the Modification Motion.  The Court also was clear that it was ruling that the entirety

9  of the two sentences at issue was unenforceable because doing what the OEC urged, and still urges,

10 would eviscerate the purpose of that provision.  The Debtors are simply seeking to modify the

11 relevant section in the Debtors' Plan to confirm how the other three directors will be selected, and

12 the Debtors' proposed modification is consistent with the positions and actions taken not only by

13 the Debtors but also by the OEC and Charlestown during this case.  Accordingly, the OEC's

14 limited objection to the Modification Motion should be overruled.

15

16                                              III.

17                          DEBTORS' REPLY TO BNP'S OBJECTION

18 A.    BRIEF BACKGROUND

19        In June 2008, Meruelo Maddux – Mission Boulevard, LLC ("MM Mission"), entered into a

20 Loan and Security Agreement with Kennedy Funding, Inc., as agent for Brookline Financing CPV,

21 LLC,[17] the lender.  The principal amount of the loan was $8.8 million, of which $1.056 million was

22 paid to Kennedy Funding to be credited against interest payments as such interest payments came

23 due.  The loan was secured by, among other things, real property located at 2001-2021 West

24 Mission Boulevard, Pomona, California.  The loan was guarantied by MMPI.  The Debtor was not

25 _____

26     [17] Except where context dictates otherwise, Brookline Financing SPV, LLC, and Kennedy
   Funding, Inc., are collectively referred to as "Kennedy Funding."  Where appropriate, Brookline
27 Financing SPV, LLC is referred to as "Brookline."

28

                                             - 14 -

1 in default on the Petition Date because Kennedy Funding was drawing against the interest reserve,

2 which Kennedy Funding continued to do postpetition until the interest reserve was exhausted.

3      As of the Petition Date, and still today, Kennedy Funding is the holder of a secured claim

4 against MM Mission (Class 53A-2) and an unsecured guaranty claim against MMPI (Class 1C-2A).

5 Kennedy Funding voted to accept the treatment proposed in the Debtors' plan.

6      The Debtors were advised by letter that in December 2010, Brookline assigned its interests

7 in the loan to BNP.  The Debtors also were advised that as of January 1, 2011, Parallel Asset

8 Management, LLC, replaced Kennedy Funding as the servicing agent for the loan.  However, as of

9 the date of the filing of this reply, BNP has taken no steps whatsoever to effectuate a transfer of

10 Kennedy Funding's claims pursuant to Federal Rule of Bankruptcy Procedure 3001(e).

11 Accordingly, although the Debtors have proposed to modify their plan to reflect that BNP is the

12 current holder of the loan, Kennedy Funding, not BNP, remains the record holder of the claim

13 against MMPI's and MM Mission's estates.

14      On March 31, 2011, BNP filed an objection to the Modification Motion together with a

15 motion for an order authorizing BNP to withdraw Kennedy Funding's votes in favor of the

16 Debtors' Plan.  Although BNP indicates that it is objecting to the Modification Motion, BNP

17 appears to be requesting not that the Court prevent the Debtors from modifying the Debtors' Plan,

18 but rather that the Court authorize BNP to withdraw Kennedy Funding's votes.[18]  To the extent that

19 BNP seeks to withdraw Kennedy Funding's votes, the Debtors have responded to BNP's request in

20 their opposition filed on April 6, 2001 (*docket entry nos. 2946 and 2947*).

21      To the extent that BNP is opposing the Modification Motion, even if BNP has standing to

22 oppose the Modification Motion its objection should be overruled for the same reasons that BNP's

23 motion for authority to withdraw Kennedy Funding's votes should be denied.  Rather than repeat

24 all of the arguments and evidence already presented by the Debtors in their opposition to BNP's

25

26      [18] *See* BNP Opposition, page 3, lines 15-17 ("Even if the Debtors contend that in a case of
this level of complexity and size, re-solicitation may not be feasible or possible, *BNP only asks that*
27 *it be afforded the opportunity to withdraw its vote*.") (emphasis added).

28

1  motion, the Debtors hereby incorporate all such arguments and evidence and respectfully request

2  that the Court consider such arguments and evidence as having been fully set forth herein.

3

4  B.     THE DEBTORS' PROPOSED MODIFICATIONS SATISFY § 1127(c)

5         As discussed more fully in the Modification Motion, modifications to a plan do "not

6  necessarily mandate the preparation of a new disclosure statement and resolicitation of the plan."

7  *In re American Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988).  Further disclosure is

8  required only when and to the extent that a plan proponent intends to solicit votes from previously

9  dissenting creditors, or where the modification materially and adversely impacts parties who voted

10 for the plan. *Id.*

11         BNP identifies five modifications that purportedly materially and adversely impact its

12 interests.  First, BNP complains that its interests have been materially and adversely impacted by

13 the Debtors' settlement with Legendary Investors Group No. 1, LLC ("Legendary").  Besides

14 ignoring the evidence and analysis submitted in support of the Debtors' motion for approval of that

15 settlement, and projections filed with the Court showing the positive financial impact of that

16 settlement, BNP ignores this Court's order entered on January 24, 2011, in which the Court stated,

17 among other things:

18              8.     The Court finds that the modifications to the Debtors'
        prior plan of reorganization herein (the "Plan") effected by and
19      through the *First Modified Fourth Amended Joint Plan of
        Reorganization of Meruelo Maddux Properties Inc., et al., dated
20      September 20, 2010* [Docket No. 2583] (the "First Modified Plan")
        do not adversely change the treatment of the claim of any creditor or
21      the interest of any equity security holder who has not accepted in
        writing the modification made by the Amended Plan.  The proposed
22      modification of the Plan does not require resolicitation thereof and
        the First Modified Plan shall be deemed accepted by all creditors and
23      equity security holders who have previously accepted the Plan.[19]

24 In the face of evidence previously submitted to the Court and the Court's own order, BNP's claim

25 that the Debtors' settlement with Legendary materially and adversely impacted BNP's interests is

26 _____

27    [19] *Docket entry no. 2652.*  A copy of the order is attached as Exhibit "6" to the Request for
   Judicial Notice.

