JOHN N. TEDFORD, IV (State Bar No. 205537)
*JTedford@DGDK.com*
ENID M. COLSON (State Bar No. 189912)
*EColson@DGDK.com*
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Meruelo Maddux Properties, Inc., and
affiliated Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-13356-VK |
| MERUELO MADDUX PROPERTIES, INC., et al.[1] | Chapter 11 (Jointly Administered) |
| Debtors and Debtors-in-Possession. | **NOTICE OF MOTION AND DEBTORS' MOTION FOR ORDER EXTENDING AUTHORITY FOR THE USE OF CASH COLLATERAL AND TO MAINTAIN CASH MANAGEMENT SYSTEM THROUGH JULY 31, 2011; AND MEMORANDUM OF POINTS AND AUTHORITIES, DECLARATION OF ANDREW MURRAY AND REQUEST FOR JUDICIAL NOTICE IN SUPPORT THEREOF** |

☑    Affects all Debtors

☐    Affects the following Debtor(s):
☐

Date:    April 28, 2011
Time:    2:30 p.m.
Place:   Courtroom 301
         21041 Burbank Blvd.
         Woodland Hills, California

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

367739.02 [XP]    25195

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................... 11

II.     STATEMENT OF FACTS ...................................................................................... 12

        A.      THE DEBTORS' OVERALL BUSINESS MODEL AND
                APPROACH ................................................................................................ 12

        B.      THE DEBTORS' COLLECTIVE ORGANIZATION AND
                OPERATIONS ............................................................................................ 14

        C.      THE DEBTORS' PRIOR REQUESTS FOR AUTHORITY TO USE
                CASH COLLATERAL ............................................................................... 14

        D.      CHAPTER 11 PLANS PROPOSED IN THIS CASE ............................... 18

III.    THE DEBTORS' REQUEST FOR AUTHORITY TO USE CASH
        COLLATERAL  AND TO CONTINUE USING THE CASH
        MANAGEMENT SYSTEM ................................................................................... 19

IV.     ARGUMENT ............................................................................................................ 25

        A.      THE DEBTORS SHOULD BE AUTHORIZED TO USE CASH
                COLLATERAL  AND MAINTAIN THE CASH MANAGEMENT
                SYSTEM THROUGH JUNE 30, 2011, ON A FINAL BASIS ................ 25

        B.      IF RELIEF IS NOT GRANTED ON A FINAL BASIS AT THE
                HEARING ON APRIL 28, 2011, RELIEF SHOULD BE GRANTED
                ON AN INTERIM BASIS ........................................................................... 29

V.      CONCLUSION ......................................................................................................... 29

367739.01 [XP]      25195

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Federal Natl. Mortgae v. Dacon Bollingsbrook Associates Limited Partnership, 153

5

B.R. 204; 214 (N.D. Ill. 1993)* .............................................................................. 26

*In re Dynaco Corporation, 162 B.R. 389 (Bankr. D. N.H. 1993)* ................................ 26

6

*In re Elliott Lease Cars, Inc., 20 B.R. 893 (Bankr. D.R.I. 1982)* ................................ 26

7

*In re Martin, 761 F.2d 472 (8ᵗʰ Cir. 1985).* ............................................................. 26

8

*In re McCombs Props. VI, Ltd., 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988)* ............... 26

9

*In re O'Connor, 808 F.2d 1393, 1397 (l0th Cir. 1987* ............................................... 26

10

*In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. C.D. Cal. 1981)* ............................... 26

11

*In re Proalert , LLC, 314 B. R.436, 444 (9ᵗʰ Cir. B.A.P.)* ......................................... 27

12

*In re Stein, 19 B.R. 458 (Bankr. E.D. Pa. 1982)* ...................................................... 26

13

*In re Stein, 19 B.R. 458, 459. (Bankr. E.D. Pa. 1982)* ............................................. 26

14

*In re Triplett, 87 B.R. 25 (Bankr. W.D.Tex. 1988)* ............................................. 26, 27

15

**Statutes**

16

11 U.S.C. § 1107 ................................................................................................ 11, 34

17

11 U.S.C. § 1107(a) ................................................................................................. 25

18

11 U.S.C. § 1108 ......................................................................................... 11, 25, 34

19

11 U.S.C. § 361 ....................................................................................................... 26

20

11 U.S.C. § 362 ....................................................................................................... 26

21

11 U.S.C. § 363 ....................................................................................................... 26

22

11 U.S.C. § 363(a) ................................................................................................... 25

23

11 U.S.C. § 363(c)(l) ............................................................................................... 25

24

11 U.S.C. §363(c)(2) ............................................................................................... 25

25

11 U.S.C. § 363(e) ................................................................................................... 26

26

11 U.S.C. § 364 ....................................................................................................... 26

27

28

1

## TABLE OF AUTHORITIES (cont.)

2
<u>**Page(s)**</u>

3

4
<u>**Rules**</u>

5
Fed. R. Bankr. P. 4001(b)(2) ........................................................................................ 28

6
Local R. 4001-2(e)......................................................................................................... 28

7
Local R. 4001-2(f) ........................................................................................................ 28

8
Local Rule 4001-2(b)..................................................................................................... 9

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **PLEASE TAKE NOTICE** that on April 28, 2011, at 2:30 p.m., or as soon thereafter as the

2    matter may be heard, in Courtroom 301 of the United States Bankruptcy Court located at 21041

3    Burbank Boulevard, Woodland Hills, California, the above-captioned debtors and debtors-in-

4    possession (collectively the "Debtors"), will and do hereby move for an order extending authority

5    for the Debtors' use of cash collateral through July 31, 2011, on the same terms and conditions as

6    the Court authorized such use through April 30, 2011, and authorizing the Debtors' continued use

7    of their integrated cash management system.  In the event that the Court does not grant such relief

8    on a final basis prior to April 30, 2011, the Debtors request that the Court authorize such use on

9    such terms on an interim basis pending a final hearing on this motion.

