1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@dgdk.com*
2  ZEV SHECHTMAN (State Bar No. 266280)
   *zshechtman@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
5  Facsimile:  (310) 277-5735

6  Attorneys for Meruelo Maddux Properties, Inc., and
   affiliated Debtors and Debtors-in-Possession
7

8              **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11  In re                                    ) Case No. 1:09-bk-13356-VK
                                             )
12  MERUELO MADDUX PROPERTIES, INC.,         ) Chapter 11 (Jointly Administered)
    et al.[1]                                )
13                                           ) **NOTICE OF MOTION AND DEBTOR-IN-**
           Debtors and Debtors-in-Possession. ) **POSSESSION'S MOTION FOR**
14                                           ) **AUTHORITY TO SELL REAL PROPERTY**
                                             ) **LOCATED AT 1308 S. ORCHARD AVENUE,**
15  _____ ) **LOS ANGELES, CALIFORNIA, FREE AND**
                                             ) **CLEAR OF LIENS, AND WAIVER OF**
16  ☐   Affects all Debtors                  ) **14-DAY STAY PER F.R.B.P. 6004(h); AND**
                                             ) **DECLARATION OF RICHARD MERUELO**
17  ☑   Affects the following Debtor(s):     ) **IN SUPPORT THEREOF**
                                             )
18  Merco Group – 1308 S. Orchard, LLC       ) **[No hearing required]**
    (1:09-bk-13384-VK)                       )
19                                           )
                                             )
20                                           )
                                             )
21                                           )
                                             )
22  _____ )

23       **PLEASE TAKE NOTICE** that Merco Group – 1308 S. Orchard, LLC ("MG 1308 S.

24  Orchard") hereby moves for an order authorizing MG 1308 S. Orchard to sell real property located

25  at 1308 S. Orchard Avenue, Los Angeles, California, free and clear of liens under 11 U.S.C. §

26
27       [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.
28

1  363(f), and for a waiver of the 14-day stay otherwise applicable to such orders. MG 1308 S.

2  Orchard requests that the Court enter an order in substantially the form of the proposed order that is

3  attached as Exhibit "1" hereto.

4      This motion is made on the following grounds: On March 26 and 27, 2009, Meruelo

5  Maddux Properties, Inc. ("MMPI"), and fifty-three of its direct and indirect subsidiaries (with

6  MMPI, the "Debtors") filed petitions for relief under Chapter 11 of title 11 of the United States

7  Code. One of the Debtors is MG 1308 S. Orchard, which filed its Chapter 11 petition on March 27,

8  2009 (the "Petition Date").

9      As of the Petition Date, MG 1308 S. Orchard owned real property located at 1308 S.

10  Orchard Avenue, Los Angeles, California, APN 5056-004-007 (the "Property"). The Property

11  consists of a vacant lot of approximately 0.3 acres.

12      Pursuant to a purchase and sale agreement dated for reference purposes as of February 23,

13  2011, MG 1308 S. Orchard agreed to sell the Property to Dr. Lili Mirtorabi and Jason Samani, or

14  their assignee (collectively, "Buyer"), for a purchase price of $1,015,000, subject to, among other

15  things, Bankruptcy Court approval. A copy of MG 1308 S. Orchard's purchase and sale agreement

16  with Buyer is attached as Exhibit "2" to the Declaration of Richard Meruelo appended hereto.

17  Except for the transaction contemplated by such purchase and sale agreement, there is no prior

18  business or personal relationship between the Buyer and the Debtors.

19      MG 1308 S. Orchard is requesting authority to sell the Property free and clear of liens

20  pursuant to § 363(f) of the Code, with such liens to attach to the net proceeds of sale with the same

21  force and effect. The only known encumbrances against the Property consist of liens in favor of

22  Los Angeles County securing real property taxes and related charges in the approximate aggregate

23  amount of $43,000. A brokerage fee of 5% will be paid to the Buyer's broker pursuant to the

24  February 23, 2011 purchase and sale agreement. The Debtors estimate that the net proceeds to be

25  received from the sale will be approximately $912,000. MG 1308 S. Orchard is authorized to sell

26  the Property free and clear of liens because, among other things, the purchase price exceeds the

27  value of all liens against the Property. *See* 11 U.S.C. § 363(f)(3).

28

367745.02 [XP]    25195

1     The purchase price was negotiated with the Buyer at arm's length, and the price is fair and

2  reasonable.  MG 1308 S. Orchard hereby requests that the Court determine that the Buyer is a good

3  faith purchaser entitled to the protections afforded to such purchasers under § 363(m) of the Code.

4     So that MG 1308 S. Orchard can close the proposed sale of the Property as soon as

5  possible, MG 1308 S. Orchard is requesting that the Court waive the 14-day stay otherwise

6  applicable pursuant to Federal Rule of Bankruptcy Procedure 6004(h).

7     The motion is based upon this notice and motion, the Declaration of Richard Meruelo

8  appended hereto, the papers and pleadings on file in this case, and such other evidence as may be

9  presented to the Court.

10     **PLEASE TAKE FURTHER NOTICE** that this motion is brought under LBR 9013-1(o),

11  pursuant to which any party objecting to the motion may request a hearing on the motion.  The

12  deadline for filing and serving a written opposition and request for a hearing is 14 days after the

13  date of service of this notice, plus an additional 3 days unless the notice of motion was served by

14  personal delivery or posting as described in F. R. Civ. P. 5(b)(2)(A)-(B).  If you fail to comply with

15  this deadline, the court may treat such failure as a waiver of your right to oppose the motion and

16  may grant the motion without further hearing and notice.

17

18  Dated: April 8, 2011        DANNING, GILL, DIAMOND & KOLLITZ, LLP

19

20                By: _____

21                    Zev Shechtman

                     Attorneys for Meruelo Maddux Properties,

22                    Inc., and affiliated Debtors and Debtors-in-

                     Possession

23

24

25

26

27

28

367745.02 [XP]    25195

## DECLARATION OF RICHARD MERUELO

I, Richard Meruelo, declare and state as follows:

1.      I am the Chief Executive Officer and Chairman of the Board of Directors of Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI").

2.      MMPI is the parent company of approximately 69 affiliated entities, including Merco Group – 1308 S. Orchard, LLC ("MG 1308 S. Orchard"). On March 26 and 27, 2009, MMPI, MG 1308 S. Orchard and fifty-two other of the affiliated entities (collectively the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. I am a designated officer of each of the affiliated entities, including MG 1308 S. Orchard, and am authorized to give this declaration.

3.      As a result of my being Chief Executive Officer of MMPI and a designated officer of MG 1308 S. Orchard and each of the affiliated entities, and my review of relevant documents, I am familiar with the Debtors' day-to-day operations, business affairs, and books and records, and the manner in which they are prepared. Except as otherwise noted, all facts set forth in this declaration are based on my personal knowledge, my discussions with other members of the Debtors' senior management team, my review of relevant documents, or my opinion, based on, among other things, my experience and knowledge of the Debtors' operations and financial conditions.

4.      MG 1308 S. Orchard owns certain real property commonly known as 1308 S. Orchard Avenue, Los Angeles, California (the "Property"). The Property consists of a vacant lot of approximately 0.3 acres.

5.      Pursuant to a purchase and sale agreement dated for reference purposes as of February 23, 2011, MG 1308 S. Orchard agreed to sell the Property to Dr. Lili Mirtorabi and Jason Samani, or their assignee (collectively, "Buyer"), for a purchase price of $1,015,000, subject to, among other things, Bankruptcy Court approval. To the best of my knowledge and belief, except for the transaction contemplated by such purchase and sale agreement, there is no prior business or personal relationship between the Buyer and Debtors.

- 4 -

1    6.    The $1,015,000 purchase price was reached after arm's length negotiations between
2 MG 1308 S. Orchard and the Buyer. In my opinion, based upon my knowledge of and extensive
3 experience with the real estate market in downtown Los Angeles, the sale price of $1,015,000
4 represents a fair and reasonable price for the Property. The proposed sale has been made on
5 ordinary and common terms in the commercial real estate industry, set forth in the Standard Offer,
6 Agreement and Escrow Instructions for Purchase of Real Estate, including the Addendum attached
7 thereto, attached as Exhibit "2" hereto. A 5% brokerage commission will be paid as part of the
8 proposed sale.

