1  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
2  ENID M. COLSON (State Bar No. 189912)
   *EColson@DGDK.com*
3  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
4  Los Angeles, California  90067-2904
   Telephone:  (310) 277-0077
5  Facsimile:  (310) 277-5735

6  GARY E. KLAUSNER (State Bar No. 69077)
   *GKlausner@Stutman.com*
7  STUTMAN, TREISTER & GLATT
   PROFESSIONAL CORPORATION
8  1901 Avenue of the Stars, 12th Floor
   Los Angeles, CA  90067-6013
9  Telephone:  (310) 228-5600
   Facsimile:  (310) 228-5788

10
   Attorneys for Meruelo Maddux Properties, Inc., and
11 affiliated Debtors and Debtors-in-Possession

12
                    **UNITED STATES BANKRUPTCY COURT**
13
                    **CENTRAL DISTRICT OF CALIFORNIA**
14
                    **SAN FERNANDO VALLEY DIVISION**
15
   In re                              ) Case No. 1:09-bk-13356-VK
16                                     ) Chapter 11 (Jointly Administered)
   MERUELO MADDUX PROPERTIES,          )
17 INC., et al.,[1]                    ) **NOTICE OF MOTION AND MOTION FOR**
                                       ) **ESTIMATION OF CONTINGENT AND**
18         Debtors and Debtors-in-     ) **UNLIQUIDATED CLAIM OF THE LOS**
              Possession.              ) **ANGELES COUNTY METROPOLITAN**
19 _____ ) **TRANSPORTATION AUTHORITY FOR**
                                       ) **NON-VOTING PLAN CONFIRMATION**
20 ☐   Affects all Debtors             ) **PURPOSES ONLY; AND DECLARATIONS**
                                       ) **OF RICHARD MERUELO AND JOHN N.**
21 ☑   Affects the following Debtors:  ) **TEDFORD, IV, AND REQUEST FOR**
                                       ) **JUDICIAL NOTICE IN SUPPORT THEREOF**
22 Alameda Produce Market, LLC         )
   (1:09-bk-13394-VK)                  ) Date:    [To be set]
23                                     ) Time:    [To be set]
                                       ) Place:   Courtroom 301
24                                     )          21041 Burbank Boulevard
                                       )          Woodland Hills, California
25 _____ )

26
   _____
27     [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
   entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-
28 13434-VK; and 1:09-bk-13439-VK.

1    **PLEASE TAKE NOTICE** that, on a date and time to be set by the Court,[2] in Courtroom

2    301 of the United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills,

3    California, debtor and debtor-in-possession Alameda Produce Market, LLC ("Alameda Produce"),

4    will and does hereby move for an order estimating at zero dollars, for non-voting plan confirmation

5    purposes only, the contingent and unliquidated claim filed by the Los Angeles County Metropolitan

6    Transportation Authority (the "MTA") against Alameda Produce's estate.

7    This motion is made on the following grounds: On March 27, 2009, Alameda Produce filed

8    a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Code").

9    Out of an abundance of caution, the MTA filed a proof of claim against Alameda Produce's estate

10    based on a contingent and unliquidated claim that neither the MTA nor Alameda Produce believes

11    will ever need to be paid.  In December 2010, the MTA filed a conditional objection to Alameda

12    Produce's and competing plan proponents' requests for confirmation of their respective plans on

13    the grounds that the plans did not provide for the payment of the MTA's alleged potential claim,

14    and therefore the plans allegedly did not satisfy § 1129(a)(11).

15    During closing arguments on the MTA's objection on April 8, 2011, the Court inquired as

16    to whether Alameda Produce filed a motion to estimate the MTA's alleged claim.  Based on Ninth

17    Circuit law, Alameda Produce does not believe that the filing of such a motion is required in order

18    for the Court to value the MTA's claim for purposes of making a finding under § 1129(a)(11).  *See*

19    *In re Harbin*, 486 F.3d 510 (9th Cir. 2007).  Out of an abundance of caution, Alameda Produce is

20    requesting in writing that the Court estimate the value of the MTA's claim at zero dollars, solely

21    for the purpose of determining whether confirmation of Alameda Produce's plan is "likely to be

22    followed by the liquidation, or the need for further financial reorganization."

23    This Motion is based upon this Notice and Motion, the Memorandum of Points and

24    Authorities, the Declarations of Richard Meruelo and John N. Tedford, IV, the Request for Judicial

25

26    [2] An *ex parte* application for order shortening time is being filed concurrently herewith.
Alameda Produce anticipates that written notice of the hearing date and time will be filed and
27    served on appropriate parties promptly upon the setting of the hearing by the Court.

28

- 2 -

368104.03 [XP]    25195

1 | Notice, the papers and pleadings on file in this case, and such other evidence as may be presented

2 | to the Court.

3 | **PLEASE TAKE FURTHER NOTICE** that Alameda Produce is filing an *ex parte*

4 | application for order shortening time in which it will request that the Court set a hearing on this

5 | matter on less than regular 21-day notice and that such order further provide that oppositions, if

6 | any, may be presented to the Court in writing prior to the date of the hearing. If the Debtors' *ex*

7 | *parte* application is granted, the Debtors will file and serve a notice of the hearing on this Motion,

8 | which notice will identify the date and time of the hearing and the deadline, if any, to file written

9 | oppositions. Oppositions not presented as set forth in the notice may be deemed waived. If you do

10 | not have any objection to this motion, you need not take any further action.

11

12 | Dated: April 21, 2011          DANNING, GILL, DIAMOND & KOLLITZ, LLP

13

14 | By: _____

15 | John N Tedford, IV
    | Attorneys for Debtor and Debtor-in-
    | Possession Alameda Produce Market, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

- 3 -

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

3

I.

4

INTRODUCTION

5    This motion presents an unusual situation.  When a claim against a bankruptcy estate is the

6  subject of ongoing litigation, the claimant usually takes the position that at the end of the day the

7  litigation will result in the entry of a money judgment in favor of the claimant, while the debtor

8  takes the position that nothing ultimately will be owed.  However, with respect to the contingent,

9  unliquidated claim asserted by the Los Angeles County Metropolitan Transportation Authority (the

10  "MTA") against the estate of debtor Alameda Produce Market, LLC ("Alameda Produce"), both

11  the MTA and Alameda Produce believe that at the end of the day their ongoing litigation will _not_

12  result in Alameda Produce paying the MTA on account of its alleged claim for reimbursement of

13  more than $6 million in funds previously deposited by the MTA with the state court.

14    The Court recently inquired whether Alameda Produce had filed a motion to estimate the

15  MTA's alleged claim.  No such motion is required for a court to evaluate the impact of a contingent

16  or unliquidated claim, of the lack thereof, under § 1129(a)(11).[3]  Nevertheless, out of an abundance

17  of caution, the Debtors are hereby requesting that the MTA's alleged claim be estimated at zero,

18  solely for the purpose of determining whether confirmation of Alameda Produce's plan is "likely to

19  be followed by the liquidation, or the need for further financial reorganization."[4]  The estimation of

20

---

21      [3] In addition, the court is not required to simply accept (and if anything has an obligation
22  _not_ to accept) the alleged claim at face value.

23      All section references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101, _et seq._,
and rule references are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

24      [4] On October 19, 2010, the Court entered a scheduling order providing that "[t]he date by
25  which parties must file motions for estimation of claims in order for the resolution of such motions
to affect a claimant's or interest holder's ability to vote for or against the Proposed Plans, or the
amount of such claim or interest for purposes of voting, is November 9, 2010" (_docket entry no._
26  _1987_).  The outcome of this motion will not have any impact on voting results or the analysis of
which classes accepted or rejected either plan proposed in this case.  As a result, the deadline set
27  forth in the Court's order does not preclude consideration of the within motion at this time.

28

- 4 -

368104.03 [XP]    25195

1    the MTA's alleged claim in such amount is appropriate in light of the fact that neither the MTA nor

2    Alameda Produce believe that Alameda Produce actually will be required to pay the alleged claim,

3    and because of the significant amount of time that it will take for the MTA's claim to be liquidated

4    even if the MTA were entitled to assert such a claim.

