GARY E. KLAUSNER (State Bar No. 69077)
MARINA FINEMAN (State Bar No. 193065)
ANTHONY ARNOLD (State Bar No. 251973), Members of
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067-6013
gklausner@stutman.com
mfineman@stutman.com
aarnold@stutman.com
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

Special Reorganization Counsel for Debtors and Debtors in Possession

JOHN N. TEDFORD, IV (State Bar No. 205537)
DANNING GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067-2904
JTedford@DGDK.com
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735

Reorganization Counsel for Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>MERUELO MADDUX PROPERTIES, INC., et al.,[1]<br><br>Debtor.<br><br>☒  Affects all Debtors<br>☐  Affects the following Debtor(s): | Case No.: 1:09-bk-13356-VK<br>Chapter 11 (Jointly Administered)<br><br>**NOTICE OF SUBMISSION OF DEBTORS' EFFECTIVE DATE LOAN DOCUMENTS**<br><br>Status Conference Date:  May 9, 2011<br>Time:  2:00 p.m.<br>Place:  Courtroom 301<br>　　　　21041 Burbank Blvd.,<br>　　　　Woodland Hills, California |

---

[1]    Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

1    The above-captioned Debtors and Debtors-in-Possession (collectively, the "Debtors")

2  hereby submit copies of the final form of loan documents to be used in connection with the $15

3  million secured loan from Watermarke Properties, Inc. ("Watermarke") and/or its affiliates in

4  connection with implementation of the Debtors Fourth Amended Joint Plan of Reorganization of

5  Meruelo Maddux Properties, Inc., et. al. ("MMPI") dated September 20, 2010, as modified.

6    Attached hereto are the following documents consisting of: (1) Letter from

7  Watermark to MMPI dated May 4, 2011, attached hereto as Exhibit A; (2) the Secured Convertible

8  Promissory Note, attached hereto as Exhibit B; (3) the Deed of Trust and Assignment of Rents,

9  attached hereto as Exhibit C; and (4) the Environmental Certificate and Indemnity Agreement,

10  attached hereto as Exhibit D.

11

12  Dated: May 5, 2011                    /s/ Marina Fineman
13                                        GARY E. KLAUSNER,
                                          MARINA FINEMAN, and
14                                        ANTHONY ARNOLD, Members of
                                          STUTMAN, TREISTER & GLATT, P.C.
15
16                                        Special Reorganization Counsel for Debtors

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A



WATERMARKE
*Properties*

May 4, 2001

Mr. Andrew Murray
Chief Financial Officer
Meruelo Maddux Properties
761 Terminal Street
Los Angeles, CA 90021

     **RE:    Secured Convertible Promissory Note**

Dear Mr. Murray:

     This letter will confirm that Watermarke Properties, Inc. has agreed to the final form of the loan documents regarding the $15 million secured loan to Meruelo Maddux Properties Inc. and that Watermarke and/or its affiliate Henderson Capital Group, LLC will execute the loan documents and fund the loan contemplated thereunder following entry of an order of the Bankruptcy Court confirming MMPI's plan of reorganization and prior to or at the effective date of such plan.

     Sincerely,

Jeff Troesh
President
Watermarke Properties, Inc.

410 North Main Street, Corona, CA 92879  phone (951)372-2400  fax (951)808-1212

Exhibit A - Page 2

# Exhibit B

NEITHER THIS NOTE NOR THE STOCK OR SECURITIES ISSUABLE UPON CONVERSION HEREOF (OR ISSUABLE ON THE CONVERSION THEREOF, COLLECTIVELY, THE *"SECURITIES"*) HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS. THIS NOTE MAY NOT BE OFFERED, SOLD, ASSIGNED, TRANSFERRED, PLEDGED, HYPOTHECATED OR OTHERWISE DISPOSED OF IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT OF THE NOTE AND THE SECURITIES UNDER SUCH ACT AND UNDER ANY APPLICABLE STATE SECURITIES LAWS, OR SUBJECT TO A VALID EXEMPTION FROM SUCH REGISTRATIONS.

## SECURED CONVERTIBLE PROMISSORY NOTE (*"NOTE"*)

$15,000,000.00                                                    _____, 2011

1.    Obligation.    FOR VALUE RECEIVED, the undersigned, MERUELO MADDUX PROPERTIES, INC., a Delaware corporation ("*Company*"), promises to pay to the order of HENDERSON CAPITAL GROUP, LLC, a Nevada limited liability company with offices at 1370 Jet Stream Drive, Henderson, Nevada, or its permitted assigns (collectively referred to herein as, the "*Holder*") at maturity, the principal sum of Fifteen Million Dollars ($15,000,000.00), together with all accrued and unpaid interest, at its offices or such other place as the Holder may designate in writing.

2.    Interest Rate.    From the date of this Note and until this Note is paid in full, interest shall accrue on the outstanding principal balance of this Note at the simple rate of interest of 5.0% per annum ("*Interest Rate*").    Interest shall be calculated on the basis of a 360-day year assuming twelve equal 30-day months.

3.    Payment Provisions

3.1    Quarterly Interest Payments.    The interest that accrues under this Note shall be due and payable in arrears on a quarterly basis, commencing on the first (1st) day of the month following the end of the first quarterly period of this Note  (which shall include the first partial calendar month, if any, plus the next three full calendar months following the date of this Note), and continuing on the first (1st) day of the month following the end of each quarter thereafter, until the Maturity Date, or until the Note is paid in full if sooner.  By way of example, if this Note is dated May 15, 2011, interest payments would be due on September 1, 2011, December 1, 2011, March 1, 2012, June 1, 2012, etc.  Notwithstanding the foregoing, upon mutual agreement between the Company and Holder, one or more quarterly interest payments may be deferred and accrue until Maturity or until the Conversion Date (defined in Section 5) if sooner.

3.2    Payment at Maturity.  The outstanding principal balance plus all accrued and unpaid interest under this Note shall be due and payable to the Holder on the date that is five (5) years after the date of this Note (*"Maturity Date"*) unless the Holder otherwise converts the principal amount and any accrued and unpaid interest into Stock as defined in and in accordance with Section 5 hereof.

3.3    Other Payment Provisions.  All payments of principal and/or interest shall be payable to the Holder in lawful money of the United States.  All payments shall first be applied to accrued and unpaid interest and then to reduce the principal balance of this Note.  Except as otherwise provided herein, this Note may not be prepaid at any time without the prior written consent of the Holder.

4.    Security; Substitution of Collateral.  Amounts owing under this Note are secured by three separate first deeds of trust dated of even date herewith (each a *"Deed of Trust,"* or two or more of which are the *"Deeds of Trust"*) encumbering properties commonly known as 1211 E. Washington Boulevard, 230 W. Avenue 26, and 129 W. College Street, Los Angeles, California, as more particularly described in the Deeds of Trust (all or any of which properties are referred to herein as the *"Collateral"*).  All Deeds of Trusts shall be recorded with a first priority in interest over all liens and monetary encumbrances on the Collateral (other than the lien of taxes not yet delinquent).  The Company represents and warrants to Holder that the entities which own the Collateral are subsidiaries of the Company and that the Company has the authority and power to cause such entities to execute and deliver the Deeds of Trust without the consent or approval of any other person or governmental or judicial authority not already obtained.  Notwithstanding anything to the contrary contained in this Note or any of the Deeds of Trust, upon written request by the Company to Holder from time to time to substitute one or more real estate properties (the *"Substitute Collateral"*) in place of and to release one or more parcels of Collateral (the *"Released Collateral"*), Holder shall, upon and subject to satisfaction of the Substitution Conditions set forth below, release the Released Collateral as security for amounts owing under this Note, including by causing to be recorded one or more reconveyances (full or partial, as applicable) of the applicable Deed of Trust or Deeds of Trust (the *"Reconveyance"*) with respect to the Released Collateral in form and substance reasonably satisfactory to the Company and Holder.  For purposes hereof, the *"Substitution Conditions"* shall mean (i) the Substitute Collateral has a fair market value (as agreed upon between the Company and Holder, or if the Company and Holder cannot agree, as determined by appraisal as provided below) equal to or greater than the applicable substitution value for the Released Collateral as set forth in Exhibit A attached hereto, and (ii) the Company has executed in recordable form and delivered to Holder one or more deeds of trust, in the same form as the Deeds of Trust, to be recorded with first priority in interest over all liens and monetary encumbrances (other than the lien of taxes not yet delinquent), against the Substitute Collateral concurrent with the recording of the Reconveyance, and (iii) Holder has reviewed and approved in writing the condition of title of the Substitute Collateral and the environment report covering the Substitute Property to be provided to Holder by the Company.  If the Company and Holder cannot agree on the fair market value of the Substitute Collateral, or part thereof, within ten (10) days after the Company's substitution request, then the Company and Holder shall mutually select and engage an MAI appraiser to appraise and determine the fair market value for the property or properties upon which they do

not agree as to fair market value. Such appraiser shall complete any such appraisal or appraisals within thirty (30) days after being engaged. Upon recording of the Reconveyance and the deed of trust or deeds of trust with respect to the Substitute Collateral, the Released Collateral shall no longer be part of the Collateral, and the Substitute Collateral shall become part of the Collateral, subject to the provisions of this Section.

5.    Conversion. Holder shall have conversion rights as follows ("**Conversion Rights**"):

5.1    Right to Convert. The outstanding principal balance of this Note together with all accrued and unpaid interest shall be convertible into fully paid and nonassessable shares of common stock of the Company ("**Stock**") at a rate of $0.50 per share ("**Conversion Price**"):

(a) at the option of the Holder exercised as required herein, at any time upon and after the date that is four (4) years after the date of this Note and until and including the day that is thirty (30) days prior to the Maturity Date ("**Conversion Date Window**"); or

(b) at such time after the date of this Note but prior to the commencement of the Conversion Date Window as may be mutually agreed upon in writing between the Company and the Holder. At the request of the Holder, the Company shall agree to a conversion pursuant to this subsection (b) in the event of a Triggering Event (defined in Section 5.5) and shall agree to a Conversion Date that occurs prior to the Triggering Event.

5.2    Mechanics of Conversion

(a)    Conversion at Option of Holder. To exercise its Conversion Rights as provided in Section 5.1(a) and for the notice of such exercise to be effective: (i) the Holder must deliver to the Company a notice in the form attached hereto as Exhibit B, with the blanks fully completed, together with the original Note for cancellation (collectively, the "**Conversion Notice**"), and (ii) the Conversion Notice must be received by the Company no sooner than thirty (30) days prior to the first day of the Conversion Date Window and no later than sixty (60) days prior to the Maturity Date. The date upon which the conversion shall occur ("**Conversion Date**") shall be thirty (30) days after receipt by the Company of an effective Conversion Notice; provided that the Company and Holder may mutually agree in writing upon an earlier date but not earlier than the date of receipt by the Company of the Conversion Notice. Once received by the Company, the Conversion Notice may not be revoked by the Holder unless, upon written request of revocation by Holder, the Company consents in the Company's sole and absolute discretion to such revocation in a writing signed by the Chief Executive Officer or the President of the Company and delivered to the Holder. As soon as practical after the Company receives an effective Conversion Notice, the Company and Holder shall: (x) establish the Conversion Date (which shall be thirty (30) days after receipt by the Company of an effective Conversion Notice if the Company and Holder do not otherwise agree to an earlier date as provided above), (y) determine the principal balance of this Note together with all accrued and unpaid interest to be outstanding on the Conversion Date (as may be adjusted as provided below, the "**Conversion Amount**"), and (z) determine the number of shares of Stock required to be issued pursuant to this Note. If any interest payments under this Note (which has otherwise not been deferred by

mutual agreement in accordance with this Note) comes due or may be paid after the Company receives the Conversion Notice but prior to the Conversion Date, the Company may elect in its sole and absolute discretion either to make the payment or to add the amount of such payment to the Conversion Amount.

