CHRISTOPHER E. PRINCE (SBN 183553)
    cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
    matt@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
    acahill@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA  90405
Telephone: (213) 493-6496
Facsimile:  (213) 493-6596

Attorneys for Charlestown Capital Advisors, LLC and
Hartland Asset Management Corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-13356-VK |
| MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor. | Chapter 11<br>**NOTICE OF MOTION AND MOTION FOR AUTHORITY TO FURTHER MODIFY THE CHARLESTOWN PLAN AND TO APPROVE CHANGE OF VOTES OF CATHAY BANK AND MS KEARNY CT 1 LLC AS SUCCESSOR TO CHINATRUST BANK, USA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing<br>Date:        To Be Set<br>Time:        To Be Set<br>Place:       Courtroom 301<br>                 21041 Burbank Blvd.<br>                 Woodland Hills, CA  91367<br><br>Confirmation Hearing<br>Date:        January 27, 2011<br>Time:        9:30 a.m.<br>Place:       Courtroom 301<br>                 21041 Burbank Blvd.<br>                 Woodland Hills, CA  91367 |

1  TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE;

2  THE UNITED STATES TRUSTEE; AND OTHER PARTIES IN INTEREST:

3              PLEASE TAKE NOTICE that, at [____] on [_____], in Courtroom 301 of the

4  United States Bankruptcy Court located at 21041 Burbank Boulevard, Woodland Hills, California,

5  Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (the

6  "Charlestown Proponents") will move the Court for an order authorizing the Charlestown

7  Proponents to modify their proposed Chapter 11 plan without the need for re-solicitation.  The

8  Charlestown Proponents will also move the Court for an order pursuant to Rule 3018 approving a

9  change in the votes of claimants Cathay Bank ("Cathay") and MS Kearny CT 1 LLC as successor to

10  Chinatrust Bank, USA ("Chinatrust") to support the Charlestown Plan as modified.

11              The Charlestown Proponents' seek approval of the following modifications:

12          • With respect to Claims of general unsecured creditors, the Charlestown Proponents

13  propose to eliminate the distinction between Insiders and Non-Insiders and will pay all such

14  Allowed Claims in full, with interest, on the Effective Date.

15          • With respect to Insider Interests (Class 1F), the Charlestown Proponents propose to

16  modify the applicable plan treatment.  Under the proposed treatment, distributions to

17  MMPI's officers and directors (and affiliated entities holding stock on their behalf) will be

18  held in reserve for 90 days to permit the Reorganized Debtor to conduct a forensic

19  investigation and audit of potential claims.  If the Reorganized Debtor has not brought an

20  action against an Insider within the 90 day period, that Insider's distribution will be released

21  unless the Court upon motion has extended the reserve period.  If an action is commenced to

22  continue to hold the distribution in reserve, the Reorganized Debtor must bring a motion in

23  the Bankruptcy Court (or such other court where the action is pending) under applicable

24  non-bankruptcy law and obtain injunctive relief, protective order attachment or other

25  provisional remedy that would permit holding the distribution in reserve.

26          • With respect to certain creditors, the Charlestown Proponents propose to modify the

27  Charlestown Plan to reflect recent agreements regarding treatment.  Specifically, the

28

1    Charlestown Proponents have reached agreements with Cathay, Chinatrust, CIM Urban RE

2    Fund GP II, LLC, as Successor in Interest to Grand Avenue Lofts, LP ("Grand Avenue

3    Lofts"), and the Los Angeles County Metropolitan Transportation Authority ("MTA").  The

4    proposed modifications incorporate those agreements.

5            The request to change votes pursuant to Rule 3018 is made on the following

6    grounds: the proposed modifications to the Charlestown Plan provide Cathay and Chinatrust with

7    treatment that they have agreed to accept and, accordingly, they now desire to change their

8    respective votes to accept the Charlestown Plan.  Because the balloting permits claimants to express

9    a preference over two plans they have accepted, Cathay has the right to and does express its

10   preference that the Charlestown Plan be confirmed rather than the Debtors' Plan.

11           This Motion is based upon this Notice and Motion; the attached Memorandum of

12   Points and Authorities; the Declarations of Edward McGonagle, Gregory Badura, and Jeffrey A.

13   Dritley; the concurrently filed *Ex Parte* Application; the papers and pleadings on file in this case;

14   and such other evidence as may be presented to the Court.

15           PLEASE TAKE FURTHER NOTICE that the Charlestown Proponents are filing an

16   *ex parte* application for order shortening time.  If the *ex parte* application is granted, the

17   Charlestown Proponents will give notice of the hearing date and time as well as the deadline for

18   filing oppositions.

