1  CHRISTOPHER E. PRINCE (State Bar No. 183553)
   cprince@lesnickprince.com
2  MATTHEW A. LESNICK (SBN 177594)
   matt@lesnickprince.com
3  ANDREW R. CAHILL (SBN 233798)
   acahill@lesnickprince.com
4  LESNICK PRINCE LLP
   185 Pier Avenue, Suite 103
5  Santa Monica, CA 90405
   Telephone: (213) 493-6496
6  Facsimile:  (213) 493-6596

7  Attorneys for
   Charlestown Capital Advisors, LLC and
8  Hartland Asset Management Corporation

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11             SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| 12  In re | Case No. 1:09-bk-13356-KT |
| 13 | Chapter 11 |
| 14  MERUELO MADDUX PROPERTIES, INC., et al., | CHARLESTOWN CAPITAL ADVISORS, LLC'S AND HARTLAND ASSET MANAGEMENT CORPORATION'S SECOND MODIFIED FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 14, 2010 |
| 15           Debtor. | |
| 16 | |
| 17 | Confirmation Hearing |
| 18 | Date:      January 27, 2011 |
| | Time:      9:30 a.m. |
| 19 | Place:     Courtroom 301 |
| | 21041 Burbank Blvd. |
| 20 | Woodland Hills, CA 91367 |

21

22

23

24

25

26

27

28

35412

# I.

# INTRODUCTION

Charlestown Capital Advisors, LLC and Hartland Asset Management, Inc. (the "Charlestown Proponents") propose the following coordinated plan of reorganization (the "Charlestown Plan") for Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI") and its 53 related debtor entities (collectively, the "Debtors").  The Disclosure Statement Accompanying Charlestown Proponents' Fourth Amended Chapter 11 Plan of Reorganization of Meruelo Maddux Properties, Inc., *et al*. dated October 14, 2010 (the "Charlestown Disclosure Statement") contains background regarding the Debtors and a summary of the Charlestown Plan and related matters. The Charlestown Disclosure Statement has been approved by the Bankruptcy Court overseeing the Debtors' bankruptcy cases.

The Charlestown Plan is a coordinated plan of reorganization, but not a consolidated plan of reorganization.  Except as specifically noted, the Debtors will remain separate entities if the Charlestown Plan is confirmed in whole or in part, and the debts and liabilities of each Debtor will remain attributable to that debtor alone.  Accordingly, the Debtors' Claims and Interests are classified on a Debtor by Debtor basis, votes will be tabulated on a Debtor-by-Debtor basis, and the Charlestown Plan will be confirmed on a Debtor-by-Debtor basis.

The Charlestown Proponents encourage creditors and stockholders (i.e., Holders of Claims and Interests) to read the Charlestown Plan and the Charlestown Disclosure Statement before voting to accept or reject the Charlestown Plan.  The Charlestown Plan and Disclosure Statement are included in a package of materials sent to the Debtors' creditors and stockholders.  No materials, other than materials included in this package of materials, have been approved by the Bankruptcy Court for distribution to creditors and stockholders.

The Charlestown Proponents own stock in MMPI, but they are not otherwise affiliated with the company.  They do not have access to the Debtors' employees, advisors, attorneys or internal documents.  Therefore, the Charlestown Plan and the Charlestown Disclosure Statement include information based on the Debtors' statements in publicly available documents (such as filings in these bankruptcy cases).  Except as specifically provided, the Charlestown Proponents make no representations regarding the accuracy of the Debtors' statements.

35412

1    Except for statements attributable to the Debtors or where otherwise noted, statements in this

2  Charlestown Plan and the accompanying Charlestown Disclosure Statement are attributable to the

3  Charlestown Proponents and not to any other party.

4

5                                                    II.

6              **DEFINITION OF TERMS AND RULES OF INTERPRETATION**

7        **A.    Definition of Terms**

8

9        Unless otherwise defined herein, or the context otherwise requires, the following terms shall

have the respective meanings set forth below:

| | |
|---|---|
| 620 S. Gladys Avenue Encumbered Real Property | means the real property located at 620 S. Gladys Avenue, 830-838 6th Street, and 647-649 Ceres Avenue, Los Angeles, California, APNs 5147-030-005, 5147-030-006, 5147-030-007, 5147-030-008, 5147-030-009, 5147-030-037, 5147-030-050, 5147-030-053, 5147-030-054, 5147-030-055, 5147-030-061 and 5147-030-062. |
| 620 S. Gladys Avenue Unencumbered Real Property | means the real property located at 643 and 644 South Gladys Avenue, Los Angeles, California, APNs 5147-030-064 and 5147-029-045. |
| 729 E. Temple Street Real Property | means the real property located at 729 E. Temple Street, 718-736 Jackson Street, and 223 Center Street, Los Angeles, California, APNs 5173-015-006, 5173-014-001 and 5173-014-002. |
| 788 S. Alameda | means 788 South Alameda, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09¬bk-13395. |
| 788 S. Alameda Real Property | means the real property located at 788 South Alameda Street, Los Angeles, California, APN 5166-031-014. |
| 815 E. Temple Street Real Property | means the real property located at 815 E. Temple Street, 210 & 234 Center Street, and 740 Jackson Street, Los Angeles, California, APNs 5173-022-001, 5173-022-002, 5173-022-004, 5173-022-005 and 5173¬015-003. |

35412

| 905 8th Street | means 905 8th Street, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13396. |
| 905 8th Street Real Property | means the real property located at 905 E. 8th Street, Los Angeles, California, APN 5146-029-039. |
| 1119 S. Olive Street Real Property | means the real property located at 1117-1119 S. Olive Street, Los Angeles, California, APNs 5139-020-006 and 5139-020-007. |
| 1124 S. Olive Street Real Property | means the real property located at 1124 S. Olive Street, and 218 W. 11th Street, Los Angeles, California, APNs 5139-019-011 and 5139¬019-015. |
| 1339 E. 7th Street Real Property | means the real property located at 1339 E. 7th Street, Los Angeles, California, APNs 5147-035-004, 5147-035-005, 5147-035-006. 5147¬035-007 and 5147-035-008. |
| 1248 Figueroa Street | means 1248 Figueroa Street, LLC. |
| 1248 Figueroa Street Collateral | means the MG 2529 Santa Fe Avenue Real Property |
| 1500 Griffith Avenue Real Property | means the real property located at 1467 and 1500 Griffith Avenue and 833 E. 15th Street, Los Angeles, California, APNs 5132-025-018, 5132-026-028 and 5132-026-030. |
| 1510 Griffith Avenue Real Property | means the real property located at 1510 Griffith Avenue, Los Angeles, California, APNs 5132-025-004, 5132-025-006 and 5132-025-017. |
| 2131 Humboldt Encumbered Real Property | means the real property located at 2131 Humboldt Street, Los Angeles, California, APNs 5447-009-018 and 5447-009-019. |
| 2131 Humboldt Unencumbered Real Property | means the real property located at 350-354 N. Avenue 21 Street, Los Angeles, California, APN 5447-009-020, and at 336-346 N. Avenue 21, Los Angeles, California, APNs 5447-009-007, 5447-009-008, and 5447-009-009. |
| 2640 Washington Boulevard | means 2640 Washington Boulevard, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13397. |
| 2640 Washington Boulevard Real Property | means the real property located at 2640 E. Washington Boulevard, Los Angeles, California, APN 5168-017-012. |

4

35412

| | |
|---|---|
| Administrative Claim | means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under Section 503(b) and entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the respective businesses of the Debtors, any indebtedness or obligations incurred or assumed by any of the Debtors in connection with the conduct of their respective businesses, including, without limitation, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under Section 1930 of chapter 123 of Title 28 of the United States Code. |
| Alameda Produce Market | means Alameda Produce Market, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13394. |
| Alameda Produce Market Encumbered Real Property | means the real property located at 1312 E. 7th Street, Los Angeles, California, APN 5146-009-003 (the "7th Street Produce Market"), and the property located at 761 Terminal Street, Los Angeles, California, APNs 5146-009-004 and 5146-009-005 ("Alameda Square"). |
| Alameda Produce Market Unencumbered Real Property | means the real property located at 1215 E. 7th Street, Los Angeles, California, APN 5147-034-015. |
| Allowed Claim or Allowed Interest | means a Claim against or Interest in a Debtor to the extent that<br>a.     a proof of the Claim or Interest<br>i.     was timely Filed and served upon a Debtor and no objection to the Claim or Interest is Filed within the time fixed by the Bankruptcy Court for such objections;<br>ii.     is deemed Filed under applicable law (e.g., filed on the Schedules as noncontingent, nondisputed and liquidated) or pursuant to a Final Order of the Bankruptcy Court and no objection to the Claim or Interest is Filed within the time fixed by the Bankruptcy Court for such objections;<br>iii.     is Allowed pursuant to subparagraph b of this definition; or<br>iv.     is Allowed under the Charlestown Plan.<br>b.     If a Debtor or other party in interest files |

5

| | |
|---|---|
| | an objection to a proof of Claim or Interest within a time fixed by the Bankruptcy Court, the Claim or Interest shall be Allowed to the extent of<br>i.  any amount of such Claim or Interest to which no party objected; or<br>ii.  any amount otherwise authorized by Final Order or the Charlestown Plan. |
| Allowed Class Claim | means an Allowed Claim in the particular Class described. |
| Allowed Class Interest | means an Allowed Interest in the particular Class described. |
| Allowed Priority Tax Claim | means a Tax Claim against a Debtor to the extent that<br>a.  a proof of the Tax Claim<br>i. was timely Filed and served upon a Debtor and no objection to the Tax Claim is Filed within the time fixed by the Bankruptcy Court for such objections; or<br>ii.  is deemed Filed under applicable law (e.g., filed on the Schedules as noncontingent, nondisputed and liquidated) or pursuant to a Final Order of the Bankruptcy Court and no objection to the Tax Claim is Filed within the time fixed by the Bankruptcy Court for such objections; or<br>iii.  is Allowed pursuant to subparagraph b of this definition; or<br>iv.  is Allowed under the Charlestown Plan.<br>b.  If a Debtor or other party in interest files an objection to a proof of Tax Claim within a time fixed by the Bankruptcy Court, the Tax Claim shall be Allowed to the extent of<br>i. any amount of such Tax Claim to which no party objected; or<br>ii.  any amount otherwise authorized by Final Order or the Charlestown Plan. |
| APN | means a county assessor's parcel number. |
| Ballots | means each of the ballot forms distributed with the Disclosure Statement to each Holder of an Impaired Claim or Impaired Interest (other than to Holders of Impaired Claims or Impaired Interests deemed to have rejected the Charlestown Plan or otherwise not entitled to vote on the Charlestown Plan), upon which is to be indicated, among other things, acceptance or rejection of the Charlestown Plan. |
| Balloting Procedures Order | Means the order of the Bankruptcy Court governing the solicitation and tabulation of |

35412

| | | |
|---|---|---|
| 1 | | votes from Holders of Impaired Claims and Interests. |
| 2 3 4 | Bankruptcy Code | means Title 11 of the United States Code, 11 U.S.C. § 101 et seq., as in effect on the date hereof or hereafter amended if such amendments are made applicable to the Chapter 11 Cases. |
| 5 6 7 8 9 | Bankruptcy Court | means, (a) the United States Bankruptcy Court for the Central District of California (San Fernando Valley Division), having jurisdiction over the Chapter 11 Cases; (b) to the extent there is no reference pursuant to Section 157 of Title 28 of the United States Code, the United States District Court for the Central District of California; and (c) any other court having jurisdiction over the Chapter 11 Cases. |
| 10 11 12 | Bankruptcy Rules | means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, and local rules of the Bankruptcy Court, as the context may require. |
| 13 | BofA | means Bank of America, N.A. |
| 14 15 16 17 | BofA Collateral re MMP 760 S. Hill Street | means, collectively, [1] the MMP 760 S. Hill Street Real Property and, [2] approximately $6,560,893 in cash held in BofA account number 1459360078, approximately $200,000 of which the Debtors contend is not BofA collateral. |
| 18 | BofA Collateral re MG Southpark | means the MG Southpark Real Property. |
| 19 20 21 | Business Day | means any day on which commercial banks are open for business, and not authorized to close, in the City of Los Angeles, California, except any day designated as a legal holiday in Bankruptcy Rule 9006(a). |
| 22 | Canpartners | means Canpartners Realty Holding Co., IV LLC. |
| 23 24 25 26 27 | Berkadia | means Berkadia Commercial Mortgage, Inc. (as successor to Capmark Finance, Inc.), special servicer for Wells Fargo Bank, N.A., successor by consolidation to Wells Fargo Bank Minnesota, N.A. as Trustee for the Registered Certificate holders of GMAC Commercial Mortgage Securities, Inc., Mortgage Pass-Through Certificates 2002-Cl. |
| 28 | Berkadia Collateral | means, collectively, [1] the Santa Fe Commerce Center Real Property and [2] cash deposited by |

35412

7

| | | |
|---|---|---|
| | | Santa Fe Commerce Center with and held by Berkadia for the benefit of and account of Santa Fe Commerce Center in the approximate amount of $600,000. |
| | Cash | means legal tender of the United States of America and equivalents thereof. |
| | Cash Election Holders | Holders of MMPI Interests who, under the terms of the Charlestown Plan, elect to receive a cash distribution on account of their Interests. |
| | Cathay | means Cathay Bank, a California banking corporation. |
| | CBT | means California Bank & Trust. |
| | CBT Collateral | means, collectively, [1] the 788 S. Alameda Real Property and [2] the cash located in CBT account number 2120351811 in the approximate amount of $7,514. |
| | Chamlian | means, collectively, Vahan Chamlian and Anoush Chamlian. |
| | Chamlian Collateral | Chamlian Collateral   means the 2131 Humboldt Encumbered Real Property. |
| | Chapter 11 Cases | means the Chapter 11 cases of the Debtors. |
| | Chinatown Plan | means any plan of reorganization Confirmed in the Chapter 11 Case of Chinatown. |
| | Chinatown | means Meruelo Chinatown, LLC, a California limited liability company, a Debtor in Possession in Chapter 11 Case number 1:09-bk-21622. |
| | Chinatrust | means Chinatrust Bank, USA. |
| | Chinatrust Collateral | means the MG 3185 E. Washington Boulevard Encumbered Real Property. |
| | Class | means a class of Claims or Interests designated pursuant to the Charlestown Plan. |
| | Clerk | means the Clerk of the Bankruptcy Court. |
| | Collateral | means any property or interest in property of a Debtor's Estate subject to a Lien to secure the payment or performance of a Claim as of the Petition Date, which Lien is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law or otherwise invalid under the Bankruptcy Code or |

8

35412

| | | |
|---|---|---|
| 1 | | applicable non-bankruptcy law. |
| 2 | Commencement Date | means March 26, 2009 for MMP 12385 San Fernando Road and March 27, 2009 for 788 S. Alameda, 905 8th Street, 2640 Washington Boulevard, Alameda Produce Market, MBP, Merco Group, Meruelo Farms, Meruelo Wall Street, MG 4th Street Center, MG 146 E. Front Street, MG 425 W. 11th Street, MG 620 Gladys Avenue, MG 1211 E. Washington Boulevard, MG 1308 S. Orchard, MG 1500 Griffith Avenue, MG 2001-2021 W. Mission Boulevard, MG 2040 Camfield Avenue, MG 2529 Santa Fe Avenue, MG 3185 E. Washington Boulevard, MG 5707 S. Alameda, MG Ceres Street Produce, MG Little J, MG Overland Terminal, MG Southpark, MM 3rd and Omar Street, MM 230 W. Avenue 26, MM 336 W. 11th Street, MM 420 Boyd Street, MM 500 Mateo Street, MM 555 Central Avenue, MM 817-825 S. Hill Street, MM 915-949 S. Hill Street, MM 1000 E. Cesar Chavez, MM 2415 E. Washington Boulevard, MM 5500 Flotilla Street, MM Construction, MM Mission Boulevard, MMP 306-330 N. Avenue 21, MMP 760 S. Hill Street, MMP 1009 N. Citrus, MMP 1060 N. Vignes, MMP 1919 Vineburn, MMP 2131 Humboldt Street, MMP 2951 Lenwood Road, MMPLP, MMP Ventures, National Cold Storage, Santa Fe & Washington Market, Santa Fe Commerce Center, and Wall Street Market, the date on which each of the preceding Debtors filed their respective petitions for relief commencing the Chapter 11 Cases. |
| 18 | Confirmation | means the conclusion of the Confirmation Hearing. |
| 20 | Confirmation Date | means the date on which the Confirmation Order is entered on the Docket. |
| 21 | Confirmation Hearing | means the hearing to consider confirmation of the Charlestown Plan pursuant to Section 1128 of the Bankruptcy Code. |
| 23 | Confirmation Order | means the order entered by the Bankruptcy Court confirming the Charlestown Plan pursuant to Section 1129 of the Bankruptcy Code. |
| 26 | Creditor | has the meaning ascribed to it in Section 101(10) of the Bankruptcy Code. |
| 27 | Creditors' Committee | means the official committee of unsecured creditors' appointed in the Chapter 11 Cases of the Debtors by the Office of the United States |

| | | |
|---|---|---|
| | | Trustee, as its composition may be changed from time to time by the addition, resignation and/or removal of its members. |
| | Cure Payments | means the distribution of Cash as, and to the extent, required for the cure of any and all leases and executory contracts pursuant to Section 365 of the Bankruptcy Code in connection with any assumed leases and executory contracts. |
| | DGCL | means the Delaware General Corporation Law. |
| | Debtors | means, collectively, Meruelo Maddux Properties, Inc., a Delaware corporation, and its 53 related jointly administered debtor entities. |
| | Debtors in Possession | means the Debtors in their capacities as debtors in possession in the Chapter 11 Cases pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. |
| | Disbursing Agent | means the Person responsible for making distributions under the Charlestown Plan, including the Reorganized Debtors, or such Person(s) as the Reorganized Debtors may employ in their sole discretion, to serve as Disbursing Agent. The Disbursing Agent shall be the Chief Accounting Officer of MMPI. |
| | Disclosure Statement | means the written disclosure statement, dated as of February 26, 2010, that relates to this Charlestown Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented from time to time. |
| | Disputed | means, with reference to any Claim, or Interest, or any portion thereof, any Claim or Interest proof of which was timely and properly Filed and in either case or in the case of any Administrative Claim, Claim or Interest that is disputed under the Charlestown Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with Section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim or Interest proof of which was required to be Filed by Order of the Bankruptcy Court but as to which a proof of claim or interest was not timely or properly Filed. |

35412

| | | |
|---|---|---|
| 1 | Distribution | means a distribution to a Holder of an Allowed Claim pursuant to this Charlestown Plan. |
| 2 | | |
| | Docket | means the docket in the Chapter 11 Cases maintained by the Clerk. |
| 3 | | |
| 4 | Effective Date | means the first business day after the thirtieth |
| 5 | | $(30^{th})$ day after the Confirmation Order shall have become a Final Order. If a stay of the |
| 6 | | Confirmation Order is in effect, the Effective Date shall be extended to the first Business Day |
| 7 | | on which no such stay is in effect but in no event shall the Effective Date be later than one |
| 8 | | hundred twenty (120) days after the Confirmation Date; and provided further that |
| 9 | | the Bankruptcy Court may extend the deadline for the Effective Date to occur following (a) |
| 10 | | submission of a stipulation signed by the affected parties or (b) notice and hearing on the |
| 11 | | Charlestown Proponents' motion. |
| 12 | | |
| 13 | | |
| 14 | Estates | means, collectively, the estates created in each of the Debtors' Chapter 11 Cases under Section |
| 15 | | 541 of the Bankruptcy Code. |
| 16 | Federal Judgment Rate | means the interest rate on federal judgments and is based on the weekly average 1-year |
| 17 | | constant maturity Treasury yield, as published by the Board of Governors of the Federal |
| 18 | | Reserve System, for the calendar week preceding the first day on which the defendant |
| 19 | | is liable for interest. The Federal Judgment Rate was 0.64% for the week ended immediately |
| 20 | | prior to the Petition Date of the Debtors. |
| 21 | File or Filed | means filed with the Clerk in the Chapter 11 Cases. |
| 22 | | |
| 23 | Final Order | means an order or judgment of the Bankruptcy Court as entered on the Docket in the Chapter |
| 24 | | 11 Cases, or other court of competent jurisdiction, the operation or effect of which is |
| 25 | | not stayed, reversed or amended, and as to which order or judgment (or any revision, |
| 26 | | modification, or amendment thereof) the time to appeal or seek review or rehearing has expired |
| 27 | | and as to which no appeal or petition for review or rehearing was filed or, if filed, remains |
| 28 | | pending. |

35412

| | | |
|---|---|---|
| 1 | Flower Plan | means any plan of reorganization Confirmed in the Chapter 11 Case of MM 845 S. Flower. |
| 2 | FNBN | means FNBN CML-ComI, LLC. |
| 3 | FNBN Collateral | means the MMP 2951 Lenwood Road Real Property. |
| 4 | | |
| 5 | GAAP | means Generally Accepted Accounting Principles in the United States of America as in effect on the date of this Charlestown Plan, including those set forth in (i) the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants, (ii) statements and pronouncements of the Financial Accounting Standards Board, (iii) such other statements by such other entity as approved by a significant segment of the accounting profession and (iv) the rules and regulations of the SEC governing the inclusion of financial statements (including pro forma financial statements) in periodic reports required to be filed pursuant to Section 13 of the Exchange Act, including opinions and pronouncements in staff accounting bulletins and similar written statements from the accounting staff of the SEC. |

1  Flower Plan — means any plan of reorganization Confirmed in the Chapter 11 Case of MM 845 S. Flower.

2  FNBN — means FNBN CML-ComI, LLC.

3  FNBN Collateral — means the MMP 2951 Lenwood Road Real Property.

5  GAAP — means Generally Accepted Accounting Principles in the United States of America as in effect on the date of this Charlestown Plan, including those set forth in (i) the opinions and pronouncements of the Accounting Principles Board of the American Institute of Certified Public Accountants, (ii) statements and pronouncements of the Financial Accounting Standards Board, (iii) such other statements by such other entity as approved by a significant segment of the accounting profession and (iv) the rules and regulations of the SEC governing the inclusion of financial statements (including pro forma financial statements) in periodic reports required to be filed pursuant to Section 13 of the Exchange Act, including opinions and pronouncements in staff accounting bulletins and similar written statements from the accounting staff of the SEC.

15  General Unsecured Claim — means any Claim that is not an Administrative Claim, Priority Claim, Tax Claim, Intercompany Claim, Guaranty Claim or Secured Claim.

17  Guaranty Claim — means a Claim against multiple Debtors, whether the Claim is a guarantee, indemnity agreement, claim for obligations for which another Debtor is the primary obligator, joint and several obligations or otherwise.

