CHRISTOPHER E. PRINCE (State Bar No. 183553)
cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
matt@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
acahill@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA 90405
Telephone: (213) 493-6496
Facsimile:  (213) 493-6596

Attorneys for
Charlestown Capital Advisors, LLC and
Hartland Asset Management Corporation

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br>MERUELO MADDUX PROPERTIES, INC., et al.,<br><br>        Debtor. | Case No. 1:09-bk-13356-KT<br><br>Chapter 11<br><br>CHARLESTOWN CAPITAL ADVISORS, LLC'S AND HARTLAND ASSET MANAGEMENT CORPORATION'S ~~FIRST~~SECOND MODIFIED FOURTH AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED OCTOBER 14, 2010<br><br>                Confirmation Hearing<br>Date:       January 27, 2011<br>Time:       9:30 a.m.<br>Place:      Courtroom 301<br>              21041 Burbank Blvd.<br>              Woodland Hills, CA 91367 |

35412

| | | |
|---|---|---|
| 1 | 2640 Washington Boulevard Real Property | means the real property located at 2640 E. Washington Boulevard, Los |
| 2 | | Angeles, California, APN 5168-017-012. |
| 3 | Administrative Claim | means any right to payment constituting a cost or expense of administration of the Chapter 11 |
| 4 | | Cases of a kind specified under Section 503(b) and entitled to priority under Section 507(a)(2) |
| 5 | | of the Bankruptcy Code, including, without limitation, any actual and necessary costs and |
| 6 | | expenses of preserving the estates of the Debtors, any actual and necessary costs and |
| 7 | | expenses of operating the respective businesses of the Debtors, any indebtedness or |
| 8 | | ~~obligationsincurred~~obligations incurred or |
| 9 | | assumed by any of the Debtors in connection with the conduct of their respective businesses, |
| 10 | | including, without limitation, all compensation and reimbursement of expenses to the extent |
| 11 | | Allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, |
| 12 | | and any fees or charges assessed against the estates of the Debtors under Section 1930 of |
| 13 | | chapter 123 of Title 28 of the United States Code. |
| 14 | Alameda Produce Market | means Alameda Produce Market, LLC, a Delaware limited liability company and a |
| 15 | | Debtor in Possession in Chapter 11 Case number 1:09-bk-13394. |
| 16 | | |
| 17 | Alameda Produce Market Encumbered Real Property | means the real property located at 1312 E. 7th Street, Los Angeles, California, APN 5146-009-003 (the "7th Street Produce |
| 18 | | Market"), and the property located at 761 Terminal Street, Los Angeles, California, APNs |
| 19 | | 5146-009-004 and 5146-009-005 ("Alameda Square"). |
| 20 | | |
| 21 | Alameda Produce Market Unencumbered Real Property | means the real property located at 1215 E. 7th Street, Los Angeles, California, APN |
| 22 | | 5147-034-015. |
| 23 | Allowed Claim or Allowed Interest | means a Claim against or Interest in a Debtor to the extent that |
| 24 | | a.    a proof of the Claim or Interest<br>i.    was timely Filed and served upon a |
| 25 | | Debtor and no objection to the Claim or Interest is Filed within the time fixed by the Bankruptcy |
| 26 | | Court for such objections;<br>ii.    is deemed Filed under applicable law |
| 27 | | (e.g., filed on the Schedules as noncontingent, nondisputed and liquidated) or pursuant to a |
| 28 | | Final Order of the Bankruptcy Court and no objection to the Claim or Interest is Filed within |

5

35412

| | |
|---|---|
| Inside Equity Interests | means ~~any~~an Interest in MMPI held ~~by a person who is or was~~, directly or indirectly, by an Insider ~~of a Debtor prior to the Effective Date~~. |
| Insider | ~~has the meaning set forth in Section 101(31) of the Bankruptcy Code.~~ Means a person who served as an Officer or Director of MMPI after the Petition Date but before the Effective Date. |
| Insider Litigation | means any action or proceeding brought by or on behalf of the ~~Debtors or the~~ Reorganized Debtors against ~~a person who is or was~~ an Insider ~~of the Debtors prior to the Effective Date~~. |
| Insider Cash Election Holders | Holders of Insider Equity Interests who, under the terms of the Charlestown Plan, elect to receive a cash distribution on account of their Interests. |
| Insider Stock Retention Holders | Holders of Insider Equity Interests who, under the terms of the Charlestown Plan, elect to retain their Interests. |
| Instrument | means any share of stock, security, promissory note or other "instrument," within the meaning of that term, as defined in Section 9105(1)(i) of the UCC. |
| Intercompany Claims | means all Claims asserted by any Debtor(s) or MM 845 S. Flower or Chinatown against any other Debtor(s). |
| Interest | has the meaning set forth in Section 101(16) of the Bankruptcy Code for "equity security." |
| Kennedy Funding | means Kennedy Funding, Inc. |
| Kennedy Funding Collateral | means the MM Mission Boulevard Real Property. |
| Legendary | means Legendary Investors Group No. 1, L.L.C. (as successor to East West Bank on certain loans). |
| Lien | has the meaning set forth in Section 101(37) of the Bankruptcy Code. |
| Loan Documents | means, collectively, any and all writings between a Debtor and a Creditor or any other |

13

35412

Charlestown Plan; (f) captions and headings to Articles and paragraphs are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations of the Charlestown Plan; (g) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (h) all exhibits to the Charlestown Plan are incorporated into the Charlestown Plan, and shall be deemed to be included in the Charlestown Plan, provided that they are Filed no later than the commencement of the Confirmation Hearing.

### Time Periods

In computing any period of time prescribed or allowed by the Charlestown Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The following is a schedule designating the Classes of Claims and Interests under the Charlestown Plan.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following Classes.  The below schedule includes Claims that are or may be disputed.  No distribution shall be made on account of any Claim or Interest which is not an Allowed Claim or an Allowed Interest and then only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released or otherwise satisfied before the Effective Date.  The schedule was adopted from a similar schedule in the Debtors' proposed disclosure statement.  The Charlestown Proponents make no representations regarding the accuracy or completeness of the Debtors' information.

### Summary of Claims and Interests Against Each Debtor

The categories of Claims and Interests listed in the chart below classify Claims (except for Administrative Claims and Priority Tax Claims) and Interests for all purposes, including voting, confirmation and distribution pursuant to the Charlestown Plan. The amounts listed for each Class in

35412

the chart below represent the Debtors' estimate of the amount of the Allowable Claims asserted in each Class. The amounts listed for the Secured Claims of Los Angeles County represent the amounts owed as of April 30, 2010, under the terms of the Debtors' Settlement with Los Angeles County.  The chart below also accounts for the Debtors' proposed Settlement with Legendary (approved January 24, 2010, by which Debtors transferred the MG 620 Property, the MG 4th Street Property, the MG 1500 Property, the Merco Property and the MM 3rd & Omar Property to Legendary as full payment to satisfy all obligations owed to Legendary by Debtors.  The Charlestown Proponents expressly reserve all rights to object to the amount, character and enforceability of any Claim or Interest, whether or not listed in the chart below.

| Class | Description of Class | Impaired/ Unimpaired |
|---|---|---|
| 1. | Meruelo Maddux Properties, Inc.[1] | |
| 1A | Secured Claim of Oliver, Sandifer - $436,901 | Unimpaired. |
| 1B | Priority Benefits Claims - $46,362 | Unimpaired. |
| 1C-1 | General Unsecured ~~Insider~~ Claims - $7,668,891 | ~~Impaired~~Unimpaired. |
| 1C-2A | Unsecured Guaranty Claims - $~~76,030,997.83~~[2]122,726,548[2] | Impaired. |
| 1C-2B | Unsecured Guaranty Claims - $~~92,453,017~~39,986,616.97[3] | Impaired. |
| ~~1C-3~~ | ~~General Unsecured Claims - $7,668,891~~ | ~~Unimpaired.~~ |
| 1 E | Non-Insider Equity Interests | Impaired. |
| 1 F | Insider Equity Interests | Impaired. |
| 2. | Meruelo Maddux Properties, L.P. | |
| | | |
| 2C-2 | | |

[1] The Debtors are listed in the order of the Service Level Debtors and then the Property Level Debtors.

[2] The $~~76,030,997.83~~122,726,548 reflects the amount of guaranty claims of the following entities that did not enter into court-approved, binding settlement agreements with MMPI: Bank of America, ~~N.A.,~~ California Bank & Trust, Kennedy Funding, Inc. and ~~United Commerical~~Cathay Bank ~~(now East West Bank)~~.

[3] The $39,986,616.97 reflects the amount of guaranty claims of entities that entered into court-approved binding settlement agreements including United Commercial Bank (now East West Bank), Pacific Commerce Bank, FNBN, and Imperial.  Cathay was removed from this Class by the Court's order dated February 9, 2011.

| | | | |
|---|---|---|---|
| 1 | | General Unsecured Claims - $~~1,869,638~~[3] 1,869,638[4] | Unimpaired. |
| 2 | 2D | Intercompany Claims - $452,881,601 | Unimpaired. |
| 3 | 2E | Equity Interests of MMPI (99.6%) and Holders of LTIP Units (0.4%) | Impaired. |
| 4 | 3. | MMP Ventures LLC | |
| 5 | 3C | General Unsecured Claims - $652 | Unimpaired. |
| 6 | 3C | Intercompany Claims - $2,509 | Unimpaired. |
| 7 | 3E | Equity Interests of MMPLP (100%) | Unimpaired. |
| 8 | 4. | Meruelo Maddux Construction, Inc. | |
| 9 | 4C | General Unsecured Claims - $652 | Unimpaired. |
| 10 | 4D | Intercompany Claims - $10,588 | Unimpaired. |
| 11 | 4E | Equity Interests of MMPLP (100%) | Unimpaired. |
| 12 | 5. | Meruelo Maddux Management LLC | |
| 13 | 5B | Priority Benefits Claims - $151,247 | Unimpaired. |
| 14 | 5C | General Unsecured Claims - $652 | Unimpaired. |
| 15 | 5D | Intercompany Claims - $4,296,137 | Unimpaired. |
| 16 | 5E | Equity Interests of MMPLP (99%) and MMCI (1%) | Unimpaired. |
| 17 | 6. | Meruelo Maddux – 555 Central Avenue LLC | |
| 18 | 6C | General Unsecured Claims - $10,102 | Unimpaired. |
| 19 | 6D | Intercompany Claims - $1,999,388 | Unimpaired. |
| 20 | 6E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 21 | 7. | Merco Group – Overland Terminal LLC | |
| 22 | 7C | General Unsecured Claims - $132,750 | Unimpaired. |
| 23 | 7D | Intercompany Claims - $1,093,202 | Unimpaired. |
| 24 | 7E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 25 | 8. | National Cold Storage LLC | |
| 26 | 8C | General Unsecured Claims — $4,545 | Unimpaired. |

