1  CHRISTOPHER E. PRINCE (SBN 183553)
       cprince@lesnickprince.com
2  MATTHEW A. LESNICK (SBN 177594)
       matt@lesnickprince.com
3  ANDREW R. CAHILL (SBN 233798)
       acahill@lesnickprince.com
4  LESNICK PRINCE LLP
   185 Pier Avenue, Suite 103
5  Santa Monica, CA  90405
   Telephone: (213) 493-6496
6  Facsimile:  (213) 493-6596

7  Attorneys for Charlestown Capital Advisors, LLC and
   Hartland Asset Management Corporation

8

9              UNITED STATES BANKRUPTCY COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11             SAN FERNANDO VALLEY DIVISION

| 12 | In re | Case No. 1:09-bk-13356-VK |
|---|---|---|
| 13 | | Chapter 11 |
| 14 | MERUELO MADDUX PROPERTIES, INC., et al. | **NOTICE OF FILING FIRST SUPPLEMENT TO CHARLESTOWN PLAN** |
| 15 | Debtor. | |
| 16 | | [No hearing required pursuant to Local Bankruptcy Rule 9075-1(b)] |
| 17 | | |
| 18 | | Confirmation Hearing |
| 19 | | Date:      January 27, 2011<br>Time:      9:30 a.m. |
| 20 | | Place:     Courtroom 301<br>              21041 Burbank Blvd.<br>              Woodland Hills, CA  91367 |
| 21 | | |

22

23

24

25

26

27

28

1          Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation

2   (together, the "Charlestown Proponents"), proponents of a plan of reorganization of Debtors,

3   respectfully submit the following loan related documents as the First Supplement to the

4   Charlestown Plan.

5

| EXHIBIT | DOCUMENT DESCRIPTION |
|---------|----------------------|
| A | Loan and Security Agreement (Mount Kellett Master Fund II-B, LP / MMPI Acquisition, LLC) |
| B | Secured Revolving Promissory Note and Agreement (MMPI Acquisition, LLC / MMPI) |
| C | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Merco Group – 1211 E. Washington Boulevard, LLC) |
| D | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Meruelo Chinatown, LLC) |
| E | Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (Meruelo Maddux – 230 W. Avenue 26, LLC) |

DATED:  May 5, 2011

                              LESNICK PRINCE LLP


                              By:___ /s/ Christopher E. Prince_____
                                   Christopher E. Prince
                                   Attorneys for Charlestown Capital
                                   Advisors, LLC and Hartland Asset
                                   Management Corporation

**EXHIBIT A**

## LOAN AND SECURITY AGREEMENT

**LOAN AND SECURITY AGREEMENT** (this "Agreement")  dated as of \_\_\_\_ \_\_, 2011, between **MOUNT KELLETT MASTER FUND II-B, L. P.** ("Lender"), and **MMPI ACQUISITION, LLC**, a Delaware limited liability company ("Borrower").

**WHEREAS**, Borrower proposes to acquire not less than 55% of the outstanding equity interests in Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI"), pursuant to the Plan (as defined below); and

**WHEREAS**, in connection with such transaction, subject to the terms and conditions of this Agreement, Borrower wishes to obtain a delayed-draw term loan from Lender and Lender is willing to make such term loan to Borrower;

**NOW, THEREFORE**, the parties hereto hereby agree as follows:

1. Definitions  The following terms, unless the context otherwise requires, shall have the following meanings as used herein:

(a) "Affiliates" means, with respect to any Person, any other Person that, directly or indirectly, whether through one or more intermediaries, Controls, is Controlled by or is under common Control with such Person, excluding any employee benefit plan or related trust.

(b) "Bankruptcy Court" means the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division.

(c) "Business Day" means any day other than a Saturday, Sunday, or other day on which banks in the State of New York are authorized or required by law to close.

(d) "Closing Date" means the date occurring prior to the Commitment Termination Date on which the all of the conditions set forth in Section 6 have been satisfied or waived by Lender.

(e) "Collateral" has the meaning given in Section 7(a) below.

(f) "Commitment", means Lender's commitment to make the Term Loan on the terms and conditions of this Agreement, in a principal amount not to exceed $15,000,000.

(g) "Commitment Letter" means that certain letter agreement, dated March 22, 2011, by and among GAC Real Estate Partners, LLC, Mount Kellett Capital Management LP, Borrower, Charlestown Capital Advisors, LLC, and Hartland Asset Management Corporation.

(h) "Commitment Termination Date" means the earlier of (i) the date that is one hundred twenty (120) days after the Effective Date, and (ii) the Early Termination Date.

(i)     "<u>Confirmation Order</u>" means an order of the Bankruptcy Court confirming the Plan.

(j)     "<u>Control</u>," "<u>Controlled</u>" or "<u>Controlling</u>" means, with respect to any Person, any circumstance in which such Person is directly or indirectly controlled by another Person by virtue of the latter Person having the power to (i) elect, or cause the election of (whether by way of voting capital stock, by contract, trust or otherwise), the managing member or majority of the members of the board of directors or a similar governing body of the first Person, or (ii) direct (whether by way of voting capital stock, by contract, trust or otherwise) the affairs and policies of such Person.

(k)     "<u>Deeds of Trust</u>" means deeds of trust granted by each of Meruelo Chinatown, LLC, Merco Group – 1211 E. Washington Boulevard, LLC and Meruelo Maddux – 230 W. Avenue 26, LLC on the Mortgaged Property, respectively, to secure the obligations of MMPI under the MMPI Revolving Credit Agreement and the Related Documents.

(l)     "<u>Default</u>" means any event or condition which, with the giving of notice or the passage of time, or both, becomes an Event of Default.

(m)     "<u>Early Termination Date</u>" means the earlier of the Business Day on which the Commitment terminates pursuant to Section 2(b) below or the Business Day on which the Obligations become due and payable and the Commitment is terminated pursuant to Section 14 below.

(n)     "<u>Effective Date</u>" means "Effective Date" of the Plan, as such term is defined therein.

(o)     "<u>Equity Investment</u>" means the contribution by Lender to Borrower for the Preferred Equity Investment and the investment in the Common Membership Interest (as defined in the Amended and Restated Operating Agreement of Borrower) and the contribution by GAC Real Estate Partners, LLC to Borrower for the investment in the Common Membership Interests of Borrower on the Effective Date, in accordance with the terms of the Commitment Letter, in order to provide funding to Borrower for the Equity Transaction.

(p)     "<u>Equity Transaction</u>" means the acquisition by Borrower on the Effective Date of 55% of  the common stock, par value $0.01 per share, of MMPI pursuant to the Plan.

(q)     "<u>Event of Default</u>" has the meaning given in Section 14 below.

(r)     "<u>GAAP</u>" means accounting principles generally accepted in the United States of America as in effect from time to time, consistently applied and maintained throughout the applicable periods both as to classification or items and amounts.

(s)     "<u>Guarantee</u>" of or by any Person means any obligation, contingent or otherwise, of such Person guaranteeing or having the economic effect of guaranteeing any Indebtedness of any other Person (the "<u>Primary Obligor</u>") in any manner, whether directly or indirectly, and including any obligation of such Person, direct or indirect, (i) to purchase (or

2

advance or supply funds for the purchase or payment of) such Indebtedness or to purchase (or to advance or supply funds for the purchase of) any security for the payment of such Indebtedness, (ii) to purchase property, securities or services for the purpose of assuring the holder of such Indebtedness of the payment of such Indebtedness or (iii) to maintain working capital, equity capital or other financial statement condition or liquidity of the Primary Obligor so as to enable the Primary Obligor to pay such Indebtedness; provided, however, that the term Guarantee shall not include endorsements for collection or deposit in the ordinary course of business.

(t)      "Indebtedness" of any Person means, without duplication, (a) all indebtedness of such Person for borrowed money, (b) all obligations of such Person for the deferred purchase price of property or services (other than current trade payables incurred in the ordinary course of such Person's business), (c) all obligations of such Person evidenced by notes, bonds, debentures or other similar instruments, (d) all indebtedness created or arising under any conditional sale or other title retention agreement with respect to property acquired by such Person (even though the rights and remedies of the seller or lender under such agreement in the event of default are limited to repossession or sale of such property), (e) obligations of such Person to pay rent or other amounts under any lease of (or other arrangement conveying the right to use) real or personal property, or a combination thereof, which obligations are required to be classified and accounted for as capital leases on a balance sheet of such Person under GAAP, (f) all obligations of such Person, contingent or otherwise, as an account party or applicant under or in respect of acceptances, letters of credit, surety bonds or similar arrangements, (g) all Guarantees of such Person in respect of obligations of the kind referred to in clauses (a) through (f) above, (h) all obligations of the kind referred to in clauses (a) through (g) above secured by (or for which the holder of such obligation has an existing right, contingent or otherwise, to be secured by) any Lien on property (including accounts and contract rights) owned by such Person, whether or not such Person has assumed or become liable for the payment of such obligation, and (i) all obligations of such Person under any agreement with respect to any swap, forward, future or derivative transaction or option or similar agreement involving, or settled by reference to, one or more rates, currencies, commodities, equity or debt instruments or securities, or economic, financial or pricing indices or measures of economic, financial or pricing risk or value or any similar transaction or any combination of these transactions.

(u)      "Interest Payment Date" has the meaning given in Section 4(a) below.

(v)      "Lien" means, with respect to any asset, (i) any mortgage, deed of trust, lien, pledge, encumbrance, charge or security interest in or on such asset or any assignment, hypothecation, deposit arrangement or other preferential arrangement of or with respect to such asset, and (ii) any purchase option, call or similar right of a third party with respect to such asset.

(w)      "Loan Balance" means, as of any date, (a) the original principal amount of the Term Loan, plus (b) all PIK Interest and additional interest added to the principal balance of the Term Loan in accordance with Section 4(a) or Section 4(c), minus (c) all prepayments and payments of principal of the Term Loan made on or prior to such date.

(x)    "Loan Documents" means this Agreement and each other document and instrument delivered from time to time pursuant to or in connection with this Agreement.

(y)    "Material Adverse Effect" means a material adverse effect on (a) the business, property, operations, or financial condition of Borrower taken as a whole or (b) the validity or enforceability of this Agreement or any of the other Loan Documents or the material rights or remedies of Lender hereunder or thereunder

(z)    "Maturity Date" means the 15-month anniversary of the Effective Date.

(aa)    "MMPI Revolving Credit Agreement" means the secured revolving promissory note and agreement to be entered into on the Closing Date between Borrower, as the lender thereunder, and MMPI, as borrower, providing for revolving advances in an aggregate amount not to exceed $15,000,000 at any one time, in substantially the form attached hereto as Exhibit A.

(bb)    "MMPI Revolving Credit Commitment" means the commitment of Borrower to make revolving advances pursuant to the MMPI Revolving Credit Agreement.

(cc)    "Mortgaged Property" means the real and personal property of Meruelo Chinatown, LLC, Merco Group – 1211 E. Washington Boulevard, LLC and Meruelo Maddux – 230 W. Avenue 26, LLC in which MMPI is granted a Lien pursuant to the Deeds of Trust.

(dd)    "Obligations" means the unpaid principal of and interest on (including interest accruing after the maturity of the Term Loan and interest accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to Borrower, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) the Loan Balance and all other obligations and liabilities of Borrower to Lender, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, this Agreement, or any other Loan Document, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses (including all fees, charges and disbursements of counsel to Lender that are required to be paid by the Borrower pursuant hereto) or otherwise.

(ee)    "Person" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, limited liability company, corporation, government or any agency, court or political division thereof, or any other entity.

(ff)    "PIK Interest" has the meaning given in Section 4(a) below.

(gg)    "Plan" means Charlestown Capital Advisors' and Hartland Asset Management Corporation's First Modified Fourth Amended Chapter 11 Plan of Reorganization dated October 14, 2010 in the form and substance filed with the Bankruptcy Court on such date.

4

(hh)     "Preferred Equity Investment" means the Series A Preferred Membership Interests in Borrower in which Lender invests on the Effective Date in accordance with the Commitment Letter.

(ii)     "Related Documents" means, with respect to the MMPI Revolving Credit Facility, all agreements or documents evidencing, securing, governing or giving rise to the MMPI Revolving Credit Facility.

(jj)     "Subsidiary" means, with respect to any Person, any entity more than 50% of whose voting securities or equity interests is owned by such Person (including indirect ownership by such Person through other entities in which such Person directly or indirectly owns more than 50% of the voting securities or equity interests).

(kk)     "Term Loan" means the delayed-draw term loan made by Lender pursuant to Section 2(a).

2.     Commitment; Term Loan; Loan Fee.  (a) Subject to the terms and upon the satisfaction of the conditions set forth in this Agreement, Lender agrees to make the Term Loan in a principal amount not to exceed the Commitment, on the Business Day occurring prior to the Commitment Termination Date specified in a written notice of borrowing received by Lender not less than five (5) Business Days prior to such date.

(b)     Borrower may, upon not less than ten (10) Business Days prior written notice to Lender, terminate the Commitment.

(c)     The notice of borrowing required by Section 2(a) shall specify (i) the date (which shall be a Business Day) on which Borrower desires that the Term Loan be made, (ii) the principal amount of the Term Loan, and (iii) the account to which Lender shall transfer the proceeds of the Term Loan.

(d)     The Term Loan shall be evidenced by the records made by Lender in a loan account that it maintains for Borrower and such records shall be conclusive, absent manifest error, as to the amount of the Loan Balance and the accrued interest and payments thereon. Any failure so to record or any error in doing so shall not limit or otherwise affect the obligation of Borrower under this Agreement to pay any amount owing with respect to the Obligations.

(e)     On or prior to the date hereof, Borrower has paid a loan fee to the Lender of $225,000.

3.     Payments and Prepayments of Principal.  (a) Unless converted as provided in Section 16, the Loan Balance shall be repaid by Borrower in full (together with all accrued but unpaid interest thereon) on the Maturity Date.

(b)     Upon not less than five (5) Business Days' prior notice in writing to Lender, Borrower may prepay the Loan Balance in its entirety or in part on any Business Day without premium or penalty of any kind, but together with all accrued but unpaid interest on the

5

amount thereof that is prepaid.  If such notice is given, the amount specified therein shall be due and payable on the date specified therein.

(c)    Borrower shall be required to prepay a portion of the Loan Balance not later than the next Business Day after MMPI reduces the maximum principal amount of or terminates the MMPI Revolving Credit Commitment.  Such prepayment shall be in the amount of such reduction, or in the amount of the entire Loan Balance in the case of the termination of the MMPI Revolving Credit Commitment, and shall be accompanied by payment of all accrued but unpaid interest on the principal amount prepaid. For the avoidance of doubt, Borrower shall not be required to prepay any portion of the Loan Balance upon MMPI's draws on and payments against the MMPI Revolving Credit Agreement if such draws and/or payments do not affect the maximum principal amount of the MMPI Revolving Credit Agreement.

(d)    Borrower hereby waives presentment and protest of any instrument and notice thereof, and, to the extent permitted by applicable law, all other notices to which Borrower might otherwise be entitled.

4.    <u>Interest, Commitment Fee and Other Charges</u>.  (a) The outstanding Loan Balance shall bear interest, payable in arrears, at a rate per annum of twenty (20%) percent, compounded quarterly, as follows: Borrower shall pay accrued interest on each March 31, June 30, September 30, and December 31 (each an "<u>Interest Payment Date</u>"), commencing on the first such date after the Term Loan is made; interest accrued on the portion of the Loan Balance equal to the original principal amount of the Term Loan at the rate of five (5%) percent per annum shall be paid in cash on each Interest Payment Date by wire transfer of immediately available funds to an account at a bank designated by Lender; and the remainder of the interest on the Loan Balance in accordance with the first sentence of this subsection (a) ("<u>PIK Interest</u>") shall be paid on each Interest Payment Date by addition of such PIK Interest to the outstanding Loan Balance on such date.

(b)    All interest payable under this Agreement shall be calculated by Lender, on the basis of a 360-day year and for the actual number of days elapsed.

(c)    Upon the occurrence and during the continuance of any Event of Default, the Loan Balance shall bear interest, from the date of the occurrence of such Event of Default until such Event of Default is cured or waived, at a rate equal to the applicable interest rate in effect hereunder plus two percent (2%), which additional interest shall be paid by adding the amount thereof to the outstanding Loan Balance on the last Business Day of each month..

(d)    In no event whatsoever shall the interest rate and other charges charged hereunder exceed the highest rate permissible under any law which a court of competent jurisdiction, in a final determination, deems applicable hereto.  In the event that such a court determines, in a final determination, that Lender has received interest and other charges hereunder in excess of such highest rate, Lender shall promptly refund such excess amount to Borrower, and the provisions hereof shall be deemed amended to provide for such permissible rate.

6

5.  <u>Place and Manner of Payment</u>.  Borrower shall make all payments required to be made by it under this Agreement (whether of principal, interest, fees, or any other amount) to Lender prior to 11:00 AM New York time on the date such payment is due, to such account or at such address in the United States of America as Lender shall from time to time indicate to Borrower, in U.S. dollars and in immediately available funds.

6.  <u>Conditions Precedent</u>.

The agreement of Lender to make the Term Loan is subject to the satisfaction, prior to or concurrently with the making of the Term Loan on the Closing Date, of the following conditions precedent:

(a)  <u>Loan Documents</u>.  Lender shall have received this Agreement, executed and delivered by a duly authorized officer of Borrower.

(b)  <u>Confirmation Order</u>.  The Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall become a Final Order (as defined in the Plan) and the Effective Date shall have occurred.

(c)  <u>MMPI Revolving Credit Facility</u>.  Lender shall have received a complete copy of the MMPI Revolving Credit Agreement, duly executed by each party thereto. The MMPI Revolving Credit Agreement shall be in full force and effect and shall not have been amended or modified in any material respect without the consent of Lender.  Lender shall have received evidence satisfactory to it in its sole discretion that: (i) each of Meruelo Chinatown, LLC , Merco Group – 1211 E. Washington Boulevard, LLC and Meruelo Maddux – 230 W. Avenue 26, LLC has executed and delivered to or for the benefit of Borrower a duly executed and acknowledged Deed of Trust on the applicable Mortgaged Property, in form for recording in the recording office of the political subdivision where each such Mortgaged Property is situated, together with such certificates, affidavits, questionnaires or returns as shall be required in connection with the recording or filing thereof to create a lien under applicable law, and such financing statements and any other instruments necessary to grant a mortgage lien under the laws of any applicable jurisdiction, all of which shall be in substantially the form attached hereto as <u>Exhibit B</u>; and (ii) Borrower will use its good faith efforts to obtain a policy of title insurance (or marked up title insurance commitment having the effect of a policy of title insurance) insuring the Lien of the foregoing Deed of Trust as a valid first mortgage Lien on the Mortgaged Property and fixtures described therein in the amount reasonably acceptable to Lender which policy (or such marked-up commitment) (each, a "Title Policy") shall (A) be issued by a title company reasonably acceptable to Lender, (B) include such endorsements as shall be reasonably acceptable to Lender, and (C) contain no exceptions to title other than exceptions acceptable to the Lender.

(d)  <u>Equity Investment and Equity Transaction</u>.  The Equity Investment and the Equity Transaction shall each have been consummated on the terms set forth in the Plan and the Commitment Letter.

7

(e)      Approvals.  All material governmental and third party approvals necessary to be obtained by Borrower or any of its Subsidiaries in connection with the transactions contemplated hereby shall have been obtained and be in full force and effect.

(f)      Company Proceedings of Borrower.  Lender shall have received a copy of the resolutions (in form and substance reasonably satisfactory to Lender) of Borrower authorizing (i) the execution, delivery and performance, of this Agreement, (ii) the consummation of the transactions contemplated hereby, (iii) the borrowings herein provided for, and (iv) the execution, delivery and performance of the other documents provided for in this Agreement, all certified by the secretary or assistant secretary of  Borrower or its managing member as of the Closing Date.  Such certificate shall state that the resolutions set forth therein have not been amended, modified, revoked or rescinded as of the date thereof.

(g)      No Proceeding or Litigation; No Injunctive Relief.  No action, suit or proceeding before any arbitrator or any governmental authority shall have been commenced, no investigation by any governmental authority shall have been commenced and no action, suit, proceeding or investigation by any governmental authority shall have been threatened in writing, against Borrower or any of the officers, directors or managers of Borrower, seeking to restrain, prevent or change the transactions contemplated by this Agreement in whole or in part or questioning the validity or legality of the transactions contemplated by this Agreement or seeking damages in connection with such transactions.

(h)      Representations and Warranties.  The representations and warranties made by Borrower in this Agreement and any representations and warranties made by the Borrower which are contained in any certificate furnished at any time under or pursuant to this Agreement, shall be true and correct in all material respects on and as of the Closing Date as if made on and as of such date..

(i)      No Default or Event of Default.  No Default or Event of Default shall have occurred and be continuing on such date or after giving effect to the Term Loan to be made on such date.

(j)      No Material Adverse Effect.  Since the Effective Date, there has been no development or event that has had or could reasonably be expected to have a Material Adverse Effect.

7.   Collateral Security and Pledge.  (a)  To secure the due and punctual payment of the Obligations, and the performance by Borrower of all its obligations and covenants under this Agreement, Borrower hereby pledges, hypothecates, assigns, transfers and sets over to Lender, and grants to Lender a first priority, perfected security interest in and lien upon, all of Borrower's right, title and interest in, to and under, the following property, in each case whether tangible or intangible, wheresoever located, and whether now owned by Borrower or hereafter acquired and whether now existing or hereafter coming into existence

(i)      the MMPI Revolving Credit Agreement;

(ii)      each Related Document and all rights, remedies, powers, privileges and claims under or in respect thereto (whether arising pursuant to the terms

8

thereof or otherwise available to Borrower at law or equity), including the right to enforce each such Related Document and to give or withhold any and all consents, requests, notices, directions, approvals, extensions or waivers under or with respect thereto, to the same extent as Borrower could but for the assignment and security interest granted to Lender under this Agreement;

(iii)    all security interests, liens, collateral, property, guaranties, supporting obligations, insurance and other agreements or arrangements of whatever character from time to time supporting or securing payment of MMPI's obligations under the MMPI Revolving Credit Agreement and the Related Documents,

(iv)    all proceeds, products and profits derived from any of the foregoing (including all cash, securities, dividends and other property at any time and from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the foregoing, proceeds of any insurance policies, proceeds of proceeds, and claims against third parties), and

(v)    all books and records related to any of the foregoing (all of the foregoing securities, futures contracts, accounts and other property, together with all other property in which Borrower may hereafter grant a Lien to Lender, being herein collectively referred to as the "Collateral").

(b)    Borrower shall from time to time execute and deliver all such supplements and amendments hereto and file or authorize the filing of all such UCC financing statements, continuation statements, instruments of further assurance and other instruments, and shall take such other action as may be necessary or advisable or desirable to secure the rights and remedies of Lender hereunder and to:

(i)    grant security more effectively on all or any portion of the Collateral;

(ii)    maintain, preserve and perfect any grant of security made or to be made by this Agreement including, without limitation, the first priority nature of the Lien or carry out more effectively the purposes hereof;

(iii)    perfect, publish notice of or protect the validity of any grant made or to be made by this Agreement (including, without limitation, any and all actions necessary or desirable as a result of changes in law or regulations);

(iv)    enforce any of the Collateral or other instruments or property included in the Collateral;

(v)    preserve and defend title to the Collateral and the rights therein of Lender in the Collateral against the claims of all Persons and parties; and

(vi)    pay or cause to be paid any and all taxes levied or assessed upon all or any part of the Collateral.

9

(c)    Borrower hereby designates Lender as its agent and attorney in fact to prepare and file any UCC financing statement, continuation statement and all other instruments, and take all other actions, required pursuant to this Section 7.  Such designation shall not impose upon Lender, or release or diminish, the Borrower's obligations under this Section 7.  Borrower further authorizes Lender to file without the Borrower's signature UCC financing statements that names the Borrower as debtor and Lender as secured party and that describes the Collateral.

(d)    Borrower hereby irrevocably appoints Lender its true and lawful attorney in its name, place and stead, and at its expense, in connection with the preservation and enforcement of Lender's rights and remedies under this Agreement (i) to receive, endorse and collect all checks and other orders for the payment of money made payable to Borrower representing any payment in respect of any of the Collateral and to give full discharge for the same, (ii) to give all notices, obtain all consents, effectuate all registrations in Lender's name or that of a proposed purchaser or other transferee and make all transfers of all or any part of the Collateral which are necessary or appropriate in connection with any sale, transfer or other disposition thereof pursuant to this Agreement, (iii) to date, insert therein the name of an assignee, and deliver each of any instruments of assignment delivered to Lender, and to prepare and execute all such amendments thereto as may be required to obtain any consent necessary for Lender's sale, transfer or other disposition of the item of Collateral to which such instrument of assignment pertains, (iv) to execute and deliver for value all necessary or appropriate assignments and other instruments in connection with any such sale, transfer or other disposition, and (v) to execute and deliver all other documents, and do all other acts and things, which Lender deems appropriate in such connection; provided, however, that the foregoing powers are only exercisable by Lender if an Event of Default has occurred and is continuing. Borrower hereby ratifies and confirms all that Lender, as Borrower's attorney, may lawfully do hereunder and pursuant hereto, but, nevertheless, at Lender's request or that of the purchaser or other transferee in question, Borrower shall ratify and confirm any sale, transfer or other disposition of Collateral pursuant to this Agreement in such manner as Lender or such purchaser or other transferee may reasonably specify in such request.

8.    Use of Proceeds.  Borrower represents and warrants to and covenants with Lender that the proceeds of the Term Loan will be used solely to make revolving advances to MMPI under the MMPI Revolving Credit Agreement.

9.    Representations And Warranties.  Borrower represents and warrants to Lender that:

(a)    Borrower (i) is a  limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware (ii) is qualified to do business and is in good standing in all states in which qualification and good standing are necessary in order for it to conduct its business and own its property, except where the failure to be so qualified would not have a Material Adverse Effect, and (iii) has all requisite power and authority to conduct its business, to own its property, to execute and deliver this Agreement and to perform its obligations hereunder;

(b)        this Agreement has been duly and validly executed and delivered by Borrower and constitutes a legal, valid and binding obligation of Borrower, enforceable against it in accordance with its terms, subject, as to enforceability of remedies, to bankruptcy, insolvency and other laws affecting creditors' rights generally and to general principles of equity;

(c)        Borrower has taken all necessary action to authorize the execution, delivery and performance of this Agreement, and such authorization, delivery and performance do not and will not (i) violate operating agreement or any law, rule, regulation, order, judgment, injunction, decree, determination or award presently in effect and applicable to it, (ii) require any consent (other than by Lender or any of its Affiliates) or result in a breach of or constitute a default under any agreement, lease or instrument to which it is a party or by which it or any of its assets may be bound or affected, or (iii) result in or require the creation or imposition of any Lien (other than in favor of Lender pursuant to this Agreement) upon or with respect to any of the properties now owned or hereafter acquired by it;

(d)        no recording, order, authorization, consent, license, registration, approval, exemption, filing, notice or other similar action by or with any governmental body, governmental official or other regulatory authority (except such as have been obtained and copies or confirmations of which have been delivered by Borrower to Lender and except for filing UCC financing statements or collateral assignments of the Deeds of Trust) is or will be necessary (i) for the legality, validity, binding effect or enforceability of this Agreement, (ii) to permit the performance by Borrower of its obligations under this Agreement in accordance with the terms hereof, (iii) to enable Lender to enforce its rights and remedies under this Agreement, including any sale, transfer or other disposition by Lender of all or any part of the Collateral or (iv) to create and perfect the Lien granted under this Agreement on the Collateral.

(e)        Borrower has no Indebtedness other than Indebtedness permitted under Section 12(a) below;

(f)        all Collateral is owned by Borrower free and clear of all Liens whatsoever (except for Liens permitted under Section 12(b) below) and will continue to be so owned by Borrower;

(g)        except as disclosed by it to Lender in writing prior to the date of this Agreement, there is no litigation or other proceeding pending or, to its knowledge, threatened against or affecting Borrower which, if determined adversely to it, would have a Material Adverse Effect; and

(h)        this Agreement is effective to create in favor of Lender a legal, valid and enforceable security interest in and Lien on the Collateral.  When financing statements specified on Schedule   9(h) in appropriate form are filed in the offices specified on Schedule 9(h), such security interest and Lien shall constitute a fully perfected security interest in, and Lien on, all right, title and interest of Borrower in such Collateral and the proceeds thereof, as security for the Obligations, in each case prior and superior in right to any other Person.

(i)        [Intentionally omitted.]

11

10. <u>Borrower's Affirmative Covenants</u>.  Borrower covenants with Lender that until the Commitment Termination Date and the payment in full of all Obligations and the performance by Borrower of all its obligations and covenants under this Agreement, it shall:

(a)      maintain and preserve its existence and all rights, privileges, approvals and other authority adequate for the conduct of its business;

(b)      pay, discharge or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all its material obligations (including taxes) of whatever nature, except where the amount or validity thereof is currently being contested in good faith by appropriate proceedings and reserves in conformity with GAAP with respect thereto have been provided on the books of the Borrower or where the failure to do so could not, in the aggregate, reasonably be expected to have a Material Adverse Effect.

(c)      promptly notify Lender in writing of any violation by Borrower of any law, statute, regulation or ordinance of any governmental entity, or of any agency thereof, applicable to it, which would likely materially and adversely affect the Collateral or the financial condition, operations or business of Borrower;

(d)      promptly notify Lender in writing of any default by Borrower with respect to any of Borrower's Indebtedness;

(e)      promptly upon Lender's reasonable request therefor, deliver to Lender such information and documents regarding Borrower as Lender may from time to time reasonably request from Borrower; and

(f)      perform all of Borrower's obligations, and enforce all of Borrower's rights and remedies, under the MMPI Revolving Credit Agreement and Related Documents in accordance with their terms.

11. <u>Borrower's Negative Covenants</u>.  Borrower covenants with Lender that until the Commitment Termination Date and the payment in full of all Obligations, and the performance by Borrower of all its obligations and covenants under this Agreement, it shall not, without the prior written consent of Lender:

(a)      create, incur, assume or permit to exist any Indebtedness, except the Obligations;

(b)      create, incur, assume or permit to exist any Lien on any property or assets now owned or hereafter acquired by Borrower, other than (i) Liens for taxes not delinquent or which are being contested in good faith and in appropriate proceedings; (ii) Liens in connection with workers' compensation, unemployment insurance or social security obligations; (iii) mechanics', workmen's, materialmen's, landlords', carriers' or other like Liens arising in the ordinary course of business with respect to obligations which are not due or which are being contested in good faith; (iv) Liens in favor of Lender; and (v) Liens of a collecting balk, depository bank, or securities intermediary arising in the ordinary course of business to secure fees and charges, returned items and charge backs, or to facilitate cash management arrangements;

12

(c)       sell any of the equity interests in MMPI acquired pursuant to the Equity Transaction;

(d)       engage in any activities other than (i) the ownership of equity interests in MMPI, (ii) the transactions contemplated by the MMPI Revolving Credit Agreement and (iii) other activities incidental to the foregoing; or

(e)       amend or modify any of the terms and provisions of the MMPI Revolving Credit Agreement or the Related Documents.

