1  Donald L. Gaffney (Admitted *Pro Hac Vice*)
   Eric S. Pezold (#255657)
2  Jasmin Yang (#255254)
   SNELL & WILMER L.L.P.
3  600 Anton Blvd., Suite 1400
   Costa Mesa, CA 92626
4  Phone:       (714) 427-7000
5  Facsimile:    (714) 427-7799
   Email: dgaffney@swlaw.com
6         epezold@swlaw.com
7         jyang@swlaw.com

8  Attorneys for Bank of America, N.A.

9

10              UNITED STATES BANKRUPTCY COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12              SAN FERNANDO VALLEY DIVISION

13

14  In Re:                          | Case No.: 1:09-bk-13356-VK

15  MERUELO MADDUX PROPERTIES,       | Jointly Administered
    INC., et al.,
16                                   | Chapter 11

17  Debtors-in-Possession.           | **BANK OF AMERICA, N.A.'S NOTICE OF
18                                   | SUBMISSION OF MODIFIED LOAN
                                     | DOCUMENTS IN CONNECTION WITH
19                                   | DEBTORS' PLAN OF
                                     | REORGANIZATION**

20

21      Bank of America, N.A. ("BofA") a secured creditor of Meruelo Maddux Properties

22  — 760 Hill Street, LLC ("760 S. Hill") and Merco Group — Southpark LLC

23  ("Southpark"), and an unsecured creditor of Meruelo Maddux Properties, Inc. ("MMPI"),

24  by and through undersigned counsel, hereby submits its proposed modifications to BofA's

25  loan documents in the event that the Court confirms the Debtors' plan of reorganization as

26  it relates to MMPI, 760 S. Hill and Southpark (collectively, the "Debtors").

27

28
    13023256

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

1    On April 25, 2011, the Court issued a tentative ruling regarding objections filed by

2    BofA and Chinatrust Bank (U.S.A.) ("Chinatrust") to the proposed plan confirmation of

3    the Debtors' Fourth Amended Joint Plan of Reorganization ("Plan").   The Court

4    tentatively ruled the "debtors have not demonstrated that, in order to reorganize, they must

5    modify the terms and conditions set forth in the prepetition loan documents between: (1)

6    BofA and 760 S. Hill, (2) BofA and Southpark, and (3) Chinatrust and MG Washington

7    Blvd" because the Court "cannot find that 'inclusion of terms and conditions from the pre-

8    bankruptcy loan documents would unduly impair the debtors' ability to reorganize." The

9    Court further stated, "[u]nless the debtors make such a showing with respect to 760 S. Hill

10   Street, Southpark and MG Washington Blvd., the court cannot confirm the Debtors'

11   Plan."

12   Accordingly, BofA submits the attached modified loan documents that contain two

13   material modifications: (1) a change in the rate of interest that accrues on BofA's loans to

14   760 S. Hill and Southpark and (2) a change to the maturity date in the current loan

15   documents.   BofA has also made non-material revisions to the loan documents,

16   specifically to the pre-payment provision of the loan documents since the current pre-

17   payment provision applies to an adjustable rate loan whereas it is anticipated that the

18   Court will determine that a fixed rate loan is appropriate in these cases.   The following

19   documents are attached for the Court's reference:

20       Exhibit 1:  Loan Modification for 760 S. Hill

21       Exhibit 2: Amended and Restated Promissory Note for 760 S. Hill

22       Exhibit 3:  Amendment to Deed of Trust for 760 S. Hill

23       Exhibit 4:  Loan Modification for Southpark

24       Exhibit 5: Amended and Restated Promissory Note for Southpark

25       Exhibit 6: Amendment to Deed of Trust for Southpark

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
350 South Grand Avenue, Suite 2600, Two California Plaza
Los Angeles, California 90071
(213) 929-2500

Dated: May 6, 2011                          SNELL & WILMER L.L.P.


                                            By: /s/ Eric S. Pezold
                                                Donald L. Gaffney
                                                Eric S. Pezold
                                                Jasmin Yang
                                                Attorneys for Bank of America, N.A.

# Exhibit 1

## LOAN MODIFICATION

This Loan Modification ("***Agreement***") is made as of _____ ___, 2011, by and between MERUELO MADDUX PROPERTIES – 760 S. HILL STREET, LLC, a Delaware limited liability company ("***Borrower***"), and BANK OF AMERICA, N.A., a national banking association ("***Lender***").

<u>Factual Background</u>

A.      Under that certain Construction Loan Agreement dated as of January 27, 2006 between Borrower and Lender, as modified and amended by that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the "***Consent Agreement***") by and among Borrower, Lender, Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 ("***Original Guarantor***") and Meruelo Maddux Properties, Inc., a Delaware corporation ("***Guarantor***") (as so modified and amended, the "***Loan Agreement***"), Lender agreed to make a loan to Borrower (the "***Loan***") in the principal amount of Twenty-Eight Million Seven Hundred Twenty Thousand and No/100 Dollars ($28,720,000.00). Capitalized terms used herein without definition have the meanings ascribed to them in the Loan Agreement.

B.      The Loan is evidenced by that certain Promissory Note dated as of January 27, 2006, made payable to Lender in the original stated principal amount of Twenty-Eight Million Seven Hundred Twenty Thousand and No/100 Dollars ($28,720,000.00) (the "***Note***").

C.      The Note is secured by a Construction Deed of Trust, Assignment, Security Agreement and Fixture Filing dated as of January 27, 2006, executed by Borrower as trustor, to PRLAP, Inc., as trustee, for the benefit of Lender as beneficiary, recorded on January 30, 2006 in the Official Records of Los Angeles County, California (the "***Official Records***") as Document No. 06 0214046 (the "***Deed of Trust***"). The Deed of Trust encumbers certain Property located in Los Angeles County, California, as more particularly therein described (the "***Property***").

D.      Original Guarantor, guarantied Borrower's obligations to Lender to the extent provided in a Guaranty Agreement, dated as of January 27, 2006 and the obligations of Original Guarantor thereunder were assumed by Guarantor pursuant to the Consent Agreement (as amended and assumed pursuant to the Consent Agreement, the "***Guaranty***").

E.      As used herein, the term "***Loan Documents***" means the Loan Agreement, the Note, the Deed of Trust, the Guaranty and any other documents executed in connection with the Loan, including those which evidence, guaranty, secure or modify the Loan, as any or all of them may have been amended to date. This Agreement is a Loan Document.

F.      On March 27, 2009 (the "***Petition Date***"), Borrower filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central District of California ("***Bankruptcy Court***"), Case No. 1:09-bk-13363-KT, which case is being jointly administered with the lead case <u>In re Meruelo Maddux Properties, Inc.</u>, Case No. 1:09-bk-13356-KT (the "***Bankruptcy Proceeding***").

G.    On _____, 2011, the Bankruptcy Court confirmed the Borrower's plan of reorganization (the *"Plan"*). This Agreement is being entered into to be effective as of the effective date of the Plan.

H.    Pursuant to the Plan, the maturity date of the Loan has been extended, the interest rate applicable to the Loan has been modified and certain other modifications to the Loan have been made.

<u>Agreement</u>

Therefore, Borrower and Lender agree as follows:

1.    <u>Recitals</u>.  The recitals set forth above in the Factual Background are true, accurate and correct.

2.    <u>Reaffirmation of Loan</u>.  Except as otherwise provided in the Plan and herein, Borrower reaffirms all of its obligations under the Loan Documents.

3.    <u>Modification of Loan Documents</u>.  The Loan Documents are hereby amended as follows:

(a)    <u>Events of Defaults; Waiver</u>.  Any Event of Default pursuant to the Loan Documents with respect to failure to pay the Obligations when and as due prior to the date hereof, the bankruptcy of Borrower and/or Guarantor, Events of Default as set forth in Sections 6.14, 6.17, 6.19, or 6.22 of the Loan Agreement shall be deemed cured upon the satisfaction of the conditions set forth in Section 4 hereof.

(b)    <u>Extended Maturity Date</u>.  The maturity of the Loan is extended from March 1, 2009 to _____ (the "*Maturity Date*").  All sums owing on the Loan, including all outstanding principal, accrued and unpaid interest, outstanding late charges, unpaid fees, and all other amounts outstanding under the Note and the other Loan Documents, shall be due and payable no later than this extended Maturity Date.

(c)    <u>Amended Principal Amount</u>.  As of the date all of the conditions set forth in Section 4 hereof have been satisfied, all principal, interest, fees costs, and any other unpaid expenses accrued and outstanding pursuant to the Loan Documents as of such date, which Borrower agrees equal an amount of $_____ (the *"Amended Principal Amount"*), shall be treated as and constitute principal of the Loan.  Borrower's obligation to repay the Loan, together with interest thereon, shall be evidenced by that certain Amended and Restated Promissory Note of even date herewith , executed by Borrower and made payable to Lender, in Amended Principal Amount (the *"Amended and Restated Note"*).  All references in the Loan Agreement, the Deed of Trust and the other Loan Documents to the term "Note" shall mean and be deemed to refer to the Amended and Restated Note.

(d)    <u>Interest Rate; Interest Payments</u>.  From and after the date hereof, the outstanding principal balance of the Loan from day to day outstanding, shall bear interest at rate of _____.  Prior to maturity, accrued and unpaid interest shall be due and payable in arrears on the fifteenth (15th) day of each month commencing on _____, 2011.

Notwithstanding the foregoing, the initial payments of interest shall be due and payable in accordance with the Plan if the Loan balance has not been fully adjudicated on the date hereof as provided under the Plan.

(e)     Reserves.  Any amounts contained in or credited to an existing reserve, impound or holdback, including, without limitation, tax reserves, insurance reserves, interest reserves, tenant improvement reserves, leasing commission reserves and replacement reserves as of the date hereof shall be used and disbursed for the purposes for which such existing reserve was established under the Loan Documents (as if not breach or Event of Default existed under the Loan Documents), until such amounts are depleted.

