GARY E. KLAUSNER (State Bar No. 69077)
MARINA FINEMAN (State Bar No. 193065)
ANTHONY ARNOLD (State Bar No. 251973), Members of
STUTMAN, TREISTER & GLATT, P.C.
1901 Avenue of the Stars, 12th Floor
Los Angeles, CA 90067-6013
gklausner@stutman.com
mfineman@stutman.com
aarnold@stutman.com
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

Special Reorganization Counsel for Debtors and Debtors in Possession

JOHN N. TEDFORD, IV (State Bar No. 205537)
DANNING GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, CA 90067-2904
JTedford@DGDK.com
Telephone:  (310) 277-0077
Facsimile:  (310) 277-5735

Reorganization Counsel for Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>MERUELO MADDUX PROPERTIES, INC., et al.,[1]<br><br>Debtor.<br><br>☒ Affects all Debtors<br>☐ Affects the following Debtor(s): | Case No.: 1:09-bk-13356-VK<br>Chapter 11 (Jointly Administered)<br><br>**DEBTORS' RESPONSE TO EQUITY COMMITTEE'S LIMITED OBJECTION TO DEBTORS' EFFECTIVE DATE LOAN DOCUMENTS AND CHARLESTOWN PROPONENTS' OBJECTION TO INCONSISTENCIES BETWEEN DEBTORS' EFFECTIVE DATE LOAN DOCUMENTS AND DEBTORS' PLAN OF REORGANIZATION**<br><br>**Status Conference Date:    May 9, 2011**<br>**Time:    2:00 p.m.**<br>**Place:    Courtroom 301**<br>         **21041 Burbank Blvd.**<br>         **Woodland Hills, California  91367** |

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

550691v2

The Debtors and Debtors in Possession in the above captioned chapter 11 cases submit the following response to the Equity Committee's Limited Objection to Debtors' Effective Date Loan Documents ("OEC Limited Objection") and Charlestown Proponents' Objection to Inconsistencies Between Debtors' Effective Date Loan Documents and Debtors' Plan of Reorganization ("Charlestown Objection").

## **INTRODUCTION**

The OEC Limited Objection and the Charlestown Objection represent the best examples of why this Court needs to confirm the Debtors' plan of reorganization immediately and put an end to the seemingly interminable, meritless objections and delaying tactics employed by the OEC and Charlestown.

As this Court is aware, funding for the Debtors' Plan is coming from Watermarke Properties, Inc. and/or its affiliates ("Watermarke") in the form of a $15 million secured loan to MMPI. On May 5, 2011 the Debtors filed their "Notice of Submission of Debtors' Effective Date Loan Documents" which included the final form of promissory note, deeds of trust, and environmental indemnities which the Debtors and Watermarke will use in effectuating the $15 million secured loan.

The Equity Committee, in its Limited Objection, has taken issue with two substantive points; the inclusion of an environmental indemnity, and provisions which allow the Debtors, subject to agreement of Watermarke, to substitute different collateral for the three parcels of real property identified in the letter of intent was attached to Richard Meruelo's Supplemental Declaration filed on January 6, 2011. These two substantive points will be addressed in Part II below. In addition, as will be shown in Part I, the Equity Committee has improperly attempted to inject into its Limited Objection inflammatory arguments and unsupported factual assertions pertaining to previously addressed confirmation issues.

The Charlestown Objection mimics that of the OEC except that Charlestown has added the absurd objection to the creation of a non-existent deficiency claim. This point will be addressed in Part IV hereof.

**I.**

## THE EQUITY COMMITTEE HAS IMPROPERLY ATTEMPTED TO RE-ACQUIRE CONFIRMATION ISSUES FOR WHICH THE RECORD HAS BEEN CLOSED

The Equity Committee devotes approximately one-half page of its Limited Objection to a provision of the Charlestown Plan which obligates shareholders of the Debtor to sell their stock for 35 cents a share.[2] Not only is any discussion of the subject irrelevant to any consideration of the Watermarke loan documents, and notwithstanding the fact that it is an improper attempt to file still another brief in connection with confirmation matters that are now closed, but the Equity Committee's purported discussion of "arms length" negotiation between Charlestown and the Equity Committee pertaining to the stock price is unsupported by any evidence in the record – and the Equity Committee is well aware of this fact. Neither Charlestown nor the Equity Committee presented any evidence pertaining to the 35 cent per share price and, in particular, there was no evidence as to any "arms length" negotiations. The issue of the forced sale of stock at a price which the Debtor demonstrated was unreasonably low (based on unrefuted evidence) is a critical issue for this Court to consider in connection with determining whether the Charlestown Plan is fair and equitable to shareholders. The Equity Committee's attempt to influence the Court by arguments that are both untimely and contrary to the evidence in this record is indefensible. At the very least, any discussion set forth in the Equity Committee's Limited Objection pertaining to this subject should be stricken from the record and not considered by this Court.

