JOHN N. TEDFORD, IV (State Bar No. 205537)
*JTedford@DGDK.com*
ENID COLSON (State Bar No. 189912)
*EColson@DGDK.com*
DANNING, GILL, DIAMOND & KOLLITZ, LLP
2029 Century Park East, Third Floor
Los Angeles, California 90067-2904
Telephone: (310) 277-0077
Facsimile: (310) 277-5735

Attorneys for Meruelo Maddux Properties, Inc.,
and affiliated Debtors and Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | ) Case No. 1:09-bk-13356-VK |
| | ) |
| MERUELO MADDUX PROPERTIES, INC., et al.,[1] | ) Chapter 11 (Jointly Administered) |
| | ) |
| Debtors and Debtors-in-Possession. | ) **NOTICE OF MOTION AND OMNIBUS** |
| | ) **MOTION OF DEBTORS-IN-** |
| | ) **POSSESSION FOR [1] AUTHORITY TO** |
| | ) **SELL REAL PROPERTIES FREE AND** |
| ☐ Affects all Debtors | ) **CLEAR OF LIENS, [2] AUTHORITY TO** |
| | ) **ASSUME AND ASSIGN UNEXPIRED** |
| ☑ Affects the following Debtor(s): | ) **LEASES, [3] AUTHORITY TO ENTER** |
| | ) **INTO LICENSE AGREEMENT AND [4]** |
| Meruelo Maddux – 817-825 S. Hill Street, LLC (1:09-bk-13391-VK) | ) **WAIVER OF STAY PER F.R.B.P. 6004(h)** |
| | ) **AND 6006(d); AND DECLARATION OF** |
| | ) **JOHN CHARLES MADDUX AND** |
| Meruelo Maddux – 915-949 S. Hill Street, LLC (1:09-bk-13362-VK) | ) **REQUEST FOR JUDICIAL NOTICE IN** |
| | ) **SUPPORT THEREOF** |
| | ) |
| Meruelo Maddux Properties – 1009 North Citrus Avenue, Covina, LLC (1:09-bk-13372-VK) | ) [Ex parte application for order shortening time filed separately] |
| | ) |
| | ) Date:    [TBD] |
| | ) Time:    [TBD] |
| Meruelo Maddux Properties – 760 S. Hill Street, LLC (1:09-bk-13363-VK) | ) Place:    Courtroom 301 |
| | )             21041 Burbank Blvd. |
| | )             Woodland Hills, California |
| | ) |

---

[1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

1    **PLEASE TAKE NOTICE** that, on a date and time to be set by the Court, debtors and

2  debtors-in-possession Meruelo Maddux – 915-949 S. Hill Street, LLC ("915 S. Hill"), Meruelo

3  Maddux Properties – 1009 North Citrus Avenue, Covina, LLC ("1009 North Citrus"), and Meruelo

4  Maddux Properties – 760 S. Hill Street, LLC ("760 S. Hill" and, collectively with 915 S. Hill and

5  1009 North Citrus, the "Seller Debtors") will and do hereby move for an order authorizing the

6  Seller Debtors to sell their respective real properties (the "Real Properties") as follows:

| Seller Debtor | Property Address | Lienholders |
| --- | --- | --- |
| 915 S. Hill | 915-949 S. Hill Street, Los Angeles ("Ullman One") | Los Angeles County City National Bank |
| 1009 North Citrus | 1009 N. Citrus Ave., Covina (the "Covina Property") | Los Angeles County |
| 760 S. Hill | 760 S. Hill Street and 325 West 8th Street, Los Angeles ("Union Lofts") | Los Angeles County Bank of America |

14    Attached hereto as Exhibit "2" is a table listing each of the Real Properties, the buyer, the

15  liens against the property, the sale price, the Company's valuation of the property, the valuation of

16  the property by Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation

17  (collectively, "Charlestown"), the broker's commission, if any, and the estimated net sale proceeds

18  after satisfaction of liens and commissions.

19    The Seller Debtors move for an order authorizing them to sell the Real Properties free and

20  clear of liens under 11 U.S.C. § 363(f), and for a waiver of the stay otherwise applicable to the

21  order. The Seller Debtors request that the Court enter orders in substantially the form of the

22  proposed orders attached collectively as Exhibit "1" hereto.

23    Additionally, debtor and debtor-in-possession Meruelo Maddux – 817-825 S. Hill Street,

24  LLC ("817 S. Hill") will and hereby does move for an order authorizing it to enter into a parking

25  license agreement with the buyer of Union Lofts pursuant to 11 U.S.C. § 363(b) in connection with

26  the sale of Union Lofts by 760 S. Hill.

27    This motion is made on the following grounds:  On March 26 and 27, 2009, Meruelo

28  Maddux Properties, Inc. ("MMPI"), and fifty-three of its direct and indirect subsidiaries (with

- 2 -

370387.05 [XP]    25195

1  MMPI, the "MMPI Debtors"), including the Seller Debtors and 817 S. Hill, filed petitions for relief

2  under Chapter 11 of Title 11 of the United States Code.  Each of the Seller Debtors and 817 S. Hill

3  filed its Chapter 11 petition on March 27, 2009 (the "Petition Date").

4      As of the Petition Date, each of the Seller Debtors owned the real property identified above.

5  Recently, each of the Seller Debtors has entered into an agreement to sell their respective

6  properties, as follows:

7

8  **915-949 S. HILL STREET (ULLMAN ONE)**

9      As of the Petition Date, 915 S. Hill owned real property in downtown Los Angeles, located

10  at 915-949 S. Hill Street, Los Angeles, California ("Ullman One").  On or about March 9, 2011,

11  subject to certain conditions, 915 S. Hill entered into an agreement to sell Ullman One to The

12  Universal Church, Inc. and/or its assignee (the "Church") for the sum of $12.5 million.  A copy of

13  the sale agreement is attached as Exhibit "3" to the Declaration of John Charles Maddux (the

14  "Maddux Declaration").  On or about April 7, 2011, the Church waived all of its contingencies;

15  provided that the Church's obligation to close is conditioned upon 915 S. Hill delivering possession

16  of Ullman One free and clear of certain leases and other agreements related to the use or occupancy

17  of the Property.  The foregoing condition may be waived by the Church.

18      915 S. Hill is requesting authority to sell Ullman One free and clear of liens pursuant to §

19  363(f) of the Code.  The only known encumbrances against Ullman One consist of (1) liens in

20  favor of the County of Los Angeles (the "County") securing real property taxes and related

21  charges, and (2) liens in favor of City National Bank, as successor to Imperial Capital Bank

22  ("CNB").  A 2.0% brokerage commission will be paid to Keller Williams VIP Properties, in

23  connection with the sale.[2]  915 S. Hill is authorized to sell Ullman One free and clear of liens

24  because, among other things, 915 S. Hill is seeking CNB's consent to the sale and is currently in

25  negotiations with CNB regarding its consent and a payoff amount.  *See* 11 U.S.C. §§ 363(f)(2).

26  _____

27      [2]    Keller Williams VIP Properties represents the Church exclusively in connection
    with the sale.

28

- 3 -

1  915 S. Hill has proposed that CNB retain its lien on the net sales proceeds pending a resolution of

2  certain loan remargining requirements related to other MMPI Debtors' loans held by CNB.

3      The purchase price was negotiated with the Church at arm's length and it is contemplated

4  that the sale will close within five business days of the entry of the order approving the sale.  In his

5  declaration filed on December 3, 2010, Richard Meruelo stated that the value of Ullman One was

6  $12,825,600. Charlestown stated a value of $9,619,125 for the Property. [3] Under the totality of the

7  circumstances, 915 S. Hill believes that the price to be paid by the Church is fair and reasonable.

