JENNER & BLOCK LLP
Kenneth K. Lee (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Telephone: 213-239-5100
Facsimile: 213-239-5199
klee@jenner.com

JENNER & BLOCK LLP
Marc B. Hankin (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
Telephone: 212-891-1600
Facsimile: 212-891-1699
mhankin@jenner.com

RON ORR & PROFESSIONALS, INC.
Ronald S. Orr (Cal. Bar No. 54257)
578 Washington Blvd., #389
Marina Del Rey, CA 90292
Telephone: 310-301-4849
Facsimile: 310-301-6549
ronorresq@aol.com

RODIGER LAW OFFICE
Georgiana G. Rodiger, (Cal. Bar No. 94416)
272 South Los Robles Avenue
Pasadena, California 91101
Telephone: 626-793-7264
Facsimile: 626-793-7592
crodiger@rodigerlaw.com

Attorneys for Equity Committee

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| IN RE:<br><br>**MERUELO MADDUX PROPERTIES, INC., et al.**[1]<br><br>**Debtors and Debtors-in-Possession.**<br><br>**Affects all debtors**<br><br>. | CASE NO. 09-bk-13356-VK<br><br>Chapter 11<br><br>**EQUITY COMMITTEE'S OPPOSITION FOR DEBTORS' EX PARTE APPLICATION FOR AN ORDER SHORTENING THE TIME ON:**<br><br>**[1] MOTION FOR (1) AUTHORITY TO SELL REAL PROPERTY LOCATED AT 905 EAST 8TH STREET, LOS ANGELES, CALIFORNIA, FREE AND CLEAR OF LIENS, (2) AUTHORITY TO ASSUME AND ASSIGN UNEXPIRED LEASES, AND (3) WAIVER OF STAY PER F.R.B.P. 6004(h) AND 6006(d) (DOCKET ENTRY NO. 3144);** |

---

[1] This case is jointly administered with chapter 11 cases filed with the Court by numerous affiliated entities. The Debtors and debtors-in-possession and their respective tax identification numbers are identified in the *Order Directing The Joint Administration Of Related Cases* entered by the Court on April 7, 2009 (docket entry no. 30).

Equity Committee's Opposition For Debtors' Ex Parte Application For An Order Shortening The
Time On Certain Motion To Sell Property

**[2] OMNIBUS MOTION OF DEBTORS-IN-POSSESSION FOR (1) AUTHORITY TO SELL REAL PROPERTIES FREE AND CLEAR OF LIENS, (2) AUTHORITY TO ASSUME AND ASSIGN UNEXPIRED LEASES, (3) AUTHORITY TO ENTER INTO LICENSE AGREEMENT AND (4) WAIVER OF STAY PER F.R.B.P. 6004(h) AND 6006(d) (DOCKET ENTRY NO. 3173);AND**

**[3] SECOND OMNIBUS MOTION OF DEBTORS-IN-POSSESSION FOR (1) AUTHORITY TO SELL REAL PROPERTIES FREE AND CLEAR OF LIENS, (2) AUTHORITY TO ASSUME AND ASSIGN UNEXPIRED LEASES, AND (3) WAIVER OF STAY PER F.R.B.P. 6004(h) AND 6006(d) (DOCKET ENTRY NO. 3186)**

**Date:     TBD**
**Time:     TBD**
**Place:    Courtroom 301**
         **21041 Burbank Boulevard**
         **Woodland Hills, CA 91367**

The Official Committee of Equity Holders (the "Equity Committee") submits this response in opposition to the Debtors' Debtors' Ex Parte Application For An Order Shortening The Time On: [1] Motion For (1) Authority To Sell Real Property Located At 905 East 8th Street, Los Angeles, California, Free And Clear Of Liens, (2) Authority To Assume And Assign Unexpired Leases, And (3) Waiver Of Stay Per F.R.B.P. 6004(h) And 6006(d) (Docket Entry No. 3144); [2] Omnibus Motion Of Debtors-In-Possession For (1) Authority To Sell Real Properties Free And Clear Of Liens, (2) Authority To Assume And Assign Unexpired Leases, (3) Authority To Enter Into License Agreement And (4) Waiver Of Stay Per F.R.B.P. 6004(h) And 6006(d) (Docket Entry No. 3173); And [3] Second Omnibus Motion Of Debtors-In-Possession For (1) Authority To Sell Real Properties Free And Clear Of Liens, (2) Authority To Assume And Assign Unexpired Leases, And (3) Waiver Of Stay Per F.R.B.P. 6004(h) And 6006(d) (Docket Entry No. 3186) (docket entry no. 3194; the "Ex Parte Application") and states as follows:

**OBJECTION**

The Equity Committee respectfully submits that there is no basis for this Court to schedule expedited hearings on the Debtors' Sale Motions,[2] and notes that the Ex Parte Application itself does not actually provide any reason to schedule the Sale Motions on shortened notice. More importantly, the Equity Committee questions whether there is any basis for the Debtors to be seeking the relief requested in the Sale Motions given that the Court issued its May 19, 2011 ruling from the bench that it is confirming the Charlestown Plan.

