1   JOHN N. TEDFORD, IV (State Bar No. 205537)
    *JTedford@DGDK.com*
2   ENID COLSON (State Bar No. 189912)
    *EColson@DGDK.com*
3   DANNING, GILL, DIAMOND & KOLLITZ, LLP
    2029 Century Park East, Third Floor
4   Los Angeles, California 90067-2904
    Telephone: (310) 277-0077
5   Facsimile: (310) 277-5735

6   Attorneys for Meruelo Maddux Properties, Inc.,
    and affiliated Debtors and Debtors-in-Possession
7

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10             SAN FERNANDO VALLEY DIVISION

11  In re                              )  Case No. 1:09-bk-13356-VK
                                       )
12  MERUELO MADDUX PROPERTIES, INC., et )  Chapter 11 (Jointly Administered)
    al.,[1]                            )
13                                     )  **SUPPLEMENTAL DECLARATION OF**
              Debtors and Debtors-in-Possession. )  **JOHN CHARLES MADDUX IN**
14                                     )  **SUPPORT OF NOTICE OF MOTION**
                                       )  **AND OMNIBUS MOTION OF**
15  _____ )  **DEBTORS-IN-POSSESSION FOR [1]**
    ☐   Affects all Debtors            )  **AUTHORITY TO SELL REAL**
16                                     )  **PROPERTIES FREE AND CLEAR OF**
    ☑   Affects the following Debtor(s): )  **LIENS, [2] AUTHORITY TO ASSUME**
17                                     )  **AND ASSIGN UNEXPIRED LEASES, [3]**
    Meruelo Maddux – 817-825 S. Hill Street, LLC )  **AUTHORITY TO ENTER INTO**
18  (1:09-bk-13391-VK)                 )  **LICENSE AGREEMENT AND [4]**
                                       )  **WAIVER OF STAY PER F.R.B.P. 6004(h)**
19  Meruelo Maddux – 915-949 S. Hill Street, LLC )  **AND 6006(d)**
    (1:09-bk-13362-VK)                 )
20                                     )
    Meruelo Maddux Properties – 1009 North Citrus )
21  Avenue, Covina, LLC               )  Date:   **June 23, 2011**
    (1:09-bk-13372-VK)                 )  Time:   **10:30 a.m.**
22                                     )  Place:  Courtroom 301
    Meruelo Maddux Properties – 760 S. Hill Street, )          21041 Burbank Blvd.
23  LLC                               )          Woodland Hills, California
    (1:09-bk-13363-VK)                 )
24  _____ )

25

26

27      [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

28

## DECLARATION OF JOHN CHARLES MADDUX

I, John Charles Maddux, declare and state as follows:

1.      I am the President and Chief Operating Officer of Meruelo Maddux Properties, Inc., a Delaware corporation ("MMPI").

2.      MMPI is the parent company of approximately 69 affiliated entities, including Meruelo Maddux – 915-949 S. Hill Street, LLC ("915 S. Hill"), Meruelo Maddux Properties – 1009 North Citrus Avenue, Covina, LLC ("1009 North Citrus"), and Meruelo Maddux Properties – 760 S. Hill Street, LLC ("760 S. Hill" and, collectively with 915 S. Hill and 1009 North Citrus, the "Seller Debtors") and Meruelo Maddux – 817-825 S. Hill Street, LLC ("817 S. Hill"). I am a designated officer of each of the affiliated entities, including 760 S. Hill, 817 S. Hill, 915 S. Hill, and 1009 North Citrus and am authorized to give this declaration.

3.      As a result of my being Chief Operating Officer of MMPI and a designated officer of 760 S. Hill, 817 S. Hill, 915 S. Hill, and 1009 North Citrus and each of the affiliated entities, and my review of relevant documents, I am familiar with the MMPI Debtors' day-to-day operations, business affairs, and books and records, and the manner in which they are prepared. Except as otherwise noted, all facts set forth in this supplemental declaration are based on my personal knowledge, my discussions with other members of the Debtors' senior management team, my review of relevant documents, or my opinion, based on, among other things, my experience and knowledge of the Debtors' operations and financial conditions.

4.      I offer this supplemental declaration in support of the Notice Of Motion And Omnibus Motion Of Debtors-In-Possession For [1] Authority To Sell Real Properties Free And Clear Of Liens, [2] Authority To Assume And Assign Unexpired Leases, [3] Authority To Enter Into License Agreement And [4] Waiver Of Stay Per F.R.B.P. 6004(H).

5.      Attached hereto as Exhibit "11" is a true and correct copy of the title report dated June 1, 2011 for the real property located at 1009 North Citrus Avenue, Covina, California.

-2-

6.     Attached hereto as Exhibit "12" is a copy of the title report dated June 3, 2011 for the real property commonly known as 760 S. Hill Street and 325 West 8th Street, Los Angeles, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at Los Angeles, California on June 10, 2011.

*Signature to Follow*
JOHN CHARLES MADDUX

370849.01 [XP]    25195

# EXHIBIT 11



# First American Title Insurance Company
## National Commercial Services

**777 South Figueroa Street, Suite 400**
**Los Angeles, CA 90017**

June 01, 2011

Edward M. Laufer
Meruelo Maddux Properties, Inc.
761 Terminal Street, Building 1,, 2nd Floor
Los Angeles, CA 90021
Phone: (213)291-2800
Fax: (213)291-2830

Customer Reference:          1009 North Citrus Avenue

| | | | |
|---|---|---|---|
| Title Officer: | Anthony Rivera / Fernando Alegre | Title Assistant: | Irma Pimentel |
| Phone: | (866)830-9622 | Phone: | (213)271-1723 |

Policy Number:

Property:                  Covina, CA

Attached please find the following item(s):

Commitment

Thank You for your confidence and support. We at First American Title Insurance Company maintain the fundamental principle:

## *Customer First!*

## First American Title Insurance Company

### INFORMATION

The Title Insurance Commitment is a legal contract between you and the company.  It is issued to show the basis on which we will issue a Title Insurance Policy to you.  The Policy will insure you against certain risks to the land title, subject to the limitations shown in the policy.

The Company will give you a sample of the Policy form, if you ask.

The Commitment is based on the land title as of the Commitment Date.  Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

This information is not part of the title insurance commitment.

### TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Agreement to Issue Policy |  | 3 |
| Schedule A |  |  |
| 1. | Commitment Date | 4 |
| 2. | Policies to be Issued, Amounts and Proposed Insured | 4 |
| 3. | Interest in the Land and Owner | 4 |
| 4. | Description of the Land | 4 |
| Schedule B-1 - Requirements |  |  |
| Schedule B-2 - Exceptions |  |  |
| Conditions |  |  |

**YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.**
**If you have any questions about the Commitment,**
**please contact the issuing office.**

130

## COMMITMENT FOR TITLE INSURANCE

Issued by

### First American Title Insurance Company

Agreement to Issue Policy

We agree to issue a policy to you according to the terms of this Commitment.

When we show the policy amount and your name as the proposed insured in Schedule A, this Commitment becomes effective as of the Commitment Date shown in Schedule A.

If the Requirements shown in this Commitment have not been met within six months after the Commitment Date, our obligation under this Commitment will end. Also, our obligation under this Commitment will end when the Policy is issued and then our obligation to you will be under the Policy.

Our obligation under this Commitment is limited by the following:

The Provisions in Schedule A.

The Requirements in Schedule B-1.

The Exceptions in Schedule B-2.

The Conditions.

This Commitment is not valid without Schedule A and Sections 1 and 2 of Schedule B.

131

## SCHEDULE A

1.    Commitment Date:  May 20, 2011 at 7:30 A.M.

2.    Policy or Policies to be issued:                                    Amount

      (A)    ALTA Standard Owner Policy - 2006                    $To Be Determined
      Proposed Insured:

      To Be Determined

      (B)    To Be Determined                                      $To Be Determined
      Proposed Insured:

      To Be Determined

3.    (A) The estate or interest in the land described in this Commitment is:

      Fee Simple

      (B) Title to said estate or interest at the date hereof is vested in:

      Meruelo Maddux Properties - 1009 North Citrus Avenue, Covina LLC, a California limited
      liability company, subject to proceedings pending in the Bankruptcy Court of the
      Central District of the U. S. District Court, Los Angeles, California entitled in re: Meruelo
      Maddux Properties - 1009 North Citrus Avenue, debtor, Case No. 1:09-bk-13372-VK and
      as evidenced by document recorded April 10, 2009 as Instrument No. 20090521120,
      wherein a petition for relief was filed on March 27, 2009.

