JENNER & BLOCK LLP
Kenneth K. Lee  (Cal. Bar No. 264296)
633 West 5th Street, Suite 3500
Los Angeles, CA 90071-2054
Telephone:  213-239-5100
Facsimile:  213-239-5199
klee@jenner.com

JENNER & BLOCK LLP
Marc B. Hankin  (admitted *pro hac vice*)
919 Third Avenue, 37th Floor
New York, NY 10022-3908
Telephone:  212-891-1600
Facsimile:  212-891-1699
mhankin@jenner.com

RON ORR & PROFESSIONALS, INC.
Ronald S. Orr (Cal. Bar No. 54257)
578 Washington Blvd., #389
Marina Del Rey, CA  90292
Telephone:  310-301-4849
Facsimile:  310-301-6549
ronorresq@aol.com

RODIGER LAW OFFICE
Georgiana G. Rodiger, (Cal. Bar No. 94416)
272 South Los Robles Avenue
Pasadena, California  91101
Telephone:  626-793-7264
Facsimile:  626-793-7592
crodiger@rodigerlaw.com

Attorneys for Equity Committee

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OFCALIFORNIA
## SAN FERNANDOVALLEY DIVISION

| | |
|---|---|
| **IN RE:** | CASE NO. 09-bk-13356-VK |
| **MERUELO MADDUX PROPERTIES, INC., et al.[1]** | Chapter 11 |
| **Debtors and Debtors-in-Possession.** | **EQUITY COMMITTEE'S RESPONSE TO JOINT OBJECTION TO FORM OF CHARLESTOWN'S PROPOSED ORDER CONFIRMING THE CHARLESTOWN PLAN** |
| **Affects all debtors** | **Date:    June 13, 2011**<br>**Time:    1:30 p.m.**<br>**Place:   Courtroom 301**<br>**         21041 Burbank Boulevard**<br>**         Woodland Hills, CA 91367** |

---

[1]    This case is jointly administered with chapter 11 cases filed with the Court by numerous affiliated entities.  The Debtors and debtors-in-possession and their respective tax identification numbers are identified in the *Order Directing The Joint Administration Of Related Cases* entered by the Court on April 7, 2009 (docket entry no. 30).

1   The Official Committee of Equity Holders (the "Equity Committee") submits this response in

2   opposition to the Joint Objection To Form Of Charlestown's Proposed Order Confirming The

3   Charlestown Plan (docket entry no. 3190, the "Joint Objection" and the persons who have filed such

4   objection, the "Joint Objectors") and states as follows:

5                                **INTRODUCTION**

6   The Equity Committee submits this response to the Joint Objection in order to address (i) Mr.

7   Meruelo's standing to file an objection to the form of confirmation order, (ii) the implications of Mr.

8   Meruelo, Mr. Maddux and the Debtors having filed a joint objection, and (iii) a limited number of

9   points made by the Joint Objectors.  To the extent that the Joint Objectors have made constructive

10  suggestions as to appropriate language for the form of the order confirming the Charlestown Plan (the

11  "Charlestown Confirmation Order"), the Equity Committee understands that the Charlestown Plan

12  proponents will submit a revised order that incorporates such acceptable changes.

13  However, a number of the proposed changes are thinly-veiled attempts to hobble the

14  Charlestown Plan such that it can never be implemented, such that non-insider shareholders would be

15  severely prejudiced.  Foremost among those comments is that the Charlestown Plan proponents place

16  approximately $19.2 million into escrow, purportedly to protect the interests of Mr. Meruelo and Mr.

17  Maddux.  Putting aside the absence of any basis for the Charlestown Plan proponents to essentially

18  bond the projected appeal of the Charlestown Confirmation Order by Mr. Meruelo (even though he

19  has no standing to so appeal, given that he never objected to the confirmation of the Charlestown

20  Plan) and Mr. Maddux, the fact that the Debtors are expressly supporting the creation of such an

21  escrow[2] once again raise troubling questions as to who controls the Debtors, and for whose benefit

22  the Debtors act.

23  The Joint Objection is silent as to whether the MMPI Board of Directors determined it was

24  appropriate to file the Joint Objection, and whether that decision was made by the non-officer

25  members of the Board.  The Debtors have failed to address the Equity Committee's repeated

26  concerns that Mr. Meruelo and Mr. Maddux are causing the Debtors to act in such insiders' best

27  ───────────
    [2] *See* Joint Objection at 2 ("each of the Objecting Parties supports the entirety of the objection").

28                  Equity Committee's Response To Joint Objection To
          Charlestown's Proposed Order and Confirming The Charlestown Plan

interest, as opposed to the Debtors discharging their fiduciary duties as debtors in possession. This concern is only highlighted by the Court's determination that the Charlestown Plan is better than the Debtors' Plan because, among other things, the Charlestown Plan is more feasible, is more consensual and incorporates a reasonable settlement with the MTA. (Docket entry no. 3149 Ex. 1 (5/19/11 Tr.) at 102 and 105.) Furthermore, the Joint Objection fails to directly address this Court's pointed inquiry as to how the Debtors could assert that Mr. Meruelo and Mr. Maddux should receive more for 55% of their shares under the Charlestown Plan, when such additional distribution to these controlling insiders would prejudice all creditors and equity holders whose recoveries would depend on the success of the Reorganized Debtors. (*Id*. at 100 ("wouldn't the Debtor be better off paying [the insider shareholders] as little as possible?").)

