1  GARY E. KLAUSNER (State Bar No. 69077)
   *GKlausner@stutman.com*
2  MARINA FINEMAN (State Bar No. 193065)
   *MFineman@stutman.com*
3  STUTMAN, TREISTER & GLATT
4  PROFESSIONAL CORPORATION
   1901 Avenue of the Stars, 12th Floor
5  Los Angeles, CA  90067
   Telephone: (310) 228-5600
6  Facsimile: (310) 228-5788

7  JOHN N. TEDFORD, IV (State Bar No. 205537)
   *JTedford@DGDK.com*
8  DANNING GILL, DIAMOND & KOLLITZ, LLP
9  2029 Century Park East, Third Floor
   Los Angeles, CA 90067
10 Telephone:  (310) 277-0077
   Facsimile:  (310) 277-5735
11
   Attorneys for Meruelo Maddux Properties, Inc.,
12 and affiliated Debtors and Debtors-in-Possession

13 LEE R. BOGDANOFF (State Bar No. 119542)         LAWRENCE PEITZMAN (State Bar No. 62379)
   *LBogdanoff@KTBSLaw.com*                         *LPeitzman@PWKLLP.com*
14 WHITMAN L. HOLT (State Bar No. 238198)           DAVID B. SHEMANO (State Bar No. 176020)
   *WHolt@KTBSLaw.com*                              *DShemano@PWKLLP.com*
15 KLEE, TUCHIN, BOGDANOFF & STERN LLP              PEITZMAN, WEG & KEMPINSKY LLP
   1999 Avenue of the Stars, 39th Floor             10100 Santa Monica Boulevard, Suite 1450
16 Los Angeles, California 90067                    Los Angeles, California 90067
   Telephone: (310) 407-4000                        Telephone: (310) 552-3100
17 Facsimile: (310) 407-9090                        Facsimile: (310) 552-3101

18 Special Counsel for Richard Meruelo              Attorneys for John Charles Maddux and
                                                    affiliated creditors and equity security holders
19

20              UNITED STATES BANKRUPTCY COURT
                CENTRAL DISTRICT OF CALIFORNIA
21              SAN FERNANDO VALLEY DIVISION

22 In re:                                    Case No. 1:09-bk-13356-VK
23                                           CHAPTER 11 (JOINTLY ADMINISTERED)
   MERUELO MADDUX PROPERTIES,
24 INC., et al.,[1]                          **JOINT LIMITED RESPONSE IN SUPPORT OF
                                             THE MOTION FOR ORDER:(1) STRIKING
25                         Debtor.           EVIDENCE IMPROPERLY RECEIVED AFTER
                                             THE CLOSE OF TRIAL THROUGH JUDICIAL**
26

27 [1]  Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated
        entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-
28      13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

551965v1                                      1

1

2

3

4

5

6

7

| ☒ | Affects all Debtors |
| ☐ | Affects the following Debtor(s): |

**NOTICE, AND (2) RECONSIDERING PLAN CONFIRMATION RULING, OR, IN THE ALTERNATIVE, (3) SCHEDULING A HEARING TO CONSIDER FAIR VALUE**

**Date:**   June 13, 2011
**Time:**   1:30 p.m.
**Place:**  Courtroom 301
           21041 Burbank Boulevard
           Woodland Hills, CA 91367

8    The above-captioned debtors and debtors-in-possession (collectively the "Debtors"),

9  Richard Meruelo, on behalf of himself and his controlled entities that are also equity security

10 holders, and John Charles Maddux, on behalf of himself and entities owned and controlled by him

11 that are creditors and equity security holders (collectively the "Responding Parties") hereby jointly

12 submit this limited response to the oppositions (the "Oppositions") [Docket Nos. 3178, 3179 3180,

13 3181 and 3182] filed by various parties (the "Objecting Parties") to and in further support of the

14 *Debtors' Motion For Order: (1) Striking Evidence Improperly Received After The Close Of Trial*

15 *Through Judicial Notice, And (2) Reconsidering Plan Confirmation Ruling, Or, In The Alternative,*

16 *(3) Scheduling A Hearing To Consider Fair Value* (the "Motion") [Docket No. 3148].

17                                              **I.**

18                                     **INTRODUCTION**

19    The Motion raises two primary issues for the Court's consideration.  First, the

20 Responding Parties respectfully submit that it was procedurally improper for the Court to look

21 outside the record following trial to satisfy Charlestown's evidentiary burden of proof in order to

22 cram its plan down on a rejecting class of equity interests, when Charlestown had failed to do so

23 during trial.  Second, the measure of value chosen by the Court did not accurately reflect the actual

24 value of MMPI equity interests for the purposes of a cramdown analysis.  The Objecting Parties

25 ignore almost entirely the evidentiary and valuation arguments raised in the Motion and do not

26 provide any compelling reasons why the Charlestown Plan should be permitted to move forward on

27 an empty evidentiary record on such a critical issue.  Instead, the Objecting Parties have collectively

28 filed approximately 50 pages that are (not surprisingly) consumed with irrelevant and incendiary

1    personal attacks on the Debtors, their principals, and their counsel.  More troublesome, however, is

2    the fact that several of the Objecting Parties have used their Oppositions to the Motion as an

3    opportunity to brief, for the first time, their desired interpretation and application of Bankruptcy

4    Code section 1129(b)(2)(C) to the Charlestown Plan.  Fairness dictates that the Responding Parties

5    be permitted to respond to the arguments that the Objecting Parties have made on this limited issue

6    in order to explain to the Court how the reading of section 1129(b)(2)(C) advanced by Charlestown

7    and the other Objecting Parties is illogical, incorrect and profoundly inequitable to further support

8    the analysis of section 1129(b)(2)(C) properly adopted by the Court in the tentative ruling it issued

9    on May 19.

