CHRISTOPHER E. PRINCE (SBN 183553)
  cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
  matt@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
  acahill@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA  90405
Telephone:  (213) 493-6496
Facsimile:  (213) 493-6596

Attorneys for Charlestown Capital Advisors, LLC and
Hartland Asset Management Corporation

PAUL, HASTINGS, JANOFSKY & WALKER LLP
CYNTHIA M. COHEN (State Bar No. 93639)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA  90071-2228
Telephone:  (213) 683-6000
Facsimile:  (213) 627-0705
Attorneys for Global Asset Capital, LLC and
GAC Real Estate Partners, LLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>MERUELO MADDUX PROPERTIES, INC., et al.<br><br>Debtor. | Case No. 1:09-bk-13356-VK<br><br>Chapter 11<br><br>**NOTICE OF FILING OF REDLINED REVISED PROPOSED FINDINGS AND CONCLUSIONS AND REDLINED REVISED PROPOSED CONFIRMATION ORDER**<br>_____ |

PLEASE TAKE NOTICE THAT Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (the "Charlestown Proponents") have submitted to the Court, via the LOU system, a revised set of proposed findings of fact and conclusions of law with respect to confirmation of the Charlestown Plan.  The revised findings include: (1) paragraphs previously submitted to the Court as "additional conclusions" on June 7, 2011; (2) revisions made to respond to certain comments received by the Charlestown Proponents from various parties in interest, including Debtors; and (3) revisions made to account for the Court's ruling on the Debtors' Motion to Strike [Dkt. # 3148].  Attached as Exhibit A is a redlined version showing changes from the findings and conclusions originally submitted to the Court.

The Charlestown Proponents have also submitted to the Court, via the LOU system, a revised proposed order confirming the Charlestown Plan.  The revised order includes revisions made to respond to certain comments received by the Charlestown Proponents from various parties in interest, including Debtors.  Attached as Exhibit B is a redlined version showing changes from the proposed order originally submitted to the Court.

DATED:  June 15, 2011

LESNICK PRINCE LLP


By:    /s/ Christopher E. Prince
         Christopher E. Prince
         Attorneys for Charlestown Capital
         Advisors, LLC and Hartland Asset
         Management Corporation

1

# EXHIBIT

# A

1  CHRISTOPHER E. PRINCE (SBN 183553)
     cprince@lesnickprince.com
2  MATTHEW A. LESNICK (SBN 177594)
     matt@lesnickprince.com
3  ANDREW R. CAHILL (SBN 233798)
     acahill@lesnickprince.com
4  LESNICK PRINCE LLP
   185 Pier Avenue, Suite 103
5  Santa Monica, CA  90405
   Telephone:  (213) 493-6496
6  Facsimile:  (213) 493-6596

7  Attorneys for Charlestown Capital Advisors, LLC and
   Hartland Asset Management Corporation
8
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
9  CYNTHIA M. COHEN (State Bar No. 93639)
   515 South Flower Street
10 Twenty-Fifth Floor
   Los Angeles, CA  90071-2228
11 Telephone:  (213) 683-6000
   Facsimile:  (213) 627-0705
12
   Attorneys for Global Asset Capital, LLC and
13 GAC Real Estate Partners, LLC

14

15                     UNITED STATES BANKRUPTCY COURT

16                     CENTRAL DISTRICT OF CALIFORNIA

17                     SAN FERNANDO VALLEY DIVISION

18 In re                              )  Case No. 1:09-bk-13356-VK
                                      )
19 MERUELO MADDUX PROPERTIES, INC.,   )  Chapter 11
   et al.,                            )
20                                    )  **FINDINGS OF FACT AND CONCLUSIONS**
                                      )  **OF LAW RE:  CONFIRMATION OF**
21                                    )  **CHARLESTOWN CAPITAL ADVISORS,**
            Debtor.                   )  **LLC AND HARTLAND ASSET**
22                                    )  **MANAGEMENT CORPORATION'S**
                                      )  **SECOND MODIFIED FOURTH**
23 ─────────────────────────────      )  **AMENDED CHAPTER 11 PLAN OF**
                                      )  **REORGANIZATION DATED OCTOBER**
24 ☒    Affects all Debtors           )  **14, 2010**
                                      )
25 ☐    Affects the following Debtors: )      **CONFIRMATION HEARING**
                                      )
26                                    )  **Date:        January 27, 2011**
                                      )               **and Subsequent Dates**
27                                    )  **Time:        9:30 a.m.**
                                      )  **Place:       Courtroom 301**
28 ─────────────────────────────      )

   ~~68132520.1~~68238575.2

1

2    This matter came on for trial at 9:30 in the forenoon of January 27, 2011 upon the "Fourth Amended

3    Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010,"

4    as modified by the "First Modified Fourth Amended Joint Plan of Reorganization of Meruelo

5    Maddux Properties, Inc., et al. Dated September 20, 2010" and the "Second Modified Fourth

6    Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated September

7    20, 2010," and upon the Charlestown Capital Advisors, LLC's and Hartland Asset Management

8    Corporation's Fourth Amended Plan of Reorganization Dated October 14, 2010, as modified by the

9    Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's First

10   Modified Fourth Amended Plan of Reorganization Dated October 14, 2010," before the Honorable

11   Victoria S. Kaufman, United States Bankruptcy Judge, United States Bankruptcy Court for the

12   Central District of California San Fernando Valley Division, Courtroom 301, 21041 Burbank Blvd.,

13   Woodland Hills, California 91367. [1]  The trial continued on January 28, 2011, February 4, 2011,

14   February 9, 2011, February 10, 2011, February 11, 2011, February 28, 2011, March 7, 2011, March

15   10, 2011, March 17, 2011, March 21, 2011, March 23, 2011, March 24, 2011, March 25, 2011 and

16   March 29, 2011.  Post-trial status conferences and motion hearings were held on April 8, 2011, April

17   28, 2011, May 9, 2011, May 17, 2011, May 19, 2011 and May 19,June 13, 2011 with respect to the

18   "Third Modified Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc.,

19   et al. Dated September 20, 2010," and the "Joint Plan of Reorganization of Meruelo Maddux

20   Properties, Inc., et al. Dated May 3, 2011" (the "Debtors' May 3, 2011 Joint Plan") and with respect

21   to the "Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's

22   Second Modified Fourth Amended Plan of Reorganization Dated October 14, 2010" (the "Second

23   Modified Fourth Amended Charlestown Plan").

24

25

26   _____

27   [1] Pursuant to an order of the Court, this case is being jointly administered with 53 chapter 11 cases
     filed by affiliated entities.  The affiliated case numbers are as follows:  1:09-bk-13338-VK;
28   1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

68132520.168238575.2                    -2-

1    Debtor and debtor in possession Meruelo Maddux Properties, Inc. ("MMPI") and its 53

2    affiliated debtors and debtors in possession (collectively, with MMPI, the "Jointly Administered

3    Debtors") appeared by and through their counsel of record John N. Tedford, IV of Danning, Gill,

4    Diamond & Kollitz, LLP and Gary E. Klausner of Stutman Treister & Glatt Professional

5    Corporation.  Charlestown Capital Advisors, LLC ("Charlestown") and Hartland Asset Management

6    Corporation ("Hartland") appeared by and through their counsel of record Christopher E. Prince of

7    Lesnick Prince LLP and their specially appearing counsel Cynthia M. Cohen of Paul, Hastings,

8    Janofsky & Walker LLP.  The Official Committee of Unsecured Creditors appeared by and through

9    its Bankruptcy Counsel of record Dean G. Rallis, Jr. of Sulmeyer Kupetz A Professional Corporation.

10   The Official Committee of Equity Holders appeared by and through its counsel Kenneth K. Lee of

11   Jenner & Block LLP, Ronald S. Orr of Ron Orr & Professionals, Inc. and Georgiana G. Rodiger of

12   Rodiger Law Offices.  Other appearances for creditors, equity holders and parties in interest were as

13   noted on the official record of proceedings.

14       The Court having considered the pleadings, documents and memoranda filed and presented

15   on behalf of the parties including the following:

16       ➢   Jointly Administered Debtors' Joint Plan of Reorganization of Meruelo Maddux

17           Properties, Inc., et al. Dated November 30, 2009 [Docket No. 899];

18       ➢   Jointly Administered Debtors' First Amended Joint Plan of Reorganization of

19           Meruelo Maddux Properties, Inc., et al. [Docket No. 1133];

20       ➢   Jointly Administered Debtors' Second Amended Joint Plan of Reorganization of

21           Meruelo Maddux Properties, Inc., et al." [Docket No. 1333];

22       ➢   Jointly Administered Debtors' Modified Second Amended Plan of Reorganization of

23           Meruelo Maddux Properties, Inc., et al. [Docket No. 1509];

24       ➢   Submission of Redline of Modified Second Amended Joint Disclosure Statement

25           Describing Second Amended Joint Plan of Reorganization of Meruelo Maddux

26           Properties, Inc., et al. [Docket No. 1512-4.];

27

28

68132520.168238575.2                                   -3-

1    ➤    Charlestown Capital Advisors, LLC's and Hartland Asset Management

2         Corporation's Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al.

3         [Docket No. 1594];

4    ➤    Legendary Investors Group No. 1, LLC's and East West Bank's Joint Chapter 11 Plan

5         of Reorganization Dated August 6, 2010 [Docket No. 1671];

6    ➤    Legendary Investors Group No. 1, LLC's and East West Bank's First Amended Joint

7         Chapter 11 Plan Dated August 26, 2010 [Docket No. 1742];

8    ➤    Jointly Administered Debtors' Third Amended Joint Plan of Reorganization of

9         Meruelo Maddux Properties, Inc., et al." [Docket No. 1771];

10   ➤    Charlestown Capital Advisors, LLC's and Hartland Asset Management

11        Corporation's First Amended Joint Plan of Reorganization of Meruelo Maddux

12        Properties, Inc. et al. [Docket No. 1779];

13   ➤    Legendary Investors Group No. 1, LLC's and East West Bank's Second Amended

14        Joint Chapter 11 Plan of Reorganization Dated September 3, 2010 [Docket No.

15        1787];

16   ➤    Legendary Investors Group No. 1, LLC's and East West Bank's Modified Second

17        Amended Joint Chapter 11 Plan of Reorganization Dated September 3, 2010 [Docket

18        No. 1809];

19   ➤    Debtors Submission of Redline of Fourth Amended Joint Plan of Reorganization of

20        Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010 [Docket No.

21        1845];

22   ➤    Jointly Administered Debtors' Fourth Amended Joint Plan of Reorganization of

23        Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010 [Docket No.

24        1953];

25   ➤    Jointly Administered Debtors' First Modified Fourth Amended Joint Plan of

26        Reorganization of Meruelo Maddux Properties Inc., et al. Dated September 20, 2010

27        [Docket No. 2583];

28

1      ➢    Jointly Administered Debtors' Second Modified Fourth Amended Joint Plan of

2          Reorganization of Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010

3          [Docket No. 2869];

4      ➢    Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated May 3,

5          2011 [Docket No. 3055];

6      ➢    Charlestown Capital Advisors, LLC's and Hartland Asset Management

7          Corporation's Second Amended Joint Plan of Reorganization of Meruelo Maddux

8          Properties, Inc. et al. Dated September 23, 2010 [Docket No. 1862];

9      ➢    Charlestown Capital Advisors, LLC's and Hartland Asset Management

10         Corporation's Third Amended Joint Plan of Reorganization of Meruelo Maddux

11         Properties, Inc. et al. Dated September 30, 2010 [Docket No. 1902];

12      ➢    Charlestown Capital Advisors, LLC's Fourth Amended Joint Plan of Reorganization

13         of Meruelo Maddux Properties, Inc., et al. Dated October 14, 2010 [Docket No.

14         1951];

15      ➢    Charlestown Capital Advisors, LLC's and Hartland Asset Management

16         Corporation's First Modified Fourth Amended Joint Plan of Reorganization of

17         Meruelo Maddux Properties, Inc., et al. Dated October 14, 2010 [Docket No. 2672];

18      ➢    Charlestown Capital Advisors, LLC's and Hartland Asset Management

19         Corporation's Second Modified Fourth Amended Joint Plan of Reorganization of

20         Meruelo Maddux Properties, Inc., et al. Dated October 14, 2010 [Docket No. 3068];

21      ➢    Charlestown Capital Advisors, LLC's and Hartland Asset Management

22         Corporation's Disclosure Statement Describing Fourth Amended Joint Plan of

23         Reorganization of Meruelo Maddux Properties, Inc. et al. Dated October 14, 2011

24         [Docket No. 1952];

25      ➢    Proof of service Of Solicitation Packages, Including Disclosure Statements,

26         Solicitation Letters, Ballots, And Notice Of Hearing On Confirmation Of Proposed

27         Plans And Deadline For Objections To Confirmation [Docket No. 2122];

28      ➢    Affidavit of Robert Q. Klamser Regarding Votes [Docket No. 2320];

➤ Affidavit of David Hartie Regarding Votes [Docket No. 2321];

➤ Charlestown's and Hartland's Opening Brief in Support of Their Proposed Plan of Reorganization [Docket No. 2333];

➤ Declaration of Todd Pollack in Support of Charlestown and Hartland Proposed Plan of Reorganization [Docket No. 2332];

➤ Declaration of Raj Maheshwari in support of Charlestown and Hartland Proposed Plan of Reorganization [Docket No. 2334];

➤ Declaration of Edward F. McGonagle in support of Charlestown's and Hartland's Proposed Plan of Reorganization [Docket No. 2335];

➤ Ex Parte Application For Order Shortening Time On Motion Of Debtors Meruelo Maddux Properties, Inc., et al. For Order Denying Confirmation Of The Charlestown Plan Pursuant To 11 U.S.C. § 1129; Supporting Declaration Of Gary E. Klausner with proof of service [Docket No. 2368];

➤ Notice Of Motion And Motion Of Debtors For Order Denying Confirmation Of The Charlestown Plan; Memorandum Of Points And Authorities In Support Thereof with proof of service [Docket No. 2367];

➤ Opposition to Debtors' Motion For Order Denying Confirmation Of The Charlestown Plan [Docket No. 2417];

➤ Declaration of Raj Maheshwari in Support of Opposition to Debtors' Motion to Deny Confirmation of Charlestown Plan [Docket No. 2418];

➤ Declaration of Riaz Valani in Support of Opposition to Debtors' Motion to Deny Confirmation of the Charlestown Plan [Docket No. 2419];

➤ Reply To Opposition Of Charlestown Capital Advisors, LLC And Hartland Asset Management Corporation And Other Parties In Interest To Motion Of Debtors For Order Denying Confirmation Of The Charlestown Plan [Docket No. 2440];

➤ Declaration Of Anthony Arnold In Support Of Reply To Opposition Of Charlestown Capital Advisors, LLC And Hartland Asset Management Corporation To Motion Of

1    Debtors For Order Denying Confirmation Of The Charlestown Plan [Docket No.

2    2441];

3    ➤ Cathay Bank's Plan Confirmation Statement and Limited Objection [Docket No.

4    2481];

5    ➤ Grand Avenue Lofts, L.P.'s and Grand Avenue Lofts, LLC's Objections to

6    Confirmation of Plans of Reorganization [Docket No. 2498];

7    ➤ Declaration of Jeff Lee in Support of Grand Avenue Lofts, L.P.'s and Grand Avenue

8    Lofts, LLC's Objections to Confirmation of Plans of Reorganization [Docket No.

9    2499];

10    ➤ Chinatrust Objection re Plan Confirmation [Docket No. 2605];

11    ➤ Declaration and Amended Declaration in Support of Objection to Confirmation of

12    Plan of Debtor Legendary and Charlestown Filed by Creditor Chinatrust Bank (USA)

13    [Docket Nos. 2504 and 2565];

14    ➤ Request for Judicial Notice in Support of Conditional Objection of Creditor Los

15    Angeles County Metropolitan Transportation Authority to All Proposed Plans of

16    Reorganization [Docket No. 2509];

17    ➤ Objection to Confirmation of Plans of All Proposed Plans of Reorganization Filed by

18    Interested Party Los Angeles County Metropolitan Transportation Authority [Docket

19    No. 2510];

20    ➤ Objection by the County of Los Angeles Tax Collector to Confirmation of

21    Charlestown Capital Advisors, LLCs and Hartland Asset Management Corporations

22    Fourth Amended Plan of Reorganization of Meruelo Maddux Properties, Inc. et al.,

23    and Request for Judicial Notice in Support Thereof [Docket No. 2511 and 2512];

24    ➤ Opposition To Charlestown Capital Advisors, LLC's And Hartland Asset

25    Management Corporation's Proposed Plan Of Reorganization [Docket No. 2523];

26    ➤ Debtors Evidentiary Objections To The Declarations Filed In Support Of

27    Charlestown Capital Advisors, LLCs And Hartland Asset Management Corporations

28

68132520.1 68238575.2

-7-

1    Proposed Plan Of Reorganization; Declaration Of Carol Chow In Support Thereof

2    [Docket No. 2524];

3    ➢  Declaration Of M. Freddie Reiss In Support Of Debtors' Opposition To Confirmation

4    Of The Charlestown Plan And The Legendary/EWB Plan [Docket No. 2525];

5    ➢  Supplemental Declaration of Richard Meruelo in Support of the Fourth Amended

6    Debtors' Plan [Docket No. 2544];

7    ➢  Joinder to Debtors' Objection to Confirmation of the Charlestown Plan with proof of

8    service [Docket No. 2528];

9    ➢  Omnibus Reply of Charlestown Capital Advisors, LLC and Hartland Asset

10    Management Corporation In Support of Their Proposed Plan of Reorganization

11    [Docket No. 2586];

12    ➢  Declaration of Edward R. McGonagle in Support of Omnibus Reply of Charlestown

13    Capital Advisors, LLC and Hartland Asset Management Corporation in Support of

14    Their Proposed Plan of Reorganization [Docket No. 2588];

15    ➢  Appendix of Evidence In Support of Omnibus Reply of Charlestown Capital

16    Advisors, LLC and Hartland Asset Management Corporation in Support of Their

17    Proposed Plan of Reorganization [Docket No. 2590];

18    ➢  Notice of Motion and Motion to Modify the Charlestown Plan [Docket No. 2672];

19    ➢  Charlestown Capital Advisors LLC's and Hartland Asset Management Corporation's

20    First Modified Fourth Amended Chapter 11 Plan of Reorganization Dated October 14,

21    2010 [Docket No. 2672-1];

22    ➢  County of Los Angeles Tax Collector's Opposition to Motion to Modify the

23    Charlestown Plan [Docket No. 2726];

24    ➢  Debtors' Response to Motion to Modify the Charlestown Plan [Docket No. 2737];

25    ➢  Statement of the Official Committee of Unsecured Creditors in Support of "Motion to

26    Modify the Charlestown Plan" [Docket No. 2672] Filed by Charlestown Advisors,

27    LLC and Hartland Asset Management Corporation [Docket No. 2740];

28    ➢  Reply in Support of Motion to Modify the Charlestown Plan [Docket No. 2846];

➢ Bank of America N.A.'s Limited Joinder to Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation's Motion to Modify the Charlestown Plan [Docket No. 2847];

➢ California Bank & Trust's Joinder in Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation's Motion to Modify the Charlestown Plan and Reply in Support of Motion to Modify the Charlestown Plan [Docket No. 2850];

➢ Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's Notice of Filing Revised Exhibit E (Financial Projections) [Docket No. 2891];

➢ Notice of Filing of Commitment Letter in Support of Proposed Chapter 11 Plan of Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation [Docket 2896];

➢ Order Granting Motion to Modify the Charlestown Plan [Docket No. 2984];

➢ Statement as to the Equity Committee's Board Nominees under the Charlestown Plan [Docket No. 2909];

➢ Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's [sic] Revised Disclosure of Proposed Directors for MMPI [Docket No. 2914];

➢ Report of United States Trustee re: Order Referring Concerns Raised by Members of the Official Committee of Equity Holders to the Office of the United States Trustee [Docket No. 2964];

➢ Notice of Motion and Motion for Authority to Further Modify the Charlestown Plan and to Approve Change of Votes of Cathay Bank and MS Kearny CT 1 LLC as Successor to China Trust Bank, USA[Docket No. 3065];

➢ Declarations of Gregory Badura, Jeffrey A. Dritley and Edward F. McGonagle in Support of the Charlestown Plan Proponents' Motion to Further Modify the Charlestown Plans and to Approve Change of Votes [etc] [Docket No. 3066];

➤ Notice of Filing of Further Updated Chart of Classes and Associated Votes [Docket No. 3071];

➤ Notice of Filing First Supplement to Charlestown Plan [Docket No. 3070];

➤ Notice of Filing of Second Supplement to Charlestown Plan [Docket No. 3120];

➤ Debtors' Opposition to Charlestown's Motion for Authority to Further Modify the Charlestown Plan [Docket No. 3098];

➤ Debtors' Request for Judicial Notice in Support of Debtors' Opposition to Further Modify the Charlestown Plan [Docket No. 3100];

➤ Declaration of Cynthia M. Cohen Re: Waiver of Condition Precedent to Making of Commitment Letter Equity Investments and Loan [Docket No. 3128];

➤ Second Declaration of Cynthia M. Cohen Re: Waiver of Condition Precedent to Making of Commitment Letter Equity Investments and Loan [Docket No. 3135];

➤ Jointly Administered Debtors' Response To "Notice Of Filing First Supplement To Charlestown Plan" [Docket No. 3117];

➤ Charlestown Proponents' Reply to "Debtors' Response to Notice of Filing First Supplement to Charlestown Plan" [Docket No. 3127];

➤ Charlestown Proponents' Statement Re Cash as or Near the Effective Date and Post-Effective Date Debt Service [Docket No. 3126];

➤ Jointly Administered Debtors' Status Conference Report with proof of service [Docket No. 3134];

➤ Response Of The Official Committee Of Unsecured Creditors To The Court's Request For Updated Financial Projections From The Debtors [Docket NO. 3136];

➤ Notice of Motion and Motion for Order: (1) Striking Evidence Improperly Received After the Close of Trial Through Judicial Notice, and (2) Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3) Scheduling a Hearing to Consider Fair Value [Docket No. 3148];

➤ *Ex Parte* Application for Order Shortening Time on Debtors' Motion for Order: (1) Striking Evidence Improperly Received After the Close of Trial Through Judicial

1                Notice, and (2) Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3)

2                Scheduling a Hearing to Consider Fair Value [Docket No. 3150];

3       ➤   Submission of Exhibit 2 to the *Ex Parte* Application for Order Shortening Time on

4                Debtors' Motion for Order: (1) Striking Evidence Improperly Received After the

5                Close of Trial Through Judicial Notice, and (2) Reconsidering Plan Confirmation

6                Ruling, Or, In the Alternative, (3) Scheduling a Hearing to Consider Fair Value

7                [Docket No. 3152];

8       ➤   Joinder of Richard Meruelo In Support of the Debtors' "Motion for Order: (1)

9                Striking Evidence Improperly Received After the Close of Trial Through Judicial

10              Notice, and (2) Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3)

11              Scheduling a Hearing to Consider Fair Value" [Docket No. 3151];

12      ➤   Joinder of John Charles Maddux et al. To Debtors' Motion for Order: (1) Striking