28

- 16 -

1   without merit and indicative of the lengths BNP is going to in an effort to prevent confirmation of

2   the Debtors' Plan containing treatment previously accepted by Kennedy Funding.

3         BNP's arguments relying on the other four modifications identified in the opposition also

4   must fail. BNP claims that it is adversely impacted by modifications to interest rates applicable to

5   the secured claims held by BofA, PNL Pomona, L.P. ("PNL"), and Chinatrust Bank ("Chinatrust"),

6   but fails to recognize that (a) the Debtors' Plan always contemplated that if a secured creditor voted

7   against the Debtors' Plan and the Court determined that 5% was not an appropriate rate of interest,

8   the Court could confirm the plan with a higher interest rate as to that secured creditor, and (b) the

9   proposed modifications simply reflect interest rates set forth in the declaration of M. Freddie Reiss

10  filed on December 3, 2010, as well as comments of the Court regarding the interest rates required

11  to confirm the Debtors' plan. BNP also claims that it is adversely impacted by modifications

12  relating to the Debtors' agreement with CB&T, but appears to disregard the fact that monthly

13  interest payments to CB&T under the modified plan are basically the same as monthly interest

14  payments under the current Debtors' Plan. BNP also claims that it is adversely impacted by

15  modifications to corporate governance procedures, but, among other things, the Debtors are simply

16  seeking to modify their plan to reflect a ruling of the Court with respect to corporate governance

17  matters. Finally, BNP claims that it is adversely impacted by MMPI providing guaranties to PNL

18  and Chinatrust, but for the reasons stated in the Modification Motion and the Debtors' opposition to

19  BNP's motion, including the Declaration of M. Freddie Reiss filed in support of that opposition,

20  the provision of guaranties does not have any adverse impact on BNP because it does not adversely

21  impact the ability of the Debtors to make payments on BNP's loan.

22        Because the Debtors' proposed modifications do not materially and adversely impact BNP,

23  there is no requirement that the Debtors resolicit votes or generate a new disclosure statement. The

24  problem is not a lack of disclosure by the Debtors regarding the impact of proposed modifications,

25  the problem is that BNP is ignoring evidence and analysis that already has been presented. BNP's

26  argument that it is materially and adversely impacted by modifications to the Debtors' Plan is

27  pretext, and should be rejected.

28  ///

- 17 -

367677.04 [XP]      25195

C.    THE DEBTORS' PROPOSED MODIFICATIONS SATISFY § 1127(a)

BNP also argues very briefly that § 1127(a) has not been satisfied because the Debtors' Plan allegedly does not provide adequate means for its implementation.  Again, BNP improperly argues that the Debtors' first modification to the Fourth Amended Plan, which reflected the Debtors' settlement with Legendary, does not satisfy § 1127(a); the Court already has determined otherwise.[20]  BNP also appears to suggest that the Debtors' agreement with CB&T impacts implementation of the Debtors' Plan, even though the Debtors already have explained that the monthly interest payments to be made to CB&T under the modified plan will basically be the same as the monthly interest payments that would be made under the current Debtors' Plan.  There is no increase in the risk of nonpayment to BNP as a result of the Debtors' proposed modifications, and in any event the Debtors' modified plan satisfies § 1123(a)(5) by providing adequate means for the Debtors' Plan's implementation.

IV.

DEBTORS' REPLY TO BANK OF AMERICA'S OBJECTION

BofA's objection is frivolous.  First, BofA objects to the Modification Motion simply because it requests authority for CB&T to modify its votes and vote in favor of the Debtors' Plan. Rule 3018(a) expressly provides that the Court may permit a creditor to change an acceptance or rejection of a plan.  BofA does not even acknowledge that the Debtors' request for authority for CB&T to modify its votes is made under Rule 3018(a).[21]  Instead, BofA presents nonsensical and irrelevant arguments relating to Rule 9019, which does not even apply to the relief requested in the Modification Motion.  That BofA's argument is made in bad faith is further evidenced by the fact

///

///

---

[20] In addition, evidence supporting this determination previously was provided to the Court.

[21] *See* Modification Motion, page 30, line 25.

- 18 -

1    that BofA has not taken the same position with respect to Charlestown's agreements with CB&T

2    and PNL regarding their treatment under Charlestown's plan.[22]

3      Second, BofA protests the proposed modified treatment of Chinatrust's and PNL's secured

4    claims under the Third Modified Plan because, according to BofA, "[n]o basis in law exists for the

5    granting of a claim against one estate to a creditor with a claim against a different estate, other than

6    through substantive consolidation." The idea that a parent company cannot agree as part of a plan

7    to guaranty the loan of a subsidiary absent substantive consolidation of their estates is ridiculous.