10    Prior to filing this Motion, the Debtor contacted counsel for Bank of America ("BofA"),

11    California Bank & Trust ("CB&T"), and Chinatrust Bank ("Chinatrust") to request that they

12    consent to such relief through June 30, 2011.  CB&T responded and indicated that it would consent

13    to such relief.  Chinatrust responded and indicated that it would not consent to such relief in light of

14    certain other open issues being litigated by the parties.  BofA has not yet indicated whether it

15    would or would not consent to such relief.

16    This motion is made on the following grounds: On March 26 and 27, 2009 (the "Petition

17    Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the United

18    States Code (the "Code").  On January 13, 2010, after numerous evidentiary hearings concerning

19    the values of certain of the Debtors' real properties, the Court entered its *Order Authorizing the*

20    *Debtors' Use of Cash Collateral on a Final Basis and Approving the Debtors' Use of Its Cash*

21    *Management System* (the "January 2010 Cash Collateral Order") (*docket entry no. 1016*).  Pursuant

22    to the January Cash Collateral Order, the Debtors were authorized to use cash collateral through

23    March 31, 2010.  Each "Cash Collateral Creditor" was afforded a base level of adequate protection

24    consisting of (1) a replacement lien in its postpetition cash collateral, (2) the maintenance and

25    preservation of its real property collateral, and (3) the payment of real property taxes against its real

26    property collateral due and payable on and after November 1, 2009.  Further, as to certain of the

27    Cash Collateral Creditors, the Court determined that additional adequate protection would be

28    afforded in the form of a lien against one or more of the real properties referred to in this case as

-2-

1  "Unencumbered Properties."  The specific properties constituting the "Replacement Lien Property

2  Pool" were designated in the Court's *Order Granting the Debtors' Motion for Order Designating*

3  *Real Properties Owned by Debtors Merco Group – 5707 S. Alameda, LLC, and Meruelo Maddux –*

4  *1000 E. Cesar Chavez, LLC, as the Cash Collateral Replacement Lien Property Pool* entered on

5  December 29, 2010 (*docket entry no. 2478*).  As to another Cash Collateral Creditor, the Court

6  determined that additional adequate protection would be afforded in the form of a junior lien

7  against properties in which that Cash Collateral Creditor already had an interest.  As to all other

8  Cash Collateral Creditors addressed in the January Cash Collateral Order, the Court determined

9  that the base level of adequate protection was sufficient.  The January Cash Collateral Order also

10  authorized the Debtors to continue to use their cash management system concurrent with the use of

11  cash collateral.

12          On March 31, 2010, the Court entered its *Order Granting Debtors' Motion for Order*

13  *Extending Authority for the Use of Cash Collateral and to Maintain Cash Management System*

14  *through June 30, 2010* (the "March 2010 Cash Collateral Order") (*docket entry no. 1243*).

15  Pursuant to the March Cash Collateral Order, the Debtors were authorized to use cash collateral

16  through June 30, 2010, on the same terms and conditions as they had been authorized to use cash

17  collateral through March 31, 2010.  The March Cash Collateral Order also authorized the Debtors

18  to continue to use their cash management system concurrent with the use of cash collateral.

19          On August 25, 2010, the Court entered its *Order Granting the Debtors' Motion for Order*

20  *Extending Authority for the Use of Cash Collateral and to Maintain Cash Management System*

21  *through September 30, 2010* (the "August 2010 Cash Collateral Order") (*docket entry no. 1735*).

22  Pursuant to the August Cash Collateral Order, the Debtors were authorized to use cash collateral

23  through September 30, 2010, on the same terms and conditions as they had been authorized to use

24  cash collateral through June 30, 2010, except that the Court also required the Debtors to commence

25  making monthly adequate protection payments to certain Cash Collateral Creditors.  The August

26  Cash Collateral Order also authorized the Debtors to continue to use their cash management system

27  concurrent with the use of cash collateral.

28

367739.02 [XP]    25195

1    On September 30, 2010, the Court entered its *Order Granting the Debtors' Motion for*

2 *Order Extending Authority for the Use of Cash Collateral and to Maintain Cash Management*

3 *System through January 31, 2011* (the "September 2010 Cash Collateral Order") (*docket entry no.*

4 *1899*).  Pursuant to the September Cash Collateral Order, the Debtors were authorized to use cash

5 collateral through January 31, 2011, on the same terms and conditions as they had been authorized

6 to use cash collateral through September 30, 2010.  The September Cash Collateral Order also

7 authorized the Debtors to continue to use their cash management system concurrent with the use of

8 cash collateral.

9    On February 2, 2011, the Court entered its *Order Granting the Debtors' Motion for Order*

10 *Extending Authority for the Use of Cash Collateral and to Maintain Cash Management System*

11 *through April 30, 2011* (the "February 2011 Cash Collateral Order") (*docket entry no. 2727*).

12 Pursuant to the February 2011 Cash Collateral Order, the Debtors were authorized to use cash

13 collateral through April 30, 2011, on the same terms and conditions as they had been authorized to

14 use cash collateral through January 31, 2011.  The February 2011 Cash Collateral Order also

15 authorized the Debtors to continue to use their cash management system concurrent with the use of

16 cash collateral.

17    In October 2010, the Court entered orders approving disclosure statements describing

18 competing Chapter 11 plans of reorganization filed by (1) the Debtors, (2) Charlestown Capital

19 Advisors, LLC and Hartland Asset Management Corporation (collectively, "Charlestown"), and (3)

20 Legendary Investors Group No. 1, LLC and East West Bank.[2]  Confirmation hearings commenced

21 on January 27, 2011, and have continued through March 28, 2011.  Motions to modify the plan

22 proposed by the Debtors and the plan proposed by Charlestown are pending.  The effective date of

23 any plan to be confirmed by the Court is not known at this time.  The Debtors are hereby requesting

24

25

26 _____

27    [2] The plan proposed by Legendary Investors Group No. 1, LLC and East West Bank was
subsequently withdrawn on February 17, 2011 (*docket entry no. 2799*).