9    7.    Attached as Exhibit "3" hereto is a title report dated March 3, 2011, with respect to
10 the Property. Based on the title report, my personal knowledge of the identity of liens against the
11 Property, and information provided to me by MMPI's employees, I believe that there is one lien
12 against the Property. I believe that lien is in favor of Los Angeles County securing real property
13 taxes and related charges in the approximate aggregate amount of $43,000.

14    8.    I believe that the proposed sale of the Property at this time is in the best interests of
15 the Debtors, their bankruptcy estates and creditors, and should be approved by the Court.

16    9.    Except with respect to the proposed sale and the negotiations which led to the
17 execution of the sale agreement, I have no independent knowledge or familiarity with the Buyer. I
18 believe that the Buyer does not have any connection with the Debtors or anyone else associated
19 with the Debtors' estates or the administration of the Debtors' estates.

20

21    I declare under penalty of perjury, subject to the laws of the United States of America, that
22 the foregoing is true and correct.

23    Executed at Los Angeles, California on April 8, 2011.

24
25
26    _____
        Richard Meruelo
27
28

- 5 -

367745.02 [XP]    25195

EXHIBIT 1

1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *jtedford@dgdk.com*
2  ZEV SHECHTMAN (State Bar No. 266280)
   *zshechtman@dgdk.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
5  Facsimile:  (310) 277-5735

6  Attorneys for Meruelo Maddux Properties, Inc., and
   affiliated Debtors and Debtors-in-Possession
7

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10             **SAN FERNANDO VALLEY DIVISION**

11

12  In re                                    ) Case No. 1:09-bk-13356-VK
                                             )
13  MERUELO MADDUX PROPERTIES, INC.,         ) Chapter 11 (Jointly Administered)
    et al.[1]                                )
14                                           ) **ORDER GRANTING DEBTOR-IN-**
              Debtors and Debtors-in-Possession. ) **POSSESSION'S MOTION FOR**
                                             ) **AUTHORITY TO SELL REAL**
15                                           ) **PROPERTY LOCATED AT 1308 S.**
    _____ ) **ORCHARD AVENUE, LOS ANGELES,**
16  ☐  Affects all Debtors                   ) **CALIFORNIA, FREE AND CLEAR OF**
                                             ) **LIENS, AND WAIVER OF 14-DAY**
17  ☒  Affects the following Debtor(s):      ) **STAY PER F.R.B.P. 6004(h)**
                                             )
18  Merco Group – 1308 S. Orchard, LLC       )
    (1:09-bk-13384-VK)                       ) **[No hearing required]**
19                                           )
                                             )
20                                           )
                                             )
21                                           )
                                             )
22  _____ )

23        The Court having considered the *Debtor-In-Possession's Motion for Authority to Sell Real*

24  *Property Located at 1308 S. Orchard Avenue, Los Angeles, California, Free and Clear of Liens,*

25  *and Waiver of 14-Day Stay Per F.R.B.P. 6004(h)* (the "Motion"), filed by Merco Group – 1308 S.

26

27        [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.
28

                                    - 1 -

367745.02 [XP]    25195

1    Orchard, LLC ("MG 1308 S. Orchard"), all papers filed in support of the Motion including the

2    Declaration of Richard Meruelo, and all of the other pleadings on file in the jointly administered

3    bankruptcy cases of Meruelo Maddux Properties, Inc. and fifty-three of its affiliates ("MMPI" and

4    the "Debtors"), having found Dr. Lili Mirtorabi and Jason Samani, or their assignee (collectively,

5    the "Buyer"), to be a good faith purchaser within the meaning of 11 U.S.C. § 363(m), having found

6    that notice of the Motion was adequate and proper, for good cause appearing,

7        **IT IS ORDERED THAT:**

8        1.    The Motion is granted in its entirety.

9        2.    MG 1308 S. Orchard is authorized to convey fee title to the real property commonly

10   known as 1308 S. Orchard Avenue, Los Angeles, California (the "Property") to the Buyer, for

11   $1,015,000 pursuant to the terms and conditions of the purchase and sale agreement that was

12   attached as Exhibit "2" to the Declaration of Richard Meruelo appended to the Motion. The legal

13   description of the Property is set forth in Exhibit "A" hereto.

14       3.    The sale shall be free and clear of all liens against the Property, which liens shall be

15   removed from the Property, including without limitation the following:

16           a.    all real property tax liens in favor of the County of Los Angeles (the

17   "County").

18       4.    The County's tax liens against the Property shall be removed from the Property and

19   shall attach to the sale proceeds with the same force, effect, validity and priority as such liens

20   currently have against the Property.  Real property taxes secured by such tax liens against the

21   Property shall be paid on or before the closing or through escrow pursuant to the settlement

22   agreement between MG 1308 S. Orchard and the County approved by the Court by order entered

23   on or about August 13, 2010.

24       5.    MG 1308 S. Orchard is authorized to pay through escrow all real property taxes and

25   related charges owed to the County and ordinary and reasonable escrow and closing costs.  Upon

26   the making of such payment to the County, all liens in favor of the County shall be fully satisfied

27   and discharged.

28

0007

367745.02 [XP]    25195

1        6.      MG 1308 S. Orchard is authorized to pay through escrow a commission equal to 5%

2  of the gross sales price to Buyer's real estate broker, Lee & Associates – ISG ("Lee &

3  Associates").

4        7.      The balance of the sales proceeds not utilized or set aside to pay ordinary and

5  reasonable escrow and closing costs, the County and Lee & Associates shall constitute free and

6  clear funds, not subject to, among other things, any liens.

7        8.      The recordation of this order with the Los Angeles County Recorder's Office shall

8  constitute a discharge, termination and cancellation as to the Property of liens against the Property

9  without the need for reconveyance or release of such liens or other interests.

10       9.      The Buyer shall be entitled to all of the protections afforded to good faith purchasers

11  pursuant to 11 U.S.C. § 363(m).

12      10.    MG 1308 S. Orchard is authorized to execute all documents and otherwise take all

13  actions it deems necessary and appropriate to close the sale of the Property to the Buyer.

14      11.    The fourteen day stay of enforcement of this Order set forth in Federal Rule of

15  Bankruptcy Procedure 6004(h) is waived, and the terms and conditions of this Order shall be

16  immediately effective and enforceable upon its entry.

17                               # # # #

18

19

20

21

22

23

24

25

26

27

28

367745.02 [XP]    25195

# EXHIBIT A

## LEGAL DESCRIPTION

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOTS 11 AND 12 IN BLOCK "A" OF THE SHERMAN TRACT, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 11, PAGE 100 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THE NORTHERLY 10 FEET THEREOF CONVEYED TO THE CITY OF LOS ANGELES FOR STREET PURPOSES, BY DEEDS RECORDED IN BOOK 1289, PAGE 166 OF DEEDS, AND IN BOOK 1293, PAGE 141 OF DEEDS, RESPECTIVELY.

APN: 5056-004-007

- 4 -

0009

367745.02 [XP]    25195

EXHIBIT 2

(213) 220-9800
(213) 947-1169



### STANDARD OFFER, AGREEMENT AND ESCROW
### INSTRUCTIONS FOR PURCHASE OF REAL ESTATE
(Vacant Land)
AIR Commercial Real Estate Association

February 23, 2011
[Date for Reference Purposes]