5

6                                  II.

7                      STATEMENT OF FACTS

8          Most facts relevant to this motion already were presented to the Court by the MTA in

9    connection with its conditional objection to confirmation of plans proposed in this case.  There also

10   are some additional facts the Court should consider, including admissions made by the MTA in an

11   appellate brief filed on April 7, 2011, and admissions made by the MTA in its proof of claim filed

12   in an unrelated bankruptcy case.  For ease of reference, the facts, mostly drawn from the California

13   Court of Appeal's decision, are summarized below.

14

15   A.      THE FILING OF THE MTA'S EMINENT DOMAIN PROCEEDING, THE MTA'S

16            DEPOSIT OF PROBABLE COMPENSATION, AND WITHDRAWAL OF SOME OF

17            THE FUNDS BY THIRD PARTIES

18          Alameda Produce, as successor-in-interest to Alameda Produce Market, Inc., owns, among

19   other things, five parcels of real property located in downtown Los Angeles across the street from

20   MMPI's corporate offices, and commonly known as 1339 E. 7th Street, Los Angeles, California

21   (the "Subject Property").[5]  In April 2004, the MTA filed an eminent domain complaint in the Los

22   Angeles Superior Court (the "Superior Court"), initiating the "MTA Action" in which the MTA

23   sought to take the Subject Property.[6]

24       _____

25          [5] Debtor Alameda Produce Market, LLC, and Alameda Produce Market, Inc., are referred to

26   collectively herein as "Alameda Produce."

27          [6] Exhibit "3" to the Request for Judicial Notice (Decision of the Court of Appeal of the
    State of California, Second Appellate District, filed October 6, 2010 ("DCA Decision")), pages 2-3.

28

1    Pursuant to the California Code of Civil Procedure ("CCP"), the MTA initially deposited

2 $6.3 million with the Superior Court as "probable compensation" for the taking and filed a motion

3 for immediate possession.[7]  In October 2004, the Superior Court ordered the MTA to increase its

4 deposit to $8.5 million.[8]

5    Three entities with liens against the Subject Property applied to the Superior Court to

6 withdraw part of the amount deposited by the MTA.[9]  The MTA objected to the applications.[10]

7 The MTA's objection was resolved pursuant to a stipulation for the withdrawal between the MTA

8 and the applicants of $6.19 million of the funds (the "Withdrawn Funds").[11]  Alameda Produce was

9 not a signatory and did not receive any Withdrawn Funds; however, the stipulation stated that

10 Alameda Produce "is not objecting to instant withdrawal of funds."[12]  The stipulation reflects that

11 the MTA did not require the applicants to file an undertaking to ensure that the MTA could recover

12 the Withdrawn Funds from these entities in the event that it became entitled to return of its deposit.

13 ///

14 ///

15 ///

16 ///

17 ///

18

19    [7] DCA Decision, page 3.

20    [8] DCA Decision, page 6.

21    [9] DCA Decision, page 3.  CCP § 1255.210 provides that "[p]rior to entry of judgment, any
defendant may apply to the court for the withdrawal of all or any portion of the amount deposited."
22 The plaintiff may object to the application on various grounds, including that "[o]ther parties to the
proceeding are known or believed to have interests in the property," or "[a]n undertaking should be
23 filed by the applicant."  CCP § 1255.230(b).  If a party objects to the withdrawal or the plaintiff
requests, "the court shall determine, upon hearing, the amounts to be withdrawn, if any, and by
24 whom."  CCP § 1255.230(d).

25    [10] DCA Decision, page 3.

26    [11] DCA Decision, page 4.  The operative text of the stipulation is contained in footnote 5 of
the DCA Decision, commencing on page 4.

27    [12] DCA Decision, pages 4-5, footnote 5.

28

- 6 -

368104.03 [XP]    25195

1   B.      THE SUPERIOR COURT'S DISMISSAL OF THE MTA ACTION, REVERSAL BY THE

2           CALIFORNIA COURT OF APPEAL, AND THE CALIFORNIA SUPREME COURT'S

3           GRANTING OF ALAMEDA PRODUCE'S PETITION FOR REVIEW

4           In July 2006, the Superior Court entered an order of conditional dismissal of the MTA

5   Action.[13]  The Superior Court ordered that the MTA Action would be dismissed unless the MTA

6   engaged in "fully informed, good faith negotiations" with Alameda Produce.[14]  In August 2008, the

7   referee overseeing these negotiations, former Court of Appeal Justice John Zebrowski, issued a

8   report stating that the MTA had failed to negotiate in good faith.[15]  As a result, the Superior Court

9   indicated that it would enter a final order dismissing the MTA Action and restoring possession of

10  the Subject Property to Alameda Produce.[16]  The MTA asked the Superior Court whether it would

11  order Alameda Produce to return the Withdrawn Funds.[17]  The Superior Court stated that the MTA

12  would have to pursue other remedies in order to recover the deposit.[18]  An order dismissing the

13  MTA Action was entered in September 2008.[19]

14          In October 2010, the Court of Appeal of the State of California, Second Appellate Division

15  (the "Court of Appeal"), issued its decision reversing the Superior Court's order and remanding the

16  case to the Superior Court for further proceedings.[20]  Generally, the Court of Appeal determined

17  that because Alameda Produce did not affirmatively object to withdrawal of the Withdrawn Funds

18  ///

19

20          [13] DCA Decision, page 7.

21          [14] DCA Decision, page 7.

22          [15] DCA Decision, pages 7-8.

23          [16] DCA Decision, page 8.

24          [17] DCA Decision, page 8.

25          [18] DCA Decision, page 8.

26          [19] Exhibit "2" to the Request for Judicial Notice; DCA Decision, page 9.

27          [20] Exhibit "3" to the Request for Judicial Notice.

28

- 7 -

1  and benefitted from the applicants' withdrawal of the funds,[21] Alameda Produce is deemed to have

2  waived its right to object to the MTA's taking of the Subject Property.[22]

3       In November 2010, Alameda Produce filed a petition for review with the California

4  Supreme Court (the "Supreme Court"). In December 2010, the Supreme Court granted Alameda

5  Produce's petition. Alameda Produce filed its opening brief in February 2011, and the MTA filed

6  its responsive brief on April 7, 2011. A decision by the Supreme Court is not expected for many

7  months.

8

9  C.    THE MTA'S ALLEGED CLAIM AGAINST ALAMEDA PRODUCE'S ESTATE, AND

10      ALAMEDA PRODUCE'S CLAIMS AGAINST THE MTA, IF ALAMEDA PRODUCE

11      PREVAILS ON APPEAL

12       In September 2009, the MTA filed a proof of claim in Alameda Produce's case (the "MTA

13  Contingent Claim") to preserve the MTA's right to assert a claim against Alameda Produce for the

14  Withdrawn Funds.[23] The MTA stated that "[i]f MTA loses on appeal, it has a claim against the

15  Debtor in an amount not less than $8.5 million, representing its deposit for the acquisition of the

16  Property that Debtor will be required to return to the MTA."[24] The MTA has acknowledged that

17  $2.2 million is still on deposit with the Superior Court and the amount that would be allegedly

18  ///

19  ///

20

21     [21] Alameda Produce contends, among other things, that the notice given by the MTA of

22  Alameda Produce's right to object to the applications for withdrawal was deficient and also not in
accordance with state law.

23     [22] CCP § 1255.260 provides as follows: "If any portion of the money deposited pursuant to

24  this chapter is withdrawn, the receipt of any such money shall constitute a waiver by operation of
law of all claims and defenses in favor of the persons receiving such payment except a claim for

25  greater compensation."

26     [23] A copy of the MTA's proof of claim is attached as Exhibit "1" to the Request for Judicial
Notice.

27     [24] Attachment to the MTA's proof of claim, page 1.

28

- 8 -

1    payable by Alameda Produce is $6.3 million.[25] Actually, as noted above, the aggregate amount of

2    the Withdrawn Funds was $6.19 million. If Alameda Produce prevails on appeal, the MTA will be

3    required to seek to recover the Withdrawn Funds from the applicants who withdrew the funds, not

4    Alameda Produce. *See* CCP § 1255.280(a).[26]

5          Also if Alameda Produce prevails on appeal, Alameda Produce will be entitled to an award

6    against the MTA for litigation expenses and damages for dispossession from the Subject Property

7    since the MTA took possession of the Subject Property in November 2004.[27] CCP §§ 1268.610

8    and 1268.620. Recovery for litigation expenses includes, but is not limited to, compensation for

9    attorneys' fees, costs, and appraisal and other expert fees. Recoverable damages caused by

10   dispossession are much broader, and Alameda Produce will be entitled to the "payment of all

11   damages proximately caused by the [MTA Action] and its dismissal." CCP § 1268.620. The

12   amount of litigation expenses and damages to which Alameda Produce will be entitled has not yet

13   been determined by the Superior Court, and litigation over such amounts will require lengthy and

14   complicated discovery and litigation before the Superior Court. Alameda Produce asserts that the

15   amount it will be entitled to recover from the MTA is significantly more than $6.3 million.