(b)    Conversion by Agreement.  If the Company and the Holder mutually agree to a conversion in accordance with Section 5.1(b), the agreement ("**Conversion Agreement**") must be in writing executed and delivered by both the Company and the Holder and must set forth: (i) the agreed upon Conversion Date, (ii) the Conversion Amount, (iii) the number of shares of Stock required to be issued pursuant to this Note, (iv) the nominee(s) of the Holder in whose name(s) the certificate(s) representing the shares of Stock are to be issued, and (v) the name and address of the person(s) to whom the certificate(s) are to be delivered.

(c)    Issuance of Shares.  Effective as of the Conversion Date, the Company shall cause to be issued a certificate(s) representing the number of shares of Stock required hereunder to be issued in the name of the nominee(s) specified in the Conversion Notice or Conversion Agreement, as applicable.  As soon as practical after the Conversion Date, the Company shall cause such certificate(s) to be delivered to the person(s) at the address specified for delivery in the Conversion Notice or Conversion Agreement, as applicable.  The person(s) in whose name(s) such certificate(s) are issued shall be treated for all purposes as the record holder(s) of such shares as of the Conversion Date.

(d)    Satisfaction and Cancellation of Note.  Upon the Conversion Date, this Note and all amounts owing under this Note are deemed fully paid and satisfied, the Note is deemed cancelled, and any and all liens and interests of the Holder in the Collateral are deemed terminated and released.  Upon the Conversion Date, the Holder shall cause to be recorded a full Reconveyance with respect to all Collateral in form and substance reasonably satisfactory to the Company.

(e)    Authorized Shares.  The Company shall, at all times while this Note is outstanding, use its commercial reasonable efforts to reserve and keep available such number of its duly authorized but unissued shares of Stock as shall from time to time be sufficient to effect the conversion of this Note.  The Company will take any corporate action which may, in the opinion of its counsel, be necessary in order that the Company may validly and legally issue the shares of Stock required to be issued hereunder.  If at any time the number of authorized but unissued shares of Stock are not sufficient to effect the conversion of this Note, the Company will take such corporate action as may, in the opinion of its counsel, be necessary to increase its authorized but unissued shares of Stock to such number of shares as shall be sufficient to effect the conversion of this Note.

(f)    Adjustments.  The Conversion Price and the number of shares of Stock which are subject of conversion hereunder are subject to adjustment so as to protect the rights of Holder upon the occurrence of any stock dividend, stock split, reverse stock split, recapitalization, reclassification, merger, combination, consolidation or other similar transaction. Upon each occurrence of any event described in the immediately preceding sentence, the

Conversion Price in effect immediately prior to such event shall be adjusted (and any other appropriate actions shall be taken by the Company), so that Holder, upon any conversion under this Note, shall be entitled to receive the number of shares of Stock or other property, including cash or securities, that Holder would have owned or would have been entitled to receive upon or by reason of any of the events described above, had this Note been converted immediately prior to the date of such event, or if such event has a record date, then immediately prior to the record date applicable to such event. An adjustment made pursuant to the immediately preceding sentence shall become effective retroactively to the close of business on the day upon which such event is effected, including without limiting the following:

(1)    Merger, Sale of Assets, Etc. If at any time, while this Note, or any portion hereof, is outstanding there shall be (i) a reorganization, (ii) a merger or consolidation of the Company with or into another corporation in which the Company is not the surviving entity, or a reverse triangular merger in which the Company is the surviving entity but the shares of the Company's capital stock outstanding immediately prior to the merger are converted by virtue of the merger into other property, whether in the form of securities, cash, or otherwise or (iii) a sale or transfer of all or substantially all of the Company's properties and assets to any other person, then, as a part of such reorganization, merger, consolidation, sale or transfer, lawful provision shall be made so that Holder shall thereafter be entitled to receive upon conversion of this Note, during the period specified herein and upon payment of the Conversion Price then in effect, the number of shares of stock or other securities or property of the successor corporation resulting from such reorganization, merger, consolidation, sale or transfer which a holder of the Stock deliverable upon exercise of this Note would have been entitled to receive in such reorganization, consolidation, merger, sale or transfer if this Note had been converted immediately before such reorganization, merger, consolidation, sale or transfer (or the record date therefore), all subject to further adjustment as provided in this Section 5.2(f).

The foregoing provisions of this Section 5.2(f)(1) shall similarly apply to successive reorganizations, consolidations, mergers, sales and transfers and to the stock or securities of any other corporation which are at the time receivable upon the conversion of this Note. If the per share consideration payable to the Holder for the Stock in connection with any such transaction is in a form other than cash or marketable securities, then the value of such consideration shall be determined in good faith by the Board of the Company and the Holder. In all events, appropriate adjustment (as determined in good faith by the Board of the Company and Holder) shall be made in the application of the provisions of this Note with respect to the rights and interests of the Holder after the transaction, to the end that the provisions of this Note shall be applicable after that event, as near as reasonably may be, in relation to any shares or other property deliverable after that event upon conversion of this Note.

(2)    Reclassification, Etc. If the Company at any time while this Note, or any portion thereof, remains outstanding shall, by reclassification of securities or otherwise, change any of the securities as to which conversion rights under this Note exist into the same or a different number of securities of any other class or classes, this Note shall thereafter represent the right to acquire such number and kind of securities as would have been issuable as the result of such change with respect to the securities which were subject to the conversion rights under this Note immediately prior to such reclassification or other change and the Conversion Price

Exhibit B - Page 7

therefor shall be appropriately adjusted, all subject to further adjustment as provided in this Section 5.2(f).

(3) Split, Subdivision or Combination of Shares. If the Company at any time while this Note, or any portion thereof, remains outstanding shall split, subdivide or combine the securities as to which conversion rights under this Note exist, into a different number of securities of the same class, the Conversion Price for such securities shall be proportionately decreased in the case of a split or subdivision or proportionately increased in the case of a combination such that the aggregate Conversion Price payable for the purchase of such securities shall remain the same as before such split, subdivision or combination.

(4) Adjustments for Dividends in Stock or Other Securities or Property. If, while this Note or any portion hereof remains outstanding, the holders of the class of stock as to which conversion rights under this Note exist at the time shall have received, or, on or after the record date fixed for the determination of eligible stockholders, shall have become entitled to receive, without payment therefor, other or additional stock or other securities or property (other than cash) of the Company by way of dividend, then and in each case, this Note shall represent the right to acquire upon conversion, in addition to the number of shares of the security receivable upon conversion of this Note, and without payment of any additional consideration therefor, the amount of such other or additional stock or other securities or property (other than cash) of the Company which the Holder would hold on the date of such conversion had it been the holder of record of the security receivable upon conversion of this Note on the date thereof and had thereafter, during the period from the date thereof to and including the date of such conversion, retained such shares and/or all other additional stock available by it as aforesaid during such period, giving effect to all adjustments called for during such period by the provisions of this Section 5.2(f).

5.3    No Impairment of Rights; Further Assurances. The Company will not, by amendment of its articles or through any other means, avoid or seek to avoid the observance or performance of any of the obligations of the Company under this Note. Each party shall act in good faith in implementing the terms of this Note, including by taking such commercially reasonable actions as are reasonably necessary to effectuate the provisions of this Note.

5.4    Piggyback Registration Rights

(a) Right. In the event that the Company proposes to file a registration statement under the Securities Act of 1933, as amended (the "*Securities Act*") in connection with a public offering of the Stock for its own account or for the account of holders of the Company's capital stock, Holder shall have the right to register its shares of Stock converted hereunder in accordance with the provisions of this Section 5.4. Prior to the filing of such registration statement, the Company shall give written notice of the proposed filing to Holder. Such notice shall offer Holder the opportunity to register such amount of stock as Holder may request provided such Stock is not eligible for sale without volume limitation pursuant to Rule 144 under the Securities Act (or any successor rule) and has not been (i) sold to or through a broker or dealer or underwriter in a public distribution or a public securities transaction, or (ii) sold in a transaction exempt from the registration and prospectus delivery requirements of the Securities

6                                                    Exhibit B - Page 8

Act under Section 4(1) thereof so that all transfer restrictions and restrictive legends with respect to such shares of Stock are removed upon the consummation of such sale (*"Eligible Securities"*). Subject to Section 5.4(b) and (c) hereof, the Company shall include in each such registration all Eligible Securities with respect to which the Company has received written requests for inclusion therein from Holder within twenty (20) days after notice has been given to Holder. Holder shall be permitted to withdraw all or any portion of the Eligible Securities of Holder from a registration at any time prior to the effective date of such registration, provided such shall not, in the reasonable opinion of the Company or its counsel, cause a delay in the effective date.

(b)    Exclusion.    The piggyback registration rights granted to the Holder under Section 5.4(a) shall not be available in respect of any registration statement (i) on Form S-8 or any successor form thereto, (ii) filed solely in connection with a dividend reinvestment plan or employee benefit plan covering officers or directors of the Company or its affiliates (which, for purposes of this Section 5.4(b), shall mean those persons covered by Regulation Section 240.16a-2 promulgated under the Securities and Exchange Act of 1934, as amended) or (iii) on Form S-4 or any successor form thereto, in connection with a merger, acquisition or similar corporate transaction.

(c)    Priority.    The Company shall permit Holder to include all such Eligible Securities on the same terms and conditions as other shares of Stock included in the registration. Notwithstanding the foregoing, if the managing underwriter or underwriters participating in such offering advise the Company that in its/their good faith judgment the total amount of stock requested to be included in such registration exceeds the amount which can be sold in (or during the time of) such offering without delaying or jeopardizing the success of the offering (including the price per share of the securities to be sold), then the amount of securities to be offered for the account of Holder and of other persons who hold stock who have piggyback registration rights which would permit them to register shares of stock in an offering described in Section 5.4(a) hereof (*"Other Holders"*) shall be reduced (to zero if necessary) pro rata based on the number or amount of Stock requested to be registered by Holder and the Other Holders participating in such offering.

5.5    Notice of Triggering Event.    The Company shall give written notice to the Holder of any one of the following events (any of which is a *"Triggering Event"*) at least twenty (20) days prior to its occurrence: (a) any reclassification of the Stock (other than a Stock division or combination), (b) any merger or consolidation of the Company into or with another entity, (c) the sale of all or substantially all of the assets of the Company, or (d) the involuntary or voluntary dissolution, liquidation or winding up of the Company. Subject to the rights of Holder in Section 5.1, the Conversion Rights shall terminate upon a Triggering Event.

6.    Unregistered Securities.    The Holder acknowledges, represents, warrants and agrees as follows:

6.1    The issuance of the Securities will not be registered under the federal Securities Act of 1933, as amended (the "1933 Act") or any state securities laws in reliance upon exemptions from registration contained in the 1933 Act and such state securities laws, and that

the Company's reliance upon such exemptions is based in part upon Holder's representations, warranties and agreements contained herein.

6.2    The Holder has had the opportunity to ask questions of and receive answers or obtain additional information from a representative of the Company concerning the financial and other affairs of the Company and the terms and conditions of the offering of the Securities, and, to the extent Holder believes necessary in light of Holder's personal knowledge of the Company's affairs, Holder has asked such questions and received satisfactory answers.

6.3    The Holder is purchasing the Securities for Holder's own account, with the intention of holding the Securities for investment, with no present intention of dividing or allowing others to participate in this investment or of reselling or otherwise participating, directly or indirectly, in a distribution of the Securities; and Holder shall not make any sale, transfer or other disposition of the Securities without registration under the 1933 Act or any applicable state securities laws unless an exemption from registration is available under the 1933 Act and such state securities laws.

6.4    Holder is familiar with the business in which the Company is or will be engaged, and based upon Holder's knowledge and experience in financial and business matters, Holder is familiar with the investments of the sort which Holder is undertaking herein; Holder is fully aware of the problems and risks involved in making an investment of this type; and Holder is capable of evaluating the merits and risks of this investment.

6.5    Holder is an "Accredited Investor" within the meaning of Rule 501(a) promulgated under the 1933 Act.  Holder's investment is in accord with the nature and size of Holder's present investments and net worth.  Holder is financially able to bear the economic risk of this investment, including the ability to afford holding the Note and/or Stock, as the case may be, for an indefinite period or to afford a complete loss of this investment.