19   DATED:  May 5, 2011

20                               LESNICK PRINCE LLP

21

22                          By:___/s/ Christopher E. Prince_____
                                  Christopher E. Prince
23                                Attorneys for Charlestown Capital
                                  Advisors, LLC and Hartland Asset
24                                Management Corporation

25

26

27

28

                                    2

1

2

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     THE PROPOSED MODIFICATIONS ................................................................... 1

     A.    The Modified Charlestown Plan Unimpairs Insider Unsecured Creditors............. 2

     B.    The Modified Charlestown Plan Allows The Reorganized Debtor To
          Investigate Claims Against MMPI's Officers And Directors ............................... 2

     C.    The Modified Charlestown Plan Provides Treatments In Accordance With
          Recent Settlement Agreements ............................................................................. 2

          1.    Description of Cathay Bank Treatment............................................. 3

          2.    Description of Chinatrust's Treatment ............................................. 3

          3.    Description of Grand Avenue's Treatment ....................................... 4

          4.    Description of MTA's Treatment....................................................... 4

III.    ARGUMENT ......................................................................................................... 5

     A.    The MTA Plan Treatment Meets The Requirements For Approval Of
          Compromises.......................................................................................................... 5

          1.    The Legal Standard for Approval of Compromises ......................... 5

          2.    The Court Should Approve the Proposed MTA Settlement. ............ 6

     B.    The Proposed Modifications Are Not Material And Should Be Approved .......... 8

          1.    Section 1122 and 1123(a)(1) ........................................................... 8

          2.    Section 1123(a)(2) ........................................................................... 9

          3.    Section 1123(a)(3) and (a)(4) .......................................................... 9

          4.    Section 1123(a)(5) ......................................................................... 10

          5.    Section 1123(a)(6), (a)(7), (a)(8)................................................... 12

     C.    Creditors And Interest Holders Voting To Accept The Charlestown Plan
          Should Be Deemed To Accept The Modified Charlestown Plan........................ 12

     D.    Cathay and Chinatrust Should Be Permitted To Change Their Votes ................ 14

IV.    CONCLUSION .................................................................................................. 15

1

## **TABLE OF AUTHORITIES**

2

### **Cases**

3

*Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59 (B.A.P. 9th Cir.
4     1988)..................................................................................................................13

5  *Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113 (11th Cir.
     2006)..................................................................................................................13
6

*Goodwin v. Mickey Thompson Entm't Group, Inc.* (*In re Mickey Thompson Entm't
7     Group, Inc.*), 292 B.R. 415 (B.A.P. 9th Cir. 2003) ..........................................5

8  In *Mt. Vernon Plaza Community Urban Redevelopment Corp.*, 79 B.R. 305 (Bankr.
     S.D. Ohio 1987) ...............................................................................................13
9

*In re Am. Solar King Corp.*, 90 B.R. 808 (Bankr. W.D. Tex. 1988)............................13
10

*In re Azabu Buildings Co. Ltd.*, 2007 WL 1964306 (Bankr. D. Haw. June 28, 2007) .................13
11

*In re Cajun Elec. Power Coop., Inc.*, 230 B.R. 715 (Bankr. M.D. La. 1999)...............15
12

*In re California Associated Products Co.*, 183 F.2d 946 (9th Cir. 1950) ......................6
13

*In re CGE Shattuck, LLC*, 2000 Bankr. LEXIS 1806 (Bank. D.N.H. Nove. 28, 2000)...............14
14

*In re Dow Corning Corp.*, 192 B.R. 415 (Bankr. E.D. Mich. 1996)...........................5
15

*In re Drexel Burnham Lambert Group*, 140 B.R. 347 (S.D.N.Y. 1992).......................15
16

*In re Equity Funding Corp.*, 416 F. Supp. 132 (C.D. Cal. 1975) ................................6
17

*In re Kellogg Square P'ship*, 160 B.R. 332 (D. Minn. 1993) ....................................14
18

*In re Simplot*, 2007 WL 2479664 (Bankr. D. Idaho Aug. 28, 2007) ...........................13
19

*In re W.T. Grant & Co.*, 699 F.2d 599 (2d Cir. 1983) ...............................................6
20

*In re Walsh Constr.*, 669 F.2d 1325 (9th Cir. 1982) ...................................................6
21

*Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986) ...................5
22

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
23    390 U.S. 414 (1968) ....................................................................................5, 6

24  *Woodson v. Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir.
     1988)....................................................................................................................5

25

26

27

28

1

2   **Statutes**

3   11 U.S.C. § 1122 ..................................................................................................8

4   11 U.S.C. § 1123 ................................................................................5, 8, 9, 10, 12

5   11 U.S.C. § 1127 ...........................................................................................8, 12

6

7   **Rules**

8   Federal Rule Bankruptcy Procedure 3018 .....................................................14

9   Federal Rule of Bankruptcy Procedure 3019 ................................................12

10  Federal Rule of Bankruptcy Procedure 9019 ..................................................5

11

12  **Treatises**

13  *The George Court's 8th Year: Breaking the Logjam*, Gerald F. Uelmen (California
    Lawyer July 2004).......................................................................................7

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

The Charlestown Proponents seek an order authorizing them to further modify their Fourth Amended Chapter 11 Plan of Reorganization as well as an order allowing Cathay and Chinatrust to change their vote to accept the Charlestown Plan.