20  Holder — means the holder of a Claim or Interest.

21  Impaired — means, when used in reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

24  Imperial — means Imperial National Bank, a division of City National Bank, a national banking association.

26  Inside Equity Interests — means an Interest in MMPI held, directly or indirectly, by an Insider.

27  Insider — Means a person who served as an Officer or Director of MMPI after the Petition Date but

| | | |
|---|---|---|
| 1 | | before the Effective Date. |
| 2 | | |
| 3 | Insider Litigation | means any action or proceeding brought by or on behalf of the Reorganized Debtors against an Insider. |
| 4 | | |
| 5 | Insider Cash Election Holders | Holders of Insider Equity Interests who, under the terms of the Charlestown Plan, elect to receive a cash distribution on account of their Interests. |
| 6 | | |
| 7 | | |
| 8 | Insider Stock Retention Holders | Holders of Insider Equity Interests who, under the terms of the Charlestown Plan, elect to retain their Interests. |
| 9 | | |
| 10 | Instrument | means any share of stock, security, promissory note or other "instrument," within the meaning of that term, as defined in Section 9105(1)(i) of the UCC. |
| 11 | | |
| 12 | | |
| 13 | Intercompany Claims | means all Claims asserted by any Debtor(s) or MM 845 S. Flower or Chinatown against any other Debtor(s). |
| 14 | | |
| 15 | Interest | has the meaning set forth in Section 101(16) of the Bankruptcy Code for "equity security." |
| 16 | | |
| 17 | Kennedy Funding | means Kennedy Funding, Inc. |
| | Kennedy Funding Collateral | means the MM Mission Boulevard Real Property. |
| 18 | | |
| 19 | Legendary | means Legendary Investors Group No. 1, L.L.C. (as successor to East West Bank on certain loans). |
| 20 | | |
| 21 | Lien | has the meaning set forth in Section 101(37) of the Bankruptcy Code. |
| 22 | | |
| 23 | Loan Documents | means, collectively, any and all writings between a Debtor and a Creditor or any other entity, establishing, fixing or describing the terms and conditions of the debtor creditor relationship between such Debtor and the Creditor, regardless of form, title or substance. |
| 24 | | |
| 25 | | |
| 26 | Local Bankruptcy Rules | means the local rules of the Bankruptcy Court, as applicable from time to time in the Chapter 11 Cases. |
| 27 | | |
| 28 | Los Angeles Tax Claim | means the claim of Los Angeles County against a Debtor's estate for real property taxes. |

35412

13

| | |
|---|---|
| LTIP Units | means all long term incentive plan units in MMPLP. |
| MBP | means Meruelo Baldwin Park, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13386. |
| MBP Real Property | means the real property located at 13853, 13822 and 13916 Garvey Avenue, 13904 Corak Street and 3060 Feather Avenue, Baldwin Park, California, APNs 8555-018-002, 8555-018-003, 8555-017-013, 8555¬017-021, and 8555-017-026. |
| Merco Group | means Merco Group, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13406. |
| Merco Group Real Property | means the Sci-Arc Real Property and the Sky-Arc Real Property. |
| Merco Group Personal Property | means the cash in East West Bank account number 80360027 in the approximate amount of $24,898. |
| Meruelo Farms | means Meruelo Farms, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13358. |
| Meruelo Wall Street | means Meruelo Wall Street, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13366. |
| Meruelo Wall Street Real Property | means the real property located at 419 E. 9th Street, Los Angeles, California, APN 5145-011-015. |
| MG 4th Street Center | means Merco Group — 4th Street Center, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13399. |
| MG 4th Street Center Real Property | means the real property located at 900, 910 and 926 E. 4th Street and 405-411 S. Hewitt Street, Los Angeles, California, APNs 5163-022¬002, 5163-022-003, 5163-022-001, 5163-022-005, 5163-022-022 and 5163-022-023. |
| MG 146 E. Front Street | means Merco Group — 146 E. Front Street, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13380. |

| | |
|---|---|
| MG 425 W. 11th Street | means Merco Group — 425 West 11th Street, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13400. |
| MG 425 W. 11th Street Real Property | means the real property located at 425 W. 11th Street, Los Angeles, California, APNs 5139-008-010 and 5139-008-001. |
| MG 620 Gladys Avenue | means Merco Group — 620 Gladys Avenue, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13401. |
| MG 801 E. 7th Street | means Merco Group — 801 E. 7th Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13378. |
| MG 801 E. 7th Street Real Property | means the real property located at 648 Stanford Avenue, Los Angeles, California, APN 5147-029-030. |
| MG 1211 E. Washington Boulevard | means Merco Group —1211 E. Washington Boulevard, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13382. |
| MG 1211 E. Washington Boulevard Real Property | means the real property located at 1211 and 1225 E. Washington Boulevard, Los Angeles, California, APNs 5131-003-002, 5131-003-010, 5131-003-011, and 5131-003-024. |
| MG 1308 S. Orchard | means Merco Group — 1308 S. Orchard, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13384. |
| MG 1308 S. Orchard Real Property | means the real property located at 1308 S. Orchard, Los Angeles, California, APN 5056-004-007. |
| MG 1500 Griffith Avenue | means Merco Group —1500 Griffith Avenue, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13398. |
| MG 2001-2021 W. Mission Boulevard | means Merco Group — 2001-2021 West Mission Boulevard, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13403. |
| MG 2001-2021 W. Mission Boulevard Encumbered Real Property | means the real property located at 1875 West Mission Boulevard, Pomona, California, APN 8707-019-004. |

35412

| | |
|---|---|
| MG 2001-2021 W. Mission Boulevard Unencumbered Real Property | means the real property located on W. Mission Boulevard, Pomona, California, APN 8707-019-005. |
| MG 2040 Camfield Avenue | means Merco Group — 2040 Camfield Avenue, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13375. |
| MG 2529 Santa Fe Avenue | means Merco Group — 2529 Santa Fe Avenue, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13404. |
| MG 2529 Santa Fe Avenue Real Property | means the real property located at 2529 S. Santa Fe Avenue, Los Angeles, California, APN 6302-008-010, also known as Santa Fe Plaza. |
| MG 3185 E. Washington Boulevard | means Merco Group — 3185 E. Washington Boulevard, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13373. |
| MG 3185 E. Washington Boulevard Encumbered Real Property | means the real property located at 3185 E. Washington Boulevard, Los Angeles, California, APN 5169-020-003. |
| MG 3185 E. Washington Boulevard Unencumbered Real Property | means the real property located at 3185 E. Washington Boulevard, Los Angeles, California, APN 5169-023-022. |
| MG 5707 S. Alameda | means Merco Group — 5707 S. Alameda LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13381. |
| MG 5707 S. Alameda Real Property | means the real property located at 5701 S. Alameda Street (1862 E. 55th Street) and 5707 to 5715 S. Alameda Street and 5716 Alba Street, Los Angeles, California, APNs 5105-009-002, 5105-009-008, 5105-011-014, and 5105-011-015. |
| MG Ceres Street Produce | means Merco Group — Ceres Street Produce, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13385. |
| MG Ceres Street Produce Real Property | means the real property located at 758 Ceres Avenue, Los Angeles, California, APNs 5146-003-032, 5146-003-033, 5146-003-034 and 5146-003-035. |
| MG Little J | means Merco Group — Little J, LLC, a California limited liability company and a |

| | | |
|---|---|---|
| 1 | | Debtor in Possession in Chapter 11 Case number 1:09-bk-13405. |
| 2 3 | MG Overland Terminal | means Merco Group — Overland Terminal, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13434. |
| 4 5 6 | MG Southpark | means Merco Group — Southpark, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13407. |
| 7 8 9 10 | MG Southpark Real Property | means the real property located at numerous street addresses, including 1150 S. Grand Avenue, Los Angeles, California, APNs 5139-019-040, 5139-020-016, 5139-020-022, 5139-020-024, 5139-024-003, 5139-024-014, 5139-024-015, and 5139-024-016. |
| 11 12 | MM 3rd and Omar Street | means Meruelo Maddux — 3rd & Omar Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13359. |
| 13 14 15 | MM 3rd and Omar Street Real Property | means the real property located at 470 3rd Street, Los Angeles, California, APNs 5147-004-013, 5147-004-016, 5147-004-017 and 5147-004-019. |
| 16 17 | MM 230 W. Avenue 26 | means Meruelo Maddux — 230 W. Avenue 26, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13389. |
| 18 19 20 | MM 230 W. Avenue 26 Real Property | means the real property located at 210-212, and 230 W. Avenue 26, Los Angeles, California, APNs 5205-014-013, 5205-014-017 and 5205-014-018. |
| 21 22 | MM 336 W. 11th Street | means Meruelo Maddux — 336 W. 11th Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13402. |
| 23 24 | MM 336 W. 11th Street Real Property | means the real property located at 336 W. 11th Street, Los Angeles, California, APN 5139-020-025. |
| 25 26 27 | MM 420 Boyd Street | means Meruelo Maddux — 420 Boyd Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13360. |
| 28 | MM 420 Boyd Street Real Property | means the real property located at 420 Boyd Street, Los Angeles, California, APNs 5147- |

35412

| | |
|---|---|
| | 006-001, 5147-006-002, 5147-006-003, and 5147-006-008. |
| MM 500 Mateo Street | means Meruelo Maddux — 500 Mateo Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13361. |
| MM 555 Central Avenue | means Meruelo Maddux — 555 Central Avenue, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13439. |
| MM 817-825 S. Hill Street | means Meruelo Maddux — 817-825 S. Hill Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13391. |
| MM 817-825 S. Hill Street Real Property | means the real property located at 817 S. Hill Street, 325 S. Hill Street, and 820 S. Olive Street, Los Angeles, California, APNs 5144-018-021, 5144-018-027, 5144-018-028 and 5144-018-032. |
| MM 845 S. Flower | means Meruelo Maddux — 845 S. Flower Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-21621. |
| MM 915-949 S. Hill Street | means Meruelo Maddux — 915-949 S. Hill Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13362. |
| MM 915-949 S. Hill Street Real Property | means the real property located at 915-949 S. Hill Street, Los Angeles, California, APNs 5139-004-004, 5139-004-005, 5139-004-006, 5139-004-007, 5139-004-008, 5139-004-009, 5 13 9-004-020 and 5139-004-024. |
| MM 1000 E. Cesar Chavez | means Meruelo Maddux -- 1000 E. Cesar Chavez, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13393. |
| MM 1000 E. Cesar Chavez Real Property | means the real property located at 1000, 1016, 1028, and 1030 E. Cesar Chavez, Los Angeles, California, APNs 5410-007-004, 5410-007-022, 5410-007-006, and 5410-007-007. |
| MM 2415 E. Washington Boulevard | means Meruelo Maddux — 2415 E. Washington Blvd., LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13365. |

35412

| | |
|---|---|
| MM 2415 E. Washington Boulevard Real Property | means the real property located at 2415 E. Washington Boulevard, Los Angeles, California, APN 5168-009-011. |
| MM 5500 Flotilla Street | means Meruelo Maddux — 5500 Flotilla Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13367. |
| MM Construction | means Meruelo Maddux Construction, Inc., a California corporation, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13388. |
| MM Management | means Meruelo Maddux Management, LLC, a Delaware limited liability company, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13390. |
| MM Mission Boulevard | means Meruelo Maddux — Mission Boulevard, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13369. |
| MM Mission Boulevard Real Property | means the real property located at 2001-2021 W. Mission, Pomona, California, APN 8707-019-003. |
| MMP 306-330 N. Avenue 21 | means Meruelo Maddux Properties — 306-330 N. Avenue 21, LLC a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13370. |
| MMP 306-330 N. Avenue 21 Real Property | means the real property located at 306-330 N. Avenue 21, Los Angeles, California, APNs 5447-009-003, 5447-009-004, 5447-009-005 and 5447-009-006. |
| MMP 760 S. Hill Street | means Meruelo Maddux Properties — 760 S. Hill Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13363. |
| MMP 760 S. Hill Street Real Property | means the real property located at 760 S. Hill Street and 325 W. 8th Street, Los Angeles, California, APNs 5144-014-046 through 5144-014-139. |
| MMP 1009 N. Citrus | means Meruelo Maddux Properties — 1009 North Citrus Avenue, Covina, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13372. |
| MMP 1009 N. Citrus Real Property | means the real property located at 1009 N. Citrus Avenue, Covina, California, APNs 8421- |

35412

| | |
|---|---|
| | 025-017 and 8421-025-020. |
| MMP 1060 N. Vignes | means Meruelo Maddux Properties — 1060 N. Vignes, LLC a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13374. |
| MMP 1060 N. Vignes Real Property | means the real property located at 1060 N. Vignes, Los Angeles, California, APN 5409-014-001. |
| MMP 1919 Vineburn Street | means Meruelo Maddux Properties — 1919 Vineburn Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13364. |
| MMP 1919 Vineburn Street Real Property | means the real property located at 1919 Vineburn, Los Angeles, California, APNs 5215-014-005 and 5215-014-006. |
| MMP 2131 Humboldt Street | means Meruelo Maddux Properties — 2131 Humboldt Street, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13371. |
| MMP 2951 Lenwood Road | means Meruelo Maddux Properties — 2951 Lenwood Road, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13383. |
| MMP 2951 Lenwood Road Real Property | means the real property located at 2951 Lenwood Road, Barstow, California, APNs 0421-313-540000, 0421-313-550000, 0421-313-560000, 0421-313-570000, and 0421-313-580000. |
| MMP 12385 San Fernando Road | means Meruelo Maddux Properties — 12385 San Fernando Road, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13338. |
| MMP 12385 San Fernando Road Real Property | means the real property located at 12361 and 12385 San Fernando Road, Sylmar, California, APNs 2611-007-011, 2611-007-020, and 2611-007-021. |
| MMPI | means Meruelo Maddux Properties, Inc., a Delaware corporation, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13356. |
| MMPI Acquisition | Means MMPI Acquisition, LLC, a Delaware LLC |
| MMPI Existing Common Stock | means all authorized shares of common stock of MMPI existing as of the Petition Date. |

35412

| | |
|---|---|
| MMPLP | means Meruelo Maddux Properties, L.P., a Delaware limited partnership, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13387. |
| MMP Ventures | means MMP Ventures, LLC, a Delaware limited liability company, and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13392. |
| National Cold Storage | means National Cold Storage, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13376. |
| Order | means an order or judgment of the Bankruptcy Court as entered on the Docket. |
| Ordinary Course Professionals | means any attorneys, accountants, and other professionals or professional service providers such as public relations and communications 'consultants, architects, engineers, title companies, surveyors, real estate closing professionals, real estate brokers, environmental consultants, design consultants, information technology consultants, life/safety consultants, property managers, marketing and business consultants utilized by the Debtors in the ordinary course of the Debtors' operation and development of properties and development projects. |
| Other Priority Claim | means any Claim, other than an Administrative Claim or a Tax Claim, entitled to priority in right of payment under Section 507(a) of the Bankruptcy Code. |
| Person | means any individual, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, joint venture, government or political subdivision, official committee appointed by the United States Trustee, unofficial committee of creditors or equity holders, or other entity (as defined in the Bankruptcy Code). |
| Petition Date | shall have the same meaning as Commencement Date. |
| PNL Pomona | means PNL Pomona, L.P., a Delaware limited partnership. |

35412

| | | |
|---|---|---|
| 1 | PNL Pomona Collateral | means, collectively, [1] the MG 2001-2021 W. Mission Boulevard Encumbered Real Property, [2] approximately $946,816 in insurance proceeds received and to be received in connection with property casualties (subject to reductions for Court approved expenditures), and [3] the cash in the amount of $49,508 previously held in an account maintained by PNL for the benefit of MG 2001-2021 W. Mission Boulevard. |
| | Postpetition Tax Claims | means Administrative Claims and other Claims by a governmental unit for taxes against any of the Debtor (and for a reasonable rate of interest related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date. |
| | Priority Claim | means an Allowed Claim entitled to priority under Sections 507(a)(3) through 507(a)(7) of the Bankruptcy Code, and includes Priority Tax Claims. |
| | Priority Tax Claim | means any unsecured Claim of a governmental unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code. |
| | Pro Rata | means, with respect to any Distribution on account of an Allowed Claim or Allowed Interest, a proportionate share, so that the ratio of the consideration distributed on account of an Allowed Claim or Allowed Interest in a Class to the amount of such Allowed Claim or Allowed Interest is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims or Allowed Interests in such Class to the amount of all Allowed Claims or Allowed Interests in such Class. |
| | Property Level Debtors | means any Debtor which held title to real property on the Commencement Date. |
| | Quarterly Distribution Date | means the 15th of the first full month after the Effective Date and the 15th of every third month thereafter. |
| | RULPA | means the Delaware Revised Uniform Limited Partnership Act. |

35412

| | | |
|---|---|---|
| 1 | Record Date | means the date designated by the Bankruptcy Court set forth in the Disclosure Statement as the date for determining the holders of Claims and Interests entitled to vote to accept or reject the Charlestown Plan. |
| 4 | Record Date Holder | means a holder of MMPI Existing Common Stock as of the Record Date. |
| 5 | Reinstated | shall have the meaning set forth in Section 1124(2) of the Bankruptcy Code. |
| 7 | Reorganized Debtor | means a Debtor or any combination of Debtors, whose Chapter 11 Plan is confirmed or any amended plan or plans of reorganization. |
| 9 | Reorganized MMPI | means MMPI from and after the Effective Date of the Charlestown Plan. |
| 10 | Retained Claims and Defenses | means all causes of action and claims held by or capable of assertion by the Debtor or its Estate, including, without limitation, all avoidance actions, all Section 510 actions, suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, and whether asserted or assertable, directly or derivatively, that the Debtors or their Estates could assert immediately prior to the Effective Date, but excludes all such causes of action, claims or defenses released, waived or extinguished by the Debtors pursuant to this Charlestown Plan or a Final Order of the Bankruptcy Court. |
| 20 | Santa Fe & Washington Market | means Santa Fe & Washington Market, LLC, a Delaware limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13379. |
| 23 | Santa Fe & Washington Market Encumbered Real Property | means the real property located at 1910-1922 Santa Fe Avenue, Los Angeles, California, APNs 5168-005-004 and 5168-005-010. |
| 25 | Santa Fe & Washington Market Unencumbered Real Property | means the real property located at 303 S. Hewitt Street and 2425 E. 12th Street, Los Angeles, California, APNs 5163-012-007, and 5168-003-014. |
| 27 | Santa Fe Commerce Center | means Santa Fe Commerce Center, Inc., a California corporation and a Debtor in Possession in Chapter 11 Case number 1:09-bk- |

35412

| | |
|---|---|
| | 13368. |
| Santa Fe Commerce Center Real Property | means the real property located at 2445, 2460 and 2535 E. 12th Street, Los Angeles, California, APNs 5168-003-013, 5168-005-021 and 5168-004-001. |
| Santa Fe Commerce Center Personal Property | means the funds deposited by Santa Fe Commerce Center with Berkadia presently in the approximate amount of $600,000 for and account of the benefit of Santa Fe Commerce Center. |
| Scheduled | means set forth on the Schedules filed by the Debtors in their respective Chapter 11 Cases. |
| Schedules | means the schedules of assets and liabilities filed by any Debtor pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any amendments and modifications thereto through the Confirmation Date. |
| SEC | means the United States Securities and Exchange Commission. |
| Secured Claim | means any Claim secured by Collateral to the extent of the value of such collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff. |
| Securities Act | means the Securities Act of 1933, as amended, or any successor statute, and the rules and regulations promulgated thereunder. |
| Service Level Debtors | means MMPI, MMPLP, MMP Ventures, MM Construction, and MM Management. |
| Sci-Arc Real Property | means the real property located at 960 E. 3rd Street, Los Angeles, California, APN 5163-016-011, owned by Merco Group. |
| Charlestown Plan | means this coordinated Chapter 11 plan of reorganization as it may be amended or modified, from time to time, together with all addenda, exhibits, schedules, supplements or other attachments, if any. |
| Charlestown Proponents | means Charlestown Capital Advisors, LLC and Hartland Asset Management, Inc. as proponents of a Chapter 11 plan of reorganization for the |

24

35412

| | | |
|---|---|---|
| 1 | | Debtors. |
| 2 | Sky Arc Real Property | means the real property located at 950 E. 3rd Street, Los Angeles, California, APNs 5163-016-012, 5163-016-013, 5163-016-014, owned by Merco Group. |
| 3 | | |
| 4 | | |
| 5 | Stanford | means The Stanford Group, L.P. |
| 6 | Stanford Collateral | means the 905 8th Street Real Property. |
| 7 | Stock Retention Holders | Holders of Interests in MMPI who, under the terms of the Charlestown Plan, elect to retain their Interests. |
| 8 | | |
| 9 | Subscription Agreement | has the meaning ascribed to such term in Section IV.F of this Charlestown Plan. |
| 10 | | |
| 11 | Treasury Bills | means the United States Government Securities Treasury Bills with constant maturities as published in the Federal Reserve Statistical Release H. 15 on the first business day of each January, April, July and October. |
| 12 | | |
| 13 | | |
| 14 | UCB | means United Commercial Bank, a division of East West Bank. |
| 15 | UCB Collateral re 2640 Washington | means, collectively, [1] the 2640 Washington Boulevard Real Property and [2] the cash in the East West Bank reserve account bearing account number 80365810 in the approximate amount of $9,410. |
| 16 | | |
| 17 | | |
| 18 | UCB Collateral re Meruelo Wall Street | means, collectively, [1] the Meruelo Wall Street Real Property and [2] $480,000 of the $518,825 in the East West Bank / UCB interest reserve account bearing account number 18296574. Other funds in that account are not UCB collateral. |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | Unimpaired | means with reference to a Class of Claims or Interests, that the Class is not Impaired. An Unimpaired Class is not entitled to vote on the Charlestown Plan. |
| 23 | | |
| 24 | Voting Agent | means the Person designated by the Bankruptcy Court to receive and tabulate Ballots and take such other actions as specified in the Balloting Procedures Order. |
| 25 | | |
| 26 | | |
| 27 | Voting Deadline | means the date on which Ballots must be received by the Voting Agent under the Ballot Procedures Order. |
| 28 | | |

35412

| Wall Street Market | means Wall Street Market, LLC, a California limited liability company and a Debtor in Possession in Chapter 11 Case number 1:09-bk-13377. |

## B.    Interpretation of Terms And Computation Of Time

### 1.    Defined Terms

Capitalized terms used, but not defined, in the Charlestown Plan, shall have the meaning assigned to that term in the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, if applicable.

### 2.    Rules of Interpretation

For purposes of the Charlestown Plan: (a) whenever it appears appropriate from the context, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any contract, instrument, release or other agreement or document entered into by a Reorganized Debtor in connection with the Charlestown Plan which refers to "being in a particular form" or "on particular terms and conditions" means that such document shall be substantially in such form or substantially on such terms and conditions; provided, however, that any change to such form, terms, or conditions which is material to a party to such document shall not be made without such party's consent or an order of the Bankruptcy Court; (c) any reference in the Charlestown Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit, as it may have been or (to the extent otherwise permitted, hereafter) may be amended, modified or supplemented from time to time; (d) unless otherwise specified in a particular reference, all references in the Charlestown Plan to paragraphs, Articles and Exhibits are references to paragraphs, Articles and Exhibits of or to the Charlestown Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Charlestown Plan in its entirety rather than to only a particular portion of the Charlestown Plan; (f) captions and headings to Articles and paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of the Charlestown Plan; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) all exhibits to the Charlestown Plan are incorporated into the Charlestown Plan, and

35412

shall be deemed to be included in the Charlestown Plan, provided that they are Filed no later than the commencement of the Confirmation Hearing.

### 3. Time Periods

In computing any period of time prescribed or allowed by the Charlestown Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### III.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following is a schedule designating the Classes of Claims and Interests under the Charlestown Plan. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes. The below schedule includes Claims that are or may be disputed. No distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or an Allowed Interest and then only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date. The schedule was adopted from a similar schedule in the Debtors' proposed disclosure statement. The Charlestown Proponents make no representations regarding the accuracy or completeness of the Debtors' information.

### A. Summary of Claims and Interests Against Each Debtor

The categories of Claims and Interests listed in the chart below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to the Charlestown Plan. The amounts listed for each Class in the chart below represent the Debtors' estimate of the amount of the Allowable Claims asserted in each Class. The amounts listed for the Secured Claims of Los Angeles County represent the amounts owed as of April 30, 2010, under the terms of the Debtors' Settlement with Los Angeles County. The

35412

chart below also accounts for the Debtors' proposed Settlement with Legendary (approved January 24, 2010, by which Debtors transferred the MG 620 Property, the MG 4th Street Property, the MG 1500 Property, the Merco Property and the MM 3rd & Omar Property to Legendary as full payment to satisfy all obligations owed to Legendary by Debtors.  The Charlestown Proponents expressly reserve all rights to object to the amount, character and enforceability of any Claim or Interest, whether or not listed in the chart below.

| Class | Description of Class | Impaired/ Unimpaired |
|---|---|---|
| **1.** | **Meruelo Maddux Properties, Inc.**[1] | |
| 1A | Secured Claim of Oliver, Sandifer - $436,901 | Unimpaired. |
| 1B | Priority Benefits Claims - $46,362 | Unimpaired. |
| 1C-1 | General Unsecured Claims - $7,668,891 | Unmpaired. |
| 1C-2A | Unsecured Guaranty Claims - $122,726,548[2] | Impaired. |
| 1C-2B | Unsecured Guaranty Claims - $39,986,616.97[3] | Impaired. |
| 1 E | Non-Insider Equity Interests | Impaired. |
| 1 F | Insider Equity Interests | Impaired. |
| **2.** | **Meruelo Maddux Properties, L.P.** | |
| | | |
| 2C-2 | General Unsecured Claims - $1,869,638[4] | Unimpaired. |
| 2D | Intercompany Claims - $452,881,601 | Unimpaired. |
| 2E | Equity Interests of MMPI (99.6%) and Holders of LTIP Units (0.4%) | Impaired. |
| **3.** | **MMP Ventures LLC** | |
| 3C | General Unsecured Claims - $652 | Unimpaired. |

---

[1] The Debtors are listed in the order of the Service Level Debtors and then the Property Level Debtors.

[2] The $122,726,548 reflects the amount of guaranty claims of the following entities that did not enter into court-approved, binding settlement agreements with MMPI: Bank of America, California Bank & Trust, Kennedy Funding, Inc. and Cathay Bank.

[3] The $39,986,616.97 reflects the amount of guaranty claims of entities that entered into court-approved binding settlement agreements including United Commercial Bank (now East West Bank), Pacific Commerce Bank, FNBN, and Imperial.

[4] Cathay was removed from this Class by the Court's order dated February 9, 2011.