[3] -
[4]

35412

| | | |
|---|---|---|
| | $37,263 | |
| 36A-2 | Cathay Bank Secured Claim - $48,815,711 | Impaired. |
| 36A-3 | Cathay Bank Secured Claim - $9,848,944 | Impaired. |
| 36A-4 | Secured Claim of Oliver, Sandifer - $436,901 | Unimpaired. |
| 36B | Priority Benefits Claims - $23,169 | Unimpaired. |
| 36C-1 | Unsecured Claims — Tenant Security Deposits - $301,019 | Unimpaired. |
| 36C-2 | General Unsecured Claims - $581,888 | Unimpaired. |
| 36D | MTA Contingent Claim | Impaired. |
| 36E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 37. | Merco Group – 1500 Griffith Avenue LLC | |
| | | |
| | | |
| | | |
| 37A-3 | Murakami Secured Claim - $2,945,000 | Impaired. |
| 37C-1 | Unsecured Claims — Tenant Security Deposits - $58,830 | Unimpaired. |
| 37C-2 | General Unsecured Claims - $2,452 | Unimpaired. |
| 37D | Intercompany Claims - $5,508,367 | Unimpaired. |
| 37E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 38. | Meruelo Maddux Properties – 1919 Vineburn Street LLC | |
| 38A-1 | Los Angeles County Secured Tax Claim - $138,067 | Impaired. |
| 38A-2 | Imperial Capital Bank Secured Claim - $5,468,543 | Impaired. |
| 38C-1 | Unsecured Claims      Tenant Security Deposits - $42,210 | Unimpaired. |
| 38C-2 | General Unsecured Claims - $2,652 | Unimpaired. |
| 38D | Intercompany Claims - $3,035,648 | Unimpaired. |
| 38E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 39. | Meruelo Maddux Properties – 2131 Humboldt Street LLC | |
| 39A-1-a | Los Angeles County Secured Tax Claim Against 2131 Humboldt Encumbered Real Property - $263,168 | Impaired. |
| 39A-1-b | Los Angeles County Secured Tax Claim Against | Impaired. |

35412

| Type of tax – Business | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| 35.  Meruelo Maddux – 915-949 S. Hill Street LLC | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| 39.  Meruelo Maddux Properties – 2131 Humboldt Street LLC | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| 42.  Meruelo Maddux Properties – 2951 Lenwood Road LLC | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| 52.  Meruelo Wall Street LLC | | |
| Name – Franchise Tax Board<br>Type of tax – Income | $0.00 | See below. |
| TOTAL[6] | $340,779 | |

Except as otherwise provided below, or as otherwise agreed to by Reorganized Debtor and the applicable taxing agency, Holders an Allowed Priority Tax Claims shall receive the Common Unsecured Claim Treatment, i.e., payment in full on or before 30 days after the Effective Date.

In the event a Disputed Priority Tax Claim becomes an Allowed Priority Tax Claim after the Effective Date, the payment will be due 30 days after the date the Disputed Claim becomes an Allowed Claim.  Creditors who have agreed to other treatments in court-approved settlements shall receive the treatments provided in those settlements notwithstanding the Allowance of some or all of their Claims.

## Common Class Treatments for Classified Claims

The following are Common Class Treatments for the following classes of Claims and Interests: (i) Los Angeles Tax Claims, (ii) Secured Lender Claims and Settled Secured Lender Claims, (iii) Other Priority Claims, (iv) Unsecured Tenant Security Deposit Claims, (v) General

[5] The Franchise Tax Board has filed claims for franchise taxes for the 2009 year corporate tax fee of $800 in the Debtors' cases scheduled above.  Debtors' records indicate that all such taxes have been paid and, accordingly, the above schedule shows the amount of the such FTB claims to be zero but if it is determined that the FTB has Allowable Claims, the treatment is as provided above.

[6] The Franchise Tax Board has filed claims for franchise taxes for the 2009 year corporate tax fee of $800 in the Debtors' cases scheduled above.  Debtors' records indicate that all such taxes have been paid and, accordingly, the above schedule shows the amount of the such FTB claims to be zero but if it is determined that the FTB has Allowable Claims, the treatment is as provided above.

35412

1  Unsecured Claims, (vi) Guaranty claims and Settled Guaranty Claims; (vii) Intercompany Claims,

2  and (viii) Equity Interests. The Classes of Claims and Interests for each Debtor will either receive the

3  Common Treatment or a treatment specific to a particular Class and Debtor. For each Class and for

4  each Debtor, the Charlestown Plan will specify whether such class will receive the common

5  treatment set forth herein or another treatment.

6         The Charlestown Proponents expressly reserve the right, at any time during the term of the

7  Charlestown Plan, to refinance the obligations secured by any of their real properties or to sell such

8  any or all of such real properties and satisfy the full amount of the Allowed Secured Claims against

9  such real property(ies) from the proceeds of such refinancing. The Charlestown Proponents also

10  reserve the right to make full or partial repayment of the debt at any time on or following the

11  Effective Date.

12

13        **Common Los Angeles Tax Claim Treatment**

14         Los Angeles Tax Claims will be paid in accordance with the terms of the Bankruptcy

15  Court-approved settlement between the Debtor and Los Angeles County.

16

17        **Common Secured Lender Claim Treatment**

18         The Holder shall receive deferred Cash payments over a period of four years from the

19  Effective Date in an amount equal to the amount of the Allowed Secured Claim plus interest from the

20  Effective Date on the unpaid portion of the Allowed Secured Claim at the rate prescribed below.

21  Payments shall be made in the amount of the monthly accruing interest with the principal balance and

22  any unpaid interest due and payable four years after the Effective Date. The monthly installments of

23  interest shall be payable on or before the fifteenth (15th) day of each month, with the first installment

24  due on or before the fifteenth (15th) day of the month following the month in which the Effective

25  Date occurs.  The first six installments, however, will be paid together on the date that the first

26  installment is due.

27         Each installment shall be in the amount equal to interest on the Allowed Secured Claim at the

28  rate of 5.25% per annum or as otherwise established by the Bankruptcy Court, provided, however,

35412

1    Claims as General Unsecured Claims.

2

3    **Common Unsecured Guaranty Claim Treatment**

4    Claims in this Class consist of Guaranty Claims on obligations for which another one of the

5    Debtors is the principal obligor and for which the principal obligation is provided for under this

6    Charlestown Plan or under the plan filed by MM 845 S. Flower and Chinatown.

7    Five years after the Effective Date, the Holder of an Allowed Guaranty Claim in this Class

8    shall receive the full amount of its Claim plus interest at 3% per annum (or such other interest rate as

9    the Bankruptcy Court shall determine is necessary for the Charlestown Plan to comply with

10    Bankruptcy Code Section 1129(b)(2)).  The amount of the Allowed Guaranty Claim shall reflect

11    payments made on the underlying obligation and/or recoveries based on disposal of the collateral.  If,

12    for example, the underlying obligation is satisfied, the amount of the Holder's Guaranty Claim shall

13    be zero.  Similarly, if the Collateral securing the underlying obligation is sold at a foreclosure sale for

14    more than the amount owed by the Principal Obligor, the Holder's Guaranty Claim shall also be zero.

15

16    Holders of Claims in this class will retain their existing pre-petition guaranties.  The parties'

17    respective rights under the guaranties will not be altered or modified except that (1) all pre-Effective

18    Date defaults will be deemed cured and/or waived; (2) the primary obligations secured by the

19    guaranties shall be the obligations of the primary obligors as modified by their respective plans of

20    reorganization; and (3) defaults occurring post-Effective Date must relate to either the guarantor's or

21    the primary obligor's failure to perform their obligations as modified under their respective plans of

22    reorganization.

23    **Common Treatment for Guaranty Claims held by Settling Guaranty Creditors**

24    The foregoing treatment shall not supersede treatment specified in Bankruptcy

25    Court-approved settlements.  Holders of Guaranty Claims who have agreed to a different treatment in

26    Bankruptcy Court-approved settlement will receive that treatment.

27    **Common Intercompany Claim Treatment**

28    The Holders shall retain such Claims and all rights, interests, and obligations related thereto

50

35412

but, notwithstanding, the Holders of Intercompany Claims consent to the treatment afforded and distributions to be made under this Charlestown Plan to Holders in each class of Allowed Claims.

### Common Equity Interest Treatment

The Holders of the Equity Interests in the Debtors in this Class shall retain their Equity Interests in the Debtor.

### Treatment of Classified Claims Against and Interests Against Each of the Debtors

### CLAIMS AGAINST AND INTERESTS IN MMPI

### Class 1A — Secured Claim of Oliver, Sandifer

The Class lA Claim is unimpaired and the Holder is not entitled to vote on the Charlestown Plan.  On the Effective Date, the Holder's claim shall be paid in full.[67]

### Class 1B — Other Priority Claims

This Class is Unimpaired and Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Other Priority Claim Treatment on account of their Allowed Claims.