12.  Events of Default.  It shall constitute an "Event of Default" hereunder if at any time:

(a)       Borrower shall fail to pay any portion of the Loan Balance when due in accordance with the terms hereof; or the Borrower shall fail to pay any interest on the Loan Balance, or any other amount payable hereunder or under any other Loan Document, within five (5) days after any such interest or other amount becomes due in accordance with the terms hereof; or

(b)       any representation or warranty made or deemed made by Borrower herein or in any other Loan Document or that is contained in any certificate, document, report or financial statement furnished by it at any time under or in connection with this Agreement or any such other Loan Document shall prove to have been inaccurate in any material respect on or as of the date made or deemed made; or

(c)       Borrower shall default in the observance or performance of any agreement contained in Section 7 of this Agreement; or

(d)       Borrower shall default in the observance or performance of any other agreement contained in this Agreement or any other Loan Document (other than as provided in paragraphs (a) through (c) of this Section), and such default shall continue unremedied for a period of thirty (30) days after notice to Borrower from Lender; or

(e)       Borrower shall (i) default in making any payment of any principal of any Indebtedness (excluding the Obligations) on the scheduled or original due date with respect thereto; or (ii) default in making any payment of any interest on any such Indebtedness beyond the period of grace, if any, provided in the instrument or agreement under which such Indebtedness was created; or (iii) default in the observance or performance of any other agreement or condition relating to any such Indebtedness or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event shall occur or condition exist, the effect of which default or other event or condition is to cause, or to permit the holder or beneficiary of such Indebtedness (or a trustee or agent on behalf of such holder or beneficiary) to cause, with the giving of notice if required, such Indebtedness to become due prior to its stated maturity or to become payable; provided, that a default, event or condition described in clause (i), (ii) or (iii) of this paragraph (e) shall not at any time constitute an Event of Default unless, at such time, one or more defaults, events or conditions of the type described in clauses (i), (ii) and (iii) of this paragraph (e) shall have occurred

13

and be continuing with respect to Indebtedness the aggregate outstanding principal amount of which is $500,000 or more; or

(f)    (i) Borrower shall commence any case, proceeding or other action under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, (A) seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization, arrangement, adjustment, winding-up, liquidation, dissolution, composition or other relief with respect to it or its debts, or (B) seeking appointment of a receiver, trustee, custodian, conservator or other similar official for it or for all or any substantial part of its assets; or (ii) there shall be commenced against Borrower any case, proceeding or other action of a nature referred to in clause (i) above that (A) results in the entry of an order for relief or any such adjudication or appointment or (B) remains undismissed or undischarged for a period of 60 days; or (iii) there shall be commenced against Borrower any case, proceeding or other action seeking issuance of a warrant of attachment, execution, distraint or similar process against all or any substantial part of its assets that results in the entry of an order for any such relief that shall not have been vacated, discharged, or stayed or bonded pending appeal within 60 days from the entry thereof; or (iv) Borrower shall take any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the acts set forth in clause (i), (ii), or (iii) above; or (v) Borrower shall generally not, or shall be unable to, or shall admit in writing its inability to, pay its debts as they become due; or (vi) or Borrower shall make a general assignment for the benefit of its creditors; or

(g)    one or more judgments or decrees shall be entered against Borrower involving in the aggregate a liability (not paid or fully covered by insurance as to which the relevant insurance company has not denied coverage) of $500,000 or more, and all such judgments or decrees shall not have been vacated, discharged, satisfied, stayed or bonded pending appeal within 60 days from the entry thereof; or

(h)    the Liens in favor of Lender to secure the Obligations shall cease, for any reason, to be in full force and effect, or Borrower shall so assert, or any such Lien shall cease to be enforceable and of the same effect and priority (other than (x) pursuant to the term hereof or any other Loan Document or (y) as a result of any acts or omissions of Lender).

If an Event of Default specified in paragraph (f) above shall occur and be continuing, automatically the Commitment shall immediately terminate and the Loan Balance (with accrued interest thereon) and all other amounts owing under this Agreement and the other Loan Documents shall immediately become due and payable and (B) if other Event of Default shall occur and be continuing, either or both of the following actions may be taken:  (i) Lender may, by notice to Borrower declare the Commitment to be terminated forthwith, whereupon the Commitment shall immediately terminate; and (ii) Lender may, by notice to Borrower, declare the Loan Balance (with accrued interest thereon) and all other amounts owing under this Agreement and the other Loan Documents to be due and payable, whereupon the same shall immediately become due and payable.

14

13. <u>Lender's Rights and Remedies</u>.

(a)    Lender shall have all of the rights and remedies of a secured party under the UCC and other applicable law.  Upon the occurrence and during the continuance of an Event of Default, Lender may (i) instruct the Borrower to deliver any or all of the Collateral, the Related Documents and any other documents relating to the Collateral to Lender or its designees and otherwise give all instructions for Borrower regarding the Collateral; (ii) sell or otherwise dispose of the Collateral, all without judicial process or proceedings; (iii) take control of the proceeds of any such Collateral; (iv) subject to the provisions of the applicable Related Documents, exercise any consensual or voting rights in respect of the Collateral; (v) release, make extensions, discharges, exchanges or substitutions for, or surrender all or any part of the Collateral; (vi) enforce Borrower's rights and remedies with respect to the Collateral; (vii) institute and prosecute legal and equitable proceedings to enforce collection of, or realize upon, any of the Collateral; (viii) require that Borrower immediately take all actions necessary to cause the liquidation of the Collateral in order to pay all amounts due and payable in respect of the Obligations, in accordance with the terms of the Related Documents; (ix) to redeem or withdraw or cause Borrower to redeem or withdraw any asset of the Borrower to pay amounts due and payable in respect of the Obligations; (x) make copies of or, if necessary, remove from Borrower's and its agents' place of business all books, records and documents relating to the Collateral; and (xi) endorse the name of Borrower upon any items of payment relating to the Collateral or upon any proof of claim in bankruptcy against an account debtor.

(b)    Borrower hereby agrees that to the extent not expressly prohibited by the terms of the Related Documents, after the occurrence and during the continuance of an Event of Default, it shall (i) upon the written request of Lender promptly forward to Lender all material information and notices which it receives under or in connection with the Related Documents relating to the Collateral, and (ii) upon the written request of Lender, act and refrain from acting in respect of any request, act, decision or vote under or in connection with the Related Documents relating to the Collateral only in accordance with the direction of Lender.

(c)    Borrower agrees that, to the extent the same shall be in Borrower's possession, it will hold all Related Documents relating to the Collateral in trust for Lender, and upon request of Lender following the occurrence and during the continuance of an Event of Default or as otherwise provided herein, promptly deliver the same to the Lender or its designee.

(d)    Notwithstanding anything herein to the contrary, (i)Borrower shall remain liable under the contracts and agreements included in and relating to the Collateral (including the Related Documents) to the extent set forth therein, and shall perform all of its duties and obligations under such contracts and agreements to the same extent as if this Agreement had not been executed, and (ii) the exercise by Lender of any of its rights hereunder shall not release Borrower from any of its duties or obligations under any such contracts or agreements included in the Collateral.  No obligation or liability of Borrower is intended to be assumed by Lender under or as a result of this Agreement or the other Loan Documents, and the transactions contemplated hereby and thereby, including under any Related Document or any other agreement or document that relates to Collateral and, to the maximum extent permitted under provisions of law, Lender expressly disclaim any such assumption.

15

14. <u>Conversion of Term Loan</u>.  Unless the Loan Balance and all accrued interest thereon is sooner paid, Lender shall have the right on the Maturity Date to convert the Loan Balance outstanding on the Maturity Date, and all such accrued but unpaid interest at such date, into Series A Preferred Membership Interests in Borrower in an amount equal to the sum of such outstanding Loan Balance and accrued but unpaid interest.  Lender may exercise such right by giving Borrower written notice of conversion not less than fifteen (15) Business Days prior to the Maturity Date.  If Lender gives such notice of conversion, then such conversion shall occur on the Maturity Date without the necessity of any further action by Lender or Borrower.  The Series A Preferred Membership Interests resulting from such conversion shall have the same terms and conditions applicable to the Preferred Equity Investment issued on the Effective Date pursuant to the Equity Investment. Borrower shall execute and deliver such documents, and take such other action, as Lender may reasonably request to evidence and give effect to the conversion pursuant to this Section.  Upon any such conversion, the outstanding Loan Balance and all accrued but unpaid interest thereon shall be deemed paid in full.

15. <u>Taxes</u>.  (a)  Any and all payments by Borrower hereunder or under any other Loan Document shall be made free and clear of and without deduction for any and all present or future taxes, levies, imposts, deductions, charges or withholdings, and all interest, penalties, additions to tax or other liabilities with respect thereto, excluding taxes imposed on the net income of the Lender (or any permitted transferee or assignee thereof pursuant to Section 18 (each, a "<u>Transferee</u>")) by the jurisdiction in which the Lender or Transferee is organized or has its principal lending office (all such nonexcluded taxes, levies, imposts, deductions, charges withholdings and liabilities, collectively or individually, "<u>Taxes</u>").  If Borrower shall be required to deduct any Taxes from or in respect of any sum payable hereunder to the Lender or any Transferee, (i) the sum payable shall be increased by the amount (an "additional amount") necessary so that after making all required deductions (including deductions applicable to additional sums payable under this Section 15) the Lender or such Transferee shall receive an amount equal to the sum it would have received had no such deductions been made, (ii) Borrower shall make such deductions, (iii) Borrower shall pay the full amount deducted to the relevant governmental authority in accordance with applicable law and (iv) Borrower shall send the Lender or such Transferee an official receipt (or, if an official receipt is not available, such other evidence of payment as shall be satisfactory to the Lender or such Transferee) evidencing payment of the amount so deducted or withheld.

(b)      In addition, Borrower agrees to pay to the relevant governmental authority in accordance with applicable law any present or future stamp or documentary taxes or any other excise or property taxes, charges or similar levies that arise from any payment made hereunder or from the execution, delivery or registration of, or otherwise with respect to, this Agreement or any other Loan Document ("<u>Other Taxes</u>").  The Borrower shall deliver to the Lender and each Transferee an official receipt (or, if an official receipt is not available, such other evidence of payment as shall be satisfactory to the Lender or such Transferee) in respect of any Other Taxes payable hereunder promptly after payment of such Other Taxes.

(c)      The Borrower hereby agrees to indemnify and hold the Lender and each Transferee harmless from and against all Taxes and Other Taxes paid in good faith by such person, whether or not such Taxes or Other Taxes were correctly or legally asserted.  Such indemnification shall be paid within 10 days from the date on which any Lender or any

16

Transferee makes written demand therefore specifying in reasonable detail the nature and amount of such Taxes or Other Taxes.

16. <u>No Waiver</u>.  No failure by Lender to exercise any right, power or remedy under this Agreement, and no delay by Lender in exercising any such right, power or remedy, shall operate as a waiver thereof; nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise by Lender of any other right, power or remedy. The rights and remedies of Lender provided for in this Agreement are cumulative and not exclusive of any rights and remedies otherwise available.

17. <u>Entire Agreement; Amendments</u>.  This Agreement contains the entire agreement of the parties with respect to the transactions contemplated hereby, and no amendment, modification, termination or waiver of any provision thereof or consent to a departure therefrom by Borrower shall be effective unless the same is in writing and signed by both Lender and Borrower.

18. <u>Successors And Assigns; Participations</u>.  (a) This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective representatives, successors and assigns, provided, however, that this Agreement may not be assigned by Borrower nor may Borrower's obligations be assumed by any other Person without the prior written consent of Lender, and any purported assignment in violation of this provision shall be null and void.

(b)    Lender may not assign this Agreement or the Loan Balance without the prior written consent of Borrower; <u>provided</u>, <u>however</u>, that Lender may from time to time, in its sole and absolute discretion and without Borrower's further consent, assign this Agreement and the Loan Balance to any Affiliate of Lender.

(c)    The Lender, as a non-fiduciary agent of the Borrower, shall maintain at its offices a register for the recordation of the names and addresses of the Lenders (including assignees) and the principal amount of the loans (and stated interest thereon) (the "Registered Loans") pursuant to the terms hereof from time to time (the "<u>Register</u>").  The entries in the Register shall be conclusive absent manifest error.  The Register shall be made available to the Borrower at reasonable intervals and upon reasonable prior notice.  The Borrower and the Lender shall treat each person whose name is recorded in the Register as a Lender hereunder for all purposes of this Agreement, including, without limitation, the right to receive payments of principal and interest hereunder, notwithstanding notice to the contrary.  A Registered Loan may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register.  Any assignment or sale of all or part of such Registered Loan may be effected only by registration of such assignment or sale on the Register.

19. <u>Governing Law; Jurisdiction</u>.  (a) This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to the conflict of law principles thereof.

(b)    Any suit, action or proceeding with respect to this Agreement or any Loan may be brought in the Supreme Court of the State of New York, County of New York, or in the United States District Court for the Southern District of New York, and the parties

17

hereto hereby submit to the non-exclusive jurisdiction of such courts for the purpose of any such suit, action or proceeding, and hereby waive for such purpose any other preferential jurisdiction by reason of their present or future domicile or otherwise. Each of the parties hereto hereby irrevocably waives its right to trial by jury in any suit, action or proceeding with respect to this Agreement or any Loan.

      20. <u>Notices</u>.  Unless otherwise specified, any notice or demand hereunder shall be sent, delivered or transmitted to the recipient at the address or relevant telephone number set forth after its name hereinbelow:

      If to Lender, at:

        _____
        _____
        _____
        Attention:
        Telephone: (___) ___-____
        Facsimile: (___) ___-____

      If to Borrower, at:

        _____
        _____
        _____
        Attention:
        Telephone: (___) ___-____
        Facsimile: (___) ___-____

or to such other address or telephone number as each party may designate for itself by like notice.

18

21. <u>Expenses</u>.  Borrower shall pay or, at the election of Lender, shall reimburse Lender for paying, (a) all reasonable costs, fees and expenses (including reasonable attorneys' fees) incurred by Lender after the date of this Agreement in connection with the administration or enforcement of this Agreement and Lender's security interest in the Collateral, and (b) all transfer, stamp, documentary or other similar taxes, assessments or charges levied by any tax or other governmental authority in respect of this Agreement or any Loan.

22. <u>Severability</u>.  If any provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement (and the validity, legality and enforceability of such provision in any other jurisdiction) shall not be affected or impaired thereby.

23. <u>Miscellaneous</u>.  (a) All agreements, representations and warranties contained in this Agreement shall survive the execution and delivery of this Agreement and the making of the Term Loan.

(b)      Except as may be otherwise provided by applicable provisions of the Uniform Commercial Code as in effect in the State of New York, Lender shall be without liability to Borrower for any loss, damage, cost, expense, liability or claim which does not arise from willful misfeasance, bad faith or gross negligence on the part of Lender in taking or omitting to take any action under this Agreement. In no event shall Lender be liable for special, incidental or consequential damages, even if it is aware of the possibility of such damages.

(c)      Lender shall have the continuing and exclusive right to apply any and all payments by or on behalf of Borrower, in such order as it may in its sole discretion from time to time determine, to any portion of the Obligations. All payments by Borrower to Lender pursuant to this Agreement shall be made without set-off, and none of such payments shall be subject to any counterclaim by Borrower. To the extent that Borrower makes a payment or Lender receives any payment for Borrower's benefit, which is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver or any other party under any bankruptcy, reorganization or insolvency law, common law or equitable cause, then, to such extent, the obligation hereunder of Borrower which was to have been satisfied by such payment shall be revived and continue as if such payment had not been received by Lender.

(d)      The headings of sections in this Agreement are for convenience of reference only and shall not affect the meaning or construction of any provision of this Agreement.

(e)      This Agreement may be executed in one or more counterparts and by the parties hereto on separate counterparts, each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.

[Signature Pages Follow]

19

**IN WITNESS WHEREOF,** each of the parties hereto has caused this Agreement to be executed in its name and on its behalf by its representative thereunto duly authorized, all as of the day and year first above written.

MMPI ACQUISITION, LLC


By: _____
        Name:
        Title:


MOUNT KELLETT MASTER FUND II-B, L.P.


By: _____
        Name:
        Title:

# TABLE OF CONTENTS

Page

1.   Definitions ........................................................................................................1

2.   Commitment; Term Loan; Loan Fee . .................................................................5

3.   Payments and Prepayments of Principal . ..........................................................5

4.   Interest, Commitment Fee and Other Charges . ..................................................6

5.   Place and Manner of Payment . ..........................................................................7

6.   Conditions Precedent . ........................................................................................7

7.   Collateral Security and Pledge . ........................................................................8

8.   Use of Proceeds . ..............................................................................................10

9.   Representations And Warranties . .....................................................................10

10.  Borrower's Affirmative Covenants . .................................................................12

11.  Borrower's Negative Covenants . : ...................................................................12

12.  Events of Default . ............................................................................................13

13.  Lender's Rights and Remedies .........................................................................15

14.  Conversion of Term Loan .................................................................................16

15.  Taxes . ..............................................................................................................16

16.  No Waiver . .......................................................................................................17

17.  Entire Agreement; Amendments . .....................................................................17

18.  Successors And Assigns; Participations . ..........................................................17

19.  Governing Law; Jurisdiction . ..........................................................................17

20.  Notices . ............................................................................................................18

21.  Expenses . .........................................................................................................19

22.  Severability . .....................................................................................................19

23.  Miscellaneous ...................................................................................................19

**EXHIBIT B**

THIS SECURED REVOLVING PROMISSORY NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT"), AS AMENDED, OR ANY COMPARABLE STATE SECURITIES LAW, AND MAY NOT BE SOLD, ASSIGNED, PLEDGED OR OTHERWISE TRANSFERRED IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT UNDER THE ACT COVERING THE TRANSFER OR AN EXEMPTION UNDER THE ACT AND IS SUBJECT TO OTHER TRANSFER RESTRICTIONS AS SET FORTH HEREIN.

# SECURED REVOLVING PROMISSORY NOTE AND AGREEMENT

Issuance Date: [_____, 2011]          Maximum Principal Amount: U.S. $15,000,000.00

**FOR VALUE RECEIVED,** MMPI Acquisition, LLC, a Delaware limited liability company, or its registered assigns (collectively, the "**Holder**") hereby promises to advance to, and Meruelo Maddux Properties, Inc., a Delaware corporation (the "**Borrower**"), hereby promises to pay to the Holder, the amount set out above as the Maximum Principal Amount (or so much thereof as may be advanced and be outstanding pursuant to the terms hereof) (the "**Principal**") when due, whether upon the Maturity Date, acceleration or otherwise (in each case in accordance with the terms hereof) and to pay interest ("**Interest**") on any outstanding Principal the applicable Interest Rate (as defined below) from the date set out above as the Issuance Date (the "**Issuance Date**") until the same becomes due and payable, whether upon an Interest Date, the Maturity Date, acceleration or otherwise (in each case in accordance with the terms hereof). Certain capitalized terms used herein are defined in <u>Section 20</u>.

1.    <u>BORROWINGS AND REPAYMENTS</u>.

(a)    <u>Revolver</u>.  The Borrower may from time to time during the term of this Note borrow revolving credit advances (each, an "**Advance**") and the Holder shall make available such Advances, subject to all of the limitations, terms and conditions of this Note and of any document executed in connection with or governing this Note; provided however, that the total outstanding Principal under this Note shall not at any time exceed the Maximum Principal Amount stated above.  Once borrowed, the Borrower may repay Advances in whole or in part, and reborrow, all in accordance with the terms and conditions hereof.

(b)    <u>Advances</u>.  The Borrower shall request each Advance by written notice signed by the Borrower to Holder (each, a "**Notice of Advance**") given no later than 12:00 noon (Pacific time) on the date which is two Business Days prior to the proposed Advance. Each Advance under this Note shall be in an amount of at least $100,000 (or, if the Maximum Principal Amount less the outstanding Principal amount is less than $100,000, such lesser amount). Holder shall not be required to make more than one Advance per calendar month, unless Holder agrees, in its sole discretion, to make Advances more frequently (such agreement to be limited to additional Notice of Advance

unless otherwise agreed by Holder).  Holder shall be fully protected under this Note in relying upon, and shall be entitled to rely upon, (i) any Notice of Advance believed by Holder to be genuine, and (ii) the assumption that the officers making electronic requests or executing and delivering a Notice of Advance on behalf of the Borrower were duly authorized, unless the responsible individual acting thereon for Holder shall have actual knowledge to the contrary.  As an accommodation to Borrower, Holder may permit telephonic, electronic, or facsimile requests for an Advance and electronic or facsimile transmittal of instructions, authorizations, agreements or reports to Holder by the Borrower.

(c)      Application of Payments.  Each payment made on this Note shall be credited, *first*, to any accrued and unpaid Interest and *second*, to the outstanding Principal balance of this Note.

(d)      Register.  The Holder, as a non-fiduciary agent of the Borrower, shall maintain at its offices a register for the recordation of the names and addresses of the Holders and the Obligations outstanding and the principal amount of the loans (and stated interest thereon) (the "Registered Loans") pursuant to the terms hereof from time to time (the "Register").  The entries in the Register shall be conclusive absent manifest error.  The Register shall be made available to the Borrower at reasonable intervals and upon reasonable prior notice.  The Borrower and the Holder shall treat each person whose name is recorded in the Register as a Holder hereunder for all purposes of this Agreement, including, without limitation, the right to receive payments of principal and interest hereunder, notwithstanding notice to the contrary.  A Registered Loan may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register.  Any assignment or sale of all or part of such Registered Loan may be effected only by registration of such assignment or sale on the Register.

2.      MATURITY. On the Maturity Date, the Borrower shall pay to the Holder an amount in cash equal to all outstanding Obligations.  Notwithstanding the foregoing, at the sole discretion of the Holder, the Maturity Date may be extended by additional one-year periods, which shall be set forth in a writing signed by the Borrower and the Holder prior to or on the then current Maturity Date.

3.      INTEREST.  Interest on this Note shall commence accruing on the Issuance Date, shall accrue daily at the Interest Rate on the outstanding Principal amount from time to time, shall be computed on the basis of a 360-day year comprised of twelve (12) thirty (30) day months and shall be payable to the Holder in arrears in cash on the first day of each month and on the Maturity Date (each such date is referred to herein as an "**Interest Date**"). From and after the occurrence and during the continuance of any Event of Default, the Interest Rate then in effect shall automatically be increased by two percent (2%) (the "**Default Rate**"). In the event that such Event of Default is subsequently waived in writing by the Holder, the adjustment referred to in the preceding sentence shall cease to be effective as of the date of such waiver.

4.      CONDITIONS PRECEDENT TO ALL ADVANCES.  The obligation of Holder to make each Advance above shall be subject to the satisfaction of each of the following conditions precedent:

(a)      <u>Loan Documents</u>.  The Borrower and the Securing Subsidiaries shall have entered into and delivered each of the Loan Documents, in form and substance reasonably satisfactory to the Holder.

(b)      <u>Notice of Advance</u>.  The Borrower shall have given its Notice of Advance as provided in <u>Section 1(b)</u>.

(c)      <u>Material Adverse Effect</u>.  On and as of the date of such Advance, there shall have occurred no Material Adverse Effect since the Issuance Date (in the case of the initial Advance) or the date of the most Advance (in the case of any subsequent Advance), as the case may be.

(d)      <u>Representations and Warranties; No Default</u>.  On the date of such Advance, both before and after giving effect thereto and to the application of proceeds therefrom:  (i) the representations and warranties contained in <u>Section 5</u> and in the other Loan Documents shall be true, correct and complete on and as of the date of such Advance as though made on and as of such date; and (ii) no Default or Event of Default shall have occurred and be continuing or shall result from the making of such Loan. The giving of any Notice of Advance and the acceptance by the Borrower of the proceeds of each Advance made on or following the Issuance Date shall each be deemed a certification to Holder that on and as of the date of such Advance such statements in clause (c) and (d) of this <u>Section 4</u> are true.

(e)      <u>Additional Documents</u>.  Holder shall have received, in form and substance satisfactory to it, such additional approvals, opinions, documents and other information as Holder may reasonably request.

(f)      <u>Bankruptcy Court Order</u>.  The United States Bankruptcy Court for the Central District of California, San Fernando Valley Division shall have entered an order, either in the order confirming the Plan or by separate order, approving the entry into the deeds of trust by the Securing Subsidiaries.

Each Notice of Advance delivered hereunder shall be deemed to constitute a representation and warranty by the Borrower that the conditions specified in (b), (c) and (d) of this <u>Section 4</u> have been satisfied on the date of such Notice of Advance and will be satisfied as of the date of such Advance.

5.      <u>REPRESENTATIONS AND WARRANTIES</u>.  The Borrower represents and warrants to the Holder that:

(a)      <u>Organization; Authority</u>.  The Borrower is an entity duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization with the requisite power and authority to enter into and to consummate the transactions contemplated by this Note and the other Loan Documents and otherwise to carry out its obligations hereunder.

(b)      <u>Validity; Enforcement</u>. This Note and the other Loan Documents have been duly and validly authorized, executed and delivered on behalf of the Borrower and

3

constitutes the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their respective terms, except as such enforceability may be limited by general principles of equity or applicable bankruptcy, insolvency, reorganization, moratorium, liquidation and other similar laws relating to, or affecting generally, the enforcement of applicable creditors' rights and remedies.

(c)    No Conflicts.  The execution, delivery and performance by the Borrower of this Note and the other Loan Documents and the consummation by the Borrower of the transactions contemplated hereby and thereby will not (i) result in a violation of the organizational documents of the Borrower or (ii) conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any material agreement, indenture or instrument to which the Borrower is a party, or (iii) result in a material violation of any law, rule, regulation, order, judgment or decree (including federal and state securities laws) applicable to the Borrower.

6.    COVENANTS. Except with the prior written consent of the Holder or unless specifically provided for in the Plan, until all of the Obligations have been repaid in cash or otherwise satisfied in accordance with their terms and the obligation of the Holder to make Advances hereunder shall have terminated:

(a)    Preservation of Existence, Etc.  The Borrower will, and will cause each of its Subsidiaries to, maintain and preserve their existence, their rights to transact business and all other rights, franchises and privileges necessary or desirable in the normal course of their business and operations and the ownership of their properties in all material respects.

(b)    Payment of Taxes, Etc.  The Borrower will, and will cause each of its Subsidiaries to, pay and discharge all material taxes, fees, assessments and governmental charges or levies imposed upon it or upon its properties or assets prior to the date on which penalties attach thereto, except to the extent such taxes, fees, assessments or governmental charges or levies, are being contested in good faith by appropriate proceedings and are adequately reserved against in accordance with GAAP.

(c)    Maintenance of Insurance.  The Borrower will, and will cause each of its Subsidiaries to, carry and maintain in full force and effect, at its own expense and with financially sound and reputable insurance companies, insurance in such amounts, with such deductibles and covering such risks as is customarily carried by companies engaged in the same or similar businesses and owning similar properties in the localities where the Borrower or such Subsidiary operates.

(d)    Keeping of Records and Books of Account.  The Borrower will, and will cause each of its Subsidiaries to, keep adequate records and books of account, in which complete entries will be made in accordance with GAAP, reflecting all financial transactions of the Borrower and its Subsidiaries.

(e)    Inspection Rights.  The Borrower will at any reasonable time and from

time to time permit the Holder or any of its agents or representatives to visit and inspect any of the properties of the Borrower and its Subsidiaries and to examine the records and books of account of the Borrower and its Subsidiaries, and to discuss the business affairs, finances and accounts of the Borrower and any such Subsidiary with any of the officers, employees or accountants of the Borrower or such Subsidiary.

(f)    <u>Compliance with Laws, Etc</u>.  The Borrower will, and will cause its Subsidiaries to, comply in all material respects with the requirements of all applicable laws, rules, regulations and orders of any governmental agency or authority, including all Environmental Laws and ERISA.

(g)    <u>Maintenance of Properties, Etc</u>.  The Borrower will, and will cause each of the Securing Subsidiaries to, maintain and preserve all of the Collateral Properties in good working order and condition in accordance with the general practice of other corporations of similar character and size, ordinary wear and tear excepted.

(h)    <u>Further Assurances and Additional Acts</u>.  The Borrower will execute, acknowledge, deliver, file, notarize and register at its own expense all such further agreements, instruments, certificates, documents and assurances and perform such acts as Holder shall deem necessary or appropriate to effectuate the purposes of this Note and the other Loan Documents, and promptly provide Holder with evidence of the foregoing satisfactory in form and substance to the Holder.

7.    <u>RIGHTS UPON EVENT OF DEFAULT</u>.

(a)    <u>Event of Default</u>.  Each of the following events shall constitute an "**Event of Default**" unless specifically contemplated by and in accordance with the Plan:

(i)    the Borrower's failure to pay to the Holder any amount of the Obligations or other amounts when and as due under this Note, the other Loan Documents or any other agreement, document, certificate or other instrument delivered in connection with the transactions contemplated hereby and thereby, except, in the case of a failure to pay Interest (including Interest at the Default Rate) when and as due, in which case only if such failure remains uncured for a period of at least five (5) days;

(ii)    the occurrence of any default under (other than any such default which has been validly waived and after the expiration of any available notice and cure period), redemption of, or acceleration prior to, maturity of any Indebtedness (as defined below) of the Borrower or any of its Subsidiaries, either individually or in the aggregate, exceeding $100,000;

(iii)    other than in connection with the bankruptcy proceedings existing on the Issuance Date, the Borrower or any of its Subsidiaries (A) generally fails to pay, or admits in writing its inability to pay, its debts as they become due, subject to applicable grace periods, if any, whether at stated maturity or otherwise; (B) voluntarily ceases to conduct its business in the ordinary course; (E) commences any Insolvency Proceeding with respect to itself; or (F) authorizes by board of director

consent or other similar action any of the actions described in the foregoing clauses (B) or (C); or

(iv)    (A) Any involuntary Insolvency Proceeding is commenced or filed against the Borrower or any of its Subsidiaries, and any such proceeding or petition shall not be dismissed, within sixty (60) days after commencement or filing; (B) the Borrower or any of its Subsidiaries admits the material allegations of a petition against it in any Insolvency Proceeding, or an order for relief (or similar order under non-U.S. law) is ordered in any Insolvency Proceeding; or (C) the Borrower or any of the its Subsidiaries acquiesces in the appointment of a receiver, trustee, custodian, conservator, liquidator, mortgagee in possession (or agent therefor), or other similar person for itself or a substantial portion of its property or business;

(v)    any representation or warranty in this Note, the other Loan Documents or in any other agreement, instrument, report, financial statement or certificate delivered in connection herewith, shall be untrue or incorrect in any material respect as of the date when made or deemed made;

(vi)    other than as specifically set forth in another clause of this Section 7(a), the Borrower shall have failed to perform, keep or observe any of the covenants contained in this Note or in the other Loan Documents, and any such failure remains uncured for at least fifteen (15) days from the earlier of (A) notice by the Holder to the Borrower and (B) the Borrower becoming aware of such failure;

(vii)    a final judgment or judgments for the payment of money in excess of $100,000 in the aggregate (less any amounts covered by third-party insurance to the extent such insurance provider has acknowledged coverage in writing) shall be rendered against the Borrower or any of its Subsidiaries, and there shall have been a period of thirty (30) consecutive days during which such judgment or judgments continue unsatisfied or during which a stay of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect;

(viii)    any provision of this Note or any other Loan Document shall at any time for any reason (other than pursuant to the express terms thereof) cease to be valid and binding on or enforceable against the parties thereto and the effect thereof materially and adversely affects any of the Holder's rights under this Note, or the validity or enforceability thereof shall be contested by the Borrower or any of its Subsidiaries, or a proceeding shall be commenced by the Borrower or any of its Subsidiaries or any governmental authority having jurisdiction over any of them, seeking to establish the invalidity or unenforceability thereof, or the Borrower shall deny in writing that it has any liability or obligation purported to be created under this Note or the other Loan Documents; or

(ix)    the consummation of a Fundamental Transaction.

(b)    Notice of an Event of Default; Redemption Right. Upon the occurrence of an Event of Default with respect to this Note, the Borrower shall within three (3)

Business Days deliver written notice thereof via facsimile (or other electronic means) and overnight courier (with next day delivery specified) (an "**Event of Default Notice**") to the Holder. At any time after the earlier of the Holder's receipt of an Event of Default Notice and the Holder becoming aware of an Event of Default, the Holder may require the Borrower to immediately repay all of this Note by delivering written notice thereof (the "**Event of Default Repayment Notice**") to the Borrower for an amount equal to all of the outstanding Obligations.

8.   TAXES.

(a)  Any and all payments by Borrower hereunder or under any other Loan Document shall be made free and clear of and without deduction for any and all present or future taxes, levies, imposts, deductions, charges or withholdings, and all interest, penalties, additions to tax or other liabilities with respect thereto, excluding taxes imposed on the net income of any Holder (or any transferee or assignee thereof (each, a "Transferee")) by the jurisdiction in which such Holder or Transferee is organized or has its principal lending office (all such non-excluded taxes, levies, imposts, deductions, charges withholdings and liabilities, collectively or individually, "Taxes").  If Borrower shall be required to deduct any Taxes from or in respect of any sum payable hereunder to any Holder or any Transferee, (i) the sum payable shall be increased by the amount (an "additional amount") necessary so that after making all required deductions (including deductions applicable to additional sums payable under this Section 8) such Holder or such Transferee shall receive an amount equal to the sum it would have received had no such deductions been made, (ii) such Borrower shall make such deductions, (iii) such Borrower shall pay the full amount deducted to the relevant governmental authority in accordance with applicable law and (iv) such Borrower shall send such Holder or such Transferee an official receipt (or, if an official receipt is not available, such other evidence of payment as shall be satisfactory to such Holder or such Transferee) evidencing payment of the amount so deducted or withheld.