(f)     Pre-petition Taxes.  Lender acknowledges that, pursuant to 11 U.S.C. § 1129(a)(9)(D), Borrower and Guarantor may pay real property taxes and assessments incurred before the Petition Date (*"Pre-Petition Taxes"*) and secured by a lien against the Property (*"Pre-Petition Tax Liens"*) over a period of years.  Notwithstanding anything to the contrary in the Loan Documents, as amended by this Agreement, the payment of such Pre-Petition Taxes over time pursuant to the Plan shall not constitute a breach of, or default under, the Loan Documents, as amended by this Agreement. However, if Borrower or Guarantor shall fail to pay Pre-Petition Taxes pursuant to their respective payment plans, such failure shall constitute an Event of Default pursuant to the Loan Agreement.

(g)     Secured Obligations.  The Deed of Trust is modified to secure payment and performance of the Loan as amended to date, in addition to all other *"Obligations"* as therein defined.  The foregoing notwithstanding, certain obligations continue to be excluded from the Obligations, as provided in the Deed of Trust.

4.     Conditions Precedent.  Before this Agreement becomes effective and any party becomes obligated under it, all of the following conditions shall have been satisfied at Borrower's sole cost and expense in a manner acceptable to Lender in the exercise of Lender's sole judgment:

(a)     Lender shall have received such assurance as Lender may require that the validity and first lien priority of Deed of Trust has not been and will not be impaired by this Agreement.

(b)     Lender shall have received fully executed and where appropriate, acknowledged originals of the following documents:

      (i)     This Agreement and the attached consent;

      (ii)     An Amended and Restated Promissory Note reflecting the Amended Principal Amount and the interest rate provisions set forth herein executed by Borrower;

      (iii)     An Amendment to Deed of Trust executed by Borrower and Lender (the *"Amendment to Deed of Trust"*);

      (iv)     Any other documents which Lender may require or request in accordance with this Agreement or the other Loan Documents.

(c)      The Amendment to Deed of Trust shall have been recorded in the Official Records.

5.      <u>Borrower's Representations and Warranties</u>.  Borrower represents and warrants to Lender as follows:

(a)      <u>Recitals</u>.  The recitals set forth in the Factual Background are true, accurate and correct.

(b)      <u>Property</u>.  Borrower lawfully possesses and holds fee simple title to all of the Property encumbered by the Deed of Trust which is real property and such Deed of Trust is of first priority provided that the Property may be subject to Pre-Petition Tax Liens so long as the Pre-Petition Taxes are paid when due pursuant to their respective payment plan prior.  Borrower owns all of the Property encumbered by the Deed of Trust which is personal property free and clear of any reservations of title and conditional sales contracts, and also of any security interests other than the Deed of Trust, and the Deed of Trust is a first and prior lien on such property.  There is no financing statement affecting any Property encumbered by the Deed of Trust on file in any public office except for financing statements in favor of Lender.

(c)      <u>Borrowing Entity</u>.  Borrower is a limited liability company, organized under the laws of the State of California.  Borrower is and will continue to be (a) duly organized, validly existing and in good standing under the laws of its state of organization, (b) authorized to do business and in good standing in each state in which Property is located, and (c) possessed of all requisite power and authority to carry on its business and to own and operate the Property.

6.      <u>Incorporation</u>.  This Agreement shall form a part of each Loan Document, and all references to a given Loan Document shall mean that document as hereby modified.

7.      <u>No Prejudice; Reservation of Rights</u>.  Except as expressly set forth herein, this Agreement shall not prejudice any rights or remedies of Lender under the Loan Documents.  Lender reserves, without limitation, all rights which it has against any indemnitor, guarantor, or endorser of the Note.

8.      <u>No Impairment</u>.  Except as specifically hereby amended, the Loan Documents shall each remain unaffected by this Agreement and all such documents shall remain in full force and effect.  Nothing in this Agreement shall impair the lien of the Deed of Trust, and the Deed of Trust as hereby amended shall remain one deed of trust with one power of sale, creating a first lien encumbering the Property.

9.      <u>Disclosure to Title Company</u>.  Without notice to or the consent of Borrower, Lender may disclose to any title insurance company which insures any interest of Lender under any Deed of Trust (whether as primary insurer, coinsurer or reinsurer) any information, data or material in Lender's possession relating to Borrower, the Loan, the Improvements, or the Property.

10.      <u>Integration</u>.  The Loan Documents, including this Agreement; (a) integrate all the terms and conditions mentioned in or incidental to the Loan Documents; (b) supersede all oral negotiations and prior and other writings with respect to their subject matter; and (c) are intended by the parties as the final expression of the agreement with respect to the terms and conditions set forth in those

documents and as the complete and exclusive statement of the terms agreed to by the parties. If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other agreement or instrument, including any of the other Loan Documents, the terms, conditions and provisions of this Agreement shall prevail.

11.   <u>Miscellaneous</u>. This Agreement may be executed in counterparts, and all counterparts shall constitute but one and the same document. If any court of competent jurisdiction determines any provision of this Agreement or any of the other Loan Documents to be invalid, illegal or unenforceable, that portion shall be deemed severed from the rest, which shall remain in full force and effect as though the invalid, illegal or unenforceable portion had never been a part of the Loan Documents. This Agreement shall be governed by the laws of the State of California, without regard to the choice of law rules of that State. As used here, the word "*include(s)*" means "*includes(s), without limitation,*" and the word "*including*" means "*including, but not limited to.*"

**[Remainder of page intentionally left blank.
Signatures appear on following pages]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

**"Borrower"**

MERUELO MADDUX PROPERTIES – 760 S.
HILL STREET, LLC, a Delaware limited
liability company

By:_____
Name:_____
Title:_____

**"Lender"**

BANK OF AMERICA, N.A.,
a national banking association

By:_____
Name:_____
Title:_____

S-1

## REAFFIRMATION AND CONSENT OF GUARANTOR

Meruelo Maddux Properties, Inc., a Delaware corporation (*"Guarantor"*), hereby consents to the terms, conditions and provisions of the foregoing Second Modification Agreement (the *"Modification Agreement"*) and the transactions contemplated thereby. Guarantor hereby reaffirms the full force and effectiveness of the Guaranty Agreement dated as of January 27, 2006 executed by Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 (*"Original Guarantor"*) as modified and assumed by Guarantor pursuant to that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the *"Consent Agreement"*) by and among Borrower, Lender, Original Guarantor and Guarantor (as so modified and assumed, the *"Guaranty"*), and agrees that the obligations of Borrower guaranteed under the Guaranty include, without limitation, the obligation of Borrower to repay the principal amount of the Loan, as such Loan has been modified pursuant to the terms of the foregoing Modification Agreement.  In addition, Guarantor acknowledges that its obligations under the Guaranty are separate and distinct from those of Borrower on the Loan.  Capitalized terms used herein without definition have the meanings ascribed to them in the Modification Agreement

Dated as of _____ ___, 2011

**GUARANTOR:**

Meruelo Maddux Properties, Inc.,
a Delaware corporation

By:_____
Name:_____
Title:_____

12999729

# Exhibit 2

## AMENDED AND RESTATED PROMISSORY NOTE

$_____                                    _____, 2011

      FOR VALUE RECEIVED, MERCO GROUP – SOUTHPARK, LLC, a California limited liability company (*"Borrower"*), hereby promises to pay to the order of Bank of America, N.A., a national banking association (together with any and all of its successors and assigns and/or any other holder of this Note, *"Lender"*), without offset, in immediately available funds in lawful money of the United States of America, at 333 South Hope Street, 11th Floor, Los Angeles, California 90071, the principal sum of _____
_____                and        No/100        Dollars ($_____) (or the unpaid balance of all principal advanced against this Note, if that amount is less), together with interest on the unpaid principal balance of this Note from day to day outstanding as hereinafter provided. This Note amends and restates in its entirety that certain Promissory Note dated as of August 4, 2004, executed by Lancam Properties, LLC, a Delaware limited liability company, Tranmar Properties, LLC, a Delaware limited liability company and Tranrich, LLC, a Delaware limited liability company (collectively, *"Original Borrower"*) and payable to the order of Lender as modified, amended and assumed by Borrower to date, (as so modified, amended and assumed, the *"Original Note"*).  In no event shall this Note be deemed to be or constitute a novation or release of Borrower's obligations under the Original Note.

      Section 1    Payment Schedule and Maturity Date.  Prior to maturity, accrued and unpaid interest shall be due and payable in arrears on the fifteenth day of each month commencing on _____ 15, 2011.  The entire principal balance of this Note then unpaid, together with all accrued and unpaid interest and all other amounts payable hereunder and under the other Loan Documents (as hereinafter defined), shall be due and payable in full on _____ (the *"Maturity Date"*), the final maturity of this Note.

      Section 2    Security; Loan Documents.  The security for this Note includes a Deed of Trust, Assignment, Security Agreement and Fixture Filing dated as of August 4, 2004, executed by Original Borrower as trustor, to PRLAP, Inc., as trustee, for the benefit of Lender as beneficiary, recorded on August 6, 2004 in the Official Records of Los Angeles County, California (the *"Official Records"*) as Document No. 04 2025758 as modified by that certain Memorandum of Modification of Deed of Trust dated as of September 21, 2005 between Borrower and Lender and recorded on October 4, 2005 in the Official Records as Document No. 05 2387913 and as further amended by that certain Amendment to Deed of Trust dated as of even date herewith (as so modified and amended, and as further modified, amended and restated from time to time, the *"Deed of Trust"*), conveying and encumbering certain real and personal property more particularly described therein (the *"Property"*).  Under that certain Term Loan Agreement dated as of August 4, 2004 among Original Borrower and Lender, as modified and assumed by Borrower pursuant to that certain Modification and Assumption Agreement dated as of September 21, 2005 by and among Original Borrower, Borrower and Lender (the *"Assumption Agreement"*), as further modified and amended pursuant to that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the *"Consent*

-1-

*Agreement"*) by and among Borrower, Lender, Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 (*"Original Guarantor"*) and Meruelo Maddux Properties, Inc., a Delaware corporation (*"Guarantor"*), as further modified by that certain Modification Agreement dated as of September 19, 2007, as further modified by that certain letter agreement dated November 14, 2007, as further modified by that certain letter agreement dated December 13, 2007, as further modified by that certain Sixth Modification Agreement dated February 15, 2008 and as further modified by that certain Seventh Modification Agreement (the *"Seventh Modification Agreement"*) dated as of July 18, 2008 and that certain Loan Modification dated as of _____, 2011 (as so modified, assumed and amended, the "*Loan Agreement*"), Lender agreed to make a loan to Borrower (the *"Loan"*).  This Note, the Deed of Trust, the Loan Agreement and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the *"Loan"*), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a *"Loan Document"* and together the *"Loan Documents."*

Section 3      Interest Rate.