The Equity Committee has also inserted an argument pertaining to alleged misconduct of the Debtors' management. Again, the Equity Committee is improperly attempting to reargue its case, file additional briefing on subjects which are now closed and attempting to argue matters that are outside the record and not supported by evidence. Accordingly, the discussion in the Equity Committee's brief beginning at page 4, line 24 and continuing through page 5 at line 2 should also be stricken.

---

[2] Limited Objection at 1:9-2:5.

## II.

## ENVIRONMENTAL INDEMNITY

The Equity Committee's assertion that the environmental indemnity is an undisclosed material term of the proposed Watermarke loan, and that Watermarke should be obligated to proceed with the loan, absent the environmental indemnity is both disingenuous and betrays an alarming ignorance on the part of the Equity Committee of standard practices in commercial real estate lending. Environmental indemnities, under which the borrower protects the lender against claims relating to environmental liability are routine. The fact that the Debtors are providing an environmental indemnity to Watermarke should come as no surprise to anyone who has any familiarity or experience in commercial lending. Indeed, environmental indemnities are contained in the loan documents between the debtors and substantially all of the secured lenders in these cases, including Cathay Bank, California Bank and Trust, Bank of America, Kennedy Funding, Chinatrust, City National Bank, FNBN, PNL and East West Bank.

## III.

## SUBSTITUTION OF COLLATERAL

Remarkably, the Equity Committee objects to a provision in the Secured Convertible Promissory Note ("Note") which permits the Debtors to substitute collateral for that which has been previously identified in the Letter of Intent as collateral securing the Watermarke loan. The Letter of Intent which was filed with this Court expressly provided for the Debtors to have the right to substitute collateral for any of the three identified parcels, if any of those three parcels were to be sold. The terms of the Note are actually more liberal and provide the Debtors with greater flexibility than that which was set forth in the Letter of Intent.

The Equity Committee's objection to this provision makes no sense. The Equity Committee expresses a concern that because of the Debtors' right to substitute collateral (subject to Watermarke's consent) there is uncertainty as to which properties will be encumbered; and that this uncertainty is something which was not previously disclosed in the plan process. However, the Letter of Intent provided for the Debtors to have the right to substitute collateral. The only difference between the Letter of Intent and the final form of Note is the Debtors' right to substitute

550691v2

3

collateral is not conditioned on the sale of one of the initially identified properties.  Accordingly, the possibility that properties other than the initial three could serve as collateral for the Note has always been provided for.

## IV.

## THE CHARLESTOWN OBJECTION

In addition to the two points raised by the Equity Committee, Charlestown claims that "The Deed of Trust and Assignment of Rents (Exhibit C) imposes recourse liability on the Debtors whose collateral is being pledged to secure the loan."[3]  Charlestown then proceeds to support its assertion by citing provisions of the Deed of Trust which contain customary waivers of provisions of California law.  However, the premise of Charlestown's argument is faulty.  None of the Debtors who are providing deeds of trust to secure the $15 Million loan are, themselves, executing promissory notes or guarantees of MMPI's loan obligation.  Accordingly, none of the Debtors will have any obligation for the underlying debt.  The deeds of trust do not create recourse liability.  The fact that they may contain waivers that are typically found in deeds of trust, including waivers of anti-deficiency statutes, does not create liability.

In addition, Charlestown ignores the reality that, based upon the undisputed evidence, (1) there is no reasonable likelihood that MMPI will default on the Watermarke loan and (2) the properties that have been identified as collateral for the Watermarke loan has substantial equity.  Like most of the arguments made by Charlestown and the OEC this argument is completely lacking in any merit.

It is nothing short of ridiculous for Charlestown whose own plan financing has completely and materially changed from that which was represented by creditors and shareholders at the time of voting, and which imposes on the reorganized debtor extraordinary liability which would likely cause a fire sale of the Debtors' real estate, to raise a relatively minor detail in the Debtors' proposed funding from Watermarke.

---

[3] Charlestown Objection at 6: 17-18.

**V.**

**CONCLUSION**

None of the points raised by the OEC Limited Objection or by the Charlestown Objection pose confirmation issues. The Watermarke loan documents are consistent with ordinary and customary business practices including notes and deeds of trust used by the Debtors in these cases and are entirely consistent with previous disclosure, and representations of the Court. We urge the Court not to permit the Equity Committee to misdirect the Court's focus away from confirming the Debtors' Plan so as to create more delay and controversy.

Dated:  May 9, 2011                                    */s/  Marina Fineman*
                                                                       GARY E. KLAUSNER,
                                                                       MARINA FINEMAN, and
                                                                       ANTHONY ARNOLD, Members of
                                                                       STUTMAN, TREISTER & GLATT, P.C.

                                                                       Special Reorganization Counsel for Debtors