8  915 S. Hill requests that the Court determine that the Church is a good faith purchaser entitled to

9  the protections afforded to such purchasers under § 363(m) of the Code.

10      The following disclosures are made pursuant to LBR 6004-1(c)(3):

11      Name and address of the proposed buyer.  The Universal Church, Inc., a New York not-for-

12  profit corporation and / or its assignee.

13      A description of the property to be sold.  All of 915 S. Hill's right, title and interest in

14  Ullman One.

15      Terms and conditions of the proposed sale, including the price and all contingencies.  The

16  sale price will be $12.5 million.  The terms and conditions of the sale are set forth in the Standard

17  Offer, Agreement and Escrow Instructions for Purchase of Real Estate attached as Exhibit "3" to

18  the Maddux Declaration.

19      Whether the proposed sale is free and clear of liens, claims or interest, or subject to them. [4]

20  The proposed sale is free and clear of any and all liens, claims and interests.  In this regard:

21      1.      Ullman One is subject to real property tax liens in favor of the County.

22  According to the County tax collector's website, the "redemption amount" for the Property is

23

24

_____

25  [3] *Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's Disclosure Statement Describing Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated October 14, 2010* ("Charlestown Disclosure Statement"), Exh. J.

26

27  [4]  A title report for Ullman One is attached as Exhibit "4" to the Maddux Declaration.

28

370387.05 [XP]    25195

1   approximately $361,946.07.[5]  Printouts from the County tax collector's website are attached as

2   Exhibit "5" to the Maddux Declaration.  The real property tax liens will be removed from Ullman

3   One and will attach to the net sales proceeds with the same force, effect, validity and priority as the

4   liens currently have against the Property.  915 S. Hill intends to pay the real property taxes through

5   escrow.

6           2.      Ullman One also is subject to liens in favor of CNB securing 915 S. Hill's

7   indebtedness to CNB in the approximate amount of $9,007,827 based on a deed of trust recorded

8   on or about May 30, 2008, as instrument no. 20080954509, in favor of Imperial Capital Bank

9   ("Imperial") to secure an indebtedness in the original principal amount of $10,100,000 as modified

10  by the amendment to deed of trust and memorandum of first amendment to loan documents

11  recorded on or about July 16, 2010, as instrument no. 20100976030 between 915 S. Hill and CNB,

12  the successor to Imperial.  Ullman One is also cross collateral for a loan to Debtor-in-Possession

13  Meruelo Farms, LLC ("Farms") and therefore 915 S. Hill is seeking the consent of CNB to release

14  its lien against Ullman One to the extent it secures the obligations to CNB of Farms.[6]  The total

15  amount currently owed by 915 S. Hill to CNB is approximately $9,007,827.[7]  915 S. Hill currently

16  is negotiating with CNB to obtain its consent to the sale, subject to retaining its lien on the net sales

17  proceeds from Ullman One pending a resolution of certain loan remargining requirements.

18          The consideration to be received by the estate, including estimated commissions, fees, and

19  other costs of sale.  The gross sales price for Ullman One will be $12.5 million.  A 2.0% real estate

20  broker commission ($250,000) will be paid.  915 S. Hill estimates that the net proceeds from the

21  sale of Ullman One, prior to closing costs, will be approximately $3.1 million.

22  _____

23      [5]  The County's website does not take into account reductions to the amount owed pursuant
    to 915 S. Hill's Court-approved settlement with the County.

24      [6]  In addition to Ullman One, Farms' obligation to CNB is secured by real properties
    owned by Farms, Meruelo Maddux -- 2415 E. Washington Blvd., LLC and Santa Fe & Washington
25  Market, LLC.  *See Order Granting Debtors' Motion for Approval of Settlement with City National
    Bank, as Successor to Certain Assets Formerly Owned by Imperial Capital Bank, and Authorizing
26  Debtor to Perform Thereunder* (docket entry no. 1237).

27      [7]  The total amount currently owed by Farms to CNB is approximately $6,978,349.

28

1    A description of the estimated or possible tax consequences to the estate, if known, and how

2  any tax liability generated by the sale of the property will be paid.  Ullman One was purchased by

3  915 S. Hill in 2005 for approximately $20 million and therefore 915 S. Hill does not anticipate that

4  the sale will result in tax liability.

5

6  **1009 NORTH CITRUS AVE. (THE "COVINA PROPERTY")**

7    As of the Petition Date, 1009 North Citrus owned real property located at 1009 North Citrus

8  Avenue, Covina, California (the "Covina Property").  On or about May 27, 2011, subject to certain

9  conditions, 1009 North Citrus entered into an agreement to sell the Covina Property to Clearwater

10  Communities, LLC and/or its assignee ("Clearwater") for the sum of $3.5 million.  A copy of the

11  sale agreement is attached as Exhibit "6" to the Maddux Declaration

12    1009 North Citrus is requesting authority to sell the Covina Property free and clear of liens

13  pursuant to § 363(f) of the Code.  The only known encumbrances against the Covina Property

14  consist of liens in favor of the County securing real property taxes and related charges.  A 3.0%

15  brokerage commission will be paid to Chapparal Land in connection with the sale.[8]  1009 North

16  Citrus is authorized to sell the Covina Property free and clear of liens because, among other things,

17  the purchase price ($3.5 million) exceeds the value of all liens (approximately $136,505) against

18  the Property.  *See* 11 U.S.C. § 363(f)(3).

19    The purchase price was negotiated with Clearwater at arm's length and it is contemplated

20  that the sale will close no later than August 5, 2011.  In his declaration filed on December 3, 2010,

21  Richard Meruelo stated that the value of the Covina Property was $3,120,000.  Charlestown stated

22  a value of $2,340,000 for the Covina Property [9]  Under the totality of the circumstances, 1009

23  North Citrus believes that the price to be paid by Clearwater is fair and reasonable.  1009 North

24

25

---

26    [8] Chapparal Land represents the Buyer exclusively in connection with the sale.

27    [9] Charlestown Disclosure Statement, Exh. J.

28

370387.05 [XP]    25195

1   Citrus requests that the Court determine that Clearwater is a good faith purchaser entitled to the

2   protections afforded to such purchasers under § 363(m) of the Code.

3          The following disclosures are made pursuant to LBR 6004-1(c)(3):

4          Name and address of the proposed buyer. Clearwater Communities, LLC and / or its

5   assignee.

6          A description of the property to be sold. All of 1009 North Citrus' right, title and interest in

7   the Covina Property.

8          Terms and conditions of the proposed sale, including the price and all contingencies. The

9   sale price will be $3.5 million. The terms and conditions of the sale are set forth in the Standard

10  Offer, Agreement and Escrow Instructions for Purchase of Real Estate attached as Exhibit "6" to

11  the Maddux Declaration.

12         Whether the proposed sale is free and clear of liens, claims or interest, or subject to them.[10]

13  The proposed sale is free and clear of any and all liens, claims and interests. In this regard, the

14  Covina Property is subject to real property tax liens in favor of the County. According to the

15  County tax collector's website, the "redemption amount" for the Covina Property is approximately

16  $136,505.56.[11] Printouts from the County tax collector's website are attached as Exhibit "7" to the

17  Maddux Declaration. The real property tax liens will be removed from the Covina Property and

18  will attach to the net sales proceeds with the same force, effect, validity and priority as the liens

19  currently have against the Property. 1009 North Citrus intends to pay the real property taxes

20  through escrow. Other than the real property tax liens, the Covina Property is unencumbered.