As the Debtors filed the Ex Parte Application yesterday at 11:53 p.m. (Pacific Time), well after the close of business, the Equity Committee is filing this brief objection in order to preserve its rights to be heard with respect to the relief requested by the Ex Parte Application. The brevity of this

---

[2] Except as otherwise noted, all capitalized terms that are not defined herein have the meanings given to such terms in the Ex Parte Application.

Equity Committee's Opposition For Debtors' Ex Parte Application For An Order Shortening The
Time On Certain Motion To Sell Property

Objection, however, is inversely proportional to the seriousness of the issues raised by the Ex Parte Application and, more generally, the Sale Motions.

Given the lack of disclosure as to the marketing process for the properties that are the subject of the Sale Motions, and that such motions make no reference to (i) the fact that this Court has already ruled to confirm the Charlestown Plan or (ii) any decisions by the Board of Directors with respect to the proposed sale of these properties, the only conclusion that the Equity Committee can reach is that the Debtors are being operated by, and solely for the benefit of, Mr. Meruelo and Mr. Maddux.

Such failures of disclosure raise the following issues, each as to which the Equity Committee and other parties in interest are entitled to take discovery of the Debtors and members of the MMPI Board of Directors (the "Board of Directors") to determine the answers to the following important questions:[3]

- Why are the proposed sales only being requested after the Court issued its ruling from the bench on May 19, 2011 that it was confirming the Charlestown Plan?

- Why were such proposed sales not brought to the attention of this Court and parties in interest at an earlier date?

- As a general matter, what role did the Board of Directors play with respect to the decision to market and sell these properties?

- Did the Board of Directors determine that it was appropriate to liquidate a substantial portion of the Debtors' assets at this time? If so, what was the basis for their determination?

- Assuming the Board of Directors did approve the marketing and sale of the properties, why did the Debtors not disclose such decision in the Sale Motion?

---

[3] In the event this Court determines that it is appropriate to hear the Sale Motions, the Equity Committee will conduct any necessary discovery on an expedited basis within the timeframe established by the Court (subject, of course, to the cooperation of the parties against whom discovery is sought).

2

Equity Committee's Opposition For Debtors' Ex Parte Application For An Order Shortening The Time On Certain Motion To Sell Property

- Given that Mr. Meruelo and Mr. Maddux are continuing to object to the Charlestown Plan, and that they have a vested economic interest in not having such plan becoming effective, did Mr. Meruelo and Mr. Maddux recuse themselves from any deliberations by the Board of Directors with respect to the marketing and sale of the properties?

- Why did the Board of Directors determine that such sales were in the best interests of the Debtors' estates in light of the Court's ruling on the Charlestown Plan?

- Did the Board of Directors instruct the Debtors' management to consult the Charlestown Plan proponents as to the merits of such sales? If not, why not?

- Who selected these particular properties to be marketed and sold? What was the basis for such selection? Are other properties presently being marketed?

- When did the marketing process for each of the proposed sales begin? How many potential buyers were contacted? Generally, how were the properties marketed and who conducted the marketing process?

- Why are the sales not subject to higher and better bids?

Each of these questions (among others that are raised by the Sale Motion) address fundamental issues as to how the Debtors are operating their businesses as fiduciaries. In the event this Court determines that it is appropriate to consider the relief requested by the Sale Motions, the Equity Committee is entitled to take discovery in order to determine the answers to reasonable questions that address the Sale Motions and the basic issue as to whether the Debtors are discharging their fiduciary duty as debtors in possession.

The Ex Parte Application also fails to discuss why certain agreements are apparently several months old, but were not brought to the attention of the Equity Committee and this Court in a timely fashion, while other agreements were entered into much more recently.[4] Given that the Debtors

---

[4] The Debtors represent that they entered into the sale agreements on the following dates: (i) March 21, 2011, for Debtor 905 8th Street (docket entry no. 3144); (ii) March 9, 2011, for Debtor 915 S. Hill (docket entry no. 3173); (iii) May 27, 2011, for Debtor 1009 North Citrus (*id*.); (iv) May 31, 2011, for Debtor 760 S. Hill (*id*.); (v) May 26, 2011, for Debtor

3

Equity Committee's Opposition For Debtors' Ex Parte Application For An Order Shortening The Time On Certain Motion To Sell Property

believe it is acceptable to hold onto agreements, it is hard to understand why there is any basis for this Court to consider such relief on an emergency basis.