4.    The land referred to in this Commitment is situated in the City of Covina and unincorporated
      area, County of Los Angeles, State of California, and is described as follows:

      PARCEL 1:

      THOSE PORTIONS OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE
      SOUTHEAST QUARTER AND THE SOUTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE
      SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 10 WEST, SAN
      BERNARDINO MERIDIAN, IN THE CITY OF COVINA, COUNTY OF LOS ANGELES, STATE OF
      CALIFORNIA, ACCORDING TO THE OFFICIAL PLAT OF SAID LAND FILED IN THE DISTRICT LAND
      OFFICE ON APRIL 21, 1877, DESCRIBED AS A WHOLE AS FOLLOWS:

      BEGINNING AT A POINT IN THE CENTER LINE OF CITRUS AVENUE, 33 FEET WIDE DISTANT
      SOUTH 0°14'15" EAST ALONG SAID CENTER LINE 357.90 FEET FROM ITS INTERSECTION WITH
      THE CENTER LINE OF COVINA BOULEVARD, 40 FEET WIDE, AS SAID AVENUE AND BOULEVARD
      ARE SHOWN ON THE MAP OF TRACT NO. 19825, RECORDED IN BOOK 503 PAGES 1 AND 2 OF
      MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTH
      89°54'37" WEST ALONG THE NORTHERLY LINE OF THE LAND DESCRIBED IN THE DEED TO THE
      DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA, RECORDED ON OCTOBER
      27, 1950 AS INSTRUMENT NO. 2550 IN BOOK 34671 PAGE 399 OFFICIAL RECORDS OF SAID
      COUNTY AND THE EASTERLY PROLONGATION OF SAID NORTHERLY LINE, A DISTANCE OF 175
      FEET TO THE NORTHWESTERLY CORNER OF SAID LAND OF THE DEPARTMENT OF VETERANS
      AFFAIRS OF THE STATE OF CALIFORNIA, SAID NORTHWESTERLY CORNER BEING THE TRUE
      POINT OF BEGINNING; THENCE CONTINUING SOUTH 89°54'37" WEST, ALONG THE WESTERLY

132

PROLONGATION OF SAID NORTHERLY LINE, A DISTANCE OF 198.74 FEET; MORE OR LESS, TO THE NORTHEASTERLY CORNER OF LOT 9 OF SAID TRACT NO. 19825; THENCE SOUTH 00°9'35" EAST ALONG THE EASTERLY LINE OF LOTS 9, 10, 11, 12 AND 13 OF SAID TRACT NO. 19825, A DISTANCE OF 306.38 FEET TO THE NORTHEASTERLY CORNER OF LOT 14 OF SAID TRACT NO. 19825; THENCE SOUTH 17°30'52" EAST ALONG THE EASTERLY LINE OF SAID LOT 14, A DISTANCE OF 33.54 FEET TO THE NORTHWESTERLY CORNER OF LOT 17 OF SAID TRACT NO. 19825; THENCE NORTH 89°57'50" EAST ALONG THE NORTHERLY LINE OF LOTS 17, 18, 19, 20 AND 21 OF SAID TRACT NO. 19825, A DISTANCE OF 314.17 FEET, MORE OR LESS TO A LINE PARALLEL WITH AND DISTANT WESTERLY 50.00 FEET, MEASURED AT RIGHT ANGLES FROM SAID CENTER LINE OF CITRUS AVENUE; THENCE NORTH 0°14'15" WEST ALONG SAID PARALLEL LINE TO THE SOUTHERLY LINE OF SAID HEREINABOVE MENTIONED LAND OF THE DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA; THENCE ALONG THE BOUNDARY LINE OF SAID LAST MENTIONED LAND AS FOLLOWS:

SOUTH 89°54'37" WEST 125.00 FEET AND NORTH 0°14'15" WEST 70.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 2:

THAT PORTION OF THE NORTHEAST QUARTER OF THE NORTHEAST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 10 WEST, SAN BERNARDINO MERIDIAN, IN THE CITY OF COVINA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, ACCORDING TO THE OFFICE PLAT OF SAID LAND FILED IN THE DISTRICT LAND OFFICE ON APRIL 21, 1877, DESCRIBED AS FOLLOWS: BEGINNING AT A POINT IN THE CENTER LINE OF CITRUS AVENUE, 33 FEET WIDE, DISTANT SOUTH 0°14'15" EAST ALONG SAID CENTER LINE 357.90 FEET FROM ITS INTERSECTION WITH THE CENTER LINE OF COVINA BOULEVARD, 40 FEET WIDE, AS SAID AVENUE AND BOULEVARD ARE SHOWN IN THE MAP OF TRACT NO. 19825, RECORDED IN BOOK 503 PAGES 1 AND 2 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE SOUTH 89°54'37" WEST ALONG THE NORTHERLY LINE OF THE LAND DESCRIBED IN THE DEED TO THE DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA, RECORDED ON OCTOBER 27, 1950 AS INSTRUMENT NO. 2550 IN BOOK 34671 PAGE 399 OFFICIAL RECORDS OF SAID COUNTY AND THE EASTERLY PROLONGATION OF SAID NORTHERLY LINE TO A POINT IN A LINE PARALLEL WITH AND DISTANT WESTERLY 50.00 FEET, MEASURED AT RIGHT ANGLES FROM SAID CENTER LINE OF CITRUS AVENUE, SAID POINT BEING THE TRUE POINT OF BEGINNING; THENCE CONTINUING ALONG THE BOUNDARY LINE OF SAID LAND OF THE DEPARTMENT OF VETERANS AFFAIRS OF THE STATE OF CALIFORNIA AS FOLLOWS:

SOUTH 89°54'37" WEST 125.00 FEET, NORTH 0°14'15" EAST 70.00 FEET AND NORTH 89°54'37" EAST 125.00 FEET TO SAID HEREINABOVE MENTIONED PARALLEL LINE; THENCE ALONG SAID PARALLEL LINE, NORTH 0°14'15" WEST 70.00 FEET TO THE TRUE POINT OF BEGINNING.

APN:  8421-025-017; 8421-025-018 and 8421-025-020

# SCHEDULE B

## SECTION ONE

## REQUIREMENTS

The following requirements must be met:

(A)    Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(B)    Pay us the premiums, fees and charges for the policy.

(C)    Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded.

(D)    You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(E)    Releases(s) or Reconveyance(s) of Item(s): None

(F)    Other: None

(G)    You must give us the following information:
        1.    Any off record leases, surveys, etc.
        2.    Statement(s) of Identity, all parties.
        3.    Other: None

The following additional requirements, as indicated by "X", must be met:

[X]    (H)    Provide information regarding any off-record matters, which may include, but are not limited to: leases, recent works of improvement, or commitment statements in effect under the Environmental Responsibility Acceptance Act, Civil Code Section 850, et seq.

        The Company's Owner's Affidavit form(as provided by company) must be completed and submitted prior to close in order to satisfy this requirement. This Commitment will then be subject to such further exceptions and/or requirements as may be deemed necessary.

[]    (I)    An ALTA/ACSM survey of recent date, which complies with the current minimum standard detail requirements for ALTA/ACSM land title surveys, must be submitted to the Company for review. This Commitment will then be subject to such further exceptions and/or requirements as may be deemed necessary.

[X]    (J)    The following LLC documentation is required:
        (i) a copy of the Articles of Organization
        (ii) a copy of the Operating Agreement, if applicable
        (iii) a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State
        (iv) express Company Consent to the current transaction

134

[]    (K)  The following partnership documentation is required :
(i) a copy of the partnership agreement, including all applicable amendments thereto
(ii) a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State
(iii) express Partnership Consent to the current transaction


[]    (L)  The following corporation documentation is required:
(i) a copy of the Articles of Incorporation
(ii) a copy of the Bylaws, including all applicable Amendments thereto
(iii) a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State
(iv) express Corporate Resolution consenting to the current transaction

[X]   (M)  Based upon the Company's review of that certain partnership/operating agreement dated **not disclosed** for the proposed insured herein, the following requirements must be met:

Any further amendments to said agreement must be submitted to the Company, together with an affidavit from one of the general partners or members stating that it is a true copy, that said partnership or limited liability company is in full force and effect, and that there have been no further amendments to the agreement.  This Commitment will then be subject to such further requirements as may be deemed necessary.

[]    (N)  A copy of the complete lease, as referenced in Schedule A, #3 herein, together with any amendments and/or assignments thereto, must be submitted to the Company for review, along with an affidavit executed by the present lessee stating that it is a true copy, that the lease is in full force and effect, and that there have been no further amendments to the lease.  This Commitment will then be subject to such further requirements as may be deemed necessary.

[X]   (O)  Approval from the Company's Underwriting Department must be obtained for issuance of the policy contemplated herein and any endorsements requested thereunder.  This Commitment will then be subject to such further requirements as may be required to obtain such approval.

[]    (P)  Potential additional requirements, if ALTA Extended coverage is contemplated hereunder, and work on the land has commenced prior to close, some or all of the following requirements, and any other requirements which may be deemed necessary, may need to be met:


[]    (Q)  The Company's "Mechanic's Lien Risk Addendum" form must be completed by a Company employee, based upon information furnished by the appropriate parties involved.

[]    (R)  The Company's "Indemnity Agreement I" must be executed by the appropriate parties.

[]    (S)  Financial statements from the appropriate parties must be submitted to the Company for review.

[]    (T)  A copy of the construction contract must be submitted to the Company for review.

[]    (U)  An inspection of the land must be performed by the Company for verification of the phase of construction.

## SCHEDULE B

### SECTION TWO

### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction. The printed exceptions and exclusions from the coverage of the policy or policies are set forth in Exhibit A attached. Copies of the policy forms should be read. They are available from the office which issued this Commitment.