If the Debtors have somehow determined to support Mr. Meruelo and Mr. Maddux's request for an enhanced distribution (which is not supported by either applicable law or the facts), the Debtors should have already demonstrated that the MMPI Board of Directors has determined – without the participation of Mr. Meruelo and Mr. Maddux – that such support is consistent with the discharge of the Debtors' fiduciary duty as a debtor in possession.[3]  Given that the Debtors have failed to make such a demonstration, the Joint Objection must be viewed for what it actually is: Mr. Meruelo and Mr. Maddux's last-ditch attempt to derail the Charlestown Plan. That the Debtors have chosen not to provide any assurance that their decision to join with Mr. Meruelo and Mr. Maddux was made by the non-officer members of the Board of Directors simply demonstrates the lengths to which Mr. Meruelo and Mr. Maddux will go in order to protect their own interests without regard for the non-insider shareholders, among others. The Equity Committee respectfully submits that such

---

[3]In addition to the Court's questioning of Debtors' counsel with respect to the propriety of the Debtors supporting the assertion that Mr. Meruelo and Mr. Maddux should be paid more than $0.45 per share for the approximately 55% of their shares that would be purchased under the Charlestown Plan, the Equity Committee directly raised the issue of the Board of Directors' involvement in the Debtors' decision to seek reconsideration of the Court's decision in its Opposition To Motion For Order: (1) Striking Evidence Improperly Received After The Close Of Trial Through Judicial Notice, And (2) Reconsidering Plan Confirmation Ruling, Or, In The Alternative, (3) Scheduling A Hearing To Consider Fair Value. (Docket entry no. 3181.)  Given that the Equity Committee filed such Opposition on the afternoon of June 6, 2010, the Debtors were on notice that the Board of Directors' decisions (or absence thereof) were relevant issues for this Court's consideration, and had ample opportunity to address such concerns before filing the Joint Objection on June 9.

2

efforts by the two controlling insiders of the Debtors should not be countenanced by this Court.

## RESPONSE

### I.    Mr. Meruelo Lacks Standing To Object.

Mr. Meruelo lacks standing to object to Charlestown's proposed form of confirmation order. Where a party fails to appear and object to a motion or other proceeding, "it cannot expect or implore the bankruptcy court to address the issues raised by the motion or proceeding for a second time." *In re Ray*, 597 F.3d 871, 874 (7th Cir. 2010); *see In re Commercial W. Fin. Corp.*, 761 F.2d 1329, 1334-35 (9th Cir. 1985) ("attendance and objection should usually be prerequisites to fulfilling the 'person aggrieved' standard").  Mr. Meruelo did not object to confirmation of the Charlestown Plan, and therefore cannot object to the form of order confirming such plan.

As the Equity Committee has previously noted,[4] Mr. Meruelo filed a joinder to the Debtors' and Mr. Maddux's "bullet-point objections" to the Charlestown Plan.  (*See* docket entry no. 2243.) However, this Court (though Judge Thompson) expressly ruled that a list of bullet-point objections "is not a substitution for the parties' formal written briefs in support of or in opposition to confirmation of plans."  (Docket entry no. 1987 at ¶ 9.)  Accordingly, Mr. Meruelo's joinder to the bullet point lists of objections cannot serve as an objection to the Charlestown Plan.

As Mr. Meruelo did not file an objection or raise an oral objection to the Charlestown Plan, Mr. Meruelo does not have standing to object to the proposed form of order confirming that plan. Mr. Meruelo has not demonstrated any hesitancy to speak up during the course of the confirmation hearing, whether to assert that an attorney cross examining him was precluded from doing so based on a purported conflict of interest (which this Court found did not exist), or to correct the pronunciation of his last name.  (*See, e.g.*, docket entry no. 3181 Kelly Decl. Ex. 1 (2/4/11 Tr.) at 179-83 (Mr. Meruelo, unrepresented by counsel, alleging that counsel was subject to a conflict of

---

[4] (*See* docket entry 3181 at 9-10.)  It is useful to note that Mr. Meruelo elected not to respond to this argument set forth in the Equity Committee's Objection to Reconsideration, even though that Objection was filed on June 6 (before the close of business), and the Joint Objection was filed on June 9.

interest).)    Accordingly, the Court should hold that Mr. Meruelo lacks standing to assert the objections set forth in the Joint Objection.

## II.    The Court Should Reject Certain Of The Proposed Language Changes.

The Equity Committee respectfully submits that there is no basis to make the following proposed changes suggested by the Joint Objectors.[5]  All references are to the blacklined draft of the order that was attached as Exhibit 3 to the Joint Objection.