## II.

## BACKGROUND

12           A brief history on the interpretation and application of Bankruptcy Code section

13    1129(b)(1) and (2) to the Charlestown Plan in this case is instructive.  In its opening brief filed

14    December 3, 2010, Charlestown devoted just two lines to the treatment of a dissenting class of

15    equity.  Specifically, Charlestown stated that its plan satisfied section 1129(b)(1) because, relying

16    upon section 1129(b)(2)(C)(ii), no classes of equity junior to Class 1F would receive anything under

17    the Charlestown Plan. Charlestown provided no case law or other authority to support the

18    proposition that in a case with a solvent debtor, valuable equity interests could be crammed down for

19    less than fair value, or even nothing, merely because no junior class received any property under the

20    plan.

21           In their opposition to the Charlestown Plan filed on December 30, 2010, the Debtors

22    explained over multiple pages that Charlestown had failed to satisfy the requirements of section

23    1129(b)(1).  *See* Opposition to Charlestown Capital Advisors, LLC's and Hartland Asset

24    Management Corporation's Proposed Plan of Reorganization [Docket No. 2523] at 27 -30.

25    Specifically, the Debtors argued that Charlestown could not sustain its burden of proof in seeking to

26    cram its plan down over the rejection of an impaired class of equity holders, because the Bankruptcy

27    Code requires that equity holders receive the fair value of their interests in solvent debtor cases, and

28    the Charlestown Plan forces the sale of equity at less than fair value. Although the Debtor was not

1    required to prove that Charlestown's Plan failed to provide fair value to the dissenting class of

2    shareholders, the Debtor submitted a declaration of its financial advisor, M. Freddie Reiss, in which

3    Reiss, based on Charlestown's own representations set forth in its Disclosure Statement,

4    demonstrated that Charlestown's 35 cent offer to shareholders was 1 dollar per share below its value.

5    *See* Declaration of M. Freddie Reiss, dated December 30, 2010 [Trial Exhibit 85].

6              Notwithstanding the arguments made by the Debtors in their opposition to the

7    Charlestown Plan, Charlestown filed a reply that completely failed to address or support its legal

8    position that the fair and equitable requirement in section 1129(b)(1) could be satisfied without

9    providing fair value to shareholders. On the contrary, Charlestown implicitly acknowledged that it

10   must do so by not arguing or briefing the legal issue and instead limiting its discussion to the subject

11   of value and asserting that the Charlestown Plan provides fair value without proffering *any* evidence

12   in support of this assertion. In that regard, Charlestown challenged the expert opinion of Mr. Reiss

13   and claimed that Charlestown's plan treatment of shareholders was the product of "vigorous arm's-

14   length negotiations between the Charlestown Plan proponents and the Equity Committee." *See*

15   Omnibus Reply Of Charlestown Capital Advisors, LLC And Hartland Asset Management

16   Corporation In Support Of Their Proposed Plan Of Reorganization [Docket No. 2586] at 31.

17   However, neither the Equity Committee nor Charlestown ever submitted a single declaration or

18   produced a single witness who supported that claim. Charlestown made *no* attempt to support the

19   legal theory set forth in it opening brief. regarding section 1129(b)(1).

20              As of the close of trial, Charlestown had not even attempted to support the

21   proposition that, in the case of a solvent debtor, dissenting shareholders can be wiped out without

22   being provided anything, let alone fair value.

23              In its May 19, 2011 tentative ruling, the Court correctly concluded that, because Class

24   1F rejected the Charlestown Plan, "the Charlestown Proponents cannot confirm their plan over the

25   rejection of class 1F" unless that plan satisfied the requirements of section 1129(b)(1) by paying

26   shareholders the fair value of their interests.  In its tentative ruling the Court considered, *and*

27   *rejected*, Charlestown's arguments that (i) a plan need not provide any value to shareholders in the

28   case of a solvent debtor, so long as no junior class receives value under the plan, and (ii) a forced-

1    sale price allegedly negotiated by a committee representing minority shareholders accurately reflects

2    the fair value of all shares for purposes of a valuation analysis under section 1129(b).  More

3    specifically, the Court wrote:

> section 1129(b)(2), which concerns the "fair and equitable" condition,
> uses the word "includes," and the Bankruptcy Code explicitly provides
> that "includes" is non-limiting. 11 U.S.C. § 102(3). Thus, when faced
> with a solvent estate such as the MMPI estate, simply meeting the
> literal language of § 1129(b)(2)(C) is not clearly sufficient to
> cramdown an impaired, rejecting class of equity holders. For example,
> although this standard is not explicitly stated in the statute, when a
> plan crams down a junior class, the plan cannot provide more than
> payment in full to any senior class.

9    The Court concluded:

> Accordingly, to the extent that the Charlestown Plan requires insider
> equity holders in class 1F to sell their shares, the plan should provide
> those shareholders with $0.45 per each share exchanged. Otherwise,
> with respect to that class of shareholders, the Charlestown Plan is not
> fair and equitable and cannot be confirmed.

13            At the May 19 hearing, Charlestown agreed to pay Class 1F holders 45 cents per

14    share, in accordance with the Court's ruling and has since amended its plan to so provide.  Now,

15    however, Charlestown and the other Objecting Parties, including, remarkably, the Equity

16    Committee, are asking the Court to overturn its prior ruling concerning the application of section

17    1129(b) and hold that the Charlestown Plan need not provide *any* value to a rejecting class of

18    shareholders.

19            The Motion was not an invitation for Charlestown and its supporters to brief legal

20    issues that they failed to brief timely and the Court should not now condone these requests by

21    reconsidering the legal determination it made both prior to and at the May 19 hearing.  If the Court

22    does decide to entertain these arguments, however, the Responding Parties should be afforded an

23    opportunity to respond.