13              Evidence Improperly Received After the Close of Trial Through Judicial Notice, and

14              (2) Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3) Scheduling a

15              Hearing to Consider Fair Value [Docket No. 3159];

16      ➤   Charlestown Proponents' Opposition to Debtors' Motion for Order: (1) Striking

17              Evidence Improperly Received After the Close of Trial Through Judicial Notice, and

18              (2) Reconsidering Plan Confirmation Ruling, Or In the Alternative, (3) Scheduling a

19              Hearing to Consider Fair Value [Docket No. 3178];

20      ➤   Opposition of the Official Committee of Unsecured Creditors to "Motion for Order:

21              (1) Striking Evidence Improperly Received After the Close of Trial Through Judicial

22              Notice, and (2) Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3)

23              Scheduling a Hearing to Consider Fair Value," [Dkt No. 3148], Filed by Debtors and

24              Debtors In Possession [Docket No. 3179];

25      ➤   Joinder of the Los Angeles County Metropolitan Transportation Authority to

26              Opposition to Debtors' Motion for Order: (1) Striking Evidence Improperly Received

27              After the Close of Trial Through Judicial Notice, and (2) Reconsidering Plan

28

Confirmation Ruling, Or, In the Alternative, (3) Scheduling a Hearing to Consider
Fair Value [Docket No. 3180];

➢ Opposition to Motion for Order: (1) Striking Evidence Improperly Received After the
Close of Trial Through Judicial Notice, and (2) Reconsidering Plan Confirmation
Ruling, Or, In the Alternative, (3) Scheduling a Hearing to Consider Fair Value
[Docket No. 3181];

➢ Bank of America, N.A.'s Initial Opposition to Debtors' Motion for Order: (1)
Striking Evidence Improperly Received After the Close of Trial Through Judicial
Notice, and (2) Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3)
Scheduling a Hearing to Consider Fair Value [Docket No. 3182];

➢ Secured Creditor PNL Pomona, L.P.'s Opposition to Debtors' Motion for Order (1)
Striking Evidence Improperly Received After Close of Trial and (2) Reconsidering
Plan Confirmation Ruling, Alternatively, Scheduling Hearing to Consider Fair Value
[Docket No. 3183];

➢ Joint Limited Response in Support of the Motion for Order: (1) Striking Evidence
Improperly Received After the Close of Trial Through Judicial Notice, and (2)
Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3) Scheduling a
Hearing to Consider Fair Value [Docket No. 3214];

➢ Notice of Motion and Debtors' Motion for (1) Authority to Sell Real Property
Located at 905 East 8th Street, Los Angeles, California, Free and Clear of Liens, (2)
Authority to Assume and Assign Unexpired Leases, and (3) Waiver of Stay Per
F.R.B.P. 6004(h) and 6006(d); and Declaration of John Charles Maddux in Support
Thereof [Docket No. 3144];

➢ Notice of Motion and Omnibus Motion of Debtors-In-Possession for [1] Authority to
Sell Real Properties Free and Clear of Liens, [2] Authority to Assume and Assign
Unexpired Leases, [3] Authority to Enter Into License Agreement and [4] Waiver of
Stay Per F.R.B.P. 6004(h) and 6006(d); and Declaration of John Charles Maddux and
Request for Judicial Notice in Support Thereof [Docket No. 3173];

1      ➢    Notice of Errata Re:  Exhibits 6 and 8 to Omnibus Motion of Debtors-In-Possession

2          for [1] Authority to Sell Real Properties Free and Clear of Liens, [2] Authority to

3          Assume and Assign Leases, [3] Authority to Enter Into License Agreement and [4]

4          Waiver of Stay Per F.R.B.P. 6004(h) and 6006(d) [Docket No. 3177];

5      ➢    Notice of Motion and Second Omnibus Motion of Debtors-In-Possession for [1]

6          Authority to Sell Real Properties Free and Clear of Liens, [2] Authority to Assume

7          and Assign Unexpired Leases, and [3] Waiver of Stay per F.R.B.P. 6004(h) and

8          6006(d); Declaration of John Charles Maddux and Request for Judicial Notice in

9          Support Thereof [Docket No. 3186]

10      And having heard and considered the arguments and representations of counsel and the

11  testimony offered and received by declaration, by deposition and live at trial on behalf of the parties,

12  having received in evidence the trial exhibits admitted during the trial and other documentary

13  evidence submitted prior to trial on behalf of the parties in accordance with the confirmation

14  procedures adopted by the Court; having judicially noticed pleadings and transcripts in the Court's

15  official records, pleadings in the official records of other courts which were the subject of requests

16  for judicial notice made by the parties and information capable of accurate and ready determination

17  by resort to sources whose accuracy cannot reasonably be questioned and on which the parties have

18  had the opportunity to be heard; and having considered the pleadings, memoranda and declarations

19  filed on behalf of the parties in connection with the post-trial status conferences and hearings,

20  including in support of and in opposition to the Jointly Administered Debtors' Motion for Order: (1)

21  Striking Evidence Improperly Received After the Close of Trial Through Judicial Notice, and (2)

22  Reconsidering Plan Confirmation Ruling, Or, In the Alternative, (3) Scheduling a Hearing to

23  Consider Fair Value (the "Jointly Administered Debtors' Reconsideration Motion"); having

24  considered the proceedings heretofore had herein, having considered the record in these chapter 11

25  cases on behalf of the Jointly Administered Debtors and the non-jointly administered affiliated

26  debtors Meruelo Maddux - 845 S. Flower Street, LLC ("845 S. Flower") and Meruelo Chinatown,

27  LLC ("Chinatown"), and the Court, on May 19, 2011, having announced its oral ruling ~~to~~

28  ~~confirm~~confirming the Charlestown Second Modified Fourth Amended Plan with such further

1    modifications as made in Court and set forth in the confirmation order entered concurrently herewith,

2    and the Court, on June 13, 2011, having announced its oral ruling denying the Jointly Administered

3    Debtors' Reconsideration Motion for the reasons set forth in the official record of said hearing, and

4    good cause appearing,

5          NOW, THEREFORE, TO EFFECTUATE ITS ORAL ~~RULING~~RULINGS, THE COURT

6    MAKES ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW AS FOLLOWS:

7                                    **FINDINGS OF FACT**

8          1.    The Jointly Administered Debtors filed voluntary petitions for relief under chapter 11

9    of the Bankruptcy Code on March 26 and 27, 2009.

10          2.    845 S. Flower and Chinatown filed voluntary petitions for relief under chapter 11 of

11   the Bankruptcy Code on September 3, 2009.

12          3.    MMPI was incorporated under the laws of the State of Delaware in 2006.  Subsequent

13   to its incorporation and prior to the filing of its chapter 11 petition, MMPI had an initial public

14   offering ("IPO") of its common stock.  The IPO was consummated on January 30, 2007.  Pursuant to

15   the IPO, 40 million shares of MMPI were sold to the public and 5.5 million shares were sold to the

16   underwriters of the IPO.  The IPO raised approximately $425.7 million in proceeds net of the

17   underwriting discount but before expenses related to the IPO.

18          4.    As of October 22, 2010 (the date Solicitation Packages were served), ~~there were~~

19   ~~87,845,785~~45,189,587 shares of MMPI's outstanding common stock ~~outstanding, 45,189,587 of~~

20   ~~which~~ were held or beneficially owned by Richard Meruelo ~~and,~~ John Maddux ~~(together with,~~ other

21   members of MMPI's management and/or entities owned or controlled by the foregoing~~)~~

22   (collectively, "Insider Equity") and the remainder of shares not held by Insider Equity were held by

23   public shareholders ("Non-Insider Equity").

24          5.    The other Jointly Administered Debtors were formed under either the laws of the

25   State of Delaware or the laws of the State of California.  The Jointly Administered Debtors formed

26   under the laws of the State of Delaware are registered with the California Secretary of State and are

27   authorized to do business in the State of California.

28

6.    MMPI holds a 99.6% ownership interest in Jointly Administered Debtor Meruelo Maddux Properties, L.P. ("MMPLP").  MMPLP, in turn, owns 100% of the common stock of Jointly Administered Debtor Meruelo Maddux Construction, Inc. ("MM Construction"), 99% of the membership units in Jointly Administered Debtor Meruelo Maddux Management, LLC ("MM Management") and 99% of Funes Architecture, LLC ("Funes").  MM Construction owns the remaining 1% of the membership units in MM Management and Funes.

7.    MMPLP also owns 100% of the membership units in Jointly Administered Debtor MMP Ventures, LLC ("MMP Ventures").  MMP Ventures, in turn, owns 100% of the stock or membership interests in the Jointly Administered Debtors which currently hold or previously held on the date they filed chapter 11 petitions, title to various real properties and real estate projects (collectively, the "Property Level Debtors") and also owns 100% of membership units in 845 S. Flower and Chinatown which previously owned real property on the date it filed a chapter 11 petition (845 S. Flower) or currently owns real property (Chinatown).

8.    On April 22, 2009, the Office of the United States Trustee appointed the members of the Official Committee of Unsecured Creditors (the "OCC").  The members of the OCC changed during the pendency of chapter 11 cases of the Jointly Administered Debtors.

9.    On July 19, 2010, the Office of the United States Trustee appointed the members of the Official Committee of Equity Holders (the "OEC").  The members of the OEC changed during the pendency of the chapter 11 cases of the Jointly Administered Debtors.

10.    On July 22, 2009, the Court entered an order establishing September 24, 2009 as the bar date for filing certain proofs of claim against the Jointly Administered Debtors.  Pursuant to stipulation between the Jointly Administered Debtors and the OCC, proofs of claim that had been timely filed against the wrong debtor before the bar date were deemed to have been timely filed against the correct debtor.

11.    On November 30, 2009, the Jointly Administered Debtors filed their "Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated November 30, 2009 [Docket No. 899; Charlestown /OEC Trial Exhibit 53] (the "First Debtors' Plan").  The First Debtors' Plan provided that holders of equity interests in MMPI would receive no distributions of cash or property

1    and a "New Value Investor" would receive 100% of MMPI (and with it all of the other Jointly

2    Administered Debtors) in exchange for a $10 million investment.  The "New Value Investor" was

3    not identified in the First Debtors' Plan, but it was revealed later that the "New Value Investor" was

4    to be an entity controlled by Richard Meruelo and John Maddux.

5        12.    On February 27, 2010, the Jointly Administered Debtors filed their "First Amended

6    Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al." [Docket No. 1133;

7    Charlestown/OEC Trial Exhibit 54] (the "First Amended Debtors' Plan").  The First Amended

8    Debtors' Plan provided that holders of equity interests in MMPI would receive no distributions of

9    cash or property other than the right to participate in a rights offering in which a total of 500,000

10   shares would be sold for $20 per share.  The shares would be unregistered and non-transferable and

11   the total number of shareholders would be limited to 200.

12       13.    On May 1, 2010, the Jointly Administered Debtors filed their "Second Amended Joint

13   Plan of Reorganization of Meruelo Maddux Properties, Inc., et al." [Docket No. 1333;

14   Charlestown/OEC Trial Exhibit 55] (the "Second Amended Debtors' Plan").  The Second Amended

15   Debtors' Plan provided that holders of equity interests in MMPI would receive no distributions of

16   cash or property other than the right to participate in a rights offering which would be made available

17   first to Richard Meruelo and John Maddux ~~and then, if any shares remained unpurchased, select~~for

18   their acquisition of a majority of the shares to be offered and then to existing equity holders ~~that~~

19   ~~qualified as accredited investors~~who met the Jointly Administered Debtors' definition of "Eligible

20   Investors," with the balance of any offered but unpurchased shares made available to Messers.

21   Meruelo and Maddux.  The total purchase price for all shares would be $10 million.  The shares

22   would be unregistered and subject to transfer restrictions and the debtors would be granted the power

23   to implement certain procedures to prevent the number of shareholders from surpassing 250.

24       14.    On June 10, 2010, the Jointly Administered Debtors filed their "Modified Second

25   Amended Plan of Reorganization of Meruelo Maddux Properties, Inc., et al." [Docket No. 1509] (the

26   "Modified Second Amended Debtors' Plan").  The Modified Second Amended Debtors' Plan

27   provided that holders of equity interests in MMPI would be offered a choice surrendering their

28   shares in return for $.08 cents per share or purchasing for $.07 per a number of shares in reorganized

1    MMPI equal to the number of existing shares they held in MMPI.  The shares would be unregistered

2    and subject to transfer restrictions and the debtors would be granted the power to implement certain

3    procedures to prevent the number of shareholders from surpassing 299.  The redemption price of

4    $.08 per share was based on the price at which the shares were being traded over the counter.

5    (Testimony of M. Freddie Reiss February 11, 2011, reflected in the Official Transcript of

6    Proceedings of February 11, 2011 at 17:12 - 18:9.)

7    15.    On June 11, 2010, the Court entered an order terminating, effective June 14, 2010, as

8    to Charlestown, Hartland and the OEC, if formed, the exclusive period within which only the Jointly

9    Administered Debtors may file and solicit and obtain acceptances for a plan(s) of reorganization, but

10    extending the exclusivity period to September 30, 2010 as to parties other than Charlestown,

11    Hartland and the OEC [Docket No. 1513].

12    16.    On or before June 12, 2009, the Jointly Administered Debtors filed their schedules of

13    assets and liabilities and their statements of financial affairs.  Amendments to the schedules of assets

14    and liabilities were filed on August 9, 2010.

15    17.    Prior to the termination of exclusivity, the Jointly Administered Debtors, on behalf of

16    the bankruptcy estates, negotiated settlements with secured creditors which were approved by the

17    Court and were binding on the bankruptcy estates of the Property Level Debtors and, where they so

18    provided, the bankruptcy estate of MMPI.  These settlements obligated the creditors which were

19    parties to them to vote for and support the plan of the Jointly Administered Debtors which were

20    parties to them.  Additional similar settlements were entered into by the Jointly Administered

21    Debtors after the termination of exclusivity.

22    18.    Prior to the termination of exclusivity, the Jointly Administered Debtors also entered

23    into a written Settlement Agreement with the County of Los Angeles with respect to the payment of

24    real property tax claims against the Property Level Debtors.  The Settlement Agreement provided

25    that it applied to the debtors identified on Schedule A to the Settlement Agreement, the reorganized

26    debtors and their successors and assigns.  The Settlement Agreement was approved by orders of the

27    Court entered August 13, 2010 and December 15, 2010 [Docket Nos. 1689 and 2400].

28

19.    On July 14, 2010, Charlestown and Hartland filed their "Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al." [Docket No. 1594] (the "First Charlestown Plan").  The First Charlestown Plan offered ~~equity interest~~Non-Insider Equity Interest holders in MMPI the option of receiving ~~shares~~$10.00 and one share in reorganized MMPI for each 100 shares of existing MMPI common stock or selling their shares for $.16 per share.  Insider Equity Interest holders in MMPI were not offered the option of receiving shares in a reorganized MMPI and were to receive $.16 per share for each of their existing shares in MMPI.

20.    On August 25, 2010, the Court entered an order terminating as to Legendary Investors Group No. 1, LLC ("Legendary") and East West Bank ("East West") the exclusive period within which only the Jointly Administered Debtors may file and solicit and obtain acceptances for a plan(s) of reorganization [ Docket No. 1736].

21.    On August 6, 2010, Legendary and East West filed their "Legendary Investors Group No. 1, LLC's and East West Bank's Joint Chapter 11 Plan of Reorganization Dated August 6, 2010" [Docket No. 1671] (the "First Legendary Plan").  The First Legendary Plan did not offer a cash-out election to equity interest holders in MMPI.

22.    On August 26, 2010, Legendary and East West filed their "Legendary Investors Group No. 1, LLC's and East West Bank's First Amended Joint Chapter 11 Plan Dated August 26, 2010" [Docket No. 1742] (the "First Amended Legendary Plan").  The First Amended Legendary Plan did not offer a cash-out election to equity interest holders in MMPI.

23.    On September 1, 2010, the Jointly Administered Debtors filed their "Third Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al." [Docket No. 1771] (the "Third Amended Debtors' Plan").  The Third Amended Debtors' Plan did not offer a cash-out option to equity interest holders in MMPI.

24.    On September 2, 2010, Charlestown and Hartland filed their "Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's First Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc. et al." [Docket No. 1779] (the "First Amended Charlestown Plan").  The First Amended Charlestown Plan offered ~~equity interest~~Non-Insider

1    Equity Interest holders in MMPI the option of receiving shares in a reorganized MMPI and the right

2    to participate in a rights offering or selling their shares for $.16 per share.  Insider Equity Interest

3    holders in MMPI were not offered the option of receiving shares in a reorganized MMPI or

4    participating in a rights offering and were to receive $.16 per share for each of their existing shares in

5    MMPI.

6         25.    On September 3, 2010, Legendary and East West filed their "Legendary Investors

7    Group No. 1, LLC's and East West Bank's Second Amended Joint Chapter 11 Plan of

8    Reorganization Dated September 3, 2010" [Docket No. 1787] (the "Second Amended Legendary

9    Plan").  The Second Amended Legendary Plan did not offer a cash-out option to equity interest

10   holders in MMPI.

11        26.    On September 10, Legendary and East West filed their "Legendary Investors Group

12   No. 1, LLC's and East West Bank's Modified Second Amended Joint Chapter 11 Plan of

13   Reorganization Dated September 3, 2010" [Docket No. 1809] (the "Modified Second Amended

14   Legendary Plan").  The Modified Second Amended Legendary Plan did not offer a cash-out option

15   to equity interest holders in MMPI.

16        27.    On September 21, 2010, the Jointly Administered Debtors filed a redlined version of

17   their "Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc. Dated

18   September 20, 1010" [Docket No. 1845; Charleston/OEC Trial Exhibit 58] (the "Redlined Fourth

19   Amended Debtors' Plan").  The Redlined Fourth Amended Debtors' Plan provided that holders of

20   equity interests in MMPI could elect to retain their equity interests in MMPI or redeem them for $.25

21   per share.  The redemption price of $.25 per share was based on the price at which the shares were

22   being traded over the counter.  (Testimony of M. Freddie Reiss February 11, 2011, reflected in the

23   UnofficialOfficial Transcript of Proceedings of February 11, 2011 at 2517:912 - 2618:10.9.)

24        28.    On September 24, 2010, Charlestown and Hartland filed their "Charlestown Capital

25   Advisors, LLC's and Hartland Asset Management Corporation's Second Amended Joint Plan of

26   Reorganization of Meruelo Maddux Properties, Inc. et al. Dated September 23, 2010" [Docket No.

27   1862] (the "Second Amended Charlestown Plan").  The Second Amended Charlestown Plan offered

28   equity interest holders in MMPI the option of receiving shares in reorganized MMPI or selling their

1  shares for $.16 per share Non-Insider Equity Interest holders and Insider Equity Interest holders

2  essentially the same treatment as in the First Amended Charlestown Plan.

3        29.   On September 30, 2010, Charlestown and Hartland filed their "Charlestown Capital

4  Advisors, LLC's and Hartland Asset Management Corporation's Third Amended Joint Plan of

5  Reorganization of Meruelo Maddux Properties, Inc. et al. Dated September 30, 2010" [Docket No.

6  1902] (the "Third Amended Charlestown Plan").  The Third Amended Charlestown Plan offered

7  equity interest Non-Insider Equity Interest holders the option of receiving their pro rata share of

8  approximately 8.8 million shares in a reorganized MMPI (to comprise 45% of reorganized MMPI)

9  or selling their shares for $.35 cents per share.  Insider Equity Interest holders were to receive the

10  same treatment as Non-Insider Equity Interest holders, but their distributions of cash or shares were

11  to be delayed during the pendency of litigation against them.

12        30.   On October 14, 2010, Charlestown and Hartland filed their "Charlestown Capital

13  Advisors, LLC's Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc.,

14  et al. Dated October 14, 2010" [Docket No. 1951] (the "Fourth Amended Charlestown Plan").  The

15  Fourth Amended Charlestown Plan offered equity interest both Non-Insider Equity Interest holders

16  and Insider Equity Interest holders the option of receiving retaining their existing shares in

17  reorganized MMPI or selling their shares for $.35 cents per share to MMPI Acquisition, LLC

18  ("MMPIA"), but regardless of how many Interest holders elected to sell their shares, each

19  shareholder was required to sell a sufficient number of shares on a pro rata basis to ensure that

20  MMPIA would be able to purchase 55% of all MMPI shares.  Distributions of cash to Insider Equity

21  Interest holders were to be delayed during the pendency of litigation against them.

22        31.   On October 14, 2010, the Jointly Administered Debtors filed their "Fourth Amended

23  Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010"

24  [Docket No. 1953] (the "Fourth Amended Debtors' Plan").  The Fourth Amended Debtors' Plan

25  provided that holders of equity interests in MMPI could elect to retain their equity interests in MMPI

26  or redeem them for $.25 per share, but altered the right of the OEC to support three of the seven

27  members of the board of directors of MMPI.  The redemption price of $.25 per share was based on

28  the price at which the shares were being traded over the counter.  (Testimony of M. Freddie Reiss

February 11, 2011, reflected in the Unofficial Transcript of Proceedings of February 11, 2011 at 25:9 – 26:10.)

32.    The evolution of the joint plans of reorganization from the First Debtors' Plan through the First Amended Debtors' Plan, the Second Amended Debtors' Plan, the Modified Second Amended Debtors' Plan, the First Charlestown Plan, the First Legendary Plan, the First Amended Legendary Plan, the Third Amended Debtors' Plan, the First Amended Charlestown Plan, the Second Amended Legendary Plan, the Modified Second Amended Legendary Plan, the Second Amended Charlestown Plan, the Third Amended Charlestown Plan, the Fourth Amended Charlestown Plan and the Fourth Amended Debtors' Plan reflected an increase in the consideration being offered to equity holders in MMPI from no cash or property in the First Debtors' Plan to $.25 in the Fourth Amended Debtors' Plan and $.35 in the Fourth Amended Charlestown Plan.

33.    On October 19, 2010, the Court entered an amended order approving the "Debtors' Fourth Amended Disclosure Statement Describing Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al. Dated September 20, 2010" [Docket No. 1963] (the "Debtors' Disclosure Statement").

34.    On October 19, 2010, the Court entered an order approving "Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporation's Disclosure Statement Describing Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties, Inc. et al. Dated October 14, 2010" [Docket No. 1978] (the "Charlestown Disclosure Statement").

35.    On October 19, 2010, the Court entered an order approving the "Amended Disclosure Statement for Legendary Investors Group No. 1, LLC's and East West Bank's Modified Second Amended Joint Chapter 11 Plan of Reorganization Dated September 3, 2010" [Docket No. 1981] (the "Legendary Disclosure Statement").