8    That BofA's argument is made in bad faith is also evidenced by the fact that under Charlestown's

9    proposed modified plan BofA's loan to Debtor Meruelo Maddux Properties – 760 S. Hill Street,

10    LLC ("MMP 760 S. Hill"), will be newly guaranteed by fellow Debtor Merco Group – Southpark,

11    LLC ("MG Southpark"), and its loan to MG Southpark will be newly guaranteed by MMP 760 S.

12    Hill, but Charlestown's plan does not provide for the substantive consolidation of those two estates.

13      Finally, having no legitimate reason to object to the Modification Motion, BofA tries to

14    create new issues to litigate about by filing two frivolous motions and claiming that these motions

15    raise "issues [that] need to be addressed." Particularly, BofA has filed a motion for reconsideration

16    of the Court's unappealed order entered four months ago, after substantial litigation before this

17    Court and the District Court, approving the settlement between two of the Debtors and LA County,

18    and a second motion for reconsideration of an unappealed order entered by the Court nine months

19    ago, after substantial briefing and argument in this Court, in which the Court determined that LA

20    County's claims are impaired under the terms of the Debtors' Plan. The Debtors and LA County

21    will respond to these frivolous motions in due course,[23] and the Debtors reserve the right to seek

22    sanctions against BofA and its counsel for the unnecessary costs that will be incurred by the estate

23    litigating such matters, in addition to other sanctions available under applicable law. With regard

24

25      [22] Technically Charlestown has not yet supplemented its motion to request authority for
26    CB&T and PNL to modify its votes on Charlestown's plan, but it seems unlikely that BofA would
  contest such a request when made by Charlestown.

27      [23] The motions have been set for hearing on May 5, 2011, at 9:30 a.m.

28

367677.04 [XP]    25195

1  to the Modification Motion, however, the fact that BofA has chosen to multiply the litigation in this

2  case by filing more motions that have been set for hearing one month from now does not give rise

3  to any valid objection to the relief sought by the Debtors in the Modification Motion.

4

5                                    V.

6                              CONCLUSION

7        For the foregoing reasons and the reasons stated in the Modification Motion and the

8  Debtors' opposition to BNP's motion for authority to withdraw its votes, the Debtors request that

9  the Court grant the relief requested in the Modification Motion as supplemented on April 4, 2010,

10  authorize the Debtors to modify the Debtors' Plan, determine that the proposed modification does

11  not require resolicitation thereof, and authorize CB&T to modify its votes to accept the Debtors'

12  Plan.

13

14  Dated: April 6, 2011                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

15

16                              By:  _____
                                     John N. Tedford, IV
17                                   Attorneys for Meruelo Maddux Properties,
                                     Inc., and affiliated Debtors and Debtors-in-
18                                   Possession

19

20

21

22

23

24

25

26

27

28

                                   - 20 -

## DECLARATION OF JOHN N. TEDFORD, IV

I, John N. Tedford, IV, declare and state as follows:

1.     I am an attorney at law duly licensed to practice before all of the courts of the State of California and am authorized to appear before this Court.  I am the principal of a professional corporation which is a partner in the law firm of Danning, Gill, Diamond & Kollitz, LLP, general bankruptcy counsel for Meruelo Maddux Properties, Inc., and fifty-three of its direct and indirect subsidiaries which each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on or about March 26 and 27, 2009 (collectively the "Debtors").

2.     I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

3.     On or about March 29, 2011, Kenneth Lee provided me a copy of a CD-Rom with a recording of the hearings which were held in this case on November 10, 2010.  At my request, the portion of the recording relating to the hearing on a motion for reconsideration filed by the Official Committee of Equity Security Holders was transcribed by an employee of Stutman, Treister & Glatt, P.C. ("STG"), and an initial draft of the unofficial transcript was provided to me.  I listened to the recording of the entire hearing, and reviewed and corrected the initial draft of the transcript as I was listening to the recording.  A true and correct copy of the transcript prepared by STG and revised by me is attached as Exhibit "4" hereto.

4.     Attached as Exhibit "5" hereto are true and correct copies of pages 2 through 6, 177 and 184 of the "unofficial" transcript of the hearings held before the Court on March 21, 2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April ___, 2011, at Los Angeles, California.

_____
JOHN N. TEDFORD, IV

- 21 -

367677.04 [XP]     25195

## REQUEST FOR JUDICIAL NOTICE

The above-captioned debtors and debtors-in-possession (collectively the "Debtors") hereby request that the Court take judicial notice of the following:

1.   On October 1, 2010, the Official Committee of Equity Security Holders (the "OEC") filed its *Notice of Filing of Official Committee of Equity Holders Committee's Solicitation Letter* (docket entry no. 1905). A true and correct copy of this document is attached as Exhibit "1" hereto.

2.   On October 5, 2010, the Debtors submitted to the Court their proposed solicitation letter to be included with the Debtors' disclosure statement, proposed plan, and other documents to be served on parties entitled to vote on the Debtors' and other parties' proposed plans. A true and correct copy of the Debtors' proposed letter is attached as Exhibit "2" hereto.

3.   On October 5, 2010, the OEC filed its *Limited Objection to Debtors' Proposed Solicitation Letter* (docket entry no. 1921). A true and correct copy of the OEC's limited objection is attached as Exhibit "3" hereto.

4.   On January 24, 2011, the Court entered its *Order Granting Motion for (1) Approval of Settlement with Legendary Investors Group No. 1, LLC, (2) Authority to Assume and Assign Executory Contracts and Unexpired Leases, and (3) Authority to Amend Debtors' Proposed Chapter 11 Plan* (docket entry no. 2652). A true and correct copy of this order is attached as Exhibit "6" hereto.