28

367739.02 [XP]    25195

1  that the Court extend the authority to use cash collateral through July 31, 2011, which is anticipated

2  to be after the effective date of any plan confirmed by the Court.[3]

3          With respect to all Cash Collateral Creditors, the Debtors continue to propose the following

4  forms of adequate protection:  (1) each Cash Collateral Creditor will be granted a replacement lien

5  in its respective postpetition cash collateral, with the same force, effect, validity and priority of the

6  liens held by the Cash Collateral Creditors in or against their respective prepetition real property

7  collateral; (2) the Debtors will maintain and preserve the Cash Collateral Properties by payment of

8  the ordinary expenses for maintaining and preserving the real property collateral; and (3) the

9  Debtors will pay real property taxes due and payable on and after November 1, 2009, owing to the

10  County of Los Angeles assessed against the Cash Collateral Properties on or before the date on

11  which such taxes are payable without penalty (collectively the "Base Adequate Protection").  In

12  addition, where the Court previously authorized the use of cash collateral through April 30, 2011,

13  with additional adequate protection afforded to a Cash Collateral Creditor, the Debtors propose the

14  adequate protection for the use of cash collateral through July 31, 2011, in the same form as

15  previously ordered by the Court (except in the case of one Cash Collateral Creditor who settled

16  with the Debtors after the February 2011 Cash Collateral Order was entered).  The Cash Collateral

17  Creditors, the Cash Collateral Properties, and the proposed forms of adequate protection are as

18  follows:[4]

19

20

21

22

_____

23      [3] This assumes, of course, that the prevailing plan proponent proceeds to the effective date

24  after confirmation.  Charlestown's plan is noticeably non-committal in this regard.

25      [4] Consistent with the Court's prior orders, the phrase "cash collateral actually used" means
the total cash collateral generated by the Cash Collateral Property, less the direct expenses of

26  maintenance, operation and preservation of the real property collateral, less any real property taxes
paid, and less monthly cash payments made pursuant to the Court's order.  The "Direct Corporate

27  Property Management" fee is included in the amount to be protected rather than treated as a direct
expense.

28

-5-

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| 1248 Figueroa Street, LLC | 2529 S. Santa Fe Avenue, Los Angeles, California, APN 6302-008-010, owned by Merco Group – 2529 Santa Fe Avenue, LLC | Base Adequate Protection |
| Bank of America | numerous street addresses, including 1150 S. Grand Avenue, Los Angeles, California, APNs 5139-019-040, 5139-020-016, 5139-020-022, 5139-020-024, 5139-024-003, 5139-024-014, 5139-024-015, and 5139-024-016, owned by Merco Group – Southpark, LLC (the "Southpark Property") | Base Adequate Protection |
| Bank of America | 760 S. Hill Street and 325 W. 8th Street, Los Angeles, California, APNs 5144-014-046 through 5144-014-139, owned by Meruelo Maddux Properties – 760 S. Hill Street, LLC (aka "Union Lofts") | (1) Base Adequate Protection, (2) cash payments of $20,000 per month, and (3) a junior lien on the Southpark Property in an amount equal to the interest that has and will accrue at the default rate from August 1, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires, less cash payments made pursuant hereto |
| Wells Fargo Bank, N.A., successor by consolidation to Wells Fargo Bank Minnesota, National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2002-C1 acting by and through Berkadia Commercial Mortgage, Inc., its Special Servicer | 2445, 2460 and 2535 E. 12th Street, Los Angeles, California, APNs 5168-003-013, 5168-005-021 and 5168-004-001, owned by Santa Fe Commerce Center, Inc. | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |

-6-

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| California Bank & Trust | 788 South Alameda Street, Los Angeles, California, APN 5166-031-014, owned by 788 South Alameda, LLC | CB&T has consented based on the following:<br><br>(1) Base Adequate Protection,<br><br>(2) cash payments of $24,000 per month, and<br><br>(3) a lien on the Replacement Lien Property Pool in an amount equal to the amount of cash collateral actually used from March 27, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires |
| Cathay Bank (two loans secured by the same real property). | 1312 E. 7th Street, Los Angeles, California, APN 5146-009-003 (the "7th Street Produce Market"), and 761 Terminal Street, Los Angeles, California,  APNs 5146-009-004 and 5146-009-005 ("Alameda Square"), owned by Alameda Produce Market, LLC | Base Adequate Protection (consent granted provided Debtors make monthly interest payments consistent with the terms of Cathay's settlement with the Debtors which was previously approved by the Court) |
| Chinatrust Bank, USA | 3185 E. Washington Boulevard, Los Angeles, California, APN 5169-020-003, owned by Merco Group – 3185 E. Washington Boulevard, LLC | (1) Base Adequate Protection,<br><br>(2) cash payments of $32,000 per month, and<br><br>(3) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of<br>    (a) the cash collateral actually used from March 27, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires, or<br>    (b) interest that would accrue at the default rate from March 27, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires, less cash payments made pursuant hereto |

367739.02 [XP]    25195

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| City National Bank | 815 E. Temple Street, 210 & 234 Center Street, and 740 Jackson Street, Los Angeles, California, APNs 5173-022-001, 5173-022-002, 5173-022-004, 5173-022-005 and 5173-015-003, owned by Meruelo Farms, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank | 915-949 S. Hill Street, Los Angeles, California, APNs 5139-004-004, 5139-004-005, 5139-004-006, 5139-004-007, 5139-004-008, 5139-004-009, 5139-004-020 and 5139-004-024, owned by 915-949 S. Hill Street, LLC (aka "Ullman Tower One") | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank | 1919 Vineburn, Los Angeles, California, APNs 5215-014-005 and 5215-014-006, Meruelo Maddux Properties – 1919 Vineburn Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| East West Bank | 419 E. 9th Street, Los Angeles, California, APN 5145-011-015, owned by Meruelo Wall Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| East West Bank | 2640 E. Washington Boulevard, Los Angeles, California, APN 5168-017-012, owned by 2640 Washington Boulevard, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| Yoshiaki Murakami and Fumiko Murakami, as Co-Trustees of the Revocable Trust of Yoshiaki Murakami and Fumiko Murakami U/T/A Dated June 16, 1988, and Yoshiaki Murakami, an individual | 1510 Griffith Avenue, Los Angeles, California, APNs 5132-025-004, 5132-025-006 and 5132-025-017, owned by Merco Group – 1500 Griffith Avenue, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |

-8-

367739.02 [XP]     25195

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| Pacific Commerce Bank | 729 E. Temple Street, 718-736 Jackson Street, and 223 Center Street, Los Angeles, California, APNs 5173-015-006, 5173-014-001 and 5173-014-002, owned by Meruelo Farms, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| The Stanford Group, L.P. | 905 E. 8th Street, Los Angeles, California, APN 5146-029-039, owned by 905 8th Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |

This Motion is based upon this Notice and Motion, the Memorandum of Points and Authorities, the Declaration of Andrew Murray, the Declaration of Richard Meruelo filed on or about December 3, 2010 (*docket entry no. 2327*), the Request for Judicial Notice, the papers and pleadings filed by the Debtors in connection with and relating to the Debtors' cash collateral motion filed on March 27, 2009, the testimony given and evidence admitted at the hearings thereon, and such other evidence as may be presented to the Court.

**PLEASE TAKE NOTICE** that pursuant to Local Bankruptcy Rule 4001-2(b), the Debtors state as follows with regard to whether their proposed order contains any provision that:

| Provision | Present? |
|---|---|
| (1) Grants cross-collateralization protection (other than replacement liens or other adequate protection) to the prepetition secured creditors (*i.e.*, clauses that secure prepetition debt by postpetition assets in which the secured creditor would not otherwise have a security interest by virtue or its prepetition security agreement or applicable law). | No |
| (2) Binds the estate or all parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditor. | No |
| (3) Waives or limits the estate's rights under 11 U.S.C. § 506(c). | No |
| (4) Grants to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, or 549. | No |
| (5) Deems prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt, other than as provided in 11 U.S.C. § 552(b). | No |
| | |

-9-

| Provision | Present? |
|---|---|
| (6) Provides disparate treatment for the professionals retained by a creditors' committee from that provided for the professionals retained by the debtor with respect to a professional fee carve out. | No |
| (7) Primes any secured lien. | No |

**PLEASE TAKE FURTHER NOTICE** that pursuant to Local Bankruptcy Rule 9013-1(f), any party opposing the relief sought by the Motion must file a response in writing with the Clerk of the Court and such response must be served upon the following not less than 14 days prior to the hearing on the motion:  (1) the Office of the United States Trustee, ATTN: Jennifer L. Braun, Esq., 21051 Warner Center Lane, Suite 115, Woodland Hills, CA  91367; (2) counsel for the Debtors, John N. Tedford, IV, Esq., Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA  90067; (3) Dean G. Rallis Jr., Esq., SulmeyerKupetz, 333 S. Hope St., 35th Floor, Los Angeles, CA  90071; and (4) Ronald S. Orr, Esq., Ron Orr & Professionals, Inc., 578 Washington Blvd., #389, Marina Del Rey, CA  90292; and Rodiger Law Office, Georgiana G. Rodiger, 272 South Los Robles Avenue, Pasadena, CA  91101; and Jenner & Block, Marc B. Hankin, 919 Third Avenue, New York, NY 10022-3908.  Any response not timely filed and served may be deemed by the Court to be consent to the granting of the motion.  If you do not have any objection to the motion, you do not need to take any further action.

Dated:  April 7, 2011

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
Enid M. Colson
Attorneys for Meruelo Maddux Properties,
Inc. and affiliated Debtors and Debtors-in-
Possession

-10-

367739.02 [XP]    25195

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3  I.

4  INTRODUCTION

5  On March 26 and 27, 2009,[5] Meruelo Maddux Properties, Inc. ("MMPI"), and 53 of its

6  direct and indirect subsidiaries (collectively the "Debtors") filed voluntary petitions for relief under

7  Chapter 11 of Title 11 of the United States Code (the "Code"). Pursuant to the Court's ruling on

8  March 30, 2009, the Debtors' bankruptcy cases are being jointly administered under case no. 1:09-

9  bk-13356-VK. The Debtors continue to operate their business affairs as debtors-in-possession

10  pursuant to the authority granted under §§ 1107 and 1108 of the Code.

11  On the Petition Date, numerous Debtors owned real property subject to consensual liens in

12  favor of lenders. Most of those properties generated rents and other income. On March 27, 2009,

13  the Debtors filed a motion for authority to use such cash collateral through December 31, 2009. On

14  or about October 6, 2009, the Debtors moved to modify the request to, among other things, request

15  that the use of cash collateral be authorized through March 31, 2010. On January 13, 2010, the

16  Court entered its order authorizing the Debtors' use of cash collateral through March 31, 2010 (the

17  "January Cash Collateral Order"). On March 31, 2010, the Court entered its order extending its

18  authority for the Debtors' use of cash collateral through June 30, 2010 (the "March Cash Collateral

19  Order"). On August 25, 2010, the Court entered its order extending its authority for the Debtors'

20  use of cash collateral through September 30, 2010 (the "August Cash Collateral Order"). On

21  September 30, 2010, the Court entered its order extending its authority for the Debtors' use of cash

22  collateral through January 31, 2011. On February 2, 2011, the Court entered its order extending its

23  authority for the Debtors' use of cash collateral through April 30, 2011 (the "February 2011 Cash

24  Collateral Order").

25

26

27  [5] For purposes of this motion, March 27, 2009, is referred to as the "Petition Date."

28

-11-

367739.02 [XP]   25195

1   Hearings on confirmation of the Debtors' proposed Chapter 11 plan of reorganization and

2   one competing plan commenced on January 27, 2011 and have continued through March 28, 2011.

3   On February 17, 2011, the plan proposed by Legendary Investors Group No. 1, LLC and East West

4   Bank was withdrawn.  Motions to modify the plan proposed by the Debtors and the plan proposed

5   by Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation are pending.