1. **Buyer.**
1.1 **Dr. Lili Mirtorabi and Jason Samani**
hereby offers to purchase the real property, hereinafter described, from the owner thereof ("Seller") (collectively, the "Parties" or individually, a "Party"),
through an escrow ("Escrow") to close 30 or _____ days after the waiver or expiration of the Buyer's Contingencies, ("Expected Closing
Date") to be held by **Commerce Escrow Company** ("Escrow Holder") whose address is
**1545 Wilshire Blvd, Suite 600, Los Angeles, CA 90017**
. Phone No. **213-484-0855** . Facsimile No. **213-484-0417**
upon the terms and conditions set forth in this agreement ("Agreement"). Buyer shall have the right to assign Buyer's rights hereunder, but any such
assignment shall not relieve Buyer of Buyer's obligations herein unless Seller expressly releases Buyer.
1.2 The term "Date of Agreement" as used herein shall be the date when by execution and delivery (as defined in paragraph 20.2) of this
document of a subsequent counteroffer thereof, Buyer and Seller have reached agreement in writing whereby Seller agrees to sell, and Buyer agrees to
purchase, the Property upon terms accepted by both Parties.
2. **Property.**
2.1 The real property ("Property") that is the subject of this offer consists of (insert a brief physical description) **An approximately**
**12,000 sq.ft. vacant lot**

is located in the City of **Los Angeles** , County of **Los Angeles**
State of **California** , is commonly known by the street address of **1308 Orchard Avenue**

and is legally described as: **to be furnished by title through escrow**

[APN: **5056-004-007** ]
2.2 If the legal description of the Property is not complete or is inaccurate, this Agreement shall not be invalid and the legal description shall be
completed or corrected to meet the requirements of **First American Title Company**
("Title Company") which shall issue the title policy hereinafter described.
2.3 The Property includes: at no additional cost to Buyer, the permanent improvements thereon, including those items which pursuant to
applicable law are a part of the property, as well as the following items, if any, owned by Seller and at present located on the Property: **n/a**

2.4 Except as provided in Paragraph 2.3, the Purchase Price does not include Seller's personal property, furniture and furnishings, and
**n/a** (collectively, the "Improvements").
which shall be removed by Seller prior to Closing.
3. **Purchase Price.**

$1,015,000.00 M.S.
1,200,000.00

3.1 The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Property shall be: ☑ $1,000,000.00
or ☐ (complete only if purchase price will be determined based on a per unit cost instead of a fixed price) $ _____
unit used to determine the Purchase Price shall be: ☐ lot ☐ acre ☐ square foot ☐ other _____ per unit. The
prorating areas of less than a full unit. The number of units shall be based on a calculation of total area of the Property as certified in the Parties by a
licensed surveyor in accordance with paragraph 9.1(d). However, the following rights of way and other areas will be excluded from such calculation:
_____ . The Purchase Price shall be payable as follows:

M.S.
$835,000.

(a) Cash down payment, including the Deposit as defined in paragraph 4.3 (or if an all cash          $1,000,000.00    1,030,000.00
transaction, the Purchase Price):

(Strike if not
applicable)

M.S.
$20,000.00

M.S.

(b) Amount of "New Loan" as defined in paragraph 6.1, if any;                                         $100,000.00
(c) Buyer shall take title to the Property subject to and/or assume the following existing deed (s) of
trust ("Existing Deed(s) of Trust") securing the existing promissory note(s) ("Existing Note(s)"):
(i) An Existing Note ("First Note") with an unpaid principal balance as of the -
Closing of approximately;
Said First Note is payable at $ _____                                              per month.
(Strike if not          including interest at the rate of _____% per annum until paid (and/or the -
applicable)             entire unpaid balance is due on _____

(ii) An Existing Note ("Second Note") with an unpaid principal balance to of the -
Closing of approximately;
Said Second Note is payable at $ _____                                             per month.
(Strike if not          including interest at the rate of _____% per annum until paid (and/or the -
applicable)             entire unpaid balance is due on _____
(d) Buyer shall give Seller a deed of trust ("Purchase Money Deed of Trust") on the -
property to secure the promissory note of Buyer to Seller described in paragraph 5 -
("Purchase Money Note") in the amount of _____

3.2 If Buyer is taking title to the Property subject to, or assuming, an Existing Deed of Trust and such deed of trust permits the beneficiary to
demand payment of fees including, but not limited to, points, processing fees, and appraisal fees as a condition to the transfer of the Property, Buyer

PAGE 1 OF 8

INITIALS                                                                        INITIALS

©2009 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                  FORM OFAL-0-9/05E

00010

agree to pay such fees up to a maximum of 1.5% of the unpaid principal balance of the applicable Existing Note.

4.  **Deposits.**

4.1 ☐ Buyer has delivered to Broker a check in the sum of $_____, payable to Escrow Holder, to be delivered by Broker to Escrow Holder within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder, or ☑ within 2 or ____ business days after both Parties have executed this Agreement and the executed Agreement has been delivered to Escrow Holder Buyer shall deliver to Escrow Holder a check in the sum of **$50,000.00**. If said check is not received by Escrow Holder within said time period than Seller may elect to unilaterally terminate this transaction by giving written notice of such election to Escrow Holder whereupon neither Party shall have any further liability to the other under this Agreement. Should Buyer and Seller not enter into an agreement for purchase and sale, Buyer's check or funds shall, upon request by Buyer, be promptly returned to Buyer.

4.2  **Additional deposit.**

(a) Within 6 business days after the Date of Agreement, Buyer shall deposit with Escrow Holder the additional sum of **$0.00** _____ to be applied to the Purchase Price at the Closing.

(b) Within 5 business days after the contingencies discussed in paragraphs 9.1 (x) through (k) are removed or waived, Buyer shall deposit with Escrow Holder the additional sum of **$0.00** _____ to be applied to the Purchase Price at the Closing.

4.3  Escrow Holder shall deposit the funds deposited with it by Buyer pursuant to paragraphs 4.1 and 4.2 (collectively the "Deposit"), in a State or Federally chartered bank in an interest bearing account whose term is appropriate and consistent with the timing requirements of this transaction. The interest therefrom shall accrue to the benefit of Buyer, who hereby acknowledges that there may be penalties or interest forfeitures if the applicable instrument is redeemed prior to its specified maturity. Buyer's Federal Tax Identification Number is _____. NOTE: Such interest bearing account cannot be opened until Buyer's Federal Tax Identification Number is provided.

5.  **Financing Contingency.** (Strike if not applicable)

5.1  This offer is contingent upon Buyer obtaining from an insurance company, financial institution or other lender, a commitment to lend to Buyer a sum equal to at least **15** % of the Purchase Price, on terms reasonably acceptable to Buyer. Such loan ("New Loan") shall be secured by a first deed of trust or mortgage on the Property. If this Agreement provides for Seller to carry back Junior financing, then Seller shall have the right to approve the terms of the New Loan. Seller shall have 7 days from receipt of the commitment setting forth the proposed terms of the New Loan to approve or disapprove of such proposed terms. If Seller fails to notify Escrow Holder, in writing, of its disapproval within said 7 days it shall be conclusively presumed that Seller has approved the terms of the New Loan.

5.2  Buyer hereby agrees to diligently pursue obtaining the New Loan. If Buyer shall fail to notify its Broker, Escrow Holder and Seller, in writing within **30** days following the Date of Agreement, that the New Loan has not been obtained, it shall be conclusively presumed that Buyer has either obtained said New Loan or has waived this New Loan contingency.

5.3  If, after due diligence, Buyer shall notify its Broker, Escrow Holder and Seller, in writing, within the time specified in paragraph 5.2 hereof, that Buyer has not obtained said New Loan, this Agreement shall be terminated, and Buyer shall be entitled to the prompt return of the Deposit, plus any interest earned thereon, less only Escrow Holder and Title Company cancellation fees and costs, which Buyer shall pay.

6.  **Seller Financing** (Purchase Money Note). (Strike if not applicable)

~~6.1 If Seller approves Buyer's financials (see paragraph 9.8) the Purchase Money Note shall provide for interest on unpaid principal at the rate of ____ % per annum, with principal and interest paid as follows:~~

~~[illegible struck-through text]~~

~~The Purchase Money Note and Purchase Money Deed of Trust shall be on the current forms commonly used by Escrow Holder, and be junior and subordinate to the Existing Note(s) and/or the New Loan expressly called for by this Agreement.~~

~~6.2 The Purchase Money Note and/or the Purchase Money Deed of Trust shall contain provisions regarding the following (see also paragraph 10.3 (b)):~~

~~(a) Prepayment. Principal may be prepaid in whole or in part at any time without penalty at the option of the Buyer.~~

~~(b) Late Charge. A late charge of 6% shall be payable with respect to any payment of principal, interest, or other charges, not made within 10 days after it is due.~~

~~(c) Due On Sale. In the event the Buyer sells or transfers title to the Property or any portion thereof, then the Seller may, at Seller's option, require the entire unpaid balance of said Note to be paid in full.~~

~~6.3 If the Purchase Money Deed of Trust is to be subordinate to other financing, Escrow Holder shall, at Buyer's expense prepare and record an Seller to furnish a request for notice of default and/or notice of delinquency with regard to each mortgage or deed of trust to which it will be subordinate.~~