16   Accordingly, even if the MTA is entitled to recover the Withdrawn Funds from Alameda Produce,

17   Alameda Produce's claims against the MTA for the MTA's use of the Subject Property for over six

18   years are such that Alameda Produce, not the MTA, would be entitled to a judgment in its favor.

19   ///

20   ///

21   ///

22

23   [25] *Conditional Objection of Creditor Los Angeles County Metropolitan Transportation
     Authority to All Proposed Plans of Reorganization* (the "Conditional Objection") (*docket entry no.
24   2510*), page 1, lines 21-22 ("If the MTA recovers $2.2 million from the Superior Court, $6.3
     million will be payable by Alameda Produce.").

25   [26] "Any amount withdrawn by a party pursuant to this article in excess of the amount to
     which he is entitled as finally determined in the eminent domain proceeding shall be paid to the
26   parties entitled thereto."

27   [27] DCA Decision, page 6.

28

- 9 -

1  D.    THE MTA'S CONDITIONAL OBJECTION TO CONFIRMATION OF ALAMEDA

2        PRODUCE'S PLAN

3        On December 30, 2010, the MTA filed its *Conditional Objection of Creditor Los Angeles*

4  *County Metropolitan Transportation Authority to All Proposed Plans of Reorganization (docket*

5  *entry no. 2510)*. The MTA did not object the treatment of the MTA Contingent Claim, but instead

6  argued that none of the proposed plans contemplated the possibility that Alameda Produce would

7  be required to pay the MTA an amount equal to the Withdrawn Funds. On April 7, 2011, the day

8  before closing arguments, the MTA filed a supplemental brief *(docket entry no. 2957)* arguing that

9  Alameda Produce would be required to pay the MTA $6.3 million if Alameda Produce prevailed on

10  appeal. As discussed below, that same day the MTA made contradictory statements in its brief

11  filed with the Supreme Court and represented to the Supreme Court that under such circumstances

12  the MTA would be required to pursue recovery from the non-debtor entities who had applied for

13  withdrawal of such funds, not Alameda Produce.

14

15                                III.

16                              ARGUMENT

17  A.    APPLICABLE STANDARDS

18        Section 502(c)(1) provides, in relevant part, that "[t]here shall be estimated for purpose of

19  allowance under this section . . . any contingent or unliquidated claim, the fixing or liquidation of

20  which, as the case may be, would unduly delay the administration of the case." Rule 3018 allows

21  for the "temporary" allowance of a claim for the purpose of accepting or rejecting a plan, and 28

22  U.S.C. § 157(b)(2)(B) identifies as core proceedings those relating to the estimation of claims for

23  purposes of confirming a Chapter 11 plan. Accordingly, the Code and the Rules contemplate that,

24  where appropriate and to an extent appropriate, the Court has the authority to estimate a claim that

25  is contingent or unliquidated. *See also* § 105(a) (court may issue order necessary or appropriate to

26  carry out provisions of the Bankruptcy Code).

27        A court has broad discretion when estimating the value of a contingent or unliquidated

28  claim. *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989). In estimating a claim, a court should use

                                - 10 -

1  whatever method is best suited to the circumstances. *In re Aspen Limousine Service, Inc.*, 193 B.R.

2  325, 337 (D. Colo. 1996). Although the court is bound by law governing the ultimate value of the

3  claim, the method to be applied is a matter of the court's discretion and generally there are no other

4  limitations on a court's authority to estimate claims. *Aspen Limousine*, 193 B.R. at 337; *In re*

5  *Granite Broadcasting Corp.*, 385 B.R. 41, 49 (S.D.N.Y. 2008) ("Bankruptcy judges have wide

6  discretion in selecting a method for estimating claims, and may use 'whatever method is best suited

7  to the circumstances'"). Where appropriate, the value of a claim may be estimated at zero. *In re*

8  *Frontier Airlines, Inc.*, 137 B.R. 811, 814 (D. Colo. 1992).

9      A court may estimate an alleged claim for a limited purpose. As discussed by the

10  Bankruptcy Appellate Panel for the Ninth Circuit in *In re Dennis Ponte, Inc.*, 61 B.R. 296 (B.A.P.

11  9th Cir. 1986), when a claimant holding an alleged unliquidated claim has challenged the feasibility

12  of a proposed plan, a court need only "consider[] the potential claim . . . during the confirmation

13  process sufficiently for the purpose of evaluating its impact on feasibility." *Dennis Ponte*, 61 B.R.

14  at 300. The BAP did not say that a formal estimation motion was required; however, in the event

15  the Court is of the view that one is required, the Debtors are hereby formally seeking estimation of

16  the MTA's alleged claim solely to evaluate the impact of the MTA Contingent Claim on feasibility.

17      Ninth Circuit cases previously cited by the MTA do not hold otherwise. In *In re Pizza of*

18  *Hawaii, Inc.*, 40 B.R. 1014 (D. Haw. 1984), an alleged creditor did not file a proof of claim even

19  though it was prosecuting an adversary proceeding in the Bankruptcy Court to which the Chapter

20  11 debtor was a party. The Bankruptcy Court confirmed the plan and found that the debtor

21  satisfied § 1129(a)(11) without estimating the value of the creditor's alleged claim. On appeal, the

22  District Court stated that the Bankruptcy Court had an affirmative duty to estimate the value of the

23  claim and use the estimated value in making its determination under § 1129(a)(11), and also stated

24  that § 502(c) "requires the bankruptcy court to estimate the claim *regardless of the value of the*

25  *claim the claimant places on it.*" *Pizza of Hawaii*, 40 B.R. at 1017 (emphasis added). The District

26  Court vacated the Bankruptcy Court's confirmation order and remanded for the Bankruptcy Court

27  to estimate the creditor's claim and determine the plan's feasibility in light of the estimate. *Id.* In

28  ///

- 11 -

1 | an opinion primarily concerned with the doctrine of informal proofs of claim, the Ninth Circuit

2 | affirmed the District Court's decision. *In re Pizza of Hawaii*, 761 F.2d 1374 (9th Cir. 1985).

3 |      In a more recent Ninth Circuit case, *In re Harbin*, 486 F.3d 510 (9th Cir. 2007), an alleged

4 | creditor sued the debtor, among others, prior to the petition date. After the petition date, the state

5 | trial court held that the debtor was not liable. The alleged creditor appealed. While the state court

6 | appeal was pending, the alleged creditor filed a proof of claim in the Bankruptcy Court which was

7 | later disallowed by the Bankruptcy Court with the caveat that the claimant could seek to reinstate

8 | his claim if he prevailed in the state court appeal. Before the appellate court decided the appeal, the

9 | Bankruptcy Court confirmed the debtor's Chapter 11 plan. The claimant objected to confirmation

10 | of the plan on the grounds that it did not satisfy § 1129 because it did not account for his claim in

11 | the event that he prevailed on appeal. The Bankruptcy Court rejected that argument on the grounds

12 | that, among other things, it had previously disallowed the claim. The claimant appealed to the

13 | District Court, and while that appeal was pending the state appellate court reversed and reinstated a

14 | prior jury verdict in which the debtor had been found liable. The District Court then held that due

15 | to "changed circumstances" the debtor's plan was no longer feasible, and vacated the Bankruptcy

16 | Court's order confirming the debtor's plan. The debtor appealed. Citing to *Pizza of Hawaii*,

17 | among other cases, the Ninth Circuit held that in determining a plan's feasibility for purposes of

18 | § 1129(a)(11), a Bankruptcy Court must at least evaluate whether a potential future judgment may

19 | affect a debtor's ability to implement its plan. *Harbin*, 486 F.3d at 518. The Ninth Circuit did *not*

20 | find that the debtor's plan was infeasible or that the Bankruptcy Court was required to accept the

21 | claimant's claim at face value. Instead, the Ninth Circuit stressed the limited reach of its holding

22 | that a Bankruptcy Court "must evaluate the possible impact of the debtor's ongoing civil litigation

23 | on the feasibility of the proposed plan." *Id.* at 519. How the litigation may affect feasibility is left

24 | to the sound discretion of the Bankruptcy Court. *Id.* at 519-20.