6.6    Holder understands that the provisions of Rule 144 under the 1933 Act are not available to permit resales of the Securities, and due to the nature of the business of the Company and the conditions of Rule 144, it is unlikely that the conditions necessary to permit routine sales of the Securities under Rule 144 will ever be satisfied, and, if Rule 144 should become available, routine sales made in reliance upon its provisions could be made only in limited amounts and in accordance with the terms and conditions of the Rule.

6.7    Holder understands and agrees that the Company is under no obligation to register the Securities or to comply with the conditions of Rule 144 or take any other action necessary in order to make any exemption for the sale of the Securities without registration available.

6.8    Holder understands and agrees that any shares of Stock issued upon conversion of the Note will bear a legend noting the restricted nature of the shares under the 1933 Act and the applicable state securities laws of any state and may not be sold or transferred except in a transaction that is exempt under the 1933 Act and applicable state securities laws or pursuant to an effective registration or qualification under such laws.

7.    Preemptive Rights. Subject to the terms and conditions of this Section and applicable securities laws, if the Company from time to time after the date of this Note and prior to the Conversion Date proposes to sell previously unissued shares of Stock, then the Holder shall have the right to purchase a Proportionate Number (defined below) of the shares of Stock to be sold ("*Preemptive Rights*"), on the following terms and conditions:

7.1    Offer Notice.  The Company shall give written notice (the "*Offer Notice*") to Holder stating: (a) the Company's bona fide intent to offer for sale previously unissued shares of Stock, (b) the number of shares of Stock proposed to be offered for sale and the Proportionate Number of shares of Stock that Holder may purchase pursuant to its Preemptive Rights, and (c) to the extent established, the price and primary terms upon which the Company proposes to offer for sale such shares of Stock. For purposes hereof, the "*Proportionate Number*" means the number of shares of Stock to be sold pursuant to such offering multiplied by a fraction, the numerator of which is the number of shares of Stock that would be issuable upon conversion of this Note assuming a Conversion Date which is the same as the date upon which the Company sends the Offer Notice  ("*Conversion Shares*") and the denominator of which is equal to the number of shares of Stock outstanding immediately prior to the proposed sale plus the number of Conversion Shares.

7.2    Acceptance of Offer.  To exercise its Preemptive Rights and for the notice of such exercise to be effective: (a) the Holder must deliver to the Company a notice in the form attached hereto as Exhibit C (the "*Acceptance Notice*"), and (b) the Acceptance Notice must be received by the Company no later than ten (10) days after Holder's receipt of the Offer Notice; provided, that if the Offer Notice does not specify the price and primary terms upon which the shares of Stock are to be offered, then Holder must deliver to the Company the Acceptance Notice no later than the earlier of: (i) ten (10) days after receipt of a subsequent notice from the Company of the price and primary terms upon which the Company proposes to offer for sale such shares of Stock, and (ii) the date by which other purchasers must accept the offer to purchase shares of Stock.  Once received by the Company, the Acceptance Notice may not be revoked by the Holder. The closing of any sale pursuant to this Section shall occur in accordance with the terms of the proposed offering.

7.3    Exclusions.  The Preemptive Rights shall not apply with respect to: (a) the sale of shares of Stock that were repurchased by the Company, or (b) the issuance of shares of Stock (i) pursuant to any incentive, benefit or retirement plan of the Company or as compensation to any officer, director or employee of the Company, (ii) pursuant to any existing warrant, option, or other agreement, rights or obligations that may require issuance of or are convertible into shares of Stock [I believe there are none at this time—I will confirm], (iii) in connection with a merger or consolidation of the Company into or with another entity, or (iv) pursuant to any warrant, option, or other agreement, rights or obligations of the entity into which or with which the Company merges or consolidates.

7.4    Termination.  This Preemptive Rights terminate and shall be of no further force or effect upon the Maturity Date or the Conversion Date, if any, or when the Company becomes

subject to the periodic reporting requirements of Section 13(a) or 15(d) of the federal Securities and Exchange Act of 1934, as amended.

8.    Assignment.  The Company may not assign this Note or any of its rights hereunder without the prior written consent of the Holder; provided, however, that in the event of a merger or consolidation of the Company into or with another entity, this Note may be, without the prior written consent of the Holder, and shall be deemed to be, assigned to and assumed by the surviving entity in any such merger or consolidation, which shall thereupon become the Company for purposes of this Note.  The Holder may not assign this Note or any portion of its rights, title or interests in or to this Note or the Deeds of Trust without the prior written consent of the Company, which shall not be unreasonably withheld or delayed.  In the event that Holder assigns this Note or any portion of its rights, title or interests in or to this Note or the Deeds of Trust, with or without the consent of the Company, the Company may prepay this Note in full or in part.  The Company or the Holder, as applicable, shall promptly deliver notice of any assignment of this Note or any rights, title or interests in or to this Note or the Deeds of Trust by such party, which notice shall include the date of the assignment and the name and address of the assignee.

9.    Successors and Assigns.  Except as otherwise provided herein, any reference to the Holder hereof shall be deemed to include the permitted successors and assigns of such Holder, and all covenants, promises and agreements by or on behalf of the Company that are contained in this Note shall bind and inure to the benefit of the permitted successors and assigns of such Holder and to any future holders of this Note.

10.    Notices.  Any communication, notice or demand of any kind whatsoever which either party may be required or may desire to give to or serve upon the other shall be in writing and delivered by overnight courier (such as Federal Express) that provides evidence of receipt, by electronic communication (whether by email or facsimile), or by registered or certified mail, postage prepaid, return receipt requested, addressed as follows:

To Holder:                      Henderson Capital Group, LLC
                                c/o Watermarke Properties, Inc.
                                410 North Main Street
                                Corona, CA 92880
                                Attention: Jeff Troesh, President
                                Facsimile:  (951) 808-1212


with copy to                    Henderson Capital Group, LLC
                                c/o Watermarke Properties, Inc.
                                410 North Main Street
                                Corona, CA 92880
                                Attention: Greg Neville, Senior Vice President Development
                                Facsimile:  (951) 808-1212

To the Company:                 Meruelo Maddux Properties, Inc.
                                761 Terminal Street
                                Building 1, Second Floor
                                Los Angeles, California  90021
                                Attention:  Richard Meruelo, Chairman & CEO
                                Facsimile:  (213) 627-5979


with copy to:                   Meruelo Maddux Properties, Inc.
                                761 Terminal Street
                                Building 1, Second Floor
                                Los Angeles, California  90021
                                Attention:  Todd Nielsen, General Counsel & Secretary
                                Facsimile:  (213) 291-2830


Each party shall promptly provide the email address for its above recipients by separate notice. Any party may change its address for notice by written notice given to the other in the manner provided in this Section.  Any such communication, notice or demand shall be deemed to have been received on the date of confirmed delivery; provided, however, that any communication, notice or demand received after 5:00 p.m. (local time for the addressee) shall be deemed to have been received on the next business day.

11.     Waiver.  No waiver of any obligation of the Company under this Note shall be effective unless it is in a writing signed by the Holder.  A waiver by the Holder of any right or remedy under this Note on any occasion shall not be a bar to exercise of the same right or remedy on any subsequent occasion or of any other right or remedy at any time.  The Company hereby expressly waives presentment, demand, and protest, notice of demand, dishonor and nonpayment of this Note, and all other notices or demands of any kind in connection with the delivery, acceptance, performance, default or enforcement hereof.

12.     Controlling Law and Venue.  This Note and the provisions hereof shall be governed, construed and interpreted strictly in accordance with the laws of the State of California, without regard to its principles of conflicts of law.  The Company and Holder each submit to the exclusive jurisdiction of the State courts in the State of California.

13.     Severability.  In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operate or would prospectively operate to invalidate this Note, then and in any such event, such provision(s) only shall be deemed null and void and shall not affect any other provision of this Note and the remaining provisions of this Note shall remain operative and in full force and effect and in no way shall be affected, prejudiced, or disturbed thereby.

14.     Loss, Theft, Destruction or Mutilation of Note.  In the event of the loss, theft, mutilation or destruction of this Note, upon Company's receipt of an indemnification agreement reasonably

satisfactory to the Company and executed in favor of the Company by the Holder, or in the event of a mutilation of this Note, upon Holder's surrender to Company of the mutilated Note, Company shall execute and deliver to Holder, a new secured convertible promissory note in the form and content identical to this Note in lieu of the lost, stolen, destroyed or mutilated Note.

15.    Relationship of Parties.  The relationship between Company and Holder is, and at all times shall remain, solely that of debtor and creditor, and shall not be, or be construed to be, a joint venture, partnership or other relationship of any nature.

16.    Costs.  The Company, with the exception of Holder's attorneys' fees, shall be responsible for all of Holder's costs and expenses related to the closing of the loan transaction contemplated under this Agreement, including but limited to, title policy premiums, escrow costs, recording fees, postage, etc.

17.    Amendments.  No amendment, modification or termination of this Note shall be effective unless the same shall be in writing and signed and delivered by the Company and Holder.  No waiver of any provision of this Note or consent by the Holder shall be effective unless the same shall be in writing and signed by the Holder.  No waiver of any provision of this Note or consent by the Company shall be effective unless the same shall be in writing and signed by the Company.

**IN WITNESS WHEREOF,** the undersigned has caused this Note to be executed and its seal affixed effective as of the day and year first above written.

**COMPANY:**                MERUELO MADDUX PROPERTIES, INC.
                            a Delaware corporation


                            By: _____

                            Name:_____

                            Title:_____


ACKNOWLEDGED AND AGREED:

**HOLDER:**                 HENDERSON CAPITAL GROUP, LLC
                            a Nevada limited liability company


                            By: _____

                            Name:_____

                            Title:_____

EXHIBIT A
SUBSTITUTION VALUES

| PROPERTY | SUBSTITUTION VALUE |
|---|---|
| 230 Avenue 26, Los Angeles, CA | $4,000,000 |
| 1211 E. Washington Blvd., Los Angeles, CA | $7,500,000 |
| 129 College Avenue, Los Angeles, CA | $13,000,000 |

EXHIBIT B
CONVERSION NOTICE

[Date]

[Addressed to the persons at the addresses
required for notices to the Company under the Note]

Dear _____:

    The undersigned ("**_Holder_**") hereby irrevocably exercises its rights under the enclosed original Secured Convertible Promissory Note dated _____ ("**_Note_**") made by Meruelo Maddux Properties, Inc. ("**_Company_**") to convert the outstanding principal balance and all accrued and unpaid interest outstanding under the Note as of the Conversion Date into fully paid and nonassessable shares of Stock at a price of [$0.50, or such price as adjusted pursuant to the Note] per share, and hereby irrevocably subscribes to such issue. All capitalized terms used and not defined herein have the meanings given in the Note.

    The undersigned represents and warrants to the Company that it is the sole holder of the Note, and that it has all rights, power and authority to exercise the conversion rights under the Note without the consent of any other person or entity whose consent has not been obtained.

    The principal balance and all accrued and unpaid interest outstanding under the Note as of the date of this letter is $_____. The certificate(s) of Stock representing such shares shall be issued in the name(s) of:

_____
(Name)

_____
(Address)

_____
(Taxpayer Number)

and shall be delivered to:

_____
(Name)

_____
(Address)

The undersigned acknowledges and agrees that the Note and all amounts owing under the Note are deemed fully paid and satisfied, the Note is deemed cancelled, and any and all liens and interests of the Holder in the Collateral are deemed terminated and released. effective as the Conversion Date.