The Second Modified Fourth Amended Chapter 11 Plan (the "Modified Charlestown Plan") makes the following changes to the First Modified Fourth Amended Chapter 11 Plan filed January 25, 2011 (the "Charlestown Plan"):  First, the Modified Charlestown Plan eliminates the class of insider general unsecured claims (Class 1C-1) and treats all general unsecured claims as unimpaired.  Second, the Modified Charlestown Plan changes the treatment of Insider Interests, so that their cash distributions are held in reserve for 90 days while the Company investigates any actionable misconduct.  Third, the Modified Charlestown Plan accounts for settlement agreements entered with Cathay, Chinatrust, Grand Avenue Lofts and MTA.

As a result of these settlements, Cathay and Chinatrust seek to change their votes to support the Charlestown Plan.  Cathay holds two secured claims totaling approximately $60 million against debtor Alameda Produce LLC, and a corresponding unsecured guaranty claim against MMPI for the same debt.  Chinatrust holds a secured claim against debtor Merco Group – 3185 E. Washington Boulevard LLC for approximately $10 million.  In addition to changing its votes to support the Charlestown Plan, because the balloting permits claimants to express a preference among the plans, Cathay has the right to and does express its preference that the Charlestown Plan be confirmed rather than the Debtors' Plan.

## II.    THE PROPOSED MODIFICATIONS

On June 11, 2011, after Debtors had filed four plans of reorganization, the Court ruled that the Charlestown Proponents would be permitted to file a competing plan.  [Dkt. # 1513.] The Charlestown Proponents filed their Fourth Amended Plan on October 14, 2010.  [Dkt. # 1951.] The Court approved the corresponding disclosure statement for solicitation on October 19, 2010. [Dkt. # 1978.]  On April 15, 2011, the Court approved the Charlestown Proponents' First Modified Fourth Amended Plan.  The Charlestown Proponents now seek approval of their Second Modified Fourth Amended Plan (the "Modified Charlestown Plan").  The proposed modifications are

1  summarized below.

2    A.    **The Modified Charlestown Plan Unimpairs Insider Unsecured
3          Creditors**

4          The current Charlestown Plan separately classifies general unsecured claims of

5  Insiders and Non-Insiders.  The Modified Charlestown Plan eliminates the separate classficiation

6  and treats all general unsecured claims – whether insider or non-insider – as unimpaired.

7    B.    **The Modified Charlestown Plan Allows The Reorganized Debtor To
      Investigate Claims Against MMPI's Officers And Directors**

8          The Charlestown Plan provides for holding distributions to insider equity holders in

9  reserve pending the investigation of such insiders for actionable misconduct.  The current plan

10 proposes to withhold distributions for up to five years.

11         Under the Modified Charlestown Plan, distributions to MMPI's officers and directors

12 on account of their Interests will be held in reserve for 90 days to permit the Reorganized Debtor to

13 conduct a forensic investigation and audit of potential claims.  If the Reorganized Debtor has not

14 brought an action against an Insider within the 90 days, that Insider's distribution will be released

15 unless the Court, on motion, has extended the reserve period.  If an action is commenced, to

16 continue to hold the distribution in reserve, the Reorganized Debtor must bring a motion in the

17 Bankruptcy Court (or such other court where the action is pending) under applicable non-

18 bankruptcy law regarding provisional remedies (e.g., for an injunction, attachment or protective

19 order).

20         If the Bankruptcy Court rules that the reserve period must be less than the 90 days

21 specified or that the Charlestown Plan must give Insiders the same treatment as Non-Insiders, then

22 the Charlestown Plan will provide for the lesser reserve period or will provide Insiders with the

23 same treatment as Non-Insiders as necessary.

24   C.    **The Modified Charlestown Plan Provides Treatments In Accordance
      With Recent Settlement Agreements**

25         The Charlestown Proponents recently entered into settlement agreements with

26

27 Cathay, Chinatrust, Grand Avenue Lofts, and MTA that govern each entity's respective treatment

28

upon plan confirmation.  The Modified Charlestown Plan reflects these agreements as set forth below.

### 1.    Description of Cathay Bank Treatment

In accordance with Cathay's settlement with the Charlestown Proponents, the Modified Charlestown Plan addresses Cathay's secured claims against Alameda Produce and its unsecured guarantee claim against MMPI.  Cathay holds a secured claim arising from a $53 million loan to Alameda Produce  (Class 36A-2) and a secured claim arising from a $10 million loan to Alameda Produce (Class 36A-3), both of which were guaranteed by MMPI.  With respect to the $53 million loan, the Modified Charlestown Plan provides that Cathay will receive deferred Cash payments over a period of four years from the Effective Date in an amount equal to the amount of the Allowed Secured Claim plus interest from the Effective Date at the rate of 5.5%.  The amount of the Allowed Secured Claim will be adjusted to include a retroactive adjustment of interest as of the approval date of the aborted settlement to the Effective Date.

Under the modified treatment, Cathay will be paid in the amount of the monthly accruing interest with the principal balance and any unpaid interest due and payable four years after the Effective Date.  Cathay also will be reimbursed for certain post-petition attorneys' fees and costs incurred after the Court reconsidered its approval of Cathay's settlement with Debtors.