35412

| | | |
|---|---|---|
| 3C | Intercompany Claims - $2,509 | Unimpaired. |
| 3E | Equity Interests of MMPLP (100%) | Unimpaired. |
| **4.** | **Meruelo Maddux Construction, Inc.** | |
| 4C | General Unsecured Claims - $652 | Unimpaired. |
| 4D | Intercompany Claims - $10,588 | Unimpaired. |
| 4E | Equity Interests of MMPLP (100%) | Unimpaired. |
| **5.** | **Meruelo Maddux Management LLC** | |
| 5B | Priority Benefits Claims - $151,247 | Unimpaired. |
| 5C | General Unsecured Claims - $652 | Unimpaired. |
| 5D | Intercompany Claims - $4,296,137 | Unimpaired. |
| 5E | Equity Interests of MMPLP (99%) and MMCI (1%) | Unimpaired. |
| **6.** | **Meruelo Maddux – 555 Central Avenue LLC** | |
| 6C | General Unsecured Claims - $10,102 | Unimpaired. |
| 6D | Intercompany Claims - $1,999,388 | Unimpaired. |
| 6E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **7.** | **Merco Group – Overland Terminal LLC** | |
| 7C | General Unsecured Claims - $132,750 | Unimpaired. |
| 7D | Intercompany Claims - $1,093,202 | Unimpaired. |
| 7E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **8.** | **National Cold Storage LLC** | |
| 8C | General Unsecured Claims — $4,545 | Unimpaired. |
| 8E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **9.** | **Wall Street Market LLC** | |
| 9C | General Unsecured Claims - $2,092 | Unimpaired. |
| 9D | Intercompany Claims - $3,536,086 | Unimpaired. |
| 9E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **10.** | **Meruelo Maddux Properties – 1009 N. Citrux Avenue, Covina, LLC** | |

35412

| 10A | Los Angeles County Secured Tax Claim - $118,420 | Impaired. |
| 10C | General Unsecured Claims - $15,357 | Unimpaired. |
| 10D | Intercompany Claims - $6,630,774 | Unimpaired. |
| 10E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **11.** | **Meruelo Maddux – 230 W. Avenue 26 LLC** | |
| 11A | Los Angeles County Secured Tax Claim - $163,484 | Impaired. |
| 11C-1 | Unsecured Claims — Tenant Security Deposits - $24,610 | Unimpaired. |
| 11C-2 | General Unsecured Claims - $3,952 | Unimpaired. |
| 11D | Intercompany Claims - $6,414,500 | Unimpaired. |
| 11E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **12.** | **Meruelo Maddux Properties – 306-330 N. Avenue 21 LLC** | |
| 12A | Los Angeles County Secured Tax Claim - $111,937 | Impaired. |
| 12C-1 | Unsecured Claims — Tenant Security Deposits - $8,025 | Unimpaired. |
| 12C-2 | General Unsecured Claims - $14,882 | Unimpaired. |
| 12D | Intercompany Claims - $3,569,603 | Unimpaired. |
| 12E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **13.** | **Meruelo Maddux – 817-825 S. Hill Street LLC** | |
| 13A | Los Angeles County Secured Tax Claim — $350,917 | Impaired. |
| 13C | General Unsecured Claims - $1,583 | Unimpaired. |
| 13D | Intercompany Claims - $16,377,573 | Unimpaired. |
| 13E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **14.** | **Meruelo Maddux – 1000 E. Cesar Chavez LLC** | |
| 14A | Los Angeles County Secured Tax Claim - $167,582 | Impaired. |
| 14C-1 | Unsecured Claims — Tenant Security Deposits - $3,100 | Unimpaired. |
| 14C-2 | General Unsecured Claims - $10,930 | Unimpaired. |
| 14D | 14D    Intercompany Claims - $6,804,902 | Unimpaired. |
| 14E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

35412

| 15. | Meruelo Maddux Properties – 1060 N. Vignes LLC | |
|---|---|---|
| 15A | Los Angeles County Secured Tax Claim - $115,121 | Impaired. |
| 15C | General Unsecured Claims - $71,044 | Unimpaired. |
| 15D | Intercompany Claims - $6,549,824 | Unimpaired. |
| 15E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 16. | Meruelo Maddux – 2415 E. Washington Boulevard LLC | |
| 16A | Los Angeles County Secured Tax Claim - $50,897 | Impaired. |
| 16C | General Unsecured Claims - $4,780 | Unimpaired. |
| 16D | Intercompany Claims - $2,220,879 | Unimpaired. |
| 16E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 17. | Meruelo Maddux – 5500 Flotilla Street LLC | |
| 17C | General Unsecured Claims - $652 | Unimpaired. |
| 17D | Intercompany Claims - $611,663 | Unimpaired. |
| 17E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 18. | Meruelo Maddux Properties – 12385 San Fernando Road LLC | |
| 18A | Los Angeles County Secured Tax Claim - $211,338 | Impaired. |
| 18C | General Unsecured Claims - $2,652 | Unimpaired. |
| 18D | Intercompany Claims - $8,997,401 | Unimpaired. |
| 18E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 19. | Merco Group – 146 E. Front Street LLC | |
| 19C-1 | General Unsecured Claims - $652 | Unimpaired. |
| 19D | Intercompany Claims - $2,243,787 | Unimpaired. |
| 19E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 20. | Merco Group – 801 E. 7th Street LLC | |
| 20A | Los Angeles County Secured Tax Claim - $14,177 | Impaired. |
| 20C | General Unsecured Claims - $2,652 | Unimpaired. |
| 20D | Intercompany Claims - $1,346,512 | Unimpaired. |

35412

| | | |
|---|---|---|
| 20E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **21.** | **Merco Group – 1211 E. Washington Boulevard LLC** | |
| 21A-1 | Los Angeles County Secured Tax Claim - $245,814 | Impaired. |
| 21A-2 | RoofCorp of CA, Inc. - $37,500 | Impaired. |
| 21C-1 | Unsecured Claims — Tenant Security Deposits - $42,357 | Unimpaired. |
| 21C-2 | General Unsecured Claims - $31,231 | Unimpaired. |
| 21D | Intercompany Claims - $9,122,302 | Unimpaired. |
| 21E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **22.** | **Merco Group – 1380 S. Orchard LLC** | |
| 22A | Los Angeles County Secured Tax Claim - $36,714 | Impaired. |
| 22C | General Unsecured Claims - $4,322 | Unimpaired. |
| 22D | Intercompany Claims - $1,346,512 | Unimpaired. |
| 22E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **23.** | **Merco Group – 2040 Camfield Avenue LLC** | |
| 23C | General Unsecured Claims - $652 | Unimpaired. |
| 23D | Intercompany Claims - $5,163,790 | Unimpaired. |
| 23E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **24.** | **Merco Group – Ceres Street Produce LLC** | |
| 24A | Los Angeles County Secured Tax Claim - $65,342 | Impaired |
| 24C | General Unsecured Claims - $2,059 | Unimpaired. |
| 24D | Intercompany Claims - $2,772,264 | Unimpaired. |
| 24E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **25.** | **Meruelo Baldwin Park LLC** | |
| 25A | Los Angeles County Secured Tax Claim - $201,681 | Impaired |
| 25C-1 | Unsecured Claims — Tenant Security Deposits - $3,000 | Unimpaired. |
| 25C-2 | General Unsecured Claims - $4,082 | Unimpaired. |
| 25D | Intercompany Claims - $8,847,699 | Unimpaired. |

35412

| | | |
|---|---|---|
| 25E | Interests of MMP Ventures (100%) | Unimpaired. |
| **26.** | **Santa Fe & Washington Market LLC** | |
| 26A | Los Angeles County Secured Tax Claim - $45,481 | Impaired. |
| 26C-1 | Unsecured Claims — Tenant Security Deposits - $27,900 | Unimpaired. |
| 26C-2 | General Unsecured Claims - $4,591 | Unimpaired. |
| 26D | Intercompany Claims - $4,879,642 | Unimpaired. |
| 26E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **27.** | **Merco Group – 5707 S. Alameda LLC** | |
| 27A | Los Angeles County Secured Tax Claim re $112,423 | Impaired. |
| 27C-1 | Unsecured Claims — Tenant Security Deposits - $5,794 | Unimpaired. |
| 27C-2 | General Unsecured Claims - $16,673 | Unimpaired. |
| 27D | Intercompany Claims - $4,859,886 | Unimpaired. |
| 27E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **28.** | **Meruelo Maddux – 3rd and Omar Street LLC** | |
| | | |
| | | |
| 28C-1 | Unsecured Claims — Tenant Security Deposits - $2,600 | Unimpaired. |
| 28C-2 | General Unsecured Claims - $2,772 | Unimpaired. |
| 28D | Intercompany Claims - $3,416,741 | Unimpaired. |
| 28E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **29.** | **Meruelo Maddux – 336 W. 11th Street LLC** | |
| 29A-1 | Los Angeles County Secured Tax Claim - $199,416 | Impaired. |
| | | |
| 29A-3 | Grand Avenue Lofts, HOA Secured Claim - $270,000 | Impaired. |
| 29A-4 | Grand Avenue Lofts, LLC / CIM Urban RE Fund GP II, LLC Secured Claim - 0 | Impaired. |
| 29C | General Unsecured Claims - $43,857 | Unimpaired. |

----

5

35412

| | | |
|---|---|---|
| 29D | Intercompany Claims - $10,554,921 | Unimpaired. |
| 29E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **30.** | **Meruelo Maddux – 420 Boyd Street LLC** | |
| | | |
| | | |
| 30C-1 | Unsecured Claims — Tenant Security Deposits - $21,463 | Unimpaired. |
| 30C-2 | General Unsecured Claims - $31,296 | Unimpaired. |
| 30D | Intercompany Claims - $2,607,940 | Unimpaired. |
| 30E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **31.** | **Meruelo Maddux – 500 Mateo Street LLC** | |
| 31C- | General Unsecured Claims - $1,657 | Unimpaired. |
| 31D | Intercompany Claims - $1,968,955 | Unimpaired. |
| 31E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **32.** | **Meruelo Maddux Properties – 760 S. Hill Street LLC** | |
| 32A-1 | Los Angeles County Secured Tax Claim - $256,063 | Impaired. |
| 32A-2 | Bank of America Secured Claim - $28,108,094 | Impaired. |
| 32B | Priority Benefits Claims - $14,223 | Unimpaired. |
| 32C-1 | Unsecured Claims — Tenant Security Deposits $39,061 | Unimpaired. |
| 32C-2 | General Unsecured Claims - $460,061 | Unimpaired. |
| 32D | Intercompany Claims - $25,543,339 | Unimpaired. |
| 32E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| | | |
| **33.** | **788 S. Alameda LLC** | |
| 33A-1 | Los Angeles County Secured Tax Claim - $95,225 | Impaired. |
| 33A-2 | California Bank & Trust Secured Claim - $7,153,799 | Impaired. |
| 33B | Priority Benefits Claims - $1,382 | Unimpaired. |
| 33C-1 | Unsecured Claims — Tenant Security Deposits - $85,000 | Unimpaired. |

35412

| | | |
|---|---|---|
| 33C-2 | General Unsecured Claims - $61,022 | Unimpaired. |
| 33D | Intercompany Claims - $1,485,597 | Unimpaired. |
| 33E | Equity Interests of MMP Ventures (100%) | Unimpaired |
| **34.** | **905 8th Street LLC** | |
| 34A-1 | Los Angeles County Secured Tax Claim - $87,293 | Impaired. |
| 34A-2 | The Stanford Group LP Secured Claim - $1,950,000 | Impaired. |
| 34C-1 | Unsecured Claims — Tenant Security Deposits - $3,525 | Unimpaired. |
| 34C-2 | General Unsecured Claims - $12,849 | Unimpaired. |
| 34D | Intercompany Claims - $2,814,172 | Unimpaired. |
| 34E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **35.** | **Meruelo Maddux – 914-949 S. Hill Street LLC** | |
| 35A-1 | Los Angeles County Secured Tax Claim - $307,986 | Impaired. |
| 35A-2 | Imperial Capital Bank Secured Claim - $9,007,827 | Impaired. |
| 35C-1 | General Unsecured Claims - $2,652 | Unimpaired. |
| 35C-2 | Tenant Security Deposits - $30,000 | Unimpaired. |
| 35D | Intercompany Claims - $17,716,678 | Unimpaired. |
| 35E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **36.** | **Alameda Produce Market LLC** | |
| 36A-1-a | Los Angeles County Secured Tax Claim re Alameda Produce Market Encumbered Real Property - $421,457 | Impaired. |
| 36A-1-b | Los Angeles County Secured Tax Claim re Alameda Produce Market Unencumbered Real Property - $37,263 | Impaired. |
| 36A-2 | Cathay Bank Secured Claim - $48,815,711 | Impaired. |
| 36A-3 | Cathay Bank Secured Claim - $9,848,944 | Impaired. |
| 36A-4 | Secured Claim of Oliver, Sandifer - $436,901 | Unimpaired. |
| 36B | Priority Benefits Claims - $23,169 | Unimpaired. |
| 36C-1 | Unsecured Claims — Tenant Security Deposits - $301,019 | Unimpaired. |
| 36C-2 | General Unsecured Claims - $581,888 | Unimpaired. |

35412

| | | |
|---|---|---|
| 36D | MTA Contingent Claim | Impaired. |
| 36E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **37.** | **Merco Group – 1500 Griffith Avenue LLC** | |
| | | |
| | | |
| | | |
| 37A-3 | Murakami Secured Claim - $2,945,000 | Impaired. |
| 37C-1 | Unsecured Claims — Tenant Security Deposits - $58,830 | Unimpaired. |
| 37C-2 | General Unsecured Claims - $2,452 | Unimpaired. |
| 37D | Intercompany Claims - $5,508,367 | Unimpaired. |
| 37E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **38.** | **Meruelo Maddux Properties – 1919 Vineburn Street LLC** | |
| 38A-1 | Los Angeles County Secured Tax Claim - $138,067 | Impaired. |
| 38A-2 | Imperial Capital Bank Secured Claim - $5,468,543 | Impaired. |
| 38C-1 | Unsecured Claims       Tenant Security Deposits - $42,210 | Unimpaired. |
| 38C-2 | General Unsecured Claims - $2,652 | Unimpaired. |
| 38D | Intercompany Claims - $3,035,648 | Unimpaired. |
| 38E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **39.** | **Meruelo Maddux Properties – 2131 Humboldt Street LLC** | |
| 39A-1-a | Los Angeles County Secured Tax Claim Against 2131 Humboldt Encumbered Real Property - $263,168 | Impaired. |
| 39A-1-b | Los Angeles County Secured Tax Claim Against 2131 Humboldt Unencumbered Real Property - $145,353 | Impaired. |
| 39A-2 | Chamlian Secured Claim - $7,000,000 | Impaired. |
| 39C-1 | Unsecured Claims — Tenant Security Deposits - $10,500 | Unimpaired. |
| 39C-2 | General Unsecured Claims - $3,631 | Unimpaired. |
| 39D | Intercompany Claims - $13,680,208 | Unimpaired. |
| 39E | Equity Interests of MMP Ventures (100%) | Unimpaired |

35412

| **40.** | **Merco Group – 2529 Santa Fe Avenue LLC** | |
|---|---|---|
| 40A-1 | Los Angeles County Secured Tax Claim - $126,578 | Impaired. |
| 40A-2 | 1248 S. Figueroa Secured Claim - $3,134,825 | Impaired. |
| 40C-1 | Unsecured Claims — Tenant Security Deposits - $15,000 | Unimpaired. |
| 40C-2 | General Unsecured Claims - $25,049 | Unimpaired. |
| 40D | Intercompany Claims - $3,703,446 | Unimpaired. |
| 40E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **41.** | **2640 Washington Boulevard LLC** | |
| 41A-1 | Los Angeles County Secured Tax Claim - $212,108 | Impaired. |
| 41A-2 | East West Bank as successor to UCB Secured Claim - $6,066,073 | Impaired. |
| 41C-1 | Unsecured Claims — Tenant Security Deposits - $52,150 | Unimpaired. |
| 41C-2 | General Unsecured Claims - $19,358 | Unimpaired. |
| 41D | Intercompany Claims - $3,920,800 | Unimpaired. |
| 41E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **42.** | **Meruelo Maddux Properties – 2941 Lenwood Road LLC** | |
| 42A-1 | FNBN Secured Claim - $8,983,643 | Impaired. |
| 42C | General Unsecured Claims - $6,281,773 | Unimpaired. |
| 42D | Intercompany Claims - $6,279,821 | Unimpaired. |
| 42E | Equity Interests of MMP Ventures (100%) | Unimpaired |
| **43.** | **Merco Group – 3185 E. Washington Boulevard LLC** | |
| 43A-1-a | Los Angeles County Secured Tax Claim re 3185 E. Washington Boulevard Encumbered Real Property - $191,130 | Impaired. |
| 43A-1-b | Los Angeles County Secured Tax Claim re 3185 E. Washington Boulevard Unencumbered Real Property- $969 | Impaired. |
| 43A-2 | Chinatrust Secured Claim - $9,541,565 | Impaired. |
| 43C-1 | General Unsecured Claims - $1,702 | Unimpaired. |
| 43C-2 | Unsecured Claims — Tenant Security Deposits $250,000 | Unimpaired. |
| 43D | Intercompany Claims - $1,938,813 | Unimpaired. |

35412

| | | |
|---|---|---|
| 43E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **44.** | **Merco Group – 4th Street Center LLC** | |
| | | |
| | | |
| 44C-1 | General Unsecured Claims - $17,652 | Unimpaired. |
| 44C-2 | General Unsecured Claims — Tenant Security Deposits - $4,500 | Unimpaired. |
| 44D | Intercompany Claims - $6,840,375 | Unimpaired. |
| 44E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **45.** | **Merco Group – 425 W. 11th Street LLC** | |
| 45A-1 | Los Angeles County Secured Tax Claim - $332,662 | Impaired. |
| | | |
| 45C | General Unsecured Claims - $4,266 | Unimpaired. |
| 45D | Intercompany Claims - $11,737,757 | Unimpaired. |
| 45E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **46.** | **Merco Group – 620 Gladys Avenue LLC** | |
| | | |
| | | |
| | | |
| 46C-1 | Unsecured Claims — Tenant Security Deposits - $22,682 | Unimpaired. |
| 46C-2 | General Unsecured Claims - $1,501 | Unimpaired. |
| 46D | Intercompany Claims - $9,788,629 | Unimpaired. |
| 46E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **47.** | **Merco Group – 2001-2021 W. Mission Boulevard LLC** | |
| 47A-1 | Los Angeles County Secured Tax Claim - $105,146 | Impaired. |
| 47A-2 | PNL Pomona LP Secured Claim — to be determined | Impaired. |
| 47C | General Unsecured Claims - $5,402 | Unimpaired. |
| 47D | Intercompany Claims - $12,948,409 | Unimpaired. |

35412

| | | |
|---|---|---|
| 47E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **48.** | **Merco Group – Little J LLC** | |
| 48A-1-a | Los Angeles County Secured Tax Claim re 1119 S. Olive Street - $52,446 | Impaired. |
| 48A-1-b | Los Angeles County Secured Tax Claim re 1124 S. Olive Street - $64,262 | Impaired. |
| | | |
| 48C-2 | General Unsecured Claims - $2,252 | Unimpaired. |
| 48C-3 | Tenant Security Deposit Claims - $7,000 | Unimpaired. |
| 48D | Intercompany Claims - $8,299,295 | Unimpaired. |
| 48D | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **49.** | **Merco Group – Southpark LLC** | |
| 49A-1 | Los Angeles County Secured Tax Claim - $570,318 | Impaired. |
| 49A-2 | Bank of America Secured Claim - $20,000,000 | Impaired. |
| 49C-1 | General Unsecured Claims - $1,308,981 | Unimpaired. |
| 49C-2 | Tenant Security Deposit Claims - $31,000 | Unimpaired. |
| 49D | Intercompany Claims - $37,919,096 | Unimpaired. |
| 49E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **50.** | **Merco Group LLC** | |
| | | |
| | | |
| | | |
| 50C-1 | General Unsecured Claims - $271,104 | Unimpaired. |
| 50D | Intercompany Claims - $16,604,526 | Unimpaired. |
| 50E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **51.** | **Meruelo Farms LLC** | |
| 51A-1-a | Los Angeles County Secured Tax Claim re 815 E. Temple Street - $94,319 | Impaired. |
| 51A-1-b | Los Angeles County Secured Tax Claim re 729 E. Temple Street - $208,977 | Impaired. |
| 51A-2 | Imperial Capital Bank Secured Claim - $6,978,349 | Impaired. |

35412

| | | |
|---|---|---|
| 51A-3 | Pacific Commerce Secured Claim - $3,350,000 | Impaired. |
| 51C | General Unsecured Claims - $187,099 | Unimpaired. |
| 51D | Intercompany Claims - $9,138,503 | Unimpaired. |
| 51E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **52.** | **Meruelo Wall Street LLC** | |
| 52A-1 | Los Angeles County Secured Tax Claim - $423,210 | Impaired. |
| 52A-2 | East West Bank as successor to UCB Secured Claim - $20,850,859 | Impaired. |
| 52B | Priority Benefits Claims - $9,542 | Impaired. |
| 52C-1 | Unsecured Claims — Tenant Security Deposits - $297,650 | Unimpaired. |
| 52C-2 | General Unsecured Claims - $16,640 | Unimpaired. |
| 52D | Intercompany Claims - $3,133,131 | Unimpaired. |
| 52E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **53.** | **Meruelo Maddux – Mission Boulevard LLC** | |
| 53A-1 | Los Angeles County Secured Tax Claim - $290,497 | Impaired. |
| 53A-2 | Kennedy Funding, Inc. Secured Claim - $8,800,000 | Impaired. |
| 53C | General Unsecured Claims - $15,539 | Unimpaired. |
| 53D | Intercompany Claims - $20,054,067 | Unimpaired. |
| 53E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **54.** | **Santa Fe Commerce Center, Inc.** | |
| 54A-1 | Los Angeles County Secured Tax Claim - $99,452 | Impaired. |
| 54A-2 | Berkadia Secured Claim - $10,170,904 | Impaired. |
| 54A-3 | RoofCorp of CA, Inc. Secured Claim - $111,377 | Impaired. |
| 54C-1 | Unsecured Claims — Tenant Security Deposits - $79,667 | Unimpaired. |
| 54C-2 | General Unsecured Claims - $16,059 | Unimpaired. |
| 54E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

**B.**     **General Provisions For Treatment Of Claims And Interests**

**1.**     **Unclassified Claims (Applicable to all of the Debtors)**

35412

1    Certain types of claims are not placed into voting classes; instead they are unclassified.  They

2    are not considered impaired and they do not vote on the Charlestown Plan because they are

3    automatically entitled to a specific treatment provided for them in the Bankruptcy Code. As such, the

4    Debtors have not placed the following claims in a class. The treatment of these claims is provided

5    below.

6    **a.  Administrative Claims**

7    Administrative Claims are claims for costs or expenses of administering the Debtors' Chapter

8    11 Cases which are allowed under Bankruptcy Code Section 507(a)(2). The Bankruptcy Code

9    requires that all Administrative Claims be paid on the Effective Date of the Charlestown Plan, unless

10    a particular claimant agrees to a different treatment.

11    **(1)    General**

12    Subject to the bar date provisions herein and additional requirements for professionals and

13    certain other entities set forth below, the surviving Reorganized Debtor shall pay to each Holder of an

14    Allowed Administrative Claim, on account of its Administrative Claim and in full satisfaction

15    thereof, Cash equal to the Allowed amount of such Administrative Claim on the Effective Date or as

16    soon as practicable thereafter, unless the Holder agrees or shall have agreed to other treatment of such

17    Claim. Payment on an Administrative Claim which arose in the ordinary course of each Debtor's

18    business, including Ordinary Course Professionals, will be made when such payment would have

19    become due in the ordinary course of each Debtor's business or under the terms of the Claim in the

20    absence of the Chapter 11 Cases.

21    **(2)    Payment of Statutory Fees**

22    On or before the Effective Date, all fees payable pursuant to 28 U.S.C. § 1930, as determined

23    by the Bankruptcy Court at the hearing on Confirmation, shall be paid in Cash equal to the amount of

24    such Administrative Claim.

25    **(3)    Bar Date for Administrative Claims**

26    *(a)    General Provisions*

27    Except as provided below for (i) non-tax liabilities incurred in the ordinary course of business

28    by each Debtor and (ii) Postpetition Tax Claims, requests for payment of Administrative Claims must

41

35412

be Filed and served on counsel for the Reorganized Debtor no later than forty-five (45) days after the Effective Date, or such later date, if any, as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period. Holders of Administrative Claims (including, without limitation, professionals requesting compensation or reimbursement of expenses and the Holders of any Claims for federal, state or local taxes) that are required to File a request for payment of such Claims and that do not File such requests by the applicable bar date shall be forever barred from asserting such Claims against any of the Debtors or the Reorganized Debtor or any of their respective properties.

### *(b)*    *Professionals*

All professionals or other Persons requesting compensation or reimbursement of expenses pursuant to any of Sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered on or before the Effective Date (including, inter alia, any compensation requested by any professional or any other Person for making a substantial contribution in the Reorganization Case) shall File and serve on the Reorganized Debtor and the Creditors' Committee an application for final allowance of compensation and reimbursement of expenses no later than (i) forty-five (45) days after the Effective Date, or (ii) such later date as the Bankruptcy Court shall order upon application made prior to the end of such 45-day period. Objections to applications of professionals for compensation or reimbursement of expenses must be Filed and served on Reorganized Debtor, the Creditors' Committee and the professionals to whose application the objections are addressed on or before (i) fourteen days after such application is Filed and served or (ii) such later date as the Bankruptcy Court shall order or upon agreement between the Reorganized Debtor and the affected professional.

Any professional fees and reimbursements of expenses incurred by the Reorganized Debtor after the Effective Date may be paid by the Reorganized Debtor without application to or Order of the Bankruptcy Court.

### *(c)*    *Ordinary Course Liabilities*

Holders of Administrative Claims based on liabilities incurred post-petition in the ordinary course of the Debtors' businesses, including Ordinary Course Professionals, (other than Claims of governmental units for taxes or Claims and/or penalties related to such taxes) shall not be required to

35412

File any request for payment of such Claims. Such Administrative Claims shall be assumed and paid by such Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claim, without any further action by the Holders of such Claims.

### *(d)* *Tax Claims*

All requests for payment of Postpetition Tax Claims, for which no bar date has otherwise been previously established, must be Filed on or before the later of (i) forty-five (45) days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable governmental unit. Any Holder of any Postpetition Tax Claim that is required to File a request for payment of such taxes and that does not File such a Claim by the applicable bar date shall be forever barred from asserting any such Postpetition Tax Claim against any of the Debtors or Reorganized Debtor, or any of their respective properties, whether any such Postpetition Tax Claim is deemed to arise prior to, on, or subsequent to, the Effective Date. The Debtors are paying all Postpetition Tax Claims as they come due; however, certain taxing authorities conduct audits which may result in a postpetition tax liability of which the Debtors are currently unaware. The County of Los Angeles has filed administrative priority claims against MMPI and MMP 12385 San Fernando Road for $229,193 and $6,864 respectively. The Debtors believe these taxes have been paid and, in any event, will be resolved under a settlement between the Debtors and the County of Los Angeles.