### Class 1C-1 ~~Unsecured Insider Claims~~General Unsecured Claims

~~This Class consists of all unsecured Claims, if any, where the Holder is or was an Insider of MMPI prior to the Effective Date.  This Class does not include Intercompany Claims.  This Class is Impaired and the Holders are entitled to vote on the Charlestown Plan.  The Holders shall receive the Common General Unsecured Claim Treatment on account of their Allowed Claims except that their distribution will be held by the Reorganized MMPI in reserve for the earlier of (1) five years after the Effective Date; (2) the resolution of any Insider Litigation against that Holder; or (3) upon such earlier time as the Reorganized Debtor decides, in its sole and absolute discretion is appropriate.  Interest will accrue, at an annual rate to be determined by the Bankruptcy Court, on the Allowed amount of the Claims until the distribution is released to the Holder.  If the Bankruptcy Court~~

---

[67] The Reorganized Debtor will investigate the Oliver, Sandifer claim and may object to the claim at the appropriate time.

35412

1   ~~determines that the Charlestown Plan cannot be confirmed because of the separate classification~~

2   ~~and/or disparate treatment of Insiders, Insider Holders will be entitled to the same treatment as~~

3   ~~Non-Insider Holders.~~This Class receives the Common Unsecured Claim Treatment.

4

5   **Class 1C-2A Unsecured Guaranty Claims**

6   This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders

7   shall receive the Common Unsecured Guaranty Claim Treatment on Account of their Allowed

8   Claims.

9   **Class 1C-2B Unsecured Guaranty Claims**

10   This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders

11   shall receive the Common Treatment for Guaranty Claims held by Settling Guaranty Creditors.

12

13   **f.   ~~Class 1C-3 General Unsecured Claims~~**

14   ~~This Class receives the Common Unsecured Claim Treatment.~~

15

16   **Class 1E Non-Insider Equity Interests in the Debtor**

17   This Class is impaired and is entitled to vote on the Charlestown Plan. On the Effective Date

18   all Holders of MMPI Existing Common Stock shall have the option to either (i) exchange their

19   MMPI Existing Common Stock for a cash payment of $0.35 per share of MMPI Existing Common

20   Stock (such Holders, the "Cash Election Holders"), or (ii) to retain their MMPI Existing Common

21   Stock (such Holders, the "Stock Retention Holders"), subject to operation of this Plan.

22   In the event that the Cash Election Holders, together with the Insider Cash Election Holders

23   (as defined immediately below in Section III.C.h) own less than 55% of the shares of MMPI Existing

24   Common Stock, then the Stock Retention Holders, notwitststanding their election to retain their

25   MMPI Existing Common Stock, will be deemed to have elected, on a pro rata basis together with the

26   Insider Stock Retention Holders, to exchange a sufficient number of shares of MMPI Existing

27   Common Stock such that the total number of shares exchanged for cash (including the shares held by

28   the Cash Election Holders and the Insider Cash Election Holders) equals 55% of the shares of MMPI

35412

1    Existing Common Stock.  Such Stock Retention Holders who are deemed to have elected to exchange

2    a pro rata portion of their shares of MMPI Existing Common Stock shall receive a cash payment of

3    $0.35 per share of such stock.

4          In the event that the Cash Election Holders, together with the Insider Cash Election Holders

5    own more than 55% of the shares of MMPI Existing Common Stock, then the Cash Election Holders,

6    notwithstanding their election to receive a cash distribution in exchange for their shares, will be

7    deemed to have elected, on a pro rata basis together with the Insider Cash Election Holders, to retain

8    a sufficient number of shares of MMPI Existing Common Stock such that the total number of shares

9    exchanged for cash equals 55% of the shares of MMPI Existing Common Stock.

10          The MMPI Existing Common Stock that is retained by Holders in accordance with the

11    foregoing shall be subject to a reverse stock split as described herein at Section IV.F.2.  The MMPI

12    Existing Common Stock that is exchanged for cash shall be transferred to MMPI Acquisition on the

13    Effective Date as described herein at Section IV.E.a.

14

15        **Class 1F Insider Equity Interests in the Debtor**

16          This Class is impaired and is entitled to vote on the Charlestown Plan. On the

17    Effective Date all Holders of Insider Equity Interests shall have the option to either (i) exchange their

18    MMPI Existing Common Stock for a cash payment of $0.35 per share of MMPI Existing Common

19    Stock (such Holders, the "Insider Cash Election Holders"), or (ii) to retain their MMPI Existing

20    Common Stock (such Holders, the "Insider Stock Retention Holders"), subject to operation of this

21    Plan.   Holders of Class 1F Interests shall receive the same treatment as Holders of Class 1E

22    Interests except that cash distributions on account of Insider Equity Interests will be held in reserve

23    for 90 days to permit the Reorganized Debtor to conduct a forensic investigation and audit of

24    potential claims.  If the Reorganized Debtor has not brought an action against an Insider within the

25    90 day period, that Insider's distribution will be released unless the Court, on motion, has extended

26    the reserve period.  If an action is commenced, to continue to hold the distribution in reserve, the

27    Reorganized Debtor must bring a motion in the Bankruptcy Court (or such other court where the

28

35412

1    action is pending) under applicable non-bankruptcy law regarding provisional remedies (e.g., for an

2    injunction, attachment or protective order).

3    ~~In the event that the Insider Cash Election Holders, together with the Cash Election Holders~~

4    ~~own less than 55% of the shares of MMPI Existing Common Stock, then the Insider Stock Retention~~

5    ~~Holders, notwitststanding their election to retain their MMPI Existing Common Stock, will be~~

6    ~~deemed to have elected, on a pro rata basis together with the Stock Retention Holders, to exchange a~~

7    ~~sufficient number of shares of MMPI Existing Common Stock such that the total number of shares~~

8    ~~exchanged for cash (including the shares held by the Insider Cash Election Holders and the Cash~~

9    ~~Election Holders) equals 55% of the shares of MMPI Existing Common Stock.  Such Insider Stock~~

10   ~~Retention Holders who are deemed to have elected to exchange a pro rata portion of their shares of~~

11   ~~MMPI Existing Common Stock shall receive a cash payment of $0.35 per share of such stock.~~

12   ~~In the event that the Insider Cash Election Holders, together with the Cash Election Holders~~

13   ~~own more than 55% of the shares of MMPI Existing Common Stock, then the Insider Cash Election~~

14   ~~Holders, notwitststanding their election to receive a cash distribution in exchange for their shares,~~

15   ~~will be deemed to have elected, on a pro rata basis together with the Cash Election Holders, to retain~~

16   ~~a sufficient number of shares of MMPI Existing Common Stock such that the total number of shares~~

17   ~~exchanged for cash equals 55% of the shares of MMPI Existing Common Stock.~~

18   ~~The cash to be distributed to or the MMPI Existing Common Stock to by held by Holders of~~

19   ~~Insider Equity Interests in accordance with this section shall be held in reserve for the earlier of (1)~~

20   ~~five years after the Effective Date; (2) the resolution of any Insider Litigation against that Holder; or~~

21   ~~(3) upon such earlier time as the Reorganized MMPI decides, in its sole and absolute discretion is~~

22   ~~appropriate. The Bankruptcy Court may determine that this treatment unfairly discriminates against~~

23   ~~Insider Holders and, that Insiders Holders are entitled to an immediate distribution.  The Charlestown~~

24   ~~Proponents will amend the Charlestown Plan in accordance with the Bankruptcy Court's ruling on~~

25   ~~this issue.  Accordingly, Insiders may be entitled to the same treatment as Non-Insiders under the~~

26   ~~Charlestown Plan generally.~~

27   ~~The MMPI Existing Common Stock that is allocated to Holders of Insider Equity Interests in~~

28   ~~accordance with the foregoing shall be subject to a reverse stock split as described herein at Section~~

54

1  ~~IV.F.2.  The MMPI Existing Common Stock that is exchanged for cash shall be transferred to MMPI~~
2  ~~Acquisition as described herein at Section IV.E.a.~~

3          If the Bankruptcy Court rules that the reserve period must be less than the 90 days

4  specified or that the Charlestown Plan must give Insiders the same treatment as Non-Insiders, then

5  the Charlestown Plan will provide for the lesser reserve period or will provide Insiders with the same

6  treatment as Non-Insiders as necessary.

7                    **CLAIMS AGAINST AND INTERESTS IN MMPLP**

8          **Class 2C-1 Unsecured Guaranty Claims**

9  This Class is Impaired and the Holders are entitled to vote on the Charlestown Plan. The

10  Holders shall receive the Common Unsecured Guaranty Claim Treatment on account of their

11  Allowed Claims.

12          **Class 2C-2 General Unsecured Claims**

13  This Class receives the Common Unsecured Claim Treatment.

14

15          **Class 2D Intercompany Claims**

16  This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan.

17  The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed

18  Claims.

19          **Class 2E Equity Interests**

20  This Class is Impaired. The LTIP Units shall be cancelled and the Holders of Interests in the

21  LTIP Units shall not receive any distributions or retain any property on account of their Equity

22  Interests. The remaining Interests shall be extinguished by the merger of MMPLP with or into

23  MMPI.

24

25                 **CLAIMS AGAINST AND INTERESTS IN MM VENTURES, LLC**

26          **Class 3C General Unsecured Claims**

27  This Class receives the Common Unsecured Claim Treatment

28          **Class 3D Intercompany Claims**

### CLAIMS AGAINST INTERESTS IN NATIONAL COLD STORAGE

#### Class 8C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

#### Class 8E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment.

### CLAIMS AGAINST AND INTERESTS IN WALL STREET MARKET

#### Class 9C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

#### Class 9D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

#### Class 9E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment.

### CLAIMS AGAINST THE INTERESTS IN MMP 1009 N. CITRUS

#### Class 10A Los Angeles County Secured Tax Claim

The Class 10A Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of the Real Property[7][8] | $3,120,000 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $118,420 |
| Estimated Quarterly Payment | $11,141 |
| Total Payout Amount | $178,256 |

---

[7] Unless otherwise noted the source of the valuation of Real Property is from the Debtors.

[8] Unless otherwise noted the source of the valuation of Real Property is from the Debtors.

35412

This Class receives the Common Unsecured Claim Treatment.