(b)  In addition, Borrower agrees to pay to the relevant governmental authority in accordance with applicable law any present or future stamp or documentary taxes or any other excise or property taxes, charges or similar levies that arise from any payment made hereunder or from the execution, delivery or registration of, or otherwise with respect to, this Agreement or any other Loan Document ("Other Taxes").  Each Borrower shall deliver to each Holder and each Transferee an official receipt (or, if an official receipt is not available, such other evidence of payment as shall be satisfactory to such Holder or such Transferee) in respect of any Other Taxes payable hereunder promptly after payment of such Other Taxes.

9.   AMENDING THE TERMS OF THIS NOTE. The prior written consent of the Holder shall be required for any change or amendment to this Note.

10.   TRANSFER. This Note may be offered, sold, assigned or transferred by the Holder without the consent of the Borrower, subject to applicable securities laws.

11.   REISSUANCE OF THIS NOTE.

(a)   Transfer. If this Note is to be transferred, the Holder shall surrender this

7

Note to the Borrower, whereupon the Borrower will forthwith issue and deliver upon the order of the Holder a new Note, registered as the Holder may request, representing the outstanding Principal being transferred by the Holder and, if less than the entire outstanding Principal is being transferred, a new Note to the Holder representing the outstanding Principal not being transferred. The Holder and any assignee, by acceptance of this Note, acknowledge and agree that, by reason of the provisions of <u>Section 1(a)</u> following repayment of any portion of this Note, the outstanding Principal represented by this Note may be less than the Principal stated on the face of this Note.

(b)     <u>Lost, Stolen or Mutilated Note</u>. Upon receipt by the Borrower of evidence reasonably satisfactory to the Borrower of the loss, theft, destruction or mutilation of this Note (as to which a written certification and the indemnification contemplated below shall suffice as such evidence), and, in the case of loss, theft or destruction, of any indemnification undertaking by the Holder to the Borrower in customary and reasonable form and, in the case of mutilation, upon surrender and cancellation of this Note, the Borrower shall execute and deliver to the Holder a new Note representing the outstanding Principal.

(c)     <u>Note Exchangeable for Different Denominations</u>. This Note is exchangeable, upon the surrender hereof by the Holder at the principal office of the Borrower, for a new Note or Notes (in principal amounts of at least $250,000) representing in the aggregate the outstanding Principal of this Note, and each such new Note will represent such portion of such outstanding Principal as is designated by the Holder at the time of such surrender.

(d)     <u>Issuance of New Notes</u>. Whenever the Borrower is required to issue a new Note pursuant to the terms of this Note, such new Note (i) shall be of like tenor with this Note, (ii) shall represent, as indicated on the face of such new Note, the Principal remaining outstanding (or in the case of a new Note being issued pursuant to <u>Section 11(a)</u> or <u>Section 11(c)</u>, the Principal designated by the Holder which, when added to the principal represented by the other new Notes issued in connection with such issuance, does not exceed the Principal remaining outstanding under this Note immediately prior to such issuance of new Notes), (iii) shall have an issuance date, as indicated on the face of such new Note, which is the same as the Issuance Date of this Note, (iv) shall have the same rights and conditions as this Note, and (v) shall represent accrued and unpaid Interest (whether at the Default Rate or otherwise), from the Issuance Date.

12.     <u>REMEDIES, CHARACTERIZATIONS, OTHER OBLIGATIONS, BREACHES AND INJUNCTIVE RELIEF</u>. The remedies provided in this Note and in the other Loan Documents shall be cumulative and in addition to all other remedies available under this Note or the other Loan Documents at law or in equity (including a decree of specific performance and/or other injunctive relief), and nothing herein shall limit the Holder's right to pursue actual and consequential damages for any failure by the Borrower to comply with the terms of this Note or the other Loan Documents.  The Borrower covenants to the Holder that there shall be no characterization concerning this instrument other than as expressly provided herein. Amounts set forth or provided for herein with respect to payments and the like (and the computation thereof) shall be the amounts to be received by the Holder and shall not, except as expressly provided

8

herein, be subject to any other obligation of the Borrower (or the performance thereof). The Borrower acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder and that the remedy at law for any such breach may be inadequate. The Borrower therefore agrees that, in the event of any such breach or threatened breach, the Holder shall be entitled, in addition to all other available remedies, to an injunction restraining any breach, without the necessity of showing economic loss and without any bond or other security being required. The Borrower shall provide all information and documentation to the Holder that is requested by the Holder to enable the Holder to confirm the Borrower's compliance with the terms and conditions of this Note.

13. <u>FEES; PAYMENT OF COLLECTION, ENFORCEMENT AND OTHER COSTS</u>.  The Borrower shall reimburse Holder or its designee(s) for all reasonable out-of-pocket costs and expenses incurred by it or its affiliates after the Issuance Date and in connection with the transactions contemplated by this Note and the other Loan Documents (including, without limitation, all reasonable legal fees and disbursements in connection therewith, structuring, documentation and implementation of the transactions contemplated by the Note and the other Loan Documents and due diligence and regulatory filings in connection therewith), which reimbursable amounts may be paid by Holder by making an Advance on behalf of the Borrower. If (a) this Note is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding or the Holder otherwise takes action to collect amounts due under this Note or to enforce the provisions of this Note or the other Loan Documents or (b) there occurs any bankruptcy, reorganization, receivership of the Borrower or other proceedings affecting any Borrower creditors' rights and involving a claim under this Note, then the Borrower shall pay the out-of-pocket costs incurred by the Holder for such collection, enforcement or action or in connection with such bankruptcy, reorganization, receivership or other proceeding, including, without limitation, reasonable attorneys' fees and disbursements.

14. <u>CONSTRUCTION; HEADINGS</u>.  This Note shall be deemed to be jointly drafted by the Borrower and the Holder and shall not be construed against any Person as the drafter hereof. The headings of this Note are for convenience of reference and shall not form part of, or affect the interpretation of, this Note.

15. <u>FAILURE OR INDULGENCE NOT WAIVER</u>. No failure or delay on the part of the Holder in the exercise of any power, right or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such power, right or privilege preclude other or further exercise thereof or of any other right, power or privilege. No waiver shall be effective unless it is in writing and signed by an authorized representative of the waiving party.

16. <u>NOTICES; PAYMENTS</u>.

(a) <u>Notices</u>. The Borrower shall provide the Holder with prompt written notice of all actions taken pursuant to this Note, including in reasonable detail a description of such action and the reason therefor.

Borrower:    [_____]
             [_____]
             [_____]

9

[_____]
Attention: [_____]

Holder:      [_____]
             [_____]
             [_____]
             [_____]
             [_____]
             Attention:  [_____]

with a copy (for informational purposes only) to:

[_____]
[_____]
[_____]
[_____]
Attention:  [_____]

or to such other address and/or facsimile number and/or to the attention of such other Person as the recipient party has specified by written notice given to each other party five (5) days prior to the effectiveness of such change. Written confirmation of receipt (i) given by the recipient of such notice, consent, waiver or other communication, (ii) mechanically or electronically generated by the sender's facsimile machine containing the time, date, recipient facsimile number and an image of the first page of such transmission or (iii) provided by an overnight courier service shall be rebuttable evidence of personal service, receipt by facsimile or receipt from an overnight courier service in accordance with clause (i), (ii) or (iii) above, respectively.

(b)      Currency. Except as otherwise expressly indicated herein, all dollar amounts referred to in this Note are in United States Dollars ("**U.S. Dollars**"). All amounts owing under this Note shall be paid in U.S. Dollars.

(c)      Payments. Whenever any payment of cash is to be made by the Borrower to any Person pursuant to this Note, unless otherwise expressly set forth herein, such payment shall be made via wire transfer of immediately available funds to the account previously provided to the Borrower in writing by the Holder hereunder; provided, that such Person shall have provided the Borrower with prior written notice setting out such request and the Holder's wire transfer instructions. Whenever any amount expressed to be due and payable in cash by the terms of this Note is due on any day which is not a Business Day, the same shall instead be due on the next succeeding day which is a Business Day and, in the case of any Interest Date which is not the date on which this Note is paid in full, the extension of the due date thereof shall not be taken into account for purposes of determining the amount of Interest due on such date.

17.      CANCELLATION. After all Obligations and other amounts at any time owed on

this Note have been paid in full and Holder's obligation to make Advances hereunder shall have terminated, this Note shall automatically be deemed canceled, shall be surrendered to the Borrower for cancellation and shall not be reissued.

18.   WAIVER OF NOTICE.  To the extent permitted by law, the Borrower hereby irrevocably waive demand, notice, presentment, protest and all other demands and notices in connection with the delivery, acceptance, performance, default or enforcement of this Note.

19.   GOVERNING LAW; VENUE; JUDICIAL REFERENCE.

(a)   THIS NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF CALIFORNIA. The Borrower hereby (a) submits to the exclusive jurisdiction of the courts of the Central District of Los Angeles County of the State of California or, if jurisdiction can be obtained, in any federal court in the Los Angeles Division of the Central District of California for the purpose of any action or proceeding arising out of or relating to the Note or the other Loan Documents, such venue which may be determined in the sole discretion of the Holder, (b) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (c) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts in and of the State of California, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum, and (d) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. In the event that any provision of this Note is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law.  Any such provision which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of this Note. Nothing contained herein shall be deemed or operate to preclude the Holder from bringing suit or taking other legal action against the Borrower in any other jurisdiction to collect on the Borrower's obligations to the Holder, to realize on any collateral or any other security for such obligations, or to enforce a judgment or other court ruling in favor of the Holder.

(b)   BORROWER AND HOLDER EACH HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).  EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT

AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(c)    IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) (EACH, A "CLAIM") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

(i)    WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SECTION 19(c)(ii) BELOW, ANY CLAIM WILL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638. EXCEPT AS OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, VENUE FOR THE REFERENCE PROCEEDING WILL BE IN THE STATE OR FEDERAL COURT IN THE COUNTY OR DISTRICT WHERE VENUE IS OTHERWISE APPROPRIATE UNDER APPLICABLE LAW.

(ii)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (1) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (2) EXERCISE OF SELF-HELP REMEDIES (INCLUDING, WITHOUT LIMITATION, SET-OFF), (3) APPOINTMENT OF A RECEIVER AND (4) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING, WITHOUT LIMITATION, WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS AGREEMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (4) ABOVE AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THIS AGREEMENT.

(iii)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE.  IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN (10) DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B).

(iv)   ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(v)   THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA. THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE STATE AND FEDERAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING, WITHOUT LIMITATION, MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

(vi)   THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY.

20.   <u>CERTAIN DEFINITIONS</u>.  For purposes of this Note, the following terms shall have the following meanings:

(a)   "**Acquisition**" means any acquisition by the Borrower or any of its Subsidiaries of (i) a majority of the outstanding equity interests in, or all or substantially all of the assets of, or the assets constituting a division or a line of business of, a Person or (ii) any asset of another Person constituting a business unit of such other Person.

(b)   "**Business Day**" means any day other than Saturday, Sunday or other day on which commercial banks in Los Angeles, California are authorized or required by law to remain closed.

(c)   "**Collateral Properties**" means certain of real property owned by the Securing Subsidiaries located at (i) 1211 East Washington Blvd, (ii) W. Ave 26 and (iii) 129 W. College Street in Los Angeles, California.

(d)   "**Default**" means any event or condition that constitutes an Event of

Default or that upon notice, lapse of time or both would, unless cured or waived, become an Event of Default.

(e)    "**Fundamental Transaction**" means that the Borrower or any of its Subsidiaries shall, other than in connection with any transactions specifically contemplated by the Plan, directly or indirectly, in one or more related transactions, (A) consolidate or merge with or into (whether or not the Borrower or any of its Subsidiaries is the surviving corporation) any other Person (excluding a merger or consolidation of a wholly-owned Subsidiary of the Borrower into the Borrower or another wholly-owned Subsidiary of the Borrower only if such merger or consolidation of such wholly-owned Subsidiary and the Borrower or such other wholly-owned Subsidiary (as applicable) does not involve any other Person), or (B) sell, lease, license, assign, transfer, convey or otherwise dispose of all or substantially all of its respective properties or assets to any other Person, or (C) allow any other Person to make a purchase, tender or exchange offer that is accepted by the holders of more than 50% of the outstanding shares of voting stock of the Borrower (not including any shares of voting stock of the Borrower held by the Person or Persons making or party to, or associated or affiliated with the Persons making or party to, such purchase, tender or exchange offer), or (D) consummate a stock or share purchase agreement or other business combination (including, without limitation, a reorganization, recapitalization, spin-off or scheme of arrangement) with any other Person whereby such other Person acquires more than 50% of the outstanding shares of voting stock of the Borrower (not including any shares of voting stock of the Borrower held by the other Person or other Persons making or party to, or associated or affiliated with the other Persons making or party to, such stock or share purchase agreement or other business combination), or (E) reorganize, recapitalize or reclassify the common stock of the Borrower, unless, in the case of (A) – (E), in accordance with the Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation First Modified Fourth Amended Chapter 11 Plan of Reorganization Dated October 14, 2010.

(f)    "**GAAP**" means generally accepted accounting principles in the United States of America.

(g)    "**Indebtedness**" means, with respect to a particular Person, without duplication (i) all indebtedness for borrowed money, (ii) all obligations issued, undertaken or assumed as the deferred purchase price of property or services (including, without limitation, "capital leases" in accordance with generally accepted accounting principles) (other than trade payables entered into in the ordinary course of business), (iii) all reimbursement or payment obligations with respect to letters of credit, surety bonds and other similar instruments, (iv) all obligations evidenced by notes, bonds, debentures or similar instruments, including obligations so evidenced incurred in connection with the acquisition of property, assets or businesses, (v) all indebtedness created or arising under any conditional sale or other title retention agreement, or incurred as financing, in either case with respect to any property or assets acquired with the proceeds of such indebtedness (even though the rights and remedies of the seller or bank under such agreement in the event of default are limited to repossession or sale of such property), (vi) all monetary obligations under any leasing or similar arrangement which, in connection with generally accepted accounting principles, consistently applied for the

14

periods covered thereby, is classified as a capital lease, (vii) all indebtedness referred to in clauses (i) through (vi) above secured by (or for which the holder of such Indebtedness has an existing right, contingent or otherwise, to be secured by) any mortgage, lien, pledge, charge, security interest or other encumbrance upon or in any property or assets (including accounts and contract rights) owned by any Person, even though the Person which owns such assets or property has not assumed or become liable for the payment of such indebtedness, and (viii) all contingent obligations in respect of indebtedness or obligations of others of the kinds referred to in clauses (i) through (vii) above.

(h)    "**Interest Rate**" means 5.25% per annum, as may be adjusted from time to time in accordance with <u>Section 3</u>.

(i)    "**Insolvency Proceeding**" means (a) any case, action or proceeding before any court or other governmental authority relating to bankruptcy, reorganization, insolvency, liquidation, receivership, dissolution, winding-up or relief of debtors, or (b) any general assignment for the benefit of creditors, composition, marshaling of assets for creditors, or other, similar arrangement in respect of its creditors generally or any substantial portion of its creditors; in each case in (a) and (b) above, undertaken under U.S. Federal, state or foreign law, including the Bankruptcy Code.

(j)    "**Loan Documents**" means this Note, the first priority deeds of trust, assignment of rents, security agreement and fixture filings to be entered into by each of the Securing Subsidiaries to secure Holder's interest in the Collateral Properties and all other certificates, documents, agreements and instruments delivered to Holder under or in connection with this Note.

(k)    "**Material Adverse Effect**" means any event, matter, condition or circumstance which (i) has or would reasonably be expected to have a material adverse effect on the business, properties, results of operations or condition (financial or otherwise) of the Borrower and its Subsidiaries taken as a whole; (ii) would materially impair the ability of the Borrower or any other Person to perform or observe its obligations under or in respect of this Note or the other Loan Documents; or (iii) adversely affects the legality, validity, binding effect or enforceability of this Note or the other Loan Documents or the perfection or priority of any lien granted to the Holder under the Loan Documents.

(l)    "**Maturity Date**" shall mean the four (4) year anniversary of the Issuance Date, unless extended in accordance with <u>Section 2</u>, in which case the Maturity Date shall be determined in accordance with the terms thereof.

(m)    "**Note**" shall mean this senior secured revolving promissory note as amended, modified, restated, refinanced or replaced from time to time.

(n)    "**Obligations**" means the indebtedness, liabilities and other obligations of the Borrower to the Holder under or in connection with this Note and the other Loan Documents, including all Advances, all Interest accrued thereon (whether at the Default Rate or otherwise), all fees due under this Note and all other amounts payable by the

Borrower to the Holder thereunder or in connection therewith, whether now or hereafter existing or arising, and whether due or to become due, absolute or contingent, liquidated or unliquidated, determined or undetermined.

(o)    "**Person**" means an individual, a limited liability company, a partnership, a joint venture, a corporation, a trust, an unincorporated organization, any other entity or a government or any department or agency thereof.

(p)    "**Plan**" means the Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's First Modified Fourth Amended Chapter 11 Plan of Reorganization Dated October 14, 2010.

(q)    "**Securing Subsidiaries**" means the following Subsidiaries of Borrower: (i) Meruelo Chinatown, LLC, (ii) Merco Group – 1211 E. Washington Boulevard, LLC and (iii) Meruelo Maddux – 230 W. Avenue 26, LLC.

(r)    "**Subsidiary**" with respect to any Person, any entity more than 50% of whose voting securities or equity interests is owned by such Person (including indirect ownership by such Person through other entities in which such Person directly or indirectly owns more than 50% of the voting securities or equity interests).

21.    <u>GAAP; ACCOUNTING TERMS</u>.    Except as otherwise expressly provided herein, all terms of an accounting or financial nature shall be construed in accordance with GAAP, as in effect from time to time; <u>provided</u>, <u>that</u> if the Borrower notifies the Holder that the Borrower requests an amendment to any provision (including any definition hereof) to eliminate the effect of any change occurring after the date hereof in GAAP or in the application thereof in the operation of such provision, then such provision shall be interpreted on the basis of GAAP as in effect and applied immediately before such change shall have become effective until such request has been withdrawn or such provision amended in accordance herewith (it being understood that the Borrower and the Holder will negotiate in good faith to amend such provisions to address any changes in GAAP).

22.    <u>MAXIMUM PAYMENTS</u>. Nothing contained in this Note shall, or shall be deemed to, establish or require the payment of a rate of interest or other charges in excess of the maximum permitted by applicable law. In the event that the rate of interest required to be paid or other charges under this Note exceeds the maximum permitted by such law, any payments in excess of such maximum shall be credited against amounts owed by the Borrower to the Holder and thus refunded to the Borrower.

*[signature page follows]*

IN WITNESS WHEREOF, the Borrower has caused this Note to be duly executed as of the Issuance Date set out above.

**MERUELO MADDUX PROPERTIES, INC.**

By: _____

    Name:

    Title:

AGREED TO AND ACCEPTED BY:

**MMPI ACQUISITION, LLC**

By:   **GAC REAL ESTATE PARTNERS, LLC,**

       its Managing Member

    By: _____

    Name:

    Its:

17

**EXHIBIT C**

Recording requested by, and
when recorded return to:

Paul, Hastings, Janfosky & Walker LLP
515 S. Flower Street
25th Floor
Los Angeles, California 90071
Attention:  Cynthia Cohen, Esq.

---

**DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE FILING
(CALIFORNIA)**

**ATTENTION COUNTY RECORDER:  THIS INSTRUMENT IS INTENDED TO BE
EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING
PURSUANT TO SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.
PORTIONS OF THE GOODS COMPRISING A PART OF THE MORTGAGED
PROPERTY ARE OR ARE TO BECOME FIXTURES RELATED TO THE LAND
DESCRIBED IN EXHIBIT A HERETO.  THIS INSTRUMENT IS TO BE FILED FOR
RECORD IN THE RECORDS OF THE COUNTY WHERE DEEDS OF TRUST ON
REAL PROPERTY ARE RECORDED AND SHOULD BE INDEXED AS BOTH A DEED
OF TRUST AND AS A FINANCING STATEMENT COVERING FIXTURES.  THE
ADDRESSES OF BORROWER (DEBTOR) AND BENEFICIARY (SECURED PARTY)
ARE SPECIFIED IN THE FIRST PARAGRAPH ON PAGE 1 OF THIS INSTRUMENT.**

# DEED OF TRUST, ASSIGNMENT
# OF LEASES AND RENTS,
# SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Instrument**" or "**Deed of Trust**"), dated as of [_____], is executed by MERCO GROUP - 1211 E. WASHINGTON BOULEVARD, LLC, a Delaware limited liability company ("**Trustor**"), as trustor, whose address is [_____], in favor of FIRST AMERICAN TITLE INSURANCE COMPANY ("**Trustee**"), as trustee, whose address is 520 North Central Avenue, Glendale, California 91203, for the benefit of MMPI ACQUISITION, LLC, a Delaware limited liability company, or its registered assigns ("**Beneficiary**"), as beneficiary, whose address is [_____], (collectively, the "**Parties**").  Each capitalized term used herein and not otherwise defined herein shall have the meaning given such term in the "**Note**" (as defined below).

The Loan (as defined below) is made and the Indebtedness is evidenced by the Note in the maximum principal amount of Fifteen Million and No/100, ($15,000,000), maturing as of the Maturity Date (as defined in the Note) and secured by this Instrument.

## RECITALS.

**WHEREAS,** Beneficiary has agreed to advance to Meruelo Maddux Properties, Inc., a Delaware corporation ("**Borrower**") a loan in the maximum principal amount of $15,000,000, or so much thereof as may be advanced and be outstanding pursuant to the terms of the Note (the "**Loan**").

**WHEREAS**, Trustor is a wholly owned Subsidiary (as defined in the Note) of Borrower and is lawfully seized of the Property and has the right, power and authority to grant, convey and assign the Property, and that the Property is unencumbered except for such encumbrances as shall not render title to the Property unmarketable (the "**Permitted Encumbrances**").

**WHEREAS,** Borrower is a parent to several Subsidiaries and has utilized and, under the Plan (as defined in the Note), will continue to utilize surplus funds from all of its Subsidiaries for the benefit of other Subsidiaries and the aggregate operations of Borrower and its Subsidiaries as Borrower deems necessary.

TO SECURE TO BENEFICIARY and its successors and assigns the repayment of the Indebtedness evidenced by the Note executed by Borrower and maturing on the Maturity Date (as defined in the Note), and all renewals, extensions and modifications of the Indebtedness, including, without limitation, the payment of all sums advanced by or on behalf of Beneficiary to protect the security of this Instrument and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

This Instrument is also a financing statement and a fixture filing under the Uniform Commercial Code of the Property Jurisdiction and the information set forth on Exhibit B is included for that purpose.

# ARTICLE 1.

## GRANT OF SECURITY

1.1     <u>Grant of Security</u>.  FOR GOOD AND VALUABLE CONSIDERATION, including the indebtedness herein recited and the trust herein created, the receipt and adequacy of which are hereby acknowledged, Trustor hereby irrevocably grants, transfers and assigns to Trustee, IN TRUST, WITH POWER OF SALE, AND RIGHT OF ENTRY AND POSSESSION, for the benefit and security of Beneficiary, all rights, titles, interests, estates, powers and privileges that Trustor now has or may hereafter acquire in or to the following property and interests therein (collectively, the "**Property**"):

(a)     Trustor's undivided interest in that certain real property ("**Land**") in the County of Los Angeles, State of California, more particularly described on <u>Exhibit A</u> attached hereto;

(b)     All buildings and other improvements now or hereafter located on the Land, including, but not limited to, the Fixtures (as defined below) and any and all other equipment, machinery, appliances and other articles attached to such buildings and other improvements (collectively, the "**Improvements**");

(c)     All fixtures (collectively, the "**Fixtures**") now or hereafter located on, attached to, installed in or used in connection with the Land and the Improvements, including without limitation all partitions, generators, screens, awnings, boilers, furnaces, pipes, plumbing, elevators, cleaning, call and sprinkler systems, fire extinguishing machinery and equipment, water tanks, heating, ventilating, air conditioning and air cooling machinery and equipment, gas and electric machinery and equipment, and other equipment, machinery and appliances and other fixtures of every kind and nature;

(d)     All present and future goods, equipment and inventory, as those terms are defined in the California Commercial Code, and all other present and future personal property of any kind or nature whatsoever, now or hereafter located at, upon or about the Land and/or Improvements, or used or to be used in connection with or relating or arising with respect to the Land and/or Improvements, or used or to be used in connection with or relating or arising with respect to the Land and/or Improvements, the use thereof or any improvements thereto, including without limitation all present and future furniture, furnishings, fixtures, goods, machinery, plumbing and plumbing material and supplies, concrete, lumber, hardware, electrical wiring and electrical material and supplies, heating and air conditioning material and supplies, roofing material and supplies, window material and supplies, doors, paint, drywall, insulation, cabinets, ceramic material and supplies, flooring, carpeting, appliances, fencing, landscaping and all other materials, supplies and property of every kind and nature;

(e)     All present and future accounts, general intangibles, chattel paper, deposit accounts, investment property, instruments and documents as those terms are defined in the California Uniform Commercial Code, now or hereafter relating or arising with respect to the Land and/or Improvements and/or the use thereof or any

improvements thereto, including without limitation:  (i) all rights to the payment of money, including escrow proceeds arising out of the sale or other disposition of all or any portion of the Land and/or Improvements; (ii)  any other deposit accounts and other accounts and funds created under or pursuant to the Loan Documents, all amounts on deposit therein, and all interest and other earnings thereon; (iii) all plans, specifications, drawings and other documents and materials relating to the development of the Land and/or Improvements and/or any construction thereon; (iv) all use permits, occupancy permits, construction and building permits, and all other permits and approvals required by any governmental or quasi-governmental authority in connection with the development, construction, use, occupancy or operation of the Land and/or Improvements; (v) any and all agreements relating to the development, use, occupancy and/or operation of the Land and/or Improvements, including without limitation construction, engineering, architectural, service, property management, landscaping, gardening, consulting and other contracts of every nature (to the extent the same are assignable); (vi) all lease or rental agreements; (vii) all names under which the Land and/or Improvements are known and all rights to carry on business under any such names or any variant thereof; (viii) all trademarks relating to the Land and/or Improvements and/or the development, construction, use, occupancy or operation thereof; (ix) goodwill relating to the Land and/or Improvements and/or the development, construction, use, occupancy or operation thereof; (x) all insurance proceeds and condemnation awards arising out of or incidental to the ownership, development, construction, use, occupancy or operation of the Land and/or Improvements; (xi) all reserves, deferred payments, deposits, refunds, cost savings, bonds, insurance policies and payments of any kind relating to the Land and/or Improvements; (xii) all water stock, if any, relating to any Land and/or Improvements; (xiii) all supplements, modifications and amendments to the foregoing and all present and future accessions, additions, attachments, replacements and substitutions of or to any or all of the foregoing; and (xiv) all cash and noncash proceeds and products of any or all of the foregoing, including without limitation all monies, deposit accounts, insurance proceeds and other tangible or intangible property received upon a sale or other disposition of any of the foregoing, whether voluntary or involuntary;

(f)     All rights, rights-of-way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances now owned or hereafter acquired by Trustor and used in connection with the Land and the Improvements or as a means of access to either or both;

(g)     Any land now or hereafter lying within the right-of-way of any street adjoining the Land, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Land and Improvements;

(h)     All oil, gas and other mineral rights now or hereafter in or relating to the Land, and all royalty, fee and other rights of Trustor in or relating thereto;

(i)     All water, water rights and riparian rights (including, without limitation, shares of stock evidencing the same) now or hereafter in or relating to the Land;

(j)      All leases and subleases relating to all or any part of the Land and the Improvements or any interest therein, now existing or hereafter entered into, including without limitation all deposits, advance rentals and other payments of a similar nature but not including the Rents, as defined and separately assigned in Article 4;

(k)      All options to purchase or lease all or any part of the Land or Improvements or any interest therein now existing or hereafter acquired (and any greater estate in the Land or Improvements now owned or hereafter acquired pursuant thereto);

(l)      All other estates, easements, licenses, interests, rights, titles, claims or demands, both in law and in equity, which Trustor now has or may hereafter acquire in the Land and the Improvements, including, without limitation, (1) any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of all or any part of the Property, including without limitation any award resulting from a change of grade of streets and any award for severance damages, and (2) any and all proceeds of any insurance covering the Property (whether or not Trustor is required to maintain such insurance pursuant to this Instrument).

ARTICLE 2.

SECURED OBLIGATIONS

2.1   Secured Obligations.  This Deed of Trust, and the lien created hereby, is made for the purpose of securing the following obligations (collectively, the "**Secured Obligations**"):

(a)      the payment and performance of all indebtedness and other obligations of Borrower to Beneficiary contained in that certain Secured Revolving Promissory Note and Agreement, dated as of [_____] (as may be amended, restated and/or supplemented from time to time, the "**Note**"), made by Borrower to Beneficiary, in the maximum principal amount of $15,000,000;

(b)      the payment and performance of all indebtedness and other obligations of Borrower or Trustor to Beneficiary contained in this Deed of Trust and the other Loan Documents;

(c)      the payment and performance of all indebtedness and other obligations of Borrower or Trustor, when such indebtedness and obligations are contained in a document which recites that the obligations thereunder are secured by this Deed of Trust;

(d)      the payment by Borrower or Trustor of all amounts advanced by or on behalf of Beneficiary or Trustee to improve, protect or preserve the Property or the security of this Deed of Trust, with interest thereon as provided herein; and

(e)      the payment and performance of all amendments, modifications, extensions, renewals and replacements of or for any of the foregoing (including, without limitation, (i) amendments or modifications of the required principal payment dates or

interest payment dates, or both, as the case may be, accelerating or deferring such interest payment dates in whole or in part, or (ii) amendments, modifications, extensions or renewals at a different rate of interest), whether or not any such amendment, modification, extension, renewal or replacement is evidenced by a new or additional promissory note or other document.

ARTICLE 3.

COVENANTS

3.1     Payment of Secured Obligations.  Borrower shall pay the Secured Obligations when due.

3.2     Maintenance, Repair, Alterations.  Trustor shall maintain and preserve the Property in good condition and repair; Trustor, except upon the prior written consent of Beneficiary, shall not remove, demolish or materially alter any of the Improvements, other than (i) as required to construct the improvements described in the Plans , (ii) to make repairs in the ordinary course of business that serve to preserve or increase the value of the Property, or (iii) as required by law; Trustor shall complete promptly and in a good and workmanlike manner any Improvement which may be now or hereafter constructed on the Land, shall promptly restore in like manner any Improvement which may be materially damaged or destroyed thereon from any cause whatsoever, and shall pay when due all claims for labor performed and materials furnished therefor; Trustor shall comply in all material respects with all applicable laws, rules, regulations, orders and decrees, and all easements, rights of way, covenants, conditions, restrictions and other title limitations, now or hereafter affecting the Property, or any part thereof, or the conduct or operation of Trustor's business; Trustor shall not commit, suffer or permit any act to be done in, upon or to all or any part of the Property in material violation of any such laws, rules, regulations, orders, decrees, easements, rights of way, covenants, conditions, restrictions or other title limitations now or hereafter affecting the Property, or any part thereof, or the conduct or operation of Trustor's business; Trustor shall not commit or permit any material waste or deterioration of the Property, and shall keep and maintain abutting grounds, sidewalks, roads, parking and landscape areas in good and clean order, condition and repair; Trustor shall not take (or fail to take) any action, which if taken (or not so taken) would increase in any material way the risk of fire or other hazard occurring to or affecting the Property or which otherwise would materially impair the security of Beneficiary in the Property; Trustor shall comply with the provisions of all leases, if any, constituting a portion of the Property; Trustor shall not enter into any new management agreement relating to the Property, or into any material amendment of any existing management agreement relating to the Property,  except with the prior written consent of Beneficiary; Trustor shall not enter into any service contract or similar agreement with respect to the Property (other than contracts terminable by Trustor without penalty upon thirty (30) days notice), except with Beneficiary's prior written consent; Trustor shall not abandon the Property or any portion thereof or leave the Property unprotected, unguarded or deserted; Trustor shall not initiate, join in or consent to any change in any zoning ordinance, general plan, specific plan, private restrictive covenant or other public or private restriction limiting the uses which may be made of the Property by Trustor or by the owner thereof without the prior written consent of Beneficiary; Trustor shall secure and maintain in full force and effect all permits reasonably necessary for the use, occupancy and operation of the Property; except as otherwise prohibited or

restricted by the Loan Documents, or any of them, Trustor shall do any and all other acts which may be reasonably necessary to protect or preserve the value of the Property and the rights of Trustee and Beneficiary with respect thereto.