(a)      Fixed Rate.  Interest on the outstanding principal balance of, and all other sums owing under this Note, which are not past due, shall accrue and be payable at a rate which is equal to _____ percent (____%) per annum (the *"Note Rate"*).  Interest shall be computed for the actual number of days which have elapsed, on the basis of a 360-day year.

(b)      Past Due Rate.  If any amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at the Past Due Rate (as defined below) to the fullest extent permitted by applicable law.  Accrued and unpaid interest on past due amounts (including interest on past due interest) shall be due and payable on demand, at a rate per annum (the *"Past Due Rate"*) equal to the Note Rate plus four hundred (400) basis points.

Section 4      Prepayment.

(a)      Borrower may prepay the principal balance of this Note, in full at any time or in part from time to time, provided that: (i) no prepayment may be made which in Lender's judgment would contravene or prejudice funding under any applicable permanent loan commitment or tri-party agreement or the like; (ii) Lender shall have actually received from Borrower prior irrevocable written notice (the *"Prepayment Notice"*) of Borrower's intent to prepay, the amount of principal which will be prepaid (the *"Prepaid Principal"*), and the date on which the prepayment will be made; (iii) each prepayment shall be in the amount of $1,000 or a larger integral multiple of $1,000 (unless the prepayment retires the outstanding balance of this Note in full); and (iv) each prepayment shall be in the amount of 100% of the Prepaid Principal, plus accrued unpaid interest thereon to the date of prepayment, plus any other sums which have become due to Lender under the Loan Documents on or before the date of prepayment but have not been paid, and plus the Make-Whole Amount (hereinafter defined).  If this Note is prepaid in full, any commitment of Lender for further advances shall automatically terminate.

(b)      The *"Make-Whole Amount"* shall equal the aggregate of any loss, cost, penalty, claim, liability or expense, including any loss in obtaining, prepaying, liquidating or employing

deposits or other funds from third parties, and any loss of revenue, profit or yield, as determined by Lender, in its judgment reasonably exercised, incurred by Lender with respect to any Fixed Rate as a result of the prepayment, including: (i) the failure of Borrower to make any payment on the date or in the amount specified in any Prepayment Notice from Borrower to Lender; or (ii) the payment or prepayment of any amount on a date other than the date such amount is required or permitted to be paid or prepaid.  Borrower agrees to pay the Make-Whole Amount upon any prepayment of principal, whether voluntary or involuntary, whether effected by a credit bid or foreclosure, or whether by reason of acceleration upon an Event of Default or upon any transfer or conveyance of any right, title or interest in the Property giving Lender the right to accelerate the maturity of this Note as provided in the Mortgage.  Notwithstanding the foregoing, the Make-Whole Amount shall in no event be less than zero or greater than is permitted by applicable law.  Lender shall provide a notice to Borrower setting forth Lender's determination of any Make-Whole Amount, which notice shall be conclusive in the absence of manifest error. Lender reserves the right to provide interim calculations of such Make-Whole Amount in any notice of default or notice of sale for informational purposes but the exact amount of such Make-Whole Amount shall be calculated only upon the actual prepayment of principal as described herein.  The Make-Whole Amount shall be included in the total indebtedness secured by the Mortgage for all purposes, including in connection with a foreclosure sale.  Lender may include the Make-Whole Amount in any credit bid Lender may make at a foreclosure sale.  Lender shall have no obligation to purchase, sell and/or match funds in connection with the funding or maintaining of the Loan or any portion thereof.  The obligations of Borrower under this Section shall survive any termination of the Loan Documents and payment of this Note and shall not be waived by any delay by Lender in seeking such compensation.

(c)     By its signature below, Borrower waives any right under California Civil Code Section 2954.10 or otherwise to prepay the Loan, in whole or in part, without payment of the Make-Whole Amount as described above.  Borrower acknowledges that prepayment of the Loan may result in Lender's incurring additional losses, costs, expenses and liabilities, including lost revenues and lost profits.  Borrower therefore agrees to pay the Make-Whole Amount if any principal amount is prepaid, whether voluntarily or by reason of acceleration, including acceleration upon any transfer or conveyance of any right, title or interest in the Property giving Lender the right to accelerate the maturity of this Note as provided in the Mortgage.  Borrower agrees that Lender's willingness to offer the Note Rate to Borrower is sufficient and independent consideration, given individual weight by Lender, for this waiver.  Borrower understands that Lender would not offer the Note Rate to Borrower absent this waiver.

Dated: _____ __, 2011          MERCO GROUP – SOUTHPARK, LLC, a
                                          California limited liability company

                                          By:_____
                                          Name:_____
                                          Title:_____

Section 5     Late Charges.  If Borrower shall fail to make any payment under the terms of this Note (other than the payment due at maturity) within fifteen (15) days after the date such payment is due, Borrower shall pay to Lender on demand a late charge equal to four percent (4%) of the amount of such payment.  Such fifteen (15) day period shall not be construed as in

any way extending the due date of any payment. The late charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other amount that Lender may be entitled to receive or action that Lender may be authorized to take as a result of such late payment.

Section 6    Certain Provisions Regarding Payments. All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Lender under the Loan Documents, in such manner and order as Lender may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 p.m. shall be deemed to be received on, and shall be posted as of, the following Business Day. Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

Section 7    Events of Default. The occurrence of any one or more of the following shall constitute an *"Event of Default"* under this Note:

(a)    Borrower fails to pay when and as due and payable any amounts payable by Borrower to Lender under the terms of this Note.

(b)    Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period.

(c)    An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note (subject to any applicable grace or cure period).

Section 8    Remedies. Upon the occurrence of an Event of Default, Lender may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a)    Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

(b)    Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

(c)    Lender may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9    Remedies Cumulative.    All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies.   No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time.  No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10    Costs and Expenses of Enforcement.    Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with arbitration, judicial reference, bankruptcy, insolvency or appeal.

Section 11    Service of Process.    Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower and (b) serving a copy thereof upon _____, the agent hereby designated and appointed by Borrower as Borrower's agent for service of process.  Borrower irrevocably agrees that such service shall be deemed to be service of process upon Borrower in any such suit, action, or proceeding.  Nothing in this Note shall affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of Lender otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions, subject to any provision or agreement for arbitration, judicial reference or other dispute resolution set forth in the Loan Agreement.

Section 12    Heirs, Successors and Assigns.    The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties.  The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted under the Loan Documents.

Section 13    General Provisions.    Time is of the essence with respect to Borrower's obligations under this Note.  If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby.  Borrower and each party executing this Note as Borrower hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any

13002984

extensions or postponements of time of payment of this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made] for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinate to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full.  A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.  This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought.  Captions and headings in this Note are for convenience only and shall be disregarded in construing it.  This Note and its validity, enforcement and interpretation shall be governed by the laws of the State of California (without regard to any principles of conflicts of laws) and applicable United States federal law.  Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made.  The term *"Business Day"* shall mean a day on which Lender is open for the conduct of substantially all of its banking business at its office in the city in which this Note is payable (excluding Saturdays and Sundays).  Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement.  The words *"include"* and *"including"* shall be interpreted as if followed by the words *"without limitation."*

Section 14    Notices.  Any notice, request, or demand to or upon Borrower or Lender shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 15    No Usury.  It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents.  If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note and all other indebtedness secured by the Deed of Trust, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of

the fullest amount otherwise called for hereunder or thereunder.  All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

*[Signatures appear on following page.]*

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the date first above written.

Borrower:
MERCO GROUP – SOUTHPARK, LLC,
a California limited liability company

By:_____

Name:_____

Title:_____

Exhibit 3

RECORDING REQUESTED BY AND        )
WHEN RECORDED MAIL TO:            )
Snell & Wilmer L.L.P.            )
600 Anton Blvd., Suite 1400     )
Costa Mesa, California 92626    )
Attn.: Katie MacDonald          )
                                )
                                        Space Above for Recorder's Use

## AMENDMENT TO DEED OF TRUST

This Amendment to Deed of Trust (this *"Amendment"*) is made as of _____,
2011, by and between MERCO GROUP – SOUTHPARK, LLC, a California limited liability
company ("*Grantor*"), and BANK OF AMERICA, N.A., a national banking association (*"Lender"*).