21         The consideration to be received by the estate, including estimated commissions, fees, and

22  other costs of sale. The gross sales price for the Covina Property will be $3.5 million. A

23  commission equal to 3.0% of the gross sales price will be paid to Clearwater's broker, Chapparal

24

25      [10]  A title report for the Covina Property has been ordered and will be submitted if it is
26  received prior to the hearing.

27      [11]  The County's website does not take into account reductions to the amount owed pursuant
    to 1009 North Citrus' Court-approved settlement with the County.

28

- 7 -

370387.05 [XP]      25195

1    Land.  1009 North Citrus estimates that the net proceeds from the sale of the Covina Property, prior

2    to closing costs, will be approximately $3.25 million.

3         A description of the estimated or possible tax consequences to the estate, if known, and how

4    any tax liability generated by the sale of the property will be paid.  The Covina Property was

5    purchased by 1009 North Citrus in or about April 2005 for approximately $3.6 million.  1009 North

6    Citrus does not anticipate that the sale will result in tax liability.

7

8    **760 S. Hill Street and 325 West 8th Street, Los Angeles (Union Lofts)**

9         As of the Petition Date, 760 S. Hill owned real property in downtown Los Angeles, located

10   at 760 S. Hill Street and 325 West 8th Street, Los Angeles, California ("Union Lofts").  On or

11   about May 31, 2011, subject to certain conditions, 760 S. Hill entered into an agreement to sell

12   Union Lofts to Franklin Properties, LLC and/or its assignee ("Franklin") for the sum of $28.0

13   million.  A copy of the sale agreement is attached as Exhibit "8" to the Maddux Declaration.

14        760 S. Hill is requesting authority to sell Union Lofts free and clear of liens pursuant to §

15   363(f) of the Code.  The only known encumbrances against Union Lofts consist of (1) liens in favor

16   of the County securing real property taxes and related charges, and (2) liens in favor of Bank of

17   America, N.A. ("BofA").  There is no brokerage commission being paid in connection with the

18   sale.  760 S. Hill is authorized to sell Union Lofts free and clear of liens because, among other

19   things, the amount of the purchase price, plus certain cash collateral encumbered by BofA (the

20   "Cash Collateral"), exceeds the value of all liens against the Property.  *See* 11 U.S.C. §§ 363(f)(3).

21   760 S. Hill has approximately $6,580,062 in cash held in BofA account number 1459360078 (the

22   "Cash Collateral") which is encumbered by a lien in favor of BofA.  Upon the closing of the sale,

23   the Cash Collateral and the sale proceeds, less closing costs and less an amount equal to the value

24   of the County's lien, will be placed in a segregated account and BofA's lien shall attach to the Cash

25   Collateral and the net sale proceeds with the same force, effect, validity and priority as such liens

26   currently have against the Cash Collateral and against Union Lofts.  Funds will be released from

27   the segregated account to BofA in an amount equal to the value of BofA's liens against Union

28   Lofts upon the effective date of the *Joint Plan of Reorganization of Meruelo Maddux Properties,*

370387.05 [XP]    25195

1 | *Inc., et al., Dated May 3, 2011*, as modified, which will cure and reinstate 760 S. Hill's obligations

2 | to BofA.

3 |       The purchase price was negotiated with Franklin at arm's length.  In his declaration filed on

4 | December 3, 2010, Richard Meruelo stated that the value of Union Lofts was $30,032,925.

5 | Charlestown stated a value of $27,100,000 for the Property.[12]  Under the totality of the

6 | circumstances, 760 S. Hill believes that the price to be paid by Franklin is fair and reasonable.  760

7 | S. Hill requests that the Court determine that Franklin, is a good faith purchaser entitled to the

8 | protections afforded to such purchasers under § 363(m) of the Code.

9 |       In furtherance of this transaction, 760 S. Hill is requesting authority to assume and assign to

10 | Franklin all unexpired leases relating to Union Lofts.  The unexpired leases known to 760 S. Hill,

11 | and which all are being assumed and assigned to Franklin, are listed in Exhibit "9" attached hereto.

12 | 760 S. Hill is current with respect to all of its obligations under these leases.  In the event that a

13 | non-Debtor party to a lease files an objection to the assumption and assignment of its lease on the

14 | grounds that 760 S. Hill has defaulted and such default must be cured prior to assumption and

15 | assignment, 760 S. Hill requests that the Court make a determination of such cure amount.  Upon

16 | closing, security deposits held by 760 S. Hill, to the extent not applied to past due amounts due

17 | under the unexpired leases, will be transferred to Franklin in the form of a credit to the purchase

18 | price.  The current aggregate amount of the security deposits held by 760 S. Hill is approximately

19 | $76,430.

20 |       In connection with the sale of Union Lofts to Franklin, 817 S. Hill requests authority to

21 | enter into a parking license agreement (the "Parking License") with Franklin with respect to a

22 | portion of the real property owned by 817 S. Hill located at 817-825 S. Hill, Los Angeles,

23 | California (the "Parking Property") concurrently with the closing of the sale and consistent with the

24 | terms of the purchase agreement.  The Parking License will allow Franklin to provide residents of

25 | the Union Lofts with the use of up to 120 unreserved parking spaces on the Parking Property for a

26 |

27 |    [12] Charlestown Disclosure Statement, Exh. J.

28 |

1  period of up to one year from the closing of the sale of Union Lofts to Franklin at no charge.  The

2  Parking License permits Franklin to extend the term of the License for an additional six months for

3  a monthly license fee equal to 75% of the then fair market rental value of the Parking Property

4  subject to the Parking License.  817 S. Hill should be authorized to enter into the Parking License

5  pursuant to 11 U.S.C. § 363(b) as a reasonable and sound exercise of its business judgment as its

6  real property is already being utilized as a parking lot facility for the benefit of Union Loft

7  residents and as it will enable 760 S. Hill to close its sale of Union Lofts, the net proceeds of

8  which, prior to closing costs, will be approximately $1,439,373 (if BofA is entitled to default

9  interest) and $4,140,873 (if BofA is not entitled to default interest) and will benefit all of the MMPI

10  Debtors, including 817 S. Hill.

11      The following disclosures are made pursuant to LBR 6004-1(c)(3):

12      <u>Name and address of the proposed buyer</u>.  Franklin Properties, LLC and/or its assignee

13      <u>A description of the property to be sold</u>.  All of 760 S. Hill's right, title and interest in

14  Union Lofts and certain furniture owned by 760 S. Hill which is located in the lobby, rooftop deck

15  and leasing office of the Union Lofts building.

16      <u>Terms and conditions of the proposed sale, including the price and all contingencies</u>.  The

17  sale price will be $28.0 million.  The terms and conditions of the sales are set forth in the Standard

18  Offer, Agreement and Escrow Instructions for Purchase of Real Estate attached as Exhibit "8" to

19  the Maddux Declaration.

20      <u>Whether the proposed sale is free and clear of liens, claims or interest, or subject to them</u>.[13]

21  The proposed sale is free and clear of any and all liens, claims and interests.  In this regard:

22      1.    Union Lofts is subject to real property tax liens in favor of the County in the

23  approximate amount of $303,959.70.[14]  Printouts from the County tax collector's website are

24  _____

25      [13]  A title report for Union Lofts has been ordered and will be submitted if it is received
26  prior to the hearing.

27      [14]  The County's website does not take into account reductions to the amount owed pursuant
to 760 S. Hill's Court-approved settlement with the County.