Finally, the Ex Parte Application improperly refers to the date on which the Sale Motions were originally made. This is an obvious attempt to suggest that parties in interest have had sufficient time to review such motions, when the foregoing unanswered questions demonstrate that this is simply not the case. The Ex Parte Application fails to note that the Debtors simply filed the Sale Motions without seeking to schedule a hearing until June 9, 2011 at 11:53 p.m. (Pacific time). The Debtors fail to discuss why any party, particularly one whose professional fees are to paid out of estate funds, would devote considerable resources to consideration of a motion when the movant had not even bothered to schedule a hearing. It is particularly disturbing that the Debtors, in seeking to obtain an improper litigation advantage through this scheduling stratagem, do not even explain why they filed the motions without scheduling a hearing.

The Debtors' argument that this Court should consider the date on which the Sale Motions were first filed is particularly disturbing given the Debtors' complete and abject failure to comply with sections 1103(c) and (d) of the Bankruptcy Code. Section 1103(c) provides that among an equity committee's principal duties is the duty to "consult with the … debtor … concerning the administration of the case" (11 U.S.C. § 1103(c)), and section 1103(d) provides that a debtor or trustee "shall meet with such committee to transact such business as may be necessary and proper." In order for "the chapter 11 process to function as it is supposed to, it is necessary for the debtor and the official committees, despite whatever disagreements they may have, to work together." 7 Collier on Bankruptcy at ¶ 1103.05[1][b] (16th ed. 2010). Recognizing this, courts have held that section 1103(c) and (d) does not place a one-sided obligation upon committees, but also requires debtors to

---

Baldwin Park (docket entry no. 3186). Additionally, Debtors 788 S. Alameda, 1211 E. Washington and SFCC represent that they received the written offer to purchase a package of properties on May 26, 2011. (Docket entry no. 3186.)

4

Equity Committee's Opposition For Debtors' Ex Parte Application For An Order Shortening The Time On Certain Motion To Sell Property

cooperate with committees by providing them with the information they need to carry out their duty to consult. *See In re Structurlite Plastics, Corp.*, 91 B.R. 813, 819-20 (Bankr. S.D. Ohio 1988).

The court in *Structurlite* considered the creditors' committee's motion to compel the debtor to comply with its fiduciary duties and duties imposed by the Bankruptcy Code. *Id*. at 818. The committee alleged that the debtor had been refusing to meet with the committee or to furnish the committee with information regarding a proposed sale. *Id*. The committee argued that these refusals both violated the debtor's statutorily imposed duties and frustrated the committee's ability to carry out its duties. *Id.* The court agreed with the statutory committee and granted the motion. In so doing, the court emphasized that section 1103(d) is not merely aspirational, but imposes an affirmative duty upon a debtor to meet and share information with the statutory committees. *Id*. Further, the court explained that the Bankruptcy Code envisions a "prominent role" for statutory committees that includes supervising the debtor and participating in key negotiations between the debtor and other parties. *Id*. 818-19. As such, the court held that the committee was entitled to access to draft agreements of the proposed sale so that the committee would have sufficient time to formulate an informed position on the proposed sale. *Id*. at 820.

It cannot be disputed that the Debtors have failed to make even the slightest effort to comply with either the spirit or letter of section 1103(c) and (d) of the Bankruptcy Code. The Equity Committee only learned of the proposed sales when the Sale Motions were filed, had no prior knowledge of the marketing of the properties, and most importantly, has not received any information from the Debtors as to why the proposed sales are in the best interests of the Debtors' estates (as opposed to Mr. Meruelo and Mr. Maddux) given that the Court has ruled that it is confirming the Charlestown Plan. That the Debtors do not agree with the Equity Committee's determination as to the merits of the Charlestown Plan cannot serve as a basis for the Debtors' obligation to comply with the dictates of the Bankruptcy Code and the Debtors obligations to serve as fiduciaries as debtors in possession.

5

Given the Debtors' actions, there is no basis to approve the Ex Parte Application, and the Equity Committee respectfully submits that, in light of this Court's decision to confirm the Charlestown Plan, that this Court should exercise its inherent authority to manage its calendar and to preserve judicial (and estate) resources by not scheduling the Sale Motions.

## CONCLUSION

For the above reasons, the Equity Committee respectfully requests that the Court deny the Ex Parte Application.

Dated: June 10, 2011                              **JENNER & BLOCK LLP**

                                                  By    */s/ Marc B. Hankin*
                                                        Kenneth K. Lee  (Cal. Bar No. 264296)
                                                        Marc B. Hankin  (admitted *pro hac vice*)
                                                        Attorneys for Equity Committee

6

Equity Committee's Opposition For Debtors' Ex Parte Application For An Order Shortening The Time On Certain Motion To Sell Property