1.    General and special taxes and assessments for the fiscal year 2011-2012, a lien not yet due or payable.

2.    The lien of defaulted taxes for the fiscal year 2007-2008, and any subsequent delinquencies.
      Tax Rate Area:              03045
      A. P. No.:                  8421-025-017
      Amount to redeem:           $127,662.65
      Valid through:              May 31, 2011
      Amount to redeem:           $128,981.96
      Valid through:              June 30, 2011

      (Affects portion of Parcel 1)

3.    The lien of defaulted taxes for the fiscal year 2007-2008, and any subsequent delinquencies.
      Tax Rate Area:              12033
      A. P. No.:                  8421-025-018
      Amount to redeem:           $1,656.88
      Valid through:              May 31, 2011
      Amount to redeem:           $1,673.64
      Valid through:              June 30, 2011

      (Affects the remainder of Parcel 1)

4.    The lien of defaulted taxes for the fiscal year 2007-2008, and any subsequent delinquencies.
      Tax Rate Area:              03045
      A. P. No.:                  8421-025-020
      Amount to redeem:           $8,861.06
      Valid through:              May 31, 2011
      Amount to redeem:           $8,949.59
      Valid through:              June 30, 2011

      (Affects Parcel 2)

5.    The lien of special tax assessed pursuant to Chapter 2.5 commencing with Section 53311 of the California Government Code for Community Facilities District No. 2007-1(Public Services), as disclosed by Notice of Special Tax Lien recorded June 18, 2007 as Instrument No: 2007-1464755 of Official Records.

136

6.    The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

7.    Water rights, claims or title to water, whether or not shown by the public records.

8.    An easement for pole lines and incidental purposes in the document recorded March 19, 1954 as Instrument No. 3198, in Book 44114, Page 327 of Official Records.

9.    An easement for pole lines and conduits and incidental purposes in the document recorded  as in Book 45134, Page 15 of Official Records.

10.    An easement for underground electric lines and conduits and incidental purposes in the document recorded January 17, 1967 as Instrument No. 2469 of Official Records.

11.    A document for grant of a waiver by the City of Covina, subject to the terms, provisions and conditions contained therein recorded May 30, 1978 as Instrument No. 78-574818 of Official Records.

12.    Proceedings pending in the Bankruptcy Court of the Central District of the U.S. District Court, Los Angeles, California , entitled in re: Meruelo Maddux Properties - 1009 North Citrus Avenue and as evidenced by document recorded April 10, 2009 as Instrument No. 20090521120, debtor, Case No. 1:09-bk-13372-VK, wherein a petition for relief was filed on March 27, 2009.

13.    Rights of parties in possession.

| **INFORMATIONAL NOTES** |
|---|

1. Taxes for proration purposes only for the fiscal year 2010-2011.
   First Installment:        $19,786.89, PAID
   Second Installment:       $19,786.89, PAID
   Tax Rate Area:            03045
   APN:                      8421-025-017

   (Affects portion of Parcel 1)

2. Taxes for proration purposes only for the fiscal year 2010-2011.
   First Installment:        $310.34, PAID
   Second Installment:       $310.33, PAID
   Tax Rate Area:            12033
   APN:                      8421-025-018

   (Affects the remainder of Parcel 1)

3. Taxes for proration purposes only for the fiscal year 2010-2011.
   First Installment:        $1,083.43, PAID
   Second Installment:       $1,083.43, PAID
   Tax Rate Area:            03045
   APN:                      8421-025-020

   (Affects Parcel 2)

4. The property covered by this report is vacant land.

5. According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

   None

6. This preliminary report/commitment was prepared based upon an application for a policy of title insurance that identified land by street address or assessor's parcel number only. It is the responsibility of the applicant to determine whether the land referred to herein is in fact the land that is to be described in the policy or policies to be issued.

The map attached, if any, may or may not be a survey of the land depicted hereon. First American Title Insurance Company expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

*****To obtain wire instructions for deposit of funds to your escrow file please contact your Escrow Officer.*****

138

## CONDITIONS

### 1. DEFINITIONS
(a)"Mortgage" means mortgage, deed of trust or other security instrument.
(b)"Public Records" means title records that give constructive notice of matters affecting the title according to the state law where the land is located.

### 2. LATER DEFECTS
The Exceptions in Schedule B - Section Two may be amended to show any defects, liens or encumbrances that appear for the first time in the public records or are created or attached between the Commitment Date and the date on which all of the Requirements (a) and (c) of Schedule B - Section One are met. We shall have no liability to you because of this amendment.

### 3. EXISTING DEFECTS
If any defects, liens or encumbrances existing at Commitment Date are not shown in Schedule B, we may amend Schedule B to show them. If we do amend Schedule B to show these defects, liens or encumbrances, we shall be liable to you according to Paragraph 4 below unless you knew of this information and did not tell us about it in writing.

### 4. LIMITATION OF OUR LIABILITY
Our only obligation is to issue to you the Policy referred to in this Commitment, when you have met its Requirements. If we have any liability to you for any loss you incur because of an error in this Commitment, our liability will be limited to your actual loss caused by your relying on this Commitment when you acted in good faith to:

comply with the Requirements shown in Schedule B - Section One
or
eliminate with our written consent any Exceptions shown in Schedule B - Section Two.

We shall not be liable for more than the Policy Amount shown in Schedule A of this Commitment and our liability is subject to the terms of the Policy form to be issued to you.

### 5. CLAIMS MUST BE BASED ON THIS COMMITMENT
Any claim, whether or not based on negligence, which you may have against us concerning the title to the land must be based on this commitment and is subject to its terms.

 *First American Title*

**Privacy Information**
We Are Committed to Safeguarding Customer Information
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.
In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**
First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**
Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.
-------------------------------------------------------
**Fair Information Values**
Fairness We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
Public Record We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
Use We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
Accuracy We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can secure the required corrections.
Education We will endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
Security We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

©2010 First American Financial Corporation. All rights reserved  θ NYSE: FAF

**EXHIBIT A**
**LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)**

**1. CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY - 1990**
**SCHEDULE B**

**EXCEPTIONS FROM COVERAGE**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable "doing business" laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by their policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

**2. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY FORM B - 1970**
**SCHEDULE OF EXCLUSIONS FROM COVERAGE**

1. Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions of area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.

2. Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.

3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

**3. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY FORM B - 1970**
**WITH REGIONAL EXCEPTIONS**

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 2 above are used and the following exceptions to coverage appear in the policy.

**SCHEDULE B**

141

This policy does not insure against loss or damage by reason of the matters shown in parts one and two following:

Part One

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3. Easements, claims of easement or encumbrances which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6. Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

## 4. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1970
### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
### SCHEDULE OF EXCLUSIONS FROM COVERAGE

1. Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law ordinance or governmental regulation.
2. Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.
3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant, (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder, (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent insurance is afforded herein as to any statutory lien for labor or material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy).
4. Unenforceability of the lien of the insured mortgage because of failure of the insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

## 5. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1970
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association Lenders Policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy, the exclusions set forth in paragraph 4 above are used and the following exceptions to coverage appear in the policy.

## SCHEDULE B

This policy does not insure against loss or damage by reason of the matters shown in parts one and two following:

Part One

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3. Easements, claims of easement or encumbrances which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

## 6. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy;
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

142

2.   Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.   Defects, liens, encumbrances, adverse claims, or other matters:
(a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(c) resulting in no loss or damage to the insured claimant;
(d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at date of policy); or
(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4.   Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable "doing business" laws of the state in which the land is situated.

5.   Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6.   Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7.   Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
(i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
(ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
(iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
(a) to timely record the instrument of transfer; or
(b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## 7. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 6 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

2.   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3.   Easements, claims of easement or encumbrances which are not shown by the public records.

4.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5.   Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

6.   Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

## 8. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.   (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2.   Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3.   Defects, liens, encumbrances, adverse claims, or other matters:
(a) created, suffered, assumed or agreed to by the insured claimant;
(b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
(c) resulting in no loss or damage to the insured claimant;
(d) attaching or created subsequent to Date of Policy; or

143

(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.
4.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
    (i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or
    (ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
    (a) to timely record the instrument of transfer; or
    (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## 9. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One:
1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

## 10. AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL
### TITLE INSURANCE POLICY - 1987
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees and expenses resulting from:

1.  Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
    * land use                          * land division
    * improvements on the land          * environmental protection
    This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
    This exclusion does not limit the zoning coverage described in items 12 and 13 of Covered Title Risks.
2.  The right to take the land by condemning it, unless:
    * a notice of exercising the right appears in the public records on the Policy Date
    * the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking.
3.  Title Risks:
    * that are created, allowed, or agreed to by you
    * that are known to you, but not to us, on the Policy Date - unless they appeared in the public records
    * that result in no loss to you
    * that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4.  Failure to pay value for your title.
5.  Lack of a right:
    * to any land outside the area specifically described and referred to in Item 3 of Schedule A, or
    * in streets, alleys, or waterways that touch your land
    This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## 11. EAGLE PROTECTION OWNER'S POLICY

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 1998
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 1998

**Covered Risks 14 (Subdivision Law Violation). 15 (Building Permit). 16 (Zoning) and 18 (Encroachment of boundary walls or fences) are subject to Deductible Amounts and Maximum Dollar Limits of Liability**

### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:

      a. building                        b. zoning
      c. land use                      d. improvements on the land
      e. land division                f. environmental protection

    This exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.