- Page 1, Lines 4 & 5 (Incorporation of Findings and Conclusions) – It is entirely appropriate for the Charlestown Confirmation Order to incorporate the Findings and Conclusions to be issued by this Court in connection with the confirmation of the Charlestown Plan.  As the Joint Objection provides no basis for the deletion of the language in lines 4 and 5, it is difficult to understand what purpose would be served by the Confirmation Order not expressly incorporating the Findings and Conclusions.

- Page 11, Deletion of Paragraph 20 (Injunction Against Interference with Plan) – The Joint Objectors assert that the paragraph "Injunction Against Interference With Plan" should be replaced because it could be misinterpreted as enjoining parties from either appealing or seeking reconsideration of the Charlestown Confirmation Order.  This argument is patently ridiculous, as it is inconceivable that a trial-level court could issue an order that would prevent the Debtors or any other party who has objected to the Charlestown Plan from lodging an appeal of the Charlestown Confirmation Order.  Given that there is no rational basis for the Joint Objectors' reading of the proposed language, there is no reason to change the proposed language.

- Page 15, Paragraph 28 (Professional Fees) – Given that final fee applications are due forty-five days after the Effective Date, there is no reason for this Court to modify its prior order (docket no. 2904) that, at the Debtors' request, suspended payment of interim payments.  As a

---

[5]The Equity Committee understands that the Charlestown Plan proponents may separately object as to proposed language comments that are not addressed herein.  Accordingly, the foregoing is not meant to be a conclusive list of all comments that the Equity Committee believes are inappropriate.

4

matter of procedural due process, it is inappropriate for the Joint Objectors to effectively request that this Court modify its prior order pursuant to an objection to the form of confirmation order.[6]

- Pages 18 & 21, Deletion of Paragraphs 39 & 49 (Consummation of Plan and Stay of Confirmation Order) – By seeking the deletion of these paragraphs, the Debtors seek to further delay their emergence from chapter 11 to the detriment of creditors and non-insider equity holders.  While the Equity Committee cannot speak for creditors, it is reasonable to assume that creditors (particularly unsecured creditors) would prefer to receive their distributions sooner, rather than later.  Given that this Court issued its ruling from the bench confirming the Charlestown Plan on May 19, 2011, any party wishing to appeal the Charlestown Confirmation Order has already has over two weeks to prepare such appeal.[7]  In other words, any such party has already received more time to prepare their appeal (including a motion for a stay) than they would have had the Court entered a confirmation order on May 19 and not waived Rule 3020(e)'s requirement.  Moreover, the facts of these cases suggest that waiver of Rule 3020(e) would be appropriate.  Given the manner in which the Debtors have acted, both before and after this Court issued its May 19 bench ruling confirming the Charlestown Plan, allowing the Debtors' present management to linger on in control will only serve to make it more difficult for the prevailing plan proponent to implement its plan.  This is especially true given the Debtors' present management's insistence on continuing to attempt make critical business decisions regarding the Debtors' assets even after this Court has chosen not to confirm their plan.  (*See* docket entry nos. 3144, 3173 and 3186 (Debtors' motions seeking to sell off numerous assets of the estate).)  Courts in this district and

---

[6] Further, this request raises substantial questions as to whether the Debtors' professionals—like the insiders—appear to place their own interests ahead of their fiduciary duties to the estates.

[7] For the reasons set forth above, Mr. Meruelo does not have the ability to appeal the Charlestown Confirmation Order. *See In re Schultz Mfg. & Fabricating Co.*, 956 F.2d 686, 690 (7th Cir. 1992) ("Only a 'person aggrieved' has standing to appeal an order of the bankruptcy court.  Prerequisites for being a 'person aggrieved' are attendance  and objection at a bankruptcy court proceeding.") (internal citations omitted).

5

elsewhere regularly waive Rule 3020(e)'s stay requirement in confirmation orders. *See* Kelly Decl. at Ex. 1 at ¶ 19 (waiving stay in confirmation order entered in *In re Valley Health System*, Case No. 6:07-BK-18293-PC and prepared by one of the Debtors' counsel)). The Debtors have repeatedly sought and received sale orders that have waived Rule 6004(h)'s stay provision, which is analogous to that at issue here. (Docket entry nos. 134, 334, 613, 614, 3044.) Accordingly, there are ample facts in the record to support a finding that waiving the stay in these cases would be in the best interests of the Debtors' estates (as opposed to the interests of Mr. Meruelo and Maddux).