24

25

26

27

28

# III.

## ARGUMENT

**A.    The Court Properly Rejected The Objecting Parties' Untenable Reading And Application Of Bankruptcy Code Section 1129(b).**

Despite the Court's clear consideration and rejection of this theory in its May 19, 2011 tentative and oral rulings, the Objecting Parties urge an interpretation of Bankruptcy Code section 1129(b) that would permit *any plan whatsoever* to be crammed down upon a dissenting class of shareholders as long as the holders of any junior interests (of which there are none) do not "receive or retain under the plan" any property in technical compliance with section 1129(b)(2)(C)(ii).  There are many reasons why the Court should not depart from its prior interpretation and application of the statute.

First, it is the Objecting Parties who ignore the plain statutory text.  The initial language in Bankruptcy Code section 1129(b)(2) clearly states that "the condition that a plan be fair and equitable with respect to a class *includes*" certain requirements.  11 U.S.C. § 1129(b)(2) (emphasis added).  Thus, the cramdown requirements set forth in section 1129(b)(2)(C) are "not limiting" or exhaustive.  *See id.* § 102(3); *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986) ("It should be noted that § 1129(b)(2)(C), by its terms, is not exclusive.  Indeed a court may and should take additional factors into consideration in determining whether a plan is fair and equitable with respect to a dissenting class."), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988); *In re Jones*, 32 B.R. 951, 960 n.14 (Bankr. D. Utah 1983) ("The fair and equitable standard includes more elements than those listed in Sections 1129(b)(2)(A), 1129(b)(2)(B), and 1129(b)(2)(C).  Because Section 1129(b)(2) uses the non-limiting term 'includes,' the alternatives listed in subsections (A), (B), and (C) of Section 1129(b)(2) are not safe harbors for meeting the fair and equitable test.  'Fair and equitable' is a term of art which carries with it decades of judicial interpretation.  Congress clearly intended to transfer some of the judicial gloss placed on the fair and equitable test under former law into the fair and equitable test under Section 1129(b)." (citations and quotation marks omitted)); Kenneth N. Klee, *Cram Down II*, 64 AM. BANKR. L.J. 229, 229-40 (1990) (detailing numerous uncodified aspects of "fair and equitable"

1    treatment, and explaining how the concept was always intended to evolve and be applied on a case-

2    by-case basis).

3            Section 1129(b)(2)(C), which provides that the condition a plan be fair and equitable

4    concerning an interest includes the requirement that the plan provide either (i) the interest holder will

5    receive the greater of the contractual liquidation preference of the interest, or the value of the

6    interest, or (ii) no junior class will receive any property under the plan, is simply the codification of

7    the absolute priority rule, which is an element of the fair and equitable requirement under section

8    1129(b)(1).  It is black-letter law that a plan may not violate the absolute priority rule without the

9    consent of all classes, and the purpose of section 1129(b)(2)(C) is to make such rule explicit and give

10   clear guidance what a plan proponent must do to comply with the absolute priority rule.  *See, e.g., In*

11   *re Johnston*, 21 F.3d 323, 329 (9th Cir. 1994) (in reference to section 1129(b)(2)(B), court referred

12   to statute as a "two-part codification of the judicially-created absolute priority rule").

13           While it is black-letter law that a cramdown plan must comply with the absolute

14   priority rule to be confirmable, it is also black-letter law that compliance with the absolute priority

15   rule, by itself, does not mean the fair and equitable requirement is satisfied.  The case law makes

16   clear that "technical compliance with all the requirements in § 1129(b)(2) does not assure that the

17   plan is 'fair and equitable'" because the statute merely sets "minimal standards plans must meet" and

18   "is not to be interpreted as requiring that every plan not prohibited be approved."  *See, e.g.*, *Fed. Sav.*

19   *Loan Ins. Corp. v. D&F Constr., Inc. (In re D&F Constr., Inc.)*, 865 F.2d 673, 675 (5th Cir. 1989).

20   Hence, other courts have declined to confirm plans that, although they may have technically

21   complied with section 1129(b)(2)(C)(ii)  and satisfied the absolute priority rule, nevertheless were

22   not "fair and equitable" to a dissenting class of shareholders.  *See, e.g.*, *In re Surfango, Inc.*, No. 09-

23   30972, 2009 Bankr. LEXIS 4172, at *39-41 (Bankr. D.N.J. Dec. 18, 2009); *In re UVAS Farming*

24

25

26

27

28

1   *Corp.*, 91 B.R. 579, 582-83 (Bankr. D.N.M. 1988).[2]  Simply put, as this Court rightly recognized,

2   "[a] plan may meet the standards of 11 U.S.C. § 1129(b)(2) and still not be 'fair and equitable' –

3   and, thus be nonconfirmable."  *In re EFH Grove Tower Assocs.*, 105 B.R. 310, 313 (Bankr.

4   E.D.N.C. 1989).

5            Among the concepts long embedded in "fair and equitable" treatment, separate and

6   apart from the absolute priority rule, is that existing shareholders are entitled to receive all of the

7   residual value of an enterprise based upon a fair valuation.  *See, e.g.*, *Protective Comm. for*

8   *Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 441-54 (1968)

9   (discussing at length why further valuation hearings were necessary to determine whether a proposed

10   plan was "fair and equitable" to dissenting shareholders); *Consolidated Rock Prods. Co. v. Du Bois*,

11   312 U.S. 510, 524 (1941) (explaining how the "fair and equitable" standard made it "apparent that a

12   determination of that value must be made so that criteria will be available to determine an

13   appropriate allocation of new securities between bondholders and stockholders in case there is an

14   equity remaining after the bondholders have been made whole").[3]  This is precisely why an

15   uncodified but undisputable aspect of "fair and equitable" treatment is that "creditors must not be

16   provided for more than in full" – any residual value properly belongs to equity.  *See, e.g.*, *In re*

17   *MCorp Fin., Inc.*, 137 B.R. 219, 235 (Bankr. S.D. Tex. 1992); *In re Cellular Information Sys.*, 171

---

18  [2]   Despite suggestions by Charlestown and its allies to the contrary, this principles applies across

19     *all* subparts of section 1129(b)(2). Thus, notwithstanding the presence of a similar multipart "or"
    construct for cramdown of secured claims in section 1129(b)(2)(A), courts have recognized