36.    On October 19, 2010, the Court entered an order requiring service of Solicitation Packages by October 22, 2010 and an order specifying the required contents of the Solicitation Packages [Docket Nos. 1987 and 1988].  The Solicitation Packages included, among other things, the Debtors' Disclosure Statement, the Fourth Amended Debtors' Plan, the Charlestown Disclosure

1    Statement, the Fourth Amended Charlestown Plan, the Legendary Disclosure Statement and the

2    Modified Second Amended Legendary Plan.

3         37.  Also included in the Solicitation Packages was a letter from the OEC stating that the

4    OEC supports the Fourth Amended Charlestown Plan and strongly urging Non-Insider Equity

5    holders to vote to accept and indicate a preference for the Fourth Amended Charlestown Plan and

6    vote to reject the Fourth Amended Debtors' Plan and Modified Second Amended Legendary Plan.

7    The OEC's letter also described the treatment of Non-Insider Equity holders under the three plans

8    and stated that the OEC had participated in the negotiation and documentation of those portions of

9    the Fourth Amended Charlestown Plan that relate to the treatment of Non-Insider Equity holders.

10    The OEC's letter was attached as an exhibit to an order of the Court approving the letter as

11    containing adequate disclosure and allowing its inclusion in the Solicitation Packages [Docket No.

12    1985].

13         38.  The Court ordered the Jointly Administered Debtors, Charlestown and Hartland and

14    Legendary and East West to file written briefs and declarations in support of confirmation of their

15    respective plans by December 3, 2010, written briefs and declarations in opposition to confirmation

16    of other plans by December 23, 2010 and written reply briefs in support of the confirmation of their

17    respective plans and in response to opposition briefs by January 14, 2011.  [Docket No. 1987].  The

18    deadline for filing briefs and declarations in opposition was extended to December 30, 2010 by a

19    later order entered December 17, 2010 [Docket No. 2432].  The parties filed written briefs and

20    declarations in support of and in opposition to confirmation of the three plans.

21         39.  On December 3, 2010, Charlestown and Hartland filed the Declaration of Todd

22    Pollack in support of the Fourth Amended Charlestown Plan [Docket No. 2332].  Mr. Pollack's

23    declaration was offered as an expert's declaration and contained his opinion that the Common

24    Secured Lender Treatment of 5.25% interest for a term of four years as proposed in the Fourth

25    Amended Charlestown Plan falls within the interest rate range that was currently being utilized in

26    lending markets at that time.

27         40.  On December 16, 2010, Charlestown and Hartland filed the Declaration of Raj

28    Maheshwari in Support of the Fourth Amended Charlestown Plan [Docket No. 2418.

68132520.168238575.2

-22-

1  Charlestown/OEC Trial Exhibit No. 136.].  The declaration identified the following proposed

2  officers of reorganized MMPI:  Martin Caverly as interim Chief Executive Officer, Ted McGonagle

3  as interim Chief Operating Officer and Fred Skaggs as Chief Financial Officer.  Biographies or

4  resumes for Messrs. Caverly and McGonagle were annexed to the declaration as Exhibit C.

5        41.    On January 6, 2011, the Jointly Administered Debtors filed the Supplemental

6  Declaration of Richard Meruelo in Support of the Fourth Amended Debtors' Plan [Docket No. 2544].

7  Annexed to the Supplemental Declaration as Exhibit 1 was a letter and term sheet dated September

8  22, 2010 from Watermarke Properties, Inc. ("Watermarke") which evidenced the commitment of

9  Watermarke to fund an exit financing loan called for by the Fourth Amended Debtors' Plan (the

10  "Watermarke Commitment").  The Watermarke Commitment provided that, at Watermarke's

11  election, at any time after the fourth anniversary of the funding, the $15 million principal amount of

12  the loan could be converted into 30 million shares of MMPI common stock with a pro rata

13  adjustment for accrued interest.  The conversion of $15 million into 30 million shares would equal a

14  conversion price four years after confirmation of $.50 per share and a present value conversion price

15  as of the date of confirmation of less than $.50 per share.  The conversion price would be lower if

16  accrued interest were also converted into shared common stock.

17        42.    On January 14, 2011, the Jointly Administered Debtors' filed their First Modified

18  Fourth Amended Joint Plan of Reorganization of Meruelo Maddux Properties Inc., et al. Dated

19  September 20, 2010" [Docket No. 2583] (the "First Modified Fourth Amended Debtors' Plan").  The

20  modifications in the First Modified Fourth Amended Debtors' Plan related to a settlement between

21  the Jointly Administered Debtors and Legendary that were binding on the bankruptcy estates.  The

22  modifications and settlement were approved by the Court on January 24, 2011 without the

23  requirement of resolicitation [Docket No. 2652].

24        43.    Trial as to the First Modified Fourth Amended Debtors' Plan and the Fourth Amended

25  Charlestown Plan commenced on January 27, 2011.  Trial did not commence as to the Modified

26  Second Amended Legendary Plan and Legendary and East West subsequently withdrew the

27  Modified Second Amended Legendary Plan.

28

68132520.168238575.2

-23-

1    44.    During the course of the confirmation trial both the Jointly Administered Debtors and

2    Charlestown and Hartland proposed modifications of their respective plans.  The modifications

3    made during the course of the trial were approved by the Court without the requirement of

4    resolicitation.  The modifications made by the Jointly Administered Debtors during the confirmation

5    trial resulted in the "Second Modified Fourth Amended Joint Plan of Reorganization of Meruelo

6    Maddux Properties, Inc., et al. Dated September 20, 2010" [Docket No. 2869] (the "Second

7    Modified Fourth Amended Debtors' Plan").  The modification of the Fourth Amended Charlestown

8    Plan made during the course of the confirmation trial resulted in the "Charlestown Capital Advisors,

9    LLC's and Hartland Asset Management Corporation's First Modified Fourth Amended Joint Plan of

10    Reorganization of Meruelo Maddux Properties, Inc., et al. Dated October 14, 2010" [Docket No.

11    2672-1] (the "First Modified Fourth Amended Charlestown Plan").

12    45.    On March 23, 2011, during the confirmation trial, Charlestown and Hartland filed a

13    commitment letter dated March 22, 2011 (the "Commitment Letter") from GAC Real Estate

14    Partners, LLC ("GAC Real Estate") and Mount Kellett Capital Management LP ("Mount Kellett")

15    which evidenced the commitment of GAC Real Estate and Mount Kellett to fund on the terms set

16    forth in the Commitment Letter, the exit financing Equity Investment and Secured Loan called for in

17    the Fourth Amended Charlestown Plan and First Modified Fourth Amended Charlestown Plan.

18    [Docket No. 2896].  Annexed as Exhibit C to the Commitment Letter was an Escrow Agreement

19    with Wells Fargo Bank, National Association evidencing the agreement of GAC Real Estate and

20    Mount Kellett to deposit into a separate escrow account at Wells Fargo Bank the $4 million which

21    would serve as the non-refundable deposit and liquidated damages described in the Fourth Amended

22    Charlestown Plan and First Modified Fourth Amended Charlestown Plan.  The $4 million was

23    deposited into the escrow account in accordance with the Escrow Agreement.

24    46.    The Commitment Letter contains specified Conditions Precedent to the obligations of

25    GAC Real Estate and Mount Kellett to fund the Equity Investment and Loan.  One Condition

26    Precedent is agreement upon and entry into an Amended and Restated Operating Agreement of

27    MMPI Acquisition, LLC ("MMPI")MMPIA and agreement upon and entry into the Loan documents.

28    Counsel for GAC Real Estate, who has appeared specially for Charlestown and Hartland,

1    represented to the Court that the Amended and Restated Operating Agreement had been agreed upon

2    and signed and, therefore, that this Condition Precedent has been satisfied.  The Court accepts the

3    representation of counsel as an officer of the Court.  Said counsel also represented that loan

4    documents relating to the Secured Loan had been agreed upon.  The loan documents relating to the

5    Secured Loan were filed with the Court in the "First Supplement to Charlestown Plan" filed May 5,

6    2011 [Docket No. 3070].  Although the loan documents have not been executed, the Court finds that

7    this Condition Precedent has been satisfied because the loan documents cannot be executed unless

8    and until there is a confirmed plan whose Effective Date occurs.

9        47.    Another Condition Precedent specified in the Commitment Letter is that there be at

10    least $5.5 million in unrestricted and unencumbered cash of MMPI on the Effective Date.  As set

11    forth below, the Court finds that this Condition Precedent will be satisfied and, in any event, there

12    has been filed with the Court evidence of written waivers by GAC Real Estate and Mount Kellett of

13    this Condition Precedent [Docket Nos. 3128 and 3135].

14        48.    Another Condition Precedent specified in the Commitment Letter is that the assets

15    (other than cash) reflected on the balance sheets of the Jointly Administered Debtors on the Effective

16    Date be no different from those reflected on the balance sheets as of March 22, 2011 unless

17    otherwise agreed to in writing by GAC Real Estate and Mount Kellett.  Since March 22, 2011, only

18    one non-cash asset on the balance sheet has been sold and GAC Real Estate and Mount Kellett,

19    through Charlestown and Hartland, consented in writing to that sale.  The Court finds that this

20    Condition Precedent is satisfied as of the date hereof and that it likely will remain satisfied as of the

21    Effective Date.

22        49.    The other Conditions Precedent specified in the Commitment Letter are that the Court

23    enter an order confirming the plan, that the order become a Final Order and that the Effective Date

24    occur.  As set forth below and as announced orally in open court on May 19, 2011, the Court intends

25    to enter the requisite confirmation orders and the passage of time will make those orders Final

26    Orders unless there is an appeal and the orders are stayed pending appeal prior to their finality or

27    waiver of the requirement of finality.  The Court finds that these Conditions Precedent likely will be

28    satisfied.

68132520.168238575.2

-25-

50.   On March 28, 2011, prior to the conclusion of the confirmation trial, the OEC filed their "Statement as to the Equity Committee's Board Nominees under the Charlestown Plan" which identified and provided a short biography for the individuals the OEC had selected to be the three members of the board of directors of reorganized MMPI the OEC was entitled to appoint pursuant to the Fourth Amended Charlestown Plan and the First Modified Fourth Amended Charlestown Plan. The identified individuals were Tony Canzoneri, Stuart Gabriel and Stephen Taylor.  [Docket No. 2909].

51.   On March 29, 2011, Charlestown and Hartland filed their "Charlestown Capital Advisors, LLC's and Hartland Asset Management Corporeation's [sic] Revised Disclosure of Proposed Directors for MMPI" which identified and provided short biographies for the individuals Charlestown and Hartland had selected to be the four members of the board of directors Charlestown and Hartland were entitled to appoint pursuant to the Fourth Amended Charlestown Plan and the First Modified Fourth Amended Charlestown Plan.  The identified individuals were Riaz Valani, Tony Fung, Andrew Axelrod and Jonathan Fiorello [Docket No. 2914].

52.   At the conclusion of the confirmation trial, the Court took under submission the issue of confirmation of the Second Modified Fourth Amended Debtors' Plan and confirmation of the Fourth Amended Charlestown Plan as amended by the First Modified Fourth Amended Charlestown Plan.  The Court has conducted multiple status conferences regarding issues and concerns raised by the parties and the Court as a result of the evidence and arguments presented before, during and at the conclusion of the confirmation trial.

53.   In addition, subsequent to the conclusion of the confirmation trial, both the Jointly Administered Debtors and Charlestown and Hartland have proposed modifications to their respective plans of reorganization which were the subject of the confirmation trial.  The post-trial modifications proposed by the Jointly Administered Debtors were approved by the Court without the requirement of resolicitation and resulted in the Debtors' May 3, 2011 Joint Plan [Docket 3055], which is the current plan of the Jointly Administered Debtors.  The post-trial modifications proposed by Charlestown and Hartland also were approved by the Court without the requirement of

1  resolicitation and resulted in the Second Modified Fourth Amended Charlestown Plan [Docket No.

2  3068], which is the current plan of Charlestown and Hartland.

3      54.    Due, adequate and sufficient notice of the Fourth Amended Charlestown Plan, the

4  Charlestown Disclosure Statement, the confirmation hearing and the deadlines for voting on or

5  objecting to the Fourth Amended Charlestown Plan was given to all holders of claims and interest in

6  accordance with Bankruptcy Rules 2002(b), 3017(a), (d), (e) and (f) as evidenced by the record, the

7  Proof of Service of Solicitation Packages [Docket No. 2122] and the affidavits of Kurtzman Carson

8  Consulting, LLC ("KCC") [Docket Nos. 2320 and 2321].

9      55.    Due, adequate and sufficient notice of the proposed modifications to the Fourth

10  Amended Charlestown Plan that resulted in the First Modified Fourth Amended Charlestown Plan

11  and the Second Modified Fourth Amended Charlestown Plan was given to all holders of claims and

12  interest in accordance with Bankruptcy Rule 2019 and orders of the Court.  No creditor or interest

13  holder sought to change its vote from acceptance of the Fourth Amended Charlestown Plan to

14  rejection of the Fourth Amended Charlestown plan based on the modifications.

15      56.    On May 5, 2011, Charlestown and Hartland filed their First Supplement to

16  Charlestown Plan [Docket 3070] and due, adequate and sufficient notice and service of same was

17  provided to holders of claims and interests.  The loan documents for the Secured Loan in the First

18  Supplement comply with the terms of the Fourth Amended Charlestown Plan as modified by the

19  First Modified Fourth Amended Charlestown Plan and the Second Modified Fourth Amended

20  Charlestown Plan.

21      57.    On May 16, 2011, Charlestown and Hartland filed their Second Supplement to

22  Charlestown Plan [Docket No. 3120] and due, adequate and sufficient notice and service of same

23  was provided to holders of claims and interests.  The loan documents and loan modification

24  agreements contained in the Second Supplement comply with the terms of the Fourth Amended

25  Charlestown Plan as modified by the First Modified Fourth Amended Charlestown Plan and the

26  Second Modified Fourth Amended Charlestown Plan.

27      58.    On May 18, 2011, the Jointly Administered Debtors filed their "Debtors' Status

28  Conference Report [Docket No. 3134] and Charlestown and Hartland filed their "Charlestown

1    Proponents' Statement Re Cash as of or Near the Effective Date and Post-Effective Date Debt

2    Service" [Docket No. 3126].  Both of these pleadings evidence that there will be at least $5.5 million

3    in unrestricted and unencumbered cash of MMPI on the Effective Date of the Second Modified

4    Fourth Amended Charlestown Plan.

5            59.   In connection with modifications in the First Modified Fourth Amended Charlestown

6    Plan and the Second Modified Fourth Amended Charlestown Plan, certain creditors which had

7    previously voted to reject the Fourth Amended Charlestown Plan filed declarations requesting to

8    change their votes to accept and/or withdraw their objections to the Fourth Amended Charlestown

9    Plan or the Second Modified Fourth Amended Charlestown Plan.

10           60.   Based upon the original and changed votes and the withdrawn objections, the Court

11   finds as follows with respect to the Fourth Amended Charlestown Plan as modified by the First

12   Modified Fourth Amended Charlestown Plan and the Second Modified Fourth Amended

13   Charlestown Plan (collectively, the "Charlestown Plan") with respect to Jointly Administered

14   Debtor MMPI:

15           (a)   Class 1A (Secured Claim of Oliver, Sandifer) is unimpaired and is deemed to have

16                 accepted the Charlestown Plan;

17           (b)   Class 1B (Priority Benefits Claims) is unimpaired and is deemed to have accepted

18                 the Charlestown Plan;

19           (c)   Class 1C-1 (General Unsecured Claims) is unimpaired and is deemed to have

20                 accepted the Charlestown Plan;

21           (d)   Class 1C-2A (Non-Settling Unsecured Guaranty Claims) is impaired and has

22                 accepted the Charlestown Plan;

23           (e)   Class 1C - 2B (Settling Unsecured Guaranty Claims) is impaired and has accepted

24                 the Charlestown Plan because the settlements into which the members of this class

25                 entered were with the bankruptcy estate and, therefore, the benefits of these

26                 settlements inure also to MMPI as reorganized under the Charlestown Plan;

27           (f)   Class 1E (Non-Insider Equity Interests) is impaired and has accepted the

28                 Charlestown Plan;

1        (g)    Class 1F (Insider Equity Interests) is impaired and has rejected the Charlestown

2            Plan but, as set forth below, the Charlestown Plan may be confirmed over the

3            rejection of this class.

4       61.   Based upon the original and changed votes and the withdrawn objections to the

5 Charlestown Plan and confirmation of the Charlestown Plan with respect to MMPI, the Court finds

6 as follows with respect to the other Jointly Administered Debtors:

| 2. | Meruelo Maddux Properties, L.P. | |
|---|---|---|
| 2C-2 | General Unsecured Claims | Unimpaired. |
| 2D | Intercompany Claims | Unimpaired. |
| 2E | Equity Interests of MMPI (99.6%) and Holders of LTIP Units (0.4%) | This class is impaired and has rejected the Charlestown Plan but, as set forth below, the Charlestown Plan may be confirmed over the rejection of this class. |
| 3. | MMP Ventures LLC | |
| 3C | General Unsecured Claims | Unimpaired. |
| 3C | Intercompany Claims | Unimpaired. |
| 3E | Equity Interests of MMPLP (100%) | Unimpaired. |
| 4. | Meruelo Maddux Construction, Inc. | |
| 4C | General Unsecured Claims | Unimpaired. |
| 4D | Intercompany Claims | Unimpaired. |
| 4E | Equity Interests of MMPLP (100%) | Unimpaired. |
| 5. | Meruelo Maddux Management LLC | |
| 5B | Priority Benefits Claims | Unimpaired. |
| 5C | General Unsecured Claims | Unimpaired. |
| 5D | Intercompany Claims | Unimpaired. |
| 5E | Equity Interests of MMPLP (99%) and MMCI (1%) | Unimpaired. |

68132520.168238575.2

| 6. | Meruelo Maddux – 555 Central Avenue LLC | |
|---|---|---|
| 6C | General Unsecured Claims | Unimpaired. |
| 6D | Intercompany Claims | Unimpaired. |
| 6E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 7. | Merco Group – Overland Terminal LLC | |
| 7C | General Unsecured Claims | Unimpaired. |
| 7D | Intercompany Claims | Unimpaired. |
| 7E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 8. | National Cold Storage LLC | |
| 8C | General Unsecured Claims | Unimpaired. |
| 8E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 9. | Wall Street Market LLC | |
| 9C | General Unsecured Claims | Unimpaired. |
| 9D | Intercompany Claims | Unimpaired. |
| 9E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 10. | Meruelo Maddux Properties – 1009 N. Citrux Avenue, Covina, LLC | |
| 10A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 10C | General Unsecured Claims | Unimpaired. |
| 10D | Intercompany Claims | Unimpaired. |
| 10E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

| 11. | Meruelo Maddux – 230 W. Avenue 26 LLC | |
|---|---|---|
| 11A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 11C-1 | Unsecured Claims — Tenant Security Deposits - | Unimpaired. |
| 11C-2 | General Unsecured Claims | Unimpaired. |
| 11D | Intercompany Claims | Unimpaired. |
| 11E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 12. | Meruelo Maddux Properties – 306-330 N. Avenue 21 LLC | |
| 12A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 12C-1 | Unsecured Claims — Tenant Security Deposits - | Unimpaired. |
| 12C-2 | General Unsecured Claims | Unimpaired. |
| 12D | Intercompany Claims | Unimpaired. |
| 12E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 13. | Meruelo Maddux – 817-825 S. Hill Street LLC | |
| 13A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's |

| | | bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
|---|---|---|
| 13C | General Unsecured Claims | Unimpaired. |
| 13D | Intercompany Claims | Unimpaired. |
| 13E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **14.** | **Meruelo Maddux – 1000 E. Cesar Chavez LLC** | |
| 14A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 14C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 14C-2 | General Unsecured Claims | Unimpaired. |
| 14D | Intercompany Claims | Unimpaired. |
| 14E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **15.** | **Meruelo Maddux Properties – 1060 N. Vignes LLC** | |
| 15A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 15C | General Unsecured Claims | Unimpaired. |
| 15D | Intercompany Claims | Unimpaired. |
| 15E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

68132520.1 68238575.2

| 16. | Meruelo Maddux – 2415 E. Washington Boulevard LLC | |
|---|---|---|
| 16A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 16C | General Unsecured Claims | Unimpaired. |
| 16D | Intercompany Claims | Unimpaired. |
| 16E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 17. | Meruelo Maddux – 5500 Flotilla Street LLC | |
| 17C | General Unsecured Claims | Unimpaired. |
| 17D | Intercompany Claims | Unimpaired. |
| 17E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 18. | Meruelo Maddux Properties – 12385 San Fernando Road LLC | |
| 18A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 18C | General Unsecured Claims | Unimpaired. |
| 18D | Intercompany Claims | Unimpaired. |
| 18E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| 19. | Merco Group – 146 E. Front Street LLC | |
| 19C-1 | General Unsecured Claims | Unimpaired. |
| 19D | Intercompany Claims | Unimpaired. |

| | | |
|---|---|---|
| 19E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **20.** | **Merco Group – 801 E. 7th Street LLC** | |
| 20A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 20C | General Unsecured Claims | Unimpaired. |
| 20D | Intercompany Claims | Unimpaired. |
| 20E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **21.** | **Merco Group – 1211 E. Washington Boulevard LLC** | |
| 21A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 21A-2 | RoofCorp of CA, Inc. | Unimpaired as a result of the modified treatment of Class 21A-2 in Exhibit A annexed hereto. |
| 21C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 21C-2 | General Unsecured Claims | Unimpaired. |
| 21D | Intercompany Claims | Unimpaired. |
| 21E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **22.** | **Merco Group – 1380 S. Orchard LLC** | |
| 22A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County |

| | | entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
|---|---|---|
| 22C | General Unsecured Claims | Unimpaired. |
| 22D | Intercompany Claims | Unimpaired. |
| 22E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **23.** | **Merco Group – 2040 Camfield Avenue LLC** | |
| 23C | General Unsecured Claims | Unimpaired. |
| 23D | Intercompany Claims | Unimpaired. |
| 23E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **24.** | **Merco Group – Ceres Street Produce LLC** | |
| 24A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 24C | General Unsecured Claims | Unimpaired. |
| 24D | Intercompany Claims | Unimpaired. |
| 24E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **25.** | **Meruelo Baldwin Park LLC** | |
| 25A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized |

68132520.168238575.2

| | | |
|---|---|---|
| | | under the Charlestown Plan. |
| 25C-1 | Unsecured Claims — Tenant Security Deposits - | Unimpaired. |
| 25C-2 | General Unsecured Claims | Unimpaired. |
| 25D | Intercompany Claims | Unimpaired. |
| 25E | Interests of MMP Ventures (100%) | Unimpaired. |
| **26.** | **Santa Fe & Washington Market LLC** | |
| 26A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 26C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 26C-2 | General Unsecured Claims | Unimpaired. |
| 26D | Intercompany Claims | Unimpaired. |
| 26E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **27.** | **Merco Group – 5707 S. Alameda LLC** | |
| 27A | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 27C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 27C-2 | General Unsecured Claims | Unimpaired. |
| 27D | Intercompany Claims | Unimpaired. |