Dated: April 6, 2011

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
   John N. Tedford, IV
   Attorneys for Meruelo Maddux Properties,
   Inc., and affiliated Debtors and Debtors-in-
   Possession

- 22 -

367677.04 [XP]    25195

# EXHIBIT 1

Case 1:09-bk-13356-VK   Doc 1905   Filed 10/01/10   Entered 10/01/10 15:12:52   Desc
Main Document   Page 1 of 2

JENNER & BLOCK LLP
Kenneth K. Lee (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Telephone: 213-239-5100
Facsimile: 213-239-5199
klee@jenner.com

JENNER & BLOCK LLP
Marc B. Hankin  (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
Telephone: 212-891-1600
Facsimile: 212-891-1699
mhankin@jenner.com

RON ORR & PROFESSIONALS, INC.
Ronald S. Orr (Cal. Bar No. 54257)
578 Washington Blvd., #389
Marina Del Rey, CA  90292
Telephone: 310-301-4839
Facsimile: 310-301-6549
ronorresq@aol.com

RODIGER LAW OFFICE
Georgiana G. Rodiger, (Cal. Bar No. 94416)
272 South Los Robles Avenue
Pasadena, California 91101
Telephone: 626-793-7264
Facsimile: 626-793-7592
crodiger@rodigerlaw.com

Attorneys for Equity Committee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| **IN RE:**<br><br>**MERUELO MADDUX PROPERTIES, INC.,**<br>**et al.**[1]<br><br>**Debtors and Debtors-in-Possession.**<br><br><br>**AFFECTS ALL DEBTORS** | CASE NO. 09-bk-13356-KT<br><br>Chapter 11<br><br>NOTICE OF FILING OF OFFICIAL<br>COMMITTEE OF EQUITY HOLDERS<br>COMMITTEE'S SOLICITATION<br>LETTER<br><br>DATE:   OCTOBER 6, 2010<br>TIME:   9:30 AM<br>DEPT:   Courtroom 301<br>            21041 Burbank Blvd.<br>            Woodland Hills, California |

---

[1] This case is jointly administered with chapter 11 cases filed with the Court by numerous affiliated entities. The Debtors and debtors-in-possession and their respective tax identification numbers are identified in the *Order Directing The Joint Administration Of Related Cases* entered by the Court on April 7, 2009 (docket entry no. 30).

1    TO THE HONORABLE KATHLEEN THOMPSON, UNITED STATES BANKRUPTCY

2    COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, DEBTORS, AND THEIR

3    COUNSEL AND INTERESED PARTIES:

4        The Official Committee of Equity Holders (the "Equity Committee") hereby submits the

5    attached solicitation letter of the Equity Committee for approval of the Court and inclusion in the

6    solicitation packages to be mailed to holders of claims and interests in the above-captioned

7    bankruptcy cases.

8

9

10

11

12   Dated: October 1, 2010                    Respectfully submitted,

13

14                                             **THE OFFICIAL COMMITTEE OF EQUITY
                                               HOLDERS OF MERUELO MADDUX**
15                                             **PROPERTIES, INC. AND ITS AFFILIATE-
                                               DEBTORS**
16

17                                             By:    _/s/ Marc B. Hankin_
                                                      Kenneth K. Lee
18                                                    Marc B. Hankin
                                                      Attorneys for the Equity Committee
19

20

21

22

23

24

25

26

27

28

## OFFICIAL COMMITTEE OF EQUITY HOLDERS OF
## MERUELO MADDUX PROPERTIES, INC.

c/o Stephen S. Taylor
Taylor International Fund Ltd.
714 South Dearborn Street, 2nd Floor
Chicago, IL 60605

October 1, 2010

TO:    **THE EQUITY HOLDERS OF**
       **MERUELO MADDUX PROPERTIES, INC.**

---

I write on behalf of the Official Committee of Equity Holders (the "Equity Committee") appointed in connection with the chapter 11 bankruptcy cases, Case No. 09-bk-13356-KT (Jointly Administered) (these "Cases") pending in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"), of Meruelo Maddux Properties, Inc. ("MMPI") and related debtors (collectively, the "Debtors"). The Equity Committee was appointed on July 19, 2010. Generally speaking, the Equity Committee has been appointed to represent the common interests of MMPI's non-insider equity holders.

I write to advise you of the Equity Committee's position regarding the slate of three competing plans of reorganization that have been proposed in these Cases. The proposed plans are (i) the plan of reorganization proposed by debtor Meruelo Maddux Properties, Inc. (as amended and modified from time to time, the "MMPI Plan"); (ii) the plan of reorganization proposed by Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (as amended and modified from time to time, the "Charlestown Plan"); and (iii) the plan of reorganization proposed by Legendary Investors Group No. 1 LLC and East West Bank (as amended and modified from time to time, the "Legendary Plan," and together with the MMPI Plan and the Charlestown Plan, the "Plans"). Each of the Plans is enclosed with the Solicitation Package that this letter accompanies, as are disclosure statements that describe each of the Plans.