6   The effective date of any plan to be confirmed by the Court is not known at this time.  Accordingly,

7   the Debtors are requesting that the Court extend the authority to use cash collateral and continue

8   using the cash management system through July 31, 2011, on the same terms and conditions as the

9   authority previously granted through April 30, 2011.[6]

10

11                                     II.

12                        STATEMENT OF FACTS

13  A.     THE DEBTORS' OVERALL BUSINESS MODEL AND APPROACH[7]

14         MMPI, together with Meruelo Maddux Properties, LP ("MMPLP") and its affiliates and

15  related entities (sometimes collectively referred to herein as the "Company") develops, redevelops

16  and owns industrial, commercial and multi-unit residential properties in downtown Los Angeles

17  and other urban markets in southern California.  MMPI was formed in 2006, and one of the reasons

18  for forming MMPI was to hold an initial public offering of stock in order to generate cash to pay

19  off the then-existing debt to the California Public Employees' Retirement System (aka "CalPERS")

20  _____

21      [6] The Debtors reserve the right to request a further extension of the authority to use cash
    collateral and utilize their cash management system beyond July 31, 2011.

22      [7] This motion is supported by, among other things, the Declaration of Richard Meruelo filed
    with the Court on March 27, 2009 (*docket entry no. 10*), and the Supplemental Declaration of
23  Richard Meruelo and the Declaration of Fred Skaggs filed with the Court on April 21, 2009 (*docket
    entry no. 95*).  The declarations were sizeable, particularly with the exhibits.  In connection with a
24  prior matter before the Court, it was suggested by a non-Debtor party that, to conserve the
    environment, the Debtors should not be required to re-file and serve the declarations in connection
25  with each matter where the Debtors rely upon the declarations in support of their description of the
    Debtors' background and operations.  The Debtors therefore request that the Court take judicial
26  notice of the filing of those declarations and treat the declarations as if they were filed anew in
    support of this motion.  The Debtors will make copies of the declarations available on request by
27  electronic mail or regular mail, as appropriate.

28

                                     -12-

367739.02 [XP]    25195

1  and raise funds the Company could use to continue growing through the development of real

2  properties.  When MMPI was formed, the Company owned, leased with rights to purchase, and had

3  rights to buy approximately 52 development, redevelopment and stabilized projects.

4        MMPI's focus is on non-stabilized properties and commercial and industrial land which

5  have alternate, more profitable uses that are achievable through redevelopment or major renovation

6  and ground-up development.  The Company's properties are used for diverse purposes, and include

7  food industry, wholesale markets, small tenant industrial, residential high rise and mixed-use

8  "urban village" properties.  The vast majority of the properties are situated in downtown Los

9  Angeles.  The Company is believed to be the largest non-governmental land owner in downtown

10 Los Angeles, owning or controlling approximately 80 acres of land in downtown Los Angeles at

11 the time that MMPI was formed.

12        The Company focuses on urban in-fill development and on finding different, more

13 profitable uses for existing urban properties.  The Company looks for properties that have value

14 intrinsic to the property itself, such as the property's location, whether there is an end user of the

15 property on the horizon who might want to purchase the property, how well the property will fit in

16 with the growth patterns of the area and community in which it is situated, and other factors.

17        The Company's business model anticipates the need for time to develop properties and

18 requires the infusion of funds to pay the costs of such development, including the carrying costs.

19 To help defray costs during development, properties may be utilized as parking lots or other uses,

20 not because such use generates substantial income but because the land itself is extremely valuable

21 since it can be developed at an appropriate time in the future, and the parking lot revenue provides

22 some interim revenue.  Some of the Company's properties have been developed to the point where

23 entitlements have been obtained thus increasing the value substantially, but development has been

24 deferred pending an improvement in the credit markets.  In summary, the Company's business

25 model contemplates and is based upon the purchase, development and resale of properties, pursuant

26 to which the Company turns over such properties in a relatively short period of time, such as a few

27 years instead of decades, and uses the profit from such properties to fund operations of MMPI and

28 all of its other affiliates and the purchase and development of other properties.

367739.02 [XP]      25195

1    B.    THE DEBTORS' COLLECTIVE ORGANIZATION AND OPERATIONS

2    Although the Debtors and their non-Debtor affiliates consist of a parent company and

3    various levels of subsidiaries, including limited liability companies and other entities which hold

4    title to properties, the Company has been, before and after its formation as a public company, and

5    presently continues to be, effectively operated as a single enterprise.  With limited exceptions,

6    revenues for each of the entities are commingled, and the funds are used to pay the expenses of

7    MMPI and the subsidiaries.  Some entities generate revenues in excess of operational expenses and

8    debt service, but some do not.  The reason that the Company purchases, and then keeps, properties

9    that are cash flow negative is because the Company believes that those properties will, in time,

10   generate a positive return and the enterprise will be significantly more valuable as a result.

11   Before and after the IPO, the Debtors commingled funds.  The cash management system

12   implemented before the IPO provides for funds to flow to and from a cash concentration account

13   ("Concentration Account") maintained by MMPLP.  The Concentration Account is linked to the

14   operating bank accounts of each of the Debtors and non-Debtor affiliates, which bank accounts are

15   maintained as zero balance accounts.  When needed to fund payment on checks issued by a

16   particular affiliate, funds are transferred from the Concentration Account to the operating account

17   of that affiliate.  Excess funds, if any, are invested in interest bearing accounts.  By orders entered

18   on January 13, 2010, March 31, 2010, July 1, 2010, August 25, 2010, September 30, 2010, and

19   February 2, 2011, the Court has authorized the Debtors' continued use of their cash management

20   system through April 30, 2011.