~~6.4 WARNING: CALIFORNIA LAW DOES NOT ALLOW DEFICIENCY JUDGEMENTS ON SELLER FINANCING. IF BUYER ULTIMATELY DEFAULTS ON THE LOAN, SELLER'S SOLE REMEDY IS TO FORECLOSE ON THE PROPERTY.~~

~~9.8 Seller's obligation to provide financing is contingent upon Seller's reasonable appraisal of Buyer's financial condition. Buyer shall provide a current financial statement and copies of its Federal tax returns for the last 3 years to Seller within 10 days following the Date of Agreement. Seller has 10 days following the receipt of such documentation to satisfy itself with regard to Buyer's financial condition and to notify Escrow Holder as to whether or not Buyer's financial condition is acceptable. If Seller fails to notify Escrow Holder, in writing, of its disapproval of the contingency within said time period, it shall be conclusively presumed that Seller has approved Buyer's financial condition. If Seller is not satisfied with Buyer's financial condition it shall have the option, within 10 days of the receipt of such notice, to either terminate this transaction or to purchase the Property without Seller financing. If Buyer fails to notify Escrow Holder within said time period of its election to terminate this transaction then Buyer shall be conclusively presumed to have elected to purchase the Property without Seller financing. If Buyer elects to terminate, Buyer's Deposit shall be refunded less Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation.~~

7.  **Real Estate Brokers.**

7.1  The following real estate broker(s) ("Brokers") and brokerage relationships exist in this transaction and are consented to by the Parties (check the applicable boxes):

☐ _____ represents Seller exclusively ("Seller's Broker");

☑ **Lee and Associates - ISG** represents Buyer exclusively ("Buyer's Broker"); or

☐ _____ represents both Seller and Buyer ("Dual Agency").

The Parties acknowledge that Brokers are the procuring cause of this Agreement. See paragraph 24 regarding the nature of a real estate agency relationship. Buyer shall use the services of Buyer's Broker exclusively in connection with any and all negotiations and offers with respect to the Property for a period of 1 year from the date reserved for reference purposes at the top of page 1.

7.2  Buyer and Seller each represent and warrant to the other that he/she/it has had no dealings with any person, firm, broker or finder in connection with the negotiation of this Agreement and/or the consummation of the purchase and sale contemplated herein, other than the Brokers named in paragraph 7.1, and no broker or other person, firm or entity, other than said Brokers is/are entitled to any commission or finder's fee in connection with this transaction as the result of any dealings or acts of such Party. Buyer and Seller do each hereby agree to indemnify, defend, protect and hold the other harmless from and against any costs, expenses or liability for compensation, commission or charges which may be claimed by any broker, finder or other similar party, other than said named Brokers by reason of any dealings or act of the indemnifying Party.

8.  **Escrow and Closing.**

8.1  Upon acceptance hereof by Seller, this Agreement, including any counteroffers incorporated herein by the Parties, shall constitute not only the agreement of purchase and sale between Buyer and Seller, but also instructions to Escrow Holder for the consummation of the Agreement through the Escrow. Escrow Holder shall not prepare any further escrow instructions restating or amending the Agreement unless specifically so instructed by the Parties or a Broker herein. Subject to the reasonable approval of the Parties, Escrow Holder may, however, include its standard general escrow provisions.

8.2  As soon as practical after the receipt of this Agreement and any relevant counteroffers, Escrow Holder shall ascertain the Date of Agreement as defined in paragraphs 1.2 and 20.2 and advise the Parties and Brokers, in writing, of the date ascertained.

8.3  Escrow Holder is hereby authorized and instructed to conduct the Escrow in accordance with this Agreement, applicable law and custom and practice of the community in which Escrow Holder is located, including any reporting requirements of the Internal Revenue Code. In the event of a conflict between the law of the state where the Property is located and the law of the state where the Escrow Holder is located, the law of the state where the Property is located shall prevail.

PAGE 2 OF 8

INITIALS                                                                              INITIALS

©2003 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                          FORM OFAL-8-8/03E

6.4  Subject to satisfaction of the contingencies herein described, Escrow Holder shall close this escrow (the "Closing") by recording a general warranty deed (a grant deed in California) and the other documents required to be recorded, and by disbursing the funds and documents in accordance with this Agreement.

6.5  Buyer and Seller shall each pay one-half of the Escrow Holder's charges and Seller shall pay the usual recording fees and any required documentary transfer taxes. Seller shall pay the premium for a standard coverage owner's or joint protection policy of title insurance. (See also paragraph 11.)

6.6  Escrow Holder shall verify that all of Buyer's contingencies have been satisfied or waived prior to Closing. The matters contained in paragraphs 9.1 subparagraphs (b), (c), (d), (e), (g), (f), (h), and (j), 9.4, 9.5, 12, 13, 14, 16, 18, 20, 21, 22, and 24 are, however, matters of agreement between the Parties only and are not instructions to Escrow Holder.

6.7  If this transaction is terminated for non-satisfaction and non-waiver of a Buyer's Contingency, as defined in paragraph 9.2, then neither of the Parties shall thereafter have any liability to the other under this Agreement, except to the extent of a breach of any affirmative covenant or warranty in this Agreement. In the event of such termination, Buyer shall be promptly refunded all funds deposited by Buyer with Escrow Holder, less only Title Company and Escrow Holder cancellation fees and costs, all of which shall be Buyer's obligation. If this transaction is terminated as a result of Seller's breach of this Agreement then Seller shall pay the Title Company and Escrow Holder cancellation fees and costs.

6.8  The Closing shall occur on the Expected Closing Date, or as soon thereafter as the Escrow is in condition for Closing; provided, however, that if the Closing does not occur by the Expected Closing Date and said Date is not extended by mutual instructions of the Parties, a Party not then in default under this Agreement may notify the other Party, Escrow Holder, and Brokers, in writing that, unless the Closing occurs within 5 business days following said notice, the Escrow shall be deemed terminated without further notice or instructions.

6.9  Except as otherwise provided herein, the termination of Escrow shall not relieve or release either Party from any obligation to pay Escrow Holder's fees and costs or constitute a waiver, release or discharge of any breach or default that has occurred in the performance of the obligations, agreements, covenants or warranties contained therein.

6.10  If this sale of the Property is not consummated for any reason other than Seller's breach or default, then at Seller's request, and as a condition to any obligation to return Buyer's deposit (see paragraph 21), Buyer shall within 5 days after written request deliver to Seller, at no charge, copies of all surveys, engineering studies, soil reports, maps, master plans, feasibility studies and other similar items prepared by or for Buyer that pertain to the Property. Provided, however, that Buyer shall not be required to deliver any such report if the written contract which Buyer entered into with the consultant who prepared such report specifically forbids the dissemination of the report to others.

9.  Contingencies to Closing.

9.1  The Closing of this transaction is contingent upon the satisfaction or waiver of the following contingencies. IF BUYER FAILS TO NOTIFY ESCROW HOLDER, IN WRITING, OF THE DISAPPROVAL OF ANY OF SAID CONTINGENCIES WITHIN THE TIME SPECIFIED THEREIN, IT SHALL BE CONCLUSIVELY PRESUMED THAT BUYER HAS APPROVED SUCH ITEM, MATTER OR DOCUMENT. Buyer's conditional approval shall constitute disapproval, unless provision is made by the Seller within the time specified therefore by the Buyer in such conditional approval or by this Agreement, whichever is later, for the satisfaction of the condition imposed by the Buyer. Escrow Holder shall promptly provide all Parties with copies of any written disapproval or conditional approval which it receives. With regard to subparagraphs (a) through (j) the pre-printed time periods shall control unless a different number of days is inserted in the spaces provided.

(a)  Disclosure. Seller shall make to Buyer, through Escrow, all of the applicable disclosures required by law (See AIR Commercial Real Estate Association ("AIR") standard form entitled "Seller's Mandatory Disclosure Statement") and provide Buyer with a completed Property Information Sheet ("Property Information Sheet") concerning the Property, duly executed by or on behalf of Seller in the current form or equivalent to that published by the AIR within 10 or _____ days following the Date of Agreement. Buyer has 40 20 days from the receipt of said disclosures to approve or disapprove the matters disclosed.