25 | ///

26 | ///

27 | ///

28 | ///

1   B.      THE COURT SHOULD ESTIMATE THE MTA'S ALLEGED CLAIM AGAINST

2           ALAMEDA PRODUCE AT ZERO FOR THE PURPOSES REQUESTED

3           With respect to the MTA Contingent Claim, the MTA is not arguing that at the end of the

4   day Alameda Produce will be required to pay the MTA $6.19 million. Instead, the MTA contends

5   that the MTA will prevail on appeal, in which case it would not be entitled to a return of the

6   deposit.

7           The MTA Contingent Claim is asserted solely out of an abundance of caution in the event

8   that the MTA does not prevail on appeal. The MTA asserts that "[a]mong the potential outcomes

9   of the [MTA Action] is a decision requiring that the [Subject Property] be returned to Alameda

10  Produce and the MTA's deposit be returned to the MTA. . . . Alameda Produce will be required to

11  pay that sum to the MTA if Alameda Produce recovers the property."[28]  However, when the MTA

12  asked the Superior Court to order Alameda Produce to return the funds, the Superior Court said no

13  and told the MTA that it needed to pursue its statutory remedies. The MTA's assertion that it will

14  have a claim against Alameda Produce also is not consistent with page 45 of its own brief filed

15  with the Supreme Court on April 7, 2011, in which the MTA stated that

16              if the Court of Appeal had affirmed the trial court's dismissal of the
                eminent domain action, MTA would have to return a property that it
17              had spent money to improve and seek return of its funds from lenders
                (1) who are no longer parties to the proceeding, (2) who no longer
18              have a contractual relationship with [Alameda Produce], and (3) at
                least two of whom are bankrupt or in receivership.[29]

19

20  ///

21  ///

22  ///

23  ///

24  _____

25      [28] MTA's Conditional Objection (*docket entry no. 2510*), page 2, line 18-23.

26      [29] Alameda Produce does not agree with much of the MTA's brief, including recitations of
    certain facts which are contrary to evidence in the record and, in some instances, are contrary to the
27  Court of Appeal's decision. A copy of the MTA's answering brief is attached as Exhibit "4" to the
    Declaration of John N. Tedford, IV.

28
                                                - 13 -

1  This is consistent with CCP § 1255.280(a), which requires the MTA to seek to recover the

2  Withdrawn Funds from the applicants who withdrew the funds, not Alameda Produce.[30]  This is

3  also consistent with the MTA's own actions in the Namco Capital Group, Inc., case (Bankr. Case

4  No. 2:08-bk-32333-BR), which the MTA has asserted a claim for $2.14 million (the amount of the

5  Withdrawn Funds received by Namco).  In its proof of claim the MTA stated, among other things:

6           Should MTA not obtain a reversal of the trial court's
         dismissal order on appeal, MTA will be forced to vacate the Property
7         and will seek to recover its deposit from [Namco] and others.
         Accordingly, MTA holds a contingent claim against [Namco] in an
8         amount not less than $2,140,000, representing that portion of MTA's
         deposit for the acquisition of the Property that was paid to [Namco] .
9         . . which [Namco] will be required to turnover if MTA loses on
         appeal.[31]

10

11          The bottom line is that the MTA does not believe that Alameda Produce ultimately will be

12  required to reimburse the MTA for the Withdrawn Funds.  The MTA's assertion that Alameda

13  Produce might be required to do so if Alameda Produce prevails on appeal is inconsistent with the

14  Superior Court's order, the MTA's statements in its Supreme Court brief, the MTA's actions in the

15  Namco case, and CCP § 1255.280(a).  In its proof of claim and two confirmation briefs, the MTA

16  has never identified the legal basis supporting the MTA's unqualified statement that Alameda

17  Produce would be required to pay the MTA.  Even if the MTA identified a legal basis, Alameda

18  Produce's claims against the MTA are larger than the MTA Contingent Claim, and therefore any

19  entitlement to recovery on account of the MTA Contingent Claim would only reduce the amount

20  that the MTA must pay to Alameda Produce.  In any event, even if the MTA ultimately obtains a

21  determination that Alameda Produce must reimburse the MTA, it will likely take many years for

22  there to be a final judgment because, among other things, the pending appeal must be resolved and

23

24  [30] "Any amount withdrawn by a party pursuant to this article in excess of the amount to
which he is entitled as finally determined in the eminent domain proceeding shall be paid to the
25  parties entitled thereto."  The applicants with whom the MTA stipulated, not Alameda Produce,
were the parties to the MTA Action who withdrew the Withdrawn Funds.  If the Supreme Court
26  upholds the Superior Court's dismissal of the MTA Action, the MTA must seek to recover the
Withdrawn Funds from the applicants, not Alameda Produce.

27  [31] Exhibit "5" to the Request for Judicial Notice.

28

- 14 -

1  then the parties must engage in a significant amount of discovery and litigation relating to Alameda

2  Produce's sizeable claims against the MTA.  In light of the fact that all parties believe that nothing

3  ever will need to be paid by Alameda Produce to the MTA, the fact that the MTA's assertion of a

4  claim is not supported by the state law, the Superior Court's order, admissions by the MTA in its

5  Supreme Court brief, and the MTA's actions in the Namco case, and the substantial uncertainty as

6  to when the MTA Contingent Claim would be resolved, the Court should estimate the alleged claim

7  at zero, for non-voting plan confirmation purposes only.

8

9                                          IV.

10                                      CONCLUSION

11        For the foregoing reasons, Alameda Produce requests that the Court estimate the MTA

12  Contingent Claim at zero for non-voting plan confirmation purposes only.  Alameda Produce also

13  requests such further relief as the Court deems just and proper.

14

15  Dated: April 2٨ 2011                   DANNING, GILL, DIAMOND & KOLLITZ, LLP

16

17                                By:  _____
                                         John N Tedford, IV
18                                       Attorneys for Debtor and Debtor-in-
                                         Possession Alameda Produce Market, LLC
19

20

21

22

23

24

25

26

27

28

                                         - 15 -

368104.03 [XP]    25195

1  ## DECLARATION OF RICHARD MERUELO

2

3  I, Richard Meruelo, declare and state as follows:

4    1.    I am the Chief Executive Officer and Chairman of the Board of Directors of

5  Meruelo Maddux Properties, Inc. ("MMPI").

6    2.    I have personal knowledge of the facts stated herein, and if called as a witness, I

7  could and would competently testify thereto.

8    3.    On March 27, 2009 (the "Petition Date"), Alameda Produce Market, LLC

9  ("Alameda Produce"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the

10  United States Code.

11    4.    Alameda Produce, as successor-in-interest to Alameda Produce Market, Inc., owns,

12  among other things, five parcels of real property located in downtown Los Angeles and commonly

13  known as 1339 E. 7th Street, Los Angeles, California (the "Subject Property").

14    5.    The Subject Property is located across the street from MMPI's corporate offices and

15  other buildings generally referred to as "Alameda Square." In early 2004, the Subject Property was

16  being utilized by Alameda Produce to provide additional parking to the tenants at Alameda Square,

17  including American Apparel, Inc. ("American Apparel"), which I understand is operating the

18  largest garment factory in the United States and one of the largest private employers in the city of

19  Los Angeles.

20    6.    In or about April 2004, the Los Angeles County Metropolitan Transportation

21  Authority (the "MTA") filed an eminent domain complaint (the "MTA Action") in the Los Angeles

22  Superior Court (the "Superior Court"). In or about November 2004, the MTA took possession of

23  the Subject Property. In 2008, the Superior Court dismissed the MTA Action. The dismissal order

24  is currently on appeal.

25    7.    My understanding is that if Alameda Produce prevails before the California

26  Supreme Court and the MTA Action is dismissed as ordered by the Superior Court, Alameda

27  Produce will be entitled to an award against the MTA for litigation expenses and damages for

28  dispossession of the Subject Property. The amount of damages to which Alameda Produce will be

- 16 -

1   entitled has not been litigated before the Superior Court and because of the status of the MTA

2   Action we have not engaged in the time consuming and costly process of litigating the amount of

3   damages to be paid by the MTA.  Based upon my knowledge of the Subject Property and the other

4   properties owned by Alameda Produce, including the development and leasing potential of such

5   properties, my knowledge of properties located in the vicinity of Alameda Square, my experience

6   with sales and leasing of real property in downtown Los Angeles generally and the area in which

7   the Subject Property is located in particular, I believe that the amount of damages to which

8   Alameda Produce will be entitled is substantially in excess of $6.3 million.

9

10       I declare under penalty of perjury under the laws of the United States of America that the

11  foregoing is true and correct.