Sincerely,

[Holder]

By: _____
Name: _____
Its: _____

# EXHIBIT C
## ACCEPTANCE NOTICE

[Date]

[Addressed to the persons at the addresses
required for notices to the Company under the Note]

Dear _____:

    The undersigned ("*Holder*") hereby irrevocably exercises its rights under the enclosed original Secured Convertible Promissory Note dated _____ ("*Note*") made by Meruelo Maddux Properties, Inc. ("*Company*") to purchase the Proportionate Number of shares of Stock that Holder may purchase pursuant to its Preemptive Rights under the Note at the price and on the primary terms set forth in the Offer Notice (and any subsequent notice from the Company), and hereby irrevocably subscribes to such issue.  All capitalized terms used and not defined herein have the meanings given in the Note.

    The undersigned represents and warrants to the Company that it is the sole holder of the Note, and that it has all rights, power and authority to exercise the Preemptive Rights under the Note without the consent of any other person or entity whose consent has not been obtained.

Sincerely,

[Holder]

By: _____
Name:_____
Its:_____

# Exhibit C

RECORDING REQUESTED BY
AND WHEN RECORDED, MAIL TO:

Henderson Capital Group, LLC
c/o Watermarke Properties, Inc.
410 North Main Street
Corona, CA 92880

---

# DEED OF TRUST
# AND ASSIGNMENT OF RENTS

This Deed of Trust and Assignment of Rents ("Deed of Trust") is made effective as of
_____, 2011, by [_____], a [_____] ("Trustor"), whose
address is 761 Terminal Street, Building 1, Second Floor, Los Angeles, California 90021, to
FIRST AMERICAN TITLE COMPANY, as trustee ("Trustee") whose address is
[_____], for the benefit of HENDERSON CAPITAL GROUP,
LLC, a Nevada limited liability company ("Beneficiary"), whose address is 1370 Jet Stream
Drive, Henderson, Nevada 89052.

**GRANT IN TRUST:**

TRUSTOR IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE
IN TRUST, WITH POWER OF SALE, all of Trustor's interest in that certain real property
located in the County of Los Angeles, State of California, legally described as:

See Exhibit A attached hereto and incorporated herein by this reference ("Property"),

Together with the rents, issues and profits thereof, subject, however, to the right, power
and authority hereinafter given to and conferred upon Beneficiary by Paragraph C(5) of this
Deed of Trust to collect and apply such rents, issues and profits.

**FOR THE PURPOSE OF SECURING:**

(i)      Payment of the sum of up to Fifteen Million Dollars ($15,000,000), together with
interest thereon, as provided in that certain Secured Convertible Promissory Note of even date
herewith, executed by Meruelo Maddux Properties, Inc., a Delaware corporation ("Borrower"),
payable to Beneficiary ("Note"), and all extensions, modifications or renewals thereof;

(ii)     The performance of each agreement of Trustor incorporated by reference or
contained herein or reciting it is so secured; and

1

Exhibit C - Page 19

(iii)    Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or its successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

(iv)    Notwithstanding any provision of this Deed of Trust to the contrary, in no event shall this Deed of Trust secure the obligations of Trustor or any indemnitor arising exclusively under the Environmental Certificate and Indemnity Agreement of the same date, given by Borrower and Trustor to Beneficiary (the **"Environmental Indemnity"**).   The definition of "Other Security Documents" shall not include the Environmental Indemnity.

A.    To Protect the Security of this Deed of Trust, Trustor agrees:

(1)    To keep the Property in good condition and repair, not to remove or demolish any building thereon without Beneficiary's prior written consent, not to be unreasonably withheld, to pay when due all claims for labor performed and materials furnished therefore, to comply with all laws affecting the Property, and not to permit waste thereof or to commit any act upon the Property in violation of law.

(2)    To maintain and deliver evidence to Beneficiary of insurance against fire and other risks customarily insured against, with loss payable to Beneficiary; provided that the insurance currently maintained by Trustor with respect to the Property shall be deemed to satisfy any insurance requirements under this Deed of Trust and Trustor shall not be required to maintain any earthquake insurance with respect to the Property.  The amount collected under any fire or other insurance policy may be applied by Beneficiary to reduce any indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3)    To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee under this Deed of Trust, and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

(4)    To pay prior to delinquency (which is the latest date before which a penalty will be imposed) all taxes and assessments affecting the Property, including assessments on appurtenant water stock, and when due, all other encumbrances, charges and liens, with interest, if any, on the Property or any part thereof, which appear to be prior or superior to the lien of this Deed of Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation under this Deed of Trust, may, make or do the same in such manner and to such extent as either may deem reasonably necessary to

protect the security hereof, Beneficiary or Trustee being authorized to enter upon the Property upon written notice to Trustor for such purposes, to appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee under this Deed of Trust and to pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgment of either appears to be prior or superior to the lien of this Deed of Trust; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

(5)     To pay promptly upon written demand all sums so expended by Beneficiary or Trustee pursuant to Paragraph A(4) above, with interest from the date of such expenditure at the interest rate provided for in the Note, and to pay for any statement provided for by law in effect as of the date of this Deed of Trust regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when such statement is demanded.

B.     Representations, Warranties and Covenants.

(1) Warranty of Title.  Trustor warrants that Trustor has good title to the Property and has the unrestricted right to grant the security interests given in this Deed of Trust and that Trustor presently possesses an unencumbered fee simple estate in the Property and the improvements thereon except for those shown in the title report for this transaction (the **"Permitted Encumbrances"**), and that this Deed of Trust is and will remain a valid and enforceable lien on and security interest in the Property, subject only to the Permitted Encumbrances.  Trustor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Deed of Trust, subject to the Permitted Encumbrances, and shall forever warrant and defend the same to Beneficiary against the claims of all persons.

(2) Representations and Covenants Concerning Loan.  Trustor represents, warrants and covenants, to Trustor's knowledge, and except as disclosed to Beneficiary or its representatives, as follows:

a) All certifications, permits, licenses and approvals, including certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Property as currently operated (collectively, the **"Licenses"**), have been obtained and are in good standing (including, without limitation, any applicable liquor license).  The Trustor shall keep and maintain all Licenses so long as the uses of the Property require such.  The Property is free of material damage, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Property.

(b) All of the improvements on the Property which were included in determining the appraised value of the Property lie wholly within the boundaries and applicable building restriction lines of the Property, and no improvements on adjoining properties encroach upon the Property, and no easements or other encumbrances upon the Property encroach upon any of the improvements, so as to materially affect the value or marketability of the Property except those which are insured against by the Beneficiary's policy of mortgagee's title insurance insuring the

Exhibit C - Page 21

lien of this Deed of Trust. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(c) The Property is not subject to any leases other than the leases described in the rent roll delivered to Beneficiary in connection with this Deed of Trust ("Leases"). No person has any possessory interest in the Property or right to occupy the same except under and pursuant to the provisions of the Leases.

(d) The Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or in the future relating to the ownership, construction, use or operation of the Property.

(e) There has not been committed by Trustor or, to Trustor's knowledge, any other person in occupancy of or involved with the operation or use of the Property any act or omission affording the federal government or any state or local government the right of forfeiture as against the Property or any part thereof or any monies paid in performance of Trustor's obligations under this Deed of Trust or any of the Other Security Documents. Trustor hereby covenants and agrees not to commit, permit or suffer to exist any act or omission affording such right of forfeiture.

(f) Neither the execution and delivery of the Note, this Deed of Trust, or the Other Security Documents, nor the Trustor's performance thereunder, nor the recordation of this Deed of Trust, nor the exercise of any remedies by Beneficiary, will adversely affect Trustor's rights under any of the Licenses.

C.      It is Mutually Agreed between Trustor and Beneficiary:

(1)      That any award of damages in connection with any condemnation for public use of or injury to the Property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by Beneficiary in the same manner and with the same effect as set forth in Paragraph A(2) above regarding the disposition of proceeds of fire or other insurance.

(2)      That by accepting payment of any sum secured by this Deed of Trust after its due date, Beneficiary does not waive its right to require prompt payment when due of all other sums secured by this Deed of Trust.

(3)      That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note for endorsement, and without affecting the liability of any person or entity for payment of the indebtedness secured by this Deed of Trust, Trustee may reconvey any part of the Property, consent to the making of any map or plat thereof, join in granting any easement thereon or join in any extension agreement or any agreement subordinating the lien or charge of this Deed of Trust.

Exhibit C - Page 22

(4)     That upon either: (a) written request of Beneficiary stating that all sums secured by this Deed of Trust have been paid, and upon surrender of the Note to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees; (b) the exercise by Beneficiary of any of its Conversion Rights (as defined in the Note); or (c) the substitution of the Property with other collateral in accordance with the terms and provisions of the Note, Trustee shall fully reconvey, without warranty, the entire remaining Property then held hereunder.  The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof.  The grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5)     That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the effectiveness of this Deed of Trust, to collect the rents, issues and profits of the Property, reserving unto Trustor the right, prior to the occurrence of any event of default described in Paragraph C(6) below, to collect and retain such rents, issues and profits as they become due and payable.  Upon the occurrence and continuance of any such event of default beyond any applicable cure period, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Property or any part thereof, in his or her own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any event of default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6)     That the following events are each an event of default under the Note and this Deed of Trust:

(a)     Default by Borrower in the payment of any sum of principal or interest when due under the Note, and the failure to pay the same within five (5) days after receipt of notice of such default;

(b)     The failure (after written notice from Beneficiary and a reasonable opportunity to cure) of Trustor to observe, perform or discharge any obligation or covenant of this Deed of Trust or any other agreement related to the Property between Trustor and Beneficiary;

(c)     The assignment by Trustor, as lessor or sublessor, as the case may be, of the rents or the income of the Property or any part thereof (other than to Beneficiary) without first obtaining the written consent of Beneficiary; and

(d)     The sale, conveyance or transfer of the Property by Trustor except in accordance with the terms and provision of this Deed of Trust, or the Note.

Exhibit C - Page 23

Upon the occurrence and continuance of any event of default set forth above, Beneficiary may, in addition to any other remedies available to Beneficiary at law or in equity, declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause the Property to be sold, which notice Trustee shall cause to be filed for record in the office of the recorder of the county where the Property is situated. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone the sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Additionally, Beneficiary, from time to time before any Trustee's sale, may rescind or cause to be rescinded any declaration of default and demand to sell or notice of sale by executing and delivering to Trustee a written notice of such rescission, which notice, when recorded, shall also constitute a cancellation of any prior declaration of default and demand for sale. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase the Property at such sale.

After deducting all costs, fees and expenses of Trustee and of this Deed of Trust, including the cost of evidence of title in connection with such sale, Trustee shall apply the proceeds of such sale to payment of all sums expended under the terms hereof, not then repaid, with accrued interest at the interest rate provided for in the Note, all other sums then secured by this Deed of Trust and the remainder, if any, to the person or persons legally entitled thereto.

(7)    Beneficiary, or any permitted successor in ownership of any indebtedness secured by this Deed or Trust, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county where the Property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed of Trust is recorded and the name and address of the new Trustee.

(8)    That this Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, and their permitted successors, and assigns. The term Beneficiary shall mean the owner and holder, including permitted pledgees of the Note, whether or not named as Beneficiary herein. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

Exhibit C - Page 24

(9)    The Trustee accepts this Deed of Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

(10)    Except as provided in the Note, in the event that the Property or any portion thereof is sold by Trustor, the outstanding and unpaid principal balance of the Note and any accrued and unpaid interest shall become immediately due and payable at the option of beneficiary.  Notwithstanding the foregoing, nothing herein contained shall in any way limit or restrict Trustor's right, without Beneficiary's consent, to lease the Property or portion thereof.

(11)    Except as prohibited by applicable law, Trustor waives any right to require Beneficiary to: (a) proceed against person, including Borrower, before proceeding against Trustor; (b) proceed against any collateral for the indebtedness evidenced by the Note, including Borrower's collateral, if any, before proceeding against Trustor; (c) apply any payments or proceeds received against the indebtedness evidenced by the Note in any order; (d) give notice of the terms, time and place of any sale of any collateral pursuant to any applicable law governing such sale; (e) disclose any information about the indebtedness evidenced by the Note, Borrower, any collateral or any other guarantor or surety, or about any action or nonaction of Beneficiary; or (f) pursue any remedy or course of action in Beneficiary's power whatsoever.