With respect to Cathay's claim arising from its $10 million loan, the Modified Charlestown Plan provides that Cathay will sell the claim to MMPI Acquisition, one of its members or an affiliate of one of its members, on the Effective Date.  The loan will then be modified to provide for repayment in cash four years from the Effective Date.  During the four years prior to the repayment, interest will accrue (but will not be payable) at a rate of 15%.

As a result of the revised treatment and conditioned on its approval, Cathay will support the Charlestown Plan and will express its preference that the Charlestown Plan rather than the Debtors' Plan be confirmed.

### 2.    Description of Chinatrust's Treatment

The Modified Charlestown Plan resolves Chinatrust's approximately $10 million

secured claim in accordance with its settlement with the Charlestown Proponents.  Chinatrust's

secured claim (Class 43A-2) arises from a loan to debtor MG 3185 E. Washington Boulevard.  The

modified treatment provides a cash payment to Chinatrust on the Effective Date equal to unpaid

interest accrued from the petition date to the Effective Date at the rate of 6.94 percent.  Chinatrust

waives any claim it may have to additional post-petition, pre-Effective Date interest at the so-called

"default" rate (approximately $700,000).  Chinatrust will receive deferred cash payments on the

remaining balance of the claim, plus interest at 6.94 percent, over a period of four years from the

Effective Date.  Chinatrust will also retain its "replacement lien" on the South Alameda Properties

and the Cesar Chavez Properties.  With the modifications, Chinatrust wishes to change its vote from

rejecting the Charlestown Plan to accepting the Charlestown Plan.

### 3.    Description of Grand Avenue's Treatment

The Modified Charlestown Plan revises the treatment to Grand Avenue Lofts in

accordance with an agreement reached between Grand Avenue Lofts and the Charlestown

Proponents.  The agreement provides that the rights of debtor Meruelo Maddux — 336 W. 11th

Street, LLC and Grand Avenue Lofts shall pass through unaffected except that the time period for

debtor to perform its obligations under its agreements with Grand Avenue Lofts (as well as the

period for accruing damages and exercising rights under the agreements) are extended to February

1, 2015 and, during the extension, Grand Avenue Lofts will not be obligated to pay rent for use of

the surface parking lot.

Grand Avenue Lofts did not vote on the Charlestown Plan, but has agreed to

withdraw its objection to the plan.

### 4.    Description of MTA's Treatment

Under the proposed treatment with MTA, Reorganized Alameda Produce will enter

into a settlement with the MTA with respect to the eminent domain litigation (the "MTA

Settlement").  Under the terms of the MTA Settlement, Alameda Produce will withdraw its

challenge to MTA's taking of the subject property.  In exchange, MTA will pay Alameda Produce

$9.7 million for the property.  This payment will consist of the $6.3 million already paid to satisfy

4

1  certain lienholders, $2.3 million still on deposit with the Los Angeles Superior Court, accrued

2  interest on that deposit, and a cash payment as necessary to bring the total payments to $9.7 million.

3  **III.**    **ARGUMENT**

4    **A.    The MTA Plan Treatment Meets The Requirements For Approval Of**

5    **Compromises.**

6        **1.    The Legal Standard for Approval of Compromises**

7        Federal Bankruptcy Rule 9019(a) provides that "[o]n motion by the trustee and after

8  notice and a hearing, the court may approve a compromise or settlement . . . ."  Chapter 11 plans

9  may include settlements.  11 U.S.C. Section 1123(b)(3)(A).  Whether brought before the court as a

10  stand-alone transaction or presented as part of a chapter 11 plan, the Rule 9019 standards apply.  *In*

11  *re Dow Corning Corp.*, 192 B.R. 415 (Bankr. E.D. Mich. 1996). The Supreme Court has stated that

12  compromises must be "fair and equitable."  *Protective Comm. for Indep. Stockholders of TMT*

13  *Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

14        The Court of Appeals for the Ninth Circuit held that the determination of whether a

15  proposed settlement agreement meets the fair and equitable standard is a function of the following

16  factors:

17        (1)    the probability of success in the litigation;

18        (2)    the difficulties, if any, to be encountered in the matter of collection;

19        (3)    the complexity of the litigation involved, and the expense, inconvenience and

20            delay necessarily attending it; and

21        (4)    the paramount interest of the creditors and a proper deference to their

22            reasonable views.

23  *Martin v. Kane* (*In re A & C Props.*), 784 F.2d 1377, 1381 (9th Cir. 1986); *accord*, *Woodson v.*

24  *Fireman's Fund Ins. Co.* (*In re Woodson*), 839 F.2d 610, 620 (9th Cir. 1988).