The San Bernardino County Taxing Authority has asserted a tax claim for the 2010-11 tax year.  The Reorganized Debtor will pay such real property taxes in the normal and ordinary course of business together with any and all costs, fees and interest if applicable pursuant to 11 USC Sections 506(b) and 511.  Any lien created on account of the unpaid taxes shall remain until paid in full.

### (4)    Inter-Debtor Administrative Claims

The Debtors' cash management system provides for funds to flow to and from a cash concentration account maintained by MMPLP. The concentration account is linked to the operating bank accounts of each of the Debtors, which bank accounts are maintained as zero balance accounts. When needed to fund payment on checks issued by a particular affiliate, funds are transferred from

35412

the concentration account to the operating account of that affiliate. Excess funds, if any, are invested in interest bearing accounts pending their utilization. The cash management system produces inter-Debtor account receivables and account payables. Transactions occurring after the Petition Date produce inter-Debtor Administrative Claims owed to MMPLP.  As of March 31, 2010, the aggregate amount of the inter-Debtor Administrative Claims owed to MMPLP is approximately $3,583,372. MMPLP shall retain such Administrative Claims and all rights, interests, and obligations related thereto but, notwithstanding, MMPLP shall agree to subordinate its right to receive payment on account of such Administrative Claims until the Holders of Allowed Claims in Classes B and C have received the distributions they are entitled to received under this Charlestown Plan.

### b. **Priority Tax Claims**

Priority Tax Claims are certain unsecured income, employment and other taxes described by Bankruptcy Code Section 507(a)(8). The Bankruptcy Code requires that each holder of such a 507(a)(8) priority Tax Claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years after the Petition Date. The following chart lists the Debtors' Section 507(a)(8) priority Tax Claims and their treatment under this Charlestown Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| **1. Meruelo Maddux Properties Inc.** | | |
| Name – IRS<br>Type of tax – Income | $304 | See below. |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| Name – State of Delaware<br>Type of tax -- Franchise | $125,138 | See below. |
| **2. Meruelo Maddux Properties L.P.** | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| **4. Meruelo Maddux Construction, Inc.** | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| **10. Meruelo Maddux Properties – 1009 N. Citrus Avenue, Covina** | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| **11. Meruelo Maddux – 230 W. Avenue 26 LLC** | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

35412

**12.  Meruelo Maddux – 306-330 N. Avenue 21 LLC**

| | | |
|---|---|---|
| Name – City of Los Angeles<br>Type of tax – Business | $151,232 | See below. |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**13.  Meruelo Maddux – 817-825 S. Hill Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**14.  Meruelo Maddux – 1000 E. Cesar Chavez LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**15.  Meruelo Maddux Properties – 1060 N. Vignes LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| State Board of Equalization<br>Type of Tax – Hazardous Substance Tax | $61,916 | See below. |

**17.  Meruelo Maddux – 5500 Flotilla Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**18.  Meruelo Maddux Properties – 12385 San Fernando Road LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**20.  Merco Group – 801 E. 7th Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**21.  Merco Group – 1211 E. Washington Boulevard LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**28.  Meruelo Maddux – 3rd and Omar Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**29.  Meruelo Maddux – 336 W. 11th Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**30.  Meruelo Maddux – 500 Mateo Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**31.  Meruelo Maddux Properties – 760 S. Hill Street LLC**

| | | |
|---|---|---|
| Name – City of Los Angeles<br>Type of tax – Business | $1,885 | See below. |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**35.  Meruelo Maddux – 915-949 S. Hill Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

**39.  Meruelo Maddux Properties – 2131 Humboldt Street LLC**

| | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |

35412

| 42. Meruelo Maddux Properties – 2951 Lenwood Road LLC | | |
|---|---|---|
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| 52. Meruelo Wall Street LLC | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| TOTAL[6] | $340,779 | |

Except as otherwise provided below, or as otherwise agreed to by Reorganized Debtor and the applicable taxing agency, Holders an Allowed Priority Tax Claims shall receive the Common Unsecured Claim Treatment, i.e., payment in full on or before 30 days after the Effective Date.

In the event a Disputed Priority Tax Claim becomes an Allowed Priority Tax Claim after the Effective Date, the payment will be due 30 days after the date the Disputed Claim becomes an Allowed Claim. Creditors who have agreed to other treatments in court-approved settlements shall receive the treatments provided in those settlements notwithstanding the Allowance of some or all of their Claims.

### 2. **Common Class Treatments for Classified Claims**

The following are Common Class Treatments for the following classes of Claims and Interests: (i) Los Angeles Tax Claims, (ii) Secured Lender Claims and Settled Secured Lender Claims, (iii) Other Priority Claims, (iv) Unsecured Tenant Security Deposit Claims, (v) General Unsecured Claims, (vi) Guaranty claims and Settled Guaranty Claims; (vii) Intercompany Claims, and (viii) Equity Interests. The Classes of Claims and Interests for each Debtor will either receive the Common Treatment or a treatment specific to a particular Class and Debtor. For each Class and for each Debtor, the Charlestown Plan will specify whether such class will receive the common treatment set forth herein or another treatment.

The Charlestown Proponents expressly reserve the right, at any time during the term of the

---

[6] The Franchise Tax Board has filed claims for franchise taxes for the 2009 year corporate tax fee of $800 in the Debtors' cases scheduled above. Debtors' records indicate that all such taxes have been paid and, accordingly, the above schedule shows the amount of the such FTB claims to be zero but if it is determined that the FTB has Allowable Claims, the treatment is as provided above.

35412

Charlestown Plan, to refinance the obligations secured by any of their real properties or to sell such

any or all of such real properties and satisfy the full amount of the Allowed Secured Claims against

such real property(ies) from the proceeds of such refinancing. The Charlestown Proponents also

reserve the right to make full or partial repayment of the debt at any time on or following the

Effective Date.


### a.  <u>Common Los Angeles Tax Claim Treatment</u>

Los Angeles Tax Claims will be paid in accordance with the terms of the Bankruptcy Court-

approved settlement between the Debtor and Los Angeles County.


### b.  <u>Common Secured Lender Claim Treatment</u>

The Holder shall receive deferred Cash payments over a period of four years from the

Effective Date in an amount equal to the amount of the Allowed Secured Claim plus interest from the

Effective Date on the unpaid portion of the Allowed Secured Claim at the rate prescribed below.

Payments shall be made in the amount of the monthly accruing interest with the principal balance and

any unpaid interest due and payable four years after the Effective Date. The monthly installments of

interest shall be payable on or before the fifteenth (15th) day of each month, with the first installment

due on or before the fifteenth (15th) day of the month following the month in which the Effective

Date occurs.  The first six installments, however, will be paid together on the date that the first

installment is due.

Each installment shall be in the amount equal to interest on the Allowed Secured Claim at the

rate of 5.25% per annum or as otherwise established by the Bankruptcy Court, provided, however,

that in the event such Claim is not an Allowed Secured Claim at the Effective Date then interest shall

be payable on the undisputed portion of such Claim until the Claim is allowed pursuant to a Final

Order of the Bankruptcy Court. Once the Claim is an Allowed Secured Claim pursuant to a Final

Order, then on the next interest payment date, the Holder shall receive a payment equal to the unpaid

interest due and owing on the disputed portion of the Claim from the Effective Date.

The terms and conditions of the agreements or instruments between the Holder and the Debtor

35412

shall be restructured and amended as of the Effective Date pursuant to Loan Modification Agreement, the form of which is attached to the Disclosure Statement as Exhibit D.  The Holder and Reorganized Debtor shall, within a reasonable period of time after the Effective Date (or after a Final Order of the Bankruptcy Court allowing the Claim) complete the Loan Modification Agreement consistent with the terms of this Charlestown Plan, and execute and deliver the same to be effective as of the Effective Date.  If there shall be found any error in the Loan Modification Agreement such that it was not completed consistent with the terms of this Charlestown Plan, the Holder and the Reorganized Debtor shall correct and re-execute the Loan Modification Agreement to be consistent with the Charlestown Plan.  Except as provided in this section and the Loan Modification Agreement, and notwithstanding Section 1141(c) or any other provision of the Bankruptcy Code, all valid, enforceable and perfected prepetition liens of the Holder in its Collateral shall survive the Effective Date and continue in accordance with the contractual terms of the underlying agreements with such Holder and/or applicable law until the Holder's Allowed Secured Claim is satisfied pursuant to the Charlestown Plan; provided however, that the Holder shall be prohibited from exercising rights or remedies pursuant to such underlying agreements so long as the Reorganized Debtor is in compliance with the Charlestown Plan. Any lien or interest granted to the Holder by the Bankruptcy Court as adequate protection shall be released and extinguished upon confirmation.

### c.  **Common Settled Secured Claim Treatment**

The foregoing treatment shall not supersede the terms of Bankruptcy Court approved settlements.  Holders of Secured Claims who settled with the Debtors and whose settlements have been approved by the Bankruptcy Court will be paid in accordance with their settlement agreements.

### d.  **Common Other Priority Claim Treatment**

This Class includes Other Priority Claims for an amount entitled to priority under Sections 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of the Bankruptcy Code, and does not include any Administrative Claim or Tax Claim. These unsecured Other Priority Claims are for unsecured Claims for accrued employee compensation earned within 180 days prior to the Petition Date, to the extent of

35412

1   $10,950 per employee.

2         Holders of Other Priority Claims will be paid in full on the Effective Date except to the extent

3   such Claim includes accrued vacation or sick pay and the Holder of the Other Priority Claim remains

4   employed with the Reorganized Debtors after the Effective Date.  If so, the vacation or sick pay shall

5   be reinstated and the Holder shall be authorized to use such amounts for vacation or sick time

6   following the Effective Date.

7

8         **e.   Common Tenant Security Deposits Treatment**

9         The Allowed Claims of the Holders shall be reinstated as of the Effective Date of the

10  Charlestown Plan. In the event the Debtors transfer title to the real property related to an unexpired

11  lease prior to the Effective Date or pursuant to the Plan, the Debtors will assign the related lease and

12  transfer any corresponding security deposits to the new lessor.

13        **f.   Common Unsecured Claim Treatment**

14        The Holders of Allowed General Unsecured Claims shall, on the Effective Date, receive a

15  cash payment equal to the full amount of their Allowed Claim plus interest from the Petition Date to

16  the Effective Date.  The post-petition, pre-Effective Date interest shall accrue at the rate determined

17  by the Bankruptcy Court to be necessary for Holders to be unimpaired..

18

19        In the event a Disputed Claim becomes an Allowed Claim after the Effective Date, the

20  payment will be due 30 days after the date the Disputed Claim becomes an Allowed Claim.

21        Creditors who have agreed to other treatments in court-approved settlements shall receive the

22  treatments provided in those settlements notwithstanding the Allowance of some or all of their

23  Claims as General Unsecured Claims.

24

25        **g.   Common Unsecured Guaranty Claim Treatment**

26        Claims in this Class consist of Guaranty Claims on obligations for which another one of the

27  Debtors is the principal obligor and for which the principal obligation is provided for under this

28  Charlestown Plan or under the plan filed by MM 845 S. Flower and Chinatown.

49

35412

Holders of Claims in this class will retain their existing pre-petition guaranties.  The parties'
respective rights under the guaranties will not be altered or modified except that (1) all pre-Effective
Date defaults will be deemed cured and/or waived; (2) the primary obligations secured by the
guaranties shall be the obligations of the primary obligors as modified by their respective plans of
reorganization; and (3) defaults occurring post-Effective Date must relate to either the guarantor's or
the primary obligor's failure to perform their obligations as modified under their respective plans of
reorganization.

### h.  Common Treatment for Guaranty Claims held by Settling Guaranty Creditors

The foregoing treatment shall not supersede treatment specified in Bankruptcy Court-
approved settlements.  Holders of Guaranty Claims who have agreed to a different treatment in
Bankruptcy Court-approved settlement will receive that treatment.

### i.  Common Intercompany Claim Treatment

The Holders shall retain such Claims and all rights, interests, and obligations related thereto
but, notwithstanding, the Holders of Intercompany Claims consent to the treatment afforded and
distributions to be made under this Charlestown Plan to Holders in each class of Allowed Claims.

### j.  Common Equity Interest Treatment

The Holders of the Equity Interests in the Debtors in this Class shall retain their Equity
Interests in the Debtor.

### C.  Treatment of Classified Claims Against and Interests Against Each of the Debtors

### 1.  CLAIMS AGAINST AND INTERESTS IN MMPI

### a.  Class 1A — Secured Claim of Oliver, Sandifer

The Class lA Claim is unimpaired and the Holder is not entitled to vote on the Charlestown
Plan.  On the Effective Date, the Holder's claim shall be paid in full.[7]

### b.  Class 1B — Other Priority Claims

---

[7] The Reorganized Debtor will investigate the Oliver, Sandifer claim and may object to the claim at the
appropriate time.

35412

This Class is Unimpaired and Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Other Priority Claim Treatment on account of their Allowed Claims.

### c.  Class 1C-1 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  Class 1C-2A Unsecured Guaranty Claims

This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Guaranty Claim Treatment on Account of their Allowed Claims.

### e.  Class 1C-2B Unsecured Guaranty Claims

This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Treatment for Guaranty Claims held by Settling Guaranty Creditors.

### f.  Class 1E Non-Insider Equity Interests in the Debtor

This Class is impaired and is entitled to vote on the Charlestown Plan. On the Effective Date all Holders of MMPI Existing Common Stock shall have the option to either (i) exchange their MMPI Existing Common Stock for a cash payment of $0.35 per share of MMPI Existing Common Stock (such Holders, the "Cash Election Holders"), or (ii) to retain their MMPI Existing Common Stock (such Holders, the "Stock Retention Holders"), subject to operation of this Plan.

In the event that the Cash Election Holders, together with the Insider Cash Election Holders (as defined immediately below in Section III.C.h) own less than 55% of the shares of MMPI Existing Common Stock, then the Stock Retention Holders, notwitststanding their election to retain their MMPI Existing Common Stock, will be deemed to have elected, on a pro rata basis together with the Insider Stock Retention Holders, to exchange a sufficient number of shares of MMPI Existing Common Stock such that the total number of shares exchanged for cash (including the shares held by the Cash Election Holders and the Insider Cash Election Holders) equals 55% of the shares of MMPI Existing Common Stock.  Such Stock Retention Holders who are deemed to have elected to exchange

35412

a pro rata portion of their shares of MMPI Existing Common Stock shall receive a cash payment of $0.35 per share of such stock.

In the event that the Cash Election Holders, together with the Insider Cash Election Holders own more than 55% of the shares of MMPI Existing Common Stock, then the Cash Election Holders, notwithstanding their election to receive a cash distribution in exchange for their shares, will be deemed to have elected, on a pro rata basis together with the Insider Cash Election Holders, to retain a sufficient number of shares of MMPI Existing Common Stock such that the total number of shares exchanged for cash equals 55% of the shares of MMPI Existing Common Stock.

The MMPI Existing Common Stock that is retained by Holders in accordance with the foregoing shall be subject to a reverse stock split as described herein at Section IV.F.2. The MMPI Existing Common Stock that is exchanged for cash shall be transferred to MMPI Acquisition on the Effective Date as described herein at Section IV.E.a.

**g.  Class 1F Insider Equity Interests in the Debtor**

This Class is impaired and is entitled to vote on the Charlestown Plan. Holders of Class 1F Interests shall receive the same treatment as Holders of Class 1E Interests except that cash distributions on account of Insider Equity Interests will be held in reserve for 90 days to permit the Reorganized Debtor to conduct a forensic investigation and audit of potential claims. If the Reorganized Debtor has not brought an action against an Insider within the 90 day period, that Insider's distribution will be released unless the Court, on motion, has extended the reserve period. If an action is commenced, to continue to hold the distribution in reserve, the Reorganized Debtor must bring a motion in the Bankruptcy Court (or such other court where the action is pending) under applicable non-bankruptcy law regarding provisional remedies (e.g., for an injunction, attachment or protective order).

If the Bankruptcy Court rules that the reserve period must be less than the 90 days specified or that the Charlestown Plan must give Insiders the same treatment as Non-Insiders, then the Charlestown Plan will provide for the lesser reserve period or will provide Insiders with the same treatment as Non-Insiders as necessary.

35412

### 2.    CLAIMS AGAINST AND INTERESTS IN MMPLP

**a.  Class 2C-1 Unsecured Guaranty Claims**

This Class is Impaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Guaranty Claim Treatment on account of their Allowed Claims.

**b.  Class 2C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.  Class 2D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.  Class 2E Equity Interests**

This Class is Impaired. The LTIP Units shall be cancelled and the Holders of Interests in the LTIP Units shall not receive any distributions or retain any property on account of their Equity Interests. The remaining Interests shall be extinguished by the merger of MMPLP with or into MMPI.

### 3.    CLAIMS AGAINST AND INTERESTS IN MM VENTURES, LLC

**a.  Class 3C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment

**b.  Class 3D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**c.  Class 3E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

35412

### 4.    CLAIMS AGAINST AND INTERESTS IN MM CONSTRUCTION

**a.   Class 4C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b.   Class 4D Intercompany Claims**

This Class is Unimpaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**c.   Class 4E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment.

### 5.    CLAIMS AGAINST AND INTERESTS IN MM MANAGEMENT

**a.   Class 5B Other Priority Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Other Priority Claim Treatment on account of their Allowed Claims.

**b.   5C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.   Class 5D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.   Class 5E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment.

### 6.    CLAIMS AGAINST AND INTERESTS IN MM - 555 CENTRAL AVENUE

35412

**a.  Class 6C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b.  Class 6D Intercompany Claims**

This Class is Unimpaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**c.  Class 6E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment.

**7.  CLAIMS AGAINST AND INTERESTS IN MG – OVERLAND TERMINAL**

**a.  Class 7C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b.  Class 7D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**c.  Class 7E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**8.  CLAIMS AGAINST INTERESTS IN NATIONAL COLD STORAGE**

**a.  Class 8C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b.  Class 8E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest

35412

Treatment.

### 9.   CLAIMS AGAINST AND INTERESTS IN WALL STREET MARKET

**a.   Class 9C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b.   Class 9D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**c.   Class 9E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment.

### 10.   CLAIMS AGAINST THE INTERESTS IN MMP 1009 N. CITRUS

**a.   Class 10A Los Angeles County Secured Tax Claim**

The Class 10A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of the Real Property[*] | $3,120,000 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $118,420 |
| Estimated Quarterly Payment | $11,141 |
| Total Payout Amount | $178,256 |

The payment obligations with respect to this Claim shall be secured by the MMP 1009 N. Citrus Real Property.

**b.   Class 1OC General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.   Class 10D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan.

---
[8] Unless otherwise noted the source of the valuation of Real Property is from the Debtors.

35412

The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.  Class 10E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

## 11.    CLAIMS AGAINST AND INTERESTS IN MM 230 W. AVENUE 26

**a.  Class 11A Los Angeles County Secured Tax Claim**

The Class 11A Claim is Impaired and therefore the Holder is entitled to vote on the Charlestown Plan.  The Holder shall receive the Common Los Angeles Tax Claim Treatment

| Value of Real Property | | $5,200,000 |
|---|---|---|
| Priority of Lien | | 1st |
| Total Prepetition Claim | | $163,484 |
| Estimated Quarterly Payment | | $15,351 |
| Total Payout Amount | | $245,616 |

The payment obligations with respect to this Claim shall be secured by the MM 230 W. Avenue 26 Real Property.

**b.  Class 11C-1 Unsecured Claim Tenant Security Deposits**

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

**c.  Class 11C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**d.  Class 11D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e.  Class 11E Equity Interest**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

35412

## 12.  CLAIMS AGAINST AND INTERESTS IN

## MMP 306-330 N. AVENUE 21

### a.  Class 12A Los Angeles County Secured Tax Claim

The Class 12A Claim in Impaired and therefore the Holder is entitled to vote on the Charlestown Plan.  The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $2,483,750 |
| Priority of Lien | 1St |
| Total Prepetition Claim | $111,937 |
| Estimated Quarterly Payment | $10,511 |
| Total Payout Amount | $168,176 |

The payment obligations with respect to this Claim shall be secured by the MMP 306-330 N. Avenue 21 Real Property.

### b.  Class 12C-1 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### c.  Class 12C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  e.   Class 12D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### e.  Class 12E Equity Interest

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment.

## 13.  CLAIMS AGAINST AND INTERESTS IN MM 817-825 S. HILL

## STREET

### a.  Class 13A Los Angeles County Secured Tax Claim

The Class 13A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $7,191,320 |

35412

| Priority of Lien | 1St |
|---|---|
| Total Prepetition Claim | $350,917 |
| Estimated Quarterly Payment | $33,120 |
| Total Payout Amount | $529,920 |

The payment obligations with respect to this Claim shall be secured by the MM 817-825 S. Hill Street Real Property.

**b.  Class 13C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.  Class 13D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.  Class 13E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 14.   14. CLAIMS AGAINST AND INTERESTS IN MM —1000 E. CESAR CHAVEZ

**a.  Class 14A Los Angeles County Secured Tax Claim**

The Class 14A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $4,454,579 |
|---|---|
| Priority of Lien | 1St |
| Total Prepetition Claim | $167,582 |
| Estimated Quarterly Payment | $15,740 |
| Total Payout Amount | $251,840 |

The payment obligations with respect to this Claim shall be secured by the MM 1000 E. Cesar Chavez Real Property.

**b.  Class 14C-1 Unsecured Claim Tenant Security Deposits**

This Class is Unimpaired and the Holder is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment

**c.  Class 14C-2 General Unsecured Claims**

35412

This Class receives the Common Unsecured Claim Treatment.

**d.  Class 14D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e.  Class 14E Equity Interest**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 15.      15. CLAIMS AGAINST AND INTERESTS IN MMP 1060 N. VIGNES

**a.  Class 15A Los Angeles County Secured Tax Claim**

The Class 15A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $8,646,650 |
| Priority of Lien | 1St |
| Total Prepetition Claim | $115,121 |
| Estimated Quarterly Payment | $10,810 |
| Total Payout Amount | $172,960 |

The payment obligations with respect to this Claim shall be secured by the MMP 1060 N. Vignes Real Property.

**b.  Class 15C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.  Class 15D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.  Class 15E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 16.      CLAIMS AGAINST AND INTERESTS IN MM 2415 E. WASHINGTON BOULEVARD

35412

### a.  Class 16A Los Angeles County Secured Tax Claim

The Class 16A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $1,295,000 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $50,987 |
| Estimated Quarterly Payment | $4,845 |
| Total Payout Amount | $77,520 |

The payment obligations with respect to this Claim shall be secured by the MM 2415 E. Washington Boulevard Real Property.

### b.  Class 16C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### c.  Class 16D Intercompany Claims

This Class is Unimpaired and not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### d.  Class 16E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 17.    17. CLAIMS AGAINST AND INTERESTS IN MM 5500 FLOTILLA STREET

### a.  Class 17C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### b.  Class 17D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### c.  Class 17E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment

35412

on account of their Equity Interests.

## 18.    18. CLAIMS AGAINST AND INTERESTS IN MMP 12385 SAN FERNANDO ROAD

**a.  Class 18A Los Angeles County Secured Tax Claim**

The Class 18A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of the Real Property | $9,127,800 |
|---|---|
| Priority of Lien | 1St |
| Total Prepetition Claim | $211,338 |
| Estimated Quarterly Payment | $19,845 |
| Total Payout Amount | $317,520 |

The payment obligations with respect to this Claim shall be secured by the MMP 12385 San Fernando Road Real Property.

**b.  Class 18C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.   Class 18D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.  Class 18E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 19.    CLAIMS AGAINST AND INTERESTS IN MG 146 E. FRONT STREET

**a.  Class 19C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b.  Class 19D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed

35412

Claims.

c. **Class 19E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

20. **CLAIMS AGAINST AND INTERESTS IN MG 801 E. 7TH STREET**

a. **Class 20A Los Angeles County Secured Tax Claim**

The Class 20A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $360,000 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $14,177 |
| Estimated Quarterly Payment | $1,331 |
| Total Payout Amount | $21,296 |

The payment obligations with respect to this Claim shall be secured by the MG 801 E. 7th Street Real Property.

b. **Class 20C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

c. **Class 20D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

d. **Class 20E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

21. **CLAIMS AGAINST AND INTERESTS IN MG 1211 E. WASHINGTON**

a. **Class 21A-1 Los Angeles County Secured Tax Claim**

The Class 21A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment

| | |
|---|---|
| Value of Real Property | $9,108,396 |
| Priority of Lien | 1St |

35412

| Total Prepetition Claim | $245,814 |
|---|---|
| Estimated Quarterly Payment | $23,082 |
| Total Payout Amount | $369,312 |

The payment obligations with respect to this Claim shall be secured by the MG 1211 E. Washington Boulevard Real Property.

**b.   Class 21A-2 Secured Claim of RoofCorp of CA, Inc.**

The Class 21A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive a payment on the Effective Date equal to 50% of the Holder's Allowed Claim and a second payment for the balance of the Holder's Allowed Claim one year after the Effective Date with interest at the rate of 3.5% per annum.

| Value of Real Property | | $9,108,396 |
|---|---|---|
| Priority of Lien | | 2nd |
| Total Claim | | $37,500 |
| Total Payout Amount | | $39,931 |

The payment obligations with respect to this claim shall be secured by the MG 1211 E. Washington Boulevard Real Property.