### Class 27D Intercompany Claims

This Class is Unimpaired and not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### Class 27E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

## CLAIMS AGAINST AND INTERESTS IN MM 3RD & OMAR STREET

### Class 28C-1 Unsecured Claims Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### Class 28C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### Class 28D Intercompany Claims

This Class is Unimpaired and not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### Class 28E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## CLAIMS AGAINST AND INTERESTS IN MM 336 W. 11TH STREET

### Class 29A-1 Los Angeles County Secured Tax Claim

The Class 29A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $5,386,150 |
| Priority of Lien | 1St |
| Total Prepetition Claim | $199,416 |
| Estimated Quarterly Payment | $18,991 |
| Total Payout Amount | $303,856 |

The payment obligations with respect to this Claim shall be secured by the MM 336 W. 11th Street Real Property.

35412

1    ~~b.   Class 29A-3 Grand Avenue Lofts HOA Secured Claim~~

2    ~~The Class 29A-3 Claim is Impaired and the Holder is entitled to vote on the Charlestown~~

3    ~~Plan. The Debtors dispute that the Holder has an Allowed Claim. To the Extent the Holder has an~~

4    ~~Allowed Claim, it shall receive the Common Secured Lender Claim Treatment. In addition, the~~

5    ~~period within which the Debtor is to perform obligations under its agreements with the Holder are~~

6    ~~extended to the Maturity Date and the period for accrual of damages or the exercise of rights and~~

7    ~~remedies including without limitation liquidated damages and reversion rights are tolled through the~~

8    ~~Maturity Date.~~

9    ~~The amounts of the debt or Claims set forth in the below schedule are by way of illustration~~

10   ~~and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed~~

11   ~~Secured Claim of such Holder.~~

12

| ~~Value of Real Property~~ | ~~$5,386,150~~ |
|---|---|
| ~~Priority of Lien~~ | ~~3rd~~ |
| ~~Total Claim~~ | ~~$270,000~~ |
| ~~Total Payout~~ | ~~$270,000~~ |

14

15   ~~The payment obligations with respect to this Claim shall be secured by the MM 336 W. 11th~~

16   ~~Street Real Property.~~

17   ~~Class 29A-4 Grand Avenue Lofts LLC/CIM Urban RE Fund GPII, LLC Secured~~

18   ~~Claim~~**Class 29A-3 Grand Avenue Lofts HOA Secured Claim and Class 29A-4 Grand**

19   **Avenue Lofts LLC/CIM Urban RE Fund GPII, LLC Secured Claim**

20   ~~The Class 29A-4 Claim is Impaired and the Holder is entitled to vote on the Charlestown~~

21   ~~Plan. The Debtors dispute the Holder has an Allowed Claim. To the extent the Holder has an~~

22   ~~Allowed Claim, it shall receive the Common Secured Lender Claim Treatment. In addition, the~~

23   ~~period within which the Debtor is to perform obligations under its agreements with the Holder are~~

24   ~~extended to the Maturity Date and the period for accrual of damages or the exercise of rights and~~

25   ~~remedies including without limitation liquidated damages and reversion rights are tolled through the~~

26   ~~Maturity Date.~~

27   ~~The amounts of the debt or Claims set forth in the below schedule are by way of illustration~~

28   ~~and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed~~

35412

1   ~~Secured Claim of such Holder.~~

| | |
|---|---|
| ~~Value of Real Property~~ | ~~$6,950,000~~ |
| ~~Priority of Lien~~ | ~~4th~~ |
| ~~Total Claim~~ | ~~Unknown~~ |
| ~~Total Payout Amount Over Time~~ | ~~Unknown~~ |

Without resolving the issue of whether members of these classes hold a Secured Claim, have an interest in land, or have some other status, the members of this class have agreed to the following treatment:

The respective rights of the parties to (i) that certain Covenant and Agreement Regarding Maintenance of Off-Street Parking Space, recorded as Instrument Number 04-0123650 in the Office of the County Recorder for Los Angeles County (the "Parking Covenant"); (ii) that certain Grant Deed, dated September 28, 2005 (the "Grant Deed"), (iii) that certain Agreement Regarding Construction of Parking Structure, dated as of September 21, 2005 (the "Construction Agreement"), and (iv) that certain Parking License Agreement, dated as of September 21, 2005 (the "Parking Agreement", and together with the Parking Covenant, the Grant Deed, the Construction Agreement, and the Parking Agreement, the "Parking Agreements"), as such rights existed on the Petition Date, shall pass through the Bankruptcy Cases and the confirmation of the Charlestown Plan unaffected except as specifically set forth below.

The Completion Date, as defined in section 5 of the Construction Agreement shall be extended to February 1, 2015.  The date the Parking Structure (as defined in the Construction Agreement) is Substantially Completed (as defined in the Construction Agreement) may herein be referred to as "Structure Completion Date".  The period between the execution of this Term Sheet and "Structure Completion Date" may be referred to herein as the "Interim Period".

The Monthly Fee set forth in section 2.3 of the License Agreement shall be modified so that, commencing May 1, 2011, GAL shall pay no Monthly Fee until the Structure Completion Date.  To the extent that, on the Effective Date, GAL has paid a Monthly Fee for any month commencing on May 1, 2011 or after, GAL shall have an Allowed Administrative Claim of $11,700 for each month's payment actually made.

35412

1        Upon the occurrence of the Structure Completion Date , the fee structure under the

2    License Agreement will be reinstated as originally set forth in the License Agreement,

3    respectively.

4        Through the Structure Completion Date, the HOA shall continue to have the right

5    to use, and the Reorganized Debtors will be obligated to provide the Temporary Parking Spaces

6    (as defined in the License Agreement) on the terms and conditions set forth in the License

7    Agreement, as modified herein.

8        The Temporary Parking Spaces are to be located on the lot at 1120 S. Grand (the

9    "Interim Parking Property") until the Structure Completion Date.  The Reorganized Debtors shall

10   provide to the HOA the amenities at the Interim Parking Property as hereafter agreed between the

11   Reorganized Debtors and the HOA.

12       Except as specifically set forth in this Charlestown Plan, the rights of the HOA,

13   including whatever security interest it may have to secure payment of the liquidated damages

14   provision of the Construction Agreement, and as set forth in the documents referenced herein,

15   shall remain in full force and effect and be unaffected by the filing and shall pass through the

16   Bankruptcy Cases and the confirmation of the Charlestown Plan unaffected by the Bankruptcy.

17   Notwithstanding anything to the contrary herein, the HOA shall take no action to enforce its

18   asserted security interest to secure payment of the liquidated damages provision of the

19   Construction Agreement prior to February 1, 2015, provided, further, however, that if the

20   Structure Completion Date occurs on or prior to February 1, 2015, the HOA shall waive its

21   claimed security interest against the Reorganized Debtors and release its asserted lien to secure

22   payment of the liquidated damages provision of the Construction Agreement against the Property.

23   Notwithstanding the foregoing, the HOA's asserted lien to secure payment of the liquidated

24   damages provision of the Construction Agreement shall remain attached to the Property with the

25   same validity, force, and effect it otherwise may have and shall accrue at the contract rate until

26   the Effective Date.  After the Effective Date, the amount of said asserted lien will not increase so

27   long as the Parking Structure (as defined in the Construction Agreement) is Substantially

28   Completed (as defined in the Construction Agreement) by February 1, 2015.  In the event the

35412

1  Parking Structure (as defined in the Construction Agreement) is not Substantially Completed (as

2  defined in the Construction Agreement) by February 1, 2015, the asserted  lien shall continue to

3  increase and accrue at the contract rate from and after February 1, 2015 as and to the same extent

4  it otherwise would accrue if valid and effective.

5          The Parties agree to the execution and recording of an amendment to the

6  Agreements to evidence the foregoing.

7          Except as expressly modified or amended hereby, the parties agree that the Grant

8  Deed and Parking Agreements shall remain in full force and effect, and shall be enforceable

9  pursuant to their terms.

10          GAL's Objection [Dkt. No. 2498] shall be deemed withdrawn only as to the

11  Charlestown Plan upon the Court's approval of modifications to the Charlestown Plan that

12  incorporate the above treatment.

13          In tandem with the foregoing, and contingent upon the confirmation of the

14  Charlestown Plan containing the terms set forth herein, GAL and the HOA have agreed between

15  themselves as follows as of the Effective Date of the Charlestown Plan:

16          (a)  The Sub-License Fee set forth in section 3.1 of the Parking Sub-License and

17          Agreement ("Sub-License Agreement") shall be modified so that, (i) commencing

18          May 1, 2011 and continuing monthly until May 1, 2012, the Association shall pay

19          20% of the monthly Sub-License Fee in effect as of May 1, 2011, (ii) commencing

20          May 1, 2012 and continuing monthly until May 1, 2013, the Association shall pay

21          30% of the monthly Sub-License Fee in effect as of May 1, 2011, (iv)

22          commencing May 1, 2013 and continuing monthly until the date the Parking

23          Structure (as defined in the Construction Agreement) is Substantially Completed

24          (as defined in the Construction Agreement), the Association shall pay 40% of the

25          monthly Sub-License Fee in effect as of May 1, 2011.  Any overpayments of the

26          monthly Sub-License Fee shall be credited to later installments of the monthly

27          Sub-License Fee.

28

35412

1    ~~The payment obligations with respect to this Claim shall be secured by the MM~~

2    ~~336 W. 11th Street Real Property.~~(b)  Upon the occurrence of the Structure

3    Completion Date , the fee structure under the Sub-License Agreement will be

4    reinstated as originally set forth in the Sub-License Agreement,  provided,

5    however, that section 3.1 of the Sub-License Agreement shall be amended to

6    provide that on the Structure Completion Date the Sub-License Fee under section

7    3.1 of the Sub-License Agreement shall be set as the then prevailing "market rate"

8    for parking, which calculation shall not include CAM Expenses.  CAM Expenses

9    shall be paid separately in accordance with the terms of the Sub-License

10   Agreement.  The Sub-License Fee under section 3.1 of the Sub-License

11   Agreement shall increase by 3% annually thereafter.  Every five (5) years, on the

12   anniversary of the Structure Completion Date, there shall be a market analysis as

13   contemplated by section 3.1 of the Sub-License Agreement and the Sub-License

14   Fee to be paid by the HOA shall be adjusted (up or down) to the then prevailing

15   market rate which shall again be increased annually by 3% as described above

16   until the next five year re-set.  The parties shall ascertain whether the comparisons

17   used in the market analysis included CAM and other charges and, if so, those

18   charges shall be backed out of the comparison to ensure the HOA pays the

19   equivalent rate exclusive of CAM charges which will be paid under separate

20   provisions of the Sub-License Agreement.