3.3 <u>Insurance</u>.

3.3.1 <u>Policies Required</u>. Trustor shall at all times maintain in full force and effect, at Trustor's sole cost and expense, with insurers approved by Beneficiary in Beneficiary's discretion, all policies of insurance required pursuant to the terms and provisions of the Loan Documents.

3.3.2 <u>Assignment of Proceeds</u>. Trustor hereby absolutely and unconditionally assigns to Beneficiary all casualty insurance proceeds and rental/income loss proceeds payable to Trustor under any of the policies described above and under all other policies carried by Trustor with respect to the Property. In the event that any such proceeds are paid to Trustor in connection with any damage to or destruction of the Improvements, Trustor shall promptly deliver all such proceeds to Beneficiary.

3.3.3 <u>Claims</u>. Trustor shall give Beneficiary prompt written notice of any casualty to any portion of the Property, whether or not covered by insurance, and any other event covered by insurance. Trustor hereby authorizes Beneficiary, at Beneficiary's election, to make proof of loss, and to commence, appear in, defend and prosecute any claim or action arising from any applicable policy and to settle, adjust, compromise, and collect any and all claims, proceeds and awards under any such policy, but Beneficiary shall not be liable for any failure to collect all or any portion of any claim, proceeds or award (regardless of the cause of such failure). Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to, if Trustor is then in default hereunder, beyond any applicable notice and cure period, perform all such acts. Trustor shall not settle, adjust or compromise any such claim without the prior written approval of Beneficiary.

3.3.4 <u>Application of Proceeds</u>. Trustor shall deliver all insurance proceeds received by Trustor in connection with any damage to, or destruction of, the Improvements directly to Beneficiary. All such proceeds shall first be applied to reimburse Beneficiary and Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such proceeds. The balance of such proceeds shall be applied by Beneficiary to the repayment of the Secured Obligations in such order as Beneficiary shall determine. No application or release of insurance proceeds shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.3.5 <u>Restoration</u>. Nothing in this Section 3 shall be construed to excuse Trustor from repairing and restoring all damage to the Property in accordance with other Loan Document provisions, regardless of whether insurance proceeds are available, are sufficient or are disbursed and/or released to Trustor.

3.3.6 <u>Assignment of Policies</u>. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the Secured Obligations, all right, title and interest of Trustor in and to all policies of

insurance held by Trustor, and all unearned premiums paid thereon, shall, without further act, pass to the purchaser or grantee of the Property.

3.3.7 <u>Waiver of Subrogation</u>. Trustor and Borrower hereby waive all right to recover against Beneficiary (or any officer, employee, agent or representative of Beneficiary) for any loss incurred by Trustor or Borrower from any cause insured against or required by any Loan Document to be insured against; provided, however, that this waiver of subrogation shall not be effective with respect to any insurance policy if the coverage thereunder would be materially reduced or impaired as a result. Trustor shall use its best efforts to obtain only policies which permit the foregoing waiver of subrogation.

3.4 <u>Condemnation and Other Awards</u>. Upon learning of the condemnation or other taking for public or quasi-public use of, or of the institution or the threatened institution of any action or proceeding for the condemnation or other taking for public or quasi-public use of, all or any part of the Property, Trustor shall give Beneficiary and Trustee prompt written notice of such fact. Trustor shall take all actions reasonably required by Beneficiary or Trustee in connection therewith to defend and protect the interests of Trustor, Beneficiary and/or Trustee in the Property. At Beneficiary's option, Beneficiary or Trustor may be the nominal party in such action or proceeding but in any event Beneficiary shall be entitled, without regard to the adequacy of its or their security, to commence, appear in, defend, prosecute, settle, adjust and/or compromise any such action or proceeding. Trustor hereby absolutely and unconditionally assigns to Beneficiary, as security for the Secured Obligations, all compensation, awards, damages and other amounts (collectively, "**proceeds**") payable to Trustor in connection with any condemnation or other taking of all or any part of the Property for public or semi-public use (including, but not limited to, the proceeds of any settlement, regardless of whether or not condemnation or other taking proceedings are instituted in connection therewith). Upon receipt, Trustor shall immediately deliver all such proceeds to Beneficiary. All such proceeds shall first be applied to reimburse Beneficiary and Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such proceeds. The balance of such proceeds shall be applied by Beneficiary to the repayment of the Secured Obligations in such order as Beneficiary shall determine. Application or release of such proceeds as provided herein shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.5 <u>Taxes and Impositions</u>. Trustor shall pay, prior to delinquency, all of the following (collectively, the "**Impositions**"): (a) all general and special real property taxes and assessments imposed on the Property; (b) all other taxes and assessments and charges of every kind that are assessed upon the Property (or upon the owner and/or operator of the Property) and that create or may create a lien upon the Property (or upon any Personal Property), including, without limitation, non-governmental levies and assessments pursuant to applicable covenants, conditions or restrictions; and (c) all license fees, taxes and assessments imposed on Beneficiary (other than Beneficiary's net income or franchise taxes) which are measured by or based upon (in whole or in part) the amount of the obligations secured by the Property. If permitted by law, Trustor may pay any Imposition in installments (together with any accrued interest). Trustor shall not be required to pay any Imposition so long as (i) its validity is being actively contested in good faith and by appropriate proceedings and with respect to which adequate reserves, as determined by Beneficiary in its sole and absolute discretion, have been set aside for payment

thereof, (ii) Trustor has demonstrated to Beneficiary's reasonable satisfaction that leaving such Imposition unpaid pending the outcome of such proceedings could not result in conveyance of the Property in satisfaction of such Imposition or otherwise impair Beneficiary's interest under this Deed of Trust, and (iii) if requested by Beneficiary, Trustor has furnished Beneficiary with a bond or other security satisfactory to Beneficiary in an amount not less than 150% of the applicable claim (including interest and penalties). Upon conclusion of any such contest, Trustor shall promptly pay the amount of the Imposition as finally determined, together with all interest and penalties payable in connection therewith. Beneficiary shall have full power and authority to apply any amount deposited with Beneficiary as security to the payment of any unpaid Imposition to prevent the sale or forfeiture of the Property for non-payment. Upon demand by Beneficiary from time to time, Trustor shall deliver to Beneficiary, within 30 days following the due date of any Imposition, evidence of payment reasonably satisfactory to Beneficiary. In addition, upon demand by Beneficiary from time to time, Trustor shall furnish to Beneficiary a tax reporting service for the Property of a type and duration, and with a company, reasonably satisfactory to Beneficiary.

        3.6    <u>Utilities</u>. Trustor shall pay when due all gas, electricity, water, sewer and other utility charges which are incurred for the benefit of the Property or which may become a lien against the Property and all other assessments and other charges of a similar nature, public or private, relating to the Property or any portion thereof, regardless of whether or not any such charge is or may become a lien thereon.

        3.7    Intentionally omitted.

        3.8    <u>Liens</u>. Trustor or Borrower shall not cause, incur, suffer or permit to exist or become effective any lien, encumbrance or charge upon all or any part of the Property or any interest therein other than the Permitted Encumbrances. Trustor or Borrower shall promptly discharge, within thirty (30) days of actual notice thereof, by bonding, payment, or insuring over, at Trustor's or Borrower's sole cost and expense, all liens, encumbrances, charges and title limitations upon all or any part of the Property or any interest therein, other than Permitted Encumbrances. If Trustor or Borrower shall fail to remove and discharge any such lien, encumbrance, charge, or title limitation, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, without notice to or demand on Trustor or Borrower, and without inquiring into the validity of such lien, encumbrance, charge or title limitation or the existence of any defense or offset thereto, either by paying the amount claimed to be due, or by procuring the discharge of such lien, encumbrance, charge or title limitation by depositing in a court a bond or the amount claimed or otherwise giving security for such claim, or in any other manner permitted or required by law. Trustor or Borrower shall, immediately upon demand therefor by Beneficiary, pay to Beneficiary an amount equal to all costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing right to discharge any such lien, encumbrance, charge or title limitation, together with interest thereon from the date of such expenditure until paid at the Default Rate.

        3.9    <u>Accelerating Transfer</u>. Except as otherwise expressly permitted by the Loan Documents between Beneficiary and Borrower and/or Trustor, which transfers shall not be deemed Accelerating Transfers for purposes of this Section 3.9, Trustor or Borrower shall not

sell, assign, lease or otherwise transfer all or any part of the Property or any interest therein without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole and absolute discretion.  Transfers requiring Beneficiary's prior written consent shall include, without limitation, the following:

(a)     Voluntary transfers, involuntary transfers and transfers by operation of law;

(b)     Liens, encumbrances and assignments as security for obligations, whether voluntary or involuntary; and

(c)     The sale, encumbrance, pledge, assignment, issuance or other transfer of any stock, partnership interests, membership interests, beneficial interests, or other direct or indirect ownership interests in Trustor, or in any corporation, partnership, limited liability company or trust owning any ownership interests in Trustor, or in any partner, member or manager of Trustor or any such other party, whether voluntary, involuntary or by operation of law.  If any sale, assignment, lease or other transfer requiring Beneficiary's consent under this Section 3.9 is made or occurs without Beneficiary's prior written consent, such sale, assignment, lease or other transfer shall constitute an "Accelerating Transfer."  If any Accelerating Transfer occurs, Beneficiary may, in its sole and absolute discretion, declare all Secured Obligations to be immediately due and payable and may invoke any and/or all rights and remedies provided Beneficiary under Article 6 of this Deed of Trust or available at law or in equity.

3.10   Inspections.  Beneficiary, Trustee and their respective agents, representatives and employees, are each authorized, upon notice reasonable under the circumstances (which may be written or oral), to enter at any time upon any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts Beneficiary and/or Trustee are authorized to perform hereunder or under the terms of any of the Loan Documents.

3.11   Books and Records.  Trustor shall maintain, or cause to be maintained, in the county in which the Property is located or at Trustor's principal place of business, complete and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property, whether such income or expense be realized by Trustor or by any other person or entity whatsoever excepting persons unrelated to and unaffiliated with Trustor and who leased from Trustor portions of the Property for the purposes of occupying the same.  Upon the written request of Beneficiary, Trustor shall prepare and deliver to Beneficiary such financial statements regarding operation of the Property as Beneficiary may reasonably require.  Beneficiary, and its designees, shall have the right from time to time during normal business hours to examine such books, records and accounts and to make copies and extracts therefrom.

3.12   Defense of Actions.  Trustor, at no cost or expense to Beneficiary or Trustee, shall appear in and defend any action or proceeding purporting to affect the security of

this Deed of Trust, any of the other Loan Documents, all or any part of the Property or any interest therein, any additional or other security for the obligations secured hereby, or the interests, rights, powers or duties of Beneficiary or Trustee hereunder.  If Beneficiary or Trustee elects to become a party to such action or proceeding, or is made a party thereto, Trustor shall defend and hold Trustee and Beneficiary harmless from all liability, damage, cost and expense incurred by Trustee and Beneficiary, or any of them, by reason of such action or proceeding (including, without limitation, reasonable attorneys' fees and expenses), whether or not such action or proceeding is prosecuted to judgment or decision.

   3.13 <u>Protection of Security</u>.  If Borrower fails to make any payment or Trustor or Borrower fail to do any act as and in the manner provided in this Deed of Trust or any of the other Loan Documents, beyond any applicable notice and cure period, Beneficiary and/or Trustee, each in its own discretion, without obligation so to do, without further notice or demand, and without releasing Trustor or Borrower from any obligation, may make or do the same in such manner and to such extent as either may reasonably deem necessary to protect the security of this Deed of Trust.  In connection therewith (without limiting their general powers), Beneficiary and Trustee shall each have and are hereby given the right, but not the obligation: (i) to enter upon and take possession of the Property; (ii) to make additions, alterations, repairs and improvements to the Property which in the reasonable judgment of either may be necessary or proper to keep the Property in good condition and repair; (iii) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Beneficiary or Trustee; (iv) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appears to affect the security of this Deed of Trust or to be or to appear to be prior or superior hereto; and (v) in exercising such powers, to pay all necessary or appropriate costs and expenses and employ necessary or desirable consultants.  In the event of any Event of Default or default hereunder or under any of the other Loan Documents, or in the event Beneficiary reasonably believes that any material adverse change has or may have occurred in the financial or other condition of Trustor or any Guarantor or in the condition or operation of the Property, Beneficiary may, at Trustor's sole cost and expense, reappraise (or have reappraised) the Property.  Any such reappraisal may, at Beneficiary's option, be prepared by an employee of Beneficiary or by a third-party appraiser.  The selection of such appraiser shall be made by Beneficiary in the exercise of its sole and absolute discretion.  Such appraiser shall have the right to enter upon and inspect the Property at all reasonable times and to inspect, copy and make abstracts of all of Trustor's books and records relating to the Property.  Trustor shall cooperate with such appraiser in order to permit such appraiser to prepare such appraisal.  Beneficiary shall not be liable for any act or omission of any such appraiser.

   3.14 <u>Beneficiary's Powers</u>.  Without affecting the liability of Trustor or Borrower or any other person liable for the payment of any obligation herein mentioned, and without affecting the lien or charge of this Deed of Trust upon any portion of the Property not then or theretofore released as security for the full amount of all Secured Obligations, Beneficiary may, from time to time and without notice (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation (provided, however, that the consent of Borrower shall be required with respect to the extension or alteration of any unpaid obligation of Borrower to Beneficiary), (iii) waive any provision contained herein or grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at

Beneficiary's option any parcel, portion or all of the Property, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make compositions or other arrangements with debtors in relation thereto.  By accepting payment or performance of any obligation secured by this Deed of Trust after the payment or performance thereof is due or after the filing of a notice of default and election to sell, Beneficiary shall not have thereby waived its rights to require prompt payment and performance, when due, of all of the Secured Obligations secured hereby, or to declare a default for failure so to pay or perform, or to proceed with the sale under any notice of default and election to sell theretofore given by Beneficiary, or with respect to any unpaid balance of the indebtedness secured hereby.  The acceptance by Beneficiary of any sum in an amount less than the sum then due shall not constitute a waiver of the obligation of Borrower to pay the entire sum then due.

   3.15 Intentionally omitted.

   3.16 <u>Costs, Fees and Expenses</u>.  Trustor or Borrower shall pay, on demand, all actual costs, fees, expenses, advances, charges, losses and liabilities paid or incurred by Beneficiary, Trustee and/or Borrower under or in connection with this Deed of Trust, the enforcement of this Deed of Trust, the collection of the Secured Obligations, and/or the exercise of any right, power, privilege or remedy given Beneficiary, Trustee and/or Borrower under this Deed of Trust, including, without limitation (a) foreclosure fees, trustee's fees and expenses, receiver's fees and expenses and trustee's sale guaranty premiums, (b) costs and expenses paid or incurred by Beneficiary, Trustee, Borrower and/or any receiver appointed under this Deed of Trust in connection with the operation, maintenance, management, protection, preservation, collection, sale or other liquidation of the Property, (c) advances made by Beneficiary, Trustee and/or Borrower to complete or partially construct all or any part of any improvements which may have been commenced on the Land or otherwise to protect the security of this Deed of Trust, (d) costs of evidence of title, costs of surveys and costs of appraisals, and (e) the fees, costs and expenses of attorneys, accountants and other consultants; together with interest thereon from the date of expenditure until so paid at the Default Rate.

ARTICLE 4.

ASSIGNMENT OF RENTS, ISSUES AND PROFITS

   4.1 <u>Assignment of Rents, Issues and Profits</u>.  Trustor hereby absolutely and irrevocably assigns and transfers to Beneficiary all of its right, title and interest in and to all rents, issues, profits, royalties, income and other proceeds and similar benefits now or hereafter derived from the Property (collectively, the "**Rents**"), and hereby gives to and confers upon Beneficiary the right, power and authority to collect such Rents.  Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary, at any time and from time to time following the occurrence and during the continuance of an Event of Default, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in its name or in the name of Trustor, for all Rents, and to apply the same to the obligations secured hereby; provided, however, that Trustor shall have a license to collect Rents (but not more than one month in advance unless the written approval of Beneficiary has first been obtained), and to retain and enjoy the same, so long as an Event of Default shall not have occurred hereunder and

be continuing.  The assignment of the Rents in this Article 4 is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest.

4.2    Collection Upon Default.  Upon the occurrence of an Event of Default hereunder, Trustor's license to collect the Rents shall automatically terminate and Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the obligations hereby secured, enter upon and take possession of the Property, or any part thereof, and, with or without taking possession of the Property or any part thereof, in its own name sue for or otherwise collect such Rents (including those past due and unpaid, and all prepaid Rents and all other monies which may have been or may hereafter be deposited with Trustor by any lessee or tenant of Trustor to secure the payment of any Rent or for any services thereafter to be rendered by Trustor or any other obligation of any tenant to Trustor arising under any lease, and Trustor agrees that, upon the occurrence of any Event of Default hereunder, Trustor shall promptly deliver all Rents and other monies to Beneficiary), and Beneficiary may apply the same, less costs and expenses of operation and collection, including, without limitation, attorneys' fees, whether or not suit is brought or prosecuted to judgment, upon any indebtedness or obligation of Trustor secured hereby, and in such order as Beneficiary may determine notwithstanding that said indebtedness or the performance of said obligation may not then be due.  The collection of Rents, or the entering upon and taking possession of the Property, or the application of Rents as provided above, shall not cure or waive any default or notice of default hereunder or invalidate any act performed in response to such default or pursuant to such notice of default or be deemed or construed to make Beneficiary a mortgagee-in-possession of all or any part of the Property.

4.3    Further Assignments.  Upon Beneficiary's demand Trustor shall, from time to time hereafter, execute and deliver to Beneficiary recordable assignments of Trustor's interest in any and all leases, subleases, contracts, rights, licenses and permits now or hereafter affecting all or any part of the Property.  Such assignments shall be made by instruments in form and substance satisfactory to Beneficiary; provided, however, that no such assignment shall be construed as imposing upon Beneficiary any obligation with respect thereto.  Beneficiary may, at its option, exercise its rights hereunder or under any such specific assignment and such exercise shall not constitute a waiver of any right hereunder or under any such specific assignment.

ARTICLE 5.

SECURITY AGREEMENT

5.1    Grant of Security Interest.  This Deed of Trust shall constitute a security agreement as that term is used in the California Uniform Commercial Code and, as security for all Secured Obligations, Trustor hereby grants to Beneficiary a security interest in all of Trustor's right, title and interest, whether now existing or hereafter arising, in and to any portion of the Property which constitutes personal property (the "**Personal Property**").

5.2    Representations and Warranties.  Trustor hereby represents and warrants to Beneficiary that:  (a) Trustor is the owner of the Personal Property, has the right, power and authority to grant, convey and assign the Personal Property, and no other person has any right, title, claim or interest (by way of security interest or other lien or charge or otherwise) in, against

or to the Personal Property, other than arising from the Permitted Encumbrances; (b) the Personal Property is free from all liens, security interests, encumbrances and adverse interests, except Permitted Encumbrances; (c) no financing statement or similar filing covering any of the Personal Property, and naming any secured party other than Beneficiary and the holders of Permitted Encumbrances, is on file in any public office; (d) each account, general intangible, chattel paper, deposit account, instrument, document, agreement, contract or right to the payment of money constituting Personal Property (collectively, the "**Rights to Payment**"), if any, is genuine and enforceable in accordance with its terms against the party obligated to pay the same and (e) the Personal Property is not used nor was the Personal Property purchased for personal or family use by Trustor.

        5.3    <u>Covenants</u>.  Trustor hereby agrees:  (a) to pay, prior to delinquency, all taxes, assessments, charges, encumbrances and liens now or hereafter imposed upon or affecting all or any part of the Personal Property; (b) not to amend, modify, supplement, terminate or cancel any of the Personal Property, other than in a non-material way in the ordinary course of business; (c) without the prior written consent of Beneficiary, not to remove all or any part of the tangible Personal Property from the Property, other than in a non-material way in the ordinary course of business; (d) to give Beneficiary thirty (30) days' prior written notice of any change in Trustor's principal place of business, chief executive office or trade names or styles; (e) to appear in and defend any action or proceeding which may affect the Personal Property (including, without limitation, actions, proceedings and claims which may affect Trustor's title to the Personal Property or the validity or priority of Beneficiary's security interest in the Personal Property); and (f) to permit Beneficiary to enter Trustor's premises to inspect the Personal Property.  Trustor further agrees (a) to fully and timely perform all of its obligations under and with respect to all Rights to Payment and to diligently enforce all of the obligations of each obligor thereunder; (b) not to amend, modify, supplement, cancel or terminate any of the Rights to Payment in any material respect without the prior written consent of Beneficiary; (c) to keep the Rights to Payment and all proceeds free and clear of all defaults, defenses, rights of offset and counterclaim; (d) if requested by Beneficiary, to receive and use reasonable diligence to collect, in trust and as the property of Beneficiary, proceeds of Rights to Payment and to immediately endorse as appropriate and deliver such proceeds to Beneficiary daily in the exact form in which they are received together with a collection report in form satisfactory to Beneficiary; (e) to take or bring, in Beneficiary's name or in the name of Trustor, as Beneficiary may require, all actions, suits or proceedings deemed reasonably necessary or desirable by Beneficiary to effect collection or to realize upon Rights to Payment; (f) not to commingle Rights to Payment or collections thereunder with other property.  As soon as practicable, and in any event within ten (10) days, Trustor or Borrower shall notify Beneficiary of:  (a) any attachment or other legal process levied against any of the Personal Property; (b) any information received by Trustor or Borrower which may in any manner materially and adversely affect the value of the Personal Property or the rights and remedies of Beneficiary with respect thereto; and (c) the removal of any of the Personal Property to a new location and the removal of any records of Trustor relating to the Personal Property to any location other than the Land and Improvements.  Trustor and Borrower each hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact to, after the occurrence and during the occurrence of an Event of Default, (a) perform any obligation of Trustor or Borrower  hereunder in Trustor's or Borrower's name, as the case may be, or otherwise; (b) give notice of Beneficiary's rights in the Rights to Payment, to enforce the same, and make extension agreements with respect thereto;

(c) release persons liable on the Rights to Payment and to give receipts and acquittances and compromise disputes in connection therewith; (d) release security for the Rights to Payment; (e) resort to security for the Rights to Payment in any order; (f) prepare, execute, file, record or deliver Note, assignments, schedules, designation statements, financing statements, continuation statements, termination statements, and other documents to perfect preserve or release Beneficiary's interest in the Rights to Payment; (g) do all acts and things and execute all documents in the name of Trustor or Borrower or otherwise, deemed by Beneficiary as necessary, proper and convenient in connection with the preservation, perfection or enforcement of its rights hereunder.  The power of attorney granted hereunder is coupled with an interest and is irrevocable.

## ARTICLE 6.

### EVENTS OF DEFAULT
### AND
### REMEDIES UPON DEFAULT

6.1    <u>Events of Default</u>.  The occurrence of any of the following events or conditions shall constitute an event of default ("**Event of Default**") hereunder:

6.1.1    Borrower fails to pay to Beneficiary any payment of principal and/or interest payable under the Note when due, subject to any applicable cure periods contained in the Note; or

6.1.2    Borrower fails to pay any other amount payable hereunder when due, subject to any applicable cure periods contained in the Note; or

6.1.3    Borrower or Trustor fail to observe or perform any other obligation contained in this Deed of Trust, subject to any applicable cure periods contained in the Note; or

6.1.4    The occurrence of an "Event of Default" under the Note or any of the other Loan Documents, subject to any applicable cure periods contained therein; or

6.1.5    A default under any other document or agreement secured hereby, subject to any applicable cure period.

6.2    <u>Acceleration Upon Default; Additional Remedies</u>.  Upon the occurrence of an Event of Default, Beneficiary may, at its option, terminate the obligations of the Beneficiary under the Loan Documents and declare all Secured Obligations to be immediately due and payable without any presentment, demand, protest or further notice of any kind; and whether or not Beneficiary exercises said option, Beneficiary may:

6.2.1    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or any part thereof or interest therein, increase

the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection including attorneys' fees, upon any Secured Obligations, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession by Trustee, Beneficiary or a receiver of all or any portion of the Property or the collection, receipt and application of any of the Rents, the Trustee and Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale;

6.2.2     Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants contained herein;

6.2.3     Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the official records of the County in which the Property is located;

6.2.4     Exercise any and/or all of the rights and remedies available to a secured party under the California Uniform Commercial Code in such order and in such manner as Beneficiary, in its sole discretion, may determine (including, without limitation, requiring Trustor to assemble any collateral and make such collateral available to Beneficiary at a reasonably convenient location or location); provided, however, that the expenses of retaking, holding, preparing for sale or the like as provided thereunder shall include reasonable attorneys' fees and other expenses of Beneficiary and Trustee and shall be additionally secured by this Deed of Trust; and/or

6.2.5     Exercise all other rights and remedies provided herein, in any Loan Document or other document or agreement now or hereafter securing all or any portion of the obligations secured hereby, or provided by law or in equity.

6.3     Foreclosure By Power of Sale.

6.3.1     Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the unpaid Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

6.3.2     Upon receipt of notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as

Beneficiary may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

      6.3.3      After deducting all fees, costs and expenses incurred by Beneficiary or Trustee in connection with such sale, including costs of evidence of title, Beneficiary shall apply the proceeds of sale, in the following priority, to payment of (i) first, all amounts expended under the terms hereof, not then repaid, with accrued interest at the Default Rate; (ii) second, all other Secured Obligations; and (iii) the remainder, if any, to the person or persons legally entitled thereto.

      6.3.4      Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

      6.3.5      A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein; and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

      6.4      <u>Appointment of Receiver</u>. Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, as a matter of right and without notice to Trustor, Borrower or anyone claiming under Trustor, and without regard to the then value of the Property or any interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

      6.5      <u>Application of Funds After Default</u>. Except as otherwise herein provided, upon the occurrence of an Event of Default hereunder, Beneficiary may, at any time without notice, apply any or all sums or amounts received and held by Beneficiary to pay insurance premiums, Impositions, or either of them, or as rents or income of the Property, or as insurance or condemnation proceeds, and all other sums or amounts received by Beneficiary from or on account of Trustor, Borrower or the Property, or otherwise, upon any Secured Obligation, in such manner and order as Beneficiary may elect, notwithstanding that such Secured Obligation may not yet be due. The receipt, use or application of any such sum or amount shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust, or any of the rights or powers of Beneficiary or Trustee under the terms of the Loan Documents, or any of the

obligations of Trustor, Borrower or any guarantor under the Loan Documents; or to cure or waive any default or notice of default under any of the Loan Documents; or to invalidate any act of Trustee or Beneficiary.

   6.6 <u>Remedies Not Exclusive</u>.  Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligation secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Document or other agreement or any law now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by guaranty, mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's rights to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security for the obligations hereby secured now or hereafter held by Beneficiary or Trustee in such order and manner as they may in their absolute discretion determine.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, or granted to Beneficiary under any other agreement, or by law or equity provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder, or granted to Beneficiary under any other agreement, or now or hereafter existing at law or in equity or by statute.  Every power or remedy given by any of the Loan Documents to the Trustee or Beneficiary or to which any of them may be otherwise entitled may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Trustee or Beneficiary, and any of them may pursue inconsistent remedies.  Trustor may be joined in any action brought by Beneficiary to foreclose under or otherwise enforce this Deed of Trust.

   6.7 <u>Request for Notice</u>.  Trustor hereby requests that a copy of any notice of default and that a copy of any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

ARTICLE 7.

MISCELLANEOUS

   7.1 <u>Amendments</u>.  This instrument cannot be waived, modified, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, modification, discharge or termination is sought.

   7.2 <u>Waivers</u>.  Trustor waives, to the extent permitted by law, (i) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, and, whether now existing or hereafter arising or created, (ii) all rights of valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created, and (iii) all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties.

7.3    <u>Suretyship Waivers</u>.

7.3.1    If Trustor is liable for only a portion of the Indebtedness, Trustor hereby waives its rights under California Civil Code Section 2822(a) to designate the portion of the Secured Obligations that shall be satisfied by Borrower's partial payment.

7.3.2    Trustor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agrees that by doing so Trustor shall be liable even if Borrower had no liability at the time of execution of the Note, this Deed of Trust or any other Loan Document, or thereafter ceases to be liable.  Trustor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agrees that by doing so, Trustor's liability may be larger in amount and more burdensome than that of Borrower.  Trustor also waives, to the fullest extent permitted by law, any and all benefits under California Civil Code Sections 2845, 2849 and 2850.

7.3.3    Beneficiary's security interest in the Property shall not be affected, modified or impaired by the occurrence of any of the following events, whether or not with notice to, or the consent of, Trustor:  (i) the waiver, surrender, compromise, settlement, release or termination of any or all of the obligations secured hereunder or in any of the other Loan Documents; (ii) the failure to give notice to Trustor of the occurrence of any breach, default or event of default under any of the Loan Documents; (iii) the extension of time for the payment, performance, satisfaction or discharge of any or all of the Secured Obligations; (iv) the amendment or modification (whether material or otherwise) of the Secured Obligations in any respect; (v) any failure, omission, delay or lack on the part of the Beneficiary to enforce, assert or exercise any right, power or remedy conferred on the Beneficiary under any of the Documents; (vi) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all of the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or adjustment of debts, or other similar proceedings affecting Borrower or any of its assets, (vii) any failure by Beneficiary to create a valid lien or security interest in any collateral or security for any or all of the Secured Obligations or to perfect any such lien or security interest; (viii) the release or discharge by operation of law of Borrower from the payment, performance, satisfaction or discharge of any or all of the Secured Obligations; or (ix) the invalidity or unenforceability of any or all of the Secured Obligations.

7.3.4    Trustor assumes the responsibility for being informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of failure to pay, perform, satisfy or discharge any of the Secured Obligations which diligent inquiry would reveal, and Trustor agrees that Beneficiary has no duty to advise Trustor of information known to Beneficiary regarding such condition or any such circumstance.  It is not necessary for Beneficiary to inquire into the capacity, authority or powers of Borrower or the partners, directors, officers, employees, agents or representatives acting or purporting to act on behalf of Borrower and all of the Secured Obligations made or created in reliance upon the purported exercise of such powers shall be secured by Beneficiary's security interest in the Property.  Until all of the Secured Obligations have been paid in full, (i) foreclosure by Beneficiary of its security interest in the Property shall not give Trustor any right of subrogation to any rights or remedies of the Beneficiary against Borrower or any collateral or security for any or all of the Secured

Obligations, and (ii) Trustor waives all rights of subrogation or reimbursement with respect to Borrower that might otherwise arise as a result of the foreclosure described in the preceding sentence.

       7.4     <u>Statements by Trustor or Borrower</u>.  Trustor or Borrower shall, within ten (10) days after notice thereof from Beneficiary, deliver to Beneficiary a written statement setting forth the amounts then unpaid and secured by this Deed of Trust and stating whether any offset or defense exists against such amounts.

       7.5     <u>Statements by Beneficiary</u>.  For any statement or accounting requested by Trustor, Borrower or any other entitled person pursuant to any provision of applicable law, or for any other document or instrument furnished to Trustor or Borrower by Beneficiary, Beneficiary may charge the maximum amount permitted by law at the time of the request therefor, or if there be no such maximum, then in accordance with Beneficiary's customary charges therefor or the actual cost to Beneficiary therefor, whichever is greater.

       7.6     <u>Reconveyance by Trustee</u>.  Upon written request of Beneficiary stating that all Secured Obligations have been paid and fully performed, and upon surrender by Beneficiary of this Deed of Trust to Trustee for cancellation and retention and upon payment by Trustor or Borrower of Trustee's fees and the costs and expenses of executing and recording any requested reconveyance, Trustee shall reconvey to the person or persons legally entitled thereto, without warranty, any portion of the Property then held hereunder.  The recitals in any such reconveyance of any matter or fact shall be conclusive proof of the truthfulness thereof.  The grantee in any such reconveyance may be described as "the person or persons legally entitled thereto."

       7.7     <u>Notices</u>.  All notices, demands, approvals and other communications provided for herein shall be in writing and shall be personally delivered or mailed by United States mail, as certified or registered material, return receipt requested, postage prepaid, or sent by recognized air courier, to the appropriate party at the address set forth in the first paragraph of this Deed of Trust.  Addresses for notice may be changed from time to time by written notice to all other parties.  All communications shall be effective when actually received; provided, however, that nonreceipt of any communication as the result of a change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

       7.8     <u>Acceptance by Trustee</u>.  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The trust created hereby is irrevocable by Trustor.

       7.9     <u>Headings</u>.  Article and section headings are included in this Deed of Trust for convenience of reference only and shall not be used in construing this Deed of Trust.