<u>Factual Background</u>

A.    Pursuant to that certain Term Loan Agreement dated as of August 4, 2004 among
Lancam Properties, LLC, a Delaware limited liability company, Tranmar Properties, LLC, a
Delaware limited liability company and Tranrich, LLC, a Delaware limited liability company
(collectively, *"Original Grantor"*) and Lender, as modified and assumed by Grantor pursuant to that
certain Modification and Assumption Agreement dated as of September 21, 2005 by and among
Original Grantor, Grantor and Lender (the *"Assumption Agreement"*), as further modified and
amended pursuant to that certain Consent Agreement and Amendment to Loan Agreement dated as
of May 8, 2007 (the *"Consent Agreement"*) by and among Grantor, Lender, Richard Meruelo,
individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989
(*"Original Guarantor"*) and Meruelo Maddux Properties, Inc., a Delaware corporation
(*"Guarantor"*), as further modified by that certain Modification Agreement dated as of September
19, 2007, as further modified by that certain letter agreement dated November 14, 2007, as further
modified by that certain letter agreement dated December 13, 2007, as further modified by that
certain Sixth Modification Agreement dated February 15, 2008 and as further modified by that
certain Seventh Modification Agreement (the *"Seventh Modification Agreement"*) dated as of July
18, 2008 (as so modified, assumed and amended, the *"Loan Agreement"*), Lender agreed to make a
loan to Grantor (the *"Loan"*) in the principal amount of Twenty Million and No/100 Dollars
($20,000,000.00). Capitalized terms used herein without definition have the meanings ascribed to
them in the Loan Agreement.

B.    The Loan is presently evidenced by that certain Promissory Note dated as of August 4,
2004, made payable to Lender in the stated principal amount, as amended pursuant to the Seventh
Modification Agreement, of Twenty Million and No/100 Dollars ($20,000,000.00) as assumed by
Grantor pursuant to the Assumption Agreement and as modified pursuant to the Seventh
Modification Agreement (as so assumed and modified, the *"Original Note"*).

C.    The Original Note is secured by that certain Deed of Trust, Assignment, Security
Agreement and Fixture Filing dated as of August 4, 2004, executed by Original Grantor as trustor, to

PRLAP, Inc., as trustee, for the benefit of Lender as beneficiary, recorded on August 6, 2004 in the Official Records of Los Angeles County, California (the *"Official Records"*) as Document No. 04 2025758 as modified by that certain Memorandum of Modification of Deed of Trust dated as of September 21, 2005 between Grantor and Lender and recorded on October 4, 2005 in the Official Records as Document No. 05 2387913 (as so modified, and as further amended, restated or otherwise modified from time to time, the *"Deed of Trust"*). The Deed of Trust encumbers certain Property located in Los Angeles County, California, as more particularly described on *Exhibit A* attached hereto.

D.    As used herein, the term *"Loan Documents"* means the Loan Agreement, the Original Note, the Deed of Trust, and any other documents executed in connection with the Loan, including those which evidence, guarantee, secure or modify the Loan, as any or all of them may have been amended to date. This Agreement is a Loan Document.

E.    Pursuant to that certain Loan Modification of even date herewith between Grantor, as borrower, and Lender (the *"Modification Agreement"*), Grantor and Lender have agreed, among other things, to extend the maturity of the Loan, increase the principal amount of the Loan, and to modify the rate of interest payable with respect to the Loan. In connection therewith, the obligations of Grantor under the Original Note have been amended and restated pursuant to that certain Amended and Restated Promissory Note of even date herewith (the *"Amended Note"*), executed by Grantor in favor of Lender in the principal amount of _____.

F.    As a condition to the effectiveness of the Modification Agreement, Grantor and Lender desire to amend the Deed of Trust to provide, among other things, that the obligations of Grantor secured thereunder shall include, without limitation, the obligations of Grantor under the Amended Note.

Agreement

Therefore, the parties hereto agree as follows:

1.    The Loan is amended on the terms and subject to the conditions of the Modification Agreement.

2.    The definition of the term "Note" set forth in Article I of the Deed of Trust is hereby amended and restated in its entirety as follows:

"'Note' means, the Amended and Restated Promissory Note dated as of _____, 2011 in the original principal amount of _____ Dollars ($_____) made by Grantor to the order of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified."

3.    The Deed of Trust is modified to secure payment and performance of the Loan, as amended and modified to date, in addition to all other *"Obligations"* described therein. In all other respects, the Deed of Trust shall remain unmodified and in full force and effect.

4.      This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.      This Agreement shall be governed by the laws of the State of California, without regard to the choice of law rules of that State.

*[Remainder of Page Intentionally Left Blank.]*
*[Signatures Appear on Following Page.]*

IN WITNESS WHEREOF, this Amendment is executed by the parties hereto as of the date first written above.

**GRANTOR**:
MERCO GROUP – SOUTHPARK, LLC,
a California limited liability company


By:_____
Name:_____
Title:_____

**LENDER:**

BANK OF AMERICA, N.A.,
a national banking association


By:_____
Name: _____
Title: _____

## ACKNOWLEDGEMENT

State of California

County of _____

On _____ before me, _____,
                                          (here insert name and title of the officer)

personally appeared _____ who proved to me on the basis of

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ROEHMV\SWDMS\13002750.1

## ACKNOWLEDGEMENT

State of California

County of _____

On _____ before me, _____,

(here insert name and title of the officer)

personally appeared _____ who proved to me on the basis of

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

ROEHMV\SWDMS\13002750.1

## ACKNOWLEDGEMENT

State of California

County of _____

On _____ before me, _____,

(here insert name and title of the officer)

personally appeared _____ who proved to me on the basis of

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

# EXHIBIT A

## Description of the Property


[To be attached.]

Exhibit A-1

Exhibit 4

# LOAN MODIFICATION

This Loan Modification ("***Agreement***") is made as of _____ ___, 2011, by and between MERCO GROUP – SOUTHPARK, LLC, a California limited liability company ("***Borrower***"), and BANK OF AMERICA, N.A., a national banking association ("***Lender***").

## Factual Background

A.    Under that certain Term Loan Agreement dated as of August 4, 2004 among Lancam Properties, LLC, a Delaware limited liability company, Tranmar Properties, LLC, a Delaware limited liability company and Tranrich, LLC, a Delaware limited liability company (collectively, ***"Original Borrower"***) and Lender, as modified and assumed by Borrower pursuant to that certain Modification and Assumption Agreement dated as of September 21, 2005 by and among Original Borrower, Borrower and Lender (the ***"Assumption Agreement"***), as further modified and amended pursuant to that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the ***"Consent Agreement"***) by and among Borrower, Lender, Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 (***"Original Guarantor"***) and Meruelo Maddux Properties, Inc., a Delaware corporation (***"Guarantor"***), as further modified by that certain Modification Agreement dated as of September 19, 2007, as further modified by that certain letter agreement dated November 14, 2007, as further modified by that certain letter agreement dated December 13, 2007, as further modified by that certain Sixth Modification Agreement dated February 15, 2008 and as further modified by that certain Seventh Modification Agreement (the ***"Seventh Modification Agreement"***) dated as of July 18, 2008 (as so modified, assumed and amended, the ***"Loan Agreement"***), Lender agreed to make a loan to Borrower (the ***"Loan"***) in the principal amount of Twenty Million and No/100 Dollars ($20,000,000). Capitalized terms used herein without definition have the meanings ascribed to them in the Loan Agreement.

B.    The Loan is evidenced by that certain Promissory Note dated as of August 4, 2004, made payable to Lender in the stated principal amount, as amended pursuant to the Seventh Modification Agreement, of Twenty Million and No/100 Dollars ($20,000,000.00) as assumed by Borrower pursuant to the Assumption Agreement and as modified pursuant to the Seventh Modification Agreement (as so modified and assumed, the ***"Note"***).

C.    The Note is secured by a Deed of Trust, Assignment, Security Agreement and Fixture Filing dated as of August 4, 2004, executed by Original Borrower as trustor, to PRLAP, Inc., as trustee, for the benefit of Lender as beneficiary, recorded on August 6, 2004 in the Official Records of Los Angeles County, California (the ***"Official Records"***) as Document No. 04 2025758 as modified by that certain Memorandum of Modification of Deed of Trust dated as of September 21, 2005 between Borrower and Lender and recorded on October 4, 2005 in the Official Records as Document No. 05 2387913 (as so modified, the ***"Deed of Trust"***). The Deed of Trust encumbers certain Property located in Los Angeles County, California, as more particularly therein described (the ***"Property"***).

D.    Original Guarantor, guarantied Borrower's obligations to Lender to the extent provided in a Guaranty Agreement, dated as of August 4, 2004 and the obligations of Original

Guarantor thereunder were assumed by Guarantor pursuant to the Consent Agreement (as amended and assumed pursuant to the Consent Agreement, the "*Guaranty*").

E.    As used herein, the term "*Loan Documents*" means the Loan Agreement, the Note, the Deed of Trust, the Guaranty and any other documents executed in connection with the Loan, including those which evidence, guaranty, secure or modify the Loan, as any or all of them may have been amended to date. This Agreement is a Loan Document.

F.    On March 27, 2009 (the "*Petition Date*"), Borrower filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Central District of California ("*Bankruptcy Court*"), Case No. 1:09-bk-13407-KT, which case is being jointly administered with the lead case In re Meruelo Maddux Properties, Inc., Case No. 1:09-bk-13356-KT (the "*Bankruptcy Proceeding*").

G.    On _____, 2011, the Bankruptcy Court confirmed the Borrower's plan of reorganization (the "*Plan*"). This Agreement is being entered into to be effective as of the effective date of the Plan.

H.    Pursuant to the Plan, the maturity date of the Loan has been extended, the interest rate applicable to the Loan has been modified and certain other modifications to the Loan have been made.

<u>Modification</u>

Therefore, the Loan Documents are modified as follows:

1.    <u>Recitals</u>. The recitals set forth above in the Factual Background are true, accurate and correct.

2.    <u>Reaffirmation of Loan</u>. Except as otherwise provided in the Plan and herein, Borrower reaffirms all of its obligations under the Loan Documents.

3.    <u>Modification of Loan Documents</u>. The Loan Documents are hereby amended as follows:

(a)    <u>Events of Defaults; Waiver</u>. Any Event of Default pursuant to the Loan Documents with respect to failure to pay the Obligations when and as due prior to the date hereof, the bankruptcy of Borrower and/or Guarantor, Events of Default as set forth in Sections 6.12, 6.14, or 6.17 of the Loan Agreement shall be deemed cured upon the satisfaction of the conditions set forth in Section 4 hereof.