28

370387.05 [XP]    25195

1  attached as Exhibit "10" to the Maddux Declaration.  The real property tax liens will be removed

2  from Union Lofts and will attach to the net sales proceeds with the same force, effect, validity and

3  priority as the liens currently have against the Property.  760 S. Hill intends to pay the real property

4  taxes through escrow.

5       2.     Union Lofts also is subject to a lien in favor of BofA securing 760 S. Hill's

6  indebtedness to BofA based on a deed of trust recorded on or about January 30, 2006, as instrument

7  no. 20060214046, in favor of BofA to secure an indebtedness in the original principal amount of

8  $28,720,000, as amended from time to time.  The balance claimed BofA with respect to Union

9  Lofts is approximately $32,836,729, including default interest claimed by BofA, or approximately

10  $30,135,229 including interest at the non-default rate.[15]  The purchase price plus the Cash

11  Collateral exceeds the value of the liens of the County and BofA in Union Lofts.

12       The consideration to be received by the estate, including estimated commissions, fees, and

13  other costs of sale.  The gross sales price for Union Lofts will be $28.0 million.  No real estate

14  broker commission will be paid in connection with the sale.  760 S. Hill estimates that the net

15  proceeds from the sale of Union Lofts, prior to closing costs, will be approximately $1,439,373 (if

16  BofA is entitled to default interest) and $4,140,873 (if BofA is not entitled to default interest).

17       A description of the estimated or possible tax consequences to the estate, if known, and how

18  any tax liability generated by the sale of the property will be paid.  Union Lofts has a tax basis in

19  excess of the purchase price and therefore 760 S. Hill does not anticipate that the sale will result in

20  tax liability.

21

22       In addition to the foregoing disclosures, the following additional disclosures are made

23  pursuant to LBR 6004-1(c)(3):

24       Date, time and place of the hearing on the proposed sales.  The Seller Debtors will be filing

25  an application for an order shortening time, requesting that the Court set a hearing on this motion as

26

27      [15]  The amounts exclude attorneys' fees and costs.

28

370387.05 [XP]    25195

1   soon as practicable.  The Seller Debtors anticipate that they will serve a notice of the hearing date

2   and time after the hearing is set.  The hearing will take place in Courtroom 301 of the United States

3   Bankruptcy Court located at 21041 Burbank Blvd., Woodland Hills, California.

4        <u>Whether the proposed sales are subject to higher and better bids</u>.  The proposed sales are

5   not subject to overbids.

6        <u>The date by which an objection must be filed and served</u>.  See below.

7        The Seller Debtors will be filing an application requesting that the Court hear this omnibus

8   motion on shortened time and are requesting that the Court waive the stay otherwise applicable

9   pursuant to Federal Rule of Bankruptcy Procedure 6004(h) and 6006(d).

10        The Motion is based upon this notice and motion, the Declaration of John Charles Maddux,

11   the Request for Judicial Notice appended hereto, the papers and pleadings on file in this case, and

12   such other evidence as may be presented to the Court.

13        **PLEASE TAKE FURTHER NOTICE** that the Seller Debtors will be filing an application

14   for order shortening time in which it is requesting that the Court set a hearing on this matter as soon

15   as practicable, and that such order further provide that oppositions, if any, may be presented orally

16   at the hearing.  If the Seller Debtors' application is granted, they will file and serve a notice of the

17   hearing on this Motion, which notice will identify the date and time of the hearing and the deadline,

18   if any, to file written oppositions.  Oppositions not presented as set forth in the notice may be

19   deemed waived.  If you do not have any objection to this motion, you need not take any further

20   action.

21

22   Dated: June 1, 2011                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

23

24                                         By: _____

25                                         Enid M. Colson

26                                         Attorneys for Meruelo Maddux Properties,
                                           Inc., and affiliated Debtors and Debtors-in-
                                           Possession

27

28

- 12 -

## DECLARATION OF JOHN CHARLES MADDUX

I, John Charles Maddux, declare and state as follows:

1.  I am the President and Chief Operating Officer of Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI").

2.  MMPI is the parent company of approximately 69 affiliated entities, including Meruelo Maddux – 915-949 S. Hill Street, LLC ("915 S. Hill"), Meruelo Maddux Properties – 1009 North Citrus Avenue, Covina, LLC ("1009 North Citrus"), and Meruelo Maddux Properties – 760 S. Hill Street, LLC ("760 S. Hill" and, collectively with 915 S. Hill and 1009 North Citrus, the "Seller Debtors") and Meruelo Maddux – 817-825 S. Hill Street, LLC ("817 S. Hill").  On March 26 and 27, 2009, MMPI, the Seller Debtors, 817 S. Hill and forty-nine other of the affiliated entities (collectively the "MMPI Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  I am a designated officer of each of the affiliated entities, including 760 S. Hill, 817 S. Hill, 915 S. Hill, and 1009 North Citrus and am authorized to give this declaration.

3.  As a result of my being Chief Operating Officer of MMPI and a designated officer of 760 S. Hill, 817 S. Hill, 915 S. Hill, and 1009 North Citrus and each of the affiliated entities, and my review of relevant documents, I am familiar with the MMPI Debtors' day-to-day operations, business affairs, and books and records, and the manner in which they are prepared.  Except as otherwise noted, all facts set forth in this declaration are based on my personal knowledge, my discussions with other members of the Debtors' senior management team, my review of relevant documents, or my opinion, based on, among other things, my experience and knowledge of the Debtors' operations and financial conditions.

**915-949 S. HILL STREET (ULLMAN ONE)**

4.  As of the Petition Date, 915 S. Hill owned real property in downtown Los Angeles, located at 915-949 S. Hill Street, Los Angeles, California ("Ullman One").

5.  On or about March 9, 2011, 915 S. Hill entered into a purchase and sale agreement with The Universal Church, Inc., a New York not-for-profit corporation and / or its assignee (the

- 13 -

1   "Church"), pursuant to which the Church agreed to purchase the Property for the sum of $12.5

2   million.

3       6.     The proposed sale has been made on ordinary and common terms in the commercial

4   real estate industry, and is set forth in a Standard Offer, Agreement and Escrow Instructions for

5   Purchase of Real Estate attached as Exhibit "3" hereto. A 2.0% broker's commission ($250,000)

6   will be paid to the Church's broker as part of the proposed sale.

7       7.     The purchase price was negotiated with the Church at arm's length. To the best of

8   my knowledge, the Church has no connection with the MMPI Debtors or anyone associated with

9   the MMPI Debtors' estates or the administration of the MMPI Debtors' estates, except with regard

10   to the proposed sale. Under the totality of the circumstances, I believe that the agreed-upon price is

11   fair and reasonable.

12       8.     Attached as Exhibit "4" hereto is a true and correct copy of a title report dated

13   March 11, 2011, for Ullman One. Based on the title report, the property tax payment inquiries

14   (discussed below), my personal knowledge of the identity of liens against Ullman One, and

15   information provided to me by MMPI's employees, I believe that liens against Ullman One consist

16   of (1) liens in favor of the County of Los Angeles securing real property taxes and related charges

17   in the approximate amount of $361,946.07, and (2) a deed of trust in favor of City National Bank,

18   as successor to Imperial Capital Bank ("CNB"). The amount currently owed to CNB by 915 S.

19   Hill is approximately $9,007,827. We are currently negotiating with CNB to obtain its consent to

20   the sale.

21       9.     Ullman One, along with real properties owned by Meruelo Farms, LLC ("Farms"),

22   Meruelo Maddux -- 2415 E. Washington Blvd., LLC and Santa Fe & Washington Market, LLC,

23   also secures the obligations of Farms to CNB. The amount currently owed by Farms to CNB is

24   $6,978,349.