    This exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.

2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.

3.  The right to take the Land by condemning it, unless:
    a. a notice of exercising the right appears in the Public Records at the Policy Date; or
    b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.

4.  Risks:
    a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
    b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
    c. that result in no loss to You; or
    d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.

5.  Failure to pay value for Your Title.

6.  Lack of a right:
    a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b. in streets, alleys, or waterways that touch the Land.
    This exclusion does not limit the coverage described in Covered Risk 11 or 18.

## 12. THIRD GENERATION EAGLE LOAN POLICY AMERICAN LAND TITLE ASSOCIATION EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (1/01/08)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or(iv) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

    (b)Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

## 13. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 2006
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;

    (ii) the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv) environmental protection;

145

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

## 14. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 2006

### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 13 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

## 15. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 2006

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions, or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection;or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks 9 and 10); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a) a fraudulent conveyance or fraudulent transfer; or

(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## 16. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 2006
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 15 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

147

# EXHIBIT 12



# First American Title Insurance Company
## National Commercial Services

**777 South Figueroa Street, Suite 400**
**Los Angeles, CA 90017**

June 03, 2011

Edward M. Laufer
Meruelo Maddux Properties, Inc.
761 Terminal Street, Building 1,, 2nd Floor
Los Angeles, CA 90021
Phone: (213)291-2800
Fax: (213)291-2830

Customer Reference:          760 South Hill Street

| | | | |
|---|---|---|---|
| Title Officer: | Valerie Curry Anthony Rivera | Title Assistant: | Irma Pimentel |
| Phone: | | Phone: | (213)271-1723 |

Policy Number:

Property:          706 South Hill Street, Los Angeles, CA

Attached please find the following item(s):

Commitment

Thank You for your confidence and support.  We at First American Title Insurance Company  maintain the fundamental principle:

## *Customer First!*

## First American Title Insurance Company

### INFORMATION

The Title Insurance Commitment is a legal contract between you and the company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the policy.

The Company will give you a sample of the Policy form, if you ask.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

This information is not part of the title insurance commitment.

### TABLE OF CONTENTS

|  | Page |
|---|---|
| Agreement to Issue Policy | 3 |
| Schedule A |  |
| 1.    Commitment Date | 4 |
| 2.    Policies to be Issued, Amounts and Proposed Insured | 4 |
| 3.    Interest in the Land and Owner | 4 |
| 4.    Description of the Land | 4 |
| Schedule B-1 - Requirements |  |
| Schedule B-2 - Exceptions |  |
| Conditions |  |

**YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.**
**If you have any questions about the Commitment,**
**please contact the issuing office.**

COMMITMENT FOR TITLE INSURANCE

Issued by

## First American Title Insurance Company

Agreement to Issue Policy

We agree to issue a policy to you according to the terms of this Commitment.

When we show the policy amount and your name as the proposed insured in Schedule A, this Commitment becomes effective as of the Commitment Date shown in Schedule A.

If the Requirements shown in this Commitment have not been met within six months after the Commitment Date, our obligation under this Commitment will end. Also, our obligation under this Commitment will end when the Policy is issued and then our obligation to you will be under the Policy.

Our obligation under this Commitment is limited by the following:

      The Provisions in Schedule A.

      The Requirements in Schedule B-1.

      The Exceptions in Schedule B-2.

      The Conditions.

This Commitment is not valid without Schedule A and Sections 1 and 2 of Schedule B.

## SCHEDULE A

1.    Commitment Date:  May 20, 2011 at 7:30 A.M.

2.    Policy or Policies to be issued:                                 Amount

      (A)    ALTA Standard Owner Policy - 2006              $To Be Determined
      Proposed Insured:

      To Be Determined

      (B)    To Be Determined                             $To Be Determined
      Proposed Insured:

      To Be Determined

3.    (A)  The estate or interest in the land described in this Commitment is:

      Fee Simple

      (B)  Title to said estate or interest at the date hereof is vested in:


      Meruelo Maddux Properties - 760 South Hill Street, LLC, a Delaware limited liability
      company, subject to proceedings pending in the Bankruptcy Court of the Central District
      of the U. S. District Court, Los Angeles entitled in re: Meruelo Maddux Properties - 760
      South Hill Street, LLC, debtor, Case No. 09-BK-13363-VK, wherein a petition for relief
      was filed on March 27, 2009.

4.    The land referred to in this Commitment is situated in the City of Los Angeles, County of Los
      Angeles, State of California, and is described as follows:

      LOT 1, IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF
      CALIFORNIA, AS SHOWN UPON TRACT MAP NO. 68043, FILED OCTOBER 04, 2007 IN BOOK
      1339, PAGES 89 THROUGH 91 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
      COUNTY.

      APN:
      5144-014-046 (Affects: Unit 1C)
      5144-014-047 (Affects: Unit 2C)
      5144-014-048 (Affects: Unit 201R)
      5144-014-049 (Affects: Unit 202R)
      5144-014-050 (Affects: Unit 203R)
      5144-014-051 (Affects: Unit 204R)
      5144-014-052 (Affects: Unit 301R)
      5144-014-053 (Affects: Unit 302R)
      5144-014-054 (Affects: Unit 303R)
      5144-014-055 (Affects: Unit 304R)
      5144-014-056 (Affects: Unit 305R)
      5144-014-057 (Affects: Unit 306R)
      5144-014-058 (Affects: Unit 307R)
      5144-014-059 (Affects: Unit 308R)

5144-014-060 (Affects: Unit 309R)
5144-014-061 (Affects: Unit 310R)
5144-014-062 (Affects: Unit 401R)
5144-014-063 (Affects: Unit 402R)
5144-014-064 (Affects: Unit 403R)
5144-014-065 (Affects: Unit 404R)
5144-014-066 (Affects: Unit 405R)
5144-014-067 (Affects: Unit 406R)
5144-014-068 (Affects: Unit 407R)
5144-014-069 (Affects: Unit 408R)
5144-014-070 (Affects: Unit 501R)
5144-014-071 (Affects: Unit 502R)
5144-014-072 (Affects: Unit 503R)
5144-014-073 (Affects: Unit 504R)
5144-014-074 (Affects: Unit 505R)
5144-014-075 (Affects: Unit 506R)
5144-014-076 (Affects: Unit 507R)
5144-014-077 (Affects: Unit 508R)
5144-014-078 (Affects: Unit 509R)
5144-014-079 (Affects: Unit 510R)
5144-014-080 (Affects: Unit 601R)
5144-014-081 (Affects: Unit 602R)
5144-014-082 (Affects: Unit 603R)
5144-014-083 (Affects: Unit 604R)
5144-014-084 (Affects: Unit 605R)
5144-014-085 (Affects: Unit 606R)
5144-014-086 (Affects: Unit 607R)
5144-014-087 (Affects: Unit 608R)
5144-014-088 (Affects: Unit 609R)
5144-014-089 (Affects: Unit 610R)
5144-014-090 (Affects: Unit 701R)
5144-014-091 (Affects: Unit 702R)
5144-014-092 (Affects: Unit 703R)
5144-014-093 (Affects: Unit 704R)
5144-014-094 (Affects: Unit 705R)
5144-014-095 (Affects: Unit 706R)
5144-014-096 (Affects: Unit 707R)
5144-014-097 (Affects: Unit 708R)
5144-014-098 (Affects: Unit 709R)
5144-014-099 (Affects: Unit 710R)
5144-014-100 (Affects: Unit 801R)
5144-014-101 (Affects: Unit 802R)
5144-014-102 (Affects: Unit 803R)
5144-014-103 (Affects: Unit 804R)
5144-014-104 (Affects: Unit 805R)
5144-014-105 (Affects: Unit 806R)
5144-014-106 (Affects: Unit 807R)
5144-014-107 (Affects: Unit 808R)
5144-014-108 (Affects: Unit 809R)
5144-014-109 (Affects: Unit 810R)
5144-014-110 (Affects: Unit 901R)
5144-014-111 (Affects: Unit 902R)
5144-014-112 (Affects: Unit 903R)
5144-014-113 (Affects: Unit 904R)
5144-014-114 (Affects: Unit 905R)
5144-014-115 (Affects: Unit 906R)
5144-014-116 (Affects: Unit 907R)
5144-014-117 (Affects: Unit 908R)
5144-014-118 (Affects: Unit 909R)

5144-014-119 (Affects: Unit 910R)
5144-014-120 (Affects: Unit 1001R)
5144-014-121 (Affects: Unit 1002R)
5144-014-122 (Affects: Unit 1003R)
5144-014-123 (Affects: Unit 1004R)
5144-014-124 (Affects: Unit 1005R)
5144-014-125 (Affects: Unit 1006R)
5144-014-126 (Affects: Unit 1007R)
5144-014-127 (Affects: Unit 1008R)
5144-014-128 (Affects: Unit 1009R)
5144-014-129 (Affects: Unit 1010R)
5144-014-130 (Affects: Unit 1101R)
5144-014-131 (Affects: Unit 1102R)
5144-014-132 (Affects: Unit 1103R)
5144-014-133 (Affects: Unit 1104R)
5144-014-134 (Affects: Unit 1105R)
5144-014-135 (Affects: Unit 1106R)
5144-014-136 (Affects: Unit 1107R)
5144-014-137 (Affects: Unit 1108R)
5144-014-138 (Affects: Unit 1109R)
5144-014-139 (Affects: Unit 1110R)

# SCHEDULE B

## SECTION ONE

## REQUIREMENTS

The following requirements must be met:

(A)    Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(B)    Pay us the premiums, fees and charges for the policy.