- Pages 21 & 22, Paragraphs 47 & 48 (Preservation of Certain Issues) – Simply put, there is no basis for the inclusion of these new paragraphs, which would require the Charlestown Plan proponents to place approximately $19.2 million into escrow for purposes of bonding the projected appeals of Mr. Meruelo and Mr. Maddux. Even if Mr. Meruelo had standing to appeal the Charlestown Confirmation Order (which he does not), and even if such controlling insiders' argument that they were entitled to more than $0.45 per share for 55% of their shares had merit (which it does not), there is no persuasive or controlling precedent that requires a plan proponent to establish such an escrow. Given that requiring the Charlestown Plan proponents to place such funds in escrow is not contemplated in the business plan, this objection is nothing more than a blatant attempt to prevent the Charlestown Plan from becoming effective. Given this Court's prior inquiries during the May 19 hearing as to the propriety of the Debtors seeking additional compensation for Mr. Meruelo and Mr. Maddux, it is simply astounding that the Debtors would have joined in this request without first having demonstrated that the MMPI Board of Directors had determined – without the participation of Mr. Meruelo and Mr. Maddux – that such request was appropriate. Given that such determination would have been tantamount to a breach of fiduciary duty, it is not surprising that the Debtors fail to make any disclosures as to the Board of Directors' role with respect to the Debtors' decision to file the Joint Objection. But having decided to move forward

6

without the benefit of any appropriate Board action, the Equity Committee can only respectfully request that this Court take such action as is appropriate to protect the interests of non-insider shareholders.  Given the recent actions of the Debtors, the Equity Committee believes that the only practical means to provide such protection is to enter the Charlestown Confirmation Order as promptly as is reasonably practicable and to authorize the proponents to cause the effective date to occur as quickly as possible.

**CONCLUSION**

For the above reasons, the Equity Committee respectfully requests that the Court enter an order confirming the Charlestown Plan in the form submitted by the Charlestown Plan proponents.

Dated: June 12, 2011

**JENNER & BLOCK LLP**
By     _/s/ Marc B. Hankin_
Kenneth K. Lee  (Cal. Bar No. 264296)
Marc B. Hankin  (admitted _pro hac vice_)
Attorneys for Equity Committee

Equity Committee's Response To Joint Objection To
Charlestown's Proposed Order and Confirming The Charlestown Plan

## DECLARATION OF MICHAEL J. KELLY

STATE OF ILLINOIS        )
                         )        SS:
COUNTY OF COOK           )

Michael J. Kelly, being duly sworn, deposes and says:

1.      I am an associate of the firm of Jenner & Block LLP.  I am an attorney duly licensed in and am a member in good standing of the bar for the State of Illinois and am admitted to practice before the United States District Court for the Northern District of Illinois and am admitted *pro hac vice* to practice before this Court.  I submit this Declaration in support of the Equity Committee's Response To Joint Objection To Form Of Charlestown's Proposed Order Confirming The Charlestown Plan.

2.      Attached hereto as Exhibit 1 is a true and correct copy of a plan confirmation order entered in *In re Valley Health System,* No. 6:07-BK-18293-PC (Bankr. C.D.Cal) on April 26, 2010.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

Executed on June 12, 2011, in Chicago, Illinois.

                             */s/ Michael J. Kelly*        
                            Michael J. Kelly

# **EXHIBIT 1**

FILED & ENTERED

APR 26 2010

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY craig       DEPUTY CLERK

1 | CHARLES D. AXELROD – State Bar No.39507
GARY E. KLAUSNER – State Bar No. 69077
2 | H. ALEXANDER FISCH – State Bar No. 223211
MARINA FINEMAN – State Bar No. 193065
3 | NEETA MENON – State Bar No. 254736
STUTMAN, TREISTER & GLATT
4 | PROFESSIONAL CORPORATION
1901 Avenue Of The Stars, 12th Floor
5 | Los Angeles, CA  90067
Telephone:  (310) 228-5600
6 | Facsimile:  (310) 228-5788
caxelrod@stutman.com; gklausner@stutman.com;
7 | mfineman@stutman.com; nmenon@stutman.com

8 | Chapter 9 Counsel for Valley Health System

9 | DANIEL K. SPRADLIN - State Bar No. 82950
dspradlin@wss-law.com
10 | M. LOIS BOBAK - State Bar No. 127540
lbobak@wss-law.com
11 | WOODRUFF, SPRADLIN & SMART, APC
555 Anton Boulevard, Suite 1200
12 | Costa Mesa, California 92626-7670
Telephone:  (714) 558-7000
13 | Facsimile:   (714) 835-7787

14 | Special Counsel for Debtor and Defendant Valley Health System

15 | Counsel continued on next page.