20     additional, fact-specific considerations that may nevertheless render a plan unconfirmable even if
    that plan technically complies with one of the three options. *See, e.g.*, *Great W. Bank v. Sierra*

21     *Woods Grp.*, 953 F.2d 1174, 1177-78(9th Cir. 1992) (describing additional, fact-specific
    considerations that must be reviewed in determining whether a "negative amortization" plan is

22     "fair and equitable" even if such a plan technically complies with section 1129(b)(2)(A)); *In re*
    *Kennedy*, 158 B.R. 589, 598-601 (Bankr. D.N.J. 1993) (describing how "the requirements of

23     both sections 1129(b)(1) and 1129(b)(2)(A) must be met" in order to cramdown an impaired
    dissenting class of secured claims, and refusing to confirm plan that violated "uncodified" or

24     "implicit" aspects of the "fair and equitable" standard by proposing a 20 year deferred payout
    period); *In re Manion*, 127 B.R. 887, 890-91 (Bankr. N.D. Fla. 1991) (similarly declining to

25     confirm long-term payout based upon uncodified "fair and equitable" principles vis-à-vis an
    objecting secured class).

26  [3]   Perhaps in a coordinated effort, the Objecting Parties have also failed to even mention the U.S.
    Supreme Court's opinion in *TMT Trailer*,  which is referenced throughout the Motion and which

27     directly considered the very issue presently before this Court.  *TMT Trailer* requires the Court to
    award shareholders the fair, post-reorganization value of their interests in a cramdown dispute,

28     such as the one at issue here.

B.R. 926, 947 (Bankr. S.D.N.Y. 1994); *In re Tamarack Trail Co.*, 23 B.R. 3, 5 (Bankr. S.D. Ohio 1982) (" [the] plan before us provides for the cancellation of the stock of objecting equity security holders […]. It would be inequitable to confirm the plan with such a provision if this were to deprive these equity security holders of a valuable asset without compensation."). Thus, whenever a plan proposes to cram down a class of dissenting shareholders, "[a] valuation of the debtor's business is, by virtue of the statutory language, almost a prerequisite to a determination that a plan satisfies the fair and equitable test." *In re Johns-Manville Corp.*, 68 B.R. at 636 (Bankr. S.D.N.Y. 1986); *see also, e.g.*, H.R. REP. 595, 95TH CONG., 1ST SESS. 414 (1977) ("[A] valuation of the debtor's business . . . will almost always be required under Section 1129(b) in order to determine the consideration to be distributed under the plan."). Such a valuation would be necessary for Charlestown to satisfy its burden here, but such a valuation never occurred.

Second, courts recognize that, in applying the Bankruptcy Code's cramdown provisions, additional considerations come into play in the circumstance of a solvent debtor. Indeed, in *Official Committee of Unsecured Creditors v. Dow Chem. Corp. (In re Dow Corning Corp.)*, 456 F.3d 668, 678 (6th Cir. 2006), the Sixth Circuit made clear that "[t]he absolute priority rule imposes somewhat different requirements when a solvent debtor seeks confirmation of its plan" and noted how "[t]he legislative history of the Bankruptcy Code makes clear that equitable considerations operate differently when the debtor is solvent." Thus, even though Bankruptcy Code section 502(b)(2) expressly disallows claims for postpetition interest, the uncodified aspects of the "fair and equitable" standard trump the statutory text and revive the right of unsecured creditors to receive postpetition interest, perhaps even at the default rate. *See id.* at 677-80. In such rare cases, "fair and equitable" treatment generally looks to the parties' state law rights outside of bankruptcy. *See id.* at 679. In reaching this conclusion, the Sixth Circuit was not formulating a new rule, but instead was following long-established precedent that "fair and equitable" treatment typically mandates judicial enforcement of nonbankruptcy rights in solvent cases. *See, e.g.*, *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161 (1946); *Ruskin v. Griffiths*, 269 F.2d 827, 830-32 (2d Cir. 1959). Here, those state law rights include the ability of dissenting MMPI shareholders to seek and receive payment equal to the inherent value of their shares prior to being forced to sell their valuable equity

1   interests.  *See, e.g.*, 8 Del. Code § 262; *Rapid-Am. Corp. v. Harris*, 603 A.2d 796, 806 (Del. Supr.

2   1992); *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137, 1144 (Del. Supr. 1989).  Hence, just as literal

3   application of the statute was not "fair and equitable" to the dissenting unsecured creditors in *Dow*

4   *Corning* given the debtor's solvency, so too is literal application of section 1129(b)(2)(C) not "fair

5   and equitable" to the dissenting shareholders in this rare solvent debtor case.  At a minimum, the

6   dissenting shareholders should be allowed the same appraisal rights they would enjoy under

7   applicable nonbankruptcy law.  *See also* 11 U.S.C. § 1129(a)(3) (requiring that plans not contain

8   provisions prohibited by applicable law); *PG&E Co. v. California*, 350 F.3d 932, 934-35(9th Cir.

9   2003) (tightly limiting preemptive effect that a plan's implementation provisions may have vis-à-vis

10  otherwise controlling nonbankruptcy law).

11              Third, the Objecting Parties' reading of section 1129(b) produces absurd results that

12  are at odds with any conceivable purpose of the statute.  Under Charlestown's reading, a plan

13  proponent has the choice of (1) providing shareholders with property equal to "the value of such

14  interest" under subclause (i) *or* (2) giving shareholders absolutely nothing at all under subclause (ii).