68132520.1 68238575.2

| | | |
|---|---|---|
| 27E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **28.** | **Meruelo Maddux – 3rd and Omar Street LLC** | |
| 28A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 28C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 28C-2 | General Unsecured Claims | Unimpaired. |
| 28D | Intercompany Claims | Unimpaired. |
| 28E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **29.** | **Meruelo Maddux – 336 W. 11th Street LLC** | |
| 29A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 29A-3 | Grand Avenue Lofts, HOA Secured Claim | ~~Did Not Vote~~Impaired, but did not vote; supports confirmation of the Charlestown Plan. |
| 29A-4 | Grand Avenue Lofts, LLC / CIM Urban RE Fund GP II, LLC Secured Claim | ~~Did Not Vote~~Impaired, but did not vote; supports confirmation of the Charlestown Plan.. |
| 29C | General Unsecured Claims | Unimpaired. |
| 29D | Intercompany Claims | Unimpaired. |
| 29E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **30.** | **Meruelo Maddux – 420 Boyd Street LLC** | |

68132520.168238575.2

| | | |
|---|---|---|
| 30A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 30C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 30C-2 | General Unsecured Claims | Unimpaired. |
| 30D | Intercompany Claims | Unimpaired. |
| 30E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **31.** | **Meruelo Maddux – 500 Mateo Street LLC** | |
| 31C- | General Unsecured Claims | Unimpaired. |
| 31D | Intercompany Claims | Unimpaired. |
| 31E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **32.** | **Meruelo Maddux Properties – 760 S. Hill Street LLC** | |
| 32A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 32A-2 | Bank of America Secured Claim | Impaired - Accept. |
| 32B | Priority Benefits Claims | Unimpaired. |
| 32C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 32C-2 | General Unsecured Claims | Unimpaired. |
| 32D | Intercompany Claims | Unimpaired. |
| 32E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

68132520.168238575.2

| 33. | **788 S. Alameda LLC** | |
|---|---|---|
| 33A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 33A-2 | California Bank & Trust Secured Claim | Impaired - Accept. |
| 33B | Priority Benefits Claims | Unimpaired. |
| 33C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 33C-2 | General Unsecured Claims | Unimpaired. |
| 33D | Intercompany Claims - $1,485,597 | Unimpaired. |
| 33E | Equity Interests of MMP Ventures (100%) | Unimpaired |
| 34. | **905 8th Street LLC** | |
| 34A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 34A-2 | The Stanford Group LP Secured Claim | This class is impaired and has accepted the Charlestown Plan because The Stanford Group LP entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 34C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |

68132520.168238575.2

| | | |
|---|---|---|
| 34C-2 | General Unsecured Claims | Unimpaired. |
| 34D | Intercompany Claims | Unimpaired. |
| 34E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **35.** | **Meruelo Maddux – 914-949 S. Hill Street LLC** | |
| 35A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 35A-2 | Imperial Capital Bank Secured Claim | This class is impaired and has accepted the Charlestown Plan because Imperial Capital Bank entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 35C-1 | General Unsecured Claims | Unimpaired. |
| 35C-2 | Tenant Security Deposits | Unimpaired. |
| 35D | Intercompany Claims | Unimpaired. |
| 35E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **36.** | **Alameda Produce Market LLC** | |
| 36A-1-a | Los Angeles County Secured Tax Claim re Alameda Produce Market Encumbered Real Property | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |

| 36A-1-b | Los Angeles County Secured Tax Claim re Alameda Produce Market Unencumbered Real Property | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
|---|---|---|
| 36A-2 | Cathay Bank Secured Claim | Impaired - Accept. |
| 36A-3 | Cathay Bank Secured Claim | Impaired - Accept. |
| 36B | Priority Benefits Claims | Unimpaired. |
| 36C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 36C-2 | General Unsecured Claims | Unimpaired. |
| 36D | MTA Contingent Claim | Did not vote; supports confirmation of the Charlestown Plan |
| 36E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **37.** | **Merco Group – 1500 Griffith Avenue LLC** | |
| 37A-1-a | Los Angeles County Secured Tax Claim re 1500 Griffith | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 37A-3 | Murakami Secured Claim | This class is impaired and has accepted the Charlestown Plan because Murakami entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |

| 37C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
|---|---|---|
| 37C-2 | General Unsecured Claims | Unimpaired. |
| 37D | Intercompany Claims | Unimpaired. |
| 37E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **38.** | **Meruelo Maddux Properties – 1919 Vineburn Street LLC** | |
| 38A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 38A-2 | Imperial Capital Bank Secured Claim | This class is impaired and has accepted the Charlestown Plan because Imperial Capital Bank entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 38C-1 | Unsecured Claims       Tenant Security Deposits | Unimpaired. |
| 38C-2 | General Unsecured Claims | Unimpaired. |
| 38D | Intercompany Claims | Unimpaired. |
| 38E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **39.** | **Meruelo Maddux Properties – 2131 Humboldt Street LLC** | |
| 39C-1 | Unsecured Claims — Tenant Security Deposits - | Unimpaired. |
| 39C-2 | General Unsecured Claims | Unimpaired. |
| 39D | Intercompany Claims | Unimpaired. |
| 39E | Equity Interests of MMP Ventures (100%) | Unimpaired |
| **40.** | **Merco Group – 2529 Santa Fe Avenue LLC** | |

68132520.168238575.2

| | | |
|---|---|---|
| 40A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 40A-2 | 1248 S. Figueroa Secured Claim | This class is impaired and has rejected the Charlestown Plan but, as set forth below, the Charlestown Plan may be confirmed over the rejection of this class. |
| 40C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 40C-2 | General Unsecured Claims | Unimpaired. |
| 40D | Intercompany Claims | Unimpaired. |
| 40E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **41.** | **2640 Washington Boulevard LLC** | |
| 41A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 41A-2 | East West Bank as successor to UCB Secured Claim | This class is impaired and has accepted the Charlestown Plan because East West Bank entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |

68132520.168238575.2

| | | |
|---|---|---|
| 41C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 41C-2 | General Unsecured Claims | Unimpaired. |
| 41D | Intercompany Claims | Unimpaired. |
| 41E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **42.** | **Meruelo Maddux Properties – 2941 Lenwood Road LLC** | |
| 42A-1 | FNBN Secured Claim | This class is impaired and has accepted the Charlestown Plan because FNBN entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 42C | General Unsecured Claims | Unimpaired. |
| 42D | Intercompany Claims | Unimpaired. |
| 42E | Equity Interests of MMP Ventures (100%) | Unimpaired |
| **43.** | **Merco Group – 3185 E. Washington Boulevard LLC** | |
| 43A-1-a | Los Angeles County Secured Tax Claim re 3185 E. Washington Boulevard Encumbered Real Property | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 43A-1-b | Los Angeles County Secured Tax Claim re 3185 E. Washington Boulevard Unencumbered Real Property | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |

| 43A-2 | Chinatrust Secured Claim | Impaired - Accept. |
|---|---|---|
| 43C-1 | General Unsecured Claims | Unimpaired. |
| 43C-2 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 43D | Intercompany Claims | Unimpaired. |
| 43E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **44.** | **Merco Group – 4th Street Center LLC** | |
| 44C-1 | General Unsecured Claims | Unimpaired. |
| 44D | Intercompany Claims | Unimpaired. |
| 44E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **45.** | **Merco Group – 425 W. 11th Street LLC** | |
| 45A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 45C | General Unsecured Claims | Unimpaired. |
| 45D | Intercompany Claims | Unimpaired. |
| 45E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **46.** | **Merco Group – 620 Gladys Avenue LLC** | |
| 46A-1-b | Los Angeles County Secured Tax Claim re 620 S. Gladys Avenue Unencumbered Real Property | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 46C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |

| 46C-2 | General Unsecured Claims | Unimpaired. |
|---|---|---|
| 46D | Intercompany Claims | Unimpaired. |
| 46E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **47.** | **Merco Group – 2001-2021 W. Mission Boulevard LLC** | |
| 47A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 47A-2 | PNL Pomona LP Secured Claim | Impaired - Accept. |
| 47C | General Unsecured Claims | Unimpaired. |
| 47D | Intercompany Claims | Unimpaired. |
| 47E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **48.** | **Merco Group – Little J LLC** | |
| 48A-1-a | Los Angeles County Secured Tax Claim re 1119 S. Olive Street | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 48A-1-b | Los Angeles County Secured Tax Claim re 1124 S. Olive Street | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |

68132520.168238575.2

| | | |
|---|---|---|
| 48C-2 | General Unsecured Claims | Unimpaired. |
| 48C-3 | Tenant Security Deposit Claims | Unimpaired. |
| 48D | Intercompany Claims | Unimpaired. |
| 48D | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **49.** | **Merco Group – Southpark LLC** | |
| 49A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 49A-2 | Bank of America Secured Claim | Impaired - Accept. |
| 49C-1 | General Unsecured Claims | Unimpaired. |
| 49C-2 | Tenant Security Deposit Claims | Unimpaired. |
| 49D | Intercompany Claims | Unimpaired. |
| 49E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **50.** | **Merco Group LLC** | |
| 50A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 50C-1 | General Unsecured Claims | Unimpaired. |
| 50D | Intercompany Claims | Unimpaired. |
| 50E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

-47-

68132520.168238575.2

| 51. | **Meruelo Farms LLC** | |
|---|---|---|
| 51A-1-a | Los Angeles County Secured Tax Claim re 815 E. Temple Street | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 51A-1-b | Los Angeles County Secured Tax Claim re 729 E. Temple Street | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 51A-2 | Imperial Capital Bank Secured Claim | This class is impaired and has accepted the Charlestown Plan because Imperial Capital Bank entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 51A-3 | Pacific Commerce Secured Claim | This class is impaired and has accepted the Charlestown Plan because Pacific Commerce Bank entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 51C | General Unsecured Claims | Unimpaired. |
| 51D | Intercompany Claims | Unimpaired. |

-48-

| | | |
|---|---|---|
| 51E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **52.** | **Meruelo Wall Street LLC** | |
| 52A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 52A-2 | East West Bank as successor to UCB Secured Claim | This class is impaired and has accepted the Charlestown Plan because East West Bank entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 52B | Priority Benefits Claims | Unimpaired. |
| 52C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 52C-2 | General Unsecured Claims | Unimpaired. |
| 52D | Intercompany Claims | Unimpaired. |
| 52E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **53.** | **Meruelo Maddux – Mission Boulevard LLC** | |
| 53A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 53A-2 | Kennedy Funding, Inc. Secured Claim | Impaired - Accept. |

| 53C | General Unsecured Claims | Unimpaired. |
|---|---|---|
| 53D | Intercompany Claims | Unimpaired. |
| 53E | Equity Interests of MMP Ventures (100%) | Unimpaired. |
| **54.** | **Santa Fe Commerce Center, Inc.** | |
| 54A-1 | Los Angeles County Secured Tax Claim | This class is impaired and has accepted the Charlestown Plan because Los Angeles County entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 54A-2 | Berkadia Secured Claim | This class is impaired and has accepted the Charlestown Plan because Berkadia entered into a settlement with this debtor's bankruptcy estate and, therefore, the benefits of the settlement inures to the debtor as reorganized under the Charlestown Plan. |
| 54A-3 | RoofCorp of CA, Inc. Secured Claim | Unimpaired as a result of the modified treatment of Class 54A-3 in Exhibit A annexed hereto. |
| 54C-1 | Unsecured Claims — Tenant Security Deposits | Unimpaired. |
| 54C-2 | General Unsecured Claims | Unimpaired. |
| 54E | Equity Interests of MMP Ventures (100%) | Unimpaired. |

62.    Based upon the foregoing, and as reflected in the affidavits submitted by KCC and the declarations submitted by Charlestown and Hartland in connection with the First ~~Modification to~~Modified Fourth Amended Charlestown Plan and the Second Modified Fourth Amended Charlestown Plan, at least one Impaired Class of Claims for each of the Jointly Administered Debtors (other than Jointly Administered Debtor MMPLP where no such acceptance by an Impaired

1   Class of Claims is required) has voted to accept the Charlestown Plan (excluding the acceptance by

2   any insiders of the Debtors) has voted to accept the Charlestown Plan in accordance with the

3   requirements of sections 1124 and 1126 of the Bankruptcy Code.

4         63.   The further modifications to the Charlestown Plan reflected in the modified

5   Charlestown Plan annexed hereto as Exhibit A constitute either technical changes or modifications

6   made in open Court that were consented to or that do not materially adversely affect the treatment of

7   any claims or interests under the Charlestown Plan.

8         64.   The Charlestown Plan is dated and identifies the entities submitting and filing it,

9   thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Charlestown Disclosure Statement

10   satisfied Bankruptcy Rule 3016(b).

11                   **CONCLUSIONS OF LAW**

12         1.   Each of the foregoing Findings of Fact which may be construed as a Conclusion of

13   Law is hereby deemed to be a Conclusion of Law, and each of the following Conclusions of Law

14   which may be construed as a Finding of Fact is hereby deemed to be a Finding of Fact.

15         2.   Confirmation of the Debtors' May 3, 2011 Joint Plan and the Charlestown Plan are

16   core proceedings under 28 U.S.C. § 157(b)(2).  The Court has subject matter jurisdiction over this

17   matter pursuant to 28 U.S.C. § 1334.  The Court has exclusive jurisdiction to determine whether the

18   Debtors' May 3, 2011 Joint Plan and the Charlestown Plan comply with applicable provisions of the

19   Bankruptcy Code and, if both Plans comply, which Plan should be confirmed pursuant to section

20   1129(c) of the Bankruptcy Code.

21         3.   Venue in this Court was proper as of the dates the Jointly Administered Debtors filed

22   their chapter 11 petitions pursuant to 28 U.S.C. §§ 1408 and 1409 and has continued to be proper

23   throughout the chapter 11 cases of the Jointly Administered Cases and 845 South Flower and

24   Chinatown.

25         4.   The Jointly Administered Debtors, 845 South Flower and Chinatown were and are

26   entities eligible for relief under section 109 of the Bankruptcy Code.

27         5.   As Equity Interest holders in Jointly Administered Debtor MMPI, Charlestown and

28   Hartland had and continued to have standing to propose a plan of reorganization with respect to

Jointly Administered Debtor MMPI.  Upon conditional confirmation of the Charlestown Plan with respect to Joint Administered Debtor MMPI, Charlestown and Hartland have standing to seek confirmation of the Charlestown Plan with respect to the other Joint Administered Debtors.  As set forth below, the Court has concluded that the Charlestown Plan should be confirmed with respect to Jointly Administered Debtor MMPI.  Accordingly, Charlestown and Hartland have standing to propose a plan of reorganization for the other Jointly Administered Debtors and, therefore, to  obtain confirmation of the Charlestown Plan as to each and all of the Jointly Administered Debtors.

6.    As proponents of the Charlestown Plan, Charlestown and Hartland have the burden of proving the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence.  As set forth below, Charlestown and Hartland have met their burden of proving by a preponderance of the evidence that the Charlestown Plan complies with each element of sections 1129(a) and (b) of the Bankruptcy Code with respect to each of the Jointly Administered Debtors.

**Section 1129(a)(1) -- Compliance of the Plan with
Applicable Provisions of the Bankruptcy Code**

7.    The Charlestown Plan complies with each applicable provision of the Bankruptcy Code.  In particular, the Charlestown Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code because the classification of Claims and Equity Interests under the Charlestown Plan is proper as follows:

(i)    In accordance with section 1122(a) of the Bankruptcy Code, Article III of the Charlestown Plan classifies each Claim against and Interest in each of the Jointly Administered Debtors into a Class containing only substantially similar Claims or Interests;

(ii)    In accordance with section 1123(a)(1) of the Bankruptcy Code, Article III of the Charlestown Plan properly classifies all Claims and Interests that require classification into five (5) or six (6) Classes, as appropriate, based on the legal nature or priority of such Claims and Interests, and not for any improper

1     purpose; and, indeed, valid business, factual and legal reasons exist for the

2     classification of Claims and Interests created under the Plan;[2]

3     (iii)    In accordance with section 1123(a)(2) of the Bankruptcy Code, Article II of

4     the Charlestown Plan properly identifies and describes each Class of Claims

5     that is Unimpaired under the Plan (see Finding of Fact Nos. 60 and 61, supra);

6     (iv)    In accordance with section 1123(a)(3) of the Bankruptcy Code, Article III of

7     the Charlestown Plan properly identifies and describes the treatment of each

8     Class of Claims or Interests that is Impaired under the Plan;

9     (v)    In accordance with section 1123(a)(4) of the Bankruptcy Code, the

10     Charlestown Plan provides the same treatment for each Claim or Interest of a

11     particular Class unless the Holder of such a Claim or Interest has agreed to

12     less favorable treatment, and the creation of such Classes does not

13     discriminate unfairly between or among Holders of Claims or Interests;

14     (vi)    In accordance with section 1123(a)(5) of the Bankruptcy Code, the

15     Charlestown Plan provides adequate means for its implementation, including,

16     without limitation:

17     •    the entry into and effectuation of Purchase of Shares, Merger and Reverse

18     Stock Split (the "Restructuring Transactions);

19     •    the restructuring of the Jointly Administered Debtors' prepetition secured

20     debt, real property tax liabilities and other financial transactions under the

21     Charlestown Plan;

22     •    the continued corporate existence of the Jointly Administered Debtors

23     (subject to the Restructuring Transactions);

24     •    the vesting of assets in the Reorganized Debtors;

25     •    the treatment of Intercompany Claims and Interests;

26
27
28

---

[2] In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified under the Charlestown Plan. Article III.B. of the Charlestown Plan specifies the treatment of these unclassified Claims.

- the entry into and consummation of the exit Equity Investment and Secured Loan pursuant to the Commitment Letter and the use of the proceeds of same and the Reorganized Debtors' cash balances for distributions under the Plan;

- the appointment of a new board of directors and management for MMPI;

- amendments to the Jointly Administered Debtors' organizational documents;

- the exemption of transfers of property under the Charlestown Plan from certain governmental assessments and taxes pursuant to section 1146 of the Bankruptcy Code;

- the cancellation of certain securities and unit Interests;

- the taking of steps to rescind MMPI's Form 15 and regain reporting status.

(vii)  In accordance with section 1123(a)(6) of the Bankruptcy Code, Article IV.O. of the Charlestown Plan provides that the certificate of incorporation of each of the Reorganized Jointly Administered Debtors will prohibit the issuance of non-voting equity securities;

(viii)  In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Charlestown Plan and the Reorganized Debtors' charters, bylaws or comparable constituent documents regarding the manner of selection of officers and directors of the Reorganized Jointly Administered Debtors, including, without limitation, the provisions of Article IV.E., O and Q of the Charlestown Plan, are consistent with the interests of creditors and equity security holders and with public policy;

(ix)  In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Charlestown Plan Impairs or leaves Unimpaired, as the case may be, each Class of Claims and Interests;

(x)  In accordance with section 1123(b)(2) of the Bankruptcy Code, the Charlestown Plan contains various discretionary provisions, including,

1  without limitation, provisions of the Charlestown Plan provide for:  (a) a

2  process to govern the distributions to Holders of Allowed Claims (Article

3  VIII); (b) Claims allowance and disallowance (Article V); and (e) the

4  compromise, settlement and release of Claims and Causes of Action pursuant

5  to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019;

6  (xi)  In accordance with section 1123(b)(3) of the Bankruptcy Code, Article V.I. of

7  the Charlestown Plan provides that, except as otherwise provided in the Plan

8  or Confirmation Order, after the Effective Date, the Reorganized Jointly

9  Administered Debtors shall retain all rights to commence, pursue, litigate or

10  settle, as appropriate, any and all Claims and Defenses whether existing as of

11  the Commencement Date or thereafter arising, in any court or other tribunal

12  including, without limitation, in an adversary proceeding filed in one or more

13  of the Chapter 11 Cases;

14  (xii)  In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of

15  the Charlestown Plan modifies or leaves unaffected, as the case may be, the

16  rights of Holders of Claims and Interests in each Class;

17  (xiii)  In accordance with section 1123(b)(6) of the Bankruptcy Code, the

18  Charlestown Plan includes additional appropriate provisions that are not

19  inconsistent with applicable provisions of the Bankruptcy Code; and

20  (xiv)  In accordance with section 1123(d) of the Bankruptcy Code, Article V of the

21  Charlestown Plan provides for the satisfaction of Cure Claims associated with

22  each unexpired lease or executory contract to be assumed pursuant to the

23  Charlestown Plan in accordance with section 365(b)(1) of the Bankruptcy

24  Code.  All Cure Amount Claims will be determined in accordance with the

25  underlying agreements and applicable law.

26  8.  Accordingly, Charlestown and Hartland have satisfied the requirements of section

27  1129(a)(1) of the Bankruptcy Code.

28

**Section 1129(a)(2) -- Compliance of the Debtors with
the Applicable Provisions of the Bankruptcy Code**

9.      Charlestown and Hartland, as proponents of the Charlestown Plan, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1125, 1126 and 1128 of the Bankruptcy Code and Bankruptcy Rules 3017, 3018 and 3019.  Charlestown and Hartland and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents did not solicit the acceptance or rejection of the Charlestown Plan by any Holders of Claims or Interests prior to the approval and transmission of the Charlestown Disclosure Statement.  Votes to accept or reject the Charlestown Plan were solicited by Charlestown and Hartland and their respective agents after the Bankruptcy Court approved the adequacy of the Charlestown Disclosure Statement pursuant to section 1125(a) of the Bankruptcy Code.

10.      Charlestown and Hartland and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have solicited and tabulated votes on the Charlestown Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly, in good faith within the meaning of section 1125(e) of the Bankruptcy Code and in a manner consistent with the applicable provisions of the order approving the Charlestown Disclosure Statement and the solicitation and voting procedures, the Charlestown Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and all other applicable rules, laws and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provision set forth in Article IV.N. of the Charlestown Plan.

11.      Charlestown and Hartland and their respective present and former members, officers, directors, partners, employees, representatives, advisors, attorneys, professionals, affiliates and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Charlestown Plan and, therefore, are not (and on account of such distributions, will not be) liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of

1    acceptances or rejections of the Charlestown Plan or distributions made pursuant to the Charlestown

2    Plan.

3          12.    Accordingly, Charlestown and Hartland have satisfied the requirements of section

4    1129(a)(2) of the Bankruptcy Code.

5    **Section 1129(a)(3) -- Proposal of the Charlestown Plan in Good Faith**

6          13.    Charlestown and Hartland have proposed the Charlestown Plan in good faith and not

7    by any means forbidden by law, and the Charlestown Plan was negotiated and proposed with the

8    intention of accomplishing a successful reorganization and having the Jointly Administered Debtors

9    emerge from chapter 11 with capital structures that will allow them to satisfy their obligations with

10    sufficient liquidity and capital resources, and for no ulterior purpose.  The Charlestown Plan fairly

11    achieves a result consistent with the objectives and purposes of the Bankruptcy Code.  In so finding,

12    the Court has examined the totality of the circumstances surrounding these Chapter 11 Cases, the

13    Charlestown Plan itself and the process leading to its formulation and confirmation.  The good faith

14    of Charlestown and Hartland is evident from the facts and records of these Chapter 11 Cases, the

15    Charlestown Disclosure Statement and the hearing thereon and the record of the confirmation trial

16    and other proceedings held in these Chapter 11 Cases.