**AS DESCRIBED MORE FULLY BELOW, AS A REPRESENTATIVE OF THE NON-INSIDER EQUITY HOLDERS OF MMPI, THE EQUITY COMMITTEE HAS DETERMINED THAT FOR THOSE EQUITY HOLDERS ELECTING TO RETAIN THEIR EQUITY INTERESTS, THE MMPI PLAN IS THE BEST ECONOMIC ALTERNATIVE FOR SUCH EQUITY HOLDERS UNDER THE CIRCUMSTANCES OF THESE CASES. GIVEN THAT THE EQUITY COMMITTEE HAS NOT BEEN ABLE TO COMPLETE ITS DUE DILIGENCE AS TO CERTAIN ACTIONS OF MMPI'S SENIOR MANAGEMENT -- DUE TO MMPI'S GENERAL RELUCTANCE TO PROVIDE INFORMATION ON A TIMELY BASIS -- THE EQUITY COMMITTEE IS NOT IN A POSITION TO ENDORSE THE MMPI PLAN AT THIS TIME.**

For those equity holders electing to receive a cash distribution, the Charlestown plan provides the highest cash recovery for such equity holders.

The Equity Committee does not take a position as to whether an equity holder should elect to retain such interest under a plan or to receive cash in exchange for such interest.

The MMPI Plan offers each shareholder of MMPI the option to: (i) retain its existing interest in MMPI; or (ii) redeem its MMPI shares for a cash payment of $0.25 per share. In this manner, a shareholder may elect to retain its equity interest in MMPI without immediate dilution of such interest when MMPI emerges from chapter 11 protection. As discussed in the disclosure statement accompanying the MMPI Plan, such interest would be subject to dilution, beginning on the fourth anniversary of MMPI's emergence from chapter 11 protection, in the event that Watermarke Properties, Inc. elects to exercise its right to convert its $15 million convertible secured loan into Reorganized MMPI shares at the conversion price of $.50 per share. Please read the disclosure statement accompanying the MMPI Plan for a more complete description of the MMPI Plan, including such loan and its conversion feature.

The MMPI Plan includes certain corporate governance provisions that are designed to better protect the interests of the non-insider equity holders, including the structure of Reorganized MMPI's board of directors, which will consist of seven directors. Richard Meruelo and John Maddux will have the right to appoint four of the seven directors. The Equity Committee will have the right to appoint three of the directors, and one of such directors must be approved by Richard Meruelo and John Maddux (collectively, the "Equity Committee Directors"). The terms of the initial directors will be staggered such that the Equity Committee Directors will not be up for re-election until at least three years after the MMPI Plan's effective date. The Equity Committee Directors will have veto power over the selection of Reorganized MMPI's Chief Financial Officer and outside auditor (the costs of which auditor must be consistent with Reorganized MMPI's budget).

The Charlestown Plan offers each shareholder of MMPI the option to: (i) retain its existing interest in MMPI, subject to immediate dilution as a result of MMPIA (as defined in the Charlestown Plan) acquiring 55% of the shares of Reorganized MMPI for $23.0 million; or (ii) redeem its MMPI shares for a cash payment of $0.35 per share. The Charlestown Plan includes certain corporate governance provisions that are designed to better protect the interests of non-insider equity holders. Please read the disclosure statement accompanying the Charlestown Plan for a more complete description of the Charlestown Plan, including the corporate governance provisions and the range of outcomes regarding the dilution of MMPI shareholders who elect to retain their interests based on a variety of factors, including the number of shares that are redeemed for cash.

The Equity Committee has carefully reviewed the each of the Plans, and has evaluated possible alternative outcomes for equity holders, including a liquidation of the Debtors and their business and assets. The Equity Committee has concluded that (i) for those equity holders who elect to retain their equity interests, the MMPI Plan, under the circumstances of these Cases and subject to the statement set forth below, provides the highest equity recovery for such non-insider equity holders, (ii) for those equity holders who elect to receive a cash distribution, the

-2-

Charlestown Plan provides the highest cash recovery for such non-insider equity holders, in each case as compared with likely ranges of recoveries under those alternative outcomes.

## PLEASE READ THE FOLLOWING IMPORTANT STATEMENT

Shortly after the Equity Committee was appointed on July 19, 2010, the Equity Committee has attempted to conduct both formal and informal due diligence with respect to certain of the actions of MMPI's senior management. The Equity Committee determined that conducting such due diligence was necessary and appropriate in order to discharge its fiduciary duty to all non-insider equity holders of MMPI. Such due diligence included, but was not limited to, requesting copies of the minutes of the meeting of MMPI's board of directors and requesting a meeting with the MMPI directors who were not officers of MMPI (collectively, the "Non-Insider Directors"). MMPI has been extremely reluctant to provide copies of the minutes of such meetings and, notwithstanding several hearings before the Bankruptcy Court to compel the production of such documents, MMPI has not yet provided the minutes of the meetings held in 2010. The Non-Insider Directors declined to meet with the members of the Equity Committee. Please note that these are only two examples of MMPI's conduct in response to the Equity Committee's reasonable due diligence requests.

The Equity Committee, as a result of MMPI's general reluctance to provide information to the Equity Committee in a timely fashion, has not been able to complete its due diligence with respect to certain actions of MMPI's senior management prior to the deadline for solicitation of the three plans of reorganization. Given that the Equity Committee's fiduciary duty continues beyond this deadline and throughout the plan confirmation process, the Equity Committee will continue to conduct such due diligence during the plan solicitation and, if necessary, plan confirmation process. This diligence will include additional discovery concerning possible transactions between MMPI and certain members of its senior management. The Equity Committee, in the discharge of its fiduciary duties, will address any facts or circumstances that arise as a result of such due diligence in accordance with such duties and the rules and standards applicable to a chapter 11 case.