21

22   C.    THE DEBTORS' PRIOR REQUESTS FOR AUTHORITY TO USE CASH

23         COLLATERAL

24   On the Petition Date, the Debtors filed, among other things, a motion for authority to use

25   cash collateral through December 31, 2009 (the "First Cash Collateral Motion") (*docket entry no.*

26   *11*), a motion for authority to maintain their cash management system (the "Cash Management

27   Motion") (*docket entry no. 4*), and a declaration of Richard Meruelo in support of the Debtors'

28   first-day motions (*docket entry no. 10*).  A hearing on the First Cash Collateral Motion and the

-14-

1  Cash Management Motion took place on March 30, 2009. Pursuant to its rulings at the hearing on

2  March 30, 2009, the Court entered its first orders authorizing the Debtors' use of cash collateral

3  and the cash management system on an interim basis on or about April 7, 2009. Pursuant to its

4  ruling at a status conference held on April 6, 2009, the Court entered its second orders authorizing

5  the Debtors' use of cash collateral and the cash management system on an interim basis on or about

6  April 24, 2009 (*docket entry nos. 105 and 106*).

7        Numerous secured creditors filed oppositions to the First Cash Collateral Motion and the

8  Cash Management Motion. On April 21, 2009, the Debtors filed a supplemental declaration of

9  Richard Meruelo and a declaration of Fred Skaggs in support of the motions (the "Supplemental

10 Declaration") (*docket entry no. 95*). Among the exhibits to Mr. Skaggs' declaration were financial

11 projections for each Debtor which included, among other things, a line item for "Direct Corporate

12 Property Management," reflecting an allocation of overhead expenses incurred by MMPI, MMPLP

13 and other service-level Debtors.

14       Hearings on the First Cash Collateral Motion and the Cash Management Motion were held

15 on May 1, May 4, May 6, and May 8, 2009. On May 12, 2009, the Court entered its third orders

16 authorizing the Debtors' use of cash collateral and the cash management system on an interim basis

17 (*docket entry nos. 223 and 224*). Thereafter, numerous hearings and evidentiary hearings were held

18 on the two motions. Hearings were also held on certain motions for relief from the automatic stay

19 where the parties agreed that argument and evidence presented to the Court in connection with the

20 relief from stay motions could be considered by the Court with regard to the First Cash Collateral

21 Motion as well. With certain exceptions, final arguments on the First Cash Collateral Motion and

22 the Cash Management Motion were presented to the Court on October 19 and 26, 2009.

23       As noted above, the First Cash Collateral Motion requested authority to use cash collateral

24 through December 31, 2009. On October 6, 2009, the Debtors filed a notice of modification to the

25 First Cash Collateral Motion whereby the Debtors modified the First Cash Collateral Motion so as

26 to, among other things, request authority to use cash collateral through March 31, 2010. That issue

27 was heard by the Court on October 28, 2009.

28

-15-

1    On January 13, 2010, the Court entered its *Order Authorizing the Debtors' Use of Cash*

2  *Collateral on a Final Basis and Approving the Debtors' Use of Its Cash Management System* (the

3  "January 2010 Cash Collateral Order").  The Court granted the Debtors' request for authority to use

4  cash collateral through March 31, 2010, and identified adequate protection to be afforded to each of

5  the Cash Collateral Creditors identified therein.  Each Cash Collateral Creditor was afforded a base

6  level of adequate protection consisting of (1) a replacement lien in its postpetition cash collateral,

7  (2) the maintenance and preservation of its real property collateral, and (3) the payment of real

8  property taxes against its real property collateral due and payable on and after November 1, 2009.

9  As to certain Cash Collateral Creditors, the Court determined that additional adequate protection

10  would be afforded in the form of an adequate protection lien against one or more of the real

11  properties referred to in this case as "Unencumbered Properties," referred to as the "Replacement

12  Lien Property Pool."  As to one Cash Collateral Creditor, the Court determined that additional

13  adequate protection would be afforded in the form of a junior adequate protection lien against

14  properties in which that Cash Collateral Creditor had an interest.  The Court also granted the Cash

15  Management Motion and authorized the Debtors to continue to use their integrated cash

16  management system concurrent with the use of cash collateral.

17    On December 22, 2009, the Debtors filed a motion requesting that the Court designate

18  certain real properties as the Replacement Lien Property Pool, and related relief.  An order granting

19  that motion was entered on December 29, 2010 (*docket entry no. 2478*).  The Court designated real

20  properties owned by Debtors Merco Group – 5707 S. Alameda, LLC, and Meruelo Maddux – 1000

21  E. Cesar Chavez, LLC as the Replacement Lien Property Pool, and established detailed procedures

22  for seeking liquidation of one or more properties in the Replacement Lien Property Pool and other

23  terms and conditions, including terms and conditions relating to the amount and duration of the

24  adequate protection liens against the Replacement Lien Property Pool.

25    On March 8, 2010, the Debtors filed a motion requesting that their authority to use cash

26  collateral and utilize their cash management system be extended through June 30, 2010 (the

27  "Second Cash Collateral Motion").  On March 31, 2010, the Court entered its *Order Granting*

28  *Debtors' Motion for Order Extending Authority for the Use of Cash Collateral and to Maintain*

-16-

1   *Cash Management System through June 30, 2010* (the "March 2010 Cash Collateral Order").

2   Pursuant to the March 2010 Cash Collateral Order, the Debtors were authorized to use cash

3   collateral through June 30, 2010, on the same terms and conditions as they had been authorized to

4   use cash collateral through March 31, 2010.  The March 2010 Cash Collateral Order also

5   authorized the Debtors to continue to use their cash management system concurrent with the use of

6   cash collateral.

7         On June 8, 2010, the Debtors filed a motion requesting that their authority to use cash

8   collateral and utilize their cash management system be extended through September 30, 2010 (the

9   "Third Cash Collateral Motion").  On July 1, 2010, the Court entered its *Order Granting on an*

10   *Interim Basis the Debtors' Motion for Order Extending Authority for the Use of Cash Collateral*

11   *and to Maintain Cash Management System through September 30, 2010* (the "July 2010 Cash

12   Collateral Order").  Subsequently, on August 25, 2010, the Court entered its *Order Granting the*

13   *Debtors' Motion for Order Extending Authority for the Use of Cash Collateral and to Maintain*

14   *Cash Management System through September 30, 2010* (the "August 2010 Cash Collateral Order").