(b)  Physical Inspection. Buyer has 40 or ____ 30 ____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the physical aspects and size of the Property.

(c)  Hazardous Substance Conditions Report. Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the environmental aspects of the Property. Seller recommends that Buyer obtain a Hazardous Substance Conditions Report concerning the Property and immediate adjoining properties. Any such report shall be paid for by Buyer. A "Hazardous Substance" for purposes of this Agreement is defined as any substance whose nature and/or quantity of existence, use, manufacture, disposal or effect, renders it subject to Federal, state or local regulation, investigation, remediation or removal as potentially injurious to public health or welfare. A "Hazardous Substance Condition" for purposes of this Agreement is defined as the existence on, under or relatively adjacent to the Property of a Hazardous Substance that would require remediation and/or removal under applicable Federal, state or local law.

(d)  Soil Inspection. Buyer has 30 or _____ days from the receipt of the Property Information Sheet or the Date of Agreement, whichever is later, to satisfy itself with regard to the condition of the soils on the Property. Seller recommends that Buyer obtain a soil test report. Any such report shall be paid for by Buyer. Seller shall provide Buyer copies of any soils report that Seller may have within 10 days of the Date of Agreement.

(e)  Governmental Approvals. Buyer has 30 or _____ days from the Date of Agreement to satisfy itself with regard to approvals and permits from governmental agencies or departments which Buyer or may have jurisdiction over the Property and which Buyer deems necessary or desirable in connection with its intended use of the Property, including, but not limited to, permits and approvals required with respect to zoning, planning, building and safety, fire, police, handicapped and Americans with Disabilities Act requirements, transportation and environmental matters. NOTE: Past uses of the Property may not longer be allowed. In the event that the Property must be rezoned, it is Buyer's responsibility to obtain the rezoning from the appropriate government agencies. Seller shall sign all documents Buyer is required to file in connection with rezoning, conditional use permits and/or other development approvals.

(f)  Conditions of Title. Escrow Holder shall cause a current commitment for title insurance ("Title Commitment") concerning the Property issued by the Title Company, as well as legible copies of all documents referred to in the Title Commitment ("Underlying Documents"), and a scaled and dimensioned plot showing the location of any easements to be delivered to Buyer within 10 or _____ days following the Date of Agreement. Buyer has 40 20 days from the receipt of the Title Commitment, the Underlying Documents and the plot plan to satisfy itself with regard to the condition of title. The disapproval by Buyer of any monetary encumbrance, which by the terms of this Agreement is not to remain against the Property after the Closing, shall not be considered a failure of this contingency, as Seller shall have the obligation, at Seller's expense, to satisfy and remove such disapproved monetary encumbrance at or before the Closing.

(g)  Survey. Buyer has 30 or _____ days from the receipt of the Title Commitment and Underlying Documents to satisfy itself with regard to any ALTA title supplement based upon a survey prepared by American Land Title Association ("ALTA") standards for an owner's policy by a licensed surveyor, showing the legal description and boundary lines of the Property, any easements of record, and any improvements, poles, structures and things located within 10 feet of either side of the Property boundary lines. Any such survey shall be prepared at Buyer's direction and expense. If Buyer has obtained a survey and approved the ALTA title supplement, Buyer may elect within the period allowed for Buyer's approval of a survey to have an ALTA extended coverage owner's form of title policy, in which event Buyer shall pay any additional premium attributable thereto.

(h)  Existing Leases and Tenancy Statements. Seller shall within 10 or _____ days of the Date of Agreement provide both Buyer and Escrow Holder with legible copies of all leases, subleases or rental arrangements (collectively "Existing Leases") affecting the Property, and with a tenancy statement ("Estoppel Certificate") in the latest form or equivalent to that published by the AIR, executed by Seller and/or each tenant and guarantor of the Property. Seller shall use its best efforts to have each tenant complete and execute an Estoppel Certificate within 10 days of the tenancy. Buyer has 10 days from the receipt of said Existing Leases and Estoppel Certificates to satisfy itself with regard to the Existing Leases and any other tenancy issues.

(i)  Owners' Association. Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with a statement and books package from any owners' association servicing the Property. Each tenant's package shall of a minimum include copies of the association's bylaws, articles of incorporation, current budget and financial statement. Buyer has 15 days from the receipt of such documents to satisfy itself with regard to the association.

(j)  Other Agreements. Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of all other agreements ("Other Agreements") known to Seller that will affect the Property after Closing. Buyer has 40 20 days from the receipt of the Other Agreements to satisfy itself with regard to such Agreements.

(k)  Financing. If paragraph 5 hereof dealing with a financing contingency has not been stricken, the satisfaction or waiver of such New Loan contingency.

(l)  Existing Notes. If paragraph 3.1(e) has not been stricken, then, Seller shall within 10 or _____ days of the Date of Agreement provide Buyer with legible copies of the Existing Notes, Existing Deeds of Trust and related agreements (collectively, "Loan Documents") to which the Property will remain subject after the Closing. Escrow Holder shall deliver to Buyer a Beneficiary Statement and, if a Loan Documents provide for them, an Estoppel Certificate ("Beneficiary Statement") confirming: (1) the amount of the unpaid principal balance, the current interest rate, and the date to which interest is paid; and (2) the nature and amount of any impounds held by the beneficiary in connection with such loan. Buyer has 10 or _____ days from the receipt of the Loan Documents and Beneficiary Statements to satisfy itself with regard to such financing. Buyer's obligation to close is conditioned upon Buyer being able to assume said Existing Notes and the related security documents as is.

[initials]  INITIALS                                   PAGE 3 OF 8                                   INITIALS  [initials]

©2008 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                                                      FORM OFAL-9-8/08E

Feb 28 11 08:52p        jason                          310 544 7735                    p.4

PAGE 4 OF 9

©2008 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFAL-0-8/08E

Feb 28 11 08:53p    jason    310 544 7735    p.5

appropriate insurance to cover the Property.

11.3 **Rents, Interest and Expenses.** Scheduled rentals, interest on Existing Notes, utilities, and operating expenses shall be prorated as of the date of Closing. The Parties agree to promptly adjust between themselves outside of Escrow any rents received after the Closing.

11.4 **Security Deposit.** Security Deposits held by Seller shall be given to Buyer as a credit to the cash required of Buyer at the Closing.

11.5 **Post Closing Matters.** Any item to be prorated that is not determined or determinable at the Closing shall be promptly adjusted by the Parties by appropriate cash payment outside of the Escrow when the amount due is determined.

11.6 **Variations in Existing Note Balances.** In the event that Buyer is purchasing the Property subject to an Existing Deed of Trust(s), and in the event that a Beneficiary Statement as to the applicable Existing Note(s) discloses that the unpaid principal balance of such Existing Note(s) at the closing will be more or less than the amount set forth in paragraph 3.1(c) hereof ("Existing Note Variation"), then the Purchase Money Note(s) shall be reduced or increased by an amount equal to such Existing Note Variation. If there is to be no Purchase Money Note, the cash required at the Closing per paragraph 3.1(a) shall be reduced or increased by the amount of such Existing Note Variation.

11.7 **Variations in New Loan Balance.** In the event Buyer is obtaining a New Loan and the amount ultimately obtained exceeds the amount set forth in paragraph 3.1, then the amount of the Purchase Money Note, if any, shall be reduced by the amount of such excess.

11.8 **Owner's Association Fees.** Escrow Holder shall: (i) bring Seller's account with the association current and pay delinquencies or transfer fees from Seller's proceeds, and (ii) pay any up front fees required by the association from Buyer's funds.

## 12. Representations and Warranties of Seller and Disclosures.

12.1 Seller's warranties and representations shall survive the Closing and delivery of the deed for a period of 3 years, and, are true, material and relied upon by Buyer and Brokers in all respects. Seller hereby makes the following warranties and representations to Buyer and Brokers:

(a) **Authority of Seller.** Seller is the owner of the Property and/or has the full right, power and authority to sell, convey and transfer the Property to Buyer as provided herein, and to perform Seller's obligations hereunder.

(b) **Maintenance During Escrow and Equipment Condition At Closing.** Except as otherwise provided in paragraph 9.1(m) hereof, Seller shall maintain the Property until the Closing in its present condition, ordinary wear and tear excepted.