12       Executed on April 20, 2011, at Los Angeles, California.

13

14                              RICHARD MERUELO

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -

## DECLARATION OF JOHN N. TEDFORD, IV

I, John N. Tedford, IV, declare and state as follows:

1.      I am an attorney at law duly licensed to practice before all of the courts of the State of California and am authorized to appear before this Court.  I am the principal of a professional corporation which is a partner in the law firm of Danning, Gill, Diamond & Kollitz, LLP, general bankruptcy counsel for Meruelo Maddux Properties, Inc., and fifty-three of its direct and indirect subsidiaries which each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on or about March 26 and 27, 2009 (collectively the "Debtors").

2.      I have personal knowledge of the facts stated herein, and if called as a witness, I could and would competently testify thereto.

3.      Attached as Exhibit "4" hereto is a true and correct copy of the *Answer Brief on the Merits* (the "Brief") I am informed and believe was filed by the Los Angeles County Metropolitan Transportation Authority (the "MTA") with the Supreme Court for the State of California (the "Supreme Court") in *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC, et al.*, Supreme Court case number S188128 (the "Appeal").  The proof of service states that it was served by the MTA's counsel by regular mail on April 6, 2011.

4.      Based on my review of the Supreme Court's docket, I am informed and believe that (a) in November 2010, Alameda Produce filed its petition for review, (b) in December 2010, the Supreme Court granted Alameda Produce's petition for review, (c) Alameda Produce filed its opening brief on or about February 3, 2011, and (d) the MTA filed its answering brief on or about April 7, 2011.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 21, 2011, at Los Angeles, California.

_____
JOHN N. TEDFORD, IV

- 18 -

## **REQUEST FOR JUDICIAL NOTICE**

Debtor and debtor-in-possession Alameda Produce Market, LLC ("Alameda Produce"), hereby requests that the Court take judicial notice of the following:

1.    On March 27, 2009, Alameda Produce filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.

2.    On or about September 18, 2009, the Los Angeles County Metropolitan Transportation Authority (the "MTA") filed a proof of claim in Alameda Produce's case. A true and correct copy of the MTA's proof of claim is attached as Exhibit "1" hereto.

3.    On or about September 5, 2008, the Los Angeles Superior Court (the "Superior Court") entered its *Order Re Permanent Dismissal* (the "Dismissal Order") in *Los Angeles County Metropolitan Transportation Authority v. VCC Alameda, LLC, et al.*, case no. BC313010. A true and correct copy of the Dismissal Order is attached as Exhibit "2" hereto.

4.    On or about October 6, 2010, the Court of Appeal of the State of California, Second Appellate District (the "Court of Appeal") filed its decision in *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC, et al.*, case no. B212643. A true and correct copy of the Court of Appeal's decision is attached as Exhibit "3" hereto.

5.    On or about October 30, 2009, the MTA filed a proof of claim in the bankruptcy case filed by Namco Capital Group, Inc. ("Namco"), Bankruptcy Case Number 2:08-bk-32333-BR, which proof of claim was assigned claim number 339 by the Clerk of the Court in that case. A true and correct copy of the MTA's claim in the Namco case is attached as Exhibit "5" hereto.

Dated: April 21, 2011

DANNING, GILL, DIAMOND & KOLLITZ, LLP

By: _____
    John N Tedford, IV
    Attorneys for Debtor and Debtor-in-
    Possession Alameda Produce Market, LLC

- 19 -

# EXHIBIT 1

Case 1:09-bk-13356-VK   Doc 3015   Filed 04/21/11   Entered 04/21/11 17:53:32   Desc
Main Document      Page 21 of 39
Case 1:09-bk-13356-VK   Doc 2509-1   Filed 12/30/10   Entered 12/30/10 15:06:45
Desc Exhibit Exhibits A-D   Page 2 of 28

Case 1:09-bk-13394-VK   Claim 14-1   Filed 09/18/09   Desc Main Document      Page 1
of 4

B 10 (Official Form 10) (12/07)

| UNITED STATES BANKRUPTCY COURT    Central District of California | PROOF OF CLAIM |
|---|---|

**Name of Debtor:**
Alameda Produce Market, LLC

**Case Number:**
09-13394/Jt. Adm. 09-13356

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

**Name of Creditor (the person or other entity to whom the debtor owes money or property):**
Los Angeles County Metropolitan Transportation Authority ("MTA")

**Name and address where notices should be sent:**

c/o Brian M. Hoffstadt, Esq, JONES DAY
555 South Flower Street, 50th Floor, Los Angeles, CA  90071

**Telephone number:**
(213) 243-2513

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*

**Filed on:** _____

**Name and address where payment should be sent (if different from above):**

**Telephone number:**

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**    $ See attached.

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** See attached.
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** _____

**3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☐ Real Estate   ☒ Motor Vehicle   ☐ Other
Describe:

**Value of Property:** $_____ **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

**if any:** $_____ **Basis for perfection:** _____

**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See definition of "redacted" on reverse side.*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**

$_____

**Amount entitled to priority:**

$_____

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**FOR COURT USE ONLY**

**Date:**
09/17/2009

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

Joyce Chang, Principal Deputy County Counsel for MTA

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Case 1:09-bk-13356-VK    Doc 3015    Filed 04/21/11    Entered 04/21/11 17:53:32    Desc
Main Document    Page 22 of 39
Case 1:09-bk-13356-VK    Doc 2509-1    Filed 12/30/10    Entered 12/30/10 15:06:45
Desc Exhibit Exhibits A-D    Page 3 of 28

Case 1:09-bk-13394-VK    Claim 14-1    Filed 09/18/09    Desc Main Document    Page 2
of 4

## ATTACHMENT TO PROOF OF CLAIM

Court:           United States Bankruptcy Court for the Central District of California
Case No.:        09-13394-KT (Jointly Administered under Case No. 09-13356)
Debtor:          Alameda Produce Market, LLC, successor-in-interest to Alameda Produce Market,
                 Inc. (the "**Debtor**")
Creditor:        Los Angeles County Metropolitan Transportation Authority ("**MTA**")[1]
Petition Date:   March 26 and 27, 2009

### A.    General Basis for Claim

MTA's claim against the Debtor arises from an eminent domain action brought by MTA, seeking to take property located at the intersection of 7th and Alameda Streets in Los Angeles, California (the "Property") for public use. The Property at issue had been transferred to the Debtor on March 31, 2004, the day before MTA filed its eminent domain Complaint.[2] On the same day it filed its Complaint with the Los Angeles Superior Court (Case No. BC 313010), MTA filed papers in order to take immediate, pre-judgment possession of the Property pursuant to sections 1255.010, 1255.410 and 1263.010 of the California Code of Civil Procedure. To do so, MTA deposited with the Clerk of the Court a total of $8.5 million, which was the appraised value of the Property as of the date the Complaint was filed. MTA took actual possession of the Property in November 2004, and after making numerous improvements to the Property, has been using the Property as part of its operational bus service yard since 2005.

As of the date of this filing, MTA remains in possession of the Property. However, MTA's continued possession and ownership of the Property may be disturbed by the outcome of an appeal brought by MTA of the trial court's September 5, 2008 order permanently dismissing MTA's complaint and requiring MTA to vacate the Property. MTA filed a notice of appeal of the September 5 order on November 25, 2008, and on December 2, 2008, the trial court stayed its order.

After the Debtor filed its chapter 11 petition in March 2009, MTA and the Debtor entered into a stay relief stipulation, which the Bankruptcy Court approved by Order entered August 28, 2009. Pursuant to that stipulation, the parties are authorized to proceed with the appeal (Appeal No. B212643) pending before the California Court of Appeal (the "Appellate Court").

The outcome of MTA's appeal will determine, among other things, who will retain ownership and possession of the Property. If MTA loses on appeal, it has a claim against the Debtor in an amount not less than $8.5 million, representing its deposit for the acquisition of the Property that Debtor will be required to return to the MTA. If the MTA wins on appeal, it has a claim in an unknown amount for fees and costs associated with the eminent domain action. Accordingly, MTA has filed this Proof of Claim to preserve any and all claims and defenses arising from the eminent domain action and any appeals therefrom.