Trustor also waives any rights or defenses arising by reason of:  (A) any disability or other defense of Borrower, any other guarantor or surety or any other person; (B) the application of proceeds by Borrower of the indebtedness evidenced by the Note for purposes other than the purposes understood and intended by Trustor and Beneficiary; (C) any act or omission or commission by Beneficiary which directly or indirectly results in or contributes to the discharge of Borrower of any other guarantor or surety, or the indebtedness evidenced by the Note, or the loss or release of any collateral by operation of law or otherwise; or (D) any modification or change in terms of the indebtedness evidenced by the Note, including, without limitation, the renewal, extension, acceleration, or other change in the time payment of such indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Beneficiary, even though that election of remedies, such as nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses Trustor may have because Borrower's obligation is secured by real property.  This means, among other things: (i) Beneficiary may collect from Trustor without foreclosing on any real or personal property collateral pledged by Borrower; and (ii) if Beneficiary forecloses on any real property collateral pledged by Borrower:  (A) the amount of Borrower's obligation to Beneficiary may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (B) Beneficiary may collect from Trustor even if Beneficiary, by foreclosing on the real

Exhibit C - Page 25

property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Sections 580a, 580b, 580d or 726 of the California Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled to under state and federal law. The rights and defenses include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws and the Uniform Commercial Code. Trustor acknowledges and agrees that Trustor has provided these waivers of rights and defenses with the intention that they are to be fully relied upon by Beneficiary. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Beneficiary, given for full and adequate consideration, and is enforceable on its own terms.

(12)    From time to time as required by law, Beneficiary shall furnish to Trustor such statements as may be required concerning the status of the obligations secured by this Deed of Trust.

(13)    This Deed of Trust and all matters related hereto shall be governed, construed and interpreted strictly in accordance with the laws of the State of California, without regard to its principles of conflicts of law.

(14)    This Deed of Trust cannot be modified or amended except by agreement in writing signed by Trustor and Beneficiary.

(15)    Except as otherwise provided by law, all notices, requests, demands and other communications provided for in this Deed of Trust shall be in writing and shall be delivered pursuant to the notice provisions in the Note.

(16)    The titles, captions, and headings to paragraphs contained in this Deed of Trust are for assistance in identification only and are not to be considered part of the substance of the provisions of this Deed of Trust.

(17)    If any paragraph, clause or provision of this Deed of Trust is construed or interpreted by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those paragraphs, clauses or provisions so construed or interpreted and shall not affect the remaining paragraphs, clauses and provisions of this Deed of Trust.

(18)    Notices:    TRUSTOR AND BORROWER REQUEST THAT A COPY OF ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE HEREUNDER BE MAILED TO TRUSTOR AT TRUSTOR'S AND BORROWER'S ADDRESS SET FORTH ABOVE.

Exhibit C - Page 26

(19)   INDEMNIFICATION.        TRUSTOR SHALL PROTECT, INDEMNIFY
AND SAVE HARMLESS TRUSTEE AND BENEFICIARY FROM ALL LIABILITIES,
OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION, COSTS AND
EXPENSES (INCLUDING WITHOUT LIMITATION REASONABLE ATTORNEYS' FEES
AND EXPENSES) IMPOSED UPON OR INCURRED BY OR ASSERTED AGAINST
TRUSTEE OR BENEFICIARY BECAUSE OF (A) FRAUD OR MATERIAL
MISREPRESENTATION BY OR ON BEHALF OF THE TRUSTOR; (B) ANY FAILURE ON
THE PART OF TRUSTOR TO PERFORM OR COMPLY WITH ANY OF THE TERMS OF
THIS DEED OF TRUST OR THE OTHER SECURITY DOCUMENTS; (C) OWNERSHIP OF
THE PROPERTY OR ANY INTEREST IN IT OR THE RECEIPT OF ANY RENTS; (D) ANY
ACCIDENT, INJURY TO OR DEATH OF PERSONS OR LOSS OF OR DAMAGE TO
PROPERTY OCCURRING IN, ON OR ABOUT THE PROPERTY; (E) ANY USE, NONUSE
OR CONDITION IN, ON OR ABOUT THE PROPERTY OR ANY PART THEREOF; OR
(F) PERFORMANCE OF ANY LABOR OR SERVICES OR THE FURNISHING OF ANY
MATERIALS OR OTHER PROPERTY TO THE PROPERTY, WHETHER OR NOT
CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE
BENEFICIARY OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR
EMPLOYEES OF BENEFICIARY.  HOWEVER, SUCH INDEMNITY SHALL NOT APPLY
TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR
WILLFUL MISCONDUCT OF TRUSTEE OR BENEFICIARY, OR ANY OF ITS AGENTS,
OR AS TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES
OF ACTION, COSTS AND EXPENSES BASED SOLELY ON FACTS OR
CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT
BENEFICIARY OR OTHER PERSON OR ENTITY BECOMES THE OWNER OF THE
PROPERTY BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST,
DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE.  ANY AMOUNT PAYABLE
TO TRUSTEE OR BENEFICIARY BECAUSE OF THE APPLICATION OF THIS
PARAGRAPH SHALL BECOME IMMEDIATELY DUE AND PAYABLE UPON DEMAND
BY BENEFICIARY, AND SHALL BEAR INTEREST AT THE DEFAULT RATE, AS
STATED AND DEFINED IN THE NOTE, FROM THE DATE OF SUCH DEMAND.  THE
OBLIGATIONS OF TRUSTOR UNDER THIS PARAGRAPH SHALL SURVIVE ANY
TERMINATION OR SATISFACTION OF THIS DEED OF TRUST.

(20)   Trustor represents and warrants to Holder that Trustor is a subsidiary of the
Borrower and that Trustor has the authority and power to execute and deliver this Deed of Trust
without the consent or approval of any other person or governmental or judicial authority not
already obtained.

(Signature page follows.)

9                          Exhibit C - Page 27

TRUSTOR:                          [_____],
                                  a [_____]


                                  By:     _____
                                  Name:   _____
                                  Title:  _____



ACKNOWLEDGED BY:

BORROWER:                         MERUELO MADDUX PROPERTIES, INC.


                                  By:     _____
                                  Name:   _____
                                  Title:  _____

## ACKNOWLEDGMENT

STATE OF CALIFORNIA    )
                       ) ss.
COUNTY OF _____ )

On _____, 2011, before me, _____,
Notary Public, personally appeared _____ who proved to me on
the basis of satisfactory evidence to be the person(s) whose name(s) (is) (are) subscribed to the
within instrument and acknowledged to me that (he) (she) (they) executed the same in (his) (her)
(their) authorized capacity(ies), and that by (his) (her) (their) signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ (Seal)

Exhibit C - Page 29

EXHIBIT A

Legal Description of the Property

(To be attached.)

# Exhibit D

# ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT

**THIS ENVIRONMENTAL CERTIFICATE AND INDEMNITY AGREEMENT** (this **"Agreement"**) is made effective as of _____, 2011, by MERUELO MADDUX PROPERTIES, INC., a Delaware corporation, whose address for purposes of this Agreement is 761 Terminal Street, Building 1, 2nd Floor, Los Angeles, California 90021 (**"Borrower"**), and [_____], a [_____] ("Trustor," Borrower and Trustor are together referred to herein as **"Indemnitors"**), TO AND IN FAVOR OF Henderson Capital Group, LLC, a Nevada limited liability company (**"Lender"**), whose address for purposes of this Agreement is 1370 Jet Steam Drive, Suite #140, Henderson, NV 89052.

## RECITALS

A.      Trustor is the present owner of that certain property (the **"Premises"**) located at [_____], and more particularly described in the Deed of Trust and Assignment of Rents of even date herewith (the **"Deed of Trust"**);

B.      The Trustee is a subsidiary of the Borrower and the Borrower has the authority and power to cause Trustor to enter into and execute this Agreement without the consent or approval of any other person or governmental or judicial authority not already obtained.

C.      Borrower has executed and delivered to Lender a Secured Convertible Promissory Note of even date herewith (the **"Note"**), in the principal sum of $15,000,000, secured by the Deed of Trust on the Premises to and in favor of Chicago Title Company as Trustee, for the benefit of Lender.  Borrower and Trustor will benefit from the disbursement of the loan (the **"Loan"**) evidenced by the Note and secured by the Deed of Trust and Premises;

D.      Indemnitors have agreed to make this Agreement as a condition precedent to funding the Loan;

D.      Indemnitors expressly acknowledge that (1) the effectiveness of this Agreement shall not be affected by the extinguishment of the indebtedness evidencing the Loan, (2) this Agreement is not secured by the Deed of Trust or any Other Security Document (as defined in the Deed of Trust), and (3) this Agreement is being given solely to allocate, as between Indemnitors and Lender, the risk of expenses which may become necessary because of environmental problems with respect to the Premises.  The indemnities and covenants contained in this Agreement shall survive the termination of the Deed of Trust, whether through full payment of the Loan, foreclosure, deed in lieu of foreclosure or otherwise; and

E.      In the event of any conflict between the provisions of this Agreement and the provisions of any other document executed in connection with the Loan, the provisions of this Agreement shall govern and control.

## AGREEMENTS

**NOW THEREFORE**, in order to induce Lender to accept the Premises as security for the Loan and to enter into the Loan and to disburse the proceeds of the Loan, and in consideration of the matters described in the foregoing Recitals, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Indemnitors hereby certify and agree as follows:

1.      <u>Recitals</u>.  The Recitals are incorporated herein by this reference.

2.      <u>Definitions</u>:  For purposes of this Agreement, the following terms shall mean as follows:

(a)    **"Environment"** means any surface or subsurface water, water vapor, surface or subsurface land, air, fish, wildlife, microorganisms and all other natural resources;

(b)    **"Environmental Site Assessment"** means that certain site environmental assessment report pertaining to the Premises, and presented to Lender in conjunction with the Loan;

(c)    **"Governmental Authority"** means the Federal government, or any state or other political subdivision thereof, or any agency, court or body of the Federal government, any state or other political subdivision thereof, exercising executive, legislative, judicial, regulatory or administrative functions;

(d)    **"Hazardous Substance"** means and includes asbestos or any substance containing asbestos, polychlorinated biphenyls, any explosives, radioactive materials, chemicals known or suspected to cause cancer or reproductive toxicity, pollutants, effluents, contaminants, emissions, infectious wastes, any petroleum or petroleum-derived waste or product or related materials and any items defined as hazardous, special or toxic materials, substances or waste under any Hazardous Substance Law, or any such material which shall be removed from the Premises pursuant to any administrative order or enforcement proceeding or in order to place the Premises in a condition that is suitable for ordinary use; including, without limitation, any chemical, material or substance defined as or included in the definition of "hazardous substances" "Hazardous wastes", "hazardous materials", "extremely hazardous wastes", "restricted hazardous wasters", or "toxic substances" or words of similar import under Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316 and 25501 of the California Health and Safety Code, and Article 9 or Article 11 of Title 22 of the Administrative Code, Division 4, Chapter 20;

(e)    **"Hazardous Substance Laws"** collectively means and includes any present and future local, state, federal or international law or treaty relating to public health, safety or the environment including without limitation, the Resource Conservation and Recovery Act, as amended ("RCRA"), 42 U.S.C. § 6901 et seq., the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 et seq., the Clean Water Act, 33 U.S.C. § 1251 et seq., the Clean Air Act, as amended 42 U.S.C. § 7401 et seq., the Toxic Substances Control Act, 15 U.S.C. § 2601 et seq., the Safe Drinking Water Act, 42 U.S.C. § 300f et seq., the Uranium Mill Tailings Radiation Control Act, 42 U.S.C. § 7901 et seq., the Occupational Safety and Health Act, 29 U.S.C. § 655 et seq., the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 et seq., the National Environmental Policy Act, 42 U.S.C. § 4321 et seq., the Noise Control Act, 42 U.S.C. § 4901 et seq., and the Emergency Planning and Community Right-to-Know Act, 42 U.S.C. § 11001 et seq., the Carpenter-Presley-Tanner Hazardous Substance Account Act and the California Health and Safety Code, Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316, and 25501 of the California Health and Safety Code, Section 2782.6(d) of the California Civil Code and Title 22 of the California Code of Regulations and the amendments, regulations, orders, decrees, permits, licenses or deed restrictions now or hereafter promulgated thereunder, and any similar law, regulation, order, decree, permit, license or deed restriction of the State;

(f)    **"Premises"** means all of the real property described in Recital "A" above, including the entire subsurface of soil, sand, gravel, stone and rock, all surface water and subsurface water, whether flowing or stagnant, the ambient air, and all structures, fixtures, buildings and other constructions located, situated or erected thereon.