25        The Ninth Circuit has long recognized that "[t]he bankruptcy court has great

26  latitude in approving compromise agreements."  *Woodson*, 839 F.2d at 620; *Goodwin v. Mickey*

27  *Thompson Entm't Group, Inc.* (*In re Mickey Thompson Entm't Group, Inc.*), 292 B.R. 415, 420

28  (B.A.P. 9th Cir. 2003).  To be fair and equitable, a proposed compromise need only "fall within

5

1    the reasonable range of litigation possibilities." *TMT*, 390 U.S. at 424-425.  *See also In re*

2    *California Associated Products Co.*, 183 F.2d 946, 949-950 (9th Cir. 1950); and *In re Equity*

3    *Funding Corp.* 416 F. Supp. 132, 145 (C.D. Cal. 1975).  A court, in reviewing a proposed

4    settlement, is not "to decide the numerous questions of law and fact . . . but rather to canvass

5    these issues and see whether the settlement falls below the lowest point in the range of

6    reasonableness." *In re W.T. Grant & Co.*, 699 F.2d 599, 608 (2d Cir. 1983).  A "mini-trial" on

7    the merits of the underlying cause of action is not required and should not be undertaken.  *In re*

8    *Walsh Constr.*, 669 F.2d 1325, 1328-29 (9th Cir. 1982)

9               **2.        The Court Should Approve the Proposed MTA Settlement.**

10              The proposed MTA settlement is fair and equitable under the *A & C Properties*

11   factors.

12                    a)        Probability of Success

13              "Success" in the context of the MTA litigation is, in itself, difficult to define.

14   Debtor Alameda Produce is currently seeking the return of property taken by MTA under

15   relevant eminent domain laws.  If Alameda Produce is successful, however, it would expose itself

16   to a multi-million dollar judgment that it could not satisfy, as set forth below.  In other words,

17   debtor Alameda Produce cannot afford to succeed in the MTA litigation unless it also succeeds in

18   asserting counter-claims against the MTA sufficient to offset the $6.5 million debt it would owe.

19              Success in any litigation is uncertain, but particularly so in this case.  Alameda

20   Produce won at the trial court level, but the trial court's judgment was overturned on appeal by a

21   unanimous panel of the California Court of Appeal.  The decision of the Court of Appeal is

22   attached to this Motion as Exhibit 1.[1]  Alameda Produce petitioned the California Supreme Court

23   for review, and the court granted the petition.

24

25

26   _____

27   [1] The Charlestown Proponents request that this Court take judicial notice of the procedural facts of
     the MTA litigation.

28

6

1    These procedural facts alone suggest that the probability of success is highly

2    uncertain.  From April 1996 through March 2004, the California Supreme Court issued 634

3    published opinions affirming or reversing rulings of the California courts of appeal, and in 45.9

4    percent of the cases, the appellate court was affirmed.[2]

5    Substantively, the parties have submitted opening briefs to the California Supreme

6    Court and MTA's argument, at a minimum, is potent.  MTA's position is that Alameda Produce

7    waived its challenge to the MTA's taking when it voluntarily obtained the benefit of the MTA's

8    $6.3 million deposit to pay its secured lenders.  This argument is made all the more persuasive

9    because the so-called secured loans were a sham, and Alameda Produce and affiliates were the

10    actual beneficiaries of the $6.3 million payment.  The parties' opening briefs are attached to this

11    motion as Exhibits 2 and 3.

12    Further complicating matters is the difficulty in predicting the outcome even if

13    MTA were to prevail on appeal.  Were the matter returned to the trial court, MTA might succeed

14    in establishing the appropriate level of compensation at $6.3 million used to pay Alameda

15    Produce's lenders.  Alternatively, Alameda Produce might succeed in obtaining additional

16    compensation.  Alameda Produce itself, however, valued the property at $9.7 million.  [*See*

17    Alameda Produce Market Motion for Increase of Deposit for Probably Just Compensation,

18    attached as Exhibit 4.][3]  In that sense, the proposed MTA Settlement gives Alameda Produce

19    what it would receive if it were successful in the valuation phase of remanded litigation.

b)    Complexity of Litigation

20

21    As one would expect of a matter that has gone all the way to the California

22    Supreme Court, the MTA litigation is enormously complex, and the delays and expense

23    associated with it are substantial.  The original eminent domain complaint was filed in 2004,

24    several years before MMPI's initial public offering.  Issues presented at the trial court included

25

26    [2] *The George Court's 8th Year: Breaking the Logjam*, Gerald F. Uelmen (California Lawyer July
2004).

27    [3] In a later filing, Alameda Produce asserted that the value of the property was $10 million.  [*See*
Ex. 5 (Further Briefing In Support of Motion to Increase Deposit of Probably Compensation).]

28

1    the propriety of the taking itself, the appropriate level of compensation and, of course, the waiver

2    issue currently on appeal.  [*See* Ex. 1 (Court of Appeal Decision).]

3              With respect to costs, in the first quarter of 2011 alone, Debtors' paid the Oliver

4    Sandifer firm (the attorneys handling the litigation) nearly $180,000.  [*See* Dkt. # 3043 (Notice of

5    Ordinary Course Professional Payments).]

6                        c)       Best Interest of the Creditors

7              The proposed MTA settlement is in the best interests of the bankruptcy estate and

8    all creditors and Interest Holders because (i) Debtors' desperately need cash, and this settlement

9    provides cash to the Alameda Produce estate; (ii) the settlement resolves long-standing, costly

10    litigation; and (iii) the settlement avoids the potentially devastating effect of "success" in the

11    litigation, i.e., the entry of a $6.3 million judgment that debtor Alameda Produce cannot satisfy.