**c.   Class 21C-1 Unsecured Claims Tenant Security Deposits**

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

**d.   Class 21C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**e.   Class 21D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**f.   Class 21E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**22.   CLAIMS AGAINST AND INTERESTS IN MG 1308 S. ORCHARD**

35412

### a.  Class 22A Los Angeles County Secured Tax Claim

The Class 22A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan.

The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | | |
|---|---|---|
| Value of Real Property | | $700,000 |
| Priority of Lien | | 1St |
| Total Prepetition Claim | | $36,714 |
| Estimated Quarterly Payment | | $3,454 |
| Total Payout Amount | | $55,264 |

The payment obligations with respect to this Claim shall be secured by the MG 1308 S. Orchard Real Property.

### b.  Class 22C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### c.  Class 22D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### d.  Class 22E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 23.    CLAIMS AGAINST AND INTERESTS IN MG 2040 CAMFIELD AVENUE

### a.  Class 23C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### b.  Class 23D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### c.  Class 23E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment

35412

on account of their Equity Interests.

## 24. CLAIMS AGAINST AND INTERESTS IN MG CERES STREET PRODUCE

### a. Class 24A Los Angeles County Secured Tax Claim

The Class 24A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | | |
|---|---|---|
| Value of Real Property | | $2,419,200 |
| Priority of Lien | | 1 St |
| Total Prepetition Claim | | $65,342 |
| Estimated Quarterly Payment | | $6,133 |
| Total Payout Amount | | $98,128 |

The payment obligations with respect to this Claim shall be secured by the MG Ceres Street I Produce Real Property.

### b. Class 24C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### c. Class 24D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### d. Class 24E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 25. CLAIMS AGAINST AND INTERESTS IN MERUELO BALDWIN PARK

### a. Class 25A Los Angeles County Secured Tax Claim

The Class 25A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | | |
|---|---|---|
| Value of Real Property | | $7,522,000 |
| Priority of Lien | | 1St |
| Total Prepetition Claim | | $201,681 |

35412

| Estimated Quarterly Payment | | $18,951 |
|---|---|---|
| Total Payout Amount | | $303,216 |

The payment obligations with respect to this Claim shall be secured by the Meruelo Baldwin Park Real Property.

### b.  Class 25C-1 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### c.  Class 25C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  Class 25D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### e.  Class 25E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 26.   CLAIMS AGAINST AND INTERESTS IN SANTA FE & WASHINGTON MARKET

### a.  Class 25A Los Angeles County Secured Tax Claim

The Class 26A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | | $4,829,200 |
|---|---|---|
| Priority of Lien | | 1St |
| Total Prepetition Claim | | $45,481 |
| Estimated Quarterly Payment | | $3,439 |
| Total Payout Amount | | $55,024 |

The payment obligations with respect to this Claim shall be secured by the Santa Fe & Washington Market Encumbered Real Property and the Santa Fe & Washington Market

35412

Unencumbered Real Property.

### b.  Class 26C-1 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### c.  Class 26C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  Class 26D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### e.  Class 26E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interest.

### 27.    CLAIMS AGAINST AND INTERESTS IN MG 5707 S. ALAMEDA

### a.  Class 27A Los Angeles County Secured Tax Claim

The Class 27A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | | $5,034,320 |
|---|---|---|
| Priority of Lien | | 1St |
| Total Prepetition Claim | | $112,423 |
| Estimated Quarterly Payment | | $10,555 |
| Total Payout Amount | $168,880 | |

The payment obligations with respect to this Claim shall be secured by the 5707 S. Alameda Real Property.

### b.  Class 27C-1 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### c.  Class 27C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

35412

### d.  Class 27D Intercompany Claims

This Class is Unimpaired and not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### e.  Class 27E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

## 28.  CLAIMS AGAINST AND INTERESTS IN MM 3RD & OMAR STREET

### a.  Class 28C-1 Unsecured Claims Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### b.  Class 28C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### c.  Class 28D Intercompany Claims

This Class is Unimpaired and not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### d.  Class 28E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 29.  CLAIMS AGAINST AND INTERESTS IN MM 336 W. 11TH STREET

### a.  Class 29A-1 Los Angeles County Secured Tax Claim

The Class 29A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $5,386,150 |
| Priority of Lien | 1St |
| Total Prepetition Claim | $199,416 |
| Estimated Quarterly Payment | $18,991 |
| Total Payout Amount | $303,856 |

The payment obligations with respect to this Claim shall be secured by the MM 336 W. 11th Street Real Property.

69

35412

**b.  Class 29A-3 Grand Avenue Lofts HOA Secured Claim and Class 29A-4 Grand Avenue Lofts LLC/CIM Urban RE Fund GPII, LLC Secured Claim**

Without resolving the issue of whether members of these classes hold a Secured Claim, have an interest in land, or have some other status, the members of this class have agreed to the following treatment:

1.     The respective rights of the parties to (i) that certain Covenant and Agreement Regarding Maintenance of Off-Street Parking Space, recorded as Instrument Number 04-0123650 in the Office of the County Recorder for Los Angeles County (the "Parking Covenant"); (ii) that certain Grant Deed, dated September 28, 2005 (the "Grant Deed"), (iii) that certain Agreement Regarding Construction of Parking Structure, dated as of September 21, 2005 (the "Construction Agreement"), and (iv) that certain Parking License Agreement, dated as of September 21, 2005 (the "Parking Agreement", and together with the Parking Covenant, the Grant Deed, the Construction Agreement, and the Parking Agreement, the "Parking Agreements"), as such rights existed on the Petition Date, shall pass through the Bankruptcy Cases and the confirmation of the Charlestown Plan unaffected except as specifically set forth below.

2.     The Completion Date, as defined in section 5 of the Construction Agreement shall be extended to February 1, 2015.  The date the Parking Structure (as defined in the Construction Agreement) is Substantially Completed (as defined in the Construction Agreement) may herein be referred to as "Structure Completion Date".  The period between the execution of this Term Sheet and "Structure Completion Date" may be referred to herein as the "Interim Period".

3.     The Monthly Fee set forth in section 2.3 of the License Agreement shall be modified so that, commencing May 1, 2011, GAL shall pay no Monthly Fee until the Structure Completion Date.  To the extent that, on the Effective Date, GAL has paid a Monthly Fee for any month commencing on May 1, 2011 or after, GAL shall have an Allowed Administrative Claim of $11,700 for each month's payment actually made.

4.     Upon the occurrence of the Structure Completion Date , the fee structure under the License Agreement will be reinstated as originally set forth in the License Agreement, respectively.

35412

5.      Through the Structure Completion Date, the HOA shall continue to have the right to use, and the Reorganized Debtors will be obligated to provide the Temporary Parking Spaces (as defined in the License Agreement) on the terms and conditions set forth in the License Agreement, as modified herein.

6.      The Temporary Parking Spaces are to be located on the lot at 1120 S. Grand (the "Interim Parking Property") until the Structure Completion Date.  The Reorganized Debtors shall provide to the HOA the amenities at the Interim Parking Property as hereafter agreed between the Reorganized Debtors and the HOA.

7.      Except as specifically set forth in this Charlestown Plan, the rights of the HOA, including whatever security interest it may have to secure payment of the liquidated damages provision of the Construction Agreement, and as set forth in the documents referenced herein, shall remain in full force and effect and be unaffected by the filing and shall pass through the Bankruptcy Cases and the confirmation of the Charlestown Plan unaffected by the Bankruptcy. Notwithstanding anything to the contrary herein, the HOA shall take no action to enforce its asserted security interest to secure payment of the liquidated damages provision of the Construction Agreement prior to February 1, 2015, provided, further, however, that if the Structure Completion Date occurs on or prior to February 1, 2015, the HOA shall waive its claimed security interest against the Reorganized Debtors and release its asserted lien to secure payment of the liquidated damages provision of the Construction Agreement against the Property.   Notwithstanding the foregoing, the HOA's asserted lien to secure payment of the liquidated damages provision of the Construction Agreement shall remain attached to the Property with the same validity, force, and effect it otherwise may have and shall accrue at the contract rate until the Effective Date.  After the Effective Date, the amount of said asserted lien will not increase so long as the Parking Structure (as defined in the Construction Agreement) is Substantially Completed (as defined in the Construction Agreement) by February 1, 2015.   In the event the Parking Structure (as defined in the Construction Agreement) is not Substantially Completed (as defined in the Construction Agreement) by February 1, 2015, the asserted  lien

35412

1    shall continue to increase and accrue at the contract rate from and after February 1, 2015 as and to

2    the same extent it otherwise would accrue if valid and effective.

3        8.    The Parties agree to the execution and recording of an amendment to the

4    Agreements to evidence the foregoing.

5        9.    Except as expressly modified or amended hereby, the parties agree that the Grant

6    Deed and Parking Agreements shall remain in full force and effect, and shall be enforceable

7    pursuant to their terms.

8        10.    GAL's Objection [Dkt. No. 2498] shall be deemed withdrawn only as to the

9    Charlestown Plan upon the Court's approval of modifications to the Charlestown Plan that

10    incorporate the above treatment.

11        11.    In tandem with the foregoing, and contingent upon the confirmation of the

12    Charlestown Plan containing the terms set forth herein, GAL and the HOA have agreed between

13    themselves as follows as of the Effective Date of the Charlestown Plan:

14            (a)  The Sub-License Fee set forth in section 3.1 of the Parking Sub-License and

15            Agreement ("Sub-License Agreement") shall be modified so that, (i) commencing

16            May 1, 2011 and continuing monthly until May 1, 2012, the Association shall pay

17            20% of the monthly Sub-License Fee in effect as of May 1, 2011, (ii) commencing

18            May 1, 2012 and continuing monthly until May 1, 2013, the Association shall pay

19            30% of the monthly Sub-License Fee in effect as of May 1, 2011, (iv)

20            commencing May 1, 2013 and continuing monthly until the date the Parking

21            Structure (as defined in the Construction Agreement) is Substantially Completed

22            (as defined in the Construction Agreement), the Association shall pay 40% of the

23            monthly Sub-License Fee in effect as of May 1, 2011.  Any overpayments of the

24            monthly Sub-License Fee shall be credited to later installments of the monthly

25            Sub-License Fee.

26            (b)  Upon the occurrence of the Structure Completion Date , the fee structure under

27            the Sub-License Agreement will be reinstated as originally set forth in the Sub-

28            License Agreement,  provided, however, that section 3.1 of the Sub-License

35412

Agreement shall be amended to provide that on the Structure Completion Date the Sub-License Fee under section 3.1 of the Sub-License Agreement shall be set as the then prevailing "market rate" for parking, which calculation shall not include CAM Expenses.  CAM Expenses shall be paid separately in accordance with the terms of the Sub-License Agreement.  The Sub-License Fee under section 3.1 of the Sub-License Agreement shall increase by 3% annually thereafter.  Every five (5) years, on the anniversary of the Structure Completion Date, there shall be a market analysis as contemplated by section 3.1 of the Sub-License Agreement and the Sub-License Fee to be paid by the HOA shall be adjusted (up or down) to the then prevailing market rate which shall again be increased annually by 3% as described above until the next five year re-set.  The parties shall ascertain whether the comparisons used in the market analysis included CAM and other charges and, if so, those charges shall be backed out of the comparison to ensure the HOA pays the equivalent rate exclusive of CAM charges which will be paid under separate provisions of the Sub-License Agreement.

**c.   Class 29C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**d.   Class 29D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e.   Class 29E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**30.    CLAIMS AGAINST AND INTERESTS IN MM 420 BOYD STREET**

**a.   Class 30C-1 Unsecured Claims — Tenant Security Deposits**

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

35412

**b. Class 30C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c. Class 30D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d. Class 30E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 31. CLAIMS AGAINST AND INTERESTS IN MM 500 MATEO STREET

**a. Class 31C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**b. Class 31D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**c. Class 31E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 32. CLAIMS AGAINST AND INTERESTS IN MMP 760 S. HILL STREET

**a. Class 32A-1 Los Angeles County Secured Tax Claim**

The Class 32A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $30,032,925 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $256,063 |
| Estimated Quarterly Payment | $24,461 |
| Total Payout Amount | $391,376 |

35412

1    The payment obligations with respect to this Claim shall be secured by the MMP 760 S. Hill

2  Street Real Property.

3

4    **b.  Class 32A-2 BofA Secured Claim**

5    The Class 32A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown

6  Plan.  The Holder has entered into an agreement with the Charlestown Proponents by which the

7  Holder's claim will be treated as follows if the Charlestown Plan is confirmed: the Holder's claim

8  will be paid within 12 months of the effective date of the agreement (which shall occur no later than

9  the confirmation of the Charlestown Plan), with MMP 760 S. Hill Street having the option to extend

10  the deadline for payment by an additional 12 months upon satisfaction of several conditions,

11  including 30 says notice beforehand, payment of a non-refundable fee extension fee of .5% per

12  annum of the outstanding balance of the loan, with interest rate to increase to the greater of 5.5% per

13  annum or LIBOR + 5.0% per annum.

14    The Holder will receive monthly payments of interest at the greater of 5.0% per annum and

15  LIBOR + 4.5% per annum, provided however that if the original collateral is released prior to the full

16  and final payment to the Holder, that the interest rate thereafter shall be increased to 12.0% per

17  annum.  Upon default, the interest rate shall be increased by 4%, or Prime + 5.75%.  Any default to

18  the MG Southpark loan shall be a deemed to be a default

19    The loan amount may be prepaid in whole or part without penalty, provided that MMP 750 S.

20  Hill Street may be responsible for LIBOR contract breakage costs if applicable.

21    Any and all cash flow available to MMP 760 S. Hill Street after the payment of operating

22  expenses and debt service shall be applied to repay loan principal monthly.

23    Final documentation with respect to this agreement will be submitted to the Bankruptcy Court

24  for approval prior to the Effective Date.

25    The amounts of the debt or Claims set forth in the below schedule are by way of illustration

26  and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed

27  Secured Claim of such Holder.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of BofA Collateral | $36,593,818 | |

75

35412

|  |  |  |
|---|---|---|
|  | ($30,032,925 — MMP S. Hill Street Real Property + $6,560,893 BofA account number 14593600078) |  |
| Priority of Lien | 2nd |  |
| Estimated Allowable Pre-Petition Claim — Principal | $28,108,094 |  |
| Accrued Pre-Petition Interest | $178,018 |  |
| Accrued Post-Petition Interest through Effective Date of September 30, 2010 | $3,162,160 |  |
| Other Allowable Charges under Section 506(b) | To Be Determined |  |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $31,448,272 |  |

The payment obligations with respect to this Claim shall be secured by the BofA Collateral re MMP 760 S. Hill Street and by the corporate guaranties of MMPI and Merco Group Southpark.

**c.**   **Class 32B Priority Benefits Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Priority Claim Treatment on account of their Allowed Claims.

**d.**   **Class 32C-1 Unsecured Claims — Tenant Security Deposits**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

**e.**   **Class 32C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**f.**   **Class 32D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**g.**   **Class 32E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**h.**   **Class 32F Unsecured Guaranty Claims**

35412

This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Guaranty Claim Treatment on Account of their Allowed Claims.

### 33.    33. CLAIMS AGAINST AND INTERESTS IN 788 S. ALAMEDA

#### a.    Class 33A-1 Los Angeles County Secured Tax Claim

The Class 33A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $9,426,667 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $95,225 |
| Estimated Quarterly Payment | $9,097 |
| Total Payout Amount | $145,552 |

The payment obligations with respect to this Claim shall be secured by the 788 S. Alameda Real Property.

#### b.    Class 33A-2 California Bank & Trust Secured Claim

The Class 33A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan..

The Holder has entered into an agreement with the Charlestown Proponents governs the treatment of the Holder's claim if the Charlestown Plan is confirmed.  The essential terms of the treatment are as follows: the Holder will receive payment by the Maturity Date of June 30, 2013, or June 30, 2014 provided Holder is provided a $500,000 principal paydown by June 30, 2013 and amortization is commenced at a 25 year schedule.

From and after the Effective Date, interest shall be due and payable on the 15th day of the month following the month in which the Effective Date occurs and continuing on the 15th day of each month thereafter until the Maturity Date or until the loan is repaid in full if sooner.  The loan amount may be prepaid in whole or in part without penalty.

Interest will accrue at the fixed rate of 6.25% per annum.  Upon default, the interest rate shall be increased to the fixed rate of 10.25%.  If any installment of principal of interest is not paid within 10 days after the same is due, the Holder shall be entitled to a late fee equal to 4.0% of the principal

35412

or interest installment, or part thereof, not paid within such 10 day period.  The principal shall be recalculated as of the Effective Date to include all accrued and unpaid interest, costs and attorneys' fees.

Final documentation with respect to this agreement will be submitted to the Bankruptcy Court for approval prior to the Effective Date.

The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of CBT Collateral | $9,434,181 ($9,426,667 — 788 S. Alameda Real Property + $7,514 in cash located in CBT account number 2120351811) | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $7,153,799 | $7,153,799 |
| Accrued Pre-Petition Interest | $250,383 | $118,733 |
| Accrued Post-Petition Interest through Effective Date of September 30, 2010 | $1,126,723 | $288,537 (through December 16, 2009) |
| Other Allowable Charges under Section 506(b) | To Be Determined | $311,230 (through December 16, 2009) |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $8,530,905 | $7,872,299 (through December 16, 2009) |

The payment obligations with respect to this Claim shall be secured by the CBT Collateral, excluding therefrom any and all deposit or other accounts holding monies in the name. of 788 Alameda, which monies as of the Effective Date shall be deemed funds free and clear of any interest of CBT and available for the Reorganized Debtor's unfettered use. Any lien encumbering any other real property of the Debtors as adequate protection pursuant to any order of the Bankruptcy Court shall be released and of no further force or effect as of the Effective Date.

**c.  Class 33B Other Priority Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Other Priority Claim Treatment on account of their Allowed

35412

Claims.

### d.  Class 33C-1 Unsecured Claims — Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### e.  Class 33C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### f.  Class 33D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### g.  Class 33E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 34.      CLAIMS AGAINST AND INTERESTS ON 905 8T11 STREET

### a.  Class 34A-1 Los Angeles County Secured Tax Claim

The Class 34A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $2,750,000 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $87,293 |
| Estimated Quarterly Payment | $8,313 |
| Total Payout Amount | $133,008 |

The payment obligations with respect to this Claim shall be secured by the 905 8th Street Real Property.

### b.  Class 34A-2 The Stanford Group LP Secured Claim

The Class 34A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. 905 8th Street and the Holder have agreed to a settlement of certain claims and other matters. The Holder will receive treatment consistent with the settlement .

### c.  Class 34C-1 Unsecured Claims - Tenant Security Deposits

35412

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### d.  Class 34C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### e.  Class 34D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### f.  Class 34E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interest.

### 35.    CLAIMS AGAINST AND INTERESTS IN MM 915-949 S. HILL

### a.  Class 35A-1 Los Angeles County Secured Tax Claim

The Class 35A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $12,825,600 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $307,986 |
| Estimated Quarterly Payment | $29,421 |
| Total Payout Amount | $470,736 |

The payment obligations with respect to this Claim shall be secured by the MM 915-949 S. Hill Street Real Property.

### b.  Class 35A-2 Imperial Capital Bank Secured Claim

The Class 35A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. MM 915-949 S. Hill Street and the Holder have agreed to a settlement of certain claims and other matters.  The Holder will receive treatment consistent with the settlement .

### c.  Class 35C-1 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  Class 35C-2 Unsecured Claim Tenant Security Deposits

35412

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

**e.  Class 35D Intercompany Claims**

This Class is Unimpaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**f.  Class 35E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

**36.     CLAIMS AGAINST AND INTERESTS IN ALAMEDA PRODUCE**

**a.  Class 36A-1-a Los Angeles County Secured Tax Claim re 7th Street Produce Market and Alameda Square and Class 36A-1-b re 1215 E. 7 Street**

The Class 36A-1 Claims are Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $110,776,058 (re: 7th Street Produce Market and Alameda Square) |
| | $3,000,000 (re: 1215 E. 7thStreet) |
| Priority of Lien | 1st |
| Total Prepetition Claim | $421,457 (re: 7th Street Produce Market and Alameda Square) |
| | $37,263 (re: 1215 E. 7th Street) |
| Estimated Quarterly Payment (combined) | $43,707 |
| Total Payout Amount Over Time (combined) | $699,312 |

The payment obligations with respect to these Claims shall be secured by the Alameda Produce Market Encumbered Real Property and the Alameda Produce Market Unencumbered Real Property.

The Class 36A-1-b Claim and Class 36A-1-b Claim are Impaired and therefore the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

**b.  Class 36A-2 Cathay Bank Secured Claim**

35412

1     The Class 36A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown

2  Plan. The Holder shall receive deferred Cash payments over a period of four years from the Effective

3  Date in an amount equal to the amount of the Allowed Secured Claim, which shall be principal in the

4  amount of $51,706,686.33, plus interest from the Effective Date at the rate of 5.5% per annum, fixed,

5  based on a 360-day year, actual days elapsed.  Payments shall be made in the amount of the monthly

6  accruing interest with the principal balance and any unpaid interest due and payable four years after

7  the Effective Date. The monthly installments of interest shall be payable on or before the fifteenth

8  (15th) day of each month, with the first installment due on or before the fifteenth (15th) day of the

9  month following the month in which the Effective Date occurs.  The amount of the Allowed Secured

10  Claim and the amount secured by the underlying deed of trust will be increased on the Effective Date

11  to include a retroactive adjustment of interest for the period from the Approval Date as defined in that

12  certain Third Modification and Extension Agreement dated as of April 29, 2010, which was

13  previously executed in connection with that certain Settlement Agreement entered into April 29, 2010

14  between Cathay and the Debtors (the prior approval of which has now been reconsidered and

15  overturned by the Court) to the Effective Date equal to the difference between the interest owed by

16  the Debtors pursuant to the Third Modification and Extension Agreement and the interest that would

17  have been owed by the Debtors had the interest rate been 1% per annum higher. If, prior to the

18  Effective Date, Debtors' cease to make monthly interest payments as set forth in the Third

19  Modification and Extension Agreement, on the Effective Date, Reorganized Alameda Produce will

20  make the payments the Debtors would otherwise have made thereunder.

21     In addition, on the Effective Date, the Holder shall have, and shall be paid on the Effective

22  Date, an Allowed General Unsecured Claim (without post-petition pre-Effective Date interest) in the

23  amount of its post-petition attorneys' fees incurred from and after November 1, 2010, to the Effective

24  Date, capped at $115,000, and costs of $30,000.

25     The existing guaranty by MMPI of the Class 36A-2 Claim shall continue in its effectiveness

26  unaltered and unmodified by this Plan from and after the Effective Date, and shall receive the

27  treatment that it would have received under the Settlement Agreement and Third Modification and

28  Extension Agreement dated as of April 29, 2010, between and among Cathay Bank and the Debtors.

35412

Cathay and Reorganized Alameda Produce will execute appropriate loan modification agreements and other documents (including an inter-creditor agreement because of the change in Holder of the Class 36A-3 Claim, a general release of Cathay Bank, with Civil Code section 1542 waivers, and reasonable restrictions on permitted transfers) which documents will be filed with the Court in a subsequent plan supplement.

    **c.   Class 36A-3 Cathay Bank Secured Claim**

(I) As to Cathay Bank:  The Class 36A-3 Claim is Impaired and the current Holder (Cathay Bank) is entitled to vote on the Charlestown Plan.  On the Effective Date, the Class 36A-3 claim will be purchased from Cathay Bank by, and sold to, MMPI Acquisition or one of its members or one of its member's affiliates, for the principal and interest amounts due thereunder based upon the balances owed following the Settlement Agreement with MMPI and Alameda Produce dated as of April 29, 2010, which was: principal in the amount of $10,431,368.02 and interest as may be then due and owing on the Effective Date. If, prior to the Effective Date, Debtors' cease to make monthly interest payments as set forth in the Sixth Modification and Extension Agreement dated as of April 29, 2010, on the Effective Date, Reorganized Alameda Produce will make the payments the Debtors would otherwise have made thereunder.  The purchase and sale shall be on a non-recourse basis, without Cathay Bank making any representations or warranties, and on an "as is, with all faults" basis.

(II) As to the Purchaser:  The Claim will have a maturity date of four years from the Effective Date (the "Maturity Date") and will bear interest at a rate of 15%.  Interest will not be payable until the Maturity Date and will instead accrue and be payable at the Maturity Date.  Subject to an intercreditor agreement between the purchaser and Cathay Bank that will, among other things, condition payment to the purchaser until Cathay Bank is otherwise paid in full on the Class 36A-2 Claim above, this Claim as modified may be pre-paid or refinanced at any time without penalty. Such conditions on payment shall include restrictions from payment by the Debtors, limitations on payment to payments to be made by unaffiliated third party refinancing lenders or further transferees of the Claim, or from the proceeds from further equity infusions into the Debtors, Cathay's reasonable prior consent to and approval of any refinancing lender and/or transferee and the terms of such refinancing or transferee, payment of Cathay's actual costs and fees associated therewith, and the

35412

assumption by any new lender and/or transferee of the intercreditor agreement. Appropriate loan documents consistent with these terms (including an inter-creditor agreement because of the change in Holder of the Class 36A-3 Claim, and a general release of Cathay Bank, with Civil Code section 1542 waivers) will be executed by Reorganized Alameda Produce and the purchaser of the Claim which documents will be filed with the Court in a subsequent plan supplement.

The existing guaranty by MMPI of the Class 36A-3 Claim shall receive the Common Unsecured Guaranty Claim Treatment.