21   **Class 29C General Unsecured Claims**

22   This Class receives the Common Unsecured Claim Treatment.

23   **Class 29D Intercompany Claims**

24   This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan.

25   The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed

26   Claims.

27   **Class 29E Equity Interests**

28   This Class is Unimpaired. The Holders shall receive the Common Equity Interest

35412

Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of Real Property | $30,032,925 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim | $256,063 |
| Estimated Quarterly Payment | $24,461 |
| Total Payout Amount | $391,376 |

The payment obligations with respect to this Claim shall be secured by the MMP 760 S. Hill Street Real Property.

### Class 32A-2 BofA Secured Claim

The Class 32A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder has entered into an agreement with the Charlestown Proponents by which the Holder's claim will be treated as follows if the Charlestown Plan is confirmed: the Holder's claim will be paid within 12 months of the effective date of the agreement (which shall occur no later than the confirmation of the Charlestown Plan), with MMP 760 S. Hill Street having the option to extend the deadline for payment by an additional 12 months upon satisfaction of several conditions, including 30 says notice beforehand, payment of a non-refundable fee extension fee of .5% per annum of the outstanding balance of the loan, with interest rate to increase to the greater of 5.5% per annum or LIBOR + 5.0% per annum.

The Holder will receive monthly payments of interest at the greater of 5.0% per annum and LIBOR + 4.5% per annum, provided however that if the original collateral is released prior to the full and final payment to the Holder, that the interest rate thereafter shall be increased to 12.0% per annum. Upon default, the interest rate shall be increased by 4%, or Prime + 5.75%. Any default to the MG Southpark loan shall be a deemed to be a default

The loan amount may be prepaid in whole or part without penalty, provided that MMP 750 S. Hill Street may be responsible for LIBOR contract breakage costs if applicable.

Any and all cash flow available to MMP 760 S. Hill Street after the payment of operating expenses and debt service shall be applied to repay loan principal monthly.

Final documentation with respect to this agreement will be submitted to the Bankruptcy Court for approval prior to the Effective Date.

35412

The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

|  | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of BofA Collateral | $36,593,818 ($30,032,925 — MMP S. Hill Street Real Property + $6,560,893 BofAaccount number 14593600078) |  |
| Priority of Lien | 2nd |  |
| Estimated Allowable Pre-Petition Claim — Principal | $28,108,094 |  |
| Accrued Pre-Petition Interest | $178,018 |  |
| Accrued Post-Petition Interest through Effective Date of September 30, 2010 | $3,162,160 |  |
| Other Allowable Charges under Section 506(b) | To Be Determined |  |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $31,448,272 |  |

The payment obligations with respect to this Claim shall be secured by the BofA Collateral re MMP 760 S. Hill Street and by the corporate guaranties of MMPI and Merco Group ~~South Park~~Southpark.

### Class 32B Priority Benefits Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Priority Claim Treatment on account of their Allowed Claims.

### Class 32C-1 Unsecured Claims — Tenant Security Deposits

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### Class 32C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

### Class 32D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

35412

### Class 32E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

### Class 32F Unsecured Guaranty Claims

This Class is Impaired and Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Guaranty Claim Treatment on Account of their Allowed Claims.

### 33. CLAIMS AGAINST AND INTERESTS IN 788 S. ALAMEDA

### Class 33A-1 Los Angeles County Secured Tax Claim

The Class 33A-1 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $9,426,667 |
| Priority of Lien | 1st |
| Total Prepetition Claim | $95,225 |
| Estimated Quarterly Payment | $9,097 |
| Total Payout Amount | $145,552 |

The payment obligations with respect to this Claim shall be secured by the 788 S. Alameda Real Property.

### Class 33A-2 California Bank & Trust Secured Claim

The Class 33A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan..

The Holder has entered into an agreement with the Charlestown Proponents governs the treatment of the Holder's claim if the Charlestown Plan is confirmed.  The essential terms of the treatment are as follows: the Holder will receive payment by the Maturity Date of June 30, 2013, or June 30, 2014 provided Holder is provided a $500,000 principal paydown by June 30, 2013 and amortization is commenced at a 25 year schedule.

From and after the Effective Date, interest shall be due and payable on the 15th day of the month following the month in which the Effective Date occurs and continuing on the 15th day of each month thereafter until the Maturity Date or until the loan is repaid in full if sooner.  The loan amount may be prepaid in whole or in part without penalty.

80

35412

Interest will accrue at the fixed rate of 6.25% per annum.  Upon default, the interest rate shall be increased to the fixed rate of ~~X~~10.25%.  If any installment of principal of interest is not ~~paud~~paid within 10 days after the same is due, the Holder shall be entitled to a late fee equal to 4.0% of the principal or interest ~~insallment~~installment, or part thereof, not paid within such 10 day period.  The principal shall be recalculated as of the Effective Date to include all accrued and unpaid interest, costs and attorneys' fees.

Final documentation with respect to this agreement will be submitted to the Bankruptcy Court for approval prior to the Effective Date.

The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of CBT Collateral | $9,434,181 ($9,426,667 — 788 S. Alameda Real Property + $7,514 in cash located in CBT account number 2120351811) | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $7,153,799 | $7,153,799 |
| Accrued Pre-Petition Interest | $250,383 | $118,733 |
| Accrued Post-Petition Interest through Effective Date of September 30, 2010 | $1,126,723 | $288,537 (through December 16, 2009) |
| Other Allowable Charges under Section 506(b) | To Be Determined | $311,230 (through December 16, 2009) |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $8,530,905 | $7,872,299 (through December 16, 2009) |

The payment obligations with respect to this Claim shall be secured by the CBT Collateral, excluding therefrom any and all deposit or other accounts holding monies in the name. of 788 Alameda, which monies as of the Effective Date shall be deemed funds free and clear of any interest of CBT and available for the Reorganized Debtor's unfettered use. Any lien encumbering any other real property of the Debtors as adequate protection pursuant to any order of the Bankruptcy Court shall be released and of no further force or effect as of the Effective Date.

35412

### Class 35C-2 Unsecured Claim Tenant Security Deposits

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

### Class 35D Intercompany Claims

This Class is Unimpaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### Class 35E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interests Treatment on account of their Equity Interests.

## CLAIMS AGAINST AND INTERESTS IN ALAMEDA PRODUCE

### Class 36A-1-a Los Angeles County Secured Tax Claim re 7th Street Produce Market and Alameda Square and Class 36A-1-b re 1215 E. 7 Street

The Class 36A-1 Claims are Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| | |
|---|---|
| Value of Real Property | $110,776,058 (re: 7th Street Produce Market and Alameda Square) $3,000,000 (re: 1215 E. 7thStreet) |
| Priority of Lien | 1st |
| Total Prepetition Claim | $421,457 (re: 7th Street Produce Market and Alameda Square) $37,263 (re: 1215 E. 7th Street) |
| Estimated Quarterly Payment (combined) | $43,707 |
| Total Payout Amount Over Time (combined) | $699,312 |

The payment obligations with respect to these Claims shall be secured by the Alameda Produce Market Encumbered Real Property and the Alameda Produce Market Unencumbered Real Property.

The Class 36A-1-b Claim and Class 36A-1-b Claim are Impaired and therefore the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

84

35412

## Class 36A-2 Cathay Bank Secured Claim

1

2     The Class 36A-2 ~~a Claim is Impaired and the Holder is entitled to vote on the Charlestown~~

3     ~~Plan. Alameda Produce Market and the Holder have agreed to a settlement of certain claims and~~

4     ~~other matters.  The Holder will receive treatment consistent with the settlement~~ Claim is Impaired

5     and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive deferred Cash

6     payments over a period of four years from the Effective Date in an amount equal to the amount of the

7     Allowed Secured Claim, which shall be principal in the amount of $51,706,686.33, plus interest from

8     the Effective Date at the rate of 5.5% per annum, fixed, based on a 360-day year, actual days elapsed.

9     Payments shall be made in the amount of the monthly accruing interest with the principal balance and

10    any unpaid interest due and payable four years after the Effective Date. The monthly installments of

11    interest shall be payable on or before the fifteenth (15th) day of each month, with the first installment

12    due on or before the fifteenth (15th) day of the month following the month in which the Effective

13    Date occurs.  The amount of the Allowed Secured Claim and the amount secured by the underlying

14    deed of trust will be increased on the Effective Date to include a retroactive adjustment of interest for

15    the period from the Approval Date as defined in that certain Third Modification and Extension

16    Agreement dated as of April 29, 2010, which was previously executed in connection with that certain

17    Settlement Agreement entered into April 29, 2010 between Cathay and the Debtors (the prior

18    approval of which has now been reconsidered and overturned by the Court) to the Effective Date

19    equal to the difference between the interest owed by the Debtors pursuant to the Third Modification

20    and Extension Agreement and the interest that would have been owed by the Debtors had the interest

21    rate been 1% per annum higher. If, prior to the Effective Date, Debtors' cease to make monthly

22    interest payments as set forth in the Third Modification and Extension Agreement, on the Effective

23    Date, Reorganized Alameda Produce will make the payments the Debtors would otherwise have

24    made thereunder.

25         In addition, on the Effective Date, the Holder shall have, and shall be paid on the Effective

26    Date, an Allowed General Unsecured Claim (without post-petition pre-Effective Date interest) in the

27    amount of its post-petition attorneys' fees incurred from and after November 1, 2010, to the Effective

28    Date, capped at $115,000, and costs of $30,000.

35412

1    The existing guaranty by MMPI of the Class 36A-2 Claim shall continue in its effectiveness

2    unaltered and unmodified by this Plan from and after the Effective Date, and shall receive the

3    treatment that it would have received under the Settlement Agreement and Third Modification and

4    Extension Agreement dated as of April 29, 2010, between and among Cathay Bank and the Debtors.

5    Cathay and Reorganized Alameda Produce will execute appropriate loan modification

6    agreements and other documents (including an inter-creditor agreement because of the change in

7    Holder of the Class 36A-3 Claim, a general release of Cathay Bank, with Civil Code section 1542

8    waivers, and reasonable restrictions on permitted transfers) which documents will be filed with the

9    Court in a subsequent plan supplement.

10    **Class 36A-3 Cathay Bank Secured Claim**

11    The Class 36A-2-b Claim is Impaired and the Holder is entitled to vote on the Charlestown

12    Plan. Alameda Produce Market and the Holder have agreed to a settlement of certain claims and

13    other matters.  The Holder will receive treatment consistent with the settlement.