       7.10     <u>Severability</u>.  Every provision of this Deed of Trust is intended to be severable.  In the event any provision hereof is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or

unenforceability shall not affect the legality, validity or enforceability of the remaining provisions hereof, which provisions shall remain binding and enforceable.

7.11    Subrogation.  To the extent that proceeds of the Note are used, either directly or indirectly, to pay any outstanding lien, charge or prior encumbrance against the Property, Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

7.12    No Merger of Lease.  Upon the foreclosure of the lien created by this Deed of Trust on the Property pursuant to the provisions hereof, any lease or sublease then existing and affecting all or any portion of the Property shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless the Beneficiary or any purchaser at such foreclosure sale shall so elect.  No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice of termination to such tenant or subtenant.  If both the lessor's and lessee's estate under any lease or any portion thereof which constitutes a part of the Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger unless Beneficiary so elects as evidenced by recording a written declaration so stating, and, unless and until Beneficiary so elects, Beneficiary shall continue to have and enjoy all of the rights, powers and privileges of Beneficiary hereunder as to the separate estates.

7.13    Governing Law; Venue; Judicial Reference.

7.13.1    THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF CALIFORNIA.  Trustor hereby (a) submits to the exclusive jurisdiction of the courts of the Central District of Los Angeles County of the State of California or, if jurisdiction can be obtained, in any federal court in the Los Angeles Division of the Central District of California for the purpose of any action or proceeding arising out of or relating to this Instrument or the other Loan Documents, such venue which may be determined in the sole discretion of the Beneficiary, (b) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (c) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts in and of the State of California, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum, and (d) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.  In the event that any provision of this Instrument is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law.  Any such provision which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of this Instrument.  Nothing contained herein shall be deemed or operate to preclude the Beneficiary from bringing suit or taking other legal action

against the Borrower in any other jurisdiction to collect on the Trustor's obligations to the Beneficiary, to realize on any collateral or any other security for such obligations, or to enforce a judgment or other court ruling in favor of the Beneficiary.

7.13.2     TRUSTOR AND BENEFICIARY EACH HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS INSTRUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.13.3     IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "**COURT**") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS INSTRUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) (EACH, A "**CLAIM**") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

(a)     WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SECTION 7.13.3(c) BELOW, ANY CLAIM WILL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638. EXCEPT AS OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, VENUE FOR THE REFERENCE PROCEEDING WILL BE IN THE STATE OR FEDERAL COURT IN THE COUNTY OR DISTRICT WHERE VENUE IS OTHERWISE APPROPRIATE UNDER APPLICABLE LAW.

(b)     THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (1) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (2) EXERCISE OF SELF-HELP REMEDIES (INCLUDING, WITHOUT LIMITATION, SET-OFF), (3) APPOINTMENT OF A RECEIVER AND (4) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING, WITHOUT LIMITATION, WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS AGREEMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO

EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (4) ABOVE AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THIS AGREEMENT.

(c)        UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE.  IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN (10) DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B).

(d)        ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT.  THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(e)        THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES.  THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA. THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE STATE AND FEDERAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING, WITHOUT LIMITATION, MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT.  THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

(f)        THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY.

7.14    Statute of Limitations.  The right to plead, use or assert any statute of limitations as a plea, defense or bar of any kind, or for any purpose, to any obligation secured hereby, or to any complaint or other pleading or proceeding filed, instituted or maintained for the purpose of enforcing this Deed of Trust or any rights hereunder, is hereby waived by Trustor to the full extent permitted by law.

7.15    Interpretation.  In this Deed of Trust the singular shall include the plural and the masculine shall include the feminine and neuter and vice versa, if the context so requires; and the word "person" shall include corporation, partnership or other form of association.  Any reference in this Deed of Trust to any document, instrument or agreement creating or evidencing an obligation secured hereby shall include such document, instrument or agreement both as originally executed and as it may from time to time be modified.

7.16    Trust Irrevocable.  The trust created hereby is irrevocable by Trustor.  All amounts payable by Borrower pursuant to this Deed of Trust shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction.  Trustor hereby waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any amount secured hereby and payable by Borrower to Beneficiary or Trustee.

7.17    Further Assurances.  Trustor agrees to do or cause to be done such further acts and things and to execute and deliver or to cause to be executed and delivered such additional assignments, agreements, powers and instruments, as Beneficiary or Trustee may reasonably require or deem advisable to correct any defect, error or omission in this Deed of Trust or the execution or acknowledgment of this Deed of Trust, to subject to the lien of this Deed of Trust any of Trustor's properties covered or intended to be covered hereby, to perfect and maintain such lien, to keep valid and effective the charges and lien hereof, to carry into effect the purposes of this Deed of Trust or to better assure and confirm to Beneficiary or Trustee their respective rights, powers and remedies hereunder.

7.18    Trustee's Powers.  At any time, and from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness or the performance of any other obligation secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee shall (i) reconvey all or any part of the Property, (ii) consent in writing to the making of any map or plat or subdivision thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement, agreement subordinating the lien or charge hereof, or other agreement or instrument relating hereto or to all or any part of the Property.

7.19    Substitution of Trustee.  Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, or by any other procedure permitted by applicable law, substitute a successor or successors for the Trustee named herein or acting hereunder.

7.20    Successors and Assigns.  Subject to Section 3.9, above, this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, Trustor has duly executed this Deed of Trust as of the date first above written.

**<u>TRUSTOR:</u>**

**MERCO GROUP - 1211 E. WASHINGTON BOULEVARD, LLC,**
a Delaware limited liability company

By: _____
    Name:
    Title:

STATE OF _____

COUNTY OF _____

On _____, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____    [Seal]
Notary Public

My Commission Expires:

## Exhibit A

Legal Description*

APN: 5131-003-002; 5131-003-010; 5131-003-011

PARCEL 1:

LOTS 1, 2, 3, 7, 8 AND 9 IN BLOCK "D" OF WALNUT GROVE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGES 9 AND 10 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:

THAT PORTION OF LOT 4 IN BLOCK "D" OF AMENDED MAP OF THE WALNUT GROVE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 22 PAGES 9 AND 10 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, LYING NORTHEASTERLY OF A STRAIGHT LINE, EXTENDING SOUTHEASTERLY FROM A POINT IN THE NORTHWESTERLY LINE OF SAID LOT 4, DISTANT NORTHEASTERLY ALONG NORTHEASTERLY ALONG THE NORTHWESTERLY LINES OF LOTS 6, 5 AND 4 OF SAID BLOCK "D," 89.12 FEET FROM THE NORTHEASTERLY LINE OF WASHINGTON STREET, 100 FEED WIDE, AS ESTABLISHED BY DECREE OF CONDEMNATION ENTERED IN CASE NO. 183563 OF THE SUPERIOR COURT OF SAID COUNTY, TO A POINT IN THE NORTHWESTERLY LINE OF CENTRAL AVENUE, (FORMERLY WOLFSKILL STREET), 80 FEET WIDE, AS SHOWN ON SAID MAP, DISTANT NORTHEASTERLY THEREON 89.11 FEET FROM THE INTERSECTION OF SAID NORTHWESTERLY LINE OF CENTRAL AVENUE WITH SAID NORTHEASTERLY LINE OF WASHINGTON STREET.

PARCEL 3:

THAT PORTION OF LOT 12 IN BLOCK "D" OF THE WALNUT GROVE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22, PAGE 9 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID LOT 12; THENCE NORTHERLY ALONG THE EASTERLY LINE OF SAID LOT TO THE NORTHEASTERLY CORNER OF SAID LOT; THENCE WESTERLY ALONG THE NORTHERLY LINE OF SAID LOT, 14.47 FEET TO THE NORTHEAST CORNER OF LOT "A" IN BOSBEYSHELLS SUBDIVISION AS PER MAP RECORDED IN BOOK 70 PAGE 60 OF MISCELLANEOUS RECORDS OF SAID COUNTY; THENCE SOUTHERLY ALONG THE EASTERLY LINE OF LOTS "A," "B" AND "C" OF SAID BOSBEYSHELLS SUBDIVISION TO THE SOUTHEASTERLY CORNER OF SAID LOT "C"; THENCE EASTERLY TO THE POINT OF BEGINNING.

PARCEL 4:

LOTS "A," "B" AND "C" OF BOSBYSHELL'S SUBDIVISION, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 70 PAGE 60 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

PARCEL 5:

A NON-EXCLUSIVE IRREVOCABLE EASEMENT OVER AND UPON THE PARKING AREA OF THE SOUTHEASTERLY 10 FEET OF LOT 14 AND ALL OF LOTS 15, 16 AND 17 IN BLOCK "R" OF MENLO PARK SUBDIVISION No. 3, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 59 PAGE 99 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, FOR VEHICULAR INGRESS AND EGRESS AND THE PARKING OF MOTOR VEHICLES OF THE CUSTOMERS AND PATRONS OF THE OWNERS, LESSEES OR OCCUPANTS AND THEIR SUCCESSORS AND ASSIGNS OF REAL PROPERTY, OR ANY PORTION THEREOF, DESCRIBED IN PARCELS 1, 2, 3 AND 4 HEREINABOVE.

PARCEL 6:

LOTS 11 AND 12 IN BLOCK "E" OF WALNUT GROVE TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 22 PAGES 9 AND 10 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Address: 1211 E. Washington Boulevard, Los Angeles, California 90021; 1120 E. 18th Street, Los Angeles, California 90021; 1126 E. 18th Street, Los Angeles, California 90021]


[APN: 5131-003-024

THOSE PORTIONS OF LOTS 4, 5 AND 6 OF BLOCK D, OF AMENDED MAP OF WALNUT GROVE TRACT, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 22 PAGE(S) 9 AND 10 OF MISCELLANEOUS RECORDS IN THE OFFICE OF THE RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHWESTERLY LINE OF CENTRAL AVENUE (FORMERLY WOLFAKILL STREET, 80 FEET WIDE, AS SHOWN ON SAID MAP, WITH THE NORTHEASTERLY LINE OF WASHINGTON BLVD. 100 FEET WIDE AS ESTABLISHED BY DECREE OF CONDEMNATION ENTERED IN CASE NO. 183563 OF THE SUPERIOR COURT OF SAID COUNTY; THENCE NORTHWESTERLY ALONG SAID NORTHEASTERLY LINE, TO THE NORTHWESTERLY LINE OF SAID LOT 6; THENCE NORTHEASTERLY ALONG THE NORTHWESTERLY LINES OF SAID LOTS 6, 5 AND 4, A DISTANCE OF 89.12 FEET; THENCE SOUTHEASTERLY, IN STRAIGHT LINE TO A POINT IN SAID NORTHWESTERLY LINE OF CENTRAL AVENUE, DISTANT

NORTHEASTERLY THEREON, 89.11 FEET FROM THE POINT OF BEGINNING; THENCE SOUTHWESTERLY, ALONG SAID NORTHWESTERLY LINE, 89.11 FEET TO THE POINT OF BEGINNING.

EXCEPT ALL OIL, GAS AND OTHER HYDROCARBONS, GEOTHERMAL RESOURCES AS DEFINED IN SECTION 6903 OF THE CALIFORNIA PUBLIC RESOURCES CODE AND ALL OTHER MINERALS, WHETHER SIMILAR TO THOSE HEREIN SPECIFIED OR NOT, WITHIN OR THAT MAY BE PRODUCED FROM SAID REAL PROPERTY; PROVIDED, HOWEVER, THAT ALL RIGHTS AND INTEREST IN THE SURFACE OF SAID REAL PROPERTY ARE HEREBY CONVEYED TO GRANTEE, NO RIGHT OF INTEREST OF ANY KIND TO USE THE SURFACE, EXPRESSED OR IMPLIED, BEING EXCEPTED OR RESERVED TO GRANTOR; AND PROVIDED FURTHER THAT GRANTOR SHALL NOT, IN EXERCISING SUCH RIGHTS, DO ANY THING WHICH WILL DAMAGE THE SURFACE OF SAID REAL PROPERTY OR ANY STRUCTURES THEREON, AND SHALL NOT CONDUCT ANY DRILLING OR OTHER OPERATIONS ON ANY KIND IN THE FIRST FIVE HUNDRED (500) FEET BELOW THE SURFACE OF SAID REAL PROPERTY.

AND FURTHER EXCEPT THE SOLE AND EXCLUSIVE RIGHT FROM TIME TO TIME TO DRILL AND MAINTAIN WELLS OR OTHER WORKS INTO OR THROUGH SAID REAL PROPERTY AND THE ADJOINING STREETS, ROADS AND HIGHWAYS, BELOW A DEPTH OF FIVE HUNDRED (500) FEET AND TO PRODUCE, INJECT, STORE AND REMOVE FROM AND THROUGH SUCH WELLS OR WORKS, OIL, GAS, WATER AND OTHER SUBSTANCES OF WHATEVER NATURE, INCLUDING THE RIGHT TO PERFORM BELOW SAID DEPTH ANY AND ALL OPERATIONS DEEMED BY GRANTOR NECESSARY FOR CONVENIENT FOR THE EXERCISES OF SUCH RIGHTS.

Address: 1225 E. Washington Boulevard, Los Angeles, California 90021]

**\* The above legal description(s) may be amended, modified or substituted in whole or in part subject to final review and determination of the Land pledged as security in this Deed of Trust.**

## EXHIBIT B

## FINANCING STATEMENT INFORMATION

1.      Name and Address of Debtor:      Merco Group - 1211 E. Washington Boulevard, LLC
[ADDRESS]

2.      Debtor's State of Organization and Organizational I.D.#:

      State of Formation:      Delaware

      Type of Entity:      limited liability company

      Organizational I.D.#:      [_____]

3.      Name and Address of Secured Party:      MMPI Acquisition, LLC
[ADDRESS]

4.      The Collateral is:      Fixtures, as that term is described in the Uniform Commercial Code of California attached to the Land described in Exhibit A attached to this Instrument.

**EXHIBIT D**

Recording requested by, and
when recorded return to:

Paul, Hastings, Janfosky & Walker LLP
515 S. Flower Street
25th Floor
Los Angeles, California 90071
Attention:  Cynthia Cohen, Esq.

---

## DEED OF TRUST, ASSIGNMENT OF RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING
## (CALIFORNIA)

**ATTENTION COUNTY RECORDER:  THIS INSTRUMENT IS INTENDED TO BE
EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING
PURSUANT TO SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.
PORTIONS OF THE GOODS COMPRISING A PART OF THE MORTGAGED
PROPERTY ARE OR ARE TO BECOME FIXTURES RELATED TO THE LAND
DESCRIBED IN EXHIBIT A HERETO.  THIS INSTRUMENT IS TO BE FILED FOR
RECORD IN THE RECORDS OF THE COUNTY WHERE DEEDS OF TRUST ON
REAL PROPERTY ARE RECORDED AND SHOULD BE INDEXED AS BOTH A DEED
OF TRUST AND AS A FINANCING STATEMENT COVERING FIXTURES.  THE
ADDRESSES OF BORROWER (DEBTOR) AND BENEFICIARY (SECURED PARTY)
ARE SPECIFIED IN THE FIRST PARAGRAPH ON PAGE 1 OF THIS INSTRUMENT.**

## DEED OF TRUST, ASSIGNMENT
## OF LEASES AND RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Instrument**" or "**Deed of Trust**"), dated as of [_____], is executed by MERUELO CHINATOWN, LLC, a California limited liability company ("**Trustor**"), as trustor, whose address is [_____], in favor of FIRST AMERICAN TITLE INSURANCE COMPANY ("**Trustee**"), as trustee, whose address is 520 North Central Avenue, Glendale, California  91203, for the benefit of MMPI ACQUISITION, LLC, a Delaware limited liability company, or its registered assigns ("**Beneficiary**"), as beneficiary, whose address is [_____], (collectively, the "**Parties**").  Each capitalized term used herein and not otherwise defined herein shall have the meaning given such term in the "**Note**" (as defined below).

The Loan (as defined below) is made and the Indebtedness is evidenced by the Note in the maximum principal amount of Fifteen Million and No/100, ($15,000,000), maturing as of the Maturity Date (as defined in the Note) and secured by this Instrument.

RECITALS.

**WHEREAS,** Beneficiary has agreed to advance to Meruelo Maddux Properties, Inc., a Delaware corporation ("**Borrower**") a loan in the maximum principal amount of $15,000,000, or so much thereof as may be advanced and be outstanding pursuant to the terms of the Note (the "**Loan**").

**WHEREAS**, Trustor is a wholly owned Subsidiary (as defined in the Note) of Borrower and is lawfully seized of the Property and has the right, power and authority to grant, convey and assign the Property, and that the Property is unencumbered except for such encumbrances as shall not render title to the Property unmarketable (the "**Permitted Encumbrances**").

**WHEREAS,** Borrower is a parent to several Subsidiaries and has utilized and, under the Plan (as defined in the Note), will continue to utilize surplus funds from all of its Subsidiaries for the benefit of other Subsidiaries and the aggregate operations of Borrower and its Subsidiaries as Borrower deems necessary.

TO SECURE TO BENEFICIARY and its successors and assigns the repayment of the Indebtedness evidenced by the Note executed by Borrower and maturing on the Maturity Date (as defined in the Note), and all renewals, extensions and modifications of the Indebtedness, including, without limitation, the payment of all sums advanced by or on behalf of Beneficiary to protect the security of this Instrument and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

This Instrument is also a financing statement and a fixture filing under the Uniform Commercial Code of the Property Jurisdiction and the information set forth on <u>Exhibit B</u> is included for that purpose.

ARTICLE 1.

GRANT OF SECURITY

1.1    <u>Grant of Security</u>.  FOR GOOD AND VALUABLE CONSIDERATION, including the indebtedness herein recited and the trust herein created, the receipt and adequacy of which are hereby acknowledged, Trustor hereby irrevocably grants, transfers and assigns to Trustee, IN TRUST, WITH POWER OF SALE, AND RIGHT OF ENTRY AND POSSESSION, for the benefit and security of Beneficiary, all rights, titles, interests, estates, powers and privileges that Trustor now has or may hereafter acquire in or to the following property and interests therein (collectively, the "**Property**"):

(a)    Trustor's undivided interest in that certain real property ("**Land**") in the County of Los Angeles, State of California, more particularly described on <u>Exhibit A</u> attached hereto;

(b)    All buildings and other improvements now or hereafter located on the Land, including, but not limited to, the Fixtures (as defined below) and any and all other equipment, machinery, appliances and other articles attached to such buildings and other improvements (collectively, the "**Improvements**");

(c)    All fixtures (collectively, the "**Fixtures**") now or hereafter located on, attached to, installed in or used in connection with the Land and the Improvements, including without limitation all partitions, generators, screens, awnings, boilers, furnaces, pipes, plumbing, elevators, cleaning, call and sprinkler systems, fire extinguishing machinery and equipment, water tanks, heating, ventilating, air conditioning and air cooling machinery and equipment, gas and electric machinery and equipment, and other equipment, machinery and appliances and other fixtures of every kind and nature;

(d)    All present and future goods, equipment and inventory, as those terms are defined in the California Commercial Code, and all other present and future personal property of any kind or nature whatsoever, now or hereafter located at, upon or about the Land and/or Improvements, or used or to be used in connection with or relating or arising with respect to the Land and/or Improvements, or used or to be used in connection with or relating or arising with respect to the Land and/or Improvements, the use thereof or any improvements thereto, including without limitation all present and future furniture, furnishings, fixtures, goods, machinery, plumbing and plumbing material and supplies, concrete, lumber, hardware, electrical wiring and electrical material and supplies, heating and air conditioning material and supplies, roofing material and supplies, window material and supplies, doors, paint, drywall, insulation, cabinets, ceramic material and supplies, flooring, carpeting, appliances, fencing, landscaping and all other materials, supplies and property of every kind and nature;

(e)    All present and future accounts, general intangibles, chattel paper, deposit accounts, investment property, instruments and documents as those terms are defined in the California Uniform Commercial Code, now or hereafter relating or arising with respect to the Land and/or Improvements and/or the use thereof or any

improvements thereto, including without limitation:  (i) all rights to the payment of money, including escrow proceeds arising out of the sale or other disposition of all or any portion of the Land and/or Improvements; (ii)  any other deposit accounts and other accounts and funds created under or pursuant to the Loan Documents, all amounts on deposit therein, and all interest and other earnings thereon; (iii) all plans, specifications, drawings and other documents and materials relating to the development of the Land and/or Improvements and/or any construction thereon; (iv) all use permits, occupancy permits, construction and building permits, and all other permits and approvals required by any governmental or quasi-governmental authority in connection with the development, construction, use, occupancy or operation of the Land and/or Improvements; (v) any and all agreements relating to the development, use, occupancy and/or operation of the Land and/or Improvements, including without limitation construction, engineering, architectural, service, property management, landscaping, gardening, consulting and other contracts of every nature (to the extent the same are assignable); (vi) all lease or rental agreements; (vii) all names under which the Land and/or Improvements are known and all rights to carry on business under any such names or any variant thereof; (viii) all trademarks relating to the Land and/or Improvements and/or the development, construction, use, occupancy or operation thereof; (ix) all goodwill relating to the Land and/or Improvements and/or the development, construction, use, occupancy or operation thereof; (x) all insurance proceeds and condemnation awards arising out of or incidental to the ownership, development, construction, use, occupancy or operation of the Land and/or Improvements; (xi) all reserves, deferred payments, deposits, refunds, cost savings, bonds, insurance policies and payments of any kind relating to the Land and/or Improvements; (xii) all water stock, if any, relating to any Land and/or Improvements; (xiii) all supplements, modifications and amendments to the foregoing and all present and future accessions, additions, attachments, replacements and substitutions of or to any or all of the foregoing; and (xiv) all cash and noncash proceeds and products of any or all of the foregoing, including without limitation all monies, deposit accounts, insurance proceeds and other tangible or intangible property received upon a sale or other disposition of any of the foregoing, whether voluntary or involuntary;

(f)     All rights, rights-of-way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances now owned or hereafter acquired by Trustor and used in connection with the Land and the Improvements or as a means of access to either or both;

(g)     Any land now or hereafter lying within the right-of-way of any street adjoining the Land, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Land and Improvements;

(h)     All oil, gas and other mineral rights now or hereafter in or relating to the Land, and all royalty, fee and other rights of Trustor in or relating thereto;

(i)     All water, water rights and riparian rights (including, without limitation, shares of stock evidencing the same) now or hereafter in or relating to the Land;

(j)     All leases and subleases relating to all or any part of the Land and the Improvements or any interest therein, now existing or hereafter entered into, including without limitation all deposits, advance rentals and other payments of a similar nature but not including the Rents, as defined and separately assigned in Article 4;

(k)     All options to purchase or lease all or any part of the Land or Improvements or any interest therein now existing or hereafter acquired (and any greater estate in the Land or Improvements now owned or hereafter acquired pursuant thereto);

(l)     All other estates, easements, licenses, interests, rights, titles, claims or demands, both in law and in equity, which Trustor now has or may hereafter acquire in the Land and the Improvements, including, without limitation, (1) any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of all or any part of the Property, including without limitation any award resulting from a change of grade of streets and any award for severance damages, and (2) any and all proceeds of any insurance covering the Property (whether or not Trustor is required to maintain such insurance pursuant to this Instrument).

## ARTICLE 2.

## SECURED OBLIGATIONS

2.1    <u>Secured Obligations</u>.  This Deed of Trust, and the lien created hereby, is made for the purpose of securing the following obligations (collectively, the "**Secured Obligations**"):

(a)     the payment and performance of all indebtedness and other obligations of Borrower to Beneficiary contained in that certain Secured Revolving Promissory Note and Agreement, dated as of [_____] (as may be amended, restated and/or supplemented from time to time, the "**Note**"), made by Borrower to Beneficiary, in the maximum principal amount of $15,000,000;

(b)     the payment and performance of all indebtedness and other obligations of Borrower or Trustor to Beneficiary contained in this Deed of Trust and the other Loan Documents;

(c)     the payment and performance of all indebtedness and other obligations of Borrower or Trustor, when such indebtedness and obligations are contained in a document which recites that the obligations thereunder are secured by this Deed of Trust;

(d)     the payment by Borrower or Trustor of all amounts advanced by or on behalf of Beneficiary or Trustee to improve, protect or preserve the Property or the security of this Deed of Trust, with interest thereon as provided herein; and

(e)     the payment and performance of all amendments, modifications, extensions, renewals and replacements of or for any of the foregoing (including, without limitation, (i) amendments or modifications of the required principal payment dates or

interest payment dates, or both, as the case may be, accelerating or deferring such interest payment dates in whole or in part, or (ii) amendments, modifications, extensions or renewals at a different rate of interest), whether or not any such amendment, modification, extension, renewal or replacement is evidenced by a new or additional promissory note or other document.

ARTICLE 3.

COVENANTS

3.1    <u>Payment of Secured Obligations</u>.  Borrower shall pay the Secured Obligations when due.

3.2    <u>Maintenance, Repair, Alterations</u>.  Trustor shall maintain and preserve the Property in good condition and repair; Trustor, except upon the prior written consent of Beneficiary, shall not remove, demolish or materially alter any of the Improvements, other than (i) as required to construct the improvements described in the Plans , (ii) to make repairs in the ordinary course of business that serve to preserve or increase the value of the Property, or (iii) as required by law; Trustor shall complete promptly and in a good and workmanlike manner any Improvement which may be now or hereafter constructed on the Land, shall promptly restore in like manner any Improvement which may be materially damaged or destroyed thereon from any cause whatsoever, and shall pay when due all claims for labor performed and materials furnished therefor; Trustor shall comply in all material respects with all applicable laws, rules, regulations, orders and decrees, and all easements, rights of way, covenants, conditions, restrictions and other title limitations, now or hereafter affecting the Property, or any part thereof, or the conduct or operation of Trustor's business; Trustor shall not commit, suffer or permit any act to be done in, upon or to all or any part of the Property in material violation of any such laws, rules, regulations, orders, decrees, easements, rights of way, covenants, conditions, restrictions or other title limitations now or hereafter affecting the Property, or any part thereof, or the conduct or operation of Trustor's business; Trustor shall not commit or permit any material waste or deterioration of the Property, and shall keep and maintain abutting grounds, sidewalks, roads, parking and landscape areas in good and clean order, condition and repair; Trustor shall not take (or fail to take) any action, which if taken (or not so taken) would increase in any material way the risk of fire or other hazard occurring to or affecting the Property or which otherwise would materially impair the security of Beneficiary in the Property; Trustor shall comply with the provisions of all leases, if any, constituting a portion of the Property; Trustor shall not enter into any new management agreement relating to the Property, or into any material amendment of any existing management agreement relating to the Property,  except with the prior written consent of Beneficiary; Trustor shall not enter into any service contract or similar agreement with respect to the Property (other than contracts terminable by Trustor without penalty upon thirty (30) days notice), except with Beneficiary's prior written consent; Trustor shall not abandon the Property or any portion thereof or leave the Property unprotected, unguarded or deserted; Trustor shall not initiate, join in or consent to any change in any zoning ordinance, general plan, specific plan, private restrictive covenant or other public or private restriction limiting the uses which may be made of the Property by Trustor or by the owner thereof without the prior written consent of Beneficiary; Trustor shall secure and maintain in full force and effect all permits reasonably necessary for the use, occupancy and operation of the Property; except as otherwise prohibited or

restricted by the Loan Documents, or any of them, Trustor shall do any and all other acts which may be reasonably necessary to protect or preserve the value of the Property and the rights of Trustee and Beneficiary with respect thereto.

3.3     Insurance.

3.3.1     Policies Required.  Trustor shall at all times maintain in full force and effect, at Trustor's sole cost and expense, with insurers approved by Beneficiary in Beneficiary's discretion, all policies of insurance required pursuant to the terms and provisions of the Loan Documents.

3.3.2     Assignment of Proceeds.  Trustor hereby absolutely and unconditionally assigns to Beneficiary all casualty insurance proceeds and rental/income loss proceeds payable to Trustor under any of the policies described above and under all other policies carried by Trustor with respect to the Property.  In the event that any such proceeds are paid to Trustor in connection with any damage to or destruction of the Improvements, Trustor shall promptly deliver all such proceeds to Beneficiary.

3.3.3     Claims.  Trustor shall give Beneficiary prompt written notice of any casualty to any portion of the Property, whether or not covered by insurance, and any other event covered by insurance.  Trustor hereby authorizes Beneficiary, at Beneficiary's election, to make proof of loss, and to commence, appear in, defend and prosecute any claim or action arising from any applicable policy and to settle, adjust, compromise, and collect any and all claims, proceeds and awards under any such policy, but Beneficiary shall not be liable for any failure to collect all or any portion of any claim, proceeds or award (regardless of the cause of such failure).  Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to, if Trustor is then in default hereunder, beyond any applicable notice and cure period, perform all such acts.  Trustor shall not settle, adjust or compromise any such claim without the prior written approval of Beneficiary.

3.3.4     Application of Proceeds.  Trustor shall deliver all insurance proceeds received by Trustor in connection with any damage to, or destruction of, the Improvements directly to Beneficiary.  All such proceeds shall first be applied to reimburse Beneficiary and Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such proceeds.  The balance of such proceeds shall be applied by Beneficiary to the repayment of the Secured Obligations in such order as Beneficiary shall determine.  No application or release of insurance proceeds shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

3.3.5     Restoration.  Nothing in this Section 3 shall be construed to excuse Trustor from repairing and restoring all damage to the Property in accordance with other Loan Document provisions, regardless of whether insurance proceeds are available, are sufficient or are disbursed and/or released to Trustor.

3.3.6     Assignment of Policies.  In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the Secured Obligations, all right, title and interest of Trustor in and to all policies of

insurance held by Trustor, and all unearned premiums paid thereon, shall, without further act, pass to the purchaser or grantee of the Property.

        3.3.7    <u>Waiver of Subrogation</u>.  Trustor and Borrower hereby waive all right to recover against Beneficiary (or any officer, employee, agent or representative of Beneficiary) for any loss incurred by Trustor or Borrower from any cause insured against or required by any Loan Document to be insured against; provided, however, that this waiver of subrogation shall not be effective with respect to any insurance policy if the coverage thereunder would be materially reduced or impaired as a result.  Trustor shall use its best efforts to obtain only policies which permit the foregoing waiver of subrogation.

        3.4    <u>Condemnation and Other Awards</u>.  Upon learning of the condemnation or other taking for public or quasi-public use of, or of the institution or the threatened institution of any action or proceeding for the condemnation or other taking for public or quasi-public use of, all or any part of the Property, Trustor shall give Beneficiary and Trustee prompt written notice of such fact.  Trustor shall take all actions reasonably required by Beneficiary or Trustee in connection therewith to defend and protect the interests of Trustor, Beneficiary and/or Trustee in the Property.  At Beneficiary's option, Beneficiary or Trustor may be the nominal party in such action or proceeding but in any event Beneficiary shall be entitled, without regard to the adequacy of its or their security, to commence, appear in, defend, prosecute, settle, adjust and/or compromise any such action or proceeding.  Trustor hereby absolutely and unconditionally assigns to Beneficiary, as security for the Secured Obligations, all compensation, awards, damages and other amounts (collectively, "**proceeds**") payable to Trustor in connection with any condemnation or other taking of all or any part of the Property for public or semi-public use (including, but not limited to, the proceeds of any settlement, regardless of whether or not condemnation or other taking proceedings are instituted in connection therewith).  Upon receipt, Trustor shall immediately deliver all such proceeds to Beneficiary.  All such proceeds shall first be applied to reimburse Beneficiary and Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such proceeds.  The balance of such proceeds shall be applied by Beneficiary to the repayment of the Secured Obligations in such order as Beneficiary shall determine.  Application or release of such proceeds as provided herein shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

        3.5    <u>Taxes and Impositions</u>.  Trustor shall pay, prior to delinquency, all of the following (collectively, the "**Impositions**"):  (a) all general and special real property taxes and assessments imposed on the Property; (b) all other taxes and assessments and charges of every kind that are assessed upon the Property (or upon the owner and/or operator of the Property) and that create or may create a lien upon the Property (or upon any Personal Property), including, without limitation, non-governmental levies and assessments pursuant to applicable covenants, conditions or restrictions; and (c) all license fees, taxes and assessments imposed on Beneficiary (other than Beneficiary's net income or franchise taxes) which are measured by or based upon (in whole or in part) the amount of the obligations secured by the Property.  If permitted by law, Trustor may pay any Imposition in installments (together with any accrued interest).  Trustor shall not be required to pay any Imposition so long as (i) its validity is being actively contested in good faith and by appropriate proceedings and with respect to which adequate reserves, as determined by Beneficiary in its sole and absolute discretion, have been set aside for payment

thereof, (ii) Trustor has demonstrated to Beneficiary's reasonable satisfaction that leaving such Imposition unpaid pending the outcome of such proceedings could not result in conveyance of the Property in satisfaction of such Imposition or otherwise impair Beneficiary's interest under this Deed of Trust, and (iii) if requested by Beneficiary, Trustor has furnished Beneficiary with a bond or other security satisfactory to Beneficiary in an amount not less than 150% of the applicable claim (including interest and penalties).  Upon conclusion of any such contest, Trustor shall promptly pay the amount of the Imposition as finally determined, together with all interest and penalties payable in connection therewith.  Beneficiary shall have full power and authority to apply any amount deposited with Beneficiary as security to the payment of any unpaid Imposition to prevent the sale or forfeiture of the Property for non-payment.  Upon demand by Beneficiary from time to time, Trustor shall deliver to Beneficiary, within 30 days following the due date of any Imposition, evidence of payment reasonably satisfactory to Beneficiary.  In addition, upon demand by Beneficiary from time to time, Trustor shall furnish to Beneficiary a tax reporting service for the Property of a type and duration, and with a company, reasonably satisfactory to Beneficiary.