(b)    <u>Extended Maturity Date</u>. The maturity of the Loan is extended from March 1, 2009 to _____ (the "*Maturity Date*"). All sums owing on the Loan, including all outstanding principal, accrued and unpaid interest, outstanding late charges, unpaid fees, and all other amounts outstanding under the Note and the other Loan Documents, shall be due and payable no later than this extended Maturity Date.

(c)     Amended Principal Amount. As of the date all of the conditions set forth in Section 4 hereof have been satisfied, all principal, interest, fees costs, and any other unpaid expenses accrued and outstanding pursuant to the Loan Documents as of such date, which Borrower agrees equal an amount of $_____(the **"Amended Principal Amount"**), shall be treated as and constitute principal of the Loan. Borrower's obligation to repay the Loan, together with interest thereon, shall be evidenced by that certain Amended and Restated Promissory Note of even date herewith , executed by Borrower and made payable to Lender, in Amended Principal Amount (the **"Amended and Restated Note"**). All references in the Loan Agreement, the Deed of Trust and the other Loan Documents to the term "Note" shall mean and be deemed to refer to the Amended and Restated Note.

(d)     Interest Rate; Interest Payments. From and after the date hereof, the outstanding principal balance of the Loan from day to day outstanding, shall bear interest at rate of _____. Prior to maturity, accrued and unpaid interest shall be due and payable in arrears on the fifteenth (15th) day of each month commencing on _____, 2011. Notwithstanding the foregoing, the initial payments of interest shall be due and payable in accordance with the Plan if the Loan balance has not been fully adjudicated on the date hereof as provided under the Plan.

(e)     Reserves. Any amounts contained in or credited to an existing reserve, impound or holdback, including, without limitation, tax reserves, insurance reserves, interest reserves, tenant improvement reserves, leasing commission reserves and replacement reserves as of the date hereof shall be used and disbursed for the purposes for which such existing reserve was established under the Loan Documents (as if not breach or Event of Default existed under the Loan Documents) or under the Plan, until such amounts are depleted.

(f)     Pre-petition Taxes. Lender acknowledges that, pursuant to 11 U.S.C. § 1129(a)(9)(D), Borrower and Guarantor may pay real property taxes and assessments incurred before the Petition Date (**"Pre-Petition Taxes"**) and secured by a lien against the Property (**"Pre-Petition Tax Liens"**) over a period of years. Notwithstanding anything to the contrary in the Loan Documents, as amended by this Agreement, the payment of such Pre-Petition Taxes over time pursuant to the Plan shall not constitute a breach of, or default under, the Loan Documents, as amended by this Agreement. However, if Borrower or Guarantor shall fail to pay Pre-Petition Taxes pursuant to their respective payment plans, such failure shall constitute an Event of Default pursuant to the Loan Agreement.

(g)     Secured Obligations. The Deed of Trust is modified to secure payment and performance of the Loan as amended to date, in addition to all other **"Obligations"** as therein defined. The foregoing notwithstanding, certain obligations continue to be excluded from the Obligations, as provided in the Deed of Trust.

4.     Conditions Precedent. Before this Agreement becomes effective and any party becomes obligated under it, all of the following conditions shall have been satisfied at Borrower's sole cost and expense in a manner acceptable to Lender in the exercise of Lender's sole judgment:

(a)   Lender shall have received such assurance as Lender may require that the validity and first lien priority of Deed of Trust has not been and will not be impaired by this Agreement or the transactions contemplated by it.

(b)   Lender shall have received fully executed and where appropriate, acknowledged originals of the following documents:

  (i)   This Agreement and the attached consent;

  (ii)   An Amended and Restated Promissory Note reflecting the Amended Principal Amount and the interest rate provisions set forth herein executed by Borrower;

  (iii)   An Amendment to Deed of Trust executed by Borrower and Lender (the "*Amendment to Deed of Trust*");

  (iv)   Any other documents which Lender may require or request in accordance with this Agreement or the other Loan Documents.

(c)   The Amendment to Deed of Trust shall have been recorded in the Official Records.

5.   <u>Borrower's Representations and Warranties</u>.  Borrower represents and warrants to Lender as follows:

(a)   <u>Recitals</u>.  The recitals set forth in the Factual Background are true, accurate and correct.

(b)   <u>Property</u>.  Borrower lawfully possesses and holds fee simple title to all of the Property encumbered by the Deed of Trust which is real property and such Deed of Trust is of first priority provided that the Property may be subject to Pre-Petition Tax Liens so long as the Pre-Petition Taxes are paid when due pursuant to their respective payment plan prior.  Borrower owns all of the Property encumbered by the Deed of Trust which is personal property free and clear of any reservations of title and conditional sales contracts, and also of any security interests other than the Deed of Trust, and the Deed of Trust is a first and prior lien on such property.  There is no financing statement affecting any Property encumbered by the Deed of Trust on file in any public office except for financing statements in favor of Lender.

(c)   <u>Borrowing Entity</u>.  Borrower is a limited liability company, organized under the laws of the State of California.  Borrower is and will continue to be (a) duly organized, validly existing and in good standing under the laws of its state of organization, (b) authorized to do business and in good standing in each state in which Property is located, and (c) possessed of all requisite power and authority to carry on its business and to own and operate the Property.

6.   <u>Incorporation</u>.  This Agreement shall form a part of each Loan Document, and all references to a given Loan Document shall mean that document as hereby modified.

7.   <u>No Prejudice; Reservation of Rights</u>.   Except as expressly set forth herein, this Agreement shall not prejudice any rights or remedies of Lender under the Loan Documents.  Lender reserves, without limitation, all rights which it has against any indemnitor, guarantor, or endorser of the Note.

8.   <u>No Impairment</u>.   Except as specifically hereby amended, the Loan Documents shall each remain unaffected by this Agreement and all such documents shall remain in full force and effect. Nothing in this Agreement shall impair the lien of the Deed of Trust, and the Deed of Trust as hereby amended shall remain one deed of trust with one power of sale, creating a first lien encumbering the Property.

9.   <u>Disclosure to Title Company</u>.   Without notice to or the consent of Borrower, Lender may disclose to any title insurance company which insures any interest of Lender under any Deed of Trust (whether as primary insurer, coinsurer or reinsurer) any information, data or material in Lender's possession relating to Borrower, the Loan, the Improvements, or the Property.

10.   <u>Integration</u>.   The Loan Documents, including this Agreement; (a) integrate all the terms and conditions mentioned in or incidental to the Loan Documents; (b) supersede all oral negotiations and prior and other writings with respect to their subject matter; and (c) are intended by the parties as the final expression of the agreement with respect to the terms and conditions set forth in those documents and as the complete and exclusive statement of the terms agreed to by the parties. If there is any conflict between the terms, conditions and provisions of this Agreement and those of any other agreement or instrument, including any of the other Loan Documents, the terms, conditions and provisions of this Agreement shall prevail.

11.   <u>Miscellaneous</u>.   This Agreement may be executed in counterparts, and all counterparts shall constitute but one and the same document.  If any court of competent jurisdiction determines any provision of this Agreement or any of the other Loan Documents to be invalid, illegal or unenforceable, that portion shall be deemed severed from the rest, which shall remain in full force and effect as though the invalid, illegal or unenforceable portion had never been a part of the Loan Documents.  This Agreement shall be governed by the laws of the State of California, without regard to the choice of law rules of that State.  As used here, the word "***include(s)***" means "***includes(s), without limitation***," and the word "***including***" means "***including, but not limited to***."

**[Remainder of page intentionally left blank.**
**Signatures appear on following pages]**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their proper and duly authorized officers as of the day and year first above written.

**"Borrower"**

MERCO GROUP – SOUTHPARK, LLC, a
California limited liability company

By:_____
Name:_____
Title:_____

**"Lender"**

BANK OF AMERICA, N.A.,
a national banking association

By:_____
Name:_____
Title:_____

## REAFFIRMATION AND CONSENT OF GUARANTOR

Meruelo Maddux Properties, Inc., a Delaware corporation (*"Guarantor"*), hereby consents to the terms, conditions and provisions of the foregoing Eighth Modification Agreement (the *"Modification Agreement"*) and the transactions contemplated thereby. Guarantor hereby reaffirms the full force and effectiveness of the Guaranty Agreement dated as of August 4, 2004 executed by Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 (*"Original Guarantor"*) as modified and assumed by Guarantor pursuant to that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the *"Consent Agreement"*) by and among Borrower, Lender, Original Guarantor and Guarantor (as so modified and assumed, the *"Guaranty"*), and agrees that the obligations of Borrower guaranteed under the Guaranty include, without limitation, the obligation of Borrower to repay the principal amount of the Loan, as such Loan has been modified pursuant to the terms of the foregoing Modification Agreement.  In addition, Guarantor acknowledges that its obligations under the Guaranty are separate and distinct from those of Borrower on the Loan.  Capitalized terms used herein without definition have the meanings ascribed to them in the Modification Agreement

Dated as of _____ ___, 2011

**GUARANTOR:**

Meruelo Maddux Properties, Inc.,
a Delaware corporation

By:_____
Name:_____
Title:_____

Exhibit 5

## AMENDED AND RESTATED PROMISSORY NOTE

$\underline{\hspace{4cm}}$  $\underline{\hspace{3cm}}$, 2011

FOR VALUE RECEIVED, MERUELO MADDUX PROPERTIES – 760 S. HILL STREET, LLC, a Delaware limited liability company (*"Borrower"*), hereby promises to pay to the order of Bank of America, N.A., a national banking association (together with any and all of its successors and assigns and/or any other holder of this Note, *"Lender"*), without offset, in immediately available funds in lawful money of the United States of America, at 333 South Hope Street, 11th Floor, Los Angeles, California   90071, the principal sum of $\underline{\hspace{8cm}}$ and No/100 Dollars ($\underline{\hspace{4cm}}$) (or the unpaid balance of all principal advanced against this Note, if that amount is less), together with interest on the unpaid principal balance of this Note from day to day outstanding as hereinafter provided. This Note amends and restates in its entirety that certain Promissory Note dated as of January 27, 2006, executed by Borrower and payable to the order of Lender as modified and amended to date, (as so modified, amended and assumed, the *"Original Note"*).  In no event shall this Note be deemed to be or constitute a novation or release of Borrower's obligations under the Original Note.