25       10.     Ullman One was purchased by 915 S. Hill in 2005 for approximately $20 million.

26       11.     At my request, the Debtors' counsel reviewed the Los Angeles County Treasurer

27   and Tax Collector's website to determine the amount of real property taxes presently owed against

28   the parcels of real property owned by 915 S. Hill. Attached as Exhibit "5" hereto are true and

1  correct copies of property tax payment inquiries for the Property dated May 24, 2011 obtained from

2  that website.

3      12.    I estimate that the net sale proceeds, after satisfaction of liens, real property taxes

4  and commissions, but prior to closing and related costs, will be approximately $3.1 million.  I

5  believe that the proposed sale of Ullman One at this time is in the best interests of the MMPI

6  Debtors, their bankruptcy estates and creditors, and should be approved by the Court.

7  **1009 NORTH CITRUS AVE. (THE "COVINA PROPERTY")**

8      13.    As of the Petition Date, 1009 North Citrus owned real property located at 1009

9  North Citrus Avenue, Covina, California (the "Covina Property").

10     14.    On or about May 27, 2011, 1009 North Citrus entered into a purchase and sale

11  agreement with Clearwater Communities, LLC and/or its assignee ("Clearwater"), pursuant to

12  which Clearwater agreed to purchase the Covina Property for the sum of $3.5 million.  The

13  proposed sale has been made on ordinary and common terms in the commercial real estate industry,

14  and is set forth in a Standard Offer, Agreement and Escrow Instructions for Purchase of Real

15  Estate, attached as Exhibit "6" hereto.  A 3.0% brokerage commission will be paid to Clearwater's

16  real estate broker, Chapparal Land, in connection with the sale.

17     15.    The purchase price was negotiated with Clearwater at arm's length.  To the best of

18  my knowledge, Clearwater has no connection with the MMPI Debtors or anyone associated with

19  the MMPI Debtors' estates or the administration of the MMPI Debtors' estates, except with regard

20  to the proposed sale.  Under the totality of the circumstances, I believe that the agreed-upon price is

21  fair and reasonable.

22     16.    Based on my personal knowledge of the identity of liens against the Covina

23  Property, and information provided to me by MMPI's employees, I believe that liens against the

24  Covina Property consist only of liens in favor of the County of Los Angeles securing real property

25  taxes and related charges.  At my request, the Debtors' counsel reviewed the Los Angeles County

26  Treasurer and Tax Collector's website to determine the amount of real property taxes presently

27  owed against the parcels of real property owned by 1009 North Citrus.  Attached as Exhibit "7"

28

- 15 -

370387.05 [XP]    25195

1 | hereto are true and correct copies of property tax payment inquiries for the Property dated May 24,

2 | 2011 obtained from that website.

3 |     17.    The Property was purchased by 1009 North Citrus in 2005 for approximately $3.6

4 | million.

5 |     18.    I estimate that the net sale proceeds, after satisfaction of liens, real property taxes

6 | and commissions, but prior to closing and related costs, will be approximately $3.25 million. I

7 | believe that the proposed sale of the Covina Property at this time is in the best interests of the

8 | MMPI Debtors, their bankruptcy estates and creditors, and should be approved by the Court.

9 | **760 S. HILL STREET AND 325 WEST 8TH STREET, LOS ANGELES (UNION LOFTS)**

10 |     19.    760 S. Hill owns real property commonly known as 760 S. Hill Street and 325 West

11 | 8th Street, Los Angeles, California ("Union Lofts").

12 |     20.    On or about May 31, 2011, 760 S. Hill entered into a purchase and sale agreement

13 | with Franklin Properties, LLC and/or its assignee ("Franklin") pursuant to which Franklin agreed to

14 | purchase Union Lofts for the sum of $28,000,000. The proposed sale has been made on ordinary

15 | and common terms in the commercial real estate industry, and is set forth in a Standard Offer,

16 | Agreement and Escrow Instructions for Purchase of Real Estate attached as Exhibit "8" hereto.

17 |     21.    The purchase price was negotiated with Franklin at arm's length. To the best of my

18 | knowledge, Franklin has no connection with the MMPI Debtors or anyone associated with the

19 | MMPI Debtors' estates or the administration of the MMPI Debtors' estates, except with regard to

20 | the proposed sale. Under the totality of the circumstances, I believe that the agreed-upon price is

21 | fair and reasonable.

22 |     22.    Based on my personal knowledge of the identity of liens against Union Lofts, and

23 | information provided to me by MMPI's employees, I believe that liens against the Property consist

24 | of (1) liens in favor of the County of Los Angeles securing real property taxes and related charges,

25 | and (2) a deed of trust in favor of Bank of America, N.A. ("BofA") as amended from time to time.

26 | The balance claimed by BofA and secured by the deed of trust is approximately $32,836,729,

27 | including default interest claimed by BofA, or approximately $30,135,229 including interest at the

28 | non-default rate.

- 16 -

23.    760 S. Hill's obligations to BofA are also secured by cash in the approximate amount of $6,580,062 held in BofA account number 1459360078 (the "Cash Collateral"). Upon the closing of the sale, the Cash Collateral and the sale proceeds, less closing costs and less an amount equal to the value of the County's lien, will be placed in a segregated account and BofA's lien shall attach to the Cash Collateral and the net sale proceeds with the same force, effect, validity and priority as such liens currently have against the Cash Collateral and against Union Lofts. Funds will be released from the segregated account to BofA in an amount equal to the value of BofA's liens against Union Lofts upon the effective date of the MMPI Debtors' Plan, as modified, which will cure and reinstate 760 S. Hill's obligations to BofA.

24.    At my request, the Debtors' counsel reviewed the Los Angeles County Treasurer and Tax Collector's website to determine the amount of real property taxes presently owed against the parcels of real property owned by 760 S. Hill. Attached as Exhibit "10" hereto are true and correct copies of property tax payment inquiries for the Property dated June 2, 2011 obtained from that website.

25.    760 S. Hill is also requesting authority to sell to Franklin certain furniture located in the lobby, rooftop deck and leasing office of the Union Lofts building. I am informed and believe that this furniture has only de minimus or no value and I believe including the furniture in the sale to Franklin will maximize its value to 760 S. Hill.

26.    In connection with the sale, 760 S. Hill is also requesting authority to assume and assign to Franklin all unexpired leases relating to Union Lofts. A list of all the known Union Lofts leases is attached as Exhibit "9" hereto. 760 S. Hill is current with respect to all of its obligations under these leases. The current aggregate amount of security deposits held by 760 S. Hill in connection with these leases is approximately $76,430.

27.    817 S. Hill owns real property commonly known as 817-825 S. Hill Street, Los Angeles, California (the "Parking Property"). In connection with the sale of Union Lofts to Franklin, 817 S. Hill requests authority to enter into a parking license agreement (the "Parking License") with Franklin with respect to the Parking Property upon closing of the sale and consistent with the terms of the purchase agreement.

- 17 -

370387.05 [XP]    25195

1        28.    Union Lofts has a tax basis in excess of the purchase price.

2        29.    I estimate that the net sale proceeds, after satisfaction of liens and real property

3   taxes, but prior to closing and related costs, will be approximately $1,439,373 (if BofA is entitled

4   to default interest) and $4,140,873 (if BofA is not entitled to default interest).  I believe that the

5   proposed sale of Union Lofts, and the licensing of parking spaces by 817 S. Hill, at this time is in

6   the best interests of the MMPI Debtors, their bankruptcy estates and creditors, and should be

7   approved by the Court.