(C)    Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded.

(D)    You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land.  We may then make additional requirements or exceptions.

(E)    Releases(s) or Reconveyance(s) of Item(s): 11

(F)    Other: None

(G)    You must give us the following information:
    1.    Any off record leases, surveys, etc.
    2.    Statement(s) of Identity, all parties.
    3.    Other: None

The following additional requirements, as indicated by "X", must be met:

[X]    (H)    Provide information regarding any off-record matters, which may include, but are not limited to:  leases, recent works of improvement, or commitment statements in effect under the Environmental Responsibility Acceptance Act, Civil Code Section 850, et seq.

The Company's Owner's Affidavit form(as provided by company) must be completed and submitted prior to close in order to satisfy this requirement.  This Commitment will then be subject to such further exceptions and/or requirements as may be deemed necessary.

[]    (I)    An ALTA/ACSM survey of recent date, which complies with the current minimum standard detail requirements for ALTA/ACSM land title surveys, must be submitted to the Company for review.  This Commitment will then be subject to such further exceptions and/or requirements as may be deemed necessary.

[X]    (J)    The following LLC documentation is required:
    (i) a copy of the Articles of Organization
    (ii) a copy of the Operating Agreement, if applicable
    (iii) a Certificate of Good Standing and/or other evidence of current Authority to Conduct Business within the State
    (iv) express Company Consent to the current transaction

155

[]     (K) The following partnership documentation is required :
        (i) a copy of the partnership agreement, including all applicable amendments thereto
        (ii) a Certificate of Good Standing and/or other evidence of current Authority to Conduct
        Business within the State
        (iii) express Partnership Consent to the current transaction

[]     (L) The following corporation documentation is required:
        (i) a copy of the Articles of Incorporation
        (ii) a copy of the Bylaws, including all applicable Amendments thereto
        (iii) a Certificate of Good Standing and/or other evidence of current Authority to Conduct
        Business within the State
        (iv) express Corporate Resolution consenting to the current transaction

[X]     (M) Based upon the Company's review of that certain partnership/operating agreement dated
        **not disclosed** for the proposed insured herein, the following requirements must be met:

        Any further amendments to said agreement must be submitted to the Company, together
        with an affidavit from one of the general partners or members stating that it is a true
        copy, that said partnership or limited liability company is in full force and effect, and that
        there have been no further amendments to the agreement. This Commitment will then
        be subject to such further requirements as may be deemed necessary.

[]     (N) A copy of the complete lease, as referenced in Schedule A, #3 herein, together with any
        amendments and/or assignments thereto, must be submitted to the Company for review,
        along with an affidavit executed by the present lessee stating that it is a true copy, that
        the lease is in full force and effect, and that there have been no further amendments to
        the lease. This Commitment will then be subject to such further requirements as may be
        deemed necessary.

[X]     (O) Approval from the Company's Underwriting Department must be obtained for issuance of
        the policy contemplated herein and any endorsements requested thereunder. This
        Commitment will then be subject to such further requirements as may be required to
        obtain such approval.

[]     (P) Potential additional requirements, if ALTA Extended coverage is contemplated hereunder,
        and work on the land has commenced prior to close, some or all of the following
        requirements, and any other requirements which may be deemed necessary, may need to
        be met:

[X]     (Q) The Company's "Mechanic's Lien Risk Addendum" form must be completed by a Company
        employee, based upon information furnished by the appropriate parties involved.

[X]     (R) The Company's "Indemnity Agreement I" must be executed by the appropriate parties.

[X]     (S) Financial statements from the appropriate parties must be submitted to the Company for
        review.

[X]     (T) A copy of the construction contract must be submitted to the Company for review.

[X]     (U) An inspection of the land must be performed by the Company for verification of the phase
        of construction.

# SCHEDULE B

## SECTION TWO

## EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction. The printed exceptions and exclusions from the coverage of the policy or policies are set forth in Exhibit A attached. Copies of the policy forms should be read. They are available from the office which issued this Commitment.

1.   General and special taxes and assessments for the fiscal year 2011-2012, a lien not yet due or payable.

2.   The lien of defaulted taxes for the fiscal year 2008-2009, and any subsequent delinquencies.

| | |
|---|---|
| Tax Rate Area: | 13264 |
| A. P. No.: | 5144-014-045 |
| Amount to redeem: | $303,959.70 |
| Valid through: | June 30, 2011 |
| Affects: | Underlying Parcels |

3.   The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

4.   An easement for widening Hill Street and incidental purposes in the document recorded in Book 3108 of Deeds, Page 94.

5.   An easement for street and incidental purposes in the document recorded in Book 6408 of Deeds, Page 69.

6.   The terms and provisions contained in the document entitled "Covenant and Agreement" recorded August 08, 1994 as Instrument No. 94-1459601 of Official Records.

7.   The terms and provisions contained in the document entitled "Covenant and Agreement" recorded October 25, 1995 as Instrument No. 95-1733204 of Official Records.

8.   The terms and provisions contained in the document entitled "Covenant and Agreement" recorded August 09, 1996 as Instrument No. 96-1286812 of Official Records.

9.   The terms and provisions contained in the document entitled "Covenant and Agreement" recorded August 12, 1996 as Instrument No. 96-1293688 of Official Records.

10.  The terms and provisions contained in the document entitled "Covenant and Agreement" recorded August 04, 1997 as Instrument No. 97-1183829, 97-1183830 and 97-1183831 all of Official Records.

11.    A Deed of Trust to secure an original indebtedness of $28,720,000.00 recorded January 30, 2006 as Instrument No. 2006-0214046 of Official Records.

    Dated:                    January 27, 2006

    Trustor:                  Meruelo Maddux Properties- 760 S. Hill Street, LLC, a Delaware limited liability company

    Trustee:                  PRLAP, Inc., a North Carolina corporation

    Beneficiary:              Bank of America, N.A., a national banking association

The above deed of trust states that it is a construction deed of trust.

    Affects:                  The land and other property.

A document recorded October 19, 2007 as Instrument No. 2007-2382097 of Official Records provides that the deed of trust or the obligation secured thereby has been modified.

A document recorded October 26, 2007 as Instrument No. 2007-2427890 of Official Records provides that the above document was subordinated to the document recorded October 26, 2007 as Instrument No. 2007-2427890 of Official Records.

12.    Any statutory lien for labor or materials arising by reason of a work of improvement, as disclosed by a document recorded January 30, 2006 as Instrument No. 2006-0214046 of Official Records.

13.    The terms and provisions contained in the document entitled "Covenant and Agreement" recorded April 16, 2007 as Instrument No. 2007-0906227 of Official Records.

14.    The terms and provisions contained in the document entitled "Covenant and Agreement" recorded April 16, 2007 as Instrument No. 2007-0906228 of Official Records.

15.    The terms and provisions contained in the document entitled "Covenant and Agreement" recorded April 16, 2007 as Instrument No. 2007-0906229 of Official Records.

16.    The terms and provisions contained in the document entitled "Master Covenant and Agreement" recorded April 16, 2007 as Instrument No. 2007-0906230 of Official Records.

17.    A document entitled "Condominium Plan" recorded October 25, 2007 as Instrument No. 2007-2418144 of Official Records.

18.    Covenants, conditions, restrictions, easements, assessments, liens, charges, terms and provisions in the document recorded October 26, 2007 as Instrument No. 2007-2427890 of Official Records, which provide that a violation thereof shall not defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for value, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual orientation, marital status, ancestry, source of income or disability, to the extent such covenants, conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes. Lawful restrictions under state and federal law on the age of occupants in senior housing or housing for older persons shall not be construed as restrictions based on familial status.

Note: You may wish to contact the homeowners association referred to in the above document for information regarding assessments, transfer requirements or other matters.

19.    The terms and provisions contained in the document entitled "Covenant and Agreement Regarding Maintenance of Building" recorded November 27, 2007 as Instrument No. 2007-2608552 of Official Records.

20.    The terms, provisions and easement(s) contained in the document entitled "Easement and Memorandum of Agreement" recorded June 12, 2008 as Instrument No. 2008-1043010 of Official Records.

21.    Proceedings pending in the Bankruptcy Court of the Central District of the U.S. District Court, Los Angeles , entitled in re: Meruelo Maddux Properties - 760 South Hill Street LLC, debtor, Case No. 09-BK-13363-VK, wherein a petition for relief was filed on March 27, 2009.