16 |              UNITED STATES BANKRUPTCY COURT

17 |        CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

18

19 | In re                                  | CASE NO. 6:07 -BK-18293-PC

20 | VALLEY HEALTH SYSTEM, a California      | CHAPTER 9
Local Health Care District,
21 |                Debtor.                 | ADV. PROC. NO. 6:09-AP-01708-PC

22 | PRIME HEALTHCARE MANAGEMENT,            | ORDER (i) CONFIRMING FIRST
INC., a California corporation, et al.   | AMENDED PLAN FOR ADJUSTMENT
23 |                                         | OF DEBTS OF VALLEY HEALTH
                                          | SYSTEM DATED DECEMBER 17, 2009,
24 |                Plaintiffs,              | AS MODIFIED FEBRUARY 19, 2010,
                                          | AND (ii) GRANTING JUDGMENT FOR
25 | v.                                      | VALLEY HEALTH SYSTEM IN EACH
                                          | CHALLENGE ACTION
26 | VALLEY HEALTH SYSTEM, a California
Local Healthcare District, et al., DOES 1-10,
27 |
                Defendants.
28

537207v2

1  R.D. KIRWAN (SBN 046259)
   PETER J. GURFEIN (SBN 127173)
2  CHAD STEGEMAN (SBN 225745)
   DEVIN STONE (SBN 260326)
3  AKIN GUMP STRAUSS HAUER & FELD LLP
   2029 Century Park East, Suite 2400
4  Los Angeles, California 90067
   Telephone:  310.229.1000
5  Facsimile:  310.229.1001
   Email:      rkirwan@akingump.com
6              pgurfein@akingump.com
               cstegeman@akingump.com
7              dstone@akingump.com

8  Attorneys for Real Party in Interest in Adversary Proceeding
   Physicians for Healthy Hospitals, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The hearing ("Confirmation Hearing") to consider confirmation of the First Amended

2  Plan For The Adjustment of Debts of Valley Health System Dated December 17, 2009 ( as modified

3  by the Plan Modifications defined in ( xii) below, the "Plan") commenced before the undersigned

4  Judge of the United States Bankruptcy Court for the Central District of California, Riverside

5  Division (the "Court") in Courtroom 304 located at 3420 Twelfth Street, Riverside, California, on

6  February 9, 2010, at 10:30 a.m. and continued from time to time thereafter until its conclusio n on

7  February 26, 2010.  Appearances are as set forth in the record of the hearing dates.

8    Pursuant to this Court's order of December 23, 2009 ("Order Approving Disclosure

9  Statement") [Docket No. 694], the Stipulation to Withdraw Renewed Motion for Relief from Stay,

10  Dismiss Appeal and to Adjudicate Issues Raised by Challenge Actions ("Stipulation to Withdraw

11  Renewed Motion for Relief from Stay") [Docket No. 753] and the Order Approving Stipulation to

12  Withdraw Renewed Motion for Relief from Stay, Dismiss Appe al and to Adjudicate Issues Raised

13  by Challenge Actions, entered by this Court on January 22, 2010 ("Order Approving Stipulation to

14  Withdraw Renewed Motion for Relief from Stay") [Docket No. 755], the Confirmation Hearing was

15  consolidated with trial of the various claims and causes of actions which were described in the

16  Disclosure Statement as the "Challenge Actions."  Accordingly, the findings of fact and conclusions

17  of law made by this Court on the record in connection with the Plan Confirmation Hearing and the

18  Memorandum Decision filed and entered by this Court on April 8, 2010 address and fully adjudicate

19  all claims, causes of action and issues which were raised, or could have been raised , in connection

20  with the Plan and the Challenge Actions.

21    Having considered, among other things:

22    (i)    the Plan;

23    (ii)    the disclosure statement, approved by the Order Approving Disclosure

24  Statement, entered December 23, 2009, finding and holding, among other things, that the disclosure

25  statement contained adequate information for use in connection with the solicitation of acceptances

26  of the Plan, including all of the exhibits thereto (the "Disclosure Statement");

27    (iii)    the declarations of service relative to the dissemination of the Plan, Disclosure

28  Statement, ballots and notice of the date and time of the confirmation hearing and the deadlines to

1   vote on and object to confirmation of the Plan, including the Affidavit of Service and Vote

2   Certification of Robert Stevens of Globic Advisors, Inc., the Declaration of Nick Eller of the Press

3   Enterprise regarding publication in that newspaper of notice regarding the hearing on confirmation

4   of the Plan, and the affidavit of Joyce Carter of Bowne Communications;

5          (iv)    Declaration of Kendra A. Johnson to which is attached the ballot tabulation

6   report of the Voting Agent;

7          (v)    the objections (including those of Beckman Coulter, Inc. "BCI"), Key

8   Equipment Finance Inc ("Key"), U.S. Bank National Association, as Indenture Trustee (the

9   "Indenture Trustee"), and Prime Healthcare Services, Inc. and its associates (collectively, "Prime")

10  and the Supplemental Objection of Prime, responses to objections, supporting declarations

11  (including those of William Cherry, M.D., Michael B. Foutz, and Todd E. Swanson) and  all

12  pleadings and memoranda of points and authorities filed in support of, or in opposition to,

13  confirmation of the Plan, the withdrawals in open court of the confirmation objections of the

14  Indenture Trustee, BCI and Key (leaving Prime as the sole objector to confirmation);

15         (vi)    the pleadings and related documents filed in connection with the acquisition

16  by Prime of a Class 2A Claim in the approximate amount of $4,300 on January 22, 2010;

17         (vii)    the oral motion to strike the Supplemental Objection of Prime as having been

18  filed after the Court ordered deadline for filing objections, which motion was granted;

19         (viii)    the motions for protective orders by the Debtor regarding the scope of

20  discovery, the oppositions filed by Prime to the protective order motions, any stipulation reached by

21  the parties regarding protective orders and voluntary limitations on the scope of discovery, this

22  Court's rulings on the protective order motions and on any discovery limitation stipulation presented

23  to this Court for its approval;

24         (ix)    the argument of counsel at the Confirmation Hearing;

25         (x)    the testimony, documentary evidence and other items admitted into evidence

26  at the Confirmation Hearing;

27

28

1            (xi)     the Administrative Record prepared and certified by Debtor in considering

2    whether to approve the sale of substantially all of its assets to Physicians for Healthy Hospitals, Inc.