15  In other words, the construction urged by the Objecting Parties would permit a plan to strip all

16  residual value from any class that happens to be economically junior.  Thus, under the reading

17  advanced by the Objecting Parties, Bankruptcy Code section 1129(b)(2)(B)(ii) (which mirrors

18  section 1129(b)(2)(C)(ii) in relevant respects) would allow a court to confirm a plan in which a

19  secured creditor proposed to sell all of the debtor's assets to a third party for just enough to satisfy its

20  claims without providing any recovery for unsecured creditors *even if the enterprise value was far*

21  *more than the purchase price*, just so long as claims and interests junior to the unsecured creditors

22  also received no recovery.  This is a ridiculous outcome; it is hardly "fair and equitable" to deprive a

23  class of value to which it is entitled as long as any junior classes do equally bad or worse.  This

24  construct finds no support in the legislative history or text of the Bankruptcy Code; nothing suggests

25  that Congress remotely intended to allow third parties to strip shareholders of their residual interests

26  in a solvent entity *for any price (or even no price) whatsoever.  See, e.g.*, *Reconstruction Fin. Corp.*

27  *v. Denver & Rio Grande W. R.R. Co.*, 328 U.S. 495, 530-31 (1946) (making clear that "fair and

28  equitable" treatment creates "a duty to account [to junior classes] for any surplus remaining after

1   [senior classes] have been made whole"). Because it advances no cognizable purpose of bankruptcy

2   law, the Court could properly find the Charlestown Plan's treatment of dissenting equity not to be

3   "fair and equitable" despite technical compliance with the absolute priority rule. *See, e.g.*, *In re*

4   *Dollar Assocs.*, 172 B.R. 945, 952-53 (Bankr. N.D. Cal. 1994) (concluding that a plan was not "fair

5   and equitable" as to a dissenting class where it "serves few, if any, of the recognized goals of

6   reorganization").

7           Indeed, any interpretation of section 1129(b) that would allow a plan proponent to

8   expropriate admittedly valuable equity interests for whatever amount it liked (or even nothing at all)

9   would be constitutionally suspect, including on takings grounds. *See, e.g.*, *United States v. Sec.*

10  *Indus. Bank*, 459 U.S. 70, 77-78 (1982) (discussing constitutional concern associated with the

11  Bankruptcy Code's destruction of state law property rights, and noting that "a general economic

12  regulation which in effect transfers the property interest from a private creditor to a private debtor"

13  could be a "taking" violative of the Fifth Amendment); *see also, e.g.*, *Continental Ill. Nat'l Bank &*

14  *Trust Co. v. Chicago, Rock Island, & Pac. Ry.*, 294 U.S. 648, 669 (1935) (explaining how the

15  bankruptcy power is not unlimited and remains subject to restriction under other parts of the

16  Constitution); *Holt v. Henley*, 232 U.S. 637, 639 (1914) (holding that an amendment to bankruptcy

17  law had to be limited to prospective application to avoid affecting existing property rights). As such,

18  the Court should avoid this suggested approach and instead adopt a reading that does not raise

19  constitutional concerns. *See, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001) ("[I]f an otherwise

20  acceptable construction of a statute would raise serious constitutional problems, and where an

21  alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to

22  avoid such problems." (citation omitted)). In fact, the Court accomplished precisely that objective in

23  its May 19, 2011 rulings.

24          In summary, there is no case law (and none of the Objecting Parties cites case law)

25  that reads or applies Bankruptcy Code section 1129(b) in the radical fashion suggested by the

26  Objecting Parties.[4] To the contrary, the case law makes clear that mere technical compliance is

27  _____

   [4]  The decision in *In re P.J. Keating Co.*, 168 B.R. 464 (Bankr. D. Mass. 1994), could be read to
28       suggest that mere compliance with section 1129(b)(2)(C)(ii) makes it unnecessary to consider
         whether dissenting shareholders are receiving appropriate value. Nevertheless, as the Court

1    insufficient to ensure "fair and equitable" treatment for dissenting shareholders.  Rather,

2    shareholders should be permitted to receive payment equal to their properly valued residual interests

3    against a solvent enterprise – a result that, as in *Dow Corning*, accords with their rights outside of

4    bankruptcy.  This outcome not only is mandated by the overarching non-limiting text of section

5    1129(b)(2), but also avoids the plainly unreasonable and constitutionally suspect interpretation of the

6    statute that would allow a plan to be crammed down on a dissenting class of shareholders

7    irrespective of the consideration provided to that class.  The Court properly rejected the Objecting

8    Parties' suggested rule on May 19, 2011, and it should reaffirm that rejection now.

9
10   **B.     The Objecting Parties' Attempts To Analogize Bankruptcy Code Section
         1129(b)(2)(C) To Section 1129(b)(2)(A) Fail And, Indeed, Support The Court's
         Reading Of Section 1129(b)(2)(C).**

11              The Objecting Parties cite several cases (including the *Philadelphia Newspapers*

12   case) interpreting and applying section 1129(b)(2)(A) (which sets forth alternative cramdown

13   standards for secured creditors) to support their reading of section 1129(b)(2)(C).  The Objecting

14   Parties suggest that because the courts in these cases have interpreted the use of "or" in section

15   1129(b)(2)(A) to mean that the three subsections of that provision be read in the disjunctive and that

16   only one of the three alternatives needs to be satisfied in order to cramdown on secured creditors, the

17   same logic should be applied in reading section 1129(b)(2)(C).  There are at least four obvious

18   problems with this approach.

19              First, the three elements of section 1129(b)(2)(A).  Rather, there are additional

20   uncodified aspects of "fair and equitable" treatment that, depending on the facts, could render a plan

21   unconfirmable over a secured creditor's objection.  *See* note 2, *supra*.  For example, the Ninth

22   Circuit's opinion in *Great West Bank v. Sierra Woods Group*, 953 F.2d 1174, clearly recognizes that

23

24   _____

25   noted in its May 19, 2011 tentative, that court took pains to evaluate the value of the interests
     eliminated and confirmed the "Three Party Plan" only after making certain that the plan *also*
     complied with Bankruptcy Code section 1129(b)(2)(C)(i).  *See* 168 B.R. at 468-69.  Thus, *P.J.*

26   *Keating* does not support the proposition that mere technical compliance with section
     1129(b)(2)(C)(ii) is sufficient.  In any event, the question is not whether subclause (i) and

27   sublease (ii) **both** apply despite the statute's use of the word "or," but rather whether the broader
     implied or uncodified aspects of the "fair and equitable" standard mandate more than mere

28   technical compliance with section 1129(b)(2)(C)(ii).

there may be additional considerations – such an improper negative amortization – that overlay

section 1129(b)(2)(A).  Thus, the cases cited by the Objecting Parties never really address, let alone

foreclose, the reading of the statute that the Responding Parties believe is appropriate. What the

*Philadelphia Newspapers* line of cases do not say, and what definitely is *not* the law in the Ninth

Circuit, is that once a plan meets one of the three conditions, the inquiry ends in every single case.