17          14.    The Charlestown Plan is the result of extensive good faith, arm's-length negotiations

18    between Charlestown and Hartland and their constituencies (GAC Real Estate and Mount Kellett)

19    with certain of the principal constituencies of the bankruptcy estates of the Jointly Administered

20    Debtors, including the OEC, the OCC and secured creditors, and reflects substantial input from those

21    principal constituencies having an interest in the Chapter 11 Cases, and, as evidenced by the

22    overwhelming acceptance of the Charlestown Plan, achieves the goal of consensual reorganization

23    embodied by the Bankruptcy Code.  Additionally, as described in greater detail below, the

24    Charlestown Plan's exculpation, release and injunction provisions (which are essentially the same as

25    those included in the Jointly Administered Debtors' plans brought before the Court during the

26    confirmation trial and subsequent hearings) have been negotiated in good faith and are consistent

27    with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code and applicable law in this

28    Circuit.

15.   Accordingly, Charlestown and Hartland have satisfied the requirements of section 1129(a)(3) of the Bankruptcy Code.

**Section 1129(a)(4) -- Bankruptcy Court Approval of Certain Payments as Reasonable**

16.   All payments made or to be made by the Reorganized Jointly Administered Debtors for services rendered and expenses incurred in connection with these Chapter 11 Cases have been approved by, or are subject to final approval of the Bankruptcy Court as reasonable.  The Bankruptcy Court will retain jurisdiction after the Effective Date to grant or deny applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Charlestown Plan.  Accordingly, Charlestown and Hartland have satisfied the requirements of section 1129(a)(4) of the Bankruptcy Code.

**Section 1129(a)(5) -- Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

17.   Charlestown and Hartland have disclosed the identity and affiliations of the individuals proposed to serve as the directors and officers of the Reorganized Jointly Administered Debtors, to the extent known.  The appointment of the remaining directors and officers, if any, and the compensation of all of the Reorganized Jointly Administered Debtors' directors or managers will be consistent with each Reorganized Jointly Administered Debtor's applicable constituent documents.  The Court has reviewed the biographies and resumes provided by Charlestown and Hartland and the OEC for the proposed directors and officers and Messrs. Skaggs, Valani and McGonagle testified live during the confirmation trial.  In addition, various creditors and the OEC have expressed confidence in the proposed directors and officers.  The Court concludes that the proposed directors and officers for the Reorganized Jointly Administered Debtors under the Charlestown Plan are qualified, and the appointments to, or continuance in, such offices by the proposed directors and officers is consistent with the interests of holders of Claims and Interests and with public policy.  Accordingly, Charlestown and Hartland have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**Section 1129(a)(6) -- Approval of Rate Changes**

18.   The Charlestown Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

**Section 1129(a)(7) -- Best Interest of Creditors Test**

19.   The Liquidation Analysis and the Property Valuations and Descriptions annexed as Exhibit G and J, respectively, to the Charlestown Disclosure Statement and the other evidence related to valuation that was proffered or adduced at or prior to the confirmation trial or in the declarations in support of confirmation of the Charlestown Plan (a) are reasonable, persuasive, credible and accurate as of the dates such evidence was prepared, presented, or proffered; (b) utilize reasonable and appropriate methodologies and assumptions; (c) have not been undermined by other evidence; and (d) establish that, with respect to each impaired Class entitled to vote, each holder of an Allowed Claim in such Class has voted to accept the Plan (as evidenced by the KCC affidavits and later declarations filed in connection with approved modifications) or will receive under the Charlestown Plan on account of such Claim property of a value, as of the Effective Date, that is not less than the amount such holder would receive if the Jointly Administered Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  Accordingly, Charlestown and Hartland have satisfied the requirements of section 1129(a)(7) of the Bankruptcy Code.

**Section 1129(a)(8) -- Conclusive Presumption of Acceptance by Unimpaired Classes; Acceptance of the Plan by Each Impaired Class**

20.   As set forth in Finding of Fact Nos. 60 and 61, <u>supra</u>, certain Classes are unimpaired and are conclusively presumed to have accepted the Charlestown Plan under section 1126(f) of the Bankruptcy Code.  As set forth in Finding of Fact Nos. 60 and 61, <u>supra</u>, and the KCC affidavits [Docket Nos. 2320 and 2321], all voting classes except two have voted to accept the Charlestown Plan or are deemed to have accepted the Charlestown Plan because of settlements entered into with the bankruptcy estates.  Because the Charlestown Plan has not been accepted by Class 1F and Class 40A-2, Charlestown and Hartland have sought confirmation under section 1129(b) of the Bankruptcy Code, rather than section 1129(a)(8) of the Bankruptcy Code, with respect to Jointly

1  Administered debtors MMPI and MG-2529 Santa Fe Avenue.  As set forth below, although section

2  1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to Classes 1F and 40A-2, the

3  Charlestown Plan is confirmable because the Charlestown Plan does not discriminate unfairly and is

4  fair and equitable with respect to Classes 1E and 40A-2.  Accordingly, Charlestown and Hartland

5  have satisfied the requirements of section 1129(b) of the Bankruptcy Code.

6  **Section 1129(a)(9) -- Treatment of Priority Claims**

7      21.  As required by section 1129(a)(9) of the Bankruptcy Code, Article III.B.1 of the

8  Charlestown Plan provides for full payment of Allowed Administrative Claims on or as soon as

9  reasonably practicable after the Effective Date.  Additionally, Article III.B.1 of the Charlestown

10  Plan provides for full payment of Allowed Priority Tax Claims on or as soon as reasonably

11  practicable after the Effective Date.  Accordingly, Charlestown and Hartland have satisfied the

12  requirements of section 1129(a)(9) of the Bankruptcy Code.

13  **Section 1129(a)(10) -- Acceptance by at Least One Impaired Class**

14      22.  As set forth in Finding of Fact Nos. 60 and 61, _supra_, and the KCC affidavits [Docket

15  Nos. 2320 and 2321], most of the voting classes voted to accept or are deemed to have accepted the

16  Charlestown Plan for each Jointly Administered Debtor without including any acceptance of the

17  Charlestown Plan by any insider.  Accordingly, Charlestown and Hartland have satisfied the

18  requirements of section 1129(a)(10) of the Bankruptcy Code.

19  **Section 1129(a)(11) -- Feasibility of the Plan**

20      23.  The Charlestown Plan meets the feasibility requirement as set forth in section

21  1129(a)(11) of the Bankruptcy Code.  The original financial projections and updated financial

22  projections submitted prior to, during and subsequent to the confirmation trial, the evidence

23  proffered or adduced at or prior to the confirmation trial, the declarations submitted in support of

24  confirmation of the Charlestown Plan and the Charlestown Proponents' Statement Re Cash At or

25  Near the Effective Date and Post-Effective Date Debt Service: (i) are reasonable, persuasive,

26  credible and accurate as of the dates such evidence was prepared, presented, or proffered; (ii) utilize

27  reasonable and appropriate methodologies and assumptions; (iii) have not been undermined or

28  controverted by other evidence; (iv) in light of entry into the Commitment Letter pursuant to which

the Equity Investment and Secured Loan will be funded, establish that the Charlestown Plan is feasible and confirmation of the Charlestown Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Jointly Administered Debtors; and (v) demonstrate that the Reorganized Jointly Administered Debtors will have sufficient funds available to meet their obligations under the Charlestown Plan while maintaining adequate working capital.  Accordingly, Charlestown and Hartland have satisfied the requirements of section 1129(a)(11) of the Bankruptcy Code.

**Section 1129(a)(12) -- Payment of Bankruptcy Fees**

24.    Article X.B. of the Charlestown Plan provides that all fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court, shall be paid prior to the closing of these Chapter 11 Cases when due or as soon thereafter as practicable.  Accordingly, Charlestown and Hartland have satisfied the requirements of section 1129(a)(12) of the Bankruptcy Code.

**Section 1129(a)(13) -- Retiree Benefits**

25.    The Jointly Administered Debtors do not have any obligations on account of retiree benefits and, therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

**Section 1129(b) -- Confirmation of the Plan Over Non-Acceptance of Impaired Classes**

26.    Notwithstanding the fact that Class 1F of Jointly Administered Debtor MMPI has rejected the Charlestown Plan, the Charlestown Plan may be confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because:  (a) other Classes of Claims and Interests in MMPI have voted to accept or are deemed to have accepted the Charlestown Plan and (b) the Charlestown Plan does not discriminate unfairly and is fair and equitable with respect to Class 1F.  The Charlestown Plan does not "discriminate unfairly" with respect to Class 1F because Class 1E is the only class under the Charlestown Plan for MMPI that possesses legal rights similar to those of Class 1F and Class 1F is not treated less favorably than Class 1E.  Indeed, in light of the increase in price per share to be paid to the members of Class 1F as provided in the modified Charlestown Plan annexed hereto, Class 1F is treated more favorably than Class 1E.  Thus, the Charlestown Plan does not discriminate unfairly with respect to Class 1F.

27.    The Charlestown Plan is also "fair and equitable" under section 1129(b) of the Bankruptcy Code with respect to Class 1F.  Section 1129(b)(2)(C) governs whether a plan is fair and equitable with respect to a class of interests that is impaired and has not accepted the plan.  Section 1129(b)(2)(C) provides that the condition that a plan be fair and equitable with respect to a class of interests includes the following requirements:  (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such ~~shareholder~~holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan ~~or~~on account of such junior interest any property.  The Charlestown Plan satisfies section 1129(b0(2)(C)(ii) because there is no holder of any interest junior to the interests in Class 1F who will receive or retain property under the Charlestown Plan on account of such junior interest.

28.    The Jointly Administered Debtors, advocating the interests of Insider Equity Interest holders who comprise Class 1F, contend that the Charlestown Plan must satisfy both section 1129(b)(2)(C)(i) ~~as well as~~and section 1129(b)(2)(C)(ii) because section 1129(b)(2) provides that fair and equitable "includes" and it does not provide that fair and equitable is limited to ~~(i) or (ii), the Charlestown Plan has to satisfy only~~the treatment in section 1129(b)(2)(C)(ii).  This contention is in contrast with the position the Jointly Administered Debtors advocated in support of the Modified Second Amended Debtors' Plan in which they proposed to pay Equity Interest holders $.08 per share.  In their proposed disclosure statement for that plan, the Jointly Administered Debtors contended that to be "fair and equitable," a plan needed to satisfy section 1129(b)(2)(C)(i) or section 1129(b)(2)(C)(ii), not both.  (Submission of Redline of Modified Second Amended Disclosure Statement Describing Second Joint Plan of Reorganization of Meruelo Maddux Properties, Inc., et al.~~, at 26 of 27~~ [Docket No. 1512-4]~~.~~ at 26 of 27.)  The Jointly Administered Debtors took the same position with respect to the Fourth Amended Debtors' Plan in which they proposed, as they continue to do, to pay Equity Interest holders $.25 per share.  The Jointly Administered Debtors solicited votes in favor of the Fourth Amended Debtors' Plan pursuant to the Debtors' Disclosure Statement

-62-

1    in which they expressly set forth their contention that to be "fair and equitable" a plan needed to

2    satisfy section 1129(b)(2)(C)(i) or section 1129(b)(2)(C)(ii), not both.  (Debtors' Disclosure

3    Statement [Docket No. 1954] at 168-69 of 204.)  Charlestown and Hartland contend that because

4    section 1129(b)(2)(C) provides that to be fair and equitable with respect to a class of interests the

5    ~~plan~~plans must provide the class with treatment in accordance with section 1129(b)(2)(C)(i) "or"

6    section 1129(b)(2)(C)(ii), not section 1129(b)(2)(C)(i) "and" section 1129(b)(2)(C)(ii), the

7    Charlestown Plan ~~must satisfy~~may be confirmed if it satisfies only section 1129(b)(2)(C)(ii).  ~~The~~

8    ~~Court has not found a controlling case directly on point.  Accordingly, the Court must decide how to~~

9    ~~apply section 1129(b)(2)(C) to the particular facts of these Chapter 11 Cases where creditors are~~

10   ~~being paid in full.~~

11        29.    The Court does not agree that to be fair and equitable, the Charlestown Plan must

12   satisfy both section 1129(b)(2)(C)(i) and section 1129(b)(2)(C)(ii).  Section 1129(b)(2)(C) itself is

13   written in the disjunctive.  The word "or", not the word "and" separates section 1129(b)(2)(C)(i)

14   from section 1129(b)(2)(C)(ii).  The legislative history with respect to section 1129(b)(2)(C) reflects

15   that the word "or" was intended to mean "or," not "and."  H.R. Rep. No. 95-595, at 414 (1977).

16   Cases construing section 1129(b)(2)(C) hold that section 1129(b)(2)(C) provides for two alternative

17   tests to determine whether a plan is fair and equitable and, therefore, a plan that satisfies section

18   1129(b)(2)(C)(ii) does not also need to satisfy section 1129(b)(2)(C)(i).  *In re P. J. Keating Co.*, 168

19   B.R. 464, 468 (Bankr. D. Mass. 1994); *accord, In re Pero Bros. Farms, Inc.*, 90 B.R. 562, 564

20   (Bankr. S.D. Fla 1988).  The construction of section 1129(b)(2)(C) in these cases is in harmony with

21   the Ninth Circuit's construction of section 1129(b)(2)(A) which applies to secured creditors.

22   Section 1129(b)(2)(A) contains three tests to determine whether a plan is fair and equitable with

23   respect to a non-consenting class of secured claims.  As is the case with section 1129(b)(2)(C),

24   section 1129(b)(2)(A) is preceded by the word "includes" and the last of the three tests is preceded

25   by the word "or."  The Ninth Circuit, like other Circuits, has held that to be fair and equitable with

26   respect to a non-consenting class of secured claims, a plan does not need to satisfy all three tests

27   listed in section 1129(b)(2)(A).  *Arnold & Baker Farms v. United States* (*In re Arnold & Baker*

28   *Farms*), 85 F. 3d 1415, 1420 (9th Cir. 1996).  *Accord, e.g., In re Philadelphia Newspapers, LLC*, 599

-63-

1    F. 3d 298, 305-06 (3d. Cir. 2010).  The Court's conclusion is consistent with the position the Jointly

2    Administered Debtors have taken with respect to the treatment of Equity Interest holders under their

3    own plans (see supra at Conclusion of Law No. 28) and is also consistent with the position the

4    Jointly Administered Debtors have taken with respect to Class 2E of Jointly Administered Debtor

5    MMPLP (*see* infra at Conclusion of Law No. 39).

6        30.    However, the Court also does not agree that fair and equitable treatment is necessarily

7    limited to satisfying the literal language of section 1129(b)(2)(C)(ii).  The Charlestown Plan must be

8    fair and equitable, not just comply with the literal language of section 1129(b)(2)(C)(ii).  *See In re*

9    *Kennedy*, 158 B.R. 589, 599 (Bankr. D.N.J. 1993).  Accordingly, the Court must decide how to apply

10    section 1129(b)(2)(C) to the particular facts of these Chapter 11 Cases where creditors are being paid

11    in full.

12        31.    93. The Charlestown Plan treatment of Class 1F does propose to provide value to that

13    Class 1F.  The members of Class 1F get to retain at least 45% of their shares in MMPI (and thereby

14    will own and enjoy the benefit of shares in Reorganized MMPI) and are paid cash for the shares they

15    have to sell.  But, just as the Insider Equity Interest holders in Class 1F and Charlestown and

16    Hartland disagree about whether the Charlestown Plan must satisfy both section 1129(b)(2)(C)(i)

17    and section 1129(b)(2)(C)(ii), so too do they disagree about what measure should be applied to

18    determine whether the value to be treatment being provided is equal to the value of the Interests held

19    by under the Charlestown Plan is fair and equitable to the Insider Equity Interest holder holders.  The

20    Insider Equity Interest holders contend that the value must be to be fair and equitable, non-consenting

21    equity must be provided value equal to the value of their Equity Interests and that the value of their

22    Equity Interests is the residual value of MMPI determined by what MMPI's assets are worth over

23    and above the debt encumbering the assets.  Charlestown and Hartland contend that the value is to be

24    fair and equitable, the Charlestown Plan must pay for the Equity Interests only the price on to which

25    a buyer and seller would agree in an arm's length transaction for the shares Interests being sold.

26        32.    94. The Jointly Administered Debtors offered the declaration of M. Freddie Reiss

27    dated December 30, 2010 [Docket No. 2525] to support what they contended was the value of the

28    Jointly Administered Debtors' assets.  However, on cross-examination, Mr. Reiss admitted that he

did not actually value the assets of MMPI and rather simply added up the book value of assets on a

balance sheet or added up Richard Meruelo's valuations of the real properties owned by the Property

Level Debtors and subtracted the secured debt encumbering the assets and properties -- a simple

mathematical calculation.  Mr. Reiss expressly testified that he has not valued MMPI and has not

expressed a professional opinion of the value of MMPI.  (Testimony of M. Freddie Reiss on March

29, 2011, reflected in the Unofficial Official Transcript of Proceedings on March 29, 2011 at 124:1 20

- 147:25 .2.)  Other than the testimony of Mr. Reiss, which does not constitute an actual valuation or

an expert's professional opinion of value of the shares of stock being acquired from Insider Equity

Interest holders, neither the Jointly Administered Debtors nor the Insider Equity Interest holders

proffered any other evidence of value of the shares of stock being acquired from Insider Equity

Interest holders under the Charlestown Plan.

33.   95. Charlestown and Hartland offered the deposition testimony of Stephen Taylor and

the letter from the OEC contained in the Solicitation Packages [Docket No. 1985] in support of their

measure of value -- the price on which a buyer and seller would agree in an arm's length transaction.

The relevant excerpt of the deposition testimony of Stephen Taylor appears at page 134, lines 4-25 in

the transcript of the deposition of Stephen Taylor taken on January 5, 2011.  This excerpt was

received in evidence during the confirmation trial on March 10, 2011.  (Unofficial Official Transcript

of Proceedings on March 10, 2011 at 12:22-23.5:25 - 6:1.)  In the excerpt, Mr. Taylor testified that

$23 million is a fair price to pay for 55% of MMPI. $23 million for 55% of the shares of MMPI is

$.35 per share if the Charlestown Plan brings in new management.  Pursuant to the Charlestown Plan,

MMPI will have new management.  Additionally, in the OEC letter disseminated as part of the

Solicitation Packages, the OEC stated that the OEC had participated in the negotiation of the

portions of the Charlestown Plan that related to treatment of Non-Insider Equity Interest holders.

[Docket No. 1985].  That treatment included the price of $.35 per share for shares of MMPI being

acquired pursuant to the Charlestown Plan.  If Charlestown and Hartland are correct that the measure

of value fair and equitable is the price resulting from arms-length negotiation, this evidence supports

a conclusion that paying $.35 per share to Insider Equity Interest holders in Class 1F would satisfy

the fair and equitable requirement of section 1129(b)(2)(C)(i).

68132520.1 68238575.2

-65-

34. ~~96.~~ The Court has concluded that there is an additional ~~and apparently more accurate way to determine value for purposes of section 1129(b)(2)(C)(i)~~ way to measure whether what is being provided by the Charlestown Plan is fair and equitable to Class 1F. The Charlestown Plan is paying Insider Equity Interest holders in Class 1F for somewhat less than 55% of their shares in MMPI, not 100% of their shares. Equally importantly, what is being purchased is shares of stock in MMPI, not the assets of MMPI or the assets of the other Jointly Administered Debtors. The Court has concluded that the ~~current~~ trading price of the stock of MMPI is an appropriate ~~and accurate measure of value for purposes of section 1129(b)(2)(C)(i)~~ additional measure by which to determine whether what is being provided under the Charlestown Plan is fair and equitable to Class 1F. This is the measure the Jointly Affiliated Debtors used in determining the price they would pay for MMPI stock under Fourth Amended Debtors' Plan and all subsequent modifications thereof. (Finding of Fact No. 27, _supra_.) In light of this, the Court takes judicial notice of trading activity in MMPI stock as reflected in pleadings and testimony of record in this case and as readily determined by resort to sources whose accuracy cannot reasonably be questioned.

35. ~~97.~~ There is an active over the counter market for MMPI shares which are traded under the symbol "MMPIQ." As of May 18, 2011, the day prior to the Court's oral ruling ~~that it would confirm~~ confirming the Charlestown Plan, shares with the symbol MMPIQ traded at $.45 per share with a trading volume in 23,700 shares (and with a volume as high as 179,000 shares as recently as March 21, 2011). In addition, the price at which the Jointly Administered Debtors agreed that Watermarke could convert its $15 million secured loan into MMPI shares in Reorganized MMPI four years after confirmation is $.50 per share, and even lower on a present value basis [Docket No. 2554]. Furthermore, the excerpt of the deposition of Chris Kappos III taken on March 29, 2011 (annexed as Exhibit 6 to the Report of United States Trustee Re: Order Referring Concerns Raised by Members of the Official Committee of Equity Holders to the Office of the United States Trustee [Docket No. 2964]) reflects that some 300,000 shares of MMPI stock were sold in February 2011 for an average of $.50 per share. (Kappos Deposition at 66:14-67:4.) Accordingly, ~~if the Charlestown Plan is required to satisfy section 1129(b)(2)(C)(i) as well as section 1129(b)(2)(C)(ii),~~ the Court concludes that to be fair and equitable to the non-consenting Insider Equity Interest

1  Holders in Class 1F, the Charlestown Plan must pay $.45 per share to the Insider Equity Interest

2  holders in Class 1F for each share purchased in order to satisfy section 1129(b)(2)(C)(i).  As

3  reflected in the modified Charlestown Plan annexed hereto, Charlestown and Hartland have

4  modified the Charlestown Plan to provide for the payment of $.45 per share to the Insider Equity

5  Interest holders for each share of MMPI purchased from them under the Charlestown Plan, thereby

6  satisfying section 1129(b)(2)(C)(i) if compliance with that section is required.

7       36.  98.  Accordingly, Charlestown and Hartland have satisfied the requirement of section

8  1129(b) of the Bankruptcy Code with respect to Jointly Administered Debtor MMPI.