*The foregoing is not intended as a substitute for each Plan and its respective disclosure statement. Non-insider equity holders should read each Plan and its disclosure statement in their entirety, and then make their own respective independent decision as to electing to receive cash or retain their equity interests, and in voting on each Plan.*

-3-

DISCLAIMER: THE EQUITY COMMITTEE DOES NOT REPRESENT PARTICULAR EQUITY HOLDERS AND CANNOT ADVISE INDIVIDUAL EQUITY HOLDERS REGARDING THE IMPACT OF ANY PLAN ON THEM. PLEASE CONTACT YOUR OWN COUNSEL TO ASSESS SUCH IMPACT OF EACH PLAN ON THE INDIVIDUAL EQUITY HOLDER.

Very truly yours,


**OFFICIAL COMMITTEE OF EQUITY HOLDERS OF MERUELO MADDUX PROPERTIES, INC.**


By: _____

Stephen S. Taylor
Chairman

-4-

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><br>                                         Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 1:09-bk-13356-KT |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 353 N.Clark Street, Chicago, IL 60654

A true and correct copy of the foregoing document described as

NOTICE OF FILING OF OFFICIAL COMMITTEE OF EQUITY HOLDER COMMITTEE'S SOLICITATION LETTER

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On 10/1/2010 checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On 10/1/2010 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 10/1/2010 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/1/2010 | Michael H. Matlock | /s/ Michael H. Matlock |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                    **F 9013-3.1**

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 1:09-bk-13356-KT |
|---|---|

## I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

| | |
|---|---|
| Michael C. Abel | mca@dgdk.com |
| Robert Abiri | rabiri@abiriszeto.com |
| John J. Bingham | jbingham@dgdk.com |
| Peter Bonfante | peterbonfante@bsalawfirm.com |
| Julia W. Brand | jwb@dgdk.com |
| Jennifer L. Braun | jennifer.l.braun@usdoj.gov |
| Martin J. Brill | mjb@lnbyb.com |
| George T. Busu | george.busu@limruger.com |
| Andrew W. Caine | acaine@pszyjw.com |
| Howard Camhi | hcamhi@ecjlaw.com |
| Gary O. Caris | gcaris@mckennalong.com |
| James E. Carlberg | jcarlberg@boselaw.com |
| Sara Chenetz | chenetz@blankrome.com |
| Jacquelyn H. Choi | jchoi@swjlaw.com |
| Ronald R. Cohn | rcohn@horganrosen.com |
| Enid M. Colson | emc@dgdk.com |
| Michaeline H. Correa | mcorrea@jonesday.com |
| Brian L. Davidoff | bdavidoff@rutterhobbs.com |
| Aaron De Leest | aed@dgdk.com |
| Daniel Denny | ddenny@gibsondunn.com |
| Jeffrey W. Dulberg | jdulberg@pszjlaw.com |
| Lisa Hill Fenning | Lisa.Fenning@aporter.com |
| Michael G. Fletcher | mfletcher@frandzel.com |
| Barry V. Freeman | bvf@jmbm.com, bvf@jmbm.com |
| Donald L. Gaffney | dgaffney@swlaw.com |
| Thomas M. Geher | tmg@jmbm.com |
| Bernard R. Given | bgiven@frandzel.com |
| Barry S. Glaser | bglaser@swjlaw.com |
| Michael I. Gottfried | mgottfried@lqbfirm.com |
| John A. Graham | jag@jmbm.com |
| Ofer M. Grossman | omglaw@gmail.com |
| Jodie M. Grotins | jgrotins@mcguirewoods.com |
| Peter J. Gurfein | pgurfein@akingump.com |
| Cara J. Hagan | carahagan@haganlaw.org |
| Asa S. Hami | ahami@sulmeyerlaw.com |
| Brian T. Harvey | bharvey@buchalter.com |
| David W. Hercher | dave.hercher@millernash.com |
| William W. Huckins | whuckins@allenmatkins.com |
| Natasha L. Johnson | natasha.johnson@dlapiper.com |
| Lance N. Jurich | ljurich@loeb.com |
| Alexandra Kazhokin | akazhokin@buchalter.com |
| William H. Kiekhofer | wkiekhofer@mcguirewoods.com |
| Andrew F. Kim | kim-a@blankrome.com |
| Michael S. Kogan | mkogan@ecjlaw.com |
| Tamar Kouyoumjian | tkouyoumjian@sulmeyerlaw.com |
| Duane Kumagai | dkumagai@rutterhobbs.com |
| Lewis R. Landau | lew@landaunet.com |
| David E. Leta | dleta@swlaw.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                              31                                 F 9013-3.1

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER:  1:09-bk-13356-KT |
|---|---|