15   Pursuant to the August 2010 Cash Collateral Order, the Debtors were authorized to use cash

16   collateral through September 30, 2010, on the same terms and conditions as they had been

17   authorized to use cash collateral through June 30, 2010, except that the Court also required the

18   Debtors to commence making monthly adequate protection payments to certain Cash Collateral

19   Creditors.  The August 2010 Cash Collateral Order also authorized the Debtors to continue to use

20   their cash management system concurrent with the use of cash collateral.

21         On September 8, 2010, the Debtors filed a motion requesting that their authority to use cash

22   collateral and utilize their cash management system be extended through January 31, 2011 (the

23   "Fourth Cash Collateral Motion").  On September 30, 2010, the Court entered its *Order Granting*

24   *the Debtors' Motion for Order Extending Authority for the Use of Cash Collateral and to Maintain*

25   *Cash Management System through January 31, 2011* (the "September 2010 Cash Collateral

26   Order") (*docket entry no. 1899*).  Pursuant to the September 2010 Cash Collateral Order, the

27   Debtors were authorized to use cash collateral through January 31, 2011, on the same terms and

28   conditions as they had been authorized to use cash collateral through September 30, 2010.  The

1   September 2010 Cash Collateral Order also authorized the Debtors to continue to use their cash

2   management system concurrent with the use of cash collateral.

3            On December 30, 2010, the Debtors filed a motion requesting that their authority to use

4   cash collateral and utilize their cash management system be extended through June 30, 2011 (the

5   "Fifth Cash Collateral Motion").  On February 2, 2011, the Court entered its *Order Granting the*

6   *Debtors' Motion for Order Extending Authority for the Use of Cash Collateral and to Maintain*

7   *Cash Management System through April 30, 2011* (the "February 2011 Cash Collateral Order")

8   (*docket entry no. 2727*).  Pursuant to the February 2011 Cash Collateral Order, the Debtors were

9   authorized to use cash collateral through April 30, 2011, on the same terms and conditions as they

10  had been authorized to use cash collateral through January 31, 2011.  The February 2011 Cash

11  Collateral Order also authorized the Debtors to continue to use their cash management system

12  concurrent with the use of cash collateral.

13

14  D.      CHAPTER 11 PLANS PROPOSED IN THIS CASE

15           In October 2010, the Court entered orders approving disclosure statements describing

16  competing Chapter 11 plans of reorganization filed by (1) the Debtors, (2) Charlestown Capital

17  Advisors, LLC and Hartland Asset Management Corporation, and (3) Legendary Investors Group

18  No. 1, LLC and East West Bank.  Confirmation hearings commenced on January 27, 2011 and

19  have continued through March 28, 2011.  On February 17, 2011, the plan proposed by Legendary

20  Investors Group No. 1, LLC and East West Bank was withdrawn.  Motions to modify the plan

21  proposed by the Debtors and the plan proposed by Charlestown Capital Advisors, LLC and

22  Hartland Asset Management Corporation are pending.  The effective date of any plan to be

23  confirmed by the Court is not known at this time.  The Debtors are hereby requesting that the Court

24  extend the authority to use cash collateral through July 31, 2011, which is anticipated to be after the

25  effective date of any plan confirmed by the Court.

26

27

28

-18-

III.

## THE DEBTORS' REQUEST FOR AUTHORITY TO USE CASH COLLATERAL

## AND TO CONTINUE USING THE CASH MANAGEMENT SYSTEM

The Debtors require the use of cash collateral in order to maintain their real properties and continue operations and further require authority to continue to use the integrated cash management system. Since the previously granted authority to use cash collateral expires on April 30, 2011, the Debtors are requesting an extension of such authority through July 31, 2011, which the Debtors anticipate will be after the effective date of any plan confirmed by the Court,[8] for the purpose of (a) paying the Cash Collateral Debtors' expenses of preserving, maintaining and operating their properties, as set forth in the monthly budget summaries attached to Mr. Murray's declaration, subject to a variance of up to 20% in the aggregate of all line item expenses projected for each Cash Collateral Debtor, except that Direct Corporate Property Management expenses will be limited to the amount set forth in the projections for each Cash Collateral Debtor, and (b) after the payment of the foregoing, paying all other expenses incurred by the Debtors, including those of Debtors that do not generate revenue or sufficient income to pay for their costs of operation in full, including Court-awarded fees and expenses of professionals. The direct operating expenses to be paid as part of category (a) include property management fees, if any, incurred by a Debtor with regard to its specific real property, utilities, insurance, repairs and maintenance, reimbursement of the direct and indirect costs provided by other Debtors, and similar charges and expenses. The Debtors' budget summaries include real property taxes, including taxes owed against non-Cash Collateral Properties. The Debtors' budget summaries also include monthly payments owed to those lenders who had settled with the Debtors, with respect to which payments the Court previously authorized the use of cash collateral.[9]

---

[8] This assumes, of course, that the prevailing plan proponent proceeds to the effective date after confirmation. Charlestown's plan is noticeably non-committal in this regard.

[9] Similarly, with respect to any future settlements, the Debtors expect to request authority to use cash collateral to pay monthly payments called for under the revised loan agreements.

-19-

367739.02 [XP]     25195

1      With respect to all Cash Collateral Creditors, the Debtors continue to propose the following

2 forms of adequate protection:  (1) each Cash Collateral Creditor will be granted a replacement lien

3 in its respective postpetition cash collateral, with the same force, effect, validity and priority of the

4 liens held by the Cash Collateral Creditors in or against their respective prepetition real property

5 collateral; (2) the Debtors will maintain and preserve the Cash Collateral Properties by payment of

6 the ordinary expenses for maintaining and preserving the real property collateral; and (3) the

7 Debtors will pay real property taxes due and payable on and after November 1, 2009, owing to the

8 County of Los Angeles assessed against the Cash Collateral Properties on or before the date on

9 which such taxes are payable without penalty (collectively the "Base Adequate Protection").[10]  In

10 addition, where the Court previously authorized the use of cash collateral through April 30, 2011,

11 with additional adequate protection afforded to a Cash Collateral Creditor, the Debtors propose the

12 adequate protection for the use of cash collateral through July 31, 2011, in the same form as

13 previously ordered by the Court, except with respect to East West Bank who has settled with the

14 Debtors in a settlement approved by the Court after the entry of the February 2011 Cash Collateral

15 Order and who has consented in that settlement to the Debtors use of its cash collateral and the

16 maintenance of the Debtors' cash management system.  The Cash Collateral Creditors, the Cash

17 Collateral Properties, and the proposed forms of adequate protection are as follows:[11]

18

19

20

21

22     [10] For purposes of clarification, real property taxes assessed against the Cash Collateral Properties for the County of Los Angeles' 2009-2010 fiscal year were paid, the first installment of real property taxes for the 2010-2011 fiscal year were paid and the second installment of real

23 property taxes for the 2010-2011 fiscal year will be paid by the time of the hearing.  November 1, 2009, is used here only so that the relief requested is consistent with the relief previously afforded.