(c) **Hazardous Substances/Storage Tanks.** Seller has no knowledge, except as otherwise disclosed to Buyer in writing, of the existence or prior existence on the Property of any Hazardous Substance, nor of the existence of any storage tank at any above or below ground storage tank.

(d) **Compliance.** Seller has no knowledge of any aspect or condition of the Property which violates applicable laws, rules, regulations, codes or covenants, conditions or restrictions, or of improvements or alterations made to the Property without a permit where one was required, or of any unfulfilled order or directive of any applicable governmental agency or casualty insurance company requiring any investigation, remediation, repair, maintenance or improvement be performed on the Property.

(e) **Changes in Agreements.** Prior to the Closing, Seller will not violate or modify any Existing Lease or Other Agreement, or create any new leases or other agreements affecting the Property, without Buyer's written approval, which approval will not be unreasonably withheld.

(f) **Possessory Rights.** Seller has no knowledge that anyone will, at the Closing, have any right to possession of the Property, except as disclosed by this Agreement or otherwise in writing to Buyer.

(g) **Mechanics' Liens.** There are no unsatisfied mechanics' or materialmens' lien rights concerning the Property.

(h) **Actions, Suits or Proceedings.** Seller has no knowledge of any actions, suits or proceedings pending or threatened before any commission, board, bureau, agency, arbitrator, court or tribunal that would affect the Property or the right to occupy or utilize same.

(i) **Notice of Changes.** Seller will promptly notify Buyer and Brokers in writing of any Material Change (see paragraph 9.1(n)) affecting the Property that becomes known to Seller prior to the Closing.

(j) **No Tenant Bankruptcy Proceedings.** Seller has no notice or knowledge that any tenant of the Property is the subject of a bankruptcy or insolvency proceeding.

(k) **No Seller Bankruptcy Proceedings.** Seller is not the subject of a bankruptcy, insolvency or probate proceeding.

(l) **Personal Property.** Seller has no knowledge that anyone will, at the Closing, have any right to any personal property included in the Purchase Price nor knowledge of any liens or encumbrances affecting such personal property, except as disclosed by this Agreement or otherwise in writing to Buyer.

12.2 Buyer hereby acknowledges that, except as otherwise stated in this Agreement, Buyer is purchasing the Property in its existing condition and will, by the time called for herein, make or have waived all inspections of the Property Buyer believes are necessary to protect its own interest in, and its contemplated use of, the Property. The Parties acknowledge that, except as otherwise stated in this Agreement, no representations, inducements, promises, agreements, assurances, oral or written, concerning the Property, or any aspect of the occupational safety and health laws, Hazardous Substance laws, or any other act, ordinance or law, have been made by either Party or Brokers, or relied upon by either Party hereto.

12.3 In the event that Buyer learns that a Seller representation or warranty might be untrue prior to the Closing, and Buyer elects to purchase the Property anyway then, and in that event, Buyer waives any right that it may have to bring an action or proceeding against Seller or Brokers regarding said representation or warranty.

12.4 Any environmental reports, soils reports, surveys, feasibility studies, and other similar documents which were prepared by third party consultants and provided to Buyer by Seller or Seller's representatives, have been delivered as an accommodation to Buyer and without any representation or warranty as to the sufficiency, accuracy, completeness, and/or validity of said documents, all of which Buyer relies on at its own risk. Seller believes said documents to be accurate, but Buyer is advised to retain appropriate consultants to review said documents and investigate the Property.

## 13. Possession.

Possession of the Property shall be given to Buyer at the Closing subject to the rights of tenants under Existing Leases.

## 14. Buyer's Entry.

At any time during the Escrow period, Buyer, and its agents and representatives, shall have the right at reasonable times and subject to rights of tenants, to enter upon the Property for the purpose of making inspections and tests specified in this Agreement. No destructive testing shall be conducted, however, without Seller's prior approval which shall not be unreasonably withheld. Following any such entry or work, unless otherwise directed in writing by Seller, Buyer shall return the Property to the condition it was in prior to such entry or work, including the recompaction or removal of any disrupted soil or material as Seller may reasonably direct. All such inspections and tests and any other work conducted or materials furnished with respect to the Property by or for Buyer shall be paid for by Buyer as and when due and Buyer shall indemnify, defend, protect and hold harmless Seller and the Property and from any and all claims, liabilities, losses, expenses (including reasonable attorneys' fees), damages, including those for injury to person or property, arising out of or relating to any such work or materials or the acts or omissions of Buyer, its agents or employees in connection therewith.

## 15. Further Documents and Assurances.

The Parties shall each, diligently and in good faith, undertake all actions and procedures reasonably required to place the Escrow in condition for Closing as and when required by this Agreement. The Parties agree to provide all further information, and to execute and deliver all further documents, as reasonably required by Escrow Holder or the Title Company.

## 16. Attorneys' Fees.

If any Party or Broker brings an action or proceeding (including arbitration) involving the Property whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term "Prevailing Party" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred.

## 17. Prior Agreements/Amendments.

17.1 This Agreement supersedes any and all prior agreements between Seller and Buyer regarding the Property.

17.2 Amendments to this Agreement are effective only if made in writing and executed by Buyer and Seller.

## 18. Broker's Rights.

18.1 If the sale is not consummated due to the default of either the Buyer or Seller, the defaulting Party shall be liable to and shall pay to Brokers the Brokerage Fee that Brokers would have received had the sale been consummated. If Buyer is the defaulting party, payment of said Brokerage Fee is in addition to any obligation with respect to liquidated or other damages.

18.2 Upon the Closing, Brokers are authorized to publicize the facts of this transaction.

## 19. Notices.

19.1 Whenever any Party, Escrow Holder or Brokers herein shall desire to give or serve any notice, demand, request, approval, disapproval or other communication, each such communication shall be in writing and shall be delivered personally, by messenger or by mail, postage prepaid, to the address set forth in this Agreement or by facsimile transmission.

19.2 Service of any such communication shall be deemed made on the date of actual receipt if personally delivered. Any such communication sent by regular mail shall be deemed given 48 hours after the same is mailed. Communications sent by United States Express Mail or overnight courier

PAGE 8 OF 8

©2008 - AIR COMMERCIAL REAL ESTATE ASSOCIATION

FORM OFAL-6-8/08E

INITIALS

INITIALS

00014

0.41 guarantee next day delivery shall be deemed delivered 24 hours after delivery of the same to the Postal Service or courier. Communications transmitted by facsimile transmission shall be deemed delivered upon telephonic confirmation of receipt (confirmation report from fax machine is sufficient), provided a copy is also delivered via delivery or mail. If such communication is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

19.2 Any Party or Broker hereto may from time to time, by notice in writing, designate a different address to which, or a different person or additional persons to whom, all communications are thereafter to be made.

**20.  Duration of Offer.**

20.1 If this offer is not accepted by Seller on or before 5:00 P.M. according to the time standard applicable to the city of

Los Angeles _____ on the date of 2/25/2011 _____
it shall be deemed automatically revoked.

20.2 The acceptance of this offer, or of any subsequent counteroffer hereto, that creates an agreement between the Parties as described in paragraph 1.2, shall be deemed made upon delivery to the other Party or either Broker herein of a duly executed writing unconditionally accepting the last outstanding offer or counteroffer.

**21.  LIQUIDATED DAMAGES.  (This Liquidated Damages paragraph is applicable only if initialed by both Parties).**
THE PARTIES AGREE THAT IT WOULD BE IMPRACTICABLE OR EXTREMELY DIFFICULT TO FIX, PRIOR TO SIGNING THIS AGREEMENT, THE ACTUAL DAMAGES WHICH WOULD BE SUFFERED BY SELLER IF BUYER FAILS TO PERFORM ITS OBLIGATIONS UNDER THIS AGREEMENT.  THEREFORE, IF, AFTER THE SATISFACTION OR WAIVER OF ALL CONTINGENCIES PROVIDED FOR THE BUYER'S BENEFIT, BUYER BREACHES THIS AGREEMENT, SELLER SHALL BE ENTITLED TO LIQUIDATED DAMAGES IN THE AMOUNT OF _____ $50,000.00 _____ UPON PAYMENT OF SAID SUM TO SELLER, BUYER SHALL BE RELEASED FROM ANY FURTHER LIABILITY TO SELLER, AND ANY ESCROW CANCELLATION FEES AND TITLE COMPANY CHARGES SHALL BE PAID BY SELLER.