---

[1]    Reference to "MTA" include MTA and any of its affiliates and divisions holding claims against the Debtor.

[2]    MTA believes the Debtor has a copy of the Complaint; however, MTA will provide a copy upon request.

00021

Case 1:09-bk-13356-VK    Doc 3015    Filed 04/21/11    Entered 04/21/11 17:53:32    Desc
Main Document        Page 23 of 39
Case 1:09-bk-13356-VK    Doc 2509-1    Filed 12/30/10    Entered 12/30/10 15:06:45
Desc Exhibit Exhibits A-D    Page 4 of 28
Case 1:09-bk-13394-VK    Claim 14-1    Filed 09/18/09    Desc Main Document        Page 3
of 4

### C.    Reservation of Rights

MTA reserves the right to amend and/or supplement this Proof of Claim in any manner whatsoever to seek claims that may be based on information not yet known, including, but not limited to, costs and expenses arising before and after the Petition Date. MTA further reserves its right to assert that the Proof of Claim may be subject to a right or rights of set off.

This Proof of Claim is filed to protect MTA from forfeiture of any claim that it may have. Filing of this Proof of Claim is not (a) a waiver or release of MTA's rights, claims or defenses against any person or property; or an (b) an election of remedy.

00022

Case 1:09-bk-13356-VK    Doc 3015    Filed 04/21/11    Entered 04/21/11 17:53:32    Desc
Main Document    Page 24 of 39
Case 1:09-bk-13356-VK    Doc 2509-1    Filed 12/30/10    Entered 12/30/10 15:06:45
Desc Exhibit Exhibits A-D    Page 5 of 28

Case 1:09-bk-13394-VK    Claim 14-1    Filed 09/18/09    Desc Main Document    Page 4
of 4

### PROOF OF SERVICE

I, Gidget Moody, declare that I am over the age of eighteen years and I am not a party to this action. My business address is 333 Bush Street, San Francisco, CA 94104.

On September **18,** 2009, I served the following:

### PROOF OF CLAIM
**(Los Angeles county Metropolitan Transportation Authority ("MTA"))**

on the interested parties in this action as follows:

[X] **BY MAIL:** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Alameda Produce Market, LLC
761 Terminal St Bldg 1 2nd Fl
Los Angeles, CA 90021-1111

John N. Tedford, Esq.
Danning Gill Diamond & Kollitz
2029 Century Park E 3rd Fl
Los Angeles, C ' `0067

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, that this declaration is executed on **September 18,** 2009 at San Francisco, California.

_____
Gidget Moody

# EXHIBIT 2

1  CONNIE COOKE SANDIFER, State Bar No. 80627
   OLIVER, SANDIFER & MURPHY
2  281 S. Figueroa Street, 2nd Floor
   Los Angeles, California 90012-2501
3  Telephone:       (213) 621-2000
   Facsimile:        (213) 621-2211
4

5  Attorneys for Defendant
   Alameda Produce Market, Inc.
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    FOR THE COUNTY OF LOS ANGELES

10

11 LOS ANGELES COUNTY                      Case No.: BC 313 010
   METROPOLITAN TRANSPORTATION
12 AUTHORITY,                              [REVISED PROPOSED]

13           Plaintiff,                    ORDER RE PERMANENT DISMISSAL

14       vs.                               (LACMTA Parcel Number Division 1 – Bus
                                           Operating Division 7th & Alameda Street)
15

16 VCC ALAMEDA, LLC, a California Limited
   Liability Company, et al.,
17

18           Defendants.

19

20         Having considered the evidence presented, argument from the parties, both oral and

21 written, the Report of Referee Pursuant to Paragraph 5 of the Conditional Dismissal prepared by

22 Justice John Zebrowski, and good cause appearing therefore, the Court finds that the Plaintiff, Los

23 Angeles County Metropolitan Transportation Authority (hereinafter "LACMTA") did not comply

24 to the satisfaction of the court with the requirement to negotiate in good faith with defendants

25 Alameda Produce Market, Inc., (hereinafter "APMI") and American Apparel, Inc. (hereinafter

26 "AA") as more fully set forth in the Conditional Dismissal entered in this case on July 12, 2006.

27 ///

28 ///

                                            1
   173942.2                    ORDER RE PERMANENT DISMISSAL

FILED
LOS ANGELES S. ... COURT
SEP 0 5 2008
JO... ... CLERK
BY S. ONTIVEROS, DEPUTY

REC'D
SEP 0 4 2008
FLING WINDOW

1    Having failed to comply with the terms of the Conditional Dismissal, the court hereby

2  finds that the Conditional Dismissal entered July 12, 2006 shall be deemed a Permanent

3  Dismissal. In conformance with the terms of Paragraph 8 of the Conditional Dismissal, LACMTA

4  is required to return possession of the property which is the subject of this action to APMI within

5  ninety (90) days from the entry of this order.

6

7  Dated: _____9/5/08_____

8

9                                  JAMES R. DUNN
                                   JUDGE OF THE SUPERIOR COURT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OLIVER, SANDIFER & MURPHY
A PROFESSIONAL CORPORATION
281 S. FIGUEROA STREET, 2ND FLOOR
LOS ANGELES, CA 90012-2901
TELEPHONE (213) 621-2000
FACSIMILE (213) 621-2211

2

173942.2                      ORDER RE PERMANENT DISMISSAL

00025

## PROOF OF SERVICE

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is is350 S. Figueroa Street, #137, Los Angeles, California 90071.

On September 4, 2008, I served the within documents:

**[REVISED PROPOSED] ORDER RE PERMANENT DISMISSAL**

☒    **BY FACSIMILE:** By transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date.

☒    **BY MAIL:** By placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California addressed as set forth below.

☐    **OVERNIGHT DELIVERY:** By overnight delivery, I placed such document(s) listed above in a sealed envelope, for deposit in the designated box or other facility regularly maintained by United Postal Service for overnight delivery, caused such envelope to be delivered to the office of the addressee via overnight delivery pursuant to C.C.P. §1013(c), with delivery fees fully prepaid or provided for.

☐    **PERSONAL SERVICE:** I caused such envelopes to be delivered by hand to the addresses indicated on the attached list.

David Graeler, Esq.
Nossaman LLP
445 S. Figueroa Street, 31st Floor
Los Angeles, California 90071-1602
[Attorneys for Plaintiff LACMTA]
213-612-7801 (FAX)

William P. Driscoll, Esquire
Mark R. Fox, Esquire
Driscoll & Fox
714 W. Olympic Blvd., Suite 614
Los Angeles, CA 90015
[Attorneys for Defendants
VCC Alameda, LLC and Trustholder, NAMCO Capital Group]
(213) 745-5505 (FAX)

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on September 4, 2008 at Los Angeles, California.

_____
Stephanie K. Chin

OLIVER, SANDIFER & MURPHY
A PROFESSIONAL CORPORATION
201 S. FIGUEROA STREET, 2ND FLOOR
LOS ANGELES, CA 9001-2-2501
TELEPHONE (213) 621-2000
FACSIMILE (213) 621-2211

3

00026

EXHIBIT 3

Filed 10/6/10  Los Angeles County Met. Transp. Auth. v. Alameda Produce Market CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ALAMEDA PRODUCE MARKET, LLC, et al.,<br><br>    Defendants and Respondents. | B212643<br><br>(Los Angeles County Super. Ct. No. BC313010) |

APPEAL from an order of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Reversed and remanded.

Jones Day, Elwood Lui, Brian M. Hoffstadt, and Brian D. Hershman; Robert E. Kalunian, Acting County Counsel, Charles M. Safer, Assistant County Counsel, and Joyce L. Chang, Principal Deputy County Counsel, for Plaintiff and Appellant.

Oliver, Sandifer & Murphy, Connie Cooke Sandifer, and Cynthia C. Marian for Defendant and Respondent Alameda Produce Market, LLC.

No appearance for Defendant and Respondent American Apparel.

Plaintiff Los Angeles County Metropolitan Transportation Authority (MTA) appeals from the order dismissing its eminent domain complaint. MTA contends that the order of dismissal must be reversed because neither defendant had standing to challenge the taking of the property. MTA argues that defendant Alameda Produce Market, Inc. (APMI), which owned the property, statutorily waived all claims and defenses other than a claim for greater compensation under Code of Civil Procedure section 1255.260,[1] and that defendant American Apparel, Inc., which used the property for overflow employee parking, had no legal or equitable interest in the property. We conclude that MTA is correct on both points. Accordingly, we reverse the order of dismissal and remand for further proceedings.