2

(g)    **"Release"** means any discharging, disposing, emitting, leaking, pumping, pouring, emptying, injecting, escaping, leaching, dumping or spilling into the Environment (including the abandonment or discarding of barrels, containers and other closed receptacles).

Terms not otherwise defined herein shall have the meaning ascribed to them in the Note, the Deed of Trust and the Other Security Documents.

3.    <u>Representations and Warranties of Indemnitors</u>. Indemnitors hereby covenant, or represent and warrant, as applicable, to Lender that:

(a)    To the best of Indemnitors' knowledge, after diligent inquiry, and except as disclosed in the Environmental Site Assessment: (i) no Hazardous Substance is currently located at, on, in, under or about the Premises in a manner which violates any Hazardous Substance Laws; (ii) no Hazardous Substance has been or is currently located at, in, on, under or about the Premises in a manner which violates any Hazardous Substance Law, or which requires cleanup or corrective action of any kind under any Hazardous Substance Law; (iii) no Release of any Hazardous Substance from the Premises onto or into any other property or from any other property onto or into the Premises has occurred or is occurring in violation of any Hazardous Substance Law; and (iv) no notice of violation, lien, complaint, suit, order or other notice with respect to the environmental condition of the Premises is outstanding, nor has any such notice been issued which has not been fully satisfied and complied with in a timely fashion so as to bring the Premises into full compliance with all Hazardous Substance Laws.

(b)    Indemnitors shall comply, and shall require all tenants or other occupants of the Premises to comply, in all respects with all Hazardous Substance Laws, and will not generate, store, handle, process, dispose of or otherwise use, and will not permit any tenant or other occupant of the Premises to generate, store, handle, process, dispose of or otherwise use, Hazardous Substances at, in, on, under or about the Premises in a manner which would violate any Hazardous Substance Law or otherwise lead to the imposition on Indemnitors, Lender or the Premises of any liability or lien of any nature whatsoever under any Hazardous Substance Law.

(c)    To the best of Indemnitors' knowledge, after diligent inquiry, no asbestos exists on the Premises in any form, condition or quantity, except as set forth in the Environmental Site Assessment (provided that Hazardous Substance Laws as may exist from time to time do not prohibit the existence of the asbestos in such form, condition or quantity). The Indemnitors and all tenants of the Premises shall at all times be in compliance with the terms of any asbestos monitoring plan, if any, in effect with respect to the Premises. Pre-existing non-friable asbestos may not be exposed to conditions under which there is a reasonable likelihood that the asbestos or its covering will become damaged, deteriorated, delaminated or any other conditions under which the asbestos could become friable.

(d)    Indemnitors shall notify Lender promptly in the event of any Release of any Hazardous Substance at, in, on, under or about the Premises which is required to be reported to a Governmental Authority under any Hazardous Substance Law, will promptly forward to Lender copies of any notices received by Indemnitors relating to alleged violations of any Hazardous Substance Law and will promptly pay when due any fine or assessment against Lender or the Premises relating to any Hazardous Substance Law.

(e)    If at any time it is determined that the operation or use of the Premises violates any applicable Hazardous Substance Law or that there are Hazardous Substances located at, in, on, under or about the Premises which, under any Hazardous Substance Law, require special handling in collection,

storage, treatment or disposal, or any other form of cleanup or corrective action, Indemnitors shall, within thirty (30) days after receipt of notice thereof from any Governmental Authority or from Lender, take, at its sole cost and expense, such actions as may be necessary to fully comply in all respects with all Hazardous Substance Laws, provided, however, that if such compliance is of a nature which may be completed, and Indemnitors shall have commenced completion thereof within a reasonable time, not to exceed such 30 days, and shall be diligently prosecuting completion of the same, then such 30 days shall be extended to the time reasonably necessary for completion. If Indemnitors fail to timely take, or to diligently and expeditiously proceed to complete in a timely fashion, any such action, Lender may, in its sole and absolute discretion, make advances or payments towards the performance or satisfaction of the same, but shall in no event be under any obligation to do so. All sums so advanced or paid by Lender (including, without limitation, attorneys' and consultants' fees and expenses, investigation and laboratory fees and expenses, and fines or other penalty payments) and all sums advanced or paid in connection with any judicial or administrative investigation or proceeding relating thereto, will, within 30 days of demand, become due and payable from Indemnitors and shall bear interest thereafter at the Default Rate (as defined in the Note).

(f)     If a lien is filed against the Premises by any Governmental Authority resulting from the need to expend or the actual expending of monies arising from an action or omission, whether intentional or unintentional, of Indemnitors or for which Indemnitors are responsible resulting in the releasing, spilling, leaking, leaching, pumping, emitting, pouring, emptying or dumping of any Hazardous Substance into the waters or onto land located within or without the state where the Premises is located, then Indemnitors will, within thirty (30) days from the date that Indemnitors are first given notice that such lien has been placed against the Premises (or within such shorter period of time as may be specified by Lender if such Governmental Authority has commenced steps to cause the Premises to be sold pursuant to such lien) either (i) pay the claim and remove the lien, or (ii) furnish a cash deposit, bond or such other security with respect thereto as is satisfactory in all respects to Lender and is sufficient to effect a complete discharge of such lien on the Premises.

(g)     The Premises has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining the Premises that is reasonably likely to cause the Premises or any part thereof to be designated as Border Zone Property.

4.     INDEMNIFICATION. INDEMNITORS HEREBY AGREE, AT THEIR SOLE COST AND EXPENSE, TO UNCONDITIONALLY INDEMNIFY, DEFEND, AND HOLD LENDER AND ITS DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS HARMLESS FROM AND AGAINST ANY LOSS, LIABILITY, DAMAGE (WHETHER DIRECT OR CONSEQUENTIAL), EXPENSES, CLAIMS, PENALTIES, FINES, INJUNCTIONS, SUITS, PROCEED-INGS, DISBURSEMENTS OR EXPENSES (INCLUDING, WITHOUT LIMITATION, ATTORNEYS' AND EXPERTS' FEES AND DISBURSEMENTS AND COURT COSTS) (COLLECTIVELY, THE "**LIABILITIES**") (A) ARISING AS A RESULT OF ANY INCORRECTNESS IN ANY REPRESENTATIONS OR WARRANTIES OF INDEMNITORS CONTAINED IN THIS AGREEMENT; (B) ARISING UNDER ANY HAZARDOUS SUBSTANCE LAW WITH RESPECT TO THE PREMISES; OR (C) ANY OTHER LIABILITIES, IF ANY, WHICH MAY BE INCURRED BY OR ASSERTED AGAINST LENDER DIRECTLY OR INDIRECTLY RESULTING FROM THE PRESENCE OF A HAZARDOUS SUBSTANCE ON THE PREMISES, WHETHER OR NOT CAUSED IN WHOLE OR IN PART BY THE NEGLIGENT ACTS OR OMISSIONS OF THE LENDER OR INDIVIDUALS OR ENTITIES ACTING AS THE AGENTS OR EMPLOYEES OF THE LENDER; PROVIDED, HOWEVER, THAT SUCH INDEMNITY SHALL NOT APPLY WITH RESPECT TO MATTERS CAUSED BY OR ARISING OUT OF THE GROSS NEGLIGENCE OR INTENTIONAL MISCONDUCT OF THE LENDER OR ITS EMPLOYEES, AGENTS OR CONTRACTORS, OR WITH RESPECT TO LIABILITIES, OBLIGATIONS, CLAIMS, DAMAGES, PENALTIES, CAUSES OF ACTION,

COSTS AND EXPENSES BASED SOLELY ON FACTS OR CIRCUMSTANCES OCCURRING ONLY SUBSEQUENT TO SUCH TIME, IF ANY, THAT LENDER OR OTHER PERSON OR ENTITY BECOMES THE OWNER OF THE PREMISES BY WAY OF FORECLOSURE OF THE LIEN OF THE DEED OF TRUST, DEED IN LIEU OF SUCH FORECLOSURE, OR OTHERWISE.

INDEMNITORS SHALL ASSUME THE BURDEN AND EXPENSE OF DEFENDING ALL SUITS, ADMINISTRATIVE PROCEEDINGS AND DISPUTES OF ANY DESCRIPTION WITH ALL PERSONS, ENTITIES, POLITICAL SUBDIVISIONS OR GOVERNMENT AGENCIES ARISING OUT OF THE MATTERS TO BE INDEMNIFIED UNDER THIS AGREEMENT. INDEMNITORS SHALL PAY, PROMPTLY UPON ENTRY, ANY NONAPPEALABLE ORDER, JUDGMENT OR OTHER FINAL RESOLUTION OF ANY CLAIM OR DISPUTE ARISING OUT OF THE MATTERS TO BE INDEMNIFIED UNDER THIS AGREEMENT AND SHALL PAY PROMPTLY WHEN DUE ANY FINES, PENALTIES OR AGREED SETTLEMENTS ARISING OUT OF THE MATTERS TO BE INDEMNIFIED UNDER THIS AGREEMENT. IN THE EVENT THAT SUCH PAYMENT IS NOT MADE, LENDER, AT ITS SOLE DISCRETION, MAY PROCEED TO FILE SUIT AGAINST INDEMNITORS TO COMPEL SUCH PAYMENT.

PROMPTLY FOLLOWING COMPLETION OF ANY ACTIONS IMPOSED UPON INDEMNITORS UNDER ANY HAZARDOUS SUBSTANCE LAW, INDEMNITORS SHALL OBTAIN AND DELIVER TO LENDER, AN ENVIRONMENTAL REPORT IN FORM AND SUBSTANCE ACCEPTABLE TO LENDER FROM AN ENVIRONMENTAL CONSULTANT ACCEPTABLE TO LENDER, STATING THAT ALL REQUIRED ACTION HAS BEEN TAKEN, AND THAT UPON COMPLETION OF SUCH ACTION, THE PREMISES IS, TO THE KNOWLEDGE OF SUCH PROFESSIONAL, THEN IN COMPLIANCE WITH THE APPLICABLE HAZARDOUS SUBSTANCE LAWS.

5.    Notices from Indemnitors.  Indemnitors shall promptly after obtaining knowledge thereof advise Lender in writing of (a) any governmental or regulatory actions instituted or threatened in writing under any Hazardous Substance Law affecting the Premises or any indemnification hereunder including, without limitation, any notice of inspection, abatement or noncompliance, (b) all claims made or threatened in writing by any third party against Indemnitors or the Premises relating to any Hazardous Substance or a violation of a Hazardous Substance Law, and (c) Indemnitors' discovery of any occurrence or condition on the Premises or any real property adjoining or in the vicinity of the Premises which could subject Indemnitors or the Premises to a claim under any Hazardous Substance Law or to any restrictions on ownership, occupancy, transferability or use of the Premises under any Hazardous Substance Law. Indemnitors shall deliver to Lender any documentation or records regarding the above as Lender may reasonably request and which are susceptible of being obtained by Indemnitors without undue cost or expense and without the necessity for initiating legal proceedings to obtain the same.

6.    Notice and Settlement of Claims Against Lender.

(a)    Lender shall provide Indemnitors with written notice of any claim or demand which Lender has determined could give rise to a right of indemnification under this Agreement.  Such notice shall be given within a reasonable time after Lender becomes aware of facts and shall specify, to the best of Lender's knowledge, the facts giving rise to the alleged claim, and the amount to the extent determinable, of liability for which indemnity is asserted.