12    **B.       The Proposed Modifications Are Not Material And Should Be
                 Approved**

13

14              Section 1127(a) permits modifications to a plan of reorganization as follows:

15              The proponent of a plan may modify such plan at any time before

16              confirmation, but may not modify such plan so that such plan as modified

17              fails to meet the requirements of sections 1122 and 1123 of this title.

18              After the proponent of a plan files a modification of such plan with the

19              court, the plan as modified becomes the plan.

20           In compliance with Section 1127(a), the Charlestown Proponents' proposed

21    modifications to the Charlestown Plan comply with Sections 1122 and 1123 of the Code.

22              **1.       Section 1122 and 1123(a)(1)**

23              The proposed modifications do not affect the designation or composition of classes,

24    except to eliminate the distinction between Insiders and Non-Insiders with respect to general

25    unsecured claims and to separately classify MTA's contingent claim against debtor Alameda

26    Produce (Class 36D).  The Modified Charlestown Plan, though, moves Cathay's unsecured

27    guaranty claim against MMPI from the class of settling guaranty claimants (Class 1C-2B) to the

28

8

class of non-settling guaranty claimants (Class 1C-2A) to conform to the Court's order dated February 9, 2011 that unwound Cathay's settlement with Debtors. [*See* Dkt. # 3018.] The shifting of Cathay's status is not a result of the proposed modifications, but is reflected in the Modified Charlestown Plan.

### 2.    Section 1123(a)(2)

Section 1123(a)(2) requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). The Modified Charlestown Plan complies with this requirement. The only change from the current plan is to specify that insider unsecured creditor claims are unimpaired under the plan.

### 3.    Section 1123(a)(3) and (a)(4)

The Modified Charlestown Plan specifies the treatment accorded to Cathay, Chinatrust, Grand Avenue Lofts, and MTA, and provides the same treatment for all claims within a given class. The proposed modifications allocate separate classes – each consisting of a single claim – for the secured claims of Cathay, Chinatrust, and Grand Avenue Lofts, as well as MTA's contingent claim. Because Cathay, Chinatrust, Grand Avenue Lofts, and MTA are the only members of their respective classes, the proposed modification will not affect the treatment of any other creditors in the same class. With respect to Cathay's guaranty claim against MMPI, Cathay's claim is added to the non-settling class of guaranty claimants – all of which now support the Charlestown Plan.

Under the modifications, Cathay will no longer receive the treatment afforded by its prior settlement with Debtors (which was unwound by the Court), and Chinatrust and Grand Avenue Lofts will no longer receive the Common Secured Lender Treatment.

The same logic applies to the class of insider equity holders (Class 1F). The proposed modifications reduce the time the Company may withhold cash distributions to insider stockholders, absent a court order extending the time for further investigation of actionable misconduct. This modified treatment will affect all members of this class.

Finally, with respect to general unsecured claims, the Modified Charlestown Plan

1    provides that all holders of such claims will be unimpaired and will therefore receive the same

2    treatment.

3            Accordingly, the proposed modifications do not affect the treatment of impaired

4    classes of claims or interests except for the specific classes consisting entirely of the single claims

5    of held by Cathay, Chinatrust, Grand Avenue Lofts, or MTA, or the specific class of insider equity

6    holders.  The Modified Charlestown Plan describes the treatment for each of these classes, and thus

7    satisfies Sections 1123(a)(3) and 1123(a)(4).

8            **4.        Section 1123(a)(5)**

9            As to Section 1123(a)(5), the proposed modifications will have little or no effect on

10   the means for implementing the Charlestown Plan and its feasibility.  The changes to Insider

11   treatment do not affect the Debtors' cash flows or cash balances because the existing plan included

12   a cash reserve for those distributions and, therefore, accelerated distribution to Insiders does not

13   affect the Debtors' cash balances.  The other modifications have minor impacts on the Debtors'

14   cash flows, but each individual modification has only a minor effect on the overall economics of

15   the Charlestown Plan and the net impact of all of the proposed modifications together is even

16   smaller.

17           The modified treatment of Chinatrust's secured claim alters the economics of the

18   Charlestown Plan in that it requires that the Reorganized Debtors' pay approximately $1.4 million

19   in accrued interest on the Effective Date (reducing the Reorganized Debtors' projected cash

20   balance), and because it increases the post-Effective Date interest rate from the currently proposed

21   5.25% to 6.94% (reducing the Reorganized Debtors' net cash flow).  [*See* Declaration of Edward

22   McGonagle ("McGonagle Decl."), ¶3.]  The actual effect on projected cash balance, however, is

23   less than the full $1.4 million because the Reorganized Debtor will no longer be paying 6 months

24   interest in advance on the Effective Date (as previously provided under the Common Secured

25   Lender Treatment).  [*Id.* at , ¶4.]  Similarly, the net effect of the increased interest rate is reduced

26   because of the initial payment and because Chinatrust is waiving approximately $700,000 in

27   default interest.  [*Id.* at , ¶3.]  Specifically, because the initial principal balance is approximately

28

10

1  $2.1 million lower ($1.4 million in cure payments and $700k in waived default interest), annual