### d.  Class 36A-4 — Secured Claim of Oliver, Sandifer

The Class 36A-4 Claim is unimpaired and the Holder is not entitled to vote on the Charlestown Plan.  On the Effective Date, the Holder's claim shall be paid in full.[9]

### e.  Class 36B Other Priority Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Priority Claim Treatment on account of their Allowed Claims.

### f.  Class 36C-1 Unsecured Claims — Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### g.  Class 36C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### h.  Class 36D MTA Contingent Claim

On the Effective Date, Reorganized Alameda Produce will enter into the following settlement agreement with the Holder of the Class 36D claim.

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement"), dated as of the Effective Date (as that term is defined in the Charlestown Plan), is entered into by and between Reorganized Alameda Produce Market, LLC ("Reorganized Alameda Produce") on the one hand, and the Los Angeles Metropolitan

---

[9]  The Reorganized Debtor will investigate the Oliver, Sandifer claim and may object to the claim at the appropriate time. Also, pursuant to the Court's Order dated December 6, 2010 (Dkt. # 2338), Oliver Sandifer's $436,901 claim is deemed filed against MMPI (Claim 1A) and Alameda Produce (Claim 36A-4), but Oliver Sandifer is not entitled to a double recovery for its claim.

35412

Transportation Authority (the "MTA"), on the other hand.  Reorganized Alameda Produce and the MTA are collectively referred to herein as the "Parties".

# RECITALS

### The Eminent Domain Case

A.      On April 1, 2004, the MTA commenced an action in a California Superior Court (the "Superior Court") seeking to exercise its eminent domain powers over certain property owned by a predecessor to Debtor Alameda Produce Market, LLC ("Alameda Produce") located at the northwest corner at the intersection of Alameda Street and 7th Street and assigned assessor parcel numbers: 5147-035-004, 5147-035-005, 5147-035-006, 5147-035-007, 5147-035-008 (the "Property"), currently captioned as *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC*, Case No. BC 313010 (Cal. Sup. Ct.) (the "Eminent Domain Case").

B.      In connection with the Eminent Domain Case, the MTA deposited $6.3 million (which amount was ultimately increased by the MTA to $8.5 million) as probable compensation (the "Deposited Funds") with the Superior Court and sought entry of an order for pre-judgment possession.  On November 24, 2004, the MTA took pretrial possession of the Property.

C.      On June 10, 2004, the Superior Court entered an order authorizing the withdrawal of $6.19 million (the "Withdrawn Funds") from the Deposited Funds by California National Bank, VCC Alameda, and Namco Capital Group, LLC, as creditors of Alameda Produce with purported liens on the Property.  The Deposited Funds remaining with the Superior Court total $2.31 million.

D.      On September 5, 2008, the Superior Court entered an order dismissing the Eminent Domain Case, requiring the MTA to relinquish the Property to Alameda Produce within 90 days.

E.      On November 25, 2008, the MTA appealed the Superior Court's dismissal order to the California Court of Appeals (the "Appeals Court").  On October 6, 2010, the Appeals Court entered a decision and order reversing the Superior Court's dismissal of the Eminent Domain Case.  Alameda Produce timely appealed the Appeals Court's decision to the California Supreme Court (the "Supreme Court"), where the Eminent Domain Case remains pending.

### The Bankruptcy Cases

F.      While the Eminent Domain Case remained pending with the Appeals Court, on March 27, 2009, Alameda Produce and various of its affiliates (collectively, the "Debtors") filed for chapter 11 bankruptcy relief.  The Debtors cases are currently pending and jointly administered by the United States Bankruptcy Court for the Central District (the "Bankruptcy Court") under Case Number 09-13356 (the "Bankruptcy Cases").  The Bankruptcy Court subsequently entered an order lifting the automatic stay in the Bankruptcy Cases to permit continued litigation in the Eminent Domain Case.

G.      The MTA timely filed proof of claim number 14 (the "MTA Claim") in the Bankruptcy Case for Alameda Produce for a contingent unsecured claim of $8.5 million, seeking reimbursement for the Deposited Funds (including the Withdrawn Funds) to the extent the Debtors prevail in the Eminent Domain Case and a court orders the MTA to return the Property to Alameda Produce.

35412

H.      On January 25, 2011, Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (collectively, the "Charlestown Proponents") filed their *First Modified Fourth Amended Chapter 11 Plan of Reorganization* [Dkt. No. 2672] (as amended from time to time, the "Charlestown Plan").  The MTA has objected to confirmation of the Charlestown Plan because, among other things, it fails to provide for specific treatment of the MTA Claim.  *See* Docket Numbers 2510 and 2957 (collectively, the "MTA Plan Objections").

I.      The MTA and the Charlestown Proponents have engaged in discussions regarding the MTA Plan Objections, the MTA Claim, and the Eminent Domain Case, and have agreed, in light of the complex issues surrounding the MTA's disputes with Alameda Produce and the attendant risk associated with those issues, to settle all disputes between the MTA, the Charlestown Plan Proponents, and Reorganized Alameda Produce, through a settlement based on the terms described below.

## SETTLEMENT

1.      Settlement of the Eminent Domain Case.  Subject to the conditions provided in section **Error! Reference source not found.** hereof, as soon as reasonably practicable following the Effective Date, Reorganized Alameda Produce and the MTA shall stipulate to the entry of a judgment and a final order of condemnation in the Eminent Domain Case whereby MTA shall acquire full fee title to the Property in return for payment of $9,700,000 (the "Settlement Sum"), which sum represents a full settlement of all claims relating to or arising from the taking of the Property by the MTA.  The Settlement Sum represents the full just compensation for the taking of the Property and all damages resulting from the taking, including, but not limited to, compensation for real property, severance damages, loss of business goodwill, improvements pertaining to the realty, leasehold improvements, fixtures and equipment, inventory, pre-condemnation damages, attorneys' fees, litigation expenses, interest, costs, and in full and complete settlement of any and all claims of the Debtors with respect to the Eminent Domain Case, the Property, the taking of the Property, any and all acts and omissions of the MTA in connection therewith, and any and all other kind of compensation, damage or other claims arising out of or relating to the taking of the Property (collectively, the "Claims").  Payment of the Settlement Sum shall be made as follows:  (i) the MTA shall receive credit for the Deposited Funds regardless of whether any portion of such sums were withdrawn by parties other than the MTA, of which Reorganized Alameda Produce may apply to the Superior Court to withdraw the remaining balance of the deposit (which is currently $2,310,000), (ii) Reorganized Alameda Produce may also apply to the Superior Court to withdraw any interest accrued on the deposit funds (which is estimated to be approximately $450,000); and (iii) the remaining estimated balance of $750,000 shall be paid by the MTA to Reorganized Alameda Produce within ten (10) business days of the Superior Court's entry of a judgment in the Eminent Domain Case.

a.      Facilitation of Settlement.  Reorganized Alameda Produce shall cooperate in the execution of all stipulations and other court documents as the MTA deems necessary to obtain a judgment and final order of condemnation in the Eminent Domain Case and/or in any effort by the MTA to request that the Supreme Court and/or the Appeals Court on remand dismiss the pending appeal of the Eminent Domain Case. Each party to the Eminent Domain Case shall bear its own costs and expenses incurred in connection with meeting its obligations under this section.

b.      Release of the MTA Claim.  The MTA Claim shall be deemed satisfied upon payment in full of the Settlement Sum according to the terms of Section 1 hereof.

35412

2.    Interim Alternative Treatment.  If the Court wishes to consider approval of the treatment described in Section 1 hereof (and each of its subsections) (the "Primary Treatment") through a separate, regularly noticed motion, the Effective Date may occur subject to the following treatment on an interim basis (the "Interim Alternative Treatment"):  (1) the MTA Claim shall be deemed allowed as filed for purposes of the Plan; (2) (i) if, as a result of the Eminent Domain Case, the MTA is required to return the Property to Reorganized Alameda Produce and the MTA obtains a money judgment on account of the Deposited Funds, Reorganized Alameda Produce shall execute a deed of trust (or other security agreement as necessary) in favor of the MTA in order to secure repayment of the deposit claim; and (ii) the MTA will forbear from enforcement of the judgment for eighteen (18) months after entry of that judgment (the "Forbearance Period"), and (iii) Reorganized Alameda Produce will lease the Property to the MTA, rent free, in exchange for a waiver of accruing interest with such lease commencing on the date the MTA is ordered to return the Property to Reorganized Alameda Produce and terminating on the earlier of: (a) 90 days after a ruling from a court of competent jurisdiction that Reorganized Alameda Produce does not owe the MTA any money; (b) 90 days after the date on which Reorganized Alameda Produce has satisfied the judgment; or (c) 18 months after the entry of the judgment; and (3) following the Effective Date, Reorganized Alameda Produce shall use its reasonable best efforts to pursue and obtain the entry of an order approving the Primary Treatment without reservation or modification, unless such reservation or modification is previously consented to by the MTA in writing (which consent may be withheld for any reason whatsoever) (the "Approval Order").

a.    Reversion to Primary Treatment.  Once the Approval Order is entered, the MTA Claim will immediately be entitled to the Primary Treatment.

b.    Preservation of Equity in the Property.  During the Forbearance Period, Reorganized Alameda Produce shall (a) not take any action to encumber or place a consensual lien on the Property, (b) pay all property taxes associated with the Property as they come due, and (c) take all steps necessary to ensure that no judgment liens or other involuntary encumbrances are placed on the Property.

3.    Captions.  The captions in this Agreement are for convenience only, are not part of this Agreement, do not in any way limit or amplify the terms and provisions of this Agreement, and shall have no effect on its interpretation.

4.    Severability.  To the extent any portion of this Agreement is deemed unenforceable or is rendered impracticable by events occurring in the Eminent Domain Case, then the Parties agree to negotiate in good faith to substitute provisions, terms, clauses, or waivers or releases that would have, to the maximum extent possible, identical effect and that would be enforceable.

5.    Binding Effect.  This Agreement shall be binding on the Parties irrespective of the outcome of the appeal in the Eminent Domain Case, and shall, to the extent necessary, be enforceable in the California Superior Court by either party pursuant to California Code of Civil Procedure §664.6.

6.    Integration.  This Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof.

7.    Notice.  Any notice or communication required by or relating to this Agreement shall be sent via U.S. mail, overnight delivery, electronic mail, or facsimile to:

87

35412

If to Reorganized Alameda Produce:

Christopher E. Prince
Lesnick Prince LLP
185 Pier Avenue, Suite 103
Santa Monica, California 90405
cprince@lesnickprince.com

If to the MTA:

Erin N. Brady
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, California 90071
enbrady@jonesday.com

&

Joyce L. Chang
Metropolitan Transportation Authority
changj@metro.net

## 37.    CLAIMS AGAINST AND INTERESTS IN MG 1500 GRIFFITH AVENUE

### a.  Class 37A-3 Murakami Secured Claim

The Class 37A-3 Claim is Impaired and the Holder is entitled to vote on the Charlestown

Plan. The Holder will receive treatment consistent with its settlement with the Debtors. Without

limiting or altering the provisions therein, the treatment is as follows:

The Holder shall receive regular installment interest-only payments of $9,203 beginning on

the first of the month following the Effective Date and ending on January 26, 2013. Principal will

accrue interest at 3.75% per annum. The principal balance of the Note shall be $2,945,000 (as of

October 31, 2009 and reflects a $55,000 principal reduction payment to be made by the Debtor). Prior

to the Effective Date, and after approval of its compromise by the Bankruptcy Court, the Debtor shall

have paid [1] $93,750 which shall be in satisfaction of all agreed-upon interest and other amounts

accrued through October 31, 2009, [2] $55,000 as a principal reduction payment and [3] $100,000 for

fees, costs, expenses and other amounts Murakami has incurred as of the approval of the compromise

by the Bankruptcy Court provided, however, that the Reorganized Debtor shall have the right to pay

35412

the Allowed Secured Claim, or any remaining balance of such Claim, or any portion of such Claim, at any time on or after the Effective Date, without premium or penalty of any kind. The terms and conditions of the note and deed of trust made by MG 1500 Griffith Avenue, and any other agreement or instrument relating to the MG 1500 Griffith Avenue Real Property, shall remain extent and unaltered, except that any provision is modified by the terms of the Loan Reinstatement and First Amendment to Loan Documents.

| | |
|---|---|
| Value of Real Property | $4,900,000 |
| Priority of Lien | 2nd |
| Total Estimated Allowable Pre-Petition Claim | $2,945,000 |
| Other Allowable Charges under Section 506(b) | $0.00 |
| Total Estimated Amount Owing as of an Estimated Effective Date of September 30, 2010 | $2,945,000 |
| Estimated Monthly Payment | $9,203 |

The payment obligations with respect to this Claim shall be secured by the 1510 Griffith Avenue Real Property.

**b.  Class 37C-1 Unsecured Claims — Tenant Security Deposits .**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

**c.  Class 37C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**d.  Class 37D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e.  Class 37E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 38.    CLAIMS AGAINST AND INTERESTS IN MMP 1919 VINEBURN

**a.  Class 38A-1 Los Angeles County Secured Tax Claim**

The Class 38A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown

35412

Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $8,649,792 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $138,067 |
| Estimated Quarterly Payment | $13,189 |
| Total Payout Amount | $211,024 |

The payment obligations with respect to this Claim shall be secured by the MMP 1919 Vineburn Street Real Property.

**b.  Class 38A-2 Imperial Capital Bank Secured Claim**

The Class 38A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. MMP 1919 Vineburn Street and the Holder have agreed to a settlement of certain claims and other matters.  The Holder will receive treatment consistent with the settlement .

**c.  Class 38C-1 Unsecured Claims — Tenant Security Deposits**

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

**d.  Class 38C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**e.  Class 38D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**f.  Class 38E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interest.

**39.  CLAIMS AGAINST AND INTERESTS IN MMP 2131 HUMBOLDT STREET**

**a.  Class 39A-1-a Los Angeles County Secured Tax Claim Against 2131 Humboldt Encumbered Real Property and Class 39A-1-b Los Angeles County Secured Tax Claim Against 2131 Humboldt Unencumbered Real Property**

35412

The Class 39A-1-a Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of the 2131 Humboldt Street Real Property | $10,737,540 (re 2131Humboldt Encumbered Real Property) $2,432,210 (re 2131 Humboldt Unencumbered Real Property) |
| Priority of Lien | 1st |
| Total Prepetition Claim | $263,168 (re 2131 Humboldt Encumbered Real Property) $145,353 (re 2131 Humboldt Unencumbered Real Property) |
| Estimated Quarterly Payment (combined) | $38,710 |
| Total Payout Amount (combined) | $619,360 |

The payment obligations with respect to these Claims shall be secured by the 2131 Humboldt Encumbered Real Property and the 2131 Humboldt Street Unencumbered Real Property. The Class 39A-1 Claims are Impaired and the Holder of the Class 39A-1 Claim is entitled to vote on the Charlestown Plan.

**b.  Class 39A-2 Chamlian Secured Claim**

The Class 39A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

| | Amounts per Debtors | Amounts per Lender |
|---|---|---|
| Value of 2131 Humboldt Encumbered Real Property | $10,737,540 | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $7,000,000 | $7,000,000 |
| Accrued Pre-Petition Interest | $151,667 | $113,750 plus pre-petition late charges of $6,825 |
| Accrued Post-Petition Interest as of an Estimated Effective Date of September 30, 2010 | $682,500 | $417,083 (through March 29, 2010) |
| Other Allowable Charges under Section 506(b) | To Be Determined | $149,509 (through March 29, 2010) |
| Total Estimated Amount Owing as of an Estimated Effective Date of September | $7,834,167 | $7,712,192 (through March 29, 2010) |

35412

| 30, 2010 | | |
|---|---|---|
| Estimated Monthly Payment | $26,114 | |

The payment obligations with respect to this Claim shall be secured by the 2131 Humboldt Street Encumbered Real Property.

### c.  Class 39C-1 Unsecured Claims — Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### d.  Class 39C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### e.  Class 39D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### f.  Class 39E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

### 40.    CLAIMS AGAINST AND INTERESTS IN MG-2529 SANTA FE AVENUE

### a.  Class 40A-1 Los Angeles County Secured Tax Claim

The Class 40A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of the MG 2529 Santa Fe Avenue Real Property | $3,772,200 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $126,578 |
| Estimated Quarterly Payment | $12,052 |
| Total Payout Amount | $192,832 |

The payment obligations with respect to this Claim shall be secured by the MG 2529 Santa Fe Avenue Real Property.

### b.  Class 40A-2 1248 S. Figueroa Secured Claim

35412

The Class 40A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of Real Property | $3,772,200 | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $3,134,825 | |
| Accrued Pre-Petition Interest | $130,513 | |
| Accrued Post-Petition Interest | $587,310 | |
| Other Allowable Charges under Section 506(b) | To Be Determined | |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $3,852,647 | |
| Estimated Monthly Interest Payment | $12,842 | |

The payment obligations with respect to this Claim shall be secured by the MG 2529 Santa Fe Avenue Real Property.

**c.  Class 40C-1 Unsecured Claims — Tenant Security Deposits**

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

**d.  Class 40C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**e.  Class 40D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**f.  Class 40E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

35412

## 41.   CLAIMS AGAINST AND INTERESTS IN 2640 WASHINGTON BOULEVARD

### a.   Class 41A-1 Los Angeles County Secured Tax Claim

The Class 41A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $7,172,100 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $212,108 |
| Estimated Quarterly Payment | $20,199 |
| Total Payout Amount | $323,184 |

The payment obligations with respect to this Claim shall be secured by the 2640 Washington Boulevard Real Property.

### b.   Class 41A-2 UCB Secured Claim

The Class 41A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of UCB Collateral re 2640 Washington | $7,181,410 ($7,172,000 — 2640 Washington Boulevard Real Property + $9,410 —East West Bank reserve account - number 80365810) | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $6,066,073 | $6,066,073 |
| Accrued Pre-Petition Interest | $145,129 | $79,547 |
| Accrued Post-Petition Interest through Effective Date of September 30, 2010 | $909,911 | $370,704 (November 30, 2009) |
| Other Allowable Charges under Section 506(b) | To Be Determined | $145,563 (November 30, 2009) |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $7,121,113 | $6,661,886 (November 30, 2009) |
| Estimated Monthly Interest Payment | $23,737 | |

35412

The payment obligations with respect to this Claim shall be secured by the UCB Collateral re 2640 Washington Boulevard

### c.  Class 41C-1 Unsecured Claims — Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### d.  Class 41C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### e.  Class 41D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### f.  Class 41E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 42.  CLAIMS AGAINST AND INTERESTS IN MMP 2951 LEN WOOD ROAD

### a.  Class 42A-1 FNBN Secured Claim

The Class 42A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder has reached a settlement with the Debtors and The amounts of the debtor Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not yet determined the Allowed Secured Claims of the Holder.

| | |
|---|---|
| Value of Real Property | $10,000,000 |
| Priority of Lien | 2nd |
| Estimated Allowable Pre-Petition Claim - Principal | $8,953,643 |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $8,983,643 |
| Estimated Monthly Interest Payment | $29,945 |

The payment obligations with respect to this Claim shall be secured by the MMP 2951

35412

Lenwood Road Real Property.

### b.  Class 42C General Unsecured Claims

This Class is Impaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Claim Treatment.

### c.  Class 42D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### d.  Class 42E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 43.    CLAIMS AGAINST AND INTERESTS IN MG 3185 E. WASHINGTON BOULEVARD

### a.  Class 43A-1-a and Class 43A-1-b Los Angeles County Secured Tax Claim

The Class 43A-1-a and Class 43A-1-b Claims are Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of MG 3185 East Washington Boulevard Encumbered Real Property + MG of 3185 East Washington Boulevard Unencumbered Real Property | $11,918,000 |
| Priority of Lien | 1st |
| Total Prepetition Claim - 3185 East Washington Boulevard Encumbered Real Property | $191,130 |
| Total Prepetition Claim - 3185 East Washington Boulevard Unencumbered Real Property | $969 |
| Estimated Quarterly Payment (combined) | $18,351 |
| Total Payout Amount (combined) | $293,616 |

The payment obligations with respect to this Claim shall be secured by the MG 3185 E. Washington Boulevard Encumbered Real Property and the MG 3185 E. Washington Boulevard Unencumbered Real Property.

35412

**b.  Class 43A-2 Chinatrust Secured Claim**

The Class 43A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder will receive the following treatment:

On the Effective Date, the Holder will receive a Cash payment equal to unpaid interest accrued from the petition date to Effective Date at the rate of 6.94 percent.  The Holder will waive any claim to unpaid accrued interest at a higher rate, including the so-called "default" rate.

On the remaining balance of the Holder's Allowed Secured Claim, the Holder shall receive deferred Cash payments over a period of four years from the Effective Date plus interest from the Effective Date on the unpaid portion of the Allowed Secured Claim at 6.94%.  Payments shall be made in the amount of the monthly accruing interest with the principal balance and any unpaid interest due and payable four years after the Effective Date. The monthly installments of interest shall be payable on or before the fifteenth (15th) day of each month, with the first installment due on or before the fifteenth (15th) day of the month following the month in which the Effective Date occurs.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of 3185 E. Washington Boulevard Encumbered Real Property | $11,800,000 | $10,300,000 |
| Priority of Lien | 2nd | 1st |
| Estimated Allowable Pre-Petition Claim - Principal | $9,541,565 | $9,541,565 |
| Accrued Pre-Petition Interest | $159,026 | $222,827 |
| Accrued Post-Petition Interest as of Estimate Effective Date of September 30, 2010 | $1,707,463 | Aproximately $2.2 million (through July 31, 2011) |
| Other Allowable Charges under Section 506(b) | To Be Determined | To be determined |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $11,408,054 | $10,651,171 (through November 30, 2009) |
| Estimated Monthly Interest Payment | $38,027 | $55,182.05 |

The payment obligations with respect to this Claim shall be secured by the MG 3185 E. Washington Boulevard Encumbered Real Property.  In addition, the Holder will retain its Court-

97

35412

ordered "replacement lien" on the South Alameda Properties and the Cesar Chavez Properties.

### c.  Class 43C-1 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  Class 43C-2 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

### e.  Class 43D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### f.  Class 43E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 44.    CLAIMS AGAINST AND INTERESTS IN MG 4TH STREET CENTER

### a.  Class 44C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### b.  Class 44D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### c.  Class 44E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 45.    CLAIMS AGAINST AND INTERESTS IN MG 425 W. 11TH STREET

### a.  Class 45A-1 Los Angeles County Secured Tax Claim

The Class 45A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown

35412

Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | Not less than $12,810,000 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $332,662 |
| Estimated Quarterly Payment | $31,679 |
| Total Payout Amount | $506,864 |

The payment obligations with respect to this Claim shall be secured by the MG 425 W. 11th Street Center Real Property.

**b.   Class 45C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.   Class 45D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**d.   Class 45E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 46.     CLAIMS AGAINST AND INTERESTS IN MG - 620 S. GLADYS AVENUE

**a.   Class 46C-1 Unsecured Claims — Tenant Security Deposits**

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

**b.   Class 46C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.   Class 46D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

35412

**d. Class 46E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**47. Claims Against and Interests in MG 2001-2021 W. Mission Boulevard**

**a. Class 47A-1 Los Angeles County Secured Tax Claim**

The Class 47A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of | $12,202,245 (Encumbered) |
| --- | --- |
| | $2,864,070 (Unencumbered) |
| Priority of Lien | 1st |
| Total Prepetition Claim | $105,146 |
| Estimated Quarterly Payment | $9,872 |
| Total Payout Amount | $157,952 |

The payment obligations with respect to this Claim shall be secured by the MG 2001-2021 W. Mission Boulevard Real Property.

**b. Class 47A-2 PNL Pomona LP Secured Claim**

The Class 47A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder has entered into an agreement with the Charlestown Proponents that will govern treatment of the Holder's claim if the Charlestown Plan is confirmed: the Holder will receive 1) the available insurance proceeds resulting from the fire loss to MG 2001-2021 W. Mission Boulevard Real Property, and 2) a deed in lieu of foreclosure or a stipulation to permit the Holder to proceed with a nonjudicial foreclosure. The available insurance proceeds are approximately $946,816. [Per the Bankruptcy Court order entered April 22, 2010, MG 2001-2021 W. Mission Boulevard was authorized to utilize the insurance proceeds to pay various sums to certain creditors; $946,816 reflects the balance of the insurance proceeds not subject to that order.]

Final documentation with respect to this agreement will be submitted to the Bankruptcy Court for approval prior to the Effective Date.

**c. Class 47C General Unsecured Claims**

35412

This Class receives the Common Unsecured Claim Treatment.

**d.  Class 47D Intercompany Claims**

This Class is Impaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e.  Class 47E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

48.    **48. CLAIMS AGAINST AND INTERESTS IN MG LITTLE J**

**a.  Class 48A-1 Los Angeles County Secured Tax Claim re 1119 S. Olive Street and 1124 S. Olive Street**

The Class 48A-1 Claims are Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of the 1119 S. Olive Street Real Property | $4,548,225 (1119 S. Olive) |
| | $3,980,075 (1124 S. Olive) |
| Priority of Lien | 1st |
| Total Prepetition Claim | $52,446 (1119 S. Olive) |
| | $64,262 (1124 S. Olive) |
| Estimated Quarterly Payment (Combined) | $11,044 |
| Total Payout Amount Over Time (Combine) | $176,704 |

The payment obligations with respect to these Claims shall be secured by the 1119 S. Olive Street Real Property and the 1124 S. Olive Real Property.