14    (I) As to Cathay Bank:  The Class 36A-3 Claim is Impaired and the current Holder (Cathay

15    Bank) is entitled to vote on the Charlestown Plan.  On the Effective Date, the Class 36A-3 claim will

16    be purchased from Cathay Bank by, and sold to, MMPI Acquisition or one of its members or one of

17    its member's affiliates, for the principal and interest amounts due thereunder based upon the balances

18    owed following the Settlement Agreement with MMPI and Alameda Produce dated as of April 29,

19    2010, which was: principal in the amount of $10,431,368.02 and interest as may be then due and

20    owing on the Effective Date. If, prior to the Effective Date, Debtors' cease to make monthly interest

21    payments as set forth in the Sixth Modification and Extension Agreement dated as of April 29, 2010,

22    on the Effective Date, Reorganized Alameda Produce will make the payments the Debtors would

23    otherwise have made thereunder.  The purchase and sale shall be on a non-recourse basis, without

24    Cathay Bank making any representations or warranties, and on an "as is, with all faults" basis.

25    (II) As to the Purchaser:  The Claim will have a maturity date of four years from the Effective

26    Date (the "Maturity Date") and will bear interest at a rate of 15%.  Interest will not be payable until

27    the Maturity Date and will instead accrue and be payable at the Maturity Date.  Subject to an

28    intercreditor agreement between the purchaser and Cathay Bank that will, among other things,

35412

condition payment to the purchaser until Cathay Bank is otherwise paid in full on the Class 36A-2 Claim above, this Claim as modified may be pre-paid or refinanced at any time without penalty. Such conditions on payment shall include restrictions from payment by the Debtors, limitations on payment to payments to be made by unaffiliated third party refinancing lenders or further transferees of the Claim, or from the proceeds from further equity infusions into the Debtors, Cathay's reasonable prior consent to and approval of any refinancing lender and/or transferee and the terms of such refinancing or transferee, payment of Cathay's actual costs and fees associated therewith, and the assumption by any new lender and/or transferee of the intercreditor agreement. Appropriate loan documents consistent with these terms (including an inter-creditor agreement because of the change in Holder of the Class 36A-3 Claim, and a general release of Cathay Bank, with Civil Code section 1542 waivers) will be executed by Reorganized Alameda Produce and the purchaser of the Claim which documents will be filed with the Court in a subsequent plan supplement.

The existing guaranty by MMPI of the Class 36A-3 Claim shall receive the Common Unsecured Guaranty Claim Treatment.

### Class 36A-4 — Secured Claim of Oliver, Sandifer

The Class 36A-4 Claim is unimpaired and the Holder is not entitled to vote on the Charlestown Plan.  On the Effective Date, the Holder's claim shall be paid in full.[89]

### Class 36B Other Priority Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Priority Claim Treatment on account of their Allowed Claims.

### Class 36C-1 Unsecured Claims — Tenant Security Deposits

This Class is Unimpaired and is not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Tenant Security Deposit Treatment.

### Class 36C-2 General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

---

[89] The Reorganized Debtor ~~willinvestigate~~will investigate the Oliver, Sandifer claim and may object to the claim at the appropriate time.  Also, pursuant to the Court's Order dated ~~Ddecember~~December 6, 2010 (Dkt. # 2338), Oliver Sandifer's $436,901 claim is deemed filed against MMPI (Claim 1A) and Alameda Produce (Claim 36A-4), but Oliver Sandifer is not entitled to a double recovery for its claim.

87

35412

1       **Class 36D MTA Contingent Claim**

2           On the Effective Date, Reorganized Alameda Produce will enter into the following settlement

3   agreement with the Holder of the Class 36D claim.

4                               **SETTLEMENT AGREEMENT**

5           This Settlement Agreement (the "Agreement"), dated as of the Effective Date (as that term is

defined in the Charlestown Plan), is entered into by and between Reorganized Alameda Produce
6   Market, LLC ("Reorganized Alameda Produce") on the one hand, and the Los Angeles Metropolitan
Transportation Authority (the "MTA"), on the other hand.  Reorganized Alameda Produce and the
7   MTA are collectively referred to herein as the "Parties".

8                                       **RECITALS**

9           The Eminent Domain Case

10
            On April 1, 2004, the MTA commenced an action in a California Superior Court (the
11  "Superior Court") seeking to exercise its eminent domain powers over certain property owned by a
predecessor to Debtor Alameda Produce Market, LLC ("Alameda Produce") located at the northwest
12  corner at the intersection of Alameda Street and 7th Street and assigned assessor parcel numbers:
5147-035-004, 5147-035-005, 5147-035-006, 5147-035-007, 5147-035-008 (the "Property"),
13  currently captioned as *Los Angeles County Metropolitan Transportation Authority v. Alameda
Produce Market, LLC,* Case No. BC 313010 (Cal. Sup. Ct.) (the "Eminent Domain Case").
14

15          In connection with the Eminent Domain Case, the MTA deposited $6.3 million (which
amount was ultimately increased by the MTA to $8.5 million) as probable compensation (the
16  "Deposited Funds") with the Superior Court and sought entry of an order for pre-judgment
possession.  On November 24, 2004, the MTA took pretrial possession of the Property.
17

18          On June 10, 2004, the Superior Court entered an order authorizing the withdrawal of
$6.19 million (the "Withdrawn Funds") from the Deposited Funds by California National Bank, VCC
19  Alameda, and Namco Capital Group, LLC, as creditors of Alameda Produce with purported liens on
the Property.  The Deposited Funds remaining with the Superior Court total $2.31 million.
20

21          On September 5, 2008, the Superior Court entered an order dismissing the Eminent
Domain Case, requiring the MTA to relinquish the Property to Alameda Produce within 90 days.
22

23          On November 25, 2008, the MTA appealed the Superior Court's dismissal order to the
California Court of Appeals (the "Appeals Court").  On October 6, 2010, the Appeals Court entered a
24  decision and order reversing the Superior Court's dismissal of the Eminent Domain Case.  Alameda
Produce timely appealed the Appeals Court's decision to the California Supreme Court (the
25  "Supreme Court"), where the Eminent Domain Case remains pending.

26          The Bankruptcy Cases

27          While the Eminent Domain Case remained pending with the Appeals Court, on March
28  27, 2009, Alameda Produce and various of its affiliates (collectively, the "Debtors") filed for chapter
11 bankruptcy relief.  The Debtors cases are currently pending and jointly administered by the United

35412

States Bankruptcy Court for the Central District (the "Bankruptcy Court") under Case Number 09-13356 (the "Bankruptcy Cases"). The Bankruptcy Court subsequently entered an order lifting the automatic stay in the Bankruptcy Cases to permit continued litigation in the Eminent Domain Case.

The MTA timely filed proof of claim number 14 (the "MTA Claim") in the Bankruptcy Case for Alameda Produce for a contingent unsecured claim of $8.5 million, seeking reimbursement for the Deposited Funds (including the Withdrawn Funds) to the extent the Debtors prevail in the Eminent Domain Case and a court orders the MTA to return the Property to Alameda Produce.

On January 25, 2011, Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (collectively, the "Charlestown Proponents") filed their *First Modified Fourth Amended Chapter 11 Plan of Reorganization* [Dkt. No. 2672] (as amended from time to time, the "Charlestown Plan"). The MTA has objected to confirmation of the Charlestown Plan because, among other things, it fails to provide for specific treatment of the MTA Claim. *See* Docket Numbers 2510 and 2957 (collectively, the "MTA Plan Objections").

The MTA and the Charlestown Proponents have engaged in discussions regarding the MTA Plan Objections, the MTA Claim, and the Eminent Domain Case, and have agreed, in light of the complex issues surrounding the MTA's disputes with Alameda Produce and the attendant risk associated with those issues, to settle all disputes between the MTA, the Charlestown Plan Proponents, and Reorganized Alameda Produce, through a settlement based on the terms described below.

**SETTLEMENT**

Settlement of the Eminent Domain Case. Subject to the conditions provided in section **Error! Reference source not found.** hereof, as soon as reasonably practicable following the Effective Date, Reorganized Alameda Produce and the MTA shall stipulate to the entry of a judgment and a final order of condemnation in the Eminent Domain Case whereby MTA shall acquire full fee title to the Property in return for payment of $9,700,000 (the "Settlement Sum"), which sum represents a full settlement of all claims relating to or arising from the taking of the Property by the MTA. The Settlement Sum represents the full just compensation for the taking of the Property and all damages resulting from the taking, including, but not limited to, compensation for real property, severance damages, loss of business goodwill, improvements pertaining to the realty, leasehold improvements, fixtures and equipment, inventory, pre-condemnation damages, attorneys' fees, litigation expenses, interest, costs, and in full and complete settlement of any and all claims of the Debtors with respect to the Eminent Domain Case, the Property, the taking of the Property, any and all acts and omissions of the MTA in connection therewith, and any and all other kind of compensation, damage or other claims arising out of or relating to the taking of the Property (collectively, the "Claims"). Payment of the Settlement Sum shall be made as follows: (i) the MTA shall receive credit for the Deposited Funds regardless of whether any portion of such sums were withdrawn by parties other than the MTA, of which Reorganized Alameda Produce may apply to the Superior Court to withdraw the remaining balance of the deposit (which is currently $2,310,000), (ii) Reorganized Alameda Produce may also apply to the Superior Court to withdraw any interest accrued on the deposit funds (which is estimated to be approximately $450,000); and (iii) the remaining estimated balance of $750,000 shall be paid by the MTA to Reorganized Alameda Produce

89

35412

within ten (10) business days of the Superior Court's entry of a judgment in the Eminent Domain Case.