3.6     Utilities.  Trustor shall pay when due all gas, electricity, water, sewer and other utility charges which are incurred for the benefit of the Property or which may become a lien against the Property and all other assessments and other charges of a similar nature, public or private, relating to the Property or any portion thereof, regardless of whether or not any such charge is or may become a lien thereon.

3.7     Intentionally omitted.

3.8     Liens.  Trustor or Borrower shall not cause, incur, suffer or permit to exist or become effective any lien, encumbrance or charge upon all or any part of the Property or any interest therein other than the Permitted Encumbrances.  Trustor or Borrower shall promptly discharge, within thirty (30) days of actual notice thereof, by bonding, payment, or insuring over, at Trustor's or Borrower's sole cost and expense, all liens, encumbrances, charges and title limitations upon all or any part of the Property or any interest therein, other than Permitted Encumbrances.  If Trustor or Borrower shall fail to remove and discharge any such lien, encumbrance, charge, or title limitation, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, without notice to or demand on Trustor or Borrower, and without inquiring into the validity of such lien, encumbrance, charge or title limitation or the existence of any defense or offset thereto, either by paying the amount claimed to be due, or by procuring the discharge of such lien, encumbrance, charge or title limitation by depositing in a court a bond or the amount claimed or otherwise giving security for such claim, or in any other manner permitted or required by law.  Trustor or Borrower shall, immediately upon demand therefor by Beneficiary, pay to Beneficiary an amount equal to all costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing right to discharge any such lien, encumbrance, charge or title limitation, together with interest thereon from the date of such expenditure until paid at the Default Rate.

3.9     Accelerating Transfer.  Except as otherwise expressly permitted by the Loan Documents between Beneficiary and Borrower and/or Trustor, which transfers shall not be deemed Accelerating Transfers for purposes of this Section 3.9, Trustor or Borrower shall not

sell, assign, lease or otherwise transfer all or any part of the Property or any interest therein without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole and absolute discretion.  Transfers requiring Beneficiary's prior written consent shall include, without limitation, the following:

      (a)    Voluntary transfers, involuntary transfers and transfers by operation of law;

      (b)    Liens, encumbrances and assignments as security for obligations, whether voluntary or involuntary; and

      (c)    The sale, encumbrance, pledge, assignment, issuance or other transfer of any stock, partnership interests, membership interests, beneficial interests, or other direct or indirect ownership interests in Trustor, or in any corporation, partnership, limited liability company or trust owning any ownership interests in Trustor, or in any partner, member or manager of Trustor or any such other party, whether voluntary, involuntary or by operation of law.  If any sale, assignment, lease or other transfer requiring Beneficiary's consent under this Section 3.9 is made or occurs without Beneficiary's prior written consent, such sale, assignment, lease or other transfer shall constitute an "Accelerating Transfer."  If any Accelerating Transfer occurs, Beneficiary may, in its sole and absolute discretion, declare all Secured Obligations to be immediately due and payable and may invoke any and/or all rights and remedies provided Beneficiary under Article 6 of this Deed of Trust or available at law or in equity.

      3.10   <u>Inspections</u>.  Beneficiary, Trustee and their respective agents, representatives and employees, are each authorized, upon notice reasonable under the circumstances (which may be written or oral), to enter at any time upon any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts Beneficiary and/or Trustee are authorized to perform hereunder or under the terms of any of the Loan Documents.

      3.11   <u>Books and Records</u>.  Trustor shall maintain, or cause to be maintained, in the county in which the Property is located or at Trustor's principal place of business, complete and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property, whether such income or expense be realized by Trustor or by any other person or entity whatsoever excepting persons unrelated to and unaffiliated with Trustor and who leased from Trustor portions of the Property for the purposes of occupying the same.  Upon the written request of Beneficiary, Trustor shall prepare and deliver to Beneficiary such financial statements regarding operation of the Property as Beneficiary may reasonably require.  Beneficiary, and its designees, shall have the right from time to time during normal business hours to examine such books, records and accounts and to make copies and extracts therefrom.

      3.12   <u>Defense of Actions</u>.  Trustor, at no cost or expense to Beneficiary or Trustee, shall appear in and defend any action or proceeding purporting to affect the security of

this Deed of Trust, any of the other Loan Documents, all or any part of the Property or any interest therein, any additional or other security for the obligations secured hereby, or the interests, rights, powers or duties of Beneficiary or Trustee hereunder.  If Beneficiary or Trustee elects to become a party to such action or proceeding, or is made a party thereto, Trustor shall defend and hold Trustee and Beneficiary harmless from all liability, damage, cost and expense incurred by Trustee and Beneficiary, or any of them, by reason of such action or proceeding (including, without limitation, reasonable attorneys' fees and expenses), whether or not such action or proceeding is prosecuted to judgment or decision.

3.13    Protection of Security.  If Borrower fails to make any payment or Trustor or Borrower fail to do any act as and in the manner provided in this Deed of Trust or any of the other Loan Documents, beyond any applicable notice and cure period, Beneficiary and/or Trustee, each in its own discretion, without obligation so to do, without further notice or demand, and without releasing Trustor or Borrower from any obligation, may make or do the same in such manner and to such extent as either may reasonably deem necessary to protect the security of this Deed of Trust.  In connection therewith (without limiting their general powers), Beneficiary and Trustee shall each have and are hereby given the right, but not the obligation: (i) to enter upon and take possession of the Property; (ii) to make additions, alterations, repairs and improvements to the Property which in the reasonable judgment of either may be necessary or proper to keep the Property in good condition and repair; (iii) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Beneficiary or Trustee; (iv) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appears to affect the security of this Deed of Trust or to be or to appear to be prior or superior hereto; and (v) in exercising such powers, to pay all necessary or appropriate costs and expenses and employ necessary or desirable consultants.  In the event of any Event of Default or default hereunder or under any of the other Loan Documents, or in the event Beneficiary reasonably believes that any material adverse change has or may have occurred in the financial or other condition of Trustor or any Guarantor or in the condition or operation of the Property, Beneficiary may, at Trustor's sole cost and expense, reappraise (or have reappraised) the Property.  Any such reappraisal may, at Beneficiary's option, be prepared by an employee of Beneficiary or by a third-party appraiser.  The selection of such appraiser shall be made by Beneficiary in the exercise of its sole and absolute discretion.  Such appraiser shall have the right to enter upon and inspect the Property at all reasonable times and to inspect, copy and make abstracts of all of Trustor's books and records relating to the Property.  Trustor shall cooperate with such appraiser in order to permit such appraiser to prepare such appraisal.  Beneficiary shall not be liable for any act or omission of any such appraiser.

3.14    Beneficiary's Powers.  Without affecting the liability of Trustor or Borrower or any other person liable for the payment of any obligation herein mentioned, and without affecting the lien or charge of this Deed of Trust upon any portion of the Property not then or theretofore released as security for the full amount of all Secured Obligations, Beneficiary may, from time to time and without notice (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation (provided, however, that the consent of Borrower shall be required with respect to the extension or alteration of any unpaid obligation of Borrower to Beneficiary), (iii) waive any provision contained herein or grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at

Beneficiary's option any parcel, portion or all of the Property, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make compositions or other arrangements with debtors in relation thereto.  By accepting payment or performance of any obligation secured by this Deed of Trust after the payment or performance thereof is due or after the filing of a notice of default and election to sell, Beneficiary shall not have thereby waived its rights to require prompt payment and performance, when due, of all of the Secured Obligations secured hereby, or to declare a default for failure so to pay or perform, or to proceed with the sale under any notice of default and election to sell theretofore given by Beneficiary, or with respect to any unpaid balance of the indebtedness secured hereby.  The acceptance by Beneficiary of any sum in an amount less than the sum then due shall not constitute a waiver of the obligation of Borrower to pay the entire sum then due.

   3.15 Intentionally omitted.

   3.16 <u>Costs, Fees and Expenses</u>.  Trustor or Borrower shall pay, on demand, all actual costs, fees, expenses, advances, charges, losses and liabilities paid or incurred by Beneficiary, Trustee and/or Borrower under or in connection with this Deed of Trust, the enforcement of this Deed of Trust, the collection of the Secured Obligations, and/or the exercise of any right, power, privilege or remedy given Beneficiary, Trustee and/or Borrower under this Deed of Trust, including, without limitation (a) foreclosure fees, trustee's fees and expenses, receiver's fees and expenses and trustee's sale guaranty premiums, (b) costs and expenses paid or incurred by Beneficiary, Trustee, Borrower and/or any receiver appointed under this Deed of Trust in connection with the operation, maintenance, management, protection, preservation, collection, sale or other liquidation of the Property, (c) advances made by Beneficiary, Trustee and/or Borrower to complete or partially construct all or any part of any improvements which may have been commenced on the Land or otherwise to protect the security of this Deed of Trust, (d) costs of evidence of title, costs of surveys and costs of appraisals, and (e) the fees, costs and expenses of attorneys, accountants and other consultants; together with interest thereon from the date of expenditure until so paid at the Default Rate.

ARTICLE 4.

ASSIGNMENT OF RENTS, ISSUES AND PROFITS

   4.1 <u>Assignment of Rents, Issues and Profits</u>.  Trustor hereby absolutely and irrevocably assigns and transfers to Beneficiary all of its right, title and interest in and to all rents, issues, profits, royalties, income and other proceeds and similar benefits now or hereafter derived from the Property (collectively, the "**Rents**"), and hereby gives to and confers upon Beneficiary the right, power and authority to collect such Rents.  Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary, at any time and from time to time following the occurrence and during the continuance of an Event of Default, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in its name or in the name of Trustor, for all Rents, and to apply the same to the obligations secured hereby; provided, however, that Trustor shall have a license to collect Rents (but not more than one month in advance unless the written approval of Beneficiary has first been obtained), and to retain and enjoy the same, so long as an Event of Default shall not have occurred hereunder and

be continuing.  The assignment of the Rents in this Article 4 is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest.

       4.2    Collection Upon Default.  Upon the occurrence of an Event of Default hereunder, Trustor's license to collect the Rents shall automatically terminate and Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the obligations hereby secured, enter upon and take possession of the Property, or any part thereof, and, with or without taking possession of the Property or any part thereof, in its own name sue for or otherwise collect such Rents (including those past due and unpaid, and all prepaid Rents and all other monies which may have been or may hereafter be deposited with Trustor by any lessee or tenant of Trustor to secure the payment of any Rent or for any services thereafter to be rendered by Trustor or any other obligation of any tenant to Trustor arising under any lease, and Trustor agrees that, upon the occurrence of any Event of Default hereunder, Trustor shall promptly deliver all Rents and other monies to Beneficiary), and Beneficiary may apply the same, less costs and expenses of operation and collection, including, without limitation, attorneys' fees, whether or not suit is brought or prosecuted to judgment, upon any indebtedness or obligation of Trustor secured hereby, and in such order as Beneficiary may determine notwithstanding that said indebtedness or the performance of said obligation may not then be due.  The collection of Rents, or the entering upon and taking possession of the Property, or the application of Rents as provided above, shall not cure or waive any default or notice of default hereunder or invalidate any act performed in response to such default or pursuant to such notice of default or be deemed or construed to make Beneficiary a mortgagee-in-possession of all or any part of the Property.

       4.3    Further Assignments.  Upon Beneficiary's demand Trustor shall, from time to time hereafter, execute and deliver to Beneficiary recordable assignments of Trustor's interest in any and all leases, subleases, contracts, rights, licenses and permits now or hereafter affecting all or any part of the Property.  Such assignments shall be made by instruments in form and substance satisfactory to Beneficiary; provided, however, that no such assignment shall be construed as imposing upon Beneficiary any obligation with respect thereto.  Beneficiary may, at its option, exercise its rights hereunder or under any such specific assignment and such exercise shall not constitute a waiver of any right hereunder or under any such specific assignment.

ARTICLE 5.

SECURITY AGREEMENT

       5.1    Grant of Security Interest.  This Deed of Trust shall constitute a security agreement as that term is used in the California Uniform Commercial Code and, as security for all Secured Obligations, Trustor hereby grants to Beneficiary a security interest in all of Trustor's right, title and interest, whether now existing or hereafter arising, in and to any portion of the Property which constitutes personal property (the "**Personal Property**").

       5.2    Representations and Warranties.  Trustor hereby represents and warrants to Beneficiary that:  (a) Trustor is the owner of the Personal Property, has the right, power and authority to grant, convey and assign the Personal Property, and no other person has any right, title, claim or interest (by way of security interest or other lien or charge or otherwise) in, against

or to the Personal Property, other than arising from the Permitted Encumbrances; (b) the Personal Property is free from all liens, security interests, encumbrances and adverse interests, except Permitted Encumbrances; (c) no financing statement or similar filing covering any of the Personal Property, and naming any secured party other than Beneficiary and the holders of Permitted Encumbrances, is on file in any public office; (d) each account, general intangible, chattel paper, deposit account, instrument, document, agreement, consent or right to the payment of money constituting Personal Property (collectively, the "**Rights to Payment**"), if any, is genuine and enforceable in accordance with its terms against the party obligated to pay the same and (e) the Personal Property is not used nor was the Personal Property purchased for personal or family use by Trustor.

        5.3    <u>Covenants</u>.  Trustor hereby agrees:  (a) to pay, prior to delinquency, all taxes, assessments, charges, encumbrances and liens now or hereafter imposed upon or affecting all or any part of the Personal Property; (b) not to amend, modify, supplement, terminate or cancel any of the Personal Property, other than in a non-material way in the ordinary course of business; (c) without the prior written consent of Beneficiary, not to remove all or any part of the tangible Personal Property from the Property, other than in a non-material way in the ordinary course of business; (d) to give Beneficiary thirty (30) days' prior written notice of any change in Trustor's principal place of business, chief executive office or trade names or styles; (e) to appear in and defend any action or proceeding which may affect the Personal Property (including, without limitation, actions, proceedings and claims which may affect Trustor's title to the Personal Property or the validity or priority of Beneficiary's security interest in the Personal Property); and (f) to permit Beneficiary to enter Trustor's premises to inspect the Personal Property.  Trustor further agrees (a) to fully and timely perform all of its obligations under and with respect to all Rights to Payment and to diligently enforce all of the obligations of each obligor thereunder; (b) not to amend, modify, supplement, cancel or terminate any of the Rights to Payment in any material respect without the prior written consent of Beneficiary; (c) to keep the Rights to Payment and all proceeds free and clear of all defaults, defenses, rights of offset and counterclaim; (d) if requested by Beneficiary, to receive and use reasonable diligence to collect, in trust and as the property of Beneficiary, proceeds of Rights to Payment and to immediately endorse as appropriate and deliver such proceeds to Beneficiary daily in the exact form in which they are received together with a collection report in form satisfactory to Beneficiary; (e) to take or bring, in Beneficiary's name or in the name of Trustor, as Beneficiary may require, all actions, suits or proceedings deemed reasonably necessary or desirable by Beneficiary to effect collection or to realize upon Rights to Payment; (f) not to commingle Rights to Payment or collections thereunder with other property.  As soon as practicable, and in any event within ten (10) days, Trustor or Borrower shall notify Beneficiary of:  (a) any attachment or other legal process levied against any of the Personal Property; (b) any information received by Trustor or Borrower which may in any manner materially and adversely affect the value of the Personal Property or the rights and remedies of Beneficiary with respect thereto; and (c) the removal of any of the Personal Property to a new location and the removal of any records of Trustor relating to the Personal Property to any location other than the Land and Improvements.  Trustor and Borrower each hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact to, after the occurrence and during the occurrence of an Event of Default, (a) perform any obligation of Trustor or Borrower  hereunder in Trustor's or Borrower's name, as the case may be, or otherwise; (b) give notice of Beneficiary's rights in the Rights to Payment, to enforce the same, and make extension agreements with respect thereto;

(c) release persons liable on the Rights to Payment and to give receipts and acquittances and compromise disputes in connection therewith; (d) release security for the Rights to Payment; (e) resort to security for the Rights to Payment in any order; (f) prepare, execute, file, record or deliver Note, assignments, schedules, designation statements, financing statements, continuation statements, termination statements, and other documents to perfect preserve or release Beneficiary's interest in the Rights to Payment; (g) do all acts and things and execute all documents in the name of Trustor or Borrower or otherwise, deemed by Beneficiary as necessary, proper and convenient in connection with the preservation, perfection or enforcement of its rights hereunder.  The power of attorney granted hereunder is coupled with an interest and is irrevocable.

## ARTICLE 6.

### EVENTS OF DEFAULT
### AND
### REMEDIES UPON DEFAULT

6.1    Events of Default.  The occurrence of any of the following events or conditions shall constitute an event of default ("**Event of Default**") hereunder:

6.1.1    Borrower fails to pay to Beneficiary any payment of principal and/or interest payable under the Note when due, subject to any applicable cure periods contained in the Note; or

6.1.2    Borrower fails to pay any other amount payable hereunder when due, subject to any applicable cure periods contained in the Note; or

6.1.3    Borrower or Trustor fail to observe or perform any other obligation contained in this Deed of Trust, subject to any applicable cure periods contained in the Note; or

6.1.4    The occurrence of an "Event of Default" under the Note or any of the other Loan Documents, subject to any applicable cure periods contained therein; or

6.1.5    A default under any other document or agreement secured hereby, subject to any applicable cure period.

6.2    Acceleration Upon Default; Additional Remedies.  Upon the occurrence of an Event of Default, Beneficiary may, at its option, terminate the obligations of the Beneficiary under the Loan Documents and declare all Secured Obligations to be immediately due and payable without any presentment, demand, protest or further notice of any kind; and whether or not Beneficiary exercises said option, Beneficiary may:

6.2.1    Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or any part thereof or interest therein, increase

the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection including attorneys' fees, upon any Secured Obligations, all in such order as Beneficiary may determine. The entering upon and taking possession of the Property, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession by Trustee, Beneficiary or a receiver of all or any portion of the Property or the collection, receipt and application of any of the Rents, the Trustee and Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale;

      6.2.2     Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants contained herein;

      6.2.3     Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the official records of the County in which the Property is located;

      6.2.4     Exercise any and/or all of the rights and remedies available to a secured party under the California Uniform Commercial Code in such order and in such manner as Beneficiary, in its sole discretion, may determine (including, without limitation, requiring Trustor to assemble any collateral and make such collateral available to Beneficiary at a reasonably convenient location or location); provided, however, that the expenses of retaking, holding, preparing for sale or the like as provided thereunder shall include reasonable attorneys' fees and other expenses of Beneficiary and Trustee and shall be additionally secured by this Deed of Trust; and/or

      6.2.5     Exercise all other rights and remedies provided herein, in any Loan Document or other document or agreement now or hereafter securing all or any portion of the obligations secured hereby, or provided by law or in equity.

      6.3     Foreclosure By Power of Sale.

      6.3.1     Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the unpaid Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

      6.3.2     Upon receipt of notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law. Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as

Beneficiary may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

6.3.3    After deducting all fees, costs and expenses incurred by Beneficiary or Trustee in connection with such sale, including costs of evidence of title, Beneficiary shall apply the proceeds of sale, in the following priority, to payment of (i) first, all amounts expended under the terms hereof, not then repaid, with accrued interest at the Default Rate; (ii) second, all other Secured Obligations; and (iii) the remainder, if any, to the person or persons legally entitled thereto.

6.3.4    Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

6.3.5    A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein; and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

6.4    <u>Appointment of Receiver</u>. Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, as a matter of right and without notice to Trustor, Borrower or anyone claiming under Trustor, and without regard to the then value of the Property or any interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

6.5    <u>Application of Funds After Default</u>. Except as otherwise herein provided, upon the occurrence of an Event of Default hereunder, Beneficiary may, at any time without notice, apply any or all sums or amounts received and held by Beneficiary to pay insurance premiums, Impositions, or either of them, or as rents or income of the Property, or as insurance or condemnation proceeds, and all other sums or amounts received by Beneficiary from or on account of Trustor, Borrower or the Property, or otherwise, upon any Secured Obligation, in such manner and order as Beneficiary may elect, notwithstanding that such Secured Obligation may not yet be due. The receipt, use or application of any such sum or amount shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust, or any of the rights or powers of Beneficiary or Trustee under the terms of the Loan Documents, or any of the

obligations of Trustor, Borrower or any guarantor under the Loan Documents; or to cure or waive any default or notice of default under any of the Loan Documents; or to invalidate any act of Trustee or Beneficiary.

6.6     Remedies Not Exclusive.  Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligation secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Document or other agreement or any law now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by guaranty, mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's rights to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security for the obligations hereby secured now or hereafter held by Beneficiary or Trustee in such order and manner as they may in their absolute discretion determine.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, or granted to Beneficiary under any other agreement, or by law or equity provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder, or granted to Beneficiary under any other agreement, or now or hereafter existing at law or in equity or by statute.  Every power or remedy given by any of the Loan Documents to the Trustee or Beneficiary or to which any of them may be otherwise entitled may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Trustee or Beneficiary, and any of them may pursue inconsistent remedies.  Trustor may be joined in any action brought by Beneficiary to foreclose under or otherwise enforce this Deed of Trust.

6.7     Request for Notice.  Trustor hereby requests that a copy of any notice of default and that a copy of any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

ARTICLE 7.

MISCELLANEOUS

7.1     Amendments.  This instrument cannot be waived, modified, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, modification, discharge or termination is sought.

7.2     Waivers.  Trustor waives, to the extent permitted by law, (i) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, and, whether now existing or hereafter arising or created, (ii) all rights of valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created, and (iii) all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties.

7.3     Suretyship Waivers.

7.3.1     If Trustor is liable for only a portion of the Indebtedness, Trustor hereby waives its rights under California Civil Code Section 2822(a) to designate the portion of the Secured Obligations that shall be satisfied by Borrower's partial payment.

7.3.2     Trustor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agrees that by doing so Trustor shall be liable even if Borrower had no liability at the time of execution of the Note, this Deed of Trust or any other Loan Document, or thereafter ceases to be liable.  Trustor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agrees that by doing so, Trustor's liability may be larger in amount and more burdensome than that of Borrower.  Trustor also waives, to the fullest extent permitted by law, any and all benefits under California Civil Code Sections 2845, 2849 and 2850.

7.3.3     Beneficiary's security interest in the Property shall not be affected, modified or impaired by the occurrence of any of the following events, whether or not with notice to, or the consent of, Trustor:  (i) the waiver, surrender, compromise, settlement, release or termination of any or all of the obligations secured hereunder or in any of the other Loan Documents; (ii) the failure to give notice to Trustor of the occurrence of any breach, default or event of default under any of the Loan Documents; (iii) the extension of time for the payment, performance, satisfaction or discharge of any or all of the Secured Obligations; (iv) the amendment or modification (whether material or otherwise) of the Secured Obligations in any respect; (v) any failure, omission, delay or lack on the part of the Beneficiary to enforce, assert or exercise any right, power or remedy conferred on the Beneficiary under any of the Documents; (vi) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all of the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or adjustment of debts, or other similar proceedings affecting Borrower or any of its assets, (vii) any failure by Beneficiary to create a valid lien or security interest in any collateral or security for any or all of the Secured Obligations or to perfect any such lien or security interest; (viii) the release or discharge by operation of law of Borrower from the payment, performance, satisfaction or discharge of any or all of the Secured Obligations; or (ix) the invalidity or unenforceability of any or all of the Secured Obligations.

7.3.4     Trustor assumes the responsibility for being informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of failure to pay, perform, satisfy or discharge any of the Secured Obligations which diligent inquiry would reveal, and Trustor agrees that Beneficiary has no duty to advise Trustor of information known to Beneficiary regarding such condition or any such circumstance.  It is not necessary for Beneficiary to inquire into the capacity, authority or powers of Borrower or the partners, directors, officers, employees, agents or representatives acting or purporting to act on behalf of Borrower and all of the Secured Obligations made or created in reliance upon the purported exercise of such powers shall be secured by Beneficiary's security interest in the Property.  Until all of the Secured Obligations have been paid in full, (i) foreclosure by Beneficiary of its security interest in the Property shall not give Trustor any right of subrogation to any rights or remedies of the Beneficiary against Borrower or any collateral or security for any or all of the Secured

Obligations, and (ii) Trustor waives all rights of subrogation or reimbursement with respect to Borrower that might otherwise arise as a result of the foreclosure described in the preceding sentence.

7.4    <u>Statements by Trustor or Borrower</u>.  Trustor or Borrower shall, within ten (10) days after notice thereof from Beneficiary, deliver to Beneficiary a written statement setting forth the amounts then unpaid and secured by this Deed of Trust and stating whether any offset or defense exists against such amounts.

7.5    <u>Statements by Beneficiary</u>.  For any statement or accounting requested by Trustor, Borrower or any other entitled person pursuant to any provision of applicable law, or for any other document or instrument furnished to Trustor or Borrower by Beneficiary, Beneficiary may charge the maximum amount permitted by law at the time of the request therefor, or if there be no such maximum, then in accordance with Beneficiary's customary charges therefor or the actual cost to Beneficiary therefor, whichever is greater.

7.6    <u>Reconveyance by Trustee</u>.  Upon written request of Beneficiary stating that all Secured Obligations have been paid and fully performed, and upon surrender by Beneficiary of this Deed of Trust to Trustee for cancellation and retention and upon payment by Trustor or Borrower of Trustee's fees and the costs and expenses of executing and recording any requested reconveyance, Trustee shall reconvey to the person or persons legally entitled thereto, without warranty, any portion of the Property then held hereunder.  The recitals in any such reconveyance of any matter or fact shall be conclusive proof of the truthfulness thereof.  The grantee in any such reconveyance may be described as "the person or persons legally entitled thereto."

7.7    <u>Notices</u>.  All notices, demands, approvals and other communications provided for herein shall be in writing and shall be personally delivered or mailed by United States mail, as certified or registered material, return receipt requested, postage prepaid, or sent by recognized air courier, to the appropriate party at the address set forth in the first paragraph of this Deed of Trust.  Addresses for notice may be changed from time to time by written notice to all other parties.  All communications shall be effective when actually received; provided, however, that nonreceipt of any communication as the result of a change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

7.8    <u>Acceptance by Trustee</u>.  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The trust created hereby is irrevocable by Trustor.

7.9    <u>Headings</u>.  Article and section headings are included in this Deed of Trust for convenience of reference only and shall not be used in construing this Deed of Trust.

7.10    <u>Severability</u>.  Every provision of this Deed of Trust is intended to be severable.  In the event any provision hereof is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or

unenforceability shall not affect the legality, validity or enforceability of the remaining provisions hereof, which provisions shall remain binding and enforceable.

        7.11   <u>Subrogation</u>.  To the extent that proceeds of the Note are used, either directly or indirectly, to pay any outstanding lien, charge or prior encumbrance against the Property, Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

        7.12   <u>No Merger of Lease</u>.  Upon the foreclosure of the lien created by this Deed of Trust on the Property pursuant to the provisions hereof, any lease or sublease then existing and affecting all or any portion of the Property shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless the Beneficiary or any purchaser at such foreclosure sale shall so elect.  No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice of termination to such tenant or subtenant.  If both the lessor's and lessee's estate under any lease or any portion thereof which constitutes a part of the Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger unless Beneficiary so elects as evidenced by recording a written declaration so stating, and, unless and until Beneficiary so elects, Beneficiary shall continue to have and enjoy all of the rights, powers and privileges of Beneficiary hereunder as to the separate estates.

        7.13   <u>Governing Law; Venue; Judicial Reference</u>.

        7.13.1   THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF CALIFORNIA.  Trustor hereby (a) submits to the exclusive jurisdiction of the courts of the Central District of Los Angeles County of the State of California or, if jurisdiction can be obtained, in any federal court in the Los Angeles Division of the Central District of California for the purpose of any action or proceeding arising out of or relating to this Instrument or the other Loan Documents, such venue which may be determined in the sole discretion of the Beneficiary, (b) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (c) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts in and of the State of California, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum, and (d) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.  In the event that any provision of this Instrument is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law.  Any such provision which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of this Instrument.  Nothing contained herein shall be deemed or operate to preclude the Beneficiary from bringing suit or taking other legal action

against the Borrower in any other jurisdiction to collect on the Trustor's obligations to the Beneficiary, to realize on any collateral or any other security for such obligations, or to enforce a judgment or other court ruling in favor of the Beneficiary.

7.13.2     TRUSTOR AND BENEFICIARY EACH HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS INSTRUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.13.3     IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "**COURT**") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS INSTRUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) (EACH, A "**CLAIM**") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

(a)     WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SECTION 7.13.3(c) BELOW, ANY CLAIM WILL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638. EXCEPT AS OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, VENUE FOR THE REFERENCE PROCEEDING WILL BE IN THE STATE OR FEDERAL COURT IN THE COUNTY OR DISTRICT WHERE VENUE IS OTHERWISE APPROPRIATE UNDER APPLICABLE LAW.

(b)     THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (1) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (2) EXERCISE OF SELF-HELP REMEDIES (INCLUDING, WITHOUT LIMITATION, SET-OFF), (3) APPOINTMENT OF A RECEIVER AND (4) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING, WITHOUT LIMITATION, WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS AGREEMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO

EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (4) ABOVE AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THIS AGREEMENT.

(c)     UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE.  IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN (10) DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B).

(d)     ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT.  THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(e)     THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES.  THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA. THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE STATE AND FEDERAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING, WITHOUT LIMITATION, MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT.  THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

(f)     THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY.

7.14    Statute of Limitations.  The right to plead, use or assert any statute of limitations as a plea, defense or bar of any kind, or for any purpose, to any obligation secured hereby, or to any complaint or other pleading or proceeding filed, instituted or maintained for the purpose of enforcing this Deed of Trust or any rights hereunder, is hereby waived by Trustor to the full extent permitted by law.

7.15   <u>Interpretation</u>.  In this Deed of Trust the singular shall include the plural and the masculine shall include the feminine and neuter and vice versa, if the context so requires; and the word "person" shall include corporation, partnership or other form of association.  Any reference in this Deed of Trust to any document, instrument or agreement creating or evidencing an obligation secured hereby shall include such document, instrument or agreement both as originally executed and as it may from time to time be modified.

7.16   <u>Trust Irrevocable</u>.  The trust created hereby is irrevocable by Trustor.  All amounts payable by Borrower pursuant to this Deed of Trust shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction.  Trustor hereby waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any amount secured hereby and payable by Borrower to Beneficiary or Trustee.

7.17   <u>Further Assurances</u>.  Trustor agrees to do or cause to be done such further acts and things and to execute and deliver or to cause to be executed and delivered such additional assignments, agreements, powers and instruments, as Beneficiary or Trustee may reasonably require or deem advisable to correct any defect, error or omission in this Deed of Trust or the execution or acknowledgment of this Deed of Trust, to subject to the lien of this Deed of Trust any of Trustor's properties covered or intended to be covered hereby, to perfect and maintain such lien, to keep valid and effective the charges and lien hereof, to carry into effect the purposes of this Deed of Trust or to better assure and confirm to Beneficiary or Trustee their respective rights, powers and remedies hereunder.

7.18   <u>Trustee's Powers</u>.  At any time, and from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness or the performance of any other obligation secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee shall (i) reconvey all or any part of the Property, (ii) consent in writing to the making of any map or plat or subdivision thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement, agreement subordinating the lien or charge hereof, or other agreement or instrument relating hereto or to all or any part of the Property.