Section 1    Payment Schedule and Maturity Date.  Prior to maturity, accrued and unpaid interest shall be due and payable in arrears on the fifteenth day of each month commencing on $\underline{\hspace{3cm}}$ 15, 2011.  The entire principal balance of this Note then unpaid, together with all accrued and unpaid interest and all other amounts payable hereunder and under the other Loan Documents (as hereinafter defined), shall be due and payable in full on $\underline{\hspace{4cm}}$ (the *"Maturity Date"*), the final maturity of this Note.

Section 2    Security; Loan Documents.  The security for this Note includes a Construction Deed of Trust, Assignment, Security Agreement and Fixture Filing dated as of January 27, 2006, executed by Borrower as trustor, to PRLAP, Inc., as trustee, for the benefit of Lender as beneficiary, recorded on January 30, 2006 in the Official Records of Los Angeles County, California (the *"Official Records"*) as Document No. 06 0214046 as amended by that certain Amendment to Deed of Trust dated as of even date herewith (as so modified and amended, and as further modified, amended and restated from time to time, the *"Deed of Trust"*), conveying and encumbering certain real and personal property more particularly described therein (the *"Property"*).  Under that certain Construction Loan Agreement dated as of January 27, 2006 between Borrower and Lender, as modified and amended by that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the *"Consent Agreement"*) by and among Borrower, Lender, Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 (*"Original Guarantor"*) and Meruelo Maddux Properties, Inc., a Delaware corporation (*"Guarantor"*) as further modified pursuant to that certain Loan Modification dated as of $\underline{\hspace{3cm}}$, 2011 (as so modified and amended, the "*Loan Agreement*"), Lender agreed to make a loan to Borrower (the *"Loan"*). This Note, the Deed of Trust, the Loan Agreement and all other documents now or hereafter securing, guaranteeing or executed in connection with the loan evidenced by this Note (the *"Loan"*), as the same may from time to time be amended, restated, modified or supplemented, are herein sometimes called individually a *"Loan Document"* and together the *"Loan Documents."*

Section 3      Interest Rate.

(a)      Fixed Rate. Interest on the outstanding principal balance of, and all other sums owing under this Note, which are not past due, shall accrue and be payable at a rate which is equal to _____ percent (____%) per annum (the *"Note Rate"*). Interest shall be computed for the actual number of days which have elapsed, on the basis of a 360-day year.

(b)      Past Due Rate. If any amount payable by Borrower under any Loan Document is not paid when due (without regard to any applicable grace periods), such amount shall thereafter bear interest at the Past Due Rate (as defined below) to the fullest extent permitted by applicable law. Accrued and unpaid interest on past due amounts (including interest on past due interest) shall be due and payable on demand, at a rate per annum (the *"Past Due Rate"*) equal to the Note Rate plus four hundred (400) basis points.

Section 4      Prepayment.

(a)      Borrower may prepay the principal balance of this Note, in full at any time or in part from time to time, provided that: (i) no prepayment may be made which in Lender's judgment would contravene or prejudice funding under any applicable permanent loan commitment or tri-party agreement or the like; (ii) Lender shall have actually received from Borrower prior irrevocable written notice (the *"Prepayment Notice"*) of Borrower's intent to prepay, the amount of principal which will be prepaid (the *"Prepaid Principal"*), and the date on which the prepayment will be made; (iii) each prepayment shall be in the amount of $1,000 or a larger integral multiple of $1,000 (unless the prepayment retires the outstanding balance of this Note in full); and (iv) each prepayment shall be in the amount of 100% of the Prepaid Principal, plus accrued unpaid interest thereon to the date of prepayment, plus any other sums which have become due to Lender under the Loan Documents on or before the date of prepayment but have not been paid, and plus the Make-Whole Amount (hereinafter defined). If this Note is prepaid in full, any commitment of Lender for further advances shall automatically terminate.

(b)      The *"Make-Whole Amount"* shall equal the aggregate of any loss, cost, penalty, claim, liability or expense, including any loss in obtaining, prepaying, liquidating or employing deposits or other funds from third parties, and any loss of revenue, profit or yield, as determined by Lender, in its judgment reasonably exercised, incurred by Lender with respect to any Fixed Rate as a result of the prepayment, including: (i) the failure of Borrower to make any payment on the date or in the amount specified in any Prepayment Notice from Borrower to Lender; or (ii) the payment or prepayment of any amount on a date other than the date such amount is required or permitted to be paid or prepaid. Borrower agrees to pay the Make-Whole Amount upon any prepayment of principal, whether voluntary or involuntary, whether effected by a credit bid or foreclosure, or whether by reason of acceleration upon an Event of Default or upon any transfer or conveyance of any right, title or interest in the Property giving Lender the right to accelerate the maturity of this Note as provided in the Mortgage. Notwithstanding the foregoing, the Make-Whole Amount shall in no event be less than zero or greater than is permitted by applicable law. Lender shall provide a notice to Borrower setting forth Lender's determination of any Make-Whole Amount, which notice shall be conclusive in the absence of manifest error. Lender reserves the right to provide interim calculations of such Make-Whole Amount in any notice of default or notice of sale for informational purposes but the exact amount of such Make-

Whole Amount shall be calculated only upon the actual prepayment of principal as described herein. The Make-Whole Amount shall be included in the total indebtedness secured by the Mortgage for all purposes, including in connection with a foreclosure sale. Lender may include the Make-Whole Amount in any credit bid Lender may make at a foreclosure sale. Lender shall have no obligation to purchase, sell and/or match funds in connection with the funding or maintaining of the Loan or any portion thereof. The obligations of Borrower under this Section shall survive any termination of the Loan Documents and payment of this Note and shall not be waived by any delay by Lender in seeking such compensation.

(c)    By its signature below, Borrower waives any right under California Civil Code Section 2954.10 or otherwise to prepay the Loan, in whole or in part, without payment of the Make-Whole Amount as described above. Borrower acknowledges that prepayment of the Loan may result in Lender's incurring additional losses, costs, expenses and liabilities, including lost revenues and lost profits. Borrower therefore agrees to pay the Make-Whole Amount if any principal amount is prepaid, whether voluntarily or by reason of acceleration, including acceleration upon any transfer or conveyance of any right, title or interest in the Property giving Lender the right to accelerate the maturity of this Note as provided in the Mortgage. Borrower agrees that Lender's willingness to offer the Note Rate to Borrower is sufficient and independent consideration, given individual weight by Lender, for this waiver. Borrower understands that Lender would not offer the Note Rate to Borrower absent this waiver.

Dated: _____ __, 2011

MERUELO MADDUX PROPERTIES – 760 S. HILL STREET, LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

Section 5    Late Charges.  If Borrower shall fail to make any payment under the terms of this Note (other than the payment due at maturity) within fifteen (15) days after the date such payment is due, Borrower shall pay to Lender on demand a late charge equal to four percent (4%) of the amount of such payment. Such fifteen (15) day period shall not be construed as in any way extending the due date of any payment. The late charge is imposed for the purpose of defraying the expenses of Lender incident to handling such delinquent payment. This charge shall be in addition to, and not in lieu of, any other amount that Lender may be entitled to receive or action that Lender may be authorized to take as a result of such late payment.

Section 6    Certain Provisions Regarding Payments.  All payments made under this Note shall be applied, to the extent thereof, to late charges, to accrued but unpaid interest, to unpaid principal, and to any other sums due and unpaid to Lender under the Loan Documents, in such manner and order as Lender may elect in its sole discretion, any instructions from Borrower or anyone else to the contrary notwithstanding. Remittances shall be made without offset, demand, counterclaim, deduction, or recoupment (each of which is hereby waived) and shall be

accepted subject to the condition that any check or draft may be handled for collection in accordance with the practice of the collecting bank or banks. Acceptance by Lender of any payment in an amount less than the amount then due on any indebtedness shall be deemed an acceptance on account only, notwithstanding any notation on or accompanying such partial payment to the contrary, and shall not in any way (a) waive or excuse the existence of an Event of Default (as hereinafter defined), (b) waive, impair or extinguish any right or remedy available to Lender hereunder or under the other Loan Documents, or (c) waive the requirement of punctual payment and performance or constitute a novation in any respect. Payments received after 2:00 p.m. shall be deemed to be received on, and shall be posted as of, the following Business Day. Whenever any payment under this Note or any other Loan Document falls due on a day which is not a Business Day, such payment may be made on the next succeeding Business Day.

Section 7    Events of Default. The occurrence of any one or more of the following shall constitute an *"Event of Default"* under this Note:

(a)    Borrower fails to pay when and as due and payable any amounts payable by Borrower to Lender under the terms of this Note.

(b)    Any covenant, agreement or condition in this Note is not fully and timely performed, observed or kept, subject to any applicable grace or cure period.

(c)    An Event of Default (as therein defined) occurs under any of the Loan Documents other than this Note (subject to any applicable grace or cure period).

Section 8    Remedies. Upon the occurrence of an Event of Default, Lender may at any time thereafter exercise any one or more of the following rights, powers and remedies:

(a)    Lender may accelerate the Maturity Date and declare the unpaid principal balance and accrued but unpaid interest on this Note, and all other amounts payable hereunder and under the other Loan Documents, at once due and payable, and upon such declaration the same shall at once be due and payable.

(b)    Lender may set off the amount due against any and all accounts, credits, money, securities or other property now or hereafter on deposit with, held by or in the possession of Lender to the credit or for the account of Borrower, without notice to or the consent of Borrower.