8

9        I declare under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.

11        Executed at Los Angeles, California on June 3, 2011.

12

13

14                                    JOHN CHARLES MADDUX

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 18 -

370387.05 [XP]    25195

1

### REQUEST FOR JUDICIAL NOTICE

2        The above-captioned debtors and debtors-in-possession (collectively the "Debtors") hereby

3  request, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice

4  of the filing and the contents of the following pleadings previously filed in this chapter 11 case:

5        1.        *Order Granting Debtors' Motion for Approval of Settlement with City National Bank,*

6  *as Successor to Certain Assets Formerly Owned by Imperial Capital Bank, and Authorizing Debtor*

7  *to Perform Thereunder* entered on or about March 30, 2010 (*docket entry no. 1237*).

8        2.        *Revised Order on Debtor's Motion for Approval of Settlement with the County of*

9  *Los Angeles Tax Collector* entered on or about August 13, 2010 (*docket entry no. 1689*).

10        3.        *Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's*

11  *Notice of Filing of Revised Exhibits E (Financial Projections) and J (Property Values)* filed on or

12  about September 1, 2010 (*docket entry no. 1768*).

13        4.        *Order on Debtors Meruelo Maddux Properties – 760 S. Hill Street, LLC's and Merco*

14  *Group – Southpark, LLC's Motion for Approval of Settlement with the County of Los Angeles Tax*

15  *Collector* entered on or about December 15, 2010 (*docket entry no. 2400*).

16

17

Dated:  June 3, 2010                    DANNING, GILL, DIAMOND & KOLLITZ, LLP

18

19                                        By: _____

20                                        Enid M. Colson
                                          Attorneys for Meruelo Maddux Properties,
21                                        Inc., and affiliated Debtors and Debtors-in-
                                          Possession

22

23

24

25

26

27

28

370387.05 [XP]      25195

# EXHIBIT 1

1 | JOHN N. TEDFORD, IV (State Bar No. 205537)
   | *JTedford@DGDK.com*
2 | ENID COLSON (State Bar No. 189912)
   | EColson@DGDK.com
3 | DANNING, GILL, DIAMOND & KOLLITZ, LLP
   | 2029 Century Park East, Third Floor
4 | Los Angeles, California 90067-2904
   | Telephone: (310) 277-0077
5 | Facsimile: (310) 277-5735

6 | Attorneys for Meruelo Maddux Properties, Inc.,
   | and affiliated Debtors and Debtors-in-Possession

7 |

8 |               **UNITED STATES BANKRUPTCY COURT**

9 |               **CENTRAL DISTRICT OF CALIFORNIA**

10 |              **SAN FERNANDO VALLEY DIVISION**

| 11 | In re | ) | Case No. 1:09-bk-13356-VK |
| --- | --- | --- | --- |
| 12 | MERUELO MADDUX PROPERTIES, INC., et al.[16] | ) ) ) | Chapter 11 (Jointly Administered) |
| 13 | Debtors and Debtors-in-Possession. | ) ) ) | **ORDER GRANTING DEBTOR-IN-POSSESSION'S MOTION FOR** |
| 14 | | ) ) | **AUTHORITY TO SELL REAL PROPERTY LOCATED AT 915 – 949 S.** |
| 15 | | ) ) | **HILL STREET, LOS ANGELES, CALIFORNIA, FREE AND CLEAR OF** |
| 16 | ☐   Affects all Debtors | ) ) | **LIENS, AND WAIVER OF STAY PER** |
| 17 | ☑   Affects the following Debtor(s): | ) ) | **F.R.B.P. 6004(h)** |
| 18 | Meruelo Maddux – 915-949 S. Hill Street, LLC (1:09-bk-13362-VK) | ) ) | Date:    [TBD]<br>Time:    [TBD] |
| 19 | | ) ) | Place:   Courtroom 301<br>           21041 Burbank Blvd. |
| 20 | | ) ) | Woodland Hills, California |
| 21 | | ) | |

22 |
23 |     On June __, 2011, at __:__ __.m., the Court heard and considered the Omnibus Motion of

24 | *Debtors-In-Possession for [1] Authority to Sell Real Properties Free and Clear Of Liens, [2]*

25 | *Authority to Assume and Assign Unexpired Leases, [3] Authority to Enter into License Agreement*

26 | *and [4] Waiver of Stay Per F.R.B.P. 6004(h) and 6006(d)* (the "Motion") filed by Meruelo Maddux

27 | [16] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

28 |

1  – 915-949 S. Hill Street, LLC ("915 S. Hill"), and certain other related Debtors, the Honorable

2  Victoria S. Kaufman, United States Bankruptcy Judge, presiding.  Appearances were as noted on

3  the record at the hearing.

4        The Court having considered the Motion, all papers filed in support thereof including the

5  Declaration of John Charles Maddux, and all of the other pleadings on file in the Debtors' cases,

6  having heard the statements of counsel at the hearing, having found that The Universal Church,

7  Inc., and/or its assignee is a good faith purchaser within the meaning of 11 U.S.C. § 363(m), having

8  found that notice of the hearing and the Motion was adequate and proper, for good cause appearing,

9  **IT IS ORDERED THAT:**

10        1.        The Motion is granted in its entirety.

11        2.        915 S. Hill is authorized to convey fee title to the real property commonly known as

12  915-949 S. Hill Street, Los Angeles, California (the "Property") to The Universal Church, Inc.

13  and/or its assignee (the "Buyer"), for $12.5 million, pursuant to the terms and conditions of the sale

14  agreement attached as Exhibit "3" to the Declaration of John Charles Maddux appended to the

15  Motion.  The legal description of the Property is set forth in Exhibit "A" hereto.

16        3.        The sale shall be free and clear of all liens against the Property, which liens shall be

17  removed from the Property, including without limitation the following:

18              a.        all real property tax liens in favor of the County of Los Angeles (the

19  "County"); and

20              b.        a deed of trust, fixture filing, assignment of rents, and security agreement

21  recorded on or about May 30, 2008, as instrument number 20080954509, in favor of Imperial

22  Capital Bank to secure an indebtedness in the original principal sum of $10,100,000, as modified

23  by the amendment to deed of trust and memorandum of first amendment to loan documents

24  recorded on or about July 16, 2010 as instrument number 20100976030, between 915 S. Hill and

25  City National Bank as successor to Imperial Capital Bank ("CNB"); and

26              c.        an assignment of leases recorded on or about May 30, 2008, as instrument

27  no. 20080954510 in favor of CNB.

28

- 21 -

1        4.    The County's tax liens against the Property, the deed of trust, as modified, in favor

2    of CNB against the property and the assignment of leases in favor of CNB against the property

3    shall be removed from the Property and shall attach to the sale proceeds with the same force, effect,

4    validity and priority as such liens currently have against the Property.  915 S. Hill is authorized to

5    pay through escrow all real property taxes and related charges owed to the County, all amounts

6    owed by 915 S. Hill to CNB, and ordinary and reasonable escrow and closing costs.  Upon the

7    making of such payments to the County and CNB, all liens in favor of the County and CNB shall

8    be fully satisfied and discharged.

9        5.    915 S. Hill is authorized to pay through escrow a commission equal to 2% of the

10   gross sales price to the Buyer's real estate broker, Keller Williams VIP Properties ("Keller

11   Williams").

12       6.    The balance of the sales proceeds not utilized or set aside to pay ordinary and

13   reasonable escrow and closing costs, the County, CNB and Keller Williams shall constitute free

14   and clear funds, not subject to, among other things, any liens.