The effect of a document entitled "Chapter II Bankruptcy Petition", recorded April 10, 2009 as Instrument No. 2009-0521129 of Official Records.

22.    Rights of parties in possession.

## INFORMATIONAL NOTES

1.    General and special taxes and assessments for the fiscal year 2010-2011

| Unit | APN | TRA | 1st Half, STATUS | Penalty | 2nd half, STATUS | Penalty |
|------|-----|-----|------------------|---------|------------------|---------|
| 1C | 5144-014-046 | 13264 | $8,760.33, PAID | $0.00 | $7,650.47, PAID | $0.00 |
| 2C | 5144-014-047 | 13264 | $7,098.48, PAID | $0.00 | $7,098.47, PAID | $0.00 |
| 201R | 5144-014-048 | 13264 | $1,284.48, PAID | $0.00 | $1,284.47, PAID | $0.00 |
| 202R | 5144-014-049 | 13264 | $1,721.67, PAID | $0.00 | $1,721.66, PAID | $0.00 |
| 203R | 5144-014-050 | 13264 | $1,646.50, PAID | $0.00 | $1,646.49, PAID | $0.00 |
| 204R | 5144-014-051 | 13264 | $1,859.08, PAID | $0.00 | $1,859.07, PAID | $0.00 |
| 301R | 5144-014-052 | 13264 | $934.44, PAID | $0.00 | $934.44, PAID | $0.00 |
| 302R | 5144-014-053 | 13264 | $1,284.47, PAID | $0.00 | $1,284.46, PAID | $0.00 |
| 303R | 5144-014-054 | 13264 | $797.00, PAID | $0.00 | $796.99, PAID | $0.00 |
| 304R | 5144-014-055 | 13264 | $1,109.23, PAID | $0.00 | $1,109.23, PAID | $0.00 |
| 305R | 5144-014-056 | 13264 | $596.88, PAID | $0.00 | $596.87, PAID | $0.00 |
| 306R | 5144-014-057 | 13264 | $582.17, PAID | $0.00 | $582.16, PAID | $0.00 |
| 307R | 5144-014-058 | 13264 | $594.65, PAID | $0.00 | $594.65, PAID | $0.00 |
| 308R | 5144-014-059 | 13264 | $893.52, PAID | $0.00 | $893.51, PAID | $0.00 |
| 309R | 5144-014-060 | 13264 | $644.45, PAID | $0.00 | $644.44, PAID | $0.00 |
| 310R | 5144-014-061 | 13264 | $1,379.16, PAID | $0.00 | $1,379.15, PAID | $0.00 |
| 401R | 5144-014-062 | 13264 | $1,155.01, PAID | $0.00 | $1,155.01, PAID | $0.00 |
| 402R | 5144-014-063 | 13264 | $806.36, PAID | $0.00 | $806.34, PAID | $0.00 |
| 403R | 5144-014-064 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 404R | 5144-014-065 | 13264 | $744.09, PAID | $0.00 | $744.08, PAID | $0.00 |
| 405R | 5144-014-066 | 13264 | $1,815.03, PAID | $0.00 | $1,815.01, PAID | $0.00 |
| 406R | 5144-014-067 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 407R | 5144-014-068 | 13264 | $781.45, PAID | $0.00 | $781.44, PAID | $0.00 |
| 408R | 5144-014-069 | 13264 | $1,678.07, PAID | $0.00 | $1,678.06, PAID | $0.00 |
| 501R | 5144-014-070 | 13264 | $893.52, PAID | $0.00 | $893.51, PAID | $0.00 |
| 502R | 5144-014-071 | 13264 | $955.79, PAID | $0.00 | $955.78, PAID | $0.00 |
| 503R | 5144-014-072 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 504R | 5144-014-073 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |

| 505R | 5144-014-074 | 13264 | $1,304.46, PAID | $0.00 | $1,304.45, PAID | $0.00 |
| 506R | 5144-014-075 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 507R | 5144-014-076 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 508R | 5144-014-077 | 13264 | $756.53, PAID | $0.00 | $756.52, PAID | $0.00 |
| 509R | 5144-014-078 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 510R | 5144-014-079 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 601R | 5144-014-080 | 13264 | $893.52, PAID | $0.00 | $893.52, PAID | $0.00 |
| 602R | 5144-014-081 | 13264 | $955.79, PAID | $0.00 | $955.78, PAID | $0.00 |
| 603R | 5144-014-082 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 604R | 5144-014-083 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 605R | 5144-014-084 | 13264 | $1,304.46, PAID | $0.00 | $1,304.45, PAID | $0.00 |
| 606R | 5144-014-085 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 607R | 5144-014-086 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 608R | 5144-014-087 | 13264 | $756.53, PAID | $0.00 | $756.52, PAID | $0.00 |
| 609R | 5144-014-088 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 610R | 5144-014-089 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 701R | 5144-014-090 | 13264 | $893.52, PAID | $0.00 | $893.52, PAID | $0.00 |
| 702R | 5144-014-091 | 13264 | $955.79, PAID | $0.00 | $955.78, PAID | $0.00 |
| 703R | 5144-014-092 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 704R | 5144-014-093 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 705R | 5144-014-094 | 13264 | $1,304.46, PAID | $0.00 | $1,304.45, PAID | $0.00 |
| 706R | 5144-014-095 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 707R | 5144-014-096 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 708R | 5144-014-097 | 13264 | $756.53, PAID | $0.00 | $756.52, PAID | $0.00 |
| 709R | 5144-014-098 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 710R | 5144-014-099 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 801R | 5144-014-100 | 13264 | $893.52, PAID | $0.00 | $893.52, PAID | $0.00 |
| 802R | 5144-014-101 | 13264 | $955.79, PAID | $0.00 | $955.78, PAID | $0.00 |
| 803R | 5144-014-102 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 804R | 5144-014-103 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 805R | 5144-014-104 | 13264 | $1,304.46, PAID | $0.00 | $1,304.45, PAID | $0.00 |
| 806R | 5144-014-105 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 807R | 5144-014-106 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 808R | 5144-014-107 | 13264 | $755.00, PAID | $0.00 | $754.99, PAID | $0.00 |
| 809R | 5144-014-108 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 810R | 5144-014-109 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 901R | 5144-014-110 | 13264 | $893.52, PAID | $0.00 | $893.52, PAID | $0.00 |
| 902R | 5144-014-111 | 13264 | $955.79, PAID | $0.00 | $955.78, PAID | $0.00 |
| 903R | 5144-014-112 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 904R | 5144-014-113 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 905R | 5144-014-114 | 13264 | $1,304.46, PAID | $0.00 | $1,304.45, PAID | $0.00 |
| 906R | 5144-014-115 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 907R | 5144-014-116 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 908R | 5144-014-117 | 13264 | $756.53, PAID | $0.00 | $756.52, PAID | $0.00 |
| 909R | 5144-014-118 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 910R | 5144-014-119 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 1001R | 5144-014-120 | 13264 | $893.52, PAID | $0.00 | $893.52, PAID | $0.00 |
| 1002R | 5144-014-121 | 13264 | $955.79, PAID | $0.00 | $955.78, PAID | $0.00 |
| 1003R | 5144-014-122 | 13264 | $769.01, PAID | $0.00 | $769.00, PAID | $0.00 |
| 1004R | 5144-014-123 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 1005R | 5144-014-124 | 13264 | $1,304.46, PAID | $0.00 | $1,304.45, PAID | $0.00 |
| 1006R | 5144-014-125 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 1007R | 5144-014-126 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 1008R | 5144-014-127 | 13264 | $756.53, PAID | $0.00 | $756.52, PAID | $0.00 |
| 1009R | 5144-014-128 | 13264 | $731.65, PAID | $0.00 | $731.64, PAID | $0.00 |
| 1010R | 5144-014-129 | 13264 | $1,229.73, PAID | $0.00 | $1,229.73, PAID | $0.00 |
| 1101R | 5144-014-130 | 13264 | $2,001.85, PAID | $0.00 | $2,001.84, PAID | $0.00 |
| 1102R | 5144-014-131 | 13264 | $1,640.71, PAID | $0.00 | $1,640.69, PAID | $0.00 |
| 1103R | 5144-014-132 | 13264 | $1,553.51, PAID | $0.00 | $1,553.50, PAID | $0.00 |
| 1104R | 5144-014-133 | 13264 | $2,113.93, PAID | $0.00 | $2,113.92, PAID | $0.00 |
| 1105R | 5144-014-134 | 13264 | $1,653.14, PAID | $0.00 | $1,653.14, PAID | $0.00 |
| 1106R | 5144-014-135 | 13264 | $719.17, PAID | $0.00 | $719.15, PAID | $0.00 |
| 1107R | 5144-014-136 | 13264 | $831.24, PAID | $0.00 | $831.22, PAID | $0.00 |
| 1108R | 5144-014-137 | 13264 | $1,815.03, PAID | $0.00 | $1,815.01, PAID | $0.00 |
| 1109R | 5144-014-138 | 13264 | $1,914.66, PAID | $0.00 | $1,914.65, PAID | $0.00 |
| 1110R | 5144-014-139 | 13264 | $1,491.29, PAID | $0.00 | $1,491.28, PAID | $0.00 |

2.   According to the latest available equalized assessment roll in the office of the county tax assessor, there is located on the land a(n) Commercial Structure known as 706 South Hill Street, Los Angeles, California.