3    ("PHH");

4            (xii)    the Plan modifications filed by the Debtor on February 19, 2010 (the "Plan

5    Modifications"); and

6            (xiii)   the pleadings, evidence and argument presented by the parties prior to and at

7    the trial of the Challenge Actions;

8            Having separately issued, on the record, its findings of fact and conclusions of law

9    regarding the confirmation requirements of section 943(b), finding herein that all amounts to be paid

10    for services or expenses in the case or incident to the Plan have been fully disclosed and are

11    reasonable and concluding that compliance has been made with all aspects of section 943(b)(1)-(7)

12    of the Bankruptcy Code, including those aspects of title 11 made applicable by sections 103(e) and

13    901 of title 11, and that judgment in each of the Challenge Actions must be granted in favor of the

14    Debtor and/or PHH, as the case may be, the Court hereby

15         **ORDERS:**

16            1.     Pursuant to Bankruptcy Code section 943, the Plan is confirmed.

17            2.     All Plan objections, not expressly withdrawn, are overruled on the merits.

18            3.     Pursuant to Bankruptcy Code section 944: (1) the Debtor is discharged as of

19    the effective date of the Plan ("Effective Date") from all pre-Effective Date debts, obligations and

20    claims other than those excepted from discharge by the Plan or this Order or those owed to an entity

21    that, before confirmation of the Plan, had neither notice nor actual knowledge of the Debtor's

22    chapter 9 case, and (2) the provisions of the Plan bind any creditor whether or not (a) a proof of such

23    creditor's claim was filed or is deemed to have been filed, (b) such claim is allowed or (c) such

24    creditor has accepted the Plan.

25            4.     The Court retains jurisdiction over the Debtor's chapter 9 case in the manner

26    provided for in the Plan.

27            5.     All entities that have, hold or may hold claims arising prior to the Effective

28    Date, including any plaintiffs or petitioners in any of the Challenge Actions, are permanently

537207v2                    3

enjoined, from and after the Effective Date, from (a) commencing or continuing, in any manner, any action or other proceeding of any kind with respect to any such pre-Effective Date claim or cause of action against the Debtor or PHH or that would interfere with the closing of the transactions contemplated by the Plan or otherwise delay or impede the full implementation of the Plan, (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree or order against the Debtor with respect to such pre-Effective Date claims or causes of action, (c) creating, perfecting or enforcing any lien or encumbrance of any kind against the Debtor or its property or interests in property, and (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due to the Debtor with respect to any such pre-Effective Date claim or cause of action except as otherwise permitted by section 553 of the Bankruptcy Code; provided, however, the injunction and discharge provided for in the Plan or in this Order shall not preclude Aetna from exercising any otherwise valid and enforceable right of setoff or recoupment in connection with the Post-Petition Contract.[1]

6.      All injunctions or stays provided for in the Debtor's chapter 9 case pursuant to sections 105, 362, or 922 of the Bankruptcy Code shall remain in full force and effect until the last to occur of the Effective Date or the date on which the discharge of the Debtor occurs.

7.      The Debtor and all of its officers, directors, employees, and professionals are authorized to take any and all actions deemed necessary or reasonable by them in the exercise of their business judgment to cause the consummation and implementation of all transactions contemplated by the Plan to occur and to otherwise assure that the Plan's provisions are implemented as provided for in the Plan.  In particular, the Debtor is authorized to take all actions necessary to close and implement the sale of substantially all of the Debtor's assets to PHH pursuant to the terms of the Asset Sale Agreement entered into between the Debtor and PHH as of October 14, 2009 ("ASA").

---

[1]    "Aetna" and "Post Petition Contract" are defined in the Settlement Agreement between Aetna and the Debtor entered into as of March 10, 2010.

537207v2                                4

8.      In the event that the Aetna Post-Petition Contract is not assumed by the
Debtor and assigned to PHH prior to or as of the Effective Date, then, or before the Effective Date,
the Debtor shall deposit the sum of $750,000 into a segregated account which shall be used solely
for the purpose of satisfying any allowed Administrative Claim of Aetna relating to the Post-Petition
Contract (herein the "Aetna Reserve Fund").  The Debtor's creation of the Aetna Reserve Fund shall
not reduce or limit any obligation by PHH in connection with the ASA, including, without
limitation, PHH's obligations, pursuant to ¶ 1.2.4 of the ASA.  At such time as a determination has
been made by the Bankruptcy Court in a Final Order, or pursuant to agreement of the parties,
regarding Aetna's administrative claim, if any, the monies in the Aetna Reserve Fund shall be
disbursed either: (a) to Aetna, pursuant to court order or agreement of the parties, or (b) to the extent
not necessary to satisfy any Aetna administrative claim, to PHH.