Thus, under these decisions, a secured creditor may not have a right to deferred payments under

section 1129(b)(2)(A)(i) ***and*** an additional right to an "indubitable equivalent" under section

1129(b)(2)(A)(iii), but, depending on the facts, there may be additional considerations – an unduly

long payment period or negative amortization – that nevertheless bar confirmation of the plan on

more general "fair and equitable" grounds.  Put simply, none of the 1129(b)(2)(A) cases

Charlestown cites address, let alone foreclose, the proper construction of the statute set forth herein.

Second, while the Objecting Parties have cited a handful of cases that permit a

cramdown on secured creditors when only one of the three alternatives set forth in section

1129(b)(2)(A) was satisfied, as described above, the case law concerning cramdown on shareholders

under section 1129(b)(2)(C) is very sparse. Indeed, there are no reported decisions in which a court

has relied exclusively on section 1129(b)(2)(C)(ii) when equity has value.[5]

Third, under section 1129(b)(2)(A), satisfaction of any of the three alternatives

presented results in a secured creditor receiving the ***full value*** of its secured claims (i.e., the secured

creditor either retains the liens securing the claim and gets payments equal to the present value of its

claim, is afforded the right to credit bid, or receives the indubitable equivalent of its claim). Thus,

section 1129(b)(2)(A) is distinguishable from 1129(b)(2)(C) (as interpreted by the Objecting Parties)

in at least one critical way: the secured creditor subject to cramdown will receive the full value of its

secured claim under *any* of the alternatives, not so under the Objecting Parties' reading of section

1129(b)(2)(C). Indeed, from a constitutional standpoint, the Bankruptcy Code could not permit

confirmation of a plan over the objection of a secured creditor where the secured creditor was not

receiving the full value of its allowed secured claim.  Accordingly, the only correct extension of the

---

[5]    *See supra* note 4.

1   principles set forth in the cases interpreting section 1129(b)(2)(A) in the disjunctive to section

2   1129(b)(2)(C) would be one that requires that dissenting shareholders be given the ***full value*** of their

3   interest.

4      <u>Fourth</u>, for the same reason that it would be unconstitutional for the bankruptcy

5   process to take away a secured creditor's property, without providing it with equivalent value, it

6   would be equally unconstitutional for the bankruptcy process to permit a third party to acquire

7   shareholders' ownership interests without providing them with fair value.  And, because statutes

8   must be interpreted, if possible, to avoid unconstitutionality, section 1129(b)(2)(C) must be

9   interpreted in a way that protects equity value.  *United States v. Delaware & Hudson Co.*, 213 U.S.

10  366, 408 (1909) ("[T]he rule plainly must mean that, where a statute is susceptible of two

11  constructions, by one of which grave and doubtful constitutional questions arise and by the other of

12  which such questions are avoided, our duty is to adopt the latter.").

13  **IV.**

14  <u>**CONCLUSION**</u>

15     In sum, the Responding Parties believe the Court was correct in reaching the

16  conclusion in its May 19th tentative ruling that section 1129(b) requires that the Charlestown Plan

17  provide dissenting shareholders with the fair value of their shares. While the Opposing Parties have

18  taken the opportunity to argue this issue -- for the first time -- in the Oppositions, none has provided

19  the Court with a convincing reason to revisit its tentative ruling on this issue.

20  DATED:  June 13, 2011      STUTMAN, TREISTER & GLATT
               PROFESSIONAL CORPORATION

22                 By:  */s/ Marina Fineman*_____
                  Marina Fineman

23                 Attorneys for Meruelo Maddux Properties, Inc.,
               and affiliated Debtors and Debtors-in-Possession

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP

By:    _/s/ Whitman L. Holt_____
            Whitman L. Holt

Special Counsel for Richard Meruelo


PEITZMAN, WEG & KEMPINSKY LLP

By:    _/s/ David B. Shemano_____
            David B. Shemano

Attorneys for John Charles Maddux and
his affiliated creditors and equity security
holder

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

1901 Avenue of the Stars, 12th Floor, Los Angeles, California 90067

A true and correct copy of the foregoing document described **JOINT LIMITED RESPONSE IN SUPPORT OF THE MOTION FOR ORDER:(1) STRIKING EVIDENCE IMPROPERLY RECEIVED AFTER THE CLOSE OF TRIAL THROUGH JUDICIAL NOTICE, AND (2) RECONSIDERING PLAN CONFIRMATION RULING, OR, IN THE ALTERNATIVE, (3) SCHEDULING A HEARING TO CONSIDER FAIR VALUE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 13, 2011**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

Michael C Abel on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
mcabel@mac.com

Robert Abiri on behalf of Interested Party Courtesy NEF
rabiri@abiriszeto.com

Allison R Axenrod on behalf of Creditor Claims Recovery Group LLC
allison@claimsrecoveryllc.com

Christopher J Bagnaschi on behalf of Defendant Richard Meruelo
cb@cjblaw.com

John J Bingham on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
jbingham@dgdk.com

William C Bollard on behalf of Creditor Victory Outreach La Puente, Inc.
eal@jbblaw.com, kmg@jbblaw.com;william@jbblaw.com

Peter Bonfante on behalf of Interested Party Courtesy NEF
peterbonfante@bsalawfirm.com