9       37.  Notwithstanding the fact that Class 2E of Jointly Administered Debtor MMPLP has

10  rejected the Charlestown Plan, the Charlestown Plan may be confirmed pursuant to section

11  1129(b)(1) of the Bankruptcy Code because:  (a) Classes of Claims in MMPLP are deemed to have

12  accepted the Charlestown Plan and (b) the Charlestown Plan does not discriminate unfairly and is

13  fair and equitable with respect to Class 2E.  The Charlestown Plan does not "discriminate unfairly"

14  with respect to Class 2E in the Charlestown Plan because Class 2E is the only Class of Interests with

15  respect to Jointly Administered Debtor MMPLP and there is no other class with respect to Jointly

16  Administered Debtor MMPLP that possesses legal rights similar to Class 2E.

17       38.  The Charlestown Plan is also "fair and equitable" under section 1129(b) of the

18  Bankruptcy Code with respect to Class 2E.  Section 1129(b)(2)(C) governs whether a plan is fair and

19  equitable with respect to a class of interests that is impaired and has not accepted the plan.  Section

20  1129(b)(2)(C) provides that the condition that a plan be fair and equitable with respect to a class of

21  interests includes the following requirements:  (i) the plan provides that each holder of an interest of

22  such class receive or retain on account of such interest property of a value, as of the effective date of

23  the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which

24  such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of

25  such interest; or (ii) the holder of any interest that is junior to the interests of such class will not

26  receive or retain under the plan on account of such junior interest any property.  The Charlestown

27  Plan satisfies section 1129(b)(2)(C)(ii) because there is no holder of any interest junior to the

28

1   interests in Class 2E with respect to Jointly Administered Debtor MMPLP who will receive or retain

2   property under the Charlestown Plan on account of such junior interest.

3       39.  Unlike their contentions on behalf of Insider Equity Interest holders who comprise

4   Class 1F of Jointly Administered Debtor MMPI, the Jointly Administered Debtors do not contend

5   that the Charlestown Plan must satisfy section 1129(b)(2)(C)(i) as well as section 1129(b)(2)(C)(ii)

6   with respect to Class 2E.  Additionally, in the Fourth Amended Debtors' Plan, the Jointly

7   Administered Debtors proposed treatment of Class 2E that is identical to the treatment of Class 2E in

8   the Charlestown Plan.  (Fourth Amended Debtors' Plan [Docket No. 1953] at 54-55.)  This treatment

9   remained unchanged in the First Modified Fourth Amended Debtors' Plan [Docket No. 2583], the

10   Second Modified Fourth Amended Debtors' Plan [Docket No. 2869] and the Debtors' May 3, 2011

11   Joint Plan [Docket No. 3055].  Moreover, the Jointly Administered Debtors have contended that

12   such treatment is fair and equitable under section 1129(b)(2)(C) because that treatment satisfies

13   section 1129(b)(2)(C)(ii).  (Debtors' Memorandum of Law in Support of Confirmation of Fourth

14   Amended Joint Plan [Docket No. 2326] at 48 of 51.)  In addition, no member of Class 2E objected to

15   the treatment of Class 2E under either the Charlestown Plan or the Jointly Administered Debtors'

16   plans.  Based upon all of the foregoing, the Court concludes that the Charlestown Plan satisfies

17   section 1129(b)(2)(C) with respect to Class 2E.

18       40.  Accordingly, Charlestown and Hartland have satisfied section 1129(b) of the

19   Bankruptcy Code with respect to Jointly Administered Debtor MMPLP.

20       41.  99. Notwithstanding the fact that Class 40A-2 of Jointly Administered Debtor

21   MG-2529 Santa Fe Avenue has rejected the Charlestown Plan, the Charlestown Plan may be

22   confirmed pursuant to section 1129(b)(1) of the Bankruptcy Code because (a) other Classes of

23   Claims and Interests in MG-2529 Santa Fe Avenue have voted to accept or are deemed to have

24   accepted the Charlestown Plan and (b) the Charlestown Plan does not "discriminate unfairly" with

25   respect to Class 40A-2 in the Charlestown Plan because Class 40A-2 is a single member class and

26   there is no other class with respect to Jointly Administered Debtor MG-2529 Santa Fe Avenue that

27   possesses legal rights similar to Class 40A-2.

28

42. 100. The Charlestown Plan is also "fair and equitable" under section 1129(b) with respect to Class 40A-2. Section 1129(b)(2)(A) governs whether a plan is fair and equitable with respect to a class of secured claims that is impaired under a plan. Section 1129(b)(2)(A) provides three alternative treatments for satisfying the fair and equitable requirement for a class of secured claims. The Charlestown Plan has selected the first of these alternative treatments for the treatment of Class 40A-2 -- section 1129(b)(2)(A)(i) which requires that the holder of the claim retain its lien securing its claim to the extent of the allowed amount of its claim and that the holder of each claim in the class receive an account of such claim cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property. The treatment of Class 40A-2 under the Charlestown Plan is to have the holder retain its lien and pay the holder of the claim deferred cash payments over a period of four years from the Effective Date of the Charlestown Plan in an amount equal to the Allowed Secured Claim plus interest on the Allowed Secured Claim at the rate of 5.25%. The Charlestown Plan provides that interest is to be payable monthly on the 15th day of the month with the first six installments of interest payable on the date the first installment is to be paid and that any unpaid principal balance of the Allowed Secured Claim plus any accrued and unpaid interest due and payable in four years.

43. 101. As set forth in Finding of Fact No. 39, supra, expert testimony in the form of the Declaration of Todd Pollack [Docket No. 2332] was submitted by Charlestown and Hartland as evidence that treatment of Class 40A-2 as described above satisfies the fair and equitable requirement of section 1129(b)(2)(A)(i). No evidence controverting Mr. Pollack's expert testimony was submitted by the holder of the Class 40A-2 Claim or by the Jointly Administered Debtors. Additionally, no objection to confirmation of the Charlestown Plan was submitted by the holder of the Class 40A-2 Claim.

44. 102. The Secured Loan which is part of the exit financing under the Charlestown Plan will have the same interest rate and four year term as provided for Class 40A-2. The Fourth Amended Debtors' Plan, unchanged in subsequent modifications, provided that Class 40A-2 was to be paid pursuant to terms virtually identical to those provided in the Charlestown Plan except as

1  follows.  The interest rate provided in the Fourth Amended Debtors' Plan is only 5% and the

2  maturity date is five years if the Class 40A-2 voted in favor and seven years if Class 40A-2 voted

3  against.  (Fourth Amended Debtors' Plan [Docket 1953] at 48-49, 104.)  The holder of the only

4  Claim in Class 40A-2 voted in favor of the Fourth Amended Debtors' Plan, thereby accepting a 5%

5  interest rate and a maturity date five years after the effective date of that plan.  (KCC Affidavit of

6  Robert Q. Klamser [Docket No. 2320] at 47.)  Based on all of the foregoing, the Court concludes that

7  the Charlestown Plan satisfies section 1129(b)(2)(A)(i) with respect to Class 40A-2.

8      45.  103. Accordingly, Charlestown and Hartland have satisfied section 1129(b) of the

9  Bankruptcy Code with respect to Jointly Administered Debtor MG-2529 Santa Fe Avenue.

10  **Section 1129(d) -- Principal Purpose of the Charlestown Plan Is
Not the Avoidance of Taxes or Application of the Securities Law**

11

12      46.  104. No governmental unit has requested that the Bankruptcy Court refuse to confirm

13  the Charlestown Plan on the grounds that the principal purpose of the Charlestown Plan is the

14  avoidance of taxes or the avoidance of the application of section 5 of the Securities Act.

15  Additionally, as evidenced by the terms of the Charlestown Plan, the principal purpose of the

16  Charlestown Plan is not avoid taxes or the application of securities law.  Accordingly, Charlestown

17  and Hartland have satisfied the requirements of section 1129(d) of the Bankruptcy Code.

18  **Satisfaction of the Confirmation Requirements in Sections 1129(a), 1129(b) and 1129(bd)**

19      47.  105. Based upon the foregoing findings of fact and conclusions of law, all other filed

20  pleadings, documents, exhibits, statements, declarations and affidavits filed in connection with

21  confirmation of the Charlestown Plan and all evidence and arguments made, proffered or adduced

22  during the confirmation trial and subsequent hearings, Charlestown and Hartland have met their

23  burden of proving that the Charlestown Plan satisfies the requirements for confirmation pursuant to

24  and in accordance with sections 1129(a), 1129(b) and 1129(d) of the Bankruptcy Code.

25  **Good Faith**

26      48.  106. Charlestown and Hartland and their principal constituencies (including, without

27  limitation, GAC Real Estate and Mount Kellett) and the OEC (and each of their respective

28  professionals and representatives, among others), have been and are acting and will continue to act in

1  good faith if and when they proceed to (a) consummate the Charlestown Plan and the agreements,

2  settlements, transactions and transfers contemplated thereunder (including, without limitation, the

3  Equity Investment and the Secured Loan which provide the exit financing and the Restructuring

4  Transactions) and (b) take the actions authorized and directed by the confirmation order(s) to be

5  entered in accordance herewith.

6  **Settlement, Release and Injunction Provisions**

7     49. 107. In accordance with Bankruptcy Rule 9019(a), and in consideration for the

8  distributions and other benefits provided under the Charlestown Plan, the confirmation order(s) to be

9  entered in accordance herewith constitutes the Bankruptcy Court's finding and determination that

10  the settlements reflected in the Plan:

11        (i)      reflect a reasonable balance between certainty and the risks and expenses of

12                 future litigation and the continuation or conversion of these Chapter 11 Cases;

13        (ii)     fall well within the range of reasonableness for the resolution of complex

14                 litigation;

15        (iii)    are fair, equitable and reasonable and in the best interests of the Jointly

16                 Administered Debtors, the Reorganized Jointly Administered Debtors, their

17                 respective bankruptcy estates and property, creditors, equity security holders

18                 and other parties in interest;

19        (iv)     will maximize the value of the bankruptcy estates by preserving and

20                 protecting the ability of the Reorganized Jointly Administered Debtors to

21                 continue operating outside of bankruptcy protection and in the ordinary

22                 course of business; and

23        (v)      are essential to and an integral part of the successful implementation of the

24                 Charlestown Plan.

25     50. 108. Additionally, the allowance, classification and treatment of Allowed Claims take

26  into account any Causes of Action, whether under the Bankruptcy Code or otherwise under

27  applicable non-bankruptcy law, that may exist between the Jointly Administered Debtors, on the one

28  hand, and the releasees, on the other.

68132520.168238575.2                                       -71-

51. 109. The record of the confirmation trial and these Chapter 11 Cases is sufficient to support the discharge, injunction and limitation of liability provisions contained in Article IV of the Charlestown Plan.  The Charlestown Plan's injunction and limitation of liability provisions have been negotiated in good faith and within the jurisdiction of the Bankruptcy Court.  Each non-debtor party that will benefit from the injunctions and limitation of liabilities set forth in Article IV of the Charlestown Plan (collectively, the "Plan Releases") was instrumental to the successful prosecution of the Chapter 11 Cases and/or provided substantial consideration to the bankruptcy estates which value will allow for distributions that would not otherwise be available but for the contributions made by such non-debtor parties.  Thus, the Court finds and determines that the Plan Releases and related provisions in Article IV of the Plan are:

- individually and collectively integral to and necessary for the successful implementation of the Charlestown Plan and the Jointly Administered Debtors' post-emergence ongoing viability;

- fair, equitable, reasonable, are integral elements of the restructuring and final resolution of the Chapter 11 Cases in accordance with the Charlestown Plan and are important to the overall objectives of the Charlestown Plan;

- the product of extensive arm's-length negotiations between Charlestown and Hartland and major creditor constituencies and constitute good faith compromises and settlements of the matters covered thereby; and

- made in exchange for consideration and confer material benefits on, and are in the best interests of, the Jointly Administered Debtors, their bankruptcy estates and holders of Claims and Interests.

52. 110. The limitation of liability set forth in Article IV.N. of the Charlestown Plan provides requisite and appropriate protection to parties who were essential to, and who exercised good faith in negotiating and implementing, the consensual restructuring of the Jointly Administered Debtors' business effectuated by the Charlestown Plan, while maintaining a standard limited to willful misconduct/gross negligence liability.  The preservation of certain causes of action for later adjudication by the Reorganized Jointly Administered Debtors in accordance with section

68132520.1 68238575.2

-72-

1  1123(b)(3)(B) of the Bankruptcy Code in Article IV.I. of the Charlestown Plan, are both

2  appropriately tailored, consonant with relevant and applicable law and essential to the

3  implementation of the Charlestown Plan.

4  **Disclosure:  Agreements and Other Documents**

5       53.  111. Charlestown and Hartland have disclosed all material facts regarding:  (i) the

6  adoption of the new certificates of incorporation and bylaws or similar constituent documents; (ii)

7  the selection of the members of the new board of directors of MMPI and certain new officers for the

8  applicable Reorganized Jointly Administered Debtors; (iii) the reorganized MMPI's obligations

9  under the Secured Loan; (iv) the sources and distribution of Cash under the Charlestown Plan; (v)

10  the terms of the Reverse Stock Split; (v) the adoption, execution and implementation of other matters

11  provided for under the Charlestown Plan involving corporate action to be taken by or required of the

12  Reorganized Jointly Administered Debtors.

13  **Restructuring Transactions**

14       54.  112. The Restructuring Transactions described in Article IV.E., F. and H. of the

15  Charlestown Plan are the result of extensive negotiations between Charlestown and Hartland and

16  their primary stakeholder constituencies, have been proposed in good faith and are critical to the

17  success and feasibility of the Charlestown Plan.  The Restructuring Transactions work to streamline

18  the Debtors' corporate structure to better reflect and serve the Reorganized Jointly Administered

19  Debtors' operational functions and enhance the Reorganized Jointly Administered Debtors' ability

20  to analyze and address their operational performance along their various business lines.  The

21  Restructuring Transactions have neither been entered into fraudulently, nor with the intent to hinder,

22  delay or defraud any entity to which the Reorganized Jointly Administered Debtors are, or may

23  become, indebted on or after the Effective Date.

24  **The Secured Loan**

25       55.  113. The Secured Loan is an essential element of the Charlestown Plan and entry into

26  and consummation of the transactions contemplated by the Secured Loan is in the best interests of

27  the Jointly Administered Debtors, their bankruptcy estates and all parties in interest.  Charlestown

28  and Hartland have exercised reasonable business judgment in determining to have MMPI enter into

1   the Secured Loan and have provided sufficient and adequate notice of the Secured Loan and have

2   provided sufficient and adequate notice of the material terms of the Secured Loan since Charlestown

3   and Hartland filed the Commitment Letter they received from GAC Real Estate and Mount Kellett

4   and have provided the actual loan documents in the First Supplement to the Charlestown Plan.  The

5   terms and conditions of the Secured Loan are fair and reasonable, and the Secured Loan has been

6   negotiated in good faith and at arm's-length.  Any credit extended to the Reorganized Jointly

7   Administered Debtors pursuant to the Secured Loan shall be deemed to have been extended, issued

8   and made in good faith.

9       56.   114. The execution of deeds of trust by Jointly Administered Debtors Merco Group -

10  1211 E. Washington Boulevard, LLC and Meruelo Maddux - 230 W. Avenue 26, LLC and by

11  non-Jointly Administered Debtor Chinatown to encumber the respective real property for purpose of

12  securing the Secured Loan to MMPI is an essential element of the Charlestown Plan and in the best

13  interests of the Jointly Administered Debtors as a whole, the Debtors executing the deeds of trust and

14  their respective bankruptcy estates and, because of the manner in which MMPI and the Property

15  Level Debtors operate, will provide value and fair consideration to MMPI and each of the Property

16  Level Debtors including those executing the deeds of trust.  Accordingly, execution of the deeds of

17  trust is appropriate.  An order will also be entered in the Chinatown chapter 11 case directing

18  execution of the required deed of trust by Chinatown.

19  **Executory Contracts and Unexpired Leases; Adequate Assurance**

20      57.   115. Charlestown and Hartland are to provide a schedule of all unexpired real

21  property leases and executory contracts to be rejected on or before the Effective Date of the

22  Charlestown Plan.  Any unexpired lease and executory contract not on that schedule shall be deemed

23  automatically assumed in accordance with the provisions and requirements of sections 365 and 1123

24  of the Bankruptcy Code as of the Effective Date and any undisputed cure amounts shall be paid

25  within 30 days of the Effective Date or as otherwise agreed by the non-debtor party.  Any disputed

26  cure amounts shall be paid within 30 days of entry of a Final Order determining the cure amount, if

27  any.

28

58. 116. Adequate assurance of future performance as to the unexpired leases and executory contracts that will be assumed has been provided as part of the confirmation trial and post-trial status conferences and hearings.  As a result, the requirements of section 365 of the Bankruptcy Code will have been satisfied.

**Implementation of Other Necessary Documents and Agreements**

59. 117. All documents and agreements necessary to implement the Charlestown Plan are essential elements of the Charlestown Plan and entry into and consummation of the transactions contemplated by each such documents and agreements is in the best interests of the Reorganized Jointly Administered Debtors, their bankruptcy estates and holders of Claims and Interests. Charlestown and Hartland have exercised reasonable business judgment in determining which agreements to enter and have provided sufficient and adequate notice of such documents and agreements.  The terms and conditions of such documents and agreements have been negotiated in good faith, at arm's length, are fair and reasonable and are reaffirmed and approved.

60. 118. Based upon all of the foregoing, the modified Charlestown Plan annexed hereto is confirmable and all objections to confirmation of the Charlestown Plan should be overruled.

**The Charlestown Plan should be Confirmed Pursuant to Section 1129(c)**

61. 119. By reason of section 1129(c) of the Bankruptcy Code, the Court may confirm only one plan of reorganization for the Jointly Administered Debtors.  Thus, if the Charlestown Plan and the Debtors' May 3, 2011 Joint Plan both satisfy sections 1129(a), 1129(b) and 1129(d) of the Bankruptcy Code, the Court must choose which plan to confirm.

62. 120. Section 1129(c) provides that in determining which plan to confirm, the Court shall consider the preferences of creditors and equity security holders.  However, case law establishes that the preferences of creditors and equity security holders are not the only factors the Court should consider.  The Court is also to look at the plans' treatment of creditors and equity security holders and the feasibility of the plans.  As set forth below, each of these factors dictate confirmation of the Charlestown Plan if both plans satisfy sections 1129(a) and 1129(b).

63. 121. Over the course of the confirmation trial and post-trial process, the Charlestown Plan has become a fully consensual plan except for Insider Equity (Class 1F) and Class 40A-2, the

1  latter of which voted to reject the Charlestown Plan but did not file objections or take part in the

2  confirmation trial.  That Insider Equity opposes the Charlestown Plan is not surprising because the

3  Charlestown Plan divests them of control of the Jointly Administered Debtors although they remain

4  shareholders of reorganized MMPI.  In contrast, Outside Equity has voted overwhelmingly in favor

5  of the Charlestown Plan and its official representative, the OEC, strongly supports confirmation of

6  the Charlestown Plan, principally because it does divest Insider Equity of control and effects a

7  change in management.

8       64.  122. The Charlestown Plan encompasses agreements with $70 million of secured debt

9  (Classes 32A-2, 43A-2, 47A-2 and 49A-2) which still must be crammed down in order for the

10  Debtors' May 3, 2011 Joint Plan to be confirmed.  An additional $60 million of secured debt

11  (Classes 36A-2 and 36A-3) which has accepted both plans has expressed to the Court that it

12  "strongly" prefers the Charlestown Plan.  The Charlestown Plan also encompasses settlements and

13  compromises that the Jointly Administered Debtors have refused to make.  Thus, the Charlestown

14  Plan includes a compromise of the condemnation litigation with the MTA.  The Court has found that

15  this compromise evidences a wise business decision because it results in a significant and immediate

16  cash infusion to the reorganized Jointly Administered Debtors and puts an end to the incurring of

17  litigation expenses in a case the Court has found the Debtors will lose.  In light of the compromise,

18  the MTA has withdrawn its objection to confirmation of the Charlestown Plan.  The Jointly

19  Administered Debtors have declined to enter into a compromise of that litigation as part of the

20  Debtors' May 3, 2011 Joint Plan.  As a result, the MTA has maintained its objection to confirmation

21  of the Debtors' May 3, 2011 Joint Plan.

22       65.  123. The Charlestown Plan also includes a settlement with Grand Avenue Lofts and

23  the Grand Avenue Lofts HOA (Classes 29A-3 and 29A-4) which eliminates the immediate risk of

24  loss of the property owned by Jointly Administered Debtor Meruelo Maddux - 336 W. 11th Street

25  LLC, the need for that Debtor to pay on the Effective Date a $2.1 million secured Claim of the HOA

26  and the need for two other Debtors (Merco Group - Southpark LLC and Merco Group - Little J LLC)

27  to pay a $2.1 million unsecured claim of the HOA.  As a result of this settlement, both Grand Avenue

28  Lofts and the HOA have withdrawn their objections to the Charlestown Plan.  The Debtors' May 3,

1    2011 Joint Plan does not address or resolve any of these issues and the objections of Grand Avenue

2    Lofts and the HOA remain outstanding.  The Court has not determined whether the Debtors' May 3,

3    2011 Joint Plan can be confirmed in light of these issues and objections.

4        66.    124. With the exception of Class 40A-2, all creditors (secured and unsecured) have

5    accepted or are deemed to have accepted the Charlestown Plan.  The OCC, which is the official

6    representative of general unsecured creditors, has expressed its support and preference for the

7    Charlestown Plan over the Debtors' May 3, 2011 Joint Plan even though both plans provide for

8    payment in full with interest for unsecured creditors.

9        67.    125. The Charlestown Plan is also more feasible than the Debtors' May 3, 2011 Joint

10    Plan for a number of reasons.  The Charlestown Plan has an infusion of capital, not just debt, to fund

11    it.  The Charlestown Plan will have more cash available at or near the Effective Date and throughout

12    the first year.  The Charlestown Plan uses more conservative projected sales prices for those

13    properties that are to be sold.  Despite this, the Charlestown Plan has better cash flows than the

14    Debtors' May 3, 2011 Joint Plan.

15        68.    126. Charlestown and Hartland have reached agreement with secured creditors over

16    the form of loan modification agreements.  In contrast, the Jointly Administered Debtors have not

17    reached agreement on loan modification agreements with certain secured creditors and the Court

18    will be required to have further hearings to resolve the form of the loan modifications because the

19    Jointly Administered Debtors did not establish during the confirmation trial or otherwise that the

20    modifications they propose are necessary to a reorganization.

21        69.    The Court has also considered the Jointly Administered Debtors' Reconsideration

22    Motion and the arguments in support of and in opposition thereto advanced by the Jointly

23    Administered Debtors, Richard Meruelo, John Maddux, Charlestown and Hartland, the OCC, the

24    OEC and certain secured and unsecured creditors.  The Court has determined that the Jointly

25    Administered Debtors' Reconsideration Motion and the arguments advanced in support thereof do

26    not warrant a change in any of the foregoing Findings of Fact and Conclusions of Law regarding

27    confirmation of the Charlestown Plan.

28

70. 127. Based upon all of the foregoing, and assuming for purposes of section 1129(c) that the Debtors' May 3, 2011 Joint Plan satisfies sections 1129(a), 1129(b), and 1129(d) of the Bankruptcy Code (the Court has having not yet determined whether it does or does not), the Court will confirm the Charlestown Plan, not the Debtors' May 3, 2011 Joint Plan, pursuant to section 1129(c) of the Bankruptcy Code.

**Conditions Precedent to Confirmation**

71. 128. All provisions, terms and conditions of the Charlestown Plan are approved. Entry of the Confirmation Order(s) in a form and substance acceptable to Charlestown and Hartland shall satisfy the conditions to Confirmation set forth in Article V5.A. of the Charlestown Plan.