| | |
|---|---|
| Katherine Lien | katie.lien@sbcglobal.net |
| Steven K. Linkon | slinkon@rcolegal.com |
| Robert M. Llewellyn | michael.llewellyn@boe.ca.gov |
| Richard Malatt | rmalatt@gmail.com |
| Elmer D. Martin | elmermartin@gmail.com |
| Elissa Miller | emiller@sulmeyerlaw.com |
| Iain A. W. Nasatir | inasatir@pszjlaw.com |
| Jennifer L. Nassiri | jnassiri@venable.com |
| Ronald S. Orr | ronorresq@aol.com |
| Lawrence Peitzman | lpeitzman@pwkllp.com |
| Eric S. Pezold | epezold@swlaw.com |
| Christopher E. Prince | cprince@lesnickprince.com |
| Michael H. Raichelson | mhr@cabkattorney.com |
| Dean G. Rallis Jr. | drallis@sulmeyerlaw.com |
| Kurt Ramlo | kurt.ramlo@dlapiper.com |
| Craig M. Rankin | cmr@lnbyb.com |
| Michael B. Reynolds | mreynolds@swlaw.com |
| Georgiana G. Rodiger | crodiger@rodigerlaw.com |
| Kirsten A. Roe | kroe@wthf.com |
| Martha E. Romero | Romero@mromerolawfirm.com |
| Victor A. Sahn | vsahn@sulmeyerlaw.com |
| Zev Shechtman | zshechtman@dgdk.com |
| Jeffrey S. Shinbrot | jeffrey@shinbrotfirm.com |
| Stephen Shiu | sshiu@swlaw.com |
| Daniel H. Slate | dslate@buchalter.com |
| Sirjit P. Soni | surjit@sonilaw.com |
| Tracie L. Spies | tracie@haganlaw.org |
| James Stang | jstang@pszjlaw.com |
| Catherine Steege | csteege@jenner.com |
| Derrick Talerico | dtalerico@loeb.com |
| John N. Tedford | jtedford@dgdk.com |
| James A. Timko | jtimko@allenmatkins.com |
| Alan G. Tippie | atippie@sulmeyerlaw.com |
| United States Trustee (SV) | ustpregion16.wh.ecf@usdoj.gov |
| Rouben Varozian | rvarozian@bzlegal.com |
| Jason L. Weisberg | jason@gdclawyers.com |
| William E. Winfield | wwinfield@nchc.com |
| Jasmin Yang | jyang@swlaw.com |
| Damon Thayer | dtahyer@jenner.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

32

F 9013-3.1

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 1:09-bk-13356-KT |
|---|---|

## III. SERVED BY OVERNIGHT MAIL

| Debtor<br>Meruelo Maddux Properties, Inc.<br>761 Terminal Street, Building 1<br>2nd Floor<br>Los Angeles, CA 90021 | Office of the United States Trustee<br>Jennifer L. Braun<br>21051 Warner Center Lane<br>Suite 115<br>Woodland Hills, CA 91367<br>Email: jennifer.i.braun@usdoj.gov | Counsel for Creditors' Committee<br>Victor A. Sahn<br>Asa S. Hami<br>Tamar Kouyoumjian<br>Alan G. Tippie<br>SulmeyerKupetz, A Professional Corp.<br>333 South Hope Street, 35th Floor<br>Los Angeles, CA 90071<br>Email: ahami@sulmeyerlaw.com;<br>vsahn@sulmeyerlaw.com;<br>tkouyoumjian@sulmeyerlaw.com;<br>atippie@sulmeyerlaw.com |
|---|---|---|
| Counsel for Debtor<br>John J. Bingham<br>Aaron DeLeest<br>John N. Tedford<br>Danning Gill Diamond & Kollitz<br>2029 Century Park East, 3rd Floor<br>Los Angeles, CA 90067<br>Email: jbingham@dgdk.com;<br>aed@dgdk.com; jtedford@dgdk.com | Debtor's Special Securities<br>Karol K. Denniston<br>Jennifer L. Nassiri<br>DLA Piper LLP (US)<br>550 South Hope Street, Suite 2300<br>Los Angeles, CA 90071-2678<br>Email: karol.denniston@dlapiper.com;<br>Jennifer.nassiri@dlapiper.com | The Honorable Kathleen Thompson<br>United States Bankruptcy Judge<br>210141 Burbank Boulevard<br>Suite 305<br>Woodland Hills, CA 91367 |

## III. SERVED BY U.S. MAIL

| Committee Member<br>EDI Architecture, Inc.<br>Attn: Darcy Garneau<br>2800 Post Oak Boulevard, #3800<br>Houston, TX 77056 | Committee Member<br>GeoDesign, Inc.<br>Attn: Chris Zadoorian<br>2121 Town Center Place, Suite 130<br>Anaheim, CA 92806 | Committee Member<br>Kirman Plumbing Company<br>Attn: Sam J. DeFelice<br>794 Merchant Street<br>Los Angeles, CA 90021 |
|---|---|---|
| Committee Member<br>Complete Terminal Services, Inc.<br>Attn: William L. Clements<br>11105 Knott Avenue, Suite E<br>Cypress, CA 90630 | Committee Member<br>L.P. Carreras & Associates, Inc.<br>Attn: Luis P. Carreras<br>9550 Firestone Boulevard, Suite 204<br>Downey, CA 90241 | Frank L. Rudy, Agent<br>Western Miers Produce & Nuts, Inc.<br>2910 San Fernando Road<br>Los Angeles, CA 91101 |
| Los Angeles County Tax Collector<br>Kenneth Hahn Hall of Administration<br>225 North Hill Street, Room 160<br>Los Angeles, CA 90012 | Counsel for California Bank & Trust<br>Daniel H. Slate<br>Buchalter Nemer<br>1000 Wilshire Boulevard, #1500<br>Los Angeles, CA 90017-2457<br>Email: dslate@buchalter.com | Counsel for FNBN-CMLCOM LLC<br>David E. Leta<br>Stephen Shiu<br>Snell & Wilmer LLP<br>15 West South Temple, #1200<br>Salt Lake City, UT 84101-10004<br>Email: dleta@swlaw.com;<br>sshiu@swlaw.com |
| Counsel for East West Bank<br>James I. Stang<br>Iain A.W. Nasatir<br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Boulevard,<br>#1100<br>Los Angeles, CA 90067 | Counsel for Creditor China Bank<br>Steven K. Linkon<br>Routh Crabtree Olsen, P.C.<br>335 Factoria Boulevard, S.E., #200<br>Bellevue, WA 98006 | Counsel for Cathay Bank<br>Michael Gerard Fletcher<br>Frandzel Robins Bloom & Csato<br>6500 Wilshire Boulevard, 17th Floor<br>Los Angeles, CA 90048 |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*