24

25     [11] Consistent with the February 2011 Cash Collateral Order, the phrase "cash collateral actually used" means the total cash collateral generated by the Cash Collateral Property, less the direct expenses of maintenance, operation and preservation of the real property collateral, less any

26 real property taxes paid, and less monthly cash payments made pursuant to the Court's order.  The "Direct Corporate Property Management" fee is included in the amount to be protected rather than

27 treated as a direct expense.

28

367739.02 [XP]    25195

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| 1248 Figueroa Street, LLC | 2529 S. Santa Fe Avenue, Los Angeles, California, APN 6302-008-010, owned by Merco Group – 2529 Santa Fe Avenue, LLC | Base Adequate Protection |
| Bank of America | numerous street addresses, including 1150 S. Grand Avenue, Los Angeles, California, APNs 5139-019-040, 5139-020-016, 5139-020-022, 5139-020-024, 5139-024-003, 5139-024-014, 5139-024-015, and 5139-024-016, owned by Merco Group – Southpark, LLC (the "Southpark Property") | Base Adequate Protection |
| Bank of America | 760 S. Hill Street and 325 W. 8th Street, Los Angeles, California, APNs 5144-014-046 through 5144-014-139, owned by Meruelo Maddux Properties – 760 S. Hill Street, LLC (aka "Union Lofts") | (1) Base Adequate Protection, (2) cash payments of $20,000 per month, and (3) a junior lien on the Southpark Property in an amount equal to the interest that has and will accrue at the default rate from August 1, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires, less cash payments made pursuant hereto |
| Wells Fargo Bank, N.A., successor by consolidation to Wells Fargo Bank Minnesota, National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates, Series 2002-C1 acting by and through Berkadia Commercial Mortgage, Inc., its Special Servicer | 2445, 2460 and 2535 E. 12th Street, Los Angeles, California, APNs 5168-003-013, 5168-005-021 and 5168-004-001, owned by Santa Fe Commerce Center, Inc. | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |

367739.02 [XP]     25195

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| California Bank & Trust | 788 South Alameda Street, Los Angeles, California, APN 5166-031-014, owned by 788 South Alameda, LLC | CB&T has consented based on the following:<br><br>(1) Base Adequate Protection,<br><br>(2) cash payments of $24,000 per month, and<br><br>(3) a lien on the Replacement Lien Property Pool in an amount equal to the amount of cash collateral actually used from March 27, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires |
| Cathay Bank (two loans secured by the same real property). | 1312 E. 7th Street, Los Angeles, California, APN 5146-009-003 (the "7th Street Produce Market"), and 761 Terminal Street, Los Angeles, California,  APNs 5146-009-004 and 5146-009-005 ("Alameda Square"), owned by Alameda Produce Market, LLC | Base Adequate Protection (consent granted provided Debtors make monthly interest payments consistent with the terms of the settlement previously approved by the Court) |
| Chinatrust Bank, USA | 3185 E. Washington Boulevard, Los Angeles, California, APN 5169-020-003, owned by Merco Group – 3185 E. Washington Boulevard, LLC | (1) Base Adequate Protection,<br><br>(2) cash payments of $32,000 per month, and<br><br>(3) a lien on the Replacement Lien Property Pool in an amount equal to the lesser of<br>    (a) the cash collateral actually used from March 27, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires, or<br>    (b) interest that would accrue at the default rate from March 27, 2009, through July 31, 2011, or such shorter period if the use of cash collateral is terminated before such period expires, less cash payments made pursuant hereto |

-22-

367739.02 [XP]     25195

| Cash Collateral Creditors | Cash Collateral Properties | Proposed Adequate Protection |
|---|---|---|
| City National Bank | 815 E. Temple Street, 210 & 234 Center Street, and 740 Jackson Street, Los Angeles, California, APNs 5173-022-001, 5173-022-002, 5173-022-004, 5173-022-005 and 5173-015-003, owned by Meruelo Farms, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank | 915-949 S. Hill Street, Los Angeles, California, APNs 5139-004-004, 5139-004-005, 5139-004-006, 5139-004-007, 5139-004-008, 5139-004-009, 5139-004-020 and 5139-004-024, owned by 915-949 S. Hill Street, LLC (aka "Ullman Tower One") | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| City National Bank | 1919 Vineburn, Los Angeles, California, APNs 5215-014-005 and 5215-014-006, Meruelo Maddux Properties – 1919 Vineburn Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| East West Bank | 419 E. 9th Street, Los Angeles, California, APN 5145-011-015, owned by Meruelo Wall Street, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| East West Bank | 2640 E. Washington Boulevard, Los Angeles, California, APN 5168-017-012, owned by 2640 Washington Boulevard, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |
| Yoshiaki Murakami and Fumiko Murakami, as Co-Trustees of the Revocable Trust of Yoshiaki Murakami and Fumiko Murakami U/T/A Dated June 16, 1988, and Yoshiaki Murakami, an individual | 1510 Griffith Avenue, Los Angeles, California, APNs 5132-025-004, 5132-025-006 and 5132-025-017, owned by Merco Group – 1500 Griffith Avenue, LLC | Base Adequate Protection (consent granted pursuant to Court-approved settlement) |

-23-

367739.02 [XP]     25195