<br>_____ Buyer Initials _____        _____ Seller Initials _____

**22.  ARBITRATION OF DISPUTES.  (This Arbitration of Disputes paragraph is applicable only if initialed by both Parties.)**

22.1 ANY CONTROVERSY AS TO WHETHER SELLER IS ENTITLED TO THE LIQUIDATED DAMAGES AND/OR BUYER IS ENTITLED TO THE RETURN OF DEPOSIT MONEY, SHALL BE DETERMINED BY BINDING ARBITRATION BY, AND UNDER THE COMMERCIAL RULES OF THE AMERICAN ARBITRATION ASSOCIATION ("COMMERCIAL RULES"). ARBITRATION HEARINGS SHALL BE HELD IN THE COUNTY WHERE THE PROPERTY IS LOCATED. ANY SUCH CONTROVERSY SHALL BE ARBITRATED BY 3 ARBITRATORS WHO SHALL BE IMPARTIAL REAL ESTATE BROKERS WITH AT LEAST 5 YEARS OF FULL TIME EXPERIENCE IN BOTH THE AREA WHERE THE PROPERTY IS LOCATED AND THE TYPE OF REAL ESTATE THAT IS THE SUBJECT OF THIS AGREEMENT. THEY SHALL HEAR AND DETERMINE SAID CONTROVERSY IN ACCORDANCE WITH APPLICABLE LAW, THE INTENTION OF THE PARTIES AS EXPRESSED IN THIS AGREEMENT AND ANY AMENDMENTS THERETO, AND UPON THE EVIDENCE PRODUCED AT AN ARBITRATION HEARING. PRE-ARBITRATION DISCOVERY SHALL BE PERMITTED IN ACCORDANCE WITH THE COMMERCIAL RULES OR STATE LAW APPLICABLE TO ARBITRATION PROCEEDINGS. THE AWARD SHALL BE EXECUTED BY AT LEAST 2 OF THE 3 ARBITRATORS, BE RENDERED WITHIN 30 DAYS AFTER THE CONCLUSION OF THE HEARING, AND MAY INCLUDE ATTORNEYS' FEES AND COSTS TO THE PREVAILING PARTY PER PARAGRAPH 16 HEREOF. JUDGMENT MAY BE ENTERED ON THE AWARD IN ANY COURT OF COMPETENT JURISDICTION NOTWITHSTANDING THE FAILURE OF A PARTY DULY NOTIFIED OF THE ARBITRATION HEARING TO APPEAR THEREAT.

22.2 BUYER'S RESORT TO OR PARTICIPATION IN SUCH ARBITRATION PROCEEDINGS SHALL NOT BAR SUIT IN A COURT OF COMPETENT JURISDICTION BY THE BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE UNLESS AND UNTIL THE ARBITRATION RESULTS IN AN AWARD TO THE SELLER OF LIQUIDATED DAMAGES, IN WHICH EVENT SUCH AWARD SHALL ACT AS A BAR AGAINST ANY ACTION BY BUYER FOR DAMAGES AND/OR SPECIFIC PERFORMANCE.

22.3 NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE "ARBITRATION OF DISPUTES" PROVISION TO NEUTRAL ARBITRATION.

<br>_____ Buyer Initials _____        _____ Seller Initials _____

**23.  Miscellaneous.**

23.1 Binding Effect.  Buyer and Seller both acknowledge that they have carefully read and reviewed this Agreement and each term and provision contained herein. In addition, this Agreement shall be binding on the Parties without regard to whether or not paragraphs 21 and 22 are initialed by both of the Parties. Paragraphs 21 and 22 are each incorporated into this Agreement only if initialed by both Parties at the time that the Agreement is executed.

23.2 Applicable Law.  This Agreement shall be governed by, and paragraph 22.3 is amended to refer to, the laws of the state in which the Property is located.

23.3 Time of Essence.  Time is of the essence of this Agreement.

23.4 Counterparts.  This Agreement may be executed by Buyer and Seller in counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument. Escrow Holder, after verifying that the counterparts are identical except for the signatures, is authorized and instructed to combine the signed signature pages (at one of the counterparts, which shall then constitute the Agreement.

23.5 Waiver of Jury Trial.  THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

23.6 Conflict.  Any conflict between the printed provisions of this Agreement and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

23.7 1031 Exchange.  Both Seller and Buyer agree to cooperate with each other in the event that either or both wish to participate in a 1031 exchange. Any party initiating an exchange shall bear all costs of such exchange.

23.8 Days.  Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days.

**24.  Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

24.1 The Parties and Brokers agree that their relationship(s) shall be governed by the principles set forth in the applicable sections of the California Civil Code, as summarized in paragraph 24.2.

24.2 When entering into a discussion with a real estate agent regarding a real estate transaction, a Buyer or Seller should from the outset

<br>_____ INITIALS _____        PAGE 6 OF 8        _____ INITIALS _____

©2006 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                    FORM OFAL-6-6/002

understand what type of agency relationship or representation it has with the agent or agents in the transaction. Buyer and Seller acknowledge being advised by the Brokers in this transaction, as follows:

(a) Seller's Agent. A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or subagent has the following affirmative obligations: (1) To the Seller: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Seller. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(b) Buyer's Agent. A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations. (1) To the Buyer: A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Buyer. (2) To the Buyer and the Seller: a. Diligent exercise of reasonable skills and care in performance of the agent's duties. b. A duty of honest and fair dealing and good faith. c. A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(c) Agent Representing Both Seller and Buyer. A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer. (1) In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer: a. A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Seller or the Buyer. b. Other duties to the Seller and the Buyer as stated above in their respective sections (a) or (b) of this paragraph 24.2. (2) In representing both Seller and Buyer, the agent may not without the express permission of the respective Party, disclose to the other Party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered. (3) The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect their own interests. Buyer and Seller should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

(d) Further Disclosures. Throughout this transaction Buyer and Seller may receive more than one disclosure, depending upon the number of agents assisting in the transaction. Buyer and Seller should each read its contents each time it is presented, considering the relationship between them and the real estate agent in this transaction and that disclosure. Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this transaction may be brought against Broker more than one year after the Date of Agreement and that the liability (including court costs and attorneys' fees), of any Broker with respect to any breach of duty, error or omission relating to this Agreement shall not exceed the fee received by such Broker pursuant to this Agreement; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

24.3  Confidential Information. Buyer and Seller agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

25.  Construction of Agreement. In construing this Agreement, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Agreement. Whenever required by the context, the singular shall include the plural and vice versa. Unless otherwise specifically indicated to the contrary, the word "days" as used in this Agreement shall mean and refer to calendar days. This Agreement shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

26  Additional Provisions:
Additional provisions of this offer, if any, are as follows or are attached hereto by an addendum containing paragraphs _____ NONE. _____ through _____. (If there are no additional provisions write "NONE".)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY THE AIR COMMERCIAL REAL ESTATE ASSOCIATION OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS AGREEMENT OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:

1.    SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS AGREEMENT.
2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PROPERTY. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE INTEGRITY AND CONDITION OF ANY STRUCTURES AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PROPERTY FOR BUYER'S INTENDED USE.

WARNING: IF THE PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THIS AGREEMENT MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

NOTE:
1.    THIS FORM IS NOT FOR USE IN CONNECTION WITH THE SALE OF RESIDENTIAL PROPERTY.
2.    IF THE BUYER IS A CORPORATION, IT IS RECOMMENDED THAT THIS AGREEMENT BE SIGNED BY TWO CORPORATE OFFICERS.

The undersigned Buyer offers and agrees to buy the Property on the terms and conditions stated and acknowledges receipt of a copy hereof.