## BACKGROUND

In 1996, the federal court issued a consent decree that required MTA to improve the quality of bus service in Los Angeles. In January 2004, the federal court ordered MTA to place an additional 145 buses in service by December 2004. Because its existing facilities were insufficient to accommodate the additional buses and employees necessitated by the order, MTA decided to expand its downtown Los Angeles Division I facility by acquiring APMI's nearby property, which consists of "approximately 115,000 square feet of vacant and undeveloped contiguous parcels generally located at 1345 East 7th Street in the City of Los Angeles" (the property). According to MTA's Tim Lindholm, the property is a "key component" of the Division I expansion project.

On March 25, 2004, MTA's governing board adopted a resolution of necessity that authorized the taking of the property for the Division I expansion project. On April 1,

---

[1]    All further statutory references are to the Code of Civil Procedure.
Section 1255.260 provides: "If any portion of the money deposited pursuant to this chapter is withdrawn, the receipt of any such money shall constitute a waiver by operation of law of all claims and defenses in favor of the persons receiving such payment except a claim for greater compensation."

2

2004, MTA filed the instant complaint against APMI[2] (erroneously sued as Alameda North Parking, Inc.) to acquire the property by eminent domain. MTA utilized the quick-take procedure by depositing $6.3 million as the probable amount of compensation and filing a motion for immediate possession of the property. (See § 1255.410;[3] *Redevelopment Agency of San Diego v. Mesdaq* (2007) 154 Cal.App.4th 1111, 1120-1122 (*Mesdaq*) [quick-take procedure explained].)

In its answer to the complaint, APMI raised numerous objections to the taking of the property. In particular, APMI objected that MTA had failed to adopt a valid resolution of necessity that satisfied the requirements of the eminent domain law. (§ 1250.370, subd. (a).) As will be discussed, APMI ultimately prevailed on this objection at trial, which resulted in the dismissal of the complaint.

Before trial, MTA notified the interested parties of its deposit of probable compensation. (§ 1255.020.) In response to the notice, three lenders with liens against the property (VCC Alameda, LLC, California National Bank, and Namco Capital Group) (the lenders) applied to withdraw a portion of the deposited funds. (§ 1255.210.) MTA objected to the lenders' applications for withdrawal of the deposit on the ground that there were other interested parties. MTA served the other interested parties with notice

---

[2] The complaint identified VCC Alameda as the owner of the property. However, VCC Alameda had transferred the property to APMI on March 31, 2004, the day before the complaint was filed.

[3] Section 1255.410, subdivision (a) provides in relevant part: "At the time of filing the complaint or at any time after filing the complaint and prior to entry of judgment, the plaintiff may move the court for an order for possession under this article, demonstrating that the plaintiff is entitled to take the property by eminent domain and has deposited pursuant to Article 1 (commencing with Section 1255.010) an amount that satisfies the requirements of that article.  [¶] . . . The motion shall include a statement substantially in the following form: 'You have the right to oppose this motion for an order of possession of your property. If you oppose this motion you must serve the plaintiff and file with the court a written opposition to the motion within 30 days from the date you were served with this motion.'"

3

of the right to object to the lenders' applications for withdrawal, and requested that the trial court determine the appropriate amount of any withdrawal of the deposit. (§ 1255.230, subds. (c), (d).)

APMI, which received notice of the lenders' applications for withdrawal of the deposit, did not object to the lenders' withdrawals. On the contrary, APMI's Miguel Echemendia[4] signed the verified applications for withdrawal of VCC Alameda and Namco. VCC Alameda's counsel filed a declaration stating that APMI's counsel did not object to the lenders' withdrawals of the deposit.

The lenders signed a stipulation with MTA regarding the amounts of their respective withdrawals from the deposit of probable compensation.[5] Significantly, the

---

[4]      According to MTA's trial brief, "Echemendia was designated as the person most knowledgeable for APMI during deposition regarding the issues presented in this right to take trial. While Mr. Meruelo [APMI's principal] previously testified before this Court that Mr. Echemendia was APMI's Chief Financial Officer, Mr. Echemendia was uncertain as to whether he was an officer of APMI, and identified himself as a consultant."

[5]      The stipulation stated: "WHEREAS, Plaintiff, LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY ('MTA'), a public body, has deposited with the Clerk of the above-entitled court a sum of $6,300,000 for the taking of the property located on the northwest corner of the intersection of Alameda Street and 7th Street in the [C]ity of Los Angeles ('Subject Property');

"WHEREAS, Defendant VCC ALAMEDA, LLC (hereinafter 'Trustholder') is the holder of a note and trust deed of the Subject Property which has been designated for condemnation by plaintiff;

"WHEREAS Plaintiff MTA has deposited $6,300,000;

"WHEREAS RPM Investments, Inc. has disclaimed any and all interest in the instant action;

"WHEREAS Jerash, LLC has disclaimed any and all interest in the instant action;

"WHEREAS Bank of America has disclaimed any and all interest in the instant action;

"WHEREAS Alameda Produce Market Inc., a California Corporation, erroneously sued and served herein as Alameda North Parking, Inc. is not objecting to instant withdrawal of funds;

"WHEREAS NAMCO is requesting the sum of $2,140,000.00 be made payable to Driscoll & Fox Client Trust Account on behalf of the Trustholder;

(Fn. continued.)

4

stipulation stated that APMI "is not objecting to instant withdrawal of funds." On June 10, 2004, the trial court adopted the stipulation in its order authorizing the withdrawals of $2.5 million by California National Bank,[6] $1.5 million by VCC

---

"WHEREAS the sum of $62,500 shall remain on deposit for the estimated potential tax purposes;

"WHEREAS California National Bank is requesting the sum of $2,554,794.97 as of June 4, 2004 plus $492.17 per day thereafter to be made payable to California National Bank c/o Joshua D. Wayser;

"WHEREAS $7,500 shall remain on deposit for city tax assessments;

"WHEREAS $40,000 shall remain on deposit for potential future city tax assessments;

"WHEREAS Metropolitan Transportation Authority ('MTA') and the City of Los Angeles agree that future tax assessments for the subject property will be paid by MTA, either in installments or as a lump sum;

"WHEREAS the remaining balance of $1,495,205.03, minus $492.17 per day thereafter, shall be made payable to the Driscoll & Fox Client Trust Account on behalf of VCC ALAMEDA, LLC[;]

"WHEREAS, upon full payment, California National Bank, VCC ALAMEDA, LLC, and NAMCO will execute disclaimers in the instant lawsuit;

"IT IS SO STIPULATED AND AGREED between the parties that of the $6,300,000 that is on deposit with the court as the probable just compensation, certain amounts may be withdrawn as follows:

"1. The order shall direct the Clerk of this Court to issue a draft in the amount of $2,140,000.00, made payable to the Driscoll & Fox Client Trust Account on behalf of Defendant NAMCO . . . .

"3. [Sic.] The order shall direct the Clerk of this Court to issue a draft in the amount of $2,554,794.97 as of June 4, 2004 plus $492.17 per day thereafter, made payable to California National Bank, c/o Joshua Wayser . . . .

"4. [Sic.] The order shall direct the Clerk of this Court to issue a draft in the amount of $1,495,205.03, made payable to the Driscoll & Fox Client Trust Account on behalf of Defendant VCC ALAMEDA, LLC . . . ."

[6]  According to its promissory note, California National Bank was: (1) "entitled to all . . . compensation, awards, and other payments or relief" for the "taking of the property," whether or not the security was impaired; (2) assigned "[a]ll such proceeds and rights of action"; and (3) "entitled to commence, appear in and prosecute any action or proceedings or to make any compromise or settlement, in connection with such loss, taking or damage."

00031

Alameda, and $2.1 million by Namco. It is undisputed that the funds were used to pay APMI's loans and that disclaimers of interest were filed by the lenders in this litigation.[7] (§ 1250.325.)

In August 2004, MTA sought to take immediate possession of the property. APMI objected that American Apparel, which had used the property for parking, had not been served with the complaint. In response to this objection, MTA served American Apparel with the complaint as a Doe defendant on August 13, 2004. On September 13, 2004, American Apparel answered the complaint and raised numerous objections to the taking of the property, including MTA's failure to adopt a resolution of necessity that satisfied the requirements of the eminent domain law. (§ 1250.370, subd. (a).)