(b)    Lender shall not settle or otherwise compromise any action, suit or proceeding brought against Lender on a claim indemnified hereunder without the prior written consent of Indemnitors which consent shall not be unreasonably withheld.  The Indemnitors also agree that they will not settle or compromise such action, suit or proceeding as to claims against Lender without Lender's prior written consent, which consent shall not be unreasonably withheld.

7.    <u>Payment of Lender's Expenses</u>.  In any pending or threatened litigation, contest, dispute, suit or proceeding (whether instituted by Lender, Indemnitors, or any other party, including any governmental agency charged with enforcement of any Hazardous Substance Law) in any way relating to this Agreement and the indemnification described herein, or to enforce the indemnification hereunder or, if the Lender has a reasonable basis to believe that a violation of the Hazardous Substance Laws exists in regard to the Premises for which Indemnitors are to indemnify Lender, Lender shall have the right to retain counsel and environmental sciences consultants of its own choice for advice or other representation without affecting or otherwise impairing the indemnification hereunder and all Liabilities arising from such services shall be payable by Indemnitors within 30 days of demand.

8.    <u>Environmental Audits</u>.  Lender may, at its option, if Lender reasonably believes that a Hazardous Substance or other environmental condition on the Premises violates or threatens to violate any Hazardous Substance Law, cause an environmental audit of the Premises or portions thereof to be conducted to confirm Indemnitors' compliance with the provisions of this Agreement, and Indemnitors shall cooperate in all reasonable ways with Lender in connection with any such audit and shall pay all costs and expenses incurred in connection therewith.

9.    <u>Events of Default</u>.  Any one or more of the following events shall be an event of default (hereinafter referred to as an **"Event of Default"**) hereunder:

(a)    If any representation or warranty of Indemnitors made herein or in any certificate or report furnished in connection with the making of this Agreement shall be false or misleading in any material respect and the same has not been cured to the reasonable satisfaction of Lender, within thirty (30) days of written notice thereof from Lender to Indemnitors; or

(b)    If Indemnitors shall be in default under any other term, covenant or condition of this Agreement for a period of thirty (30) days after written notice thereof from Lender to Indemnitors.

Notwithstanding any provision to the contrary in <u>subsections 9(a) or 9(b)</u>, above, if such default is of a nature which may be cured and Indemnitors shall have commenced curing of said default within a reasonable time, not to exceed such 30 days after notice of the same from Lender, and shall be diligently prosecuting completion of the same, then such 30 days shall be extended to the time reasonably necessary to complete said cure.  Upon such Event of Default the Lender shall have the right, at its option, to declare the entire Debt (as defined in the Note and the Deed of Trust, hereinafter the **"Debt"**) due and payable.

10.    <u>Obligations Absolute and Waivers</u>.

(a) The obligations of Indemnitors hereunder shall remain in full force and shall not be impaired by: (i) any express or implied modification, renewal, extension or acceleration of the Note, the Deed of Trust, any other loan documents executed by Indemnitors or any other party in connection with the Loan and all environmental indemnity agreements executed by Indemnitors or any other party including without limitation this Agreement (collectively the **"Documents"**); (ii) any exercise or non-exercise by Lender of any right or privilege under any of the Documents; (iii) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Indemnitors, or any affiliate of Indemnitors or any guarantor, or any action taken with respect to this Agreement by any trustee or receiver or by any court in any such proceeding, whether or not Indemnitors shall have had notice or knowledge of any of the foregoing; (iv) any release, waiver or discharge of the Indemnitors or any endorser or guarantor from liability under any of the Documents or Indemnitors' grant to Lender of a security interest, lien or encumbrance in any of the Indemnitors' property; (v) any subordination, compromise, settlement, release (by operation of law or otherwise), discharge, compound,

collection, or liquidation of any of the Documents or any collateral described in any of the Documents or otherwise, or any substitution with respect thereto except as specifically required by this Agreement; (vi) any assignment or other transfer of any of the Documents, in whole or in part; (vii) any acceptance of partial performance of any of the obligations of Indemnitors under the Documents; (viii) except as provided herein, any consent to the transfer of any collateral described in the Documents or otherwise; and (ix) any bid or purchase at any sale of the collateral described in the Documents or otherwise.

(b)    Indemnitors unconditionally waive the following defenses to enforcement of this Agreement: (i) all presentments, demands, demands for performance, notices of nonperformance, protests, notices of protest, dishonor, nonpayment, partial payment, default and protest, notices of acceptance of this Agreement and all other notices and formalities to which the Indemnitors may be entitled (except for notices which are specifically required by this Agreement); (ii) any right to require Lender to proceed against any Indemnitors, any individual Indemnitors or any guarantor or to proceed against or exhaust any collateral described in the Documents; (iii) any defense arising by reason of any invalidity or unenforceability of any of the Documents or any disability of Indemnitors or any guarantor; (iv) any defense arising by reason of the manner in which Lender has exercised its remedies under the Documents; (v) any defense based upon an election of remedies by Lender; (vi) any duty of Lender to advise Indemnitors of any information known to Lender regarding the financial condition of Indemnitors and all other circumstances affecting Indemnitors' ability to perform their obligations to Lender, it being agreed that Indemnitors assume the responsibility for being and keeping informed regarding such condition or any such circumstances; (vii) any right of subrogation and any rights to enforce any remedy which Lender now has or may hereafter have against Indemnitors and any benefit of, and any right to participate in, any security now or hereafter held by Lender; and (viii) to the extent permitted by law, any right to assert against Lender any legal or equitable defense, counterclaim, set off, cross claim or right of contribution which Indemnitors may now or at any time or times hereafter have.

11.    Survival of Agreement.  The obligations and liabilities of Indemnitors under this Agreement shall survive and continue in full force and effect and shall not be terminated, discharged or released, in whole or in part, irrespective of whether the Debt has been paid in full and irrespective of any foreclosure of the Deed of Trust or acceptance by Lender, its nominee or wholly owned subsidiary of a deed or assignment in lieu of foreclosure and irrespective of any other fact or circumstance of any nature whatsoever. Notwithstanding the above, this Agreement shall not be construed to impose liability on the Indemnitors for Hazardous Substances Released through no fault of Indemnitors or its respective agents, employees or contractors after the date of (a) foreclosure, (b) trustee's sale, (c) the acceptance by Lender of a deed in lieu of foreclosure, or (d) the taking of actual possession and physical control of the Premises by Lender.

12.    No Waiver.  Indemnitors' obligations hereunder shall in no way be impaired, reduced or released by reason of Lender's omission or delay to exercise any right described herein or in connection with any notice (except for notices required of Lender pursuant to this Agreement), demand, warning or claim regarding violations of any Hazardous Substance Laws governing the Premises.

13.    Joint and Several Liability.  The indebtedness, liabilities, and obligations of Indemnitors under this Agreement or any other Indemnitors who may have indemnified or who later indemnifies the Lender with respect to the subject matter of this Agreement, shall be joint and several.  Lender may release or settle with one or more individuals or entities comprising any guarantor or Indemnitors at any time without affecting the continuing liability of the Indemnitors.

Exhibit D - Page 37

14.    Successors and Assigns.  Subject to the provisions of paragraph 4, this Agreement and the indemnification contained in this Agreement shall be continuing, irrevocable and binding on Indemnitors and Indemnitors' successors and assigns, and this Agreement shall be binding upon and shall inure to the benefit of Lender and Lender's permitted successors and assigns under the note.

15.    Notices.  Any notice, demand, statement, request, or consent made hereunder shall be in writing and shall be deemed given when hand delivered, within three (3) days of the date sent by certified mail, return receipt requested, or the next business day after the date sent by nationally recognized overnight mail or courier service to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Indemnitors or Lender, as the case may be, shall in like manner designate in writing.

16.    Entire Agreement.  This Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter contained in this Agreement.

17.    Amendment and Waiver.  This Agreement may not be amended except by a writing signed by both parties nor shall observance of any term of this Agreement be waived except with the written consent of the Lender.

18.    Governing Law.  This Agreement shall be governed and construed as to interpretation, enforcement, validity, construction, effect and in all other respects by the laws, statutes and decisions of the State in which the premises are located without giving effect to the conflicts of laws provisions thereof.  TO THE EXTENT PERMITTED BY LAW, INDEMNITORS HEREBY WAIVE THE RIGHT TO ASSERT A COUNTERCLAIM IN ANY ACTION OR PROCEEDING BROUGHT AGAINST IT BY LENDER, AND WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY HERETO AGAINST THE OTHER OR IN ANY COUNTERCLAIM ASSERTED BY LENDER AGAINST INDEMNITORS, OR IN ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

19.    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same agreement.

20.    Severability.  All provisions contained in this Agreement are severable and the invalidity or unenforceability of any provision shall not affect or impair the validity or enforceability of the remaining provisions of this Agreement.

21.    Headings.  The descriptive headings of the paragraphs of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

22.    Not Secured By Deed of Trust.  Notwithstanding any provision of the Deed of Trust to the contrary, in no event shall the Deed of Trust be deemed to secure this Agreement or any of the obligations or liabilities of Indemnitors arising hereunder.

**23.    The indemnity contained in this Agreement is intended to be operable under 42 U.S.C. 9607(e)(1), and any successor section thereof, and shall survive the foreclosure, release or reconveyance of the Deed of Trust, whether by payment of the Debt (as defined in the Deed of Trust) or any deed-in-lieu of foreclosure of the Premises. In addition, this Agreement is intended to be cumulative of any rights of Lender under the Deed of Trust under California Code of Civil Procedure Sections 564, 726.5 and 736 and under California Civil Code Section 2929.5. Indemnitors hereby waive any restrictions or limitations that such statutes may impose on Indemnitors' liability or Lender's rights or remedies under this Agreement.**

8

Trustor agrees that: (a) this Agreement is intended as Lender's written request for information (and Borrower's response) concerning the environmental condition of the real property security as required by California Code of Civil Procedure Section 726.5; and (b) each provision in this Agreement (together with any indemnity applicable to a breach of any such provision) with respect to the environmental condition of the Premises is intended by Lender and Indemnitors to be an "environmental provision" for purposes of California Code of Civil Procedure Section 736.

In the event that any portion of the Premises is determined to be "environmentally impaired" (as "environmentally impaired" is defined in California Code of Civil Procedure Section 726.5(e)(3)) or to be an "affected parcel" (as "affected parcel" is defined in California Code of Civil Procedure Section 726.5(e)(1)), then, without otherwise limiting or in any way affecting Lender's rights and remedies under the Deed of Trust, Lender may elect to exercise its right under California Code of Civil Procedure Section 726.5(a) to (i) waive its lien on such environmentally impaired or affected portion of the Premises, and (ii) exercise the rights and remedies of an unsecured creditor, including reduction of its claim against Borrower to judgment and any other rights and remedies permitted by law.  For purposes of determining Lender's right to proceed as an unsecured creditor under California Code of Civil Procedure Section 726.5(a), Borrower shall be deemed to have willfully permitted or acquiesced in a release or threatened release of hazardous materials, within the meaning of California Code of Civil Procedure Section 726.5(d)(1), if the release or threatened release of hazardous materials was knowingly or negligently caused or contributed to by any lessee, occupant or user of any portion of the Premises and Borrower knew or should have known of the activity by such lessee, occupant or user which caused or contributed to the release or threatened release.

24.    THE NOTE, DEED OF TRUST, OTHER SECURITY DOCUMENTS (AS DEFINED IN THE DEED OF TRUST) AND THIS AGREEMENT COLLECTIVELY REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**IN WITNESS WHEREOF**, this Agreement has been executed effective as of the date first above written.