2  interest payments are nearly the same under the current and proposed interest rates.  [*Id.*]

3  The Cathay treatment also has a minimal impact on both initial cash balance and

4  cash flows.  [*See* McGonagle Decl., ¶¶5-6.]  With respect to Cathay's $53 million loan, the

5  principal balance will be increased by approximately $500,000, and the interest rate will be

6  increased from 5% to 5.5%.  [*Id*. at ¶5.]  With respect to Cathay's $10 million loan, it will be sold

7  and modified to provide for a higher interest rate of 15%.  [*Id.*]  The effects of these modifications

8  are also minimized because the term of the loans will increase from 3 years to 4 years, and the

9  interest on the $10 million loan will accrue, but will not be payable during the 4 year term.  [*Id.*]

10  Because the increase in interest payments on the $53 million loan is only slightly more than the

11  deferred interest under the $10 million loan, net cash flow under the Modified Charlestown Plan

12  will only be reduced by $29,000 per month as compared to the current plan.  [*Id*. at ¶6.]  The final

13  payout will be higher under the Modified Charlestown Plan than under the current plan, but the

14  Reorganized Debtors will have an additional year to re-finance and/or to sell property to raise cash.

15  [*Id.*]  Most importantly, the modification avoids the need for a separate cramdown of Cathay and

16  the attendant delay.  Thus, the modified treatment of Cathay's secured claims makes the Modified

17  Charlestown Plan even more likely to succeed than the current plan.

18  The Grand Avenue Lofts settlement has no meaningful impact on the Charlestown

19  Plan during the projection period.  [*See* McGonagle Decl., ¶¶7-8.]  The Reorganized Debtors may

20  incur some costs in pre-construction during the projection period, but these would be minor.  [*Id*.

21  at¶8.]  Construction of the parking garage will require cash, but failure to reach agreement with

22  Grand Avenue Lofts would likely result in a loss off the property as well as a claim for damages in

23  a similar amount.  Moreover, the cost of construction will not be incurred until the Reorganized

24  Debtors have stabilized and built a healthy balance sheet.

25  The MTA Settlement has, of course, a substantially positive effect on the

26  Reorganized Debtors.  It reduces ongoing professional fees and brings $3.4 million in cash to the

27  Reorganized Alameda Produce.  The cash provided under the MTA Settlement more than offsets

28

11

1    the cash outlays under the Cathay and Chinatrust settlements.  Accordingly, the net impact of the

2    proposed modifications makes the Modified Charlestown Plan more likely to succeed as compared

3    to the current plan.

4              **5.       Section 1123(a)(6), (a)(7), (a)(8)**

5              The proposed modifications will have no effect on the existing provisions of the

6    Charlestown Plan that provide for amendments to the companies' charters or the Reorganized

7    MMPI's selection of officers and directors.  Section 1123(a)(8) is inapplicable.

8              For the foregoing reasons, the Modified Charlestown Plan complies with Section

9    1127(a) and should be approved.

10   **C.       Creditors And Interest Holders Voting To Accept The Charlestown**
         **Plan Should Be Deemed To Accept The Modified Charlestown Plan**
11

12             Section 1127(d) of the Bankruptcy Code provides in relevant part as follows:

13             Any holder of a claim or interest that has accepted or rejected a plan is

14             deemed to have accepted or rejected, as the case may be, such plan as

15             modified, unless, within the time fixed by the court, such holder changes

16             such holder's previous acceptance or rejection.

17             Rule 3019(a) of the Federal Rules of Bankruptcy Procedure provides as follows:

18             In a chapter 9 or chapter 11 case, after a plan has been accepted and before

19             its confirmation, the proponent may file a modification of the plan. If the

20             court finds after hearing on notice to the trustee, any committee appointed

21             under the Code, and any other entity designated by the court that the

22             proposed modification does not adversely change the treatment of the

23             claim of any creditor or the interest of any equity security holder who has

24             not accepted in writing the modification, it shall be deemed accepted by

25             all creditors and equity security holders who have previously accepted the

26             plan.

27             In this circuit, material plan modifications "require a formal disclosure statement and

28   court approval." *Andrew v. Coopersmith (In re Downtown Inv. Club III)*, 89 B.R. 59, 65 (B.A.P.

9th Cir. 1988).  A modification to a plan of reorganization is considered material and triggers a re-solicitation requirement if it "so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance."  *In re Simplot*, 2007 WL 2479664, at *11 (Bankr. D. Idaho Aug. 28, 2007) (quoting *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)).  A creditor or interest holder that accepted the plan would be likely to reconsider its acceptance only if the plan modification materially and adversely changes the way that claim or interest holder is treated.  *Id.* (quoting *Enron Corp. v. New Power Co. (In re New Power Co.)*, 438 F.3d 1113, 1117-18 (11th Cir. 2006)); *In re Azabu Buildings Co. Ltd.*, 2007 WL 1964306, at *15 (Bankr. D. Haw. June 28, 2007) (noting that plan modifications that "do not adversely affect or change the treatment of any other Claims or Interests . . . do not require additional disclosure . . . or re-solicitation of votes . . . nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan").  In *Mt. Vernon Plaza Community Urban Redevelopment Corp.*, 79 B.R. 305 (Bankr. S.D. Ohio 1987), the plan proponents modified their plan to add a new co-proponent, increase the amount of administrative expenses to be paid upon the sale of certain properties, change provisions regarding the repayment of notes held by the debtors, and change provisions regarding the assumption and rejection of certain agreements.  The court determined as follows:

> None of the changes negatively affects the repayment of creditors, the length of the Plan, or the protected property interests of parties in interest. Taken as a whole, the Court finds that the proposed modifications do not adversely change the treatment of the claim of any creditor under the Plan. Accordingly, such modifications do not require circulation of a further modified disclosure statement. All creditors previously accepting the plan are, therefore, deemed to have accepted the plan as now modified.