**b.  Class 48C-1 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**c.  Class 48C-2 Unsecured Claim Tenant Security Deposits**

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

35412

**d. Class 48D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e. Class 48E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**49.      CLAIMS AGAINST AND INTERESTS IN MG — SOUTHPARK**

**a. Class 49A-1 Los Angeles County Secured Tax Claim**

The Class 49A-1 Claim is Impaired and the Holder of the Class 49A-1 Claim is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $57,250,000 |
|---|---|
| Priority of Lien | 1" |
| Total Prepetition Claim | $570,318 |
| Estimated Quarterly Payment | $54,481 |
| Total Payout Amount Over Time | $871,696 |

The payment obligations with respect to this Claim shall be secured by the MG Southpark Real Property.

**b. Class 49A-2 Bank of America Secured Claim**

The Class 49A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder has entered into an agreement with the Charlestown Proponents that will govern treatment of the Holder's claim if the Charlestown Plan is confirmed: the Holder's claim will be paid within 24 months of the effective date of the agreement (which shall occur no later than the confirmation of the Charlestown Plan), with MG Southpartk having the option to extend the deadline for payment by an additional 12 months upon satisfaction of several conditions, including 30 says notice beforehand, principal paydown in an amount equal to 25% of the outstanding loan balance, payment of a non-refundable fee extension fee of .5% per annum of the outstanding balance of the

35412

loan, with interest rate to increase to the greater of 7.5% per annum or LIBOR + 7.0% per annum.

The Holder will receive monthly payments of interest at the greater of 7.0% per annum and LIBOR + 6.5% per annum.  Upon default, the interest rate shall be increased by 4%, or Prime + 7.75%.   Any default to the MMP 760 S. Hill Street loan shall be a deemed to be a default.

The loan amount may be prepaid in whole or part without penalty, provided that MG Southpark may be responsible for LIBOR contract breakage costs if applicable.

Any and all cash flow available to MG Southpark after the payment of operating expenses and debt service shall be applied to repay loan principal monthly.

Final documentation with respect to this agreement will be set for court approval after confirmation of the Charlestown Plan.

The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

|  | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of Real Property | $57,250,000 | |
| Priority of Lien | 2° | |
| Estimated Allowable Pre-Petition Claim — Principal | $20,000,000 | $20,000,000 |
| Accrued Pre-Petition Interest | $233,333 | $242,361 |
| Accrued Post-Petition Interest as of Estimated Effective Date of September 30, 2010 | $2,250,000 | |
| Other Allowable Charges under Section 506(b) | To Be Determined | |
| Total Estimated Claim as of Effective  Date of September 30, 2010e | $22,483,333 | |

The payment obligations with respect to this Claim shall be secured by the MG Southpark Real Property, and the corporate guaranties of MMPI and MMP 760 S. Hill.

35412

### c.  Class 49C-1 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### d.  Class 49C-2 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

### e.  Class 49D Intercompany Claims

This Class is Unimpaired and not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### f.    Class 49E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### g.  Class 49F Unsecured Guaranty Claims

This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Guaranty Claim Treatment on Account of their Allowed Claims.

## 50.    CLAIMS AGAINST AND INTERESTS IN MERCO GROUP

### a.  Class 50C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### b.  Class 50D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### c.  Class 50E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## 51.    CLAIMS AGAINST AND INTERESTS IN MERUELO FARMS

35412

**a.   Class 51A-1 Los Angeles County Secured Tax Claim re 815 E. Temple Street and re 729 E. Temple Street**

The Class 51A-1 Claims are Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of the 815 E. Temple Street Real Property | $10,364,638 |
| Value of the 729 E. Temple Street Real Property | $4,501,250 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $94,319 (re 815 E. Temple) $208,977 (re 729 E. Temple) |
| Estimated Quarterly Payment (Combined) | $28,908 |
| Total Payout Amount (Combined) | $462,528 |

The payment obligations with respect to these Claims shall be secured by the 815 E. Temple Street Real Property and the 729 E. Temple Street Real Property.

**b.   Class 51A-2 Imperial Capital Bank Secured Claims Against Meruelo Farms**

The Class 51 A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan.  Meruelo Farms and the Holder have agreed to a settlement of certain claims and other matters. The Holder will receive treatment consistent with the settlement .

**c.   Class 51A-3 Pacific Commerce Secured Claim**

The Class 51 A-3 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder will receive treatment consistent with its settlement with the Debtors. Without limiting or altering the provisions therein, the treatment is as follows:

Pursuant to the post-petition agreement between Meruelo Farms and Pacific Commerce approved by the Bankruptcy Court the Holder will continue to receive regular monthly installments of $6,979 ending on the date the loan matures, August 7, 2012. As provided in said agreement, Principal shall accrue interest at the rate of 2.5% per annum, with a fixed default rate of 4.5%. The

35412

Debtor may prepay the loan without penalty. The Debtor may transfer the Meruelo 729 E. Temple Street Collateral, or an interest in such Collateral or the Debtor, to any other Debtor or Insider without the consent of Pacific Commerce and without such action constituting an event of default under the loan documents. The guaranty of the loan by MMPI is confirmed.

| | |
|---|---|
| Value of 729 E. Temple Street Real Property | $4,501,250 |
| Priority of Lien. | 2nd |
| Total Estimated Allowed Claim as of Effective Date of September 30, 2010 | $3,350,000 |
| Current Monthly Payment | $6,979 |

The payment obligations with respect to this Claim shall be secured by the 729 E. Temple Street Real Property.

### d.  Class 51C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### e.  Class 51D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### f.  Class 51E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### 52.    CLAIMS AGAINST AND INTERESTS IN MERUELO WALL STREET

### a.  Class 52A-1 Los Angeles County Secured Tax Claim

The Class 52A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $35,352,900 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $423,210 |
| Estimated Quarterly Payment | $40,476 |
| Total Payout Amount | $647,616 |

35412

The payment obligations with respect to this Claim shall be secured by the Meruelo Wall Street Real Property.

**b.  Class 52A-2 UCB Secured Claim**

The Class 52A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

| | Amounts per Debtors | Amount per Lender (through November 30, 2009) |
|---|---|---|
| Value of UCB Collateral re Meruelo Wall Street | $35,871,725($35,352,900 - Meruelo Wall Street Real Property + $518,825 East West Bank/UCB Interest reserve account number 18296574) | |
| Priority of Lien | 2° | |
| Estimated Allowable Pre-Petition Claim — Principal | $20,850,859 | $20,850,859 |
| Accrued Pre-Petition Interest | $573,679 | $179,385 |
| Accrued Post-Petition Interest | $3,596,773 | $835,974 (as of November 30, 2009 |
| Other Allowable Charges under Section 506(b) | To Be Determined | $173,124 (as of November 30, 2009) |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $25,021,311 | $22,039,342 (as of November 30, 2009) |
| Estimated Monthly Interest Payment | $83,404 | |

The payment obligations with respect to this Claim shall be secured by the UCB Collateral re Meruelo Wall Street.

35412

**c.  Class 52C-1 Unsecured Claims - Tenant Security Deposits**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan.

The Holders shall receive the Common Tenant Security Deposit Treatment.

**d.  Class 52C-2 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**e.  Class 52D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan.

The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed

Claims.

**f.  Class 52E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest
Treatment on account of their Equity Interests.

**53.    CLAIMS AGAINST AND INTERESTS IN MM MISSION
BOULEVARD**

**a.  Class 53A-1 Los Angeles County Secured Tax Claim**

The Class 53A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown
Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $20,000,000 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $290 497 |
| 353216.03[XP] | 25195 |
| -131- | |
| Estimated Quarterly Payment | $26,881 |
| Total Payout Amount | $430,096 |
| | |

The payment obligations with respect to this Claim shall be secured by the MM Mission
Boulevard Real Property.

**b.  Class 53A-2 Kennedy Funding Inc Secured Claim**

The Class 53A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown

35412

Plan. The Holder shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

|  | Amounts per Debtors | Amounts per Lender |
|---|---|---|
| Value of Real Property | $20,000,000 | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $8,800,000 | $8,800,000 |
| Accrued Pre-Petition Interest | $0.00 | |
| Accrued Post-Petition Interest as of Estimated Effective Date of September 30, 2010 | $2,750,000 | $2,498,222 |
| Other Allowable Charges under Section 506(b) | To Be Determined | $75,000 |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $11,550,000 | $11,373,222 |
| Estimated Monthly Interest Payment | $38,500 | |

The payment obligations with respect to this Claim shall be secured by the MM Mission Boulevard Real Property.

**c.  Class 53C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**d.  Class 53D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**e.  Class 53E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

35412

## 54.    CLAIMS AGAINST AND INTERESTS IN SANTA FE COMMERCE

### a.  Class 54A-1 Los Angeles County Secured Tax Claim

The Class 54A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $23,250,000 |
| Priority of Lien | |
| Total Prepetition Claim | $99,452 |
| Estimated Quarterly Payment | $9,500 |
| Total Payout Amount | $152,000 |

The payment obligations with respect to this Claim shall be secured by the Santa Fe Commerce Center Real Property.

### b.  Class 54A-2 Berkadia Secured Claim

The Class 54A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. Santa Fe Commerce and the Holder have agreed to a settlement of certain claims and other matters.  The Holder will receive treatment consistent with the settlement.

### c.  Class 54A-3 RoofCorp of CA Inc Secured Claim

The Class 54A-3 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive a payment on the Effective Date equal to 50% of the Holder's Allowed Claim and a second payment for the balance of the Holder's Allowed Claim one year after the Effective Date with interest at the rate of 3.50 per cent per annum.

| | |
|---|---|
| Value of Real Property | $23,250,000 |
| Priority of Lien | 3d |
| Total Claim | $111,377 |
| Total Payout Amount Over Time | $118,391 |

The payment obligations with respect to this Claim shall be secured by the Santa Fe Commerce Center Real Property.

### d.  54C-1 Unsecured Claims— Tenant Security Deposits

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### e.  2Class 54C-3 General Unsecured Claims

35412

This Class receives the Common Unsecured Claim Treatment.

**f.    Class 54D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**g.    Class 54E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**IV.**

**MEANS FOR EXECUTION AND IMPLEMENTATION OF THE CHARLESTOWN PLAN**

**A.    Overview of Charlestown Plan Implementation**

Except as otherwise provided in the Charlestown Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments pursuant to the Charlestown Plan will be obtained from the Reorganized Debtors' cash balances existing on the Effective Date and thereafter, from the operations of the Reorganized Debtors' business, the sale or refinancing of assets of the Reorganized Debtors, as deemed necessary and appropriate by the Reorganized Debtors, from the proceeds of the Secured Loan described below, and from any other lawful source.

**B.    Vesting of Assets**

Except as otherwise provided in any provision of the Charlestown Plan, on the Effective Date, all legal and equitable interests of each of the Debtors in property of their respective estates shall be vested in the respective Reorganized Debtors, free and clear of all Claims, Liens, encumbrances and Interests except to the extent and only as is expressly provided for otherwise in Article III of the Charlestown Plan.

**C.    Reorganized Debtors' Business Operations**

From and after the Effective Date, the Reorganized Debtors, or each of them, may operate its

35412

business and use, acquire, and dispose of property and settle and compromise Claims or Interests

arising post-Confirmation without supervision by the Bankruptcy Court and free of any restrictions of

the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, other than those

restrictions expressly imposed by the Charlestown Plan and the Confirmation Order. The

Reorganized Debtors may continue to operate their businesses using the existing cash management

system ("CMS"), or such other CMS that may be adopted by them in their sole discretion. The CMS

may continue to provide for funds to flow to and from a cash concentration account maintained by

the Reorganized Debtors and that concentration account will continue to be linked to the operating

bank accounts of each Reorganized Debtor with funds flowing between such accounts as and when

needed.

### D.    Sale and/or Refinance of Assets of Debtors

As of the Effective Date, the Reorganized Debtors will continue to operate their businesses.

To meet their operational needs and payment obligations under the Charlestown Plan, the

Reorganized Debtors may sell or refinance their assets as necessary during the term of the

Charlestown Plan. After the payment of the costs of sale and the satisfaction of any Liens fixed by

this Charlestown Plan against the asset, the remaining proceeds will be available for the payment of

the costs of operating its business and funding the Reorganized Debtors' obligations under this

Charlestown Plan.

### E.    Purchase Of Shares and Secured Loan

### a.  Purchase of Shares

On the Effective Date, MMPI Acquisition will contribute $23.0 million in cash, and such

funds will be used first to purchase 55% of the shares of MMPI Existing Common Stock for $0.35

per share, as such purchase is described above at Sections III.C.1.g and h.  The remainder of such $23

million may be used for any corporate purpose, including making distributions under this Plan.

On or before the final day of hearings on confirmation of the Charlestown Plan, MMPI

Acquisition will make a $4 million deposit into a segregated account.  Upon entry of an order of the

35412

Bankruptcy Court confirming the Charlestown Plan, the $4 million deposit amount will become a

non-refundable deposit and will constitute the total amount of liquidated damages for MMPI

Acquisition's failure to transmit the full purchase price on the Effective Date, unless MMPI's

Acquisition's failure to perform is excused.  MMPI Acquisition's obligation to transmit the full

purchase price will not be subject to any financing contingency.

**b.  Secured Loan**

MMPI Acquisition has obtained a commitment for a secured loan in the amount of $15

million (the "Secured Loan") for MMPI Acquisition to use in funding the operations and payments

under the Charlestown Plan.  The Secured Loan will be made as of the Effective Date and will

receive the common secured lender treatment, i.e., it will bear monthly interest at the rate of 5.25%

for four years with full payment on the principal balance four years after the Effective Date.  The

Secured Loan will be secured by a first priority deed of trust on three of the Debtors' real properties,

(i) 1211 East Washington Boulevard, (ii) W. Ave. 26 and (iii) 129 W. College Street owned by

related Debtor Chinatown.

**c.  Offer to Purchase And Secured Loan Conditioned Upon Confirmation And Effective Date**

The purchase of shares of MMPI Existing Common Stock set forth herein and the Secured

Loan are subject to and conditioned upon confirmation of the Charlestown Plan and the occurrence of

the Effective Date.

**F.  Certificate of Incorporation and Bylaws; Cancellation Of Certain MMPI Securities, LTIP Units and Related Agreements**

**1.  Cancellation Of Certain MMPI Securities, LTIP Units and Related Agreements**

At the Effective Date, (i) the LTIP Units; all warrants, options or other rights for the purchase

or other acquisition from any Debtor of any MMPI Existing Common Stock or LTIP Units; all

113

35412

securities convertible into or redeemable or exchangeable for any MMPI Existing Common Stock or LTIP Units; and all warrants, rights or options for the purchase or other acquisition from any Debtor of any MMPI Existing Common Stock or LTIP Units or any such warrants, options, other rights or securities, and any interest or participation in any of the foregoing and any other ownership or profit interest or participation in MMPI or MMPLP (other than MMPI Existing Common Stock or to the extent not held directly or indirectly by MMPI) will be cancelled and extinguished, and (ii) the obligations of, Claims against, and/or Interests in MMPI under, relating or pertaining to any agreements (including without limitation, registration rights agreements, merger, contribution and similar agreements and voting, shareholders and similar agreements), indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the MMPI Existing Common Stock and any other instrument or document evidencing or creating ownership interest in MMPI (including without limitation, provisions of the agreement of limited partnership of MMPLP and award agreements relating to the LTIP Units but excluding MMPI Existing Common Stock) will be released and discharged.  For the avoidance of doubt, other than as required to effect the reverse stock split described in Section IV.F.2 below, there will be no cancellation of MMPI Existing Common Stock.

## 2.    **Reverse Stock Split**

On the Effective Date, but after the purchase by MMPI Acquisition of 55% of the shares of MMPI Existing Common Stock in accordance with the terms of this Plan, the MMPI Existing Common Stock shall undergo a 5 to 1 reverse stock split.  Accordingly, for each 5 shares of MMPI Existing Common Stock held by a Holder after the purchase by MMPI Acquisition described herein, such Holder will hold 1 share of Reorganized MMPI Common Stock.  No fractional shares of Reorganized MMPI Common Stock will be permitted.  In this manner, a Holder that otherwise would receive a fractional share as a result of this reverse stock split will receive $0.35 per share in exchange for such shares that would be represented by such fractional share.

## 3.    **Amended and Restated Certificate of Incorporation and Bylaws**

35412

On and after the Effective Date, pursuant to and by virtue of this Charlestown Plan, the certificate of incorporation of the Reorganized MMPI will be amended and restated in a form necessary to effectuate the provisions of the Charlestown Plan until thereafter changed or amended as provided therein or by applicable law.  Similarly, amended and restated bylaws in a form necessary to effectuate the Charlestown Plan will be the bylaws of Reorganized MMPI until thereafter changed or amended as provided therein or by applicable law.  Nothing herein shall prevent Reorganized MMPI from adopting a new name.

### G.    Certain Post-Effective Date Securities Issues

The Reorganized Debtor will remain a public company and take steps to rescind its Form 15 and regain reporting status.  Within a reasonable time after the Effective Date, Reorganized MMPI will take all commercially reasonable steps necessary to list the MMPI Existing Common Stock on a public exchange and to remain publicly listed for at least four years.

### H.    Merger of MMPLP and MMPI

Upon the terms and subject to the conditions set forth in the agreement and plan of merger (the "Merger Agreement"), a copy of which is attached to the Disclosure Statement, MMPLP shall be merged with and into MMPI one day after the Effective Date if not earlier accomplished (the "Merger"). Following the Merger, the separate corporate existence of MMPLP shall cease, and MMPI shall continue as the surviving company and shall succeed to and assume all the rights and obligations of MMPLP.

If not earlier accomplished, as promptly as practicable but at least one day after the Effective Date, the parties shall file with the Secretary of State of the State of Delaware a certificate of merger (the "Certificate of Merger") executed and acknowledged by the parties in accordance with the relevant provisions of the DGCL and the RULPA and, as promptly as practicable on or after the Effective Date, the parties to the Merger shall make all other filings or recordings required by the Bankruptcy Court and under the DGCL and the RULPA. If not earlier accomplished, the Merger shall become effective one day after the Effective Date and the filing of the Certificate of Merger

35412

with the Secretary of State of the State of Delaware, or at such later date and time as MMPI and MMPLP shall agree and shall specify in the Certificate of Merger.

Once the Merger becomes effective, all the property, rights, privileges, powers and franchises of MMPLP shall vest in MMPI, and all debts, liabilities and duties of MMPLP shall become the debts, liabilities and duties of MMPI.

## I.    Retained Claims And Defenses And Reservation Of Rights

### 1.    No Waiver and Retention of Claims and Defenses

Unless otherwise expressly set forth in the Charlestown Plan or the Confirmation Order, pursuant to Section 1123(b)(3)(B), all Retained Claims and Defenses of any kind or nature whatsoever against third parties arising before the Effective Date and belonging to the Debtor or the Estate shall become property of the Reorganized Debtor. Such Retained Claims and Defenses shall include, without limitation:

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 524 and 553 of the Bankruptcy Code against any Creditor regarding the amount of such Holder's Allowed Claim (whether prepetition or postpetition), to enforce the discharge of any Secured Creditors' Claims;

- All claims and defenses pursuant to applicable non-bankruptcy law and Sections 502, 506, 510, 524, 542 and 553 of the Bankruptcy Code including, without limitation, claims and defenses based on any Creditors' assertion of unreasonable professionals' fees, costs, charges and penalties (whether disguised as interest, or otherwise); and

- All claims and defenses related to the recovery of professionals' fees and expenses by the Debtor or Reorganized Debtor from Creditors.

35412

- • All claims against the Debtors' Insiders, employees, and/or agents relating to pre-confirmation and/or pre-petition conduct, including without limitation, claims for fraud, breach of fiduciary duty or negligence.

- • All claims and defenses attributable to the filing of personal Chapter 7 or Chapter 11 bankruptcy petitions by an Insider who is a natural person, including without limitation, claims or defenses related to the diminution of security for the Company's debts if an Insider obtains a discharge of their personal guaranty obligations.

From and after the Effective Date, the Reorganized Debtor is authorized to assert the Retained Claims and Defenses including, but not limited to, for purposes of objection to the allowance of any Claim.  Nothing contained in the Charlestown Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any of the Debtor's rights with respect to the Retained Claims and Defenses and Reorganized Debtor shall be entitled to assert the Retained Rights and Defenses as fully as if the Chapter 11 Case had not been commenced.

### 2.    Retention of Avoidance Actions

Unless otherwise expressly set forth in the Charlestown Plan or the Confirmation Order, from and after the Effective Date, the Reorganized Debtor shall have the right to prosecute any and all avoidance actions, recovery causes of action and objections to Claims under Sections 105, 502, 506, 510, 542 through 551 and 553 of the Bankruptcy Code that belong to the Debtors or to the Estates, including, without limitation, all avoidance actions related to the transfers listed on Exhibit "I" attached to the Disclosure Statement. A list of all of the transfers by the Debtor during the 90-day and 1-year periods is attached as Exhibit "I."

### 3.    Unknown Retained Claims and Defenses / No Preclusion

Unless otherwise expressly set forth in the Charlestown Plan or the Confirmation Order, the reservation of rights and Retained Claims and Defenses set forth above shall include, without

35412

limitation, any Retained Claims and Defenses of which the Debtor may presently be unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts or circumstances that may change or be different from those the Debtor now believes to exist including, without limitation, claims based on theories of construction defect, breach of warranty, negligence, indemnification and contribution. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, waiver, estoppel (judicial, equitable or otherwise), or laches will apply to the Reorganized Debtor with respect to the Retained Claims and Defenses upon or after the Confirmation of the Charlestown Plan based on the Charlestown Plan, the Disclosure Statement or the Confirmation Order.

### J.    Objections to Claims

Except as otherwise provided in the Charlestown Plan, objections to Claims, including without limitation Administrative Claims (other than objections to Administrative Claims of Professionals), shall be Filed and served upon the Holder of such Claim or Administrative Claim no later than the later of: (a) one hundred eighty (180) days after the Effective Date, (b) one hundred eighty (180) days after a proof of claim or request for payment of such Claim is Filed, and (c) a deadline set by the Bankruptcy Court after the extension of the one hundred eighty (180)-day deadline; such extension may be granted on an ex parte basis without notice or hearing. After the Confirmation Date, only the Reorganized Debtor will have the authority to File objections, settle, compromise, withdraw or litigate to judgment objections to Claims and Interests. From and after the Confirmation Date, Reorganized Debtor may settle or compromise any Disputed Claim or Disputed Interest without approval of the Bankruptcy Court.

### K.    Management of the Reorganized Debtor

The Reorganized Debtors will retain professional management to manage the Company.  The professional management will be existing MMPI employees, new employees, or outside management companies or some combination of them.  Insiders of the Charlestown Proponents may serve as non-executive members of the Company's board of directors, but they will not hold operational

35412

management positions.

The initial board of directors of Reorganized MMPI will consist of seven directors.  MMPI Acquisition will have the right to appoint four of the seven directors.  The Equity Committee will have the right to appoint three of the seven directors (collectively, the "Equity Committee Directors").  One of the Equity Committee Directors must be approved by MMPI Acquisition.  The Equity Committee Directors must approve Reorganized MMPI's Chief Financial Officer and its independent auditor.  The Equity Committee Directors must approve any related-party transactions involving Reorganized MMPI and MMPI Acquisition or its parents, subsidiaries or other affiliates. The Equity Committee Directors must approve any sale of Reorganized MMPI or substantially all of Reorganized MMPI's assets.  The terms of the directors shall be staggered in accordance with the following provisions, which provisions shall be reflected in Reorganized MMPI's certificate of incorporation: the initial directors shall be divided into three groups, with the first group up for re-election at the first annual meeting of the board containing two of the four directors appointed by MMPI Acquisition, the second group up for re-election one year after the first annual meeting of the board containing the other two directors initially appointed by MMPI Acquisition, and the third group up for re-election two years after the first annual meeting of the board containing the three directors appointed by the Equity Committee.

**L.**    **Disbursing Agent**

The Chief Accounting Officer of Reorganized MMPI shall act as the Disbursing Agent for the purpose of making all distributions provided for under the Charlestown Plan. The Disbursing Agent shall serve without bond, and shall receive no additional compensation for his duties as Disbursing Agent.

**M.**    **Discharge of the Debtors and Injunction**

**1.**    **Discharge**

Except as otherwise provided in the Charlestown Plan, the Confirmation Order or Section

35412

1141(d)(6) of the Bankruptcy Code: (i) on the Effective Date, each Debtor shall be deemed

discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from

all Claims and Interests, including, but not limited to, demands, liabilities, Claims and Interests that

arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h) or

502(i) of the Bankruptcy Code, whether or not: (A) a proof of Claim or proof of Interest based on

such debt or Interest is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code, (B) a

Claim or Interest based on such debt or Interest is allowed pursuant to Section 502 of the Bankruptcy

Code or (C) the Holder of a Claim or Interest based on such debt or Interest has accepted the

Charlestown Plan; and (ii) all Persons shall be precluded from asserting against each Reorganized

Debtor, its successors, or its assets or properties any other or further Claims or Interests based upon

any act or omission, transaction, or other activity of any kind or nature that occurred prior to the

Confirmation Date. Except as otherwise provided in the Charlestown Plan or the Confirmation Order,

the Confirmation Order shall act as a discharge of any and all Claims against and all debts and

liabilities of the Debtor, as provided in Sections 524 and 1141 of the Bankruptcy Code, and such

discharge shall void any judgment against each Debtor at any time obtained to the extent that it

relates to a Claim discharged.