Facilitation of Settlement.  Reorganized Alameda Produce shall cooperate in the execution of all stipulations and other court documents as the MTA deems necessary to obtain a judgment and final order of condemnation in the Eminent Domain Case and/or in any effort by the MTA to request that the Supreme Court and/or the Appeals Court on remand dismiss the pending appeal of the Eminent Domain Case. Each party to the Eminent Domain Case shall bear its own costs and expenses incurred in connection with meeting its obligations under this section.

Release of the MTA Claim.  The MTA Claim shall be deemed satisfied upon payment in full of the Settlement Sum according to the terms of Section 1 hereof.

Interim Alternative Treatment.  If the Court wishes to consider approval of the treatment described in Section 1 hereof (and each of its subsections) (the "Primary Treatment") through a separate, regularly noticed motion, the Effective Date may occur subject to the following treatment on an interim basis (the "Interim Alternative Treatment"):  (1) the MTA Claim shall be deemed allowed as filed for purposes of the Plan; (2) (i) if, as a result of the Eminent Domain Case, the MTA is required to return the Property to Reorganized Alameda Produce and the MTA obtains a money judgment on account of the Deposited Funds, Reorganized Alameda Produce shall execute a deed of trust (or other security agreement as necessary) in favor of the MTA in order to secure repayment of the deposit claim; and (ii) the MTA will forbear from enforcement of the judgment for eighteen (18) months after entry of that judgment (the "Forbearance Period"), and (iii) Reorganized Alameda Produce will lease the Property to the MTA, rent free, in exchange for a waiver of accruing interest with such lease commencing on the date the MTA is ordered to return the Property to Reorganized Alameda Produce and terminating on the earlier of: (a) 90 days after a ruling from a court of competent jurisdiction that Reorganized Alameda Produce does not owe the MTA any money; (b) 90 days after the date on which Reorganized Alameda Produce has satisfied the judgment; or (c) 18 months after the entry of the judgment; and (3) following the Effective Date, Reorganized Alameda Produce shall use its reasonable best efforts to pursue and obtain the entry of an order approving the Primary Treatment without reservation or modification, unless such reservation or modification is previously consented to by the MTA in writing (which consent may be withheld for any reason whatsoever) (the "Approval Order").

Reversion to Primary Treatment.  Once the Approval Order is entered, the MTA Claim will immediately be entitled to the Primary Treatment.

Preservation of Equity in the Property.  During the Forbearance Period, Reorganized Alameda Produce shall (a) not take any action to encumber or place a consensual lien on the Property, (b) pay all property taxes associated with the Property as they come due, and (c) take all steps necessary to ensure that no judgment liens or other involuntary encumbrances are placed on the Property.

Captions.  The captions in this Agreement are for convenience only, are not part of this Agreement, do not in any way limit or amplify the terms and provisions of this Agreement, and shall have no effect on its interpretation.

Severability.  To the extent any portion of this Agreement is deemed unenforceable or is rendered impracticable by events occurring in the Eminent Domain Case, then the Parties agree to

90

35412

negotiate in good faith to substitute provisions, terms, clauses, or waivers or releases that would have, to the maximum extent possible, identical effect and that would be enforceable.

Binding Effect. This Agreement shall be binding on the Parties irrespective of the outcome of the appeal in the Eminent Domain Case, and shall, to the extent necessary, be enforceable in the California Superior Court by either party pursuant to California Code of Civil Procedure §664.6.

Integration. This Agreement embodies the entire agreement and understanding between the Parties and supersedes all prior agreements and understandings relating to the subject matter hereof.

Notice. Any notice or communication required by or relating to this Agreement shall be sent via U.S. mail, overnight delivery, electronic mail, or facsimile to:

If to Reorganized Alameda Produce:


Christopher E. Prince
Lesnick Prince LLP
185 Pier Avenue, Suite 103
Santa Monica, California 90405
cprince@lesnickprince.com
If to the MTA:


Erin N. Brady
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, California 90071
enbrady@jonesday.com
&


Joyce L. Chang
Metropolitan Transportation Authority
changj@metro.net


## CLAIMS AGAINST AND INTERESTS IN MG 1500 GRIFFITH AVENUE

### Class 37A-3 Murakami Secured Claim

The Class 37A-3 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder will receive treatment consistent with its settlement with the Debtors. Without limiting or altering the provisions therein, the treatment is as follows:

The Holder shall receive regular installment interest-only payments of $9,203 beginning on

35412

| Value of Real Property | $10,000,000 |
|---|---|
| Priority of Lien | 2nd |
| Estimated Allowable Pre-Petition Claim - Principal | $8,953,643 |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $8,983,643 |
| Estimated Monthly Interest Payment | $29,945 |

The payment obligations with respect to this Claim shall be secured by the MMP 2951 Lenwood Road Real Property.

### Class 42C General Unsecured Claims

This Class is Impaired and the Holders are entitled to vote on the Charlestown Plan. The Holders shall receive the Common Unsecured Claim Treatment.

### Class 42D Intercompany Claims

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

### Class 42E Equity Interests

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

## CLAIMS AGAINST AND INTERESTS IN MG 3185 E. WASHINGTON BOULEVARD

### Class 43A-1-a and Class 43A-1-b Los Angeles County Secured Tax Claim

The Class 43A-1-a and Class 43A-1-b Claims are Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Los Angeles Tax Claim Treatment.

| Value of MG 3185 East Washington Boulevard Encumbered Real Property + MG of 3185 East Washington Boulevard Unencumbered Real Property | $11,918,000 |
|---|---|
| Priority of Lien | 1st |
| Total Prepetition Claim - 3185 East Washington Boulevard Encumbered Real Property Total Prepetition Claim - 3185 East Washington | $191,130 |

| | |
|---|---|
| Boulevard Unencumbered Real Property | $969 |
| Estimated Quarterly Payment (combined) | $18,351 |
| Total Payout Amount (combined) | $293,616 |

The payment obligations with respect to this Claim shall be secured by the MG 3185 E. Washington Boulevard Encumbered Real Property and the MG 3185 E. Washington Boulevard Unencumbered Real Property.

### Class 43A-2 Chinatrust Secured Claim

The Class 43A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder ~~shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed Secured Claim of such Holder.~~ will receive the following treatment:

On the Effective Date, the Holder will receive a Cash payment equal to unpaid interest accrued from the petition date to Effective Date at the rate of 6.94 percent. The Holder will waive any claim to unpaid accrued interest at a higher rate, including the so-called "default" rate.

On the remaining balance of the Holder's Allowed Secured Claim, the Holder shall receive deferred Cash payments over a period of four years from the Effective Date plus interest from the Effective Date on the unpaid portion of the Allowed Secured Claim at 6.94%. Payments shall be made in the amount of the monthly accruing interest with the principal balance and any unpaid interest due and payable four years after the Effective Date. The monthly installments of interest shall be payable on or before the fifteenth (15th) day of each month, with the first installment due on or before the fifteenth (15th) day of the month following the month in which the Effective Date occurs.

| | Amounts per Debtors | Amount per Lender |
|---|---|---|
| Value of 3185 E. Washington Boulevard Encumbered Real Property | $11,800,000 | $10,300,000 |
| Priority of Lien | 2nd | 1st |
| Estimated Allowable Pre-Petition Claim - Principal | $9,541,565 | $9,541,565 |
| Accrued Pre-Petition Interest | $159,026 | $222,827 |
| Accrued Post-Petition Interest as | $1,707,463 | ~~$771,521~~Aproximately $2.2 |

35412

| of Estimate Effective Date of September 30, 2010 | | million (through ~~November 30, 2009~~July 31, 2011) |
|---|---|---|
| Other Allowable Charges under Section 506(b) | To Be Determined | ~~$115,259 (through November 30, 2009)~~To be determined |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $11,408,054 | $10,651,171 (through November 30, 2009) |
| Estimated Monthly Interest Payment | $38,027 | $55,182.05 |

The payment obligations with respect to this Claim shall be secured by the MG 3185 E. Washington Boulevard Encumbered Real Property.  In addition, the Holder will retain its Court-ordered "replacement lien" on the South Alameda Properties and the Cesar Chavez Properties.

**Class 43C-1 General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**Class 43C-2 Unsecured Claim Tenant Security Deposits**

This Class is Unimpaired. The Holders shall receive the Common Tenant Security Deposit Treatment.

**Class 43D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed Claims.

**Class 43E Equity Interests**

This Class is Unimpaired. The Holders shall receive the Common Equity Interest Treatment on account of their Equity Interests.

**CLAIMS AGAINST AND INTERESTS IN MG 4TH STREET CENTER**

**Class 44C General Unsecured Claims**

This Class receives the Common Unsecured Claim Treatment.

**Class 44D Intercompany Claims**

This Class is Unimpaired and the Holders are not entitled to vote on the Charlestown Plan. The Holders shall receive the Common Intercompany Claim Treatment on account of their Allowed

35412

| | |
|---|---|
| Estimated Quarterly Payment | $26,881 |
| Total Payout Amount | $430,096 |
| | |

The payment obligations with respect to this Claim shall be secured by the MM Mission Boulevard Real Property.

### Class 53A-2 Kennedy Funding Inc Secured Claim

The Class 53A-2 Claim is Impaired and the Holder is entitled to vote on the Charlestown Plan. The Holder shall receive the Common Secured Lender Claim Treatment. The amounts of the debt or Claims set forth in the below schedule are by way of illustration and are not binding on the Holder or the Debtors. The Court has not as yet determined the Allowed ~~Securd~~Secured Claim of such Holder.

| | Amounts per Debtors | Amounts per Lender |
|---|---|---|
| Value of Real Property | $20,000,000 | |
| Priority of Lien | 2nd | |
| Estimated Allowable Pre-Petition Claim - Principal | $8,800,000 | $8,800,000 |
| Accrued Pre-Petition Interest | $0.00 | |
| Accrued Post-Petition Interest as of Estimated Effective Date of September 30, 2010 | $2,750,000 | $2,498,222 |
| Other Allowable Charges under Section 506(b) | To Be Determined | $75,000 |
| Total Estimated Claim as of Effective Date of September 30, 2010 | $11,550,000 | $11,373,222 |
| Estimated Monthly Interest Payment | $38,500 | |

The payment obligations with respect to this Claim shall be secured by the MM Mission Boulevard Real Property.