7.19   <u>Substitution of Trustee</u>.  Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, or by any other procedure permitted by applicable law, substitute a successor or successors for the Trustee named herein or acting hereunder.

7.20   <u>Successors and Assigns</u>.  Subject to Section 3.9, above, this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, Trustor has duly executed this Deed of Trust as of the date first above written.

**TRUSTOR:**

**MERUELO CHINATOWN, LLC,**
a California limited liability company

By: _____
    Name:
    Title:

STATE OF _____

COUNTY OF _____

On _____, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____      [Seal]
Notary Public

My Commission Expires:

**Exhibit A**

Legal Description*


[APN: 5409-007-003

That certain real property located in the City and County of Los Angeles, State of California, more particularly described as follows:

Lot 1 of Tract No. 19617, in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 558 Pages 45 and 46 of Maps, in the Office of the County Recorder of said County.

Except therefrom all minerals and mineral rights, interests and royalties, including without limitation, all oil, gas and other hydrocarbon substances, as well as metallic or other solid minerals of whatever kind or character, whether now known or hereafter discovered, in and under the land below a depth of 500 feet under the surface without regard to the manner in which the same may be produced or extracted from the land, but without any right to enter upon or through the surface down to 500 feet below the surface to extract, drill, explore or otherwise exploit such minerals or mineral rights and without any right to remove or impair lateral or subjacent support as excepted by Southern Pacific Transportation Company, in that certain Deed recorded December 21, 1990, as Instrument No. 90-2105717, Official Records.

Address: 129 West College Street, Los Angeles, California 90012]


**\* The above legal description may be amended, modified or substituted in whole or in part subject to final review and determination of the Land pledged as security in this Deed of Trust.**

## EXHIBIT B

## FINANCING STATEMENT INFORMATION

1.  Name and Address of Debtor:          Meruelo Chinatown, LLC
                                         [ADDRESS]

2.  Debtor's State of Organization and Organizational I.D.#:

    State of Formation:                  California

    Type of Entity:                      limited liability company

    Organizational I.D.#:                [_____]

3.  Name and Address of Secured Party:   MMPI Acquisition, LLC
                                         [ADDRESS]

4.  The Collateral is:                   Fixtures, as that term is described in the
                                         Uniform Commercial Code of California
                                         attached to the Land described in Exhibit A
                                         attached to this Instrument.

**EXHIBIT E**

Recording requested by, and
when recorded return to:

Paul, Hastings, Janfosky & Walker LLP
515 S. Flower Street
25th Floor
Los Angeles, California 90071
Attention:  Cynthia Cohen, Esq.

---

**DEED OF TRUST, ASSIGNMENT OF RENTS,
SECURITY AGREEMENT AND FIXTURE FILING
(CALIFORNIA)**

**ATTENTION COUNTY RECORDER:  THIS INSTRUMENT IS INTENDED TO BE
EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING
PURSUANT TO SECTION 9502 OF THE CALIFORNIA COMMERCIAL CODE.
PORTIONS OF THE GOODS COMPRISING A PART OF THE MORTGAGED
PROPERTY ARE OR ARE TO BECOME FIXTURES RELATED TO THE LAND
DESCRIBED IN EXHIBIT A HERETO.  THIS INSTRUMENT IS TO BE FILED FOR
RECORD IN THE RECORDS OF THE COUNTY WHERE DEEDS OF TRUST ON
REAL PROPERTY ARE RECORDED AND SHOULD BE INDEXED AS BOTH A DEED
OF TRUST AND AS A FINANCING STATEMENT COVERING FIXTURES.  THE
ADDRESSES OF BORROWER (DEBTOR) AND BENEFICIARY (SECURED PARTY)
ARE SPECIFIED IN THE FIRST PARAGRAPH ON PAGE 1 OF THIS INSTRUMENT.**

## DEED OF TRUST, ASSIGNMENT
## OF LEASES AND RENTS,
## SECURITY AGREEMENT AND FIXTURE FILING

This Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Instrument**" or "**Deed of Trust**"), dated as of [_____], is executed by MERUELO MADDUX - 230 W. AVENUE 26, LLC, a Delaware limited liability company ("**Trustor**"), as trustor, whose address is [_____], in favor of FIRST AMERICAN TITLE INSURANCE COMPANY ("**Trustee**"), as trustee, whose address is 520 North Central Avenue, Glendale, California  91203, for the benefit of MMPI ACQUISITION, LLC, a Delaware limited liability company, or its registered assigns ("**Beneficiary**"), as beneficiary, whose address is [_____], (collectively, the "**Parties**").  Each capitalized term used herein and not otherwise defined herein shall have the meaning given such term in the "**Note**" (as defined below).

The Loan (as defined below) is made and the Indebtedness is evidenced by the Note in the maximum principal amount of Fifteen Million and No/100, ($15,000,000), maturing as of the Maturity Date (as defined in the Note) and secured by this Instrument.

## RECITALS.

**WHEREAS,** Beneficiary has agreed to advance to Meruelo Maddux Properties, Inc., a Delaware corporation ("**Borrower**") a loan in the maximum principal amount of $15,000,000, or so much thereof as may be advanced and be outstanding pursuant to the terms of the Note (the "**Loan**").

**WHEREAS**, Trustor is a wholly owned Subsidiary (as defined in the Note) of Borrower and is lawfully seized of the Property and has the right, power and authority to grant, convey and assign the Property, and that the Property is unencumbered except for such encumbrances as shall not render title to the Property unmarketable (the "**Permitted Encumbrances**").

**WHEREAS,** Borrower is a parent to several Subsidiaries and has utilized and, under the Plan (as defined in the Note), will continue to utilize surplus funds from all of its Subsidiaries for the benefit of other Subsidiaries and the aggregate operations of Borrower and its Subsidiaries as Borrower deems necessary.

TO SECURE TO BENEFICIARY and its successors and assigns the repayment of the Indebtedness evidenced by the Note executed by Borrower and maturing on the Maturity Date (as defined in the Note), and all renewals, extensions and modifications of the Indebtedness, including, without limitation, the payment of all sums advanced by or on behalf of Beneficiary to protect the security of this Instrument and the performance of the covenants and agreements of Borrower contained in the Loan Documents.

This Instrument is also a financing statement and a fixture filing under the Uniform Commercial Code of the Property Jurisdiction and the information set forth on Exhibit B is included for that purpose.

# ARTICLE 1.

# GRANT OF SECURITY

1.1    Grant of Security.  FOR GOOD AND VALUABLE CONSIDERATION, including the indebtedness herein recited and the trust herein created, the receipt and adequacy of which are hereby acknowledged, Trustor hereby irrevocably grants, transfers and assigns to Trustee, IN TRUST, WITH POWER OF SALE, AND RIGHT OF ENTRY AND POSSESSION, for the benefit and security of Beneficiary, all rights, titles, interests, estates, powers and privileges that Trustor now has or may hereafter acquire in or to the following property and interests therein (collectively, the "**Property**"):

(a)    Trustor's undivided interest in that certain real property ("**Land**") in the County of Los Angeles, State of California, more particularly described on Exhibit A attached hereto;

(b)    All buildings and other improvements now or hereafter located on the Land, including, but not limited to, the Fixtures (as defined below) and any and all other equipment, machinery, appliances and other articles attached to such buildings and other improvements (collectively, the "**Improvements**");

(c)    All fixtures (collectively, the "**Fixtures**") now or hereafter located on, attached to, installed in or used in connection with the Land and the Improvements, including without limitation all partitions, generators, screens, awnings, boilers, furnaces, pipes, plumbing, elevators, cleaning, call and sprinkler systems, fire extinguishing machinery and equipment, water tanks, heating, ventilating, air conditioning and air cooling machinery and equipment, gas and electric machinery and equipment, and other equipment, machinery and appliances and other fixtures of every kind and nature;

(d)    All present and future goods, equipment and inventory, as those terms are defined in the California Commercial Code, and all other present and future personal property of any kind or nature whatsoever, now or hereafter located at, upon or about the Land and/or Improvements, or used or to be used in connection with or relating or arising with respect to the Land and/or Improvements, or used or to be used in connection with or relating or arising with respect to the Land and/or Improvements, the use thereof or any improvements thereto, including without limitation all present and future furniture, furnishings, fixtures, goods, machinery, plumbing and plumbing material and supplies, concrete, lumber, hardware, electrical wiring and electrical material and supplies, heating and air conditioning material and supplies, roofing material and supplies, window material and supplies, doors, paint, drywall, insulation, cabinets, ceramic material and supplies, flooring, carpeting, appliances, fencing, landscaping and all other materials, supplies and property of every kind and nature;

(e)    All present and future accounts, general intangibles, chattel paper, deposit accounts, investment property, instruments and documents as those terms are defined in the California Uniform Commercial Code, now or hereafter relating or arising with respect to the Land and/or Improvements and/or the use thereof or any

improvements thereto, including without limitation:  (i) all rights to the payment of money, including escrow proceeds arising out of the sale or other disposition of all or any portion of the Land and/or Improvements; (ii)  any other deposit accounts and other accounts and funds created under or pursuant to the Loan Documents, all amounts on deposit therein, and all interest and other earnings thereon; (iii) all plans, specifications, drawings and other documents and materials relating to the development of the Land and/or Improvements and/or any construction thereon; (iv) all use permits, occupancy permits, construction and building permits, and all other permits and approvals required by any governmental or quasi-governmental authority in connection with the development, construction, use, occupancy or operation of the Land and/or Improvements; (v) any and all agreements relating to the development, use, occupancy and/or operation of the Land and/or Improvements, including without limitation construction, engineering, architectural, service, property management, landscaping, gardening, consulting and other contracts of every nature (to the extent the same are assignable); (vi) all lease or rental agreements; (vii) all names under which the Land and/or Improvements are known and all rights to carry on business under any such names or any variant thereof; (viii) all trademarks relating to the Land and/or Improvements and/or the development, construction, use, occupancy or operation thereof; (ix) goodwill relating to the Land and/or Improvements and/or the development, construction, use, occupancy or operation thereof; (x) all insurance proceeds and condemnation awards arising out of or incidental to the ownership, development, construction, use, occupancy or operation of the Land and/or Improvements; (xi) all reserves, deferred payments, deposits, refunds, cost savings, bonds, insurance policies and payments of any kind relating to the Land and/or Improvements; (xii) all water stock, if any, relating to any Land and/or Improvements; (xiii) all supplements, modifications and amendments to the foregoing and all present and future accessions, additions, attachments, replacements and substitutions of or to any or all of the foregoing; and (xiv) all cash and noncash proceeds and products of any or all of the foregoing, including without limitation all monies, deposit accounts, insurance proceeds and other tangible or intangible property received upon a sale or other disposition of any of the foregoing, whether voluntary or involuntary;

(f)     All rights, rights-of-way, easements, licenses, profits, privileges, tenements, hereditaments and appurtenances now owned or hereafter acquired by Trustor and used in connection with the Land and the Improvements or as a means of access to either or both;

(g)     Any land now or hereafter lying within the right-of-way of any street adjoining the Land, and any and all sidewalks, alleys and strips and gores of land adjacent to or used in connection with the Land and Improvements;

(h)     All oil, gas and other mineral rights now or hereafter in or relating to the Land, and all royalty, fee and other rights of Trustor in or relating thereto;

(i)     All water, water rights and riparian rights (including, without limitation, shares of stock evidencing the same) now or hereafter in or relating to the Land;

(j)      All leases and subleases relating to all or any part of the Land and the Improvements or any interest therein, now existing or hereafter entered into, including without limitation all deposits, advance rentals and other payments of a similar nature but not including the Rents, as defined and separately assigned in Article 4;

(k)      All options to purchase or lease all or any part of the Land or Improvements or any interest therein now existing or hereafter acquired (and any greater estate in the Land or Improvements now owned or hereafter acquired pursuant thereto);

(l)      All other estates, easements, licenses, interests, rights, titles, claims or demands, both in law and in equity, which Trustor now has or may hereafter acquire in the Land and the Improvements, including, without limitation, (1) any and all awards made for the taking by eminent domain, or by any proceeding or purchase in lieu thereof, of all or any part of the Property, including without limitation any award resulting from a change of grade of streets and any award for severance damages, and (2) any and all proceeds of any insurance covering the Property (whether or not Trustor is required to maintain such insurance pursuant to this Instrument).

ARTICLE 2.

SECURED OBLIGATIONS

2.1      Secured Obligations.  This Deed of Trust, and the lien created hereby, is made for the purpose of securing the following obligations (collectively, the "**Secured Obligations**"):

(a)      the payment and performance of all indebtedness and other obligations of Borrower to Beneficiary contained in that certain Secured Revolving Promissory Note and Agreement, dated as of [_____] (as may be amended, restated and/or supplemented from time to time, the "**Note**"), made by Borrower to Beneficiary, in the maximum principal amount of $15,000,000;

(b)      the payment and performance of all indebtedness and other obligations of Borrower or Trustor to Beneficiary contained in this Deed of Trust and the other Loan Documents;

(c)      the payment and performance of all indebtedness and other obligations of Borrower or Trustor, when such indebtedness and obligations are contained in a document which recites that the obligations thereunder are secured by this Deed of Trust;

(d)      the payment by Borrower or Trustor of all amounts advanced by or on behalf of Beneficiary or Trustee to improve, protect or preserve the Property or the security of this Deed of Trust, with interest thereon as provided herein; and

(e)      the payment and performance of all amendments, modifications, extensions, renewals and replacements of or for any of the foregoing (including, without limitation, (i) amendments or modifications of the required principal payment dates or

interest payment dates, or both, as the case may be, accelerating or deferring such interest payment dates in whole or in part, or (ii) amendments, modifications, extensions or renewals at a different rate of interest), whether or not any such amendment, modification, extension, renewal or replacement is evidenced by a new or additional promissory note or other document.

ARTICLE 3.

COVENANTS

3.1     Payment of Secured Obligations.  Borrower shall pay the Secured Obligations when due.

3.2     Maintenance, Repair, Alterations.  Trustor shall maintain and preserve the Property in good condition and repair; Trustor, except upon the prior written consent of Beneficiary, shall not remove, demolish or materially alter any of the Improvements, other than (i) as required to construct the improvements described in the Plans , (ii) to make repairs in the ordinary course of business that serve to preserve or increase the value of the Property, or (iii) as required by law; Trustor shall complete promptly and in a good and workmanlike manner any Improvement which may be now or hereafter constructed on the Land, shall promptly restore in like manner any Improvement which may be materially damaged or destroyed thereon from any cause whatsoever, and shall pay when due all claims for labor performed and materials furnished therefor; Trustor shall comply in all material respects with all applicable laws, rules, regulations, orders and decrees, and all easements, rights of way, covenants, conditions, restrictions and other title limitations, now or hereafter affecting the Property, or any part thereof, or the conduct or operation of Trustor's business; Trustor shall not commit, suffer or permit any act to be done in, upon or to all or any part of the Property in material violation of any such laws, rules, regulations, orders, decrees, easements, rights of way, covenants, conditions, restrictions or other title limitations now or hereafter affecting the Property, or any part thereof, or the conduct or operation of Trustor's business; Trustor shall not commit or permit any material waste or deterioration of the Property, and shall keep and maintain abutting grounds, sidewalks, roads, parking and landscape areas in good and clean order, condition and repair; Trustor shall not take (or fail to take) any action, which if taken (or not so taken) would increase in any material way the risk of fire or other hazard occurring to or affecting the Property or which otherwise would materially impair the security of Beneficiary in the Property; Trustor shall comply with the provisions of all leases, if any, constituting a portion of the Property; Trustor shall not enter into any new management agreement relating to the Property, or into any material amendment of any existing management agreement relating to the Property,  except with the prior written consent of Beneficiary; Trustor shall not enter into any service contract or similar agreement with respect to the Property (other than contracts terminable by Trustor without penalty upon thirty (30) days notice), except with Beneficiary's prior written consent; Trustor shall not abandon the Property or any portion thereof or leave the Property unprotected, unguarded or deserted; Trustor shall not initiate, join in or consent to any change in any zoning ordinance, general plan, specific plan, private restrictive covenant or other public or private restriction limiting the uses which may be made of the Property by Trustor or by the owner thereof without the prior written consent of Beneficiary; Trustor shall secure and maintain in full force and effect all permits reasonably necessary for the use, occupancy and operation of the Property; except as otherwise prohibited or

restricted by the Loan Documents, or any of them, Trustor shall do any and all other acts which may be reasonably necessary to protect or preserve the value of the Property and the rights of Trustee and Beneficiary with respect thereto.

       3.3    <u>Insurance</u>.

       3.3.1    <u>Policies Required</u>.  Trustor shall at all times maintain in full force and effect, at Trustor's sole cost and expense, with insurers approved by Beneficiary in Beneficiary's discretion, all policies of insurance required pursuant to the terms and provisions of the Loan Documents.

       3.3.2    <u>Assignment of Proceeds</u>.  Trustor hereby absolutely and unconditionally assigns to Beneficiary all casualty insurance proceeds and rental/income loss proceeds payable to Trustor under any of the policies described above and under all other policies carried by Trustor with respect to the Property.  In the event that any such proceeds are paid to Trustor in connection with any damage to or destruction of the Improvements, Trustor shall promptly deliver all such proceeds to Beneficiary.

       3.3.3    <u>Claims</u>.  Trustor shall give Beneficiary prompt written notice of any casualty to any portion of the Property, whether or not covered by insurance, and any other event covered by insurance.  Trustor hereby authorizes Beneficiary, at Beneficiary's election, to make proof of loss, and to commence, appear in, defend and prosecute any claim or action arising from any applicable policy and to settle, adjust, compromise, and collect any and all claims, proceeds and awards under any such policy, but Beneficiary shall not be liable for any failure to collect all or any portion of any claim, proceeds or award (regardless of the cause of such failure).  Trustor hereby irrevocably appoints Beneficiary its true and lawful attorney-in-fact to, if Trustor is then in default hereunder, beyond any applicable notice and cure period, perform all such acts.  Trustor shall not settle, adjust or compromise any such claim without the prior written approval of Beneficiary.

       3.3.4    <u>Application of Proceeds</u>.  Trustor shall deliver all insurance proceeds received by Trustor in connection with any damage to, or destruction of, the Improvements directly to Beneficiary.  All such proceeds shall first be applied to reimburse Beneficiary and Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such proceeds.  The balance of such proceeds shall be applied by Beneficiary to the repayment of the Secured Obligations in such order as Beneficiary shall determine.  No application or release of insurance proceeds shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

       3.3.5    <u>Restoration</u>.  Nothing in this Section 3 shall be construed to excuse Trustor from repairing and restoring all damage to the Property in accordance with other Loan Document provisions, regardless of whether insurance proceeds are available, are sufficient or are disbursed and/or released to Trustor.

       3.3.6    <u>Assignment of Policies</u>.  In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the Secured Obligations, all right, title and interest of Trustor in and to all policies of

insurance held by Trustor, and all unearned premiums paid thereon, shall, without further act, pass to the purchaser or grantee of the Property.

           3.3.7    <u>Waiver of Subrogation</u>.  Trustor and Borrower hereby waive all right to recover against Beneficiary (or any officer, employee, agent or representative of Beneficiary) for any loss incurred by Trustor or Borrower from any cause insured against or required by any Loan Document to be insured against; provided, however, that this waiver of subrogation shall not be effective with respect to any insurance policy if the coverage thereunder would be materially reduced or impaired as a result.  Trustor shall use its best efforts to obtain only policies which permit the foregoing waiver of subrogation.

           3.4    <u>Condemnation and Other Awards</u>.  Upon learning of the condemnation or other taking for public or quasi-public use of, or of the institution or the threatened institution of any action or proceeding for the condemnation or other taking for public or quasi-public use of, all or any part of the Property, Trustor shall give Beneficiary and Trustee prompt written notice of such fact.  Trustor shall take all actions reasonably required by Beneficiary or Trustee in connection therewith to defend and protect the interests of Trustor, Beneficiary and/or Trustee in the Property.  At Beneficiary's option, Beneficiary or Trustor may be the nominal party in such action or proceeding but in any event Beneficiary shall be entitled, without regard to the adequacy of its or their security, to commence, appear in, defend, prosecute, settle, adjust and/or compromise any such action or proceeding.  Trustor hereby absolutely and unconditionally assigns to Beneficiary, as security for the Secured Obligations, all compensation, awards, damages and other amounts (collectively, "**proceeds**") payable to Trustor in connection with any condemnation or other taking of all or any part of the Property for public or semi-public use (including, but not limited to, the proceeds of any settlement, regardless of whether or not condemnation or other taking proceedings are instituted in connection therewith).  Upon receipt, Trustor shall immediately deliver all such proceeds to Beneficiary.  All such proceeds shall first be applied to reimburse Beneficiary and Trustee for all costs and expenses, including reasonable attorneys' fees, incurred in connection with the collection of such proceeds.  The balance of such proceeds shall be applied by Beneficiary to the repayment of the Secured Obligations in such order as Beneficiary shall determine.  Application or release of such proceeds as provided herein shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

           3.5    <u>Taxes and Impositions</u>.  Trustor shall pay, prior to delinquency, all of the following (collectively, the "**Impositions**"):  (a) all general and special real property taxes and assessments imposed on the Property; (b) all other taxes and assessments and charges of every kind that are assessed upon the Property (or upon the owner and/or operator of the Property) and that create or may create a lien upon the Property (or upon any Personal Property), including, without limitation, non-governmental levies and assessments pursuant to applicable covenants, conditions or restrictions; and (c) all license fees, taxes and assessments imposed on Beneficiary (other than Beneficiary's net income or franchise taxes) which are measured by or based upon (in whole or in part) the amount of the obligations secured by the Property.  If permitted by law, Trustor may pay any Imposition in installments (together with any accrued interest).  Trustor shall not be required to pay any Imposition so long as (i) its validity is being actively contested in good faith and by appropriate proceedings and with respect to which adequate reserves, as determined by Beneficiary in its sole and absolute discretion, have been set aside for payment

thereof, (ii) Trustor has demonstrated to Beneficiary's reasonable satisfaction that leaving such Imposition unpaid pending the outcome of such proceedings could not result in conveyance of the Property in satisfaction of such Imposition or otherwise impair Beneficiary's interest under this Deed of Trust, and (iii) if requested by Beneficiary, Trustor has furnished Beneficiary with a bond or other security satisfactory to Beneficiary in an amount not less than 150% of the applicable claim (including interest and penalties).  Upon conclusion of any such contest, Trustor shall promptly pay the amount of the Imposition as finally determined, together with all interest and penalties payable in connection therewith.  Beneficiary shall have full power and authority to apply any amount deposited with Beneficiary as security to the payment of any unpaid Imposition to prevent the sale or forfeiture of the Property for non-payment.  Upon demand by Beneficiary from time to time, Trustor shall deliver to Beneficiary, within 30 days following the due date of any Imposition, evidence of payment reasonably satisfactory to Beneficiary.  In addition, upon demand by Beneficiary from time to time, Trustor shall furnish to Beneficiary a tax reporting service for the Property of a type and duration, and with a company, reasonably satisfactory to Beneficiary.

    3.6 <u>Utilities</u>.  Trustor shall pay when due all gas, electricity, water, sewer and other utility charges which are incurred for the benefit of the Property or which may become a lien against the Property and all other assessments and other charges of a similar nature, public or private, relating to the Property or any portion thereof, regardless of whether or not any such charge is or may become a lien thereon.

    3.7 Intentionally omitted.

    3.8 <u>Liens</u>.  Trustor or Borrower shall not cause, incur, suffer or permit to exist or become effective any lien, encumbrance or charge upon all or any part of the Property or any interest therein other than the Permitted Encumbrances.  Trustor or Borrower shall promptly discharge, within thirty (30) days of actual notice thereof, by bonding, payment, or insuring over, at Trustor's or Borrower's sole cost and expense, all liens, encumbrances, charges and title limitations upon all or any part of the Property or any interest therein, other than Permitted Encumbrances.  If Trustor or Borrower shall fail to remove and discharge any such lien, encumbrance, charge, or title limitation, then, in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge the same, without notice to or demand on Trustor or Borrower, and without inquiring into the validity of such lien, encumbrance, charge or title limitation or the existence of any defense or offset thereto, either by paying the amount claimed to be due, or by procuring the discharge of such lien, encumbrance, charge or title limitation by depositing in a court a bond or the amount claimed or otherwise giving security for such claim, or in any other manner permitted or required by law.  Trustor or Borrower shall, immediately upon demand therefor by Beneficiary, pay to Beneficiary an amount equal to all costs and expenses incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing right to discharge any such lien, encumbrance, charge or title limitation, together with interest thereon from the date of such expenditure until paid at the Default Rate.

    3.9 <u>Accelerating Transfer</u>.  Except as otherwise expressly permitted by the Loan Documents between Beneficiary and Borrower and/or Trustor, which transfers shall not be deemed Accelerating Transfers for purposes of this Section 3.9, Trustor or Borrower shall not

sell, assign, lease or otherwise transfer all or any part of the Property or any interest therein without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole and absolute discretion. Transfers requiring Beneficiary's prior written consent shall include, without limitation, the following:

> (a)     Voluntary transfers, involuntary transfers and transfers by operation of law;

> (b)     Liens, encumbrances and assignments as security for obligations, whether voluntary or involuntary; and

> (c)     The sale, encumbrance, pledge, assignment, issuance or other transfer of any stock, partnership interests, membership interests, beneficial interests, or other direct or indirect ownership interests in Trustor, or in any corporation, partnership, limited liability company or trust owning any ownership interests in Trustor, or in any partner, member or manager of Trustor or any such other party, whether voluntary, involuntary or by operation of law. If any sale, assignment, lease or other transfer requiring Beneficiary's consent under this Section 3.9 is made or occurs without Beneficiary's prior written consent, such sale, assignment, lease or other transfer shall constitute an "Accelerating Transfer." If any Accelerating Transfer occurs, Beneficiary may, in its sole and absolute discretion, declare all Secured Obligations to be immediately due and payable and may invoke any and/or all rights and remedies provided Beneficiary under Article 6 of this Deed of Trust or available at law or in equity.

> 3.10    <u>Inspections</u>. Beneficiary, Trustee and their respective agents, representatives and employees, are each authorized, upon notice reasonable under the circumstances (which may be written or oral), to enter at any time upon any part of the Property for the purpose of inspecting the same and for the purpose of performing any of the acts Beneficiary and/or Trustee are authorized to perform hereunder or under the terms of any of the Loan Documents.

> 3.11    <u>Books and Records</u>. Trustor shall maintain, or cause to be maintained, in the county in which the Property is located or at Trustor's principal place of business, complete and accurate books, records and accounts reflecting all items of income and expense in connection with the operation of the Property or in connection with any services, equipment or furnishings provided in connection with the operation of the Property, whether such income or expense be realized by Trustor or by any other person or entity whatsoever excepting persons unrelated to and unaffiliated with Trustor and who leased from Trustor portions of the Property for the purposes of occupying the same. Upon the written request of Beneficiary, Trustor shall prepare and deliver to Beneficiary such financial statements regarding operation of the Property as Beneficiary may reasonably require. Beneficiary, and its designees, shall have the right from time to time during normal business hours to examine such books, records and accounts and to make copies and extracts therefrom.

> 3.12    <u>Defense of Actions</u>. Trustor, at no cost or expense to Beneficiary or Trustee, shall appear in and defend any action or proceeding purporting to affect the security of

this Deed of Trust, any of the other Loan Documents, all or any part of the Property or any interest therein, any additional or other security for the obligations secured hereby, or the interests, rights, powers or duties of Beneficiary or Trustee hereunder. If Beneficiary or Trustee elects to become a party to such action or proceeding, or is made a party thereto, Trustor shall defend and hold Trustee and Beneficiary harmless from all liability, damage, cost and expense incurred by Trustee and Beneficiary, or any of them, by reason of such action or proceeding (including, without limitation, reasonable attorneys' fees and expenses), whether or not such action or proceeding is prosecuted to judgment or decision.

3.13    Protection of Security. If Borrower fails to make any payment or Trustor or Borrower fail to do any act as and in the manner provided in this Deed of Trust or any of the other Loan Documents, beyond any applicable notice and cure period, Beneficiary and/or Trustee, each in its own discretion, without obligation so to do, without further notice or demand, and without releasing Trustor or Borrower from any obligation, may make or do the same in such manner and to such extent as either may reasonably deem necessary to protect the security of this Deed of Trust. In connection therewith (without limiting their general powers), Beneficiary and Trustee shall each have and are hereby given the right, but not the obligation: (i) to enter upon and take possession of the Property; (ii) to make additions, alterations, repairs and improvements to the Property which in the reasonable judgment of either may be necessary or proper to keep the Property in good condition and repair; (iii) to appear and participate in any action or proceeding affecting or which may affect the security hereof or the rights or powers of Beneficiary or Trustee; (iv) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appears to affect the security of this Deed of Trust or to be or to appear to be prior or superior hereto; and (v) in exercising such powers, to pay all necessary or appropriate costs and expenses and employ necessary or desirable consultants. In the event of any Event of Default or default hereunder or under any of the other Loan Documents, or in the event Beneficiary reasonably believes that any material adverse change has or may have occurred in the financial or other condition of Trustor or any Guarantor or in the condition or operation of the Property, Beneficiary may, at Trustor's sole cost and expense, reappraise (or have reappraised) the Property. Any such reappraisal may, at Beneficiary's option, be prepared by an employee of Beneficiary or by a third-party appraiser. The selection of such appraiser shall be made by Beneficiary in the exercise of its sole and absolute discretion. Such appraiser shall have the right to enter upon and inspect the Property at all reasonable times and to inspect, copy and make abstracts of all of Trustor's books and records relating to the Property. Trustor shall cooperate with such appraiser in order to permit such appraiser to prepare such appraisal. Beneficiary shall not be liable for any act or omission of any such appraiser.

3.14    Beneficiary's Powers. Without affecting the liability of Trustor or Borrower or any other person liable for the payment of any obligation herein mentioned, and without affecting the lien or charge of this Deed of Trust upon any portion of the Property not then or theretofore released as security for the full amount of all Secured Obligations, Beneficiary may, from time to time and without notice (i) release any person so liable, (ii) extend the maturity or alter any of the terms of any such obligation (provided, however, that the consent of Borrower shall be required with respect to the extension or alteration of any unpaid obligation of Borrower to Beneficiary), (iii) waive any provision contained herein or grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at

Beneficiary's option any parcel, portion or all of the Property, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make compositions or other arrangements with debtors in relation thereto. By accepting payment or performance of any obligation secured by this Deed of Trust after the payment or performance thereof is due or after the filing of a notice of default and election to sell, Beneficiary shall not have thereby waived its rights to require prompt payment and performance, when due, of all of the Secured Obligations secured hereby, or to declare a default for failure so to pay or perform, or to proceed with the sale under any notice of default and election to sell theretofore given by Beneficiary, or with respect to any unpaid balance of the indebtedness secured hereby. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall not constitute a waiver of the obligation of Borrower to pay the entire sum then due.

3.15    Intentionally omitted.

3.16    <u>Costs, Fees and Expenses</u>. Trustor or Borrower shall pay, on demand, all actual costs, fees, expenses, advances, charges, losses and liabilities paid or incurred by Beneficiary, Trustee and/or Borrower under or in connection with this Deed of Trust, the enforcement of this Deed of Trust, the collection of the Secured Obligations, and/or the exercise of any right, power, privilege or remedy given Beneficiary, Trustee and/or Borrower under this Deed of Trust, including, without limitation (a) foreclosure fees, trustee's fees and expenses, receiver's fees and expenses and trustee's sale guaranty premiums, (b) costs and expenses paid or incurred by Beneficiary, Trustee, Borrower and/or any receiver appointed under this Deed of Trust in connection with the operation, maintenance, management, protection, preservation, collection, sale or other liquidation of the Property, (c) advances made by Beneficiary, Trustee and/or Borrower to complete or partially construct all or any part of any improvements which may have been commenced on the Land or otherwise to protect the security of this Deed of Trust, (d) costs of evidence of title, costs of surveys and costs of appraisals, and (e) the fees, costs and expenses of attorneys, accountants and other consultants; together with interest thereon from the date of expenditure until so paid at the Default Rate.

ARTICLE 4.