(c)    Lender may exercise any of its other rights, powers and remedies under the Loan Documents or at law or in equity.

Section 9    Remedies Cumulative. All of the rights and remedies of Lender under this Note and the other Loan Documents are cumulative of each other and of any and all other rights at law or in equity, and the exercise by Lender of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other rights and remedies. No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be exercised at any time and from time to time. No failure by Lender to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default.

Section 10    Costs and Expenses of Enforcement. Borrower agrees to pay to Lender on demand all costs and expenses incurred by Lender in seeking to collect this Note or to enforce any of Lender's rights and remedies under the Loan Documents, including court costs and reasonable attorneys' fees and expenses, whether or not suit is filed hereon, or whether in connection with arbitration, judicial reference, bankruptcy, insolvency or appeal.

Section 11    Service of Process. Borrower hereby consents to process being served in any suit, action, or proceeding instituted in connection with this Note by (a) the mailing of a copy thereof by certified mail, postage prepaid, return receipt requested, to Borrower and (b) serving a copy thereof upon _____, the agent hereby designated and appointed by Borrower as Borrower's agent for service of process. Borrower irrevocably agrees that such service shall be deemed to be service of process upon Borrower in any such suit, action, or proceeding. Nothing in this Note shall affect the right of Lender to serve process in any manner otherwise permitted by law and nothing in this Note will limit the right of Lender otherwise to bring proceedings against Borrower in the courts of any jurisdiction or jurisdictions, subject to any provision or agreement for arbitration, judicial reference or other dispute resolution set forth in the Loan Agreement.

Section 12    Heirs, Successors and Assigns. The terms of this Note and of the other Loan Documents shall bind and inure to the benefit of the heirs, devisees, representatives, successors and assigns of the parties. The foregoing sentence shall not be construed to permit Borrower to assign the Loan except as otherwise permitted under the Loan Documents.

Section 13    General Provisions. Time is of the essence with respect to Borrower's obligations under this Note. If more than one person or entity executes this Note as Borrower, all of said parties shall be jointly and severally liable for payment of the indebtedness evidenced hereby. Borrower and each party executing this Note as Borrower hereby severally (a) waive demand, presentment for payment, notice of dishonor and of nonpayment, protest, notice of protest, notice of intent to accelerate, notice of acceleration and all other notices (except any notices which are specifically required by this Note or any other Loan Document), filing of suit and diligence in collecting this Note or enforcing any of the security herefor; (b) agree to any substitution, subordination, exchange or release of any such security or the release of any party primarily or secondarily liable hereon; (c) agree that Lender shall not be required first to institute suit or exhaust its remedies hereon against Borrower or others liable or to become liable hereon or to perfect or enforce its rights against them or any security herefor; (d) consent to any extensions or postponements of time of payment of this Note for any period or periods of time and to any partial payments, before or after maturity, and to any other indulgences with respect hereto, without notice thereof to any of them; and (e) submit (and waive all rights to object) to non exclusive personal jurisdiction of any state or federal court sitting in the state and county in which payment of this Note is to be made] for the enforcement of any and all obligations under this Note and the other Loan Documents; (f) waive the benefit of all homestead and similar exemptions as to this Note; (g) agree that their liability under this Note shall not be affected or impaired by any determination that any title, security interest or lien taken by Lender to secure this Note is invalid or unperfected; and (h) hereby subordinate to the Loan and the Loan Documents any and all rights against Borrower and any security for the payment of this Note, whether by subrogation, agreement or otherwise, until this Note is paid in full. A determination that any provision of this Note is unenforceable or invalid shall not affect the enforceability or

validity of any other provision and the determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances. This Note may not be amended except in a writing specifically intended for such purpose and executed by the party against whom enforcement of the amendment is sought. Captions and headings in this Note are for convenience only and shall be disregarded in construing it. This Note and its validity, enforcement and interpretation shall be governed by the laws of the State of California (without regard to any principles of conflicts of laws) and applicable United States federal law. Whenever a time of day is referred to herein, unless otherwise specified such time shall be the local time of the place where payment of this Note is to be made. The term *"Business Day"* shall mean a day on which Lender is open for the conduct of substantially all of its banking business at its office in the city in which this Note is payable (excluding Saturdays and Sundays). Capitalized terms used herein without definition shall have the meanings ascribed to such terms in the Loan Agreement. The words *"include"* and *"including"* shall be interpreted as if followed by the words *"without limitation."*

Section 14    Notices. Any notice, request, or demand to or upon Borrower or Lender shall be deemed to have been properly given or made when delivered in accordance with the terms of the Loan Agreement regarding notices.

Section 15    No Usury. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Lender to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Section shall control every other covenant and agreement in this Note and the other Loan Documents. If applicable state or federal law should at any time be judicially interpreted so as to render usurious any amount called for under this Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Loan, or if Lender's exercise of the option to accelerate the Maturity Date, or if any prepayment by Borrower results in Borrower having paid any interest in excess of that permitted by applicable law, then it is Lender's express intent that all excess amounts theretofore collected by Lender shall be credited on the principal balance of this Note and all other indebtedness secured by the Deed of Trust, and the provisions of this Note and the other Loan Documents shall immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder. All sums paid or agreed to be paid to Lender for the use or forbearance of the Loan shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Loan.

*[Signatures appear on following page.]*

IN WITNESS WHEREOF, Borrower has duly executed this Note as of the date first above written.

Borrower:

MERUELO MADDUX PROPERTIES – 760 S. HILL STREET, LLC, a Delaware limited liability company


By:_____

Name:_____

Title:_____

Exhibit 6

RECORDING REQUESTED BY AND            )
WHEN RECORDED MAIL TO:                )
Snell & Wilmer L.L.P.                         )
600 Anton Blvd., Suite 1400               )
Costa Mesa, California 92626            )
Attn.: Katie MacDonald                     )
                                                        )

Space Above for Recorder's Use

## AMENDMENT TO DEED OF TRUST

This Amendment to Deed of Trust (this *"Amendment"*) is made as of _____ ___, 2011, by and between MERUELO MADDUX PROPERTIES – 760 S. HILL STREET, LLC, a Delaware limited liability company (*"Grantor"*), and BANK OF AMERICA, N.A., a national banking association (*"Lender"*).

<u>Factual Background</u>

A.      Pursuant to that certain Construction Loan Agreement dated as of January 27, 2006 between Grantor and Lender, as modified and amended by that certain Consent Agreement and Amendment to Loan Agreement dated as of May 8, 2007 (the *"Consent Agreement"*) by and among Grantor, Lender, Richard Meruelo, individually and as Trustee of the Richard Meruelo Living Trust u/d/t dated September 15, 1989 (*"Original Guarantor"*) and Meruelo Maddux Properties, Inc., a Delaware corporation (*"Guarantor"*) (as so modified and amended the *"Loan Agreement"*), Lender agreed to make a loan to Grantor (the *"Loan"*) in the principal amount of Twenty-Eight Million Seven Hundred Twenty Thousand and No/100 Dollars ($28,720,000.00). Capitalized terms used herein without definition have the meanings ascribed to them in the Loan Agreement.

B.      The Loan is presently evidenced by that certain Promissory Note dated as of January 27, 2006, made payable to Lender in the stated principal amount of Twenty-Eight Million Seven Hundred Twenty Thousand and No/100 Dollars ($28,720,000.00) (the *"Original Note"*).

C.      The Original Note is secured by that certain Construction Deed of Trust, Assignment, Security Agreement and Fixture Filing dated as of January 27, 2006, executed by Grantor as trustor, to PRLAP, Inc., as trustee, for the benefit of Lender as beneficiary, recorded on January 30, 2006 in the Official Records of Los Angeles County, California (as amended, restated or otherwise modified from time to time, the *"Deed of Trust"*). The Deed of Trust encumbers certain Property located in Los Angeles County, California, as more particularly described on *Exhibit A* attached hereto.

D.      As used herein, the term *"Loan Documents"* means the Loan Agreement, the Original Note, the Deed of Trust, and any other documents executed in connection with the Loan, including those which evidence, guarantee, secure or modify the Loan, as any or all of them may have been amended to date. This Agreement is a Loan Document.

E.      Pursuant to that certain Loan Modification of even date herewith between Grantor, as borrower, and Lender (the *"Modification Agreement"*), Grantor and Lender have agreed, among

other things, to extend the maturity of the Loan, increase the principal amount of the Loan, and to modify the rate of interest payable with respect to the Loan. In connection therewith, the obligations of Grantor under the Original Note have been amended and restated pursuant to that certain Amended and Restated Promissory Note of even date herewith (the *"Amended Note"*), executed by Grantor in favor of Lender in the principal amount of _____.

F.       As a condition to the effectiveness of the Modification Agreement, Grantor and Lender desire to amend the Deed of Trust to provide, among other things, that the obligations of Grantor secured thereunder shall include, without limitation, the obligations of Grantor under the Amended Note.

Agreement

Therefore, the parties hereto agree as follows:

1.       The Loan is amended on the terms and subject to the conditions of the Modification Agreement.

2.       The definition of the term "Note" set forth in Article I of the Deed of Trust is hereby amended and restated in its entirety as follows:

"'Note' means, the Amended and Restated Promissory Note dated as of _____, 2011 in the original principal amount of _____ Dollars ($_____) made by Grantor to the order of Lender, as the same may from time to time be extended, amended, restated, supplemented or otherwise modified."

3.       The Deed of Trust is modified to secure payment and performance of the Loan, as amended and modified to date, in addition to all other *"Obligations"* described therein. In all other respects, the Deed of Trust shall remain unmodified and in full force and effect.

4.       This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

5.       This Agreement shall be governed by the laws of the State of California, without regard to the choice of law rules of that State.