15       7.    The recordation of this order with the Los Angeles County Recorder's Office shall

16   constitute a discharge, termination and cancellation as to the Property of all of the liens against the

17   Property without the need for reconveyance or release of such liens or other interests.

18       8.    The Buyer shall be entitled to all of the protections afforded to good faith purchasers

19   pursuant to 11 U.S.C. § 363(m).

20       9.    915 S. Hill is authorized to execute all documents and otherwise take all actions it

21   deems necessary and appropriate to close the sale of the Property to the Buyer.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

- 22 -

1        10.    The stay of enforcement of this order set forth in Federal Rule of Bankruptcy

2    Procedure 6004(h) is waived, and the terms and conditions of this order shall be immediately

3    effective and enforceable upon its entry.

4                            # # #

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

370387.05 [XP]    25195

1

## EXHIBIT A:  LEGAL DESCRIPTION

2

3          *[Language for this page to be supplied by title company]*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

370387.05 [XP]      25195

1

2  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
3  ENID COLSON (State Bar No. 189912)
   *EColson@DGDK.com*
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
6  Facsimile:  (310) 277-5735

7  Attorneys for Meruelo Maddux Properties, Inc.,
   and affiliated Debtors and Debtors-in-Possession
8

9          **UNITED STATES BANKRUPTCY COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

11         **SAN FERNANDO VALLEY DIVISION**

12  In re                                          )  Case No. 1:09-bk-13356-VK
                                                   )
13  MERUELO MADDUX PROPERTIES, INC., et            )  Chapter 11 (Jointly Administered)
    al.[17]                                        )
14                                                 )  **ORDER GRANTING DEBTOR'S**
              Debtors and Debtors-in-Possession.   )  **MOTION FOR AUTHORITY TO SELL**
15                                                 )  **REAL PROPERTY LOCATED AT 1009**
                                                   )  **NORTH CITRUS AVENUE, COVINA,**
16  _____        )  **CALIFORNIA, FREE AND CLEAR OF**
                                                   )  **LIENS, AND WAIVER OF STAY PER**
17  ☐    Affects all Debtors                       )  **F.R.B.P. 6004(h)**
                                                   )
18  ☑    Affects the following Debtor(s):          )
                                                   )  Date:    [TBD]
19  Meruelo Maddux Properties – 1009 North Citrus  )  Time:    [TBD]
    Avenue, Covina, LLC                            )  Place:   Courtroom 301
20  (1:09-bk-13372-VK)                             )         21041 Burbank Blvd.
                                                   )         Woodland Hills, California
21                                                 )
                                                   )
22  _____        )

23

24

25

26  _____

27      [17] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
    entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-
28  13434-VK; and 1:09-bk-13439-VK.

370387.05 [XP]    25195

1       On June __, 2011, at __:__ __.m., the Court heard and considered the *Omnibus Motion of*

2 *Debtors-in-Possession for [1] Authority to Sell Real Properties Free and Clear of Liens, [2]*

3 *Authority to Assume and Assign Unexpired Leases, [3] Authority to Enter into License Agreement*

4 *and [4] Waiver of Stay per F.R.B.P. 6004(h) and 6006(d)* (the "Motion") filed by Meruelo Maddux

5 Properties – 1009 North Citrus Avenue, Covina, LLC ("1009 North Citrus") and certain other

6 related Debtors, the Honorable Victoria S. Kaufman, United States Bankruptcy Judge, presiding.

7 Appearances were as noted on the record at the hearing.

8       The Court having considered the Motion, all papers filed in support thereof including the

9 Declaration of John Charles Maddux, and all of the other pleadings on file in the Debtors' cases,

10 having heard the statements of counsel at the hearing, having found that Clearwater Communities,

11 LLC, and/or its assignee, is a good faith purchaser within the meaning of 11 U.S.C. § 363(m),

12 having found that notice of the hearing and the Motion was adequate and proper, for good cause

13 appearing,

14      **IT IS ORDERED THAT:**

15      1.    The Motion is granted in its entirety.

16      2.    1009 North Citrus is authorized to convey fee title to the real property commonly

17 known as 1009 North Citrus Avenue, Covina, California (the "Property") to Clearwater

18 Communities, LLC and/or its assignee (the "Buyer"), for $3.5 million, pursuant to the terms and

19 conditions of the sale agreement attached as Exhibit "6" to the Declaration of John Charles

20 Maddux appended to the Motion.  The legal description of the Property is set forth in Exhibit "A"

21 hereto.

22      3.    The sale shall be free and clear of all liens against the Property, which liens shall be

23 removed from the Property, including without limitation all real property tax liens in favor of the

24 County of Los Angeles (the "County").

25      4.    The County's tax liens against the Property shall be removed from the Property and

26 shall attach to the sale proceeds with the same force, effect, validity and priority as such liens

27 currently have against the Property.  1009 North Citrus is authorized to pay through escrow all real

28 property taxes and related charges owed to the County, and ordinary and reasonable escrow and

closing costs.  Upon the making of such payments to the County, all liens in favor of the County

shall be fully satisfied and discharged.

5.    1009 North Citrus is authorized to pay through escrow a commission equal to 3.0%

of the gross sales price to the Buyer's broker, Chapparal Land ("Chapparal").

6.    The balance of the sales proceeds not utilized or set aside to pay the County,

Chapparal and ordinary and reasonable escrow and closing costs shall constitute free and clear

funds, not subject to, among other things, any liens.

7.    The recordation of this order with the Los Angeles County Recorder's Office shall

constitute a discharge, termination and cancellation as to the Property of all of the liens against the

Property without the need for reconveyance or release of such liens or other interests.

8.    The Buyer shall be entitled to all of the protections afforded to good faith purchasers

pursuant to 11 U.S.C. § 363(m).

9.    1009 North Citrus is authorized to execute all documents and otherwise take all

actions it deems necessary and appropriate to close the sale of the Property to the Buyer.

10.    The stay of enforcement of this order set forth in Federal Rule of Bankruptcy

Procedure 6004(h) is waived, and the terms and conditions of this order shall be immediately

effective and enforceable upon its entry.

# # #

370387.05 [XP]    25195

1

## EXHIBIT A:  LEGAL DESCRIPTION

2

3

*[Language for this page to be supplied by title company]*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

370387.05 [XP]      25195

1

2  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
3  ENID COLSON (State Bar No. 189912)
   EColson@DGDK.com
4  DANNING, GILL, DIAMOND & KOLLITZ, LLP
   2029 Century Park East, Third Floor
5  Los Angeles, California 90067-2904
   Telephone:  (310) 277-0077
6  Facsimile:  (310) 277-5735

7  Attorneys for Meruelo Maddux Properties, Inc.,
   and affiliated Debtors and Debtors-in-Possession

8

9              **UNITED STATES BANKRUPTCY COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11              **SAN FERNANDO VALLEY DIVISION**

12 | In re                                         | ) | Case No. 1:09-bk-13356-VK |
13 | MERUELO MADDUX PROPERTIES, INC., et al.[18]   | ) | Chapter 11 (Jointly Administered) |
14 |            Debtors and Debtors-in-Possession. | ) | **ORDER GRANTING DEBTOR-IN-POSSESSIONS' MOTION FOR** |
15 |                                               | ) | **AUTHORITY TO [1] SELL REAL** |
16 |                                               | ) | **PROPERTY LOCATED AT 760 S. HILL STREET AND 325 WEST 8TH STREET,** |
17 | ☐   Affects all Debtors                       | ) | **LOS ANGELES, CALIFORNIA, FREE AND CLEAR OF LIENS, [2] ENTER** |
18 | ☑   Affects the following Debtor(s):          | ) | **INTO LICENSE AGREEMENT, AND [3] WAIVER OF STAY PER F.R.B.P. 6004(h)** |