3.  According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

    None

4.  This preliminary report/commitment was prepared based upon an application for a policy of title insurance that identified land by street address or assessor's parcel number only. It is the responsibility of the applicant to determine whether the land referred to herein is in fact the land that is to be described in the policy or policies to be issued.

The map attached, if any, may or may not be a survey of the land depicted hereon. First American Title Insurance Company  expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

*****To obtain wire instructions for deposit of funds to your escrow file please contact your Escrow Officer.*****

## CONDITIONS

### 1. DEFINITIONS
(a)"Mortgage" means mortgage, deed of trust or other security instrument.
(b)"Public Records" means title records that give constructive notice of matters affecting the title according to the state law where the land is located.

### 2. LATER DEFECTS
The Exceptions in Schedule B - Section Two may be amended to show any defects, liens or encumbrances that appear for the first time in the public records or are created or attached between the Commitment Date and the date on which all of the Requirements (a) and (c) of Schedule B - Section One are met. We shall have no liability to you because of this amendment.

### 3. EXISTING DEFECTS
If any defects, liens or encumbrances existing at Commitment Date are not shown in Schedule B, we may amend Schedule B to show them. If we do amend Schedule B to show these defects, liens or encumbrances, we shall be liable to you according to Paragraph 4 below unless you knew of this information and did not tell us about it in writing.

### 4. LIMITATION OF OUR LIABILITY
Our only obligation is to issue to you the Policy referred to in this Commitment, when you have met its Requirements. If we have any liability to you for any loss you incur because of an error in this Commitment, our liability will be limited to your actual loss caused by your relying on this Commitment when you acted in good faith to:

comply with the Requirements shown in Schedule B - Section One
or
eliminate with our written consent any Exceptions shown in Schedule B - Section Two.

We shall not be liable for more than the Policy Amount shown in Schedule A of this Commitment and our liability is subject to the terms of the Policy form to be issued to you.

### 5. CLAIMS MUST BE BASED ON THIS COMMITMENT
Any claim, whether or not based on negligence, which you may have against us concerning the title to the land must be based on this commitment and is subject to its terms.

164

**First American Title**

**Privacy Information**

**We Are Committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information - particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our subsidiaries we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its Fair Information Values.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**
Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's Fair Information Values. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Information Obtained Through Our Web Site**
First American Financial Corporation is sensitive to privacy issues on the Internet. We believe it is important you know how we treat the information about you we receive on the Internet.
In general, you can visit First American or its affiliates' Web sites on the World Wide Web without telling us who you are or revealing any information about yourself. Our Web servers collect the domain names, not the e-mail addresses, of visitors. This information is aggregated to measure the number of visits, average time spent on the site, pages viewed and similar information. First American uses this information to measure the use of our site and to develop ideas to improve the content of our site.
There are times, however, when we may need information from you, such as your name and email address. When information is needed, we will use our best efforts to let you know at the time of collection how we will use the personal information. Usually, the personal information we collect is used only by us to respond to your inquiry, process an order or allow you to access specific account/profile information. If you choose to share any personal information with us, we will only use it in accordance with the policies outlined above.

**Business Relationships**
First American Financial Corporation's site and its affiliates' sites may contain links to other Web sites. While we try to link only to sites that share our high standards and respect for privacy, we are not responsible for the content or the privacy practices employed by other sites.

**Cookies**
Some of First American's Web sites may make use of "cookie" technology to measure site activity and to customize information to your personal tastes. A cookie is an element of data that a Web site can send to your browser, which may then store the cookie on your hard drive.
FirstAm.com uses stored cookies. The goal of this technology is to better serve you when visiting our site, save you time when you are here and to provide you with a more meaningful and productive Web site experience.
-------------------------------------------------------------------

**Fair Information Values**
**Fairness** We consider consumer expectations about their privacy in all our businesses. We only offer products and services that assure a favorable balance between consumer benefits and consumer privacy.
**Public Record** We believe that an open public record creates significant value for society, enhances consumer choice and creates consumer opportunity. We actively support an open public record and emphasize its importance and contribution to our economy.
**Use** We believe we should behave responsibly when we use information about a consumer in our business. We will obey the laws governing the collection, use and dissemination of data.
**Accuracy** We will take reasonable steps to help assure the accuracy of the data we collect, use and disseminate. Where possible, we will take reasonable steps to correct inaccurate information. When, as with the public record, we cannot correct inaccurate information, we will take all reasonable steps to assist consumers in identifying the source of the erroneous data so that the consumer can assure the required corrections.
**Education** We endeavor to educate the users of our products and services, our employees and others in our industry about the importance of consumer privacy. We will instruct our employees on our fair information values and on the responsible collection and use of data. We will encourage others in our industry to collect and use information in a responsible manner.
**Security** We will maintain appropriate facilities and systems to protect against unauthorized access to and corruption of the data we maintain.

©2010 First American Financial Corporation. All rights reserved ● NYSE: FAF

## EXHIBIT A
### LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)

### 1. CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY - 1990
### SCHEDULE B

#### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy; or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable "doing business" laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by their policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### 2. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY FORM B - 1970
### SCHEDULE OF EXCLUSIONS FROM COVERAGE

1. Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions of area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.
2. Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.
3. Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

### 3. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY FORM B - 1970
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 2 above are used and the following exceptions to coverage appear in the policy.

SCHEDULE B

This policy does not insure against loss or damage by reason of the matters shown in parts one and two following:

Part One

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

### 4. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1970
### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
### SCHEDULE OF EXCLUSIONS FROM COVERAGE

1.  Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law ordinance or governmental regulation.
2.  Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.
3.  Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant, (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder, (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent insurance is afforded herein as to any statutory lien for labor or material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy).
4.  Unenforceability of the lien of the insured mortgage because of failure of the insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

### 5. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1970
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association Lenders Policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy, the exclusions set forth in paragraph 4 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage by reason of the matters shown in parts one and two following:

Part One

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

### 6. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy;
(b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

167

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at date of policy); or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable "doing business" laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.

7. Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
   (i) the transaction creating the interest of the insured mortgage being deemed a fraudulent conveyance or fraudulent transfer; or
   (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
   (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
   (a) to timely record the instrument of transfer; or
   (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## 7. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 6 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3. Easements, claims of easement or encumbrances which are not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

6. Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

## 8. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims, or other matters:
   (a) created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or

(e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
(i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or
(ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
(a) to timely record the instrument of transfer; or
(b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

## 9. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
Part One:
1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

## 10. AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL
### TITLE INSURANCE POLICY - 1987
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees and expenses resulting from:

1.  Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
    * land use                              * land division
    * improvements on the land              * environmental protection
    This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
    This exclusion does not limit the zoning coverage described in items 12 and 13 of Covered Title Risks.
2.  The right to take the land by condemning it, unless:
    * a notice of exercising the right appears in the public records on the Policy Date
    * the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking.
3.  Title Risks:
    * that are created, allowed, or agreed to by you
    * that are known to you, but not to us, on the Policy Date - unless they appeared in the public records
    * that result in no loss to you
    * that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4.  Failure to pay value for your title.
5.  Lack of a right:
    * to any land outside the area specifically described and referred to in Item 3 of Schedule A, or
    * in streets, alleys, or waterways that touch your land
    This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

## 11. EAGLE PROTECTION OWNER'S POLICY

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 1998
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 1998

Covered Risks 14 (Subdivision Law Violation). 15 (Building Permit). 16 (Zoning) and 18 (Encroachment of boundary walls or fences) are subject to Deductible Amounts and Maximum Dollar Limits of Liability

### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

169

1.    Governmental police power, and the existence or violation of any law or government regulation. This includes ordinances, laws and regulations concerning:

|  |  |
|---|---|
| a. building | b. zoning |
| c. land use | d. improvements on the land |
| e. land division | f. environmental protection |

This exclusion does not apply to violations or the enforcement of these matters if notice of the violation or enforcement appears in the Public Records at the Policy Date.
This exclusion does not limit the coverage described in Covered Risk 14, 15, 16, 17 or 24.

2.    The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not apply to violations of building codes if notice of the violation appears in the Public Records at the Policy Date.

3.    The right to take the Land by condemning it, unless:
a. a notice of exercising the right appears in the Public Records at the Policy Date; or
b. the taking happened before the Policy Date and is binding on You if You bought the Land without Knowing of the taking.

4.    Risks:
a. that are created, allowed, or agreed to by You, whether or not they appear in the Public Records;
b. that are Known to You at the Policy Date, but not to Us, unless they appear in the Public Records at the Policy Date;
c. that result in no loss to You; or
d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.d, 22, 23, 24 or 25.

5.    Failure to pay value for Your Title.

6.    Lack of a right:
a. to any Land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
b. in streets, alleys, or waterways that touch the Land.
This exclusion does not limit the coverage described in Covered Risk 11 or 18.