9.      The Effective Date of Plan shall occur on the first day after which the
conditions set forth in section XII.B of the Plan are satisfied or waived.

10.      The provisions of the Plan and this Order shall bind the Debtor and all its
creditors and all of the petitioners and plaintiffs in the Challenge Actions regardless of:  (a) whether
or not the claims of such creditors or claims and causes of action of such plaintiffs and petitioners in
the Challenge Actions are expressly provided for under the Plan; (b) whether or not such creditors or
petitioners and plaintiffs in the Challenge Actions have accepted the Plan; and (c) whether or not
such creditors or plaintiffs and petitioners in the Challenge Actions have filed proofs of claim in this
case.

11.      All executory contracts and unexpired leases of the Debtor, to the extent not
previously assumed or rejected, are rejected as of the Effective Date or such other date as set forth in
any order regarding the rejection of any of the Debtor's executory contracts or unexpired leases.  The
bar date for filing a proof of claim based on the rejection of an executory contract or unexpired lease
which is rejected pursuant to the terms of this Order, shall be thirty (30) days from service of notice
of entry of this Order or as otherwise provided in any order regarding the rejection of any of the
Debtor's executory contracts or unexpired leases.

12.     From and after the Effective Date, any person who desires notice of any pleadings or documents filed with the Court, or any hearing in the Court, or other matter as to which the Bankruptcy Code requires notice to be provided, shall file a request for post-confirmation notice and shall serve the request on the Debtor.

13.     Following the Effective Date, the adjudication of claims and the distribution of payments to Class 2A creditors under the Plan shall be administered by the Disbursing Agent to be appointed by the Creditors Committee prior to the Effective Date.  The costs and fees incurred for and by the Disbursing Agent shall be paid out of the funds paid to the Class 2A creditors by PHH pursuant to the ASA.

14.     If and to the extent that there is any direct conflict between the terms of the Plan and the terms of this Order, the terms of this Order shall govern and control.  The failure to reference any particular provision of the Plan in this Order shall have no effect on the binding nature, enforceability or legality of such provision and such provision shall have the same binding effect, enforceability and legality of any other provision of the Plan.

15.     This Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any state or any other governmental or regulatory authority or governmental unit with respect to the implementation or consummation of the Plan or any documents, instruments or agreements referred to in or contemplated by the Plan and any amendments or modifications thereto and any other acts referred to in or contemplated by the Plan, the Disclosure Statement and any documents, instruments, or agreements and any amendments or modifications thereto and all actions taken by the Debtor, PHH or any other person or entity in connection with the implementation of the Plan, including the Closing of the ASA shall be deemed to have been taken in good faith and in accordance with all applicable law.

16.     All requests for payment of any administrative claims (other than those administrative claims assumed by PHH pursuant to the ASA and claims for professional fees) must be filed and served on the Debtor and Creditors Committee no later than sixty days after the Effective Date (the "Administrative Claims Bar Date"); provided however, that the Administrative Claims Bar Date may be extended from time to time upon the mutual agreement of the Debtor and

1    Committee or pursuant to order of the Bankruptcy Court.  Holders of administrative claims that are

2    required to file a request for payment of such administrative claims that do not file such a request by

3    the applicable Administrative Claims Bar Date will be forever barred from asserting such

4    administrative claims against the Debtor or its property.

5              17.    Judgment in each of the Challenge Actions, as described in this Court's

6    Memorandum Decision filed and entered on April 8, 2010, is granted in favor of the Debtor and

7    PHH.  The Debtor and PHH are authorized and directed to file any documents or pleadings in any of

8    the Challenge Actions that are necessary to inform any court in which any such action was pending,

9    that such action has been resolved by this Court and that judgment has been entered in favor of the

10   Debtor and PHH.

11             18.    This Court's judgment in favor of the Debtor and PHH in the Challenge

12   Actions is a determination on the merits of each of the claims and causes of action that were or could

13   have been adjudicated in each of the Challenge Actions and this judgment shall be preclusive as to

14   all issues that were raised or could have been raised by the plaintiffs and petitioners in each of said

15   Challenge Actions such that each of the plaintiffs and petitioners shall be barred by *res judicata* and

16   collateral estoppel from attempting to assert any claims or causes of actions described in or arising in

17   or relating to any of the transactions set forth or which could have been set forth in the Challenge

18   Actions in any future actions or proceedings against the Debtor or PHH.  Judgment on each of the

19   Challenge Actions includes, but is not limited to, the following:

20             a.    Debtor's Board of Directors did not violate a fiduciary duty by

21   approving the Asset Sale Agreement with an unconditional "no shop" provision.  Neither California

22   law nor federal bankruptcy law require Debtor to engage in competitive bidding or "shop" its assets.