Erin N Brady on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
enbrady@jonesday.com

Julia W Brand on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com

Jennifer L Braun on behalf of U.S. Trustee United States Trustee (SV)
jennifer.l.braun@usdoj.gov

Martin J Brill on behalf of Interested Party Courtesy NEF
mjb@lnbrb.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Andrew W Caine on behalf of Creditor Legendary Investors Group No. 1, LLC
acaine@pszyjw.com

Howard Camhi on behalf of Creditor Kennedy Funding, Inc.
hcamhi@ecjlaw.com

Gary O Caris on behalf of Interested Party EDI Architecture
gcaris@mckennalong.com, pcoates@mckennalong.com

James E Carlberg on behalf of Creditor Woodland Farms, Inc.
jcarlberg@boselaw.com

Sara Chenetz on behalf of Creditor Imperial Capital Bank
chenetz@blankrome.com, chang@blankrome.com

Jacquelyn H Choi on behalf of Interested Party Courtesy NEF
jchoi@swjlaw.com

Carol Chow on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
CChow@Stutman.com

Cynthia M Cohen on behalf of Interested Party Courtesy NEF
cynthiacohen@paulhastings.com

Ronald R Cohn on behalf of Creditor Pacific Commerce Bank
rcohn@horganrosen.com

Enid M Colson on behalf of Debtor 2640 Washington Boulevard, LLC, a CA LLC
emc@dgdk.com, ecolson@dgdk.com

Michaeline H Correa on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
mcorrea@jonesday.com

Emily R Culler on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
eculler@stutman.com

Ana Damonte on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,
National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc., etc
ana.damonte@pillsburylaw.com

Brian L Davidoff on behalf of Creditor Yoshiake Murakami
bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com

Susan S Davis on behalf of Creditor Cox, Castle & Nicholson LLP
sdavis@coxcastle.com

Aaron De Leest on behalf of Debtor Merco Group - 2040 Camfield Avenue, LLC, a DE LLC
aed@dgdk.com

Daniel Denny on behalf of Interested Party Courtesy NEF
ddenny@gibsondunn.com

Jeffrey W Dulberg on behalf of Creditor Legendary Investors Group No. 1, LLC
jdulberg@pszjlaw.com

Marina Fineman on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
551972v.1

**F 9013-3.1.PROOF.SERVICE**

mfineman@stutman.com

Michael G Fletcher on behalf of Creditor Cathay Bank
mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com

Barry V Freeman on behalf of Interested Party Courtesy NEF
bvf@jmbm.com, bvf@jmbm.com

Donald L Gaffney on behalf of Creditor BANK OF AMERICA
dgaffney@swlaw.com

Thomas M Geher on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank
Minnesota, National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage
Securities, Inc., etc
tmg@jmbm.com

Bernard R Given on behalf of Creditor Cathay Bank
bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com

Barry S Glaser on behalf of Creditor County of Los Angeles Tax Collector
bglaser@swjlaw.com

Gabriel I Glazer on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
gglazer@stutman.com

Matthew A Gold on behalf of Creditor Argo Partners
courts@argopartners.net

Eric D Goldberg on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
egoldberg@stutman.com

Michael J Gomez on behalf of Creditor Cathay Bank
mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com

Michael I Gottfried on behalf of Interested Party Courtesy NEF
mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com

John A Graham on behalf of Creditor Wells Fargo Bank, N.A. successor by consolidation to Wells Fargo Bank Minnesota,
National Association as Trustee for the Registered Certificateholders of GMAC Commercial Mortgage Securities, Inc.
jag@jmbm.com

Ofer M Grossman on behalf of Interested Party Courtesy NEF
omglaw@gmail.com

Jodie M Grotins on behalf of Interested Party Courtesy NEF
jgrotins@mcguirewoods.com

Peter J Gurfein on behalf of Creditor CIM Urban RE Fund GP II, LLC, as Successor in Interest to Grand Avenue Lofts, LP
pgurfein@lgbfirm.com, cscott@LGBFirm.com

Cara J Hagan on behalf of Creditor PNL Pomona, L.P.
carahagan@haganlaw.org

Asa S Hami on behalf of Creditor Committee Creditors Committee
ahami@sulmeyerlaw.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
551972v.1

**F 9013-3.1.PROOF.SERVICE**

Brian T Harvey on behalf of Creditor California Bank & Trust
bharvey@buchalter.com, IFS_filing@buchalter.com

Robert A Hessling on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
rhessling@dgdk.com

Whitman L Holt on behalf of Interested Party Richard Meruelo
wholt@ktbslaw.com

William W Huckins on behalf of Interested Party Courtesy NEF
whuckins@allenmatkins.com, clynch@allenmatkins.com

Lance N Jurich on behalf of Creditor CanPartners Realty Holding Company IV, LLC
ljurich@loeb.com, kpresson@loeb.com

William H. Kiekhofer on behalf of Creditor Esmark, Inc.
wkiekhofer@mcguirewoods.com

Andrew F Kim on behalf of Creditor Imperial Capital Bank
akim@mrllp.com

Michael S Kogan on behalf of Creditor Kennedy Funding, Inc.
mkogan@ecjlaw.com

Tamar Kouyoumjian on behalf of Creditor Committee Creditors Committee
tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com

Lewis R Landau on behalf of Creditor Committee Creditors Committee
lew@landaunet.com

Dare Law on behalf of U.S. Trustee United States Trustee (SV)
dare.law@usdoj.gov

Leib M Lerner on behalf of Auditor Ernst & Young LLP
leib.lerner@alston.com

Matthew A Lesnick on behalf of Stockholder Charlestown Capital Advisors, LLC
matt@lesnicklaw.com

David E Leta on behalf of Creditor FNBN-CMLCOM I LLC
dleta@swlaw.com, wsmart@swlaw.com

Katherine Lien on behalf of Interested Party Courtesy NEF
katie.lien@sbcglobal.net, katielien@gmail.com