**Conditions Precedent to Effective Date**

72. 129. Each of the conditions precedent to the Effective Date, as set forth in Article VI.C. of the Charlestown Plan are reasonably likely to be satisfied. The Effective Date shall occur and the Charlestown Plan shall become effective as set forth in Article VI.B. of the Charlestown Plan after the satisfaction or waiver of the conditions set forth in Article VI.A. of the Charlestown Plan or such earlier date as Charlestown and Hartland determine is appropriate after entry of the Confirmation Order(s).

**Retention of Jurisdiction**

73. 130. The Bankruptcy Court properly may retain jurisdiction over the matters set forth in Article IX and other applicable provisions of the Charlestown Plan.

74. 131. The Bankruptcy Court properly may also retain, and does retain, jurisdiction to decide what relief, if any, should be granted pursuant to the still undecided spoliation motion.

Based upon all of the foregoing, the Charlestown Plan should be confirmed and the Confirmation Order(s) confirming the Charlestown Plan and overruling all objections thereto should be entered forthwith.

### ###

# EXHIBIT

# B

CHRISTOPHER E. PRINCE (SBN 183553)
  cprince@lesnickprince.com
MATTHEW A. LESNICK (SBN 177594)
  matt@lesnickprince.com
ANDREW R. CAHILL (SBN 233798)
  acahill@lesnickprince.com
LESNICK PRINCE LLP
185 Pier Avenue, Suite 103
Santa Monica, CA  90405
Telephone: (213) 493-6496
Facsimile: (213) 493-6596

Attorneys for Charlestown Capital Advisors, LLC and
Hartland Asset Management Corporation

PAUL, HASTINGS, JANOFSKY & WALKER LLP
  CynthiaCohen@paulhastings.com
CYNTHIA M. COHEN (State Bar No. 93639)
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, CA 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

Attorneys for Global Asset Capital, LLC and
GAC Real Estate Partners, LLC

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:09-bk-13356-VK |
| MERUELO MADDUX PROPERTIES, INC., et al.,[1] | Chapter 11 |
| Debtors. | |
| | **ORDER CONFIRMING THE CHARLESTOWN PLAN** |
| ☒    Affects All Debtors | |

_____

[1] Pursuant to an Order of this Court, this case is being jointly administered with 53 chapter 11 cases filed by affiliated entities. The affiliated case numbers are as follows: 1:09-bk-13338-VK; 1:09-bk-13358-VK through 1:09-bk-13407-VK; 1:09-bk-13434-VK; and 1:09-bk-13439-VK.

For the reasons stated in this Court's Findings of Fact and Conclusions of Law Re: Confirmation of Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation's Second Modified Fourth Amended Chapter 11 Plan of Reorganization Dated October 14, 2010 (the "Findings and Conclusions") [Dkt. No. ___], the text of which is incorporated here as if set forth fully, **IT IS HEREBY ORDERED THAT:**

Order.  This Order Confirming the Charlestown Plan shall and does confirm the Chapter 11 plan of reorganization proposed by Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (the "**Plan**").  At the request of by Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation (collectively "**Charlestown**"), the Plan is hereby modified pursuant to section 1127(a) of the Bankruptcy Code as forth in Paragraph 2 (the "**Technical Modifications**").  All Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Technical Modifications.   No Holder of a Claim shall be permitted to changes its vote as a consequence of such modifications, unless otherwise agreed to by the Holder of the Claims and Charlestown.  The Technical Modifications to the Plan are hereby approved, pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  The Plan, as modified by the Technical Modifications, shall constitute the Plan submitted for Confirmation.

Technical Modifications.

In addition to the Amendments and Modifications to the Plan that have been previously approved, the additional modifications reflected in the redlined "Charlestown Capital Advisors, LLC and Hartland Asset Management Corporation's Third Modified Fourth Amended Chapter 11 Plan of Reorganization Dated October 14, 2010" attached as Exhibit A to the Findings and Conclusions are approved, including the following modifications:

(a)  the payment to Holders of Interests in Class 1F is increased from 35 cents

1

1    per share to 45 cents per share;

2            (b)  the treatment of claims of Roofcorp of CA, Inc. (Class 21A-2 and 54A-3)

3    are changed from impaired to unimpaired and, therefore, each of those claims will be paid in

4    full on the later of the Effective Date or the date upon which those claims become Allowed

5    Claims;

6            (c) the Plan provision regarding unexpired real property leases and executory

7    contracts shall be as modified to provide as follows:  Charlestown and Hartland are to

8    provide a schedule of all unexpired real property leases and executory contracts to be

9    rejected on or before the Effective Date of the Plan.  Any unexpired lease and executory

10   contract not on that schedule shall be deemed automatically assumed in accordance with the

11   provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the

12   Effective Date and any undisputed cure amounts shall be paid within 30 days of the Effective

13   Date or as otherwise agreed by the non-debtor party.  Any disputed cure amounts shall be

14   paid within 30 days of entry of a Final Order determining the cure amount, if any;

15           (d) the provision regarding dissolution of the Creditors' and Equity Committees

16   is modified to provide for dissolution 90 days after the Effective Date; and

17           (e) the Plan is modified to include the following sentence in the treatment of

18   Class 36A-2 and 36A-3 (the Cathay Bank Secured ~~Claim~~Claims): On the Effective Date, the

19   ~~Holder~~Holders (either Cathay Bank or Purchaser as applicable) shall retain ~~its~~their liens on

20   the Alameda Produce Market Encumbered Real Property as set forth in the current Deeds of

21   Trust in favor of ~~Holder~~Holders encumbering such properties.

22           Confirmation of the Plan. With respect to MMPI and the other

23   Jointly Administered Debtors (with the exception of Merco Group - 2529 Santa Fe

24   Avenue, LLC which is the subject of a separate confirmation order), the Plan and

25   each of its provisions (as such Plan may have been modified in accordance with section

26   1127(a) of the Bankruptcy Code) shall be, and hereby are, CONFIRMED under section

27   1129 of the Bankruptcy Code. The terms of the Plan (a copy of which is attached to this

28

1  Order as Exhibit 1), all of its exhibits and schedules, and the First Plan Supplement

2  [Docket No. 3070] and the Second Plan Supplement [Docket No. 3120] (collectively the

3  "**Plan Supplements**"), are incorporated by reference into, and are an integral part of,

4  the Plan and this Confirmation Order and are authorized and approved.

5              Objections. All objections, responses, reservations, statements and

6  comments in opposition to the Plan, other than those resolved or withdrawn with

7  prejudice prior to, or on the record at, the Confirmation Hearing are overruled for the

8  reasons stated on the record and in the Court's Findings and Conclusions.

9              Plan Implementation.

10              a. General Authorization. The transactions described in the Plan, including

11  the Disclosure Statement [Docket No. 1952] and Plan Supplements (collectively the

12  "**Plan Documents**") are hereby approved.  On or before the Effective Date, and after

13  the Effective Date, as necessary, and without any further order of the Court or other

14  authority, the Reorganized Debtors and their respective directors, officers, members,

15  agents, attorneys, financial advisors and investment bankers are authorized and

16  empowered pursuant to section 1142(b) of the Bankruptcy Code and other applicable

17  state laws (i) to grant, issue, execute, deliver, file, or record any agreement, document,

18  or security, and the documents contained in the Plan or the Plan Supplements, as

19  modified, amended, and supplemented, in substantially the form included therein, or

20  any other documents related thereto and (ii) to take any action necessary or appropriate

21  to implement, effectuate, and consummate the Plan and the Plan Documents in

22  accordance with their terms.  All such actions taken or caused to be taken shall be

23  deemed to have been authorized and approved by the Bankruptcy Court without further

24  approval, act or action under any applicable law, order, rule or regulation, including,

25  without limitation, any action otherwise required to be taken by the holders of Interests

26  in, or directors of, the Reorganized Debtors, including, among other things, (a) all

27  transfers of assets that are to occur pursuant to the Plan, (b) the incurrence of all

28

3

1  obligations contemplated by the Plan and the making of all distributions under the Plan,

2  (c) the implementation of all settlements and compromises as set forth in or

3  contemplated by the Plan, and (d) the filing and/or adopting of any modifications or

4  amendments to the Plan and Plan Documents, and (e) entering into any and all

5  transactions,  contracts, leases, instruments, releases, and other documents and

6  arrangements permitted by applicable law, order, rule or regulation. The approvals and

7  authorizations specifically set forth in this Confirmation Order are nonexclusive and are

8  not intended to limit the authority of any Reorganized Debtor or other Debtor or any

9  officer thereof to take any and all actions necessary or appropriate to implement,

10  effectuate, and consummate any and all documents or transactions contemplated by

11  the Plan or this Confirmation Order pursuant to section 1142(b) of the Bankruptcy Code.

12  Pursuant to section 1142 of the Bankruptcy Code, to the extent that, under applicable

13  nonbankruptcy law or the rules of any stock exchange, any of the foregoing actions that

14  would otherwise require approval of the equity holders or directors (or any equivalent

15  body) of one or more of the Reorganized Debtors, such approval shall be deemed to

16  have occurred and shall be in effect from and after the Effective Date pursuant to the

17  applicable law of the jurisdiction of incorporation or formation without any requirement of

18  further action by the equity holders or directors (or any equivalent body) of the

19  Reorganized Debtors. On the Effective Date or as soon thereafter as is practicable, the

20  Reorganized Debtors shall, if required, file any documents required to be filed in such

21  states so as to effectuate the provisions of the Plan. Any or all documents contemplated

22  herein shall be filed, if required, and accepted by each of the respective state filing

23  offices and recorded, if required, in accordance with applicable state law and shall

24  become effective in accordance with their terms and the provisions of state law. All

25  counterparties to any documents described in this paragraph are hereby directed to

26  execute such documents as may be required or provided by such documents, without

27  any further order of this Court. Prior to the Effective Date, Charlestown is authorized to

28

take such preliminary actions as are necessary to have the Plan go effective except that any and all actions taken by Charlestown shall not bind Jointly Administered Debtors or Reorganized Debtors unless and until the Plan goes effective.

b. <u>No Action</u>. Pursuant to the appropriate provisions of the General Corporation Law of the State of Delaware (or other comparable state law as applicable) and section 1142(b) of the Bankruptcy Code, no action of the respective directors, stockholders, or other holders or Interests of the Reorganized Debtors shall be required to authorize the Reorganized Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and any contract, instrument, or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan.

c. <u>Approval of MTA Settlement Agreement, the treatment of the PNL Pomona Secured Claim, the Purchase of Shares, the Secured Loan, the Reverse Stock Split and the MMPLP Merger</u>. The On the Effective Date, the MTA Settlement Agreement, the treatment of the PNL Pomona Secured Claim, the Purchase of Shares, the Secured Loan, the Reverse Stock Split and the MMPLP merger described in the Plan are hereby authorized and approved, and the Reorganized Debtors' obligations thereunder are legal, valid, binding and enforceable in accordance with the terms of the Plan and the documents and agreements entered into in accordance herewith. The Reorganized Debtors may take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and to consummate, the MTA Settlement Agreement, the Purchase of Shares, the Secured Loan, the Reverse Stock Split, the MMPLP Merger, the Plan and the Plan Documents, and any other documents contemplated to be executed therewith, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order rule or regulation, including, without limitation, any action required

1   by the stockholders, other holders of Interests, or director of the Reorganized Debtors.

2   The officers of the Reorganized Debtors are authorized and directed to execute and

3   deliver all agreements, documents, instruments, notices and certificates as are

4   contemplated by the Plan and the Plan Documents and to take all necessary actions

5   required in connection therewith, in the name of and on behalf of, the Reorganized

6   Debtors.

7   With respect to the treatment of the PNL Pomona Secured Claim, PNL Pomona may

8   proceed with the pending non-judicial foreclosure on its collateral without further order

9   of this Court and without violating the terms of the Automatic Stay or the Release and

10  Discharge provisions of the Plan or this Confirmation Order. With respect to the MTA

11  Settlement, except as provided below, the terms of the MTA Settlement are approved in

12  their entirety and in all respects, pursuant to Bankruptcy Rule 9019 and section 1123 of

13  the Bankruptcy Code.  Upon the Effective Date, Debtor Alameda Produce is deemed to

14  have executed the MTA Settlement, and is hereby authorized to execute any additional

15  documents and take any additional steps necessary to facilitate and consummate the

16  terms of the MTA Settlement.  As the Court did not elect to pursue the Interim

17  Alternative Treatment set forth in Section 2 of the MTA Settlement, section 2 of the MTA

18  Settlement shall be without force and effect. Prior to the Effective Date, Charlestown is

19  authorized to take such preliminary actions as are necessary to effectuate the

20  above-described transactions except that any and all actions taken by Charlestown shall

21  not bind Jointly Administered Debtors or Reorganized Debtors unless and until the Plan

22  goes effective.

23          Binding Effect. On the date of and after entry of this Confirmation

24  Order and subject to the occurrence of the Effective Date, the provisions of the Plan

25  shall bind any holder of a Claim or Interest and such holder's respective successors and

26  assigns, whether or not such Claim or Interest of such holder is impaired under the

27  Plan, whether or not such holder has accepted the Plan and whether or not such holder

28

is entitled to a distribution under the Plan, and any and all non-debtor parties that are

parties to executory contracts and unexpired real property leases with any of the

Reorganized Debtors, any other party in interest in the Chapter 11 Cases, and the

respective heirs, executors, administrators, successors, or assigns, if any, of the

foregoing.

Revesting of Assets (11 U.S.C. § 1141(b), (c)). As set forth in

Article IV.B. of the Plan, as of the Effective Date, all property of the Estates shall revest

in the Reorganized Debtors free and clear of all Claims, Liens, encumbrances or other

Interests, except as otherwise provided in the Plan or in this Confirmation Order. From

and after the Effective Date, the Reorganized Debtors may operate their businesses

and use, acquire, dispose of property and settle and compromise Claims or Interests

without supervision by the Bankruptcy Court and free of any restrictions in the

Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed

by the Plan and this Confirmation Order.

Retained Assets. To the extent that the retention by Reorganized

Debtors of assets held immediately prior to emergence in accordance with the Plan is

deemed, in any instance, to constitute "transfers" of property, such transfers of property

to the Reorganized Debtors (a) are or shall be legal, valid, and effective transfers of

property, (b) vest or shall vest the Reorganized Debtors with good title to such property,

free and clear of all liens, charges, Claims, encumbrances, or interests, except as

expressly provided in the Plan or this Confirmation Order, (c) do not and shall not

constitute avoidable transfers under the Bankruptcy Code or under applicable

nonbankruptcy law, and (d) do not and shall not subject the Reorganized Debtors to any

liability by reason of such transfer under the Bankruptcy Code or under applicable

nonbankruptcy law, including by laws affecting successor or transferee liability.

Distribution Record Date. The Reorganized Debtors are hereby

entitled to recognize and deal for all purposes hereunder only with those record holders

1  stated on the transfer ledgers as of the close of business on the date that is ten (10)

2  days after the entry of this Confirmation Order (the "**Distribution Record Date**");

3  *provided, however,* that if the Distribution Record Date occurs on a weekend or holiday,

4  the Distribution Record Date shall be the first business day thereafter.

5          Treatment of Executory Contracts and Unexpired Real Property

6  Leases. The provisions regarding executor contracts and unexpired real property

7  leases, as modified by the Modifications in Paragraph 2, are hereby approved.

8          Exemption from Transfer Taxes. In accordance with section

9  1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity

10  securities under or in connection with the Plan, the creation of any mortgage, deed of

11  trust or other security interest, the making or assignment of any lease or sublease or the

12  making or delivery of any deed or other instrument of transfer under, in furtherance of,

13  or in connection with the Plan, including any merger agreements or agreements of

14  consolidation, deeds, bills of sale or assignments executed in connection with any of the

15  transactions contemplated under the Plan  shall not be subject to any stamp, real estate

16  transfer, mortgage recording or other similar tax.

17          Exemption from Securities Laws. Except with respect to an entity

18  that is an underwriter as defined in section 1145(b) of the Bankruptcy Code, the offer

19  and sale of any securities under the Plan shall be exempt from registration under the

20  Securities Act of 1933, as amended, and all rules and regulations promulgated

21  thereunder, and under any state or local law requiring registration for offer or sale of a

22  security or registration or licensing of an issuer of, underwriter of, or broker dealer in a

23  security.

24          Payment of Statutory Fees. All fees payable pursuant to Section

25  1930 of title 28 of the United States Code due and payable through the Effective Date

26  shall be paid by or on behalf of a Reorganized Debtor on or before the Effective Date,

27  and amounts due thereafter shall be paid by or on behalf of the Reorganized Debtor in

28

1  the ordinary course of business until the entry of a final decree closing the respective

2  Reorganized Debtor's Chapter 11 Case. Any deadline for filing administrative Claims or

3  other Claims in these Chapter 11 Cases shall not apply to fees payable by each

4  respective Plan Debtor pursuant to section 1930 of title 28 of the United States Code.

5          Governmental Approvals Not Required. This Confirmation Order

6  shall constitute all approvals and consents required, if any, by the laws, rules, or

7  regulations of any state or any other governmental authority with respect to the

8  implementation or consummation of the Plan, and any documents, instruments, or

9  agreements, and any amendments or modifications thereto, and any other acts referred

10  to in or contemplated by the Plan, the Plan Documents, and any documents,

11  instruments, or agreements, and any amendments or modifications thereto.

12          Filing and Recording. This Confirmation Order is and shall be

13  binding upon and shall govern the acts of all persons or entities including, without

14  limitation, all transfer agents, paying agents, filing agents, filing officers, title agents, title

15  companies, recorders of mortgages, recorders of deeds, registrars of deeds,

16  administrative agencies, governmental departments, secretaries of state, federal, state,

17  and local officials, and all other persons and entities who may be required, by operation

18  of law, the duties of their office, or contract, to accept, file, register, or otherwise record

19  or release any document or instrument. Each and every federal, state, and local

20  government agency is hereby directed to accept any and all documents and instruments

21  necessary, useful, or appropriate (including financing statements under applicable the

22  uniform commercial code) to effectuate, implement, and consummate the transactions

23  contemplated by the Plan and this Confirmation Order without payment of any recording

24  tax, stamp tax, transfer tax, or similar tax imposed by state or local law.

25          Release of Adequate Protection Liens. From and after the Effective

26  Date, to the extent a holder of a Claim against a Debtor also holds an Adequate

27  Protection Lien, such Adequate Protection Lien shall be deemed to have been released,

28

9

1  discharged, waived, and the holder shall have no other claim, cause of action, or other

2  rights with respect thereto, except as expressly provided in the Plan.

3  Discharge of Claims. Pursuant to Article IV.M. of the Plan, except

4  as provided in the Plan, the rights afforded in and the payments and distributions to be

5  made under the Plan shall discharge the Reorganized Debtors from all existing debts

6  and Claims and terminate any and all Interests of any kind, nature or description

7  whatsoever against or in the Reorganized Debtors or any of their assets or properties to

8  the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided

9  in the Plan, upon the Effective Date, all existing Claims against and Interests in the

10  Reorganized Debtors shall be, and shall be deemed to be, satisfied and terminated, the

11  Reorganized Debtors shall be discharged, and all holders of such Claims and Interests

12  shall be precluded and enjoined from asserting against the Reorganized Debtors, their

13  successors or assignees or any of their assets or properties, any other or further Claim

14  or Interest based upon any act or omission, transaction or other activity of any kind or

15  nature that occurred prior to the Effective Date, whether or not such holder has filed a

16  proof of Claim or Interest and whether or not the facts or legal bases therefor were

17  known or existed prior to the Effective Date.

18  Discharge of Reorganized Debtors. Pursuant to Article IV.M. of the

19  Plan, except as otherwise expressly provided in the Plan, upon the Effective Date, in

20  consideration of the distributions to be made under the Plan, each holder of a Claim or

21  Interest and any Affiliate of such holder shall be deemed to have forever waived,

22  released and discharged the Reorganized Debtors, to the fullest extent permitted by

23  section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights

24  and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such

25  persons shall be forever precluded and enjoined, pursuant to section 524 of the

26  Bankruptcy Code, from prosecuting or asserting any such discharged Claim or Interest

27  against the Reorganized Debtors.

28

1            <u>Terms of Injunctions or Stays</u>. Pursuant to Article IV.M. of the Plan,

2    unless otherwise provided, all injunctions or stays arising under or entered during the

3    Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and

4    in existence on the Confirmation Date, shall remain in full force and effect until the later

5    of the Effective Date and the date indicated in such order.

6            <u>Injunction Against Interference With Plan</u>. Pursuant to Article IV.M.

7    of the Plan, upon entry of this Confirmation Order, all holders of Claims and Interests

8    and other parties in interest, along with their respective present or former employees,

9    agents, officers, directors, or principals, shall be enjoined from taking any actions to

10    interfere with the implementation and Consummation of the Plan.

11            <u>Exculpation</u>. The provisions set forth in Article IV.N. of the Plan are

12    hereby approved, authorized and incorporated by reference in this Confirmation Order

13    as though set forth in full herein; *provided, however,* any such provisions shall relate

14    only to acts and transactions up to and including the Effective Date.

15            <u>Releases</u>. The provisions contained in Article IV.N. of the Plan are

16    hereby approved, authorized and incorporated by reference in this Confirmation Order

17    as though set forth in full herein; *provided, however,* any such provisions shall relate

18    only to acts and transactions up to and including the Effective Date.

19            <u>Good Faith</u>.  Pursuant to Bankruptcy Rule 9019(a) and sections

20    105(a) and 1123(b)(3) of the Bankruptcy Code, and in consideration for the distributions

21    and other benefits provided under the Plan, the provisions of the Plan constitute a good

22    faith compromise and settlement of all Claims and controversies resolved pursuant to

23    the Plan.  The Confirmation Order constitutes the Court's approval of the settlements

24    reflected in and transactions effectuated under the Plan.

25            <u>Retention of Causes of Action/Reservation of Rights</u>. Pursuant to

26    Article IV.I. of the Plan, nothing contained in the Plan or the Confirmation Order shall be

27    deemed to be a waiver or the relinquishment of any rights or causes of action that the

28

1  Reorganized Debtors may have or may choose to assert on behalf of their respective

2  estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy

3  law, including (i) any and all Claims against any person or entity, to the extent such

4  person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks

5  affirmative relief against the Reorganized Debtors, their officers, directors, or

6  representatives, and (ii) the turnover of any property of the Reorganized Debtors'

7  estates.

8  Setoff Rights. Nothing in the Plan or this Confirmation Order alters

9  in any way a claimant's or the Reorganized Debtors' valid right to (a) setoff under the

10  Bankruptcy Code or (b) recoupment.

11  Reservation of Rights. Pursuant to Article IV.I. of the Plan, except

12  as otherwise set forth in the Plan, nothing contained in the Plan or the Confirmation

13  Order shall be deemed to be a waiver or relinquishment of any claim, cause of action,

14  right of setoff, or other legal or equitable defense which the Reorganized Debtors had

15  immediately prior to the Commencement Date, against or with respect to any Claim

16  asserted against a Debtor.  Except as otherwise set forth in the Plan, the Reorganized

17  Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of

18  actions, rights of setoff, and other legal or equitable defenses that they had immediately

19  prior to the Commencement Date fully as if the Chapter 11 Cases had not been

20  commenced, and all of the Reorganized Debtors' legal and equitable rights respecting

21  any such Claim may be asserted after the Confirmation Date to the same extent as if

22  the Chapter 11 Cases had not been commenced.