**F 9013-3.1**

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 1:09-bk-13356-KT |
| --- | --- |

| **Counsel for FNBN-CMLCOM I LLC**<br>Jeffrey M. Singletary<br>Snell & Wilmer L.L.P.<br>600 Anton Boulevard, Suite 1400<br>Costa Mesa, CA  92626<br>Email:  jsingletary@smlaw.com | **Counsel for Imperial Capital Bank**<br>Andrew F. Kim<br>Blank Rome LLP<br>1925 Century Park East, 19th Floor<br>Los Angeles, CA  90067<br>Email:  kim-a@blankrome.com | **Counsel for PNL Pomona LP**<br>Cara Hagan<br>Law Offices of Hagan & Associates<br>110 East Wilshire Avenue, Suite 405<br>Fullerton, CA  92832<br>Email:  carahagan@haganlaw.org |
| --- | --- | --- |
| **Counsel for United Commercial Bank**<br>Curtis C. Jung<br>Roger Yuen<br>Jung & Yuen LLP<br>888 South Figueroa Street, #720<br>Los Angeles, CA  90017<br>Email:  ccjung@aol.com | **Counsel for Stanford Group, LP**<br>Michael H. Raichelson<br>Law Offices of Michael H. Raichelson<br>6400 Canoga Avenue, #352<br>Woodland Hills, CA  91387 | **Securities and Exchange Commission**<br>Sandra W. Lavigna<br>5670 Wilshire Boulevard, 11th Floor<br>Los Angeles, CA  90036<br>Email:  lavignaS@sec.gov |
| **Counsel for Kennedy Funding**<br>Michael S. Kogan<br>Ervin, Cohen & Jessup LLP<br>9401 Wilshire Boulevard, 9th Floor<br>Beverly Hills, CA  90212<br>Email:  mkogan@ecjlaw.com | **Counsel for Legendary Investors Group No. 1, LLC**<br>Surjit Soni<br>Soni Law Firm<br>35 North Lake Avenue, Suite 720<br>Pasadena, CA  91101 | **Counsel for LA County Metropolitan Transportation Authority**<br>Brian M. Hoffstadt<br>Jones Day<br>555 South Flower Street, 50th Floor<br>Los Angeles, CA  90071<br>Email:  bhoffstadt@jonesday.com |
| **Counsel for LA County Metropolitan Transportation Authority**<br>Tobias S. Keller<br>Michaeline H. Correa<br>Jones Day<br>555 California Street, 26th Floor<br>San Francisco, CA  94104<br>Email:  tkeller@jonesday.com;<br>mhcorrea@jonesday.com | **LA County Metropolitan Authority**<br>Robert E. Kalunian<br>Charles M. Safer<br>Joyce L. Change<br>One Gateway Plaza, 25th Floor<br>Los Angeles, CA  90012 | **Counsel for Pacific Commerce Bank**<br>Ronald R. Cohn<br>Horgan, Rosen, Beckman & Coren LLP<br>23975 Park Sorrento, Suite 200<br>Calabasas, CA  91302-40001<br>Email:  rcohn@horganrosen.com |
| **Counsel for San Bernardino Taxing Authority**<br>Martha E. Romero<br>Romero Law Firm<br>BMR Professional Building<br>6516 Bright Avenue<br>Whittier, CA  90601<br>Email:  romero@mromerolawfirm.com | **Counsel for Justman Packaging & Display**<br>Ofer M. Grossman<br>Law Offices of Ofer M. Grossman<br>P.O. Bo 5576<br>Santa Monica, CA  9409 | **Counsel for Canpartners Realty Holding Company IV, LLC**<br>Andrew S. Clare<br>Lance N. Jurich<br>Benjamin R. King<br>Derrick Talerico<br>Loeb & Loeb LLP<br>10100 Santa Monica Boulevard, #2200<br>Los Angeles, CA  90067-4120 |
| David P. Beitchman<br>16130 Ventura Blvd Ste 570<br>Encino, CA 91436 | SCS Flooring Systems<br>C/O Raymond Myer Esq<br>1220 ½ State Street<br>Santa Barbara, CA 93101 | Arthur J Hazarabedian<br>California Eminent Domain Law Group<br>3429 Ocean View Blvd Suite L<br>Glendale, CA 91208 |
| Larry E. Wasserman<br>Law Offices of Larry E Wasserman<br>12800 Riverside Drive, 3rd Floor<br>Studio City, CA 91607 | Debt Acquisition Company of<br>America V, LLC<br>1565 Hotel Circle South, Ste 310<br>Sand Diego, CA 92108 | |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9013-3.1

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><div align="right">Debtor(s).</div> | CHAPTER  11 |
|---|---|
|  | CASE NUMBER:  1:09-bk-13356-KT |

**III.  SERVED BY PERSONAL DELIVERY**

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**III.  SERVED BY FACSIMILE TRANSMISSION**

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**III.  SERVED BY EMAIL**

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* .                                                                                    **F 9013-3.1**

# EXHIBIT 2