INITIALS                    PAGE 7 OF 8                              INITIALS

©2008 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                FORM OFA-0-6/08E

Feb 28 11 08:56p        jason                      310 544 7735              p.8

BROKER:                                          BUYER:

LEE AND ASSOCIATES-ISG

Attn: MARK KONOFASKE
Title: MANAGING DIRECTOR                          By: _____
Address: 15250 VENTURA BLVD., SUITE 100          Date: 2/23/2011
SHERMAN OAKS, CA 91403                            Name Printed: Dr. Lily Mirtorabi
Telephone:(213) 220-9800                          Title: _____
Facsimile:(213) 947-1169                          Telephone:( ) _____
Email:MARK.KONOPASKE@LEE-ASSOCIATES.COM          Facsimile:( ) _____
Federal ID No.
Broker/Agent DRE License #: 00960857             By: Jason Sama
                                                 Date: 2/28/2011
                                                 Name Printed: Jason Semani
                                                 Title: _____
                                                 Address: on file with broker
                                                 Telephone:( ) _____
                                                 Facsimile:( ) _____
                                                 Email: _____
                                                 Federal ID No.: _____

27.  Acceptance.
     27.1  Seller accepts the foregoing offer to purchase the Property and hereby agrees to sell the Property to Buyer on the terms and conditions
therein specified.
     27.2  Seller acknowledges that Brokers have been retained to locate a Buyer and are the procuring cause of the purchase and sale of the
Property set forth in this Agreement. In consideration of real estate brokerage service rendered by Brokers, Seller agrees to pay Brokers a real estate
Brokerage Fee in a sum equal to $_____ % of the Purchase Price to be divided equally between Seller's Broker and Buyer's Broker. This
Agreement shall serve as an irrevocable instruction to Escrow Holder to pay such Brokerage Fee to Brokers out of the proceeds accruing to the
account of Seller at the Closing.
     27.3  Seller acknowledges receipt of a copy hereof and authorizes Brokers to deliver a signed copy to Buyer.

NOTE: A PROPERTY INFORMATION SHEET IS REQUIRED TO BE DELIVERED TO BUYER BY SELLER UNDER THIS AGREEMENT.

BROKER:                                          SELLER:

                                                 MERCO GROUP 1308 S ORCHARD, LLC

_____                          By: /---/--/->
Attn: _____                    Date: _____
Title: _____                   Name Printed: Miguel Echeverria
Address: _____                 Title: VP
Telephone:( ) _____                   Telephone:( ) _____
Facsimile:( ) _____                   Facsimile:( ) _____
Email: _____
Federal ID No.: _____                 By: _____
Broker/Agent DRE License #: ____                 Date: _____
                                                 Name Printed: _____
                                                 Title: _____
                                                 Address: _____
                                                 Telephone:( ) _____
                                                 Facsimile:( ) _____
                                                 Email: _____
                                                 Federal ID No.: _____

NOTICE:  These forms are often modified to meet changing requirements of law and industry needs.  Always write or call to make sure you
are utilizing the most current form:  AIR Commercial Real Estate Association,  800 W 8th Street, Suite 800, Los Angeles, CA 90017.
Telephone No. (213) 687-8777.  Fax No.: (213) 687-8616.

© Copyright 2003 By AIR Commercial Real Estate Association.
All rights reserved.
No part of these works may be reproduced in any form without permission in writing.

INITIALS                    PAGE 9 OF 9                          INITIALS

©2006 - AIR COMMERCIAL REAL ESTATE ASSOCIATION                   FORM OFAL-0-8/05E

00017

Mar 01 11 04:39p      jason                        310 544 7735              p.1

Feb 28 11 08:56p      jason                        310 544 7735           p.9

## ADDENDUM

Property:   1308 Orchard Avenue, Los Angeles, California
Seller:     Meruco Group – 1308 S. Orchard, LLC, a Delaware limited liability company,
            debtor-in-possession
Buyer:      Dr. Lili Mirtorabi and Jason Samani

This addendum ("Addendum") is executed by Seller and Buyer in connection with that certain Standard Offer, Agreement and Escrow Instructions for Purchase of Real Estate dated for reference purposes as of February 23, 2011 between Seller and Buyer, with respect to the real property described above ("Agreement"). Any capitalized term used but not defined in this Addendum shall have the meaning given to such term in the Agreement. Buyer and Seller have executed this Addendum concurrent with the Agreement, which Addendum is part of and supplements, and shall control if inconsistent with, the Agreement.

26.1   Notwithstanding any of the terms and provisions contained in the Agreement, Buyer shall have until 5:00 p.m. (Los Angeles time) on the date that is thirty (30) days from the Date of Agreement ("Approval Date") within which either to: (1) waive Buyer's Contingencies and the New Loan contingency described in Paragraph 5 of the Agreement; or (2) terminate this Agreement by delivering written notice of termination to Seller. If Buyer delivers written notice of termination of this Agreement to Seller on or prior to the Approval Date, the Deposit shall be returned to Buyer, and neither party shall have any further obligation or liability under this Agreement except under Paragraphs 14 and 16, which shall survive termination. Notwithstanding any of the terms and provisions contained in the Agreement, if Buyer does not timely terminate this Agreement in writing as provided in this Paragraph 26.1, Buyer shall be deemed to have waived Buyer's Contingencies and the New Loan contingency described in Paragraph 5 of the Agreement. Upon Buyer's waiver or deemed waiver of Buyer's Contingencies and the New Loan contingency described in Paragraph 5 of the Agreement, the Deposit shall be nonrefundable and fully earned but applicable to the Purchase Price.

26.2   Notwithstanding any of the terms and provisions contained in the Agreement, Buyer understands and acknowledges that Seller is currently in a Chapter 11 reorganization proceeding in the United States Bankruptcy Court, Central District of California ("Bankruptcy Court"), Case No. 1:09-bk-13384-VK, which case is being jointly administered with the lead case In re Meruelo Maddux Properties, Inc. (Case No. 1:09-bk-13356-VK). Notwithstanding any of the terms and provisions contained in the Agreement, Seller's obligations under the Agreement and this Addendum shall be conditioned upon and subject to the following: (1) Seller obtaining entry of an order of the Bankruptcy Court approving the sale of the Property as set forth in the Agreement and this Addendum ("Bankruptcy Court Approval"), which approval Seller shall seek to obtain through the process of plan confirmation or otherwise; and (2) Seller obtaining approval by the board of directors of Meruelo Maddux Properties, Inc., a Delaware corporation and parent of Seller, of the Agreement and this Addendum and the transactions contemplated hereby. The foregoing are for the benefit only of Seller and may only be waived by Seller in writing.

26.3   Notwithstanding any of the terms and provisions contained in the Agreement, the Closing shall occur no later than ten (10) business days following the later of: (1) the Approval Date; or (2) the date Seller obtains Bankruptcy Court Approval, *but in no event will closing be earlier*

26.4   Notwithstanding any of the terms and provisions contained in the Agreement, all of Seller's *than thirty (30) calendar days from the Approval Date* representations and warranties contained in the Agreement shall only be deemed made to Buyer and shall only survive the Closing for one (1) year. Effective as of the Closing, except for any claims, demands, causes of action, obligations, losses, damages, penalties, costs, fees and expenses (collectively, "Claims") arising out of a breach of Seller's representations and warranties in the Agreement, Buyer, for itself and

1                        {B0190 / F0225 / 00009847.DOC V1}

its successors and assigns, waives its right to recover from, and forever releases and discharges Seller, its parents, subsidiaries and affiliates, and each of their respective members, partners or other equity owners, managers, officers, directors, shareholders, employees, attorneys, representatives and agents, from any and all Claims, whether direct or indirect, known or unknown, foreseen or unforeseen, that may arise on account of or are in any way connected with the Property, including the physical, environmental and structural condition of the Property or any law or regulation applicable thereto and specifically including any and all Claims relating to the release, presence, discovery or removal of any hazardous material or substance at the Property. With respect to the waiver and release set forth herein relating to unknown and unsuspected claims, such waiver is made with the full knowledge, understanding and agreement that California Civil Code Section 1542 provides as follows, and that the protections afforded by said code section are hereby waived:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Buyer's Initials: _____

Buyer acknowledges, stipulates and agrees that this Paragraph 26.4 is a material factor in Seller's decision to enter into the Agreement and this Addendum and to sell the Property to Buyer for the Purchase Price, and this Paragraph 26.4 shall survive the Closing.

SELLER:

Merco Group – 1308 S. Orchard, LLC,
a Delaware limited liability company,
debtor-in-possession

By: _____
Name: Miguel Enloquecion
Title: VP

BUYER:

_____
Dr. Lili Mirtorabi

_____
Jason Samani

{50190 / P0225 / 00009847.DOC V1}

00019