In October 2004, MTA increased its deposit of probable compensation from $6.3 million ($6.1 million of which had been withdrawn by the lenders) to $8.5 million.

On November 24, 2004, MTA took pretrial possession of the property. After improving the property's pavement, fencing, and drainage, MTA began using the property in June 2005 for additional bus and employee parking as part of its expanded Division I facility.

Between December 2005 and May 2006, the trial court conducted a three-day bench trial on APMI's and American Apparel's objections to MTA's taking of the

---

[7]    The record contains the following evidence regarding Namco's withdrawal of the deposited funds:

Richard Meruelo was the sole owner of APMI and a company named Merco Group. Before this litigation was filed, Merco gave Namco a $22.2 million promissory note secured by a deed of trust to a property owned by Merco. After Merco defaulted on its note, Merco and APMI offered Namco, as additional collateral for Merco's note, a security interest in APMI's property (the property involved in this litigation), which APMI acquired on March 31, 2004. Namco agreed and recorded an amendment to Merco's note and deed of trust that listed APMI's property as additional collateral. At the same time, Namco also granted APMI a $2.25 million line of credit secured by the property involved in this litigation. On April 1, 2004, MTA filed the present action to acquire APMI's property. Namco, which disbursed $933,000 to APMI under the line of credit, withdrew over $2 million from the deposited funds, which it used to pay off APMI's line of credit and reduce the balance on Merco's note.

00032

property. The trial court also heard, but did not decide, MTA's contention that neither APMI nor American Apparel could challenge the taking in light of APMI's statutory waiver (§ 1255.260) and American Apparel's lack of an enforceable interest in the property.

On July 12, 2006, the trial court entered an order of conditional dismissal. (§ 1260.120, subd. (c)(2).) Without addressing the issues of APMI's statutory waiver and American Apparel's lack of an enforceable interest in the property, the trial court agreed with APMI's and American Apparel's objections that: (1) the resolution of necessity was conditional in that it required MTA "to negotiate further with the appropriate defendants for a plan of 'mutually agreeable parking'"; and (2) in violation of the condition, MTA had failed to engage in meaningful negotiations for mutually agreeable parking, which invalidated the so-called conditional resolution.[8] The trial court concluded that, in light of MTA's failure to fulfill the condition of the resolution, the complaint would be dismissed unless MTA engaged in "fully informed, good faith negotiations . . . as contemplated by the Resolution." The trial court directed the parties to select a mediator to oversee the further negotiations, during which MTA would be allowed to continue using the property.

Between February 2007 and approximately July 2008, MTA and APMI engaged in further negotiations for mutually agreeable parking under the direction of the mediator, retired Court of Appeal Justice John Zebrowski. MTA and APMI discussed several options, including the joint development of a parking structure on the property, which was fenced and paved but had no structures on it.

On August 7, 2008, the mediator issued a report stating that MTA had failed to negotiate in good faith by insisting that the parking structure must include at least 100

---

[8]     The record is undisputed that MTA ordered its staff to cease negotiating a joint project in January 2006.

7

ground-floor bus parking spaces, when the property would only accommodate a structure with 87 or 88 bus parking spaces on the ground floor.[9]

On August 25, 2008, MTA filed a supplemental brief that requested rulings on several unresolved issues, including its claim of statutory waiver against APMI. MTA cited a recent appellate opinion, *Mesdaq*, *supra*, 154 Cal.App.4th 1111 (filed on Aug. 31, 2007), which held that the mortgage lender's withdrawal of the deposit of probable compensation to satisfy the owner's indebtedness had resulted in the owner's waiver of all claims and defenses under section 1255.260 except a claim for greater compensation. MTA argued that APMI, whose lenders also had used the withdrawn funds to pay APMI's loans, similarly had waived all claims and defenses except a claim for greater compensation.

On August 26, 2008, the trial court refused to rule on the issue of statutory waiver after striking MTA's supplemental brief as unauthorized. It indicated that it would enter a final order dismissing the complaint and restoring the property to APMI in light of the mediator's finding that MTA had failed to negotiate in good faith. In response to MTA's inquiry whether the order would also require APMI to return the funds withdrawn from the deposit of probable compensation, the trial court stated that MTA would have to pursue other remedies in order to recover the deposit.

On September 5, 2008, MTA filed an ex parte application that again requested a ruling on its statutory waiver claim against APMI under section 1255.260 and *Mesdaq*.

---

[9]   The report stated that "[t]he LACMTA staff can fairly be described as taking the position that if at least 100 buses could not be parked on the ground floor, then the idea of providing for employee parking for adjacent businesses must be totally abandoned." "[T]he staff never explained why parking for not less than 100 buses on this site was absolutely necessary, . . . the staff never . . . attempted to weigh the importance of the Board's concern for employee parking versus a 'shortfall' of twelve or thirteen bus parking spaces, and . . . the staff flatly refused an invitation to study the proposed plans to determine whether it actually is legally and physically possible to fit 100 buses on the ground floor with parking above."

00034

The trial court again declined to rule, stating that the issue was not properly before the court.

On September 5, 2008, the trial court entered the final order of dismissal that is the subject of this appeal. The September 5, 2008 order stated that because of MTA's failure to negotiate for mutually agreeable parking, the July 12, 2006 order of conditional dismissal would be deemed an order of permanent dismissal. The September 5 order required MTA to relinquish the property to APMI within 90 days, but did not require the return of the deposit.

MTA filed motions for new trial, to set aside the final order of dismissal, and to obtain rulings on its claims of statutory waiver as to APMI and lack of standing as to American Apparel. On November 4, 2008, the trial court denied MTA's motions. As to the statutory waiver claim, the trial court distinguished *Mesdaq* and found that APMI's receipt of the deposited funds did not result in a waiver under section 1255.260 because, unlike the owner in *Mesdaq*, APMI did not consent to the lenders' withdrawals. The trial court did not elaborate on the basis for American Apparel's standing.

On November 25, 2008, MTA timely appealed from the September 5, 2008 order of dismissal and subsequent orders.[10] At some point during this period, APMI filed a

---

[10]    In its opening brief, MTA describes the September 5 order as "unprecedented" because it "not only let the owner keep its property, it inexplicably authorized the owner also to keep the $6.1 million Metro had deposited with the court clerk when Metro took prejudgment possession of the property. Although the owner's lenders, with the owner's knowledge and assistance, had long ago withdrawn the money and applied the funds to pay off the owner's mortgages on the property, the trial court held that the property owner was entitled [to] 'have its cake and eat it too' by retaining the property and by keeping millions in taxpayer dollars used to make that property debt-free. Moreover, the order divests Metro of property it has been actively using for nearly four years to provide essential bus services to the taxpayers of Los Angeles County, and on which Metro had made substantial improvements."

00035

bankruptcy petition and was succeeded in this litigation by Alameda Produce Market, LLC., which filed the sole respondent's brief on appeal.[11]

## DISCUSSION

MTA contends that neither defendant was entitled to challenge the taking of the property in light of (1) APMI's statutory waiver under section 1255.260 and (2) American Apparel's lack of an enforceable interest in the property; and that contrary to the trial court's ruling, (3) the resolution of necessity did not require the negotiation of mutually agreeable parking, and thus the resolution was not invalidated by the failure to negotiate. Alternatively, MTA contends that even if it does not prevail on the first three issues, (4) it was entitled to a conditional dismissal in order to correct any defects in the resolution of necessity, or (5) its surrender of the property should have been made contingent on the repayment of the deposit. Because we agree with the first two contentions, we need not reach the remaining issues.

### I.    Statutory Waiver

MTA contends, as it did below, that the lenders' withdrawal of the deposited funds to satisfy APMI's loan obligations resulted in a statutory waiver under section 1255.260 of APMI's claims and defenses other than a claim for greater compensation. We agree.

Section 1255.260 provides: "If any portion of the money deposited pursuant to this chapter is withdrawn, the receipt of any such money shall constitute a waiver by operation of law of all claims and defenses in favor of the persons receiving such payment except a claim for greater compensation."

---

[11]    The bankruptcy court entered an order lifting the automatic stay as to this litigation on August 28, 2009. (*In re Meruelo Maddux Properties, Inc.* (Bankr. C.D. Cal., No. 1:09-bk-13356-KT).)

10