**INDEMNITORS:**　　　　MERUELO MADDUX PROPERTIES, INC.
　　　　　　　　　　　　a Delaware corporation

　　　　　　　　By: _____

　　　　　　　　Name:_____

　　　　　　　　Title:_____


　　　　　　　　[_____]
　　　　　　　　[a _____]


　　　　　　　　By: _____

　　　　　　　　Name:_____

　　　　　　　　Title:_____

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067

A true and correct copy of the foregoing document described as **NOTICE OF SUBMISSION OF DEBTORS' EFFECTIVE DATE LOAN DOCUMENTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 5, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Michael C Abel on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
mcabel@mac.com

Robert Abiri on behalf of Interested Party Courtesy NEF
rabiri@abiriszeto.com

Allison R Axenrod on behalf of Creditor Claims Recovery Group LLC
allison@claimsrecoveryllc.com

Christopher J Bagnaschi on behalf of Defendant Richard Meruelo
cb@cjblaw.com

John J Bingham on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
jbingham@dgdk.com

William C Bollard on behalf of Creditor Victory Outreach La Puente, Inc.
eal@jbblaw.com, kmg@jbblaw.com;william@jbblaw.com

Peter Bonfante on behalf of Interested Party Courtesy NEF
peterbonfante@bsalawfirm.com

Erin N Brady on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
enbrady@jonesday.com

Julia W Brand on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com

Jennifer L Braun on behalf of U.S. Trustee United States Trustee (SV)
jennifer.l.braun@usdoj.gov

Martin J Brill on behalf of Interested Party Courtesy NEF
mjb@lnbrb.com

Andrew W Caine on behalf of Creditor Legendary Investors Group No. 1, LLC
acaine@pszyjw.com

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
550641v.1

**F 9013-3.1.PROOF.SERVICE**

Howard Camhi on behalf of Creditor Kennedy Funding, Inc.
hcamhi@ecjlaw.com

Gary O Caris on behalf of Interested Party EDI Architecture
gcaris@mckennalong.com, pcoates@mckennalong.com

James E Carlberg on behalf of Creditor Woodland Farms, Inc.
jcarlberg@boselaw.com

Sara Chenetz on behalf of Creditor Imperial Capital Bank
chenetz@blankrome.com, chang@blankrome.com

Jacquelyn H Choi on behalf of Interested Party Courtesy NEF
jchoi@swjlaw.com

Carol Chow on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
CChow@Stutman.com

Cynthia M Cohen on behalf of Interested Party Courtesy NEF
cynthiacohen@paulhastings.com

Ronald R Cohn on behalf of Creditor Pacific Commerce Bank
rcohn@horganrosen.com

Enid M Colson on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
emc@dgdk.com, ecolson@dgdk.com

Michaeline H Correa on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
mcorrea@jonesday.com

Emily R Culler on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
eculler@stutman.com

Ana Damonte on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,
National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., etc
ana.damonte@pillsburylaw.com

Brian L Davidoff on behalf of Creditor Yoshiake Murakami
bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com

Susan S Davis on behalf of Creditor Cox, Castle & Nicholson LLP
sdavis@coxcastle.com

Aaron De Leest on behalf of Debtor Merco Group - 2040 Camfield Avenue, LLC, a DE LLC
aed@dgdk.com

Daniel Denny on behalf of Interested Party Courtesy NEF
ddenny@gibsondunn.com

Jeffrey W Dulberg on behalf of Creditor Legendary Investors Group No. 1, LLC
jdulberg@pszjlaw.com

Marina Fineman on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
mfineman@stutman.com

Michael G Fletcher on behalf of Creditor Cathay Bank

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com

Barry V Freeman on behalf of Interested Party Courtesy NEF
bvf@jmbm.com, bvf@jmbm.com

Donald L Gaffney on behalf of Creditor BANK OF AMERICA
dgaffney@swlaw.com

Thomas M Geher on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank
Minnesota, National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage
Securities, Inc., etc
tmg@jmbm.com

Bernard R Given on behalf of Creditor Cathay Bank
bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com

Barry S Glaser on behalf of Creditor County of Los Angeles Tax Collector
bglaser@swjlaw.com

Gabriel I Glazer on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
gglazer@stutman.com

Matthew A Gold on behalf of Creditor Argo Partners
courts@argopartners.net

Eric D Goldberg on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
egoldberg@stutman.com

Michael J Gomez on behalf of Creditor Cathay Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

Michael I Gottfried on behalf of Interested Party Courtesy NEF
mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com

John A Graham on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,
National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc.
jag@jmbm.com

Ofer M Grossman on behalf of Interested Party Courtesy NEF
omglaw@gmail.com

Jodie M Grotins on behalf of Interested Party Courtesy NEF
jgrotins@mcguirewoods.com

Peter J Gurfein on behalf of Creditor CIM Urban RE Fund GP II, LLC, as Successor in Interest to Grand Avenue Lofts, LP
pgurfein@lgbfirm.com

Cara J Hagan on behalf of Creditor PNL Pomona, L.P.
carahagan@haganlaw.org

Asa S Hami on behalf of Creditor Committee Creditors Committee
ahami@sulmeyerlaw.com

Brian T Harvey on behalf of Creditor California Bank & Trust
bharvey@buchalter.com, IFS_filing@buchalter.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
550641v.1

**F 9013-3.1.PROOF.SERVICE**

Robert A Hessling on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
rhessling@dgdk.com

William W Huckins on behalf of Interested Party Courtesy NEF
whuckins@allenmatkins.com, clynch@allenmatkins.com

Lance N Jurich on behalf of Creditor CanPartners Realty Holding Company IV, LLC
ljurich@loeb.com, kpresson@loeb.com

William H. Kiekhofer on behalf of Creditor Esmark, Inc.
wkiekhofer@mcguirewoods.com

Andrew F Kim on behalf of Creditor Imperial Capital Bank
akim@mrllp.com

Michael S Kogan on behalf of Creditor Kennedy Funding, Inc.
mkogan@ecjlaw.com

Tamar Kouyoumjian on behalf of Creditor Committee Creditors Committee
tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com

Lewis R Landau on behalf of Creditor Committee Creditors Committee
lew@landaunet.com

Dare Law on behalf of U.S. Trustee United States Trustee (SV)
dare.law@usdoj.gov

Leib M Lerner on behalf of Auditor Ernst & Young LLP
leib.lerner@alston.com

Matthew A Lesnick on behalf of Stockholder Charlestown Capital Advisors, LLC
matt@lesnicklaw.com

David E Leta on behalf of Creditor FNBN-CMLCOM I LLC
dleta@swlaw.com, wsmart@swlaw.com

Katherine Lien on behalf of Interested Party Courtesy NEF
katie.lien@sbcglobal.net, katielien@gmail.com

Steven K Linkon on behalf of Creditor Chinatrust Bank (USA)
slinkon@rcolegal.com

Robert M Llewellyn on behalf of Creditor California State Board Of Equalization
michael.llewellyn@boe.ca.gov

Richard Malatt on behalf of Interested Party Courtesy NEF
rmalatt@gmail.com

Elmer D Martin on behalf of Creditor East West Bank
elmermartin@gmail.com

Elissa Miller on behalf of Interested Party Courtesy NEF
emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com

Avi Muhtar on behalf of Creditor Committee Official Committee of Unsecured Creditors
amuhtar@sulmeyerlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Iain A W Nasatir on behalf of Attorney Pachulski Stang Ziehl & Jones LLP
inasatir@pszjlaw.com, jwashington@pszjlaw.com

Jeffrey P Nolan on behalf of Creditor Legendary Investors Group No. 1, LLC
jnolan@pszjlaw.com

Henry H Oh on behalf of Defendant Meruelo Maddux Properties Inc a DE Corp
henry.oh@dlapiper.com, janet.curley@dlapiper.com

Lawrence Peitzman on behalf of Interested Party Courtesy NEF
lpeitzman@pwkllp.com

Eric S Pezold on behalf of Creditor BANK OF AMERICA
epezold@swlaw.com, dwlewis@swlaw.com

Christopher E Prince on behalf of Stockholder Charlestown Capital Advisors, LLC
cprince@lesnickprince.com

Michael H Raichelson on behalf of Creditor Stanford Group LP
mhr@cabkattorney.com

Dean G Rallis Jr on behalf of Attorney SulmeyerKupetz, a Professional Corporation
drallis@sulmeyerlaw.com

Kurt Ramlo on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com

Craig M Rankin - DECEASED - on behalf of Interested Party Courtesy NEF
cmr@lnbrb.com

Daniel H Reiss on behalf of Interested Party Richard Meruelo
dhr@lnbyb.com

Michael B Reynolds on behalf of Creditor FNBN-CMLCON I LLC
mreynolds@swlaw.com, kcollins@swlaw.com

Jeremy V Richards on behalf of Creditor East West Bank
jrichards@pszjlaw.com, bdassa@pszjlaw.com

James S Riley on behalf of Creditor Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com

Victor A Sahn on behalf of Creditor Committee Creditors Committee
vsahn@sulmeyerlaw.com

Steven J Schwartz on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
sschwartz@dgdk.com

Kenneth J Shaffer on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
jshaffer@stutman.com

Zev Shechtman on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
550641v.1

**F 9013-3.1.PROOF.SERVICE**

zshechtman@dgdk.com, danninggill@gmail.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Jeffrey S Shinbrot on behalf of Creditor The Union Restaurant and Lounge, LLC
jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

Stephen Shiu on behalf of Creditor FNBN-CMLCOM I LLC
sshiu@swlaw.com

Lori Sinanyan on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
lsinanyan@jonesday.com

Daniel H Slate on behalf of Creditor California Bank & Trust
dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com

Surjit P Soni on behalf of Creditor Legendary Investors Group No. 1, LLC
surjit@sonilaw.com, teresa@sonilaw.com

Bennett L Spiegel on behalf of Plaintiff East West Bancorp, Inc.
blspiegel@jonesday.com

Tracie L Spies on behalf of Creditor PNL Pomona, L.P.
tracie@haganlaw.org

James Stang on behalf of Creditor East West Bank
jstang@pszjlaw.com

Catherine Steege on behalf of Creditor Committee Official Committee of Equity Holders
csteege@jenner.com

Derrick Talerico on behalf of Creditor CanPartners Realty Holding Company IV, LLC
dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

John N Tedford on behalf of Attorney Danning Gill Diamond & Kollitz LLP
jtedford@dgdk.com, DanningGill@Gmail.com

Damon Thayer on behalf of Interested Party Courtesy NEF
dthayer@jenner.com

James A Timko on behalf of Interested Party Courtesy NEF
jtimko@allenmatkins.com

Alan G Tippie on behalf of Interested Party Courtesy NEF
atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

Rouben Varozian on behalf of Creditor Vahan Chamlian
rvarozian@bzlegal.com

Jason L Weisberg on behalf of Creditor Roofcorp of CA Inc
jason@gdclawyers.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
550641v.1

**F 9013-3.1.PROOF.SERVICE**

William E Winfield on behalf of Creditor Committee Creditors Committee
wwinfield@nchc.com

Jasmin Yang on behalf of Creditor BANK OF AMERICA
jyang@swlaw.com

Aleksandra Zimonjic on behalf of Creditor CIM Urban RE Fund GP II, LLC, as Successor in Interest to Grand Avenue
Lofts, LP
azimonjic@lgbfirm.com, kmoss@lgbfirm.com;cscott@lgbfirm.com    ☐  Service information continued on attached page

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail,
first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes
a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or
entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *May 5 2011*, I served the following person(s) and/or
entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be
completed no later than 24 hours after the document is filed.

**PERSONAL DELIVERY**
Hon. Victoria Kaufman
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 354
Woodland Hills, CA  91367

**Via Email:**
Ronald S. Orr:  ronorresq@aol.com (Attorneys for Equity Committee)
Georgiana G. Rodiger:  crodiger@rodigerlaw.com (Attorneys for Equity Committee)

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 5, 2011 | Kendra A. Johnson | /s/ Kendra A. Johnson |
|-------------|-------------------|------------------------|
| Date        | Type Name         | Signature              |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
550641v.1

**F 9013-3.1.PROOF.SERVICE**