*Id.* at 306.

> Here, the proposed modifications are not material to any person or entity other than the party directly affected by the modification – they would not cause any person or entity that

1    voted in favor of the Charlestown Plan to now reject it.  Cathay, Chinatrust, Grand Avenue Lofts,

2    and MTA are receiving modified treatment based on settlement agreements with each entity, and

3    they thus have agreed to accept the treatment afforded each's claim under the Modified

4    Charlestown Plan.  The proposed modifications would not impact the votes of equity holders.  As a

5    preliminary matter, the modifications will not affect the cash out price offered by the Charlestown

6    Plan of $.35 a share.  Additionally, the settlements with Cathay, Chinatrust, Grand Avenue Lofts

7    and MTA make the Charlestown Plan more feasible because, as described above, they improve

8    initial cash balance and interim cash flow as well as extending the time to repay significant debt for

9    additional year.  Although the agreements change the treatment of these particular creditors, the

10   effect of the new treatments is insignificant in the context of this overall plan.  In short, no equity

11   holder in MMPI would decide to vote against the Charlestown Plan as a result of the revised

12   treatments to secured creditors of a few property level debtors.

13          With respect to Insiders, the Modified Charlestown Plan provides more favorable

14   treatment than the current plan.  In any event, Insiders voted against the Charlestown Plan.

15          Based on the foregoing, the proposed modifications should be deemed to be non-

16   material and the Court should authorize the Modified Charlestown Plan without requiring re-

17   solicitation of votes

18          **D.      <u>Cathay and Chinatrust Should Be Permitted To Change Their Votes</u>**

19          "[F]or cause shown, the court after notice and hearing may permit a creditor or

20   equity holder to change or withdraw an acceptance or rejection" on a plan of reorganization.  FBR

21   3018(a).  "The test for determining whether cause has been shown should not be a difficult one to

22   meet.  As long as the reason for the vote change is not tainted, the change of vote should usually be

23   permitted."  *In re CGE Shattuck, LLC*, 2000 Bankr. LEXIS 1806, at *5.  (Bank. D.N.H. Nove. 28,

24   2000) (citing *In re Kellogg Square P'ship*, 160 B.R. 332, 334 (D. Minn. 1993)).  In other words,

25   "[t]he court must only ensure that the change is not improperly motivated."  *Id*.  "In short, the vote

26   should be changed in order to allow the voting entity to intelligently express its will."  *Kellogg*, 160

27   B.R. at 334.

28

1         "It is well established that settlement agreements are favored under the law

2 especially in bankruptcy matters." *In re Drexel Burnham Lambert Group*, 140 B.R. 347, 350

3 (S.D.N.Y. 1992). Accordingly, a settlement between a plan proponent and a creditor should be

4 sufficient cause to authorize a change in vote. *In re Cajun Elec. Power Coop., Inc.*, 230 B.R. 715,

5 744 (Bankr. M.D. La. 1999).

6         Cathay and Chinatrust have reached agreements with the Charlestown Proponents

7 regarding treatment under the Charlestown Plan, and they now support the Charlestown Plan as a

8 result. [*See* Declaration of Gregory Badura, ¶¶3-4; Declaration of Jeffrey A. Dritley, ¶¶3-4.]

9 Accordingly, the Charlestown Proponents and Cathay and Chinatrust now seek an order authorizing

10 Cathay and Chinatrust to change their votes to accept the Charlestown Plan. Cathay, which also

11 voted to accept the Debtors' Plan, prefers the Charlestown Plan. Since the balloting allowed

12 claimants to express a preference among the plans, Cathay should be permitted to change its votes

13 <u>and</u> express a preference for the Charlestown Plan.

14 **IV.**     **<u>CONCLUSION</u>**

15         For the foregoing reasons, the Charlestown Proponents request that the Court authorize them

16 to modify the Charlestown Plan and determine that the proposed modification does not require re-

17 solicitation thereof. The Charlestown Proponents also request that the Court authorize Cathay and

18 Chinatrust to change their votes from rejecting the Charlestown Plan to accepting the Charlestown

19 Plan.

20 DATED: May 5, 2011

21                                LESNICK PRINCE LLP

22

23                          By:   /s/ Christopher E. Prince

                                 Christopher E. Prince

24                                Attorneys for Charlestown Capital

                               Advisors, LLC and Hartland Asset

25                                Management Corporation

26

27

28