## 2.    **Injunction**

All Persons that have held, currently hold or may hold a Claim or other debt or liability or an

Interest or other right of an equity security Holder, are permanently enjoined from taking any of the

following actions on account of any such Claims, debts or liabilities or terminated Interests or rights

discharged pursuant to Section I.1. immediately above: (a) commencing or continuing in any manner

any action or other proceeding against any of the Debtors, the Creditors' Committee, or professional

persons retained by the Creditors' Committee; (b) enforcing, attaching, collecting or recovering in

any manner any judgment, award, decree or order against any of the Debtors, the Creditors'

Committee or professional persons retained by the Creditors' Committee; (c) creating, perfecting or

enforcing any lien or encumbrance against any of the Debtors, the Creditors' Committee, or

professional persons retained by the Creditors' Committee; (d) asserting a setoff, right of subrogation

35412

or recoupment of any kind against any obligation due to any of the Debtors, the Creditors' Committee or professional persons retained by the Creditors' Committee; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Charlestown Plan.  The injunction described herein does not apply to and shall not enjoin or otherwise prevent the Reorganized Debtor from commencing or continuing any action against the Debtors' current or former officers, directors, or employees for claims arising before or after the commencement of the Debtors' bankruptcy cases.

Any Person injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator. No Liability for Solicitation or Participation

As specified in Section 1125(e) of the Bankruptcy Code, Persons that solicit acceptances or rejections of the Charlestown Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Charlestown Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Charlestown Plan or the offer, issuance, sale, or purchase of securities.

## N.    **Limitation of Liability**

Neither (a) the Charlestown Proponents or any of their employees, officers, directors, agents, representatives, affiliates, attorneys or any other professional persons employed by any of them; nor (b) MMPI Acquisition or any of its employees, officers, directors, agents, representatives, affiliates, attorneys or any other professional persons employed by it; nor (c) the Reorganized Debtors or any of its respective members, agents, employees, directors, officers, representatives, attorneys or other professional advisors; nor (d) the Creditors' Committee or any of its respective postpetition members, agents, employees, directors, officers representatives, attorneys or other professional advisors shall have any responsibility, or have or incur any liability, to any Person whatsoever, under any theory of liability (except for any claim based upon willful misconduct or gross negligence), for any act taken

35412

or omission made in good faith directly related to formulating, implementing, confirming, or consummating the Charlestown Plan, the Charlestown Disclosure Statement, or any contract, instrument, release, or other agreement or document created in connection with the Charlestown Plan, provided that nothing in this paragraph shall limit the liability of any Person for breach of any express obligation it has under the terms of this Charlestown Plan or under any post-petition agreement or other post-petition document entered into by such Person or in accordance with the terms of this Charlestown Plan or for any breach of a duty of care owed to any other Person occurring after the Effective Date.

## O.    Certificate of Incorporation and Certificates of Organization

On the Effective Date, each Reorganized Debtor shall adopt an amended certificate of incorporation, organization or formation of similar articles, pursuant to applicable non-bankruptcy law and Section 1123(a)(5)(I) of the Bankruptcy Code. Each amended certificate will, among other provisions prohibit the issuance of nonvoting equity securities to the extent required by Section 1123 (a)(6) of the Bankruptcy Code and will become effective upon the occurrence of the Effective Date, and shall contain such other provisions as the Reorganized Debtors deem necessary and appropriate including the elimination of single purpose entity provisions.

## P.    Other Documents and Actions

The Debtors and the Reorganized Debtors may, and shall, execute such documents and take such other actions as are necessary to effectuate the transactions provided for in the Charlestown Plan.

## Q.    Corporate Action

The adoption of the amended certificates of incorporation, certificates of organization, or certificate of limited partnership, as the case may be, and all other matters under the Charlestown

35412

Plan involving the corporate structure of the Reorganized Debtors, shall be deemed to have occurred

and be effective on and after the Effective Date without any requirement of further action by the

stockholders, directors, managers, members, or limited partners, as the case may be, of each Debtor.

Without limiting the foregoing, upon entry of the Confirmation Order by the Clerk, the filing by any

of the Reorganized Debtors of the amended certificates shall be authorized and approved in all

respects, including amendments to eliminate any special purpose entity provisions. On the Effective

Date or as soon thereafter as is practicable, pursuant to applicable law, the bylaws, operating

agreements, or partnership agreement, as the case may be, of each Debtor shall be the bylaws,

operating agreements or partnership agreement of such Reorganized Debtor.

### R.    Retiree Benefits

The Debtors do not have any present obligations to pay retiree benefits within the meaning of

Section 1129(a)(13).

### S.    The Creditors' Committee and Equity Committee

The Creditors' Committee and the Equity Committee shall be dissolved 30 days after the

Effective Date and the members of such committees shall be released and discharged from all further

rights and duties arising from or related to the Chapter 11 Cases.  The professionals retained by such

committees and the members thereof shall not be entitled to compensation or reimbursement of

expenses incurred for services rendered after the Committees are dissolved.

### V.

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Charlestown Plan constitutes a motion to assume or reject all executory contracts and

nonresidential real property leases, except for those executory contracts and nonresidential real

property leases that have already been assumed or rejected pursuant to an earlier Order of the

Bankruptcy Court or that are the subject of a motion for such an Order pending as of the

35412

Confirmation Hearing. Prior to the Confirmation Hearing, the Debtors will file a schedule of all real property leases and executory contracts to be rejected; any contract or lease not on that schedule shall be deemed assumed by the applicable Debtor as of the Effective Date. Prior to the date of hearing on the Debtors' Disclosure Statement, the Debtors will file a schedule of all real property leases and executory contracts to be assumed listing the cure amount, if any, under such unexpired lease or executory contract. Unless the non-Debtor party to any such executory contract or unexpired lease to be assumed files and serves on Debtors' counsel an objection to the cure amount specified on that schedule on or before the last date established by the Bankruptcy Court to file and serve objections to confirmation of the Charlestown Plan, such cure amount shall be forever binding on such non-debtor party to said executory contract or unexpired lease.

Except as otherwise agreed by the parties to an executory contract or unexpired lease, each Reorganized Debtor will cure any and all undisputed defaults within 30 days of the Effective Date under any executory contract or unexpired lease assumed pursuant to the Charlestown Plan and to which it is a party, in accordance with Section 365 of the Bankruptcy Code. All disputed defaults that are required to be cured shall be cured either within 30 days of the entry of a Final Order determining the amount, if any, of such Debtor's or Reorganized Debtor's liability with respect thereto, or as may be agreed otherwise by the parties. The Confirmation Order shall state that all pre-petition contracts and unexpired leases that are listed on the schedule described herein are deemed assumed under the Charlestown Plan.

Any Claim for damages arising from the rejection of an executory contract or unexpired lease must be Filed and served on counsel for the Debtors within thirty (30) days after the order of the Bankruptcy Court approving such rejection becomes a Final Order or be (i) forever barred and unenforceable against any Debtor, its Estate, any Reorganized Debtor and their respective property, and (ii) barred from receiving any distribution under the Charlestown Plan. All Allowed Claims arising from the rejection of executory contracts or unexpired leases shall be treated as a Class "C" General Unsecured Claim against the respective Debtor who is a party to such executory contract or unexpired lease.

Any election of rights by a lessee under Section 365(h)(1) of the Bankruptcy Code must be

35412

Filed and served on counsel for the Debtors within thirty (30) days after the order of the Bankruptcy Court approving such rejection becomes a Final Order or lessee shall be deemed to have waived any and all of its rights under Section 365(h)(1).

**VI.**

**CONFIRMATION DATE AND EFFECTIVE DATE CONDITIONS**

**A. Conditions to Confirmation**

The Confirmation of the Charlestown Plan in the MMPI case is subject to the following conditions precedent:

(1) the Clerk of the Bankruptcy Court shall have entered an order granting approval of the Charlestown Disclosure Statement and finding that it contains adequate information pursuant to section 1125 of the Bankruptcy Code and that order shall have become a Final Order; and

(2) the Confirmation Order shall have been signed by the Bankruptcy Court and duly entered on the docket for the Case by the Clerk of the Bankruptcy Court.

The Confirmation of the Charlestown Plan in all cases *except* the MMPI case is subject to the foregoing conditions as well as the entry of a Confirmation Order in the MMPI case.

**B. The Effective Date**

The Charlestown Plan will not be consummated or become binding unless and until the Effective Date occurs. Provided that the conditions to the Effective Date, as set forth below, have been fulfilled, the Effective Date will be the later of:

(1) the first (1st) business day after the thirtieth (30th) day following the Confirmation Date; and

(2) the first business day after such date under clause (a) on which there is not in force any stay or injunction against the enforcement of the Charlestown Plan or the Confirmation Order.

**C. Conditions to the Effective Date**

The Effective Date shall be subject to the following conditions precedent: the conditions to

35412

1    Confirmation have been met

2

3    **D. Waiver of Conditions**

4       The Charlestown Proponents may waive any or all of the other conditions set forth in the

5    Charlestown Plan without leave of or order of the Bankruptcy Court and without any formal action.

6    The Charlestown Proponents reserve the right to amend or revoke the Charlestown Plan. Although

7    this Charlestown Plan is styled as a joint plan, the Charlestown Proponents reserve the right to

8    proceed with Confirmation under this Charlestown Plan for one Debtor, or a combination of Debtors,

9    and not the others.

10      **E. Effect of Failure of Conditions**

11

12      In the event that the Effective Date does not occur, upon notification submitted by the

13   Charlestown Proponents to the Bankruptcy Court: (a) the Confirmation Order shall be vacated, (b) no

14   Distributions under the Charlestown Plan shall be made, (c) the Debtors and all Holders of Claims

15   and Interests shall be restored to the status quo ante as of the day immediately preceding the

16   Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors'

17   obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in

18   the Charlestown Plan shall constitute or be deemed a waiver or release of any Claims or Interests by

19   or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or

20   any person in any further proceedings involving the Debtors.

21

22      **F. Vacatur of Confirmation Order**

23      If an order denying confirmation of the Charlestown Plan is entered, then the Charlestown

24   Plan shall be null and void in all respects, and nothing contained in the Charlestown Plan shall (a)

25   constitute a waiver or release of any Claims against or Interests in the Debtors; (b) prejudice in any

26   manner the rights of the Holder of any Claim against, or Interest in, the Debtors; (c) prejudice in any

27   manner any right, remedy or claim of the Debtors; or (d) be deemed an admission against interest by

28   the Debtors.

35412

## VII.

## CONFIRMABILITY OF PLAN AND CRAMDOWN

In the event at least one Impaired Class of Claims votes to accept the Charlestown Plan (and at least one Impaired Class either votes to reject the Charlestown Plan or is deemed to have rejected the Charlestown Plan), the Debtors shall request the Bankruptcy Court to confirm the Charlestown Plan under the cramdown provisions of the Bankruptcy Code.

## VIII.

## VOTING AND DISTRIBUTIONS UNDER THE CHARLESTOWN PLAN AND TREATMENT OF DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS

### A.    Voting of Claims and Interests

Each Holder of an Allowed Claim or an Allowed Interest in an Impaired Class of Claims or Interests shall be entitled to vote separately to accept or reject the Charlestown Plan as provided in such order as may be entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Charlestown Plan, or any other order or orders of the Bankruptcy Court.

### B.    Method of Distributions Under the Charlestown Plan

#### 1.    Distributions Under the Charlestown Plan

The Disbursing Agent will make all distributions of cash and securities required to be distributed under the applicable provisions of the Charlestown Plan. The Disbursing Agent may employ or contract with other entities to assist in or make the distributions required by the Charlestown Plan. The Disbursing Agent will serve without bond, and the Disbursing Agent will not receive additional compensation for distribution services rendered pursuant to the Charlestown Plan.

Cash payments made pursuant to the Charlestown Plan will be in U.S. dollars by checks

35412

drawn on a bank selected by the Reorganized Debtors, or by wire transfer from a bank, at the option

of Reorganized Debtor. Cash payments of $1,000,000 or more to be made pursuant to the

Charlestown Plan will, to the extent requested in writing no later than five days after the

Confirmation Date, be made by wire transfer from a bank. Cash payments to foreign creditors, if any,

may be made, at the option of the Reorganized Debtors, in such funds and by such means as are

necessary or customary in a particular foreign jurisdiction.

### 2.    Timing and Methods of Distribution

#### a.  Compliance with Tax Requirements

In connection with the Charlestown Plan, to the extent applicable, the Disbursing Agent must

comply with all tax withholding and reporting requirements imposed on it by any governmental unit,

and all distributions pursuant to the Charlestown Plan will be subject to such withholding and

reporting requirements. The Disbursing Agent will be authorized to take any and all actions that may

be necessary or appropriate to comply with such withholding and reporting requirements.

Notwithstanding any other provision of the Charlestown Plan: (i) each Holder of an Allowed

Claim or Interest that is to receive a distribution of Cash pursuant to the Charlestown Plan will have

sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by

any governmental unit, including income, withholding and other tax obligations, on account of such

distribution; and (ii) no distribution will be made to or on behalf of such Holder pursuant to the

Charlestown Plan unless and until such Holder has made arrangements satisfactory to the Disbursing

Agent for the payment and satisfaction of such tax obligations. Any Cash to be distributed pursuant to

the Charlestown Plan will, pending the implementation of such arrangements, be treated as an

undeliverable distribution pursuant to the Charlestown Plan.

#### b.  Pro Rata Distributions

When the Charlestown Plan provides for Pro Rata distribution, the property to be distributed

under the Charlestown Plan shall be divided Pro Rata among the Holders of Allowed Claims or

Allowed Interests of the relevant Class.

35412

### c.  <u>Distributions</u>

Distributions under the Charlestown Plan shall be made by the Reorganized Debtors or their designee to the Holders of Allowed Administrative Claims and Allowed Claims at the addresses set forth on the Schedules, unless such addresses are superseded by addresses listed on proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001, or at the last known address of such Holders if the Debtors or Reorganized Debtors have been notified in writing of a change of address.

### C.  <u>Undeliverable or Unclaimed Distributions</u>

Any Person that is entitled to receive a cash distribution under the Charlestown Plan but that fails to cash a check within 90 days of its issuance shall be entitled to receive a reissued check from the Reorganized Debtors for the amount of the original check, without any interest, if such person requests the Disbursing Agent to reissue such check and provides the Disbursing Agent with such documentation as the Disbursing Agent requests to verify that such Person is entitled to such check, prior to the first anniversary of the Effective Date. If a Person fails to cash a check within 90 days of its issuance and fails to request reissuance of such check prior to the first anniversary of the date the check was issued, such Person shall not be entitled to receive any further distribution under this Charlestown Plan. If the distribution to any Holder of an Allowed Claim or Allowed Interest is returned to a Disbursing Agent as undeliverable, no further distributions will be made to such Holder unless and until the applicable Disbursing Agent is notified in writing of such Holder's then-current address. Undeliverable distributions will remain in the possession of the Disbursing Agent pursuant to the Charlestown Plan until such time as a distribution becomes deliverable. Undeliverable cash will be held in trust in segregated bank accounts in the name of the Disbursing Agent for the benefit of the potential claimants of such funds, and will be accounted for separately. The Disbursing Agent holding undeliverable cash shall invest such cash in a manner consistent with the Reorganized Debtors' investment and deposit guidelines. Any distribution which is not claimed within six months of the Effective Date shall be deemed property of the Reorganized Debtors.

35412

**D.**    **Disputed Claims and Estimations**

**1.**    **Treatment of Disputed Claims**

Notwithstanding any other provisions of the Charlestown Plan, no payments or distributions will be made on account of any Claim or Interest until such Claim or Interest becomes an Allowed Claim or Allowed Interest. The Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, irrespective of whether the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Court will retain jurisdiction to estimate any contingent or unliquidated Claim at any time during litigation concerning any objection to the Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on account of such Claim. All of these Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. In addition to seeking estimation of Claims as provided in the Charlestown Plan, the Reorganized Debtors may resolve or adjudicate certain Disputed Claims of Holders in Unimpaired Classes in the manner in which the amount of such Claim and the rights of the Holder of such Claim would have been resolved or adjudicated if the Reorganization Cases had not been commenced, subject to any applicable discharge and limitations on amounts of claims and remedies available under bankruptcy law. Claims may be subsequently compromised, settled, withdrawn or resolved by the Reorganized Debtors.

**2.**    **Distributions on Account of Disputed Claims Once They Are Allowed**

30 days after the date a Disputed Claim becomes an Allowed Claim, the Disbursing Agent will commence making distributions on account of any Disputed Claim or Disputed Interest that has become an Allowed Claim or Allowed Interest during the preceding calendar quarter. Such

35412

distributions will be made pursuant to the provisions of the Charlestown Plan governing the

applicable Class. Holders of Disputed Claims or Disputed Interests that are ultimately allowed will

also be entitled to receive, on the basis of the amount ultimately allowed, matured and payable

interest, if any, at the rate provided for the Class to which such Claim belongs.

### 3.    <u>Allowance of Claims Subject to Bankruptcy Code Section 502(d)</u>

Allowance of Claims shall be in all respects subject to the provisions of Section 502(d) of the

Bankruptcy Code.

### E.    <u>Setoffs</u>

Except with respect to claims of the Debtors and Reorganized Debtors released pursuant to

the Charlestown Plan or any contract, instrument, release, indenture or other agreement or document

created in connection with the Charlestown Plan, the Reorganized Debtors may, pursuant to Section

553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and

the distributions to be made pursuant to the Charlestown Plan on account of such Claim (before any

distribution is made on account of such Claim), the claims, rights and causes of action of any nature

that the Reorganized Debtors may hold against the Holder of such Allowed Claim; provided,

however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder will

constitute a waiver or release by Reorganized Debtors of any such claims, rights and causes of action

that the Debtors and the Reorganized Debtor may possess against such Holder.

### IX.

### <u>RETENTION OF JURISDICTION</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

Date, the Bankruptcy Court will retain such jurisdiction over the Chapter 11 Cases after the Effective

Date to the full extent permitted by law, including, without limitation, jurisdiction to:

35412

(a)     *Allow, disallow, determine, liquidate, classify, subordinate, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Charlestown Plan;*

(b)     *Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Charlestown Plan, for periods ending before the Effective Date;*

(c)     *Resolve any matters related to the assumption or rejection of any executory contract or unexpired lease to which any Debtor is a party or with respect to which the any Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising there from;*

(d)     *Ensure that distributions to Holders of Allowed Claims or Allowed Interests are accomplished pursuant to the provisions of the Charlestown Plan;*

(e)     *Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors, Reorganized Debtor or the Chapter 11 Cases that may be pending on the Effective Date;*

(f)     *Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Charlestown Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Charlestown Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided herein;*

35412

*(g)*   *Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Charlestown Plan or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Charlestown Plan and the Confirmation Order, or any entity's rights arising under or obligations incurred in connection with the Charlestown Plan or the Confirmation Order;*

*(h)*   *Subject to any restrictions on modifications provided in any contract, instrument, release, indenture or other agreement or document created in connection with the Charlestown Plan, modify the Charlestown Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify -the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Charlestown Plan, the Disclosure Statement or the Confirmation Order; or remedy any defect or omission or reconcile any inconsistency in any Court Order, the Charlestown Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Charlestown Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Charlestown Plan, to the extent authorized by the Bankruptcy Code;*

*(i)*   *Issue injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of the Charlestown Plan or the Confirmation Order;*

35412

*(j)*      *Enter and implement such Orders as are necessary or appropriate if the*
*Confirmation Order is for any reason modified, stayed, reversed, revoked or*
*vacated;*

*(k)*      *Determine any other matters that may arise in connection with or relating to the*
*Charlestown Plan, this Disclosure Statement, the Confirmation Order or any*
*contract, instrument, release, indenture or other agreement or document created in*
*connection with the Charlestown Plan, the Disclosure Statement or the*
*Confirmation Order, except as otherwise provided in the Charlestown Plan; and*

*(l)*      *Enter an Order concluding the Chapter 11 Cases.*

The foregoing list is illustrative only and not intended to limit in any way the Bankruptcy Court's exercise of jurisdiction. If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Cases, including without limitation the matters set forth in this Article, this Article shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## X.

## MISCELLANEOUS PROVISIONS

### A.    Exemption from Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Charlestown Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment or any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Charlestown Plan, including, without limitation, any agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Charlestown Plan shall not be subject to any stamp, real estate transfer, mortgage recording, license

35412

transfer or other similar tax. For the avoidance of doubt, the transactions contemplated under the Charlestown Plan include, among other things, the transactions and transfers contemplated in Section III of the Charlestown Plan under, in furtherance of, or in connection with the consolidation provided for therein including, without limitation, the transfer of the Debtors' right, title and interest in property of the Estates to the Reorganized Debtors.

### B.    Payment of. Statutory Fees

All fees payable on or before the Effective Date pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date.

### C.    Modification or Withdrawal of the Charlestown Plan

The Charlestown Proponents reserve the right, in accordance with the Bankruptcy Code, to amend, modify (subject to Court approval), or withdraw the Charlestown Plan prior to the entry of the Confirmation Order. After the entry of the Confirmation Order, the Charlestown Proponents may amend or modify the Charlestown Plan, or remedy any defect or omission or reconcile any inconsistency in the Charlestown Plan in such a manner as may be necessary to carry out the purpose and intent of the Charlestown Plan.

### D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of California (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Charlestown Plan and any agreements, documents and instruments executed in connection with the Charlestown Plan.

### E.    Filing or Execution of Additional Documents

On or before the Effective Date, the Reorganized Debtor shall file with the Bankruptcy Court

35412

or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Charlestown Plan.

### F.    **Withholding and Reporting Requirements**

In connection with the Charlestown Plan and all instruments issued in connection therewith and distributions thereon, the Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions there under shall be subject to any such withholding and reporting requirements.

### G.    **Waiver of Rule 7062 of the Federal Rules of Bankruptcy Procedure**

The Debtors may request that the Confirmation Order include (a) a finding the Rule 62(a) of the Federal Rules of Civil Procedure, made applicable by Rule 7062 of the Federal Rules of Bankruptcy Procedure, shall not apply to the Confirmation Order, and (b) authorization for the Debtors to consummate the Charlestown Plan immediately after the entry of the Confirmation Order.

### H.    **Headings**

Headings used in the Charlestown Plan are for convenience and reference only and shall not constitute a Part of the Charlestown Plan for any purpose.

### I.    **Exhibits and Schedules**

All Exhibits and Schedules to the Charlestown Plan and Disclosure Statement are incorporated into and constitute a part of the Charlestown Plan as if set forth herein.

### J.    **Notices**

All notices, requests and demands hereunder to be effective must be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by U.S. Mail addressed as follows:

35412

COUNSEL TO THE CHARLESTOWN
PROPONENTS
**Christopher E. Prince**
**Lesnick Prince LLP**
185 Pier Avenue, Suite 103
Santa Monica, CA 90405

### K.     Conflict

The terms of this Charlestown Plan shall govern in the event of any inconsistency with the summaries of the Charlestown Plan set forth in the Disclosure Statement.

### L.     Successors and Assigns

The rights, benefits and obligations of any Person named or referred to in the Charlestown Plan shall be binding on, and shall inure to the benefit of, any heir, executor, trustee, administrator, successor or assign of such Person.

### M.     Saturday, Sunday or Legal Holiday

If any payment or act under the Charlestown Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### N.     Post-Effective Date Effect of Evidences of Claims or Interests

Notes, bonds, stock certificates and other evidences of Claims against or Interests in the Debtors, and all Instruments of the Debtors (in either case, other than those executed and delivered as contemplated hereby in connection with the consummation of the Charlestown Plan), shall, effective upon the Effective Date, represent only the right to participate in the distributions contemplated by the Charlestown Plan.

### O.     Severability of Plan Provisions

35412

If, prior to Confirmation, any term or provision of the Charlestown Plan that does not govern the treatment of Claims or Interests provided for herein or the conditions to the Effective Date is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Charlestown Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the Charlestown Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**P.      Balloting**

Balloting shall be conducted in accordance with the Balloting Procedures Order.

**Q.      No Admissions or Waiver of Objections**

Notwithstanding anything herein to the contrary, nothing contained in the Charlestown Plan shall be deemed as an admission by any Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification. The Debtors are not bound by any statements herein or in the Disclosure Statement as judicial admissions.

**R.      Survival of Settlements**

All Bankruptcy Court-approved settlements shall survive consummation of the Charlestown Plan, except to the extent that any provision of any such settlement is inconsistent with the Charlestown Plan, in which case the provisions of the Charlestown Plan shall supersede such inconsistent provision of such settlement. Notwithstanding the foregoing, the settlement documents

35412

approved by the Bankruptcy Court regarding Imperial, Murakami, PCB, FNBN, Stanford Group, Pacific Commerce and any other settlement agreement approved prior to the Effective Date that specifically provides that the Debtors' Plan shall not modify the terms of such settlement, shall supersede any inconsistent Charlestown Plan provisions.

**S.    Post-Confirmation Status Report**

Within 180 days of the entry of the Confirmation Order, the Reorganized Debtors shall file a status report explaining what progress has been made toward consummation of the Charlestown Plan. The initial report shall be served on the United States Trustee and those parties who have requested special notice. Further reports shall be filed every 180 days thereafter and served on the same entities, unless otherwise ordered by the Bankruptcy Court.

**T.    Final Decree**

Once the Estates have been fully administered within the meaning of Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Reorganized Debtor shall file a motion with the Bankruptcy Court to obtain a final decree to close the Chapter 11 Cases.

Dated:  May 5, 2011                    LESNICK PRINCE LLP


                                       By: _____/s/ Christopher E. Prince_____
                                            Christopher E. Prince
                                            Attorneys for
                                            Charlestown Capital Advisors, LLC
                                            and
                                            Hartland Asset Management Corporation

35412