### Class 53C General Unsecured Claims

This Class receives the Common Unsecured Claim Treatment.

112

35412

1  vested in the respective Reorganized Debtors, free and clear of all Claims, Liens, encumbrances and

2  Interests except to the extent and only as is expressly provided for otherwise in Article III of the

3  Charlestown Plan.

4

5  ### Reorganized Debtors' Business Operations

6  From and after the Effective Date, the Reorganized Debtors, or each of them, may operate its

7  business and use, acquire, and dispose of property and settle and compromise Claims or Interests

8  arising post-Confirmation without supervision by the Bankruptcy Court and free of any restrictions of

9  the Bankruptcy Code, the Bankruptcy Rules or the Local Bankruptcy Rules, other than those

10  restrictions expressly imposed by the Charlestown Plan and the Confirmation Order. The

11  Reorganized Debtors may continue to operate their businesses using the existing cash management

12  system ("CMS"), or such other CMS that may be adopted by them in their sole discretion. The CMS

13  may continue to provide for funds to flow to and from a cash concentration account maintained by

14  the Reorganized Debtors and that concentration account will continue to be linked to the operating

15  bank accounts of each Reorganized Debtor with funds flowing between such accounts as and when

16  needed.

17

18  ### Sale and/or Refinance of Assets of Debtors

19  As of the Effective Date, the Reorganized Debtors will continue to operate their businesses.

20  To meet their operational needs and payment obligations under the Charlestown Plan, the

21  Reorganized Debtors may sell or refinance their assets as necessary during the term of the

22  Charlestown Plan. After the payment of the costs of sale and the satisfaction of any Liens fixed by

23  this Charlestown Plan against the asset, the remaining proceeds will be available for the payment of

24  the costs of operating its business and funding the Reorganized Debtors' obligations under this

25  Charlestown Plan.

26

27  ### Purchase Of Shares and Secured Loan

28  ### Purchase of Shares

35412

1    On the Effective Date, MMPI ~~Acquistion~~Acquisition will contribute $23.0 million in cash,

2  and such funds will be used first to purchase 55% of the shares of MMPI Existing Common Stock for

3  $0.35 per share, as such purchase is described above at Sections III.C.1.g and h.  The remainder of

4  such $23 million may be used for any corporate purpose, including making distributions under this

5  Plan.

6    On or before the final day of hearings on confirmation of the Charlestown Plan, MMPI

7  Acquisition will make a $4 million deposit into a segregated account.  Upon entry of an order of the

8  Bankruptcy Court confirming the Charlestown Plan, the $4 million deposit amount will become a

9  non-refundable deposit and will constitute the total amount of liquidated damages for MMPI

10  Acquisition's failure to transmit the full purchase price on the Effective Date, unless MMPI's

11  Acquisition's failure to perform is excused.  MMPI Acquisition's obligation to transmit the full

12  purchase price will not be subject to any financing contingency.

13    **Secured Loan**

14    MMPI Acquisition has obtained a commitment for a secured loan in the amount of $15

15  million (the "Secured Loan") for MMPI Acquisition to use in funding the operations and payments

16  under the Charlestown Plan.  The Secured Loan will be made as of the Effective Date and will

17  receive the common secured lender treatment, i.e., it will bear monthly interest at the rate of 5.25%

18  for four years with full payment on the principal balance four years after the Effective Date.  The

19  Secured Loan will be secured by a first priority deed of trust on three of the Debtors' real properties,

20  (i) 1211 East Washington Boulevard, (ii) W. Ave. 26 and (iii) 129 W. College Street owned by

21  related Debtor Chinatown.

22

23    **Offer to Purchase And Secured Loan Conditioned Upon Confirmation And Effective**

24    **Date**

25    The purchase of shares of MMPI ~~Exising~~Existing Common Stock set forth herein and the

26  Secured Loan are subject to and conditioned upon confirmation of the Charlestown Plan and the

27  occurrence of the Effective Date.

28

35412

**Certificate of Incorporation and Bylaws; Cancellation Of Certain MMPI**

**Securities, LTIP Units and Related Agreements**

**Cancellation Of Certain MMPI Securities, LTIP Units and Related**

**Agreements**

At the Effective Date, (i) the LTIP Units; all warrants, options or other rights for the purchase or other acquisition from any Debtor of any MMPI Existing Common Stock or LTIP Units; all securities convertible into or redeemable or exchangeable for any MMPI Existing Common Stock or LTIP Units; and all warrants, rights or options for the purchase or other acquisition from any Debtor of any MMPI Existing Common Stock or LTIP Units or any such warrants, options, other rights or securities, and any interest or participation in any of the foregoing and any other ownership or profit interest or participation in MMPI or MMPLP (other than MMPI Existing Common Stock or to the extent not held directly or indirectly by MMPI) will be cancelled and extinguished, and (ii) the obligations of, Claims against, and/or Interests in MMPI under, relating or pertaining to any agreements (including without limitation, registration rights agreements, merger, contribution and similar agreements and voting, shareholders and similar agreements), indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the MMPI Existing Common Stock and any other instrument or document evidencing or creating ownership interest in MMPI (including without limitation, provisions of the agreement of limited partnership of MMPLP and award agreements relating to the LTIP Units but excluding MMPI Existing Common Stock) will be released and discharged.  For the avoidance of doubt, other than as required to effect the reverse stock split described in Section IV.F.2 below, there will be no cancellation of MMPI Existing Common Stock.

**Reverse Stock Split**

On the Effective Date, but after the purchase by MMPI Acquisition of 55% of the shares of MMPI Existing Common Stock in accordance with the terms of this Plan, the MMPI ~~Exsiting~~Existing Common Stock shall undergo a 5 to 1 reverse stock split.  Accordingly, for each 5 shares of MMPI Existing Common Stock held by a Holder after the purchase by MMPI Acquisition

117

35412

described herein, such Holder will hold 1 share of Reorganized MMPI Common Stock.  No fractional shares of Reorganized MMPI Common Stock will be permitted.  In this manner, a Holder that otherwise would receive a fractional share as a result of this reverse stock split will receive $0.35 per share in exchange for such shares that would be represented by such fractional share.

## Amended and Restated Certificate of Incorporation and Bylaws

On and after the Effective Date, pursuant to and by virtue of this Charlestown Plan, the certificate of incorporation of the Reorganized MMPI will be amended and restated in a form necessary to effectuate the provisions of the Charlestown Plan until thereafter changed or amended as provided therein or by applicable law.  Similarly, amended and restated bylaws in a form necessary to effectuate the Charlestown Plan will be the bylaws of Reorganized MMPI until thereafter changed or amended as provided therein or by applicable law.  Nothing herein shall prevent Reorganized MMPI from adopting a new name.

## Certain Post-Effective Date Securities Issues

The Reorganized Debtor will remain a public company and take steps to rescind its Form 15 and regain reporting status.  Within a reasonable time after the Effective Date, Reorganized MMPI will take all commercially reasonable steps necessary to list the MMPI Existing Common Stock on a public exchange and to remain publicly listed for at least four years.

## Merger of MMPLP and MMPI

Upon the terms and subject to the conditions set forth in the agreement and plan of merger (the "Merger Agreement"), a copy of which is attached to the Disclosure Statement, MMPLP shall be merged with and into MMPI one day after the Effective Date if not earlier accomplished (the "Merger"). Following the Merger, the separate corporate existence of MMPLP shall cease, and MMPI shall continue as the surviving company and shall succeed to and assume all the rights and obligations of MMPLP.

If not earlier accomplished, as promptly as practicable but at least one day after the Effective

35412

impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination, and shall provide, that each term and provision of the Charlestown Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### Balloting

Balloting shall be conducted in accordance with the Balloting Procedures Order.

### No Admissions or Waiver of Objections

Notwithstanding anything herein to the contrary, nothing contained in the Charlestown Plan shall be deemed as an admission by any Debtor with respect to any matter set forth herein including, without limitation, liability on any Claim or the propriety of any Claims classification. The Debtors are not bound by any statements herein or in the Disclosure Statement as judicial admissions.

### Survival of Settlements

All Bankruptcy Court-approved settlements shall survive consummation of the Charlestown Plan, except to the extent that any provision of any such settlement is inconsistent with the Charlestown Plan, in which case the provisions of the Charlestown Plan shall supersede such inconsistent provision of such settlement. Notwithstanding the foregoing, the settlement documents approved by the Bankruptcy Court regarding Imperial, Murakami, PCB, FNBN, Stanford Group, ~~Cathay Bank,~~ Pacific Commerce and any other settlement agreement approved prior to the Effective Date that specifically provides that the Debtors' Plan shall not modify the terms of such settlement, shall supersede any inconsistent Charlestown Plan provisions.

### Post-Confirmation Status Report

Within 180 days of the entry of the Confirmation Order, the Reorganized Debtors shall file a status report explaining what progress has been made toward consummation of the Charlestown Plan. The initial report shall be served on the United States Trustee and those parties who have requested

141

35412

1  special notice. Further reports shall be filed every 180 days thereafter and served on the same entities,

2  unless otherwise ordered by the Bankruptcy Court.

3

4        **Final Decree**

5        Once the Estates have been fully administered within the meaning of Rule 3022 of the Federal

6  Rules of Bankruptcy Procedure, the Reorganized Debtor shall file a motion with the Bankruptcy

7  Court to obtain a final decree to close the Chapter 11 Cases.

8        Dated: ~~January 25,~~ May 5, 2011              LESNICK PRINCE LLP

9

10

11                                    By: _____/s/ Christopher E. Prince_____
                                            Christopher E. Prince
12                                          Attorneys for
                                       Charlestown Capital Advisors, LLC
13                                          and
                                    Hartland Asset Management Corporation

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35412