ASSIGNMENT OF RENTS, ISSUES AND PROFITS

4.1    <u>Assignment of Rents, Issues and Profits</u>. Trustor hereby absolutely and irrevocably assigns and transfers to Beneficiary all of its right, title and interest in and to all rents, issues, profits, royalties, income and other proceeds and similar benefits now or hereafter derived from the Property (collectively, the "**Rents**"), and hereby gives to and confers upon Beneficiary the right, power and authority to collect such Rents. Trustor irrevocably appoints Beneficiary its true and lawful attorney-in-fact, at the option of Beneficiary, at any time and from time to time following the occurrence and during the continuance of an Event of Default, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in its name or in the name of Trustor, for all Rents, and to apply the same to the obligations secured hereby; provided, however, that Trustor shall have a license to collect Rents (but not more than one month in advance unless the written approval of Beneficiary has first been obtained), and to retain and enjoy the same, so long as an Event of Default shall not have occurred hereunder and

be continuing.  The assignment of the Rents in this Article 4 is intended to be an absolute assignment from Trustor to Beneficiary and not merely the passing of a security interest.

    4.2 <u>Collection Upon Default</u>.  Upon the occurrence of an Event of Default hereunder, Trustor's license to collect the Rents shall automatically terminate and Beneficiary may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the obligations hereby secured, enter upon and take possession of the Property, or any part thereof, and, with or without taking possession of the Property or any part thereof, in its own name sue for or otherwise collect such Rents (including those past due and unpaid, and all prepaid Rents and all other monies which may have been or may hereafter be deposited with Trustor by any lessee or tenant of Trustor to secure the payment of any Rent or for any services thereafter to be rendered by Trustor or any other obligation of any tenant to Trustor arising under any lease, and Trustor agrees that, upon the occurrence of any Event of Default hereunder, Trustor shall promptly deliver all Rents and other monies to Beneficiary), and Beneficiary may apply the same, less costs and expenses of operation and collection, including, without limitation, attorneys' fees, whether or not suit is brought or prosecuted to judgment, upon any indebtedness or obligation of Trustor secured hereby, and in such order as Beneficiary may determine notwithstanding that said indebtedness or the performance of said obligation may not then be due.  The collection of Rents, or the entering upon and taking possession of the Property, or the application of Rents as provided above, shall not cure or waive any default or notice of default hereunder or invalidate any act performed in response to such default or pursuant to such notice of default or be deemed or construed to make Beneficiary a mortgagee-in-possession of all or any part of the Property.

    4.3 <u>Further Assignments</u>.  Upon Beneficiary's demand Trustor shall, from time to time hereafter, execute and deliver to Beneficiary recordable assignments of Trustor's interest in any and all leases, subleases, contracts, rights, licenses and permits now or hereafter affecting all or any part of the Property.  Such assignments shall be made by instruments in form and substance satisfactory to Beneficiary; provided, however, that no such assignment shall be construed as imposing upon Beneficiary any obligation with respect thereto.  Beneficiary may, at its option, exercise its rights hereunder or under any such specific assignment and such exercise shall not constitute a waiver of any right hereunder or under any such specific assignment.

ARTICLE 5.

SECURITY AGREEMENT

    5.1 <u>Grant of Security Interest</u>.  This Deed of Trust shall constitute a security agreement as that term is used in the California Uniform Commercial Code and, as security for all Secured Obligations, Trustor hereby grants to Beneficiary a security interest in all of Trustor's right, title and interest, whether now existing or hereafter arising, in and to any portion of the Property which constitutes personal property (the "**Personal Property**").

    5.2 <u>Representations and Warranties</u>.  Trustor hereby represents and warrants to Beneficiary that:  (a) Trustor is the owner of the Personal Property, has the right, power and authority to grant, convey and assign the Personal Property, and no other person has any right, title, claim or interest (by way of security interest or other lien or charge or otherwise) in, against

or to the Personal Property, other than arising from the Permitted Encumbrances; (b) the Personal Property is free from all liens, security interests, encumbrances and adverse interests, except Permitted Encumbrances; (c) no financing statement or similar filing covering any of the Personal Property, and naming any secured party other than Beneficiary and the holders of Permitted Encumbrances, is on file in any public office; (d) each account, general intangible, chattel paper, deposit account, instrument, document, agreement, contract or right to the payment of money constituting Personal Property (collectively, the "**Rights to Payment**"), if any, is genuine and enforceable in accordance with its terms against the party obligated to pay the same and (e) the Personal Property is not used nor was the Personal Property purchased for personal or family use by Trustor.

   5.3 <u>Covenants</u>.  Trustor hereby agrees:  (a) to pay, prior to delinquency, all taxes, assessments, charges, encumbrances and liens now or hereafter imposed upon or affecting all or any part of the Personal Property; (b) not to amend, modify, supplement, terminate or cancel any of the Personal Property, other than in a non-material way in the ordinary course of business; (c) without the prior written consent of Beneficiary, not to remove all or any part of the tangible Personal Property from the Property, other than in a non-material way in the ordinary course of business; (d) to give Beneficiary thirty (30) days' prior written notice of any change in Trustor's principal place of business, chief executive office or trade names or styles; (e) to appear in and defend any action or proceeding which may affect the Personal Property (including, without limitation, actions, proceedings and claims which may affect Trustor's title to the Personal Property or the validity or priority of Beneficiary's security interest in the Personal Property); and (f) to permit Beneficiary to enter Trustor's premises to inspect the Personal Property.  Trustor further agrees (a) to fully and timely perform all of its obligations under and with respect to all Rights to Payment and to diligently enforce all of the obligations of each obligor thereunder; (b) not to amend, modify, supplement, cancel or terminate any of the Rights to Payment in any material respect without the prior written consent of Beneficiary; (c) to keep the Rights to Payment and all proceeds free and clear of all defaults, defenses, rights of offset and counterclaim; (d) if requested by Beneficiary, to receive and use reasonable diligence to collect, in trust and as the property of Beneficiary, proceeds of Rights to Payment and to immediately endorse as appropriate and deliver such proceeds to Beneficiary daily in the exact form in which they are received together with a collection report in form satisfactory to Beneficiary; (e) to take or bring, in Beneficiary's name or in the name of Trustor, as Beneficiary may require, all actions, suits or proceedings deemed reasonably necessary or desirable by Beneficiary to effect collection or to realize upon Rights to Payment; (f) not to commingle Rights to Payment or collections thereunder with other property.  As soon as practicable, and in any event within ten (10) days, Trustor or Borrower shall notify Beneficiary of:  (a) any attachment or other legal process levied against any of the Personal Property; (b) any information received by Trustor or Borrower which may in any manner materially and adversely affect the value of the Personal Property or the rights and remedies of Beneficiary with respect thereto; and (c) the removal of any of the Personal Property to a new location and the removal of any records of Trustor relating to the Personal Property to any location other than the Land and Improvements.  Trustor and Borrower each hereby irrevocably constitutes and appoints Beneficiary as its attorney-in-fact to, after the occurrence and during the occurrence of an Event of Default, (a) perform any obligation of Trustor or Borrower  hereunder in Trustor's or Borrower's name, as the case may be, or otherwise; (b) give notice of Beneficiary's rights in the Rights to Payment, to enforce the same, and make extension agreements with respect thereto;

(c) release persons liable on the Rights to Payment and to give receipts and acquittances and compromise disputes in connection therewith; (d) release security for the Rights to Payment; (e) resort to security for the Rights to Payment in any order; (f) prepare, execute, file, record or deliver Note, assignments, schedules, designation statements, financing statements, continuation statements, termination statements, and other documents to perfect preserve or release Beneficiary's interest in the Rights to Payment; (g) do all acts and things and execute all documents in the name of Trustor or Borrower or otherwise, deemed by Beneficiary as necessary, proper and convenient in connection with the preservation, perfection or enforcement of its rights hereunder.  The power of attorney granted hereunder is coupled with an interest and is irrevocable.

ARTICLE 6.

EVENTS OF DEFAULT
AND
REMEDIES UPON DEFAULT

6.1     Events of Default.  The occurrence of any of the following events or conditions shall constitute an event of default ("**Event of Default**") hereunder:

6.1.1     Borrower fails to pay to Beneficiary any payment of principal and/or interest payable under the Note when due, subject to any applicable cure periods contained in the Note; or

6.1.2     Borrower fails to pay any other amount payable hereunder when due, subject to any applicable cure periods contained in the Note; or

6.1.3     Borrower or Trustor fail to observe or perform any other obligation contained in this Deed of Trust, subject to any applicable cure periods contained in the Note; or

6.1.4     The occurrence of an "Event of Default" under the Note or any of the other Loan Documents, subject to any applicable cure periods contained therein; or

6.1.5     A default under any other document or agreement secured hereby, subject to any applicable cure period.

6.2     Acceleration Upon Default; Additional Remedies.  Upon the occurrence of an Event of Default, Beneficiary may, at its option, terminate the obligations of the Beneficiary under the Loan Documents and declare all Secured Obligations to be immediately due and payable without any presentment, demand, protest or further notice of any kind; and whether or not Beneficiary exercises said option, Beneficiary may:

6.2.1     Either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of its security, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which it deems necessary or desirable to preserve the value, marketability or rentability of the Property, or any part thereof or interest therein, increase

the income therefrom or protect the security hereof and, with or without taking possession of the Property, sue for or otherwise collect the Rents, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection including attorneys' fees, upon any Secured Obligations, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of such Rents and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession by Trustee, Beneficiary or a receiver of all or any portion of the Property or the collection, receipt and application of any of the Rents, the Trustee and Beneficiary shall be entitled to exercise every right provided for in any of the Loan Documents or by law upon occurrence of any Event of Default, including the right to exercise the power of sale;

6.2.2    Commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants contained herein;

6.2.3    Deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause Trustor's interest in the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record in the official records of the County in which the Property is located;

6.2.4    Exercise any and/or all of the rights and remedies available to a secured party under the California Uniform Commercial Code in such order and in such manner as Beneficiary, in its sole discretion, may determine (including, without limitation, requiring Trustor to assemble any collateral and make such collateral available to Beneficiary at a reasonably convenient location or location); provided, however, that the expenses of retaking, holding, preparing for sale or the like as provided thereunder shall include reasonable attorneys' fees and other expenses of Beneficiary and Trustee and shall be additionally secured by this Deed of Trust; and/or

6.2.5    Exercise all other rights and remedies provided herein, in any Loan Document or other document or agreement now or hereafter securing all or any portion of the obligations secured hereby, or provided by law or in equity.

6.3    Foreclosure By Power of Sale.

6.3.1    Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the unpaid Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require.

6.3.2    Upon receipt of notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as is then required by law.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items and in such order as

Beneficiary may direct Trustee so to do, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matter or fact shall be conclusive proof of the truthfulness thereof. Any person, including, without limitation, Trustor, Trustee or Beneficiary may purchase at such sale, and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

6.3.3    After deducting all fees, costs and expenses incurred by Beneficiary or Trustee in connection with such sale, including costs of evidence of title, Beneficiary shall apply the proceeds of sale, in the following priority, to payment of (i) first, all amounts expended under the terms hereof, not then repaid, with accrued interest at the Default Rate; (ii) second, all other Secured Obligations; and (iii) the remainder, if any, to the person or persons legally entitled thereto.

6.3.4    Subject to applicable law, Trustee may postpone the sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement or subsequently noticed sale, and without further notice make such sale at the time fixed by the last postponement, or may, in its discretion, give a new notice of sale.

6.3.5    A sale of less than the whole of the Property or any defective or irregular sale made hereunder shall not exhaust the power of sale provided for herein; and subsequent sales may be made hereunder until all obligations secured hereby have been satisfied, or the entire Property sold, without defect or irregularity.

6.4    <u>Appointment of Receiver</u>. Upon the occurrence of an Event of Default under this Deed of Trust, Beneficiary, as a matter of right and without notice to Trustor, Borrower or anyone claiming under Trustor, and without regard to the then value of the Property or any interest of Trustor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers of the Property, and Trustor hereby irrevocably consents to such appointment and waives notice of any application therefor. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

6.5    <u>Application of Funds After Default</u>. Except as otherwise herein provided, upon the occurrence of an Event of Default hereunder, Beneficiary may, at any time without notice, apply any or all sums or amounts received and held by Beneficiary to pay insurance premiums, Impositions, or either of them, or as rents or income of the Property, or as insurance or condemnation proceeds, and all other sums or amounts received by Beneficiary from or on account of Trustor, Borrower or the Property, or otherwise, upon any Secured Obligation, in such manner and order as Beneficiary may elect, notwithstanding that such Secured Obligation may not yet be due. The receipt, use or application of any such sum or amount shall not be construed to affect the maturity of any indebtedness secured by this Deed of Trust, or any of the rights or powers of Beneficiary or Trustee under the terms of the Loan Documents, or any of the

obligations of Trustor, Borrower or any guarantor under the Loan Documents; or to cure or waive any default or notice of default under any of the Loan Documents; or to invalidate any act of Trustee or Beneficiary.

   6.6 <u>Remedies Not Exclusive</u>.  Trustee and Beneficiary, and each of them, shall be entitled to enforce payment and performance of any indebtedness or obligation secured hereby and to exercise all rights and powers under this Deed of Trust or under any Loan Document or other agreement or any law now or hereafter in force, notwithstanding some or all of the said indebtedness and obligations secured hereby may now or hereafter be otherwise secured, whether by guaranty, mortgage, deed of trust, pledge, lien, assignment or otherwise. Neither the acceptance of this Deed of Trust nor its enforcement whether by court action or pursuant to the power of sale or other powers herein contained, shall prejudice or in any manner affect Trustee's or Beneficiary's rights to realize upon or enforce any other security now or hereafter held by Trustee or Beneficiary, it being agreed that Trustee and Beneficiary, and each of them, shall be entitled to enforce this Deed of Trust and any other security for the obligations hereby secured now or hereafter held by Beneficiary or Trustee in such order and manner as they may in their absolute discretion determine.  No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein, or granted to Beneficiary under any other agreement, or by law or equity provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder, or granted to Beneficiary under any other agreement, or now or hereafter existing at law or in equity or by statute.  Every power or remedy given by any of the Loan Documents to the Trustee or Beneficiary or to which any of them may be otherwise entitled may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by the Trustee or Beneficiary, and any of them may pursue inconsistent remedies.  Trustor may be joined in any action brought by Beneficiary to foreclose under or otherwise enforce this Deed of Trust.

   6.7 <u>Request for Notice</u>.  Trustor hereby requests that a copy of any notice of default and that a copy of any notice of sale hereunder be mailed to it at the address set forth in the first paragraph of this Deed of Trust.

ARTICLE 7.

MISCELLANEOUS

   7.1 <u>Amendments</u>.  This instrument cannot be waived, modified, discharged or terminated orally, but only by an instrument in writing signed by the party against whom enforcement of any waiver, modification, discharge or termination is sought.

   7.2 <u>Waivers</u>.  Trustor waives, to the extent permitted by law, (i) the benefit of all laws now existing or that may hereafter be enacted providing for any appraisement before sale of any portion of the Property, and, whether now existing or hereafter arising or created, (ii) all rights of valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the secured indebtedness and marshaling in the event of foreclosure of the liens hereby created, and (iii) all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of California pertaining to the rights and remedies of sureties.

7.3    <u>Suretyship Waivers.</u>

7.3.1    If Trustor is liable for only a portion of the Indebtedness, Trustor hereby waives its rights under California Civil Code Section 2822(a) to designate the portion of the Secured Obligations that shall be satisfied by Borrower's partial payment.

7.3.2    Trustor hereby waives any and all benefits and defenses under California Civil Code Section 2810 and agrees that by doing so Trustor shall be liable even if Borrower had no liability at the time of execution of the Note, this Deed of Trust or any other Loan Document, or thereafter ceases to be liable.  Trustor hereby waives any and all benefits and defenses under California Civil Code Section 2809 and agrees that by doing so, Trustor's liability may be larger in amount and more burdensome than that of Borrower.  Trustor also waives, to the fullest extent permitted by law, any and all benefits under California Civil Code Sections 2845, 2849 and 2850.

7.3.3    Beneficiary's security interest in the Property shall not be affected, modified or impaired by the occurrence of any of the following events, whether or not with notice to, or the consent of, Trustor:  (i) the waiver, surrender, compromise, settlement, release or termination of any or all of the obligations secured hereunder or in any of the other Loan Documents; (ii) the failure to give notice to Trustor of the occurrence of any breach, default or event of default under any of the Loan Documents; (iii) the extension of time for the payment, performance, satisfaction or discharge of any or all of the Secured Obligations; (iv) the amendment or modification (whether material or otherwise) of the Secured Obligations in any respect; (v) any failure, omission, delay or lack on the part of the Beneficiary to enforce, assert or exercise any right, power or remedy conferred on the Beneficiary under any of the Documents; (vi) the voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all of the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or adjustment of debts, or other similar proceedings affecting Borrower or any of its assets, (vii) any failure by Beneficiary to create a valid lien or security interest in any collateral or security for any or all of the Secured Obligations or to perfect any such lien or security interest; (viii) the release or discharge by operation of law of Borrower from the payment, performance, satisfaction or discharge of any or all of the Secured Obligations; or (ix) the invalidity or unenforceability of any or all of the Secured Obligations.

7.3.4    Trustor assumes the responsibility for being informed of the financial condition of Borrower and of all other circumstances bearing upon the risk of failure to pay, perform, satisfy or discharge any of the Secured Obligations which diligent inquiry would reveal, and Trustor agrees that Beneficiary has no duty to advise Trustor of information known to Beneficiary regarding such condition or any such circumstance.  It is not necessary for Beneficiary to inquire into the capacity, authority or powers of Borrower or the partners, directors, officers, employees, agents or representatives acting or purporting to act on behalf of Borrower and all of the Secured Obligations made or created in reliance upon the purported exercise of such powers shall be secured by Beneficiary's security interest in the Property.  Until all of the Secured Obligations have been paid in full, (i) foreclosure by Beneficiary of its security interest in the Property shall not give Trustor any right of subrogation to any rights or remedies of the Beneficiary against Borrower or any collateral or security for any or all of the Secured

Obligations, and (ii) Trustor waives all rights of subrogation or reimbursement with respect to Borrower that might otherwise arise as a result of the foreclosure described in the preceding sentence.

        7.4    <u>Statements by Trustor or Borrower</u>.  Trustor or Borrower shall, within ten (10) days after notice thereof from Beneficiary, deliver to Beneficiary a written statement setting forth the amounts then unpaid and secured by this Deed of Trust and stating whether any offset or defense exists against such amounts.

        7.5    <u>Statements by Beneficiary</u>.  For any statement or accounting requested by Trustor, Borrower or any other entitled person pursuant to any provision of applicable law, or for any other document or instrument furnished to Trustor or Borrower by Beneficiary, Beneficiary may charge the maximum amount permitted by law at the time of the request therefor, or if there be no such maximum, then in accordance with Beneficiary's customary charges therefor or the actual cost to Beneficiary therefor, whichever is greater.

        7.6    <u>Reconveyance by Trustee</u>.  Upon written request of Beneficiary stating that all Secured Obligations have been paid and fully performed, and upon surrender by Beneficiary of this Deed of Trust to Trustee for cancellation and retention and upon payment by Trustor or Borrower of Trustee's fees and the costs and expenses of executing and recording any requested reconveyance, Trustee shall reconvey to the person or persons legally entitled thereto, without warranty, any portion of the Property then held hereunder.  The recitals in any such reconveyance of any matter or fact shall be conclusive proof of the truthfulness thereof.  The grantee in any such reconveyance may be described as "the person or persons legally entitled thereto."

        7.7    <u>Notices</u>.  All notices, demands, approvals and other communications provided for herein shall be in writing and shall be personally delivered or mailed by United States mail, as certified or registered material, return receipt requested, postage prepaid, or sent by recognized air courier, to the appropriate party at the address set forth in the first paragraph of this Deed of Trust.  Addresses for notice may be changed from time to time by written notice to all other parties.  All communications shall be effective when actually received; provided, however, that nonreceipt of any communication as the result of a change of address of which the sending party was not notified or as the result of a refusal to accept delivery shall be deemed receipt of such communication.

        7.8    <u>Acceptance by Trustee</u>.  Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.  The trust created hereby is irrevocable by Trustor.

        7.9    <u>Headings</u>.  Article and section headings are included in this Deed of Trust for convenience of reference only and shall not be used in construing this Deed of Trust.

        7.10    <u>Severability</u>.  Every provision of this Deed of Trust is intended to be severable.  In the event any provision hereof is declared to be illegal, invalid or unenforceable for any reason whatsoever by a court of competent jurisdiction, such illegality, invalidity or

unenforceability shall not affect the legality, validity or enforceability of the remaining provisions hereof, which provisions shall remain binding and enforceable.

       7.11   <u>Subrogation</u>.  To the extent that proceeds of the Note are used, either directly or indirectly, to pay any outstanding lien, charge or prior encumbrance against the Property, Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

       7.12   <u>No Merger of Lease</u>.  Upon the foreclosure of the lien created by this Deed of Trust on the Property pursuant to the provisions hereof, any lease or sublease then existing and affecting all or any portion of the Property shall not be destroyed or terminated by application of the law of merger or as a matter of law or as a result of such foreclosure unless the Beneficiary or any purchaser at such foreclosure sale shall so elect.  No act by or on behalf of Beneficiary or any such purchaser shall constitute a termination of any lease or sublease unless Beneficiary or such purchaser shall give written notice of termination to such tenant or subtenant.  If both the lessor's and lessee's estate under any lease or any portion thereof which constitutes a part of the Property shall at any time become vested in one owner, this Deed of Trust and the lien created hereby shall not be destroyed or terminated by application of the doctrine of merger unless Beneficiary so elects as evidenced by recording a written declaration so stating, and, unless and until Beneficiary so elects, Beneficiary shall continue to have and enjoy all of the rights, powers and privileges of Beneficiary hereunder as to the separate estates.

       7.13   <u>Governing Law; Venue; Judicial Reference</u>.

       7.13.1   THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF CALIFORNIA.  Trustor hereby (a) submits to the exclusive jurisdiction of the courts of the Central District of Los Angeles County of the State of California or, if jurisdiction can be obtained, in any federal court in the Los Angeles Division of the Central District of California for the purpose of any action or proceeding arising out of or relating to this Instrument or the other Loan Documents, such venue which may be determined in the sole discretion of the Beneficiary, (b) agrees that all claims in respect of any such action or proceeding may be heard and determined in such courts, (c) irrevocably waives (to the extent permitted by applicable law) any objection which it now or hereafter may have to the laying of venue of any such action or proceeding brought in any of the foregoing courts in and of the State of California, and any objection on the ground that any such action or proceeding in any such court has been brought in an inconvenient forum, and (d) agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner permitted by law.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.  In the event that any provision of this Instrument is invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed inoperative to the extent that it may conflict therewith and shall be deemed modified to conform with such statute or rule of law.  Any such provision which may prove invalid or unenforceable under any law shall not affect the validity or enforceability of any other provision of this Instrument.  Nothing contained herein shall be deemed or operate to preclude the Beneficiary from bringing suit or taking other legal action

against the Borrower in any other jurisdiction to collect on the Trustor's obligations to the Beneficiary, to realize on any collateral or any other security for such obligations, or to enforce a judgment or other court ruling in favor of the Beneficiary.

7.13.2    TRUSTOR AND BENEFICIARY EACH HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS INSTRUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.13.3    IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "**COURT**") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CONTROVERSY, DISPUTE OR CLAIM DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS INSTRUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) (EACH, A "**CLAIM**") AND THE WAIVER SET FORTH IN THE PRECEDING PARAGRAPH IS NOT ENFORCEABLE IN SUCH ACTION OR PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

(a)    WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN SECTION 7.13.3(c) BELOW, ANY CLAIM WILL BE DETERMINED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE IN ACCORDANCE WITH CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 638. EXCEPT AS OTHERWISE PROVIDED IN THE LOAN DOCUMENTS, VENUE FOR THE REFERENCE PROCEEDING WILL BE IN THE STATE OR FEDERAL COURT IN THE COUNTY OR DISTRICT WHERE VENUE IS OTHERWISE APPROPRIATE UNDER APPLICABLE LAW.

(b)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (1) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (2) EXERCISE OF SELF-HELP REMEDIES (INCLUDING, WITHOUT LIMITATION, SET-OFF), (3) APPOINTMENT OF A RECEIVER AND (4) TEMPORARY, PROVISIONAL OR ANCILLARY REMEDIES (INCLUDING, WITHOUT LIMITATION, WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS OR PRELIMINARY INJUNCTIONS). THIS AGREEMENT DOES NOT LIMIT THE RIGHT OF ANY PARTY TO

EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (1) - (4) ABOVE AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO A REFERENCE PROCEEDING PURSUANT TO THIS AGREEMENT.

(c)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE.  IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN TEN (10) DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY MAY REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(B).

(d)    ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS, A COURT REPORTER WILL BE USED AND THE REFEREE WILL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT.  THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(e)    THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES.  THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND MAY ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA. THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH APPLICABLE STATE AND FEDERAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING, WITHOUT LIMITATION, MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT.  THE REFEREE SHALL REPORT HIS DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW.

(f)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY.

7.14    Statute of Limitations.  The right to plead, use or assert any statute of limitations as a plea, defense or bar of any kind, or for any purpose, to any obligation secured hereby, or to any complaint or other pleading or proceeding filed, instituted or maintained for the purpose of enforcing this Deed of Trust or any rights hereunder, is hereby waived by Trustor to the full extent permitted by law.

7.15    Interpretation.  In this Deed of Trust the singular shall include the plural and the masculine shall include the feminine and neuter and vice versa, if the context so requires; and the word "person" shall include corporation, partnership or other form of association.  Any reference in this Deed of Trust to any document, instrument or agreement creating or evidencing an obligation secured hereby shall include such document, instrument or agreement both as originally executed and as it may from time to time be modified.

7.16    Trust Irrevocable.  The trust created hereby is irrevocable by Trustor.  All amounts payable by Borrower pursuant to this Deed of Trust shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction.  Trustor hereby waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any amount secured hereby and payable by Borrower to Beneficiary or Trustee.

7.17    Further Assurances.  Trustor agrees to do or cause to be done such further acts and things and to execute and deliver or to cause to be executed and delivered such additional assignments, agreements, powers and instruments, as Beneficiary or Trustee may reasonably require or deem advisable to correct any defect, error or omission in this Deed of Trust or the execution or acknowledgment of this Deed of Trust, to subject to the lien of this Deed of Trust any of Trustor's properties covered or intended to be covered hereby, to perfect and maintain such lien, to keep valid and effective the charges and lien hereof, to carry into effect the purposes of this Deed of Trust or to better assure and confirm to Beneficiary or Trustee their respective rights, powers and remedies hereunder.

7.18    Trustee's Powers.  At any time, and from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and the Note secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness or the performance of any other obligation secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee shall (i) reconvey all or any part of the Property, (ii) consent in writing to the making of any map or plat or subdivision thereof, (iii) join in granting any easement thereon, or (iv) join in any extension agreement, agreement subordinating the lien or charge hereof, or other agreement or instrument relating hereto or to all or any part of the Property.

7.19    Substitution of Trustee.  Beneficiary may, from time to time, by written instrument executed and acknowledged by Beneficiary and recorded in the county or counties where the Property is located, or by any other procedure permitted by applicable law, substitute a successor or successors for the Trustee named herein or acting hereunder.

7.20    Successors and Assigns.  Subject to Section 3.9, above, this Deed of Trust applies to, inures to the benefit of and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

**[Remainder of Page Intentionally Left Blank]**

IN WITNESS WHEREOF, Trustor has duly executed this Deed of Trust as of the date first above written.

**TRUSTOR:**

**MERUELO MADDUX - 230 W. AVENUE 26, LLC**
a Delaware limited liability company

By: _____
    Name:
    Title:

STATE OF _____

COUNTY OF _____

On _____, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____          [Seal]
Notary Public

My Commission Expires:

**Exhibit A**

Legal Description

[APN:  5205-014-013

PARCEL 1:

LOTS 3 AND 4 OF ADDITION NO. 3 TO THE HAMILTON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 34, PAGE 88 OF MISCELLANEOUS RECORDS OF SAID COUNTY.

PARCEL 2:

THAT PORTION OF LOT 18 OF ADDITION NO. 3 TO HAMILTON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 34, PAGE 88 OF MISCELLANEOUS RECORDS OF SAID COUNTY, LYING NORTHEASTERLY OF A LINE DRAWN AT RIGHT ANGLES TO THE SOUTHEAST LINE OF SAID LOT AND PASSING THROUGH THE MOST NORTHERLY CORNER OF SAID LOT.

Address: 210-212 W. Avenue 26, Los Angeles, California 90031]

APN:  5205-014-017, 5205-014-018

PARCEL 1:

LOTS 7, 8, 9, 10, 11, 12, 13 AND 14 OF ADDITION NO. 3, TO THE HAMILTON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 34 PAGE 88 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT AND RESERVING, HOWEVER, TO GRANTOR, ITS SUCCESSORS AND ASSIGNS, FOREVER, THE TITLE AND EXCLUSIVE RIGHT TO 49% OF THE MINERALS AND MINERAL ORES OF EVERY KIND AND CHARACTER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED, WITHIN OR UNDERLYING SAID LAND OR THAT MAY BE PRODUCED THEREFROM, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ALL PETROLEUM, OIL, NATURAL GAS AND OTHER HYDROCARBON SUBSTANCES AND PRODUCTS DERIVED THEREFROM, TOGETHER WITH THE EXCLUSIVE AND PERPETUAL RIGHT OF SAID GRANTOR ITS SUCCESSORS AND ASSIGNS, OF INGRESS AND EGRESS BENEATH THE DEPTH OF 500 FEET BELOW THE SURFACE OF SAID LAND TO EXPLORE FOR, EXTRACT, MINE AND REMOVE THE SAME, AND TO MAKE SUCH USE OF THE SAID LAND BENEATH SUCH DEPTH AS IS NECESSARY OR USEFUL IN CONNECTION THEREWITH WHICH

USE MAY INCLUDE LATERAL OR SLANT DRILLING, BORING, DIGGING OR SINKING OF WELLS, SHAFTS OR TUNNELS, PROVIDED, HOWEVER, THAT SAID GRANTOR, ITS SUCCESSORS AND ASSIGNS SHALL NOT USE THE SURFACE OF SAID LAND OR ANY PORTION OF THE SUBSURFACE THEREOF ABOVE A DEPTH OF 500 FEET BELOW THE SURFACE IN THE EXERCISE OF ANY OF SAID RIGHTS, IN DEED RECORDED NOVEMBER 14, 1969 AS INSTRUMENT NO. 363.

PARCEL 2:

LOTS 15, 16 AND 17 OF ADDITION NO. 3 TO THE HAMILTON TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 34 PAGE 88 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF LOT 20 OF SAID ADDITION NO. 3 TO THE HAMILTON TRACT; THENCE ALONG THE NORTHEASTERLY LINE OF AVENUE 25, FORMERLY HAMILTON PLACE, AS SHOWN ON SAID MAP OF SAID TRACT, NORTH 36° 55' 00" WEST 149.73 FEET TO THE MOST SOUTHERLY CORNER OF SAID LOT 17 AND BEING THE TRUE POINT OF BEGINNING; THENCE ALONG THE SOUTHWESTERLY LINE OF SAID LOTS 15, 16 AND 17, NORTH 36° 55' 00" WEST 149.73 FEET TO THE MOST WESTERLY CORNER OF SAID LOT 15; THENCE NORTH 62° 30' 20" EAST 121.23 FEET TO THE MOST NORTHERLY CORNER OF SAID LOT 15; THENCE SOUTH 36° 58' 10" EAST 149.79 FEET TO THE MOST EASTERLY CORNER OF SAID LOT 17; THENCE SOUTH 62° 32' 03" WEST 121.37 FEET TO THE TRUE POINT OF BEGINNING.

Address: 222 N. Avenue 25, Los Angeles, California 90031; 230 W. Avenue 26, Los Angeles, California 90031]

**\* The above legal description may be amended, modified or substituted in whole or in part subject to final review and determination of the Land pledged as security in this Deed of Trust.**

**EXHIBIT B**

**FINANCING STATEMENT INFORMATION**

1.      Name and Address of Debtor:            Meruelo Maddux - 230 W. Avenue 26,
                                               LLC
                                               [ADDRESS]

2.      Debtor's State of Organization and Organizational I.D.#:

        State of Formation:                    Delaware

        Type of Entity:                        limited liability company

        Organizational I.D.#:                  [_____]

3.      Name and Address of Secured Party:     MMPI Acquisition, LLC
                                               [ADDRESS]

4.      The Collateral is:                     Fixtures, as that term is described in the
                                               Uniform Commercial Code of California
                                               attached to the Land described in Exhibit A
                                               attached to this Instrument.