*[Remainder of Page Intentionally Left Blank.]*
*[Signatures Appear on Following Page.]*

IN WITNESS WHEREOF, this Amendment is executed by the parties hereto as of the date first written above.

**GRANTOR**:

MERUELO MADDUX PROPERTIES – 760 S. HILL STREET, LLC,
a Delaware limited liability company

By:_____
Name:_____
Title:_____

**LENDER:**

BANK OF AMERICA, N.A.,
a national banking association

By:_____
Name: _____
Title: _____

## ACKNOWLEDGEMENT

State of California

County of _____

On _____ before me, _____,

(here insert name and title of the officer)

personally appeared _____ who proved to me on the basis of

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

## ACKNOWLEDGEMENT

State of California

County of _____

On _____ before me, _____,
(here insert name and title of the officer)

personally appeared _____ who proved to me on the basis of

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

## ACKNOWLEDGEMENT

State of California

County of _____

On _____ before me, _____,
(here insert name and title of the officer)

personally appeared _____ who proved to me on the basis of

satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument

and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),

and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of

which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing

paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

**EXHIBIT A**

**Description of the Property**

[To be attached.]

Exhibit A-1

| In re: MERUELO MADDUX PROPERTIES, INC., et al.,<br><br>                                   Debtor(s). | CHAPTER  11<br>CASE NUMBER - 1:09-bk-13356-VK |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any **NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate a NEF because only orders that have been entered are placed on the CM/ECF docket.

### PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is 600 Anton Boulevard, Suite 1400, Costa Mesa, CA  92626.  The foregoing documents described as:  **BANK OF AMERICA, N.A.'S NOTICE OF SUBMISSION OF MODIFIED LOAN DOCUMENTS IN CONNECTION WITH DEBTORS' PLAN OF REORGANIZATION,** will be served or was served in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On May 6, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL, PERSONAL DELIVERY, OR OVERNIGHT MAIL**(indicate method for each person or entity served):  On **May 6, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope with postage thereon fully prepaid in the United States Mail and/or with an overnight mail service addressed as follows:

The Honorable Victoria S. Kaufman              Via Hand Delivery and
United States Bankruptcy Court  - Warner Center   Via Federal Express
21041 Burbank Boulevard, Suite 354
Woodland Hills, CA 91367-6609

☒ Service information continued on attached page

**III.  SERVED BY FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served):  Pursuant to Fed. R. Civ. Proc. 5 and/or controlling LBR, on        I served the following person(s) and/or entity(ies), who consented in writing to such service method, by facsimile transmission and/or email as follows:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 6, 2011 | Dana Lewis | /s/ Dana Lewis |
|---|---|---|
| Date | Type Name | Signature |

13023256

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

- Michael C Abel    mcabel@mac.com
- Robert Abiri    rabiri@abiriszeto.com
- Allison R Axenrod    allison@claimsrecoveryllc.com
- Christopher J Bagnaschi    cb@cjblaw.com
- John J Bingham    jbingham@dgdk.com
- William C Bollard    eal@jbblaw.com, kmg@jbblaw.com;william@jbblaw.com
- Peter Bonfante    peterbonfante@bsalawfirm.com
- Erin N Brady    enbrady@jonesday.com
- Julia W Brand    JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
- Jennifer L Braun    jennifer.l.braun@usdoj.gov
- Martin J Brill    mjb@lnbrb.com
- Andrew W Caine    acaine@pszyjw.com
- Howard Camhi    hcamhi@ecjlaw.com
- Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
- James E Carlberg    jcarlberg@boselaw.com
- Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com
- Jacquelyn H Choi    jchoi@swjlaw.com
- Carol Chow    CChow@Stutman.com
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Ronald R Cohn    rcohn@horganrosen.com
- Enid M Colson    emc@dgdk.com, ecolson@dgdk.com
- Michaeline H Correa    mcorrea@jonesday.com
- Emily R Culler    eculler@stutman.com
- Ana Damonte    ana.damonte@pillsburylaw.com
- Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Susan S Davis    sdavis@coxcastle.com
- Aaron De Leest    aed@dgdk.com
- Daniel Denny    ddenny@gibsondunn.com
- Jeffrey W Dulberg    jdulberg@pszjlaw.com
- Marina Fineman    mfineman@stutman.com
- Michael G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
- Donald L Gaffney    dgaffney@swlaw.com
- Thomas M Geher    tmg@jmbm.com
- Bernard R Given    bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Barry S Glaser    bglaser@swjlaw.com
- Gabriel I Glazer    gglazer@stutman.com
- Matthew A Gold    courts@argopartners.net
- Eric D Goldberg    egoldberg@stutman.com
- Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com
- John A Graham    jag@jmbm.com
- Ofer M Grossman    omglaw@gmail.com
- Jodie M Grotins    jgrotins@mcguirewoods.com
- Peter J Gurfein    pgurfein@lgbfirm.com
- Cara J Hagan    carahagan@haganlaw.org
- Asa S Hami    ahami@sulmeyerlaw.com
- Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
- Robert A Hessling    rhessling@dgdk.com
- William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
- Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

13023256

- William H. Kiekhofer    wkiekhofer@mcguirewoods.com
- Andrew F Kim    akim@mrllp.com
- Michael S Kogan    mkogan@ecjlaw.com
- Tamar Kouyoumjian    tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- Lewis R Landau    lew@landaunet.com
- Dare Law    dare.law@usdoj.gov
- Leib M Lerner    leib.lerner@alston.com
- Matthew A Lesnick    matt@lesnicklaw.com
- David E Leta    dleta@swlaw.com, wsmart@swlaw.com
- Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
- Steven K Linkon    slinkon@rcolegal.com
- Robert M Llewellyn    michael.llewellyn@boe.ca.gov
- Richard Malatt    rmalatt@gmail.com
- Elmer D Martin    elmermartin@gmail.com
- Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Avi Muhtar    amuhtar@sulmeyerlaw.com
- Iain A W Nasatir    inasatir@pszjlaw.com, jwashington@pszjlaw.com
- Jeffrey P Nolan    jnolan@pszjlaw.com
- Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Lawrence Peitzman    lpeitzman@pwkllp.com
- Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com
- Christopher E Prince    cprince@lesnickprince.com
- Michael H Raichelson    mhr@cabkattorney.com
- Dean G Rallis Jr    drallis@sulmeyerlaw.com
- Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin - DECEASED -    cmr@lnbrb.com
- Daniel R Reiss    dhr@lnbyb.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com
- James S Riley    tgarza@sierrafunds.com
- Martha E Romero    Romero@mromerolawfirm.com
- Victor A Sahn    vsahn@sulmeyerlaw.com
- Steven J Schwartz    sschwartz@dgdk.com
- Kenneth J Shaffer    jshaffer@stutman.com
- Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com
- David B Shemano    dshemano@pwkllp.com
- Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com
- Stephen Shiu    sshiu@swlaw.com
- Lori Sinanyan    lsinanyan@jonesday.com
- Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Surjit P Soni    surjit@sonilaw.com, teresa@sonilaw.com
- Bennett L Spiegel    blspiegel@jonesday.com
- Tracie L Spies    tracie@haganlaw.org
- James Stang    jstang@pszjlaw.com
- Catherine Steege    csteege@jenner.com
- Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- John N Tedford    jtedford@dgdk.com, DanningGill@Gmail.com
- Damon Thayer    dthayer@jenner.com
- James A Timko    jtimko@allenmatkins.com
- Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Rouben Varozian    rvarozian@bzlegal.com
- Jason L Weisberg    jason@gdclawyers.com
- William E Winfield    wwinfield@nchc.com

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1
- Jasmin Yang    jyang@swlaw.com
- Aleksandra Zimonjic    azimonjic@lgbfirm.com, kmoss@lgbfirm.com;cscott@lgbfirm.com

2

## II. TO BE SERVED BY U.S. MAIL:

3

Michael Abramson
8918 W. Pico Blvd., No. 120
Los Angeles, CA  90035

Mel Aranoff
23975 Pk. Sorrento, Suite 200
Calabasas, CA  91302

Larry C. Baron
Landegger, Baron, Lavenant& Ingber
15760 Ventura Blvd., Suite 1200
Encino, CA  91436

David P Beitchman
16130 Ventura Blvd Ste 570
Encino, CA 91436

Debt Acquisition Company of America V, LLC
1565 Hotel Circle South, Suite 310
San Diego, CA 92108

Arthur J Hazarabedian
California Eminent Domain Law Group
3429 Ocean View Blvd Ste L
Glendale, CA 91208

Jenner & Block LLP
Jenner & Block LLP
633 West 5th Street
Suite 3500
Los Angeles, CA 90071

Kibel Green Inc
2001 Wilshire Blvd Suite 420
Santa Monica, CA 90403

Michael L Marx
Jenkins Goodman Neuman & Hamilton
417 Montgomery St 10th Fl
San Francisco, CA 94104

Ronald Orr
Ronald Orr & Professionals, Inc.
578 Washington Blvd., #389
Marina Del Rey, CA 90292

Matthew Pakkala
633 West 5th Street, 16th Flr.
Los Angeles, CA  90071-2027

Michael Portner
Portner Law Offices
900 Wilshire Blvd Ste 1115
Los Angeles, CA

Riverside Claims LLC
PO Box 626
Planetarium Station
New York, NY 10024

Georgiana G. Rodiger
Rodiger Law Office
272 South Los Robles Avenue
Pasadena, CA 91101

SCS Flooring Systems
C/O Raymond Myer Esq.
1220 1/2 State St
Santa Barbara, CA 93101

Sean Salamati
Law Offices of Sean Salamati
888 S. Figueroa Street, Suite 1030
Los Angeles, CA  90017

Patrick J Stark
Ford Walker Haggerty & Behar
1 World Trade Ctr 27th Fl
Long Beach, CA 90831

Larry E Wasserman
Law Offices of Larry E Wasserman
12800 Riverside Dr , 3rd Floor
Studio City, CA 91607

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

13023256

- 7 -