14

            Debtors and Debtors-in-Possession.          **ORDER GRANTING DEBTOR-IN-
                                                         POSSESSIONS' MOTION FOR
                                                         AUTHORITY TO [1] SELL REAL
                                                         PROPERTY LOCATED AT 760 S. HILL
                                                         STREET AND 325 WEST 8TH STREET,
                                                         LOS ANGELES, CALIFORNIA, FREE
                                                         AND CLEAR OF LIENS, [2] ENTER
                                                         INTO LICENSE AGREEMENT, AND [3]
                                                         WAIVER OF STAY PER F.R.B.P. 6004(h)
                                                         AND 6006(d)**

19  Meruelo Maddux – 817-825 S. Hill Street, LLC
    (1:09-bk-13391-VK)

20  Meruelo Maddux Properties – 760 S. Hill Street,
    LLC (1:09-bk-13363-VK)

    Date:     [TBD]
    Time:     [TBD]
    Place:    Courtroom 301
              21041 Burbank Blvd.
              Woodland Hills, California

23

24        On June ___, 2011, at __:__ __.m., the Court heard and considered the Omnibus Motion of

25  *Debtors-In-Possession for [1] Authority to Sell Real Properties Free and Clear Of Liens, [2]*

26

27        [18] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

28

                                      - 29 -

370387.05 [XP]      25195

1  *Authority to Assume and Assign Unexpired Leases, [3] Authority to Enter into License Agreement*

2  *and [4] Waiver of Stay Per F.R.B.P. 6004(h) and 6006(d)* (the "Motion") filed by Meruelo Maddux

3  Properties – 760 S. Hill Street, LLC ("760 S. Hill"), and certain other related Debtors, the

4  Honorable Victoria S. Kaufman, United States Bankruptcy Judge, presiding.  Appearances were as

5  noted on the record at the hearing.

6       The Court having considered the Motion, all papers filed in support thereof including the

7  Declaration of John Charles Maddux, and all of the other pleadings on file in the Debtors' cases,

8  having heard the statements of counsel at the hearing, having found that Franklin Properties, LLC,

9  and/or its assignee is a good faith purchaser within the meaning of 11 U.S.C. § 363(m), having

10  found that notice of the hearing and the Motion was adequate and proper, for good cause appearing,

11  **IT IS ORDERED THAT:**

12       1.     The Motion is granted in its entirety.

13       2.     760 S. Hill is authorized to convey fee title to the real property commonly known as

14  760 S. Hill Street, Los Angeles, California and 325 West 8th Street, Los Angeles California (the

15  "Property") to Franklin Properties, LLC, and/or its assignee (the "Buyer"), for $28.0 million,

16  pursuant to the terms and conditions of the sale agreement (the "Sale Agreement") attached as

17  Exhibit "8" to the Declaration of John Charles Maddux appended to the Motion.  The legal

18  description of the Property is set forth in Exhibit "A" hereto.

19       3.     The sale shall be free and clear of all liens against the Property, which liens shall be

20  removed from the Property, including without limitation the following:

21            a.     all real property tax liens in favor of the County of Los Angeles (the

22  "County"); and

23            b.     a construction deed of trust, assignment, security agreement and fixture

24  filing, recorded on or about January 30, 2006, as instrument no. 20060214046, in favor of BofA to

25  secure an indebtedness in the original principal amount of $28,720,000, as amended from time to

26  time including as amended by that certain modification agreement (short form) recorded on or

27  about October 19, 2007 as instrument no. 20072382097.

28

- 30 -

370387.05 [XP]      25195

1      4.    The County's tax liens against the Property, and the deed of trust against the

2  Property, as amended from time to time, shall be removed from the Property and shall attach to the

3  sale proceeds with the same force, effect, validity and priority as such liens currently have against

4  the Property.  760 S. Hill is authorized to pay through escrow all real property taxes and related

5  charges owed to the County and ordinary and reasonable escrow and closing costs.  Upon the

6  making of such payments to the County, all liens in favor of the County shall be fully satisfied and

7  discharged.

8      5.    760 S. Hill shall place the sale proceeds, net of the payments identified in paragraph

9  4 above, in a segregated account and BofA's liens shall attach to the sale proceeds with the same

10  force, effect, validity and priority as such liens currently have against the Property.

11      6.    BofA shall retain its lien on the funds held in BofA account number 1459360078

12  until further order of the Court.

13      7.    The recordation of this order with the Los Angeles County Recorder's Office shall

14  constitute a discharge, termination and cancellation as to the Property of all of the liens against the

15  Property without the need for reconveyance or release of such liens or other interests.

16      8.    The Buyer shall be entitled to all of the protections afforded to good faith purchasers

17  pursuant to 11 U.S.C. § 363(m).

18      9.    Pursuant to 11 U.S.C. § 365, 760 S. Hill is authorized to assume and assign to the

19  Buyer the executory contracts and/or unexpired leases relating to the Property (collectively the

20  "Leases") listed on Exhibit "9" to the Motion.

21      10.    760 S. Hill is authorized to execute all documents and otherwise take all actions it

22  deems necessary and appropriate to close the sale of the Property to the Buyer.

23      11.    Meruelo Maddux – 817-825 S. Hill Street, LLC is authorized to enter into a parking

24  license with the Buyer which is consistent with the terms of the Sale Agreement.

25  ///

26  ///

27  ///

28  ///

370387.05 [XP]    25195

1        12.    The stay of enforcement of this order set forth in Federal Rule of Bankruptcy

2    Procedure 6004(h) and 6006(d) is waived, and the terms and conditions of this order shall be

3    immediately effective and enforceable upon its entry.

4                              # # #

- 32 -

370387.05 [XP]    25195

1

## EXHIBIT A:  LEGAL DESCRIPTION

2

3        *[Language for this page to be supplied by title company]*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

370387.05 [XP]      25195

EXHIBIT 2

**EXHIBIT 2**

| Property | Buyer | Liens | Sale Price | MMPI Debtors' Value | Charlestown Value | Commission | Estimated Net Sale Proceeds[1] |
|---|---|---|---|---|---|---|---|
| 915-949 S. Hill St. | The Universal Church, Inc. and/or assignee | CNB - $9,007,827[2] LA County - $361,946 | $12,500,000 | $12,825,000 | $9,619,125 | 2% - $250,000 | $3.1 million |
| 1009 N. Citrus Ave. | Clearwater Communities, LLC and/or assignee | LA County - $136,505 | $3,500,000 | $3,120,000 | $2,340,000 | 3% - $105,000 | $3.25 million |
| 760 S. Hill St. (Union Lofts) | Franklin Properties, LLC and/or assignee | BofA - $32,836,729[3] LA County - $303,960 | $28,000,000 | $30,032,925 | $27,100,000 | None | $1.4 million - $4.1 million[4] |

1 Net sales proceeds are after satisfaction of liens, delinquent real estate taxes and commissions, but prior to closing and related costs.

2 This property is cross collateral for another loan held by CNB; however 915 S. Hill currently is negotiating to obtain CNB's consent to the sale, subject to retaining its lien on the net sales proceeds pending a resolution of loan remargining requirements.

3 The amount of lien assumes default interest claimed by lender and is exclusive of attorneys' fees and costs.

4 Range of net sale proceeds depending upon whether lender is entitled to default interest.

34