## 12. THIRD GENERATION EAGLE LOAN POLICY AMERICAN LAND TITLE ASSOCIATION EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (1/01/08)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or(iv) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
(b)Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.    Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.

5.    Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.

6.    Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest insured by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.

7.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.

8.    The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

## 13. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 2006
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
(i) the occupancy, use, or enjoyment of the Land;
(ii) the character, dimensions, or location of any improvement erected on the Land;
(iii) the subdivision of land; or
(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.  Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.

4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.

5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

(a) a fraudulent conveyance or fraudulent transfer, or

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

### 14. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 2006
#### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 13 above are used and the following exceptions to coverage appear in the policy.

#### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

### 15. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 2006
#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions, or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

(a) created, suffered, assumed, or agreed to by the Insured Claimant;

(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;

(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks 9 and 10); or

(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors rights laws, that the transaction vesting the Title as shown in Schedule A, is

(a) a fraudulent conveyance or fraudulent transfer; or

(b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### 16. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 2006
#### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 15 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
| --- | --- |
| Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Danning, Gill, Diamond & Kollitz, LLP, 2029 Century Park East, Third Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document described **SUPPLEMENTAL DECLARATION OF JOHN CHARLES MADDUX IN SUPPORT OF NOTICE OF MOTION AND OMNIBUS MOTION OF DEBTORS-IN-POSSESSION FOR [1] AUTHORITY TO SELL REAL PROPERTIES FREE AND CLEAR OF LIENS, [2] AUTHORITY TO ASSUME AND ASSIGN UNEXPIRED LEASES, [3] AUTHORITY TO ENTER INTO LICENSE AGREEMENT AND [4] WAIVER OF STAY PER F.R.B.P. 6004(h)** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 9, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Michael C Abel    mcabel@mac.com
Robert Abiri    rabiri@abiriszeto.com
Allison R Axenrod    allison@claimsrecoveryllc.com
Christopher J Bagnaschi    cb@cjblaw.com
John J Bingham    jbingham@dgdk.com
William C Bollard    eal@jbblaw.com, kmg@jbblaw.com;william@jbblaw.com
Peter Bonfante    peterbonfante@bsalawfirm.com
Erin N Brady    enbrady@jonesday.com
Julia W Brand    JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
Jennifer L Braun    jennifer.l.braun@usdoj.gov
Martin J Brill    mjb@lnbrb.com
Andrew W Caine    acaine@pszyjw.com
Howard Camhi    hcamhi@ecjlaw.com
Gary O Caris    gcaris@mckennalong.com, pcoates@mckennalong.com
James E Carlberg    jcarlberg@boselaw.com
Sara Chenetz    chenetz@blankrome.com, chang@blankrome.com
Jacquelyn H Choi    jchoi@swjlaw.com
Carol Chow    CChow@Stutman.com
Cynthia M Cohen    cynthiacohen@paulhastings.com
Ronald R Cohn    rcohn@horganrosen.com
Enid M Colson    emc@dgdk.com, ecolson@dgdk.com
Michaeline H Correa    mcorrea@jonesday.com
Emily R Culler    eculler@stutman.com

&#x2612;    Service information continued on attached page

| | |
|---|---|
| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
| Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

Ana Damonte    ana.damonte@pillsburylaw.com
Brian L Davidoff    bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
Susan S Davis    sdavis@coxcastle.com
Aaron De Leest    aed@dgdk.com
Daniel Denny    ddenny@gibsondunn.com
Jeffrey W Dulberg    jdulberg@pszjlaw.com
Marina Fineman    mfineman@stutman.com
Michael·G Fletcher    mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
Barry V Freeman    bvf@jmbm.com, bvf@jmbm.com
Donald L Gaffney    dgaffney@swlaw.com
Thomas M Geher    tmg@jmbm.com
Bernard R Given    bgiven@frandzel.com,
efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
Barry S Glaser    bglaser@swjlaw.com
Gabriel I Glazer    gglazer@stutman.com
Matthew A Gold    courts@argopartners.net
Eric D Goldberg    egoldberg@stutman.com
Michael J Gomez    mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
Michael I Gottfried    mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com
John A Graham    jag@jmbm.com
Ofer M Grossman    omglaw@gmail.com
Jodie M Grotins    jgrotins@mcguirewoods.com
Peter J Gurfein    pgurfein@lgbfirm.com, cscott@LGBFirm.com
Cara J Hagan    carahagan@haganlaw.org
Asa S Hami    ahami@sulmeyerlaw.com
Brian T Harvey    bharvey@buchalter.com, IFS_filing@buchalter.com
Robert A Hessling    rhessling@dgdk.com
William W Huckins    whuckins@allenmatkins.com, clynch@allenmatkins.com
Lance N Jurich    ljurich@loeb.com, kpresson@loeb.com
William H. Kiekhofer    wkiekhofer@mcguirewoods.com
Andrew F Kim    akim@mrllp.com
Michael S Kogan    mkogan@ecjlaw.com
Tamar Kouyoumjian    tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
Lewis R Landau    lew@landaunet.com
Dare Law    dare.law@usdoj.gov
Leib M Lerner    leib.lerner@alston.com
Matthew A Lesnick    matt@lesnicklaw.com
David E Leta    dleta@swlaw.com, wsmart@swlaw.com
Katherine Lien    katie.lien@sbcglobal.net, katielien@gmail.com
Steven K Linkon    slinkon@rcolegal.com
Robert M Llewellyn    michael.llewellyn@boe.ca.gov
Richard Malatt    rmalatt@gmail.com
Elmer D Martin    elmermartin@gmail.com
Elissa Miller    emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
Avi Muhtar    amuhtar@sulmeyerlaw.com
Iain A W Nasatir    inasatir@pszjlaw.com, jwashington@pszjlaw.com
Jeffrey P Nolan    jnolan@pszjlaw.com

☒    Service information continued on attached page

- 5 -

370849.01 [XP]    25195

| 1 | In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
|---|---|---|
| 2 | Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

3  Henry H Oh    henry.oh@dlapiper.com, janet.curley@dlapiper.com

4  Lawrence Peitzman    lpeitzman@pwkllp.com
   Eric S Pezold    epezold@swlaw.com, dwlewis@swlaw.com

5  Christopher E Prince    cprince@lesnickprince.com
   Michael H Raichelson    mhr@cabkattorney.com

6  Dean G Rallis Jr    drallis@sulmeyerlaw.com
   Kurt Ramlo    kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com

7  Craig M Rankin - DECEASED -    cmr@lnbrb.com
   Daniel H Reiss    dhr@lnbyb.com

8  Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
   Jeremy V Richards    jrichards@pszjlaw.com, bdassa@pszjlaw.com

9  James S Riley    tgarza@sierrafunds.com
   Martha E Romero    Romero@mromerolawfirm.com

10 Victor A Sahn    vsahn@sulmeyerlaw.com
   Steven J Schwartz    sschwartz@dgdk.com

11 Kenneth J Shaffer    jshaffer@stutman.com
   Zev Shechtman    zshechtman@dgdk.com, danninggill@gmail.com

12 David B Shemano    dshemano@pwkllp.com
   Jeffrey S Shinbrot    jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

13 Stephen Shiu    sshiu@swlaw.com
   Lori Sinanyan    lsinanyan@jonesday.com

14 Daniel H Slate    dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com

15 Surjit P Soni    surjit@sonilaw.com, gayane@sonilaw.com
   Bennett L Spiegel    blspiegel@jonesday.com

16 Tracie L Spies    tracie@haganlaw.org
   James Stang    jstang@pszjlaw.com

17 Catherine Steege    csteege@jenner.com
   Derrick Talerico    dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

18 John N Tedford    jtedford@dgdk.com, DanningGill@Gmail.com
   Damon Thayer    dthayer@jenner.com

19 James A Timko    jtimko@allenmatkins.com
   Alan G Tippie    atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com

20 United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
   Rouben Varozian    rvarozian@bzlegal.com

21 Jason L Weisberg    jason@gdclawyers.com
   William E Winfield    wwinfield@nchc.com

22 Jasmin Yang    jyang@swlaw.com
   Aleksandra Zimonjic    azimonjic@lgbfirm.com, kmoss@lgbfirm.com;cscott@lgbfirm.com

23

24

25

26

27

28

370849.01 [XP]    25195

| In re: MERUELO MADDUX PROPERTIES, INC. | CHAPTER: 11 |
|---|---|
| Debtor(s). | CASE NUMBER: 1:09-bk-13356-VK |

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On , I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on June 9, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

Served Via Personal Delivery
Honorable Victoria S. Kaufman, U.S. Bankruptcy Court, 21041 Burbank Boulevard,  Room 301, Woodland Hills, CA 91367

Via EMail
Ron Orr & Professionals, Inc: ronorresq@aol.com (Attorneys for Equity Committee)
Georgiana G. Rodiger: crodiger@rodigerlaw.com (Attorneys for Equity Committee)

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 10,  2011 | CINDY M. CRIPE | |
|---|---|---|
| Date | Type Name | Signature |

- 7 -

370849.01 [XP]    25195