23   Judgment is therefore entered in Debtor's and PHH's favor that Debtor and its Board of Directors

24   upheld their fiduciary duties in completing the proposed sale of assets.

25             b.    No member of Debtor's Board of Directors was "financially interested"

26   in the Asset Sale Agreement, or attendant contracts, in violation of California Government Code

27   section 1090.  Even if one of the board members possessed an "interest" in the asset sale, such

28   interest would be too remote and speculative to run afoul of Section 1090 of the Government Code.

1    Therefore, judgment is entered in favor of Debtor and PHH that no member of the Debtor's Board of

2    Directors was financially interested in any way in the proposed sale.

3                    c.    The proposed asset sale provides "fair market value" for Debtor's

4    assets under California Health & Safety Code § 32121(p)(1).  Debtor's appraiser – an independent

5    consultant with expertise in methods of appraisal and valuation – in accordance with applicable

6    governmental and industry standards for appraisal and valuation, determined that PHH offered and

7    Debtor would receive fair and reasonable consideration for its assets.  Thus, judgment is entered in

8    Debtor's and PHH's favor.  The proposed transfer of assets to PHH for the consideration offered

9    constitutes a transfer of the assets at fair market value.

10                    d.    Debtor's sale of assets to PHH pursuant to the ASA is not a "project"

11   for the purposes of the California Environmental Quality Act ("CEQA").  There is no evidence in the

12   administrative record that Debtor's approval of the ASA will potentially cause either a direct

13   physical change in the environment or a reasonably foreseeable indirect physical change in the

14   environment.  To the contrary, Debtor's approval of the ASA results in nothing more than a change

15   in ownership of Debtor's assets.  Accordingly, Debtor's sale of assets to PHH was not subject to

16   CEQA.  Furthermore, because plaintiffs had ample opportunity during the administrative

17   proceedings to raise their objections, but failed to do so, they are now barred from challenging the

18   transaction pursuant to CEQA.  Judgment is therefore entered in Debtor's and PHH's favor that

19   Debtor did not violate CEQA in connection with the proposed asset sale.

20                    e.    Debtor's proposed sale of assets to PHH did not violate California

21   Government Code section 65402.  Plaintiffs failed to submit evidence of the existence of general

22   plans in the applicable jurisdictions that would trigger the advisory procedures specified in

23   Government Code section 65402.  Further, even if Government Code section 65402 was indeed

24   applicable, Debtor could still submit the proposed sale of its assets to the appropriate agency at any

25   time prior t a transfer of the assets to PHH.  Because plaintiffs had ample opportunity during the

26   administrative proceedings to raise their objections, but failed to do so, they are now barred from

27   challenging the transaction pursuant to Government Code section 65402.  Judgment is therefore

28   entered in Debtor's and PHH's favor that Debtor did not violate Government Code section 65402.

1              f.      Debtor's sale of assets to PHH does not require approval by the Local

2 Agency Formation Commission ("LAFCO") under California Government Code § 56824.12.  The

3 proposed sale of assets to PHH and the Plan do not constitute a "change of organization" within the

4 Government Code and in any event is controlled by the provisions of California Health & Safety

5 Code § 32121(p)(1).  Therefore judgment is entered in Debtor's and PHH's favor that Debtor was not

6 required to seek LAFCO approval before or after the proposed sale of assets to PHH.

7           19.     This Order shall be effective upon entry on the Court's docket, and the stay

8 imposed by Bankruptcy Rule 3020(e) shall not apply.

Presented by:

/s/ *H. Alexander Fisch*
CHARLES D. AXELROD
GARY E. KLAUSNER
H. ALEXANDER FISCH
NEETA MENON
STUTMAN, TREISTER & GLATT
PROFESSIONAL CORPORATION

Chapter 9 Counsel for VALLEY HEALTH SYSTEM

###

DATED: April 26, 2010

_____
United States Bankruptcy Judge

| In re:<br>MERUELO MADDUX PROPERTIES, INC.<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER: 1:09-bk-13356-VK |
| --- | --- |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
353 N.Clark Street, Chicago, IL 60654

A true and correct copy of the foregoing document described as :**EQUITY COMMITTEE'S RESPONSE TO**

**[1] JOINT OBJECTION TO FORM OF CHARLESTOWN'S PROPOSED ORDER CONFIRMING THE CHARLESTOWN PLAN (DOCKET ENTRY NO. 3144); [2] JOINT OBJECTION TO FORM OF CHARLESTOWN'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER CONFIRMING THE CHARLESTOWN PLAN (DOCKET ENTRY NO. 3190)**
 will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document.  On 6/12/2011 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

⊠  Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On 6/12/2011 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

⊠  Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on  I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

⊠  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 6/12/2011 | Toi Hooker | /s/ Toi Hooker |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                    **F 9013-3.1**