Steven K Linkon on behalf of Creditor Chinatrust Bank (USA)
slinkon@rcolegal.com

Robert M Llewellyn on behalf of Creditor California State Board Of Equalization
michael.llewellyn@boe.ca.gov

Richard Malatt on behalf of Interested Party Courtesy NEF
rmalatt@gmail.com

Elmer D Martin on behalf of Creditor East West Bank
elmermartin@gmail.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Elissa Miller on behalf of Interested Party Courtesy NEF
emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com

Avi Muhtar on behalf of Creditor Committee Official Committee of Unsecured Creditors
amuhtar@sulmeyerlaw.com

Iain A W Nasatir on behalf of Attorney Pachulski Stang Ziehl & Jones LLP
inasatir@pszjlaw.com, jwashington@pszjlaw.com

Jeffrey P Nolan on behalf of Creditor Legendary Investors Group No. 1, LLC
jnolan@pszjlaw.com

Henry H Oh on behalf of Defendant Meruelo Maddux Properties Inc a DE Corp
henry.oh@dlapiper.com, janet.curley@dlapiper.com

Lawrence Peitzman on behalf of Interested Party Courtesy NEF
lpeitzman@pwkllp.com

Eric S Pezold on behalf of Creditor BANK OF AMERICA
epezold@swlaw.com, dwlewis@swlaw.com

Christopher E Prince on behalf of Stockholder Charlestown Capital Advisors, LLC
cprince@lesnickprince.com

Michael H Raichelson on behalf of Creditor Stanford Group LP
mhr@cabkattorney.com

Dean G Rallis Jr on behalf of Attorney SulmeyerKupetz, a Professional Corporation
drallis@sulmeyerlaw.com

Kurt Ramlo on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com

Craig M Rankin - DECEASED - on behalf of Interested Party Courtesy NEF
cmr@lnbrb.com

Daniel H Reiss on behalf of Interested Party Richard Meruelo
dhr@lnbyb.com

Michael B Reynolds on behalf of Creditor FNBN-CMLCON I LLC
mreynolds@swlaw.com, kcollins@swlaw.com

Jeremy V Richards on behalf of Creditor East West Bank
jrichards@pszjlaw.com, bdassa@pszjlaw.com

James S Riley on behalf of Creditor Sierra Liquidity Fund, LLC
tgarza@sierrafunds.com

Martha E Romero on behalf of Creditor San Bernardino County Tax Collector
Romero@mromerolawfirm.com

Victor A Sahn on behalf of Creditor Committee Creditors Committee
vsahn@sulmeyerlaw.com

Steven J Schwartz on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*
551972v.1

**F 9013-3.1.PROOF.SERVICE**

sschwartz@dgdk.com

Kenneth J Shaffer on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
jshaffer@stutman.com

Zev Shechtman on behalf of Debtor In Possession Meruelo Maddux Properties Inc a DE Corp
zshechtman@dgdk.com, danninggill@gmail.com

David B Shemano on behalf of Interested Party Courtesy NEF
dshemano@pwkllp.com

Jeffrey S Shinbrot on behalf of Creditor The Union Restaurant and Lounge, LLC
jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

Stephen Shiu on behalf of Creditor FNBN-CMLCOM I LLC
sshiu@swlaw.com

Lori Sinanyan on behalf of Interested Party Los Angeles County Metropolitan Transportation Authority
lsinanyan@jonesday.com

Daniel H Slate on behalf of Creditor California Bank & Trust
dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com

Surjit P Soni on behalf of Creditor Legendary Investors Group No. 1, LLC
surjit@sonilaw.com, gayane@sonilaw.com

Bennett L Spiegel on behalf of Plaintiff East West Bancorp, Inc.
blspiegel@jonesday.com

Tracie L Spies on behalf of Creditor PNL Pomona, L.P.
tracie@haganlaw.org

James Stang on behalf of Creditor East West Bank
jstang@pszjlaw.com

Catherine Steege on behalf of Creditor Committee Official Committee of Equity Holders
csteege@jenner.com

Derrick Talerico on behalf of Creditor CanPartners Realty Holding Company IV, LLC
dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com

John N Tedford on behalf of Attorney Danning Gill Diamond & Kollitz LLP
jtedford@dgdk.com, DanningGill@Gmail.com

Damon Thayer on behalf of Interested Party Courtesy NEF
dthayer@jenner.com

James A Timko on behalf of Interested Party Courtesy NEF
jtimko@allenmatkins.com

Alan G Tippie on behalf of Interested Party Courtesy NEF
atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Rouben Varozian on behalf of Creditor Vahan Chamlian
rvarozian@bzlegal.com

Jason L Weisberg on behalf of Creditor Roofcorp of CA Inc
jason@gdclawyers.com

William E Winfield on behalf of Creditor Committee Creditors Committee
wwinfield@nchc.com

Jasmin Yang on behalf of Creditor BANK OF AMERICA
jyang@swlaw.com

Aleksandra Zimonjic on behalf of Creditor CIM Urban RE Fund GP II, LLC, as Successor in Interest to Grand Avenue
Lofts, LP
azimonjic@lgbfirm.com, kmoss@lgbfirm.com;cscott@lgbfirm.com    ☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail,
first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes
a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or
entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 13, 2011,** I served the following person(s) and/or
entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission
and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be
completed no later than 24 hours after the document is filed.

**PERSONAL DELIVERY**
Hon. Victoria Kaufman
U.S. Bankruptcy Court
21041 Burbank Blvd., Suite 354
Woodland Hills, CA  91367

**Via Email:**
Ronald S. Orr: ronaldorresq@gmail.com (Attorneys for Equity Committee)
Georgiana G. Rodiger:  crodiger@rodigerlaw.com (Attorneys for Equity Committee)

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 13, 2011 | Kendra A. Johnson | /s/ Kendra A. Johnson |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                                                              **F 9013-3.1.PROOF.SERVICE**
551972v.1