23  Notice of Entry of Confirmation Order and Occurrence of the

24  Effective Date. On or before the date that is ten (10) days after occurrence of the

25  Effective Date, the Reorganized Debtors shall file with the Court and serve a notice of

26  the entry of this Confirmation Order and occurrence of the Effective Date on each of the

27  following at their respective addresses last known to the Reorganized Debtors: (i) the

28

1  Office of the United States Trustee for the Central District of California; (ii) counsel to

2  the Committees; (iii) all parties on the NEF list; and (iv) all persons or entities listed in

3  the Reorganized Debtors' schedules of assets and liabilities, or any amendments

4  thereto; and (v) any other known holders of Claims or Interests (collectively, the "**Notice**

5  **Parties**"). Such service shall constitute adequate and sufficient notice pursuant to

6  Bankruptcy Rule 2002(f)(7), 2002(i)-(l) and 3020(c) of the confirmation of the Plan, the

7  entry of this Confirmation Order and occurrence of the Effective Date.

8                          Disbursing Agent. All distributions under the Plan shall be made by

9  a Reorganized Debtor or Other Debtor as Disbursing Agent or such other entity

10  designated as a Disbursing Agent by the Reorganized Debtors on or after the Effective

11  Date.  The Reorganized Debtors' stock transfer agent (the "**Stock Transfer Agent**")

12  shall act as the Disbursing Agent for any distributions made to holders of Interests. A

13  Reorganized Debtor, the Stock Transfer Agent acting as Disbursing Agent shall not be

14  required to give any bond, surety, or any other security for the performance of its duties

15  unless otherwise ordered by the Bankruptcy Court, in which case all costs and

16  expenses incurred to obtain the bond or surety shall be borne by the Reorganized

17  Debtors. If a Disbursing Agent is not one of the Reorganized Debtors or the Stock

18  Transfer Agent such Person shall obtain a bond or surety for the performance of its

19  duties (proof of having obtained such bond shall be provided to the United States

20  Trustee prior to the Effective Date), and all costs and expenses incurred to obtain the

21  bond or surety shall be borne by the Reorganized Debtors. Furthermore, the Disbursing

22  Agent shall notify the Bankruptcy Court and the U.S. Trustee in writing before

23  terminating any bond or surety that is obtained. The Reorganized Debtors shall inform

24  the U.S. Trustee in writing of any changes to the identity of the Disbursing Agent.  This

25  Confirmation Order shall constitute authorization for and direction to the Stock Transfer

26  Agent to transfer shares in MMPI as provided in the Plan.

27

28

1        Professional Compensation and Reimbursement Claims. All entities

2    seeking awards by the Bankruptcy Court of compensation for services rendered or

3    reimbursement of expenses incurred through and including the Confirmation Date under

4    sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the

5    Bankruptcy Code shall (a) file, on or before the date that is Forty-five (45) days after the

6    Effective Date their respective applications for final allowances of compensation for

7    services rendered and reimbursement of expenses incurred and (b) be paid in full, in

8    Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the

9    order(s) relating to or allowing any such Administrative Expense Claim. The

10   Reorganized Debtors are authorized to retain professionals and pay compensation for

11   professional services rendered and reimbursement of expenses incurred after the

12   Effective Date in the ordinary course and without the need for Bankruptcy Court

13   approval.

14       Administrative Expenses. Administrative Expenses incurred by the

15   Reorganized Debtors following the date of the entry of this Confirmation Order shall not

16   be subject to application and may be paid by the Reorganized Debtors in the ordinary

17   course.

18       Conditions to Effective Date. The Effective Date shall not occur,

19   and the Plan shall not become effective, unless and until the conditions set forth in

20   Section VI. of the Plan have been satisfied or waived.

21       Effect of Failure of Conditions to Effective Date. In the event that

22   one or more of the conditions specified in Section VI of the Plan have not occurred or

23   otherwise been waived (a) this Confirmation Order as to such Reorganized Debtor shall

24   be vacated, (b) the Reorganized Debtor and all holders of Claims and Interests against

25   such Reorganized Debtor shall be restored to the status quo ante as of the day

26   immediately preceding the Confirmation Date as though the Confirmation Date never

27   occurred and (c) the Reorganized Debtor's obligations with respect to such Claims and

28

1   Interests shall remain unchanged and nothing contained herein shall constitute or be

2   deemed a waiver or release of any Claims or Interests by or against the Reorganized

3   Debtor or any other Person or to prejudice in any manner the rights of the Reorganized

4   Debtor or any Person in any further proceedings involving the Reorganized Debtor.

5   ~~33.    Substantial Consummation. On the Effective Date, the Plan shall be~~

6   ~~deemed to be substantially consummated under sections 1101 and 1127(b) of the~~

7   ~~Bankruptcy Code.~~

8   ~~34.~~ Amendments and Modifications of the Plan.  After the

9   Confirmation Date and prior to "substantial consummation" of the Plan, as defined in

10  section 1101(2) of the Bankruptcy Code, Charlestown may, under section 1127(b) of the

11  Bankruptcy Code, institute proceedings in this Court to remedy any defect or omission

12  or reconcile any inconsistencies in the Plan, the Disclosure Statement or this

13  Confirmation Order, and such matters as may be necessary to carry out the purposes

14  and effects of the Plan, so long as such proceedings do not materially adversely affect

15  the treatment of holders of Claims or Interests under the Plan; *provided, however,* that

16  prior notice of such proceedings shall be served in accordance with the Bankruptcy

17  Rules or orders of the Court. A holder of a Claim or Interest that has accepted the Plan

18  shall be deemed to have accepted the Plan, as altered, amended or modified, if the

19  proposed alteration, amendment or modification does not materially and adversely

20  change the treatment of the Claim or Interest of such holder. For the avoidance of

21  doubt, the foregoing shall not effect a waiver of any rights that any party may have with

22  respect to modification of the Plan under section 1127 of the Bankruptcy Code.

23  ~~35.~~ Amendments and Modifications to the Plan Supplements.

24  Charlestown is authorized to modify the Plan Supplements following entry of the

25  Confirmation Order and prior to the occurrence of the Effective Date, in accordance with

26  the terms of the Plan; *provided, however,* that Charlestown shall reasonably consult

27  with the Official Creditors' Committee and the Official Equity Committee prior to making

28

any material amendments to the Plan Supplement, and any material amendments shall be filed on the docket.

36. Current Board of Directors.  On the Effective Date and effective as of the Effective Date, all directors on the board of directors of MMPI and all members and managers or directors of each other Debtor shall be deemed to resign from such positions, including, without limitation, from their positions on any committees of the board of directors without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order, or rule.

37. New Board of Directors.  On the Effective Date and effective as of the Effective Date, the new members of the board of directors of Reorganized MMPI and all members and managers or directors of each other Reorganized Debtor shall be deemed appointed without the need for any further notice to or action, order or approval of the Bankruptcy Court, or other act or action under applicable law, regulation, order, or rule.

38. Resolution of Contingent, Unliquidated and Disputed Claims.  Except as expressly provided in the Plan or ordered by the Court prior to the Effective Date, no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order allowing such Claim.  Any claim that is not an Allowed Claim shall be determined resolved or adjudicated in accordance with the terms of the Plan.  After the Confirmation Date but before the Effective Date, Debtors (in consultation with Charlestown, the Official Committee of Equity Holders and the Official Committee of Unsecured Creditors) and after the Effective Date until the Claims Objection Bar Date, the Reorganized Debtors, shall have the exclusive authority to file objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise.  From and after the Effective Date, the Reorganized Debtors may settle or compromise any

1  disputed Claim without any further notice to or action, order or approval of the

2  Bankruptcy Court.  The Reorganized Debtors shall have the sole authority to administer

3  and adjust the Claims Register to reflect any such settlements or compromises without

4  any further notice to or action, order or approval of the Court.

5        39. Authorization to Consummate.  The Charlestown Proponents

6  are authorized to Consummate the Plan at any time after entry of the Confirmation

7  Order subject to satisfaction or waiver (by the required parties) of the conditions

8  precedent to Consummation set forth in the Plan.

9        40. Binding Effect of Prior Orders.  Pursuant to Rule 1141 of the

10  Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of

11  the Effective Date and subject to the terms of the Plan and this Confirmation Order, all

12  prior orders entered in these Chapter 11 cases shall be binding upon and shall inure to

13  the benefit of Debtors, the Reorganized Debtors, and their respective successors and

14  assigns.

15        41. Status Report Under LBR 3020-1(b). Within 120 days of the

16  entry of this order, Reorganized MMPI shall file a status report explaining what progress

17  has been made toward consummation of the confirmed plan of reorganization. The

18  initial report shall be served on the United States trustee, the 20 largest unsecured

19  creditors, and those parties who have requested special notice. Further reports shall be

20  filed every days thereafter and served on the same entities, unless otherwise ordered

21  by the court.

22        The status report shall include at least the following information:

23        (1)   A schedule listing for each debt and each class of claims: the total

24              amount required to be paid under the plan; the amount required to

25              be paid as of the date of the report; the amount actually paid as of

26              the date of the report; and the deficiency, if any, in required

27              payments;

28

17

(2)  A schedule of any and all postconfirmation tax liabilities that have accrued or come due and a detailed explanation of payments thereon;

(3)  Debtor's projections as to its continuing ability to comply with the terms of the plan;

(4)  An estimate of the date for plan consummation and application for final decree; and

(5)  Any other pertinent information needed to explain the progress toward completion of the confirmed plan.

Reporting entities whose equity securities are registered under Section 12(b) of the Securities Exchange Act of 1934 may provide information from their latest 10Q or 10K filing with the S.E.C., if it is responsive to the requirements of this subsection.

Unless otherwise provided in the plan, if the above-referenced case is converted to one under chapter 7, the property of the reorganized debtor shall be revested in the chapter 7 estate, ~~except that, in individual cases, the postpetition income from personal services and proceeds thereof, and postconfirmation gifts or inheritances pursuant to 11 U.S.C. §§ 541(a)(5)(A), 541(a)(6), 1115(a) or 1115(b), shall not automatically revest in the chapter 7 estate~~.

~~42.~~ Effect of Confirmation Order on Other Orders. Unless expressly provided for herein, nothing in the Plan or this Confirmation Order shall affect any orders entered in the Chapter 11 Cases pursuant to Bankruptcy Rule 9019.

~~43.~~ Inconsistency. In the event of any inconsistency between the Confirmation and the Plan or the Plan Supplements with this Order, this Order shall govern.

~~44.~~ Retention of Jurisdiction. Upon the Effective Date, this Court shall retain jurisdiction over the matters arising in, under, and related to, the Chapter 11

1    Cases, as set forth in Article 12 of the Plan and section 1142 of the Bankruptcy Code,

2    and the Court's Findings and Conclusions.

3    45. Governing Law. Except to the extent that the Bankruptcy Code

4    or other federal law is applicable, or to the extent an exhibit to the Plan or Plan

5    Supplement provides otherwise (in which case the governing law specified therein shall

6    be applicable to such exhibit), the rights, duties, and obligations arising under the Plan

7    shall be governed by, and construed and enforced in accordance with, the laws of the

8    State of California without giving effect to its principles of conflict of laws.

9    46. Authorization for Reorganized Debtor Guarantors.

10   Notwithstanding any limitations in the organizational documents for a particular

11   Reorganized Debtor or anything to the contrary in the Plan Documents or Confirmation

12   Order, the Reorganized Debtors and any of their affiliates, are hereby authorized, to the

13   extent necessary, to enter into, deliver, and perform any and all documents or

14   agreements as required by the Loan Modification Agreement, or in connection with the

15   loan modifications or restructuring of any entities or non-Debtor loans.

16   47. Severability. This Confirmation Order shall constitute a judicial

17   determination and shall provide that each term and provision of the Plan, as it may have

18   been altered or interpreted in accordance with the foregoing, is (a) valid and

19   enforceable in accordance with its terms, (b) integral to the Plan and may not be deleted

20   or modified without the consent of the Reorganized Debtors, and (c) nonseverable and

21   mutually dependent.

22   48. Reversal. If any or all of the provisions of this Confirmation

23   Order are hereafter reversed, modified, or vacated by subsequent order of this Court or

24   any other court, such reversal, modification, or vacatur shall not affect the validity of the

25   acts or obligations incurred or undertaken under or in connection with the Plan prior to

26   the Reorganized Debtors' receipt of written notice of such order.  Notwithstanding any

27   such reversal, modification, or vacatur of this Confirmation Order, any such act or

28

1  obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation

2  Order prior to the effective date of such reversal, modification, or vacatur shall be

3  governed in all respects by the provisions of this Confirmation Order and the Plan and

4  all related documents or any amendments or modifications thereto.

5           49. Stay of Confirmation Order. The requirements under

6  Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of

7  14 days after entry of the order is hereby waived. This Confirmation Order shall take

8  effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e),

9  6004(g), 6006(d), or 7062.

10          50. References to Plan Provisions. The failure specifically to include

11 or to refer to any article, section or provision in the Plan, Plan Supplement or any other

12 related document in this Confirmation Order shall not diminish or impair the

13 effectiveness of such article, section or provision in the Plan.

14          51. Final Confirmation Order.  This Confirmation Order is a Final

15 Order and the period in which an appeal must be filed shall commence upon the entry

16 hereof.

17          52. Separate Confirmation Orders. This Confirmation Order is and

18 shall be deemed a separate and final Confirmation Order with respect to each of the

19 Jointly Administered Debtors, except for the case of Merco Group – 2529 Santa Fe

20 Avenue LLC, in each such Debtor's separate Chapter 11 Case for all purposes. The

21 Confirmation Order is deemed docketed in the Chapter 11 Case of each of the Jointly

22 Administered Debtors. A separate Confirmation Order is entered in the case of Merco

23 Group – 2529 Santa Fe Avenue LLC.

24                              ###

25

26

27

28

# EXHIBIT 1

**[ Refer to Docket Number 3223 ]**

| In re:<br><br>      MERUELO MADDUX PROPERTIES, INC<br><br>                            Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 1:09-bk-13356-KT |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

185 Pier Avenue, Suite 103, Santa Monica, CA  90405

A true and correct copy of the foregoing documents described as: **NOTICE OF FILING OF REDLINED REVISED PROPOSED FINDINGS AND CONCLUSIONS AND REDLINED REVISED PROPOSED CONFIRMATION ORDER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On June 15, 2011, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒  Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on May 31, 2011, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed..

    **VIA MESSENGER**
    Honorable Victoria S. Kaufman
    United States Bankruptcy Court
    21041 Burbank Boulevard, Suite 305
    Woodland Hills, CA 91367

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| June 15, 2011  Christopher E. Prince | /s/ Christopher E. Prince |
|---|---|
| Date                    Type Name | Signature |

**F 9013-3.1**

               Parties receiving electronic notice:

ADDITIONAL SERVICE INFORMATION (if needed)**:**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                        **F 9013-3.1**

| In re: | | CHAPTER 11 |
|---|---|---|
| | MERUELO MADDUX PROPERTIES, INC | |
| | Debtor(s). | CASE NUMBER 1:09-bk-13356-KT |

- Michael C Abel mcabel@mac.com
- Robert Abiri rabiri@abiriszeto.com
- Allison R Axenrod allison@claimsrecoveryllc.com
- Christopher J Bagnaschi cb@cjblaw.com
- John J Bingham jbingham@dgdk.com
- William C Bollard eal@jbblaw.com, kmg@jbblaw.com;william@jbblaw.com
- Peter Bonfante peterbonfante@bsalawfirm.com
- Erin N Brady enbrady@jonesday.com
- Julia W Brand JBrand@bhfs.com, jjung@bhfs.com;pherron@bhfs.com
- Jennifer L Braun jennifer.l.braun@usdoj.gov
- Martin J Brill mjb@lnbrb.com
- Andrew W Caine acaine@pszyjw.com
- Howard Camhi hcamhi@ecjlaw.com
- Gary O Caris gcaris@mckennalong.com, pcoates@mckennalong.com
- James E Carlberg jcarlberg@boselaw.com
- Sara Chenetz chenetz@blankrome.com, chang@blankrome.com
- Jacquelyn H Choi jchoi@swjlaw.com
- Carol Chow CChow@Stutman.com
- Cynthia M Cohen cynthiacohen@paulhastings.com
- Ronald R Cohn rcohn@horganrosen.com
- Enid M Colson emc@dgdk.com, ecolson@dgdk.com
- Michaeline H Correa mcorrea@jonesday.com
- Emily R Culler eculler@stutman.com
- Ana Damonte ana.damonte@pillsburylaw.com
- Brian L Davidoff bdavidoff@rutterhobbs.com, calendar@rutterhobbs.com;jreinglass@rutterhobbs.com
- Susan S Davis sdavis@coxcastle.com
- Aaron De Leest aed@dgdk.com
- Daniel Denny ddenny@gibsondunn.com
- Jeffrey W Dulberg jdulberg@pszjlaw.com
- Marina Fineman mfineman@stutman.com
- Michael G Fletcher mfletcher@frandzel.com, efiling@frandzel.com;shom@frandzel.com
- Barry V Freeman bvf@jmbm.com, bvf@jmbm.com
- Donald L Gaffney dgaffney@swlaw.com
- Thomas M Geher tmg@jmbm.com
- Bernard R Given bgiven@frandzel.com, efiling@frandzel.com;shom@frandzel.com;bgiven@frandzel.com
- Barry S Glaser bglaser@swjlaw.com
- Gabriel I Glazer gglazer@stutman.com
- Matthew A Gold courts@argopartners.net
- Eric D Goldberg egoldberg@stutman.com
- Michael J Gomez mgomez@frandzel.com, efiling@frandzel.com;sking@frandzel.com
- Michael I Gottfried mgottfried@lgbfirm.com, msaldana@lgbfirm.com;ncereseto@lgbfirm.com
- John A Graham jag@jmbm.com
- Ofer M Grossman omglaw@gmail.com
- Jodie M Grotins jgrotins@mcguirewoods.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                    **F 9013-3.1**

| In re:  MERUELO MADDUX PROPERTIES, INC |  Debtor(s). | CHAPTER 11  CASE NUMBER 1:09-bk-13356-KT |
|---|---|---|

- Peter J Gurfein pgurfein@lgbfirm.com, cscott@LGBFirm.com
- Cara J Hagan carahagan@haganlaw.org
- Asa S Hami ahami@sulmeyerlaw.com
- Brian T Harvey bharvey@buchalter.com, IFS_filing@buchalter.com
- Robert A Hessling rhessling@dgdk.com
- Whitman L Holt wholt@ktbslaw.com
- William W Huckins whuckins@allenmatkins.com, clynch@allenmatkins.com
- Lance N Jurich ljurich@loeb.com, kpresson@loeb.com
- William H. Kiekhofer wkiekhofer@mcguirewoods.com
- Andrew F Kim akim@mrllp.com
- Michael S Kogan mkogan@ecjlaw.com
- Tamar Kouyoumjian tkouyoumjian@sulmeyerlaw.com, kfox@sulmeyerlaw.com
- Lewis R Landau lew@landaunet.com
- Dare Law dare.law@usdoj.gov
- Leib M Lerner leib.lerner@alston.com
- Matthew A Lesnick matt@lesnicklaw.com
- David E Leta dleta@swlaw.com, wsmart@swlaw.com
- Katherine Lien katie.lien@sbcglobal.net, katielien@gmail.com
- Steven K Linkon slinkon@rcolegal.com
- Robert M Llewellyn michael.llewellyn@boe.ca.gov
- Richard Malatt rmalatt@gmail.com
- Elmer D Martin elmermartin@gmail.com
- Elissa Miller emiller@sulmeyerlaw.com, asokolowski@sulmeyerlaw.com
- Avi Muhtar amuhtar@sulmeyerlaw.com
- Iain A W Nasatir inasatir@pszjlaw.com, jwashington@pszjlaw.com
- Jeffrey P Nolan jnolan@pszjlaw.com
- Henry H Oh henry.oh@dlapiper.com, janet.curley@dlapiper.com
- Lawrence Peitzman lpeitzman@pwkllp.com
- Eric S Pezold epezold@swlaw.com, dwlewis@swlaw.com
- Christopher E Prince cprince@lesnickprince.com
- Michael H Raichelson mhr@cabkattorney.com
- Dean G Rallis Jr drallis@sulmeyerlaw.com
- Kurt Ramlo kurt.ramlo@dlapiper.com, evelyn.rodriguez@dlapiper.com
- Craig M Rankin - DECEASED - cmr@lnbrb.com
- Daniel H Reiss dhr@lnbyb.com
- Michael B Reynolds mreynolds@swlaw.com, kcollins@swlaw.com
- Jeremy V Richards jrichards@pszjlaw.com, bdassa@pszjlaw.com
- James S Riley tgarza@sierrafunds.com
- Martha E Romero Romero@mromerolawfirm.com
- Victor A Sahn vsahn@sulmeyerlaw.com
- Steven J Schwartz sschwartz@dgdk.com
- Kenneth J Shaffer jshaffer@stutman.com
- Zev Shechtman zshechtman@dgdk.com, danninggill@gmail.com
- David B Shemano dshemano@pwkllp.com
- Jeffrey S Shinbrot jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                              F 9013-3.1

| In re: | | CHAPTER 11 |
|---|---|---|
| | MERUELO MADDUX PROPERTIES, INC | |
| | Debtor(s). | CASE NUMBER 1:09-bk-13356-KT |

- Stephen Shiu sshiu@swlaw.com
- Lori Sinanyan lsinanyan@jonesday.com
- Daniel H Slate dslate@buchalter.com, rreeder@buchalter.com;ifs_filing@buchalter.com
- Surjit P Soni surjit@sonilaw.com, gayane@sonilaw.com
- Bennett L Spiegel blspiegel@jonesday.com
- Tracie L Spies tracie@haganlaw.org
- James Stang jstang@pszjlaw.com
- Catherine Steege csteege@jenner.com
- Derrick Talerico dtalerico@loeb.com, kpresson@loeb.com;ljurich@loeb.com
- John N Tedford jtedford@dgdk.com, DanningGill@Gmail.com
- Damon Thayer dthayer@jenner.com
- James A Timko jtimko@allenmatkins.com
- Alan G Tippie atippie@sulmeyerlaw.com, jbartlett@sulmeyerlaw.com;kfox@sulmeyerlaw.com
- United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
- Rouben Varozian rvarozian@bzlegal.com
- Jason L Weisberg jason@gdclawyers.com
- William E Winfield wwinfield@nchc.com
- Jasmin Yang jyang@swlaw.com
- Aleksandra Zimonjic azimonjic@lgbfirm.com, kmoss@lgbfirm.com;cscott@lgbfirm.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                    **F 9013-3.1**